**Scott F. Kocher, OSB #015088**
scott@forumlawgroup.com
FORUM LAW GROUP LLC
811 SW Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2102
Fax: 503.445.2120

**Rafey S. Balabanian, ILB #6285687\***
rbalabanian@edelson.com
**Benjamin H. Richman, ILB #6300668\***
brichman@edelson.com
**Eve-Lynn Rapp, ILB #6300632\***
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

\*Motion for admission *pro hac vice* forthcoming

Attorneys for Plaintiff  (additional attorneys listed on signature page)

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of all others similarly situated, | Case No.: 15-CV-01857 |
| Plaintiff, | CLASS ACTION ALLEGATION COMPLAINT |
| v. | Statutory Action under the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. § 227, *et seq*.) |
| **VISALUS, INC.**, a Nevada corporation, | |
| Defendant. | DEMAND FOR JURY TRIAL |

PLAINTIFF'S CLASS ACTION ALLEGATION COMPLAINT     1

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lori Wakefield ("Wakefield") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant ViSalus, Inc., ("ViSalus") to stop its practice of making unsolicited telephone calls to consumers nationwide, including its unlawful placing of automated robocalls and its calling of telephone numbers listed on the National Do Not Call Registry, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Defendant ViSalus is a multi-level marketing company that distributes a soy protein and sucralose weight-loss concoction, known as "the shake mix that tastes like a cake mix," through a legion of highly motivated sales persons ("Representatives").

2. To motivate its Representatives, ViSalus touts various long-shot opportunities, ranging from potential memberships in its "Bimmer Club" to million-dollar ambassador checks, as being available to those who can move the most product. Because these long-shots are so enticing in theory, and yet so rarely paid in practice, ViSalus is able to cheaply and heavily incentivize individuals to aggressively sell products on its behalf. Hopes of landing these long-shot opportunities keep Representatives actively and aggressively selling even while most never end up earning minimum wage.

3. Unfortunately for consumers, Defendant's aggressive attempts to sell products involve an unlawful telemarketing campaign through which it makes, or has its Representatives (acting as its agents) make on its behalf and with its knowledge, robocalls and unsolicited

telemarketing calls to telephone numbers listed on the National Do Not Call Registry.

4. Defendant and/or its agents failed to obtain prior express written consent from consumers to make such telephone calls and therefore have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5. The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendant and/or its agents made these calls despite the fact that neither Plaintiff nor the other members of the two putative Classes (defined below) provided Defendant with prior express written consent to receive such calls. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

6. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited calling activities as well as an award of statutory damages to the members of the Classes as provided under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

7. Plaintiff Lori Wakefield is a natural person, a resident of Clackamas County, Oregon, and a citizen of the State of Oregon.

8. Defendant ViSalus, Inc., is a corporation existing under the laws of the State of Nevada with its principal place of business located at 340 East Big Beaver Road, Troy, Michigan, 48083. Defendant ViSalus conducts business throughout this District, the State of Oregon, and the United States.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

11. Defendant ViSalus sells, among other things, weight loss shakes and body transformation kits. To increase sales, Defendant uses a multi-level marketing structure, whereby members of its sales force are compensated for selling its products.

12. Representatives are paid directly by ViSalus to carry out its sales, and in that capacity, act as its employees. Alternatively, Representatives are direct agents of ViSalus who are acting with actual and/or apparent authority in their capacity as Defendant's agents by (1) selling Defendant's products and services, (2) using Defendant's brand name, and (3) expressly indicating that they are employed by Defendant.

13. ViSalus trains its Representatives on how to sell its products, and distributes manuals and other training materials and programs to provide its Representatives guidelines for marketing and distributing its products. ViSalus further monitors and reviews the compliance of its Representatives with its policies and procedures as well the laws and regulations applicable to

its business. ViSalus is aware of its Representatives' conduct, directly assists them in that conduct, and ratifies such conduct through its approval of and payment for their actions.

14. Unfortunately for consumers, Defendant ViSalus, on its own and/or through its Representatives, has turned to a tried and true, albeit unlawful, method of reaching new customers: unsolicited telemarketing.

15. Specifically, Defendant and/or its Representatives place thousands of outbound telemarketing calls each day to consumers nationwide. Many of these calls are placed to numbers that are listed on the National Do Not Call Registry. Others, known as robocalls, feature prerecorded messages.

16. These calls are made for the express purpose of soliciting the call recipients to purchase ViSalus products and/or to become ViSalus Representatives.

17. Not surprisingly, consumers have repeatedly spoken out against Defendant's pervasive and widespread telemarketing practices:[1]

- "I've been getting 3 to 4 calls a day from this number. My phone number is on the DO NOT CALL LIST. I would love for them to stop calling me."
- "They need to check these numbers to the Do Not Call List!"
- "Got a call from them today and left a message. Am on the do not call list and am filing a complaint against this number."
- "Body By Vi. Keeps calling at least 3-5 times a week. . . . Stop calling my number don't want your product!"
- "I got the same phone number to me at 2 am. . . ."
- "I received a call from this number and it was a Visalus robocall trying to hawk one of their products. . . ."
- "This is the second time this guy has called. He sounds like he's yelling into a speaker phone really excited about some deal. Total scam is what it sounds like.

---

[1] *See*, *e.g.*, 800notes.com, http://800notes.com/Phone.aspx (last visited October 1, 15) (querying ViSalus numbers 855-867-0328; 877-847-2587; 248-524-9150); WhoCallsMe.com, http://whocallsme.com/Phone-Number.aspx (last visited July 6, 2015) (querying ViSalus number 877-847-2587).

> I don't know how my cell phone number got out to these people. I would just like it to stop. . . ."

18.     Neither Plaintiff nor the other members of the proposed Classes ever provided Defendant and/or its agents with express written consent to receive the telephone calls at issue in this Complaint. Defendant does not have any record of express written consent to place robocalls or telemarketing calls to Plaintiff or the members of the proposed Classes.

## FACTS SPECIFIC TO PLAINTIFF WAKEFIELD

19.     On February 15, 2008, Plaintiff Wakefield registered her landline telephone number with the National Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls.

20.     In February of 2013, Plaintiff briefly signed up to be a ViSalus affiliate, but was not happy with the company or its products and cancelled within a month. After she cancelled, ViSalus repeatedly called her to solicit her return, but she told it to never contact her again and to stop calling her number.

21.     Nonetheless, *two years later*, Plaintiff began receiving several new unwanted telemarketing calls from ViSalus (or its agents) that were directed to her do-not-call registered landline number. On April 8, 2015, for example, she received a telemarketing call promoting ViSalus. The next day, she received another telephone call promoting ViSalus, where she instructed the telemarketer to stop calling her and to make sure she was on the internal do-not-call list.

22.     On April 15, 2015, Plaintiff received a robocall from ViSalus or its agent, indicating that it was "an important call." Plaintiff attempted to connect to a live operator to repeat her do-not-call request, but the automated calling system did not work correctly and the call dropped.

23. On April 28, 2015, Plaintiff received yet another call promoting ViSalus, offering her "50% off" ViSalus products. Again, Plaintiff ended the call.

24. Plaintiff did not provide Defendant or its agents with express written consent to receive these telemarking calls or robocalls.

25. Plaintiff had no existing business relationship with Defendant or its agents at the time of the aforementioned calls and had not entered into any business transactions with Defendant or its agents during the 18 months preceding such calls.

26. As a result of Defendant's intrusive calls, Plaintiff suffered harm and an invasion of her privacy.

27. Defendant was and is aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

28. **Class Definitions**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and two Classes of similarly situated individuals, defined as follows:

> **Do Not Call Class**: All individuals in the United States who received more than one telephone call made by or on behalf of ViSalus within a 12-month period: (1) promoting ViSalus's products or services; (2) at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each call; (3) where such individual had not entered into any purchase or transaction with ViSalus within the 18 months immediately preceding such calls; and (4) where neither ViSalus nor its agents had any current record of express written consent to place such calls at the times such calls were made.
>
> **Robocall Class**: All individuals in the United States who received a telephone call made by or on behalf of ViSalus: (1) promoting ViSalus's products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither ViSalus nor its agents had any current record of prior express written consent to place such call at the time such call was made.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Fed. R. Civ. P. 23(a) Prerequisites

29.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into each of the Classes. Members of the Classes can be identified through Defendant's records.

30.     **Commonality**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, including those concerning the overarching legality of the common conduct featured by Defendant's uniform telemarketing campaign. Such common questions predominate over any questions that may affect individual members of the Classes. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful telemarketing conduct toward Plaintiff and each of the Classes. As a result of this uniform misconduct, Plaintiff and the other members of the Classes suffered the same injuries (in the form of the violations of their statutory rights under the TCPA) and are entitled to identical calculations of statutory damages (per call).

31. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

### Fed. R. Civ. P. 23(b)(2), (3) Provisions

32. **Policies Generally Applicable to the Classes:** This class action is appropriate for certification because Defendant **has acted or refused to act** on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of each of the Classes, and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendant's practices challenged herein apply to and affect the members of each of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to each of the Classes as a whole, not on facts or law applicable only to Plaintiff.

33. **Questions of law or fact common to the class predominate** over any questions affecting only individual members because the claims of Plaintiff and the other members of the Classes all arise from Defendant's uniform campaign of making unauthorized calls to their telephones. The main questions to be answered, such as the overarching legality of Defendant's telemarketing campaign, are common to all the individuals subject to such campaign. Moreover, the answers to such common questions are necessarily resolvable through common proof, primarily from information to be found within Defendant's own records.

34. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, and because joinder of all parties is impracticable. The damages suffered by the

individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct, and class members do not have substantial interest in individually controlling the prosecution of separate actions. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. Plaintiff's counsel is unaware of other litigation concerning the controversy. It is desirable to concentrate litigation of the claims in this forum for judicial economy and consistency. A class action presents far fewer **management** difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Furthermore, the common questions of law and fact in this case can be readily answered with common proof, often from Defendant's own records. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**Basis on Which Plaintiff Claims to Be an Adequate Representative of the Classes**

35. Plaintiff has the same interests as the members of the proposed Classes. Defendant made telemarketing calls to Plaintiff and each member of the putative Classes—using prerecorded voices when calling the members of the Robocall Class, and calling multiple times for the members of the Do Not Call Class—without first obtaining prior express written consent to do so, all in violation of the TCPA. Consequently, like the other members of the Classes, Plaintiff's interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that she and the other members of the Classes recover the statutory damages and

injunctive relief to which they are entitled. She capable and motivated to resolve the present dispute. Further, she has no interests antagonistic to those of the Classes.

### Questions of Law and Fact Alleged to be Common to the Classes

36. Common questions for the Classes include, but are not necessarily limited to the following:

**The Do Not Call Class**:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant and/or its agents made more than one telephone call within a 12-month period to consumers whose telephone numbers were registered with the National Do Not Call Registry (for at least thirty days, at the time of each call);

(c) Whether Defendant and/or its agents systematically made such telephone calls to consumers who did not previously provide Defendant or its agents with prior express consent to receive such calls; and

(d) Whether Plaintiff and members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**Robocall Class**:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant and/or its agents systematically made telephone calls to consumers who did not previously provide Defendant or its agents with prior express consent to receive such telephone calls;

(c) Whether Defendant's telephone calls featured an artificial or prerecorded voice; and

  (d) Whether Plaintiff and the members of the Robocall Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Class)**

37. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38. 47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

39. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

40. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless

telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

41. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

42.  Defendant and/or its agents made more than one unsolicited telemarketing call to Plaintiff and members of the Do Not Call Class within a 12-month period without having prior express written consent to place such calls. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. Plaintiff and members of the Do Not Call Class did not provide consent to receive such telemarketing calls from Defendant or its agents and/or neither Defendant nor its agents have any record of consent to place such telemarketing calls to Plaintiff or the members of the Do Not Call Class.

43.  Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls.

44.  Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the members of the Do Not Call Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the members of the Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

45. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Class.

### SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Robocall Class)

46. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47. Defendant and/or its agents made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Robocall Class—without their prior express consent—in an effort to sell Defendant's goods and services.

48. These calls featured artificial or prerecorded voices.

49. By having unsolicited telephone calls made to Plaintiff's and the Robocall Class members' telephones without prior express written consent, and by using artificial or prerecorded voices when placing such calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

50. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Robocall Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

51. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lori Wakefield, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Lori Wakefield as the Class Representative for each of the Classes, and appointing her counsel as

Class Counsel for the Classes;

     2.     An award of actual and statutory damages;

     3.     An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Classes;

     4.     An award of reasonable attorneys' fees and costs; and

     5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**LORI WAKEFIELD**, individually and on behalf of all others similarly situated,

Dated: October 1, 2015     By: /s/ Scott F. Kocher
     Of Plaintiff's Attorneys

**Scott F. Kocher, OSB #015088**
scott@forumlawgroup.com
FORUM LAW GROUP LLC
811 SW Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2102
Fax: 503.445.2120

**Rafey S. Balabanian, ILB #6285687\***
rbalabanian@edelson.com
**Benjamin H. Richman, ILB #6300668\***
brichman@edelson.com
**Eve-Lynn Rapp, ILB #6300632\***
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Stefan Coleman, NY #4734091\***
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1309 Jericho Tpke, 2nd Floor
New Hyde Park, New York 11040
Tel: 877.333.9427
Fax: 888.498.8946

\*Motion for admission *pro hac vice* forthcoming

Attorneys for Plaintiff

PLAINTIFF'S CLASS ACTION ALLEGATION COMPLAINT    17