**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
**Jonathan H. Singer,** OSB No. 105048
jonathan.singer@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

**Sarah R. Anchors** (pro hac vice)
sarah.anchors@quarles.com
QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

Attorneys for Defendant ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of all others similarly situated, | CV No. 3:15-cv-01857-BR |
| Plaintiff, | |
| vs. | **DEFENDANT'S OPPOSITION MEMORANDUM TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION** |
| **VISALUS, INC**., a Nevada corporation, | |
| Defendant. | |

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. RELEVANT FACTS ........................................................................................................... 3

    A. ViSalus, and its Relationship with Promoters. ............................................................ 3

    B. Promoters and Customers Request that ViSalus Call Them. ...................................... 5

    C. ViSalus's Outbound Calling Team's Operations and Records. .................................... 7

    D. How Promoters and Customers Opt-Out of Receiving Calls From ViSalus. ................. 9

    E. ViSalus's Calls to Plaintiff's Telephone Number. ..................................................... 11

III. ARGUMENT ................................................................................................................... 13

    A. Applicable Legal Standards for Class Certification. .................................................. 13

    B. No Class is Certifiable Based on Calls by Promoters. ............................................... 14

    C. Plaintiff Has Not Satisfied Rule 23 Requirements for the Robocall Class. .................. 16

        1.... The individualized question of standing means there are not common questions of fact. ................................................................................................................... 17

        2. The Robocall Class fails because it is overinclusive. ............................................... 19

        3. Plaintiff fails to establish the Rule 23(b)(3) requirements. ..................................... 20

        4. A class action would not be superior because of the sacrifice of procedural fairness and bringing about other undesirable results. ............................................................. 22

    D. Plaintiff Fails to Establish the DNC Class Meets the Rule 23 Requirements. ............... 25

        1. The class definition is overinclusive. ................................................................... 25

        2. Commonality is lacking, and individual issues predominate. .................................. 25

        3. Plaintiff fails to establish numerosity exists. ......................................................... 27

        4. The DNC Class does not meet the Rule 23(b)(3) requirements. ............................. 28

    E. Plaintiff Fails to Establish That the Oregon Stop Calling Class Meets the Rule 23 Requirements. ........................................................................................................... 29

        1. Plaintiff has not established commonality, nor predominance of common issues over individualized questions. ……………………………………………………………29

        2. Plaintiff's claim is not typical of the class claims. ................................................. 31

        3. Plaintiff has not demonstrated numerosity……………………….……………… 32

IV. CONCLUSION ................................................................................................................. 32

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

# TABLE OF AUTHORITIES

## Cases

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012)............................................................................. 22

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Gp. L.P.*,
  247 F.R.D. 156 (C.D. Cal. 2007) ............................................................................... 15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 20

*ARcare v. Qiagen N. Am. Holdings, Inc.*,
  2017 WL 449173 (C.D. Cal. Jan. 19, 2017) ............................................................. 18

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)...................................................................................... 32

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010)...................................................................................... 23

*Berry v. Baca*,
  226 F.R.D. 398 (C.D. Cal. 2005) ............................................................................... 28

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975)...................................................................................... 14

*BMW of North America, Inc. v. Gore*,
  517 U.S. 559 (1996) .................................................................................................... 23

*Brinker v. Normandin's*,
  66 Communications Reg. (P&F) 239, 2017 WL 661372 (N.D. Cal. Feb. 17, 2017)................ 18

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017).................................................................................... 21

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................... 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)...................................................................................... 14

*Forman v. Data Transfer, Inc.*,
  164 F.R.D. 400 (E.D. Pa. 1995) ................................................................................ 24

*Fox-Quamme v. Health Net Health Plan of Oregon, Inc.*,
  2017 WL 1034202 (D. Or. Mar. 9, 2017) ................................................................. 19

*Gannon v. Network Tel. Servs., Inc.*,
  2013 WL 2450199 (C.D. Cal. June 5, 2013) ............................................................ 30

*Gen. Tel. Co. of Nw. v. EEOC*,
  446 U.S. 318 (1980) .................................................................................................... 27

*Gen. Tel. Co. of S.W. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................... 14, 32

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014)...................................................................................... 15

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

*Guenther v. Pac. Telecom, Inc.*,
123 F.R.D. 333 (D. Or. 1988) ............................................................................... 32

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998), ........................................................................... 20

*Hernandez v. Path, Inc.*,
2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ..................................................... 18

*In re Lidoderm Antitrust Litig.*,
2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ....................................................... 20

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015) ................................................................................... 20

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................................... 13

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ........................................................................ 28

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
27 F.C.C.R. 1830 (Feb. 15 2012) ........................................................................ 29

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
7 F.C.C.R. 8752 (Oct. 16, 1992) ................................................................... 17, 29

*Joint Pet. File by Dish Network, LLC*,
28 F.C.C. Rcd. 6574, 2013 WL 1934349 (F.C.C. May 9, 2013) ........................ 15

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ......................................................................... 21, 23

*Kline v. Coldwell, Banker & Co.*,
508 F.2d 226 (9th Cir. 1974) ............................................................................... 24

*Krakauer v. Dish Network L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015) ........................................................................ 27

*Lee v. Stonebridge Life Ins. Co.*,
289 F.R.D. 292 (N.D. Cal. 2013) .......................................................................... 1

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ........................................................................... 24

*Marisol v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ................................................................................ 32

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ............................................................................... 19

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. July 15, 2016) ..................................................... 19

*Pickett v. Iowa Beef Processors*,
209 F.3d 1276 (11th Cir. 2000) ...................................................................... 15, 16

*Romero v. Dep't Stores Nat'l Bank*,
199 F. Supp. 3d 1256 (S.D. Cal. 2016) ............................................................... 18

*Rutledge v. Elec. Hose & Rubber Co.*,
511 F.2d 668 (9th Cir. 1975) ............................................................................... 14

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 19

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

*Sartin v. EKF Diagnostics, Inc.*,
2016 WL 3598297 (E.D. La. July 5, 2016) ................................................ 18

*Schwartz v. Upper Deck Co.*,
183 F.R.D. 672 (S.D. Cal. 1999) ............................................................... 28

*Serna v. Big A Drug Stores, Inc.*,
2007 WL 7665762 (C.D. Cal. Oct. 9, 2007) .............................................. 23

*Siles v. ILGWU Nat'l Ret. Fund*,
783 F.2d 923 (9th Cir. 1986) ............................................................... 28, 29

*Smith v. Aitima Med. Equip., Inc.*,
2016 WL 4618780 (C.D. Cal. July 29, 2016) ........................................... 18

*Smith v. Microsoft Corp.*,
297 F.R.D. 464 (S.D. Cal. 2014) ......................................................... 21, 22

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) .................................................................................. 23

*Torossian v. Vitamin Shoppe Indus.*,
2007 WL 7648594 (C.D. Cal. Aug. 8, 2007) ............................................ 25

*Van Patten v. Vertical Fitness Grp., LLC*,
22 F. Supp. 3d 1069 (S.D. Cal. 2014) ...................................................... 29

*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*,
274 F.R.D. 229 (S.D.Ill.2011) ............................................................. 30, 31

*Wal-Mart Stores v. Dukes*,
564 U.S. 338 (2011) ..............................................................................Passim

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ............................................................... 30

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .................................................................. 23

*Zinzer v. Accufix Research Ctr., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ............................................................. 13, 14

## Statutes

28 U.S.C. § 2072(b) ....................................................................................... 19

## Rules

Fed. R. Civ. P. 23 .....................................................................................Passim
Fed. R. Evid. 801 ........................................................................................... 10
Fed. R. Evid. 802 ........................................................................................... 10
Fed. R. Evid. 901 ........................................................................................... 10

## Regulations

47 C.F.R. 64.1200 ..................................................................................... 17, 26

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

**Other Authorities**

137 Cong. Rec. S16204-01 ........................................................................................................ 25

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Defendant ViSalus, Inc., through undersigned counsel, hereby opposes Plaintiff's Renewed Motion for Class Certification (the "Motion"), as Plaintiff has not satisfied the elements required under Rule 23, Federal Rules of Civil Procedure. This Opposition is supported by the Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

The Court should deny the Motion because Plaintiff has not met her burden of establishing that any of the three putative classes meet the requirements under Rule 23. Individualized inquiries abound for all three classes. This is not the typical TCPA case[2] where the defendant company is cold-calling individuals from a purchased list of telephone numbers or using a computer to generate a list of random or sequential numbers to be called. Each of the telephone numbers that ViSalus called was provided *by the called party to ViSalus* with a request that ViSalus contact the person by telephone. Each person could, at any time, change that preference. As ViSalus's representative repeatedly stated, these are ViSalus's customers and independent contractors ("promoters") who were being called.

For the Robocall Class, the court will have to hold mini-trials to determine whether each person received a call with a prerecorded message or artificial voice to determine if the person suffered harm. The alleged Robocall Class fails because it includes individuals who did not answer

---

[1] The introduction to Plaintiff's Motion is entirely baseless, irrelevant and derogatory. Plaintiff wrongly asserts that ViSalus is a pyramid scheme. It is most certainly not. Plaintiff also makes the sinister comment that ViSalus "induced" individuals to become promoters and buy ViSalus products. The only evidence is that ViSalus, like any business, sought to make a profit by selling products. This lawsuit *has absolutely nothing to do with pyramid-scheme or any fraud.* Plaintiff's comments are clearly made for the improper purpose of attempting to malign ViSalus. Accordingly, ViSalus anticipates moving to strike the first nine lines of the first paragraph of the Introduction.

[2] One example of such a case is *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 N.D. Cal. 2013), relied upon by Plaintiff, where a vendor generated lists of potential customer phone numbers for the defendant. Here, all of the called parties had provided their phone numbers to ViSalus.

---

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

the telephone and never received a prerecorded message. While ViSalus has produced some lists of called parties with "disposition codes" showing the result of the call (i.e., answering machine, no answer, etc.), its records are not complete in that it does not have such results for every call on a contact list. Also, while ViSalus has produced some prerecorded messages, it cannot determine whether and which message was played for a particular contact list. Therefore, individual inquiries will be needed to determine whether each person on contact lists received a prerecorded message and therefore has standing. This means that the alleged class definition is impermissibly overinclusive and that common questions do not predominate. Furthermore, Plaintiff fails to establish that a class action would be superior because of the potentially huge recovery sought -- $2.25 to $6.75 billion – in comparison to the minor inconvenience of having received a telephone call that lasted less than 40 seconds.

The Do Not Call Class ("DNC Class") fails because it includes individuals whom ViSalus was allowed to call as they had made an inquiry or submitted an application to be a promoter within the three months before the call. Also, Plaintiff fails to establish numerosity, as the evidence shows that her situation with allegedly being called when the TCPA would forbid a call was an aberration. Also, like the Robocall Class, individual issues predominate because it cannot be proved on a class-wide basis that a call was made to each person.

The Oregon Stop Calling Class suffers from the same failings as the other two classes, and in addition, Plaintiff fails to establish that she is typical of the class (having never actually requested that ViSalus stop calling her). Class certification is properly denied if Plaintiff fails to meet her weighty burden of establishing that the class meets each of the elements of Rule 23(a) and, pertinent here, Rule 23(b)(3). As discussed below, Plaintiff fails to establish *many* of the elements of Rule 23 for each of the three putative classes, and therefore, the Motion should be denied.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

## II.  RELEVANT FACTS

### A.  ViSalus, and its Relationship with Promoters.

ViSalus, founded in March 2005, is a multi-level marketing (or "MLM") company in the business of selling healthy lifestyle products – such as meal replacement shakes, healthy energy drinks, and healthy snacks – that help people lose weight or achieve healthy lifestyle goals. Deposition of John Laun at 26:11-21. [3]  Now and at all relevant times, in the U.S., most ViSalus employees work at its Troy, Michigan headquarters, while a few work at ViSalus's Los Angeles office.  *See* Gidley Dep. at 10:14-18; Laun Dep. at 28:2-4, 39:17-21.

As an MLM, the main way that ViSalus sells its products is through promoters, who are independent contractors who have enrolled with ViSalus to, through their own business, share and sell ViSalus products with their network.  Laun Dep. at 26:17-27:4, 29:3-5; Gidley Dep. at 68:20-69:11.  ViSalus also shares a small amount of products directly to customers through its website, but the vast majority of sales are by the networking efforts of promoters to their own customers. Laun Dep. at 27:2-4.

Promoters usually enroll through ViSalus's website by providing information about themselves and signing the terms and conditions governing their obligations and rights as promoters, and, usually, purchasing a starter kit of ViSalus products and information about ViSalus and its products.  Laun Dep. at 32:22-33:2; Gidley Dep. at 69:3-11 [4]  By doing so, the promoter then has an online account with ViSalus.  Laun Dep. at 36:2-9.  Instead of using the website, occasionally, people sign up to be ViSalus promoters by emailing or faxing a paper application to ViSalus's corporate office. Laun Dep. at 33:16-24.  In that case (at least prior to 2012), a ViSalus employee manually enters the information into ViSalus's online system so that the paper applicant

---

[3]  Plaintiff attached excerpts of the Laun Dep., ViSalus Rule 30(b)(6) Deponent ("Gidley Dep."), and Deposition of Mr. Justin Call ("Call Dep.") to the Motion, at exhibits 1, 3 and 7, respectively. This Opposition attaches as exhibits A, B and C, respectively, excerpts of those depositions that were not included in Plaintiff's exhibits.

[4]  Customers also could create an account on the ViSalus website, providing their contact information if they wished.  Gidley Dep. at 143, 154-155.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

likewise has an online ViSalus account. Laun Dep. at 36:2-9; Gidley Dep. at 146-147.

ViSalus does not directly help promoters run their businesses; rather, ViSalus builds value in its company and products, and communicates that value to the public. Laun Dep. at 33. ViSalus also offers training events and creates materials that promoters can use to sell ViSalus products. Laun Dep. at 37.

There are 21 levels of promoters, from Active Associate to Global Ambassador. Laun Dep. at 66-68. At its height, ViSalus had about 20,000 promoters. Laun Dep. at 27.

ViSalus promoters *are not ViSalus employees*, contrary to any indication by Plaintiff; they are independent contractors. *See* Motion at 5[5]; Laun Dep. at 29; Gidley Dep. at 77. To enroll, promoters sign an application that contains terms including: "I am responsible for determining my own business activities" and "I am not an agent, employee or legal representative of VISALUS." Dkt. 69-7, at 4 (¶ 3). Promoters choose to become promoters; ViSalus does not hire them. Laun Dep. at 32-33; Gidley Dep. at 77. Promoters can choose at any time to stop being promoters. Laun Dep. 39:3-6; Gidley Dep. at 78. As the promoter application states: "I may terminate this Agreement for any reason, at any time, by giving VISALUS prior written notice." Dkt. 69-7, at 4 (¶ 5). Promoters do not work at ViSalus's offices. Gidley Dep. 10:11-16. ViSalus does not exercise control over when and how promoters do their work. *See* Laun Dep. 33:5-15, 37; Dkt. 69-4(¶ 16). Promoters agree, in signing the application, that "I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement." *Id*. Promoters do not receive salaries from ViSalus; rather, they pay a fee to be promoters and receive commissions based on their sales. Laun Dep. 86:22-87:13; Call Dep. at 114:20-25; Gidley Dep. at 71:3-18; Dkt. 69-7, at 4 (¶ 9). Promoters do not have a supervisor at ViSalus that they report to because "[t]hey are all running their own business. More

---

[5] Plaintiff's citation to Mr. Gidley's deposition on pages 69 to 70 is erroneous as it does not contain any reference to training materials.

Plaintiff emphasizes that ViSalus incentivizes promoters, but this is irrelevant as Plaintiff has not and cannot assert a claim based on telephone calls by promoters.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

than anything a promoter speaks most of the time to their upline promoter, the person that enrolled them or is working with them." Laun Dep. 127:10-13. *Most relevant to this case*, promoters do not make calls from ViSalus's telephone lines nor do they have access to ViSalus's telephone system. Call Dep. 93:18-24.

**B.     Promoters and Customers Request that ViSalus Call Them.**

Plaintiff twists and misconstrues the evidence to make it seem as if ViSalus called people whose telephone numbers were obtained from promoters. *See* Motion at 6. This is inaccurate. As set forth above, ViSalus promoters and customers have accounts with ViSalus online through which they can purchase ViSalus products.[6] In setting up his or her *own* account, the customer or promoter completes the "communications tab" on the ViSalus website (called "Vi-Net"), wherein they may put a telephone number and indicate that they wish to be contacted at that telephone number.[7] Laun Dep. at 42-43; Exhibit D hereto ("Company Communications" screenshot, VISALUS_WAKEFIELD000041); Motion Exh. 14[8]; Gidley Dep. at 131, 148, 215.[9] The communications tab has a box to checkmark, and then states "YES - I want to receive important phone messages from ViSalus management", followed by spaces to enter a phone or mobile number. A person is neither obligated to check "YES" or enter a telephone number in order to

---

[6] When someone enrolls as a promoter (or customer), and provides his or her name, address and telephone number, then a customer profile is created in the "Exigo" system, which stores that information. Laun Dep. at 61-62. Gidley clarified that there are two systems: Exigo, the online database for purchase information and other customer and promoter information that ViSalus's employees access; and Vi-Net, the ViSalus website system with the communications tab to which each person with a ViSalus account has access. Gidley Dep. at 149-151.

[7] Plaintiff misconstrues Mr. Gidley's testimony. Motion at 6. Plaintiff's counsel asked: "How do promoters come to be engaged with ViSalus?" Mr. Gidley answered: "It's a network marketing company, so they would have friends, family members, introduce them to the products, discuss being a customer, potentially having a side business, becoming a promoter." Gidley Dep. 68:20-25.

[8] The Motion inaccurately states that ViSalus only produced the document Plaintiff attached as Exhibit 14. *See* Motion at 10 n.2. Mr. Gidley **did not testify, as the Motion wrongly states, that ViSalus relied on promoters to give ViSalus phone numbers of individuals to call.**

[9] The communications tab used as of June 2016 is at Dkt. 69-15. Gidley Dep. at 215.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

purchase ViSalus product, nor obligated to indicate that calling a telephone number is the best way to be contacted. *See* Laun Dep. at 42-43. A person may enter a business telephone number (either landline or cell phone) or a residential landline or a personal cell telephone number. *See id.* A person can go into his or her ViSalus account at any time and change the communications preferences, changing or removing a telephone number. *See id.*; Gidley Dep. at 148:5-13. By putting a telephone number into the communications tab and indicating that the person wants to be contacted by phone, the promoter or customer directs ViSalus that he or she wishes to be contacted by phone. *See* Laun Dep. at 43; Gidley Dep. at 131. For those who completed paper promoter applications, they likewise indicated whether they wanted ViSalus to contact them by phone, and if so, at which telephone number (home, cell, etc.). Gidley Dep. at 147:15-25.

ViSalus then filters its communications based on that indicated preference. Laun Dep. at 43, 61-62. Thus, Plaintiff is incorrect in asserting that ViSalus has not produced evidence of consent of the called parties. *See* Motion at 2, 10. [10] It produced screen shots of the communications tab and the hardcopy promoter applications and purchase forms, which Plaintiff attached to the Motion at Exhibits 6 and 14. ViSalus produced lists of individuals called for various calling campaigns, and those lists evidence consent because in creating them, ViSalus only included individuals who had indicated at the time that they wanted to be contacted by telephone at the number provided. Laun Dep. at 61-62, 73, 74. Taken together, this demonstrates that the individuals on the call lists each consented to be called at the telephone number on the list. Because the communications tab is a live system, ViSalus cannot determine what information was in that tab at any particular time, other than reviewing any contact lists (discussed below) that have the individual's telephone number, which must have been pulled from their communications tab. *See*

---

[10] And contrary to the Motion, ViSalus *did not* expressly testify that it did not maintain consent records. Motion at 23. Rather, Mr. Gidley testified only that the communications tab is a live system, meaning the box requesting to be called and the phone numbers provided can be changed at any time. Gidley Dep. at 215. As discussed herein, ViSalus's records of consent include the contact lists that were created using the information from the communications tab for accounts.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Motion Exh. 5, at Response No. 9.  As an example, ViSalus cannot now provide a screenshot of what the Wakefields' communications tabs looked like in 2013 and 2015.  *See* Gidley Dep. at 215.

### C.     ViSalus's Outbound Calling Team's Operations and Records.

ViSalus created an outbound calling team (called "Outbound Support") in or about June 2012. Call Dep. at 30, 99, 107.  Initially, the team solely called people who had attempted to make purchases from ViSalus, but whose credit card was declined. Call Dep. at 28.   Throughout the years, declined credit card calls continued to occupy "by far" most of the Outbound Support members. Call Dep. at 100:17-23.[11]

ViSalus debuted a "fuel kit" (a group of products to support weight loss and fitness goals, with a shake and a cereal) and to add to the email and social media campaign, Outbound Support called customers and promoters to give them a special discount off the new fuel kit price. Call Dep. at 28-29, 41-42.  Also through email and social media, ViSalus conducted "Winback" campaigns to contact customers and promoters who had not made a purchase in a certain period of time to let them know about a special deal.  Call Dep. at 28-29.  In 2013, Outbound Support started participating in the Winback campaigns as a courtesy to promoters and customers to let them know that, for example, they could get 50% off on a "challenge" (meaning a complete program for weight loss and fitness).  Call Dep. at 40-41; Gidley Dep. at 87.

For about the first two-and-a-half years, Outbound Support always manually dialed telephone numbers and did not use a prerecorded message or artificial voice.  Call Dep. at 29-31, 99; Gidley Dep. at 88:2-5.  Then in the October/December 2014 timeframe, Outbound Support started using the "Progressive Outreach Manager" ("POM") functionality on the telephone system to dial telephone numbers for the declined credit card calls, fuel kit calls and Winback campaigns. Call Dep. at 34, 35; Gidley Dep. at 88-89.  Winback campaigns generally focused on individuals

---

[11]  The Motion misstates the evidence on page 7, in stating that ViSalus "employed hundreds of people in its outbound call centers."  There was only Outbound Support in Troy, and Mr, Gidley testified that there were 380 people working "*[i]n all of the departments over the course of five years, four and a half years.*"  Gidley Dep. at 25:1-4.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

who had purchased product from ViSalus within the past three to nine months because such individuals were the most likely to make another purchase. Call Dep. at 95-96, 98.

Later, Outbound Support began using prerecorded messages or an artificial voice introducing the call and stating "press 1" to be connected with a live person, predominantly for declined-credit-card calls. Call Dep. at 71-72, 98-99, 101. Outbound Support would still, on occasion, manually dial a number and not use a prerecorded message, such as when the team member was calling back a particular customer or promoter who emailed in a question or issue. Call Dep. at 69-70.

To determine whom to include on a list of telephone numbers to be contacted, certain parameters would be set for the campaign and then a list of promoters and customers would be pulled from the online accounts (only those who had requested in the communications tab that they be contacted by phone) whose profile fit those parameters (such as individuals who had not made a purchase within the past 90 days from ViSalus). Call Dep. at 36; Gidley Dep. at 31, 36-38, 149. If ViSalus was using POM to dial the numbers for the calling campaign (as opposed to Outbound Support members manually dialing), the list would be uploaded to POM, and a copy saved in an Outreach Support digital folder called "POM Contact Lists." Gidley Dep. at 90, 113-114, 118-119, 125.[12] Whether the telephone system may have called each of the telephone numbers on a given list is indeterminate. Call Dep. at 43-44. These POM contact spreadsheets do not have the dispositions -- that is outcomes -- of the calls. *See*, e.g., Motion Exh. 4.

ViSalus produced "campaign detail reports" that provide summaries of how many calls were made on a particular day for a particular campaign and the result of those calls (such as 20 calls where no one answered the phone, 6 calls where the recipient disconnected, 65 calls where there was an answer machine, etc.) *See, e.g.,* Exhibit E hereto,

---

[12] **The Motion wrongly states on page 8 that ViSalus uploaded information *provided by promoters* into Avaya to call customers and promoters**, and cites to Mr. Gidley's testimony. Nowhere does Mr. Gidley make this statement.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

"Winback50k_CompletionCode_9_19_2014." (lodged under seal). However, these reports do not identify which call recipients answered the phone versus had an answering machine versus no answer, etc.

ViSalus has some spreadsheets, which it has produced, that show the disposition of each call, but it does not have complete records indicating for each contact list whether the telephone system actually called each of the telephone numbers on the list, and the disposition of the call. Call Dep. at 44; Gidley Dep. at 39-40, 44, 47, 124; *see also* Motion Exh. 4. Plaintiff's incorrect statement that ViSalus has records of *each* call's disposition is not supported by the evidence she cites; it merely establishes that ViSalus *sometimes* has records of the results of calls. Motion at 9. While ViSalus has records of some prerecorded messages and contact spreadsheets that appear to relate to each other, it does not have records to determine whether a particular message, or any message at all, was played for the telephone numbers on a specific contact list. Call Dep. at 89.

ViSalus's business peaked in late 2012 and early 2013. By October 2013, its business was declining and it was laying off employees. Call Dep. at 118. Outbound Support dwindled to fewer than 10 employees by Spring 2015. Gidley Dep. at 28. In October 2015, ViSalus stopped using POM for Winback and promotional campaigns. *Id.* at 91-93. Outbound Support was closed down completely by January 2016 and therefore, no outbound sales calls were made from that point forward. Call Dep. 34:17-23, 100:3-5, 109, 117-118; Gidley Dep. 92:2-8.

### D. How Promoters and Customers Opt-Out of Receiving Calls From ViSalus.

Plaintiff wrongly asserts that it was "virtually impossible" for people to avoid being called. This is contrary to the evidence. The only way a telephone number could make its way *onto* a list of telephone numbers to be called is if the person put the telephone number into the communications tab and indicated that he or she should be called at that number. Laun Dep. at 61:1-62:8, 73, 74. Anyone with a ViSalus account could avoid future calls by removing his or her number from the communications tab. Call Dep. at 67:12-24; Gidley Dep. at 155:17-20.

A person could also contact ViSalus by email or telephone and request not to be called.

QB\44770240.1

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Gidely Dep. at 131:22-25, 155:7-156:2. The person's telephone number would then be put on the internal do-not-call list and would not be included in any list of telephone numbers to be called. *Id.*

Additionally, a person who received an automated call would be given the opportunity to enter a number to indicate that he or she did not want to receive future calls, and that request would be stored in the telephone dialing system. Call Dep. at 68:11-16; Gidley Dep. at 19713-22.

Merely cancelling a ViSalus account is not a request to not be contacted by telephone. Call Dep. at 96. However, ViSalus's practice was to *not* contact promoters who had cancelled their accounts, and their accounts should not have shown up on a contact list for a Winback campaign. Gidley Dep. at 162:1-17. Plaintiff's allegations that this happened to her are therefore an aberration and atypical.

Plaintiff has no evidence for its claim that ViSalus called "thousands of people who did not want to be contacted and who repeatedly requested that the calls cease." Plaintiff points to herself, so that is one. Plaintiff relies on a few anonymous complaints on a website "800notes.com." Dkt. 69-19. These documents are hearsay and unauthenticated. *See* Fed. R. Evid. 801, 802, 901(a). Plaintiff merely attached them to the Complaint. Dkt. 36. Plaintiff testified that she had never seen the documents until the day before her deposition. Wakefield Dep. at 68:2-69:7. None of these purported online posters has ever testified nor even been identified as a witness. Second, some of the comments are from 2008 –*before the statute of limitations for this claim* (October 1, 2011). Dkt. 69-19, at 5-6. This was also years before Outbound Support was created and well before it started using prerecorded messages or an artificial voice in calls to customers and promoters. Third, the majority of the comments are *not* complaints from people about being called; they are merely people just giving their two-cents. *Id.* at 8-12. Fourth, there are number of comments *supportive* of ViSalus, such as comments by "Florida," "chit," "Joe," "tg," and "Dean." *Id.* at 5, 8, 13. Fifth, posters, such as "Kate," said they had signed up with ViSalus. *Id.* at 14. Plaintiff also relies on two complaints to ViSalus about receiving unwanted communications.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Motion Exh. 17.  The first appeared to be a weird situation where the complainant's telephone number was listed on 15 different accounts, even though the complainant said he had never been a customer or promoter.  *Id.* at 1; Gidley Dep. at 210:3-18.  In any case, ViSalus followed its procedure of promptly adding the telephone number to its internal do-not-call list.  *Id.*; *see also* Motion Exh. 17, at 1.  As to the second complaint, it involved text messages and so is not relevant here.  *Id.* at 2; Gidley Dep. at 211:9-212:5.

### E.    ViSalus's Calls to Plaintiff's Telephone Number.

Ms. Wakefield and her husband, Byron Wakefield, both signed up to be promoters in February 2012.  Deposition of Lori Wakefield, excerpts of which are attached hereto as Exhibit F, at 39.  The telephone number (the "Wakefield Number"),[13] which is apparently their residential landline, was provided for both Plaintiff's and Byron Wakefield's ViSalus online accounts. Gidley Dep. at 174:5-7.  Plaintiff wrongly states in the Motion that she never consented for ViSalus to call her.  Motion at 2.  However, she admitted that she signed up by entering her information, including the Wakefield Number, on ViSalus's website.   Wakefield Dep. at 33:17-34:11. Therefore, she must have entered her phone number into the communications tab.

The list of contact numbers for the Winback campaign that resulted in calls to the Wakefield Number was created in January 2015. Gidley Dep. 204.  However, due to an anomaly, the telephone calls were not made until April 2015.  *Id.* at 205.  The list of telephone numbers was created either by a promoter or a ViSalus employee.  *Id.* at 206:6-12.  Although it apparently included at least two cancelled accounts (i.e., the Wakefields), as Mr. Gidley testified, "it is not our policy to contact canceled promoter accounts" and if such accounts were included, "then someone made an error in judgment." *Id.* at 206:13-16

Wakefield claims that ViSalus called the Wakefield Number five times in 2015: April 8,

---

[13] Plaintiff apparently has a cell phone, but ViSalus never called Plaintiff (nor Byron Wakefield) on their cell telephone lines.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

9, 15 and twice on the 28th.[14] *See* Response No. 1 of Plaintiff's Responses to Defendant ViSalus, Inc.'s First Set of Interrogatories, excerpts of which are attached hereto at Exhibit G. However, her assertions are contradicted by the records for the Wakefield Number from her telephone service provider. Motion Exh. 20. That document shows three calls on April 2 from ViSalus's telephone number (248-764-7521), each lasting less than 40 seconds. *Id.* One call on April 8, from the ViSalus telephone number 248-764-7514, lasting nine seconds. *Id.* And one on April 28, from 248-764-7521, lasting 39.8 seconds. *Id.*[15] *See also* Gidley Dep. at 189-191.

Wakefield testified that the first call she received in April 2015 was a live person. Wakefield Dep. at 45:7-14. On April 8, after receiving a second call, Plaintiff first communicated with attorney, Stefan Coleman, about a TCPA claim against ViSalus. *See* Response No. 5 at Exh. F hereto; Wakefield Dep. at 47:8-13, 52:9-21.

Plaintiff has no support for her assertion that "she repeatedly demanded that the calls cease." Motion at 2. Plaintiff contends that she told ViSalus on April 9 to not call her again. *See* Response No. 1 at Exh. F hereto. However, ViSalus did not call her on April 9. *See* Motion Exh. 20. And, as the Motion, ViSalus has no record of her telling ViSalus on April 9, 2015 or any other day that month to stop calling her. Plaintiff also contends that on April 15, she received a call from ViSalus and attempted to follow instructions from the automated voice to a live operator, but it did not work correctly. Dkt. 36, ¶ 22. However, ViSalus did not call Plaintiff on April 15. Motion Exh. 20 (additionally, the records show ViSalus only called once on April 28, not twice).

Plaintiff retained Mr. Coleman as counsel on April 16, 2015, and signed a retainer agreement ███████████████████████████████████ *See* Exhibit H hereto, (lodged under seal). Indeed, Mr. Coleman's website promises: "Contingency Fees. We are only

---

[14] The Motion asserts that each of the calls was made to sell Plaintiff products. Motion at 12. However, there is no evidentiary support for that conclusion. Plaintiff testified she received two prerecorded messages; on the other calls, she hung up before hearing any message. Wakefield Dep. at 60:8-62:17.

[15] The Motion states that Exhibit 20 shows that ViSalus called Plaintiff "at least five times." But that is not right. The Exhibit shows that ViSalus called her *exactly* five times.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

paid, if we help you recover money." *See* www.classaction.ws. ██████████████
████████████████████████████████████████ Wakefield Dep. at 72:11-24

(lodged under seal). Plaintiff testified ViSalus left a voicemail on April 28 -- after she had talked

with Mr. Coleman and signed the retention agreement -- but she deleted it.[16] Wakefield Dep. at at

67:4-10.

## III. ARGUMENT

### A. Applicable Legal Standards for Class Certification.

In order to certify any of the three putative classes in this action, the Court must find that

each of the following requirements are present: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

P. 23(a). The Court must also find that "the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). Pertinent to this case, one of the issues courts consider under Rule 23(b)(3) is

"the likely difficulties in managing a class action." *Id.* 23(b)(3)(D).

Plaintiff bears the burden of establishing the propriety of class certification under Federal

Rule of Civil Procedure 23. *See Wal-Mart Stores v. Dukes* (hereinafter "*Dukes*"), 564 U.S. 338,

349-50 (2011); *Zinzer v. Accufix Research Ctr., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). This

involves demonstrating that *all* of the four requirements of Rule 23(a) are satisfied, and that, in

---

[16] Plaintiff was already contemplating and preparing to pursue legal action against ViSalus when she deleted the voicemail, and her counsel should have directed her to preserve all relevant evidence. ViSalus reserves the right to file a motion requesting the Court find that Ms. Wakefield spoliated material evidence for her claim and exercise its broad discretion to impose sanctions, such as awarding attorneys' fee or drawing an adverse inference. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010) (upholding sanctions for willful failure to preserve documents).

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

this matter, *all of the elements* of Rule 23(b)(3) are satisfied. *Id.*; *see also Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982). A plaintiff's evidentiary burden in satisfying the requirements of Rule 23 is difficult: "Rule 23 does not set forth a *mere* pleading standard"; "[a] party seeking class certification *must affirmatively demonstrate* his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis added); *see also Falcon*, 457 U.S. at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains...indispensable"). Certification is only proper if, after "rigorous analysis," the plaintiff has satisfied all of the Rule 23 prerequisites. *Id.*; *Rutledge v. Elec. Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir. 1975) (A plaintiff's failure to carry her burden with respect to *any one* of the Rule 23 requirements "destroys the alleged class action.")

In deciding a class certification motion, courts generally presume the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Nonetheless, the court must perform a rigorous analysis, which may require it "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350. The court must consider the merits of the claim to the extent they overlap with the Rule 23(a) requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Where the plaintiff does not meet the requirements of Rule 23(a) and Rule 23(b)(3), class certification should be denied. *See, e.g., Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 770-71 (9th Cir. 2012).

### B.     No Class is Certifiable Based on Calls by Promoters.

Plaintiff includes in her definition for the each of the classes calls made "on behalf of" ViSalus. Motion at 2-3. To the extent Plaintiff means to include any calls by ViSalus promoters, class certification should be denied. There is no basis for imposing liability on ViSalus for any violations of the TCPA by promoters as it is indisputable that they are independent contractors and not ViSalus employees. The Motion does not present any evidence that the promoters were ViSalus employees. ViSalus's deponents repeatedly testified that the promoters were independent contractors, and the conditions under which they conducted their business establish they were not

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

ViSalus employees.  *See* § II.A., *supra*.

In order to impose liability under the TCPA on ViSalus for any calls by promoters, Plaintiff must demonstrate that each promoter is ViSalus's agent.  *See In re Joint Pet. File by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574, 2013 WL 1934349 (F.C.C. May 9, 2013) (applying common-law agency principles to claims that a defendant is liable for calls made by a third party); *see also Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663, as revised (Feb. 9, 2016) (citing *Dish Network*).  The Motion does not present any such proof.  Furthermore, Plaintiff *only* obtained discovery regarding calls from ViSalus's offices, by its employees.  There was no discovery of calls by promoters themselves. Moreover, the promoter agreement specifically states that promoters are not ViSalus agents and that they are responsible for complying with federal and state law.  Dkt. 69-7, at 4 (¶ 3).

Additionally, there is no evidence in the record of calls by any promoters, let alone calls by such promoters using an automatic telephone dialing system ("ATDS") or a prerecorded message or artificial voice.  Finally, Plaintiff has not demonstrated that she can meet any of the Rule 23 requirements if the classes include individuals who received calls from promoters.  There would not be common questions of fact as there is no evidence that promoters made calls in a uniform manner.  For the same reason, Plaintiff cannot demonstrate that common questions of fact predominate nor that using a class action would be a superior vehicle for adjudicating such claims based on a call from a promoter.  Plaintiff cannot meet the typicality requirement because she alleges she was called by a ViSalus employee; not by a promoter.  Additionally, including calls by promoters would raise individualized questions of liability where there are potentially promoters who themselves violated the TCPA and yet at the same time are putative class members as recipients of calls from ViSalus that allegedly violated the TCPA.  "A class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."  *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Allied Orthopedic Appliances, Inc. v.  Tyco*

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

*Healthcare Gp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (quoting *Pickett*). Furthermore, it would create a logistical nightmare in terms of class proof and discovery, requiring obtaining the calling records from thousands of people who were ViSalus promoters at some point over the past four years. Plaintiff cannot meet the superiority requirement if the putative classes include individuals called by promoters because of the myriad individual issues and the potential conflicts between individuals being class members as well as being alleged violative callers.

### C. Plaintiff Has Not Satisfied Rule 23 Requirements for the Robocall Class.

The Robocall Class[17] is really a misnomer in that the class is not defined by whether an

---

[17] Plaintiff defines the Robocall Class as including those who received calls "promoting ViSalus's products or services." Dkt. 36, ¶ 28. The Motion discusses how one of the seven types of calling campaigns was "declines," meaning calls to customers or promoters whose credit cards were declined, and that declines, like the promotional campaigns, were to promote products and retain customers. Motion at 9.

First, Plaintiff's inaccurately cites the testimony, as Mr. Gidley did not say that the various campaigns and calls shared a "common message." Gidley Dep. at 184.

Furthermore, credit-card-decline calls do not promote ViSalus products or purchases and such call recipients would not be within the definition of the Robocall Class, nor any of the other classes as they all only encompass sales calls. As Justin Call stated, declined credit card calls are "very administrative. I mean, there's no – we're not calling saying, My gosh guys, this is an amazing thing. You know, it's like, sir, your credit card declined, can I get a new one." Call Dep. at 62:9-15.

Plaintiff attempts to blur the line, contending that any call placed in order to increase sales is a telemarketing call or solicitation under Oregon law. Motion at 28. A call about a declined credit card, where the call recipient provides the accurate credit card number, would result in a sale rather than a declined order. But that does not mean that the call was to *encourage* the called party to *place a* purchase. ORS 646.561. The TCPA requires prior express written consent for called advertisements or telemarketing messages delivered using a prerecorded voice or artificial voice. 47 C.F.R. §64.1200(f)(8). "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). A call informing someone simply that his or her credit card was declined does not contain a material advertisement nor encourage the purchase of a good; the person had *already* attempted to make the purchase and the call is merely informational, informing the person that the transaction was not completed.

The law is clear: "Persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions

---

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

automatic telephone dialing system was used. Rather, it is based on whether a prerecorded message or artificial voice was used. Dkt. 36, ¶ 28. Although the statute of limitations is four years (i.e., calls made since October 1, 2011), ViSalus *only* used prerecorded messages or an artificial voice for Winback and promotional campaigns from the October/December 2014 timeframe until October 2015 – so roughly one year.

1. The individualized question of standing means there are not common questions of fact.

The Robocall Class cannot be certified because the question of whether each class member has standing because he or she suffered an injury in fact cannot be determined based on common proof. In *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1263 (S.D. Cal. 2016), the court found that the plaintiff did not suffer an injury-in-fact under the TCPA for calls to her cell telephone from an autodialer because the "injuries" she allegedly suffered could not be traced to use of an autodialer. *Id.* The court noted that the plaintiff would have received the same "injuries" from identical manually dialed calls. *Id.* Similarly, in *ARcare v. Qiagen N. Am. Holdings, Inc.*, 2017 WL 449173, at *3 (C.D. Cal. Jan. 19, 2017), the court found that the plaintiff would have lost the same amount of "ink, toner, paper and time" if the defendant had sent a fax that complied with the TCPA's disclosure requirements. *Id.*; *see also Brinker v. Normandin's*, 66 Communications Reg. (P&F) 239, 2017 WL 661372 (N.D. Cal. Feb. 17, 2017) (N.D. Cal. 2017) (annoyance from receiving one call every two months is not sufficiently concrete for standing); *Smith v. Aitima Med. Equip., Inc.*, 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016) (loss of

---

to the contrary." 1992 FCC Order, 7 FCC Red. at 8796, ¶ 31. By providing their phone numbers to ViSalus, customers and promoters gave ViSalus permission to call them regarding declined credit cards.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

battery life, aggravation, and nuisance from one autodialed call is *de minimis* and does not confer standing); *Hernandez v. Path, Inc.*, *Hernandez v. Path, Inc.*, 2012 WL 5194120, at *2 (N.D. Cal. Oct. 19, 2012) (N.D. Cal. 2012) (same); *Sartin v. EKF Diagnostics, Inc.*, CV 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (bare violation of the TCPA without actual damage did not create Article III standing).

As this Court and the Ninth Circuit have held, every class member must have standing, not just the named plaintiff, and lack of demonstrated standing is a basis for denying class certification. *Fox-Quamme v. Health Net Health Plan of Oregon, Inc*., No. 3:15-CV-01248-BR, 2017 WL 1034202, at *4 (D. Or. Mar. 9, 2017) ("Article III standing requires the plaintiffs to have 'suffered an injury-in-fact' and that 'the injury is likely to be addressed by a favorable decision'"; and denying certification because plaintiffs lacked standing) (quoting *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 594095 (9th Cir. 2012)); *see also Opperman v. Path, Inc*., 2016 WL 3844326, at *13 (N.D. Cal. July 15, 2016), leave to appeal denied (Oct. 20, 2016) (citing *Mazza* and denying class certification because the proposed class contained class members that "suffered no injury at all"); *Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations because the class contained people who were not damaged and would lack standing to bring the claims). Furthermore, the Rules Enabling Act prevents a rule of procedure from abridging, enlarging, or modifying a substantive right. 28 U.S.C. § 2072(b); *Dukes*, 564 U.S. at 364. Therefore, a person who would not be able to recover individually on the merits of his or her claim should not be permitted to recover in a class action. Rule 23 wasn't meant to lower the bar for proof of a claim.

Putative class members who did not answer the calls or otherwise hear the messages did

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

not suffer any injury from ViSalus's use of an artificial or prerecorded voice. ViSalus records do not establish which, if any, prerecorded message it attempted to deliver for a calling campaign. Although some ViSalus records have disposition codes, showing whether the call recipient answered, or if there was an answering machine, or if the call just rang; the records are not uniform. There are many call lists that do not have disposition codes and so it cannot be determined what occurred during each call based solely on the call lists. Accordingly, determining whether class members have standing based upon an injury-in-fact will require individual inquires of fact and cannot be proven on a class-wide basis. Therefore, Plaintiff has not demonstrated that the commonality requirement of Rule 23(a)(2), as well as the predominance requirement in Rule 23(b)(3), are met.

### 2.   The Robocall Class fails because it is overinclusive.

As discussed above, the alleged Robocall Class would include call recipients who were not harmed because they never answered the telephone and did not receive a prerecorded message. Such overinclusive classes are *only* certified where the plaintiff demonstrates that the uninjured parties represent a *de minimis* portion of the class. *See In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017) (finding that overinclusiveness, including plaintiffs who were not harmed in the class definition, "would not defeat class certification as long as the uninjured parties represent a *de minimis* portion of the class"); *see also In re Nexium Antitrust Litig.*, 777 F.3d 9, 25 (1st Cir. 2015) ("We think that a certified class may include a *de minimis* number of potentially uninjured parties."). Plaintiff has not demonstrated that the uninjured parties are only a *de minimis* portion of the Robocall class, and therefore, the class fails.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

### 3. Plaintiff fails to establish the Rule 23(b)(3) requirements.

The Rule 23(b)(3) "predominance" and "superiority" requirements "invite[] a close look at the case before it is accepted as a class action." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The requirement focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to the individual class members. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The Court must consider whether issues unique to individual class members are likely to render adjudication by representation impractical. *Dukes,* 564 U.S. at 346.

The superiority requirement allows a court to exercise considerable discretion in deciding whether or not to certify a class for a category of cases for which a class action may not be the best method: "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 211 (9th Cir. 1975) (quoting official commentary to Rule 23) (emphasis added).[18] Rule 23(b)(3)(D) mandates that a court should consider the "likely difficulties in managing a class action" when evaluating whether class action treatment is superior to other methods of adjudication. Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

---

[18] Plaintiff is incorrect in stating that the Ninth Circuit has done away with the ascertainability requirement. The Circuit Court found that what some courts call "ascertainability" is not a separate requirement for certification. Rather, it describes the factors considered under Rule 23(b)(3) in considering whether common questions predominate and whether a class action is a superior method of handling the claims, and the difficulties in managing a class. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n. 4 (9th Cir. 2017).

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

In *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 470 (S.D. Cal. 2014), the plaintiff attempt to certify a class under the TCPA of individuals who received unsolicited text message advertisements. The court found that a proposed TCPA class failed to satisfy superiority because it was extremely difficult to identify which class members actually received texts and then equally difficult to notify those class members. Thus, the class required "the parties to engage in timely and individualized fact-finding that would be extremely inefficient and unmanageable on a class-wide basis." *Id.* at 473. The court noted that it could not simply rely on the defendant's records to identify the class because "knowing which numbers were cellular numbers that were sent the Xbox Texts is far different from knowing which of those numbers received the Xbox Texts." It also found it "highly unlikely" that individuals would remember receiving "a single unsolicited text message." *Id.* Further, subpoenaing the carrier's records would not reveal how to contact the class member if he or she had changed numbers or otherwise discontinued service with that carrier, making it difficult to notify potential class members.

As in *Smith*, the putative Robocall Class is unmanageable because there is no way to identify the class members with any degree of reliability because ViSalus's records do not establish which calls were actually made and an artificial or prerecorded voice was used. *See* § II.C., *supra*. Thus Plaintiff is wrong to state that "ViSalus has likewise produced lists of all the individuals it contacted," and that it is a common question of whether a prerecorded message or artificial voice was played. Motion at 16, 21.[19] Plaintiff poses the questions as simple (Motion at 14), but whether each class member indeed received a sales call and whether the call used a prerecorded message or artificial voice cannot be answered by ViSalus records. To identify class members, Plaintiff would need to use reverse look-up to identify the owner of each number on ViSalus's lists.

---

[19] This makes the present case different from cases cited in the Motion at pages 21-22, where there were records of the class members receiving the same text message or voicemail. For example, in *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012), heavily relied upon by Plaintiff, because the defendants had documents that showed to which cellular phones they delivered a text message. *Id.* at 567.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Then, Plaintiff would have to presumably send a notice to each potential class member asking if they happen to remember receiving a call from ViSalus – years ago – that used an artificial or pre-recorded voice. This violates the principle of Rule 23(a) that there must be an *objective* way of determining class membership. *See Vandevort v. Balboa Capital Corp.*, 287 F.R.D.554, 557-59 (C.D. Cal. 2012) (rejecting class certification because the plaintiff had not established an objective way to determine who was a member of the putative classes of recipients of unsolicited faxes).

Thus, the benefits of litigating as class action are outweighed by manageability concerns, and the alleged Robocall Class fails the predominance and superiority requirements.

    4.    <u>A class action would not be superior because of the sacrifice of procedural fairness and bringing about other undesirable results.</u>

In evaluating whether a class action is superior vehicle for claims, courts have considerable discretion, as the Ninth Circuit stated: "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, *without sacrificing procedural fairness or bringing about other undesirable results.*" *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 211 (9th Cir. 1975) (quoting official commentary to Rule 23) (emphasis added). In other words, "Rule 23(b)(3) 's superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010).[20] "The Due Process Clause of the Fourteenth Amendment prohibits the

---

[20] ViSalus recognizes that the Ninth Circuit held in a case involving a different consumer statute that the size of a potential award of statutory damages *alone* is not a valid basis for denying certification. *Bateman v, AMC, Inc.*, 623 F.3d 708 (9th Cir. 2010). The Ninth Circuit did *not* create a *per se* rule against considering a defendant's liability in proportion to the plaintiffs' harm. Rather, the court said to look at the Congressional intent behind the statute at issue. Here, considering all of the other reasons why Plaintiff fails to meet her burden to demonstrate that certification is proper under Rule 23, and the Congressional intent in the TCPA, the Court should consider the immensity of the potential award Plaintiff seeks.

Courts have recognized that deferring due process concerns until after certification results in "exorbitant" settlement pressure on the defendant. *E.g.*, *Serna v. Big A Drug Stores, Inc*., No. SACV 07-0276 CJC, 2007 WL 7665762, at *6 (C.D. Cal. Oct. 9, 2007) (denying certification in

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

imposition of grossly excessive or arbitrary punishments on a tortfeasor.'" *State Farm Mutual Auto. Ins. Co. v. Campbell* 538 U.S. 408, 419, 425 (2003); *see also BMW of North America, Inc. v. Gore,* 517 U.S. 559, 580 (1996) (The "most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff.")

Courts deny class certification for failure to meet the "superiority" requirement where the defendant's liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (citing *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 234-235 (9th Cir. 1974) (potential damages awards that "shock the conscience" require denial of class certification under Rule 23(b)(3)). *Kline* approved of decisions denying certification where the plaintiffs sought "outrageous amounts in statutory penalt[ies]." *Id.* In a facsimile telemarketing case brought under the TCPA, for example, one court emphasized that statutory damages of $500 per violation "exceeds any actual monetary loss in paper, ink or lost facsimile time suffered by most plaintiffs in such a case." *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 404-05 (E.D. Pa. 1995).[17] The court found the $500 damages provided for in the TCPA were sufficient "to provide adequate incentive for an individual plaintiff to bring suit on his own behalf" and obviate the need for the class action mechanism. *Id.* at 404. The court concluded "[a] class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements." *Id.* at 404-05.

Here, as in the cases cited above, Plaintiff seeks to recover on behalf of the Robocall Class millions or even billions of dollars. She has not out a precise dollar figure on the sum, but contends that none of the people who received calls from ViSalus with a marketing message, using a prerecorded message or artificial voice consented to receive the call; and that ViSalus produced

---

part because of the huge damages sought based on an alleged technical statutory violation that caused little to no harm and rejecting the argument that such due process concerns should be disregarded because certification would impose exorbitant settlement pressure on the defendant).

QB\44770240.1

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

more than a thousand contact lists, [21] generally with thousands of entries. Motion at 24-25. Plaintiff claims statutory damages under the TCPA of at least $500 per call, and $1,500 for a knowing violation. Dkt. 36, ¶¶ 45, 46. Estimating 450 contact sheets, each with 10,000 entries, each with 10,000 entries, [22] results in 4.5 million calls, resulting in a $2.25 billion to $6.75 billion claim, for the alleged Robocall Class alone. In contrast, Plaintiff has little to no actual harm. She testified that her harm was being irritated at receiving the subject calls from ViSalus, but these calls only lasted less than 40 seconds. *See* § II.E., *supra*; Wakefield Dep. at 74:1-21, 85:15-24. Therefore, for three minutes of her time, Plaintiff seeks on behalf of a class to extract about $2.25 billion or more, from a company that has experienced significant financial declines and closed its outgoing sales calls department. *See* § II.C., *supra*. As another court in this Circuit found: "The Court believes putting a company out of business . . . without proof of actual harm, is the type of undesirable result that . . . the Ninth Circuit warned against." *Torossian v. Vitamin Shoppe Indus.*, No. 07-0523ODW, 2007 WL 7648594, at *5 (C.D. Cal. Aug. 8, 2007). In the words of *Kline*, this shocks the conscience and certification would sacrifice procedural fairness.

Congress intended for the TCPA to be enforced through private actions, preferably in small-claims court, without the need for attorneys. *See* 137 Cong. Rec. S16204-01, at *4 (1991) (Statements of Sen. Hollings: "Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages.")

---

[21] ViSalus disagrees that it produced about 1,000 contact lists that would be relevant to Plaintiff's claims. In the POM Contacts List folder, there are about 450 contact lists (both lists of individuals who may have been called, and lists with disposition codes showing that the calls were made) for promotional calls to individuals in the United States. This 450 number excludes informational calls, such as credit card declines, and excludes calls to customers or promoters in foreign countries. Even including informational calls, such as declines, only brings the number up to about 550 lists.

[22] *See* Motion Exh. 13, with about 10,000 names of people who were called.

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

The statutory damages were calculated to motivate *individuals* to enforce their own rights. *Id.* Indeed, as Mr. Gidley testified, a woman filed an individual claim against ViSalus for allegedly sending her text messages without her consent. Gidley Dep. at 6:2-9. Therefore, contrary to Plaintiff's claim, a class action is not necessary for consumers to pursue TCPA claims against ViSalus.

> **D.** **Plaintiff Fails to Establish the DNC Class Meets the Rule 23 Requirements.**

> **1.** <u>The class definition is overinclusive.</u>

Plaintiff's definition of the DNC Class only includes whether the call recipient did not purchase any products from ViSalus within the past 18 months before the call. Motion at 15. However, the law allows a business to call a telephone number on the national DNC registry if the person made an inquiry or submitted an application within the three months before the call. 47 C.F.R. 64.1200(f)(5). Plaintiff's proposed class definition would therefore include individuals to whom a call *did not violate* the TCPA because the person had submitted a promoter application or inquiry to ViSalus within the three months before the call. Plaintiff does not even attempt to demonstrate that those who fit within the three-month exception would be a *de minimis* number. Therefore, pursuant to *Nexium* and *Lidoderom*, *supra*, the class fails for being overinclusive.

> **2.** <u>Commonality is lacking, and individual issues predominate.</u>

The language of the Rule 23(a)(2) requirement that there must be "questions of law or fact common to the class" is "easy to misread, since any competently crafted class complaint literally raises common questions." *Dukes,* 564 U.S. at 349. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury...not...merely that they have all suffered a violation of the same provision of the law." *Id.* In determining whether a class has common questions, what really matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.... Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

omitted, emphasis in original).

For each putative class member, there will have to be an individualized inquiry into when the person registered the telephone number with the national DNC registry as compared to when the person provided the telephone number to ViSalus in the communications tab and/or purchased ViSalus products or submitted an inquiry or application and when the calls were made. Such individual issues mean there are not common questions of law or fact, and certainly individual questions predominate over any common questions.

As discussed above, whether a person received a sales call (or, for the DNC Class, two sales calls in twelve months) cannot be objectively determined from ViSalus's records. Plaintiff wrongly asserts that ViSalus systematically did not adhere to its Do Not Call process; there is no evidence for that broad accusation. *See* Motion at 2, 20. Plaintiff misconstrues Mr. Gidley's testimony. He did not testify that as a regular practice, ViSalus abandoned its Do Not Call procedures. Rather, he testified that it was possible that a promoter made a request and was allowed to submit a contact list that overrode the general practice at ViSalus of not calling cancelled accounts. Gidley Dep. at 166:11-167:3. Furthermore, a cancelled account is not necessarily an account where the person requested that ViSalus stop calling the person or that the person had registered the telephone number with the national DNC registry and had not purchased product from ViSalus within the past 18 months nor submitted an application or inquiry to ViSalus within the last three months.

Plaintiff's reliance on *Krakauer v. Dish Network L.L.C.* is misplaced because in that matter, the court decided that commonality was met because it could be determined in one hearing whether the defendant called a number on the DNC registry. 311 FRD 384, 394 (M.D.N.C. 2015). That case did *not* involve applying the exceptions here regarding a purchase within the past 18 months or an inquiry or application within the last three months.

QB\44770240.1

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

3.     <u>Plaintiff fails to establish numerosity exists.</u>

Plaintiff has no proof of numerosity for the putative DNC Class.  The Court must examine the specific facts of the case and recognize the practicalities of the situation presented to determine whether the putative class has enough members to justify class certification.  *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is no precise numerical threshold to class certification, the requirement is not satisfied when the number of class members cannot even be estimated.  *See In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003) ("[T]he numerosity requirement . . . cannot be met where the Court is unable to even estimate the number of class members.") (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) (finding numerosity is not met when "[b]ased on the information presented to the Court, the number of possible class members could range from as few as the class representatives... to millions.").  The mere allegation of numerosity is not enough; a plaintiff must show that joinder would be impractical.  *Berry v. Baca*, 226 F.R.D. 398, 403 (C.D. Cal. 2005).

Plaintiff heavily relies on ViSalus not having subscribed to the national DNC registry.  However, ViSalus was only calling numbers where the consumer consented in writing to be called at that number.  Therefore, this fact alone does not dictate that numerosity exists.

Furthermore Plaintiff's mathematical logic is faulty.  Plaintiff presumes that because ViSalus made more than a million telephone calls and that about 70% of American registered their telephone numbers with the national DNC registry, *it must be* that ViSalus unlawfully called numbers on the national DNC registry where an exception did not apply.  But that last part is the sticker for Plaintiff.  She has no proof that no exception applied to the vast majority of any telephone numbers that ViSalus called that were on the national DNC registry.  Plaintiff asserts that individuals who were called in a Winback campaign must have requested that ViSalus not call them because they had not ordered from ViSalus within a certain period of months.  This is contrary to Mr.Call's testimony.  The Winback campaigns were generally to individuals who had made purchases within the past three to nine months because that is where there would be the most

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

success. *See* § II.C., *supra.* Therefore, it is actually *unlikely* that there are numerous persons who had registered for the DNC list and who were called by ViSalus after not having made a purchase from ViSalus within the past 18 months   A plaintiff may not satisfy the numerosity requirement merely by citing that there are numerous people in an overbroad class of persons with and without cognizable claims. *See Siles v. ILGWU Nat'l Ret. Fund,* 783 F.2d 923, 930 (9th Cir. 1986).   In *Siles*, the court upheld the denial of certification because the plaintiff had not provided evidence that of the overbroad category of people who had not received a pension, a sufficiently numerous amount had a claim. *Id.*   Likewise, here Plaintiff has merely pointed to what she contends is a large category of people with phone numbers on the national DNC registry who received a call from ViSalus without demonstrating that a sufficient numerous amount of such people have a claim under the TCPA.

4.     The DNC Class does not meet the Rule 23(b)(3) requirements.

For the same reasons as superiority and predominance of common questions are lacking for the Robocall Class, the DNC Class likewise fails. *See* § III.C.3., *supra.* ViSalus's records do not show whether each number on a call list was actually called.  Therefore, mini-trials would be needed to obtain proof from the putative class member that he or she actually received two calls within 12 months after having registered with the national DNC registry and that neither the purchase nor application/inquiry exceptions apply.

Additionally, the class is overinclusive because it includes individuals who consented to be called by ViSalus. As Plaintiff recognizes, under the FCC's interpretations of the TCPA, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992).  In 2012, the FCC changed course to require prior express written consent for telemarketing calls using an artificial voice or prerecorded message. *In re Rules & Reg's*

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

*Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1856–57 (Feb. 15 2012). This new interpretation took effect on October 16, 2013. *Id. See Van Patten v. Vertical Fitness Grp., LLC,* 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014), *aff'd,* 847 F.3d 1037 (9th Cir. 2017). Therefore, ViSalus customers and promoters who give out their information in the communications tab or on a paper customer form or promoter application before October 26, 2013 and received a call before that date had consented to being called. Having to ferret out the date when each member consented to being called as compared to the date the person was called means that individual issues predominate, and the class is not manageable and therefore a class-action is not superior. *See Gannon v. Network Tel. Servs., Inc.,* No. 12–9777–RGK, 2013 WL 2450199, at *2–3 (C.D.Cal. June 5, 2013) (finding in a situation where the defendant provided evidence that some of the putative class members may have provided consent to text messages that the proposed TCPA class was "unascertainable and unidentifiable" because the class definition would require individualized inquiry into whether the class members consented); *see also Warnick v. Dish Network LLC,* 301 F.R.D. 551, 559 (D. Colo. 2014) (denying certification because the alleged do-not-call class included individuals who consented to be called, and therefor was overbroad, as well as not sufficiently ascertainable); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 235–35 (S.D.Ill.2011) (finding in TCPA case that class was not sufficiently defined and was overbroad where plaintiff, who was called because he had a telephone number that previously belonged to a customer of the defendant, sought to certify a class that included "a substantial number of people who voluntarily gave their telephone numbers" to the defendant, and determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an unmanageable task").

### E. Plaintiff Fails to Establish That the Oregon Stop Calling Class Meets the Rule 23 Requirements.

The Oregon Stop Calling Class fails in many respects.

    1.   <u>Plaintiff has not established commonality, nor predominance of common issues over individualized questions.</u>

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

In order to attempt to establish common questions and predominance, the Motion wrongly asserts that ViSalus, as a matter of course, disregarded stop calling requests. But there is no evidence to support this assertion. As set forth above, ViSalus *did not include* numbers on its call lists for which the person had requested not to be contacted. *See* § II.B. Thus, the evidence is that the calls to the Wakefield Number were an aberration. Whether a person received multiple calls from ViSalus after requesting to not be called will require individualized proof, and thus Rule 23(b)(3)'s superiority and predominance elements are unmet. *See* § III.C.3., *supra.* Plaintiff theorizes that the class could be determined by looking at the list of consumers who live in Oregon and ViSalus's internal do-not-call lists and compare that to who was called. However, she has not established that ViSalus's internal do-not-call records indicate *when* the person requested to not be called. Therefore, comparing the do-not-call lists to contact lists does not establish that a call was made after the person asked ViSalus to stop calling.

Furthermore, there will be individualized inquiries as to whether each class member had an ascertainable loss (a requirement for a claim under ORS 646.648). Plaintiff claims that the loss to each class member is the amount of time it took for the person to answer the call. Dkt. 36, ¶ 61. This will require an inquiry into whether each person actually answered the call. Other alleged ascertainable losses raised by Plaintiff are the wear and tear imposed on the telephone equipment. *Id.* It is entirely unclear what Plaintiff means - how can a call cause wear and tear on a telephone? But in any case, such a theory would involve an individualized inquiry into the condition of the telephone (assuming the class member even still has the telephone) before the call from ViSalus and afterward. Plaintiff also lists as damage the "diminished utility of their paid-for telephone service plan." *Id.* Again, it is unclear what Plaintiff means when the called party does not pay for each minute nor each call, but rather, a regular monthly fee. In any case, again, this would involve an individual inquiry into each individual's telephone subscriber plan and how, if at all, the person had to pay any more because of the telephone calls from ViSalus. Thus, Plaintiff has not established that there are common questions of fact, and has certainly not established that such

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

common questions would predominate and make a class action the superior vehicle for such claims.

### 2. Plaintiff's claim is not typical of the class claims.

The element of typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-505 (2005)) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). A plaintiff fails to demonstrate that her claim is sufficiently typical of the class claims if the proof of the named plaintiff's claims does not resolve the class claims. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982). Plaintiff has no proof that she communicated to ViSalus in April 2015 that she wished to not be called. She asserts that she communicated that message on April 9, but there was no call from ViSalus on April 9, 2015. *See* § II.E., *supra*. ViSalus has no record of her requesting to not be called. *Id.* Also, Plaintiff asserts that she tried unsuccessfully to be put on the ViSalus DNC list through the automated telephone system, but that it did not work. *Id.* Therefore, to the extent Plaintiff purports to represent a class of called parties who *had* requested that ViSalus not call them, she has not demonstrated that she is typical of that class.

Additionally, the Complaint seeks punitive damages. Dkt. 36, ¶¶ 37, 62. The Motion asserts that Plaintiff only seeks statutory damages. Motion, at 24. To the extent Plaintiff has not withdrawn the punitive damages claim, a class would not be certifiable because for punitive damages, each person would have to demonstrate by clear and convincing evidence that ViSalus acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm, and acted with conscious indifference to the health, safety and welfare to each person. *See* ORS 31.730(1).

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

3.    Plaintiff has not demonstrated numerosity.

Plaintiff has not established numerosity because although she provided a list from a Winback contact list of Oregon residents, she has no estimate as to how many of people requested to not be called and had received more than one phone call after making a stop-calling request. *See Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 333, 336 (D. Or. 1988) (requiring a "reasonable estimate" of the class size). Plaintiff makes a great leap: because the campaign was called a "win back", these individuals *must* have requested to not be called. There is no basis for this presumption. As Mr. Call testified, ViSalus's Winback campaigns focused on individuals who had made a purchase within the past three to nine months, and that these campaigns were conducted *because* they were successful, as a number of the call recipients *did* want to reengage with ViSalus. Call Dep. at 41, 95-96, 98, 112.

IV.    **CONCLUSION**

For all of the foregoing reasons, ViSalus respectfully requests the Court deny the Motion and refuse to certify any of the three putative classes.

DATED this 24th day of March, 2017.

QUARLES & BRADY LLP

*/s/ Sarah R. Anchors*
Sarah R. Anchors (pro hac vice)
sarah.anchors@quarles.com
Telephone: 602.229.5200
Facsimile: 602.229.5690

MILLER NASH GRAHAM & DUNN LLP
Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

Jonathan H. Singer, OSB No. 105048
jonathan.singer@millernash.com
Telephone: 503.224.5858
Facsimile: 503.224.0155

*Attorneys for Defendant*

QB\44770240.1

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendant's Opposition to Plaintiff's Renewed Motion for Class Certification Stay on:

Scott F. Kocher
FORUM LAW GROUP LLC
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Telephone: 503.445.2102
Fax: 503.445.2120
E-mail: scott@forumlawgroup.com

*Attorneys for Plaintiff*

Rafey S. Balabanian (*pro hac vice*)
Eve-Lynn Rapp (*pro hac vice*)
Stewart R. Pollock (*pro hac vice*)
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Fax: 415.373.9435
E-mail: rbalabanian@edelson.com
        erapp@edelson.com
        rpollock@edelson.com

*Attorneys for Plaintiff*

Stefan L. Coleman
Law Offices of Stefan Coleman, LLC
201 S. Biscayne Blvd., 28th Floor
Miami, Florida 33131
Telephone: 877.333.9427
Fax: 888.498.8946
Email: law@stefancoleman.com

*Attorneys for Plaintiff*

by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

DATED this 24th day of March, 2017.

*/s/ Sarah R. Anchors*
Sarah R. Anchors (pro hac vice)
Attorneys for Defendant

Quarles & Brady LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
2 N. CENTRAL AVE.
RENAISSANCE ONE
PHOENIX, AZ 85004-2391