**Joshua M. Sasaki**, P.C., OSB No. 964182
josh.sasaki@millernash.com
**Nicholas H. Pyle,** OSB No. 165175
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

**Sarah R. Anchors** (admitted pro hac vice)
sarah.anchors@quarles.com
Quarles & Brady LLP
2 N. Central Ave.
One Renaissance Square
Phoenix, AZ 85004
Telephone: 602.229.5200
Facsimile: 602.229.5690

Attorneys for Defendant ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**VISALUS, INC.**, a Nevada corporation,<br><br>Defendant. | CV No. 3:15-cv-01857-BR<br><br>DEFENDANT VISALUS, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE PLAN |

Defendant ViSalus, Inc. ("ViSalus") hereby responds to Plaintiff's Motion for Approval of Class Notice Plan (Doc. 93, the Motion).

Page 1 -   DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1   APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

# MEMORANDUM OF LAW

## INTRODUCTION

ViSalus has four objections to the notice plan. First, the Motion is problematic based on how it approximates that notice should be made to subscribers for approximately 1.937 million telephone numbers. (Doc. 93, at 2; Doc. 93-1, ¶ 7.) Plaintiff has not explained *how* she reached the 1.937 million number (and did not respond to undersigned counsel's request for clarification). Plaintiff states that these telephone numbers are derived from ViSalus's records of telephone calls that it made, produced in response to discovery requests. Such records include both marketing and *non-marketing* telephone calls (such as calls to purchasers that the credit card number provided did not work). Plaintiff's Motion does not state whether she eliminated non-marketing telephone calls in compiling the list of approximately 1.937 million telephone numbers. Plaintiff also does not address eliminating from the list of telephone numbers instances where the call ended without a person or an answering machine or voicemail picking up the line, or calls that did not even go through. The Robocall Class is limited to those who received a marketing message with an artificial voice or prerecorded message. (Doc. 81.) Calls that were never picked up *could not* have resulted in the called-party receiving a prerecorded message, and therefore these call recipients would not be in the Robocall Class. As a result, estimates about the available mailing addresses and email addresses for the Robocall Class cannot be accurately calculated at this point.

Second, ViSalus opposes the plan to only notify potential class members by email. Plaintiff has the mailing addresses for nearly half of the estimated potential class members (using the 1.937 million figure), and can obtain additional mailing addresses through reverse directory lookups from the telephone numbers. (Doc. 93-1, ¶¶ 8, 10.) Courts have long considered mailing the best way to notify potential class members. Therefore, ViSalus requests that the Court order Plaintiff to mail notice to class members. Plaintiff's Class Notice Plan does not

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

mention who shall bear the cost of notice. Case law is clear that the cost is Plaintiff's burden, and requiring mailing notice does not shift that burden.

Third, even though Plaintiff admits she has mailing address and/or email addresses for more than 88% of the potential class members, she proposes Google banner ads. Those ads would sweep broadly, reaching many people who would not be part of the class, thereby potentially causing confusion and needlessly raising the cost of administration.

Fourth, ViSalus objects to certain language in the proposed notice, banner ad and website because it mischaracterizes the law and claims.

## I. PLAINTIFF'S PLAN APPEARS TO SEND INDIVIDUAL NOTICE TO NON-CLASS MEMBERS.

ViSalus produced spreadsheets of telephone numbers called for marketing and non-marketing purposes that may have used a prerecorded message or artificial voice. Plaintiff estimates that these records have 1.937 million telephone numbers. (Docs. 93, at 2 n.1, 93-1, ¶ 7.) Plaintiff's Motion does not set forth whether this 1.937 million number includes those non-marketing calls, or from what spreadsheets she derived this 1.937 million number. There is no basis for sending individual notice to people whose telephone numbers appear in the non-marketing phone call records because they would not be members of the Robocall Class.

Also, many of the spreadsheets of telephone calls made for marketing purposes have a "disposition" column, wherein it states the result of each call. Dispositions include the call did not go through; or the call rang and there was no answer.[1] Obviously, if the call did not go through or there was no answer or answering machine, then a prerecorded message or artificial voice could not have been played and the called party would not be a member of the Robocall

---

[1] This is a different issue from that addressed in the Motion (Doc. 93, at 4 n.3) of there being spreadsheets of telephone calls that do not have disposition codes, and for which ViSalus cannot definitively state that each of the telephone numbers on that list were called.

Page 3 -    DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN
QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

Class. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA [47 U.S.C. § 226(b)(1)(A)(iii)]. Instead, the prerecorded voice must 'speak' during the call."). There is no indication that Plaintiff subtracted these calls from the estimated 1.937 million. Thus, Plaintiff's proposed plan would send individual notice to called parties who would not be in the Robocall Class. These two issues would cause confusion, increase the expense of notice, and potentially increase the cost of administering claims. *See Yeoman v. Ikea U.S. West, Inc.*, No. 11cv701, 2013 WL 5944245, at *6 (S.D. Cal. Nov. 5, 2013) (refusing to approve the plaintiffs' request that the defendants send e-mail notice to an overbroad list of customers, noting that there was "no link between individuals who may have provided their email addresses" and the relevant class)[2]; *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 546 (N.D. Ga. 1992) (noting that overbroad notice "would most likely confuse the recipients and encourage claims by non-class members").[3] Accordingly, the Court should require Plaintiff to: (a) remove from the list of telephone numbers (if not already removed) all non-marketing calls; and (b) remove from the list of telephone numbers all calls that did not result in a person or an answering machine/voicemail answering the phone.

## II. NOTICE SHOULD BE MAILED TO POTENTIAL CLASS MEMBERS, AT PLAINTIFF'S COST.

### A. Mailing is the Best Notice Practicable.

As Plaintiff recognizes, Federal Rule of Civil Procedure 23(c)(2)(B) requires that the

---

[2] The court approved notice by posting a poster at certain Ikea stores because there was no way to link the emails with individual putative class members. 2013 WL 5944245, at **4-5.

[3] The court approved instead notice by publication only because, unlike here, there was no reasonable way to identify class members. 141 F.R.D. at 548.

Page 4 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

Court approve notice to the class members by "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Federal Judicial Center directs that a "high percentage (e.g., between 70-95% [of class members]) can often reasonably be reached by a notice campaign," and that 87% is the median for approved plans. *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2011) (*"Judges' Checklist"*), at 1, 3.

It is well-established that first-class mail directed to the last known addresses of the class members is the best notice practicable to ensure that proper notice is received by the class members. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("In the present case, the names and addresses of 2,250,000 class members are easily ascertainable, and there is nothing to show that individual notice cannot be mailed to each. For these class members, individual notice is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2) and our prior decisions."); *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (finding that class members who received written notice, even though some were undelivered, received the "best notice that is practicable under the circumstances"); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571, 2009 WL 855799, at *8 (S.D.N.Y. Mar. 31, 2009) ("Individual notice, generally by first-class mail, is mandated for all class members who can be identified with reasonable efforts. However, where the identification of class members is not possible, courts may approve other methods, including publication, as 'the best notice practicable under the circumstances.'"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630–31 (D. Colo. 2002) ("Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

proper notice is received by the potential class members."). Likewise, the *Judges' Checklist* states that mailing is preferred, even where it may be "difficult," but is not unreasonably burdensome because the addresses are within the defendant's records.

Courts have rejected attempts to substitute email for postal notice because the latter preserves the integrity of the process and provides the best chance that the notice will reach those, and only those, who should receive notice. *See* 1 McLaughlin on Class Actions § 5.81 (4th ed.).

> Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members. . . . Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience. In contrast, electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.

*Reab*, 214 F.R.D. at 630-31. The *Judges' Checklist* is in accord: "If available, parties should use postal mailing addresses, which are generally more effective than e-mail in reaching class members: mail-forwarding services reach movers, and the influx of 'SPAM' e-mail messages can cause valid e-mails to go unread." *Id.* at 3. *See also Huyer v. Wells Fargo & Co.*, No. 4:08-CV-00507, 2014 WL 12696857, at *4 (S.D. Iowa Oct. 17, 2014) (finding that other than being cheaper, email notice was not superior or more practicable, and therefore first-class mail remains the "best notice practicable under the circumstances" under Rule 23(c)(2)); *Sharma v. Burberry*

Page 6 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

*Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) (citing *Karvarly, infra,* and *Reab,* and finding that "the universe of collective action members is limited and first-class mail is an adequate means to disseminate the Notice" and therefore email notice was denied); *Cantu v. Milberger Landscaping, Inc.*, No. SA-13-CA-731, 2013 WL 12101104, at *4 (W.D. Tex. Nov. 22, 2013) (citing *Reab* and ordering the notices be sent via first-class mail rather than email); *Espenscheid v. DirecStat USA, LLC*, No. 09-cv-625-bbc, 2010 WL 23330309, at *14 (W.D. Wis. June 7, 2010) (rejecting the plaintiff's request to serve notice via email because "of the potential for recipients to modify and re-distribute email messages"); *Hintergerger v. Catholic Health Sys.*, 08-CV-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009) (rejecting the plaintiff's request to provide notice by email and ordering notice by first-class mail); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (finding that although email notice may be more convenient and cheaper, it was not an adequate substitute for mailing notice to class members).

Plaintiff has 46.10% of the potential class members' postal addresses. (Doc. 93-1, ¶ 7.)[4] Plaintiff's consultant proposes using a reverse directory search to find postal addresses, but does not state a success rate for this process. (*Id.* ¶ 8.) Rather than sending postal mail to all of these potential class members for whom Plaintiff has addresses, she instead proposes using the mailing addresses to find email addresses for potential class members. (*Id.* ¶ 10.) Plaintiff's consultant estimates that it would only be able to obtain email addresses for 63% of the mailing addresses it processes. (*Id.*) Therefore, Plaintiff would likely have *more* postal mailing addresses through this process than email addresses. And yet, without explaining her reasoning other than it would

---

[4] The Motion misstates the percentage of mailing addresses. The Declaration of Carla Peak, Plaintiff's consultant, states that of the 1.937 million telephone numbers, she has email and postal addresses for 220,000 and only postal addresses for another 673,000 (totaling 893,000). (Doc. 93-1, ¶ 7.) 893,000 is 46.10% of 1.937 million. Therefore, Plaintiff's statement that she has mailing addresses for approximately 34.7% of the pool is inaccurate. (Doc. 93, at 5 n.4.)

Page 7 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN
QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

be less expensive, she asserts that email notice is the best practicable method of notice. Overall cost is not a basis for shifting the cost of notice, as discussed below. And the fact that any individual may only receive a small amount of compensation, should Plaintiff succeed, does not mean that individual mailed notice is not required under Rule 23. *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 61 (D. Conn. 2001), *on reconsideration* (May 11, 2001) (rejecting the argument that because individual recovery was so small, notice by mailing was unnecessary, and citing *Eisen*, 417 U.S. at 176, stating that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23").

Plaintiff's citations are unavailing. She cites *Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006), where the court approved email notice. However, in that case, the court found that notice to the settlement class was "particularly suitable in this case" *because the class allegations arose from* the class members' visits to the defendant's websites, demonstrating their familiarity and comfort with email. *Id.* at *8. Plaintiff also cites *Bruno v. Quten Research Institute, LLC*, 2012 WL 12886843, at *5 (C.D. Cal. July 16, 2012), but that decision likewise approved individual notice by email *because the class members purchased the accused product online.* This case is different from *Browning* and *Bruno*. The class allegations do not arise from email or online purchases. Rather, they arise from ViSalus's telephone calls to the alleged class members. Therefore, email notice is not "particularly suitable" here.[5]

Accordingly, there is no reason for the Court to allow Plaintiff to use the less-effective method of email notice. Therefore, ViSalus requests that the Court deny Plaintiff's plan for

---

[5] Also, the *Browning* court approved notice by U.S. Mail to class members where the emailed notice bounced back to the sender. *Id.* Plaintiff makes no such proposal to handle such inevitable bounce-back email notices.

Page 8 -    DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN
QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

notice by email alone, and instead require Plaintiff to use first-class mail to notify potential class members.[6]

### B. Requiring Notice be Mailed Does Not Alter the Cost Burden.

Plaintiff's notice plan does not mention who will bear the cost of notice, however, Plaintiff's counsel informed defense counsel that should ViSalus oppose the notice plan, Plaintiff reserves the right to seek to have ViSalus share the cost of notice.[7] Providing notice is a class plaintiff's burden, and requiring mailing notice rather than emailing does not shift that burden. As the U.S. Supreme Court has said, "ordinarily there is no warrant for shifting the cost of" class notice to the defendant. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978); *see also, Eisen*, 417 U.S. at 176, 178–79 ("Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit," even though there were 2.25 million class members). Plaintiff has not argued that she could not afford the cost of notice. But even if she did, "[t]he mere fact that a plaintiff cannot bear the cost of notice does not indicate that the defendant must pick up this bill. The desire to implement the class action device effectively must always be balanced by the fear that excessive concern for the financial interests of the plaintiff may result in the imposition of unwarranted expenses upon the defendant." *Herbst v. Int'l Tel. & Tel. Corp.*, 65 F.R.D. 13, 20 n.17 (D. Conn. 1973), *order aff'd*, 495 F.2d 1308 (2d Cir. 1974); *see also Eisen*, 417 U.S. at 176 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the

---

[6] Pursuant to the *Judges' Checklist*, such a postal mailing should have markings to distinguish it from junk mail, such as a reference to the court's name, and call-outs on the front and back to encourage the recipient to promptly review it. *Judges' Checklist*, at 10.

[7] Should Plaintiff's reply brief request cost of notice be shared, ViSalus expects to request to file a surreply.

Page 9 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN
QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX AZ 85004-2391

pocketbooks of particular plaintiffs.").

Courts only shift the cost of notice in unusual circumstances, such as where the court has entered summary judgment against the defendant before notice is sent. *See, e.g., Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009), *cert. denied*, 558 U.S. 826 (2009) ("District courts may order a class action defendant to pay the cost of class notification after they determine that the defendant is liable on the merits."). However, the Supreme Court has admonished "that courts must not stray too far from the principle . . . that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund*, 437 U.S. at 359. Therefore, the notice plan should require Plaintiff pay for providing class notice.

### III. BANNER ADS ARE NOT APPROPRIATE FOR NOTICE.

Plaintiff estimates that she has mail and email addresses for about 1.713 million of the estimated total 1.937 million telephone numbers – or 88.44% of what she estimates are the total potential class members. (Doc. 93-1, ¶ 7.)[8] She can obtain additional postal mailing addresses through reverse-lookups. (*Id.* ¶¶ 8, 10.) Also, the percentage of addresses of the class members may be even higher considering the error in using the 1.937 million figure. *See* Sec. I, *infra*. Even though she has *and can use reverse directory lookups to obtain more than enough* addresses for individual notice – more than that required by the *Judges' Checklist* and more than the 87% median in approved class notice plans – Plaintiff still proposes Google banner-ads to reach those who do not receive individual notice. True, there is the potential that someone who did not receive individual notice and would be in the Robocall Class could see the Google banner

---

[8] Plaintiff states that she has approximately: 220,000 telephone numbers with email and postal addresses only; 820,000 numbers with email only; and 673,000 with postal addresses only, for a total of 1.713 million.

Page 10 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

ad. But more harm is done by the banner ad than good because such ads would indiscriminately reach a very broad audience. Plaintiff proposes purchasing 43 million internet impressions, which would "target" adults. (Doc. 93-1, ¶ 11.) Where we have a finite list of individuals of about 1.9 million potential class members, there is no reason to cast a broad net to potentially 43 million non-class members. The banner ads could cause confusion and increase the cost of administration due to non-class members filing claims, and would unnecessarily tarnish ViSalus's reputation. *See Yeoman*, 2013 WL 5944245, at *4 (rejecting the plaintiffs' request that the defendants "post[] [class action] notice at each point-of-sale location" because doing so "would encourage inquiries by non-class members, which could interfere with [the defendants'] reputation and business"); *Mark v Gawker Media LLC*, No. 13-cv-4347, 2015 WL 2330079, at *1 (S.D.N.Y. Mar. 5 , 2015) (rejecting an overinclusive notice scheme because its primary effect would be to "advertise the alleged violations by Defendants"); *Tylka v Gerber Products Co.*, 182 F.R.D. 573, 578-59 (N.D. Ill. 1998) (rejecting plaintiff's plan to publish notice of a class action suit involving Illinois class members in nationwide newspapers; such overbroad notice appeared to be designed to "club [the defendant] into submission," not to actually notify potential class members of the plaintiff's claim).

Courts limit banner ads for notice where the plaintiff *did not have the addresses for individual notice. See, e.g.,* Brown v. 22nd Dist. Agricultural Ass'n, No. 15-cv-2578-DHB, 2017 WL 2172239, at *4 (S.D. Cal. May 17, 2017) ("Notice by publication is used when the identity and location of class members cannot be determined through reasonable efforts."); *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, 2014 WL 1266091, at *7 (N.D. Cal. Mar. 26, 2014) (Because the "size and nature of the class renders it nearly impossible to determine

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX AZ 85004-2391

exactly who may qualify as a class," the court approved a notice plan involving Internet banner ads and articles in the press). The *Judges' Checklist* agrees, stating that *if* the proposed mailings will not reach a sufficiently high percentage of the class, then publication may be used. *Judges' Checklist*, at 3. Because Plaintiff has an address or can derive an address for nearly all of the Robocall Class, banner ads are not warranted.

Plaintiff's reliance on *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) is misplaced. (Doc. 93, at 6.) There, the court approved a print and media notice campaign to reach individuals for whom the defendant did not have contact information. There is no such concern here because as discussed above, Plaintiff has, through ViSalus's records and reverse look-ups, mail and email addresses for nearly all of those whose phone numbers appear on ViSalus's calling spreadsheets. Plaintiff's reliance on *Flynn v. Sony Electronics, Inc.*, No. 09-CV-2109-BAS, 2015 WL 128039 (S.D. Cal. Jan. 7, 2015) is likewise misplaced. There, the plaintiff's firm estimated that it could only reach *38.86% of the class members* through individualized notice. *Id.* at *1. Therefore, the plaintiff proposed notice by publication in *People* magazine and the *Los Angeles Daily News* to reach another 43.04% of the class members. *Id.* Again, here, Plaintiff has no need to employ notice by publication because the best practicable notice can be accomplished through individual notice.

Accordingly, ViSalus respectfully requests that the Court deny Plaintiff's request to employ Internet banner advertisements.

### IV. THE LANGUAGE OF THE PROPOSED NOTICE REQUIRES REVISIONS.

The language for class notice must be clear and concise in how it explains, *inter alia*, the nature of the action, the certified class, and the class claims and defenses. *See* Fed. R. Civ. P. 23;

Page 12 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

*see also Judges' Checklist*, at 5. ViSalus requests the following changes to the notice language for the reasons discussed below.

### A.     Use "prerecorded" rather than "automated" or "robocalling."

The proposed email, banner advertisement and website all use the term "automated telephone call" (Doc. 93-1, at 22, 25, 27-30); and in one instance "robocalling" (*id.* at 27) and another instance "robotic voice" (*id.* at 22). While part of the TCPA addresses the use of an automatic telephone dialing system to make telephone calls to cellular telephones (47 U.S.C. § 227(b)(1)(A)), this lawsuit – and importantly, the definition of the Robocall Class – does not involve that prohibition in the TCPA. Rather, the litigation and the certified class is limited to marketing telephone calls that delivered a prerecorded message or artificial voice. (Doc. 81, at 6.) Therefore, the use of "automated telephone call," "robocalling" and "robotic voice" in the notice language is misleading and confusing. Instead, the notices should always be clear that class members must have received a marketing call with a prerecorded message or artificial voice.

### B.     Use "prior express consent" rather than "written consent" or "unsolicited."

The TCPA requires that a caller using a marketing prerecorded message or artificial voice obtain the "prior express consent" of the called party. 47U.S.C. § 227(b)(1)(A), (B). What suffices as "prior express consent" is subject to interpretation by the FCC and the Courts, and has evolved over time. The sufficiency of the written consent is at issue in this litigation. (Doc. 74, at 34-35.) The notice, at times, uses the term "prior written consent" and variations thereof. (Doc. 93-1, at 22, 27.) To be clear, pursuant to Rule 23, the term should always be "prior express consent."

Page 13 -    DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1    APPROVAL OF CLASS NOTICE PLAN
QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

The notice also uses the word "unsolicited." (Doc. 93-1, at 29, 30.) The TCPA specifically defines "unsolicited advertisement," but that phrase *is only used* in reference to *faxed advertisements*. 47 U.S.C. § 227(a)(5), (b)(1)(C)–(G). Therefore, the use of the term "unsolicited" could confuse notice recipients, and fails to meet the requirement that notice be clear. "Unsolicited" should be removed from the notice language.

### C.     Delete "on behalf of ViSalus."

The notice language refers at times to calls being made "by or on behalf of ViSalus." (Doc. 93-1, at 22, 27, 29.) However, as ViSalus has repeatedly made clear, the calls at issue were made by ViSalus – not some third party. ViSalus did not hire a call-center. All of the telephone call spreadsheets ViSalus produced and that Plaintiff refers to in the Motion as being 1.937 million calls are calls by ViSalus. There has not been any evidence produced regarding any third party making calls on ViSalus's behalf. (*See* Doc. 74, at 20-21.) Accordingly, the phrase "on behalf of ViSalus" should be removed because it may cause confusion to notice recipients and violate Rule 23(c)(2)(B)'s mandate that notice be clear.

### D.     Two points in the Basic Information on the proposed website.

Section 4 of the "Basic Information" for the proposed website states that the Court specifically found that "Thousands of individuals allegedly received the automated calls and are Class Members." (Doc. 93-1, at 28.) But the Court's Order on classification does not make this finding, and so it should be removed. The Court only specifically stated that the proposed Robocall Class met the Rule 23 requirements. (Doc. 81, at 19.)

Section 10 of the "Basic Information" informs recipients that they may be part of the class if they received an automated telephone call and have certain documentation of the call.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

(Doc. 93-1, at 29.) That paragraph should warn recipients that the Court has not determined whether any of the identified documentation is sufficient evidence for a class member to demonstrate damages and assert a claim for compensation.

## **CONCLUSION**

For all of the foregoing reasons, ViSalus requests that the Court only approve the class-notice plan with the modifications discussed above and summarized below:

1. Eliminate from the list of potential class members to receive individual notice telephone numbers where the call did not go through, or the phone rang and no person, voicemail or answering machine responded, and any that are drawn from lists of non-marketing campaigns.

2. Require individual notice by U.S. Mail, First Class, paid for by Plaintiff.

3. Revise the language of the notices as discussed in Section IV, *supra*.

DATED this 10th day of November, 2017.

QUARLES & BRADY LLP

By /s/ *Sarah R. Anchors*
Sarah R. Anchors (*Pro Hac Vice*)
sarah.anchors@quarles.com
Telephone: 602.229.5200
Facsimile: 602.229.5690

MILLER NASH GRAHAM & DUNN LLP
Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Defendant ViSalus, Inc.

Page 15 - DEF'S RESP. TO PL'S MTN. FOR
QB\49115077.1 APPROVAL OF CLASS NOTICE PLAN

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

I hereby certify that I served the foregoing Defendant ViSalus, Inc.'s Response to Plaintiff's Motion for Approval of Class Notice Plan on:

Scott F. Kocher
Stephen Joseph Voorhees
FORUM LAW GROUP LLC
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Telephone: 503.445.2102
Fax: 503.445.2120
Emails:
scott@forumlawgroup.com
stephen@forumlawgroup.com
*Attorneys for Plaintiff*

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S. Biscayne Blvd.
28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946
Email: law@stefancoleman.com
*Attorneys for Plaintiff*

Rafey S. Balabanian (*pro hac vice*)
Benjamin H. Richman (*pro hac vice*)
Eve-Lynn Rapp (*pro hac vice*)
Lily Hough
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: 312.589.6370
Fax: 312.589.6378
Emails:
rbalabanian@edelson.com
brichman@edelson.com
lhough@edelson.com
erapp@edelson.com
*Attorneys for Plaintiff*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.** As required by Local Rule 5-11(b), any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

Page 1 -   Certificate of Service
QB\49115077.1

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX, AZ 85004-2391

DATED this 10th day of November, 2017.

/s/ Sarah R. Anchors
Sarah R. Anchors (*Pro Hac Vice*)

Attorneys for Defendant ViSalus, Inc.

Page 2 -   Certificate of Service
QB\49115077.1

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TELEPHONE: 602.229.5200
ONE RENAISSANCE SQUARE
2 N. CENTRAL AVE.
PHOENIX AZ 85004-2391