Scott F. Kocher, OSB#015088
Stephen J. Voorhees, OSB#150595
FORUM LAW GROUP
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2120
Fax: 503.445.2120

Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

* Admitted *pro hac vice*

(additional counsel listed on signature page)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| **LORI WAKEFIELD**, on behalf of themselves and a class of others similarly situated,<br><br>     *Plaintiff*,<br>  v.<br><br>**VISALUS, INC.**, a Nevada Corporation,<br><br>     *Defendant*. | No. 3:15-cv-01857 |

## JOINT PROPOSED PRETRIAL ORDER

Plaintiff Lori Wakefield and Defendant ViSalus Inc. ("Defendant" or "ViSalus," and collectively, the "Parties"), by and through their counsel, respectfully submit this Joint Proposed Pretrial Order (the "Order"). The Parties state that each category in Rule 16-5(b) of the Local

1

Rules of Civil Procedure for the District of Oregon and the Court's Standing Order (Dkt. 87) have been considered and included in this proposed Order.

1.  **Nature of the Action**

This case is a certified class action. It involves two counts[1] against ViSalus (one on behalf Plaintiff and the certified class and the other on behalf of Plaintiff, individually) for violating a federal law that prohibits certain outbound telemarketing calls. Specifically, Plaintiff Lori Wakefield, on behalf of herself and other similarly situated individuals, alleges that ViSalus violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating telemarketing calls featuring a prerecorded message or artificial voice to individuals' residential landlines or cellular telephone lines without their prior express consent. (*See* Dkt. 36, FAC, Count II.) Plaintiff, individually, also alleges that ViSalus violated the TCPA by initiating, without her consent, more than one telemarketing call within a 12-month period to her landline telephone number that had been registered with the National Do Not Call Registry (the "DNC Registry") for at least 30 days in violation of 47 C.F.R. § 64.1200(c). (*Id.*, Count I.) The TCPA affords statutory damages in the amount of "$500 per call" for initiating telemarketing calls using a prerecorded message or artificial voice without prior express written consent from the recipient, 47 U.S.C. §§ 227(b)(3)(B)-(C), and "up to $500 per call" for violating the Do Not Call regulations, 47 U.S.C. § 227(c)(5), which both may be trebled at the Court's discretion if the Court finds that ViSalus's conduct was committed willfully or knowingly. *See* 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).

---

[1]  Although the First Amended Complaint (the "FAC") alleges other claims, at trial, Plaintiff only intends to pursue Count I, individually, and Count II on behalf of herself and the Certified Class.

On June 23, 2017, the Court certified a class comprised of, "all individuals in the United States who received a telephone call made by or on behalf of ViSalus: (1) promoting ViSalus's products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither ViSalus nor its agents had any current record of prior express written consent to place such call at the time such call was made" (the "Certified Class"). (Dkt. 81.)

ViSalus has raised affirmative defenses but no counter claims. (*See* Dkt. 41, Amended Answer to FAC.) Plaintiff has demanded a jury trial. This case has not been assigned to a magistrate judge and, therefore, the Parties have neither consented to trial by a magistrate judge nor is such consent applicable.

**2.      Jurisdiction**

This Court has federal question jurisdiction to hear Plaintiff and the Certified Class's claims in this case pursuant to 28 U.S.C. § 1331. Jurisdiction in this matter is not disputed.

**3.      Agreed Facts**

The following statement of facts was previously submitted to this Court on April 20, 2018 in the Parties' Joint Statement of Undisputed Material Facts (Dkt. 108), but recited here again for the Court's convenience. Additionally, Paragraph 28 represents one additional fact subsequently agreed to by the Parties during the course of their recent meet and confers. Pursuant to Local Rule 16-5(b)(3), the Parties have indicated with an asterisk (*) those facts where relevance is disputed.

**I.      Parties, Venue, and Jurisdiction**

1.      Plaintiff Lori Wakefield is a citizen of Oregon and a resident of Clackamas County.

2. Defendant ViSalus is a Nevada corporation with a principal place of business in Michigan. ViSalus conducts business throughout this District and the United States.

3. The Court has jurisdiction under 28 U.S.C. § 1331, because the case arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts* [ViSalus disputes the words "significant amount" are relevant] of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## II. ViSalus's Business Model

5. ViSalus is a multi-level marketing company, also known as direct selling or network marketing, that sells weight-loss products and dietary supplements. Such products have included at times a variety of "kits"—such as the "Balance Kit," "Shape-Kit," "Core Kit," "Transformation Kit," and "Challenge Kit," combining different products depending on customer choice—that customers choose based on what kind of result they're looking for, from losing weight to building muscle.

6. ViSalus makes money primarily through its "promoters," independent contractors who sell ViSalus products through their own business networks.* [As ViSalus does not dispute that it directly made the calls at issue, Plaintiff disputes that the agency relationship between ViSalus and "promoters" is relevant.]

7. ViSalus supports and incentivizes promoters by building value in its products, opportunities and company, providing training and workshops, creating collateral marketing materials to help promoters sell the products, and offering enticing rewards for the highest-

4

ranking promoters, such as a $300 additional bonus if the qualifying promoter purchased a qualifying BMW.* [ViSalus disputes that this is relevant.]

8.     Promoters must enroll with ViSalus, which requires submitting a promoter application either online (through ViSalus's website) or in print (and that information is manually entered into ViSalus's computer system). Consumers may purchase products directly from ViSalus by submitting a purchase form either through ViSalus's website or on a print form.

9.     Whether submitted online or in print, the promoter applications are identical and the process for enrollment has been the same since 2011.

10.    All active ViSalus promoters have access to an online "Vi-Net" account (provided they pay the fee for a Vi-Net account).

11.    ViSalus also maintains an internal online database—the "Exigo" system—which keeps live records of the information on individuals' Vi-Net accounts.

### III.    ViSalus's Calling Campaigns

12.    In June or July 2012, ViSalus created and employed a team of outbound calling agents collectively referred to within the company as "Outbound Support."

13.    Although the original purpose of Outbound Support was to contact people who had attempted to purchase products but whose credit cards were declined, the agents eventually began to call customers to inform them of various marketing campaigns.

14.    While these campaigns varied in topic, the calls were made for the same general purpose: to retain customers and generate revenue for ViSalus.

15.    The Outbound Support team initially dialed telephone numbers manually using an Avaya telephone system. However, sometime in or around 2013 or 2014, ViSalus updated its Avaya system with a feature called the Proactive Outreach Manager ("POM"), which enabled it

to place autodialed and agentless calls. ViSalus stopped conducting manually dialed mass-calling marketing campaigns once it had POM.

16.     In 2013, ViSalus began downsizing the company, reducing its overall number of employees.* [ViSalus disputes that this statement is relevant, and intends to file a motion in limine as this is prejudicial.]

17.     ViSalus placed calls through POM using a systematic two-step process: first, ViSalus created a contact list for the campaign, utilizing information from the Exigo system such as whether a customer had become "inactive;" then, an Outbound Support agent uploaded the contact list to POM and assigned it to run with the appropriate campaign.

18.     Once the contact list was uploaded to POM, the Outbound Support team could begin placing calls with the click of a button.

19.     With POM, ViSalus used two campaign strategies: "Press One" calls (where a prerecorded or artificial voice instructed customers to "press [1] to be connected to a live person now"), and "voice casting" calls (where an audio clip played a prerecorded callback message).

20.     "Press One" and "voice casting" calls were all placed through POM.

21.     ViSalus's process for placing prerecorded calls remained the same until the Outbound Support team was dissolved in January 2016.

### IV.     Plaintiff Wakefield

22.     Plaintiff Wakefield briefly signed up to be a ViSalus promoter in February 2012.

23.     Plaintiff Wakefield subsequently ended her affiliation with the company.

24.     Wakefield received calls from ViSalus in April 2015, but the exact number of calls received is in dispute.

25.     Each call was directed to the landline telephone that Wakefield registered with the National Do Not Call Registry on February 15, 2008. Each call was intended to sell ViSalus's products.

26.     At least two of the telephone calls may have been from a live person.

27.     Two of the telephone calls by ViSalus to the landline for the Wakefield residence in April 2015 may have used a prerecorded message.

28.     Wakefield received at least five calls from ViSalus between March 1, 2015 and May 30, 2015 when her number was on the DNC Registry, but the Parties do not agree on whether those calls were from a live person or contained an artificial or prerecorded voice.

29.     Wakefield operated a home daycare for children in April 2015.* [Plaintiff disputes that this statement is probative of any claims or defenses.]

30.     On April 8, 2015, Wakefield first contacted plaintiff's counsel Stefan Coleman by email through his website.* [Plaintiff disputes that this statement is probative of any claims or defenses.]

**4.     Claims and Defenses**

Plaintiff contends that ViSalus willfully violated the TCPA by (i) initiating calls that utilized an artificial and/or prerecorded voice to her on her residential telephone number, and to members of the Certified Class, on either their cellular telephone and/or their residential telephone numbers, without their informed written consent, and (ii) initiating more than one unsolicited telemarketing call to her residential telephone that was registered on the DNC Registry within a 12-month period.

The Parties agree that ViSalus placed the calls at issue, that the calls were placed for marketing purposes, and that at the time Plaintiff received the calls, her landline telephone number was registered on the DNC Registry.

**Plaintiff's Further Position on Claims and Defenses**[2]

Plaintiff claims that none of the TCPA's exceptions or exemptions apply in this case to absolve ViSalus of the liability described above. While it remains unclear exactly what specific exemptions or defenses ViSalus intends to assert as they continue to change their position up until the filing deadline, it appears to Plaintiff that ViSalus will argue that it should not be liable for the calls because Plaintiff cannot demonstrate that (i) ViSalus initiated calls to her residential landline telephone number because from time to time she also received phone calls regarding her home day care business on that telephone number, (ii) Plaintiff cannot proceed with her DNC Claim because ViSalus obtained the consent needed under the do-not-call regulations, (iii) Defendant did not willfully or knowingly place the calls at issue, and that (iv) as to the Certified Class's claims, there is no evidence that each and every class member (a) actually received a prerecorded message or artificial voice (b) on his or her residential or cellular telephone numbers as opposed to "business lines or residential landlines that were used primarily for business purposes."[3]

In regards to ViSalus's claim that ViSalus's calls do not violate the TCPA because they were made to a business line, Plaintiff disagrees. The subject telephone line is not specifically

---

[2] In setting forth its position, Plaintiff incorporates by reference the legal arguments made in the Proposed Verdict Form.

[3] While Defendant removed this quoted language from the Proposed Verdict Form at the last minute, it nevertheless maintained this position throughout the meet and confer process, including in its nearly final drafts of its position in this Proposed Pretrial Order provided to Plaintiff approximately 12 hours before the filing deadline.

registered as a business number. Plaintiff operates a daycare business out of her home, but the operation is small (three to four children) and informal (neither she nor the daycare are licensed), and since 2007 she has provided her number to a total of approximately eleven parents. At times, those parents have called her on both her landline and her cellular telephone to check in on their children or deal with other daycare-related matters, but those calls make up a small fraction of the calls that typically come through her landline, which are almost entirely personal in nature. That Ms. Wakefield testified that the calls were an irritation to Ms. Wakefield's home daycare business simply does not make her telephone number a business line.

Next, Defendant's claim that it had Plaintiff's express permission to call her so as to avoid liability on her DNC Claim is not appropriate.[4] As noted in the Proposed Verdict Form (which includes the supporting case law), ViSalus has not offered any factual basis to find that Ms. Wakefield "gave prior express written permission to ViSalus to call her," which is ViSalus's burden to prove. More importantly, ViSalus never raised the affirmative defense of consent in *any* of its responsive pleadings in a manner sufficient to give Plaintiff notice of such defense, and as a result, it has waived its right to do so now. To be sure, had ViSalus given Plaintiff adequate notice that it intended to assert such a defense, Plaintiff may have taken further discovery and would have certainly moved for summary judgment on this issue. ViSalus's failure to do so should not prejudice Plaintiff at trial.

Nevertheless, assuming ViSalus is able to assert its newly claimed consent defense (it shouldn't be), it doesn't have any facts to support it because ViSalus doesn't have (and has not produced) anything in writing, signed by Ms. Wakefield, as is required. Similarly, the idea that

---

[4] To be clear, ViSalus does not contend that it had the consent required to defend against Ms. Wakefield's prerecorded call claim.

9

JOINT PROPOSED PRETRIAL ORDER

Ms. Wakefield did not revoke her consent, simply is not true. To the contrary, Ms. Wakefield specifically testified to instructing ViSalus to stop calling her. That ViSalus does not have records of this is not compelling. This is particularly so given that ViSalus itself admits that it did not keep consistent records of call dispositions.

Next, ViSalus willfully and/or knowingly violated the statute because ViSalus was aware of its history of placing unwanted calls, it did not maintain reliable policies or practices for recording "do not call" requests and "scrubbing" its call lists against "do not call" requests, and it continued to place calls to Plaintiff and consumers even after they requested not to be called.

Finally, in regards to ViSalus's argument that Plaintiff cannot prove that she and all members of the Certified Class received a prerecorded call or artificial voice call, Plaintiff disagrees on many fronts. To start, Plaintiff has evidence that ViSalus placed prerecorded calls to each individual on the class list. Plaintiff is only required to show that ViSalus *initiated* a call with a prerecorded and/or artificial voicemail system, not that someone answered or received a voicemail to demonstrate a TCPA violation. *See* 47 U.S.C 227(b)(1)(A), (b)(1)(B) ("It shall be unlawful…to *make* any call [to a cellular phone]…[or] to *initiate* any telephone call to any residential telephone line…") (emphasis added). Nevertheless, and as ViSalus conceded during the meet and confer process, the only individuals on the Class List and for which Plaintiff and the Certified Class intend to hold ViSalus liable are those individuals "who could possibly have received a prerecorded message or artificial voice call because the person answered the call or an answering machine answered the call (per the disposition codes in ViSalus's records)."[5]

---

[5] This statement was also subsequently removed from Defendant's position at the last minute, but can be provided to the Court should it be necessary.

In terms of proving Plaintiff and the Class's claims more generally, Defendant's position is nothing more than a backdoor attempt to relitigate class certification. The class action procedure allows one person—the class representative—to file one lawsuit on behalf of a group of individuals who are similarly situated with similar claims. If the class is certified, the "plaintiff[ is] allowed to prove [his or her] claims by evidence which applies to the class as a whole, and do[es] not need to prove each class member's claim individually." 4 Newberg on Class Actions § 11:22(5th ed.). Here, Plaintiff has already met her burden of demonstrating that all the prerequisites for class designation are satisfied. (Dkt. 81.) It would be inappropriate—and contrary to the entire purpose of Rule 23—to require Plaintiff to demonstrate that each and every member of Certified Class received a telemarketing call from ViSalus that utilized an artificial or prerecorded voice on their residential or cellular telephone number. There are a number of management tools available to the Court to address any individual issues that may arise in a class action trial. For example (and as further explained in Plaintiff's position in the Proposed Verdict Form), an individual class member may affirm—under penalty of perjury—that he or she received the call at issue to his or her residential or cellular telephone number.

### **Defendant's Further Position on Claims and Defenses**

ViSalus disputes Plaintiff's positions.[6]

First, as to Plaintiff's individual Do-Not-Call-Registry claim (Count One), the TCPA only applies to residential subscribers and does not preclude calls to businesses. A landline registered as a residential landline with the telephone company but used for business -- such as Plaintiff's

---

[6] In setting forth its position, ViSalus incorporates by reference the legal arguments made in the Proposed Verdict Form. ViSalus also recognizes that the Proposed Verdict Form and this Proposed Pretrial Order, intended to identify the issues of agreement and issues for trial, and not intended to be the complete statement of all evidence issues that ViSalus may present at trial.

home daycare business -- is not a residential telephone line protected by the TCPA. In testimony, Ms. Wakefield stated that the calls were an irritation as she was trying to run her home daycare business. The TCPA was not intended to protect business lines, and therefore Ms. Wakefield cannot prove her DNC claim.

Additionally, the DNC regulations provide that a business can call a number on the National DNC Registry if it has prior express permission, in a signed writing, from the subscriber. Ms. Wakefield signed up to be a ViSalus promoter, selling ViSalus products, and in doing so, provided the subject telephone number to ViSalus to receive important ViSalus news. She esigned that permission by hitting "save." Ms. Wakefield did not remove that telephone number from the ViSalus website, nor did she ever revoke consent to ViSalus to call her. Although Ms. Wakefield has contended that she told the live person on the telephone call from ViSalus in April 2015, during the first and/or second call, to stop calling, ViSalus has no record of any such revocation. ViSalus kept records of do-not-call requests and implemented those requests to stop calling those phone numbers. Therefore, ViSalus had express permission from Ms. Wakefield to call her, and she never revoked that consent.

Furthermore, even if calls to Ms. Wakefield violated the TCPA, the parties disagree on the number of calls. Additionally, ViSalus will present evidence to demonstrate that it did not willfully or knowingly violate the law. Such evidence includes its internal do-not-call procedures, its efforts after the lawsuit was received to make sure Ms. Wakefield did not receive any further calls, and that the same landline phone was provided to ViSalus for Byron Wakefield's account which is the reason she may have received multiple calls.

As to Count Two, ViSalus will present evidence that Plaintiff cannot prove that she and all members of the Certified Class received a prerecorded call or artificial voice call. ViSalus's

records do not establish whether a prerecorded message or artificial voice was played or that all of the calls listed on certain spreadsheets of calls-to-be-made were actually dialed. Some spreadsheets have "disposition codes" identifying the result of the call (such as an answering machine picked up or the live person did). Others do not. Ms. Wakefield and the Class must prove their claims in the aggregate for each of the elements of the TCPA; Ms. Wakefield cannot prove the elements of her claim and extrapolate that result to all class members. Also, Ms. Wakefield and the Class must prove that the calls employed a prerecorded message or artificial voice. The call could not have used either if the call was never answered by a live person or an answering machine.

As to Ms. Wakefield, she has no proof that she received a prerecorded message other than her own testimony, and has testified that she deleted the prerecorded message that she did allegedly receive.

ViSalus will also present evidence that its records do not establish whether the telephone number called was a cell phone or landline; and if a landline, whether it was a residential telephone number (and not actually a home-business telephone line) or a business line. Therefore, Plaintiff cannot prove that calls to her and class members were to telephone lines to which the TCPA applies. ViSalus also contests that its records enable Plaintiff to prove the total number of calls made to telephone lines protected by the TCPA, using a prerecorded message or artificial voice. ViSalus will present testimony that some promoters put in fake names and phone numbers or put in their own phone number for real customers, such that hundreds of calls may have been placed to the single telephone number for a promoter.

To the extent the Court reaches the willful/knowing question, ViSalus will present evidence that it called only its customers and promoters, who signed up to make money for themselves by

selling ViSalus products. ViSalus will present evidence regarding promoters and customers agreeing to receive telephone calls from ViSalus about company news, and the privacy policy making customers and promoters aware that ViSalus may call them with promotional calls. ViSalus will also present evidence of how ViSalus promoters and customers could request to not be called, or remove their phone number from their Vi-Net account.

### 5. Other Legal Issues

The Parties currently dispute the following legal issues: (i) the meaning of "residential telephone;" (ii) whether ViSalus is permitted to raise the affirmative defense of consent, and if they are, how the jury should be instructed on the issue; (iii) the type of proof Plaintiff must put forth at trial to establish the claims of the Certified Class; and (iv) whether Plaintiff and the Class must establish that a prerecorded message was left when an answering machine responded to the call in order to prove their TCPA claim in Count II. As discussed above, these issues are further discussed in the Proposed Verdict Form simultaneously submitted herewith. The Parties are prepared to provide further briefing on these areas if the Court wishes.

### 6. Proposed Amendments to the Pleadings

Plaintiff does not propose any amendments to the pleadings, but notes that, at trial, she only intends to move forward with Count I on behalf of herself and Count II on behalf of herself and the Certified Class. Plaintiff does not intend to proceed with Count III of the First Amended Complaint. (Dkt. 36.)

Respectfully submitted,

**LORI WAKEFIELD, individually and on behalf of all similarly situated individuals,**

Dated: June 20, 2018        /s/ Eve-Lynn J. Rapp

|  |  |
|---|---|
|  | **Rafey S. Balabanian, ILB #6285687*** <br> rbalabanian@edelson.com <br> **Eve-Lynn J. Rapp, ILB #6300632*** <br> erapp@edelson.com <br> EDELSON PC <br> 123 Townsend Street, Suite 100 <br> San Francisco, California 94107 <br> Tel: 415.212.9300 <br> Fax: 415.373.9435 <br><br> *Attorneys for Plaintiff and the Class* <br><br> **VISALUS, INC.** |
| Dated: June 20, 2018 | /s/ Sarah Anchors |
|  | **Sarah Anchors*** <br> QUARLES & BRADY LLP <br> Renaissance One, Two North Central Avenue <br> Phoenix, Arizona 85004-2391 <br> Tel: 602.229.5788 <br><br> **Joshua M. Sasaki, P.C., OSB No. 964182** <br> josh.sasaki@millernash.com <br> **Nicholas H. Pyle, OSB No. 165175** <br> nicholas.pyle@millernash.com <br> MILLER NASH GRAHAM & DUNN LLP <br> 3400 U.S. Bancorp Tower <br> 111 S.W. Fifth Avenue <br> Portland, Oregon 97204 <br> Tel: 503.224.5858 <br> Fax: 503.224.0155 <br><br> *Attorneys for Defendant ViSalus, Inc.* |

## CERTIFICATE OF SERVICE

  I, Eve-Lynn J. Rapp, an attorney, certify that on June 20, 2018, I served the foregoing by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                /s/  Eve-Lynn J. Rapp