**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
**Nicholas H. Pyle**, OSB No. 165175
Nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

**Sarah R. Anchors** (admitted pro hac vice)
sarah.anchors@quarles.com
QUARLES & BRADY LLP
 2 N. Central Ave.
One Renaissance Square
Phoenix, AZ 85004
Telephone: 602.229.5200
Facsimile: 602.229.5690

**S. Douglas Knox** (admitted pro hac vice)
doug.knox@quarles.com
**Zachary S. Foster** (admitted pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
101 E. Kennedy Blvd., Ste. 3400
Tampa, FL 33602
Telephone: 813.387.0300
Facsimile: 813.387.1800

Attorneys for Defendant ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of all others similarly situated, | CV No. 3:15-cv-01857-BR |
| Plaintiff, | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JURY INSTRUCTION** |
| vs. | |
| **VISALUS, INC**., a Nevada corporation, | |
| Defendant. | |

Defendant ViSalus, Inc. ("ViSalus") hereby responds in opposition to Plaintiff's Motion for Jury Instruction (Doc. 129, the "Motion").

## LEGAL MEMORANDUM

### Introduction

This is a simple issue of Plaintiff erroneously interpreting the relevant statute and regulation. Plaintiff's Count II is pursuant to the Telephone Consumer Protection Act ("TCPA") and regulation 47 C.F.R. § 64.1200, prohibiting a business from making a call "*using* . . . an artificial or prerecorded voice" to call a cell phone or to "*deliver* a message" to a residential telephone line, under certain circumstances. The statutory language is clear that the prohibition is on playing an artificial or prerecorded voice into the call recipient's ear or onto the recipient's answering machine;[1] that is the harm from which Congress sought to protect consumers. Plaintiff asks the Court to ignore the statutory and regulatory words "using" and "deliver a message" and find that all Plaintiff needs to prove is that ViSalus *intended* to play a prerecorded message *if* a live person or answering machine responded to the call. That is not the meaning of the unambiguous law or the intent of the law, and courts have expressly ruled that Plaintiff's urged interpretation is wrong.

## I.    The TCPA Cannot Be Interpreted to Support Plaintiff's Position.

### A.    The Unambiguous Words of the TCPA and Regulation Prohibit Using an Artificial or Prerecorded Voice to Deliver a Message.

In construing the provisions of a statute, courts first look to the language of the statute to determine whether it has a plain meaning. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)). "The

---

[1] This Response uses the term "answering machine" to mean both an answering machine for a residential landline and a cell phone voicemail.

preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id*. (quoting *McDonald*, 548 F.3d at 780); *see also In re Schwartz-Tallard*, 803 F.3d 1095, 1101–02 (9th Cir. 2015).  Regulations are interpreted in the same manner as statutes and thus, where clear, are enforced according to their plain meaning.  *Minnick v. C.I.R.*, 796 F.3d 1156, 1159 (9th Cir. 2015).

The relevant part of the TCPA applying to cellular telephones reads as follows:

> It shall be unlawful for any person within the United States . . .—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using* any automatic telephone dialing system *or an artificial or prerecorded voice*—
> . . .
> > (iii) to any telephone number assigned to a paging service, cellular telephone service . . .;

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  The unambiguous words of the statute create two distinct prohibitions: (1) using an automatic telephone dialing system ("ATDS")[2] to initiate the call or (2) using an artificial or prerecorded voice on the call.  *See id.*  A call may use an ATDS, but then a live person gets on the line, and therefore only the ATDS prohibition is involved in a cause of action.  Alternatively, a business may use a dialing system that does not qualify as an ATDS to initiate the call, and then play an artificial voice or prerecorded message.  Plaintiff has only alleged a violation of the artificial or prerecorded voice prohibition for telemarketing or advertising; not the use of an ATDS.

The regulation follows the same construction as the statute, and adds that the "prior express consent" required for advertising or telemarketing calls is "prior express written consent."  It states

---

[2] An ATDS means "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

in relevant part:

> No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) *using* an automatic telephone dialing system *or an* artificial or prerecorded voice;
> . . .
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, *using* an automatic telephone dialing system *or an artificial or prerecorded voice*, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . ..

47 C.F.R. § 64.1200(a) (emphasis added). Like the statute, the unambiguous regulation has two prohibitions: the first against using an ATDS and the second on using an artificial or prerecorded voice. *See id.* Plaintiff's claim under Count II and the certified class is under the regulation at 47 C.F.R. § 64.1200(a)(2), (a)(3), and mirrors the language of the regulation. The certified class are those persons "who received a telephone call . . . promoting products or services . . . [using] an artificial or prerecorded voice . . . [without] prior express written consent." (Doc. 81, at 14.)

On the other hand, the TCPA *does not* bar using an ATDS to call a *residential* telephone line. Instead, it only prohibits initiating a call to a residential telephone line "*using an artificial or prerecorded voice* to *deliver a message* without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B) (emphasis added). The regulation repeats this same language. 47 C.F.R. § 64.1200(a)(3).

Because the statute and regulation use the words "using" and "deliver a message," a plaintiff has a claim against an entity that used an artificial or prerecorded voice only if the voice *actually played*.

Plaintiff interprets the statute and regulations to mean that *any* call initiated with the

*intention* to deliver an artificial or prerecorded message constitutes a violated of the TCPA, regardless of whether the artificial or prerecorded message is actually delivered. This interpretation renders meaningless the words "using" and "to deliver a message" in the statute, and the words "using" in the regulation.  She also purposefully conflates the concepts of "using" an ATDS with "using" an artificial or prerecorded message.  Specifically, Plaintiff relies on cases standing for the proposition that a person "uses" an ATDS when that person places a call with the equipment, not when the call is actually answer, as support for her argument that ViSalus "used" an artificial or recorded message upon placing the calls with the intention of delivering those messages. However, unlike with an ATDS used to actually initiate a call, a person logically cannot "use" an artificial or prerecorded message until the message is actually played.  The Court should not disregard the difference the unambiguous statutory language makes in *using* an ATDS as compared to using an artificial or prerecorded voice.   Plaintiff's approach contradicts the cannon of interpretation: "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation and internal quotation marks omitted).

Plaintiff's interpretation would further have this Court ignore the difference in the statutory language addressing cell phones as compared to residential landlines.  The TCPA bars calls using an ATDS to cell phones (under certain circumstances) but does not bar calls to residential landlines using an ATDS.  47 U.S.C. § 227(b)(1)(A), (B).  "Congress permitted certain types of prerecorded voice messages or artificial voice calls to landlines even without the consent of the called party but granted no such latitude regarding wireless devices." *In the Matter of Dialing Servs., LLC*, 29 FCC Rcd. 5537, 5538 (2014) (*comparing* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B) *and* 47 U.S.C. § 227(b)(2)(B) (granting the Federal Communications Commission

authority to adopt additional exemptions to liability for autodialed calls to landlines).  Making it a violation of the law to call a residential landline with merely the intent to use a prerecorded message if a voice or answering machine is detected would essentially make it a violation of the law to call a residential landline using an ATDS.  Congress has specifically not prohibited such calls.  *See id.*; *see also* In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8755 (1992) ("We emphasize that the term autodialer does not include the transmission of an artificial or prerecorded voice.").

Additionally, Plaintiff's interpretation contradicts congressional intent.  Congress stated that its intent was to attempt to remedy the harm that consumers felt they suffered when receiving certain automated or prerecorded messages.  Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227(10)) ("Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.").[3]

Finally, Plaintiff's interpretation contradicts Article III standing, which requires that the suffered injury be fairly traceable to the challenged conduct of the defendant.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The challenged conduct here is the *use* of a prerecorded message or artificial voice.  The "harm" is the delivery of that message or voice to the call recipient's ear or onto his/her answering

---

[3] Plaintiff cites to In the Matter of Implementation of the Middle Class Tax Relief & Job Creation Act of 2012, 27 F.C.C. Rcd. 13615, 13649 (2012), but that statement about "millions of Americans ..." was about the implementation of the Do-Not-Call list, which is not the basis of Plaintiff's Count II.  Plaintiff conveniently leaves out the beginning of the quote, which is a statement of a single commissioner:  "Nearly a decade ago, the [FCC] was at the forefront of developing the first national Do-Not-Call list.  It has been an out-and-out success. Consumers have signed up more than 209 million phone numbers.  That means millions of Americans . . . . " *Id.*  The Commissioner's comments were to introduce a list to prevent calls to 911 centers.  *Id.*  It has nothing to do with Plaintiff's claims.

machine or voicemail.  This is different from the "harm" for a violation of the TCPA provision

barring use of an ATDS.  *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043

(9th Cir. 2017) (addressing the harm of unsolicited phone calls and text messages delivered by an

ATDS).

> **B.      Courts Have Held that TCPA Liability Only Accrues if a Prerecorded Message Played.**

The Fifth Circuit addressed this very issue in *Ybarra v. Dish Network, L.L.C.*, 807 F.3d

635 (5th Cir. 2015).  DISH used a system that played a prerecorded message if it detected a human

voice or recorded voicemail greeting.  *Id.* at 637.  DISH contended that the district court erred in

holding that it violated the TCPA in making calls that did not result in a prerecorded voice being

used because no prerecorded voice was played as there was no live person or answering machine

that responded to the call.  *Id.* at 640.  In agreeing with DISH and reversing the district court ruling,

the Circuit stated:

> **To be liable under the "artificial or prerecorded voice" section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play.**  A couple of considerations compel this conclusion. First, under traditional rules of statutory interpretation, we "look at the plain meaning of the statutory language." *United States v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).  **In the context of the TCPA, the word "using" is best interpreted as meaning the artificial voice "spoke."**  That the prerecorded voice was on standby as the call was placed is not sufficient when the statute requires that the voice be "used."
>
> Second, the TCPA makes it unlawful to make any call using an "automatic telephone dialing system."  **In contrast, it is not unlawful under the TCPA to make a call using an artificial or prerecorded voice system.**  Rather, what is precluded by the TCPA is making a call using "an artificial or prerecorded voice."  **The omission of the word "system" must be given effect**. *See Burnett Ranches, Ltd. v. United States*, 753 F.3d 143, 148 (5th Cir. 2014).

*Id.* at 640-41 (emphasis added).  Thus, the Court held as follows:

> **We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA.** Instead, the prerecorded voice must "speak" during the call. A party who makes a call using an automatic telephone dialing system uses the system to make the call, regardless of whether the recipient answers, and thereby triggers TCPA liability. **With a prerecorded voice, though, unless the recipient answers, an artificial or prerecorded voice is never used.**

*Id.* at 641 (emphasis added)[4]; *see also Morris v. Unitedhealthcare Ins. Co.*, No. 4:!5-cv-00638, 2016 WL 7115973, at *7 (E.D. Tex. Nov. 9, 2016) (relying in *Ybarra*, and holding that plaintiff's "mere speculation that an artificial or prerecorded voice may have played had he answered the calls is insufficient" to defeat summary judgment."); *Roberts v. Medco Health Sols., Inc*., No. 4:15-CV-1368, 2016 WL 3997071, at *2 (E.D. Mo. July 26, 2016) (relying on *Ybarra*, and holding that calls that were blocked by the plaintiff's phone such that it did not go through to voicemail did not constitute violations of the TCPA, "[b]ecause a call in which a prerecorded voice 'might, but does not, play' does not trigger violation of the TCPA"); *Abramson v. Caribbean Cruise Line, Inc*., No. 2:14-cv-00435, 2014 WL 2938626, at *4 (W.D. Pa. June 30, 2014) (dismissing claim as to a call wherein no verbal communication was delivered, and the plaintiff hung up, because her claim that she believed the defendant intended to deliver a prerecorded message during that call was insufficient to allege a violation of the TCPA). *Accord Susinno v. Work Out World, Inc*., 862 F.3d 346, 351-52 (3rd Cir. 2017) (receipt of a single prerecorded telephone call was "the very harm that Congress sought to prevent" in the TCPA and was thereby "a concrete, albeit intangible, harm").

## II.    Plaintiff's Removal of Calls Where The Telephone Rang Without an Answer Does Not Mean That A Prerecorded Message Was Delivered to All Remaining Class Members.

Plaintiff contends that all of the noticed class member received artificial or prerecorded

---

[4]  In *Aranda v. Caribbean Cruise Line, Inc.*, the court cited *Ybarra*, but explained that the case was different because in *Aranda* the evidence was that "*every call* [to the plaintiffs] included a prerecorded message." 179 F. Supp. 3d 817, 824-25 (N.D. Ill. 2016) (emphasis added).

messages because, during the class notice process, she removed all calls where ViSalus's documents definitively showed that the call was not answered or did not go to an answering machine.  This is a logical fallacy. Using the disposition codes in ViSalus's records, Plaintiff apparently culled all individuals that could not have heard a prerecorded message (e.g, they went unanswered or never connected). However, this in no way ensures that the remaining set of class members all actually heard the relevant message.

For each marketing calling campaign at issue, ViSalus has a "contact sheet", which is an Excel spreadsheet listing the person called, the person's ViSalus account number, and the person's telephone number.  The contact sheets each have a title that corresponds to the campaign, such as a campaign to promote a particular new product or a campaign to "win back" customers who have not placed orders for a period of time.  *Some* of the contact sheets have "disposition codes" that state the result of the call, such as whether an answering machine responded, the call rang without being picked up, or a live person answered.  But *some* of the contact sheets do not have disposition codes.  Therefore it will be Plaintiff's burden to establish by a preponderance of the evidence that those calls indeed resulted in someone picking up the phone or an answering machine responding such that an artificial or prerecorded voice *could* have played.

Additionally, even for contact sheets that do have disposition codes, ViSalus does not have records of whether the telephone system was programmed for that calling campaign to play a prerecorded message if an answering machine was detected.  It will be Plaintiff's burden to prove by a preponderance of the evidence that ViSalus did play a prerecorded message if an answering machine responded, for all of the calling campaigns.

Due Process and the Rules Enabling Act mandate that Plaintiff prove all elements of her claim as to all of the class members. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445

U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."); *see also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155-56 (9th Cir. 2016) (stating that the Rules Enabling Act prohibition on a procedural rule abridging, enlarging or modifying a substantive right applies to Rule 23). "Because it is no more than a claim aggregation device, Rule 23 has no effect on the substance of the claims or plaintiffs' burden of proof [citing 28 U.S.C. § 2072(b) and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)], and consequently each member in a class must have a potentially viable claim." *Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015).  Elements of the claim – particularly, whether an artificial or prerecorded voice was actually used and delivered – cannot be presumed just because this is a class action.  The jury cannot render an aggregate class judgment against ViSalus unless it determines ViSalus is liable for each individual constituent class members' claims. ViSalus cannot be liable for an individual class member's claim unless ViSalus actually delivered the prerecorded message. Therefore, the jury cannot render an aggregate judgment against ViSalus unless it determines that ViSalus delivered a prerecorded message to each class member.

### III.    Plaintiff's cases do not support her position.

Plaintiff relies on *Satterfield*, but that case addressed whether a text message is a "call" under the TCPA, and did not address a prerecorded message or artificial voice being delivered. 569 F.3d at 953-55.

*Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 655-56 (N.D. W. Va. 2014) focused on whether the defendant violated the TCPA *by using an ATDS*; not because it used a prerecorded message or artificial voice.  DISH used its dialer system to make all of the disputed calls, and played a prerecorded message for some of the calls.  *Id.* at 642.  DISH argued that it was not liable

because the dialer was not an ATDS. *Id.* at 651. Moore countered that the dialer was a predictive dialer, which the FCC had interpreted to be an ATDS. *Id.* The court held that predictive dialer is an ATDS under the FCC's interpretation, and that DISH's dialer was an ATDS. *Id.* at 653, 655. Therefore, whether a prerecorded message was played was not part of the court's ruling. *Fillichio v. M.R.S. Associates, Inc.*, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) is likewise inapplicable because it only addressed calls using an ATDS. The ruling does not even use the word "prerecorded" or "artificial."

*Hinman v. M & M Rental Ctr., Inc.,* 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009) does not apply because it addressed an entirely different part of the TCPA – the provisions regarding sending unsolicited faxes. Plaintiff relies on the case's statement that the TCPA bars sending the unsolicited fax, and makes no reference to the receipt of the fax. In contrast, the TCPA provision at issue here *does* refer to "using" and "delivering" an artificial or prerecorded voice.

*Van Patten*, 847 F.3d 1037, addressed whether the plaintiff had standing for the TCPA claim for text messages. That decision was limited to addressing the text messages as using an ATDS, and focused on whether the plaintiff consented to the text messages. It did not address this issue encountered head-on in *Ybarra*, the difference in harm and proof needed for a claim that a call violated the TCPA by using a prerecorded message or artificial voice, as opposed to an ATDS. Likewise, in *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 293 (N.D. Cal. 2013), the complaint had a single claim under the TCPA, that the defendant violated the statute by sending text messages, without prior consent, using an ATDS. Again, the case did not address what Plaintiff claims -- that ViSalus violated the TCPA by using a prerecorded message or artificial voice.

Plaintiff misplaces her reliance on *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), a non-TCPA case that addressed whether a cooking oil was mislabeled "100% Natural."

But she ignores a major difference.  In that case, the Ninth Circuit explained that the inability to ascertain all of the class members was not a concern because the class members could self-identify through an affidavit process.  The imagined affidavits were not going to be used to determine ConAgra's actual liability (i.e., the size of their actual judgment), but instead used to determine whether an individual was entitled to receive a portion of the total class award.  A product labeling trial, the jury would presumably be asked to decide: (1) was the packaging misleading and (2) if so, what was the damage per unit sold.  Then, to assess total liability, the jury would multiply number of units sold by damage per unit.  The total number would be the total class fund.  The self-reporting consumers would then submit claims from that pot in the administrative phase.

> We agree with the Seventh Circuit that, in cases in which aggregate liability can be calculated in such a manner, "the identity of particular class members does not implicate the defendant's due process interest at all" because "[t]he addition or subtraction of individual class members affects neither the defendant's liability nor the total amount of damages it owes to the class." *Mullins* [*v. Direct Digital, LLC*], 795 F.3d [654] at 670 [(7th Cir. 2015)]; *see also Six (6) Mexican Workers* [*v. Ariz. Citrus Growers*], 904 F.2d [1301] at 1307 [(9th Cir. 1990)] ("Where the only question is how to distribute damages, the interests affected are not the defendant's but rather those of the silent class members.").  The defendant will generally know how many units of a product it sold in the geographic area in question, and if the defendant is ultimately found to have charged, for example, 10 cents more per unit than it could have without the challenged sales practice, the aggregate amount of liability will be determinable even if the identity of all class members is not.

*Briseno*, 844 F.3d at 1132.  Therefore, the identification of class members did not affect the defendant's liability.  *Id.*  That is not true in every case, the court stated.  *Id.*

Here, Plaintiff would have class members submitting affidavits to prove actual elements of the TCPA claim and it would affect ViSalus's aggregate liability.  Unlike in *Briseno*, adding or removing class members affects both ViSalus's liability and the total damages a jury may determine it owes.

Page 12- DEF'S RESP. TO PL'S MTN. FOR JURY INSTRUCTION

Further, where *Briseno* discussed using the affidavits to prove class member claims, it contemplated using them *at trial*, not after trial and a judgment, as Plaintiff proposes.

> If the concern is that claimants in cases like this will eventually offer only a "selfserving affidavit" as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights. If a Wesson oil consumer were to pursue an individual lawsuit instead of a class action, an affidavit describing her purchases would create a genuine issue if ConAgra disputed the affidavit, and would prevent summary judgment against the consumer. *See Mullins*, 795 F.3d at 669; *accord* FED. R. CIV. P. 56(c)(1)(A). Given that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause, we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made.

*Id.* at 1132.

Finally, Plaintiff's reliance on *Booth v. Appstack, Inc*., No. C13-1533JLR, 2016 WL 3030256, at *1 (W.D. Wash. May 25, 2016), *order clarified*, 2016 WL 3620798 (W.D. Wash. June 28, 2016) is misplaced because that case involved expert evidence that the call recipient *actually received the prerecorded message*. The plaintiffs' expert examined the call data and determined that the defendant "placed 601,207 robocalls to 90,163 unique cellular numbers." *Id.* at *3. He excluded calls "within 6 seconds or less because in his opinion such a short duration indicates that "the called party answered and immediately hung up or an answering machine was detected and the dialer immediately hung up on the call." *Id.* at *3 n. 4. Presumably, this would give the jury sufficient evidence to render an aggregate verdict because it could decide: (1) whether each dialed number was a cell phone and (2) whether the person actually received the pre-recorded message. *See id.* Therefore, the post-verdict identification is to determine whether a class member can take from the common fund would not affect the total exposure. *Booth* is easily distinguishable because

Plaintiff has no comparable evidence that the call recipients actually received the prerecorded message, and she claims she does not even after to make any such showing.

**III.** **Conclusion.**

For the foregoing reasons, ViSalus respectfully requests that the Court deny Plaintiff's Motion for Jury Instruction.

DATED this 18th day of July, 2018.

QUARLES & BRADY LLP

By */s/ Sarah R. Anchors*

Sarah R. Anchors (pro hac vice)
sarah.anchors@quarles.com
S. Douglas Knox (pro hac vice)
doug.knox@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
Telephone:  602.229.5200
Facsimile:  602.229.5690

MILLER NASH GRAHAM & DUNN LLP
Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
Nicholas.pyle@millernash.com
Telephone:  503.224.5858
Facsimile:  503.224.0155

*Attorneys for Defendant ViSalus, Inc.*

I hereby certify that I served the foregoing on Plaintiff the foregoing document:

Scott F. Kocher
Stephen J. Voorhees
FORUM LAW GROUP LLC
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Telephone: 503.445.2102
Fax: 503.445.2120
E-mail: scott@forumlawgroup.com
       stephen@forumlawgroup.com
*Attorneys for Plaintiff*

Rafey S. Balabanian (*pro hac vice*)
Eve-Lynn Rapp (*pro hac vice*)
Stewart R. Pollock (*pro hac vice*)
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: 415.212.9300
Fax: 415.373.9435
E-mail: rbalabanian@edelson.com
      erapp@edelson.com
      rpollock@edelson.com
*Attorneys for Plaintiff*

Stefan Coleman
Law Offices of Stefan Coleman, LLC
1309 Jericho Tpke, 2nd Floor
New Hyde Park, NY 11040
Tel: 877.333.9427
Fax: 888.498.8946
E-mail: law@stefancoleman.com
*Attorneys for Plaintiff*

Benjamin H. Richman (*pro hax vice*)
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: 312.589.6370
Fax: 21.589.6378
E-mail: brichman@edelson.com
*Attorneys for Plaintiff*

by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

☐    **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐    **Facsimile communication device.**

☐    **First-class mail, postage prepaid.**

☐    **Hand-delivery.**

☐    **Overnight courier, delivery prepaid.**

DATED this 18th day of July, 2018.

*/s/ Sarah R. Anchors* _____

Attorneys for Defendant ViSalus, Inc.

15

Certification of Service