Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Jonathan H. Singer, OSB No. 105048
jonathan.singer@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

John Matson O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

Attorneys for Defendant
ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISALUS, INC., a Nevada corporation,<br><br>Defendant. | No. CV No. 3:15-cv-01857-BR<br><br>**DEFENDANT'S OPENING BRIEF REGARDING WILLFULNESS AND ENHANCED DAMAGES** |

## I. INTRODUCTION

ViSalus maintained throughout this case that Plaintiff could not sustain a class verdict under the Telephone Consumer Protection Act ("TCPA"). At trial, Plaintiff did not—and could not—prove a common set of facts that applied across the class; in fact, the evidence showed very much to the contrary. Indeed, should the verdict remain in place given Plaintiff's proof at trial, the parties will be put to thousands upon thousands of mini-trials over crucial individual issues—which class members received which sort of calls?[1] Which messages, if any, were played during a call? Were they marketing or informational calls? What type of line (mobile or residential) was called? And which of those lines were business numbers? ViSalus will address these issues separately in its motion to decertify the class.

Plaintiff likewise cannot prove that ViSalus "willfully or knowingly" violated the TCPA for the calls underlying the jury's verdict. The Ninth Circuit has not defined what is required under 47 U.S.C. § 227(b)(3)(C) to find that a defendant "willfully or knowingly" violated the TCPA. As the Court previously noted, there is a split in authority on the governing legal standard. For the reasons we describe below, this Court should adopt the sound reasoning in those cases that require proof that a defendant knew or had reason to know that it was violating the TCPA to sustain a "willful or knowing" finding. Any lesser standard—in particular, a standard that requires a plaintiff merely show that ViSalus knew calls were made—obviates Congress's distinction between a TCPA violation warranting a $500 penalty, and one warranting enhanced damages.

Here, the evidence hardly shows that ViSalus knew or should have known its actions violated the TCPA. On the contrary, ViSalus had secured permission to make the calls it did

---

[1] Tellingly, the number of calls identified by the jury does not match any of the numbers Plaintiff argued at trial.

make. ViSalus's customers and promoters voluntarily provided their phone numbers to ViSalus and indicated their preference to receive phone communications from ViSalus. Indeed, of the millions of alleged violative calls, Plaintiff could only muster one complaint made to the Better Business Bureau as evidence of the call recipients' dissatisfaction.

Further, the written consents ViSalus received from its customers and promoters were legally compliant under the TCPA until at least October 2013. At that time, the FCC implemented a rule change that imposed new, more stringent, requirements for consent under the TCPA. The guidance the FCC gave as part of the rule change, however, led to substantial confusion regarding whether new written consents were required for existing customers, or whether prior consents acquired under the old standard remained valid. Recognizing this issue, the FCC has given multiple waivers to companies that (like ViSalus) mistakenly believed that prior consents were sufficient. ViSalus has applied to the FCC for a similar waiver and awaits a ruling.

Moreover, even if this Court were to find that ViSalus willfully violated the TCPA, the Court should exercise its discretion and refrain from enhancing damages. Calls using any automated technology, including the alleged wrongful calls, ceased in January 2016. There is no evidence that ViSalus made any violative calls since then. As a result, enhanced damages will not serve as a deterrent for ongoing or future conduct. Enhanced damages will not serve a lawful punitive purpose either. As it stands, Plaintiff seeks the largest TCPA award in history before enhancement. Such an award is, in itself, excessively punitive. Indeed, the imposition of enhanced damages as sought by Plaintiff would violate due process.

## II.     ARGUMENT

### A. Under the correct standard for willfulness, Plaintiff needs to show that ViSalus knew or had reason to know that its conduct violated the TCPA.

A court has discretion to treble a TCPA damages award only if the court finds that a defendant "willfully or knowingly" violated the TCPA. 47 U.S.C. § 227(b)(3). The TCPA does not define willfully and the Ninth Circuit has not yet weighed in on the issue. There currently exists is a split of authority regarding what constitutes a willful violation under the TCPA, with some courts taking the view that defendant need only have known that it was placing calls, whereas many other courts require that the defendant must know, or have reason to know, that it was engaging in conduct that violated the TCPA.[2] This latter view easily makes the most sense.

---

[2] *See, e.g., N.L. by Lemos v. Credit One Bank, N.A.*, 2:17-CV-1512-JAM-DB, 2019 WL 1428122, at *2 (E.D. Cal. Mar. 29, 2019) (willfulness under the TCPA requires something more than "strict liability"); *KHS Corp. v. Singer Fin. Corp.*, CV 16-55, 2019 WL 1359262, at *5 (E.D. Pa. Mar. 26, 2019) ("A defendant commits a willful and knowing violation of the TCPA if he or she sends an unsolicited faxed advertisement that he or she knows to be a violation of the TCPA."); *Ellis v. Energy Enter. USA, Inc.*, 17-CV-497-VKD, 2018 WL 6816112, at *6 (N.D. Cal. Nov. 20, 2018) (no evidence of willfulness where there was no evidence that the defendant "has previously been sued for violating the TCPA"), *report & recommendation adopted*, 17-CV-497-LHK, 2018 WL 6719163 (N.D. Cal. Dec. 21, 2018); *Cunningham v. Crosby Billing Servs., Corp.*, 418-CV-43A-LMCAN, 2018 WL 6424792, at *9 (E.D. Tex. Oct. 14, 2018) (willful violation requires a defendant "had reason to know or should have known that their conduct would violate the TCPA" or was "more than negligent"), *report & recommendation adopted,* 4:18-CV-43, 2018 WL 6424695 (E.D. Tex. Dec. 5, 2018); *Milana v. DECA Fin. Servs.*, 8:18-CV-450-T-33TGW, 2018 WL 3621366, at *3 (M.D. Fla. July 30, 2018) ("For a TCPA violation to be willful or knowing, the defendant must have known that its conduct violated the statute."); *Santiago v. Merriman River Assocs.*, 3:17-CV-2054-VAB, 2018 WL 2465358, at *5 (D. Conn. June 1, 2018) (a defendant willfully violates the TCPA when it acts with the knowledge that its conduct violated the law); *Backer Law Firm v. Costco Wholesale Corp.*, 4:15-CV-00327-SRB, 2017 WL 6388974, at *8 (W.D. Mo. Nov. 28, 2017) (willfulness under the TCPA required that a defendant know it was performing conduct that violated the statute); *Owens v. Starion Energy, Inc.*, 3:16-CV-1912 (VAB), 2017 WL 2838075, at *7 (D. Conn. June 30, 2017) ("for a defendant's conduct to be 'willful' or 'knowing' for purposes of treble damages under the TCPA, courts in this Circuit have held that bad faith is not necessarily required; rather, it is enough for a defendant to act with knowledge that the conduct violates the law"); *Margulis v. Surrey Vacation Resorts, Inc.*, 4:14-CV-1131-JAR, 2017 WL 2242555, at *1 (E.D. Mo. May 23, 2017) ("Here, there is insufficient evidence that Defendant willfully or knowingly violated the

Certainly the common sense reading of the TCPA suggests that the Court should adopt the latter approach. If all that Plaintiff is required to show is that ViSalus knew it made telemarketing calls using a recorded voice, then there would be no room for violations that were not willful (except in the unlikely scenario where someone accidentally placed a call). *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("If we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are *not* "'willful[] or knowing[].'"). Congress intentionally created incremental standards of proof to more severely punish more deliberate and egregious TCPA violations. Expanding the definition of willfulness beyond its common sense

---

TCPA, and the Court declines to award treble damages solely on the basis that Defendant knew it was making the call to Plaintiff."); *Drew v. Lexington Consumer Advocacy*, 16-CV-200-LB, 2016 WL 1559717, at *13 (N.D. Cal. Apr. 18, 2016) (insufficient evidence that defendant violated the TCPA where it had not previously been sued for similar violations); *Baemmert v. Credit One Bank*, 271 F. Supp. 3d 1043, 1052 (W.D. Wis. 2017) (defendant's TCPA violations were willful and knowing because defendant "was aware of its obligations under the TCPA, as it ha[d] been sued over a dozen times in the past for TCPA violations" and the plaintiff had repeatedly told the defendant to stop calling); *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 657 (N.D.W. Va. 2014) (defendant willfully violated the TCPA where it knew that it was calling the wrong person but continued calling); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012), *aff'd,* 729 F.3d 370 (4th Cir. 2013) (adopting the interpretation that a willful or knowing violation requires that a defendant have reason to know that its conduct violated the statute); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) (requiring plaintiff to show that the defendant's actions were taken in reckless disregard of plaintiff's rights and not just that the defendant knew it placed the calls at issue, to treble damages under the TCPA); *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 755 (W.D. Tex. 2011) (declining to treble damages where there was no evidence that the defendant "knowingly disregarded [the plaintiff's] revocation of consent, nor was there any evidence [the plaintiff] knew or should have known it was violating the TCPA"); *J2 Glob. Communications, Inc. v. Blue Jay Inc.*, C-08-4254-PJH, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (defendant willfully and knowingly violated the TCPA where the defendant admitted to knowing that its conduct violated the TCPA and had previously ignored 30 judgments against it for the same conduct); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) (defendants willfully and knowingly violated the TCPA because they had reason to know their conduct violated the TCPA but did not alter their business practices).

definition eliminates any distinction between willful violations and those requiring no intent. *Id.*; *Harris*, 867 F. Supp. 2d at 895.

Plaintiff previously cited 47 U.S.C. § 312(e)(1)—which defines "willful" as "the conscious and deliberate commission or omission of such act, irrespective of any intent"—to interpret Section 227. That reliance is misplaced. The term "willful" appears numerous times throughout the Communications Act of 1934[3] (of which the TCPA and § 312 are a part), but section 312 is the only section that actually defines the term, and section 312 expressly limits its definition to section 312—prefacing its "willful" definition with: "For the purposes of this section . . . ." Moreover, the Act contains a section (47 U.S.C. § 153) that defines 59 different terms for use across the entire Act—but that section does not include "willfully" or "knowingly." Thus, Congress certainly knew how to apply (and could have applied) section 312's willful definition to all provisions of Act, including the TCPA. Yet it chose instead to narrowly limit it to section 312. Thus, section 312 has no bearing on how to interpret willfulness.

Therefore, this Court should first determine whether the evidence shows that ViSalus knew or should have known that its conduct violated the TCPA before assessing whether to exercise its discretion to award enhanced damages.

> **B.   The evidence demonstrates that ViSalus did not know and had no reason to know that its conduct violated the TCPA because it mistakenly, but reasonably, believed that it had sufficient written consent.**

Courts assessing willfulness under the appropriate standard generally focus on whether a defendant knew it did not have the called party's consent to place the violative calls. A defendant

---

[3] *See, e.g.*, 47 U.S.C. §§ 303, 386, 362, 502, 504, 507, 510, 612.

willfully violates the standard where it knows or has reason to know that the called party revoked the consent or that the defendant never had consent in the first place.[4]

Here, ViSalus had no reason to know that the written consent it received from its promoters and customers was insufficient under the TCPA. In truth, it had every reason to believe to the contrary. Before 2012, the TCPA and the FCC's implementing guidelines prohibited making telemarketing calls using an artificial or prerecorded voice to residential or wireless lines without the called-party's "prior express consent." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 11643, 11644 (2016) (the "2016 Order"). That consent could be provided orally or in writing and did not require any magic words. *Id.* In 2012, and effective October 16, 2013, the FCC promulgated new rules that required prior express written consent for all prerecorded telemarketing calls to wireless and residential lines. *Id.* The new rules required that written consent include certain disclosures informing consumers that: "(1) the consumer authorizes the seller to deliver telemarketing calls to that number using an automatic telephone dialing system or an artificial or

---

[4] *See, e.g., N.L.*, 2019 WL 1428122, at *2 ("For the calls to have been deliberate violations, Plaintiff needed to demonstrate that the representatives calling after February 22, 2017 should have known that they were calling a person who did not provide prior express consent."); *Milana*, 2018 WL 3621366, at *3 ("Considering that Plaintiff previously instructed Defendant to stop calling her, Defendant willfully and knowingly made these calls without consent in violation of the TCPA.") *Haysbert v. Navient Sols., Inc.*, CV 15-4144 PSG (EX), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) (finding that the defendant acted willfully and knowingly when it continued placing calls to the plaintiff after it "knew that Plaintiff had revoked his consent for autodialed calls"); *Andrews v. All Green Carpet & Floor Cleaning Serv.*, 5:14-CV-00159-ODW EX, 2015 WL 3649585, at *6 (C.D. Cal. June 11, 2015) (trebling damages where the defendant demonstrated an intent and disregard for the law by blatantly failing to adhere to the plaintiff's multiple requests to stop calling); *Sapan v. Auth. Tax Services, LLC*, 13CV2782 JAH (JLB), 2014 WL 12493282, at *2 (S.D. Cal. July 15, 2014) ("Defendant knowingly or willfully violates the TCPA where Plaintiff notifies Defendant to stop calling and Defendant disregards the request."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1227 (S.D. Cal. 2014) (the defendant sufficiently pled a knowing and willful violation where he alleged that the defendant continued to call him after he told the defendant it had the wrong number).

prerecorded voice; and (2) agrees to provide that written consent without being required, directly or indirectly, to provide written consent as a condition of purchasing any property, goods or services." *Id.* When announcing this rule change, however, the FCC made the ambiguous statement that "once our written consent rules become effective . . . an entity will no longer be able to rely on non-written forms of express consent to make autodialed . . . telemarketing calls, and thus could be liable for making such calls ***absent prior written consent***." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1857 (2012) (emphasis added) (the "2012 Order").

Because of the FCC's ambiguous statement, it was not clear whether companies had to secure new written consents from their existing customers, or whether they could rely on prior express consents acquired under the old standards. Consequently, in 2015, the FCC had to clarify that consent applies per call and that "telemarketers should not rely on a consumer's written consent obtained before" the 2012 Order if the consent did not meet the new standards. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8014 (2015). But, the FCC recognized that the 2012 Order "could have reasonably been interpreted to mean that written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule." *Id.* Therefore, the FCC granted a retroactive waiver of the rule's application to the Coalition of Mobile Engagement Providers, the Direct Marketing Association, and their respective members for calls made to consumers from whom they had obtained prior express written consent under the pre-2012 rules and were called before October 7, 2015. *Id.* at 8014–15. The FCC has since granted waivers to seven other companies based on this confusion. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 11643, 11645 (2016).

Like numerous other well-intentioned companies (many of whom are seeking or have been granted retroactive waivers to avoid the TCPA's annihilative statutory liability), ViSalus was understandably confused by the FCC's changes to the rules governing prior express consent. The forms (paper and online) that ViSalus used to enroll its promoters into its salesforce satisfied the pre-October 16, 2013 requirements, and ViSalus believed that this consent was effective for its purposes. [Call Dep. 104:25–105:8, 123:3–24, Gidley 2016 Dep. 130:25–131:25, 147:15–148:4, 152:5–153:18, 154:17–156:2, attached hereto as Exhibit B.]  Hence, given the FCC's ambiguity, ViSalus had no reason to suspect that the written and express consents it had received from its promoters had been invalidated. Although ViSalus vigorously disputes that its conduct violated the TCPA, in response to Plaintiff's lawsuit, ViSalus undertook substantial efforts to ensure it did not violate the act, including ceasing outbound calls altogether and seeking a retroactive waiver from the FCC.[5]

Additionally, until this lawsuit, no one had ever suggested that ViSalus had violated the TCPA. Plaintiff has not and cannot show that ViSalus had even been sued prior to this case under the TCPA or received notice of possible violations. At trial, Plaintiff introduced only a single Better Business Bureau grievance filed by a promoter complaining that she had received calls from ViSalus after she had supposedly asked to be removed from ViSalus's call list. Trial Exhibit 37. Even then, ViSalus did not receive notification of that complaint until January 13, 2016, *after* it had already shut down its outbound support division. Trial Exhibit 37. If, as Plaintiff claimed, ViSalus had been willfully and knowing placing millions of unwanted

---

[5] ViSalus's petition for retroactive waiver, attached hereto as Exhibit A, is unopposed and is still pending before the FCC. ViSalus is not aware of the FCC ever having denied such waiver requests.

telemarketing prerecorded calls over multiple years, one would expect more than a single complaint.

ViSalus's conduct preceding and following Plaintiff's lawsuit belie a finding that ViSalus willfully or knowingly violated the TCPA. Thus, there is no basis for trebling any statutory damages.

### C. Even if the Court concludes ViSalus willfully violated the TCPA, the Court should decline to exercise its discretion to enhance damages.

Awarding treble damages under the TCPA is discretionary. 47 U.S.C. § 227(c)(3) ("the court ***may, in its discretion, increase*** the amount of the award to an amount equal to not more than 3 times the amount") (emphasis added). The purpose for trebling damages under the TCPA is to deter a party from future violations. *Drew v. Lexington Consumer Advocacy, LLC*, 16-CV-200-LB, 2016 WL 1559717, at *13 (N.D. Cal. Apr. 18, 2016).[6]

Trebling damages here would not have a deterrent effect on ViSalus, because there is no conduct to deter. ViSalus eliminated its outbound support team and liquidated its POM dialing equipment shortly after Plaintiff filed suit. Call Dep. 15:12–23, 34:17–23; Gidley 2016 Dep. 15:20–17:7, 90:25–91:6. It has not placed any outbound marketing calls in over three years and has no intention or capacity to deploy future campaigns. Moreover, if the jury's verdict stands and the Court enters a verdict at $500 per call, then the final judgment will exceed $900 million in statutory damages. A judgment of that magnitude would undoubtedly force ViSalus into

---

[6] *See also Krakauer v. Dish Network LLC*, 1:14-CV-333, 2017 WL 2242952, at *12 (M.D.N.C. May 22, 2017) ("treble damages are appropriate here because of the need to deter Dish from future violations and the need to give appropriate weight to the scope of the violations"); *J2 Glob.*, 2009 WL 4572726, at *8 (awarding treble damages "would serve to deter [defendant] from sending unsolicited faxes in the future and thereby promote the purpose of the TCPA.").

bankruptcy and end its business.[7] For these reasons, the Court should decline to treble damages, as doing so would hardly serve the statute's remedial purpose.[8]

This Court should further decline to impose treble damages because doing so would violate due process: "A statutory award violates due process 'only where the penalty prescribed is so severe and oppressive at to be wholly disproportioned to the offense and obviously unreasonable.'" *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 951–52 (C.D. Ill. 2017) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). Several courts have determined that multi-million and multi-billion dollar TCPA awards violate due process, such that those courts have reduced statutory damages awards considerably.

For example, in *United States v. Dish Network LLC*, the U.S. government and several states brought TCPA claims against Dish Network calling numbers on the national do-not-call list. 256 F. Supp. 3d at 817. The minimum statutory damages award of $500 per call would have exceeded $8.1 billion. *Id.* at 951. The court concluded that this award would violate due process because it represented 25% of the defendant's capital value and more than five years' of net

---

[7] Indeed, ViSalus's total net revenues in 2018 were approximately $65 million, but it operated at a negative $10 million net income.

[8] *See Ellis*, 2018 WL 6816112, at *6 (declining to treble damages where the minimum statutory damages were sufficient to serve the TCPA's remedial purpose); *Heidarpour v. Empire Capital Funding Group Inc.*, 18-CV-00250-YGR, 2018 WL 3455809, at *2 (N.D. Cal. July 18, 2018) ("Treble damages are not awarded of course, and may be denied in the absence of evidence of prior suits against the same defendant for violation of the TCPA, or that the amount of statutory damages would be 'considered trivial and thus not deter future misconduct.'"); *Roylance v. ALG Real Estate Services, Inc.*, 5:14-CV-02445-PSG, 2015 WL 1522244, at *11 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as modified,* 14-CV-02445-BLF, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015) (awarding treble damages where the trebled damages would serve to "deter [defendants] from [making calls that violate TCPA] in the future" and serve the TCPA's purposes); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, C-13-00229 JCS, 2013 WL 6571629, at *17 (N.D. Cal. Aug. 19, 2013), *report and recommendation adopted,* 13-CV-00229-YGR, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) (declining to treble damages despite finding that the defendant willfully violated the statute because the statutory damages were "sufficient to accomplish the purposes of the TCPA").

after-tax profits. *Id.* at 952. As a result, the amount was "wholly disproportionate to the offense and obviously unreasonable and might put [the defendant] out of business." *Id.* Therefore, the court "exercise[d] its discretion" to reduce the total judgment, which, including all other statutory damages and penalties, would have exceeded $783 billion, to $280 million. *Id.* at 982-83.

Similarly, in *Golan v. Veritas Entm't, LLC*, 4:14-CV-69 ERW, 2017 WL 3923162, at *4 (E.D. Mo. Sept. 7, 2017), the defendant placed 3,242,493 violative calls, which required a minimum TCPA damages award of $1,621,246,500. The court concluded that this amount was "obviously unreasonable and wholly disproportionate to the offense" and reduced the penalty on due process grounds to $10 per call or $32,424,930 in total. *Id.* "This reflects the severity of the offense, a six-day telemarketing campaign which placed 3.2 million telephone calls, as well as respecting the purposes of the TCPA to have a deterrent effect . . . ."[9]

At $500 per call, a judgment exceeding $900 million in statutory damages will destroy ViSalus, based on little more than a technical deficiency with its intake forms. On its face, such an award violates due process because it is oppressive, disproportionate to the violations, and facially unreasonable. Trebling these damages to over $2.7 billion will only exacerbate this constitutional affront.

---

[9] *See also*, *McCall Law Firm, PLLC v. Crystal Queen, Inc.*, 335 F. Supp. 3d 1124, 1134 (E.D. Ark. 2018) ("After a class is certified or damages are determined, if that occurs, the Crystal Defendants will have the opportunity to show that the statutory damages are in fact 'so severe and oppressive' as to be unconstitutional."); *Nece v. Quicken Loans, Inc.*, 8:16-CV-2605-T-23CPT, 2018 WL 1072052, at *3 (M.D. Fla. Feb. 27, 2018) (indicating that a multi-billion dollar judgment in an "unremarkable" TCPA case would "almost certainly" be foreclosed on due process grounds).

### III. CONCLUSION

This is hardly the case of a brazen and indiscriminate robo-caller with no relationship with the people receiving calls. On the contrary, the evidence does not support that ViSalus placed 1,850,436 calls in violation of the TCPA, let alone that ViSalus did so willfully. Therefore, the Court should decline to compound the jury's otherwise infirm verdict.

DATED this 10th day of May, 2019.

                        QUARLES & BRADY LLP

                        By */s/ John Maston O'Neal*

                        **John Maston O'Neal** (admitted pro hac vice)
                        john.oneal@quarles.com
                        **Zachary S. Foster** (admitted pro hac vice)
                        zachary.foster@quarles.com
                        QUARLES & BRADY LLP
                        101 E. Kennedy Blvd., Ste. 3400
                        Tampa, FL 33602
                        Telephone: 813.387.0300
                        Facsimile: 813.387.1800

                        MILLER NASH GRAHAM & DUNN LLP
                        Joshua M. Sasaki, P.C., OSB No. 964182
                        josh.sasaki@millernash.com
                        Nicholas H. Pyle, OSB No. 165175
                        nicholas.pyle@millernash.com
                        Telephone:  503.224.5858
                        Facsimile:  503.224.0155

                        *Attorneys for Defendant ViSalus, Inc.*

I hereby certify that I served the foregoing on Plaintiff the foregoing document:

| | |
|---|---|
| Scott F. Kocher<br>Stephen J. Voorhees<br>FORUM LAW GROUP LLC<br>811 S.W. Naito Parkway, Suite 420<br>Portland, Oregon 97204<br>Telephone: 503.445.2102<br>Fax: 503.445.2120<br>E-mail: scott@forumlawgroup.com<br>     stephen@forumlawgroup.com<br>*Attorneys for Plaintiff* | Rafey S. Balabanian (*pro hac vice*)<br>Eve-Lynn Rapp (*pro hac vice*)<br>EDELSON PC<br>123 Townsend Street, Suite 100<br>San Francisco, CA 94107<br>Telephone: 415.212.9300<br>Fax: 415.373.9435<br>E-mail: rbalabanian@edelson.com<br>     erapp@edelson.com<br>*Attorneys for Plaintiff* |
| Stefan Coleman<br>Law Offices of Stefan Coleman, LLC<br>1309 Jericho Tpke, 2nd Floor<br>New Hyde Park, NY 11040<br>Tel: 877.333.9427<br>Fax: 888.498.8946<br>E-mail: law@stefancoleman.com<br>*Attorneys for Plaintiff* | Benjamin H. Richman (*pro hac vice*)<br>EDELSON PC<br>350 N. LaSalle Street, 14th Floor<br>Chicago, IL 60654<br>Telephone: 312.589.6370<br>Fax: 21.589.6378<br>E-mail: brichman@edelson.com<br>*Attorneys for Plaintiff* |

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 10th day of May 2019,

*/s/John Maston O'Neal*
Attorneys for Defendant ViSalus, Inc.

Defendant's Opening Brief Regarding Willfulness