# EXHIBIT "A"

# PETITION OF VISALUS, INC. FOR RETROACTIVE WAIVER DATED SEPTEMBER 13, 2017, BEFORE THE FEDERAL COMMUNICATIONS COMMISSION

**Before The**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) CG Docket No. 02-278 |
| | ) |
| Petition of ViSalus, Inc., | ) |
| for Retroactive Waiver of | ) |
| 47 C.F.R. § 64.1200(a)(2), (a)(3), | ) |
| (f)(8) in accordance with | ) |
| July 10, 2015 Declaratory Ruling and Order | ) |

<u>**PETITION FOR RETROACTIVE WAIVER**</u>

<u>**REQUEST FOR EXPEDITED RULING**</u>

**I.**    <u>**INTRODUCTION**</u>

In light of the Federal Communication Commission's ("Commission") ruling on July 10, 2015, ViSalus, Inc. ("ViSalus"), through its counsel, respectfully requests that the Commission grant it a retroactive waiver of the prior express consent requirements contained in 47 C.F.R. § 64.12000(a)(2), (a)(3) and (f)(8). There is good cause to grant ViSalus such a waiver, and ViSalus is similarly situated to the nine petitioners to whom the Commission granted retroactive waivers of the revised prior express consent rules effective October 1, 2013. <u>ViSalus has been sued in a class action based in part on calls by ViSalus to persons who gave consent to ViSalus under the rules effective prior to October 1, 2013. ViSalus requests expedited consideration of this petition as dispositive motions are due in that lawsuit on May 10, 2018.</u>

ViSalus is a multi-level marketing company in the business of selling healthy lifestyle products, such as meal replacement shakes, healthy energy drinks, and healthy snacks, to help people lose weight and achieve healthy lifestyle goals. Customers and promoters (independent contractors) who wish to be contacted by ViSalus regarding

1

company offers, news, service, and products could provide their residential landline or cellular telephone number to ViSalus in writing either (1) on a hardcopy product order form or promoter application, [1] or (2) online in the "company communications" screen on the person's ViSalus account (called a "ViNet" account). [2] Submitting a telephone number was never a condition of any purchase.

Despite this entirely voluntary process, ViSalus has been sued in a class action lawsuit, alleging that it violated the Telephone Consumer Protection Act ("TCPA") by making marketing calls to customers and promoters using a prerecorded message or artificial voice without the called parties' prior express consent. The named plaintiff, Lori Wakefield, provided her residential telephone number online to ViSalus in February 2012, when she signed up to be a ViSalus promoter. She alleges she was called by ViSalus using a prerecorded marketing message in April 2015. On October 1, 2015, she filed a putative class-action lawsuit against ViSalus in the United States District Court, District of Oregon

---

[1] The hardcopy ViSalus promoter applications used in 2010 through October 2013 the following text under the order form for the person to purchase a promoter kit and products. **Communication Preferences:**
Home Phone#:_____ Mobile Phone#: _____
Mobile Phone Provider (Required for ViSalus Mobile Updates (SMS) _____
E-mail Address: _____
Receive ViSalus News & Updates via: Check at least one
☐ Phone    ☐ Email    ☐ Mobile Text Message (SMS)    ☐ None

The customer application, underneath the products that could be purchased, provided spaces for customers to provide their home and mobile telephone numbers and underneath, the following:
"☐ **Yes, I would like to receive communications from ViSalus™ regarding special discounts and promotions.**"
[2] The "Company Communications" tab on the ViNet account allowed individuals to check or not check boxes for communications by email and/or telephone, including "YES – I want to get important ViSalus news right to my phone via text message" and "YES – I want to receive important phone messages from ViSalus management." Below those boxes were spaces for the person to input an email, phone number and mobile phone number.

(the "Court"), pending as *Wakefield v. ViSalus, Inc.*, No. 3:15cv01857-BR.  The *Wakefield* lawsuit is based, in part, on calls to persons who provided their telephone numbers to ViSalus, by one of the two methods discussed above, prior to October 16, 2013, and who were called after that date.  In other words, the lawsuit asserts that ViSalus had to obtain new consent from all of its customers and promoters, in the form set forth in the revised rules,[3] in order to call those persons using a prerecorded message or artificial voice starting October 16, 2013.[4]

In the *2015 TCPA Declaratory Ruling*, the Commission recognized that statements in the *2012 TCPA Order* caused legitimate confusion about whether a written consent that a business obtained from a consumer before October 16, 2013 was sufficient consent to make marketing calls, using prerecorded messages or an artificial voice, to the consumer after that date.[5]  Accordingly, the Commission granted two petitioners retroactive waivers allowing them to rely on the "old" prior written consents already provided by their consumers before October 16, 2013, for calls to those consumers from October 16, 2013 through October 7, 2015 (89 days after the *2015 TCPA Declaratory Ruling*, being a reasonable time to come into compliance with the new prior express written consent rule).[6]  ViSalus is similarly

---

[3] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1833, para. 7 (Feb. 15, 2012) (the "*2012 TCPA Order*").

[4]  ViSalus does not concede that Ms. Wakefield's claims have merit, and ViSalus seeks this waiver because it is similarly situated to those petitions who have received waivers as a result of the *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd 7961 (July 10, 2015) (the "*2015 TCPA Declaratory Ruling*").

[5]  *Id.*, at 8014, para. 101 ("We nevertheless acknowledge evidence of confusion on the part of Petitioners, and believe it is reasonable to recognize a limited period within which they could be expected to obtain the prior express written consent required by our recently effective rule"

[6]  *Id.*, at 8014-15, para. 102.

situated to the petitioners granted a waiver in the *2015 TCPA Declaratory Ruling* as well as to seven petitioners granted the same waiver in 2016, and good cause exists for the Commission to likewise grant ViSalus the same retroactive waiver.

## II.      BACKGROUND

### A.      The TCPA and Revisions to the Commission's Rules

In relevant party, the TCPA prohibits (for non-emergency calls): (1) initiating telephone calls using to a residential line using a prerecorded message or artificial voice without the called-party's "prior express consent",[7] and (2) making any call using an automatic telephone dialing system ("autodialer") or prerecorded message or artificial voice to a wireless telephone number without the called-party's "prior express consent."[8]  The TCPA does not define what "prior express consent" means.  Before the Commission's 2012 rule revisions, consumers could give "prior express consent" orally or in writing, and no particular "magic language" was required for such consent (other than the consent must be to receive a marketing call).[9]

The *2012 TCPA Order* revised the TCPA rules to require, among other things, prior express *written* consent, *with certain disclosures*, for all telemarketing calls to wireless numbers using an autodialer or a prerecorded message or artificial voice, and for all telemarketing calls to residential lines using a prerecorded message or artificial voice.[10] Under the revised rules, the requisite disclosures for obtaining prior express written consent had to include the telephone number to which the consumer authorized to receive the

---

[7]  47 U.S.C. § 227(b)(1)(B).
[8]  47 U.S.C. § 227(b)(1)(A).
[9]  *See 2012 TCPA Order*, 27 FCC Rcd at 1833, para. 7.
[10]  *Id*., at 1838, para. 20; 47 C.F.R. § 64.1200(f)(8).

QB\48110111.1

telemarketing messages, and clear and conspicuous statements that: (1) the consumer was authorizing the seller to deliver the telemarketing calls to that phone number using an autodialer or prerecorded messages or artificial voice; and (2) the consumer's consent is not required to purchase any property, goods or services.[11]  When announcing this rule change, the Commission made the ambiguous statement that "once our written consent rules become effective . . . an entity will no longer be able to rely on non-written forms of express consent to make autodialed . . . telemarketing calls, and thus could be liable for making such calls *absent prior written consent.*"[12]  The 2012 rule changes took effect October 16, 2013.[13]

> **B.**     **The Commission Issues Retroactive Waivers.**

The Direct Marketing Association ("DMA") and the Coalition of Mobil Engagement Providers ("Coalition") filed petitions asking the Commission to forbear from enforcing the new written consent requirements when companies had already obtained written consent from consumers (albeit, not with the newly required disclosures) to call their wireless numbers, and to clarify that the new rules did not nullify these previously obtained consents.[14]  In responding to these two petitions in 2015, the Commission clarified that consent applies per call and that "telemarketers should not rely on a consumer's written consent obtained before the *2012 TCPA Order* revised rules took effect."[15]  However, the Commission acknowledged that the language in the *2012 TCPA Order* "could have reasonably been interpreted to mean that written consent obtained prior to the consent rule's

---

[11]  *Id.*; *see also 2012 TCPA Order*, 27 FCC Rcd at 1844, para. 33.
[12]  *Id.,* at 1857, para. 68 (emphasis added); *see also 2015 TCPA Declaratory Ruling*, 30 FCC Rcd at 8014, para. 101..
[13]  77 Fed. Reg. 63240 (Oct. 16, 2012).
[14]  *2015 TCPA Declaratory Ruling*, 30 FCC Rcd at 8012-13, para. 98.
[15]  *Id.*, at 8014, para. 101.

effective date would remain valid even if it does not satisfy the current rule." [16]  Therefore, the Commission granted a retroactive waiver of the rule's application to the DMA and Coalition, and their members, for calls made to consumers from whom they had obtained prior express written consent under the pre-2012 rules, and whom were called until October 7, 2015.[17]

Since the *2015 TCPA Declaratory Ruling*, the Commission granted waivers to seven petitioners that demonstrated that they were similarly situated to the DMA and Coalition.[18] The Commission found that there was good cause for each to waive its rules.[19]  The Commission may waive its rules if: "(1) the waiver would better serve the public interest than would application of the rule' and (2) special circumstances warrant a deviation from the general rule."[20]  The Commission found that special circumstances warranted a waiver to the seven petitioners because, as stated in the *2015 TCPA Declaratory Ruling*, there was confusion about the 2012 written-consent order because they could reasonably have been interpreted by the petitioners to mean that written consent obtained prior to the *2012 TCPA Order* was still valid.[21]  The seven petitioners asserted that there was industry-wide confusion after the *2012 TCPA Order* went into effect, and that they would need more time

---

[16]  *Id.*, at 8014-15, paras. 101, 102.

[17]  *Id.*

[18]  Order, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd 11643, 11645, para. 5 (Oct. 14, 2016) ("*2016 Order*").

[19]  *Id.*, at 11647-48, para. 11 (citing 47 C.F.R. § 1.3; *WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969), *appeal after remand*, 459 F.2d 1203 (D.C. Cir. 1972), *cert denied*, 409 U.S. 1027 (1972); *Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164 (D.C. Cir. 1990)).

[20]  *Id.* (citing *Northeast Cellular*, 897 F.2d at 1166).  *See also WAIT Radio*, 418 F.2d at 1157 (pursuant to its delegated authority, the Commission may waive its rules if the requested relief would not undermine the policy objectives of the rule and would serve the public interest).

[21]  *2016 Order*, 31 FCC Rcd at 11648, para. 12.

to obtain new consents under the *2012 TCPA Order* without running the risk of liability, and that they would benefit from the added clarity of a retroactive waiver.[22]  Each of the petitioners demonstrated that they incorrectly but reasonably interpreted the Commission's *2012 TCPA Order* by citing that order's language and the lack of evidence to refute their claimed confusion.[23]  The Commission did not require proof of actual confusion for the DMA or Coalition, or the seven petitioners granted waivers in October 2016.[24]

## III.    VISALUS IS SIMILARLY SITUATED AND GOOD CAUSE EXISTS FOR ISSUING IT A RETROACTIVE WAIVER.

ViSalus is similarly situated to the DMA, the Coalition and the seven petitioners to whom the Commission granted retroactive waivers in 2016.  Like those entities, before October 16, 2013, ViSalus obtained prior express written consent from consumers to call them with marketing messages under the "old" prior express consent rules.  Like those entities, ViSalus called consumers from whom it had that valid prior express written consent under the "old" rules after October 16, 2013, with a prerecorded marketing message.  Like several of those entities, ViSalus is facing liability due to its calls to those consumers.  On June 23, 2017, the Court certified a class of consumers that ViSalus called with a marketing message, using a prerecorded message or an artificial voice, in the four years before the complaint was filed, from whom Plaintiff contends ViSalus lacked prior express consent under the TCPA.[25]  ViSalus ceased making outgoing marketing calls by January 2016, and its consent form complies with the *2012 TCPA Order*.

---

[22] *Id.*, at para. 12, n.45.
[23]  *Id.*, at para. 13.
[24]  *Id.*, at 11650, para 16.
[25]  A copy of the Order is attached hereto at Exhibit A.

7

As set forth above, the Commission may waive any provision of its rules "for good cause shown,"[26] meaning "(1) special circumstances warrant a deviation from the general rule and (2) the waiver would better serve the public interest than would application of the rule."[27] Under these two factors, there is good cause to issue the requested retroactive waiver to ViSalus.

Special circumstances warrant deviation from the *2012 TCPA Order* because that order caused confusion about whether callers could rely on the prior express written consent obtained from called parties before October 16, 2013 or whether they needed to obtain new prior express written consent, in the form set forth in the *2012 TCPA Order*, from all of their customers.  The ambiguous statements in the *2012 TCPA Order*, and the Commission's acknowledgement that such statements were confusing,[28] warrant a deviation from Section 64.1200(a)(2), (a)(3) and (f)(8), and support granting a retroactive waiver to ViSalus.

Granting ViSalus a retroactive waiver would serve the public interest because the TCPA and the Commission's rules issued thereunder are intended to "empower consumers to decide which robocalls and text messages they receive."[29]  That purpose is not served by subjecting ViSalus to millions of dollars in liability for calling consumers with a prerecorded message or artificial voice who, before October 16, 2013, provided ViSalus in writing with

---

[26] 47 C.F.R. § 1.3.

[27] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 FCC Rcd 13998, 14008, para. 23 (Oct. 30, 2014) (citing *Northeast Cellular Tel. Co.*, 897 F.2d at 1166).

[28] *2015 TCPA Declaratory Ruling*, 30 FCC Rcd at 8014, para. 101.

[29] *Id.* at 7964, para. 1.

their prior express consent to be called.  Indeed, the Commission has already determined that granting a retroactive waiver is in the public interest in similar circumstances.[30]

## IV.   **CONCLUSION**

For the foregoing reasons, ViSalus respectfully requests that the Commission grant it a waiver of 47 C.F.R. § 64.1200(a)(2), (a)(3) and (f)(8) for all telephone calls that ViSalus made using a prerecorded message or artificial voice, or autodialer, from October 16, 2013 through October 7, 2015, to consumers who provided prior express written consent before October 16, 2013 (and did not later revoke consent).

Respectfully submitted this 13th day of September, 2017.

QUARLES & BRADY LLP

/s/ Sarah R. Anchors
Sarah R. Anchors
Renaissance One
2 N. Central Ave.
Phoenix, AZ 85004
602-229-5788
sarah.anchors@quarles.com

*Attorneys for Petitioner ViSalus, Inc.*

---

[30] *2016 Order*, 31 FCC Rcd at 11647-49, paras. 11, 16; *2015 TCPA Declaratory Ruling*, 30 FCC Rcd at 1830, para. 1.

# EXHIBIT A

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LORI WAKEFIELD, individually and
on behalf of all others similarly                3:15-cv-01857-BR
situated,

                                          OPINION AND ORDER

        Plaintiff,

    v.

VISALUS, INC., a Nevada
corporation,

        Defendant.

SCOTT F. KOCHER
Forum Law Group LLC
811 S.W. Naito Parkway, Suite 420
Portland, OR 97204
(503) 445-2102

RAFEY S. BALABANIAN
EVE-LYNN RAPP
STEWART R. POLLOCK
Edelson PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
(415) 212-9300

       Attorneys for Plaintiff,

JOSHUA M. SASAKI
JONATHAN H. SINGER
Miller Nash Graham & Dunn LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
(503) 224-5858

1 - OPINION AND ORDER

**SARAH R. ANCHORS**
Quarles & Brady LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004
(602) 229-5200

      Attorneys for Defendant

**BROWN, Judge.**

      This matter comes before the Court on Plaintiff Lori Wakefield's Renewed Motion (#69) for Class Certification.[1]

      For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Renewed Motion for Class Certification.

<u>**BACKGROUND**</u>

**I.**   <u>**Factual Background**</u>

      The following facts are taken from Plaintiff's First Amended Class Action Complaint (#36), Plaintiff's Renewed Motion for Class Certification, and Defendant's Response to Plaintiff's Motion.

      Defendant ViSalus, Inc., is a multi-level marketing company that sells weight-loss products and dietary supplements to promote healthy lifestyles.  ViSalus primarily sells its products

---

     [1] Plaintiff filed an initial Motion (#2) to Certify Class at the time she filed her Complaint.  That Motion was withdrawn by Plaintiff on February 5, 2016 (see Docket #37).

2 - OPINION AND ORDER

through "promoters" who are independent contractors who have enrolled with ViSalus to sell its products through their own business network.  ViSalus also sells a small amount of products directly to customers through its website.

Promoters and customers have online accounts with ViSalus in order to purchase ViSalus products.  The online account has a "communications tab" where the promoter or customer may provide a contact number to receive information from ViSalus by telephone. This contact information can be changed at any time.  ViSalus filters its communications with promoters and customers based on the indicated preferences in the online account.

In June 2012 ViSalus initially created an outbound calling team titled "Outbound Support" to contact people who had attempted to purchase products but whose credit cards were declined.  Subsequently, Outbound Support began to call promoters and customers regarding new products.  They also conducted "Winback" campaigns by calling promoters and customers who had not purchased products for a certain period (generally three to nine months) to let them know about special deals in an effort to regain their business.

Initially the Outbound Support team manually dialed telephone numbers and did not use a prerecorded message or artificial voice.  In late 2014 Outbound Support started using a function on the telephone system titled "Progressive Outreach

3 - OPINION AND ORDER

Manager" (POM) to dial telephone numbers automatically.  Later Outbound Support began using prerecorded messages or an artificial voice to introduce the call and to direct the recipient to "dial 1" to be connected to a live person.  The Outbound Support team created lists for the calling campaigns from ViSalus's online database using parameters for a specific campaign, and pulled information that matched those parameters from online account profiles.  The Outbound Support team would then upload the lists to POM and save copies in a digital folder for reference.  ViSalus produced "campaign detail reports" that provided summaries of the number of calls made on a particular day for a particular campaign and the results of those calls.

Plaintiff states in her Class Action Allegation Complaint (#1) filed October 1, 2015, that she signed up to be a ViSalus "affiliate" in February 2013.[2]  Within a month, however, Plaintiff was "not happy" with the company or its products and cancelled her account.  Plaintiff alleges after she cancelled her account, ViSalus repeatedly called her to solicit her return, but she told them to never contact her again and to stop calling her number.

---

[2]  ViSalus states in its Memo in Opposition to Plaintiff's Motion for Certification that Plaintiff and her husband became promoters in February 2012.  ViSalus references an excerpt from Plaintiff's deposition, but the page cited is not included in ViSalus's Exhibit.  For purposes of this Motion, therefore, the Court accepts Plaintiff's allegation as accurate.

4 - OPINION AND ORDER

Plaintiff alleges in April 2015 she began receiving calls
from ViSalus at the telephone number that she had registered with
the National Do-Not-Call Registry.  During one of those calls
Plaintiff instructed the caller to stop calling her and to make
sure she was on ViSalus's internal do-not-call list.  Plaintiff
alleges ViSalus, nevertheless, continued to call her.

## II.   **Procedural Background**

On October 1, 2015, Plaintiff filed a Class Action
Allegation Complaint (#1) in which she alleges ViSalus violated
the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.

On February 5, 2016, Plaintiff filed her First Amended Class
Action Allegation Complaint (FAC)(#36) alleging three separate
claims against ViSalus.  In Claim One Plaintiff alleges ViSalus
violated § 227(c)(5) of the TCPA when ViSalus made more than one
unsolicited telemarketing call to her and putative class members
within a 12-month period without having "prior express consent"
to place such calls even though Plaintiff and putative class
members' telephone numbers had been registered with the National
Do-Not-Call Registry for at least 30 days.  In Claim Two
Plaintiff alleges ViSalus violated § 227(b)(1)(A)(iii) of the
TCPA when ViSalus made unsolicited telemarketing calls to her and
putative class members without "prior express consent" and used
artificial or prerecorded voices when placing such calls.  In
Claim Three Plaintiff alleges ViSalus violated Oregon Revised

5 - OPINION AND ORDER

Statutes § 646.563 when ViSalus called Plaintiff and putative
class members after they had advised ViSalus that they did not
want to receive such unsolicited telemarketing calls.

On February 10, 2017, Plaintiff filed her Renewed Motion for
Class Certification seeking to certify three classes defined as
follows:

> **"Do-Not-Call Class"** (based on Claim One) - All
> individuals in the United States who received more than
> one telephone call made by or on behalf of ViSalus
> within a 12-month period:  (1) promoting ViSalus's
> products or services; (2) at a telephone number that
> had been registered with the National Do Not Call
> Registry for at least 30 days at the time of each call;
> (3) where such individual had not entered into any
> purchase or transaction with ViSalus within the 18
> months immediately preceding such calls; and (4) where
> neither ViSalus nor its agents had any current record
> of express written consent to place such calls at the
> times such calls were made.
>
> **"Robocall Class"** (based on Claim Two) - All individuals
> in the United States who received a telephone call made
> by or on behalf of ViSalus:  (1) promoting ViSalus's
> products or services; (2) where such call featured an
> artificial or prerecorded voice; and (3) where neither
> ViSalus nor its agents had any current record of prior
> express written consent to place such call at the time
> such call was made.
>
> **"Oregon-Stop-Calling Class"** (based on Claim Three) -
> All residents of the State of Oregon who (1) received a
> telephone call made by or on behalf of ViSalus;
> (2) promoting ViSalus's products or services; (3) where
> ViSalus or its agents had a "stop calling" request on
> record for the telephone number called at the time such
> call was made.

Plaintiff also seeks appointment as the class representative

6 - OPINION AND ORDER

and appointment of her attorneys as class counsel.[3]

## STANDARDS

Federal Rule of Civil Procedure 23 governs class
certification and provides:

> (a) Prerequisites.  One or more members of a class may
> sue . . . as representative parties on behalf of
> all members only if:
>
> (1) the class is so numerous that joinder of all
> members is impracticable;
>
> (2) there are questions of law or fact common to
> the class;
>
> (3) the claims or defenses of the representative
> parties are typical of the claims or defenses
> of the class; and
>
> (4) the representative parties will fairly and
> adequately protect the interests of the
> class.
>
> (b) Types of Class Actions.  A class action may be
> maintained if Rule 23(a) is satisfied and if:
>
> * * *
>
> (3) the court finds that the questions of law or
> fact common to class members predominate over
> any questions affecting only individual
> members, and that a class action is superior
> to other available methods for fairly and
> efficiently adjudicating the controversy.
> The matters pertinent to these findings
> include:

---

[3] ViSalus does not address either of these requests in
their Response, and, therefore, the Court considers the requests
to be unopposed.

7 - OPINION AND ORDER

> (A) the class members' interests in
>     individually controlling the prosecution
>     or defense of separate actions;
>
> (B) the extent and nature of any litigation
>     concerning the controversy already begun
>     by or against class members;
>
> (C) the desirability or undesirability of
>     concentrating the litigation of the
>     claims in the particular forum; and
>
> (D) the likely difficulties in managing a
>     class action.

In *Wal-Mart Stores, Inc. v. Dukes* the United States Supreme

Court addressed class-action certification and set out general

standards under Rule 23:

> The class action is "an exception to the usual rule
> that litigation is conducted by and on behalf of the
> individual named parties only." *Califano v. Yamasaki*,
> 442 U.S. 682, 700-701 (1979).  In order to justify a
> departure from that rule, "a class representative must
> be part of the class and 'possess the same interest and
> suffer the same injury' as the class members." *East
> Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S.
> 395, 403 (1977)(quoting *Schlesinger v. Reservists Comm.
> to Stop the War*, 418 U.S. 208, 216 (1974)).  Rule 23(a)
> ensures that the named plaintiffs are appropriate
> representatives of the class whose claims they wish to
> litigate.  The Rule's four requirements — numerosity,
> commonality, typicality, and adequate representation —
> "effectively 'limit the class claims to those fairly
> encompassed by the named plaintiff's claims.'" *General
> Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156
> (1982)(quoting *General Telephone Co. of Northwest v.
> EEOC*, 446 U.S. 318, 330 (1980)).

564 U.S. 338, 348 (2011).

The decision to grant or to deny class certification is

within the discretion of the trial court.  *Bateman v. Am. Multi-

Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).  The plaintiff

8 - OPINION AND ORDER

has the burden to comply with Rule 23. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). A class may be certified only if the court is satisfied "after a rigorous analysis that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350-51 (citing *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). A class may be certified as to one or more claims without certifying the entire complaint. Fed. R. Civ. P. 23(c)(4).

The court must determine whether certification is based on actual as opposed to presumed compliance with the requirements of Rule 23. *Wal-Mart*, 564 U.S. at 350 (citing *Falcon*, 457 U.S. at 160). Because Rule 23 "is not a mere pleading standard," a party seeking class certification "must affirmatively demonstrate compliance with the Rule." *Wal-Mart,* 564 U.S. at 351. This inquiry may in some cases overlap into the "merits of plaintiff's underlying claim" because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action." *Id.* (quoting *Falcon*, 457 U.S. at 160).

"Parties seeking class certification bear the burden of demonstrating that they have met each of the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011)(citation omitted).

## DISCUSSION

Plaintiff proposes to bring this action against ViSalus for violation of the TCPA on behalf of several classes.  ViSalus, however, opposes certification of each proposed class on the ground that Plaintiff has not satisfied the requirements of Rule 23.

## I.   Telephone Consumer Protection Act (TCPA)

Under the TCPA it is unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" or "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A),(B).  In addition, the TCPA allows a private right of action for a person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the TCPA if the person's number was listed on the National "Do-Not-Call" Registry.  47 U.S.C. § 227(c)(5).

Oregon law similarly provides a person engages in an unlawful practice "if, during a telephone solicitation, the called party states a desire not to be called again and the

10 - OPINION AND ORDER

person making the telephone solicitation makes a subsequent
telephone solicitation of the called party at that number."
Or. Rev. Stats. § 646.563.

## II.  **The Robocall Class**

ViSalus contends the Robocall Class should not be certified
on the grounds that (1) individual class members lack standing,
(2) the class definition is over-inclusive because it includes
members who were not harmed, (3) the class does not meet
superiority and predominance requirements of Rule 23(b)(3), and
(4) certification would result in denial of procedural fairness
and have an undesirable result.

### A.  **Standing**

ViSalus contends the Robocall Class cannot be certified
on the grounds that standing for each class member cannot be
determined based on common proof due to the individualized nature
of each class member's injuries.  ViSalus argues each class
member must be shown to have suffered an "injury-in-fact" and
such injury does not exist based merely on the use of an
autodialer.

Plaintiff, in turn, contends unsolicited contact
without any additional harm is sufficient to confer standing
under the TCPA, that Plaintiff has standing because she alleges
such a violation, and that Plaintiff's standing alone is
sufficient to support class certification.

11 - OPINION AND ORDER

In *Bates v. UPS* the Ninth Circuit stated:

> In a class action, standing is satisfied if
> at least one named plaintiff meets the
> requirements.  See *Armstrong v. Davis*, 275
> F.3d 849, 860 (9th Cir. 2001).  The plaintiff
> class bears the burden of showing that the
> Article III standing requirements are met.
> See *id.* at 860-61.  As we know from the oft-
> repeated passages in *Lujan*, standing requires
> that (1) the plaintiff suffered an injury in
> fact, *i.e.*, one that is sufficiently
> "concrete and particularized" and "actual or
> imminent, not conjectural or hypothetical,"
> (2) the injury is "fairly traceable" to the
> challenged conduct, and (3) the injury is "likely"
> to be "redressed by a favorable decision."  *Lujan
> v. Defenders of Wildlife*, 504 U.S. 555 (1992)
> (quotation marks and citations omitted).

511 F.3d 974, 985 (9th Cir. 2007).  The requirement of standing

is satisfied if at least one named plaintiff meets the

requirements of Article III standing.  *Fox-Quamme v. Health Net

Health Plan of Oregon, Inc.,* 2017 WL 1034202, at *4 (D. Or. Mar.

9, 2017)(citing *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007)).

In *Van Patten v. Vertical Fitness Group, LLC*, the Ninth

Circuit held the "[u]nsolicited telemarketing phone calls or text

messages, by their nature, invade the privacy and disturb the

solitude of their recipients.  A plaintiff alleging violation

under the TCPA 'need not allege any *additional* harm beyond the

one Congress identified.'"  847 F.3d 1037, 1043 (9th Cir.

2017)(quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549

(2016))(emphasis in original).  The court noted:

> The TCPA establishes the substantive right to be
> free from certain types of phone calls and texts

> absent consumer consent.  Congress identified
> unsolicited contact as a concrete harm, and gave
> consumers a means to redress this harm.  We
> recognize that Congress has some permissible role
> in elevating concrete, *de facto* injuries
>
> previously inadequate in law "to the statute of
> legally cognizable injuries."  Citation omitted.

847 F.3d at 1043.

Here Plaintiff alleges she, in addition to other members of the class, received unsolicited telemarketing calls from ViSalus using an autodialer system in violation of the TCPA.

On this record the Court concludes Plaintiff sufficiently alleges an injury for purposes of standing, and, therefore, Plaintiff may maintain this action on behalf of herself and putative class members.

**B.   Over-Inclusive**

ViSalus contends the Robocall Class is over-inclusive on the grounds that it includes uninjured members who did not answer the calls or did not receive a prerecorded message and such members are not a *de minimis* portion of the class.  *See In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017)(finding over-inclusiveness, including plaintiffs who were not harmed in the class definition, "would not defeat class certification as long as the uninjured parties represent a *de minimis* portion of the class").  *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 25 (1st Cir. 2015)("We think that a certified class may include a *de*

13 - OPINION AND ORDER

*minimis* number of potentially uninjured parties.").

Plaintiff contends the *de minimis* requirement applies to Plaintiff's theory of liability rather than to the number of members in the class. Thus, as long as the class definition is "reasonably co-extensive with [p]laintiff's chosen theory of liability," it is not over-inclusive even if it includes some members who did not sustain any injury. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016).

In *Torres* the Ninth Circuit noted "even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Id.* at 1136.  The court held inclusion of uninjured members in the class did not defeat the class certification. *Id.*  Instead the court concluded members' injuries constituted a merits dispute regarding the scope of liability rather than an issue for resolution at the class-certification stage. *Id.* at 1136-37.

Here the Robocall Class definition includes persons "who received a telephone call . . . promoting products or services . . . [using] an artificial or prerecorded voice . . . [without] prior express written consent" and is consistent with Plaintiff's theory of violation of the TCPA.  Thus, pursuant to *Torres*, the possibility that some members within the class may not have sustained injury does not preclude certification of the class.

14 - OPINION AND ORDER

On this record the Court concludes the Robocall Class
is not over-inclusive.

**C.    Predominance and Superiority Requirements**

The predominance element of Rule 23 "tests whether
proposed classes are sufficiently cohesive to warrant
adjudication by representation." *Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 615 (1997).  A "central concern of the Rule
23(b)(3) predominance test is whether 'adjudication of common
issues will help achieve judicial economy.'" *Vinole v.*
*Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir.
2009)(quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d
1180, 1189 (9th Cir. 2001)).  The predominance inquiry imposes on
the Court the "duty to take a 'close look' at whether common
questions predominate over individual ones." *Comcast Corp. v.*
*Behrend*, 133 S. Ct. 1426, 1432 (2013).  The superiority element
requires courts to consider the "likely difficulties in managing
a class action" when evaluating whether a class action is
superior to other methods of adjudication.  Fed. R. Civ. P.
23(b)(3)(D).

ViSalus contends Plaintiff fails to meet the
predominance and superiority requirements of Rule 23(b)(3) on the
ground that the proposed class is "unmanageable" because there is
not an "objective" way to reliably identify class members.

In response Plaintiff contends ViSalus is attempting to

15 - OPINION AND ORDER

argue an "ascertainability" requirement, which the Ninth Circuit
rejected in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (2017).
In any event, Plaintiff asserts she has objectively defined the
Robocall Class based on ViSalus's conduct.

In *Briseno v. ConAgra Foods, Inc.*, the Ninth Circuit
held class proponents are not required to demonstrate that there
is an administratively feasible way to determine who is in the
class in order for the class to be certified.  844 F.3d at 1133.
The court noted "a separate administrative feasibility
prerequisite to class certification is not compatible with the
language of Rule 23."  *Id.* at 1123.  The appeals court upheld the
district court's determination that it was sufficient at the
certification stage for the class to be defined by an objective
criterion; *i.e.*, purchase of the defendant's product during the
class period in that case.  *Id.* at 1124.

Here members of the Robocall Class are defined as any
individuals who received calls from ViSalus promoting products or
services that featured an artificial voice or prerecorded voice
when there was not any record of prior express consent to receive
such a call.  Accordingly, the Court concludes the Robocall Class
definition reflects an objective criterion for determining class
members and is appropriate at the certification stage.

The Robocall Class also seeks to hold ViSalus liable
for telemarketing calls using an artificial or prerecorded

16 - OPINION AND ORDER

message without prior express consent in violation of the TCPA.
The individual issues of damages and express consent, however,
are not determinative at the certification stage.

Accordingly, the Court concludes adjudication of issues
common to Robocall Class members predominate over individual
class-member issues.

### D.   Superiority Requirement, Procedural Fairness, and Undesirable Results

ViSalus contends certification of the Robocall Class
does not meet the superiority requirement of Rule 23(b)(3), will
sacrifice procedural fairness, and will result in an undesirable
damage award.  *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211
(9th Cir. 1975).  ViSalus argues Plaintiff and putative class
members suffered little or no harm compared to the potentially
significant and disproportionate award of statutory damages
against ViSalus, which could be in the billions of dollars and
could put ViSalus out of business.

Plaintiff contends she has met the requirements of
Rule 23, and the possibility of a significant damages award
should not be the basis for the Court to deny class
certification.

Although Plaintiff does not seek a specific amount of
damages, the TCPA provides for statutory damages of between $500
and $1,500 for willful violations.  In addition, the Advisory
Committee Notes to Rule 23 provide:

17 - OPINION AND ORDER

> Subdivision (b)(3) encompasses those cases in
> which a class action would achieve economies of
> time, effort, and expense, and promote uniformity
> of decisions as to persons similarly situated,
> without sacrificing procedural fairness or
> bringing about other undesirable results.

39 F.R.D. 69, at 102-03.

In *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), the plaintiff filed a class-action complaint against the defendant for violating the Fair and Accurate Credit Transactions Act by printing more than the last five digits of the consumer's credit or debit card number on receipts. The statutory provision allowed consumers to recover damages between $100 and $1,000 for each willful violation without having to prove actual damages. The district court denied the plaintiff's motion for class certification on the grounds that the proposed class failed to meet the "superiority requirements" of Rule 23(b)(3); *i.e.,* the district court determined class treatment would render the magnitude of the defendant's potential liability "enormous and completely out of proportion to any harm suffered" by the plaintiff. The Ninth Circuit reversed that decision and held the enormity of damages under the statutory scheme and any disproportionality between the potential damages and the actual harm suffered did not justify denial of class certification on superiority grounds. 623 F.3d at 723.

Based on *Bateman,* this Court concludes the superiority requirements of Rule 23(b)(3) and procedural fairness are

18 - OPINION AND ORDER

satisfied, and the potential enormity or disproportionality of
damages does not constitute a proper basis to deny class
certification under these circumstances.

In summary, the Court concludes Plaintiff has met the
requirements of Rule 23 at this stage of the case and **GRANTS**
Plaintiff's Motion for certification of the Robocall Class.

### III. **The Do-Not-Call Class**

ViSalus contends the Do-Not-Call Class should not be
certified on the grounds that (1) the class definition is over-
inclusive, (2) common questions of law or fact are lacking and
individual issues predominate, (3) there is not any proof of
numerosity, and (4) superiority and predominance under Rule
23(b)(3) are lacking.

#### A.   **Over-Inclusive**

A person who has registered their number on the
National Registry and "received more than one telephone call
within any 12-month period" from the same entity may seek
recovery of damages under the TCPA.  Under 47 C.F.R.
§ 64.1200(f)(5), however, a business may call the telephone
number of a person on the National Registry if the person has
made an "inquiry or application regarding products or services
offered by the entity within the three months immediately
preceding the date of the call."

ViSalus contends the Do-Not-Call Class is over-

inclusive as it includes individuals who, although their
telephone numbers were registered on the National Do-Not-Call
Registry, made "an inquiry or submitted an application" to
ViSalus within the three months before the call, and, therefore,
were not called in violation of the TCPA.  ViSalus also contends
the number of those persons is more than *de minimis*.

Plaintiff, however, contends the class definition
specifically excludes individuals who "entered into any purchase
or transaction with ViSalus within the 18 months immediately
preceding" a call from ViSalus and, therefore, would exclude
persons who made an inquiry or submitted an application within
the three months before such call.

Plaintiff's exclusion of persons "who made purchases or
transactions" with ViSalus during the preceding 18 months,
however, does not equate with the regulation's exemption of
persons "who made an inquiry or application" in the three months
prior to the call.  Thus, it is arguable that Plaintiff's class
definition could include persons who were not called in violation
of the TCPA.  Nevertheless, as previously noted, "even a well-
defined class may inevitably contain some individuals who have
suffered no harm as a result of a defendant's unlawful conduct."
*See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th
Cir. 2016).  Thus, the *Torres* court held inclusion of uninjured
members in the class does not necessarily defeat class

20 - OPINION AND ORDER

certification.  *Id.*

On this record the Court concludes at this time under
these circumstances that the Do-Not-Call Class definition is not
overly inclusive.

**B.    Commonality and Predominance**

Commonality requires claims to "depend upon a common
contention . . . of such a nature that it is capable of classwide
resolution – which means that determination of its truth or
falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*,
564 U.S. 338, 350 (2011).  As noted, even unsolicited contact
without any additional harm constitutes an infringement on
privacy and violates the TCPA.  *Van Patten*, 847 F.3d at 1043.

ViSalus contends individual issues predominate in the
Do-Not-Call Class.  ViSalus asserts the Court will be required to
determine for each class member when they registered their number
with the National Registry, when they provided their number to
ViSalus for some reason, and when the calls were made.  ViSalus
contends this information cannot be objectively determined from
its records.

Plaintiff, however, contends the class claims are based
on the common contention that ViSalus violated the TCPA by making
calls to persons whose numbers were on the National Registry.
Plaintiff seeks to hold ViSalus liable for calls made in

21 - OPINION AND ORDER

violation of the TCPA to her and to putative class members whose numbers were registered on the National Registry.  Plaintiff contends even though ViSalus is not precluded from litigating any affirmative defense of consent or the existence of a business relationship, such evidence does not prevent class certification.

On this record the Court concludes Plaintiff has established a common question capable of classwide resolution.

**C.    Numerosity**

Rule 23(a)(1) does not provide a bright-line test or minimum number of class members necessary to meet the numerosity requirement.  Instead the Court must evaluate the specific facts of each case.  *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  In general, classes of 15 members or fewer are too small and classes of 16 to 39 members may or may not be sufficiently numerous depending on the facts of the case.  *Id.*  In this district there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement.  *See, e.g., Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties. . . ."  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350

(2011)(emphasis in original).  The plaintiff must provide

"reliable evidence" to show the number of potential members of

the class.  *Smith v. City of Corvallis*, No. 6:14-cv-01382, 2016

WL 3193190, at *10 (D. Or. June 6, 2016).

        ViSalus contends Plaintiff cannot establish proof of

the number of individuals on the National Registry who received

calls nor that an exception does not apply to the majority of

calls made by ViSalus.

        Plaintiff, however, contends in light of the millions

of calls that ViSalus made and the number of Americans who have

registered on the National Registry, the Court may easily

conclude ViSalus called at least 40 people in violation of the

TCPA.  Specifically, Plaintiff alleges:

> {ViSalus] and/or its Representatives placed
> thousands of outbound telemarketing calls each to
> consumers nationwide.  Many of these calls were
> placed to numbers that are listed on the National
> Do Not Call Registry.
>
>                    . . .
>
> The exact sizes of the Classes are unknown and not
> available to Plaintiff at this time, but it is
> clear that individual joinder is impracticable.
> On information and belief, [ViSalus] has made
> calls to thousands of consumers who fall into each
> of the Classes.  Members of the Classes can be
> identified through [ViSalus]'s records.

FAC ¶¶ 15, 29.

        Plaintiff notes in her Renewed Motion for Class

Certification:

23 - OPINION AND ORDER

To be sure, ViSalus produced nearly one thousand
contact lists, collectively containing names and
telephone numbers of [redacted information].[4]
[(Citations omitted)].  As such, this fact alone
makes it "reasonable" to estimate that each of the
Classes are sufficiently numerous. [Citation
omitted].

. . .

Next, given that approximately 72% of Americans
have registered their numbers on the National DNC
Registry, and ViSalus admits to placing more than
a [redacted information] of people [citation
omitted], there can be no doubt that there are
well over forty class members in the Do Not Call
Class as well.

Pl.'s Renewed Mot. (#69) at 17-18.  These statements, however, do
not affirmatively establish by "reliable evidence" that "there
are in fact sufficiently numerous parties" who have suffered a
violation of the TCPA.  In fact, Plaintiff has merely shown a
large category of individuals are listed on the National Registry
who may have received calls from ViSalus.

On this record the Court concludes Plaintiff has not
provided reliable evidence to show the number of potential
members of the class.  Accordingly, the Court **DENIES** Plaintiff's
Motion to certify the Do-Not-Call Class.[5]

------

[4]  Plaintiff redacted various information in its Motion
pursuant to the terms of the Protective Order (#49) issued by the
Court.  Because that information is not part of the public
record, the Court also excludes it from this Opinion.

[5]  ViSalus also contends the Do-Not-Call Class does not meet
the requirements of Rule 23(b)(3).  Inasmuch as the Court has
concluded Plaintiff has not established "numerosity" for this
Class, the Court need not address this issue.

24 - OPINION AND ORDER

IV.  **The Oregon Stop-Calling Class**

ViSalus contends the Oregon Stop-Calling Class does not meet the requirements of Rule 23 on the grounds that (1) Plaintiff has not established commonality or the predominance of issues, (2) Plaintiff's claim is not typical of class claims, and (3) Plaintiff has not demonstrated numerosity.

A.  **Commonality and Predominance**

As noted, commonality requires claims to "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011).  "[T]his provision requires Plaintiff to 'demonstrate that the class members have suffered the same injury,' not merely violations of 'the same provision of law.'"  *Parsons v. Ryan*, 754 F.3d 657, 674-75 (9th Cir. 2014)(citing *Wal-Mart*, 563 U.S. at 349).

ViSalus contends there is not any evidence that ViSalus disregarded requests by individuals to stop calling.  ViSalus argues it did not include the telephone numbers on its call lists for persons who had requested not to be contacted, and, therefore, Plaintiff has not established a common question for class resolution.

Plaintiff, however, contends ViSalus did not adhere to

25 - OPINION AND ORDER

its own do-not-call policy and continued to call her and other
putative class members despite requests that ViSalus stop making
such calls.

The central issue for this Class is whether ViSalus
continued to call a person after that person requested ViSalus to
stop calling.  Although the issue can be resolved as to
Plaintiff's individual claim, there is not any common evidence
that certain individuals made such a request, and, therefore,
this issue cannot be resolved on a class-wide basis due to the
individual nature of the inquiry.

The Court, therefore, concludes there is not any
commonality of claims sufficient to certify the Oregon Stop-
Calling Class.  Accordingly, the Court **DENIES** Plaintiff's Motion
to certify the Oregon-Stop-Calling Class.[6]


## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in
part** Plaintiff's Renewed Motion (#69) for Class Certification as
follows:

1.   The Court **GRANTS** Plaintiff's unopposed request to be
appointed as class representative;

---

[6]   Inasmuch as the Court has concluded Plaintiff has not
established commonality for this Class, the Court need not
address ViSalus's other contentions.

26 - OPINION AND ORDER

2.     The Court **GRANTS** Plaintiff's unopposed request for her attorneys to be appointed as class counsel;

3.     The Court **GRANTS** Plaintiff's Renewed Motion for Class Certification as to the Robocall Class only; and

4.     The Court **DENIES** Plaintiff's Renewed Motion for Class Certification as to the Do-Not-Call Class and the Oregon Stop-Calling Class.

The Court directs the parties to confer and to submit a Joint Status Report **no later than July 24, 2017**, summarizing the issues that remain for resolution together with a jointly proposed case-management schedule for doing so.

IT IS SO ORDERED.

DATED this 23rd day of June, 2017.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER