IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LORI WAKEFIELD,                    )
                                   )
            Plaintiff,             )      3:15-cv-01857-SI
                                   )
vs.                                )      April 3, 2019
                                   )
VISALUS, INC.,                     )        Portland, Oregon
                                   )
            Defendant.             )



(Pretrial Conference Hearing)

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

```
 1                           APPEARANCES

 2
     FOR THE PLAINTIFF:        Simon C. Franzini
 3                             Julien A. Adams
                               Jonas B. Jacobson
 4                             Dovel & Luner, LLP
                               201 Santa Monica Boulevard, Suite 600
 5                             Santa Monica, CA  90401

 6

 7   FOR THE DEFENDANT:        John Maston O'Neal
                               Quarles & Brady LLP
 8                             Two North Central Avenue
                               Phoenix, AZ  85004
 9

10                            Zachary S. Foster
                              Quarles & Brady LLP
11                            101 E. Kennedy Boulevard, Suite 3400
                              Tampa, FL  33602
12

13                            Nicholas H. Pyle
                              Miller Nash Graham & Dunn LLP
14                            111 SW Fifth Avenue, Suite 3400
                              Portland, OR  97204
15

16

17

18

19

20

21

22   COURT REPORTER:          Dennis W. Apodaca, RDR, FCRR, CRR
                              United States District Courthouse
23                            1000 SW Third Avenue, Room 301
                              Portland, OR  97204
24                            (503) 326-8182

25
```

1                               INDEX

2    Pretrial conference proceedings                              4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    (April 3, 2019)

2              P R O C E E D I N G S

3           (Open court:)

4           THE CLERK:  Your Honor, this is the time set for a

5    pretrial conference in civil case 15-1857-SI, Wakefield versus

6    ViSalus, Inc.

7           Could I have counsel in court, beginning with the

8    plaintiff, identify yourself for the record.  You can do it

9    from the desk if you wish.

10          MR. FRANZINI:  Simon Franzini from Dovel & Luner on

11   behalf of plaintiff.

12          MR. ADAMS:  Good afternoon.  Julien Adams for the

13   plaintiff.

14          THE COURT:  Good afternoon.

15          MR. JACOBSON:  Jonas Jacobson for the plaintiff.

16          THE COURT:  Good afternoon.

17          MR. O'NEAL:  Good afternoon.  John Maston O'Neal on

18   behalf of the defendant.

19          MR. FOSTER:  Zachary Foster on behalf of the

20   defendant.

21          MR. PYLE:  Nicholas Pyle on behalf of the defendant.

22          THE COURT:  Good afternoon.  All right.  We are here

23   on a pretrial conference.  Trial is scheduled to begin next

24   Wednesday morning, April 10th.  What I would like to do,

25   because I think this might be the most efficient way to

1    proceed, would be, first, to take an inventory of really what's

2    left in the case; talk about what the jury needs to decide

3    versus what I need to decide.  From there, I think it would be

4    most efficient to talk about some of the motions in limine

5    followed by some of the proposed exhibits from each side,

6    followed by the objections to the designations and

7    cross-designations from the deposition transcripts.  At some

8    appropriate time I will talk about how I run the trial, but I

9    think that makes the most sense to me.

10           So as I understand things, the plaintiff has

11   withdrawn her individual Do Not Call Registry claim, which was

12   otherwise known as claim 1; am I correct?

13           MR. FRANZINI:  That's right, Your Honor.

14           THE COURT:  So really what's all that is left in this

15   case, and we may re-label some of these things to make it

16   easier for the jury to follow, but really what's all that is

17   left is an individual claim brought by the plaintiff under

18   Section 227 for receiving one or more telemarketing calls using

19   an artificial or prerecorded voice to her landline.  And the

20   question the jury will have to decide is:  Was that landline a

21   residential landline?  Also, if so, how many artificial or

22   prerecorded voice calls to that residential landline did

23   plaintiff receive?

24           Then we also have analogous class claims so that the

25   jury will be asked to decide whether or not the defendant

 1   placed telemarketing calls using artificial or prerecorded

 2   voice messages to either a residential landline or a cellular

 3   telephone line of a class member; and if so, how many such

 4   calls were made?  Put aside the issue of willfulness for a few

 5   moments.

 6          But putting aside willfulness, do I have it basically

 7   right, that that is what the jury needs to decide for

 8   plaintiff?

 9          MR. FRANZINI:  Setting aside willfulness, Your Honor,

10   I think that's right, with the one caveat that Ms. Wakefield is

11   part of the class.  So I would say it is really one question:

12   Did ViSalus place telemarketing calls featuring an artificial

13   and prerecorded voice to Ms. Wakefield or to the class?  And

14   then two, how many to Ms. Wakefield?  Three, how many to the

15   class?

16          THE COURT:  Although I think it will probably be

17   easier for the jury to process if we say -- I'll explain to

18   them it is a class and what a class means, and Ms. Wakefield is

19   part of a class.  So we are going to start:  Were any of these

20   types of calls made to Ms. Wakefield; and if so, how many?

21          The reason I want to do it that way, because if she

22   is the only class rep, if no such calls were made to her, then

23   that's over.  We don't go any further.  That's how I view

24   things, as she is the class rep.

25          If, however, the jury then says:  Yes, one or more

1   calls were made to her, and here are the number of calls made

2   to her.  Then ask the jury:  All right.  How many such other

3   calls were made to the other members of the class -- or were

4   there any other such calls made to other members of the class?

5   If so, yes.  And if so, how many?

6            Will that work?

7            MR. FRANZINI:  Your Honor, I would like the

8   opportunity -- I guess the one thing I'm not sure about, it

9   could be that we could prove class-wide liability without

10  Ms. Wakefield's claim.  So I think Your Honor has suggested

11  that if we don't prove Ms. Wakefield's individual claim, that's

12  the end of the story.  I'm not sure that's true.

13           THE COURT:  Can you give me a case, and if not now,

14  then really soon, like by the end of day tomorrow, whether or

15  not a class can recover when the class representative has not

16  proven a claim?

17           MR. FRANZINI:  We would appreciate the opportunity to

18  brief that, if we can, by tomorrow.

19           THE COURT:  Of course.  Excellent.  That's my

20  tentative thinking right now.

21           Does the defendant have anything to say on that

22  thinking?

23           MR. FOSTER:  I do, Your Honor.  I wanted to clarify

24  one issue.  About six months ago, the parties submitted briefs

25  on proposed jury instructions.  As you'll recall, Your Honor

1    hinted what one of those instructions was on, what needed to be

2    proven --

3                THE COURT:  How do you decide what is a residential

4    line versus a nonresidential line --

5                MR. FOSTER:  And in your order you indicated, or at

6    least our reading of it was, you indicated that whether a call

7    was to a residential landline or a cell phone was not going to

8    be decided at trial for the class members.  Instead, it was

9    going to be decided after the fact through some post-trial

10   submissions.

11               THE COURT:  I don't recall that.  All right.  I will

12   go back and take a look at that.

13               MR. FOSTER:  Your Honor, the only reason I ask that,

14   obviously we agree that -- it's our position that everything --

15   all the elements of the case need to be proven at the trial for

16   every single class member.  If not, they cannot recover.

17               But it was plaintiff's position six months ago that

18   "No, no, no.  We don't need to prove the residential landline/

19   cell phone issue.  We can do that in a post claims

20   administration process."  From what I recall, and my reading of

21   the order, you agreed with that.  So we were prepared for a

22   trial where the residential landline and cell phone issue

23   wasn't going to be decided.

24               In fact, the plaintiff, in their briefing, assured us

25   that we had the opportunity in the post-trial process to

1    attack, I guess, affidavits, and we think affidavits would be

2    insufficient, but some sort of proof from the class members.

3            So I guess my first question would be to clarify, how

4    is this case going to proceed?  Is this an issue where the

5    class members -- Your Honor, I could find the reference to your

6    order.

7            THE COURT:  Please do.

8            MR. FOSTER:  143 maybe.

9            THE COURT:  Docket 143?  I don't have that here with

10   me.  I will have to go back and get it.

11           What is plaintiff's recollection on this issue?

12           MR. FRANZINI:  Your Honor, there was some briefing

13   about whether elements of the class claims needed to be proven

14   at trial or not.  I don't know that that issue was resolved by

15   Your Honor's order, but our plan and what we have been saying

16   all along in all of our pretrial submissions, in our trial

17   brief, and in our exhibit objections and everything is exactly

18   what we plan to do, which is to present class-wide evidence

19   that ViSalus made calls to either a mobile or a residential

20   landline.  That's reflected in our jury instructions and our

21   trial brief and so forth.  I don't think there is a live issue

22   about that at this point.

23           MR. FOSTER:  From our position, Your Honor, that's a

24   complete reversal in the plaintiff's position in their

25   briefing.  It is Docket 149.

 1              THE COURT:  All right.  Let me go pull 149.  I want

 2    to have it in front of me. I will come back.

 3              (Recess.)

 4              (Open court; proceedings resumed:)

 5              THE COURT:  All right.  I have Docket 149, my order

 6    dated August 24th, 2018, in front of me.

 7              So what specifically are you referring to?

 8              MR. FOSTER:  Your Honor, if you could turn your

 9    attention to page 8, the second paragraph.  Well, it is

10    essentially that entire --

11              THE COURT:  All right.  Give me a moment, please.

12              Page 8?

13              MR. FOSTER:  Yes.  It is part of your entire decision

14    on the nature of class proof.  That second paragraph, the last

15    sentence stated, "If an absent class member turns out not to be

16    eligible because that person did not use his or her phone for

17    residential purposes, or for some other reason that releases

18    defendant from liability under the TCPA, the result would be

19    that the defendant owes less in total damages."

20              You're talking about here that we need to do this, in

21    the sentence before, "Because the damages are $500 statutory

22    damages per claimant" --

23              THE COURT:  Hold it.  When you are speaking with a

24    court reporter present, and you are reading, please read

25    slowly.

1                MR. FOSTER:  Fair enough.

2                "Because the damages are $500 statutory damages per

3     claimant, with possible trebling by the Court, a post-trial

4     determination of whether a class member is eligible to submit a

5     claim"; i.e., whether they used their landline for residential

6     purposes.

7                THE COURT:  I didn't say "i.e."  You're adding things

8     to my sentence.

9                MR. FOSTER:  Yes, Your Honor --

10               THE COURT:  All right.  Let me read it to myself.

11               MR. FOSTER:  Sure.

12               (Pause in proceedings.)

13               THE COURT:  I read everything.  What's your argument?

14               MR. FOSTER:  My argument, Your Honor, is that we

15    expected to go to trial without the residential landline and

16    cell phone being an issue of fact at trial to be decided by the

17    jury in this trial next Wednesday.

18               THE COURT:  One moment.

19               All right.  Do you have handy defendant's proposed

20    amended verdict form?

21               MR. FOSTER:  I do.

22               THE COURT:  That's Docket 215, right?

23               MR. FOSTER:  Yes.

24               THE COURT:  All right.  Mr. Franzini, you may sit

25    down.

1          MR. FRANZINI:  Thank you, Your Honor.

2          THE COURT:  All right.  Let's take a look at the

3   defendant's proposed amended verdict form, which looked pretty

4   good to me, by the way.

5          MR. FOSTER:  Thank you, Your Honor.

6          THE COURT:  Looking at Count 2, the 227B question on

7   behalf of class members.  Defendant proposes as

8   Question No. 10, "Did Ms. Wakefield prove by a preponderance of

9   the evidence that ViSalus placed at least one call to each

10  class member's residential landline or cellular telephone line

11  and placed" -- it says "play," but I know it is "placed" -- "an

12  artificial or prerecorded telemarketing message during each of

13  those calls?  Yes or no?"

14         And that's what I've described.

15         Then we go to your question 11.  "If the answer to

16  that is yes, answer 11.  If the answer is no, skip 11."  Let's

17  assume the answer is yes.  "Indicate the number of calls that

18  ViSalus placed to the class members' landlines or cellular

19  telephone lines during which ViSalus placed an artificial or

20  prerecorded telemarketing message."

21         Then there is a blank, and they fill in the number.

22  That's all I have been saying.

23         How is that different than what I just said a few

24  minutes ago?

25         MR. FOSTER:  Your Honor, we are preserving our record

```
1   for appeal, again, based on your order what we believed we

2   would be trying and based off of plaintiff's briefing where

3   they said specifically in a footnote, "What is explained in the

4   body, this step is unnecessary, given that the class members

5   can provide simple sworn statements that their phone numbers

6   are residential."

7              THE COURT:  I'm not understanding your response to my

8   question.  You proposed a verdict form that, in my opinion, is

9   totally consistent with my earlier order, the order of 149.

10  That's how I envisioned it.  Frankly, I'm already well along

11  the way in drafting a verdict form that will look precisely as

12  your proposed verdict form reads.

13             Is there a problem with that?

14             MR. FOSTER:  No, Your Honor.  Again, that was our

15  position.  I wanted to clarify.  The problem, though, is,

16  again, we believed we were not going to trial on --

17             THE COURT:  Then why did you propose a verdict form?

18             MR. FOSTER:  Again, to preserve for appeal.  If we

19  proposed a verdict form, Your Honor, that --

20             THE COURT:  That makes no sense to me.  If there was

21  any doubt in your mind as to what my order intended, you should

22  have raised it with me.  You should have asked.

23             MR. FOSTER:  We didn't have any doubt, Your Honor.

24  We believed, and based off of -- and in conjunction with

25  plaintiff's briefing and your order -- that we were going to
```

1    trial on everything -- all the elements in the TCPA except the

2    residential landline and cell phone issue.

3           THE COURT:  But you put in your proposed verdict form

4    a question that asks the jury how many residential landlines or

5    cellular telephone lines received calls from ViSalus with an

6    artificial or prerecorded message.  That's exactly the question

7    that I envisioned we would be asking the jury.  That's the

8    question that should be asked of the jury.  And that's what I

9    expect to ask the jury next week.

10          Okay.  Mr. Franzini, did you want to say anything at

11   all on this point?  I don't think I need to hear anything from

12   you on this issue.

13          MR. FRANZINI:  I could say more, Your Honor, but I

14   don't think I need to.

15          THE COURT:  Okay.  I take it that plaintiff doesn't

16   have any objection, in material substance, to the defendant's

17   framing of the questions in defendant's proposed verdict form,

18   Docket 215?

19          MR. FRANZINI:  May I have 30 seconds to review it,

20   Your Honor?  I think there is one issue that I would like to

21   address.

22          THE COURT:  Here is what I'm going to do:  I am going

23   to be preparing a set of documents that I'll send to you -- my

24   goal is tomorrow; worst-case scenario, Friday -- and then I

25   will invite you all -- and if you want to do it in person on

1    Monday, you can do it.  Otherwise, we will schedule a telephone

2    call.  I will invite you all on a Monday conference to give me

3    your objections or exceptions, things like that.

4            The set of documents that I will send to you all will

5    be my voir dire script, my preliminary jury instructions, a

6    pretty far-along draft of my final jury instructions, and

7    verdict form.  I'll tell you that my verdict form will look an

8    awful lot like what defendant is proposing in defendant's

9    proposed verdict form, at least on this issue, Docket 215.

10           My plan is to clean it up just a little bit to make

11   it a little bit more simpler for the jury and more precise, but

12   it is going to be that substance.  If you then want to make any

13   proposed amendments, adjustments, or tweaks to that, I will

14   give you an opportunity on Monday after you see what I've done.

15           MR. FRANZINI:  May I be heard on one issue?

16           THE COURT:  Yes.

17           MR. FRANZINI:  The one issue with defendant's

18   proposed verdict form on Count 2 for the class is that it would

19   seem to require a call to be placed to each class member.  So

20   if there is a single class member for which a call isn't

21   placed, then we would lose on everything, and I don't think

22   that's right.

23           THE COURT:  Yes.  I understand.  I think what they

24   are asking is, were calls made to members of the class that

25   satisfied the following criteria?  Yes or no.  And if yes, how

1   many such calls?

2          MR. FRANZINI:  That's right, Your Honor.  We don't

3   have a problem with that.

4          THE COURT:  All right.  That's the way it is supposed

5   to be.

6          MR. O'NEAL:  Judge, to be clear, and I think this may

7   drift into the last order, it is the defendant's contention

8   that plaintiff bears the burden of proving that each and every

9   member of the class received a violative call.

10          THE COURT:  And to that extent, I disagree, and I'll

11   overrule that.  If the plaintiff presents a class with many,

12   many, many names in it -- let's grab out -- how many names

13   roughly do you think are in the class?

14          MR. FRANZINI:  I believe it is 800,000, Your Honor,

15   but I am --

16          THE COURT:  If they present 800,000, and the jury

17   finds -- let's just grab a number out of thin air -- half of

18   that, 400,000.  Okay, fine.  That's going to cap the

19   defendant's liability.  Now, that doesn't mean that the

20   defendant has to write a check for $500 times 400,000.  There

21   still has to be a claims process, and we will take it from

22   there what we do with that.

23          But if the defendant's position is that if the jury

24   comes back and finds that there are some members of the class

25   who did not -- let's say did not use a landline, because the

1    class is not limited to just people who had residential lines

2    or cell phones.  I think that's right.  Let me double-check.

3         I think the class that was certified by Judge Brown

4    before I got this case said the class is defined as:  "All

5    individuals in the United States who received a telephone call

6    made by or on behalf of ViSalus:

7         "1.  Promoting ViSalus's products or services.

8         "2.  Where such call featured an artificial or

9    prerecorded voice; and

10        "3.  Where neither ViSalus nor its agents had any

11   current record of prior express written consent to place such a

12   call at the time the call was made."

13        That's how she defined the class for purposes of this

14   claim.  That's at Docket 81 at page 6.

15        She did not define the class -- the Court did not

16   define the class, and, frankly, plaintiff didn't ask.  She

17   adopted the class definition that the plaintiff requested.

18   Plaintiff didn't ask to define the class as people who received

19   those types of calls on a residential line or a cellular

20   telephone.  You didn't ask her to define the class that way,

21   and she didn't define it that way.

22        But you only are entitled to liability for calls made

23   on a residential phone or a cellular phone.  So we need to know

24   how many people within this class basically can satisfy the

25   liability elements of this claim.

1          So I'm assuming that the total number of people in

2     the class, 800,000, let's say, is going to be greater than the

3     number of people who can satisfy and show liability under the

4     statute, because the statute requires a call to be made to a

5     residential line or cellular telephone line and excludes -- it

6     doesn't allow for liability to a business line, but your

7     definition of the class includes business line.

8          So I think, by definition, you're probably going to

9     have people that have a pure business line -- or have a

10    business line that may have received a call from ViSalus, and

11    they're not going to be eligible.

12         So we need to ask the jury, frankly, as plaintiff

13    proposed, as defendant proposed, how many people received these

14    types of automated or artificial voice calls to either a

15    cellular phone or a residential landline and excluding business

16    lines?

17         The jury will have to answer that question.  They are

18    going to fill in that number, and that number will then cap the

19    amount of liability that defendant may be liable for.  And then

20    when we deal with, "Okay, step forward and get your money,"

21    only those people that actually have received calls to a

22    landline residential number, or a cellular telephone, would be

23    eligible.

24         That's how I see it, and that's the way that

25    plaintiff the class to be defined from Judge Brown.  She

1    accepted that.  Nobody has asked to have any modifications to

2    that.  So be it.  That's how I see it.

3            Does that answer your question?

4            MR. FRANZINI:  Yes, Your Honor.  I don't think there

5    is any --

6            THE COURT:  All right.  By the way, am I also correct

7    that even though the class definition did include the element

8    where neither ViSalus nor its agents had any current record of

9    prior express written consent -- as I understand it, the

10   defendants are not asserting that affirmative defense;

11   therefore, we don't need to ask the jury to determine whether

12   or not, as part of the number that it finds, there was or was

13   not prior express written consent?

14           Am I correct in that, Defendant?

15           MR. O'NEAL:  You are, Judge.  We are not asserting

16   the consents that were signed meet the requisite statutory --

17           THE COURT:  You will see that in my instruction to

18   the jury, but I am going to take that issue so the jury doesn't

19   have to worry about that question.

20           All right.  So that really takes us now down to

21   willfulness, on the issue of who decides willfulness, judge or

22   jury.  This is an important threshold question, because it will

23   affect a lot of the evidence that gets presented to the jury.

24   If the jury decides that question, then a lot of evidence that

25   is only relevant to willfulness gets presented to the jury.  If

1    the jury does not decide that question, and it is only me, then

2    I'm probably -- not even "probably" -- I'm going to not let the

3    jury hear evidence that is only relevant to the question of

4    willfulness or knowingly, because I think that will tend to

5    confuse the jury.  If a piece of evidence is relevant only to

6    the question of willfulness or knowingly, a willful or knowing

7    violation, the jury is going to wonder why am I hearing this

8    evidence if it's not part of anything that they need to decide.

9         So let me tell you how I look at it.  I note that the

10   defense put in some definitions of willfulness in some of their

11   instructions, but they also said in trial briefing and

12   elsewhere they reserve the right to argue it's a judge

13   question.  I've looked at it.  Let me tell you my analysis,

14   because I think it is a question for the Court, not the jury.

15        I start with the statutory text of 47 U.S.C.

16   Section 227(B)(3), which provides under the Telephone Consumer

17   Protection Act, a private right of action for violations of

18   (B).

19        It says that -- and I'll paraphrase:  A prevailing

20   plaintiff may recover the greater of $500 in damages for each

21   violation, or actual monetary loss from such a violation,

22   whichever is greater.

23        Then in Section 227(b)(3)(C), the statute continues:

24   If the Court finds that the defendant willfully or knowingly

25   violated this subsection, or the regulations prescribed under

1    this subsection, the Court may, in its discretion, increase the

2    amount of the award to an amount equal to not more than 3 times

3    the amount available under (B) of this paragraph.

4           Now, it looks to me then that because the statutory

5    text by Congress says "if the Court finds the defendant

6    willfully or knowingly violated this subsection," that on first

7    read tells me that it is for the Court to decide.  I note that

8    there is cases from the Supreme Court in the Copyright Act

9    context involving the Court and its discretion -- if the Court

10   finds willful violations, the Court in its discretion may

11   increase damages for copyright violations.

12          The Supreme Court in Feltner v. Columbia Pictures

13   said that means it is for the judge, not the jury.

14          I would also note there are a number of federal

15   District Court decisions under the TCPA in which the Court

16   decides and has decided whether or not the violation was

17   committed willfully or knowingly and then decides whether or

18   not to increase damages.  Frankly, I think that was the way it

19   happened in the Krakauer v. Dish Network.  That was how it

20   happened in Asher & Simmons v. J2 Global Canada out of the

21   District of Maryland.  That's what happened in Adamcik v.

22   Credit Control out of the Western District of Texas.  That's

23   how they interpret the statute.

24          I do know there is one state court case at least that

25   held contrary, but I just wasn't persuaded by that state

1    court's analysis.

2            I also look to see what does the Supreme Court teach

3    us on how to decide what is a question for the jury and what's

4    a question for the Court.  Nobody briefed this, but I looked at

5    Tull v. United States, a Supreme Court decision from 1987.

6    It's pretty clear to me from that case in this context, in the

7    context of the TCPA case, that is a question for the Court, not

8    the jury.

9            I also note that the threshold question there is, do

10   we have a common law right, a common law property right at

11   issue, or something that's analogous that was recognized by the

12   common law when the Seventh Amendment was ratified in 1791?

13           You know, I don't believe that anything in the TCPA

14   is a common law right or analogous to a common law right, at

15   least analogous to a common law right that existed at the time

16   the Seventh Amendment was ratified.

17           So my tentative, but pretty strong inclination right

18   now, is to say the question of willfulness or knowing violation

19   is for the Court, not the jury.  Therefore, if evidence is

20   relevant only to that issue, it can be presented to me.  We

21   will talk about an efficient way to do that, but it may not be

22   presented to the jury.

23           Any objection to that from defendant?

24           MR. O'NEAL:  If I may ask a follow-up question before

25   addressing the substantive one?  What were you envisioning

1   insofar as presenting the evidence to you, Judge?

2            THE COURT:  I was going to ask when you wanted to do

3   it.  It really depends.  It could be done in a couple of ways.

4   If you have a live witness that wants to talk about it, fine.

5   The live witness talks about everything else that is relevant

6   to the jury, then we excuse the jury, and then I'll receive the

7   testimony.  Or you make the live witness wait in the hallway or

8   an attorney room somewhere.  We wait for a break so I don't

9   interfere with jury efficiency, and then we will call that

10   witness back outside the presence of the jury to give me

11   additional testimony.  That's how can we do things with a live

12   witness.

13            Worst-case scenario, I make you come back while the

14   case is with the jury, and you can put in the record what that

15   witness was going to say on the issue of willfulness.  And if

16   the jury comes back with a verdict for plaintiff, I'll consider

17   it.  If the jury comes back with a verdict for defendant, then

18   that just all becomes moot.

19            The other way to do it too is with the deposition

20   transcripts.  I know we have a lot of deposition transcripts.

21   Some of that testimony relates only, I think, to willfulness or

22   knowing issues.

23            Now, you do not need to read a deposition transcript

24   out loud to me.  So I would ask the parties to tell me which

25   page and line numbers they would like me to read and consider

```
 1  as I make the decision on willfulness or knowingly.  And if a

 2  particular piece of the deposition transcript is relevant only

 3  to willful or knowingly, those issues, and we are not reading

 4  it to the jury, then you call my attention to it, and I will

 5  read that and, of course, listen to arguments before making a

 6  final decision.

 7          My expectation would be that if the jury does find

 8  some liability for plaintiff, whether it be plaintiff

 9  individually or in a class-wide basis, I'll then make sure that

10  I hear from the parties what is the universe of evidence that

11  has been submitted that I should consider in making my decision

12  on willfulness or knowingly.

13          I probably would even then give you an opportunity to

14  make a further closing argument on that question.  Whether you

15  want to do it orally or in writing, I'll hear your positions on

16  that.  Then I will make an appropriate decision in writing, of

17  course, having found and issuing written findings of fact and

18  conclusions of law on that question.

19          MR. O'NEAL:  Would you indulge me on two more

20  questions, Judge?

21          THE COURT:  I'll indulge you with whatever you want

22  until five o'clock.

23          MR. O'NEAL:  What about a -- let's call it

24  Phase I/Phase II -- listening to the evidence that comes in

25  during the course of the trial or that's submitted to you and
```

1    then Phase II in which additional evidence is presented to you,

2    obviously following a decision made by the jury, which goes

3    further to the issue of whether it is willful or not.

4            THE COURT:  I would ask plaintiff's their position on

5    that.  If plaintiff has no objection, that's fine with me.  If

6    plaintiff does have an objection and feels prejudiced, I would

7    listen to their argument.

8            MR. O'NEAL:  Last question:  What about an advisory

9    jury verdict?

10           THE COURT:  No thank you.

11           MR. O'NEAL:  Those are the only questions I have,

12   Judge.

13           THE COURT:  All right.  Mr. Franzini, did you want to

14   say anything on this point?

15           As I said, it is a strong tentative conclusion that

16   willfulness and knowingly goes to the Court, not the jury.

17           Do you want to be heard on this?

18           MR. FRANZINI:  No, Your Honor.  We don't have a

19   problem with that procedure.  I just want to be sure that there

20   is no appeal issues created from that so --

21           THE COURT:  Well, the only appeal issue is if I'm

22   wrong.  And whoever is on the losing side of my ruling says

23   they have a Seventh Amendment right to a jury on that issue,

24   well, I will be shocked if I lose on that point, but that is

25   the appeal issue that I see.

1          MR. FRANZINI:  Yes, Your Honor.  This hasn't been

2     briefed, so I haven't had an opportunity to take a look at

3     this.

4          THE COURT:  Okay.

5          MR. FRANZINI:  I guess I would reserve a right to

6     object to this based on coming to a different conclusion after

7     reviewing the record.

8          THE COURT:  That's fine.  And if you want me to

9     change my mind in a timely fashion, get me your briefing and

10    your argument for why it belongs to a jury no later than this

11    Friday at 5:00 p.m. because I'm going to be telling the jury

12    next week what they have to decide.

13         MR. FRANZINI:  Yes, Your Honor.  Thank you.

14         THE COURT:  All right.  So let us proceed for the

15    rest of today on the assumption that the willfulness and

16    knowingly issues are only for the Court.  There will not be an

17    advisory jury.  If evidence is strictly and solely related to

18    that issue, it may not be presented to the jury.  And with that

19    in mind, let's talk about your motions in limine in that

20    context.

21              In plaintiff's motions in limine first, the question

22    of whether -- it is the issue of whether ViSalus knew the

23    requirements of the TCPA or misunderstood the requirements.

24    Plaintiff moves in limine to exclude that, essentially arguing

25    that's irrelevant.  Defendant seems to argue, well, it is

1    relevant to the issue of willfulness or knowing.  I think it

2    probably is relevant to the issue of willfulness or knowledge.

3    Therefore, I'm going to grant the motion in limine in part and

4    say that the jury cannot hear any evidence of whether ViSalus

5    knew the requirements of the TCPA or misunderstood the

6    requirements, but I'll place no limits at all on defendant

7    presenting that evidence to me outside the presence of the

8    jury.

9              Does anybody want to be heard on that tentative

10   ruling?

11             MR. ADAMS:  Not from the plaintiff's side,

12   Your Honor.

13             MR. FOSTER:  Not for the defendant's side,

14   Your Honor.

15             THE COURT:  Second, the plaintiff moves in limine

16   regarding the amount of statutory damages for violations of the

17   relevant sections of the TCPA, artificial or prerecorded voice.

18   Defendant does not oppose that motion, so it's granted.

19             The third motion in limine, the plaintiff moves to

20   exclude evidence relating to whether there was a prior express

21   consent.  As I understand it, the defendant agrees that it is

22   not going to present evidence of prior express consent to the

23   jury.  To the extent that may be relevant to me, when I decide

24   willfulness, you can either present it, or we can argue about

25   it later.  But I'm going to grant it to the extent that

1   evidence doesn't go to the jury.

2              Does anybody want to be heard on the issue?

3              MR. ADAMS:  Not from the plaintiff, Your Honor.

4              MR. FOSTER:  Not from the defendant, Your Honor.

5              THE COURT:  Fourth motion in limine, retroactive

6   waiver -- that's an interesting point -- but I think it goes

7   straight to the question of willfulness or knowledge.  Again,

8   nothing goes to the jury on that question.  My best guess right

9   now is you will be able to present that to me when I hear

10  evidence about willfulness and knowledge, and not to the jury.

11             Does anybody want to be heard on the fourth motion in

12  limine?

13             MR. ADAMS:  No, Your Honor.

14             MR. FOSTER:  Nothing from the defendant.

15             THE COURT:  Fifth motion in limine, ViSalus's

16  financial condition.  I just don't see how that's at all

17  relevant to the questions before the jury.  There is an

18  interesting split in the circuits -- a split in the country --

19  as to whether or not the treble damages provision is

20  compensatory or punitive.  If it is punitive, then financial

21  conditions are relevant.  If it is compensatory, they probably

22  aren't.  It is an interesting question.  I have some tentative

23  thoughts.  It is not worth formalizing right now.  Since that

24  issue only goes to the issue of treble damages, no evidence of

25  ViSalus's financial condition may be presented to the jury.

1    I'm not going to be unduly swayed by sympathy one way or the

2    other.  So if you want to present it to me outside the presence

3    of the jury for treble damage purposes, fine.

4              Does plaintiff want to be heard on that?

5              MR. FRANZINI:  No, Your Honor.

6              THE COURT:  Defendant?

7              MR. O'NEAL:  Just one point, Judge.  Since we are

8    lobbing interesting points, also in connection with this, you

9    may have run across multiple cases talking about how in cases

10   such as this, in particular TCPA, that the imposition of a

11   large amount of damages by using the statutory multiple

12   violates due process --

13             THE COURT:  Oh, absolutely.

14             MR. O'NEAL:  -- when compared against the financial

15   condition of a defendant.

16             So my expectation, Judge, since I think I see where

17   you are going on this, that would be part of the overall

18   determination of whether or not treble damages should be

19   awarded, and the final verdict, whether it should be up or down

20   based on all of those factors.

21             THE COURT:  And you'll have an opportunity, if we get

22   to that portion of it, to make your arguments, submit your

23   evidence, make your legal arguments as to whether I should

24   increase damages up to three times, and if so, how much and

25   what its legal effect might be.  All of that is preserved.

1              MR. O'NEAL:   Thank you, Judge.

2              THE COURT:  All right.  I think that takes care --

3    plaintiff's sixth motion in limine, class counsel fees.  It is

4    not opposed by defendant.  It is granted.

5              MR. O'NEAL:  The only question, Judge, and I'm not

6    even sure it is going to come up, is we may ask the plaintiff

7    on cross-examination whether she has any expectation of

8    financial remuneration as a result of this case.  If the answer

9    is no, then that may be the end of it.  On the other hand, if

10   the answer is yes, that may drift into other areas.  So I'm not

11   saying it is going to happen, Judge, but I wanted to make a

12   note.

13             THE COURT:  Any objection to that from the plaintiff?

14             MR. FRANZINI:  I guess my concern is if opposing

15   counsel is intending to elicit from our client that the

16   statutory amount of the TCPA violation is $500, that would run

17   afoul of our other motion in limine.

18             THE COURT:  If we start with the premise that if any

19   witness has a financial interest in the outcome, that obviously

20   is fair game for bias.

21             So with that as a framework, let me ask Mr. Franzini

22   or any plaintiff's counsel, what would be an appropriate way in

23   your view for the defendant to elicit from the plaintiff

24   whether she has a financial interest in the outcome of the case

25   in order to present evidence of potential bias?

1          MR. FRANZINI:  Well, Your Honor, I think they could

2     ask the question that counsel said, which is, do you expect to

3     recover along with the class?  I think if you go into the

4     amount, that runs into the motion in limine.

5          THE COURT:  Defendant's position?  By the way, I

6     know -- let me rephrase that.

7          I will not let you get before the jury the fact that

8     there is a $500 statutory minimum per violation.  So take that

9     as a given.

10          What do you think is the right way for you to ask the

11     question to the plaintiff, if you want to try to show a

12     financial interest, as part of the argument, applies?

13          MR. O'NEAL:  I am thinking of the draft outline I

14     have got running already, Judge.  I could see a couple of

15     questions, which is -- let's say I ask it in a leading manner

16     the way I am supposed to.  "How much do you expect to make from

17     this case?  Do you have any hope or anticipation of getting any

18     money from anyone as a result of what happens here?"  Those

19     types of things.

20          THE COURT:  Well, if you asked, "How much do you

21     expect to get from this case?"  Well, let me ask her lawyer.

22     What do you expect her answer will be?

23          MR. JACOBSON:  Your Honor, I will be doing

24     Ms. Wakefield's direct, I expect her answer would be, "I don't

25     know," but I'm not sure about that.  I'm concerned that the

1    answer might be "maybe $500," or it may be something else.

2            THE COURT:  If she does expect, let's say, to get

3    $500 if she wins, shouldn't the jury be allowed to hear that in

4    order to evaluate whether or not the prospect of getting $500

5    if she wins may affect the credibility of her testimony or

6    their evaluation of her credibility?

7            MR. JACOBSON:  I think no, Your Honor, and one reason

8    is Rule 403.  You have to weigh the minimal relevance to

9    credibility, 500 bucks, the reason Your Honor granted that MIL,

10   if this jury finds out it is $500 per class member, that is

11   going to be very meaningful to them and very likely to

12   prejudice us.

13           THE COURT:  All right.  Can you assure me in the

14   absence of a settlement -- I'm not going to talk about

15   settlement issues -- but in the absence of a settlement that

16   plaintiff will get no more than $500 per call?

17           MR. JACOBSON:  Your Honor, is there a specific way of

18   her getting money that you're concerned about?  I'm not sure of

19   any way she would get more than $500 per call.

20           THE COURT:  Well, I want to know if she is getting

21   some type of -- if she has been promised by class counsel some

22   promise for taking on the responsibility, and, frankly, the

23   financial potential responsibility of being a class rep.  It is

24   not easy to be a class rep.

25           MR. JACOBSON:  No, Your Honor.

1           THE COURT:  So she has not been promised anything

2   beyond her share as a class member?

3           MR. JACOBSON:  That's correct.

4           THE COURT:  Do we know right now -- and I'm sure you

5   do -- how many calls is she going to say she received?

6           MR. JACOBSON:  Five calls, Your Honor.

7           THE COURT:  So we know that in theory she could get

8   her share, putting aside class counsel fees, $2,500, but if it

9   is trebled, she could get as much as $7,500, right?

10          MR. JACOBSON:  If it's trebled, yes.

11          THE COURT:  So that's at least a possibility.  I

12  probably would be willing to say under a 403 analysis that $500

13  is too small to be probative of credibility.  I don't think I

14  can say that for $7,500.

15          MR. JACOBSON:  One thought to add on the 7,500.  It

16  is very speculative that it will be trebled.  We just don't

17  know the answer.  That's relevant to her expectations and the

18  impact it has on bias.

19          THE COURT:  Putting aside the question of bias and

20  the jury, if we just had a bench trial here, it would be no big

21  deal if she were asked, "You're hoping to get at least $2,500,

22  and if all goes well, you might even get 7,500; isn't that

23  correct?"  She will say, "Yes," I assume.

24          MR. JACOBSON:  Your Honor, I will assume she will

25  say, "I don't know," and then suddenly we have thrown that

1    skunk out there in the jury box, and we didn't even get a

2    couple of cross questions.

3            THE COURT:  Here is another way we can do it:  I can

4    find outside the presence of the jury how she will answer that

5    question.  Then I'll listen to both sides of your arguments.

6    If her answer is going to be "I don't know," and then the

7    defendant can probably follow up with, "Do you have new idea,

8    or any ballpark?"  And if she says no or if she says $500, I

9    would probably rule that that's de minimis and not sufficiently

10   probative; and therefore, it is excluded under 403.  If she

11   says, "Gosh, I hope I could get as much as $7,500," that may

12   come out.  I probably would not let anybody explain how that

13   got calculated, but we will have to see.

14           All right.  We may have to address this issue outside

15   the presence of the jury because I need to weigh the probative

16   value of the remuneration as it affects her credibility against

17   the risk of unfair prejudice to plaintiff.

18           MR. JACOBSON:  Understood, Your Honor.

19           THE COURT:  All right.  We will defer that one.

20           All right.  That takes care of the plaintiff's

21   motions in limine.

22           Mary, do we have a 3:00 or 3:30?

23           THE CLERK:  We do.

24           THE COURT:  What time?

25           THE CLERK:  3:30.

1              THE COURT:  For your planning purposes, I have a

2    criminal matter that will take, I believe, less than ten

3    minutes at 3:30, and I do need to give our reporter a break.

4              Dennis, do you want it before or after the 3:30?

5              THE COURT REPORTER:  After.

6              THE COURT:  Okay.  I will see counsel coming in at

7    3:30, and then maybe take a 15 or 20-minute break for you all.

8              MR. O'NEAL:  Judge, should we clear our stuff out to

9    make room for counsel?

10             THE COURT:  Mary, do we have someone in custody?

11             THE CLERK:  We do.

12             THE COURT:  We can put him on that table.

13             Now let's turn to defendant's motions in limine.

14   Defendant moves that no one should refer to ViSalus's

15   operations as either a pyramid scheme or refer to ViSalus's

16   compensation structure.  I'm fine with ordering that no party

17   may refer to ViSalus as a pyramid scheme.  However, I do note

18   in ViSalus's own materials and their own briefing they refer to

19   themselves as a multilevel direct marketing company.  So I

20   assume plaintiff can refer to ViSalus as a multilevel direct

21   marketing company, correct?

22             MR. O'NEAL:  Correct.

23             THE COURT:  So no "pyramid scheme."  Don't use those

24   words.

25             What's the issue on ViSalus's compensation structure?

1   Does plaintiff want to be able to explore ViSalus's

2   compensation structure, and if so, how is that relevant?

3          MR. JACOBSON:  Your Honor, I will address what we

4   want to be able to say and explain why it is relevant.  We just

5   need to be able to explain who these class members are and what

6   their relationship was to ViSalus.  They were promoters.  They

7   went inactive.  And the reason ViSalus was calling them was

8   trying to get them to come back and sell ViSalus's products,

9   and to do that, ViSalus made telemarketing calls where it

10  offered them discounts and other rewards.  We don't plan to

11  explore in depth ViSalus's compensation structure, but the jury

12  needs to understand how the business works to understand who

13  this class is.

14         THE COURT:  You are not planning on getting into any

15  issues about if a class member brings in other people, then

16  that class member might also be able to get some additional

17  compensation by bringing in more people?

18         MR. JACOBSON:  We need to touch on that to explain

19  how Ms. Wakefield got involved.  Her mother connected her.  She

20  joined to help her mother, because she understood her mother

21  would get some money.  It is going to be one quick question.

22  We are not going to dwell on that.

23         Your Honor, I don't think ViSalus has identified any

24  inflammatory prejudice.  It is just how the business worked.

25         MR. O'NEAL:  Judge, I am sorry.  I wasn't

1    understanding what you were just saying with the connection

2    with mother, the mother promised money.

3              THE COURT:  I think what we are going to hear is that

4    Ms. Wakefield, the class rep, got involved because her mother

5    was a promoter.  Ms. Wakefield -- the class rep realized that,

6    not only did she get involved she might have some opportunity

7    to have some earning herself, but that getting involved would

8    be an advantage to her mother.

9              Any objection?

10             MR. O'NEAL:  No.

11             THE COURT:  All right.  Then we can do that.

12             All right.  So granted in part; denied in part.  No

13   use of the words "pyramid scheme," and things like that.

14             All right.  Defendant's second motion in limine is

15   that neither the plaintiff nor her husband can refer to any of

16   their dissatisfaction with ViSalus's products, services, or

17   opportunities.

18             Does plaintiff need to get into that, and if so, what

19   is it relevant to?

20             MR. JACOBSON:  Your Honor, with Ms. Wakefield, we

21   need to be able to tell her story.  We need to explain that she

22   was a ViSalus promoter and briefly explain why she quit, and

23   the reason she quit is because she tried the products, and they

24   didn't work for her.  They didn't work for her friends.  She

25   didn't make money, and so she quit.  That's it, Your Honor.  We

1    are not going to dwell for 30 minutes on how terrible ViSalus's

2    products are or how awful their services are.  We just need to

3    tell a coherent story with Ms. Wakefield.  There's nothing

4    inflammatory or prejudicial about that.  In fact, stopping us

5    from doing that, Ms. Wakefield's story doesn't make sense, and

6    it would prejudice us.

7            THE COURT:  Sure.  Response by the defendant.

8            MR. O'NEAL:  If that's all that it is going to be

9    limited to, and I'm not going to hear "ViSalus sucks" and "I

10   hated it," and everything else, then I don't see a problem,

11   particularly if it is part of a narrative.

12           I will tell you, Judge, that the motion in limine was

13   borne out of -- part of the filings in this case were like

14   multiple consumer complaints about how bad our client was.  We

15   weren't quite sure where the plaintiff was going to be taking

16   that.

17           THE COURT:  All right.  I think we have a resolution

18   on that.  It is granted in part, but plaintiff will have leeway

19   to tell plaintiff's story without unreasonably and excessively

20   throwing dirt on the defendant.

21           Defendant's third motion in limine, other consumer

22   complaints.  I just don't see how that is relevant to anything.

23   Am I wrong?

24           MR. JACOBSON:  Your Honor, we have one consumer

25   complaint that is not only relevant to willfulness, it is

1    relevant to show that ViSalus was delivering prerecorded

2    messages that went on people's voice mails, which is a disputed

3    issue in this case.

4            I can pull up that exhibit and address it.

5            THE COURT:  Why don't you do that.  Obviously I'm

6    going to let you show that they delivered a prerecorded

7    message, but I don't see why we have to get into a consumer

8    complaint.

9            By the way, to the extent consumer complaints may be

10   relevant to willfulness, that's fine.  I'm not going to worry

11   about that.

12           MR. JACOBSON:  Understood, Your Honor.

13           THE COURT:  Which exhibit should I look at, or is

14   this an audio?

15           MR. JACOBSON:  This is visual.

16           THE COURT:  What exhibit should I look at?

17           MR. JACOBSON:  I believe I'm looking for P45.

18           THE COURT:  Okay.  I have 45 in front of me.  P45 is

19   a two-page email.  Where is the portion?

20           MR. JACOBSON:  Your Honor, I have pulled P45 up on

21   the screen here.  What this is is an email from ViSalus's chief

22   legal officer, Adam Morgan, to ViSalus's compliance analyst,

23   Mr. Scott Gidley.  The subject is "Better Business Bureau

24   complaint," and I will explain how this is relevant to the

25   factual issues.

1             THE COURT:  One second.

2             MR. JACOBSON:  I apologize, Your Honor.  It's P47.

3             THE COURT:  All right.  I have P47.  The subject,

4    "BBB complaint."

5             All right.  I'm looking.  So where is the relevant

6    portion of this?

7             MR. JACOBSON:  The relevant portion begins on page 2,

8    Your Honor.  You'll see in this email chain that we have an

9    email from Mr. Gidley, ViSalus's compliance analyst, to its

10   chief legal officer.

11            What he says in this email is that he looked into

12   this Better Business Bureau complaint, and he just confirmed

13   that two messages were left on her answering machine as part of

14   the WinBack complaint.  This is a class member being

15   investigated --

16            THE COURT:  Show me where is that.  I see Gidley to

17   Morgan; January 26th at 4:45.

18            MR. JACOBSON:  Kelly Dickens and Kelly Ryan.

19            THE COURT:  I see.  When it was automatically

20   downgraded from a promoter account.  Where is the relevant

21   information?  I am missing that.

22            MR. JACOBSON:  Your Honor, do you see --

23            THE COURT:  I see, yes.

24            MR. JACOBSON:  "Just confirmed that two messages were

25   left on her answering machine."  ViSalus concedes in this case

```
 1    that it delivered prerecorded messages to answering machines.
 2    This is an investigation of ViSalus's own 30(b)(6)
 3    representative did, who looked in this complaint, and he
 4    confirmed that this class member got two messages left on her
 5    answering machine.
 6            Your Honor, you see it says part of the WinBack
 7    campaign.  That's the campaign where ViSalus was trying to win
 8    back promoters.
 9            THE COURT:  Is the "her" referring to Kelly Ryan or
10    Kelly Dickens.  Oh, I see.  It says, "Customer has two
11    accounts."  Got it.
12            Let me ask you this question:  In terms of the
13    relevant information that you want to present, wouldn't it be
14    sufficient to show nothing on page 1 -- basically redact or
15    eliminate 47-1.  Then on 47-2 redacting the words "BBB
16    complaint" in the subject lines and redacting the line that
17    says "original complaint filed."  Frankly, redacting those
18    first three lines:  "Original complaint filed; first
19    notification from BBB; second notification from BBB."
20            If we redact all of that and we redact the subject,
21    you can then present that on January 26th, 2016, Scott Gidley
22    was telling Adam Morgan and CC'ing Josh Berger that he
23    investigated and that the customer has two accounts and that
24    Gidley just confirmed that two messages were left on her
25    answering machine as part of the WinBack campaign, et cetera,
```

 1    et cetera, through the rest of page 2.

 2              Wouldn't that be sufficient to present the relevant

 3    portion of this document to the jury?

 4              MR. JACOBSON:  Your Honor, if I may address that

 5    piece-by-piece starting with the first email on page 1.  I

 6    agree with Your Honor that we can do without that.

 7              THE COURT:  All right.

 8              MR. JACOBSON:  My concern about redacting the "BBB

 9    complaint" information and the information about a complaint

10    from page 2, it is not going to make any sense to the jury why

11    Mr. Gidley investigated.

12              THE COURT:  What difference does it make?  There was

13    an issue.  He investigated it.  He confirmed that there were

14    two messages left on this customer's answering machine as part

15    of the WinBack campaign.  What more do you need?  Why does the

16    jury need to know why he was investigating something?

17              MR. JACOBSON:  Your Honor, if we redact "BBB

18    complaint" and we redact any reference to complaint -- let me

19    take a step back, Your Honor.

20              THE COURT:  In other words, they are not really

21    bullet points; they are dashes.  But in the second email, the

22    4:45 p.m., I think if you redact the first three lines that

23    begins "original complaint, first notification, second

24    notification" and "re" -- just redact the words "BBB

25    complaint."  You can put "re phone call."  Of course, redact

1  "BBB complaint" in the subject line at the top of the email.

2          We see that -- frankly, that's February 4th.  That

3  came later.  You don't even need that top email.

4          MR. JACOBSON:  Your Honor, this is an important email

5  in this chain.  We can do without the top email.  We don't need

6  that.  But if you see the second email in the chain on page 1,

7  it says, "Ms. Dickens was contacted twice in December regarding

8  a WinBack promotion," that's relevant.

9          THE COURT:  Okay.

10          MR. JACOBSON:  So we need that.  If we could use that

11  email and the email on the next page, the same thing, saying he

12  confirmed it, then Your Honor we can do without the "complaint"

13  language.

14          THE COURT:  Okay.  I see that.  So we will take the

15  words "BBB complaint" out of every subject line.  Frankly, the

16  rest of it isn't a problem.  We will take the three lines that

17  I referenced, "original complaint, first notification from BBB,

18  second notification from BBB."  In other words, every time you

19  see the word "complaint," it is gone.  Every time we see the

20  letters "BBB," it is gone.  Then it looks like the rest is

21  probably okay.  You can live with that, right?

22          MR. JACOBSON:  Your Honor, we think we should be able

23  to present "complaint," but we can live with it.

24          THE COURT:  Got it.

25          And if we redact the document as I just described,

1    any further objections from the defendant?

2              MR. O'NEAL:  Are we speaking about admissibility of

3    this document now, Judge?

4              THE COURT:  No.  We are talking about just the motion

5    of limine talking about customers' complaints.

6              MR. O'NEAL:  Is your intention also to take out the

7    line that says that there is no record that she called back for

8    messages.  However, her phone number is on our DNC list.  They

9    dropped the "Do Not Call" claim.

10             THE COURT:  Good point.  I think we need to redact

11   that line, "Her phone number was placed on the DNC."  Any

12   reference to DNC needs to go back.  It is an irrelevant issue

13   that they are calling someone on a "Do Not Call" list.

14             MR. JACOBSON:  Understood, Your Honor.

15             THE COURT:  All right.  Looking strictly at the

16   motion in limine on customer complaints, I take it that

17   defendant has no further arguments on 47, as redacted, as I've

18   just described, but we are not talking admissibility.

19             MR. O'NEAL:  As I understand what the plaintiff's

20   position is, the only document that could fall into the

21   category of customer complaints that they plan to try to get

22   admitted is Exhibit 47.  Subject to what you said, I'm fine

23   with what Your Honor has done, reserving the right to object to

24   the exhibit itself.

25             THE COURT:  Sure.  Do you agree with that comment,

1   Mr. Jacobson?

2           MR. JACOBSON:  Your Honor, I would like the

3   opportunity to address 45 because I believe there is some

4   non-willfulness related.

5           THE COURT:  We are done with 47.  I would like to see

6   an amended 47.  You don't have to call it 47A.  But when you

7   redact 47, just give me a new substituted 47, please.  Make

8   sure you get Mary the revised electronic version for the jury

9   in case it does get admitted.

10          Okay.  You wanted to talk about 45.  You may.

11          MR. JACOBSON:  Briefly, Your Honor, please.

12          THE COURT:  You may.

13          MR. JACOBSON:  45 is an email from the ViSalus's

14  compliance department to Mr. Gidley, the 30(b)(6)

15  representative.  In this email they forward a number of

16  complaints from a former ViSalus promoter to ViSalus.  These

17  are complaints directly to ViSalus, and these complaints are

18  specifically about ViSalus delivering a prerecorded messages.

19          THE COURT:  Show me where I should look.  Where do I

20  find all this?

21          MR. JACOBSON:  One example, Your Honor, if you look

22  on page 1, you see the second email is from Bree Schappert.

23          THE COURT:  Yes.

24          MR. JACOBSON:  Then you see the second sentence in

25  the email says, "Why do you insist on harassing me with daily

1    recorded phone calls" --

2              THE COURT:  Yeah.

3              MR. JACOBSON:  -- "including a five-minute long voice

4    mail?"  Each of these complaints that she has forwarded to

5    ViSalus over time.  For example, in the next email down, she

6    says, "I get a five-minute-long voice mail on my machine every

7    time you call."  If we then flip to page 2, Your Honor, we see

8    some earlier complaints from her to ViSalus where she says, "I

9    just got another recorded call."  Then in the last email on

10   page 2, "I'm still being harassed with multiple recorded phone

11   calls from ViSalus."

12             So the relevance here is not about willfulness,

13   although it is relevant to that too.  It is also relevant to

14   show that ViSalus was making recorded calls.

15             THE COURT:  Let me ask you this -- I totally get the

16   relevance to willfulness.  That's not a problem.  I will

17   receive it for willfulness, assuming it is otherwise

18   admissible.

19             This is a statement from Bree Schappert.  How is that

20   going to be admissible?

21             MR. JACOBSON:  Your Honor, it could be offered for

22   the truth of the matter asserted under two different hearsay

23   exceptions.  The first is it's present sense impression.

24   Your Honor, in her emails -- here is an example on page 2, if

25   you look at her first email on page 2.  She says, "Just got yet

1    another recorded call."  She is getting these calls and

2    immediately typing this email out to ViSalus describing what

3    has happened to her.  That meets the present sense impression.

4         It also meets the second exception, Your Honor,

5    excited utterance.  From the context of these emails it is

6    clear she was extremely upset and stressed out about these

7    calls.  For example, in this email we are looking, she says,

8    "Seriously," and puts like eight question marks on it.  She is

9    under the stress of the moment, and the hearsay rules find that

10   under the circumstances it is reliable and can be admitted for

11   the truth of the matter asserted.

12        Your Honor, I would add one more argument to that.

13   If you look at the top email from ViSalus where ViSalus

14   compliance responds to Mr. Gidley, ViSalus doesn't say,

15   "Ms. Schappert is wrong; she didn't get recorded messages.

16   This is not reliable."  They just ask her to provide her phone

17   number.  She just sent another email.  They deny this fact.

18   They implicitly adopted that she is right about this.

19        THE COURT:  So your two hearsay exceptions are

20   present sense impression and excited utterance.

21        MR. JACOBSON:  Your Honor, I would also add that this

22   would be adopted by ViSalus that what she said was true.  It

23   would fall in under the admission by party-opponent exclusion

24   as well.

25        THE COURT:  All right.  Defendant's position.

1            MR. O'NEAL:  Judge, are we talking about the

2    admissibility of this exhibit, or are just narrowing it down?

3            THE COURT:  Yes.  Let's talk about admissibility.

4            MR. O'NEAL:  First of all, Judge, this isn't a class

5    member, and the phone number here is Canadian.  So I'm not

6    really quite sure why we are even referencing it.  I think you

7    can take judicial notice that 204 is the area code for

8    Manitoba.

9            Moreover, Judge, there is no foundation for this.

10   Everything that counsel just said was counsel's testimony.

11   There is not a lick of, "Oh, and did you agree with it?  Did

12   you adopt it?  Is this part of your business records," anything

13   that like that.  All we have, Judge, is a document exchanging

14   some comments about a Canadian who isn't even part of the

15   class.

16           Then we get to the prejudicial stuff, Judge.  The

17   reason why they want that -- this is exactly the reason we

18   brought the motion in limine -- to prevent the jury from being

19   inflamed and prejudiced by customers who are pissed off at my

20   client.  So for all those reasons, Judge, and I actually should

21   also add, as I look at it, this isn't a present sense

22   impression of, "Oh, my God, he just got shot," or something

23   like that.  This is somebody who just is angry taking the time

24   to hit the numbers on the keyboard, then pressing and sending.

25           THE COURT:  By the way, I think it is kind of

```
 1    probably present sense and/or excited utterance.  But I'm

 2    intrigued by the argument that if it is not a class member,

 3    it's irrelevant.  Is Bree Schappert, whose email address has a

 4    Canadian suffix .ca, is she a class member?

 5              MR. JACOBSON:  Your Honor, I would have to check.  It

 6    sounds like she may be not, but it is still relevant.

 7              THE COURT:  Why?

 8              MR. JACOBSON:  Evidence is relevant if it has any

 9    tendency to prove a material fact.  This proves that ViSalus's

10    POM machine system was delivering prerecorded messages and

11    delivering frequently.

12              THE COURT:  How do we know this came from the POM

13    machine?

14              MR. JACOBSON:  ViSalus has stipulated that this

15    program is the POM machine, where recorded messages --

16              MR. O'NEAL:  To be clear, Judge, we have not

17    stipulated that what is being referred to here was delivered by

18    POM.  We haven't said anything about this exhibit.  We haven't

19    asked any questions, no interrogatories, no requests for

20    admission.  Nothing.

21              THE COURT:  How would you lay the foundation that

22    this call to this non-class member came from the POM machine?

23              MR. JACOBSON:  Your Honor, we do have a stipulation

24    from ViSalus that says that the two types of prerecorded calls

25    were placed through POM, Voice Casting calls and Press One
```

1    calls.  We also have the time period is relevant.  When she is

2    sending these in 2013 is our class time period when ViSalus was

3    using the POM machine.

4              Also, Your Honor, we have evidence that the reason

5    that ViSalus was calling these promoters was trying to get them

6    to come back to ViSalus.  If you look at these emails,

7    Ms. Schappert says, "I quit long ago.  I don't want to come

8    back."  This is consistent with it being a WinBack campaign and

9    also ViSalus's witness runs through POM.

10             THE COURT:  I want to think about 45 a little bit

11   more.

12             It sounds like all we have on the complaints are 47,

13   with some redactions as we have described, and there will be no

14   more objection to 47.

15             45, there is an objection to admissibility.  There is

16   an admissibility under 403.  We will talk about it some more.

17             MR. JACOBSON:  Yes, Your Honor.

18             THE COURT:  I will think about 45 some more.

19   Interesting.

20             All right.  Let's see if we can get through these

21   motions in limine.  That addressed motion in limine No. 3.

22             47 will be redacted.

23             45, ruling reserved.

24             Defendant's motion in limine No. 4, Group Cast.

25   Plaintiff doesn't oppose redacting or omitting all references

1    to the word "Group Cast."

2              By the way, what's Group Cast?

3              MR. O'NEAL:   What is Group Cast?  Group Cast, Judge,

4    is basically an Internet "join on the call," and then we will

5    cast out a message to all the people on your email.  Come and

6    talk -- join the email conference.

7              THE COURT:  Okay.  So plaintiff doesn't oppose that

8    motion, so defendant's fourth motion in limine is granted.

9    Plaintiff may not present any evidence, documents that refers

10   to Group Cast.

11             Defendant's fifth motion in limine, among other

12   things, they don't want the auto dialer issues.

13             Auto dialer is not in this case, correct?

14             MR. O'NEAL:   There is no claim that the use of the

15   auto dialer violated a statute.

16             THE COURT:  Right.

17             So you want to ensure that the plaintiff does not

18   refer to things like "auto dialing" or the "auto dialer"

19   provisions.  I take it that plaintiff doesn't disagree with

20   that.

21             By the way, you are welcome to stand at your desk or

22   sit at your desk, whatever you want.  You don't have to keep

23   popping up back there.  It is up to you.

24             MR. FRANZINI:   I am used to getting up, Your Honor.

25   I will sit here.

1              I think there are two issues here with auto dialer.

2    We are not going to suggest that ViSalus is violating the auto

3    dialer provisions of the TCPA.  The jury doesn't have jury

4    instructions on that or anything like that.

5              However, ViSalus is violating the recorded voice

6    section of the TCPA using an auto dialer called the POM machine

7    or POM.  The POM machine is what allows it to make these calls.

8    So we need to be able to explain to the jury how ViSalus is

9    making all these calls and why it makes sense for ViSalus to

10   use a recorded voice as opposed to a live agent.

11             THE COURT:  Well, obviously I'm not going to let you

12   imply that ViSalus is violating the auto dialer portions of the

13   TCPA, but you are saying you are not going to make that

14   indication anyway.

15             What else do I need to worry about here?

16             MR. O'NEAL:  The motion in limine, Judge, is

17   primarily designed not to inflame the passion of people

18   associated with robo dialing or robo calling, which is exactly

19   the statute that you are identifying; that this is a robo call

20   class, that kind of thing.  So when I read their response to

21   the motion in limine, and it actually gave me pause to the fact

22   that that is exactly what they were trying to do.  What they

23   are going to try to use is to inflame the concept of, "This is

24   an auto dialer, and you were calling millions of people without

25   thought," that kind of thing.

1           If all they are going to do is just say, "Progressive

2    Outreach Manager system," also known as POM, had the capability

3    by which the computer would dial numbers as opposed to having

4    somebody to manually type in digits, that's not a problem.  It

5    is trying to get, "Everybody hates robo calls" is what the

6    motion in limine is targeted at.

7           THE COURT:  So what is the technical definition of a

8    robo call?

9           MR. O'NEAL:  There really isn't one.  It is not in

10   the statute.  It is just kind of bandied about as a term of

11   art.  Candidly, over the last couple of months since I have

12   come into this case, I have found that everybody has a

13   different definition for it.

14          THE COURT:  What I thought, and this was without

15   legal analysis or research.  What I've always assumed, if it is

16   an artificial voice or a prerecorded voice, and so my phone

17   rings, and I'm not talking to a live human being, if it is not

18   live, it is a robo call.  Am I wrong?

19          MR. O'NEAL:  I don't know.  Like whenever I've heard

20   robo call, what I've heard it referred to sometimes as a robo

21   call is when there is a robot or an automatic dialer is dialing

22   all the numbers.  I have also heard robo class.  It is one of

23   those things that everybody just grabs ahold of and uses in the

24   vernacular without really giving any precision to it.

25          THE COURT:  This case is going to be about

1    allegations that a class was called using artificial voices or

2    prerecorded messages so that when the call rings, and I want to

3    say, "Excuse me; can you please stop calling me," I'm not

4    talking to a live human being.  I'm talking then to a robot.

5            So I'm not going to grant the fifth motion in limine,

6    but I'm going to keep a close ear out to plaintiff, whether in

7    opening statement or anywhere else, misrepresents what this

8    case is about or misuses the term, I will certainly entertain

9    objections from defendant at that time.

10           All right.  Before we break for my hearing in a

11   criminal matter, let me ask you this:  I have gone through

12   defendant's objections to plaintiff's deposition designations,

13   and I can share with you my rulings on those when we come back.

14   They are pretty darn simple and pretty easy.

15           What are we going to do about plaintiff's objections

16   to defendant's deposition cross-designations?  I didn't get

17   from plaintiff -- well, I got a lot more from plaintiff, and

18   some of them seem to be along the lines of things that probably

19   won't be presented by defendant if they go strictly to the

20   willfulness issue or lack of willfulness and lack of knowledge.

21   What will be an efficient way for me to rule on plaintiff's

22   exceptions?

23           Let me start from the beginning on this question.

24   Now that you know my ruling that nothing that relates only to

25   willfulness or knowingly is going to go to the jury, won't both

1   sides want to further refine and reduce their deposition

2   designations and cross-designations?

3               MR. ADAMS:  Your Honor, the short answer is yes.

4               THE COURT:  So what I think I need to do is give you

5   the time to process that ruling, go through your deposition

6   designations and cross-designations, take out anything that is

7   only related to willfulness or knowingly, confer with each

8   other, and then present to me a revised list of what do you

9   really still disagree about.  Frankly, if you can do that by

10  Friday at 5:00, I'll work over the weekend, and I will get you

11  rulings by Monday and then you can be prepared for your trial

12  on Wednesday.

13              Will that work?

14              MR. ADAMS:  Yes, Your Honor --

15              MR. O'NEAL:  Yes.

16              MR. ADAMS:  -- but there is another issue that we may

17  want to discuss, and it has to do with the order in which these

18  depositions will be read.

19              THE COURT:  Right.  We can talk about that when we

20  come back from the break, but I'll share with this you.  If

21  there is a cross-designation -- here is how I generally

22  approach this problem:  If there is a cross-designation that

23  immediately precedes or immediately follows a designated

24  portion, basically if there is some blue that immediately

25  precede or immediately follows a yellow, my general presumption

1   is that belongs to be read at the same time under the rule of

2   completeness.

3           One possible exception to that is if the designated

4   portion goes on and on and on and basically tries to dilute the

5   impact of the designated portion -- I'm not sure I saw that,

6   but you can call that to my attention.

7           If, however, a cross-designation is reasonably

8   distant from a designation, then my general presumption is it's

9   not required to read at the same time under the rule of

10  completeness, but that's a rebuttal presumption.  So for

11  example, on page 2, the person says, "The light was red at the

12  time of the accident."  Then on page 27 the person says, "Oh,

13  by the way, I made a mistake earlier on.  I said the light was

14  red.  I meant it was green."  That has to be read at the same

15  time at the time we hear the light was red under the rule of

16  completeness, but that's a rare circumstance.

17          So maybe what you need to do is realize that if it is

18  closely connected -- right before/right after -- I'm going to

19  insist that that be read at the same time -- that the

20  cross-designation be read at the same time of the designated

21  portion.

22          If it is far distant or if it goes on for a really

23  long time, call that to my attention, and then my presumption

24  will be, no, the other side can read that in their

25  case-in-chief.  That should be able to give you enough guidance

1    to be able to work that through, and for those very few

2    remaining objections and disagreement, call them to my

3    attention, and that's how I will work it through.

4                Does everybody understand what I'm talking about?

5                MR. ADAMS:  Yes, Your Honor.

6                THE COURT:  Okay.  Let's take a recess now, 20

7    minutes for you.  I'll take the next criminal matter if the

8    folks are ready, and then Dennis, we will get you a break.

9                (Recess.)

10               (Open court; proceedings resumed:)

11               THE COURT:  All right.  Welcome back.

12               So we talked a little bit about a process dealing

13   with deposition designation and cross-designations.  There is

14   only one thing I really want to share with you that confused

15   me.

16               By the way, I do see that in Scott Gidley's 2016

17   deposition, the word "logarithm" has been corrected to

18   "algorithm."  Page 36, line 2.  There is no objection to that,

19   right?  Okay.

20               And then on page 111, line 5, it appears that is

21   being correct to be read the answer is yes, correct?  Nobody

22   has a problem with that; am I right?  Okay.

23               On John Laun's deposition testimony, I was confused

24   about the following:  If you turn to page 39 of John Laun's

25   testimony, page 39, lines 22 through page 40, line 5, I see

1     that defendant objects to that as irrelevant, but the version

2     that I have has it marked in blue, which means it is

3     defendant's designation.

4                What am I misunderstanding?

5                MR. O'NEAL:  Let me read it, Judge.  Could you repeat

6     the cite.

7                THE COURT:  Sure.  If you go to Docket 192,

8     defendant's objections to plaintiff's deposition designations.

9     That's Docket 192.

10               MR. O'NEAL:  Right.

11               THE COURT:  Now take a look at John Laun.  It is on

12    page 3.  The second entry, page 39, line 22 to page 40, line 5.

13    Defendant objects on the grounds of relevance.  So I take a

14    look at that designation to see if it is relevant or not, and I

15    see it is marked in blue, which tells me that is a defendant

16    designation.  What am I missing here?

17               MR. O'NEAL:  Maybe it was my hand-fisted way of

18    trying to say it is irrelevant, but that if you allow the

19    plaintiff's designation, then I would add the additional

20    portion.

21               THE COURT:  I'm totally baffled.  I still don't

22    understand you, and here is why:  The only thing you are saying

23    is irrelevant is page 39, line 22 to page 40, line 5, and that

24    consists of two questions and two answers.  I'm totally fine

25    with taking out those two questions and two answers as

1    irrelevant.

2              So do you want them in or want them out?

3              MR. O'NEAL:  I want them out.

4              THE COURT:  You want them out?

5              MR. O'NEAL:  Yes.

6              THE COURT:  Okay.  Then they are out.

7              If you want them out, I won't ask you why you

8    designated them blue to begin with, but the thought crossed my

9    mind to ask that, but I won't.

10             Okay.  Let's talk about defendant's exhibits -- there

11   is only five of them -- and plaintiff's objections.

12             So we have defendant's trial exhibits.  Plaintiff

13   objects to all of them.  Now, given that willfulness and

14   knowingly only goes to the Court, not the jury, does the

15   defendant still want all five of those exhibits, 201, 202, 203,

16   204, and 205, or do any of them relate solely to willfully?

17             MR. O'NEAL:  Accepting Your Honor's ruling, on 201,

18   we agree, based on that ruling, it could not be used with the

19   jury, but reserve the right to use it with you.

20             THE COURT:  Of course.  You don't even need to say

21   that.  Right now I'm just not worried what you want to use with

22   me.  My general attitude is you can use anything and everything

23   you want with me.  Then when we get to closing arguments or

24   post-trial arguments on that issue, you can then make the

25   arguments that I shouldn't consider this or that, as I decide

1   willfully or knowingly.

2           MR. O'NEAL:  With that, Judge, 201 fits that; 202

3   fits that; 203 fits that.  204 does not, Judge.  I've marked

4   it, but I'm not sure I'm going to use it.  But this, I believe,

5   is the computer history with respect to products which were

6   ordered by the plaintiff herself.

7           THE COURT:  Okay.

8           MR. O'NEAL:  And I think that's it, Judge.

9           THE COURT:  What about 205?  Do you still want 205

10  for the jury?

11          MR. O'NEAL:  I'm sorry.  Let me see -- let me think

12  about that for a minute, Judge, because I've got to absorb it

13  with the context of the withdrawal.

14          THE COURT:  To be precise, Exhibits 201, 202, and 203

15  are being withdrawn as exhibits to be presented to the jury.

16  You are always welcome to offer them with me, and we will deal

17  with that.  But they are not going to be offered to the jury,

18  so I don't need to worry about plaintiff's objections to those.

19          You may very well want to use 204 in front of the

20  jury.

21          So what is, if any, plaintiff's objection to 204?

22          MR. FRANZINI:  Your Honor, we don't have a legible

23  copy of 204, so we can't tell what it is.

24          THE COURT:  Well, let me ask your definition of

25  "legible."

1              Mary, would you show them mine.  Is your copy

2    different than my copy?

3              (Pause in proceedings.)

4              MR. FRANZINI:  I think it is, Your Honor.

5              THE COURT:  Well, then defendant needs to start out

6    by explaining why you would have a different copy than I have.

7              MR. O'NEAL:  It does appear that your copy is better,

8    Judge.  It is better than mine.  That must be the result of too

9    many copies being run.  I apologize to opposing counsel.  We

10   absolutely will get a clearer copy to him.

11             THE COURT:  Very good.  Let me give plaintiff's

12   counsel my copy for a few minutes, and then I'll ask you what's

13   your objection to it.

14             MR. FRANZINI:  Thank you, Your Honor.

15             THE COURT:  By the way, it is not my plan to preadmit

16   anything, but I do want to know if there are any objections.

17   What my plan would be is to either sustain the objection.  I

18   might overrule the objection now, subject to appropriate

19   authentication or foundation.  If there is no objection to a

20   document, then I would like to know that.  Otherwise, if there

21   is an issue that may require foundation, I may say, "let's wait

22   and see it in trial context," if it is a relevance issue or

23   something like that.

24             Does plaintiff have an objection to 204?

25             MR. FRANZINI:  Your Honor, I'm not sure what the

1    relevance is.  It appears to be our client's order history.  I

2    don't know how that's relevant to the case.  I don't think it

3    has been authenticated.  And to the extent it is being used for

4    the trust of the matter asserted, it is hearsay.

5            THE COURT:  Well, it probably is a business record.

6    I'm not going to worry about that, if there is a foundation for

7    business record.

8            But I'm going to reserve ruling on 204.  My guess,

9    what I'm hearing from defendant, if you are going to use it, it

10   will probably be in cross-examination of Ms. Wakefield; am I

11   right?

12           MR. O'NEAL:  Yes, Your Honor.

13           THE COURT:  So they can lay a foundation of whether

14   it is accurate; whether she received it from the defendant.  If

15   they then want to offer it, and you want to object to

16   relevance, I'll ask defendant briefly how is it relevant, and

17   then I'll make an appropriate ruling.

18           Mary, can I have my copy back, please?

19           By the way, let me advise both sides now something I

20   feel very strongly about how I run my trials in front of a

21   jury.

22           I do not allow speaking objections.  So if anybody

23   wants to make an objection, you stand up, and you can either

24   say, "Objection," or if you really want to, add one or two

25   words:  Objection, relevance; objection, hearsay; objection,

1   lack of foundation, something like that.

2           If I don't understand your objection, I will invite

3   you to give me a few more words.  I might very well then make a

4   ruling immediately sustaining or overruling, or I may turn to

5   the other side and say, "Brief response."  Same rule applies.

6   Don't give me a long argument, especially don't try to get

7   words in in front of the jury.  Give me a brief response to the

8   objection.

9           So if the objection is "objection, hearsay"; brief

10  response, "business record."  If I need to hear more

11  foundation, I'll ask for it, or I may sustain it with leave to

12  lay a better foundation, but no speaking objections.  I will

13  interrupt you and stop you and remind you in front of the jury

14  that I've said no speaking objections.

15          There is a possibility that I may invite counsel to

16  join me at sidebar.  I step off the bench.  I go over there.

17  Then we have a little discussion.  It will be off the record,

18  so if anybody wants to put something on the record later, it

19  will be your responsibility to ask for that opportunity, and

20  I'll, of course, let you do it.

21          The reason why I do that is I like to make as best

22  use of the jury time as is all reasonable.  So I do not send

23  the jury back to the jury room very often.  It might happen

24  once in a trial, but I've had many trials where it didn't

25  happen at all.  Some judges send juries back and forth, not me.

1    So we want to make as good and as efficient use of the jury's

2    time while they are here, and so we may have some sidebar

3    conferences.

4              All right.  Enough said on that.

5              Have you figured out yet, Mr. O'Neal, whether or not

6    you want to preserve the possibility of presenting 205 to the

7    jury?

8              MR. O'NEAL:  I am going to withdraw that request.  I

9    will use it only with you, Judge, with respect to the issue of

10   willfulness.

11             THE COURT:  All right.  Then 205 is also withdrawn

12   from the jury's consideration.  I don't need to worry about an

13   objection there.

14             All right.  I think that takes care of the marked

15   exhibits at this time from the defendant.

16             Now, plaintiff has more than 63 exhibits.  Frankly,

17   they had Exhibits 1 through 38.  Then 38 is marked 38-1 through

18   38-405.  Then we pick up with Exhibits 40, 40A, 41, 42, and 43.

19   43 is marked as 35 exhibits, 43-1 through 43-35.  Then 44

20   through 63, with also another exhibit marked as 49-2.  So there

21   are several hundred exhibits there.

22             Does the defendant know now -- can you tell me are

23   there any of those exhibits to which defendant has no

24   objection?

25             MR. O'NEAL:  We don't have an objection, Judge, to

1    Exhibit No. 2, Sands, the verification.

2            THE COURT:   What do you mean "Sands, the

3    verification"?

4            MR. O'NEAL:   If you look at the first page, there is

5    a verification from a person from the company that produced the

6    records.

7            THE COURT:   Oh, I see.   So if you take out that first

8    page and start the exhibit sticker on what's now numbered 2-2,

9    you are telling me there is no objection to Exhibit 2?

10           MR. O'NEAL:   Judge, now that I think about it,

11   because if it just comes in without the statement in paragraph

12   3A, it won't have any explanation as to what it is.   So now

13   that I think about it, maybe the verification should stay in.

14   It may confuse them, but I think they need to have that

15   paragraph.

16           THE COURT:   Okay.   So you have no objection to

17   Exhibit 2?

18           MR. O'NEAL:   Correct.

19           THE COURT:   Any others?

20           MR. O'NEAL:   No. 3, Judge, no objection, if we redact

21   out the third page of Exhibit No. 4.

22           THE COURT:   That's 4-3?

23           MR. O'NEAL:   Yeah.   The reason why, Judge, there is a

24   clause that talks about "take back your telephone; say 'do not

25   call' to unwanted telemarketers."   If that comes out, I'll let

1   go of my objections and agree it can come in.  But if they want

2   to keep it in, then I'm going to reserve objections.

3           MR. JACOBSON:  That's fine with us, Your Honor.  We

4   can take out 4-3 if we keep the others.

5           THE COURT:  All right.  So 4-3 will be removed.  Got

6   it.

7           Okay.

8           MR. O'NEAL:  The information contained in 61,

9   Judge --

10          THE COURT:  One second.  So that means 5 through 60,

11  you do maintain your objections to?

12          MR. O'NEAL:  Correct.

13          THE COURT:  Let's go to 61.  One moment.  All right.

14  I'm at 61.

15          MR. O'NEAL:  Well, it is odd in the sense that it is

16  an exchange of communications to and from counsel.

17          THE COURT:  Oh, but I'm sure it was authorized

18  representatives.

19          MR. O'NEAL:  Yeah.  That's not the point.  It looks

20  odd, again, to the jury.  So no objection to 61, Judge.

21          THE COURT:  All right.

22          MR. O'NEAL:  And we maintain our objections for the

23  remainder of the exhibits.

24          THE COURT:  All right.  Give me one moment, please.

25          What's the problem with No. 1, the agreed-upon

1    statements?  I know you moved to withdraw your stipulation.  I

2    have denied that.  You preserved that on the record.  I will

3    let you have a continuing objection on that.  But with that

4    objection overruled, why shouldn't the jury get No. 1?

5            MR. O'NEAL:  Sure.  So there are multiple things,

6    Judge.  One, it's not complete because there were exhibits that

7    were supposed to be attached to the stipulation.

8            No. 2, if it comes in, we are not going to have the

9    ability to explain to the jury the context of what it is.  All

10   right.  It was done by the judge.  There was a subsequent order

11   that said that you have to go back and redo it.  It was

12   submitted.  That order was never signed.

13           And perhaps more importantly, Judge, and this is

14   something that I was going to talk about later.  Accepting

15   Your Honor's ruling, one of the things that I've seen in

16   particular that showed up in the reply for motion for

17   sanctions -- plaintiff has grabbed ahold of a couple of the

18   stips -- and what they've said, for example, if the language

19   says, "We used Voice Casting and a Press One campaign."

20           THE COURT:  And a what?

21           MR. O'NEAL:  A Press One campaign.  A Press One

22   campaign -- again, it is in the vernacular.  It is like, okay,

23   if you want to talk to an operator, press one, which in the

24   stipulation we said we've used, they've now gone beyond the

25   stipulation and said that stipulation says that every telephone

1    call that you make had to be a Press One or had to use Voice

2    Casting.   That comes up with respect to two of the clauses that

3    are in there.

4            That's the issue.   If the stipulation comes in or the

5    subsequent order, No. 1, I'm concerned that it is going to be

6    construed in a manner that it is not what it really says.

7            Then No. 2, if you actually let in the actual

8    exhibits, I don't know how I'm going to get in front of the

9    jury the context of how they were created and what they did,

10   which, Judge, I think I should be able to because that's fair.

11           THE COURT:  Well, you have got a witness on the list.

12   Call your witness to explain it.

13           MR. O'NEAL:  The witness would not know, Judge,

14   because like the lawyers would say, "I don't know.  I haven't

15   seen it," dot, dot, dot, dot, dot.

16           THE COURT:  I don't want the jury to look at things

17   like parties and venue and jurisdiction.  That's just

18   irrelevant.  I do think, though, as I put in my order, if the

19   parties stipulated to certain facts, and that prompted the

20   plaintiff to not take discovery on those facts or to ask for

21   requests for admissions because they have a stipulation, it is

22   not fair to the plaintiff to now deprive them of that.

23           MR. O'NEAL:  To be clear, these stipulations were

24   entered after the close of discovery.

25           THE COURT:  Okay.  Still, when a stipulation is

1    entered into, then the other side should be able to rely on the

2    fact that this is a fact that is stipulated to, and if you are

3    not going to stipulate to it, they will have the right to ask

4    in a timely fashion for discovery to be reopened.  But I don't

5    want it in this fashion to go to the jury.

6              Yes.  Mr. Franzini.

7              MR. FRANZINI:  Your Honor, if we can get a written

8    copy of the stipulations that the parties agree to, then we

9    don't need P1 and P63, the orders.  So what we propose to do --

10   and I have papers I can hand up -- but to just submit -- to

11   have a piece of paper that has the stipulations on them that

12   says that these are the admitted facts or these are the

13   stipulations, or whatever we want to call them, and give that

14   to the jury so the jury has it.  We can cross their witnesses,

15   if they bring one with it.  But we don't need to have these

16   orders entered.

17             THE COURT:  Right.  I think that's the right way to

18   do it.  You know, there's a model jury instruction where I

19   explain to the jury what a stipulation is.

20             Have you already shown that to the defendant?

21             MR. FRANZINI:  I did send it to him, yes.  I can give

22   him a paper copy now.

23             THE COURT:  Let me know by Friday whether there are

24   any remaining objections.

25             But if the defendant says, "There should be an

1   exhibit attached to this," make sure there is an exhibit

2   attached, in all fairness.  I noticed that some of these

3   stipulations refer to an exhibit.  If that's necessary to

4   fairly understand what that stipulation means, and it is in the

5   stipulation that there is a reference to the exhibit, it

6   probably should be attached.  If it really is not relevant to

7   anything, then you should be able to agree on the fact that it

8   is not relevant.  If one side thinks it is relevant and

9   helpful, put it in there.

10          But confer with each other.  Give me a clean list of

11  stipulations, and then I will explain to the jury that in order

12  to help streamline the trial and make most efficient use of the

13  jury's time, the parties have agreed to a number of facts.

14  Those are called stipulations.  "Members of the jury, here are

15  the agreed-upon facts that you should take as now having been

16  proven."

17          MR. FRANZINI:  Thank you, Your Honor.

18          MR. O'NEAL:  Judge, I don't know if now is the right

19  time.  But those two that I'm talking about, one is paragraph

20  19, "With POM, ViSalus used two campaign strategies, Press One

21  and Voice Casting."  That does not say that that is the only

22  strategy or campaign strategy that was used within POM, but

23  that is exactly what the plaintiff has grabbed on and run with.

24          Similarly, if you look at one of the earlier numbers,

25  it makes a reference, Judge, that we used the phone system with

1    respect to marketing campaigns.  Well, marketing is, in the

2    words of the Oxford Dictionary, certainly much broader than the

3    legal definition of what constitutes "telemarketing" under the

4    TCPA.  But at the same time, I've seen that, where they say,

5    look, they stipulated that this was tele-market --

6              THE COURT:  Let's do it one at a time.

7              MR. O'NEAL:  Sure.

8              THE COURT:  On paragraph 19, you're telling me that

9    it implies that ViSalus used only two campaign strategies.  But

10   to really be fair, it was two strategies, among others?

11             MR. O'NEAL:  Correct.

12             THE COURT:  All right.  Let me ask plaintiff:  When

13   you prepare your list, any objection to phrasing that paragraph

14   as, "With POM, ViSalus used two campaign strategies, among

15   others?  They are . . ."  And then you continue.

16             MR. FRANZINI:  Yes, Your Honor, we do object to that.

17             THE COURT:  Why?

18             MR. FRANZINI:  Because that's not what the

19   stipulation was and not what the stipulation says.  What the

20   parties agreed to at the time was that POM uses two campaign

21   strategies, Press One and Voice Casting.  That's what we have

22   been relying on this entire time throughout this case.

23             THE COURT:  Then why didn't the stipulation read

24   "used only two campaign strategies"?

25             MR. FRANZINI:  Your Honor, what it says is that it

1    used two campaign strategies.  It doesn't say "used two, among

2    others."  If ViSalus actually used three campaign strategies or

3    ten campaign strategies, then it should have said so in the

4    stipulation.  The reason it didn't say so is because, with POM,

5    ViSalus used two campaign strategies.  They used Press One, and

6    it used Voice Casting.  Press One had the POM machine that was

7    running -- going through these contact lists.  There was 5,000

8    a day -- more than 5,000 a day.  There were only fewer than 10

9    people working this machine.  The truth is, they were using two

10   campaign strategies, and these are the two they were using.

11          THE COURT:  Now, at the end of that paragraph 19,

12   there is a reference to Justin Call's (phonetic) deposition.  I

13   take it that's the support for that statement?

14          MR. FRANZINI:  Your Honor, I think that's some

15   support for that statement.  I don't think it is the exclusive

16   support.  If they want to include that deposition transcript

17   and argue that that means something else, then I think that's

18   something they can do.  But I don't think they should be

19   allowed now to withdraw the stipulation or modify it, for all

20   the reasons Your Honor said in your order.

21          THE COURT:  Let me ask, what evidence does the

22   defendant have that they used more than two campaign strategies

23   with POM?

24          MR. O'NEAL:  Judge, I believe the evidence will show

25   that many of the campaigns were what's known as "hot connect,"

1    and hot connecting is where an auto dialer will call the

2    number.  It connects to someone.  And then "congratulations,"

3    it just goes to a live operator in an operator room.

4         But more to counsel's point, this is exactly it.

5    Let's just look at the words literally.  This is neither

6    inclusive or exclusive.  The statement itself says we use them,

7    which we did.  And we did.  But it doesn't say that's the only

8    thing that we did, and that's the only possibility, et cetera.

9    It is an unfair and prejudicial jump for the plaintiff to make

10   that contention.

11        MR. FRANZINI:  May I respond to that, Your Honor?

12        THE COURT:  Please.

13        MR. FRANZINI:  If counsel has evidence about this hot

14   connect strategy, then he should certainly present that to the

15   jury and make the argument that he just made to Your Honor

16   about the meaning of the sentence.  What we are doing now -- we

17   have the stipulation.  We have had it for two years.  If

18   counsel wants to argue that there is no "only" there, he is

19   certainly entitled to do that.  But he shouldn't be allowed now

20   to change a stipulation to include something helpful that helps

21   him make this argument that he is making to Your Honor now to

22   the jury.  He should have to argue -- make the same exact

23   argument based on the stipulation that ViSalus entered into

24   while represented by counsel two years ago that we have been

25   relying on this whole time.

1              THE COURT:  All right.  Here is what I'm going to do

2    with this.  I'm going to allow the stipulation to be used by

3    the plaintiff as it's currently written, but I'm going to put

4    on two provisos.  No. 1, I'm not going to let you argue to the

5    jury that it means or reads "only two."  If I hear you say

6    that, No. 1, I will sustain an objection.  But even if I don't

7    hear an objection, I may jump in and say, "Now, Counsel, as we

8    discussed, it doesn't use the word 'only.'"  I don't think

9    that's a fair extrapolation.

10             No. 2, if the defendant now wants to amend its

11   witness list and add a witness to explain and give context to

12   this paragraph 19, I'm going to let them do that.  Just let me

13   know and let plaintiff know if you are adding a witness that

14   wants to give this testimony, and that witness will be heard.

15             MR. O'NEAL:  We will provide that notice within 12

16   hours if we make that decision, Judge.

17             THE COURT:  Okay.  Now, what was the other paragraph

18   you wanted to talk about besides 19?

19             MR. O'NEAL:  If you go to --

20             MR. FRANZINI:  Your Honor, may I ask one point of

21   clarification?

22             THE COURT:  Of course.

23             MR. FRANZINI:  We are not going to say that the

24   stipulation says "only."  But if it turns out that there is no

25   evidence in this case that ViSalus used any other strategy, we

should be able to argue, in closing and when cross-examining

their witnesses, "You agreed to this, if you had more

strategies, you would have said so, and you would have put

forward evidence" --

THE COURT:  No.  But I think you can point out to the

jury that paragraph 19 says that they used two campaign

strategies.  "Members of the jury," in closing argument, you

can tell then, "there is no evidence that they used any other

strategies," assuming that's an accurate statement.  That

should be sufficient.

MR. FRANZINI:  Thank you, Your Honor.

THE COURT:  What was the other paragraph?

MR. O'NEAL:  Judge, if you'd turn to -- if you'd look

at paragraph 13.

THE COURT:  Yes.

MR. O'NEAL:  Here is some context.  For example, and

we may get into this when we talk about some of the audio clips

that plaintiff is looking to put in.  There would be messages,

for example, that would say, hey, just a heads-up, we are

holding a national seminar on such and such a place, come on

now, or they would be do other types of calls that don't fit

the definition of "telemarketing."

What the plaintiff is attempting to do is to say, by

the use of the Oxford Dictionary word "marketing," that that is

a concession that everything in here was that it was

```
 1   telemarketing as defined by the statute, and that's not what
 2   was stipulated to.
 3            THE COURT:  I understand that.  "Marketing" does not
 4   mean "telemarketing."  If I hear them argue that this paragraph
 5   implies that this was all telemarketing, you can make your
 6   objection.  I would anticipate sustaining it, and I would
 7   probably even jump in myself, even without an objection, to
 8   say, "It says marketing; it doesn't say telemarketing."
 9            MR. O'NEAL:  That's all I have got on the stip,
10   Judge.
11            THE COURT:  Okay.  Then I look forward to both sides
12   working together to put it in a more jury-friendly fashion.
13            All right.  Does the plaintiff want to be heard now
14   on any of these other exhibits?  By the way, let me ask -- I
15   did say I wouldn't preadmit.  Does the defendant have any
16   objection to me preadmitting Exhibits 2, 3, 4, provided
17   plaintiff removes page 4-3, and 61?
18            MR. O'NEAL:  No, Judge.
19            THE COURT:  Any objection from plaintiff to
20   preadmitting 204?  I guess you did have an objection.  Never
21   mind.  We won't preadmit 204.
22            MR. FRANZINI:  Your Honor, before you do that,
23   Exhibit 3 is defendant's interrogatory responses.
24            THE COURT:  Okay.
25            MR. FRANZINI:  So that's an exhibit that we can use
```

1   against them, but they don't have any hearsay exception to.

2            THE COURT:  So you don't want it pre-admitted?

3            MR. FRANZINI:  Right.

4            THE COURT:  Then you know what, then the safest thing

5   to do is I'm not going to preadmit anything.  You offer 2 when

6   you want, and I will expect to hear from defendant, "No

7   objection," and I will say, "Received."  If you choose to offer

8   Exhibit 3, if you offer Exhibit 3, I'll ask defendant, "Any

9   objection?"  If they say, "No objection," I'll receive it.

10  Once it is received, they can do anything they want with it.

11  If you choose not to offer it, you choose not to offer it.

12           MR. FRANZINI:  Thank you, Your Honor.

13           THE COURT:  So nothing will be preadmitted.

14           Is there any other exhibit that you want to talk

15  about, that plaintiff wants to talk about now?  Otherwise, my

16  plan would be to, No. 1, let plaintiff go through all these

17  exhibits and tell me for any of them, if they relate only to

18  willfulness or knowingly, take them out.  I'll sustain an

19  objection that they don't belong to the jury if they relate

20  only to willfulness or knowingly.  If that's all they relate

21  to, then they are not going to the jury.  If you can tell me

22  that now, great.  If you need a little bit more time, that's

23  fine too.

24           Once you've done that, my expectation will be that

25  you need to offer it.  If there is an objection at trial, I'll

1  hear what the objection is.  If the objection is lack of

2  foundation, or hearsay or even 403, I'll consider it.  I'll

3  make my ruling.  I will say this:  If it is a record that looks

4  to me like it is a business record and was produced by the

5  defendant, I'm not going to require much more in the way of

6  foundation.  I'm not going to require the jot and tittles of

7  business records unless there is something that looks somehow

8  manipulated or inappropriate about it.  If it was produced to

9  you by the defendant and it otherwise looks like a business

10 record, I'm not going to fuss around about it too much, unless

11 the defendant calls my attention to it either now or before

12 trial, and then I'll take a close look at something.

13            MR. O'NEAL:  I do have a question, Judge.

14            THE COURT:  Yes.

15            MR. O'NEAL:  Your view on foundation -- let's assume

16 it is a business record.  I believe the rules require

17 additional foundation by a witness or otherwise to say, "And

18 when you look at column A, and you see a squiggle, this is what

19 it means."  In this instance, when I make foundation

20 objections, that's what I really think.  We are missing a lot

21 of what I'll call the connective tissue of what it says.

22            THE COURT:  Well, in terms of receiving the exhibit,

23 I'm not going to be such a stickler on foundation.  But if an

24 exhibit is a business record because it was produced by

25 defendant, and the plaintiff's lawyers wants to tell the jury

1    what a particular column means or what a particular squiggle or

2    mark means, and you object, I'd anticipate sustaining that

3    objection.

4              MR. O'NEAL:  Understood, Judge.

5              MR. FRANZINI:  Your Honor, we have several exhibits

6    that we were hoping to get preadmitted so we could use them in

7    opening statement.

8              THE COURT:  Sure.  We can talk about them.

9              MR. FRANZINI:  Thank you, Your Honor.  I have some

10   slides.

11             THE COURT:  I would just as soon hear the exhibit

12   number, but do whatever you want with your slides.

13             MR. FRANZINI:  The first one that is really

14   important.  It is Exhibit -- it is really Exhibits 36, 37, and

15   38.

16             THE COURT:  Should we start with 36?

17             MR. FRANZINI:  I think we should start with 38.

18             THE COURT:  38.  38 is the one, if I recall

19   correctly, that essentially is 405 exhibits.

20             MR. FRANZINI:  That's right, Your Honor.  It is 405

21   exhibits, but they all look very similar.  I think they will

22   rise and fall together.  These exhibits are the contact lists

23   that the POM machine used to place calls at issue in this case

24   to class members that used an artificial or prerecorded voice.

25             THE COURT:  They are called contact lists, okay.

1          MR. FRANZINI:  That's right.  There is 405 of them.

2     I put an example of one of them on the board so you can see it.

3     It has name and phone number -- and then how the POM machine

4     worked was, somebody at ViSalus would take these contact lists,

5     would upload them into the POM machine, and then the POM

6     machine would go through each number on the list and call each

7     number on the list.

8          At the end of the call, the POM machine would assign

9     a disposition code or a completion code to the call.  That's an

10    example that is set forth here.  For example, "answer machine,"

11    that means that the call was picked up by an answering machine.

12         So these are the 405 that were -- I'll get to this in

13    a second.  These are the ones that were identified by

14    Mr. Gidley, their class representative, and are the ones that

15    deal with marketing campaigns and that were made to U.S.

16    residents using the POM machine.

17         THE COURT:  Let me ask this:  First of all, I assume

18    that these exhibits in 38, the contact lists, they were

19    produced to you by defendants?

20         MR. FRANZINI:  That's right, Your Honor.

21         THE COURT:  If we go back to that last page, where it

22    said, "Reason; answer machine."  Now, by itself, I don't know

23    what "answer machine" means or "no answer" means or "ring no

24    answer" means.  I can guess, but I don't know.  Do you have

25    testimony as part of your designated deposition testimony from

1   Mr. Gidley or someone else at defendant that explains what you

2   just said that column means?

3          MR. FRANZINI:  Yes, Your Honor.  We have a

4   declaration that was submitted right here by Mr. Gidley.  It

5   was submitted under oath.

6          THE COURT:  That's Exhibit 37?

7          MR. FRANZINI:  That's right.

8          THE COURT:  All right.

9          MR. FRANZINI:  It was provided to us in the same

10  email correspondence that linked the share file that had these

11  405 exhibits on them.

12         THE COURT:  Got it.

13         MR. FRANZINI:  In paragraph 2, he says he is the

14  compliance analyst at ViSalus.  He is authorized to make this

15  declaration on behalf of ViSalus.  He then says, "As the

16  30(b)(6) representative, I reviewed some documents, including

17  specifically the contact spreadsheets that were produced in

18  this action."  In paragraph 5, he explains what those are.  He

19  says, "ViSalus ran these marketing campaigns to U.S. residents

20  using POM."  They are identified by spreadsheet names on these

21  two exhibits that I will talk about later, and all of these

22  spreadsheets are listed in the attached Exhibit A.

23         THE COURT:  Understood.

24         MR. FRANZINI:  I don't have a slide on this right

25  here, but if you look at paragraph 7 of that same declaration,

1    he talks about -- I think it is paragraphs 6 and 7, he actually

2    talks about the disposition codes.

3            THE COURT:  Understood.  I get it.

4            Okay.  So let me turn to defendant and ask, any

5    objection to Exhibit 38?  Then I'll ask about 37.

6            MR. O'NEAL:  Yes, Judge.  So accepting how you treat

7    what looks to be and smells and walks and talks like a business

8    record, reserving my objection to some of the specifics, this

9    doesn't say what they just said.  I heard a great narrative

10   about, "Well, this is how worked," and everything.  That's

11   great testimony by counsel, but I don't think they are going to

12   be able to put forth some deposition testimony or a live

13   witness that actually can spin the story in the manner that was

14   said.  So that's the first thing.

15           But then second, you pointed out, Judge, I think I

16   know what an answering machine is, but "answering machine"

17   isn't in Mr. Gidley's declaration.  As a matter of fact, I

18   think the second one that you identified isn't in Mr. Gidley's

19   declaration either.

20           So this gets back to what I'm saying when I was

21   talking about the squiggly line.  I just don't think, Judge,

22   that the plaintiffs have got enough here that they can actually

23   put everything in on this exhibit as part of opening.  Maybe it

24   comes in, and then we go back to the "I'm going to shut you

25   down if it doesn't come in."

1              THE COURT:  Here is what I'm going to do:  I'm very

2    concerned about you making comments about what the exhibits

3    show in opening statement.  I don't want you to be the one -- I

4    don't want a lawyer for the plaintiff to be the one that

5    teaches the jury how to read these exhibits.  So I will tell

6    you this:  I do anticipate that if during the trial you offer

7    Exhibit 38, I expect to receive it in evidence.  If you offer

8    37, I expect to receive it in evidence.

9              Then you may tie it together with -- whether it be

10   the Gidley deposition experts, and he can explain what things

11   mean.  And then in closing argument you're welcome to tell the

12   jury what evidence they have heard about what it means.

13             But what I don't want to have happen, and that's

14   because I'm not going to preadmit it and let you show it to the

15   jury in opening, I'm not going to let you take the jury through

16   the exhibit and then you become the witness that tells them how

17   to read it.

18             Now, that said, you are welcome in opening, like any

19   other classic opening statement, to tell the jury that you

20   believe the evidence in this trial will show that there are a

21   number of documents that are called contact lists.  They come

22   from the defendant's POM system, and you believe the evidence

23   will show that the POM system does this and that.  And you

24   believe that the evidence will show that from these contact

25   lists, they will learn the following.  And then if that's what

1    the evidence shows at trial, more power to you.  But if that's

2    not what the evidence shows, then you will have a more limited

3    closing argument, and the defendant will have an opportunity to

4    show at closing argument that you didn't deliver, as promised.

5            But what I'm not going to let you do is become the

6    witness for the document in opening statement.  So I'm not

7    going to preadmit them.  I'm not going to let you show 37 and

8    38 to the jury in opening, but I'll give defendant fair notice

9    at some point in the trial -- and it could be in the middle of

10   reading Scott Gidley's deposition.  When you're reading Scott

11   Gidley's deposition, and he refers to some of this, and you

12   say, "I would like to pause the reading now and offer 38 into

13   evidence."  I will receive 38 into evidence.  You can show

14   something that's in there, and then pick up with Gidley's

15   deposition.

16           Understood, everybody?

17           MR. O'NEAL:  Understood, Judge.

18           THE COURT:  Okay.  Do you want to talk about 36?

19           MR. FRANZINI:  Your Honor, 36 is a summary of what's

20   shown in the contact lists in 38.

21           THE COURT:  Go ahead.

22           MR. FRANZINI:  I do want to address one thing that

23   opposing counsel said, because it seems like the main objection

24   here is that we don't know what these completion codes mean,

25   and that's actually set forth in paragraph 6 of Gidley's

1    declaration.

2            THE COURT:  By all means.  And I'm going to let you

3    go back and forth.  Once we receive 37 and 38 in evidence.  I

4    am going to let you point out something in 37.  Then if you

5    want to do a split screen, if you want to go back and forth,

6    show what you want to show in 38.  I will give you plenty of

7    freedom on that.

8            36 is a summary, I presume that you are offering

9    under Rule 1006?

10            MR. FRANZINI:  That's right, Your Honor.

11            THE COURT:  Any objection to 36?

12            MR. FOSTER:  Yes, Your Honor.

13            THE COURT:  Basis.

14            MR. FOSTER:  The first objection would be, of course,

15   we don't believe the underlying documents are admissible.

16   Before we get there, one small objection.  Summaries can't be

17   argumentative.  They can't have an opinion.  We have a footnote

18   here that highlights and explains to the jury which of these

19   calls that are an artificial or prerecorded voice could have

20   been delivered to.

21            I understand they are pulling that from Mr. Gidley's

22   affidavit, but they are certainly welcome to -- I think that

23   highlights that, and the footnote needs to go, along with

24   the -- if you go to the second page, where it says "number of

25   calls where no artificial or prerecorded voice could have been

1    played according to Mr. Gidley," I think that needs to be

2    struck as well.

3              THE COURT:  Let me first ask plaintiff's counsel

4    response on that footnote 1.

5              MR. FRANZINI:  Your Honor, footnote 1 says -- if we

6    could go back to Mr. Gidley's declaration in Exhibit 37.

7    Basically what he says in paragraph 6, he says that the

8    disposition codes -- those codes like "answering machine; no

9    answer; answer human," things like that, to the best of my

10   knowledge, ViSalus did not alter the meaning of the POM

11   disposition codes, also called completion codes, from the

12   definitions set forth in page 85 through 89 of Using Proactive

13   Outreach Management Manual.  That was Exhibit 19 to the

14   deposition.

15             So he is saying, "Here is what these things mean."

16   Then he goes on to say, "To the best of my knowledge, the

17   following disposition code indicates no voice mail had been

18   played," and then he lists seven or eight of them.  So all that

19   footnote is doing is identifying the ones that are listed on

20   paragraph 7 of Mr. Gidley's deposition.  Then the summary that

21   counsel referred to, that just adds up the disposition codes

22   that fall into that list, and so I think that's an

23   inappropriate summary.

24             THE COURT:  Is the summary derived from Exhibit 38

25   and nothing else?

1          MR. FRANZINI:  Your Honor, the numbers on Exhibit 36,

2     those are all from 38.  The footnote is from Exhibit 37.

3          THE COURT:  Right.  That, I understand.  The numbers

4     are from 38?

5          MR. FRANZINI:  Yes, Your Honor.

6          THE COURT:  All right.  Does the defendant challenge

7     the accuracy of those numbers?

8          MR. FOSTER:  Well, that's an interesting question,

9     Your Honor, because the point I would like to get to is how

10    this summary was created.

11         THE COURT:  Right.

12         MR. FOSTER:  It is not just, from our understanding,

13    the exhibits in 38.  This isn't just a compilation of

14    everything in the spreadsheets of 38.  Instead, what I

15    understand -- and again, we have had conversation, Mr. Franzini

16    and I, back and forth.  I think what I understand happened, is

17    they took all of the spreadsheets in Exhibit 38 and combined

18    them all together.  So we've got one massive spreadsheet -- all

19    the names, all the numbers, all the disposition codes in one

20    Excel spreadsheet.

21         Then they took the KCC, which is the claims

22    administrator here -- the notice administrator.  They took a

23    list that KCC put together for the notice and then somehow

24    scrubbed that against the summary of 38 to create this summary.

25         So I'm concerned that it is in fact -- obviously that

1    KCC notice list is not on their exhibit list.  It is

2    inadmissible hearsay.  I'm concerned that that infuses a

3    summary with inadmissible hearsay.  It is not a pure summary of

4    those exhibits.  It has been manipulated in some respect.

5              THE COURT:  Any response from plaintiff?

6              MR. FRANZINI:  Your Honor, the only thing that we did

7    with the KCC class list is that we removed any entries in the

8    summary of call-outs in the exhibit that were not two numbers

9    that were on the class list.  This is a summary of all the

10   numbers to the class found in Exhibit 36.

11             THE COURT:  All right.  Here is what we are going to

12   do:  When it is offered, I'm going to receive Exhibits 38 and

13   37.  I am going to reserve ruling on 36, because I think we

14   need foundation testimony.  As soon as we have foundation

15   testimony that explains how 36 was put together, I'll make my

16   ruling.

17             To the extent that it may go to weight, not

18   admissibility, I probably will allow 36 once there is

19   appropriate foundation testimony.  But if it goes to something

20   more fundamental, I'll hear argument, and I may not admit it.

21   But given the discrepancy between the parties in terms of how

22   36 was compiled and what these numbers actually show, I think I

23   will need foundation testimony, and so I will reserve ruling on

24   36.

25             MR. FOSTER:  Very well, Your Honor.

 1            MR. FRANZINI:  Thank you, Your Honor.

 2            THE COURT:  Okay.

 3            MR. FRANZINI:  There were a couple more exhibits that

 4   Mr. Jacobson is going to address.

 5            THE COURT:  Very good.  Mr. Jacobson.

 6            MR. JACOBSON:  Your Honor, I have an exhibit bucket

 7   here.  This is a collection of exhibits that are very similar

 8   to each other.

 9            THE COURT:  One moment.  P15 would be a good example.

10            Give me one moment, please.

11            I'm ready.

12            MR. JACOBSON:  I should probably read these numbers

13   into the record.  These are P8, P11 --

14            THE COURT:  I don't think you need the "P."  They are

15   all plaintiff's exhibits.

16            MR. JACOBSON:  8, 11, 13, 15, 17, 19, 20, 22, 24, 26,

17   and 27.

18            THE COURT:  What would you like me to look at first?

19            MR. JACOBSON:  Exhibit 15.

20            THE COURT:  All right.  I'm on 15.

21            MR. JACOBSON:  What these are, Your Honor, are

22   applications that that ViSalus used to sign up promoters, to

23   sign up the class members, and ViSalus took information from

24   the class members, including their home and cell phone numbers,

25   which, of course, is relevant to showing that the numbers that

1    got uploaded in the POM system.  These applications show how

2    ViSalus got this information and how they put it in the contact

3    sheets, and uploaded into POM.  We know those are home and cell

4    phone numbers.  If you look at Exhibit 15, if you see the box

5    that says, "Step 5, personal information."

6              THE COURT:  I do.

7              MR. JACOBSON:  Then if you look in the right column,

8    there is a heading that says "Communication preferences," below

9    that ViSalus requested two numbers, home phone number and

10   mobile number, so business line.  That's the relevance.

11             THE COURT:  Okay.  Does the defendant have an

12   objection to this type of exhibit, or Exhibit 15?

13             MR. O'NEAL:  Yes, Judge.  Again, a great narrative,

14   but I think what's going to happen is that they are not going

15   to be able to get from A to B to C to D.  I will note that

16   these things are blank.  If they can get a witness to come in

17   and testify as part of their case-in-chief, which I don't think

18   they can, Judge, that somehow this form was filled out by every

19   person on the class, and that information was then taken and

20   put into some sort of database, and then that database is what

21   was used to deliver the spreadsheets, which was then in turn

22   used to dial the numbers, then, Judge, I think it is coming in.

23   But until they get that, that's just argument of counsel.

24             THE COURT:  Here is what I'm hearing from you:  In

25   order to prove a case, plaintiff needs to build a wall.  A wall

1   is composed of multiple bricks.  It sounds to me like you are

2   objecting to one particular brick on the grounds that this

3   brick does not prove a wall, and I don't think that's a good

4   objection.  If, however, you were to say, "Fine, even if this

5   brick comes in, there is not going to be enough bricks to prove

6   a wall," okay, fine.  I understand that.  I see that argument

7   coming.  But I don't see that as an argument against a brick.

8            MR. O'NEAL:  I understand, Judge.  Let me rephrase.

9   I think by the time the evidence comes in, I am going to be

10  able to argue to you and the jury that they didn't make a wall.

11           THE COURT:  Okay.  That would be a very interesting

12  argument.  I assume you will make it to the jury.  I assume you

13  will make it to me, as judgment as a matter of law at the close

14  of plaintiff's case, but that's not going to be sufficient to

15  keep out Exhibit 15, if it is a business record or a record

16  that ViSalus uses.

17           MR. O'NEAL:  Understood.

18           Can I now then twist to something else?

19           THE COURT:  Yes.  Give me a moment.  I want to take a

20  fast look at these exhibits that Mr. Jacobson showed me.  So 8,

21  11, 13, 15, 17, 19, 20, 22, 24, 26, and 27.  These all came

22  from ViSalus?

23           MR. O'NEAL:  Correct, Judge.

24           THE COURT:  Okay.  It still takes more than about a

25  dozen bricks to make a wall, but I anticipate when plaintiff

1    moves the admission of these documents, I expect to receive

2    them in evidence.

3            MR. O'NEAL:  Understood, Judge.

4            THE COURT:  By the way, let me advise plaintiff,

5    let's not be cumulative here.  So do take a close look.  If you

6    say you really need them all, I'll give that a lot of

7    deference.  But do take a close look if you need them all.

8            MR. JACOBSON:  Understood, Your Honor.

9            MR. O'NEAL:  Judge, that brings in another issue

10   since you've indicated where you're ruling.  A little bit of

11   history:  There are two let's just call them applications of a

12   similar form.  They were marked previously as Plaintiff's

13   Exhibits 23 and 29 that we would like to add as exhibits.  Let

14   me give you the background on what happened.

15           As Your Honor may recall, under the original pretrial

16   order, plaintiff was to submit their exhibits; defendant was to

17   submit theirs.  Then Your Honor graciously gave us time to

18   submit an amended list --

19           THE COURT:  And then they withdrew 23 and 29.

20           MR. O'NEAL:  Yes.  Importantly, Judge, those

21   things -- we were supposed to submit our exhibit lists

22   simultaneously.  I pulled out stuff and didn't plan on adding

23   it on my list because I thought they were going to use them,

24   and then they pulled them out.

25           THE COURT:  May I see 23 and 29?

 1              MR. O'NEAL:  Yes.  May I approach, Judge?

 2              THE COURT:  Yes.

 3              Is the plaintiff going to have any objection if

 4  defendant offers 23 and 29, either renumbered or kept in that

 5  numbering system?

 6              MR. JACOBSON:  I think we do, Your Honor, but I would

 7  like to first look at the exhibits.

 8              THE COURT:  Of course.

 9              MR. JACOBSON:  I believe Mr. Franzini might have

10  corresponded with counsel on this one.  May I consult?

11              THE COURT:  Of course.  Let me tell, Mr. O'Neal, most

12  likely I'm going to want to have you renumber them as

13  defendant's exhibits because the jury is going to be viewing

14  the numbers in this range as plaintiff's exhibits.  If they

15  don't like the exhibits, and I let them in any way --

16              MR. O'NEAL:  Yes, Judge, we can do that.

17              MR. FRANZINI:  Your Honor, we do object to those

18  exhibits.

19              THE COURT:  Tell me why.

20              MR. FRANZINI:  Those two exhibits are -- so there are

21  a number of promoter applications that Mr. Jacobson showed you.

22  Those applications were produced by ViSalus.  We got testimony

23  from them from multiple witnesses saying, "All of our

24  applications are for promoters and for customers."  To just

25  take a step back, a promoter is a member of their multilevel

1   marketing organization that sells products to other people.  A

2   customer is an end user, somebody who doesn't resell, just buys

3   products.

4        So we took testimony from their witnesses, including

5   their 30(b)(6) witness, Mr. Gidley.  Everybody said that all

6   the promoter applications and customer applications are all the

7   same during the relevant time frame.

8        I believe there is a stipulation on this that says,

9   whether online or in print, all of the applications are

10  identical.  Included in the set of applications that they sent

11  us, unbeknownst to me until recently, were two exhibits that

12  are actually titled "customer applications" instead of

13  "promoter applications."  Those applications have not been

14  authenticated by anybody.  They look different.  They have

15  different information in them.

16       They only gave us those two copies.  One is in

17  English; one is in Spanish.  The date in the margin is 2012,

18  which is before the relevant time frame.  So these are two

19  unauthenticated customer applications that go against

20  everything that they have been saying so far in this case.

21       They are going to try to suggest to the jury that

22  somebody from the class filled out this application as opposed

23  to something with the same content.  If they had brought this

24  up before, we would have sought discovery as to why it is that

25  we never got any of the more recent ones.  As far as we know,

1    this was something that was on a shelf in ViSalus's office that

2    was never used.  It was from 2012, and so we think it would be

3    prejudicial to bring it in now.

4            THE COURT:  You mentioned the time frame.  Remind me

5    what's the relevant time frame, please.

6            MR. FRANZINI:  I believe it is 2014 to 2016.  It is

7    possible that it goes back as far as 2013 when they started --

8            THE COURT:  Are 23 and 29 are dated 2012?

9            MR. O'NEAL:  They have a bottom, Judge, a copyright

10   "2012, ViSalus, Inc.," but that doesn't necessarily define when

11   they were necessarily used.

12           THE COURT:  I'm going to handle it the same way I

13   handled 36.  That is, if there is an appropriate foundation

14   laid by defendant that 23 and 29 were in fact used by ViSalus

15   during the relevant time frame, I would expect to let them in.

16           MR. FRANZINI:  Thank you, Your Honor.

17           THE COURT:  You need foundation though.

18           MR. O'NEAL:  Understood, Judge.  We will renumber

19   them as defense exhibits.

20           THE COURT:  Thank you.

21           When you put them on my exhibit list for me, let's

22   say you renumber them as 200.  Will you put somewhere "formerly

23   23" and then 201.

24           MR. O'NEAL:  For your set only?

25           THE COURT:  The exhibit list doesn't go to the jury

1   anyway.  For my sake only.  You don't have to put that in the

2   electronic copy that you give to the courtroom deputy.

3             MR. JACOBSON:  Your Honor, the next two exhibits we

4   would like Your Honor to rule on ViSalus objections are P43 and

5   58.  P43 is a folder that contains, I believe, 19 examples of

6   ViSalus's prerecorded messages.  P58 is a screenshot with the

7   file names that we used in part to authenticate these exhibits.

8             May I play Your Honor one short example?

9             THE COURT:  In a moment.  Not yet.  One moment.

10            Yes, you may.

11            (The following audio was played in open court and

12   transcribed as follows:)

13            "Hi, this is Jim contacting you from Body by Vi.  We

14   were offering out to you to offer you 50 percent off as we go

15   into our spring season here.  If that is anything that

16   interests you, please feel free to give me a call at

17   (248) 764-7521, where I will be more than happy to assist you.

18   Thanks so much for your time and for being a part of Body by

19   Vi."

20            MR. JACOBSON:  Your Honor, I will briefly address the

21   relevance, and then I will like to go over the objections that

22   ViSalus stands by.  I will address those.  These are clearly

23   relevant.  These are examples of the prerecorded messages that

24   ViSalus had and used with class members.

25            THE COURT:  And where is the evidence that this is

1    what they used with class members?

2           MR. JACOBSON:  What we did, Your Honor, is we stuck

3    some examples in front the witnesses and asked them if they

4    used them with class members, and they said yes.

5           THE COURT:  And is that part of the deposition

6    designations?

7           MR. JACOBSON:  I can show it to you right now.  I

8    believe it is, Your Honor.

9           THE COURT:  I'll take your word for it.

10          Any objection?

11          MR. O'NEAL:  Yes, Judge.  First of all, defendant

12   disputes that these are messages that were played in a way that

13   violates the statute.  Also, to the point, I think the only

14   deposition testimony that they have that a message was actually

15   played in the manner and the foundation that they've described

16   is a message to the plaintiff from one of the promoters,

17   somebody in her up-line, and the testimony came in that that

18   was played to a very limited number of people.

19          But there isn't any other testimony, which if they

20   could have gotten it, they would.  It is like, "Listen to

21   message No. 1.  What is that?  Is that a message that was

22   played to people in the class?  Sure."  That's not in the

23   deposition testimony.

24          Not only that, look at the title of these, and they

25   don't foot the bill.  Apparently they're contending the credit

1    card declines aren't marketing, but if you look at the second

2    one, "CC declined" or "one has expired."

3             MR. JACOBSON:  We are not offering that.

4             MR. O'NEAL:  Then NST, National Sales Training.

5    That's a center --

6             THE COURT:  Let me cut to the chase.  You are not

7    offering some; you are not offering others.  Whenever we get to

8    a portion of a deposition excerpt, deposition testimony, where

9    the witness says -- where the witness is asked, "Was the

10   following wav. file used by ViSalus," and he or she says "Yes,"

11   I will then let you suspend the reading of the deposition, and

12   now you can play to the jury the wav. file that was referred to

13   by that witness.

14            I will invite any other objections at that time.  But

15   that way, we will have laid a foundation that this was

16   presented to the consumers or to the class members.  That way,

17   any ones that you wish to offer, just lead up to it with the

18   deposition testimony.  I'll let you suspend the reading of the

19   deposition testimony.  So if you have a witness up here reading

20   it, and the witness is asked, "Let me now play for you a wav.

21   file that we have identified as ABC.  Was that something that

22   was used by ViSalus during this relevant period?"  If the

23   witness says, "Yes," then you can say, "Judge, we would like to

24   suspend the reading now and play that wav. file for the jury."

25   My practice would be to turn to the defendant and say, "Any

 1   objection?"  Unless I've heard something beyond what I've

 2   already heard, I'm going to say, "Fine, you may do that."

 3          MR. JACOBSON:  Let me explain, Your Honor, why after

 4   we played that testimony that authenticates the specific

 5   examples, all of the ones we are offering should come in,

 6   ViSalus has objected to authenticity.  As Your Honor knows, one

 7   way to authenticate something is to have a witness listen to it

 8   and say they know it.  Another way you authenticate something

 9   is for a jury to then compare distinctive characteristics.

10   That's another example.  You look at an authenticated specimen

11   and the trier of fact --

12          MR. O'NEAL:  Judge, to be clear, the only reason --

13          THE COURT:  Hold on, folks.  I generally don't like

14   people interrupting.  Let him finish his sentence.  By the way,

15   the best to signal to me that you would like to say something

16   when the speaker is done, stand.  When he is done, I will call

17   on you.

18          MR. O'NEAL:  Judge, I apologize to you, and I

19   apologize to you.

20          THE COURT:  Mr. Jacobson, complete your thought.

21          MR. JACOBSON:  Your Honor, we have authenticated

22   specimen examples, these two we played.  These are the

23   testimony from ViSalus's witness that the use of the

24   Progressive Outreach Manager -- POM -- and was sent to the

25   plaintiff.

1            And here is another example, and we will play this

2    one, and this witness testified this was sent out through POM

3    and that it sounded similar to the previous example.

4            With these two examples what the jury can then do is

5    listen to the other messages and compare the similarities to

6    authenticate all of them.  There are numerous similarities.

7    Let me just give --

8            THE COURT:  I get that.  Let me ask you this:  Let's

9    assume there are lots of similarities.  How will the jury know

10   that a similar-sounding message was actually used?

11           MR. JACOBSON:  Two thoughts on that, Your Honor.

12   First, relevance is any tendency to prove a material fact.  The

13   fact that ViSalus had these and produced them to us, and they

14   sound like the ones used certainly has a tendency to show that

15   they used them.  If you've got shotgun shells, and you fire two

16   of them, Your Honor, there is evidence that you've fired

17   shotgun shells --

18           THE COURT:  Did you ask ViSalus, either with a

19   request for admissions or interrogatories, to admit that they

20   have used these other recordings or to identify an

21   interrogatory answer which recordings they used?

22           MR. JACOBSON:  No, Your Honor.  We didn't ask them

23   for a specific admission for which ones they used, but that is

24   not necessary to overcome the relevance bar, which is a very

25   low bar.

1          On top of that, Your Honor, Ms. Wakefield is going to

2     testify that in couple of these the voice sounds similar, which

3     suggests they played them for her.  Again, Your Honor, the fact

4     that they used two and others sound the same, that's relevant

5     evidence.  That gets the evidence in.  If ViSalus wants to

6     argue in closing that they didn't use them, and that might be a

7     fair argument, but it is not a bar to relevance.

8          THE COURT:  Thank you.

9          Mr. O'Neal, you wanted to say something.

10          MR. O'NEAL:  Judge, it's a reiteration of the same

11     point.  But like I just said, they didn't even get the

12     testimony that the message was actually used.

13          So I'll go back to what you highlighted, which is if

14     they can get the foundation in, as you've said, then I'm going

15     to be in a very different position.

16          THE COURT:  But what's your response to

17     Mr. Jacobson's argument that, well, their foundation is that

18     they were produced by ViSalus.  They have a very similar sound

19     and feel to the others.  And therefore, there is a reasonable

20     inference that they were used because they were produced in

21     discovery to the plaintiffs in this case.  It may not be

22     dispositive, but it is relevant to the point.

23          What's your response to that?

24          MR. O'NEAL:  My response is that's the same as saying

25     if I speculate that something was done, and I can make an

1    argument about it, then it must be relevant.

2         I mean, I always think about this in the term of

3    foundation.  Could a voice mail message be relevant?  The

4    answer is, yes, very much so.  But you still have to be able to

5    show:  All right, in order to demonstrate relevance, was this

6    in fact played?  Was it used?  What is it?  Describe it for me.

7         And without even some of those most fundamental

8    pieces, they don't get there.

9         THE COURT:  Mr. Jacobson, I don't understand.  Can

10   you explain to me why plaintiff did not, either through a

11   request for admission or an interrogatory, learn in discovery

12   whether or not ViSalus used these recordings?

13        MR. JACOBSON:  Your Honor, I need to correct myself.

14   I underestimated the request for production that we did ask

15   about.  Let me show you one.

16        THE COURT:  Okay.

17        MR. JACOBSON:  This is request for production No. 9.

18   We asked ViSalus for all audio recordings of any prerecorded

19   messages or messages using an artificial voice used during the

20   phone calls.

21        THE COURT:  Is "phone calls" a defined term in the

22   request?

23        MR. JACOBSON:  It is, Your Honor.  I believe it is

24   described as phone calls used during the outbound marketing

25   campaign.  I can pull that up for Your Honor.

1            THE COURT:  Yes.  We will address this, and then we

2      are going to bring today's session to a close and plan on what

3      we do next.

4            MR. JACOBSON:  Your Honor, I'm going to open up

5      ViSalus's second supplemental response.  Let me confirm this is

6      the correct one.

7            It looks correct, Your Honor.  I will plug this in

8      and show you the definition of "phone calls," which I hope is

9      in here.

10            THE COURT:  If not, we can pick it up next week.

11            MR. JACOBSON:  This looks like it just has ViSalus's

12      objections to the definitions.  I will have to go to the

13      original to get the definitions, which I should be able to pull

14      up fairly quickly.  Yes, I have got out.  Here is ours.

15      "'Phone call' or 'phone calls' means or refers to any telephone

16      calls made by you or your representatives promoting your

17      services and/or encouraging the sale of your products and/or

18      services."

19            This is what those POM calls were.

20            THE COURT:  Any response from defendant?

21            MR. O'NEAL:  No, Judge.  I don't know whether we

22      objected to the definition.  But if counsel tells me that was

23      the request, I can't respond to it, so I can't give you a

24      contrary point.

25            THE COURT:  My tentative inclination is to allow 43

1    and 48.  But if you did object to the definition, call it to my

2    attention, and I'll be glad to reconsider.

3          MR. JACOBSON:  One point of clarification, for the

4    promoter applications, were those preadmitted?

5          THE COURT:  No, I'm not preadmitting anything.  You

6    are welcome in opening statement to tell the jury what you

7    expect the evidence was.

8          MR. O'NEAL:  For example, I can't press play,

9    "Ladies and gentlemen, you just heard" --

10         THE COURT:  Not in opening.  In closing, they can.

11   We will talk about limitations so we don't get too much

12   redundancy, but not in opening.

13         MR. JACOBSON:  May I play an example in opening?

14         THE COURT:  No.  You may describe in opening.  You

15   may describe it.

16         All right.  So I do need to see from plaintiff what

17   is going to be the remainder of the exhibits that you want to

18   introduce, knowing that anything that just goes to willfulness

19   or knowingly has to just go to me.

20         As I said, maybe by tomorrow, but I promise you no

21   later than Friday I will email to all counsel on the official

22   court docket my draft voir dire script, preliminary

23   instructions, jury instructions, final instructions, and

24   verdict form.  I would like to talk early next week as to

25   whether or not you have any objections.

1              We can hold off on the final instructions until --

2    well, this trial is going to go really rapidly.  I would like

3    to talk about it next week before trial starts.

4              It is my practice to give the jury pretty substantive

5    instructions in the preliminary instructions so they know what

6    to listen for.  I also give substantive jury instructions

7    before closing argument.

8              So you'll be welcome during your closing argument to

9    tie whatever you believe the facts have shown to the verdict

10   form and to the instructions that the jury will have already

11   received.  You will be able to tell this pretty easily, because

12   you'll see in my draft final jury instructions everything that

13   is going to be read to jury before closing argument.  Then

14   there is a big bold statement "closing arguments" and a few

15   wrap-up instructions after that.  It is self-explanatory.  If

16   you have questions, we can talk about it next week.

17             I do need to tell you about a problem that I have on

18   timing for trial on Wednesday.  I apologize, but there is

19   nothing that is going to be able to be done about this.

20             We have our jury panel coming in on Wednesday

21   morning.  I expect we will have our jury fully selected before

22   I have to break mid-day.  I'm really hopeful too that I will be

23   able to give the preliminary jury instructions to the jury

24   before we break mid-day.  We will have to break mid-day

25   probably at 1:00-ish, give or take for Wednesday.  That means

1   we will start first thing Thursday with opening statements and

2   your witnesses.  But I'm not going to leave until we get our

3   jury picked, and if we are making good time, I will do

4   preliminary instructions then.  Otherwise, I will do it first

5   thing on Thursday.

6           I do allow attorney-conducted voir dire.  I will do

7   the bulk of the voir dire, but I'll turn it over to one lawyer

8   for each side for 10 or 15 minutes of follow-up.  I do not

9   allow people to do mini-opening statements in their voir dire.

10   So do not start talking about the facts of this case.  Do not

11   tell them, "In this case you'll hear about such and such."  But

12   that said, I think both sides might want to explore the jurors'

13   attitudes towards, for lack of a better name, robo calling.

14   I'll try to think of a more neutral name of describing this,

15   and I'm going to try to explore their attitudes.

16           I am first going to ask if they received anything

17   from ViSalus or been a part of the ViSalus network.  If they

18   are, I expect to excuse them.  If they haven't, I would assume

19   that every hand will go up, "Have you ever received an

20   automated call?"  I will tell you some people enjoy receiving

21   them; some people don't.

22           "This case involves under the Telephone Consumer

23   Protection Act" -- you will see my voir dire script.  I will

24   try to explore their attitudes and whether they can base a

25   decision solely on the evidence presented and the law that I

 1    instruct.  You may hear some things that you will want to

 2    follow-up on.  You're welcome to do that.  But don't turn this

 3    into a mini opening statement.  Don't ask the jury to make

 4    commitments to you.  I will ask them to make commitments to me

 5    about not doing independent research, not looking things up.

 6            I do allow juries to ask questions in writing, and I

 7    will present them to you before I give a response to the jury.

 8    Some I answer; some I explain that I can't answer.  Some I will

 9    let you follow up with a witness, if appropriate.  I'll tell

10    them about that.

11            I'll ask them to make commitments to me to keep an

12    open mind, but I don't let you ask them to make commitments to

13    you.  For example, "If you find such and such, will you promise

14    you will rule for the plaintiff or rule for the defendant?"

15    No, we are not going there.

16            Okay.  We will pick a jury.  As I said, hopefully we

17    will get to preliminary instructions, but my best guess we are

18    going to have to break for the day at one o'clock in the

19    afternoon and pick up on Thursday.

20            Let's see.  Is there anything else?  Oh, yes.  When

21    would be a good time to pick up on Monday to talk further, and

22    do you want to do it in person or by telephone?

23            MR. O'NEAL:  Judge, we will be in town, so whatever

24    works for you.

25            THE COURT:  Okay.  I think it is better if it is in

1    person, but I'm not going to create hardships for anyone.

2              Plaintiff's counsel?

3              MR. FRANZINI:  May we have a moment, Your Honor?  We

4    are trying to figure out flights.

5              (Pause.)

6              MR. FRANZINI:  Your Honor, we will be here on Monday.

7              THE COURT:  Mary, it looks to me like we can start up

8    at 11:00 a.m.  Do you agree?

9              THE CLERK:  Yes.

10             THE COURT:  I don't think it will take all day.  I

11   know you have other things you need to do.  I have a matter at

12   9:00 and a matter at 10:00.  Let's start up at 11:00 a.m.

13   Monday, continuing with our pretrial conference.  If we need to

14   take most of the day, I'm am open except for a criminal matter

15   from roughly 2:30 to 3:00.  Other than that, I'm totally open.

16   Let's try to get everything done by 2:30, but I'll be available

17   for you, if not.

18             We will talk about your updated exhibits, witness

19   objections, and my draft documents -- verdict form, jury

20   instructions, preliminary instructions, and voir dire.

21             That said, is there anything that we absolutely must

22   talk about tonight?

23             Mr. O'Neal.

24             MR. O'NEAL:  My experience in federal court is I'm

25   not permitted to use the room; that I must stay --

1          THE COURT:  Oh, no.  Everybody is different.  I will

2     say this:  Everybody is different.  Let me tell you how I do

3     it.  You're trial lawyers.  I'm going to let you try your case.

4     If you want to get up and walk around the room, you do it.  If

5     you want to ask questions seated, you do it.  If you want to

6     stand from the desk, you do it.  If you want to use the podium,

7     that's fine.  If you want to ask questions from somewhere else

8     in the courtroom, be a trial lawyer.  That's fine.  I have no

9     problem with that.

10          Here are my only two restrictions:  They are pretty

11    obvious and that is -- I don't know if you ever seen Jerry

12    Spence near a jury box, put his elbow on the jury box, and have

13    a little conversation with the jury.  That, I won't allow.

14          Here is the rule:  You cannot be close to touch the

15    wood on the jury box.  If you are within arm's length of that

16    jury box or closer, I am going to ask you to step back.  You

17    may not touch that wood or even get close enough to touch it.

18    I will tell you to please step back.

19          Other than that, stand where you want, except for

20    also with a witness.  If you need to show the witness

21    something, refresh your witness's memory, point out something

22    in a document, even though I invite people to help yourself and

23    go on up, most people ask for leave to approach, and I always

24    say yes.  But if you don't want to, that's okay.  I won't yell

25    at you for that.  That's fine.  But do your business up here.

1    Point to something you need to point to.  Show the witness

2    something.  Hand the witness something.  But then don't hover

3    over the witness, especially if it is an adverse witness or on

4    cross.  I don't want you standing over a witness to intimidate

5    that witness.  But if you need to go up and show the witness,

6    by all means, whatever you want.

7           Similarly, if there is something that's blocking your

8    view, or if you need to see something, you don't need to ask

9    permission.  Just get up and move to wherever it is where you

10   need to see something, except don't get within touching

11   distance of the wood on the jury box.

12          We will have, I expect, a seven-, maybe an

13   eight-person jury.  There will be no alternates.  You know we

14   need a minimum of six.  So if we end the trial with seven or

15   eight, they all will be there.  They will all have to

16   deliberate to unanimity.  I will probably put four in the front

17   row and either four or three in the back row closer to me.

18          We will talk more on Monday about how I do the voir

19   dire.  It is moderately self-explanatory in my voir dire

20   script.  If you have any questions, ask me.  Otherwise, I will

21   explain it then.

22          Any other questions?

23          MR. ADAMS:  Your Honor, is there a preferred place if

24   we use the easel with maybe butcher paper, and we are using it

25   with the witness, where we put that?

1            THE COURT:  Yes.  Generally the best place for it is

2    right in that well of the courtroom right where Mr. Jake is

3    sitting.  That's where I expect you, or even defense counsel

4    were to do that, most likely whoever is at counsel table will

5    not be able to see it.  So then one lawyer -- let's not have

6    everybody -- one lawyer should get up and maybe stand by the

7    witness chair so that you can see it as well.  That's how it

8    will work.

9            As long as nobody takes unfair advantage of what's

10   going on, I will let you move around and try your cases.  If

11   you want to use a podium during your opening statement or your

12   closing, which I don't think is a good idea, but that's

13   everybody's personal preferences.  Just tell Mary, and she will

14   plug it in for you.  It has a microphone on it.  You are

15   welcome to use it.  If you don't want to use it, tell her, and

16   you can do your opening and closing from wherever you want.

17           You should know how to work the Court's technology

18   system.  Mary will be available to you by appointment to show

19   you or your staff how to do it.

20           In addition, we have touch screens that the witnesses

21   can use.  So if you want to have them circle something or

22   highlight something, Mary can show you how to do that.  Then

23   either they can clear it or I'll tell them how to clear it when

24   we get there, before we go to the next slide.

25           Anything else anybody wants to ask or talk about at

1    this time?

2              MR. FRANZINI:  One thing, Your Honor.  Our first

3    witness is a third party.  He doesn't have to be here until

4    Thursday, right?

5              THE COURT:  Correct.  There is no chance we are

6    getting to a witness until Thursday morning at 9:00 a.m., and I

7    apologize for that.

8              MR. JACOBSON:  Your Honor, is there some tiny or

9    non-zero chance we open on Wednesday, just for preparation?

10             THE COURT:  If we pick a jury in enough time, and my

11   best guess is it takes us 20 to 30 minutes for preliminary

12   instructions.  If we pick a jury, and I can do preliminary

13   instructions, and both sides can do opening -- I don't want to

14   let one side do an opening and not the other, and have all that

15   be done by 1:00, I guess the answer is yes.  I can't conceive

16   of that.

17             My best guess is that your openings will be no less

18   than half an hour; hopefully no more than half an hour, but

19   that's up to you.  That means we have to be able to start

20   openings at noon.  I will give the jury a little bit of a

21   recess before going into openings.  That means that I would be

22   doing preliminary instructions at 11:30.  That means we would

23   give the jury a mid-morning break -- let's say we back it up to

24   11:10 or 11:15.  Can we get the jury seated by eleven o'clock?

25   The answer is "possibly but probably not."

1            So I think most likely, if we are making good time,

2   and we get the jury seated by 11:00, 11:30, and there is time,

3   I will do preliminary instructions, but I won't make you do

4   openings.

5            By the way, is anybody planning taking more than 45

6   minutes for an opening?

7            MR. JACOBSON:  No, Your Honor.

8            THE COURT:  Then starting first thing on Thursday

9   morning with openings and moving right to a witness is most

10  likely what we will do.

11           MR. O'NEAL:  I apologize.

12           THE COURT:  No need for apologies.

13           MR. O'NEAL:  I didn't do my client a service.  I said

14  I was going to do something during the course of the day, and I

15  learned I hadn't.  We do intend to bring in conjunction with

16  this trial, probably around the time of post-trial motions, a

17  motion with respect to decertifying the class.

18           THE COURT:  Sure.

19           MR. O'NEAL:  Just to give you a heads-up, we think

20  there are all kinds of legal issues that make this class

21  unwieldy, and it should in fact be decertified.

22           THE COURT:  And I'll tell you right now, based upon

23  my reading of the file, and I have read most of the file.

24  Given that I don't expect the jury portion of the case will

25  last particularly long, given that I'm taking the willfulness

1    and knowingly for myself, most likely I will reserve ruling or

2    deny with leave to renew a judgment as a matter of law at the

3    close of plaintiff's case.  I will certainly take a look at any

4    motion to decertify, but I'm not going to rule on it probably

5    during trial.

6            So we will see what the jury does, and then we will

7    talk about what more needs to be done and addressed after that.

8            MR. O'NEAL:  Understood, Judge.

9            THE COURT:  That's most likely what I'm going to do.

10           To the extent you want to say, just to keep things

11   moving, when plaintiff rests its case, if you want to reserve

12   your argument for judgment as a matter of law until the close

13   of all evidence, I'll let you do that without prejudice;

14   without waiving any rights.  But don't plan on making the

15   world's most brilliant argument at the close of plaintiff's

16   case and winning it right then.  I just don't see really a

17   benefit of doing that given that we are not talking about a

18   particularly long jury trial.  We can let the jury solve their

19   problems.  I'll then solve your problems -- both sides

20   afterwards -- and then everybody will have a good, clean

21   appellate record.

22           All right.  I look forward to seeing you all on

23   Monday at 11:00 a.m.  If some reason emergencies arise, and you

24   need to reach me, contact my courtroom deputy.

25           I'll be sending you the drafts by email to everybody

1    who is already registered on the Court's PACER system or

2    CM/ECF.

3              Thank you, Dennis.

4              Thank you, Mary.

5              (Court adjourned.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/ Dennis W. Apodaca                      April 26, 2019
DENNIS W. APODACA, RDR, RMR, FCRR, CRR            DATE
Official Court Reporter

MR. ADAMS: **[9]**  4/11 27/10 28/2 28/12 55/2 55/13 55/15 57/4 110/22
MR. FOSTER: **[27]**  4/18 7/22 8/4 8/12 9/7 9/22 10/7 10/12 10/25 11/8 11/10 11/13 11/20 11/22 12/4 12/24 13/13 13/17 13/22 27/12 28/3 28/13 85/11 85/13 87/7 87/11 88/24
MR. FRANZINI: **[70]**  4/9 5/12 6/8 7/6 7/16 9/11 11/25 14/12 14/18 15/14 15/16 16/1 16/13 19/3 25/17 25/25 26/4 26/12 29/4 30/13 30/25 51/23 60/21 61/3 61/13 61/24 69/6 69/20 70/16 71/15 71/17 71/24 72/13 73/10 73/12 74/19 74/22 75/10 76/21 76/24 77/2 77/11 79/4 79/8 79/12 79/16 79/19 79/25 80/19 81/2 81/6 81/8 81/12 81/23 84/18 84/21 85/9 86/4 86/25 87/4 88/5 88/25 89/2 93/16 93/19 95/5 95/15 108/2 108/5 112/1
MR. JACOBSON: **[72]**  4/14 31/22 32/6 32/16 32/24 33/2 33/5 33/9 33/14 33/23 34/17 36/2 36/17 37/19 38/23 39/11 39/14 39/16 39/19 40/1 40/6 40/17 40/21 40/23 42/3 42/7 42/16 43/3 43/9 43/21 44/13 45/1 45/10 45/12 45/20 45/23 46/2 46/20 47/20 49/4 49/7 49/13 49/22 50/16 66/2 89/5 89/11 89/15 89/18 89/20 90/6 92/7 93/5 93/8 96/2 96/19 97/1 97/6 98/2 99/2 99/20 100/10 100/21 102/12 102/16 102/22 103/3 103/10 104/2 104/12 112/7 113/6
MR. O'NEAL: **[98]**  4/16 16/5 19/14 22/23 24/18 24/22 25/7 25/10 29/6 29/13 29/25 30/4 31/12 35/7 35/21 36/24 37/9 38/7 44/1 44/5 44/18 47/25 48/3 49/15 51/2 51/13 52/15 53/8 53/18 55/14 58/4 58/9 58/16 59/2 59/4 59/16 60/1 60/7 60/10 61/6 62/11 64/7 64/24 65/3 65/9 65/17 65/19 65/22 66/7 66/11 66/14 66/18 66/21 67/4 67/20 68/12 68/22 70/17 71/6 71/10 72/23 74/14 74/18 75/12 75/15 76/8 76/17 78/12 78/14 79/3 82/5 84/16 90/12 91/7 91/16 91/22 92/2 92/8 92/19 92/25 93/15 95/8 95/17 95/23 97/10 98/3 99/11 99/17 101/9 101/23 103/20 104/7 107/22 108/23 113/10 113/12 113/18 114/7
MR. PYLE: **[1]**  4/20
THE CLERK: **[5]**  4/3 34/22 34/24 35/10 108/8
THE COURT: **[261]**

## $

**$2,500 [2]**  33/8 33/21
**$500 [14]**  10/21 11/2 16/20 20/20 30/16 31/8 32/1 32/3 32/4 32/10 32/16 32/19 33/12 34/8
**$7,500 [3]**  33/9 33/14 34/11

## '

**'do [1]**  65/24
**'only.' [1]**  74/8
**'Phone [2]**  103/15 103/15

## -

**--oOo [1]**  116/4

## .

**.ca [1]**  49/4

## /

**/s [1]**  116/11

## 1

**10 [3]**  12/8 72/8 106/8
**1000 [1]**  2/23
**1006 [1]**  85/9
**101 [1]**  2/11
**10:00 [1]**  108/12
**10th [1]**  4/24
**11 [5]**  12/15 12/16 12/16 89/16 91/21
**111 [2]**  2/14 57/20
**11:00 [3]**  108/8 113/2 114/23
**11:00 a.m [1]**  108/12
**11:10 [1]**  112/24
**11:15 [1]**  112/24
**11:30 [2]**  112/22 113/2
**12 [1]**  74/15
**13 [3]**  75/14 89/16 91/21
**143 [2]**  9/8 9/9

**149 [4]**  9/25 10/1 10/5 13/9
**15 [8]**  45/7 69/16 69/19 89/20 90/4 90/12 91/15 91/21 106/8
**15-1857-SI [1]**  4/5
**17 [2]**  89/16 91/21
**1791 [1]**  22/12
**19 [10]**  70/20 71/8 72/11 74/12 74/18 75/6 86/13 89/16 91/21 96/5
**192 [2]**  58/7 58/9
**1987 [1]**  22/5
**1:00 [1]**  112/15
**1:00-ish [1]**  105/25

## 2

**2-2 [1]**  65/8
**20 [4]**  57/6 89/16 91/21 112/11
**20-minute [1]**  35/7
**200 [1]**  95/22
**201 [6]**  2/4 59/15 59/17 60/2 60/14 95/23
**2012 [4]**  94/17 95/2 95/8 95/10
**2013 [2]**  50/2 95/7
**2014 [1]**  95/6
**2016 [3]**  41/21 57/16 95/6
**2018 [1]**  10/6
**2019 [3]**  1/6 4/1 116/11
**202 [3]**  59/15 60/2 60/14
**203 [3]**  59/15 60/3 60/14
**204 [10]**  48/7 59/16 60/3 60/19 60/21 60/23 61/24 62/8 76/20 76/21
**205 [5]**  59/16 60/9 60/9 64/6 64/11
**215 [3]**  11/22 14/18 15/9
**22 [5]**  57/25 58/12 58/23 89/16 91/21
**227 [3]**  5/18 20/16 20/23
**227B [1]**  12/6
**23 [7]**  92/13 92/19 92/25 93/4 95/8 95/14 95/23
**24 [2]**  89/16 91/21
**248 [1]**  96/17
**24th [1]**  10/6
**26 [3]**  89/16 91/21 116/11
**26th [1]**  41/21
**27 [3]**  56/12 89/17 91/21
**29 [6]**  92/13 92/19 92/25 93/4 95/8 95/14
**2:30 [2]**  108/15 108/16

## 3

**30 [7]**  14/19 38/1 41/2 45/14 81/16 94/5 112/11
**301 [1]**  2/23
**326-8182 [1]**  2/24
**33602 [1]**  2/11
**3400 [2]**  2/11 2/14
**35 [2]**  64/19 64/19
**36 [15]**  57/18 79/14 79/16 84/18 84/19 85/8 85/11 87/1 88/10 88/13 88/15 88/18 88/22 88/24 95/13
**37 [10]**  79/14 81/6 82/5 83/8 84/7 85/3 85/4 86/6 87/2 88/13
**38 [23]**  64/17 64/17 79/15 79/17 79/18 79/18 80/18 82/5 83/7 84/8 84/12 84/13 84/20 85/3 85/6 86/24 87/2 87/4 87/13 87/14 87/17 87/24 88/12
**38-1 [1]**  64/17
**38-405 [1]**  64/18
**39 [4]**  57/24 57/25 58/12 58/23
**3:00 [2]**  34/22 108/15
**3:15-cv-01857-SI [1]**  1/5
**3:30 [5]**  34/22 34/25 35/3 35/4 35/7
**3A [1]**  65/12

## 4

**4-3 [4]**  65/22 66/4 66/5 76/17
**40 [4]**  57/25 58/12 58/23 64/18
**400,000 [2]**  16/18 16/20
**403 [5]**  32/8 33/12 34/10 50/16 78/2
**405 [5]**  64/18 79/19 79/20 80/1 81/11
**405 that [1]**  80/12
**40A [1]**  64/18
**41 [1]**  64/18

**42** [1] 64/18
**43** [3] 64/18 64/19 103/25
**43-1** [1] 64/19
**43-35** [1] 64/19
**44** [1] 64/19
**45** [9] 39/18 45/3 45/10 45/13 50/10 50/15 50/18 50/23 113/5
**47** [10] 20/15 44/17 44/22 45/5 45/6 45/7 45/7 50/12 50/14 50/22
**47-1** [1] 41/15
**47-2** [1] 41/15
**47A** [1] 45/6
**48** [1] 104/1
**49-2** [1] 64/20
**4:45** [2] 40/17 42/22
**4th** [1] 43/2

**5**

**5,000** [2] 72/7 72/8
**50** [1] 96/14
**500** [1] 32/9
**503** [1] 2/24
**58** [1] 96/5
**5:00** [2] 26/11 55/10

**6**

**60** [1] 66/10
**600** [1] 2/4
**61** [5] 66/8 66/13 66/14 66/20 76/17
**63** [2] 64/16 64/20

**7**

**7,500** [2] 33/15 33/22
**7521** [1] 96/17
**764-7521** [1] 96/17

**8**

**800,000** [3] 16/14 16/16 18/2
**81** [1] 17/14
**8182** [1] 2/24
**85** [1] 86/12
**85004** [1] 2/8
**89** [1] 86/12

**9**

**90401** [1] 2/5
**97204** [2] 2/14 2/23
**9:00** [1] 112/6
**9:00 and** [1] 108/12

**A**

**a.m** [4] 108/8 108/12 112/6 114/23
**ABC** [1] 98/21
**ability** [1] 67/9
**able** [24] 28/9 36/1 36/4 36/5 36/16 37/21 43/22 52/8 56/25 57/1 68/10 69/1 70/7 75/1 82/12 90/15 91/10 102/4 103/13 105/1 105/19 105/23 111/5 112/19
**about** [102] 5/2 5/4 5/8 7/8 7/24 9/13 9/22 10/20 19/19 22/1 23/4 23/5 24/23 25/8 26/19 27/24 28/18 29/9 31/25 32/14 32/18 36/15 38/4 38/14 39/11 42/8 42/9 44/2 44/4 44/5 45/10 45/18 46/12 47/6 47/18 48/1 48/3 48/14 49/18 50/10 50/16 50/18 52/15 53/10 53/25 54/8 54/15 55/9 55/19 57/4 57/12 57/24 59/10 60/9 60/12 60/18 62/6 62/20 64/12 65/10 65/13 65/24 67/14 70/19 73/13 73/16 74/18 75/17 77/15 77/15 78/8 78/10 79/8 81/21 82/1 82/2 82/5 82/10 82/21 83/2 83/2 83/12 84/18 91/24 102/1 102/2 102/15 104/11 105/3 105/16 105/17 105/19 106/10 106/11 107/5 107/10 108/18 108/22 110/18 111/25 114/7 114/17
**above** [1] 116/8
**above-entitled** [1] 116/8
**absence** [2] 32/14 32/15
**absent** [1] 10/15

**absolutely** [3] 29/13 61/10 108/21
**absorb** [1] 68/12
**accepted** [1] 19/1
**accepting** [3] 59/17 67/14 82/6
**accident** [1] 56/12
**according** [1] 86/1
**account** [1] 40/20
**accounts** [2] 41/11 41/23
**accuracy** [1] 87/7
**accurate** [2] 62/14 75/9
**across** [1] 29/9
**Act** [3] 20/17 21/8 106/23
**action** [2] 20/17 81/18
**actual** [2] 20/21 68/7
**actually** [14] 18/21 48/20 52/21 68/7 72/2 82/1 82/13 82/22 84/25 88/22 94/12 97/14 100/10 101/12
**Adam** [1] 39/22 41/22
**Adamcik** [1] 21/21
**Adams** [2] 2/3 4/12
**add** [8] 33/15 47/12 47/21 48/21 58/19 62/24 74/11 92/13
**adding** [3] 11/7 74/13 92/22
**addition** [1] 111/20
**additional** [5] 23/11 25/1 36/16 58/19 78/17
**address** [12] 14/21 34/14 36/3 39/4 42/4 45/3 49/3 84/22 89/4 96/20 96/22 103/1
**addressed** [2] 50/21 114/7
**addressing** [1] 22/25
**adds** [1] 86/21
**adjourned** [1] 115/5
**adjustments** [1] 15/13
**administration** [1] 8/20
**administrator** [2] 87/22 87/22
**admissibility** [7] 44/2 44/18 48/2 48/3 50/15 50/16 88/18
**admissible** [3] 46/18 46/20 85/15
**admission** [5] 47/23 49/20 92/1 100/23 102/11
**admissions** [2] 68/21 100/19
**admit** [2] 88/20 100/19
**admitted** [5] 44/22 45/9 47/10 69/12 77/2
**adopt** [1] 48/12
**adopted** [3] 17/17 47/18 47/22
**advantage** [2] 37/8 111/9
**adverse** [1] 110/3
**advise** [2] 62/19 92/4
**advisory** [2] 25/8 26/17
**affect** [2] 19/23 32/5
**affects** [1] 34/16
**affidavit** [1] 85/22
**affidavits** [2] 9/1 9/1
**affirmative** [1] 19/10
**afoul** [1] 30/17
**after** [10] 8/9 15/14 26/6 35/4 35/5 56/18 68/24 99/3 105/15 114/7
**afternoon** [6] 4/12 4/14 4/16 4/17 4/22 107/19
**afterwards** [1] 114/20
**again** [10] 13/1 13/14 13/16 13/18 28/7 66/20 67/22 87/15 90/13 101/3
**against** [6] 29/14 34/16 77/1 87/24 91/7 94/19
**agent** [1] 52/10
**agents** [2] 17/10 19/8
**ago** [5] 7/24 8/17 12/24 50/7 73/24
**agree** [9] 8/14 42/6 44/25 48/11 59/18 66/1 69/8 70/7 108/8
**agreed** [6] 8/21 66/25 70/13 70/15 71/20 75/2
**agreed-upon** [2] 66/25 70/15
**agrees** [1] 27/21
**ahead** [1] 84/21
**ahold** [2] 53/23 67/17
**air** [1] 16/17
**algorithm** [1] 57/18
**all** [124]
**allegations** [1] 54/1
**allow** [10] 18/6 58/18 62/22 74/2 88/18 103/25 106/6 106/9 107/6 109/13
**allowed** [3] 32/3 72/19 73/19

**allows** [1] 52/7
**along** [6] 9/16 13/10 15/6 31/3 54/18 85/23
**already** [6] 13/10 31/14 69/20 99/2 105/10 115/1
**also** [25] 5/21 5/24 19/6 20/11 21/14 22/2 22/9 29/8 36/16 44/6 46/13 47/4 47/21 48/21 50/1 50/4 50/9 53/2 53/22 64/11 64/20 86/11 97/13 105/6 109/20
**alter** [1] 86/10
**alternates** [1] 110/13
**although** [2] 6/16 46/13
**always** [4] 53/15 60/16 102/2 109/23
**am** [25] 5/12 14/22 16/15 19/6 19/14 19/18 20/7 31/13 31/16 36/25 38/23 40/21 51/24 53/18 57/22 58/4 58/16 62/10 64/8 85/4 88/13 91/9 106/16 108/14 109/16
**amend** [1] 74/10
**amended** [4] 11/20 12/3 45/6 92/18
**Amendment** [3] 22/12 22/16 25/23
**amendments** [1] 15/13
**among** [4] 51/11 71/10 71/14 72/1
**amount** [8] 18/19 21/2 21/2 21/3 27/16 29/11 30/16 31/4
**analogous** [4] 5/24 22/11 22/14 22/15
**analysis** [4] 20/13 22/1 33/12 53/15
**analyst** [3] 39/22 40/9 81/14
**and/or** [3] 49/1 103/17 103/17
**angry** [1] 48/23
**another** [10] 34/3 46/9 47/1 47/17 55/16 64/20 92/9 99/8 99/10 100/1
**answer** [29] 12/15 12/16 12/16 12/17 18/17 19/3 30/8 30/10 31/22 31/24 32/1 33/17 34/4 34/6 55/3 57/21 80/10 80/22 80/23 80/23 80/24 86/9 86/9 100/21 102/4 107/8 107/8 112/15 112/25
**answering** [10] 40/13 40/25 41/1 41/5 41/25 42/14 80/11 82/16 82/16 86/8
**answers** [2] 58/24 58/25
**anticipate** [4] 76/6 79/2 83/6 91/25
**anticipation** [1] 31/17
**any** [72] 6/19 6/23 7/4 13/21 13/23 14/16 15/12 17/10 19/1 19/5 19/8 22/23 27/4 30/7 30/13 30/18 30/22 31/17 31/17 32/19 34/8 36/14 36/23 37/9 37/15 42/10 42/18 44/1 44/11 49/8 49/19 51/9 53/24 59/16 60/21 61/16 64/23 65/12 65/19 69/24 71/13 74/25 75/8 76/14 76/15 76/19 77/1 77/8 77/14 77/17 82/4 83/18 85/11 88/5 88/7 93/3 93/15 94/25 97/10 97/19 98/14 98/17 98/25 100/12 102/18 103/15 103/20 104/25 110/20 110/22 114/3 114/14
**anybody** [9] 27/9 28/2 28/11 34/12 62/22 63/18 94/14 111/25 113/5
**anyone** [2] 31/18 108/1
**anything** [24] 7/21 14/10 14/11 20/8 22/13 25/14 33/1 38/22 48/12 49/18 52/4 55/6 59/22 61/16 70/7 77/5 77/10 96/15 104/5 104/18 106/16 107/20 108/21 111/25
**anyway** [2] 52/14 96/1
**anywhere** [1] 54/7
**Apodaca** [3] 2/22 116/11 116/12
**apologies** [1] 113/12
**apologize** [7] 40/2 61/9 99/18 99/19 105/18 112/7 113/11
**Apparently** [1] 97/25
**appeal** [5] 13/1 13/18 25/20 25/21 25/25
**appear** [1] 61/7
**APPEARANCES** [1] 2/1
**appears** [2] 57/20 62/1
**appellate** [1] 114/21
**application** [1] 94/22
**applications** [15] 89/22 90/1 92/1 93/21 93/22 93/24 94/6 94/6 94/9 94/10 94/12 94/13 94/19 104/4
**applies** [2] 31/12 63/5
**appointment** [1] 111/18
**appreciate** [1] 7/17
**approach** [3] 55/22 93/1 109/23
**appropriate** [8] 5/8 24/16 30/22 61/18 62/17 88/19 95/13 107/9
**April** [4] 1/6 4/1 4/24 116/11
**April 10th** [1] 4/24
**are** [155]
**area** [1] 48/7

**areas** [1] 30/10
**aren't** [2] 58/23 96/1
**argue** [11] 20/12 26/25 27/24 72/17 73/18 73/22 74/4 75/1 76/4 91/10 101/6
**arguing** [1] 26/24
**argument** [29] 11/13 11/14 24/14 25/7 26/10 31/12 47/12 49/2 63/6 73/15 73/21 73/23 75/7 83/11 84/3 84/4 88/20 90/23 91/6 91/7 91/12 101/7 101/17 102/1 105/7 105/8 105/13 114/12 114/15
**argumentative** [1] 85/17
**arguments** [9] 24/5 29/22 29/23 34/5 44/17 59/23 59/24 59/25 105/14
**arise** [1] 114/23
**arm's** [1] 109/15
**around** [4] 78/10 109/4 111/10 113/16
**art** [1] 53/11
**artificial** [16] 5/19 5/21 6/1 6/12 12/12 12/19 14/6 17/8 18/14 27/17 53/16 54/1 79/24 85/19 85/25 102/19
**as** [109] 5/10 5/12 6/24 7/25 12/7 13/11 13/21 17/4 17/18 18/12 18/13 19/9 19/12 23/1 24/1 25/15 27/21 28/19 29/10 29/23 30/8 30/21 31/9 31/12 31/18 33/2 33/9 33/9 34/11 34/11 34/16 35/15 35/17 35/19 35/20 40/13 41/25 42/14 43/25 44/17 44/17 44/19 47/24 48/21 50/13 52/10 53/2 53/3 53/10 53/20 58/1 58/25 59/25 60/15 63/21 63/22 64/1 64/1 64/19 64/20 65/12 68/18 70/15 71/14 72/25 74/3 74/7 76/1 79/11 80/25 81/15 82/17 82/23 84/4 86/2 88/14 88/14 90/17 91/7 91/13 91/13 92/12 92/13 92/15 93/12 93/14 94/22 94/24 94/25 94/25 95/7 95/7 95/19 95/22 96/12 96/14 98/21 99/6 101/14 101/24 102/24 104/20 104/24 107/16 111/7 111/9 111/9 114/2 114/12
**Asher** [1] 21/20
**aside** [5] 6/4 6/6 6/9 33/8 33/19
**ask** [57] 7/2 8/13 14/9 17/16 17/18 17/20 18/12 19/11 22/24 23/2 23/24 25/4 30/6 30/21 31/2 31/10 31/15 31/21 41/12 46/15 47/16 54/11 59/7 59/9 60/24 61/12 62/16 63/11 63/19 68/20 69/3 71/12 72/21 74/20 76/14 77/8 80/17 82/4 82/5 86/3 100/8 100/18 100/22 102/14 106/16 107/3 107/4 107/6 107/11 107/12 109/5 109/7 109/16 109/23 110/8 110/20 111/25
**asked** [11] 5/25 13/22 14/8 19/1 31/20 33/21 49/19 97/3 98/9 98/20 102/18
**asking** [2] 14/7 15/24
**asks** [1] 14/4
**asserted** [3] 46/22 47/11 62/4
**asserting** [2] 19/10 19/15
**assign** [1] 80/8
**assist** [1] 96/17
**associated** [1] 52/18
**assume** [10] 12/17 33/23 33/24 35/20 78/15 80/17 91/12 91/12 100/9 106/18
**assumed** [1] 53/15
**assuming** [3] 18/1 46/17 75/9
**assumption** [1] 26/15
**assure** [1] 32/13
**assured** [1] 8/24
**attached** [5] 67/7 70/1 70/2 70/6 81/22
**attack** [1] 9/1
**attempting** [1] 75/23
**attention** [7] 10/9 24/4 56/6 56/23 57/3 78/11 104/2
**attitude** [1] 59/22
**attitudes** [3] 106/13 106/15 106/24
**attorney** [2] 23/8 106/6
**attorney-conducted** [1] 106/6
**audio** [4] 39/14 75/17 96/11 102/18
**August** [1] 10/6
**August 24th** [1] 10/6
**authenticate** [4] 96/7 99/7 99/8 100/6
**authenticated** [4] 62/3 94/14 99/10 99/21
**authenticates** [1] 99/4
**authentication** [1] 61/19
**authenticity** [1] 99/6
**authorized** [2] 66/17 81/14
**auto** [11] 51/12 51/13 51/15 51/18 51/18 52/1 52/2 52/6 52/12 52/24 73/1
**automated** [2] 18/14 106/20

**A**

automatic [1] 53/21
automatically [1] 40/19
available [3] 21/3 108/16 111/18
Avenue [3] 2/8 2/14 2/23
award [1] 21/2
awarded [1] 29/19
awful [2] 15/8 38/2
AZ [1] 2/8

**B**

back [38] 8/12 9/10 10/2 16/24 23/10 23/13 23/16 23/17 36/8
41/8 42/19 44/7 44/12 50/6 50/8 51/23 54/13 55/20 57/11 62/18
63/23 63/25 65/24 67/11 80/21 82/20 82/24 85/3 85/5 86/6
87/16 93/25 95/7 101/13 109/16 109/18 110/17 112/23
background [1] 92/14
bad [1] 38/14
baffled [1] 58/21
ballpark [1] 34/8
bandied [1] 53/10
bar [3] 100/24 100/25 101/7
base [1] 106/24
based [8] 13/1 13/2 13/24 26/6 29/20 59/18 73/23 113/22
basically [7] 6/6 17/24 41/14 51/4 55/24 56/4 86/7
basis [2] 24/9 85/13
BBB [12] 40/4 41/15 41/19 41/19 42/8 42/17 42/24 43/1 43/15
43/17 43/18 43/20
be [198]
bears [1] 16/8
because [34] 4/25 6/21 10/16 10/21 11/2 16/25 18/4 19/22 20/4
20/14 21/4 26/11 34/15 36/20 37/4 37/23 45/3 60/12 65/11 67/6
68/10 68/14 68/21 71/18 72/4 78/24 83/14 84/23 87/9 88/13
92/23 93/13 101/20 105/11
become [2] 83/16 84/5
becomes [1] 23/18
been [18] 9/15 12/22 24/11 26/1 32/21 33/1 57/17 62/3 70/15
71/22 73/24 85/20 85/25 86/17 88/4 94/13 94/20 106/17
before [23] 1/13 10/21 17/4 22/24 24/5 28/17 31/7 35/4 54/10
56/18 76/22 78/11 85/16 94/18 94/24 105/3 105/7 105/13
105/21 105/24 107/7 111/24 112/21
before/right [1] 56/18
begin [2] 4/23 59/8
beginning [2] 4/7 54/23
begins [2] 40/7 42/23
behalf [7] 4/11 4/18 4/19 4/21 12/7 17/6 81/15
being [14] 11/16 32/23 40/14 46/10 48/18 49/17 50/8 53/17
54/4 57/21 60/15 61/9 62/3 96/18
believe [19] 16/14 22/13 35/2 39/17 45/3 60/4 72/24 78/16
83/20 83/22 83/24 85/15 93/9 94/8 95/6 96/5 97/8 102/23 105/9
believed [3] 11/3 13/16 13/24
belong [1] 77/19
belongs [2] 26/10 56/1
below [2] 90/8 116/6
bench [2] 33/20 63/16
benefit [1] 114/17
Berger [1] 41/22
besides [1] 74/18
best [9] 28/8 63/21 86/9 86/16 99/15 107/17 111/1 112/11
112/17
better [7] 39/23 40/12 61/7 61/8 63/12 106/13 107/25
between [1] 88/21
beyond [3] 33/2 67/24 99/1
bias [4] 30/20 30/25 33/18 33/19
big [2] 33/20 105/14
bill [1] 97/25
bit [7] 15/10 15/11 50/10 57/12 77/22 92/10 112/20
blank [2] 12/21 90/16
blocking [1] 110/7
blue [1] 55/24 58/2 58/15 59/8
board [1] 80/2
body [3] 13/4 96/13 96/18
bold [1] 105/14

borne [1] 38/13
both [9] 32/15 54/25 62/19 76/1 106/12 112/13 114/19
bottom [1] 95/9
Boulevard [2] 2/4 2/11
box [7] 34/1 90/4 109/12 109/12 109/15 109/16 110/11
Brady [2] 2/7 2/10
break [11] 23/8 35/3 35/7 54/10 55/20 57/8 105/22 105/24
105/24 107/18 112/23
Bree [3] 45/22 46/19 49/3
brick [4] 91/2 91/3 91/5 91/7
bricks [3] 91/1 91/5 91/25
brief [6] 7/18 9/17 9/21 63/5 63/7 63/9
briefed [2] 22/4 26/2
briefing [8] 8/24 9/12 9/25 13/2 13/25 20/11 26/9 35/18
briefly [4] 37/22 45/11 62/16 96/20
briefs [1] 7/24
brilliant [1] 114/15
bring [4] 69/15 95/3 103/2 113/15
bringing [1] 36/17
brings [2] 36/15 92/9
broader [1] 71/2
brought [3] 5/17 48/18 94/23
Brown [2] 17/3 18/25
bucket [1] 89/6
bucks [1] 32/9
build [1] 90/25
bulk [1] 106/7
bullet [1] 42/21
burden [1] 16/8
Bureau [2] 39/23 40/12
business [22] 18/6 18/7 18/9 18/10 18/15 36/12 36/24 39/23
40/12 48/12 62/5 62/7 63/10 78/4 78/7 78/9 78/16 78/24 82/7
90/10 91/15 109/25
butcher [1] 110/24
buys [1] 94/2

**C**

CA [1] 2/5
calculated [1] 34/13
call [51] 5/11 8/6 12/9 15/2 15/19 15/20 16/9 17/5 17/8 17/12
17/12 18/4 18/10 23/9 24/4 24/23 32/16 32/19 42/25 44/9 44/13
45/6 46/7 46/9 47/1 49/22 51/4 52/19 53/8 53/18 53/20 53/21
54/2 56/6 56/23 57/2 68/1 68/12 69/13 73/1 78/21 80/6 80/8
80/9 80/11 88/8 92/11 96/16 99/16 104/1 106/20
call' [2] 65/25 103/15
Call's [1] 72/12
call-outs [1] 88/8
called [7] 44/7 52/6 54/1 70/14 79/25 83/21 86/11
calling [7] 36/7 44/13 50/5 52/18 52/24 54/3 106/13
calls [46] 5/18 5/22 6/1 6/4 6/12 6/20 6/22 7/1 7/1 7/3 7/4 9/19
12/13 12/17 14/5 15/24 16/1 17/19 17/22 18/14 18/21 33/5 33/6
36/9 46/1 46/11 46/14 47/1 47/7 49/24 49/25 50/1 52/7 52/9
53/5 75/21 78/11 79/23 85/19 85/25 102/20 102/21 102/24
103/8 103/16 103/19
calls' [1] 103/15
came [5] 43/3 49/12 49/22 91/21 97/17
campaign [22] 41/7 41/7 41/25 42/15 50/8 67/19 67/21 67/22
70/20 70/22 71/9 71/14 71/20 71/24 72/1 72/2 72/3 72/5 72/10
72/22 75/6 102/25
campaigns [4] 71/1 72/25 80/15 81/19
can [94] 4/8 7/13 7/15 7/18 8/19 13/5 15/1 17/24 18/3 22/20
23/11 23/14 27/24 27/24 32/13 33/14 34/3 34/3 34/7 35/12
35/20 37/11 37/15 39/4 41/21 42/6 42/25 43/5 43/12 43/21
43/23 47/10 48/7 50/20 54/3 54/13 55/9 56/11 55/19 56/6 56/24
59/22 59/24 62/13 62/18 62/23 64/22 66/1 66/4 69/7 69/10
69/14 69/21 72/18 75/5 75/8 76/5 76/25 77/10 77/21 79/8 80/2
80/24 82/13 82/22 83/10 84/13 90/16 90/18 91/18 93/16 97/7
98/12 98/23 100/4 101/14 105/2 102/9 102/25 103/10 104/10
105/1 105/16 106/24 108/7 111/7 111/16 111/21 111/22 111/23
112/12 112/13 112/24 114/18
can't [8] 60/23 85/16 85/17 103/23 103/23 104/8 107/8 112/15
Canada [1] 21/20
Canadian [3] 48/5 48/14 49/4

**Candidly [1]** 53/11
**cannot [3]** 8/16 27/4 109/14
**cap [2]** 16/18 18/18
**capability [1]** 53/2
**card [1]** 98/1
**care [3]** 30/2 34/20 64/14
**case [43]** 4/5 5/2 5/15 7/13 8/15 9/4 14/24 17/4 21/24 22/6 22/7 23/13 23/14 30/8 30/24 31/17 31/21 38/13 39/3 40/25 45/9 51/13 53/12 53/25 54/8 56/25 62/2 71/22 74/25 79/23 90/17 90/25 91/14 94/20 101/21 106/10 106/11 106/22 109/3 113/24 114/3 114/11 114/16
**case-in-chief [2]** 56/25 90/17
**cases [4]** 21/8 29/9 29/9 111/10
**cast [7]** 50/24 51/1 51/2 51/3 51/3 51/5 51/10
**Casting [6]** 49/25 67/19 68/2 70/21 71/21 72/6
**category [1]** 44/21
**cause [1]** 116/8
**caveat [1]** 6/10
**CC [1]** 98/2
**CC'ing [1]** 41/22
**cell [8]** 8/7 8/19 8/22 11/16 14/2 17/2 89/24 90/3
**cellular [9]** 6/2 12/10 12/18 14/5 17/19 17/23 18/5 18/15 18/22
**center [1]** 98/5
**Central [1]** 2/8
**certain [1]** 68/19
**certainly [7]** 54/8 71/2 73/14 73/19 85/22 100/14 114/3
**certified [2]** 17/3 116/10
**certify [1]** 116/6
**cetera [3]** 41/25 42/1 73/8
**chain [3]** 40/8 43/5 43/6
**chair [1]** 111/7
**challenge [1]** 87/6
**chance [2]** 112/5 112/9
**change [2]** 26/9 73/20
**characteristics [1]** 99/9
**chase [1]** 98/6
**check [3]** 16/20 17/2 49/5
**chief [4]** 39/21 40/10 56/25 90/17
**choose [3]** 77/7 77/11 77/11
**circle [1]** 111/21
**circuits [1]** 28/18
**circumstance [1]** 56/16
**circumstances [1]** 47/10
**cite [1]** 58/6
**civil [1]** 4/5
**claim [11]** 5/11 5/12 5/17 7/10 7/11 7/16 11/5 17/14 17/25 44/9 51/14
**claimant [2]** 10/22 11/3
**claims [5]** 5/24 8/19 9/13 16/21 87/21
**clarification [2]** 74/21 104/3
**clarify [3]** 7/23 9/3 13/15
**class [92]** 5/24 6/3 6/11 6/13 6/15 6/18 6/18 6/19 6/22 6/24 7/3 7/4 7/9 7/15 7/15 8/8 8/16 9/2 9/5 9/13 9/18 10/14 10/15 11/4 12/7 12/10 12/18 13/4 15/18 15/19 15/20 15/24 16/9 16/11 16/13 16/24 17/1 17/3 17/4 17/13 17/15 17/16 17/17 17/18 17/20 17/24 18/2 18/7 18/25 19/7 24/8 28/12 29/11 32/11 32/23 32/24 33/2 33/8 36/5 36/13 36/15 36/16 37/4 37/5 40/14 41/4 48/4 48/15 49/2 49/4 49/22 50/2 52/20 53/22 54/1 79/24 80/14 88/7 88/9 88/10 89/23 89/24 90/19 94/22 96/24 97/1 97/4 97/22 98/16 113/17 113/20
**class-wide [3]** 7/9 9/18 24/9
**classic [1]** 83/19
**clause [1]** 65/24
**clauses [1]** 68/2
**clean [3]** 15/10 70/10 114/20
**clear [9]** 16/6 22/6 35/8 47/6 49/16 68/23 99/12 111/23 111/23
**clearer [1]** 61/10
**clearly [1]** 96/22
**client [4]** 30/15 38/14 48/20 113/13
**client's [1]** 62/1
**clips [1]** 75/17

**close [12]** 54/6 68/24 78/12 91/13 92/5 92/7 103/2 109/14 109/11 109/13 114/12 114/16
**closely [1]** 56/18
**closer [2]** 109/16 110/17
**closing [15]** 24/14 59/23 75/1 75/7 83/11 84/3 84/4 101/6 104/10 105/7 105/8 105/13 105/14 111/12 111/16
**CM [1]** 115/2
**CM/ECF [1]** 115/2
**code [4]** 48/7 80/9 80/9 86/17
**codes [8]** 82/2 84/24 86/8 86/8 86/11 86/11 86/21 87/19
**coherent [1]** 38/3
**collection [1]** 89/7
**Columbia [1]** 21/12
**column [4]** 78/18 79/1 81/2 90/7
**combined [1]** 87/17
**come [17]** 10/2 23/13 30/6 34/12 36/8 50/6 50/7 51/5 53/12 54/13 55/20 66/1 75/20 82/25 83/21 90/16 99/5
**comes [12]** 16/24 23/16 23/17 24/24 65/11 65/25 67/8 68/2 68/4 82/24 91/5 91/9
**coming [5]** 26/6 35/6 90/22 91/7 105/20
**comment [1]** 44/25
**comments [2]** 48/14 83/2
**commitments [4]** 107/4 107/4 107/11 107/12
**committed [1]** 21/17
**common [6]** 22/10 22/10 22/12 22/14 22/14 22/15
**Communication [1]** 90/8
**communications [1]** 66/16
**company [3]** 35/19 35/21 65/5
**compare [2]** 99/9 100/5
**compared [1]** 29/14
**compensation [5]** 35/16 35/25 36/2 36/11 36/17
**compensatory [2]** 28/20 28/21
**compilation [1]** 87/13
**compiled [1]** 88/22
**complaint [22]** 38/25 39/8 39/24 40/4 40/12 40/14 41/3 41/16 41/17 41/18 42/9 42/9 42/18 42/18 42/23 42/25 43/1 43/12 43/15 43/17 43/19 43/23
**complaints [12]** 38/14 38/22 39/9 44/5 44/16 44/21 45/16 45/17 45/17 46/4 46/8 50/12
**complete [3]** 9/24 67/6 99/20
**completeness [3]** 56/2 56/10 56/16
**completion [3]** 80/9 84/24 86/11
**compliance [5]** 39/22 40/9 45/14 47/14 81/14
**composed [1]** 91/1
**computer [2]** 53/3 60/5
**concedes [1]** 40/25
**conceive [1]** 112/15
**concept [1]** 52/23
**concern [2]** 30/14 42/8
**concerned [6]** 31/25 32/18 68/5 83/2 87/25 88/2
**concession [1]** 75/25
**conclusion [2]** 25/15 26/6
**conclusions [1]** 24/18
**condition [3]** 28/16 28/25 29/15
**conditions [1]** 28/21
**conducted [1]** 106/6
**confer [2]** 55/7 70/10
**conference [7]** 1/11 3/2 4/5 4/23 15/2 51/6 108/13
**conferences [1]** 64/3
**confirm [1]** 103/5
**confirmed [6]** 40/12 40/24 41/4 41/24 42/13 43/12
**conformed [1]** 116/9
**confuse [2]** 20/5 65/14
**confused [2]** 57/14 57/23
**congratulations [1]** 73/2
**Congress [1]** 21/5
**conjunction [2]** 13/24 113/15
**connect [2]** 72/25 73/14
**connected [2]** 36/19 56/18
**connecting [1]** 73/1
**connection [2]** 29/8 37/1
**connective [1]** 78/21
**connects [1]** 73/2

**consent [5]** 17/11 19/9 19/13 27/21 27/22
**consents [1]** 19/16
**consider [5]** 23/16 23/25 24/11 59/25 78/2
**consideration [1]** 64/12
**consistent [2]** 13/9 50/8
**consists [1]** 58/24
**constitutes [1]** 71/3
**construed [1]** 68/6
**consult [1]** 93/10
**consumer [7]** 20/16 38/14 38/21 38/24 39/7 39/9 106/22
**consumers [1]** 98/16
**contact [11]** 72/7 79/22 79/25 80/4 80/18 81/17 83/21 83/24 84/20 90/2 114/24
**contacted [1]** 43/7
**contacting [1]** 96/13
**contained [1]** 66/8
**contains [1]** 96/5
**contending [1]** 97/25
**content [1]** 94/23
**contention [2]** 16/7 73/10
**context [11]** 21/9 22/6 22/7 26/20 47/5 60/13 61/22 67/9 68/9 74/11 75/16
**continue [1]** 71/15
**continues [1]** 20/23
**continuing [1]** 67/3 108/13
**contrary [2]** 21/25 103/24
**Control [1]** 21/22
**conversation [2]** 87/15 109/13
**copies [2]** 61/9 94/16
**copy [11]** 60/23 61/1 61/2 61/6 61/7 61/10 61/12 62/18 69/8 69/22 96/2
**copyright [3]** 21/8 21/11 95/9
**correct [19]** 5/12 19/6 19/14 33/3 33/23 35/21 35/22 51/13 57/21 57/21 65/18 66/12 71/11 91/23 102/13 103/6 103/7 112/5 116/7
**corrected [1]** 57/17
**correctly [1]** 79/19
**corresponded [1]** 93/10
**correspondence [1]** 81/10
**could [24]** 4/7 7/9 7/9 9/5 10/8 14/13 23/3 31/1 31/14 33/7 33/9 34/11 43/10 44/20 46/21 58/5 59/18 79/6 84/9 85/19 85/25 86/6 97/20 102/3
**counsel [29]** 4/7 30/3 30/15 30/22 31/2 32/21 33/8 35/6 35/9 48/10 61/9 61/12 63/15 66/16 73/13 73/18 73/24 74/7 82/11 84/23 86/3 86/21 90/23 93/10 103/22 104/21 108/2 111/3 111/4
**counsel's [2]** 48/10 73/4
**Count [2]** 12/6 15/18
**country [1]** 28/18
**couple [7]** 23/3 31/14 34/2 53/11 67/17 89/3 101/2
**course [13]** 7/19 24/5 24/17 24/25 42/25 59/20 63/20 74/22 85/14 89/25 93/8 93/11 113/14
**court [37]** 1/1 1/14 2/22 4/3 4/7 10/4 10/24 11/3 17/15 20/14 20/24 21/1 21/5 21/7 21/8 21/9 21/10 21/12 21/15 21/15 21/24 22/2 22/4 22/5 22/7 22/19 25/16 26/16 35/5 57/10 59/14 96/11 104/22 108/24 115/5 116/12
**court's [3]** 22/1 111/17 115/1
**Courthouse [1]** 2/22
**courtroom [4]** 96/2 109/8 111/2 114/24
**create [1]** 87/24 108/1
**created [3]** 25/20 68/9 87/10
**credibility [5]** 32/5 32/6 32/9 33/13 34/16
**credit [2]** 21/22 97/25
**criminal [4]** 35/2 54/11 57/7 108/14
**criteria [1]** 15/25
**cross [15]** 5/7 30/7 34/2 54/16 55/2 55/6 55/21 55/22 56/7 56/20 57/12 60/10 69/14 75/1 110/4
**cross-designation [4]** 55/21 55/22 56/7 56/20
**cross-designations [5]** 5/7 54/16 55/2 55/6 57/13
**cross-examination [2]** 30/7 62/10
**cross-examining [1]** 75/1
**crossed [1]** 59/8

**CBR [2]** 2/22 116/12
**cumulative [1]** 92/9
**current [2]** 17/11 19/8
**currently [1]** 74/3
**custody [1]** 35/10
**customer [8]** 41/10 41/23 44/16 44/21 94/2 94/6 94/12 94/19
**customer's [1]** 42/14
**customers [2]** 48/19 93/24
**customers' [1]** 44/5
**cut [1]** 98/6
**cv [1]** 1/5

**D**

**daily [1]** 45/25
**damage [1]** 29/3
**damages [14]** 10/19 10/21 10/22 11/2 11/2 20/20 21/11 21/18 27/16 28/19 28/24 29/11 29/18 29/24
**darn [1]** 54/14
**dashes [1]** 42/21
**database [2]** 90/20 90/20
**date [2]** 94/17 116/12
**dated [2]** 1/6 95/8
**day [10]** 7/14 72/8 72/8 105/22 105/24 107/18 108/10 108/14 113/14
**de [1]** 34/9
**deal [4]** 18/20 33/21 60/16 80/15
**dealing [1]** 57/12
**December [1]** 43/7
**decertified [1]** 113/21
**decertify [1]** 114/4
**decertifying [1]** 113/17
**decide [13]** 5/2 5/3 5/20 5/25 6/7 8/3 20/1 20/8 21/7 22/3 26/12 27/23 59/25
**decided [5]** 8/8 8/9 8/23 11/16 21/16
**decides [4]** 19/21 19/24 21/16 21/17
**decision [9]** 10/13 22/5 24/1 24/6 24/11 24/16 25/2 74/16 106/25
**decisions [1]** 21/15
**declaration [7]** 81/4 81/15 81/25 82/17 82/19 85/1 86/6
**declined [1]** 98/2
**declines [1]** 98/1
**defendant [72]** 1/8 2/7 4/18 4/20 4/21 5/25 7/21 10/18 10/19 12/7 15/8 16/20 18/13 18/19 19/14 20/24 21/5 22/23 23/17 26/25 27/6 27/18 27/21 28/4 28/14 29/6 29/15 30/4 30/23 34/7 35/14 38/7 38/20 44/1 44/17 54/9 54/19 58/1 58/13 58/15 59/15 61/5 62/9 62/14 62/16 64/15 64/22 64/23 69/20 69/25 72/22 74/10 76/15 77/6 77/8 78/5 78/9 78/11 78/25 81/1 82/4 84/3 84/8 87/6 90/12 92/16 93/4 95/14 97/11 98/25 103/20 107/14
**defendant's [27]** 11/19 12/3 14/16 14/17 15/8 15/17 16/7 16/19 16/23 27/13 31/5 35/13 37/14 38/21 47/25 50/24 51/8 51/11 54/12 54/16 58/3 58/8 59/10 59/12 76/23 83/22 93/13
**defendants [2]** 19/10 80/19
**defense [4]** 19/10 20/10 95/19 111/3
**defer [1]** 34/19
**deference [1]** 92/7
**define [6]** 17/15 17/16 17/18 17/20 17/21 95/10
**defined [5]** 17/4 17/13 18/25 76/1 102/21
**definition [12]** 17/17 18/7 18/8 19/7 53/7 53/13 60/24 71/3 75/22 103/8 103/22 104/1
**definitions [4]** 20/10 86/12 103/12 103/13
**deliberate [1]** 110/16
**deliver [2]** 84/4 90/21
**delivered [4]** 39/6 41/1 49/17 85/20
**delivering [4]** 39/1 45/18 49/10 49/11
**demonstrate [1]** 102/5
**denied [2]** 37/12 67/2
**Dennis [6]** 2/22 35/4 57/8 115/3 116/11 116/12
**deny [2]** 47/17 114/2
**department [1]** 45/14
**depends [1]** 23/3
**deposition [31]** 5/7 23/19 23/20 23/23 24/2 54/12 54/16 55/1 55/5 57/13 57/17 57/23 58/8 72/12 72/16 80/25 82/12 83/10 84/10 84/11 84/15 86/14 86/20 97/5 97/14 97/23 98/8 98/8

**D**

**deposition... [3]** 98/11 98/18 98/19
**depositions [1]** 55/18
**deprive [1]** 68/22
**depth [1]** 36/11
**deputy [2]** 96/2 114/24
**derived [1]** 86/24
**describe [3]** 102/6 104/14 104/15
**described [6]** 12/14 43/25 44/18 50/13 97/15 102/24
**describing [2]** 47/2 106/14
**designated [6]** 55/23 56/3 56/5 56/20 59/8 80/25
**designation [10]** 55/21 55/22 56/7 56/8 56/20 57/13 58/3 58/14 58/16 58/19
**designations [11]** 5/6 5/7 54/12 54/16 55/2 55/2 55/6 55/6 57/13 58/8 97/6
**designed [1]** 52/17
**desk [4]** 4/9 51/21 51/22 109/6
**determination [2]** 11/4 29/18
**determine [1]** 19/11
**dial [2]** 53/3 90/22
**dialer [11]** 51/12 51/13 51/15 51/18 52/1 52/3 52/6 52/12 52/24 53/21 73/1
**dialing [3]** 51/18 52/18 53/21
**Dickens [3]** 40/18 41/10 43/7
**Dictionary [2]** 71/2 75/24
**did [30]** 5/22 6/12 10/16 12/8 13/17 14/10 16/25 16/25 17/15 17/15 19/7 25/13 37/6 41/3 48/11 48/11 68/9 69/21 73/7 73/7 73/8 76/15 76/20 86/10 88/6 97/2 100/18 102/10 102/14 104/11
**didn't [22]** 11/7 13/23 17/16 17/18 17/20 17/21 34/1 37/24 37/24 37/25 47/15 54/16 63/24 71/23 72/4 84/4 91/10 92/22 100/22 101/6 101/11 113/13
**difference [1]** 42/12
**different [11]** 12/23 26/6 46/22 53/13 61/2 61/6 94/14 94/15 101/15 109/1 109/2
**digitally [1]** 116/9
**digits [1]** 53/4
**dilute [1]** 56/4
**dire [9]** 15/5 104/22 106/6 106/7 106/9 106/23 108/20 110/19 110/19
**direct [3]** 31/24 35/19 35/20
**directly [1]** 45/17
**dirt [1]** 38/20
**disagree [3]** 16/10 51/19 55/9
**disagreement [1]** 57/2
**discounts [1]** 36/10
**discovery [6]** 68/20 68/24 69/4 94/24 101/21 102/11
**discrepancy [1]** 88/21
**discretion [3]** 21/1 21/9 21/10
**discuss [1]** 55/17
**discussed [1]** 74/8
**discussion [1]** 63/17
**Dish [1]** 21/19
**disposition [7]** 80/9 82/2 86/8 86/11 86/17 86/21 87/19
**dispositive [1]** 101/22
**disputed [1]** 39/2
**disputes [1]** 97/12
**dissatisfaction [1]** 37/16
**distance [1]** 110/11
**distant [2]** 56/8 56/22
**distinctive [1]** 99/9
**DISTRICT [7]** 1/1 1/2 1/14 2/22 21/15 21/21 21/22
**DNC [3]** 44/8 44/11 44/12
**do [149]**
**docket [10]** 9/9 9/25 10/5 11/22 14/18 15/9 17/14 58/7 58/9 104/22
**Docket 215 [1]** 14/18
**document [8]** 42/3 43/25 44/3 44/20 48/13 61/20 84/6 109/22
**documents [8]** 14/23 15/4 51/9 81/16 83/21 85/15 92/1 108/19
**does [34]** 7/21 19/3 20/1 22/2 24/7 25/9 27/9 28/18 28/11 29/4 32/2 36/1 37/18 42/12 42/15 45/9 51/17 57/4 59/14 60/3 61/7 61/24 64/22 70/21 72/21 76/3 76/13 76/15 83/23 87/6 90/11 91/3 114/6

**doesn't [21]** 14/15 16/19 18/6 19/18 28/1 38/5 47/14 50/25 51/7 51/16 53/22 72/7 73/7 74/8 76/9 82/9 82/25 94/2 95/10 95/25 112/3
**doing [7]** 31/23 38/5 73/16 86/19 107/5 112/22 114/17
**don't [101]** 6/23 7/11 8/11 8/18 9/9 9/14 9/21 14/11 14/14 15/21 16/2 19/4 19/11 22/13 23/8 25/18 28/16 31/24 33/13 33/16 33/25 34/6 35/23 36/10 38/10 38/22 39/5 39/7 43/3 43/5 45/6 50/7 51/12 51/22 53/19 58/21 59/20 60/18 60/22 62/2 62/2 63/2 63/6 63/6 64/14 64/25 68/8 68/14 68/16 69/4 69/9 69/15 70/18 72/15 72/18 74/6 74/8 75/21 77/1 77/2 77/19 80/22 80/24 81/24 82/11 82/21 83/3 83/4 84/24 85/15 89/14 90/17 91/3 91/7 93/15 96/1 97/25 99/13 102/8 102/9 103/21 104/11 106/21 107/2 107/3 107/12 108/10 109/11 109/24 110/2 110/4 110/8 110/10 111/12 111/15 112/13 113/24 114/14 114/16
**done [13]** 15/14 23/3 44/23 45/5 67/10 77/24 99/16 99/16 101/25 105/19 108/16 112/15 114/7
**dot [5]** 68/15 68/15 68/15 68/15 68/15
**double [1]** 17/2
**double-check [1]** 17/2
**doubt [2]** 13/21 13/23
**Dovel [2]** 2/4 4/10
**down [6]** 11/25 19/20 29/19 46/5 48/2 82/25
**downgraded [1]** 40/20
**dozen [1]** 91/25
**draft [5]** 15/6 31/13 104/22 105/12 108/19
**drafting [1]** 13/11
**drafts [1]** 114/25
**drift [2]** 16/7 30/10
**dropped [1]** 44/9
**due [1]** 29/12
**Dunn [1]** 2/13
**during [13]** 12/12 12/19 24/25 83/6 94/7 95/15 98/2 102/19 102/24 105/8 111/11 113/14 114/5
**dwell [2]** 36/22 38/1

**E**

**each [13]** 5/5 12/9 12/12 15/19 16/8 20/20 46/4 55/7 70/10 80/6 80/6 89/8 106/8
**ear [1]** 54/6
**earlier [4]** 13/9 46/8 56/13 70/24
**early [1]** 104/24
**earning [1]** 37/7
**easel [1]** 110/24
**easier [2]** 5/16 6/17
**easily [1]** 105/11
**easy [2]** 32/24 54/14
**ECF [1]** 115/2
**effect [1]** 29/25
**efficiency [1]** 23/9
**efficient [6]** 4/25 5/4 22/21 54/21 64/1 70/12
**eight [4]** 47/8 86/18 110/13 110/15
**eight-person [1]** 110/13
**either [14]** 6/2 9/19 18/14 27/24 35/15 61/17 62/23 78/11 82/19 93/4 100/18 102/10 110/17 111/23
**elbow [1]** 109/12
**electronic [2]** 45/8 96/2
**element [1]** 19/7
**elements [4]** 8/15 9/13 14/1 17/25
**eleven [1]** 112/24
**elicit [2]** 30/15 30/23
**eligible [4]** 10/16 11/4 18/11 18/23
**eliminate [1]** 41/15
**else [12]** 23/5 32/1 38/10 52/15 54/7 72/17 81/1 86/25 91/18 107/20 109/7 111/25
**elsewhere [1]** 20/12
**email [33]** 39/19 39/21 40/8 40/9 40/11 42/5 42/21 43/1 43/3 43/4 43/5 43/6 43/11 43/11 45/13 45/15 45/22 45/25 46/5 46/9 46/25 47/2 47/7 47/13 47/17 49/3 51/5 51/6 81/10 104/21 114/25
**emails [3]** 46/24 47/5 50/6
**emergencies [1]** 114/23
**encouraging [1]** 103/17
**end [7]** 7/12 7/14 30/9 72/11 80/8 94/2 110/14

**E**

**English** [1] 94/17
**enjoy** [1] 106/20
**enough** [7] 11/1 56/25 64/4 82/22 91/5 109/17 112/10
**ensure** [1] 51/17
**entered** [4] 68/24 69/1 69/16 73/23
**entertain** [1] 54/8
**entire** [3] 10/10 10/13 71/22
**entitled** [3] 17/22 73/19 116/8
**entries** [1] 88/7
**entry** [1] 58/12
**envisioned** [2] 13/10 14/7
**envisioning** [1] 22/25
**equal** [1] 21/2
**especially** [2] 63/6 110/3
**essentially** [3] 10/10 26/24 79/19
**et** [3] 41/25 42/1 73/8
**et cetera** [3] 41/25 42/1 73/8
**evaluate** [1] 32/4
**evaluation** [1] 32/6
**even** [20] 19/7 20/2 24/13 30/6 33/22 34/1 43/3 48/6 48/14 59/20 74/6 76/7 76/7 78/2 91/4 101/11 102/7 109/17 109/22 111/3
**ever** [2] 106/19 109/11
**every** [9] 8/16 16/8 43/15 43/18 43/19 46/6 67/25 90/18 106/19
**everybody** [11] 53/5 53/12 53/23 57/4 84/16 94/5 109/1 109/2 111/6 114/20 114/25
**everybody's** [1] 111/13
**everything** [16] 8/14 9/17 11/13 14/1 15/21 23/5 38/10 48/10 59/22 75/25 82/10 82/23 87/14 94/20 105/12 108/16
**evidence** [51] 9/18 12/9 19/23 19/24 20/3 20/5 20/8 22/19 23/1 24/10 24/24 25/1 26/17 27/4 27/7 27/20 27/22 28/1 28/10 28/24 29/23 30/25 49/8 50/4 51/9 72/21 72/24 73/13 74/25 75/4 75/8 83/7 83/8 83/12 83/20 83/22 83/24 84/1 84/2 84/13 84/13 85/3 91/9 92/2 96/25 100/16 101/5 101/5 104/7 106/25 114/13
**exact** [1] 73/22
**exactly** [7] 9/17 14/6 48/17 52/18 52/22 70/23 73/4
**examination** [2] 30/7 62/10
**examining** [1] 75/1
**example** [19] 45/21 46/5 46/24 47/7 56/11 67/18 75/16 75/19 80/2 80/10 80/10 89/9 96/8 99/10 100/1 100/3 104/8 104/13 107/13
**examples** [6] 96/5 96/23 97/3 99/5 99/22 100/4
**Excel** [1] 87/20
**Excellent** [1] 7/19
**except** [4] 14/1 108/14 109/19 110/10
**exception** [3] 47/4 56/3 77/1
**exceptions** [4] 15/3 46/23 47/19 54/22
**excerpt** [1] 98/8
**excessively** [1] 38/19
**exchange** [1] 66/16
**exchanging** [1] 48/13
**excited** [3] 47/5 47/20 49/1
**exclude** [2] 26/24 27/20
**excluded** [1] 34/10
**excludes** [1] 18/5
**excluding** [1] 18/15
**exclusion** [1] 47/23
**exclusive** [2] 72/15 73/6
**excuse** [3] 23/6 54/3 106/18
**exhibit** [51] 9/17 39/4 39/13 39/16 44/22 44/24 48/2 49/18 64/20 65/1 65/8 65/9 65/17 65/21 70/1 70/1 70/3 70/5 76/23 76/25 77/8 77/8 77/14 78/22 78/24 79/11 79/14 81/6 81/22 82/5 82/23 83/7 83/16 86/6 86/13 86/24 87/1 87/2 87/17 88/1 88/8 88/10 89/19 90/4 90/12 91/15 92/21 95/21 95/25
**Exhibit 47** [1] 44/22
**exhibits** [51] 5/5 59/10 59/12 59/15 60/14 60/15 64/15 64/16 64/17 64/18 64/19 64/21 64/23 66/23 67/6 68/8 76/14 76/16 77/17 79/5 79/14 79/19 79/21 79/22 80/18 81/11 81/21 83/2 83/5 87/13 88/4 88/12 89/3 89/7 89/15 91/20 92/13 92/13 92/16 93/7 93/13 93/14 93/15 93/18 93/20 94/11 95/19 96/3 96/7 104/17 108/18

**existed** [1] 22/15
**expect** [16] 7/4 9/2 31/6 31/21 31/22 31/24 32/2 77/6 83/7 83/8 92/1 95/15 104/7 105/21 106/18 110/12 111/3 113/24
**expectation** [4] 24/7 29/16 30/7 77/24
**expectations** [1] 33/17
**expected** [1] 11/15
**experience** [1] 108/24
**experts** [1] 83/10
**expired** [1] 98/2
**explain** [19] 6/17 34/12 36/4 36/5 36/18 37/21 37/22 39/24 52/8 67/9 68/12 69/19 70/11 74/11 83/10 99/3 102/10 107/8 110/21
**explained** [1] 13/3
**explaining** [1] 61/6
**explains** [4] 81/1 81/18 85/18 88/15
**explanation** [1] 65/12
**explanatory** [2] 105/15 110/19
**explore** [5] 36/1 36/11 106/12 106/15 106/24
**express** [5] 17/11 19/9 19/13 27/20 27/22
**extent** [7] 16/10 27/23 27/25 39/9 62/3 88/17 114/10
**extrapolation** [1] 74/9
**extremely** [1] 47/6

**F**

**fact** [21] 8/9 8/24 11/16 24/17 31/7 38/4 47/17 49/9 52/21 69/2 69/2 70/7 82/17 87/25 95/14 99/11 100/12 100/13 101/3 102/6 113/21
**factors** [1] 29/20
**facts** [7] 68/19 68/20 69/12 70/13 70/15 105/9 106/10
**factual** [1] 39/25
**fair** [8] 11/1 30/20 68/10 68/22 71/10 74/9 84/8 101/7
**fairly** [2] 70/4 103/14
**fairness** [1] 70/2
**fall** [4] 44/20 47/23 79/22 86/22
**far** [5] 15/6 56/22 94/20 94/25 95/7
**far-along** [1] 15/6
**fashion** [4] 26/9 69/4 69/5 76/12
**fast** [1] 91/20
**FCRR** [2] 2/22 116/12
**feature** [1] 17/8
**featuring** [1] 6/12
**February** [1] 43/2
**February 4th** [1] 43/2
**federal** [2] 21/14 108/24
**feel** [3] 62/20 96/16 101/19
**feels** [1] 21/5
**fees** [2] 30/3 33/8
**Feltner** [1] 21/12
**few** [6] 6/4 12/23 57/1 61/12 63/3 105/14
**fewer** [1] 72/8
**fifth** [4] 2/14 28/15 51/11 54/5
**figure** [1] 108/4
**figured** [1] 64/5
**file** [8] 81/10 96/7 98/10 98/12 98/21 98/24 113/23 113/23
**filed** [2] 41/17 41/18
**filings** [1] 38/13
**fill** [2] 12/21 18/18
**filled** [2] 90/18 94/22
**final** [6] 15/6 24/6 29/19 104/23 105/1 105/12
**financial** [9] 28/16 28/20 28/25 29/14 30/8 30/19 30/24 31/12 32/23
**find** [6] 9/5 24/7 34/4 45/20 47/9 107/13
**findings** [1] 24/17
**finds** [7] 16/17 16/24 19/12 20/24 21/5 21/10 32/10
**fine** [17] 16/18 23/4 25/5 26/8 29/3 35/16 39/10 44/22 58/24 66/3 77/23 91/4 91/6 99/2 109/7 109/8 109/25
**finish** [1] 99/14
**fire** [1] 100/15
**fired** [1] 100/16
**first** [29] 5/1 9/3 21/6 26/21 41/18 41/18 42/5 42/22 42/23 43/17 46/23 46/25 48/4 65/4 65/7 79/13 80/17 82/14 85/14 86/3 89/18 93/7 97/11 100/12 106/1 106/4 106/16 112/2 113/8
**fisted** [1] 58/17
**fit** [1] 75/21

## F

**fits [3]** 60/2 60/3 60/3
**five [6]** 24/22 33/6 46/3 46/6 59/11 59/15
**five o'clock [1]** 24/22
**five-minute [1]** 46/3
**five-minute-long [1]** 46/6
**FL [1]** 2/11
**flights [1]** 108/4
**flip [1]** 46/7
**folder [1]** 96/5
**folks [2]** 57/8 99/13
**follow [6]** 5/16 22/24 34/7 106/8 107/2 107/9
**follow-up [3]** 22/24 106/8 107/2
**followed [2]** 5/5 5/6
**following [7]** 15/25 25/2 57/24 83/25 86/17 96/11 98/10
**follows [3]** 55/23 55/25 96/12
**foot [1]** 97/25
**footnote [7]** 13/3 85/17 85/23 86/4 86/5 86/19 87/2
**for residential [1]** 11/5
**foregoing [1]** 116/6
**form [18]** 11/20 12/3 13/8 13/11 13/12 13/17 13/19 14/3 14/17 15/7 15/7 15/9 15/18 90/18 92/12 104/24 105/10 108/19
**formalizing [1]** 28/23
**former [1]** 45/16
**formerly [1]** 95/22
**forth [9]** 9/21 63/25 80/10 82/12 84/25 85/3 85/5 86/12 87/16
**forward [5]** 18/20 45/15 75/4 76/11 114/22
**forwarded [1]** 46/4
**Foster [2]** 2/10 4/19
**found [3]** 34/17 53/12 88/10
**foundation [26]** 48/9 49/21 61/19 61/21 62/6 62/13 63/1 63/11 63/12 78/2 78/6 78/15 78/17 78/19 78/23 88/14 88/14 88/19 88/23 95/13 95/17 97/15 98/15 101/14 101/17 102/3
**four [2]** 110/16 110/17
**fourth [1]** 28/5 28/11 51/8
**frame [5]** 94/7 94/18 95/4 95/5 95/15
**framework [1]** 30/21
**framing [1]** 14/17
**frankly [10]** 13/10 17/16 18/12 21/18 32/22 41/17 43/2 43/15 55/9 64/16
**Franzini [5]** 2/2 4/10 11/24 14/10 25/13 30/21 69/6 87/15 93/9
**free [1]** 96/16
**freedom [1]** 85/7
**frequently [1]** 49/11
**Friday [5]** 14/24 26/11 55/10 69/23 104/21
**friendly [1]** 76/12
**friends [1]** 37/24
**front [10]** 10/2 10/6 39/18 60/19 62/20 63/7 63/13 68/8 97/3 110/16
**fully [1]** 105/21
**fundamental [2]** 88/20 102/7
**further [7]** 6/23 24/14 25/3 44/1 44/17 55/1 107/21
**fuss [1]** 78/10

## G

**game [1]** 30/20
**gave [3]** 52/21 92/17 94/16
**general [3]** 55/25 56/8 59/22
**generally [3]** 55/21 99/13 111/1
**gentlemen [1]** 104/9
**get [67]** 9/10 18/20 26/9 29/21 31/7 31/21 32/2 32/16 32/19 33/7 33/9 33/21 33/22 34/1 34/11 36/8 36/16 36/21 37/18 37/18 39/7 44/21 45/8 45/9 46/6 46/15 47/15 48/16 50/5 50/20 53/5 54/16 55/10 57/8 59/23 61/10 63/6 67/4 68/8 69/7 75/17 79/6 80/12 82/3 85/16 87/9 90/15 90/16 90/23 98/7 100/8 101/11 101/14 102/8 103/13 104/11 106/2 107/17 108/16 109/4 109/17 110/9 110/10 111/6 111/24 112/24 113/2
**gets [4]** 19/23 19/25 82/20 101/5
**getting [9]** 31/17 32/4 32/18 32/20 36/14 37/7 47/1 51/24 112/6
**Gidley [14]** 39/23 40/9 40/16 41/21 41/24 42/11 45/14 47/14 80/14 81/1 81/4 83/10 86/1 94/5
**Gidley's [10]** 57/16 82/17 82/18 84/10 84/11 84/14 84/25 85/21

86/6 86/20
**give [38]** 6/13 70/17 15/2 19/14 23/10 24/13 35/3 45/7 55/4 56/25 61/11 63/3 63/6 63/7 66/24 69/13 69/21 70/10 74/11 74/14 84/8 85/6 89/10 91/19 92/6 92/14 96/2 96/16 100/7 103/23 105/4 105/6 105/23 105/25 107/7 112/20 112/23 113/19
**given [7]** 13/4 31/9 59/13 88/21 113/24 113/25 114/17
**giving [1]** 53/24
**glad [1]** 104/2
**Global [1]** 21/20
**go [42]** 6/23 8/12 9/10 10/1 11/15 12/15 28/1 31/3 44/12 54/19 54/25 55/5 58/7 63/16 66/1 66/13 67/11 69/5 74/19 77/16 80/6 80/21 82/24 84/21 85/3 85/5 85/23 85/24 86/6 88/17 94/19 95/25 96/14 96/21 101/13 103/12 104/19 105/2 106/19 109/23 110/5 111/24
**goal [1]** 14/24
**God [1]** 48/22
**goes [14]** 25/2 25/16 28/6 28/8 28/24 33/22 56/4 56/22 59/14 73/3 86/16 88/19 95/7 104/18
**going [126]**
**gone [4]** 43/19 43/20 54/11 67/24
**good [17]** 4/12 4/14 4/16 4/17 4/22 12/4 44/10 61/11 64/1 89/5 89/9 91/3 106/3 107/21 111/12 113/1 114/20
**Gosh [1]** 34/11
**got [25]** 17/4 31/14 34/13 36/19 37/4 41/4 41/11 43/24 46/9 46/25 48/22 54/17 60/12 66/5 68/11 76/9 81/12 82/22 87/18 90/1 90/2 93/22 94/25 100/15 103/14
**gotten [1]** 97/20
**grab [2]** 16/12 16/17
**grab out [1]** 16/12
**grabbed [2]** 67/17 70/23
**grabs [1]** 53/23
**graciously [1]** 92/17
**Graham [1]** 2/13
**grant [3]** 27/3 27/25 54/5
**granted [6]** 27/18 30/4 32/9 37/12 38/18 51/8
**great [4]** 77/22 82/9 82/11 90/13
**greater [3]** 18/2 20/20 20/22
**green [1]** 56/14
**grounds [2]** 58/13 91/2
**Group [6]** 50/24 51/1 51/2 51/3 51/3 51/10
**guess [13]** 7/8 9/1 9/3 26/5 28/8 30/14 62/8 76/20 80/24 107/17 112/11 112/15 112/17
**guidance [1]** 56/25

## H

**had [20]** 8/25 17/1 17/10 19/8 26/2 33/20 53/2 63/24 64/17 68/1 68/1 72/6 73/17 75/2 81/10 86/17 87/15 94/23 96/24 100/13
**hadn't [1]** 113/15
**half [3]** 16/17 112/18 112/18
**hallway [1]** 23/7
**hand [5]** 30/9 58/17 69/10 106/19 110/2
**hand-fisted [1]** 58/17
**handle [1]** 95/12
**handled [1]** 95/13
**handy [1]** 11/19
**happen [5]** 30/11 63/23 63/25 83/13 90/14
**happened [6]** 21/19 21/20 21/21 47/3 87/16 92/14
**happens [1]** 31/18
**happy [1]** 96/17
**harassed [1]** 46/10
**harassing [1]** 45/25
**hardships [1]** 108/1
**has [47]** 5/10 7/10 7/15 16/20 16/21 19/1 21/16 24/11 25/5 30/7 30/19 30/24 32/21 33/1 33/18 36/23 41/10 41/23 44/17 44/23 46/4 47/3 49/3 49/8 49/14 53/12 55/17 56/14 57/17 57/22 58/2 62/3 64/16 64/23 67/17 69/11 69/14 70/23 73/13 80/3 88/4 98/2 99/6 100/14 103/11 104/19 111/14
**hasn't [1]** 26/1
**hated [1]** 38/10
**hates [1]** 53/5
**have [178]**
**haven't [5]** 26/2 49/18 49/18 68/14 106/18
**having [3]** 24/17 53/3 70/15

**H**

**he [34]** 40/11 40/11 40/12 41/3 41/22 42/13 42/13 42/16 43/11 48/22 73/14 73/15 73/18 73/19 73/21 73/22 81/13 81/13 81/14 81/15 81/18 81/18 82/1 82/1 83/10 84/11 86/7 86/7 86/15 86/16 86/18 98/10 99/16 112/3
**heading [1]** 90/8
**heads [2]** 75/19 113/19
**heads-up [1]** 75/19 113/19
**hear [20]** 14/11 20/3 24/10 24/15 27/4 28/9 32/3 37/3 38/9 56/15 63/10 74/5 74/7 76/4 77/6 78/1 79/11 88/20 106/11 107/1
**heard [16]** 15/15 25/17 27/9 28/2 28/11 29/4 53/19 53/20 53/22 74/14 76/13 82/9 83/12 99/1 99/2 104/9
**hearing [5]** 1/11 20/7 54/10 62/9 90/24
**hearsay [10]** 46/22 47/9 47/19 62/4 62/25 63/9 77/1 78/2 88/2 88/3
**held [1]** 21/25
**help [3]** 36/20 70/12 109/22
**helpful [2]** 70/9 73/20
**helps [1]** 73/20
**her [44]** 5/11 5/19 6/22 7/1 7/2 10/16 17/20 31/21 31/22 31/24 32/5 32/6 32/18 33/2 33/8 33/17 34/6 34/16 36/19 36/20 36/20 37/4 37/8 37/15 37/21 37/24 37/24 40/13 40/25 41/4 41/9 41/24 44/8 44/11 46/8 46/24 46/25 47/3 47/16 47/16 97/17 101/3 111/15
**here [47]** 4/22 7/1 9/9 10/20 14/22 31/18 33/20 34/3 39/21 46/12 46/24 48/5 49/17 51/25 52/1 52/15 55/21 58/16 58/22 64/2 70/14 74/1 75/16 75/25 80/10 81/4 81/25 82/22 83/1 84/24 85/18 86/15 87/22 88/11 89/7 90/24 92/5 96/15 98/19 100/1 103/9 103/14 108/6 109/10 109/14 109/25 112/3
**herself [2]** 37/7 60/6
**hey [1]** 75/19
**Hi [1]** 96/13
**highlight [1]** 111/22
**highlighted [1]** 101/13
**highlights [2]** 85/18 85/23
**him [6]** 35/12 61/10 69/21 69/22 73/21 99/14
**hinted [1]** 8/1
**his [3]** 10/16 99/14 109/12
**history [3]** 60/5 62/1 92/11
**hit [1]** 48/24
**hold [3]** 10/23 99/13 105/1
**holding [1]** 75/20
**home [3]** 89/24 90/3 90/9
**Honor [147]**
**Honor's [3]** 9/15 59/17 67/15
**HONORABLE [1]** 1/13
**hope [3]** 31/17 34/11 103/8
**hopeful [1]** 105/22
**hopefully [2]** 107/16 112/18
**hoping [2]** 33/21 79/6
**hot [3]** 72/25 73/1 73/13
**hour [2]** 112/18 112/18
**hours [1]** 74/16
**hover [1]** 110/2
**how [72]** 5/8 5/21 6/3 6/14 6/14 6/20 6/23 7/2 7/5 8/3 9/3 12/23 13/10 14/4 15/25 16/12 17/13 17/24 18/13 18/24 19/2 20/9 21/19 21/23 22/3 23/11 28/16 29/9 29/24 31/16 31/20 33/5 34/4 34/12 36/2 36/12 36/19 36/24 38/1 38/2 38/14 38/22 39/24 46/19 49/12 49/21 52/8 55/21 57/3 62/2 62/16 62/20 68/8 68/9 80/3 82/6 82/10 83/5 83/16 87/9 88/15 88/21 90/1 90/2 100/9 109/2 110/18 111/7 111/17 111/19 111/22 111/23
**however [6]** 6/25 35/17 44/8 52/5 56/7 91/4
**human [3]** 53/17 54/4 86/9
**hundred [1]** 64/21
**husband [1]** 37/15

**I**

**I'd [1]** 79/2
**I'll [49]** 6/17 14/23 15/7 16/10 20/19 23/6 23/16 24/9 24/15 24/21 27/6 34/5 55/10 55/20 55/07 61/12 62/16 62/17 63/11 63/20 65/25 77/8 77/9 77/18 77/25 78/2 78/2 78/12 78/21 80/12 82/5 84/8 88/15 96/24 96/2 97/9 98/18 101/13 104/2 106/7
**I'm [98]** 7/8 7/12 13/7 13/10 14/24 18/1 20/2 20/2 25/21 26/11 27/3 27/25 29/1 30/5 30/10 31/25 31/25 32/14 32/18 33/4 35/16 38/9 39/5 39/10 39/17 40/5 44/22 46/10 48/5 49/1 52/11 53/17 54/3 54/4 54/5 54/6 56/5 56/18 57/4 58/21 58/24 59/21 60/4 60/4 60/11 61/25 62/6 62/8 62/9 66/2 66/14 66/17 68/5 68/8 70/19 74/1 74/2 74/3 74/4 74/12 77/5 78/5 78/6 78/10 78/23 82/20 82/24 83/1 83/1 83/14 83/15 84/5 84/6 84/7 85/2 87/25 88/2 88/12 89/11 89/20 90/24 93/12 95/12 99/2 101/14 103/4 104/5 105/22 106/2 106/15 108/1 108/14 108/15 108/24 109/3 113/25 114/4 114/9
**I've [15]** 12/14 15/14 20/13 44/17 53/15 53/19 53/20 60/3 60/12 63/14 63/24 67/15 71/4 99/1 99/1
**i.e [2]** 11/5 11/7
**idea [2]** 34/7 111/12
**identical [1]** 94/10
**identified [5]** 36/23 80/13 81/20 82/18 98/21
**identify [2]** 4/8 100/20
**identifying [2]** 52/19 86/19
**II [2]** 24/24 25/1
**immediately [6]** 47/2 55/23 55/23 55/24 55/25 63/4
**impact [2]** 33/18 56/5
**implicitly [1]** 47/18
**implies [2]** 71/9 76/5
**imply [1]** 52/12
**important [3]** 19/22 43/4 79/14
**importantly [2]** 67/13 92/20
**imposition [1]** 29/10
**impression [4]** 46/23 47/3 47/20 48/22
**inactive [1]** 36/7
**inadmissible [2]** 88/2 88/3
**inappropriate [2]** 78/8 86/23
**INC [3]** 1/7 4/6 95/10
**inclination [2]** 22/17 103/25
**include [3]** 19/7 72/16 73/20
**Included [1]** 94/10
**includes [1]** 18/7
**including [4]** 46/3 81/16 89/24 94/4
**inclusive [1]** 73/6
**increase [4]** 21/1 21/11 21/18 29/24
**independent [1]** 107/5
**INDEX [1]** 3/1
**Indicate [1]** 12/17
**indicated [3]** 8/5 8/6 92/10
**indicates [1]** 86/17
**indication [1]** 52/14
**individual [3]** 5/11 5/17 7/11
**individually [1]** 24/9
**individuals [1]** 17/5
**indulge [2]** 24/19 24/21
**inference [1]** 101/20
**inflame [2]** 52/17 52/23
**inflamed [1]** 48/19
**inflammatory [2]** 36/24 38/4
**information [10]** 40/21 41/13 42/9 42/9 66/8 89/23 90/2 90/5 90/19 94/15
**infuses [1]** 88/2
**insist [2]** 45/25 56/19
**insofar [1]** 23/1
**instance [1]** 78/19
**instead [3]** 8/8 87/14 94/12
**instruct [1]** 107/1
**instruction [2]** 19/17 69/18
**instructions [26]** 7/25 8/1 9/20 15/5 15/6 20/11 52/4 104/23 104/23 104/23 105/1 105/5 105/5 105/6 105/10 105/12 105/15 105/23 106/4 107/17 108/20 108/20 112/12 112/13 112/22 113/3
**insufficient [1]** 9/2
**intend [1]** 113/15
**intended [1]** 13/21
**intending [1]** 30/15
**intention [1]** 44/6

# I

**interest [3]** 30/19 30/24 31/12
**interesting [7]** 28/6 28/18 28/22 29/8 50/19 87/8 91/11
**interests [1]** 96/16
**interfere [1]** 23/9
**Internet [1]** 51/4
**interpret [1]** 21/23
**interrogatories [2]** 49/19 100/19
**interrogatory [3]** 76/23 100/21 102/11
**interrupt [1]** 63/13
**interrupting [1]** 99/14
**intimidate [1]** 110/4
**intrigued [1]** 49/2
**introduce [1]** 104/18
**inventory [1]** 5/1
**investigated [4]** 40/15 41/23 42/11 42/13
**investigating [1]** 42/16
**investigation [1]** 41/2
**invite [6]** 14/25 15/2 63/2 63/15 98/14 109/22
**involved [4]** 36/19 37/4 37/6 37/7
**involves [1]** 106/22
**involving [1]** 21/9
**irrelevant [8]** 26/25 44/12 49/3 58/1 58/18 58/23 59/1 68/18
**is [503]**
**ish [1]** 105/25
**isn't [11]** 15/20 33/22 43/16 48/4 48/14 48/21 53/9 82/17 82/18 87/13 97/19
**issue [45]** 6/4 7/24 8/19 8/22 9/4 9/11 9/14 9/21 11/16 14/2 14/12 14/20 15/9 15/15 15/17 19/18 19/21 22/11 22/20 23/15 25/3 25/21 25/23 26/18 26/22 27/1 27/2 28/2 28/24 28/24 34/14 35/25 39/3 42/13 44/12 54/20 55/16 59/24 61/21 61/22 64/9 68/4 79/23 92/9
**issues [10]** 23/22 24/3 25/20 26/16 32/15 36/15 39/25 51/12 52/1 113/20
**issuing [1]** 24/17
**it [422]**
**it's [13]** 8/14 20/8 20/12 22/6 27/18 33/10 40/2 46/23 49/3 56/8 67/6 74/3 101/10
**its [9]** 17/10 19/8 21/1 21/9 21/10 29/25 40/9 74/10 114/11
**itself [3]** 44/24 73/6 80/22

# J

**J2 [1]** 21/20
**Jacobson [9]** 2/3 4/15 45/1 89/4 89/5 91/20 93/21 99/20 102/9
**Jacobson's [1]** 101/17
**Jake [1]** 111/2
**January [2]** 40/17 41/21
**January 26th [1]** 41/21
**January 26th at [1]** 40/17
**Jerry [1]** 109/11
**Jim [1]** 96/13
**John [5]** 2/7 4/17 57/23 57/24 58/11
**join [3]** 51/4 51/6 63/16
**joined [1]** 36/20
**Jonas [2]** 2/3 4/15
**Josh [1]** 41/22
**jot [1]** 78/6
**judge [81]** 1/14 16/6 17/3 18/25 19/15 19/21 20/12 21/3 23/1 24/20 25/12 29/7 29/16 30/1 30/5 30/11 31/14 35/8 36/25 38/12 44/3 48/1 48/4 48/9 48/13 48/16 48/20 49/16 51/3 52/16 58/5 60/2 60/3 60/8 60/12 61/8 64/9 64/25 65/10 65/20 65/23 66/9 66/20 67/6 67/10 67/13 68/10 68/13 70/18 70/25 72/24 74/16 75/13 76/10 76/18 78/13 79/4 82/6 82/15 82/21 84/17 90/13 90/18 90/22 91/8 91/23 92/3 92/9 92/20 93/1 93/16 95/9 95/18 97/11 98/23 99/12 99/19 101/10 103/21 107/23 114/8
**judges [1]** 63/25
**judgment [3]** 91/13 114/2 114/12
**judicial [1]** 48/7
**Julien [2]** 2/3 4/12
**jump [3]** 73/9 74/7 76/7
**juries [2]** 63/25 107/6
**jurisdiction [1]** 68/17

**jurors' [1]** 106/12
**jury [60]**
**jury's [3]** 64/1 64/12 70/13
**jury-friendly [1]** 76/12
**just [68]** 12/23 15/10 16/7 17/1 21/25 23/18 25/19 28/16 29/7 33/16 33/20 36/4 36/24 37/1 38/2 38/22 40/12 40/24 41/24 42/24 42/25 44/4 44/18 45/7 46/9 46/25 47/16 47/17 48/2 48/10 48/22 48/23 53/1 53/10 53/23 59/21 65/11 68/17 69/10 73/3 73/5 73/15 74/12 75/19 79/11 81/2 82/9 82/21 86/21 87/12 87/13 90/23 92/11 93/24 94/2 98/17 100/7 101/11 103/11 104/9 104/18 104/19 110/9 111/13 112/9 113/19 114/10 114/16
**Justin [1]** 72/12

# K

**KCC [4]** 87/21 87/23 88/1 88/7
**keep [7]** 51/22 54/6 66/2 66/4 91/15 107/11 114/10
**Kelly [4]** 40/18 40/18 41/9 41/10
**Kennedy [1]** 2/11
**kept [1]** 93/4
**keyboard [1]** 48/24
**kind [4]** 48/25 52/20 52/25 53/10
**kinds [1]** 113/20
**knew [2]** 26/22 27/5
**know [46]** 9/14 12/11 17/23 21/24 22/13 23/20 31/6 31/25 32/20 33/4 33/7 33/17 37/23 33/25 34/6 42/16 49/12 53/19 54/24 61/16 61/20 62/2 64/22 67/1 68/8 68/13 68/14 69/18 69/23 70/18 74/13 74/13 77/4 80/22 80/24 82/16 84/24 90/3 94/25 99/8 100/9 103/21 105/5 108/11 109/11 110/13 111/17
**knowing [5]** 20/6 22/18 23/22 27/1 104/18
**knowingly [18]** 20/4 20/6 20/24 21/6 21/17 24/1 24/3 24/12 25/16 26/16 54/25 55/7 59/14 60/1 77/18 77/20 104/19 114/1
**knowledge [6]** 27/2 28/7 28/10 54/20 86/10 86/16
**known [3]** 5/12 53/2 72/25
**knows [1]** 99/6
**Krakauer [1]** 21/19

# L

**label [1]** 5/15
**lack [5]** 54/20 54/20 63/1 78/1 106/13
**Ladies [1]** 104/9
**laid [2]** 95/14 98/15
**landline [16]** 5/19 5/20 5/21 5/22 6/2 8/7 8/18 8/22 9/20 11/5 11/15 12/10 14/2 16/25 18/15 18/22
**landlines [2]** 12/18 14/4
**language [2]** 43/13 67/18
**large [1]** 29/11
**last [7]** 10/14 16/7 25/8 46/9 53/11 80/21 113/25
**later [7]** 26/10 27/25 43/3 63/18 67/14 81/21 104/21
**Laun [1]** 58/11
**Laun's [2]** 57/23 57/24
**law [11]** 22/10 22/10 22/12 22/14 22/15 24/18 91/13 106/25 114/2 114/12
**lawyer [6]** 31/21 83/4 106/7 109/8 111/5 111/6
**lawyers [3]** 68/14 78/25 109/3
**lay [3]** 49/21 62/13 63/12
**lead [1]** 98/17
**leading [1]** 31/15
**learn [2]** 83/25 102/11
**learned [1]** 113/15
**least [7]** 8/6 12/9 15/9 21/24 22/15 33/11 33/21
**leave [4]** 63/11 106/2 109/23 114/2
**leeway [1]** 38/18
**left [8]** 5/2 5/14 5/17 40/13 40/25 41/4 41/24 42/14
**legal [7]** 29/23 29/25 39/22 40/10 53/15 71/3 113/20
**legible [2]** 60/22 60/25
**length [1]** 109/15
**less [3]** 10/19 35/2 112/17
**let [71]** 10/1 11/10 17/2 20/2 20/9 20/13 26/14 30/21 31/6 31/7 31/21 34/12 39/6 41/12 42/18 46/15 52/11 54/11 54/23 58/5 60/11 60/11 60/24 61/11 62/19 63/20 65/25 67/3 68/7 69/23 71/12 72/21 74/4 74/12 74/12 74/13 76/14 77/16 80/17 82/4 83/14 83/15 84/5 84/7 85/2 85/4 86/3 91/8 92/4 92/13 93/11 93/15 95/15 98/6 98/11 98/18 98/20 99/3 99/14 100/7 100/8

**L**

**let...** **[10]** 102/15 103/5 107/9 107/12 109/2 109/3 111/10 112/14 114/13 114/18

**let's** **[29]** 12/2 12/16 16/12 16/17 16/25 18/2 24/23 26/19 31/15 32/2 35/13 48/3 50/20 57/6 59/10 61/21 66/13 71/6 73/5 78/15 92/5 92/11 95/21 100/8 107/20 108/12 108/16 111/5 112/23

**letters** **[1]** 43/20

**liability** **[9]** 7/9 10/18 16/19 17/22 17/25 18/3 18/6 18/19 24/8

**liable** **[1]** 18/19

**lick** **[1]** 48/11

**light** **[3]** 56/11 56/13 56/15

**like** **[53]** 4/24 7/7 7/14 14/20 15/3 15/8 23/25 37/13 38/13 43/20 45/2 45/5 47/8 48/13 48/23 49/6 50/12 51/18 52/4 53/19 61/20 61/23 63/1 63/21 67/22 68/14 68/17 78/4 78/9 82/3 83/18 84/12 84/23 86/8 86/9 87/9 89/18 91/1 92/13 93/7 93/15 96/4 96/21 97/20 98/23 99/13 99/15 100/14 101/11 103/11 104/24 105/2 108/7

**likely** **[7]** 32/11 93/12 111/4 113/1 113/10 114/1 114/9

**limine** **[30]** 5/4 26/19 26/21 26/24 27/3 27/15 27/19 28/5 28/12 28/15 30/3 30/17 31/4 34/21 35/13 37/14 38/12 38/21 44/5 44/16 48/18 50/21 50/21 50/24 51/8 51/11 52/16 52/21 53/6 54/5

**limitations** **[1]** 104/11

**limited** **[4]** 17/1 38/9 84/2 97/18

**limits** **[1]** 27/6

**line** **[27]** 6/3 8/4 8/4 12/10 17/19 18/5 18/5 18/6 18/7 18/9 18/10 23/25 41/16 43/1 43/15 44/7 44/11 57/18 57/20 57/25 58/12 58/12 58/23 58/23 82/21 90/10 97/17

**lines** **[10]** 12/19 14/5 17/1 18/16 41/16 41/18 42/22 43/16 54/18 57/25

**linked** **[1]** 81/10

**list** **[19]** 44/8 44/13 55/8 68/11 70/10 71/13 74/11 80/6 80/7 86/22 87/23 88/1 88/1 88/7 88/9 92/18 92/23 95/21 95/25

**listed** **[2]** 81/22 86/19

**listen** **[7]** 24/5 25/7 34/5 97/20 99/7 100/5 105/6

**listening** **[1]** 24/24

**lists** **[10]** 72/7 79/22 79/25 80/4 80/18 83/21 83/25 84/20 86/18 92/21

**literally** **[1]** 73/5

**little** **[9]** 15/10 15/11 50/10 57/12 63/17 77/22 92/10 109/13 112/20

**live** **[13]** 9/21 23/4 23/5 23/7 23/11 43/21 43/23 52/10 53/17 53/18 54/4 73/3 82/12

**LLP** **[4]** 2/4 2/7 2/10 2/13

**lobbing** **[1]** 29/8

**logarithm** **[1]** 57/17

**long** **[8]** 46/3 46/6 50/7 56/23 63/6 111/9 113/25 114/18

**look** **[41]** 8/12 12/2 13/11 15/7 20/9 22/2 26/2 39/13 39/14 45/19 45/21 46/25 47/13 48/21 50/6 58/11 58/14 65/4 68/16 70/24 71/5 73/5 75/13 76/11 78/12 78/18 79/21 81/25 89/18 90/4 90/7 91/20 92/5 92/7 93/7 94/14 97/24 98/1 99/10 114/3 114/22

**looked** **[5]** 12/3 20/13 22/4 40/11 41/3

**looking** **[7]** 12/6 39/17 40/5 44/15 47/7 75/18 107/5

**looks** **[10]** 21/4 43/20 66/19 78/3 78/7 78/9 82/7 103/7 103/11 108/7

**LORI** **[1]** 1/4

**lose** **[2]** 15/21 25/24

**losing** **[1]** 25/22

**loss** **[1]** 20/21

**lot** **[7]** 15/8 19/23 19/24 23/20 54/17 78/20 92/6

**lots** **[1]** 100/9

**loud** **[1]** 23/24

**low** **[1]** 100/25

**Luner** **[2]** 2/4 4/10

**M**

**machine** **[28]** 40/13 40/25 41/5 41/25 42/14 46/6 49/10 49/13 49/15 49/22 50/3 52/6 52/7 72/6 72/9 79/23 80/3 80/5 80/6 80/8 80/10 80/11 80/16 80/22 80/23 82/16 82/16 86/8

**machines** **[1]** 41/1

**made** **[19]** 6/4 6/20 6/22 7/1 7/1 7/3 7/4 9/19 15/24 17/6 17/12 17/22 18/4 25/2 36/9 56/13 73/15 80/15 103/16

**mail** **[4]** 46/4 46/6 86/17 102/3

**mails** **[1]** 59/12

**main** **[1]** 84/23

**maintain** **[2]** 66/11 66/22

**make** **[51]** 5/15 15/10 15/12 23/7 23/13 24/1 24/9 24/14 24/16 29/22 29/23 30/11 31/16 35/9 37/25 38/5 42/10 42/12 45/7 52/7 52/13 59/24 62/17 62/23 63/3 63/21 64/1 68/1 70/1 70/12 73/9 73/15 73/21 73/22 74/16 76/5 78/3 78/19 81/14 88/15 91/10 91/12 91/13 91/25 101/25 107/3 107/4 107/11 107/12 113/3 113/20

**makes** **[4]** 5/9 13/20 52/9 70/25

**making** **[9]** 24/5 24/11 46/14 52/9 73/21 83/2 106/3 113/1 114/14

**Management** **[1]** 86/13

**Manager** **[2]** 53/2 99/24

**manipulated** **[2]** 78/8 88/4

**Manitoba** **[1]** 48/8

**manner** **[4]** 31/15 68/6 82/13 97/15

**Manual** **[1]** 86/13

**manually** **[1]** 53/4

**many** **[19]** 5/21 6/3 6/14 6/14 6/20 7/2 7/5 14/4 16/1 16/11 16/12 16/12 16/12 17/24 18/13 33/5 61/9 63/24 72/25

**margin** **[1]** 94/17

**mark** **[1]** 79/2

**marked** **[8]** 58/2 58/15 60/3 64/14 64/17 64/19 64/20 92/12

**market** **[1]** 71/5

**marketing** **[12]** 35/19 35/21 71/1 71/1 75/24 76/3 76/8 80/15 81/19 94/1 98/1 102/24

**marks** **[1]** 47/8

**Mary** **[10]** 34/22 35/10 45/8 61/1 62/18 108/7 111/13 111/18 111/22 115/4

**Maryland** **[1]** 21/21

**massive** **[1]** 87/18

**Maston** **[2]** 2/7 4/17

**material** **[3]** 14/16 49/9 100/12

**materials** **[1]** 35/18

**matter** **[13]** 35/2 46/22 47/11 54/11 57/7 62/4 82/17 91/13 108/11 108/12 108/14 114/2 114/12

**may** **[60]** 5/15 11/24 14/19 15/15 16/6 18/10 18/19 20/20 21/1 21/10 22/21 22/24 26/18 27/23 28/25 29/9 30/6 30/9 30/10 32/1 32/5 34/11 34/14 35/17 39/9 42/4 45/10 45/12 49/6 51/9 55/16 60/19 61/21 61/21 63/4 63/11 63/15 64/2 65/14 73/11 74/7 74/20 75/17 83/9 88/17 88/20 92/15 92/25 93/1 93/10 96/8 96/10 99/2 101/21 104/13 104/14 104/15 107/1 108/3 109/17

**maybe** **[11]** 9/8 32/1 35/7 56/17 58/17 65/13 82/23 104/20 110/12 110/24 111/6

**me** **[118]**

**me just** **[1]** 100/7

**mean** **[7]** 16/19 65/2 76/4 83/11 84/24 86/15 102/2

**meaning** **[2]** 73/16 86/10

**meaningful** **[1]** 32/11

**means** **[23]** 6/18 21/13 58/2 66/10 70/4 72/17 74/5 78/19 79/1 79/2 80/11 80/23 80/23 80/24 81/2 83/12 85/2 103/15 105/25 110/6 112/19 112/21 112/22

**meant** **[1]** 56/14

**meet** **[1]** 19/16

**meets** **[2]** 47/3 47/4

**member** **[18]** 6/3 8/16 10/15 11/4 15/19 15/20 16/9 32/10 33/2 36/15 36/16 40/14 41/4 48/5 49/2 49/4 49/22 93/25

**member's** **[1]** 12/10

**members** **[19]** 7/3 7/4 8/8 9/2 9/5 12/7 13/4 15/24 16/24 36/5 70/14 75/7 79/24 89/23 89/24 96/24 97/1 97/4 98/16

**members'** **[1]** 12/18

**memory** **[1]** 109/21

**mentioned** **[1]** 95/4

**message** **[12]** 12/12 12/20 14/6 39/7 51/5 97/14 97/16 97/21 97/21 100/10 101/12 102/3

**messages** **[21]** 6/2 39/2 40/13 40/24 41/1 41/4 41/24 42/14 44/8 45/18 47/15 49/10 49/15 54/2 75/18 96/6 96/23 97/12 100/5 102/19 102/19

**MICHAEL** **[1]** 1/13

**microphone** **[1]** 111/14

**mid** **[4]** 105/22 105/24 105/24 112/23

# M

**mid-day [3]** 105/22 105/24 105/24
**mid-morning [1]** 112/23
**middle [1]** 84/9
**might [12]** 4/25 29/25 32/1 33/22 36/16 37/6 61/18 63/3 63/23 93/9 101/6 106/12
**MIL [1]** 32/9
**Miller [1]** 2/13
**millions [1]** 52/24
**mind [6]** 13/21 26/9 26/19 59/9 76/21 107/12
**mine [2]** 61/1 61/8
**mini [2]** 106/9 107/3
**mini-opening [1]** 106/9
**minimal [1]** 32/8
**minimis [1]** 34/9
**minimum [2]** 31/8 110/14
**minute [4]** 35/7 46/3 46/6 60/12
**minutes [8]** 12/24 35/3 38/1 57/7 61/12 106/8 112/11 113/6
**misrepresents [1]** 54/7
**missing [3]** 40/21 58/16 78/20
**mistake [1]** 56/13
**misunderstanding [1]** 58/4
**misunderstood [2]** 26/23 27/5
**misuses [1]** 54/8
**mobile [2]** 9/19 90/10
**model [1]** 69/18
**moderately [1]** 110/19
**modifications [1]** 19/1
**modify [1]** 72/19
**moment [11]** 10/11 11/18 47/9 66/13 66/24 89/9 89/10 91/19 96/9 96/9 108/3
**moments [1]** 6/5
**Monday [9]** 15/1 15/2 15/14 55/11 107/21 108/6 108/13 110/18 114/23
**monetary [1]** 20/21
**money [6]** 18/20 31/18 32/18 36/21 37/2 37/25
**Monica [2]** 2/4 2/5
**months [3]** 7/24 8/17 53/11
**moot [1]** 23/18
**more [40]** 5/18 6/25 14/13 15/11 15/11 21/2 24/19 32/16 32/19 36/17 42/15 47/12 50/11 50/14 50/16 50/18 54/17 63/3 63/10 64/16 67/13 72/8 72/22 73/4 76/2 76/12 77/22 78/5 84/1 84/2 88/20 89/3 91/24 94/25 96/17 106/14 110/18 112/18 113/5 114/7
**Moreover [1]** 48/9
**Morgan [3]** 39/22 40/17 41/22
**morning [5]** 4/24 105/21 112/6 112/23 113/9
**most [15]** 4/25 5/4 5/9 70/12 93/11 102/7 108/14 109/23 111/4 113/1 113/9 113/23 114/1 114/9 114/15
**mother [7]** 36/19 36/20 36/20 37/2 37/2 37/4 37/8
**motion [27]** 27/3 27/18 27/19 28/5 28/11 28/15 30/3 30/17 31/4 37/14 38/12 38/21 44/4 44/16 48/18 50/21 50/24 51/8 51/8 51/11 52/16 52/21 53/6 54/5 67/16 113/17 114/4
**motions [7]** 5/4 26/19 26/21 34/21 35/13 50/21 113/16
**move [2]** 110/9 111/10
**moved [1]** 67/1
**moves [5]** 26/24 27/15 27/19 35/14 92/1
**moving [2]** 113/9 114/11
**Mr [3]** 45/1 86/1 108/23
**Mr. [32]** 11/24 14/10 25/13 30/21 39/23 40/9 42/11 45/14 47/14 64/5 69/6 80/14 81/1 81/4 82/17 82/18 85/21 86/6 86/20 87/15 89/4 89/5 91/20 93/9 93/11 93/21 94/5 99/20 101/9 101/17 102/9 111/2
**Mr. Franzini [7]** 11/24 14/10 25/13 30/21 69/6 87/15 93/9
**Mr. Gidley [8]** 40/9 42/11 45/14 47/14 80/14 81/1 81/4 94/5
**Mr. Gidley's [5]** 82/17 82/18 85/21 86/6 86/20
**Mr. Jacobson [6]** 89/4 89/5 91/20 93/21 99/20 102/9
**Mr. Jacobson's [1]** 101/17
**Mr. Jake [1]** 111/2
**Mr. O'Neal [3]** 64/5 93/11 101/9
**Mr. Scott [1]** 39/23
**Ms [1]** 38/5

**Ms. [19]** 6/10 6/13 6/14 6/18 6/20 7/10 7/11 12/8 31/24 36/19 37/3 37/5 37/20 38/3 43/7 48/15 56/7 62/10 101/1
**Ms. Dickens [1]** 43/7
**Ms. Schappert [2]** 47/15 50/7
**Ms. Wakefield [13]** 6/10 6/13 6/14 6/18 6/20 12/8 36/19 37/4 37/5 37/20 38/3 62/10 101/1
**Ms. Wakefield's [3]** 7/10 7/11 31/24
**much [11]** 29/24 31/16 31/20 33/9 34/11 71/2 78/5 78/10 96/18 102/4 104/11
**multilevel [1]** 35/19 35/20 93/25
**multiple [7]** 29/9 29/11 38/14 46/10 67/5 91/1 93/23
**must [4]** 61/8 102/1 108/21 108/25
**my [82]** 7/19 8/20 9/3 10/5 11/3 11/14 13/7 13/8 13/9 13/21 14/23 15/5 15/5 15/6 15/7 15/10 19/17 20/13 22/17 24/4 24/7 24/11 25/22 26/9 28/8 29/16 30/14 42/8 46/6 48/19 48/22 53/16 54/10 54/13 54/24 55/25 56/6 56/8 56/23 56/23 57/2 58/17 59/8 59/22 62/1 61/12 61/15 61/17 62/8 62/18 62/20 66/1 68/18 77/15 77/24 78/3 78/11 82/8 86/9 86/16 88/15 92/23 95/21 96/1 98/25 101/24 103/25 104/1 104/22 105/4 105/12 106/23 107/17 108/19 108/24 109/10 110/19 112/10 112/17 113/13 113/23 114/24
**myself [4]** 11/10 76/7 102/13 114/1

# N

**name [3]** 80/3 106/13 106/14
**names [5]** 16/12 16/12 81/20 87/19 96/7
**narrative [3]** 38/11 82/9 90/13
**narrowing [1]** 48/2
**Nash [1]** 2/13
**national [2]** 75/20 98/4
**nature [1]** 10/14
**near [1]** 109/12
**necessarily [2]** 95/10 95/11
**necessary [2]** 70/3 100/24
**need [58]** 5/3 8/15 8/18 10/20 14/11 14/14 17/23 18/12 19/11 20/8 23/23 34/15 35/3 36/5 36/18 37/18 37/21 37/21 38/2 42/15 42/16 43/3 43/5 43/10 44/10 52/8 52/15 55/4 56/17 59/20 60/18 63/10 64/12 65/14 69/9 69/15 77/22 77/25 88/14 88/23 89/14 92/6 92/7 95/17 102/13 104/16 105/17 108/11 108/13 109/20 110/1 110/5 110/8 110/10 110/14 113/12 114/24
**needed [2]** 8/1 9/13
**needs [9]** 5/2 6/7 36/12 44/12 61/5 85/23 86/1 90/25 114/7
**neither [4]** 17/10 19/8 37/15 73/5
**network [2]** 21/19 106/17
**neutral [1]** 106/14
**never [4]** 67/12 76/20 94/25 95/2
**new [2]** 34/7 45/7
**next [14]** 4/23 11/17 14/9 26/12 43/11 46/5 57/7 96/3 103/3 103/10 104/24 105/3 105/16 111/24
**Nicholas [2]** 2/13 4/21
**no [78]** 6/22 8/18 8/18 8/18 12/13 12/16 13/14 13/20 15/25 25/5 25/10 25/18 25/20 26/10 27/6 28/13 28/24 29/5 30/9 32/7 32/16 32/25 33/20 34/8 35/14 35/16 35/23 37/10 37/12 44/4 44/7 44/17 48/9 49/19 49/19 50/13 51/14 56/24 57/18 61/19 63/12 63/14 64/23 65/9 65/16 65/20 66/20 68/5 73/18 74/4 74/6 74/24 75/5 75/8 76/18 77/6 77/9 80/23 80/23 85/25 86/8 86/17 97/21 100/22 102/17 103/21 104/5 104/14 104/20 107/15 109/1 109/8 110/13 112/5 112/17 112/18 113/7 113/12
**no one [1]** 35/14
**No. [12]** 12/8 50/21 50/24 65/1 65/20 65/21 66/25 67/4 67/8 67/14 70/10 77/16
**No. 1 [3]** 66/25 67/4 77/16
**No. 2 [4]** 65/1 67/8 68/7 74/10
**No. 3 [2]** 50/21 65/20
**No. 4 [2]** 50/24 65/21
**nobody [4]** 19/1 22/4 57/21 111/9
**non [3]** 45/4 49/22 112/9
**non-class [1]** 49/22
**non-willfulness [1]** 45/4
**non-zero [1]** 112/9
**nonresidential [1]** 8/4
**noon [1]** 112/20
**North [1]** 2/8

**N**

**not [193]**

**note [7]** 20/9 21/7 21/14 22/9 30/12 35/17 90/15

**nothing [9]** 28/8 28/14 38/3 41/14 49/20 54/24 77/13 86/25 105/19

**notice [6]** 48/7 74/15 84/8 87/22 87/23 88/1

**noticed [1]** 70/2

**notification [6]** 41/19 41/19 42/23 42/24 43/17 43/18

**now [52]** 7/13 7/20 16/19 19/20 21/4 22/18 23/23 28/9 28/23 33/4 35/13 44/3 54/24 57/6 58/11 59/13 59/21 61/18 62/19 64/16 64/22 65/8 65/10 65/12 67/24 68/22 69/22 70/15 70/18 72/11 72/19 73/16 73/19 73/21 74/7 74/10 74/17 75/21 76/13 77/15 77/22 78/11 80/22 83/18 84/12 91/18 95/3 97/7 98/12 98/20 98/24 113/22

**NST [1]** 98/4

**number [28]** 7/1 12/17 12/21 16/17 18/1 18/3 18/18 18/18 18/22 19/12 21/14 44/8 44/11 45/15 47/17 48/5 70/13 73/2 79/12 80/3 80/6 80/7 83/21 85/24 90/9 90/10 93/21 97/18

**numbered [1]** 65/8

**numbering [1]** 93/5

**numbers [20]** 13/5 23/25 48/24 53/3 53/22 70/24 87/1 87/3 87/7 87/19 88/8 88/10 88/22 89/12 89/24 89/25 90/4 90/9 90/22 93/14

**numerous [1]** 100/6

**O**

**o'clock [3]** 24/22 107/18 112/24

**O'Neal [6]** 2/7 4/17 64/5 93/11 101/9 108/23

**oath [1]** 81/5

**object [7]** 26/6 44/23 62/15 71/16 79/2 93/17 104/1

**objected [2]** 99/6 103/22

**objecting [1]** 91/2

**objection [60]** 14/16 22/23 25/5 25/6 30/13 37/9 50/14 50/15 57/18 60/21 61/13 61/17 61/18 61/19 61/24 62/23 62/24 62/25 62/25 62/25 63/2 63/8 63/9 63/9 64/13 64/24 64/25 65/9 65/16 65/20 66/20 67/3 67/4 71/13 74/6 74/7 76/6 76/7 76/16 76/19 76/20 77/7 77/9 77/9 77/19 77/25 78/1 78/1 79/3 82/5 82/8 84/23 85/11 85/14 85/16 90/12 91/4 93/3 97/10 99/1

**objections [27]** 5/6 9/17 15/3 44/1 54/9 54/12 54/15 57/2 58/8 59/11 60/18 61/16 62/22 63/12 63/14 66/1 66/2 66/11 66/22 69/24 78/20 96/4 96/21 98/14 103/12 104/25 108/19

**objects [3]** 58/1 58/13 59/13

**obvious [1]** 109/11

**obviously [6]** 8/14 25/2 30/19 39/5 52/11 87/25

**odd [2]** 66/15 66/20

**off [7]** 13/2 13/24 48/19 63/16 63/17 96/14 105/1

**offer [13]** 60/16 62/15 77/5 77/7 77/8 77/11 77/11 77/25 83/6 83/7 84/12 96/14 98/17

**offered [4]** 36/10 46/21 60/17 88/12

**offering [6]** 85/8 96/14 98/3 98/7 98/7 99/5

**offers [1]** 93/4

**office [1]** 95/1

**officer [2]** 39/22 40/10

**official [2]** 104/21 116/12

**often [1]** 63/23

**Oh [9]** 29/13 41/10 48/11 48/22 56/12 65/7 66/17 107/20 109/1

**okay [37]** 14/10 14/15 16/18 18/20 26/4 35/6 39/18 43/9 43/14 43/21 45/10 51/7 57/6 57/19 57/22 59/6 59/10 60/7 65/16 66/7 67/22 68/25 74/17 76/11 76/24 79/25 82/4 84/18 89/2 90/11 91/6 91/11 91/24 102/16 107/16 107/25 109/24

**omitting [1]** 50/25

**once [5]** 63/24 77/10 77/24 85/3 88/18

**one [83]** 5/18 6/10 6/11 6/25 7/8 7/24 8/1 11/18 12/9 14/20 15/15 15/17 21/24 22/25 29/1 29/7 32/7 33/5 34/19 35/14 36/21 38/24 40/1 45/21 47/12 49/25 53/9 53/22 56/3 57/14 62/24 66/10 66/13 66/24 67/6 67/15 67/19 67/21 67/21 67/23 68/1 69/15 70/8 70/19 70/20 70/24 71/6 71/21 72/5 72/6 74/20 79/13 79/18 80/2 82/18 83/3 83/4 84/22 85/16 87/18 87/19 89/9 89/10 91/2 93/10 94/16 94/17 96/8 96/9 98/2 98/2 99/6 100/2 102/15 103/6 104/3 106/7 107/18 111/5 111/6 112/2 112/14

**ones [8]** 80/13 80/14 86/19 94/25 98/17 99/5 100/14 100/23

---

**opline [1]** 94/9

only [45] 6/22 8/15 17/22 18/21 19/25 20/1 20/3 20/5 22/20

**only [45]** 6/22 8/15 17/22 18/21 19/25 20/1 20/3 20/5 22/20 23/21 24/2 25/11 25/21 26/16 28/24 30/5 37/6 38/25 44/20 54/24 55/7 57/14 58/22 59/11 59/14 64/9 70/21 71/9 71/24 72/8 73/7 73/8 73/18 74/5 74/24 77/17 77/20 80/6 94/16 95/24 96/1 97/13 97/24 99/12 109/10

**oOo [1]** 116/4

**open [9]** 4/3 10/4 57/10 96/11 103/4 107/12 108/14 108/15 112/9

**opening [22]** 54/7 79/7 82/23 83/3 83/15 83/18 83/19 84/6 84/8 104/6 104/10 104/12 104/13 104/14 106/1 106/9 107/3 111/11 111/16 112/13 112/14 113/6

**openings [5]** 112/17 112/20 112/21 113/4 113/9

**operations [1]** 35/15

**operator [3]** 67/23 73/3 73/3

**opinion [2]** 13/8 85/17

**opponent [1]** 47/23

**opportunities [1]** 37/17

**opportunity [11]** 7/8 7/17 8/25 15/14 24/13 26/2 29/21 37/6 45/3 63/19 84/3

**oppose [3]** 27/18 50/25 51/7

**opposed [4]** 30/4 52/10 53/3 94/22

**opposing [3]** 30/14 61/9 84/23

**orally [1]** 24/15

**order [24]** 8/5 8/21 9/6 9/15 10/5 13/1 13/9 13/9 13/21 13/25 16/7 30/25 32/4 55/17 62/1 67/10 67/12 68/5 68/18 70/11 72/20 90/25 92/16 102/5

**ordered [1]** 60/6

**ordering [1]** 35/16

**orders [2]** 69/9 69/16

**OREGON [2]** 1/2 1/7

**organization [1]** 94/1

**original [7]** 41/17 41/18 42/23 43/17 92/15 103/13 116/8

**other [40]** 7/2 7/3 7/4 7/4 10/17 23/19 29/2 30/9 30/10 30/17 36/10 36/15 38/21 42/20 43/18 51/11 55/8 56/24 63/5 69/1 70/10 74/17 74/25 75/8 75/12 75/21 76/14 77/14 83/19 89/8 94/1 97/19 98/14 100/5 100/20 108/11 108/15 109/19 110/22 112/14

**others [8]** 65/19 66/4 71/10 71/15 72/2 98/7 101/4 101/19

**otherwise [9]** 5/12 15/1 46/17 61/20 77/15 78/9 78/17 106/4 110/20

**our [29]** 8/6 8/14 9/15 9/16 9/16 9/17 9/20 9/20 9/23 12/25 13/14 30/15 30/17 35/3 35/8 38/14 44/8 50/2 62/1 66/22 87/12 92/21 93/23 96/15 105/20 105/21 106/2 108/13 112/2

**ours [1]** 103/14

**out [45]** 10/15 16/12 16/17 21/20 21/22 23/24 32/10 34/1 34/12 35/8 38/13 43/15 44/6 47/2 47/6 51/5 54/6 55/6 58/25 59/2 59/3 59/4 59/6 59/7 61/5 64/5 65/7 65/21 65/25 66/4 74/24 75/5 77/18 82/15 85/4 90/18 91/15 92/22 92/24 94/22 96/14 100/2 103/14 108/4 109/21

**outbound [1]** 102/24

**outcome [2]** 30/19 30/24

**outline [1]** 31/13

**Outreach [3]** 53/2 86/13 99/24

**outs [1]** 88/8

**outside [5]** 23/10 27/7 29/2 34/4 34/14

**over [9]** 6/23 46/5 53/11 55/10 63/16 96/21 106/7 110/3 110/4

**overall [1]** 29/17

**overcome [1]** 100/24

**overrule [2]** 16/11 61/18

**overruled [1]** 67/4

**overruling [1]** 63/4

**owes [1]** 10/19

**own [3]** 35/18 35/18 41/2

**Oxford [2]** 71/2 75/24

---

**P**

**p.m [2]** 26/11 42/22

**P1 [1]** 69/9

**P11 [1]** 89/13

**P15 [1]** 89/9

**P43 [2]** 96/4 96/5

**P45 [3]** 39/17 39/18 39/20

**P47** [2]  40/2 40/3
**P58** [1]  96/6
**P63** [1]  69/9
**P8** [1]  89/13
**PACER** [1]  115/1
**page** [36]  10/9 10/12 17/14 23/25 39/19 40/7 41/14 42/1 42/5 42/10 43/6 43/11 45/22 46/7 46/10 46/24 46/25 56/11 56/12 57/18 57/20 57/24 57/25 57/25 58/12 58/12 58/12 58/23 58/23 65/4 65/8 65/21 76/17 80/21 85/24 86/12
**page 2** [1]  40/7
**panel** [1]  105/20
**paper** [3]  69/11 69/22 110/24
**papers** [1]  69/10
**paragraph** [21]  10/9 10/14 21/3 65/11 65/15 70/19 71/8 71/13 72/11 74/12 74/17 75/6 75/12 75/14 76/4 81/13 81/18 81/25 84/25 86/7 86/20
**paragraphs** [1]  82/1
**paraphrase** [1]  20/19
**part** [26]  6/11 6/19 10/13 19/12 20/8 27/3 29/17 31/12 37/12 37/12 38/11 38/13 38/18 40/13 41/6 41/25 42/14 48/12 48/14 80/25 82/23 90/17 96/7 96/18 97/5 106/17
**particular** [6]  24/2 29/10 67/16 79/1 79/1 91/2
**particularly** [3]  38/11 113/25 114/18
**parties** [9]  7/24 23/24 24/10 68/17 68/19 69/8 70/13 71/20 88/21
**party** [3]  35/16 47/23 112/3
**party-opponent** [1]  47/23
**passion** [1]  52/17
**pause** [5]  11/12 52/21 61/3 84/12 108/5
**people** [23]  17/1 17/18 17/24 18/1 18/3 18/9 18/13 18/21 36/15 36/17 51/5 52/17 52/24 72/9 94/1 97/18 97/22 99/14 106/9 106/20 106/21 109/22 109/23
**people's** [1]  39/2
**per** [6]  10/22 11/2 31/8 32/10 32/16 32/19
**percent** [1]  96/14
**perhaps** [1]  67/13
**period** [3]  50/1 50/2 98/22
**permission** [1]  110/9
**permitted** [1]  108/25
**person** [9]  10/16 14/25 56/11 56/12 65/5 90/19 107/22 108/1 110/13
**personal** [2]  90/5 111/13
**persuaded** [1]  21/25
**Phase** [3]  24/24 24/24 25/1
**Phase I/Phase** [1]  24/24
**Phoenix** [1]  2/8
**phone** [27]  8/7 8/19 8/22 10/16 11/16 13/5 14/2 17/23 17/23 18/15 42/25 44/8 44/11 46/1 46/10 47/16 48/5 53/16 70/25 80/3 89/24 90/4 90/9 102/20 102/21 102/24 103/8
**phones** [1]  17/2
**phonetic** [1]  72/12
**phrasing** [1]  71/13
**pick** [8]  64/18 84/14 103/10 107/16 107/19 107/21 112/10 112/12
**picked** [2]  80/11 106/3
**Pictures** [1]  21/12
**piece** [5]  20/5 24/2 42/5 42/5 69/11
**piece-by-piece** [1]  42/5
**pieces** [1]  102/8
**pissed** [1]  48/19
**place** [7]  6/12 17/11 27/6 75/20 79/23 110/23 111/1
**placed** [10]  6/1 12/9 12/11 12/11 12/18 12/19 15/19 15/21 44/11 49/25
**plaintiff** [82]  1/5 2/2 4/8 4/11 4/13 4/15 5/10 5/17 5/23 6/8 8/24 14/15 16/8 16/11 17/16 17/17 17/18 18/12 18/25 20/20 23/16 24/8 24/8 25/5 25/6 26/24 27/15 27/19 28/3 29/4 30/6 30/13 30/23 31/11 32/16 34/17 35/20 36/1 37/15 37/18 38/15 38/18 50/25 51/7 51/9 51/17 51/19 54/6 54/17 54/17 59/12 60/6 61/24 64/16 67/17 68/20 68/22 70/23 71/12 73/9 74/3 74/13 75/18 75/23 76/13 76/17 76/19 77/15 77/16 83/4 88/5 90/25 91/25 92/4 92/16 93/3 97/16 99/25 102/10 104/16 107/14 114/11
**plaintiff's** [31]  .8/17 9/11 9/24 13/2 13/25 25/4 26/21 27/11 30/3 30/23 34/20 36/19 44/19 54/23 54/15 57/21 58/8 58/19 59/11 60/18 60/21 61/11 78/25 86/3 89/15 91/14 92/12 93/14 108/2 114/3 114/15
**plaintiffs** [2]  82/22 101/21
**plan** [11]  9/15 9/18 15/10 36/10 44/21 61/15 61/17 77/16 92/22 103/2 114/14
**planning** [3]  35/1 36/14 113/5
**play** [8]  12/11 96/8 98/12 98/20 98/24 100/1 104/8 104/13
**played** [11]  86/1 86/18 96/11 97/12 97/15 97/18 97/22 99/4 99/22 101/3 102/6
**please** [13]  9/7 10/11 10/24 45/7 45/11 54/3 62/18 66/24 73/12 89/10 95/5 96/16 109/18
**plenty** [1]  85/6
**plug** [2]  103/7 111/14
**podium** [2]  109/6 111/11
**point** [22]  9/22 14/11 25/14 25/24 28/6 29/7 44/10 66/19 73/4 74/20 75/5 84/9 85/4 87/9 97/13 101/11 101/22 103/24 104/3 109/21 110/1 110/1
**pointed** [1]  82/15
**points** [2]  29/8 42/21
**POM** [34]  49/10 49/12 49/15 49/18 49/22 49/25 50/3 50/9 52/6 52/7 52/7 53/2 70/20 70/22 71/14 71/20 72/4 72/6 72/23 79/23 80/3 80/5 80/5 80/8 80/16 81/20 83/22 83/23 86/10 90/1 90/3 99/24 100/2 103/19
**POM machine** [1]  49/15
**popping** [1]  51/23
**portion** [12]  29/22 39/19 40/6 40/7 42/3 55/24 56/4 56/5 56/21 58/20 98/8 113/24
**portions** [1]  52/12
**Portland** [3]  1/7 2/14 2/23
**position** [11]  8/14 8/17 9/23 9/24 13/15 16/23 25/4 31/5 44/20 47/25 101/15
**positions** [1]  24/15
**possibility** [4]  33/11 63/15 64/6 73/8
**possible** [3]  11/3 56/3 95/7
**possibly** [1]  112/25
**post** [6]  8/9 8/19 8/25 11/3 59/24 113/16
**post-trial** [5]  8/9 8/25 11/3 59/24 113/16
**potential** [2]  30/25 32/23
**power** [1]  84/1
**practice** [2]  98/25 105/4
**pre** [1]  77/2
**pre-admitted** [1]  77/2
**preadmit** [6]  61/15 76/15 76/21 77/5 83/14 84/7
**preadmitted** [3]  77/13 79/6 104/4
**preadmitting** [3]  76/16 76/20 104/5
**precede** [1]  55/25
**precedes** [1]  55/23
**precise** [2]  15/11 60/14
**precisely** [1]  13/11
**precision** [1]  53/24
**preferences** [2]  90/8 111/13
**preferred** [1]  110/23
**prejudice** [5]  32/12 34/17 36/24 38/6 114/13
**prejudiced** [2]  25/6 48/19
**prejudicial** [4]  38/4 48/16 73/9 95/3
**preliminary** [11]  15/5 104/22 105/5 105/23 106/4 107/17 108/20 112/11 112/12 112/22 113/3
**premise** [1]  30/18
**preparation** [1]  112/9
**prepare** [1]  71/13
**prepared** [2]  8/21 55/11
**preparing** [1]  14/23
**preponderance** [1]  12/8
**prerecorded** [23]  5/19 5/22 6/1 6/13 12/12 12/20 14/6 17/9 27/17 39/1 39/6 41/1 45/18 49/10 49/24 53/16 54/2 79/24 85/19 85/25 96/6 96/23 102/18
**prescribed** [1]  20/25
**presence** [5]  23/10 27/7 29/2 34/4 34/15
**present** [21]  9/18 10/24 16/16 27/22 27/24 28/9 29/2 30/25 41/13 41/21 42/2 43/23 46/23 47/3 47/20 48/21 49/1 51/9 55/8 73/14 107/7

**P**

**presented [11]** 19/23 19/25 22/20 22/22 25/1 26/18 28/25 54/19 60/15 98/16 106/25
**presenting [3]** 23/1 27/7 64/6
**presents [1]** 16/11
**preserve [2]** 13/18 64/6
**preserved [2]** 29/25 67/2
**preserving [1]** 12/25
**press [11]** 49/25 67/19 67/21 67/21 67/23 68/1 70/20 71/21 72/5 72/6 104/8
**pressing [1]** 48/24
**presume [1]** 85/8
**presumption [4]** 55/25 56/8 56/10 56/23
**pretrial [7]** 1/11 3/2 4/5 4/23 9/16 92/15 108/13
**pretty [9]** 12/3 15/6 22/6 22/17 54/14 54/14 105/4 105/11 109/10
**prevailing [1]** 20/19
**prevent [1]** 48/18
**previous [1]** 100/3
**previously [1]** 92/12
**primarily [1]** 52/17
**print [1]** 94/9
**prior [5]** 17/11 19/9 19/13 27/20 27/22
**private [1]** 20/17
**Proactive [1]** 86/12
**probably [25]** 6/16 18/8 20/2 20/2 24/13 27/2 28/21 33/12 34/7 34/9 34/12 43/21 49/1 54/18 62/5 62/10 70/6 76/7 88/18 89/12 105/25 110/16 112/25 113/16 114/4
**probative [3]** 33/13 34/10 34/15
**problem [13]** 13/13 13/15 16/3 25/19 38/10 43/16 46/16 53/4 55/22 57/22 66/25 105/17 109/9
**problems [2]** 114/19 114/19
**procedure [1]** 25/19
**proceed [3]** 5/1 9/4 26/14
**proceedings [7]** 1/12 3/2 10/4 11/12 57/10 61/3 116/7
**process [7]** 6/17 8/20 8/25 16/21 29/12 55/5 57/12
**produced [10]** 65/5 78/4 78/6 78/24 80/19 81/17 93/22 100/13 101/18 101/20
**production [2]** 102/14 102/17
**products [9]** 17/7 36/8 37/16 37/23 38/2 60/5 94/1 94/3 103/17
**program [1]** 49/15
**Progressive [2]** 53/1 99/24
**promise [3]** 32/22 104/20 107/13
**promised [4]** 32/21 33/1 37/2 84/4
**promoter [9]** 37/5 37/22 40/20 45/16 93/21 93/25 94/6 94/13 104/4
**promoters [6]** 36/6 41/8 50/5 89/22 93/24 97/16
**promoting [1]** 17/7 103/16
**promotion [1]** 43/8
**prompted [1]** 68/19
**proof [2]** 9/2 10/14
**property [1]** 22/10
**propose [2]** 13/17 69/9
**proposed [14]** 5/5 7/25 11/19 12/3 13/8 13/12 13/19 14/3 14/17 15/9 15/13 15/18 18/13 18/13
**proposes [1]** 12/7
**proposing [1]** 15/8
**prospect [1]** 32/4
**Protection [2]** 20/17 106/23
**prove [9]** 7/9 7/11 8/18 12/8 49/9 90/25 91/3 91/5 100/12
**proven [5]** 7/16 8/2 8/15 9/13 70/16
**proves [1]** 49/9
**provide [3]** 13/5 47/16 74/15
**provided [2]** 76/16 81/9
**provides [1]** 20/16
**proving [1]** 16/8
**provision [1]** 28/19
**provisions [2]** 51/19 52/3
**provisos [1]** 74/4
**pull [4]** 10/1 39/4 102/25 103/13
**pulled [3]** 39/20 92/22 92/24
**pulling [1]** 85/21
**punitive [2]** 28/20 28/20
**pure [1]** 99/8
**purposes [5]** 10/17 11/6 17/13 29/3 35/1
**put [26]** 6/4 14/3 20/10 23/14 35/12 42/25 63/18 68/18 70/9 74/3 75/3 75/18 76/12 80/2 82/12 82/23 87/23 88/15 90/2 90/20 95/21 95/22 96/1 109/12 110/16 110/25
**puts [1]** 47/8
**putting [3]** 6/6 33/8 33/19
**Pyle [2]** 2/13 4/21
**pyramid [4]** 35/15 35/17 35/23 37/13

**Q**

**Quarles [2]** 2/7 2/10
**question [44]** 5/20 6/11 9/3 12/6 12/8 12/15 13/8 14/4 14/6 14/8 18/17 19/3 19/19 19/22 19/24 20/1 20/3 20/6 20/13 20/14 22/3 22/4 22/7 22/9 22/18 22/24 24/14 24/18 25/8 26/21 28/7 28/8 28/22 30/5 31/2 31/11 33/19 34/5 36/21 41/12 47/8 54/23 78/13 87/8
**Question No. 10 [1]** 12/8
**questions [15]** 14/17 24/20 25/11 28/17 31/15 34/2 49/19 58/24 58/25 105/16 107/6 109/5 109/7 110/20 110/22
**quick [1]** 36/21
**quickly [1]** 103/14
**quit [4]** 37/22 37/23 37/25 50/7
**quite [2]** 38/15 48/6

**R**

**raised [1]** 13/22
**ran [1]** 81/19
**range [1]** 93/14
**rapidly [1]** 105/2
**rare [1]** 56/16
**ratified [2]** 22/12 22/16
**RDR [2]** 2/22 116/12
**re [3]** 5/15 42/24 42/25
**re-label [1]** 5/15
**reach [1]** 114/24
**read [23]** 10/24 11/10 11/13 21/7 23/23 23/25 24/5 52/20 55/18 56/1 56/9 56/14 56/19 56/20 56/24 57/21 58/5 71/23 83/5 83/17 89/12 105/13 113/23
**reading [12]** 8/6 8/20 10/24 24/3 84/10 84/10 84/12 98/11 98/18 98/19 98/24 113/23
**reads [2]** 13/12 74/5
**ready [2]** 57/8 89/11
**realize [1]** 56/17
**realized [1]** 37/5
**really [25]** 5/1 5/14 5/16 6/11 7/14 19/20 23/3 42/20 48/6 53/9 53/24 55/9 56/22 57/14 62/24 68/6 70/6 71/10 78/20 79/13 79/14 92/6 105/2 105/22 114/16
**reason [16]** 6/21 8/13 10/17 32/7 32/9 36/7 37/23 48/17 48/17 50/4 63/21 65/23 72/4 80/22 99/12 114/23
**reasonable [2]** 63/22 101/19
**reasonably [1]** 56/7
**reasons [2]** 48/20 72/20
**rebuttal [1]** 56/10
**recall [5]** 7/25 8/11 8/20 79/18 92/15
**receive [10]** 5/23 23/6 46/17 77/9 83/7 83/8 84/13 85/3 88/12 92/1
**received [14]** 14/5 16/9 17/5 17/18 18/10 18/13 18/21 33/5 62/14 77/7 77/10 105/11 106/16 106/19
**receiving [1]** 5/18 78/22 106/20
**recent [1]** 94/25
**recently [1]** 94/11
**recess [4]** 10/3 57/6 57/9 112/21
**recognized [1]** 22/11
**recollection [1]** 9/11
**reconsider [1]** 104/2
**record [24]** 4/8 12/25 17/11 19/8 23/14 26/7 44/7 62/5 62/7 63/10 63/17 63/18 67/2 78/3 78/4 78/10 78/16 78/24 82/8 89/13 91/15 91/15 114/21 116/7
**recorded [9]** 46/1 46/9 46/10 46/14 47/1 47/15 49/15 52/5 52/10
**recordings [4]** 100/20 100/21 102/12 102/18
**records [3]** 48/12 65/6 78/7

**recover [4]** 7/15 8/16 20/20 31/3
**red [3]** 56/11 56/14 56/15
**redact [12]** 41/14 41/20 41/20 42/17 42/18 42/22 42/24 42/25 43/25 44/10 45/7 65/20
**redacted [2]** 44/17 50/22
**redacting [5]** 41/15 41/16 41/17 42/8 50/25
**redactions [1]** 50/13
**redo [1]** 67/11
**reduce [1]** 55/1
**redundancy [1]** 104/12
**refer [8]** 35/14 35/15 35/17 35/18 35/20 37/15 51/18 70/3
**reference [6]** 9/5 42/18 44/12 70/5 70/25 72/12
**referenced [1]** 43/17
**references [1]** 50/25
**referencing [1]** 48/6
**referred [4]** 49/17 53/20 86/21 98/12
**referring [2]** 10/7 41/9
**refers [3]** 51/9 84/11 103/15
**refine [1]** 55/1
**reflected [1]** 9/20
**refresh [1]** 109/21
**regarding [2]** 27/16 43/7
**registered [1]** 115/1
**Registry [1]** 5/11
**regulations [1]** 20/25
**reiteration [1]** 101/10
**relate [4]** 59/16 77/17 77/19 77/20
**related [3]** 26/17 45/4 55/7
**relates [2]** 23/21 54/24
**relating [1]** 27/20
**relationship [1]** 36/6
**releases [1]** 10/17
**relevance [14]** 32/8 46/12 46/16 58/13 61/22 62/1 62/16 62/25 90/10 96/21 100/12 100/24 101/7 102/5
**relevant [49]** 19/25 20/3 20/5 22/20 23/5 24/2 27/1 27/2 27/17 27/23 28/17 28/21 33/17 36/2 36/4 37/19 38/22 38/25 39/1 39/10 39/24 40/5 40/7 40/20 41/13 42/2 43/8 46/13 46/13 49/6 49/8 50/1 58/14 62/2 62/16 70/6 70/8 70/8 89/25 94/7 94/18 95/5 95/15 96/23 98/22 101/4 101/22 102/1 102/3
**reliable [2]** 47/10 47/16
**rely [1]** 69/1
**relying [2]** 71/22 73/25
**remainder [2]** 66/23 104/17
**remaining [2]** 57/2 69/24
**remind [2]** 63/13 95/4
**removed [2]** 66/5 88/7
**removes [1]** 76/17
**remuneration [2]** 30/8 34/16
**renew [1]** 114/2
**renumber [3]** 93/12 95/18 95/22
**renumbered [1]** 93/4
**reopened [1]** 69/4
**rep [6]** 6/22 6/24 32/23 32/24 37/4 37/5
**repeat [1]** 58/5
**rephrase [2]** 31/6 91/8
**reply [1]** 67/16
**reporter [5]** 2/22 10/24 35/3 35/5 116/12
**representative [5]** 7/15 41/3 45/15 80/14 81/16
**representatives [2]** 66/18 103/16
**represented [1]** 73/24
**request [7]** 64/8 100/19 102/11 102/14 102/17 102/22 103/23
**requested [2]** 17/17 90/9
**requests [2]** 49/19 68/21
**require [5]** 15/19 61/21 78/5 78/6 78/16
**required [1]** 56/9
**requirements [4]** 26/23 26/23 27/5 27/6
**requires [1]** 18/4
**requisite [1]** 19/16
**research [2]** 53/15 107/5
**resell [1]** 94/2
**reserve [9]** 20/12 26/5 59/19 62/8 66/2 88/13 88/23 114/1

114/11
**reserved [1]** 58/23
**reserving [2]** 44/23 82/8
**residential [21]** 5/21 5/22 6/2 8/3 8/7 8/18 8/22 9/19 10/17 11/5 11/15 12/10 13/6 14/2 14/4 17/1 17/19 17/23 18/5 18/15 18/22
**residents [2]** 80/16 81/19
**resolution [1]** 38/17
**resolved [1]** 9/14
**respect [6]** 60/5 64/9 68/2 71/1 88/4 113/17
**respond [2]** 73/11 103/23
**responds [1]** 47/14
**response [14]** 13/7 38/7 52/20 63/5 63/7 63/10 86/4 88/5 101/16 101/23 101/24 103/5 103/20 107/7
**responses [1]** 76/23
**responsibility [3]** 32/22 32/23 63/19
**rest [4]** 26/15 42/1 43/16 43/20
**restrictions [1]** 109/10
**rests [1]** 114/11
**result [4]** 10/18 30/8 31/18 61/8
**resumed [1]** 10/4 57/10
**retroactive [1]** 28/5
**reversal [1]** 9/24
**review [1]** 14/19
**reviewed [1]** 81/16
**reviewing [1]** 26/7
**revised [2]** 45/8 55/8
**rewards [1]** 36/10
**right [108]** 4/22 5/13 6/7 6/10 7/2 7/20 8/11 10/1 10/5 10/11 11/10 11/10 11/22 11/24 12/2 15/22 16/2 16/4 17/2 19/6 19/20 20/12 20/17 22/10 22/10 22/14 22/14 22/15 22/17 25/13 25/23 26/5 26/14 28/8 28/23 30/2 31/10 32/13 33/4 33/9 34/14 34/19 34/20 37/11 37/12 37/14 38/17 40/3 40/5 42/7 43/21 44/5 44/23 47/18 47/25 50/20 51/16 54/10 55/19 56/18 56/18 57/11 57/19 57/22 58/10 59/19 59/21 62/11 64/4 64/11 64/14 66/5 66/13 66/21 66/24 67/10 69/3 69/17 69/17 70/18 71/12 74/1 76/13 77/3 79/20 80/1 80/20 81/4 81/7 81/8 81/24 85/10 87/3 87/6 87/11 88/11 89/20 90/7 97/7 102/5 104/16 111/2 111/2 112/4 113/9 113/22 114/16 114/22
**rights [1]** 114/14
**ring [1]** 80/23
**rings [2]** 53/17 54/2
**rise [1]** 79/22
**risk [1]** 34/17
**RMR [1]** 116/12
**robo [10]** 52/18 52/18 52/19 53/5 53/8 53/18 53/20 53/20 53/22 106/13
**robot [2]** 53/21 54/4
**room [7]** 2/23 23/8 35/9 63/23 73/3 108/25 109/4
**roughly [2]** 16/13 108/15
**row [2]** 110/17 110/17
**rule [13]** 32/8 34/9 54/21 56/1 56/9 56/15 63/5 85/9 96/4 107/14 107/14 109/14 114/4
**Rule 1006 [1]** 85/9
**Rule 403 [1]** 32/8
**rules [2]** 47/9 78/16
**ruling [17]** 25/22 27/10 50/23 54/24 55/5 59/17 59/18 62/8 62/17 63/4 67/15 78/3 88/13 88/16 88/23 92/10 114/1
**rulings [2]** 54/13 55/11
**run [6]** 5/8 29/9 30/16 61/9 62/20 70/23
**running [2]** 31/14 72/7
**runs [2]** 31/4 50/9
**Ryan [2]** 40/18 41/9

**S**

**safest [1]** 77/4
**said [36]** 12/23 13/3 17/4 20/11 21/13 25/15 31/2 44/22 47/22 48/10 49/18 56/13 63/14 64/4 67/11 67/18 67/24 67/25 72/3 72/20 75/3 80/22 81/2 82/9 82/14 83/18 84/23 94/5 97/4 101/11 101/14 104/20 106/12 107/16 108/21 113/13
**sake [1]** 96/1
**sale [1]** 103/17
**Sales [1]** 98/4
**same [17]** 43/11 56/1 56/9 56/14 56/19 56/20 63/5 71/4 73/22

**same... [8]** 81/9 81/25 94/7 94/23 95/12 101/4 101/10 101/24
**sanctions [1]** 67/17
**Sands [2]** 65/1 65/2
**Santa [2]** 2/4 2/5
**satisfied [1]** 15/25
**satisfy [2]** 17/24 18/3
**saw [1]** 56/5
**say [63]** 6/11 6/17 7/21 11/7 14/10 14/13 16/25 18/2 22/18 23/15 25/14 27/4 31/15 32/2 33/5 33/12 33/14 33/23 33/25 36/4 47/14 53/1 54/3 58/18 59/20 61/21 62/24 63/5 65/24 68/14 70/21 71/4 72/1 72/4 73/7 74/5 74/7 74/23 75/19 75/23 76/8 76/18 76/15 77/7 77/9 78/3 78/17 82/9 84/12 86/16 91/4 92/6 95/22 98/23 98/25 99/2 99/8 99/15 101/9 109/2 109/24 112/23 114/10
**saying [12]** 9/15 12/22 30/11 37/1 43/11 52/13 58/22 82/20 86/15 93/23 94/20 101/24
**says [48]** 6/25 12/11 20/19 21/5 25/22 34/8 34/8 34/11 40/11 41/6 41/10 41/17 43/7 44/7 45/25 46/6 46/8 46/25 47/7 49/24 50/7 56/11 56/12 67/19 67/25 68/6 69/12 69/25 71/19 71/25 73/6 74/24 75/6 76/8 78/21 81/13 81/15 81/19 85/24 86/5 86/7 86/7 90/5 90/8 94/8 98/9 98/10 98/23
**scenario [2]** 14/24 23/13
**Schappert [5]** 45/22 46/19 47/15 49/3 50/7
**schedule [1]** 15/1
**scheduled [1]** 4/23
**scheme [4]** 35/15 35/17 35/23 37/13
**Scott [5]** 39/23 41/21 51/16 84/10 84/10
**screen [2]** 39/21 85/5
**screens [1]** 111/20
**screenshot [1]** 96/6
**script [4]** 15/5 104/22 106/23 110/20
**scrubbed [1]** 87/24
**season [1]** 96/15
**seated [3]** 109/5 112/24 113/2
**second [21]** 10/9 10/14 27/15 37/14 40/1 41/19 42/21 42/23 43/6 43/18 45/22 45/24 47/4 58/12 66/10 80/13 82/15 82/18 85/24 98/1 103/5
**seconds [1]** 14/19
**section [4]** 5/18 20/16 20/23 52/6
**Section 227 [3]** 5/18 20/16 20/23
**sections [1]** 27/17
**see [54]** 15/14 18/24 19/2 19/17 22/2 25/25 28/16 29/16 31/14 34/13 35/6 38/10 38/22 39/7 40/8 40/16 40/19 40/22 40/23 41/6 41/10 43/2 43/6 43/14 43/19 43/19 45/5 45/22 45/24 46/7 50/20 57/16 57/25 58/14 58/15 60/11 61/22 65/7 78/18 80/2 90/4 91/6 91/7 92/25 104/16 105/12 106/23 107/20 110/8 110/10 110/5 111/7 114/6 114/16
**seeing [1]** 114/22
**seem [2]** 15/19 54/18
**seems [2]** 26/25 84/23
**seen [4]** 67/15 68/15 71/4 109/11
**selected [1]** 105/21
**self [2]** 105/15 110/19
**self-explanatory [2]** 105/15 110/19
**sell [1]** 36/8
**sells [1]** 94/1
**seminar [1]** 75/20
**send [5]** 14/23 15/4 63/22 63/25 69/21
**sending [3]** 48/24 50/2 114/25
**sense [11]** 5/9 13/20 38/5 42/10 46/23 47/3 47/20 48/21 49/1 52/9 66/15
**sent [4]** 47/17 94/10 99/24 100/2
**sentence [6]** 10/15 10/21 11/8 45/24 73/16 99/14
**Seriously [1]** 47/8
**service [1]** 113/13
**services [5]** 17/7 37/16 38/2 103/17 103/18
**session [1]** 103/2
**set [4]** 4/4 14/23 15/4 80/10 84/25 86/12 94/10 95/24
**Setting [1]** 6/9
**settlement [3]** 32/14 32/15 32/15
**seven [3]** 86/18 110/12 110/14
**Seventh [3]** 22/12 22/16 25/23
**several [2]** 64/21 79/5
**share [6]** 33/2 33/8 54/13 55/20 57/14 81/10
**she [56]** 6/21 6/24 17/13 17/15 17/16 17/21 18/25 30/7 30/24 32/2 32/3 32/5 32/19 32/20 32/21 33/1 33/5 33/5 33/7 33/9 33/21 33/23 33/24 34/4 34/8 34/8 34/10 36/19 36/20 37/6 37/6 37/21 37/22 37/23 37/23 37/24 37/25 44/7 46/4 46/5 46/8 46/25 47/1 47/6 47/7 47/8 47/15 47/17 47/18 47/22 49/4 49/6 50/1 52/4 52/14 98/10 111/13
**sheets [1]** 90/3
**shelf [1]** 95/1
**shells [2]** 100/15 100/17
**shocked [1]** 25/24
**short [2]** 55/3 96/8
**shot [1]** 48/22
**shotgun [2]** 100/15 100/17
**should [36]** 13/21 13/22 14/8 24/11 29/18 29/19 29/23 35/8 35/14 39/13 39/16 43/22 45/19 48/20 56/25 65/13 68/10 69/1 69/25 70/6 70/7 70/15 72/3 72/18 73/14 73/22 75/1 75/10 79/16 79/17 89/12 92/9 103/13 111/6 111/17 113/21
**shouldn't [4]** 32/3 59/25 67/4 73/19
**show [32]** 18/3 31/11 39/1 39/6 40/16 41/14 45/19 46/14 61/1 72/24 83/3 83/14 83/20 83/23 83/24 84/4 84/7 84/13 85/6 85/6 88/22 90/1 97/7 100/14 102/5 102/15 103/8 109/20 110/1 110/5 111/18 111/22
**showed [3]** 67/16 91/20 93/21
**showing [1]** 89/25
**shown [3]** 69/20 84/20 105/9
**shows [2]** 84/1 84/2
**shut [1]** 82/24
**SI [2]** 1/4 4/5
**side [10]** 5/5 25/22 27/11 27/13 56/24 63/5 69/1 70/8 106/8 112/14
**sidebar [2]** 63/16 64/2
**sides [7]** 34/5 55/1 62/19 76/11 106/12 112/13 114/19
**sign [2]** 89/22 89/23
**signal [1]** 99/15
**signature [3]** 116/9 116/9 116/9
**signed [3]** 19/16 67/12 116/9
**signing [1]** 116/6
**similar [7]** 79/21 89/7 92/12 100/3 100/10 101/2 101/18
**similar-sounding [1]** 100/10
**similarities [3]** 100/5 100/6 100/9
**Similarly [2]** 70/24 110/7
**Simmons [1]** 21/20
**SIMON [3]** 1/13 2/2 4/10
**simple [2]** 13/5 54/14
**simpler [1]** 15/11
**simultaneously [1]** 92/22
**since [5]** 28/23 29/7 29/16 53/11 92/10
**single [2]** 8/16 15/20
**sit [3]** 11/24 51/22 51/25
**sitting [1]** 111/3
**six [3]** 7/24 8/17 110/14
**sixth [1]** 30/3
**skip [1]** 12/16
**skunk [1]** 34/1
**slide [2]** 81/24 111/24
**slides [2]** 79/10 79/12
**slowly [1]** 10/25
**small [2]** 33/13 85/16
**smells [1]** 82/7
**so [135]**
**solely [3]** 26/17 59/16 106/25
**solve [2]** 114/18 114/19
**some [53]** 5/4 5/5 5/7 5/15 8/9 9/2 9/12 10/17 16/24 20/10 20/10 23/21 24/8 28/22 32/21 32/21 36/16 36/21 37/6 37/7 45/3 46/8 48/14 50/13 50/16 50/18 54/18 55/24 63/25 64/2 70/2 72/14 75/16 75/17 79/9 81/16 82/8 82/12 84/9 84/11 88/4 90/20 97/3 98/7 102/7 106/20 106/21 107/1 107/8 107/8 107/8 112/8 114/23
**somebody [6]** 48/23 53/4 80/4 94/2 94/22 97/17
**somehow [3]** 78/7 87/23 90/18

someone [4] 35/10 44/13 73/2 81/1
something [38] 22/11 32/1 42/16 48/22 61/23 62/19 63/1 63/18 67/14 72/17 72/18 73/20 78/7 78/12 84/14 85/4 88/19 91/18 94/23 95/1 98/21 99/1 99/7 99/8 99/15 101/9 101/25 109/21 109/21 110/1 110/2 110/2 110/7 110/8 110/10 111/21 111/22 113/14
sometimes [1] 53/20
somewhere [3] 23/8 95/22 109/7
soon [3] 7/14 79/11 88/14
sorry [2] 36/25 60/11
sort [2] 9/2 90/20
sought [1] 94/24
sound [3] 100/14 101/4 101/18
sounded [1] 100/3
sounding [1] 100/10
sounds [4] 49/6 50/12 91/1 101/2
Spanish [1] 94/17
speaker [1] 99/16
speaking [5] 10/23 44/2 62/22 63/12 63/14
specific [3] 32/17 99/4 100/23
specifically [4] 10/7 13/3 45/18 81/17
specifics [1] 82/8
specimen [2] 99/10 99/22
speculate [1] 101/25
speculative [1] 33/16
Spence [1] 109/12
spin [1] 82/13
split [3] 28/18 28/18 85/5
spreadsheet [3] 81/20 87/18 87/20
spreadsheets [5] 81/17 81/22 87/14 87/17 90/21
spring [1] 96/15
squiggle [2] 78/18 79/1
squiggly [1] 82/21
staff [1] 111/19
stand [6] 51/21 62/23 99/16 109/6 109/19 111/6
standing [1] 110/4
stands [1] 96/22
start [13] 6/19 20/15 30/18 54/23 61/5 65/8 79/16 79/17 106/1 106/10 108/7 108/12 112/19
started [1] 95/7
starting [2] 42/5 113/8
starts [1] 105/3
state [2] 21/24 21/25
stated [1] 10/15
statement [15] 46/19 54/7 65/11 72/13 72/15 73/6 75/9 79/7 83/3 83/19 84/6 104/6 105/14 107/3 111/11
statements [4] 13/5 67/1 106/1 106/9
STATES [5] 1/1 1/14 2/22 17/5 22/5
statute [9] 18/4 18/4 20/23 21/23 51/15 52/19 53/10 76/1 97/13
statutory [9] 10/21 11/2 19/16 20/15 21/4 27/16 29/11 30/16 31/8
stay [2] 65/13 108/25
step [8] 13/4 18/20 42/19 63/16 90/5 93/25 109/16 109/18
Step 5 [1] 90/5
sticker [1] 65/8
stickler [1] 78/23
still [10] 16/21 46/10 49/6 55/9 58/21 59/15 60/9 68/25 91/24 102/4
stip [1] 76/9
stips [1] 67/18
stipulate [1] 69/3
stipulated [6] 49/14 49/17 68/19 69/2 71/5 76/2
stipulation [23] 49/23 67/1 67/7 67/24 67/25 68/4 68/25 68/4 68/21 68/25 69/19 70/4 70/5 71/19 71/19 71/23 72/4 72/19 73/17 73/20 73/23 74/2 74/24 94/8
stipulations [7] 68/23 69/8 69/11 69/13 70/3 70/11 70/14
stop [2] 54/3 63/13
stopping [1] 38/4
story [6] 7/12 37/21 38/3 38/5 38/19 82/13
straight [1] 28/7
strategies [15] 70/20 71/9 71/10 71/14 71/21 71/24 72/1 72/2 72/3 72/5 72/10 72/22 75/3 75/7 75/9

strategy [4] 70/22 70/22 73/4 74/25
streamline [1] 70/12
stress [1] 47/9
stressed [1] 47/6
strictly [3] 26/17 44/15 54/19
strong [2] 22/17 25/15
strongly [1] 62/20
struck [1] 86/2
structure [4] 35/16 35/25 36/2 36/11
stuck [1] 97/2
stuff [3] 35/8 48/16 92/22
subject [8] 39/23 40/3 41/16 41/20 43/1 43/15 44/22 61/18
submissions [2] 8/10 9/16
submit [7] 11/4 49/22 69/10 92/16 92/17 92/18 92/21
submitted [6] 17/24 24/11 24/25 67/12 81/4 81/5
subsection [3] 20/25 21/1 21/6
subsequent [2] 67/10 68/5
substance [2] 14/16 15/12
substantive [3] 22/25 105/4 105/6
substituted [1] 45/7
such [16] 6/3 6/22 7/2 7/4 16/1 17/8 17/11 20/21 29/10 75/20 75/20 78/23 106/11 106/11 107/13 107/13
sucks [1] 38/9
suddenly [1] 33/25
sufficient [4] 41/14 42/2 75/10 91/14
sufficiently [1] 34/9
suffix [1] 49/4
suggest [2] 52/2 94/21
suggested [1] 7/10
suggests [1] 101/3
Suite [3] 2/4 2/11 2/14
Summaries [1] 85/16
summary [12] 84/19 85/8 86/20 86/23 86/24 87/10 87/24 87/24 88/3 88/3 88/8 88/9
supplemental [1] 103/5
support [3] 72/13 72/15 72/16
supposed [4] 16/4 31/16 67/7 92/21
Supreme [4] 21/8 21/12 22/2 22/5
sure [25] 7/8 7/12 11/11 24/9 25/19 30/6 31/25 32/18 33/4 38/7 38/15 44/25 45/8 48/6 56/5 58/7 60/4 61/25 66/17 67/5 70/1 71/7 79/8 97/22 113/18
suspend [3] 98/11 98/18 98/24
sustain [4] 61/17 63/11 74/6 77/18
sustaining [3] 63/4 76/6 79/2
SW [2] 2/14 2/23
swayed [1] 29/1
sworn [1] 13/5
sympathy [1] 29/1
system [9] 49/10 53/2 70/25 83/22 83/23 90/1 93/5 111/18 115/1

T
table [2] 35/12 111/4
take [41] 5/1 8/12 12/2 14/15 16/21 19/18 26/2 31/8 35/2 35/7 42/19 43/14 43/16 44/6 44/16 48/7 51/19 55/6 57/6 57/7 58/11 58/13 65/7 65/24 66/4 68/20 70/15 72/13 77/18 78/12 80/4 83/15 91/19 92/5 92/7 93/25 97/9 105/25 108/10 108/14 114/3
taken [1] 90/19
takes [7] 19/20 30/2 34/20 64/14 91/24 111/9 112/11
taking [6] 32/22 38/15 48/23 58/25 113/5 113/25
talk [32] 5/2 5/4 5/8 22/21 23/4 26/19 32/14 45/10 48/3 50/16 51/6 55/19 59/10 67/14 67/23 74/18 75/17 77/14 77/15 79/8 81/21 84/18 104/11 104/24 105/3 105/16 107/21 108/18 108/22 110/18 111/25 114/7
talked [1] 57/12
talking [14] 10/20 29/9 44/4 44/5 44/18 48/1 53/17 54/4 54/4 57/4 70/19 82/21 106/10 114/17
talks [5] 23/5 65/24 82/1 82/2 82/7
Tampa [1] 2/11
targeted [1] 53/6
TCPA [14] 10/18 14/1 21/15 22/7 22/13 26/23 27/5 27/17 29/10 30/16 52/3 52/6 52/13 71/4

**teach** [1] 22/2
**teaches** [1] 83/5
**technical** [1] 53/7
**technology** [1] 111/17
**tele** [1] 71/5
**tele-market** [1] 71/5
**telemarketers** [1] 65/25
**telemarketing** [12] 5/18 6/1 6/12 12/12 12/20 36/9 71/3 75/22 76/1 76/4 76/5 76/8
**telephone** [15] 6/3 12/10 12/19 14/5 15/1 17/5 17/20 18/5 18/22 20/16 65/24 67/25 103/15 106/22 107/22
**tell** [31] 15/7 20/9 20/13 23/24 37/21 38/3 38/12 38/19 60/23 64/22 75/8 77/17 77/21 78/25 83/5 83/11 83/19 93/11 93/19 104/6 105/11 105/17 106/11 106/20 107/9 109/2 109/18 111/13 111/15 111/23 113/22
**telling** [4] 26/11 41/22 65/9 71/8
**tells** [4] 21/7 58/15 83/16 103/22
**ten** [2] 35/2 72/3
**tend** [1] 20/4
**tendency** [3] 49/9 100/12 100/14
**tentative** [6] 7/20 22/17 25/15 27/9 28/22 103/25
**term** [4] 53/10 54/8 102/2 102/21
**terrible** [1] 38/1
**testified** [1] 100/2
**testify** [2] 90/17 101/2
**testimony** [28] 23/7 23/11 23/21 32/5 48/10 57/23 57/25 74/14 80/25 80/25 82/11 82/12 88/14 88/15 88/19 88/23 93/22 94/4 97/14 97/17 97/19 97/23 98/8 98/18 98/19 99/4 99/23 101/12
**Texas** [1] 21/22
**text** [2] 20/15 21/5
**than** [23] 12/23 18/2 21/2 26/10 32/16 32/19 35/2 61/2 61/6 61/8 64/16 71/2 72/8 72/8 72/22 91/24 96/17 104/21 108/15 109/19 112/18 112/18 113/8
**thank** [16] 12/1 12/5 25/10 26/13 30/1 61/14 70/17 75/11 77/12 79/9 89/1 95/16 95/20 101/8 115/3 115/4
**Thanks** [1] 96/18
**that** [730]
**that's** [112] 5/13 6/10 6/23 6/23 7/11 7/12 7/19 9/20 9/23 11/22 12/14 12/22 13/10 14/6 14/7 14/8 15/22 16/2 16/4 16/18 17/2 17/13 17/14 18/24 18/24 19/2 21/21 21/22 22/11 23/11 24/25 25/5 26/8 26/25 28/6 28/16 33/3 33/11 33/17 34/9 37/25 38/8 39/10 41/7 43/2 43/8 46/16 53/4 56/10 56/16 57/3 58/9 60/8 62/2 65/22 66/3 66/19 68/4 68/10 68/17 69/17 70/3 71/18 71/21 72/13 72/14 72/17 73/7 73/8 74/9 75/9 76/1 76/9 76/25 77/20 77/22 78/20 79/20 80/1 80/9 80/20 81/6 81/7 82/10 82/14 83/13 83/25 84/1 84/14 84/25 85/10 86/22 87/8 90/10 90/23 91/3 91/14 97/22 98/5 99/10 101/4 101/24 109/7 109/8 109/24 109/25 110/7 111/3 111/7 111/12 112/19 114/4
**their** [30] 8/24 9/24 11/5 13/5 20/10 25/4 25/7 32/6 35/18 36/6 37/16 38/2 52/20 55/1 56/24 69/14 75/2 80/14 88/1 89/24 90/17 92/16 93/25 94/4 94/5 101/17 106/9 106/15 106/24 114/18
**theirs** [1] 92/17
**them** [72] 6/18 32/11 36/7 36/8 36/10 50/5 54/18 57/2 59/2 59/2 59/3 59/4 59/7 59/8 59/11 59/13 59/16 60/16 61/1 65/14 68/22 69/11 69/13 73/6 74/12 76/4 77/1 77/17 77/18 79/6 79/8 80/1 80/2 80/5 81/11 83/16 84/7 86/18 87/18 92/2 92/6 92/7 92/11 92/23 92/24 93/12 93/15 93/23 94/15 95/15 95/19 95/21 95/22 97/3 97/4 100/6 100/13 100/15 100/16 100/22 101/3 101/6 106/11 106/18 106/21 107/4 107/7 107/10 107/11 107/12 111/21 111/23
**themselves** [1] 35/19
**then** [136]
**theory** [1] 33/7
**there** [111] 5/3 7/4 9/12 9/21 12/21 13/13 13/20 14/20 15/20 16/20 16/22 16/24 19/4 19/12 21/8 21/14 21/24 22/9 25/19 26/16 27/20 28/17 31/8 32/17 34/1 42/12 42/13 44/7 45/3 48/9 48/11 50/13 50/15 50/15 51/14 51/23 52/1 53/9 53/21 55/16 55/21 55/22 55/24 57/13 57/18 59/10 61/16 61/19 61/20 62/6 63/15 63/16 64/13 64/20 64/21 64/23 65/4 65/9 65/23 67/5 67/6 67/10 68/3 69/23 69/25 70/1 70/5 70/9 72/7 72/8 72/12 73/18

73/18 74/24 75/8 75/18 77/14 77/25 78/7 80/1 83/20 84/14 85/16 88/13 89/3 89/8 91/5 92/1 93/20 94/8 95/13 97/19 100/6 100/9 100/16 101/19 102/8 105/14 105/18 107/15 107/20 108/21 110/7 110/13 110/15 110/23 111/24 112/5 112/8 113/2 113/20
**there's** [2] 38/3 69/18
**therefore** [5] 19/11 22/19 27/3 34/10 101/19
**these** [62] 5/15 6/19 18/13 36/5 45/16 45/17 46/4 47/1 47/5 47/6 50/2 50/5 50/6 50/20 52/7 52/9 55/17 68/23 69/12 69/15 70/2 72/7 72/10 74/14 77/6 79/22 80/4 80/12 80/13 80/18 81/10 81/19 81/20 81/21 83/5 83/24 84/24 85/18 86/15 88/22 89/12 89/13 89/21 90/1 90/16 91/20 91/21 92/1 94/18 96/7 96/22 96/23 97/12 97/24 99/22 99/22 100/4 100/13 100/20 101/2 102/12
**they** [145]
**they're** [2] 18/11 97/25
**they've** [3] 67/18 67/24 97/15
**thin** [1] 16/17
**thing** [15] 7/8 43/11 52/20 52/25 57/14 58/22 73/8 77/4 82/14 84/22 88/6 106/1 106/5 112/12 113/8
**things** [24] 5/10 5/15 6/24 11/7 15/3 23/11 31/19 37/13 51/12 51/18 53/23 54/18 67/5 67/15 68/16 83/10 86/9 86/15 90/16 92/21 107/1 107/5 108/11 114/10
**think** [92] 4/25 5/3 5/9 6/10 6/16 7/10 9/1 9/21 14/11 14/14 14/20 15/21 15/23 16/6 16/13 17/2 17/3 18/8 19/4 20/4 20/14 21/18 23/21 27/1 28/6 29/16 30/2 31/1 31/3 31/10 32/7 33/13 36/23 37/3 38/17 42/22 43/22 44/10 48/6 48/25 50/10 50/18 52/1 55/4 60/8 60/11 61/4 62/2 64/14 65/10 65/13 65/14 68/10 68/18 69/17 72/14 72/15 72/17 72/18 74/8 75/5 78/20 79/17 79/21 82/1 82/11 82/15 82/18 82/21 85/22 86/1 86/22 87/16 88/13 88/22 89/14 90/14 90/17 90/22 91/3 91/9 93/6 95/2 97/13 102/2 106/12 106/14 107/25 108/10 111/12 113/1 113/19
**thinking** [3] 7/20 7/22 31/13
**thinks** [1] 70/8
**third** [5] 2/23 27/19 38/21 65/21 112/3
**this** [184]
**those** [37] 8/1 12/13 17/19 18/21 24/3 25/11 29/20 31/18 35/23 41/17 48/20 53/23 54/13 57/1 58/25 59/15 60/18 64/23 68/20 70/14 70/19 81/18 86/8 87/2 87/7 88/4 90/3 92/20 93/17 93/20 93/22 94/13 94/16 96/22 102/7 103/19 104/4
**though** [5] 13/15 19/7 68/18 95/17 109/22
**thought** [6] 33/15 52/25 53/14 59/8 92/23 99/20
**thoughts** [2] 28/23 100/11
**three** [7] 6/14 29/24 41/18 42/22 43/16 72/2 110/17
**threshold** [2] 19/22 22/9
**through** [22] 8/9 42/1 49/25 50/9 50/20 54/11 55/5 57/1 57/3 57/25 64/17 64/17 64/19 64/20 66/10 72/7 77/16 80/6 83/15 86/12 100/2 102/10
**throughout** [1] 71/22
**throwing** [1] 38/20
**thrown** [1] 33/25
**Thursday** [6] 106/1 106/5 107/19 112/4 112/6 113/8
**tie** [2] 83/9 105/9
**time** [49] 4/4 5/8 17/12 22/15 34/24 43/18 43/19 46/5 46/7 48/23 50/1 50/2 54/9 55/5 56/1 56/9 56/12 56/15 56/15 56/19 56/20 56/23 63/22 64/2 64/15 70/13 70/19 71/4 71/6 71/20 71/22 73/25 77/22 91/9 92/17 94/7 94/18 95/4 95/5 95/15 96/18 98/14 106/3 107/21 112/1 112/10 113/1 113/2 113/16
**timely** [2] 26/9 69/4
**times** [3] 16/20 21/2 29/24
**timing** [1] 105/18
**tiny** [1] 112/8
**tissue** [1] 78/21
**title** [1] 97/24
**titled** [1] 94/12
**tittles** [1] 78/6
**today** [1] 26/15
**today's** [1] 103/2
**together** [6] 76/12 79/22 83/9 87/18 87/23 88/15
**tomorrow** [4] 7/14 7/18 14/24 104/20
**tonight** [1] 108/22
**too** [8] 23/19 33/13 46/13 61/8 77/23 78/10 104/11 105/22
**took** [5] 87/17 87/21 87/22 89/23 94/4

**T**

**top [5]** 43/1 43/3 43/5 47/13 101/1
**total [2]** 10/19 18/1
**totally [5]** 13/9 46/15 58/21 58/24 108/15
**touch [5]** 36/18 109/14 109/17 109/17 111/20
**touching [1]** 110/10
**towards [1]** 106/13
**town [1]** 107/23
**Training [1]** 98/4
**transcribed [1]** 96/12
**transcript [6]** 1/12 23/23 24/2 72/16 116/7 116/8
**transcripts [3]** 5/7 23/20 23/20
**treat [1]** 82/6
**treble [4]** 28/19 28/24 29/3 29/18
**trebled [3]** 33/9 33/10 33/16
**trebling [1]** 11/3
**trial [41]** 4/23 5/8 8/8 8/9 8/15 8/22 8/25 9/14 9/16 9/21 11/3
11/15 11/16 11/17 13/16 14/1 20/11 24/25 33/20 55/11 59/12
59/24 61/22 63/24 70/12 77/25 78/12 83/6 83/20 84/1 84/9
105/2 105/3 105/18 109/3 109/8 110/14 113/16 113/16 114/5
114/18
**trials [2]** 62/20 63/24
**tried [1]** 37/23
**trier [1]** 99/11
**tries [1]** 56/4
**true [2]** 7/12 47/22
**trust [1]** 62/4
**truth [3]** 46/22 47/11 72/9
**try [11]** 31/11 44/21 52/23 63/6 94/21 106/14 106/15 106/24
108/16 109/3 111/10
**trying [8]** 13/2 36/8 41/7 50/5 52/22 53/5 58/18 108/4
**Tull [1]** 22/5
**turn [10]** 10/8 35/13 57/24 63/4 75/13 82/4 90/21 98/25 106/7
107/2
**turns [2]** 10/15 74/24
**tweaks [1]** 15/13
**twice [1]** 43/7
**twist [1]** 91/18
**two [54]** 2/8 6/14 24/19 39/19 40/13 40/24 41/4 41/10 41/23
41/24 42/14 46/22 47/19 49/24 52/1 58/24 58/24 58/25 58/25
62/24 68/2 70/19 70/20 71/9 71/10 71/14 72/1 71/24 72/1 72/1
72/5 72/9 72/10 72/22 73/17 73/24 74/4 74/5 75/6 81/21 88/8
90/9 92/11 93/20 94/11 94/16 94/18 96/3 99/22 100/4 100/11
100/15 101/4 109/10
**two-page [1]** 39/19
**type [3]** 32/21 53/4 90/12
**types [6]** 6/20 17/19 18/14 31/19 49/24 75/21
**typing [1]** 47/2

**U**

**U.S [2]** 80/15 81/19
**U.S.C [1]** 20/15
**unanimity [1]** 110/16
**unauthenticated [1]** 94/19
**unbeknownst [1]** 94/11
**under [22]** 5/17 10/18 18/3 20/16 20/25 21/3 21/15 33/12 34/10
46/22 47/9 47/10 47/23 50/16 56/1 56/9 56/15 71/3 81/5 85/9
92/15 106/22
**underestimated [1]** 102/14
**underlying [1]** 85/15
**understand [19]** 5/10 15/23 19/9 27/21 36/12 36/12 44/19 57/4
58/22 63/2 70/4 76/3 85/21 87/3 87/15 87/16 91/6 91/8 102/9
**understanding [3]** 13/7 37/1 87/12
**understood [14]** 34/18 36/20 39/12 44/14 79/4 81/23 82/3
84/16 84/17 91/17 92/3 92/8 95/18 114/8
**unduly [1]** 29/1
**unfair [3]** 34/17 73/9 111/9
**UNITED [5]** 1/1 1/14 2/22 17/5 22/5
**United States [2]** 17/5 22/5
**universe [1]** 24/10
**unless [3]** 78/7 78/10 99/1
**unnecessary [1]** 13/4
**unreasonably [1]** 38/19
**until [6]** 22/22 30/23 94/17 105/1 106/9 113/9
**unwanted [1]** 65/25
**unwieldy [1]** 113/21
**up [49]** 15/10 22/24 29/19 29/24 30/6 34/7 39/4 39/20 51/23
51/23 51/24 62/23 64/14 67/16 68/2 69/10 75/19 80/11 84/14
86/21 89/22 89/23 94/24 97/17 98/17 98/19 102/25 103/4
103/10 103/14 105/15 106/8 106/19 107/2 107/5 107/9 107/19
107/21 108/7 108/12 109/4 109/23 109/25 110/5 110/9 111/6
112/19 112/23 113/19
**up-line [1]** 97/17
**updated [1]** 108/18
**upload [1]** 80/5
**uploaded [2]** 90/1 90/3
**upon [3]** 66/25 70/15 113/22
**upset [1]** 47/6
**us [14]** 8/24 19/20 22/3 26/14 32/12 38/4 38/6 66/3 81/9 92/17
94/11 94/16 100/13 112/11
**use [34]** 10/16 16/25 35/23 37/13 43/10 51/14 52/10 52/23
59/19 59/21 59/22 60/4 60/19 62/9 63/22 64/1 64/9 68/1 70/12
73/6 74/8 75/24 76/25 79/6 92/23 99/23 101/6 108/25 109/6
110/24 111/11 111/15 111/21
**used [50]** 11/5 51/24 59/18 62/3 67/19 67/24 70/20 70/22 70/25
71/9 71/14 71/24 72/1 72/1 72/2 72/5 72/5 72/6 72/22 74/2
74/25 75/6 75/8 79/23 79/24 89/22 90/21 90/22 95/2 95/11
95/14 96/7 96/24 97/1 97/4 98/10 98/22 100/10 100/14 100/15
100/20 100/21 100/23 101/4 101/12 101/20 102/6 102/12
102/19 102/24
**user [1]** 94/2
**uses [3]** 53/23 71/20 91/16
**using [13]** 5/18 6/1 29/11 50/3 52/6 54/1 72/9 72/10 80/16
81/20 86/12 102/19 110/24
**utterance [3]** 47/5 47/20 49/1

**V**

**value [1]** 34/16
**venue [1]** 68/17
**verdict [20]** 11/20 12/3 13/8 13/11 13/12 13/17 13/19 14/3
14/17 15/7 15/7 15/9 15/18 23/16 23/17 25/9 29/19 104/24
105/9 108/19
**verification [4]** 65/1 65/3 65/5 65/13
**vernacular [2]** 53/24 67/22
**version [2]** 45/8 58/1
**versus [3]** 4/5 5/3 8/4
**very [20]** 32/11 32/11 33/16 57/1 60/19 61/11 62/20 63/3 63/23
79/21 83/1 88/25 89/5 89/7 91/11 97/18 100/24 101/15 101/18
102/4
**Vi [2]** 96/13 96/19
**view [4]** 6/23 30/23 78/15 110/8
**viewing [1]** 93/13
**violated [3]** 20/25 21/6 51/15
**violates [2]** 29/12 97/13
**violating [3]** 52/2 52/5 52/12
**violation [7]** 20/7 20/21 20/21 21/16 22/18 30/16 31/8
**violations [4]** 20/17 21/10 21/11 27/16
**violative [1]** 16/9
**VISALUS [83]** 1/7 4/6 6/12 9/19 12/9 12/18 12/19 14/5 17/6
17/10 18/10 19/8 26/22 27/4 35/17 35/20 36/6 36/7 36/9 36/23
37/22 38/9 39/1 40/25 41/7 45/16 45/17 45/18 46/5 46/6 46/8
46/11 46/14 47/2 47/13 47/13 47/14 47/22 49/14 49/24 50/2
50/5 50/6 52/2 52/5 52/8 52/9 52/12 70/20 71/9 71/14 72/2 72/5
72/23 74/25 80/4 81/14 81/15 81/19 86/10 89/22 89/23 90/2
90/9 91/16 91/22 93/22 95/10 95/14 96/4 96/22 96/24 98/10
98/22 99/6 100/13 100/18 101/18 102/12 102/18 106/17
106/17
**ViSalus's [24]** 17/7 28/15 28/25 35/14 35/15 35/18 35/25 36/1
36/8 36/11 37/16 38/1 39/21 39/22 40/9 41/2 45/13 49/9 50/9
95/1 96/6 99/23 103/5 103/11
**visual [1]** 39/15
**voice [27]** 5/19 5/22 6/2 6/13 17/9 18/14 27/17 39/2 46/3 46/6
49/25 52/5 52/10 53/16 53/16 67/19 68/1 70/21 71/21 72/6
79/24 85/19 85/25 86/17 101/2 102/3 102/19
**voices [1]** 54/1

# V

**voir [9]**  15/5 104/12 106/6 106/7 106/9 106/23 108/20 110/18 110/19

# W

**wait [3]**  23/7 23/8 61/21
**waiver [1]**  28/6
**waiving [1]**  114/14
**WAKEFIELD [15]**  1/14 4/5 6/10 6/13 6/14 6/18 6/20 12/8 36/19 37/4 37/5 37/20 38/3 62/10 101/1
**Wakefield's [4]**  7/10 7/11 31/24 38/5
**walk [1]**  109/4
**walks [1]**  82/7
**wall [6]**  90/25 90/25 91/3 91/6 91/10 91/25
**want [90]**  6/21 10/1 14/10 14/25 15/12 24/15 24/21 25/13 25/17 25/19 26/8 27/9 28/2 28/11 29/2 29/4 31/1 32/20 35/4 36/1 36/4 41/13 48/17 50/7 50/10 51/12 51/17 51/22 54/2 55/1 55/17 57/14 59/2 59/2 59/3 59/4 59/7 59/15 59/21 59/23 60/9 60/19 61/16 62/15 62/15 62/24 64/1 64/6 66/1 67/23 68/16 69/5 69/13 72/16 76/13 77/2 77/6 77/10 77/14 79/12 83/3 83/4 83/13 84/18 84/22 85/5 85/5 85/6 91/19 93/12 104/17 106/12 107/1 107/22 109/4 109/5 109/5 109/6 109/7 109/19 109/24 110/4 110/6 111/11 111/15 111/16 111/21 112/13 114/10 114/11
**wanted [7]**  7/23 13/15 23/2 30/11 45/10 74/18 101/9
**wants [10]**  23/4 62/23 63/18 73/18 74/10 74/14 77/15 78/25 101/5 111/25
**was [120]**
**wasn't [3]**  8/23 21/25 36/25
**wav [4]**  98/10 98/12 98/20 98/24
**way [43]**  4/25 6/21 12/4 13/11 16/4 17/20 17/21 18/24 19/6 21/18 22/21 23/19 29/1 30/22 31/5 31/10 31/16 32/17 32/19 34/3 39/9 48/25 51/2 51/21 54/21 56/13 57/16 58/17 61/15 62/19 69/17 76/14 78/5 92/4 93/15 95/12 97/12 98/15 98/16 99/7 99/8 99/14 113/5
**ways [1]**  23/3
**we [296]**
**we've [2]**  67/24 87/18
**Wednesday [7]**  4/24 11/17 55/12 105/18 105/20 105/25 112/9
**week [6]**  14/9 26/12 103/10 104/24 105/3 105/16
**weekend [1]**  55/10
**weigh [2]**  32/8 34/15
**weight [1]**  88/17
**welcome [10]**  51/21 57/11 60/16 83/11 83/18 85/22 104/6 105/8 107/2 111/15
**well [30]**  10/9 13/10 25/21 25/24 26/25 31/1 31/20 31/21 32/20 33/22 47/24 52/11 54/17 60/19 60/24 61/5 62/5 63/3 66/15 68/11 71/1 78/22 82/10 86/2 87/8 88/25 101/17 105/2 111/2 111/7
**went [2]**  36/7 39/2
**were [57]**  6/4 6/19 6/22 7/1 7/3 7/3 8/21 13/16 13/25 15/24 19/16 22/25 33/21 36/6 37/1 38/13 40/13 40/24 41/24 42/13 49/25 52/22 52/24 60/5 67/6 67/7 68/9 68/23 72/8 72/9 72/10 72/25 79/6 80/12 80/13 80/15 80/18 81/17 88/8 88/9 89/3 91/4 92/12 92/21 92/23 93/22 94/11 95/11 95/14 96/14 97/12 101/18 101/20 101/20 103/19 104/4 111/4
**weren't [1]**  38/15
**Western [1]**  21/22
**what [158]**
**what's [17]**  5/1 5/14 5/16 11/13 22/3 35/25 51/2 61/12 65/8 66/25 72/25 84/19 90/14 95/5 101/16 101/23 111/9
**whatever [7]**  24/21 51/22 69/13 79/12 105/9 107/23 110/6
**when [37]**  7/15 10/23 18/20 22/12 23/2 27/23 28/9 29/14 40/19 45/6 50/1 50/2 52/20 53/21 54/2 54/13 55/19 59/23 68/25 71/12 75/1 75/17 77/5 78/18 78/19 82/20 84/10 82/12 91/25 95/7 95/10 95/21 99/16 99/16 107/20 111/23 114/11
**whenever [2]**  53/19 98/7
**where [36]**  8/22 9/4 13/2 17/8 17/10 19/8 29/16 36/9 38/15 39/19 40/5 40/16 40/20 41/7 45/19 45/19 46/8 47/13 49/15 63/24 69/18 71/4 73/1 80/21 85/24 85/25 92/10 96/17 96/25 98/8 98/9 109/19 110/9 110/25 111/2 111/3
**wherever [2]**  110/9 111/16
**whether [34]**  5/25 7/14 8/6 9/13 11/4 11/5 19/11 21/16 21/17

24/8 24/14 25/3 26/22 26/22 27/4 27/20 28/19 29/18 29/19 35/23 50/7 56/24 58/4 54/18 61/18 62/1 64/5 69/23 83/9 94/9 102/12 103/21 104/25 106/24
**which [39]**  5/11 9/18 12/3 12/19 15/20 20/16 21/15 23/24 25/1 25/2 31/2 31/15 39/2 39/13 52/18 53/3 55/17 58/2 58/15 60/5 64/23 67/23 68/10 73/7 85/18 87/21 89/25 90/17 90/21 94/18 97/19 100/21 100/23 100/24 101/2 101/13 103/8 103/13 111/12
**whichever [1]**  20/22
**while [3]**  23/13 64/2 73/24
**who [14]**  16/25 17/1 17/5 17/18 18/3 19/21 36/5 36/12 41/3 48/14 48/19 48/23 94/2 115/1
**whoever [2]**  25/22 111/4
**whole [1]**  49/3
**whose [1]**  49/3
**why [27]**  13/17 20/7 26/10 36/4 37/22 39/5 39/7 42/10 42/15 42/16 45/25 48/6 48/17 49/7 52/9 58/22 59/7 61/6 63/21 65/23 67/4 71/17 71/23 93/19 94/24 99/3 102/10
**wide [3]**  7/9 9/18 24/9
**will [168]**
**willful [4]**  20/6 21/10 24/3 25/3
**willfully [5]**  10/24 21/6 21/17 59/16 60/1
**willfulness [37]**  6/4 6/6 6/9 19/21 19/21 19/25 20/4 20/6 20/10 22/18 23/15 23/21 24/1 24/12 25/16 26/15 27/1 27/2 27/24 28/7 28/10 38/25 39/10 45/4 46/12 46/16 46/17 54/20 54/20 54/25 55/7 59/13 64/10 77/18 77/20 104/18 113/25
**willing [1]**  33/12
**win [1]**  41/7
**WinBack [6]**  40/14 41/6 41/25 42/15 43/8 50/8
**winning [1]**  114/16
**wins [2]**  32/3 32/5
**wish [2]**  4/9 98/17
**withdraw [3]**  64/8 67/1 72/19
**withdrawal [1]**  60/13
**withdrawn [3]**  5/11 60/15 64/11
**withdrew [1]**  92/19
**within [5]**  17/24 70/22 74/15 109/15 110/10
**without [15]**  7/9 11/15 38/19 42/6 43/5 43/12 52/24 53/14 53/24 65/11 76/7 102/7 114/13 114/14 116/8
**witness [46]**  23/4 23/5 23/7 23/10 23/12 23/15 30/19 50/9 68/11 68/12 68/13 74/11 74/11 74/13 74/14 78/17 82/13 83/16 84/6 90/16 94/5 98/9 98/9 98/13 98/19 98/20 99/7 99/23 100/2 107/9 108/18 109/20 109/20 110/1 110/2 110/3 110/3 110/4 110/5 110/5 110/25 111/7 112/3 112/6 113/9
**witness's [1]**  109/21
**witnesses [7]**  69/14 75/2 93/23 94/4 97/3 106/2 111/20
**won't [5]**  54/19 54/25 59/7 59/9 65/12 76/21 109/13 109/24 113/3
**wonder [1]**  20/7
**wood [3]**  109/15 109/17 110/11
**word [6]**  43/19 51/1 57/17 74/8 75/24 97/9
**words [12]**  35/24 37/13 41/15 42/20 42/24 43/15 43/18 62/25 63/3 63/7 71/2 73/5
**work [9]**  7/6 37/24 37/24 55/10 55/13 57/1 57/3 111/8 111/17
**worked [3]**  36/24 80/4 82/10
**working [2]**  72/9 76/12
**works [2]**  36/12 107/24
**world's [1]**  114/15
**worried [1]**  59/21
**worry [6]**  19/19 39/10 52/15 60/18 62/6 64/12
**worst [2]**  14/24 23/13
**worst-case [2]**  14/24 23/13
**worth [1]**  28/23
**would [87]**  4/24 5/1 5/3 6/11 7/7 7/17 9/1 9/3 10/18 13/2 14/7 14/20 15/18 15/21 18/22 21/14 23/24 23/25 24/7 24/13 24/19 25/4 25/6 26/5 29/17 30/16 30/22 31/24 32/19 33/12 33/20 34/9 34/12 36/21 37/7 38/6 40/3 45/5 47/12 47/21 47/22 47/23 49/5 49/21 53/3 58/19 61/1 61/6 61/17 61/20 68/13 68/14 75/3 75/3 75/18 75/19 75/21 76/6 76/6 77/16 79/11 80/4 80/5 80/6 80/8 84/12 85/14 87/9 89/9 89/18 91/11 92/13 93/6 94/24 95/2 95/15 96/4 97/20 98/23 98/25 99/15 104/24 105/2 106/18 107/21 112/21 112/22
**wouldn't [3]**  41/13 42/2 76/15
**wrap [1]**  105/15

**W**

**wrap-up [1]**  105/15
**write [1]**  16/20
**writing [3]**  24/15 24/16 107/6
**written [6]**  17/11 19/9 19/13 24/17 69/7 74/3
**wrong [4]**  25/22 38/23 47/15 53/18

**Y**

**Yeah [3]**  46/2 65/23 66/19
**years [2]**  73/17 73/24
**yell [1]**  109/24
**yellow [1]**  55/25
**yes [57]**  6/25 7/5 10/13 11/9 11/23 12/13 12/16 12/17 15/16
15/23 15/25 15/25 19/4 26/1 26/13 30/10 33/10 33/23 40/23
45/23 48/3 50/17 55/3 55/14 55/15 57/5 57/21 59/5 62/12 69/6
69/21 71/16 75/15 78/14 81/3 82/6 85/12 87/5 90/13 91/19
92/20 93/1 93/2 93/16 96/10 97/4 97/11 98/10 98/23 102/4
103/1 103/14 107/20 108/9 109/24 111/1 112/15
**yet [3]**  46/25 64/5 96/9
**you [432]**
**you'd [2]**  75/13 75/13
**you'll [6]**  7/25 29/21 40/8 105/8 105/12 106/11
**you're [11]**  10/20 11/7 18/8 32/18 33/21 71/8 83/11 84/10 92/10
107/2 109/3
**you've [5]**  77/24 92/10 100/15 100/16 101/14
**your [224]**
**Your Honor [103]**  4/4 5/13 6/9 7/7 7/10 7/23 7/25 8/13 9/5 9/12
10/8 11/9 11/14 12/5 12/25 13/14 13/19 13/23 14/13 14/20 16/2
19/4 25/18 26/13 27/12 27/14 29/5 31/1 31/23 32/17 33/6 33/24
34/18 36/3 37/20 37/25 38/24 39/12 39/20 40/2 41/6 42/4 42/6
42/17 42/19 43/4 43/12 43/22 44/14 44/23 45/21 46/7 46/21
46/24 47/12 50/4 55/3 60/22 61/4 61/25 62/12 66/3 69/7 71/16
72/20 73/11 73/21 74/20 75/11 77/12 79/5 79/9 80/20 81/3
84/19 85/10 85/12 86/5 87/1 87/9 88/6 88/25 89/6 89/21 92/8
92/15 93/17 96/3 96/4 96/8 96/20 97/2 97/8 99/6 99/21 100/11
101/1 103/4 103/7 108/3 108/6 110/23 112/2
**Your Honor's [3]**  9/15 59/17 67/15
**yourself [2]**  4/8 109/22

**Z**

**Zachary [2]**  2/10 4/19
**zero [1]**  112/9