1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF OREGON

3

4   LORI WAKEFIELD,                    )
                                       )
5           Plaintiff,                 )    3:15-cv-01857-SI
                                       )
6   vs.                                )    April 8, 2019
                                       )
7   VISALUS, INC.,                     )      Portland, Oregon
                                       )
8           Defendant.                 )

9

10

11          (Pretrial Conference Hearing)

12          TRANSCRIPT OF PROCEEDINGS

13      BEFORE THE HONORABLE MICHAEL H. SIMON

14       UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

1                              APPEARANCES

2

FOR THE PLAINTIFF:        Greg Dovel
3                             Simon C. Franzini
                              Julien A. Adams
4                             Jonas B. Jacobson
                              Dovel & Luner, LLP
5                             201 Santa Monica Boulevard, Suite 600
                              Santa Monica, CA  90401
6

7    FOR THE DEFENDANT:       John Maston O'Neal
                              Quarles & Brady LLP
8                             Two North Central Avenue
                              Phoenix, AZ  85004
9

10                            Zachary S. Foster
                              Quarles & Brady LLP
11                            101 E. Kennedy Boulevard, Suite 3400
                              Tampa, FL  33602
12

13                            Nicholas H. Pyle
                              Miller Nash Graham & Dunn LLP
14                            111 SW Fifth Avenue, Suite 3400
                              Portland, OR  97204
15

16

17

18

19

20

21

22   COURT REPORTER:          Dennis W. Apodaca, RDR, FCRR, CRR
                              United States District Courthouse
23                            1000 SW Third Avenue, Room 301
                              Portland, OR  97204
24                            (503) 326-8182

25

1                                INDEX

2   Pretrial conference proceedings                          4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (April 8, 2019)

2          P R O C E E D I N G S

3          (Open court:)

4          THE COURT:  Good morning.  I was completing my review

5     of defendant's objections to plaintiff's designations.  That's

6     why it took a little bit longer.

7              Please, be seated.  Relax, please.

8              All right.  One moment.

9              Let me share with you what's on my agenda and see if

10    you have any comments on that.  Then we will also talk about

11    anything else that you all want to talk about.

12             One moment.  All right.  I do note that I did receive

13    from Defendant's Exhibit 214 and 215, which were formerly

14    Plaintiff's Exhibits 23 and 29 respectively.

15             So I'll allow those to be marked as defendant's

16    exhibits.  Then I've also received and read defendant's

17    objections to plaintiff's designations.  So we should talk

18    about how we are going to handle the reading of the various

19    deposition designations.  We should talk about whether you all

20    have any suggested amendments or edits, corrections, or

21    objections to my voir dire script, to my preliminary jury

22    instructions, to the final jury instructions that will be

23    delivered at the close of the case, but before your closing

24    argument, and to the special verdict form that I have prepared.

25             We had a little bit of discussion by email over the

1    weekend about that.  So we can talk about that further.  So

2    that's my agenda.  Then anything else that anyone wishes to add

3    to that agenda, you're welcome to do so.

4            Let's begin with the reading of the deposition

5    designations.  By the way, let me ask this question:  Does

6    Justin Call still work for the defendant?

7            MR. O'NEAL:  He does not, Your Honor.

8            THE COURT:  Does Scott Gidley still work for

9    defendant?

10            MR. O'NEAL:  He does, Your Honor.

11            THE COURT:  And does John Laun still work for

12    defendant?

13            MR. O'NEAL:  He does not.

14            THE COURT:  Okay.

15            All right.  So there were some question -- am I

16    correct -- I'm going to ask plaintiff.  These are not

17    videotaped, correct?

18            MR. DOVEL:  Your Honor, this is Greg Dovel.  That is

19    correct.

20            THE COURT:  So I think the best way to present the

21    excerpts from depositions to the jury in a way that the jury

22    will be able to follow is as follows:  This is my thinking, but

23    you can tell me if you have any different approaches or other

24    objections.

25            For any given witness, and -- we will just take

1  Justin Call first.  Whenever plaintiff wants to, if you will,

2  call Justin Call in lieu of live testimony, but through

3  deposition, I'll explain to the jury what we are going to see

4  next.  I'll explain to them what a deposition is, consistent

5  with our model instructions.

6          Then I'll tell them that the plaintiff is providing a

7  reader who will essentially play the role of Justin Call.  He

8  will come up to the witness stand.  We will swear the reader in

9  to read the transcript accurately, and then I will invite one

10  of plaintiff's counsels to be the questioner.  The witness will

11  read the answers.

12          I think it probably is best for the questioner to

13  begin with basically a page and line number, so for Mr. Call,

14  it will go something like this -- I guess we don't necessarily

15  need to do that on the direct.  As long as you worked out that

16  we are just going to be reading of the entirety of the

17  deposition except for what I've excluded, it would be a

18  question and reading.

19          "Would you state your full name for the record."

20          The witness responds, "Justin Call."

21          Then you go to the next piece of yellow highlighting,

22  or where I have concluded that blue is appropriate for

23  cross-designation.  That is, under the rule of completeness, it

24  should be read at the same time.  Then that questioner

25  immediately will continue with the next item of blue that I

 1   have allowed for cross-examination at the same time and the

 2   witness reads the answer.  That will be plaintiff's direct

 3   examination of Justin Call.

 4        Then where the defendant wants to bring out other

 5   information from Justin Call, then you can say, "I have no

 6   further questions."  Then I'll tell the jury, even though

 7   Mr. Call is not here, under the equivalent or an analogy to

 8   cross-examination, I will then have the defendant read whatever

 9   questions the defendant wants to read.  But that same reader

10   who was reading Justin Call's role will now continue to read

11   the answers.  So the jury will understand this person is

12   reading the answers that Justin Call gave.

13        The defendant may then inquire and ask the questions

14   that it wants to that I was not allowing under rule of

15   completeness, but will now allow the defendant to do under an

16   analogy cross-examination.

17        And I'll tell you what, if Justin Call were here, and

18   the plaintiff wanted to ask direct examination questions, and

19   the defendant then wanted to go beyond the scope in

20   cross-examination so that Mr. Call would not need to come back

21   later in the trial, I normally would allow that.  I would let

22   that be done normally under a theory of efficiency, and I would

23   make the defense then under those circumstances proceed with

24   non-leading questions.  But these aren't sufficiently

25   suggestive questions that I'm going to worry about it.

 1            So to be clear, plaintiff calls the witness, and will

 2     read the yellow portions.  Don't skip over the blue portions

 3     that I have designated as appropriate cross-designation under

 4     the rule of completeness, and there is not that much.

 5            Then whenever you tell me you have no further

 6     questions of Mr. Call, I'll then invite defense counsel to ask

 7     any of their blue-designated/cross-designated questions that

 8     they have, except where I have sustained an objection -- and

 9     there is not that much of that.  Then you ask all the questions

10     of Mr. Call that you want or the Mr. Call sit-in, the reader

11     that you want, and then when we are done.  We are done, and

12     Mr. Call's testimony has now been fully presented to the jury.

13            It may be better for an appellate record -- well, let

14     me ask you this:  Would you be planning on reading it straight

15     through so we don't need to have our court reporter take all of

16     that down because it is all marked in your transcripts that

17     have been filed?  Or are you planning on breaking up portions

18     of that reading with things such that we really do need live

19     reporting?

20            MR. O'NEAL:  Judge, I would rather do the latter.  As

21     I was talking -- I am concerned we are going to be realtime

22     crunched in the trial, and so I think the latter is the better

23     way to do it.

24            THE COURT:  Normally our court reporter is a superb

25     reporter, when a lawyer asks a question, the witness gives an

1   answer, and our reporter takes that all down.  Just remember

2   that as you are reading a question, read it slowly.  If you are

3   not reading it slow enough, either the reporter or myself will

4   jump in and ask you to read more slowly.  I think we can

5   proceed that way as long as you read the questions slowly and

6   the reader reads the answers sufficiently slowly.

7              Let me ask interrupt and ask our court reporter,

8   Dennis, is that okay with you?

9              THE COURT REPORTER:  Yes.

10             THE COURT:  Anything from plaintiff on that issue?

11             MR. DOVEL:  Just a couple of points of clarification,

12  Your Honor.

13             There are a couple of additional clips designated in

14  blue, for completeness, that we did not object to that we agree

15  should be read for completeness.  We will be adding those as

16  well as the ones Your Honor has ruled on.

17             Second, Your Honor, for certain topics, particularly

18  with Mr. Gidley, there are certain sections that are out of

19  order in the transcript.  We want to combine topics into a

20  logical sequence.  What we proposed to do is prepare an actual

21  script of the questions and answers, provide it to opposing

22  counsel, and see if they have an objection how we've organized,

23  and proceed in that manner.

24             THE COURT:  That's fine.  Just make sure I get the

25  script too.  If there are any objections, let me know in

1  advance.  But as you are doing this, you can't designate new

2  things.

3          MR. DOVEL:  Yes, Your Honor.

4          MR. O'NEAL:  That's fine.  If we could also ask that

5  whatever it was that they are going to be adding in as

6  completeness, I would like to know what those sections are as

7  well.

8          THE COURT:  Right.  I think that's what I heard

9  Mr. Dovel say.  He is going to give a final script that will

10 show exactly what he is planning on reading to the witness,

11 what the witness will be answering, and that will include

12 everything that you've designated and the order you want to

13 proceed in.  That also includes, when appropriate or when I've

14 ordered it, as needed, in order to satisfy the rule of

15 completeness, that's going to go in there too.

16          Then you can let the plaintiff's counsel know, if and

17 when you can, what you're planning on doing in cross.  And if

18 you can do it in the same fashion, that will be terrific.  If

19 you can't, we will figure out some way to make it work.

20          MR. DOVEL:  Your Honor, the final thing is, there

21 will be a few exhibits that we will be displaying during the

22 reading.  I would propose that just for the record that if I'm

23 reading it, for example, I would say, "We are now displaying or

24 publishing Exhibit 45, page 1," just so the record is clear on

25 what's being shown to the jury.

1              THE COURT:  That's fine.  I think at that time you

2    will need to offer Exhibit 45, as I've indicated in my rulings.

3    If I'm inclined to accept it, I will then receive it at that

4    time.  Then you can ask me to show it to the jury.  I will say,

5    "Yes."  Then you can put it up on the jury's screen or however

6    else you wish to display it, and then you can resume with the

7    questions with Mr. Call about Exhibit 45.

8              Is that how you want to do it?

9              MR. DOVEL:  Yes, Your Honor.

10              THE COURT:  That will work.

11              MR. O'NEAL:  And objections to the exhibits should be

12    lodged at that time, Judge?  I know you've reserved ruling on a

13    few.

14              THE COURT:  There are a few that I am going to want

15    to hear some more talk about.  There are a few that especially

16    I'm going to want to hear some foundation about.  But where

17    I've said in my tentative ruling that I anticipate accepting

18    it, you're welcome to say, "No further objections," and all of

19    your previous objections are preserved.  If you want to say you

20    still object, I will ask, "Is there anything additional you

21    want to be heard about?"  If you say, "Yes," I'll let you be

22    heard.  If you say, "No," my anticipation is I'll overrule the

23    objection and receive the exhibit.

24              MR. O'NEAL:  Understood.

25              THE COURT:  But it is fine if you simply want to

1  treat all previous objections that have already been ruled on

2  in the pretrial order, or will be when I finalize it today,

3  those are all preserved as far as I'm concerned.

4       MR. O'NEAL:  Thank you, Judge.

5       THE COURT:  All right.  So that's how we will do the

6  depositions.

7       One further thing, Mr. Dovel.  I would appreciate it,

8  once you've figured out how much and in what order you are

9  going to be asking these deposition questions to folks, I would

10 like a time estimate.  I'm not going to hold you to it, but I

11 would like a general sense so I can give the jury breaks, as

12 appropriate, plan the trial days, as appropriate.  But I would

13 like your best sense or estimate as to now that you're going to

14 give me all of Justin Call's testimony that will be read,

15 including the portions that must be included for completeness,

16 how long do you anticipate that will last.

17      MR. DOVEL:  Yes, Your Honor.

18      THE COURT:  Okay.  I think that's all we need to talk

19 about deposition testimony, unless anybody else has any other

20 issues on deposition testimony.

21      Seeing none, okay.

22      Should we turn next to my voir dire script?

23      As you can see, I do most of the questioning of the

24 jury.  It is my practice to be very thorough and try to fairly

25 and evenhandedly find out, not only relevant background

1   information about the jurors, but also to explore their

2   opinions, their attitudes on certain key issues relating to

3   this case.

4           Then when I am done, I will invite counsel, first

5   plaintiff's counsel and then defense counsel, one attorney from

6   each side, to do appropriate voir dire.  You won't be limited

7   to just following up on any answers.  You can ask your own

8   questions, if you wish.  I can't recall whether we discussed

9   this last week, so at the risk of being redundant, the one

10  thing I don't allow counsel to do is use voir dire as a

11  mini-opening statement.  You'll have an opportunity soon enough

12  to do your opening statement.  But don't use this to basically

13  tell them what the case is about and what the evidence will

14  likely show.

15          You're welcome to ask about their experiences in

16  life, their attitudes, their opinions.  You will hear me asking

17  them to make certain commitments to me about not doing

18  independent research, keeping an open mind and the like, but

19  you can't ask them to make commitments to you.  You can't ask

20  them if they find the facts that you have proven such and such,

21  will they vote in favor of the plaintiff.  Or if plaintiff

22  doesn't prove thus and such, will they vote in favor of the

23  defendant.  That, I don't think is proper for voir dire.

24          Any comments that anyone wants to make on my

25  voir dire script?

1              MR. DOVEL:  Your Honor, this is Greg Dovel for the

2       plaintiff.  We have no objection to the Court's voir dire

3       script.

4              MR. O'NEAL:  No objections; one addition, Judge.

5       Item No. 6, Blake Mallen.

6              THE COURT:  All right.  Do I have a statement of what

7       Mr. Mallen will be testifying about?  I did not see it in the

8       defendant's witness statement.

9              MR. O'NEAL:  You do not, Judge.  That's the witness

10      that we talked about at the last pretrial conference.  I sent

11      it to the plaintiffs over the weekend.  I am happy to send it

12      to you as well.

13             THE COURT:  Remind me what Mr. Mallen is going to

14      talk about.

15             MR. O'NEAL:  Mr. Mallen is the president/cofounder of

16      ViSalus, former CEO.  In sum, he is going to be talking about

17      the other call campaigns associated with ViSalus; that it was

18      not just limited to Voice Casting and Press One.  There is more

19      to it, Judge, but that's getting to the point.

20             THE COURT:  Please do file a supplemental witness

21      list with a summary of his testimony.  I will add Blake Mallen

22      to the list for the jury -- if they know him.

23             What city does he live in?

24             MR. FOSTER:  Los Angeles, I believe, Your Honor.

25      Los Angeles.

1           THE COURT:  Okay.  Let me explain how I do the jury

2    selection process.  If a juror in responding to me is just

3    obviously inappropriate for this trial, whether it be for

4    hardship reasons, can't be with us for more than a day, or

5    knows one of the witnesses or lawyers or somebody else, or

6    convinces me that they would otherwise be challengeable for

7    cause, what I generally do, I just excuse them on my own.  We

8    will then call up someone else, the next person in the line,

9    and you'll have a full list of all of the probably 30 folks or

10   so.

11          We will then call the next person up, and that person

12   fills the seat of the person that I've just excused.  Let's

13   suppose we call up the first 14 folks.  Juror No. 2 can't be

14   with us if it is more than a one-day trial.  I'm satisfied with

15   her explanation.  I excuse them.  Then juror No. 15 is called

16   up and sits in seat No. 2, and that becomes our new juror

17   No. 2.  I will say to that juror, "Can you be with us for the

18   duration of this trial?"  If they said, "Yes," we move on.  If

19   they say, "No," then No. 16 will take seat No. 2.  That's how

20   it will work.

21          Eventually we will get to a situation where we will

22   have 14 folks in the jury box that I'm not going to excuse for

23   hardship.  I've not heard anything that prompts me to want to

24   excuse them for cause, although you may still have that

25   opportunity to make that argument out of the presence of the

1  jury.

2          I then turn it over to plaintiff's attorney to

3  question for about 15 minutes, if you wish; defense attorney to

4  question for about 15 minutes.  I'll then ask counsel to see me

5  over at sidebar.  And I will ask, "Do you have any challenges

6  for cause?"  If you do, and if I grant them, we will then

7  excuse those folks, bring up the new people from the back of

8  the room, continue with our questions for those folks until

9  eventually we get to the stage where you tell me you have no

10 challenge for cause or I tell you I'm overruling your challenge

11 for cause.

12          By the way, none of that is going to be on the

13 record.  So I will give you the opportunity later, out of the

14 presence of the prospective jurors, to put your arguments on

15 the record that you argue that juror No. 7 should be challenged

16 for cause.  You can say why.  I will put on the record that I

17 have rejected that, and you've made your record.

18          But eventually we will get to the stage where we have

19 14 folks where they are clean for cause, either because you

20 don't have any objections or I've overruled your objections.

21 Then I'll send everybody in the hallway, and we will close the

22 doors for you to exercise your peremptory strikes; three

23 strikes per side.

24          In case we are running low numbers, in case we have

25 people that for whatever reason aren't here, that 14 may turn

into 13.  You will always be allowed your three strikes per

side.  If we end up with eight people on our juror, that's fine

with me.  All eight will deliberate to a unanimous verdict.  We

won't have any alternates in a civil trial.  If, however, we

are running out of folks, and we only have 13, you can still

can exercise your three peremptories per side, and then we will

have a jury of seven people.

        An interesting question is what do we do if you

choose not to exercise all of your peremptories?  My

inclination would be to let whoever is remaining be on the

jury.  So be it.  They decide unanimously.  Let me know if you

have any objections to that process.  I haven't seen it happen

yet.  But usually when you only have three per side, you'll

find three people that you will want to bump off on

peremptories.  But let's talk about what to do if you don't.

That is jury selection.

        Any questions?

        Yes.

        MR. O'NEAL:  Judge, with the strike-and-replacement

method, which I think we are using, in a hypothetical where a

prospective juror is removed in the middle of your voir dire,

how do you address what that new juror's answers might have

been to all of the previous questions?

        THE COURT:  Efficiently.  I will start by saying, "Is

there anything in particular that you would have raised your

1    hand on before?"  Then I will go back and ask most of the

2    questions again for that juror.  Since I'll just be talking

3    with one person, I will do it relatively expedited, but I will

4    try to cover all of the important points with that juror.  To

5    the extent I've left something out, you can either ask me to

6    cover something, or you can cover it in your examination.

7                   MR. O'NEAL:  Okay.

8                   THE COURT:  All right.  Any questions about voir

9    dire?

10                  All right.  I think we talked about our scheduling.

11   We will start at 9:00 a.m. on Wednesday of this week.  We will

12   pick a jury before we end the day on Wednesday.  I am

13   moderately hopeful that we will pick our jury with enough time

14   left over.  I really need to leave by one o'clock.  I am

15   moderately hopeful that we will be able to pick our jury and

16   actually have me read them preliminary jury instructions before

17   we end for the day.  That way we can start up Thursday morning

18   first thing with opening statements.

19                  So let's turn next to preliminary jury instructions,

20   and then I'll ask some questions about opening statements in a

21   few more moments.

22                  Any comments, issues, suggestions on my draft

23   preliminary jury instructions, which I sent to you all by

24   email?

25                  MR. JACOBSON:  Plaintiffs have one comment and

1    suggestion, Your Honor.   Your Honor is going to instruct the

2    jury that ViSalus does not contend that it had express written

3    consent.   But as the instructions stand now, both final and

4    preliminary, there is no definition of "express written

5    consent."   We don't think we need the whole full-blown

6    definition that we originally proposed, but we would ask

7    Your Honor to provide one sentence.   I can show Your Honor

8    where we would suggest inserting that in a slide.

9              THE COURT:   Sure.

10             MR. JACOBSON:   Your Honor, here are your current

11   tentative preliminary and final jury instructions on express

12   written consent.   Here is the full-blown definition of "prior

13   express written consent" that we proposed.   We would ask

14   Your Honor to include just this one sentence that I

15   highlighted.

16             THE COURT:   Let me write it down, and then I'll hear

17   from the defendant.

18             MR. O'NEAL:   So if I'm understanding correctly, what

19   the plaintiff is proposing is on the first paragraph on page 4,

20   last sentence, the clause, "Without having prior express

21   consent of the called party," that the plaintiff is proposing

22   to replace that clause with --

23             THE COURT:   What I just said is, "Can I write this

24   down and then hear from defendant?"

25             MR. O'NEAL:   I apologize.

1                    THE COURT:  Let me write it down, and then I'll be

2      able to focus on what you are saying.

3                    MR. O'NEAL:  I apologize, Judge.

4                    THE COURT:  All right.  I've written down the

5      sentence.

6                    Mr. O'Neal, you were saying, from the top, please.

7                    MR. O'NEAL:  My apologies, Judge.

8                    Maybe I should ask counsel again.  Is the highlighted

9      portion going to be added on, or is it replacing something?

10                    MR. JACOBSON:  Added on.

11                    THE COURT:  Where does plaintiff's counsel want it

12     added to?  First, on the preliminary instructions.

13                    MR. JACOBSON:  Your Honor, let me read this sentence

14     for the record.  The sentence we would like the Court to add

15     says, "'Prior express written consent' means a signed, written

16     agreement that clearly authorizes the caller to place

17     telemarketing calls using an artificial or prerecorded voice."

18                    Where we would suggest adding that is shown here,

19     Your Honor.  Your Honor's instructions first have a sentence

20     explaining what the TCPA prohibits.  That sentence ends by

21     saying --

22                    THE COURT:  One second.  What page is that?

23                    MR. JACOBSON:  On your proposed preliminary

24     instructions, Your Honor, this is on page 8.

25                    THE COURT:  One moment.  Okay.

```
 1              MR. JACOBSON:  We would propose inserting the
 2   sentence we proposed after the sentence that ends "without the
 3   prior express consent of the party being called."  Then insert
 4   the sentence we proposed, and then the instruction continues on
 5   as in Your Honor's tentative.
 6              THE COURT:  One moment.
 7              Okay.  Then on the final you want it inserted in
 8   Instruction No. 21?
 9              MR. JACOBSON:  Yes, Your Honor.
10              THE COURT:  One moment.
11              MR. JACOBSON:  Page 15.
12              THE COURT:  All right.  I understand what you are
13   asking for.  First of all, does the defendant have any further
14   questions about what plaintiff is proposing?
15              If not, defendant's position.
16              MR. O'NEAL:  No further questions.
17              THE COURT:  Any objection?
18              MR. O'NEAL:  Yes, Judge.  When I was going through
19   the instructions and also thinking about the case following our
20   last conference, two issues came up to me.  One, when I was
21   reading the instructions, given that defendant is not asserting
22   written consent which complies with the TCPA as an affirmative
23   defense, it struck me that we probably shouldn't be talking
24   about consent at all in any of the instructions.
25              So I don't know if you want to get into this in
```

1    depth.  I was actually going to address it more for purposes of

2    final instructions instead of preliminary.

3            THE COURT:  Now is fine.

4            MR. O'NEAL:  Your druthers, Judge.

5            So my thought is that what we should do is strike

6    references to consent, both in the instruction "prior express

7    consent not at issue," or perhaps a more modified instruction,

8    which gets to a more substantive issue.

9            I'm concerned that if we don't give some context to

10   the jury or provide them some part of the story as to why my

11   client was calling existing or former promoters who were their

12   sales agents or former or existing customers, that the jury is

13   going to make a mistake or assume that this was a random cold

14   calling campaign to a bunch of people it didn't have any

15   connection with.

16           My concern candidly got highlighted, Judge.  There

17   was a podcast that came up where someone was talking about that

18   very issue and said that they had a run-amuck jury and think;

19   that jurors hate mass calling campaigns, et cetera, et cetera.

20   And that's when it really crystalized for me.  I'm like, "Okay,

21   that's really a danger for purposes of prejudice."

22           So that has led me to this.  What I would like to do,

23   and I haven't penciled it out.  But I would like to put a

24   little bit more focus on the concept of consent, which is

25   something like, "ViSalus is not contending that it had consents

```
 1    which meet the requirement of the TCPA," or something like

 2    that.

 3              But I do think that we should be able to tell the

 4    jury as part of the story, "Hey, we did have a prior

 5    relationship with these people of some sort."

 6              THE COURT:  Sure.

 7              MR. O'NEAL:  "And that's the reason why we are

 8    calling them."

 9              THE COURT:  I have no problem with you telling the

10    jury of a prior relationship.  So which witness is going to do

11    that?  Is that going to be Mr. Mallen?

12              MR. O'NEAL:  I believe so, Judge, although I believe

13    there is some designated deposition testimony both from Call

14    and Gidley on the point as well.

15              THE COURT:  I think in terms of what the plaintiff is

16    requesting here, in terms of what is "prior express consent," I

17    don't see a problem with what they are proposing.

18              Is it legally incorrect?

19              MR. O'NEAL:  I think it would be better to say that

20    it is incomplete from a legal definition.  It certainly

21    captures the essence, but there are some other pieces that the

22    statute contends.

23              THE COURT:  So what should be added in order to not

24    mislead our jury?

25              MR. O'NEAL:  You know, looking at it, Judge, I think
```

1    if we added the other stuff, it would cause them to be confused

2    even more.  It is like "which has the following language."  So

3    I think to add the full technical definition probably would be

4    more problematic.

5         So if I could say this:  Right now, Judge, looking at

6    it, I hear what you are saying, and it may not be a problem.

7    If I could reserve the possibility to provide some later

8    comment to it.

9         THE COURT:  Absolutely.  Also, what I would suggest,

10   if you have some good constructive suggestions, run them by

11   plaintiff first.  If plaintiff agrees, I'm not going to stand

12   in the way in terms of what both sides agree upon in terms of

13   this type of instruction.  If you have some additional

14   language, run it by the plaintiff.  But otherwise, the concept

15   sounds fine to me.  The concept of you making sure that the

16   jury understands the right context is perfectly fine with me.

17   If it is already in some of the designated deposition

18   testimony, fine.  If you add it to your witness statement for

19   Mr. Mallen, fine.

20        Okay.  Anything else on final instructions?  Anything

21   more on preliminary?

22        MR. JACOBSON:  Nothing from the plaintiff,

23   Your Honor.

24        MR. O'NEAL:  Nothing from the defendant, Your Honor.

25        THE COURT:  Anything more on final?

1          MR. JACOBSON:  No, Your Honor.

2          MR. FOSTER:  From the defendant, yes, Your Honor.

3          THE COURT:  Okay.  Go for it.

4          MR. FOSTER:  Instruction 17, the class TCPA claim, I

5    think that instruction is generally fine.  My concern when I

6    read this a few times, from the perspective of a juror, there

7    is a potential that I think they may be confused reading these

8    elements that they are not necessarily linked for the violative

9    calls.

10          For example, if the plaintiff were to prove that some

11   of the calls were telemarketing messages while another bucket

12   of calls had a prerecorded voice and a third bucket of calls

13   were to mobile or landlines, they could confuse it and put them

14   all together.

15          My suggested addition -- now, it is not grammatically

16   perfect -- but in front of 2 and 3, I would just add:  "And

17   each of those calls" -- or calls -- so it directs the jurors to

18   understand that if they found that there are a certain bucket

19   of calls that are telemarketing calls, they must also have

20   played a prerecorded voice.  The same thing with 3.  "Each of

21   those calls were made to a cell phone or landline," just so the

22   jury understands that each of the elements are linked, and they

23   can only render a verdict in favor of class members whose calls

24   meet every single one of those elements.

25          I'm not necessarily married to that language.

1    Candidly last night, Your Honor, I was trying to find a way

2    that made sense, but that's essentially the concept of what we

3    want and would like to see.

4              THE COURT:  Well, since No. 1 uses "calls" in the

5    plural, I think I can strike "the call" and go with plural in 2

6    and 3.

7              Would the following serve this purpose:  Begin 2 with

8    "those calls used"; and 3 would be "those calls"?

9              MR. O'NEAL:  Yes, Judge.

10             MR. FOSTER:  Yes, Judge.  I believe that would be

11   fine.

12             THE COURT:  So I would strike "the call or" and

13   replace it with "those" in both two and three.

14             Any objection to that from plaintiff?

15             MR. FRANZINI:  No, Your Honor.

16             THE COURT:  I think it is a good change.  Anything

17   else in final jury instructions from defendant?

18             MR. O'NEAL:  One comment, Judge.  Instruction No. 18

19   regarding residential telephone landline defined.  It is on

20   page 14, first paragraph, second line, the clause that says,

21   "It must be one or the other."

22             THE COURT:  Uh-huh.

23             MR. O'NEAL:  Judge, I don't think that's quite

24   accurate.  It could be both.  You could have a residential

25   line, which the plaintiff held out and used as a business line.

1    It could be registered residential, or she could use it as

2    both.  She could take calls from her mother, which I think she

3    got lots of, but she could also take telephone calls from

4    people who had children in her daycare.  My suggestion on that,

5    Judge, that sentence should be stricken.

6            THE COURT:  What that would really mean is if they

7    find it is a residential line, then defendants are going to

8    have some problems on that call.

9            MR. O'NEAL:  Yes.

10           THE COURT:  All right.  Any objection from plaintiff

11   on that?

12           MR. FRANZINI:  Your Honor, I think it is right that

13   it has to be one or the other.  Unless the defendants can show

14   that it is used primarily as a business line, then it's a

15   residential line.  Therefore, it is covered by the TCPA.  I

16   think Your Honor's sentence is accurate and should stand.

17           THE COURT:  I want to make sure they understand what

18   is a residential telephone line.

19           So the next paragraph is really the key for that.  In

20   deciding this issue -- maybe if I strike that sentence, "It

21   must be one or the other," and I'll begin the next paragraph:

22   "In deciding whether a landline telephone is residential or

23   business, you must give the word 'residential' its usual and

24   ordinary meaning.  You may consider whether Ms. Wakefield's

25   telephone number was registered as a residential or a business

1   number.  You also may consider whether that number was

2   publicized or held out to the general public as a business

3   telephone number, even if it was registered as a residential

4   telephone number.  The fact that a landline telephone is used

5   for some business calls does not necessarily make it a business

6   telephone landline."  I think I will put a period after that

7   and revise the last sentence to read, "The key point is that a

8   residential landline is used primarily as a residential

9   telephone."

10          Will that work for plaintiff?

11          MR. FRANZINI:  Yes, Your Honor.

12          THE COURT:  Any objection to that from defendant?  I

13  will be taking out "it must be one or the other," but I'll be

14  modifying it as I've just described.

15          Is that okay for defendant?

16          MR. O'NEAL:  Reserving the prior objections that we

17  submitted, yes, for purposes of today.

18          THE COURT:  All right.  I will make those revisions.

19          All right.  On the special verdict form, I received

20  an email -- one moment.  I received an email from plaintiff's

21  counsel, Mr. Franzini, over the weekend.  I responded.  As of

22  right now, neither the email nor the response is in the

23  electronic docket for appellate purposes.  If either side wants

24  to file it in the ECF docket for appellate purposes, go ahead.

25  File your question to me; file my response.  But as of right

1    now, the appellate courts have no idea what we are talking

2    about.

3              So does anybody want to be heard further on it?

4              MR. FRANZINI:  Yes, Your Honor.

5              THE COURT:  Go ahead.

6              MR. FRANZINI:  So as Your Honor recognized in the

7    jury instructions and your response to my email, to prove a

8    violation of the TCPA, it is not necessary to prove whether a

9    call is to a residential as opposed to a mobile telephone

10   number.  If we show it is one or the other, that's sufficient.

11             The evidence that we're going to present at trial to

12   the jury is going to consist of a -- we are going to say,

13   "These numbers."  This group of collective telephone numbers

14   are either mobile or residential, but we don't have it divided

15   up, "Here are the mobile ones; here are the residential ones."

16   So my concern is that if we put forward that evidence and the

17   jury believes it and concludes that we have shown all the

18   numbers are residential or mobile, then that should be a

19   finding in favor of the plaintiff.  It should be a finding,

20   assuming that the other requirements are met, ViSalus violated

21   the TCPA.

22             But when they turn to Your Honor's proposed verdict

23   form, they will see a question that says, "How many calls did

24   plaintiff prove were to mobile telephone numbers?"  They may be

25   able to come up with a number based on common sense or other

1    things.  But because we haven't divided up those numbers into

2    one or the other, my concern is that the jury is going to say

3    zero, because you haven't shown us it is mobile as opposed to

4    residential.  Then they get to the next question that asks how

5    many calls were residential, and then they will look at it

6    again and say zero, because it is not -- you haven't shown

7    which it is, residential or mobile.  So the result of that is

8    we will have to put forward persuasive evidence, but we get a

9    defense verdict because we haven't made a distinction.  So

10   that's the primary objection to the current form.

11              THE COURT:  Thank you, Mr. Franzini.

12              Defendant's position.

13              MR. FOSTER:  Your Honor, I think your verdict form

14   got it exactly right, and I'll explain why.  First, I think it

15   is an affirmative element that both of the claims need to show

16   that it is a residential landline or the landline section and

17   for the cell phone portion.

18              I think in this case, especially, given the nature of

19   the company, this is a multilevel marketing company, the

20   landline portion is going to be subject to -- at least in part

21   these were promoters.  These were people that were running, to

22   a certain extent, home-based businesses.  I expect the evidence

23   will show these were promoters who were running businesses, and

24   I would expect to make the argument that some of these

25   landlines are business lines.

```
 1              I don't think there is any way for the jury to assess
 2    that out, and I think that's a real problem for the plaintiff.
 3    I think candidly, Your Honor, as you noted in your email, you
 4    noted that this is something commonly done in TCPA class
 5    actions.   It is something that's very easy to do.   In the Dish
 6    Network case and a whole host of other class action cases,
 7    plaintiffs' counsel, either in the class certification stage or
 8    before trial, will designate an expert.   That expert will take
 9    the purported call list, and they will go through Lexis.   They
10    will go through Experian.   They will do script tracing.   They
11    will do a whole host of analysis to say, "Here are cell phones.
12    Here are landlines."   And even further, "Here are landlines
13    that are attached to the basis," and then you can make that
14    presentation to the jury and meet that burden.
15              That wasn't done in this case, and I think it should
16    have been done.   I think given that we will be presenting
17    affirmative defenses specifically going to the residential
18    landline, that lumping them all together would be highly
19    improper.   Especially as Your Honor noted, for purposes of
20    appeal, I think that's an issue that needs to be broken out so
21    to make a clear appellate record.   I suspect if either side
22    loses on that issue, that will be something taken up with the
23    Ninth Circuit.
24              THE COURT:  Plaintiff's response.
25              MR. FRANZINI:  Your Honor, one thing we theoretically
```

 1   could have done is divided up mobile/residential.  If we had

 2   done that, that would have insulated the mobile numbers from

 3   this particular affirmative defense.  That's not the way that

 4   we decided to meet our burden.  The result of that will be that

 5   they're going to be able to make this argument to the jury and

 6   say, "Hey, you know, this affirmative defense applies not just

 7   to your residential calls, but it infects your mobile calls

 8   potentially," they could say that.

 9         But that doesn't mean -- because we don't have to

10   prove which it is, if a verdict form is entered that would

11   require us to make this distinction, that's now part of our

12   burden of proof, then that would be an error greater than --

13   that would be error.

14         THE COURT:  Well, how is the jury going to know --

15   I'm just following up on what Mr. Foster's argument is.  How is

16   the jury going to know, for any telephone line that may be

17   listed -- by someone who received a call/has a home

18   telephone -- how are they going to know whether or not that

19   call or that line satisfies the definition of residential

20   landline as I instruct the jury?

21         MR. FRANZINI:  Yes, Your Honor.  The answer to that

22   is the same way that the jury makes that determination for

23   other cases where the mobile lines are split up from the

24   residential lines.  So if you have, for example, in the -- the

25   evidence we have here, we have evidence that ViSalus collected

1    numbers that were specifically either home numbers or mobile

2    numbers.

3            Then they also collected information that allowed you

4    to say, "This number is associated with a business."  So we

5    were able to subtract out the numbers that are associated with

6    a business.  What's left are numbers that are home numbers or

7    mobile numbers.

8            So the answer to Your Honor's question is the same

9    way it is always done in TCPA cases for the residential

10   numbers, which is if we put forward evidence that the number is

11   residential, which we have, then the defendant can raise an

12   affirmative defense to that or can challenge the sufficiency of

13   that evidence, but it is ultimately for the jury to decide is

14   the evidence we put in sufficient on that issue or not.

15           I can walk through the evidence more, if Your Honor

16   wants.  This is a question for the jury.  It should go to the

17   jury whether -- our evidence of residential is enough -- and I

18   think the fact that we didn't separate out the mobile ones

19   really has nothing to do with that issue because that issue

20   still exists with respect to the residential lines.

21           THE COURT:  Any response from defendant?

22           MR. O'NEAL:  Judge, do you mind if I jump in?

23           THE COURT:  That's fine.  By the way, let me tell you

24   this, now that you raise this issue.  When you're talking with

25   me, I don't care how many people from any given side jumps in,

1   as long as only one person speaks at a time.  However, when

2   questioning a witness, especially a live witness in front of

3   the jury, only one lawyer per side does the questions, and the

4   person who does the questions is the only one who can do the

5   objecting.

6           So let's suppose that Mr. Dovel is questioning a

7   witness for the plaintiff on direct, and Mr. O'Neal stands up

8   and makes an objection.  Whether I sustain or overrule the

9   objection, Mr. O'Neal is now doing the cross, even if you all

10  were planning that Mr. Foster was doing the cross.

11          Understood?

12          MR. O'NEAL:  Yes, Judge.

13          THE COURT:  And it works in both directions.

14          MR. DOVEL:  Yes, Your Honor.

15          MR. O'NEAL:  So let me back up and say what the

16  evidence is and then we can grapple with the problem.

17          No. 1, to be clear, the part about violating the TCPA

18  with respect to mobile, is a different statutory section than

19  the section which is violating for residential.  Also,

20  residential is the only section which has the business

21  exception, where the business doesn't apply to mobile.

22          The plaintiffs, as counsel pointed out, did not do

23  any attempt to divide up those buckets.  Further, Judge, they

24  didn't do any meaningful attempt to define what was or wasn't a

25  business number.  Not only that, but I don't think, and this is

1    part of what we set forth, or at least we're hinting as part of

2    our filings.  I don't think they are going to make the burden

3    of proof in their opening case to show that the numbers dialed

4    were either mobile or residential.  They have got to go from

5    they collected them; this is was what the quantity of the

6    numbers were, this is what went into it; them those same

7    numbers were used and those numbers were dialed.  And I don't

8    think they are going to be able to mark all the way across.

9         Be that as it may, the concept that somehow they

10   still don't have to get the jury to divide them up is wrong,

11   because they do.  If you don't divide them up, then we are not

12   going to ever know or have the ability to talk about, "Well,

13   this was mobile, and it wasn't the subject of the defense," and

14   we are not going to be able to determine the residential.  How

15   many of them were determined to be business?

16        And I should comment, the issue about the business,

17   Judge, there has been no objective analysis or expert opinion

18   about what was or isn't a business.  As I understand it, like

19   literally in like the last 24 hours, they have gone back into

20   their summary spreadsheets that they used and discovered

21   something that we knew was there, and we were going to be

22   pointing out to you, which is they've included in that summary

23   a number of persons that will have names like Taekwondo Bob,

24   LLC, or something like that.

25        Now, after the fact, they are like, "Oh, crud, well,

1    we know for sure that's there, but we don't know however many

2    more might be."  It just highlights the problem, Judge.  If we

3    don't divvy them up like you suggested, this is going to be one

4    wicked mess.  I think you got it right, and I think the verdict

5    form should stay as it is.

6              THE COURT:  Am I correct in my assumption that it

7    really is not that difficult to take a look at any given

8    telephone number, 10-digit telephone number, and identify which

9    ones of these are mobile and which is not a mobile?

10             MR. O'NEAL:  Judge, based on my reading of the cases,

11   it is not hard at all.  Not only that, but it is one of those

12   things that is objectively verifiable.  You can go to

13   independent evidence that doesn't fall into that gray area of,

14   "I'm a psychologist, and let me know whether I can give my

15   opinion."

16             THE COURT:  There are a number of databases, whether

17   it be LexisNexis, Spokeo, or I think even Google will tell you

18   whether or not a given ten-digit number is or is not mobile.

19   It won't tell you whether it is residential or business.  But

20   if it is mobile, it will tell you it is mobile.

21             MR. O'NEAL:  Absolutely, Judge.

22             THE COURT:  Any response from plaintiff as to what

23   Mr. O'Neal just said?

24             MR. DOVEL:  Your Honor, if I could jump in here.  If

25   Your Honor is willing to allow us leave to gather up that

1    evidence and put it in, we are willing to put the mobile

2    evidence in.  It won't change where we're at.  The reason is,

3    Your Honor, fundamentally, the numbers were gathered up by

4    ViSalus from applications that said home or mobile.  They put

5    them all into a database.  They confounded them.  They never

6    produced to us information that identified which of these had

7    been collected as home and which was mobile.  They didn't make

8    that available to us.

9          As a result, we proceeded with, well, we don't need

10   to know that.  All we need to know is it's one or the other.

11   The jury can tell us how many of those there are.  As for their

12   defense, if they were right about their defense, it would

13   infect their evidence.  It would be good for them.  It would

14   spill over to everything.  But the reason their defense is not

15   going to work, Your Honor, the calls that they are making

16   primarily are to win back customers.  These are former

17   customers, not actual customers.

18         And as Your Honor's instruction makes clear, the fact

19   that somebody may have given their home number to a business

20   relationship doesn't turn the home number into a business

21   number.  They have the burden of showing it was used primarily

22   for business and not home.  They will not be able to show that.

23         We have the inference that it is a home number; that

24   there is no evidence that people used their home number for

25   ViSalus business during the time they are making those calls,

1    and that meets our burden.  So we will be able to meet our

2    burden.  They are not going to have evidence to rebut it.

3           But again, Your Honor, if we can see if we can gather

4    that evidence in the next three days and have a witness, "Here

5    is a list of how many mobile numbers there are."  I don't think

6    that advances the ball, Your Honor.

7           THE COURT:  On that issue, if there is a motion to

8    add a witness to a witness list, the other side will be

9    entitled to tell me whether they object, whether they are

10   prejudiced, and then I'll make an appropriate ruling.

11          But I'm thinking, as I'm hearing this through, it is

12   going to be a complex question whether or not the evidence

13   presented is sufficient.  There is no need for me to decide

14   that in advance.  The best way to do that is to let both sides

15   put in their evidence, make their argument, and then whichever

16   way the jury goes, if the other side wants to make post-trial

17   motions, make them.

18          But I think then the best way to frame this might be

19   to give both sides what you want.  Here is what I'm thinking,

20   and I'll actually have to see if I can make this work.  I'll

21   work on it this afternoon.  But I'm thinking I would do the

22   verdict form at first the way the plaintiff wants, by asking

23   how many calls were made to either a residential landline or a

24   mobile phone.  Fill in the blank.  Then they will put in a

25   number, presumably, if they are satisfied.

1          Then I would follow it up with -- this is a special

2    verdict.  I just want their answers to factual questions.  Then

3    we will figure out post-trial what the legal consequence of all

4    of this would be.  I would then say, "How many of those numbers

5    are for residential business lines?"  Either fill in a blank or

6    check the box.  "Don't know" or "can't tell."  How many of

7    those numbers are from mobile?  Fill in the blank or check the

8    box.  "Can't tell."

9          We will see.  Let's suppose the jury finds -- and I'm

10   just making up these numbers for ease.  Let's suppose the jury

11   finds a total of four calls were made, and it checks the box

12   one for residential -- and puts in four.  "How many were for

13   residential?  One.  How many for mobile?  Three."  All right.

14   That will send us in one direction when we have our post-trial

15   discussions.

16         Let's suppose they say how many were for residential,

17   and the check a box "can't tell."

18         "How many were for mobile?"  They put in at least

19   two, but a total of four.  All right.  That will send us to

20   another direction, and we will have some interesting post-trial

21   discussions.

22         But that way, if the plaintiff is right, then all I

23   need to do is ask what's the total of A or B, which, by the

24   way, I'm skeptical that's the right way to do it.  But if you

25   are right, we will get the answer.  If the Ninth Circuit says

1    you're right, and the Supreme Court says you are right, more

2    power to you.

3              If, however, the jury answers the question the way

4    that plaintiff wants, and then tell us that they either can't

5    tell, they don't have enough information on how many were

6    residential or how many were mobile, then defendant can make

7    their arguments of what the legal implications, if any -- and

8    there may not be.  Plaintiff may be right.

9              But we will all be able to sort that out once we

10   have, No. 1, all the evidence presented to the jury; and No. 2,

11   the jury's factual determinations, including how many calls

12   were made, which were mobile, which were residential, and can

13   you tell how many were mobile?  Can you tell how many were

14   residential?

15             We will get their answers to all those questions and

16   sort it out later.  I think that's probably the better way to

17   go now.  I'm hearing both sides' arguments, if I could figure

18   out how to phrase these questions in a way without unreasonably

19   confusing the jury, and I'll work on it this afternoon.

20             Any comments from plaintiff?

21             MR. DOVEL:  Your Honor, that approach is acceptable.

22   In response to your suggestion that the Court would have to

23   rule on a motion if we were going to add a witness, I will let

24   the other side know we are going to look into it, and we will

25   keep them apprised as soon as we can figure out what can be

1  done and then we will bring the motion.

2          THE COURT:  Sure.  My general approach of late

3  additions of witnesses or documents or things like that, I

4  basically make you ask for it.  Then I turn to the other side,

5  "Well, do you have an objection?  If so, what's your

6  prejudice?"  Then I look at really is there any unfair

7  prejudice.

8          Okay.  What's defendant's view on this sort of hybrid

9  approach to a verdict form as I just described?

10          MR. O'NEAL:  As I'm thinking, Judge, I think it is a

11  good compromise.  I would like to let the gerbil run in the

12  wheel a little bit to think about it more, but I think we are

13  on the right track.

14          THE COURT:  Mr. Franzini?

15          MR. FRANZINI:  One suggestion, Your Honor, I guess

16  the standard is, have we proven by a preponderance of the

17  evidence?  One idea would be to say ask the question for both

18  and then say:  Of those, how many did plaintiff prove by a

19  preponderance are mobile and how many of those are landlines?

20          THE COURT:  I might put it:  Has the plaintiff proven

21  by a preponderance of the evidence a specific number of mobile?

22  Yes or no?  If yes, what's the number?  Has the plaintiff

23  proven by a preponderance of the evidence how many were

24  residential?  Yes or no?  If yes, what's the number?

25          MR. FRANZINI:  I think how many would work.  I think

1    a specific number is a very specific phrasing.

2            THE COURT:  All right.  Well, then I would say:  Has

3    the plaintiff proven by a preponderance of the evidence -- what

4    should be the end of that question?

5            MR. FRANZINI:  What I would say:  Of those calls, in

6    response to question 4, how many has plaintiff proven by a

7    preponderance of the evidence are mobile phones or cellular

8    phones?

9            THE COURT:  I still want to find out from the jury,

10   though, if they believe they can't tell.  You will have my

11   assessment at some point after the evidence has closed whether

12   the evidence is sufficient to justify a verdict.  But I want to

13   find out from the jury do they believe they have enough

14   evidence to tell.  So what do we ask them?

15           Do you have enough evidence to make a determination?

16   I would want to give them the option of either putting in a

17   number that they believe the plaintiff's evidence can prove by

18   a preponderance, or saying, "We can't tell."

19           MR. FRANZINI:  Two ideas, Your Honor.  One would

20   be -- I think the question itself -- if the jury concludes that

21   we haven't proven any by a preponderance, then the answer would

22   be zero.  But if Your Honor wants to include a specific kind of

23   "don't know" box, I think that would be fine too.

24           THE COURT:  Okay.  I'll work on something, and then

25   you can all talk about it.  My plan is to email it to you this

1    afternoon.   You can send me email responses either today or

2    tomorrow.   Tomorrow is Tuesday.

3            On Wednesday, all we are going to do is pick a jury

4    and hopefully give them preliminary instructions so we can talk

5    further on Wednesday.   Then you will do your opening statements

6    on Thursday morning and call your witnesses on Thursday.   So

7    there is enough time to try to work this out.

8            I think that takes me through my agenda.

9            Is there anything else that any of you would like to

10   discuss at our pretrial conference?

11           MR. JACOBSON:   Your Honor, plaintiff has two new

12   exhibits that we would like to address now and get at least a

13   tentative ruling on, if we can, and then two exhibits that we

14   addressed previously that Your Honor either had some further

15   requests on or that Your Honor stated that you would like to

16   consider it further.   I would like to briefly address those

17   again.

18           THE COURT:   All right.   Do I have copies of these

19   exhibits?

20           MR. JACOBSON:   You do.   The first exhibits we are

21   going to address are P6 and P7.

22           THE COURT:   One moment.   I have in my notebook P6 and

23   P7.   I'm not sure what you mean by "new."

24           MR. JACOBSON:   We didn't address them at the last

25   pretrial conference.

1              THE COURT:  Understood.  Got it.

2              Give me one moment.

3              MR. JACOBSON:  Of course, Your Honor.

4              THE COURT:  Okay.  Ready.

5              MR. JACOBSON:  What P6 and P7 are emails and written

6   communications between the class representative, Ms. Wakefield,

7   and her husband, who also briefly signed up as a ViSalus

8   promoter and ViSalus.  What's in here is Ms. Wakefield

9   requesting that ViSalus cancel out her account.  It is a series

10  of communications that culminate on this email, which is P7-8,

11  where ViSalus gives her written confirmation that she no longer

12  has a business relationship with ViSalus.

13             As we have been discussing today and as ViSalus has

14  repeatedly asserted, one issue in this trial is what

15  relationship these class members had with ViSalus, and the

16  relevance is to prove, by the time that ViSalus called

17  Ms. Wakefield, she had no relationship with them.  In fact, she

18  had written confirmation of this.  It is not hearsay because

19  this is a communication written by ViSalus to Ms. Wakefield.

20  It is offered against ViSalus.  It is an admission by a

21  party-opponent.

22             THE COURT:  All right.  There are a number of pages

23  here on P6 and P7.

24             Let me hear from defendant, any particular portions

25  of this that I should look at right now that are particularly

1    objectionable in your view?

2        MR. O'NEAL:  Yes.  So a couple of things, Judge.  The

3    relevant facts that the plaintiff had ended her role as a

4    promoter, and I'm looking for it now.  If I'm not mistaken,

5    Judge, that's actually in the stipulation.  So to try to put in

6    evidence about the point that it was ended in 2013 is

7    duplicative.

8        The second piece is, if we are just talking about

9    ending it, maybe that's okay.  But the real issue is, if you

10   look at 6 and the remainder of it, there is all kinds of an

11   email exchange where either Mr. or Mrs. Wakefield is very upset

12   with my client because they think that they were charged

13   incorrectly, or that they had previously told them not to send

14   them any product.  It is that type of stuff, Judge, that is

15   prejudicial, and it is not relevant.

16       So if the whole point is that we want to make sure

17   that the jury knows that the promotership between my client and

18   the plaintiff was ended back in 2013, I don't think that's

19   controversial.  I think, like I said, it is in the stip.  But

20   we don't need to put in this "ViSalus sucks because you charged

21   me money that I shouldn't be charged."

22       THE COURT:  Exhibit 6, is this an email that reads

23   chronologically from back to front?  Is that how it reads?

24       MR. JACOBSON:  Let me examine it, Your Honor.

25       THE COURT:  Or front to back.

1              MR. JACOBSON:   Exhibit 6 appears to read

2    chronologically from front to back.

3              THE COURT:   Although I see in the middle of page 6-1,

4    an email from 6:52, and then an earlier email is right below

5    it, an email from 6:45 p.m.  Do you see that?

6              MR. JACOBSON:   I do, Your Honor.

7              THE COURT:   All right.  Let me just read the whole

8    thing.

9              (Pause.)

10             THE COURT:   I assume that Byron Wakefield is

11   plaintiff's husband?

12             MR. JACOBSON:   Correct, Your Honor.  Ms. Wakefield

13   also used that email address for herself as well.

14             THE COURT:   All right.  Let me turn to defendant.  I

15   have now read the entirety of P6.  We will turn to P7 in a few

16   moments.  I don't see anything in here that says "ViSalus

17   sucks" or words to that effect.  Where is it?

18             MR. O'NEAL:   Judge, I may have been getting this one

19   mixed up with 7.

20             THE COURT:   Okay.

21             MR. O'NEAL:   But in this one, the one that caught my

22   attention when I was flipping through.  "Byron Wakefield:

23   Please cancel anything we have with this company I requested

24   months ago in the back office, and I would like my $25 refund

25   that was charged to my account."

1          THE COURT:   That doesn't rise to the level of

2    "ViSalus sucks."   That's an overstatement.   I would anticipate

3    admitting Exhibit 6.

4          MR. O'NEAL:   Understood, Judge.

5          THE COURT:   Assuming we have Ms. Wakefield give a

6    foundation that this was given to her or received from ViSalus.

7          All right.   Let me read 7.

8          (Pause.)

9          THE COURT:   All right.   Let me ask plaintiff's

10   counsel, I have read all of 7.   What does Exhibit 7 add that's

11   relevant to this case that you don't get with Exhibit 6 when I

12   receive Exhibit 6?

13         MR. JACOBSON:   Your Honor, I believe Exhibit 7 is the

14   interactions for ViSalus for Ms. Wakefield's account.   Even

15   though it is the same email account, Exhibit 6 is for her

16   husband, Byron Wakefield.

17         THE COURT:   Let me call your attention to the first

18   page of Exhibit 7 at 7-1.   "Hi, my name is Lori Wakefield, and

19   we have the Vi Net Pro 39.99.   Me and my husband, Byron, my

20   husband, both two different accounts we didn't sign up for.   I

21   canceled it within two weeks, and I just saw it there again.

22   We have both been billed for it and a startup fee, and I want

23   my money back."

24         Is that relevant to this case?

25         MR. JACOBSON:   It is, Your Honor.

 1          THE COURT:  How?

 2          MR. JACOBSON:  And I'll explain how.  Ms. Wakefield

 3   will testify that she first canceled her account with ViSalus

 4   in the spring of 2011.  The way she did that is she went on

 5   their website to a portal they called a back office, and she

 6   clicked "cancel."  They didn't cancel her out.  They kept

 7   shipping her stuff.  So she had a series of these email

 8   interactions with them that finally in 2013, almost a year

 9   later, resulted in her getting written confirmation from them

10   that "we canceled."

11          These emails show both that she got her written

12   confirmation, and we need all of them, because if we just show

13   the written confirmation in 2013, the jury is not going to

14   understand why it took a year for that to happen.  ViSalus

15   hasn't pointed out anything inflammatory that is going to

16   inflame the jury in here, and we are not going to dwell on the

17   shipping problem.  We just need to show why it took a year to

18   cancel.

19          THE COURT:  I'm speaking to defendant now:  I don't

20   see anything in here that says "ViSalus sucks" or words to that

21   effect.  Am I missing it?

22          MR. O'NEAL:  No.  If I may respond --

23          THE COURT:  You may.

24          MR. O'NEAL:  -- to this point.

25          I don't understand what the relevance is between the

1   time of saying that I want to cancel and the ultimate

2   cancellation of the promotership.  The telephone calls that are

3   at issue, Judge, didn't take place within that time period.

4   The telephone calls which are at issue occurred two years later

5   in April of 2015.

6           We did stipulate that Plaintiff Wakefield briefly

7   signed up to be a ViSalus promoter in February of 2012.

8   Plaintiff Wakefield subsequently ended her affiliation with the

9   company.

10          So I hear what counsel said.  They sure would like to

11  get into the jury and say, "Look, ViSalus took a year to cancel

12  the account," but I don't know why that's relevant to issues of

13  whether or not violative calls were made two years later.

14          THE COURT:  Response by plaintiff.

15          MR. JACOBSON:  Your Honor, the timing is relevant,

16  because as we discussed, it is relevant what relationship these

17  promoters had with ViSalus.  ViSalus didn't call Ms. Wakefield

18  a day after she canceled.  They didn't call her a year after.

19  It was three years since she had anything to do with them.

20  This is relevant to showing that, and there is nothing

21  inflammatory here that would substantially outweigh that

22  relevance.

23          THE COURT:  All right.  I would expect to allow in

24  Exhibit 7 also as a business record of ViSalus and non-hearsay

25  by Ms. Wakefield because it shows the context for the response.

1   So I would expect to allow in both 6 and 7.

2              That's not what this case is really going to be

3   about.   There is going to be plenty of reasons why jurors don't

4   like telemarketers who make robo call.   Another statement like

5   this is not going to make a difference.

6              Anything else anybody wants to talk about?

7              MR. FRANZINI:   May I be heard on one more exhibit,

8   Your Honor?

9              THE COURT:   Of course.

10             MR. FRANZINI:   I have got a couple of slides here.

11  The exhibit is Exhibit P34A.   This is the manual that describes

12  the operation of the POM machine that was used to place the

13  calls.   34A is an excerpt of that manual that was shown to

14  Mr. Gidley at his deposition.   He authenticated it at his

15  deposition.   He said, "It's the POM user manual.   This appears

16  to be the user manual.   It is an excerpt of what you considered

17  to be the user manual."

18             First of all, it is not a document created by

19  ViSalus, but it is a document that ViSalus had and used to

20  understand how the POM system worked.   So it is a business

21  record of ViSalus in that sense.   There is also some hearsay

22  exceptions I can go into, to the extent Your Honor is concerned

23  about that.

24             THE COURT:   What's the objection from defendant?

25             MR. O'NEAL:   Judge, this is something that ties into

1    what I'm waiting to hear what the plaintiffs say.  It is

2    correct.  This is the manual for Progressive Outreach Manager.

3    It is correct that Mr. Gidley testified in that way.  It is

4    correct in Chapter 12 there is a listing of completion codes,

5    which discuss how certain calls were disposed of.

6          If you look at the summary that the plaintiff has

7    prepared, it has got an excess of 1 million calls, which they

8    have identified as not having disposition codes on them.  I

9    don't know whether they are going to be contending whether

10   those are violative calls or not, and there is nothing in this

11   manual that talks about what happens on a call that has no

12   disposition code.

13         So if plaintiff is going to say, "My case is limited

14   only to those calls for which there is a disposition code,"

15   then I'm backing up pretty good.  But on the other hand, if

16   they say, "Oh, no.  It is a hybrid.  I've got some other

17   stuff," then I need to see how it is going to unfold.

18         THE COURT:  You are raising interesting questions.  I

19   assume that these are the sort of questions that you would want

20   answered, whether in discovery or motion practice.  My question

21   to you is, what's objectionable about Exhibit 34A?

22         MR. O'NEAL:  Looking at Mr. Gidley's testimony,

23   Judge, I don't believe he had sufficient foundation to

24   authorize it.  He said it looked like a manual -- to

25   authenticate it, he said it "appeared to be a manual."

 1              THE COURT:  As an officer of the court, can you tell

 2   me that this is not the manual?

 3              MR. O'NEAL:  I cannot.

 4              THE COURT:  Okay.  By the way, since it is only

 5   excerpts, if you want to introduce other excerpts or other

 6   portions of the manual, I'll allow you to do that.  If you want

 7   that done, just give the plaintiff a copy, and maybe we will

 8   mark it 34B or something, if they've selectively excerpted from

 9   the manual.

10              MR. O'NEAL:  Actually, Judge, if I could do this:  I

11   think they have marked the whole manual as Exhibit 34.  This

12   section is marked 34A.

13              THE COURT:  Got it.

14              MR. O'NEAL:  So while I'm giving Your Honor some

15   thoughts, what I would like to do is just say let's move in 34

16   and not make a 34A.

17              THE COURT:  No.  When you have a really big, thick

18   manual, it is not fair to the jury to make them look through a

19   100-page manual.  But if you want the jury to look at certain

20   pages they haven't marked in 34A, you're welcome to do it

21   either by showing it to the jury obviously in 34 or marking

22   something as 34B.  So that way, we will tell the jury, "34 is a

23   big, thick manual" -- and by the way, you are going to offer

24   the full 34, right?

25              MR. FRANZINI:  We are offering 34A, Your Honor.

1              THE COURT:  All right.  Well, if the defendant

2    chooses to offer the full 34, I assume plaintiff does not

3    object, correct?

4              MR. FRANZINI:  I haven't looked through the whole

5    thing, Your Honor.  I'm currently not aware of any objections.

6    If they point to a particular part that's objectionable for

7    some reason --

8              THE COURT:  I just don't want there to be a big,

9    thick manual, and you get to cherrypick the portions you want

10   from it, but they don't get to point out other aspects of it.

11   If you want to introduce 34A, I'm going to let you do that.  If

12   there are other pieces of it that defendant wants to also

13   introduce that's also in the manual, I'm going to give the

14   defendant the option of either introducing other portions that

15   weren't part of 34A.  They could call it 34B, or they can

16   introduce the whole 34, and tell the jury, "Well, the plaintiff

17   only give you certain cherrypicked portions of it.  Here is the

18   rest of the manual.  Now take a look at this one page they

19   didn't give you."

20             I want fairness.  That's how we are going to do it.

21   That said, now, if you want to offer 34, I'll receive it, and

22   then you can offer 34A, even though it is a little bit

23   cumulative.  It is going to be easier for the jury.  I'll let

24   you decide what to do.

25             MR. FRANZINI:  Thank you, Your Honor.

```
 1                THE COURT:  Anything else we should talk about?

 2                MR. JACOBSON:  Your Honor, I have an additional

 3    relevance basis for P45.  This was one of the customer

 4    complaint emails that Your Honor reserved ruling on.

 5                THE COURT:  One moment.  P45?

 6                MR. JACOBSON:  Yes, Your Honor.

 7                THE COURT:  The Canadian?

 8                MR. JACOBSON:  The Canadian, Your Honor.

 9    Bree Schappert.  Your Honor, the previous relevance of this

10    email, as we discussed, this shows that the WinBack campaign in

11    the POM system was delivering prerecorded messages, which is a

12    disputed issue.  That's relevant --

13                THE COURT:  To the people in Canada?

14                MR. JACOBSON:  That's correct.  And that's relevant

15    regardless because that's how the POM system worked for people

16    in the U.S. too.

17                We have an additional basis for relevance,

18    Your Honor, that certainly gets this over the 403 hurdle.  I've

19    put on the board what Mr. Gidley, ViSalus's business analyst,

20    said when he was confronted with this email.  What he said was

21    this was a promoter who was actually terminated for a violation

22    of policies and procedures.  I'm not sure which one -- most

23    likely promoting another MLM -- who had subscribed to a daily

24    text message service.

25                Then it goes on to say that the reason she was
```

1    getting all of these cases was because we were not aware that

2    "we used a separate service."  That appears to be a lie,

3    Your Honor.  When you look at this Bree Schappert email, it is

4    not about text messages.  She doesn't mention text messages.

5    It is about recorded phone calls.  This is relevant to the

6    credibility of ViSalus's compliance analyst, Mr. Gidley, who,

7    when confronted with this, instead of saying the truth, "Oh,

8    this looks like someone who was getting recorded calls," he

9    tried to suggest this was some kind of separate system that

10   wasn't the POM system.  There is no unfair prejudice that

11   substantially outweighs that relevance.  Credibility is

12   paramount, Your Honor.

13           THE COURT:  Defendant's response.

14           MR. O'NEAL:  I think we are talking about text

15   messages here, Judge.  I come back to -- she then subscribed to

16   a daily text message service.  "Why did it take so many

17   attempts for her to get removed from the contact list?  At that

18   time we were not aware that we used a separate service."

19           I don't know what that means.  It seems like

20   Mr. Gidley is testifying about text.  Then I come right back to

21   the issue of what happened to somebody in Canada.  It can't be

22   relevant.  They can't even be a member of the class.

23           THE COURT:  I think we are going too far afield.  It

24   is not clear to me how this relates to Mr. Gidley's

25   credibility.  I am especially concerned since Mr. Gidley is not

1   a live witness here, so he can't explain how it is or is not

2   relevant.

3               MR. JACOBSON:  Your Honor, Mr. Gidley is on the

4   ViSalus's witness list as a "may call."

5               THE COURT:  All right.  Then here is what we will do:

6   I don't anticipate letting this in during plaintiff's

7   case-in-chief.  If Mr. Gidley testifies live for defendant,

8   then it will be much more significant that you be entitled to

9   explore his credibility.

10              However, remember that you can't attack credibility

11  with extrinsic evidence.  So we will explore that when we are

12  talking with Mr. Gidley live.  For right now I'm going to say

13  ruling is reserved.  I'll see how things develop.

14              MR. JACOBSON:  Understood, Your Honor.

15              THE COURT:  Anything else we should talk about?

16              MR. JACOBSON:  Yes, Your Honor.  On Exhibit P47, we

17  addressed this at the last pretrial conference, and Your Honor

18  suggested some redactions to this.

19              THE COURT:  Uh-huh.

20              MR. JACOBSON:  This is the Better Business Bureau

21  complaint by a class member.

22              THE COURT:  Right.

23              MR. JACOBSON:  Your Honor suggested that we redact

24  reference to the complaint or to the "DNC" or "Do Not Call"

25  list.  We proposed some redactions to ViSalus.  They would not

1    agree on them.  They proposed some counter-redactions.  They

2    would not agree.

3            So let me propose to Your Honor our latest proposal

4    about how we handled this.  I've shown this to the other side.

5    What I have here, Your Honor, I have taken this exhibit, and I

6    have highlighted what I think we should keep in.  If it is

7    highlighted, then I suggest we keep it.  I have also created a

8    clean-up copy, that if we do the redactions this way, it will

9    show Your Honor what the jury would see.

10            May I approach?

11            THE COURT:  Please do.

12            MR. JACOBSON:  When Your Honor is ready, I can

13    explain the rationale for these.

14            THE COURT:  I'm ready.

15            MR. JACOBSON:  Your Honor, there are three parts.

16    The first part is this woman made a complaint to the Better

17    Business Bureau.  That's the part that Your Honor wanted

18    redacted.

19            The second part is what happened after that, which is

20    that Mr. Gidley, ViSalus's compliance analyst, looked into it

21    and confirmed that two messages were left on her voice mail as

22    part of the WinBack campaign.  That's the part that's relevant.

23            And then the third part is ViSalus's response to the

24    Better Business Bureau complaint, when they said, "Put her on

25    our 'Do Not Call' list," and they told the Better Business

1    Bureau that she had been removed.

2           You can't just redact the Better Business Bureau

3    complaint and leave the response, because then it appears to

4    the jury that ViSalus is just being super diligent, when in

5    reality they only did this because there were two complaints to

6    the Better Business Bureau.

7           So what I suggest we do is redact it down to the part

8    that's relevant, which is there was a phone call.  We looked

9    into it.  Two voice mails were left on the machine as part of a

10   WinBack campaign.  That's it.  The jury doesn't know it was a

11   complaint.  The jury doesn't know what ViSalus did in response

12   to that complaint.  They just know what Mr. Gidley found out

13   about these messages.

14          THE COURT:  All right.  What's the defendant's

15   objection?

16          MR. O'NEAL:  Two or three points, Judge.  One, if you

17   note, there is no reference in here that the messages that are

18   being referred to are in fact recorded.

19          Then, second, that's really the hook.  Unfortunately,

20   the underlying complaint wasn't attached to the version that

21   the plaintiff has shown you.  But what the underlying complaint

22   was, Judge, included a reference by the person that she had

23   been recorded.  What the real complaint about the recorded part

24   is, is the part that we wanted to put in, any incoming phone

25   calls are informed by recording; that the call may be recorded

1    for quality assurance purposes.

2              THE COURT:  Is the part you wanted to put in in the

3    original 47?

4              MR. O'NEAL:  Yes, Judge, it was.

5              THE COURT:  Okay.  It sounds like the easiest thing

6    to do is to go back to the original and let in all of 47.

7              MR. JACOBSON:  That works for us, Your Honor.

8              MR. O'NEAL:  That's fine, Judge.

9              THE COURT:  Okay.  Mary, will you give this back to

10   them.

11             At the risk of getting a positive response, anything

12   further we should talk about?

13             MR. DOVEL:  Your Honor, we have -- in response to the

14   objections to the Exhibit 36, that was the summary of call

15   outcomes.  We created a revised Exhibit 36A, which we provided

16   to defense counsel.

17             Your Honor has reserved ruling on this until trial.

18   I don't think there is anything to be done on it now unless

19   defendants want to talk about it further.  If you would like,

20   Your Honor, I can provide you right now with a paper copy of

21   the 36A.

22             THE COURT:  Yes, please.

23             MR. DOVEL:  For the record I'm providing His Honor a

24   black-and-white version and a color version.  The color version

25   is a little hard to read.

1              THE COURT:  All right.  So my plan still on 36A,

2     which is being offered as a summary of voluminous records, does

3     the defendant know now whether or not they will have any

4     objection to this as a summary?

5              MR. O'NEAL:  I fully expect we will, but I just got

6     it yesterday, Judge, and I haven't scrubbed it.

7              THE COURT:  I think what we will need to do is wait

8     and hear the foundation at trial.  I assume the plaintiff will

9     offer it.  If the defendant wants to ask questions in aid of an

10    objection, I'll allow that.  If you don't have questions and

11    you want to make your argument, we will do that.  That, we will

12    probably take out of the presence of the jury, and then we will

13    see if an adequate foundation has been a laid under 1006.

14             MR. O'NEAL:  One item I would like to preserve for

15    the record, Judge, the summary or the data that they are

16    summarizing is 4 million horizontal lines with five vertical

17    columns, which is 20 million data points to be summarized.

18    Apparently they are using some sort of very powerful computer

19    to create this, which we don't have.

20             I'm two or three days away from trial with the new

21    summary that seems to have some new information, which I

22    haven't been able to vet.  So as part of my objections, Judge,

23    I'm certainly going to argue timeliness and prejudice.

24             THE COURT:  Understood.  What I don't understand, and

25    I'm speaking and thinking out loud, with a summary of something

1  this voluminous, why it wasn't a request for admission back

2  when discovery was open, that's where I normally see a request

3  for admission to the other side to admit this is an accurate

4  summary.  Then things get fleshed out probably by a joint

5  interrogatory.  If it is not an accurate summary, what's

6  inaccurate about it?  Then if the defendant objects too much or

7  the respondent objects too much, then there is a motion to the

8  Court to either deem it admitted or to make them respond.  All

9  this gets sorted out back in the middle of discovery.

10         Why that wasn't done here, I'm not going to waste my

11  time speculating.

12         MR. O'NEAL:  One point, Judge.  I don't think this

13  summary -- and I can give you the exact dates -- I don't think

14  this summary was presented except as part of the pretrial

15  process where the parties were exchanging exhibits.

16         THE COURT:  I understand what you are saying.

17         MR. O'NEAL:  Thank you, Judge.

18         THE COURT:  I just don't understand why those types

19  of issues weren't battened down back during discovery.  I'm not

20  asking for any explanation.

21         Anything else we should discuss right now?

22         MR. FRANZINI:  One more quick thing.  There are a

23  couple of exhibits that are business records of ViSalus that

24  Your Honor reserved rulings on.

25         THE COURT:  Part of it now, I want to see some

1    foundation of the business records.  Present them with a

2    witness, offer them, and I'll hear if there is an objection.

3    If it is a business record, it is going to come in, assuming it

4    is relevant.

5              MR. FRANZINI:  That's fine then, Your Honor.

6              Thank you.

7              THE COURT:  Okay.  All right.  Anything else?

8              MR. O'NEAL:  Yes.  Just to reconfirm, same thing,

9    unless it is admitted, no reference to an exhibit in opening

10   statement?  Correct, Judge?  We can still say, "The evidence is

11   going to show" --

12             THE COURT:  I don't think anything has been admitted

13   right now.

14             MR. O'NEAL:  Right.

15             THE COURT:  But both sides are welcome to tell the

16   jury what they believe the evidence will show.  By the way,

17   speaking of which, will either side be using some type of

18   demonstrative exhibit besides just their spoken words during

19   opening statement?

20             MR. JACOBSON:  I intend to have a few slides,

21   Your Honor.

22             THE COURT:  What about defendant?

23             MR. O'NEAL:  I'm a simple man, Judge.  I'll probably

24   have some old boards.

25             THE COURT:  Let me ask, Mr. Jacobson, will you

1    present to defendant no long later than 5:00 p.m. tomorrow,

2    Tuesday, the slides you are planning on using in opening.  That

3    way, when we are all together from Wednesday, I will hear from

4    defendant do they have any objections to it.

5              MR. JACOBSON:  Yes, Your Honor.

6              THE COURT:  Keep in mind that my general rule on

7    demonstratives during opening, and even during closing, if you

8    can say it, you can show it.  But if you can't say it, you

9    can't show it.

10             So given that an opening statement is to summarize

11   what you believe the evidence will show and not to make

12   argument, then if you can't say it in opening statement, you

13   won't be allowed to show it by putting it in a demonstrative.

14   But if you want to tell me, "In this demonstrative I'm sure I

15   would be allowed to say it out loud; I just want to put it in a

16   multimedia context," if you are correct, I'll allow it.

17             MR. JACOBSON:  Understood, Your Honor.

18             MR. O'NEAL:  Judge, what's your view of saying, "For

19   example, the judge has just instructed you that the elements of

20   the claim are A, B" --

21             THE COURT:  That's closing argument.

22             MR. O'NEAL:  Got it.

23             THE COURT:  That, go for it.  That's why I instruct

24   them before your closing argument.  I will give you, and if

25   anybody wants this, you can have it in PDF or Word or whatever

```
 1   you want.  You will have my final instructions.  You are more
 2   than welcome to take the final instructions and the verdict
 3   form that I will have just shown to the jury before you begin
 4   your closing arguments and show them how the evidence applies
 5   to the law.  You are welcome to use my instructions and verdict
 6   form however you wish in closing arguments, with the sole
 7   exception, you can't tell the jury that the jury got the law
 8   wrong.  You are stuck with the law.  You can't embellish the
 9   law.  But by all means, show them the law that I just told them
10   and then show them how the facts do or do not fit into that
11   legal framework.  That's closing, not opening.
12           MR. O'NEAL:  Some administrative stuff, Judge.  I
13   would like to add two impeachment exhibits.  It is nothing
14   controversial.  I will disclose what they are.  It is the
15   complaint that was filed by the plaintiff and then the first
16   amended complaint.  So I move that be allowed.
17           Second issue, Judge, the stipulation issue,
18   Mr. Franzini and I were working on that, and we exchanged a
19   draft.  I think it was filed with Your Honor.  But we weren't
20   entirely clear whether Your Honor intended to both read or
21   submit written or to do both.  I think now it looks like we are
22   just going to give them a written version.
23           THE COURT:  I would just rather give them a written
24   version.
25           Any objection to that procedure?
```

1           MR. DOVEL:  No objection, Your Honor.

2           MR. O'NEAL:  No objection, if that's your ruling.  I

3     will have some revisions, because when I was doing it, I was

4     expecting that Your Honor was going to read it.

5           THE COURT:  So why don't the two sides work together

6     and then give me something that you both agree is clean and can

7     be handed to the jury.

8           MR. O'NEAL:  Okay.  Just to make a clear record, I

9     think you said this at the last pretrial conference.  When it

10    comes time for both sides to move for judgment as a matter of

11    law, as I understand the process that Your Honor is putting

12    into place, once we say that we move for judgment as a matter

13    of law, having done so, we now have preserved all factual and

14    legal bases to be argued to Your Honor.

15          THE COURT:  Yes and no.  I don't want to take up too

16    much jury time.  But what I'm going to do, I'm going to wait

17    until the end of the case, when all evidence is in, and then

18    let both sides make their specific arguments to me for judgment

19    as a matter of law.  You don't need to make a two-hour

20    argument.  But if you want to make five points, make your five

21    points, A, B, C, D, and E.  I really do expect to reserve

22    ruling on that.

23          MR. O'NEAL:  I was just thinking about when I move at

24    the close of the plaintiff's case.

25          THE COURT:  I don't think it matters anymore.  It

1    used to matter in the olden days.  I don't think it matters, if

2    you don't move at the close of the plaintiff's case, as long as

3    you move before the matter is submitted to the jury.  That's my

4    understanding.

5              MR. O'NEAL:  Old habits die hard, Judge.

6              THE COURT:  I know.  I will give you the opportunity

7    to move, before the matter is submitted to the jury, tell me

8    specifically what your arguments are.  Let's say you make five

9    points, A, B, C, D, and E.  I'll probably reserve ruling on it.

10   Then depending on how things turn out, we will deal with it in

11   post-trial motions.  But I would not plan on you then thinking

12   of a new argument post-trial, Argument F, and being allowed to

13   make that as part of a renewed motion as a matter of law.

14             MR. O'NEAL:  Understood.

15             Judge, on scheduling, I think your most recent said

16   that we are going to be here on Monday.

17             THE COURT:  Here is the thing:  I'm going to tell the

18   jury that we may be done with this trial by Friday; otherwise,

19   it may go into Monday, just in case a juror has purchased plane

20   tickets on Sunday.  I'm moderately hopeful we can get this case

21   to the jury on Friday.

22             Do you think I'm wrong?

23             MR. O'NEAL:  No, Judge.  I think both sides are going

24   to be pretty darn judicious with the limited time we have.  I'm

25   scheduling it so this thing is done at 5:00 on Friday.  That's

1   when closings will be finished.

2          THE COURT:  Well, if the closings are finished at

3   5:00 on Friday, when will the jury deliberate?

4          MR. O'NEAL:  I don't know.

5          THE COURT:  Yes, you do.  The answer is Monday.  They

6   are not going to be deliberating Friday night, and they are not

7   going to be deliberating on Saturday or Sunday.  I was

8   moderately hopeful closings would be Friday morning.  Is that

9   totally unrealistic?

10          MR. O'NEAL:  I don't think so, Judge.

11          THE COURT:  Let's see if we can try to get all the

12   evidence in on Thursday.  Then you do your closings Thursday

13   morning.  My instructions -- by the way, it typically takes

14   about 30 minutes to read closing instructions.  If we start at

15   nine o'clock or even 8:30 on Friday, I read the instructions to

16   the jury.  We go straight into closing.  They have the case.

17   We might get a decision by Friday.

18          But I am going to have to warn them and find out in

19   voir dire, if it does go into Monday, is there anybody here

20   unable to come back.

21          MR. O'NEAL:  Last issue, Judge.  In the email last

22   night -- I think you suggested that you might want to give the

23   plaintiff the opportunity to respond to my designations -- my

24   objections to designations.  I don't know if you want to do

25   that.

1          THE COURT:  I have looked at them all.  I'm prepared

2     to overrule all of them.  Would you like to be heard on that

3     and try to wrestle defeat from the jaws of victory?

4          MR. DOVEL:  No, Your Honor.

5          THE COURT:  I looked at every one of them.

6          MR. O'NEAL:  Thank you.

7          THE COURT:  Thank you.

8          MR. JACOBSON:  Your Honor, I apologize.  A few

9     logistical items that the paralegals asked me to ask you about.

10         First, jury notebooks.  One thing we suggest to

11    include in those are the stipulations --

12         THE COURT:  What else would it be?  We will have

13    stipulations for every juror.

14         MR. JACOBSON:  Anything else Your Honor wants us to

15    include in those notebooks?

16         THE COURT:  You don't need to give them notebooks.

17    Here is what they are going to get:  They are not going to get

18    my preliminary instructions in writing.  Feel free, when both

19    sides agree, to bring enough copies of the stipulations for all

20    our actual jurors, eight copies and one for me, please, and one

21    for my law clerk.

22         Then we will pass out to them, right before I do

23    final instructions, the final written instructions and verdict

24    form.  What else are they going to need?  I don't think

25    anything else.

1          MR. JACOBSON:  Sounds good.

2          THE COURT:  Anything else from the paralegals?

3          MR. JACOBSON:  Your Honor, giving exhibits back to

4    the jury, Your Honor knows we have that collection of

5    spreadsheets that are native.  One suggestion, we have a laptop

6    that is scrubbed of anything except those exhibits.  So after

7    they come into evidence, we could send that back with the jury,

8    and if they wanted to actually open up spreadsheets and look at

9    them, they could.  I don't know how else to get them the

10   spreadsheets in a way they could use them.

11          THE COURT:  Mary, they probably won't fit on our JERS

12   system, correct?

13          THE CLERK:  I don't think so.

14          THE COURT:  Any objection to that?

15          MR. O'NEAL:  No, Judge.

16          MR. JACOBSON:  We checked.

17          THE COURT:  All right.  That will be fine.

18          MR. JACOBSON:  Lastly, Your Honor, and we can discuss

19   this later if it makes sense.  For closing argument, we would

20   like to use a projector screen in the well with the jury.

21          THE COURT:  Mary can show you what our options are,

22   but I'll give you my two cents, and then you can do anything

23   you want.

24          You have seen the display monitors in the jury box,

25   right?

1           MR. JACOBSON:  Yes.

2           THE COURT:  Anything we put up there, they can see

3    there.

4           We also have the ability -- Mary, would you lower the

5    screen.  We have the ability to set up a projector in the well

6    and a display on that screen.  Now in my opinion, unless you

7    are showing a photograph -- if you're showing a document, it is

8    better for them to see it on their screens in the jury box.

9    But if you want to use a projector from the well and project it

10   on that screen, you're welcome to.  But I don't think that's a

11   good idea for anything other than photographs, and you don't

12   have photographs.  I think if you want to show them documents,

13   the better thing to do is to set it up through the court system

14   so it displays on their monitors.

15          MR. JACOBSON:  Understood.  We also have our own

16   screen that can be set up freestanding in the well.  Is that

17   something we could potentially use?

18          THE COURT:  Well, the problem with that is I want to

19   see it too.  I want to see it on my monitor.  If it is hooked

20   up so I can see it on my monitor, I guess that's fine.  If we

21   use that screen, then everybody in the courtroom can see it.

22   If you put up your own screen, where Mr. Franzini is right now,

23   then defense counsel can't see it.  They are blocked from

24   seeing the jury's reaction to various things.

25          I think the best way to do it, and that's why the

1    building was built with a screen up there, is so everybody can

2    see what everybody is looking at and nobody's view of the jury

3    is obstructed.  That said, those screens work beautifully for

4    videotaped depositions, for photographs, and they work

5    miserably for documents.

6              MR. JACOBSON:  Understood, Your Honor.

7              THE COURT:  But they are really good for videotaped

8    depositions.

9              MR. O'NEAL:  One last question, and I can move it if

10   Your Honor is inclined to.  This goes back to the summary.

11   Laying the foundation and doing a voir dire on that, I think,

12   is going to be pretty lengthy, and let me give you a couple of

13   heads-up.  For example, at last running count, the voir dire

14   has in excess of 30,000 --

15             THE COURT:  You say "voir dire."  When you say

16   "voir dire," I think of my discussion/our discussion with the

17   jurors.

18             MR. O'NEAL:  I'm sorry, Judge.  The classic expert --

19   do you mind if I ask the expert some questions before you allow

20   it?

21             THE COURT:  All right.  So basically your

22   foundational questions for this summary witness.

23             MR. O'NEAL:  Yes, Judge.

24             THE COURT:  Got it.

25             MR. O'NEAL:  And some of them don't go to foundation.

1    Some of them go to whether the summary is appropriate in the

2    first place.  For example, we have been doing some running

3    numbers, and there are a lot of fake numbers in there.  There

4    is a lot of 1-800 numbers.  There looks to me in excess of

5    30,000 Canadian telephone numbers, which don't qualify under

6    the TCPA.  There are a lot of issues.

7            Going through that, Judge, is going to take a lot of

8    time that I'm not sure we want to do in front of the jury.  So

9    Mr. Foster and I were batting around, is this something we want

10    to do in a preliminary hearing with Your Honor?  Is this

11    something we want to do in front of the jury?  I recognize

12    these issues we are talking about, Judge, they also go to cross

13    and us demonstrating the problems associated with the exhibit

14    and the testimony, but at the same time some of them are bases

15    where you might say that this thing is unreliable and it can't

16    come in.

17            THE COURT:  Plaintiff's position.

18            MR. DOVEL:  Your Honor, this is the first time

19    they've raised an issue with the presence of Canadian numbers

20    or fake numbers.  So I'm glad they've raised that.  We will

21    look at this.  If we can identify those, we will take them out

22    of that.  We are willing to deal with any objection they have,

23    but they haven't told us what their objections are.  This is a

24    brand-new one, and we will take care of it.  If they have

25    another objection, we will take care of that.  I think they are

1    trying to sandbag us, Your Honor.  I wish they would tell us

2    what their objections are.

3              MR. O'NEAL:  Judge, I gave them my objections, but

4    I'm certainly not going to script out my cross for them.

5              THE COURT:  Let me give some thought to it.  We will

6    talk about it some more.

7              MR. O'NEAL:  Thank you, Judge.

8              THE COURT:  Thanks.  I am going to send you the final

9    on the order on pretrial motions and objections probably within

10   an hour or so.  I have got a sentencing this afternoon, but I

11   will try to get you something by email on the verdict form also

12   by the end of today.

13             (Recess.)

14             MR. DOVEL:  Thank you, Your Honor.

15             MR. FOSTER:  Thank you, Your Honor.

16             THE COURT:

17             (Recess.)

18

19

20

21

22

23

24

25

--oOo--

        I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

```
/s/ Dennis W. Apodaca                    April 26, 2019
DENNIS W. APODACA, RDR, RMR, FCRR, CRR            DATE
Official Court Reporter
```

MR. DOVEL: [16]  5/17 9/10 10/2 10/19 11/8 12/16 13/25 34/13
36/23 40/20 59/12 59/22 64/25 68/3 72/17 73/13
MR. FOSTER: [6]  14/23 25/1 25/3 26/9 30/12 73/14
MR. FRANZINI: [18]  26/14 27/11 28/10 29/3 29/5 31/24 32/20
41/14 41/24 42/4 42/18 50/6 50/9 52/24 53/3 53/24 61/21 62/4
MR. JACOBSON: [47]  18/24 19/9 20/9 20/12 20/22 20/25 21/8
21/10 24/21 24/25 43/10 43/19 43/23 44/2 44/4 45/23 45/25
46/5 46/11 47/12 47/24 48/1 49/14 54/1 54/5 54/7 54/13 56/2
56/13 56/15 56/19 56/22 57/11 57/14 59/6 62/19 63/4 63/16
68/7 68/13 68/25 69/2 69/15 69/17 69/25 70/14 71/5
MR. O'NEAL: [78]
THE CLERK: [1]  69/12
THE COURT REPORTER: [1]  9/8
THE COURT: [157]

**$**

**$25 [1]**  46/24

**'**

**'Do [1]**  57/25
**'Prior [1]**  20/15
**'residential' [1]**  27/23

**-**

**--oOo [1]**  74/4

**/**

**/s [1]**  74/11

**1**

**1 million [1]**  51/7
**1-800 [1]**  72/4
**10-digit [1]**  36/8
**100-page [1]**  52/19
**1000 [1]**  2/23
**1006 [1]**  60/13
**101 [1]**  2/11
**111 [1]**  2/14
**12 [1]**  51/4
**13 [2]**  17/1 17/5
**14 [5]**  15/13 15/22 16/19 16/25 26/20
**15 [4]**  15/15 16/3 16/4 21/11
**16 [1]**  15/19
**17 [1]**  25/4
**18 [1]**  26/18

**2**

**20 million [1]**  60/17
**201 [1]**  2/5
**2011 [1]**  48/4
**2012 [1]**  49/7
**2013 [4]**  45/6 45/18 48/8 48/13
**2015 [1]**  49/5
**2019 [3]**  1/6 4/1 74/11
**21 [1]**  21/8
**214 [1]**  4/13
**215 [1]**  4/13
**23 [1]**  4/14
**24 [1]**  35/19
**26 [1]**  74/11
**29 [1]**  4/14

**3**

**30 [2]**  15/9 67/14
**30,000 [2]**  71/14 72/5
**301 [1]**  2/23
**326-8182 [1]**  2/24
**33602 [1]**  2/11
**34 [8]**  52/11 52/15 52/21 52/22 52/24 53/2 53/16 53/21
**3400 [2]**  2/11 2/14
**34A [9]**  50/13 51/21 52/12 52/16 52/20 52/25 53/11 53/15 53/22

**34B [3]**  52/8 52/22 53/15
**36 [1]**  59/15
**36A [3]**  59/15 59/21 60/1
**39.99 [1]**  47/19
**3:15-cv-01857-SI [1]**  1/5

**4**

**4 million [1]**  60/16
**403 [1]**  54/18
**45 [3]**  10/24 11/2 11/7
**47 [2]**  59/3 59/6

**5**

**503 [1]**  2/24
**5:00 [3]**  63/1 66/25 67/3

**6**

**6-1 [1]**  46/3
**600 [1]**  2/5
**6:45 [1]**  46/5
**6:52 [1]**  46/4

**7**

**7-1 [1]**  47/18

**8**

**800 [1]**  72/4
**8182 [1]**  2/24
**85004 [1]**  2/8
**8:30 [1]**  67/15

**9**

**90401 [1]**  2/5
**97204 [2]**  2/14 2/23
**9:00 a.m [1]**  18/11

**A**

**a.m [1]**  18/11
**ability [3]**  35/12 70/4 70/5
**able [13]**  5/22 18/15 20/2 23/3 29/25 32/5 33/5 35/8 35/14 37/22
38/1 40/9 60/22
**about [63]**  4/10 4/11 4/18 4/19 5/1 5/1 7/25 11/7 11/15 11/16
11/21 12/19 13/1 13/13 13/15 13/17 14/7 14/10 14/14 14/16
16/3 16/4 17/15 18/8 18/10 18/20 21/14 21/19 21/24 22/17 29/2
34/17 35/12 35/16 35/18 37/12 41/12 42/25 45/6 45/8 50/3 50/6
50/23 51/11 51/21 54/1 55/4 55/5 55/14 55/20 56/15 57/4 58/13
58/23 59/12 59/19 61/6 62/22 65/23 67/14 68/9 72/12 73/6
**above [1]**  74/8
**above-entitled [1]**  74/8
**Absolutely [2]**  24/9 36/21
**accept [1]**  11/3
**acceptable [1]**  40/21
**accepting [1]**  11/17
**account [6]**  44/9 46/25 47/14 47/15 48/3 49/12
**accounts [1]**  47/20
**accurate [4]**  26/24 27/16 61/3 61/5
**accurately [1]**  6/9
**across [1]**  35/8
**action [1]**  31/6
**actions [1]**  31/5
**actual [3]**  9/20 37/17 68/20
**actually [7]**  18/16 22/1 38/20 45/5 52/10 54/21 69/8
**Adams [1]**  2/3
**add [10]**  5/2 14/21 20/14 24/3 24/18 25/16 38/8 40/23 47/10
64/13
**added [5]**  20/9 20/10 20/12 23/23 24/1
**adding [3]**  9/15 10/5 20/18
**addition [2]**  14/4 25/15
**additional [5]**  9/13 11/20 24/13 54/2 54/17
**additions [1]**  41/3
**address [7]**  17/22 22/1 43/12 43/16 43/21 43/24 46/13
**addressed [2]**  43/14 56/17
**adequate [1]**  60/13

**A**

**administrative** [1] 64/12
**admission** [3] 44/20 61/1 61/3
**admit** [1] 61/3
**admitted** [3] 61/8 62/9 62/12
**admitting** [1] 47/3
**advance** [2] 10/1 38/14
**advances** [1] 38/6
**affiliation** [1] 49/8
**affirmative** [6] 21/22 30/15 31/17 32/3 32/6 33/12
**afield** [1] 55/23
**after** [8] 21/2 28/6 35/25 42/11 49/18 49/18 57/19 69/6
**afternoon** [4] 38/21 40/19 43/1 73/10
**again** [6] 18/2 20/8 30/6 38/3 43/17 47/21
**against** [1] 44/20
**agenda** [4] 4/9 5/2 5/3 43/8
**agents** [1] 22/12
**ago** [1] 46/24
**agree** [6] 9/14 24/12 57/1 57/2 65/6 68/19
**agreement** [1] 20/16
**agrees** [1] 24/11
**ahead** [2] 28/24 29/5
**aid** [1] 60/9
**all** [78]
**allow** [11] 4/15 7/15 7/21 13/10 36/25 49/23 50/1 52/6 60/10 63/16 71/19
**allowed** [7] 7/1 17/1 33/3 63/13 63/15 64/16 66/12
**allowing** [1] 7/14
**almost** [1] 48/8
**already** [2] 12/1 24/17
**also** [23] 4/10 4/16 10/4 10/13 13/1 21/19 24/9 25/19 27/3 28/1 33/3 34/19 44/7 46/13 49/24 50/21 53/12 53/13 57/7 70/4 70/15 72/12 73/11
**alternates** [1] 17/4
**although** [3] 15/24 23/12 46/3
**always** [2] 17/1 33/9
**am** [12] 5/15 8/21 11/14 13/4 14/11 18/12 18/14 36/6 48/21 55/25 67/18 73/8
**amended** [1] 64/16
**amendments** [1] 4/20
**amuck** [1] 22/18
**analogy** [2] 7/7 7/16
**analysis** [2] 31/11 35/17
**analyst** [3] 54/19 55/6 57/20
**Angeles** [2] 14/24 14/25
**another** [5] 25/11 39/20 50/4 54/23 72/25
**answer** [7] 7/2 9/1 32/21 33/8 39/25 42/21 67/5
**answered** [1] 51/20
**answering** [1] 10/11
**answers** [10] 6/11 7/11 7/12 9/6 9/21 13/7 17/22 39/2 40/3 40/15
**anticipate** [4] 11/17 12/16 47/2 56/6
**anticipation** [1] 11/22
**any** [46] 4/10 4/20 5/23 5/25 8/7 9/25 12/19 13/7 13/24 16/5 16/20 17/4 17/12 17/17 18/8 18/22 21/13 21/17 21/24 22/14 26/14 27/10 28/12 31/1 32/16 33/21 33/25 34/23 34/24 36/7 36/22 40/7 40/20 41/6 42/21 43/9 44/24 45/14 53/5 58/24 60/3 61/20 63/4 64/25 69/14 72/22
**anybody** [5] 12/19 29/3 50/6 63/25 67/19
**anymore** [1] 65/25
**anyone** [2] 5/2 13/24
**anything** [31] 4/11 5/2 9/10 11/20 15/23 17/25 24/20 24/20 24/25 26/16 43/9 46/16 46/23 48/15 48/20 49/19 50/6 54/1 56/15 59/11 59/18 61/21 62/7 62/12 68/14 68/25 69/2 69/6 69/22 70/2 70/11
**Apodaca** [3] 2/22 74/11 74/12
**apologies** [1] 20/7
**apologize** [3] 19/25 20/3 68/8
**Apparently** [1] 60/18
**appeal** [1] 31/20
**APPEARANCES** [1] 2/1
**appeared** [1] 51/25

**appears** [4] 46/1 50/15 55/2 58/3
**appellate** [3] 6/13 28/23 28/24 29/7 31/21
**applications** [1] 37/4
**applies** [2] 32/6 64/4
**apply** [1] 34/21
**appreciate** [1] 12/7
**apprised** [1] 40/25
**approach** [4] 40/21 41/2 41/9 57/10
**approaches** [1] 5/23
**appropriate** [8] 6/22 8/3 10/13 12/12 12/12 13/6 38/10 72/1
**April** [4] 1/6 4/1 49/5 74/11
**are** [145]
**area** [1] 36/13
**aren't** [2] 7/24 16/25
**argue** [2] 16/15 60/23
**argued** [1] 65/14
**argument** [14] 4/24 15/25 30/24 32/5 32/15 38/15 60/11 63/12 63/21 63/24 65/20 66/14 66/12 69/19
**arguments** [7] 16/14 40/7 40/17 64/4 64/6 65/18 66/8
**around** [1] 72/9
**artificial** [1] 20/17
**as** [90]
**ask** [34] 5/5 5/16 7/13 7/18 8/6 8/9 8/14 9/4 9/7 9/7 10/4 11/4 11/20 13/7 13/15 13/19 13/19 16/4 16/5 18/1 18/5 18/20 19/6 19/13 20/8 39/23 41/4 41/17 42/14 47/9 60/9 62/25 68/9 71/19
**asked** [1] 68/9
**asking** [5] 12/9 13/16 21/13 38/22 61/20
**asks** [2] 8/25 30/4
**aspects** [1] 53/10
**asserted** [1] 44/14
**asserting** [1] 21/21
**assess** [1] 31/1
**assessment** [1] 42/11
**associated** [4] 14/17 33/4 33/5 72/13
**assume** [5] 22/13 46/10 51/19 53/2 60/8
**assuming** [3] 29/20 47/5 62/3
**assumption** [1] 36/6
**assurance** [1] 59/1
**attached** [2] 31/13 58/20
**attack** [1] 56/10
**attempt** [2] 34/23 34/24
**attempts** [1] 55/17
**attention** [2] 46/22 47/17
**attitudes** [2] 13/2 13/16
**attorney** [3] 13/5 16/2 16/3
**authenticate** [1] 51/25
**authenticated** [1] 50/14
**authorize** [1] 51/24
**authorizes** [1] 20/16
**available** [1] 37/8
**Avenue** [3] 2/8 2/14 2/23
**aware** [3] 53/5 55/1 55/18
**away** [1] 60/20
**AZ** [1] 2/8

**B**

**back** [24] 7/20 16/7 18/1 34/15 35/19 37/16 45/18 45/23 45/25 46/2 46/24 47/23 48/5 55/15 55/20 59/6 59/9 61/1 61/9 61/19 67/20 69/3 69/7 71/10
**background** [1] 12/25
**backing** [1] 51/15
**ball** [1] 38/6
**based** [3] 29/25 30/22 36/10
**bases** [2] 65/14 72/14
**basically** [4] 6/13 13/12 41/4 71/21
**basis** [3] 31/13 54/3 54/17
**battened** [1] 61/19
**batting** [1] 72/9
**be** [143]
**beautifully** [1] 71/3
**because** [20] 8/16 16/19 30/1 30/3 30/6 30/9 32/9 33/19 35/11 44/18 45/12 45/20 48/12 49/16 49/25 54/15 55/1 58/3 58/5 65/3
**becomes** [1] 15/16

**B**

**been [16]**  8/12 8/17 12/1 17/23 31/16 35/17 37/7 44/13 46/18 47/22 58/1 58/23 60/13 60/22 62/12 72/2
**before [12]**  1/13 4/23 18/1 18/12 18/16 31/8 63/24 64/3 66/3 66/7 68/22 71/19
**begin [5]**  5/4 6/13 26/7 27/21 64/3
**being [7]**  10/25 13/9 21/3 58/4 58/18 60/2 66/12
**believe [11]**  14/24 23/12 23/12 26/10 42/10 42/13 42/17 47/13 51/23 62/16 63/11
**believes [1]**  29/17
**below [2]**  46/4 74/6
**besides [1]**  62/18
**best [6]**  5/20 6/12 12/13 38/14 38/18 70/25
**better [12]**  8/13 8/22 23/19 40/16 56/20 57/16 57/24 57/25 58/2 58/6 70/8 70/13
**between [3]**  44/6 45/17 48/25
**beyond [1]**  7/19
**big [3]**  52/17 52/23 53/8
**billed [1]**  47/22
**bit [5]**  4/6 4/25 22/24 41/12 53/22
**black [1]**  59/24
**black-and-white [1]**  59/24
**Blake [2]**  14/5 14/21
**blank [3]**  38/24 39/5 39/7
**blocked [1]**  70/23
**blown [2]**  19/5 19/12
**blue [5]**  6/22 6/25 8/2 8/7 9/14
**blue-designated/cross-designated [1]**  8/7
**board [1]**  54/19
**boards [1]**  62/24
**Bob [1]**  35/23
**both [25]**  19/3 22/6 23/13 24/12 26/13 26/24 27/2 30/15 34/13 38/14 38/19 40/17 41/17 47/20 47/22 48/11 50/1 62/15 64/20 64/21 65/6 65/10 65/18 66/23 68/18
**Boulevard [2]**  2/5 2/11
**box [8]**  15/22 39/6 39/8 39/11 39/17 42/23 69/24 70/8
**Brady [2]**  2/7 2/10
**brand [1]**  72/24
**brand-new [1]**  72/24
**breaking [1]**  8/17
**breaks [1]**  12/11
**Bree [2]**  54/9 55/3
**Bree Schappert [1]**  54/9
**briefly [3]**  43/16 44/7 49/6
**bring [4]**  7/4 16/7 41/1 68/19
**broken [1]**  31/20
**bucket [3]**  25/11 25/12 25/18
**buckets [1]**  34/23
**building [1]**  71/1
**built [1]**  71/1
**bump [1]**  17/14
**bunch [1]**  22/14
**burden [7]**  31/14 32/4 32/12 35/2 37/21 38/1 38/2
**Bureau [6]**  56/20 57/17 57/24 58/1 58/2 58/6
**business [35]**  26/25 27/14 27/23 27/25 28/2 28/5 28/5 30/25 33/4 33/6 34/20 34/21 34/25 35/15 35/16 35/18 36/19 37/19 37/20 37/22 37/25 39/5 44/12 49/24 50/20 54/19 56/20 57/17 57/24 57/25 58/2 58/6 61/23 62/1 62/3
**businesses [2]**  30/22 30/23
**Byron [4]**  46/10 46/22 47/16 47/19

**C**

**CA [1]**  2/5
**call [41]**  5/6 6/1 6/2 6/2 6/7 6/13 6/20 7/3 7/5 7/7 7/12 7/17 7/20 8/6 8/10 8/10 11/7 14/17 15/8 15/11 15/13 23/13 26/5 26/12 27/8 29/9 31/19 32/17 32/19 43/6 47/17 49/17 49/18 50/4 51/11 53/15 56/4 56/24 58/8 58/25 59/14
**Call' [1]**  57/25
**Call's [3]**  7/10 8/12 12/14
**call/has [1]**  32/17
**called [5]**  15/15 19/21 21/3 44/16 48/5
**caller [1]**  20/16

**calling [4]**  22/11 22/14 22/19 23/8
**calls [39]**  8/9 20/7 25/9 25/9 25/12 25/17 25/17 25/19 25/19 25/21 25/23 26/4 26/8 26/8 27/2 27/3 28/5 29/23 30/5 32/7 32/7 37/15 37/25 38/23 39/11 40/11 42/5 49/2 49/4 49/13 50/13 51/5 51/7 51/10 51/14 55/5 55/8 58/25
**came [2]**  21/20 22/17
**campaign [4]**  22/14 54/10 57/22 58/10
**campaigns [2]**  14/17 22/19
**can [71]**  5/1 5/23 7/5 9/4 10/16 10/17 10/18 11/4 11/5 11/6 12/11 12/23 13/7 15/17 16/16 17/5 17/6 18/5 18/6 18/17 19/7 19/23 25/23 26/5 27/13 31/13 33/11 33/12 33/15 34/4 34/16 36/12 36/14 37/11 38/3 38/3 38/20 40/6 40/12 40/13 40/25 40/25 42/17 42/25 43/1 43/4 43/13 50/22 52/1 53/15 53/22 57/12 59/20 61/13 62/10 63/8 63/8 63/25 65/6 66/20 67/11 69/18 69/21 69/22 70/2 70/16 70/20 70/21 71/1 71/9 72/21
**can't [25]**  10/1 10/19 13/8 13/19 13/19 15/4 15/13 39/6 39/8 39/17 40/4 42/10 42/18 55/7 55/22 56/1 56/10 58/2 63/8 63/9 63/12 64/7 64/8 70/23 72/15
**Canada [2]**  54/13 55/1
**Canadian [4]**  54/7 54/8 72/5 72/19
**cancel [7]**  44/9 46/23 48/6 48/6 48/18 49/1 49/11
**canceled [4]**  47/21 48/3 48/10 49/18
**cancellation [1]**  49/2
**candidly [3]**  22/16 26/1 31/3
**cannot [1]**  52/3
**captures [1]**  23/21
**care [3]**  33/25 72/24 72/25
**case [21]**  4/23 13/3 13/13 16/24 16/24 21/19 30/18 31/6 31/15 35/3 47/11 47/24 50/2 51/13 56/7 65/17 65/24 66/2 66/19 66/20 67/16
**case-in-chief [1]**  56/7
**cases [5]**  31/6 32/23 33/9 36/10 55/1
**Casting [1]**  14/18
**caught [1]**  46/21
**cause [9]**  15/7 15/24 16/6 16/10 16/11 16/16 16/19 24/1 74/8
**cell [3]**  25/21 30/17 31/11
**cellular [1]**  42/7
**Central [1]**  2/8
**cents [1]**  69/22
**CEO [1]**  14/16
**certain [9]**  9/17 9/18 13/2 13/7 25/18 30/22 51/5 52/19 53/17
**certainly [4]**  23/20 54/18 60/23 73/4
**certification [1]**  31/7
**certified [1]**  74/10
**certify [1]**  74/6
**cetera [2]**  22/19 22/19
**challenge [3]**  16/10 16/10 33/12
**challengeable [1]**  15/6
**challenged [1]**  16/15
**challenges [1]**  16/5
**change [2]**  26/16 37/2
**Chapter [1]**  51/4
**charged [4]**  45/12 45/20 45/21 46/25
**check [3]**  39/6 39/7 39/17
**checked [1]**  69/16
**checks [1]**  39/11
**cherrypick [1]**  53/9
**cherrypicked [1]**  53/17
**chief [1]**  56/7
**children [1]**  27/4
**choose [1]**  17/9
**chooses [1]**  53/2
**chronologically [2]**  45/23 46/2
**Circuit [2]**  31/23 39/25
**circumstances [1]**  7/23
**city [1]**  14/23
**civil [1]**  17/4
**claim [2]**  25/4 63/20
**claims [1]**  30/15
**clarification [1]**  9/11
**class [9]**  25/4 25/23 31/4 31/6 31/7 44/6 44/15 55/22 56/21
**classic [1]**  71/18
**clause [3]**  19/20 19/22 26/20

**C**

clean [3]  16/19 57/8 65/6
clean-up [1]  57/8
clear [8]  8/1 10/24 31/21 34/17 37/18 55/24 64/20 65/8
clearly [1]  20/16
clerk [1]  68/21
clicked [1]  48/6
client [3]  22/11 45/12 45/17
clips [1]  9/13
close [4]  4/23 16/21 65/24 66/2
closed [1]  42/11
closing [10]  4/23 63/7 63/21 63/24 64/4 64/6 64/11 67/14 67/16 69/19
closings [4]  67/1 67/2 67/8 67/12
code [2]  51/12 51/14
codes [2]  51/4 51/8
cofounder [1]  14/15
cold [1]  22/13
collected [4]  32/25 33/3 35/5 37/7
collection [1]  69/4
collective [1]  29/13
color [2]  59/24 59/24
columns [1]  60/17
combine [1]  9/19
come [9]  6/8 7/20 29/25 55/15 55/20 62/3 67/20 69/7 72/16
comes [1]  65/10
comment [4]  18/25 24/8 26/18 35/16
comments [4]  4/10 13/24 18/22 40/20
commitments [2]  13/17 13/19
common [1]  29/25
commonly [1]  31/4
communication [1]  44/19
communications [2]  44/6 44/10
company [4]  30/19 30/19 46/23 49/9
complaint [13]  54/4 56/21 56/24 57/16 57/24 58/3 58/11 58/12 58/20 58/21 58/23 64/15 64/16
complaints [1]  58/5
completeness [8]  6/23 7/15 8/4 9/14 9/15 10/6 10/15 12/15
completing [1]  4/4
completion [1]  51/4
complex [1]  38/12
compliance [2]  55/6 57/20
complies [1]  21/22
compromise [1]  41/11
computer [1]  60/18
concept [5]  22/24 24/14 24/15 26/2 35/9
concern [4]  22/16 25/5 29/16 30/2
concerned [5]  8/21 12/3 22/9 50/22 55/25
concluded [1]  6/22
concludes [2]  29/17 42/20
conference [8]  1/11 3/2 14/10 21/20 43/10 43/25 56/17 65/9
confirmation [5]  44/11 44/18 48/9 48/12 48/13
confirmed [1]  57/21
conformed [1]  74/9
confounded [1]  37/5
confronted [2]  54/20 55/7
confuse [1]  25/13
confused [2]  24/1 25/7
confusing [1]  40/19
connection [1]  22/15
consent [12]  19/3 19/5 19/12 19/13 19/21 21/3 21/22 21/24 22/6 22/7 22/24 23/16
consent' [1]  20/15
consents [1]  22/25
consequence [1]  39/3
consider [3]  27/24 28/1 43/16
considered [1]  50/16
consist [1]  29/12
consistent [1]  6/4
constructive [1]  24/10
contact [1]  55/17
contend [1]  19/2

**D** (right column continues)

contending [2]  22/25 51/9
contends [1]  23/23
context [4]  22/9 24/16 49/25 63/16
continue [3]  6/25 7/10 16/8
continues [1]  21/4
controversial [2]  45/19 64/14
convinces [1]  15/6
copies [3]  43/18 68/19 68/20
copy [3]  52/7 57/8 59/20
correct [14]  5/16 5/17 5/19 36/6 46/12 51/2 51/3 51/4 53/3 54/14 62/10 63/16 69/12 74/7
corrections [1]  4/20
correctly [1]  19/18
could [20]  10/4 24/5 24/7 25/13 26/24 26/24 27/1 27/1 27/2 27/3 32/1 32/8 36/24 40/17 52/10 53/15 69/7 69/9 69/10 70/17
counsel [17]  8/6 9/22 10/16 13/4 13/5 13/10 16/4 20/8 20/11 28/21 31/7 34/22 47/10 49/10 59/16 70/23
counsels [1]  6/10
count [1]  71/13
counter [1]  57/1
counter-redactions [1]  57/1
couple [6]  9/11 9/13 45/2 50/10 61/23 71/12
course [2]  44/3 50/9
court [14]  1/1 1/14 2/22 4/3 8/15 8/24 9/7 20/14 40/1 40/22 52/1 61/8 70/13 74/12
Court's [1]  14/2
Courthouse [1]  2/22
courtroom [1]  70/21
courts [1]  29/1
cover [3]  18/4 18/6 18/6
covered [1]  27/15
create [1]  60/19
created [3]  50/18 57/7 59/15
credibility [5]  55/6 55/11 55/25 56/9 56/10
cross [12]  6/23 7/1 7/8 7/16 7/20 8/3 8/7 10/17 34/9 34/10 72/12 73/4
cross-designation [2]  6/23 8/3
cross-examination [4]  7/1 7/8 7/16 7/20
CRR [2]  2/22 74/12
crud [1]  35/25
crunched [1]  8/22
crystalized [1]  22/20
culminate [1]  44/10
cumulative [1]  53/23
current [2]  19/10 30/10
currently [1]  53/5
customer [1]  54/3
customers [4]  22/12 37/16 37/17 37/17
cv [1]  1/5

**D**

daily [2]  54/23 55/16
danger [1]  22/21
darn [1]  66/24
data [2]  60/15 60/17
database [1]  37/5
databases [1]  36/16
DATE [1]  74/12
dates [1]  61/13
day [5]  15/4 15/14 18/12 18/17 49/18
daycare [1]  27/4
days [4]  12/12 38/4 60/20 66/1
deal [2]  66/10 72/22
decide [4]  17/11 33/13 38/13 53/24
decided [1]  32/4
deciding [2]  27/20 27/22
decision [1]  67/17
deem [1]  61/8
defeat [1]  68/3
defendant [38]  1/8 2/7 5/6 5/9 5/12 7/4 7/8 7/9 7/13 7/15 7/19 13/23 19/17 19/24 21/13 21/21 24/24 25/2 26/17 28/12 28/15 33/11 33/21 40/6 44/24 46/14 48/19 50/24 53/1 53/12 53/14 56/7 60/3 60/9 61/6 62/22 63/1 63/4

**D**

**defendant's [10]** 4/5 4/13 4/15 4/16 14/8 21/15 30/12 41/8 55/13 58/14
**defendants [3]** 27/7 27/13 59/19
**defense [15]** 7/23 8/6 13/5 16/3 21/23 30/9 32/3 32/6 33/12 35/13 37/12 37/12 37/14 59/16 70/23
**defenses [1]** 31/17
**define [1]** 34/24
**defined [1]** 26/19
**definition [6]** 19/4 19/6 19/12 23/20 24/3 32/19
**deliberate [2]** 17/3 67/3
**deliberating [2]** 67/6 67/7
**delivered [1]** 4/23
**delivering [1]** 54/11
**demonstrating [1]** 72/13
**demonstrative [3]** 62/18 63/13 63/14
**demonstratives [1]** 63/7
**Dennis [2]** 2/22 9/8 74/11 74/12
**depending [1]** 66/10
**deposition [12]** 4/19 5/4 6/3 6/4 6/7 12/9 12/19 12/20 23/13 24/17 50/14 50/15
**depositions [4]** 5/21 12/6 71/4 71/8
**depth [1]** 22/1
**described [2]** 28/14 41/9
**describes [1]** 50/11
**designate [2]** 10/1 31/8
**designated [7]** 8/3 8/7 8/7 9/13 10/12 23/13 24/17
**designation [2]** 6/23 8/3
**designations [6]** 4/5 4/17 4/19 5/5 67/23 67/24
**determination [2]** 32/22 42/15
**determinations [1]** 40/11
**determine [1]** 35/14
**determined [1]** 35/15
**develop [1]** 56/13
**dialed [2]** 35/3 35/7
**did [12]** 4/12 9/14 14/7 23/4 29/23 34/22 41/18 48/4 49/6 55/16 58/5 58/11
**didn't [11]** 22/14 33/18 34/24 37/7 43/24 47/20 48/6 49/3 49/17 49/18 53/19
**die [1]** 66/5
**difference [1]** 50/5
**different [3]** 5/23 34/18 47/20
**difficult [1]** 36/7
**digit [2]** 36/8 36/18
**digitally [1]** 74/9
**diligent [1]** 58/4
**dire [14]** 4/21 12/22 13/6 13/10 13/23 13/25 14/2 17/21 18/9 67/19 71/11 71/13 71/15 71/16
**direct [4]** 6/15 7/2 7/18 34/7
**direction [2]** 39/14 39/20
**directions [1]** 34/13
**directs [1]** 25/17
**disclose [1]** 64/14
**discovered [1]** 35/20
**discovery [4]** 51/20 61/2 61/9 61/19
**discuss [4]** 43/10 51/5 61/21 69/18
**discussed [3]** 13/8 49/16 54/10
**discussing [1]** 44/13
**discussion [3]** 4/25 71/16 71/16
**discussion/our [1]** 71/16
**discussions [2]** 39/15 39/21
**Dish [1]** 31/5
**display [3]** 11/6 69/24 70/6
**displaying [2]** 10/21 10/23
**displays [1]** 70/14
**disposed [1]** 51/5
**disposition [3]** 51/8 51/12 51/14
**disputed [1]** 54/12
**distinction [2]** 30/9 32/11
**DISTRICT [4]** 1/1 1/2 1/14 2/22
**divide [3]** 34/23 35/10 35/11
**divided [3]** 29/14 30/1 32/1

**divvy [1]** 36/3
**DNC [1]** 36/21

**do [89]**
**docket [2]** 28/23 28/24
**document [3]** 50/18 50/19 70/7
**documents [3]** 41/3 70/12 71/5
**does [18]** 5/5 5/7 5/8 5/10 5/11 5/13 14/23 19/2 20/11 21/13 28/5 29/3 34/3 34/4 47/10 53/2 60/2 67/19
**doesn't [9]** 13/22 32/9 34/21 36/13 37/20 47/1 55/4 58/10 58/11
**doing [8]** 10/1 10/17 13/17 34/9 34/10 65/3 71/11 72/2
**don't [68]** 6/14 8/2 8/15 13/10 13/12 13/23 16/20 17/15 19/5 21/25 22/9 23/17 26/23 29/14 31/1 32/9 33/25 34/25 35/2 35/7 35/10 35/11 36/1 36/3 37/9 38/5 39/6 40/5 42/23 45/18 45/20 46/16 47/11 48/19 48/25 49/12 50/3 51/9 51/23 53/8 53/10 55/19 56/6 59/18 60/10 60/19 60/24 61/12 61/13 61/18 62/12 65/5 65/15 65/19 65/25 66/1 66/2 67/4 67/10 67/24 68/16 68/24 69/9 69/13 70/10 70/11 71/25 72/5
**done [17]** 7/22 8/11 8/11 13/4 31/4 31/15 31/16 32/1 32/2 33/9 41/1 52/7 59/18 61/10 65/13 66/18 66/25
**doors [1]** 16/22
**Dovel [2]** 2/2 2/4 5/18 10/9 12/7 14/1 34/6
**down [8]** 8/16 9/1 19/16 19/24 20/1 20/4 58/7 61/19
**draft [2]** 18/22 64/19
**druthers [1]** 22/4
**Dunn [1]** 2/13
**duplicative [1]** 45/7
**duration [1]** 15/18
**during [7]** 10/21 37/25 56/6 61/19 62/18 63/7 63/7
**dwell [1]** 48/16

**E**

**each [4]** 13/6 25/17 25/20 25/22
**earlier [1]** 46/4
**ease [1]** 39/10
**easier [1]** 53/23
**easiest [1]** 59/5
**easy [1]** 31/5
**ECF [1]** 28/24
**edits [1]** 4/20
**effect [2]** 46/17 48/21
**efficiency [1]** 7/22
**Efficiently [1]** 17/24
**eight [3]** 17/2 17/3 68/20
**either [20]** 9/3 16/19 18/5 28/23 29/14 31/7 31/21 33/1 35/4 38/23 39/5 40/4 42/16 43/1 43/14 45/11 52/21 53/14 61/8 62/17
**electronic [1]** 28/23
**element [1]** 30/15
**elements [4]** 25/8 25/22 25/24 63/19
**else [20]** 4/11 5/2 11/6 12/19 15/5 15/8 24/20 26/17 43/9 50/6 54/1 56/15 61/21 62/7 68/12 68/14 68/24 68/25 69/2 69/9
**email [23]** 4/25 18/24 28/20 28/20 28/22 29/7 31/3 42/25 43/1 44/10 45/11 45/22 46/4 46/4 46/5 46/13 47/15 48/7 54/10 54/20 55/3 67/21 73/11
**emails [3]** 44/5 48/11 54/4
**embellish [1]** 64/8
**end [6]** 17/2 18/12 18/17 42/4 65/17 73/12
**ended [4]** 45/3 45/6 45/18 49/8
**ending [1]** 45/9
**ends [2]** 20/20 21/2
**enough [9]** 9/3 13/11 18/13 33/17 40/5 42/13 42/15 43/7 68/19
**entered [1]** 32/10
**entirely [1]** 64/20
**entirety [2]** 6/16 46/15
**entitled [3]** 38/9 56/8 74/8
**equivalent [1]** 7/7
**error [2]** 32/12 32/13
**especially [5]** 11/15 30/18 31/19 34/2 55/25
**essence [1]** 23/21
**essentially [2]** 6/7 26/2
**estimate [2]** 12/10 12/13
**et [2]** 22/19 22/19
**et cetera [2]** 22/19 22/19
**even [11]** 7/6 24/2 28/3 31/12 34/9 36/17 47/14 53/22 55/22

## E

**even... [2]** 63/7 67/15
**evenhandedly [1]** 12/25
**eventually [3]** 15/21 16/9 16/18
**ever [1]** 35/12
**every [3]** 25/24 68/5 68/13
**everybody [4]** 16/21 70/21 71/1 71/2
**everything [2]** 10/12 37/14
**evidence [42]** 13/13 29/11 29/16 30/8 30/22 32/25 32/25 33/10 33/13 33/14 33/15 33/17 34/16 36/13 37/1 37/2 37/13 37/24 38/2 38/4 38/12 38/15 40/10 41/17 41/21 41/23 42/3 42/7 42/11 42/12 42/14 42/15 42/17 45/6 56/11 62/10 62/16 63/11 64/4 65/17 67/12 69/7
**exact [1]** 61/13
**exactly [2]** 10/10 30/14
**examination [7]** 7/1 7/3 7/8 7/16 7/18 7/20 18/6
**examine [1]** 45/24
**example [6]** 10/23 25/10 32/24 63/19 71/13 72/2
**except [4]** 6/17 8/8 61/14 69/6
**exception [2]** 34/21 64/7
**exceptions [1]** 50/22
**excerpt [2]** 50/13 50/16
**excerpted [1]** 52/8
**excerpts [3]** 5/21 52/5 52/5
**excess [3]** 51/7 71/14 72/4
**exchange [1]** 45/11
**exchanged [1]** 64/18
**exchanging [1]** 61/15
**excluded [1]** 6/17
**excuse [5]** 15/7 15/15 15/22 15/24 16/7
**excused [1]** 15/12
**exercise [3]** 16/22 17/6 17/9
**exhibit [27]** 4/13 10/24 11/2 11/7 11/23 45/22 46/1 47/3 47/10 47/11 47/12 47/13 47/15 47/18 49/24 50/7 50/11 50/11 51/21 52/11 56/16 57/5 59/14 59/15 62/9 62/18 72/13
**exhibits [13]** 4/14 4/16 10/21 11/11 43/12 43/13 43/19 43/20 61/15 61/23 64/13 69/3 69/6
**existing [2]** 22/11 22/12
**exists [1]** 33/20
**expect [6]** 30/22 30/24 49/23 50/1 60/5 65/21
**expecting [1]** 65/4
**expedited [1]** 18/3
**Experian [1]** 31/10
**experiences [1]** 13/15
**expert [5]** 31/8 31/8 35/17 71/18 71/19
**explain [7]** 6/3 6/4 15/1 30/14 48/2 56/1 57/13
**explaining [1]** 20/20
**explanation [2]** 15/15 61/20
**explore [3]** 13/1 56/9 56/11
**express [9]** 19/2 19/4 19/11 19/13 19/20 20/15 21/3 22/6 23/16
**extent [3]** 18/5 30/22 50/22
**extrinsic [1]** 56/11

## F

**fact [6]** 28/4 33/18 35/25 37/18 44/17 58/18
**facts [3]** 13/20 45/3 64/10
**factual [3]** 39/2 40/11 65/13
**fair [1]** 52/18
**fairly [1]** 12/24
**fairness [1]** 53/20
**fake [2]** 72/3 72/20
**fall [1]** 36/13
**far [2]** 12/3 55/23
**fashion [1]** 10/18
**favor [4]** 13/21 13/22 25/23 29/19
**FCRR [2]** 2/22 74/12
**February [1]** 49/7
**fee [1]** 47/22
**Feel [1]** 68/18
**few [9]** 10/21 11/13 11/14 11/15 18/21 25/6 46/15 62/20 68/8
**Fifth [1]** 2/14
**figure [4]** 10/19 39/3 40/17 40/25

## F (second column)

**figured [1]** 12/8
**file [4]** 14/20 26/24 28/25 28/25
**filed [3]** 8/17 64/15 64/19
**filings [1]** 35/2
**fill [3]** 38/24 39/5 39/7
**fills [1]** 15/12
**final [15]** 4/22 10/9 10/20 19/3 19/11 21/7 22/2 24/20 24/25 26/17 64/1 64/2 68/23 68/23 73/8
**finalize [1]** 12/2
**finally [1]** 48/8
**find [8]** 12/25 13/20 17/14 26/1 27/7 42/9 42/13 67/18
**finding [2]** 29/19 29/19
**finds [2]** 39/9 39/11
**fine [18]** 9/24 10/4 11/1 11/25 17/2 22/3 24/15 24/16 24/18 24/19 25/5 26/11 33/23 42/23 59/8 62/5 69/17 70/20
**finished [2]** 67/1 67/2
**first [21]** 6/1 13/4 15/13 18/18 19/19 20/12 20/19 21/13 24/11 26/20 30/14 38/22 43/20 47/17 48/3 50/18 57/16 64/15 68/10 72/2 72/18
**fit [2]** 64/10 69/11
**five [4]** 60/16 65/20 65/20 66/8
**FL [1]** 2/11
**fleshed [1]** 61/4
**flipping [1]** 46/22
**focus [2]** 20/2 22/24
**folks [8]** 12/9 15/9 15/13 15/22 16/7 16/8 16/19 17/5
**follow [2]** 5/22 39/1
**following [5]** 13/7 21/19 24/2 26/7 32/15
**follows [1]** 5/22
**foregoing [1]** 74/6
**form [13]** 4/24 28/19 29/23 30/10 30/13 32/10 36/5 38/22 41/9 64/3 64/6 68/24 71/25
**former [4]** 14/16 22/11 22/12 37/16
**formerly [1]** 4/13
**forth [1]** 35/1
**forward [3]** 29/16 30/8 33/10
**Foster [3]** 2/10 34/10 72/9
**Foster's [1]** 32/15
**found [2]** 25/18 58/12
**foundation [8]** 11/16 47/6 51/23 60/8 60/13 62/1 71/11 71/25
**foundational [1]** 71/22
**four [3]** 39/11 39/12 39/19
**frame [1]** 38/18
**framework [1]** 64/11
**Franzini [6]** 2/3 28/21 30/11 41/14 64/18 70/22
**free [1]** 68/18
**freestanding [1]** 70/16
**Friday [8]** 66/18 66/21 66/25 67/3 67/6 67/8 67/15 67/17
**front [7]** 25/16 34/2 45/23 45/25 46/2 72/8 72/11
**full [7]** 6/19 15/9 19/5 19/12 24/3 52/24 53/2
**full-blown [2]** 19/5 19/12
**fully [2]** 8/12 60/5
**fundamentally [1]** 37/3
**further [15]** 5/1 7/6 8/5 11/18 12/7 21/13 21/16 29/3 31/12 34/23 43/5 43/14 43/16 59/12 59/19

## G

**gather [2]** 36/25 38/3
**gathered [1]** 37/3
**gave [2]** 7/12 73/3
**general [4]** 12/11 28/2 41/2 63/6
**generally [2]** 15/7 25/5
**gerbil [1]** 41/11
**get [24]** 9/24 15/21 16/9 16/18 21/25 30/4 30/8 35/10 39/25 40/15 43/12 47/11 49/11 53/9 53/10 55/17 61/4 66/20 67/11 67/17 68/17 68/17 69/9 73/11
**gets [3]** 22/8 54/18 61/9
**getting [6]** 14/19 46/18 48/9 55/1 55/8 59/11
**Gidley [14]** 5/8 9/18 23/14 50/14 51/3 54/19 55/6 55/20 55/25 56/3 56/7 56/12 57/20 58/12
**Gidley's [2]** 51/22 55/24
**give [28]** 10/9 12/11 12/14 16/13 22/9 27/23 36/14 38/19 42/16 43/4 44/2 47/5 52/7 53/13 53/17 53/19 59/9 61/13 63/24 64/22

**G**

**give...** [8]  64/23 65/6 66/6 67/22 68/16 69/22 71/12 73/5
**given** [10]  5/25 21/21 30/18 31/16 33/25 36/7 36/18 37/19 47/6 63/10
**gives** [2]  8/25 44/11
**giving** [2]  52/14 69/3
**glad** [1]  72/20
**go** [24]  6/14 6/21 7/19 10/15 18/1 25/3 26/5 28/24 29/5 31/9 31/10 33/16 35/4 36/14 40/17 50/22 59/6 63/23 66/19 67/16 67/19 71/25 72/1 72/12
**goes** [3]  38/16 54/25 71/10
**going** [88]
**gone** [1]  35/19
**good** [9]  4/4 24/10 26/16 37/13 41/11 51/15 69/1 70/11 71/7
**Google** [1]  36/17
**got** [16]  22/16 27/3 30/14 35/4 36/4 44/1 48/11 50/10 51/7 51/16 52/13 60/5 63/22 64/7 71/24 73/10
**Graham** [1]  2/13
**grammatically** [1]  25/15
**grant** [1]  16/6
**grapple** [1]  34/16
**gray** [1]  36/13
**greater** [1]  32/12
**greater than** [1]  32/12
**Greg** [3]  2/2 5/18 14/1
**group** [1]  29/13
**guess** [3]  6/14 41/15 70/20

**H**

**habits** [1]  66/5
**had** [22]  4/25 19/2 22/18 22/25 25/12 27/4 32/1 37/6 43/14 44/15 44/17 44/18 45/3 45/13 48/7 49/17 49/19 50/19 51/23 54/23 58/1 58/22
**hallway** [1]  16/21
**hand** [2]  18/1 51/15
**handed** [1]  65/7
**handle** [1]  4/18
**handled** [1]  57/4
**happen** [2]  17/12 48/14
**happened** [2]  55/21 57/19
**happens** [1]  51/11
**happy** [1]  14/11
**hard** [3]  36/11 59/25 66/5
**hardship** [2]  15/4 15/23
**has** [28]  8/12 9/16 12/19 22/22 24/2 27/13 32/17 33/19 34/20 35/17 41/20 41/22 42/2 42/6 42/11 43/11 44/12 44/13 51/6 51/7 51/11 58/21 59/17 60/13 62/12 63/19 66/19 71/14
**hasn't** [1]  48/15
**hate** [1]  22/19
**have** [130]
**haven't** [12]  17/12 22/23 30/1 30/3 30/6 30/9 42/21 52/20 53/4 60/6 60/22 72/23
**having** [3]  19/20 51/8 65/13
**he** [17]  5/7 5/10 5/13 6/7 10/9 10/10 14/16 14/23 50/14 50/15 51/23 51/24 51/25 54/20 54/20 55/8 56/1
**heads** [1]  71/13
**heads-up** [1]  71/13
**hear** [12]  11/15 11/16 13/16 19/16 19/24 24/6 44/24 49/10 51/1 60/8 62/2 63/3
**heard** [7]  10/8 11/21 11/22 15/23 29/3 50/7 68/2
**hearing** [4]  1/11 38/11 40/17 72/10
**hearsay** [3]  44/18 49/24 50/21
**held** [2]  26/25 28/2
**her** [19]  15/15 27/2 27/4 44/7 44/9 44/11 45/3 47/6 47/15 48/3 48/6 48/7 48/9 48/11 49/8 49/18 55/17 57/21 57/24
**here** [34]  7/7 7/17 16/25 19/10 19/12 20/18 23/16 29/15 29/15 31/11 31/12 31/12 32/25 36/24 38/4 38/19 44/8 44/23 46/16 48/16 48/20 49/21 50/10 53/17 55/15 56/1 56/5 57/5 58/17 61/10 66/16 66/17 67/19 68/17
**herself** [1]  46/13
**Hey** [2]  23/4 32/6
**Hi** [1]  47/18

**highlights** [1]  36/2
**highly** [1]  31/18
**him** [1]  14/22
**hinting** [1]  35/1
**his** [5]  14/21 50/14 50/14 56/9 59/23
**His Honor** [1]  59/23
**hold** [1]  12/10
**home** [11]  30/22 32/17 33/1 33/6 37/4 37/7 37/19 37/20 37/22 37/23 37/24
**home-based** [1]  30/22
**Honor** [113]
**Honor's** [6]  20/19 21/5 27/16 29/22 33/8 37/18
**HONORABLE** [1]  1/13
**hook** [1]  58/19
**hooked** [1]  70/19
**hopeful** [4]  18/13 18/15 66/20 67/8
**hopefully** [1]  43/4
**horizontal** [1]  60/16
**host** [2]  31/6 31/11
**hour** [2]  65/19 73/10
**hours** [1]  35/19
**how** [52]  4/18 9/22 11/8 12/5 12/8 12/16 15/1 15/19 17/22 29/23 30/4 32/14 32/15 32/18 33/25 35/14 37/11 38/5 38/23 39/4 39/6 39/12 39/13 39/16 39/18 40/5 40/6 40/11 40/13 40/13 40/18 41/18 41/19 41/23 41/25 42/6 45/23 48/1 48/2 50/20 51/5 51/17 53/20 54/15 55/24 56/1 56/13 57/4 64/4 64/10 66/10 69/9
**however** [7]  11/5 17/4 34/1 36/1 40/3 56/10 64/6
**huh** [2]  26/22 56/19
**hurdle** [1]  54/18
**husband** [5]  44/7 46/11 47/16 47/19 47/20
**hybrid** [2]  41/8 51/16
**hypothetical** [1]  17/20

**I**

**I'll** [34]  4/15 6/3 6/4 6/6 7/6 7/17 8/6 11/21 11/22 16/4 16/21 18/2 18/20 19/16 20/1 27/21 28/13 30/14 38/10 38/20 38/20 40/19 42/24 48/2 52/6 53/21 53/23 56/13 60/10 62/2 62/23 63/16 66/9 69/22
**I'm** [57]  5/16 7/25 10/22 11/3 11/16 12/3 12/10 15/14 15/22 16/10 19/18 22/9 22/20 24/11 25/25 32/15 36/14 38/11 38/11 38/19 38/21 39/9 39/24 40/17 41/10 43/23 45/4 45/4 48/19 51/1 51/15 52/14 53/5 53/11 53/13 54/22 56/12 57/14 59/23 60/20 60/23 60/25 61/10 61/19 62/23 63/14 65/16 65/16 66/17 66/20 66/22 66/24 68/1 71/18 72/8 72/20 73/4
**I've** [14]  4/16 6/17 10/13 11/2 11/17 15/12 15/23 16/20 18/5 20/4 28/14 51/16 54/18 57/4
**idea** [3]  29/1 41/17 70/11
**ideas** [1]  42/19
**identified** [2]  37/6 51/8
**identify** [2]  36/8 72/21
**immediately** [1]  6/25
**impeachment** [1]  64/13
**implications** [1]  40/7
**important** [1]  18/4
**improper** [1]  31/19
**inaccurate** [1]  61/6
**inappropriate** [1]  15/3
**INC** [1]  1/7
**inclination** [1]  17/10
**inclined** [2]  11/3 71/10
**include** [5]  10/11 19/14 42/22 68/11 68/15
**included** [3]  12/15 35/22 58/22
**includes** [1]  10/13
**including** [2]  12/15 40/11
**incoming** [1]  58/24
**incomplete** [1]  23/20
**incorrect** [1]  23/18
**incorrectly** [1]  45/13
**independent** [2]  13/18 36/13
**INDEX** [1]  3/1
**indicated** [1]  11/2

**I**

**infect** [1] 37/13
**infects** [1] 32/7
**inference** [1] 37/23
**inflame** [1] 48/16
**inflammatory** [2] 48/15 49/21
**information** [6] 7/5 13/1 33/3 37/6 40/5 60/21
**informed** [1] 58/25
**inquire** [1] 7/13
**insert** [1] 21/3
**inserted** [1] 21/7
**inserting** [2] 19/8 21/1
**instead** [2] 22/2 55/7
**instruct** [3] 19/1 32/20 63/23
**instructed** [1] 63/19
**instruction** [9] 21/4 21/8 22/6 22/7 24/13 25/4 25/5 26/18 37/18
**instructions** [28] 4/22 4/22 6/5 18/16 18/19 18/23 19/3 19/11
20/12 20/19 20/24 21/19 21/21 21/24 22/2 24/20 26/17 29/7
43/4 64/1 64/2 64/5 67/13 67/14 67/15 68/18 68/23 68/23
**insulated** [1] 32/2
**intend** [1] 62/20
**intended** [1] 64/20
**interactions** [2] 47/14 48/8
**interesting** [3] 17/8 39/20 51/18
**interrogatory** [1] 61/5
**interrupt** [1] 9/7
**introduce** [4] 52/5 53/11 53/13 53/16
**introducing** [1] 53/14
**invite** [3] 6/9 8/6 13/4
**is** [330]
**isn't** [1] 35/18
**issue** [23] 9/10 22/7 22/8 22/18 27/20 31/20 31/22 33/14 33/19
33/19 33/24 35/16 38/7 44/14 45/9 49/3 49/4 54/12 55/21 64/17
64/17 67/21 72/19
**issues** [8] 12/20 13/2 18/22 21/20 49/12 61/19 72/6 72/12
**it** [293]
**it's** [3] 27/14 37/10 50/15
**item** [3] 6/25 14/5 60/14
**items** [1] 68/9
**its** [1] 27/23
**itself** [1] 42/20

**J**

**Jacobson** [2] 2/4 62/25
**jaws** [1] 68/3
**JERS** [1] 69/11
**John** [2] 2/7 5/11
**joint** [1] 61/4
**Jonas** [1] 2/4
**judge** [66] 1/14 8/20 11/12 12/4 14/4 14/9 14/19 17/19 20/3
20/7 21/18 22/4 22/16 23/12 23/25 24/5 26/9 26/10 26/18 26/23
27/5 33/22 34/12 34/23 35/17 36/2 36/10 36/21 41/10 45/2 45/5
45/14 46/18 47/4 49/3 50/25 51/23 52/10 55/15 58/16 58/22
59/4 59/8 60/6 60/15 60/22 61/12 61/17 62/10 62/23 63/18
63/19 64/12 64/17 66/5 66/15 66/23 67/10 67/21 69/15 71/18
71/23 72/7 72/12 73/3 73/7
**judgment** [3] 65/10 65/12 65/18
**judicious** [1] 66/24
**Julien** [1] 2/3
**jump** [3] 9/4 33/22 36/24
**jumps** [1] 33/25
**juror** [12] 15/2 15/13 15/15 15/16 15/17 16/15 17/2 17/21 18/2
18/4 25/6 66/19 68/13
**juror's** [1] 17/22
**jurors** [7] 13/1 16/14 22/19 25/17 50/3 68/20 71/17
**jury** [99]
**jury's** [3] 11/5 40/11 70/24
**just** [49] 5/25 6/16 9/1 9/11 9/24 10/22 10/24 13/7 14/18 15/2
15/7 15/12 18/2 19/14 19/23 25/16 25/21 28/14 32/6 32/15 36/2
36/23 39/2 39/10 41/9 45/8 46/7 47/21 48/12 48/7 52/7 52/15
53/8 58/2 58/4 58/12 60/5 61/18 62/8 62/18 63/15 63/19 64/3
64/9 64/22 64/23 65/8 65/23 66/19

**justify** [1] 42/12
**Justin** [11] 5/6 5/19 5/2 6/7 6/23 7/3 7/5 7/10 7/12 7/17 12/14
**Justin Call** [1] 7/3

**K**

**keep** [4] 40/25 57/6 57/7 63/6
**keeping** [1] 13/18
**Kennedy** [1] 2/11
**kept** [1] 48/6
**key** [3] 13/2 27/19 28/7
**kind** [2] 42/22 55/9
**kinds** [1] 45/10
**knew** [1] 35/21
**know** [32] 9/25 10/6 10/16 11/12 14/22 17/11 21/25 23/25 32/6
32/14 32/16 32/18 35/12 36/1 36/1 36/14 37/10 37/10 39/6
40/24 42/23 49/12 51/9 55/19 55/19 58/10 58/11 58/12 60/3 66/6 67/4
67/24 69/9
**knows** [3] 15/5 45/17 69/4

**L**

**laid** [1] 60/13
**landline** [12] 25/21 26/19 27/22 28/4 28/6 28/8 30/16 30/16
30/20 31/18 32/20 38/23
**landlines** [5] 25/13 30/25 31/12 31/12 41/19
**language** [3] 24/2 24/14 25/25
**laptop** [1] 69/5
**last** [15] 12/16 13/9 14/10 19/20 21/20 26/1 28/7 35/19 43/24
56/17 65/9 67/21 67/21 71/9 71/13
**Lastly** [1] 69/18
**late** [1] 41/2
**later** [9] 7/21 16/13 24/7 40/16 48/9 49/4 49/13 63/1 69/19
**latest** [1] 57/3
**latter** [2] 8/20 8/22
**Laun** [1] 5/11
**law** [10] 64/5 64/7 64/8 64/9 64/9 65/11 65/13 65/19 66/13
68/21
**lawyer** [2] 8/25 34/3
**lawyers** [1] 15/5
**Laying** [1] 71/11
**leading** [1] 7/24
**least** [4] 30/20 35/1 39/18 43/12
**leave** [3] 18/14 36/25 58/3
**led** [1] 22/22
**left** [5] 18/5 18/14 33/6 57/21 58/9
**legal** [3] 23/20 39/3 40/7 64/11 65/14
**legally** [1] 23/18
**lengthy** [1] 71/12
**let** [35] 4/9 5/5 7/21 8/13 9/7 9/25 10/16 11/21 15/1 17/10 17/11
19/16 20/1 20/13 33/23 34/15 36/14 38/14 40/23 41/11 44/24
45/24 46/7 46/14 47/7 47/9 47/17 53/11 53/23 57/3 59/6 62/25
65/18 71/12 73/5
**let's** [11] 5/4 15/12 17/15 18/19 34/6 39/9 39/10 39/16 52/15
66/8 67/11
**letting** [1] 56/6
**level** [1] 47/1
**Lexis** [1] 31/9
**LexisNexis** [1] 36/17
**lie** [1] 55/2
**lieu** [1] 6/2
**life** [1] 13/16
**like** [42] 6/14 10/6 12/10 12/11 12/13 13/18 20/14 22/20 22/22
22/23 22/25 23/1 24/2 26/3 35/18 35/19 35/23 35/24 35/25 36/3
41/3 41/11 43/9 43/12 43/15 43/16 45/19 46/24 49/10 50/4 50/4
51/24 52/15 55/8 55/19 59/5 59/19 60/14 64/13 64/21 68/2
69/20
**like a** [1] 51/24
**likely** [2] 13/14 54/23
**limited** [4] 13/6 14/18 51/13 66/24
**line** [11] 6/13 15/8 26/20 26/25 26/25 27/7 27/14 27/15 27/18
12/16 32/19
**lines** [6] 30/25 32/23 32/24 33/20 39/5 60/16
**linked** [2] 25/8 25/22
**list** [10] 14/21 14/22 15/9 31/9 38/5 38/8 55/17 56/4 56/25 57/25

**L**

**listed** [1] 32/17
**listing** [1] 51/4
**literally** [1] 35/19
**little** [6] 4/6 4/25 22/24 41/12 53/22 59/25
**live** [7] 6/2 8/18 14/23 34/2 56/1 56/7 56/12
**LLC** [1] 35/24
**LLP** [4] 2/4 2/7 2/10 2/13
**lodged** [1] 11/12
**logical** [1] 9/20
**logistical** [1] 68/9
**long** [6] 6/15 9/5 12/16 34/1 63/1 66/2
**longer** [2] 4/6 44/11
**look** [14] 30/5 36/7 40/24 41/6 44/25 45/10 49/11 51/6 52/18 52/19 53/18 55/3 69/8 72/21
**looked** [6] 51/24 53/4 57/20 58/8 68/1 68/5
**looking** [5] 23/25 24/5 45/4 51/22 71/2
**looks** [3] 55/8 64/21 74/4
**LORI** [2] 1/4 47/18
**Los** [2] 14/24 14/25
**Los Angeles** [2] 14/24 14/25
**loses** [1] 31/22
**lot** [4] 72/3 72/4 72/6 72/7
**lots** [1] 27/3
**loud** [2] 60/25 63/15
**low** [1] 16/24
**lower** [1] 70/4
**lumping** [1] 31/18
**Luner** [1] 2/4

**M**

**machine** [2] 50/12 58/9
**made** [9] 16/17 25/21 26/2 30/9 38/23 39/11 40/12 49/13 57/16
**mail** [1] 57/21
**mails** [1] 58/9
**make** [41] 7/23 9/24 10/19 13/17 13/19 13/24 15/25 22/13 27/17 28/5 28/18 30/24 31/13 31/21 32/5 32/11 35/1 37/7 38/10 38/15 38/16 38/17 38/20 40/6 41/4 42/15 45/16 50/4 50/5 52/16 52/18 60/11 61/8 63/11 65/8 65/18 65/19 65/20 65/20 66/8 66/13
**makes** [4] 32/22 34/8 37/18 69/19
**making** [4] 24/15 37/15 37/25 39/10
**Mallen** [7] 14/5 14/7 14/13 14/15 14/21 23/11 24/19
**man** [1] 62/23
**Manager** [1] 51/2
**manner** [1] 9/23
**manual** [19] 50/1 50/13 50/15 50/16 50/17 51/2 51/11 51/24 51/25 52/2 52/6 52/9 52/11 52/18 52/19 52/23 53/9 53/13 53/18
**many** [25] 29/23 30/5 33/25 35/15 36/1 37/11 38/5 38/23 39/4 39/6 39/12 39/13 39/16 39/18 40/5 40/6 40/11 40/13 40/13 41/18 41/19 41/23 41/25 42/6 55/16
**mark** [2] 35/8 52/8
**marked** [5] 4/15 8/16 52/11 52/12 52/20
**marketing** [1] 30/19
**marking** [1] 52/21
**married** [1] 25/25
**Mary** [4] 59/9 69/11 69/21 70/4
**mass** [1] 22/19
**Maston** [1] 2/7
**matter** [7] 65/10 65/12 65/19 66/1 66/3 66/7 66/13
**matters** [2] 65/25 66/1
**may** [23] 7/13 8/13 15/24 16/25 24/6 25/7 27/24 28/1 29/24 32/16 35/9 37/19 40/8 40/8 46/18 48/22 48/23 50/7 56/4 57/10 58/25 66/18 66/19
**maybe** [4] 20/8 27/20 45/9 52/7
**me** [63] 4/9 5/5 5/23 8/5 8/14 9/7 9/25 11/4 12/14 13/16 13/17 14/13 15/1 15/2 15/16 15/23 16/4 16/9 17/3 17/11 18/5 18/16 19/16 20/1 20/13 21/20 21/23 22/20 22/22 24/15 24/16 28/25 33/23 33/25 34/15 36/14 38/9 38/13 43/1 43/8 44/2 44/24 45/21 45/24 46/7 46/14 47/7 47/14 47/19 52/2 55/24 57/3 62/25 63/14 65/6 65/18 66/7 68/9 68/20 71/12 72/4 73/5
**mean** [3] 27/6 32/9 43/23
**meaning** [1] 27/24

**meaningful** [1] 34/24
**means** [3] 28/15 35/19 64/9
**meant** [1] 34/16
**meet** [5] 23/1 51/24 31/14 32/4 48/1
**meets** [1] 38/1
**member** [2] 55/22 56/21
**members** [2] 25/23 44/15
**mention** [1] 55/4
**mess** [1] 36/4
**message** [2] 54/24 55/16
**messages** [8] 25/11 54/11 55/4 55/4 55/15 57/21 58/13 58/17
**met** [1] 29/20
**method** [1] 17/20
**MICHAEL** [1] 1/13
**middle** [3] 17/21 46/3 61/9
**might** [7] 17/22 36/2 38/18 41/20 67/17 67/22 72/15
**Miller** [1] 2/13
**million** [3] 51/7 60/16 60/17
**mind** [4] 13/18 33/22 63/6 71/19
**mini** [1] 13/11
**mini-opening** [1] 13/17
**minutes** [3] 16/3 16/4 67/14
**miserably** [1] 71/5
**mislead** [1] 23/24
**missing** [1] 48/21
**mistake** [1] 22/13
**mistaken** [1] 45/4
**mixed** [1] 46/19
**MLM** [1] 54/23
**mobile** [38] 25/13 29/9 29/14 29/15 29/18 29/24 30/3 30/7 32/1 32/2 32/7 32/23 33/1 33/7 33/18 34/18 34/21 35/4 35/13 36/9 36/9 36/18 36/20 36/20 37/1 37/4 37/7 38/5 38/24 39/7 39/13 39/18 40/6 40/12 40/13 41/9 41/14 41/21 42/7
**mobile/residential** [1] 32/1
**model** [1] 6/5
**moderately** [4] 18/13 18/15 66/20 67/8
**modified** [1] 22/7
**modifying** [1] 28/14
**moment** [9] 4/8 4/12 20/25 21/6 21/10 28/20 43/22 44/2 54/5
**moments** [2] 18/21 46/16
**Monday** [4] 66/16 66/19 67/5 67/19
**money** [2] 45/21 47/23
**Monica** [2] 2/5 2/5
**monitor** [2] 70/19 70/20
**monitors** [2] 69/24 70/14
**months** [1] 46/24
**more** [23] 9/4 11/15 14/18 15/4 15/14 18/21 22/1 22/7 22/8 22/24 24/2 24/4 24/21 24/25 33/15 36/2 40/1 41/12 50/7 56/8 61/22 64/1 73/6
**morning** [5] 4/4 18/17 43/6 67/8 67/13
**most** [4] 12/23 18/1 54/22 66/15
**mother** [1] 27/2
**motion** [6] 38/7 40/23 41/1 51/20 61/7 66/13
**motions** [3] 38/17 66/11 73/9
**move** [10] 15/18 52/15 64/16 65/10 65/12 65/23 66/2 66/3 66/7 71/9
**Mr** [6] 14/13 14/15 23/11 24/19 45/11 55/25
**Mr.** [38] 6/13 7/7 7/20 8/6 8/10 8/10 8/12 9/18 10/9 11/7 12/7 14/7 20/6 28/21 30/11 32/15 34/6 34/7 34/9 34/10 36/23 41/14 50/14 51/3 51/22 54/19 55/6 55/20 55/24 56/3 56/7 56/12 57/20 58/12 62/25 64/18 70/22 72/9
**Mr. Call** [7] 6/13 7/7 7/20 8/6 8/10 8/10 11/7
**Mr. Call's** [1] 8/12
**Mr. Dovel** [3] 10/9 12/7 34/6
**Mr. Foster** [2] 34/10 72/9
**Mr. Foster's** [1] 32/15
**Mr. Franzini** [5] 28/21 30/11 41/14 64/18 70/22
**Mr. Gidley** [11] 9/18 50/14 51/3 54/19 55/6 55/20 56/3 56/7 56/12 57/20 58/12
**Mr. Gidley's** [2] 51/22 55/24
**Mr. Jacobson** [1] 62/25
**Mr. Mallen** [1] 14/7
**Mr. O'Neal** [4] 20/6 34/7 34/9 36/23
**Mrs.** [1] 45/11

## M

**Mrs. Wakefield [1]** 45/11
**Ms [2]** 47/14 49/17
**Ms. [9]** 27/24 44/6 44/8 44/17 44/19 46/12 47/5 48/2 49/25
**Ms. Wakefield [8]** 44/6 44/8 44/17 44/19 46/12 47/5 48/2 49/25
**Ms. Wakefield's [1]** 27/24
**much [7]** 8/4 8/9 12/8 56/8 61/6 61/7 65/16
**multilevel [1]** 30/19
**multimedia [1]** 63/16
**must [6]** 12/15 25/19 26/21 27/21 27/23 28/13
**my [64]** 4/4 4/9 4/21 4/21 5/2 5/22 11/2 11/17 11/22 12/22 12/24 13/24 15/7 17/9 18/22 20/7 22/5 22/10 22/16 25/5 25/15 27/4 28/25 29/7 29/16 30/2 36/6 36/10 36/14 41/2 42/10 42/25 43/8 43/22 45/12 45/17 46/21 46/24 46/25 47/18 47/19 47/19 47/23 51/13 51/20 60/1 60/22 61/10 63/6 64/1 64/5 66/3 67/13 67/23 67/23 68/18 68/21 69/22 70/6 70/19 70/20 71/16 73/3 73/4
**myself [1]** 9/3

## N

**name [2]** 6/19 47/18
**names [1]** 35/23
**Nash [1]** 2/13
**native [1]** 69/5
**nature [1]** 30/18
**necessarily [4]** 6/14 25/8 25/25 28/5
**necessary [1]** 29/8
**need [21]** 6/15 7/20 8/15 8/18 11/2 12/18 18/14 19/5 30/15 37/9 37/10 38/13 39/23 45/20 48/12 48/17 51/17 60/7 65/19 68/16 68/24
**needed [1]** 10/14
**needs [1]** 31/20
**neither [1]** 28/22
**Net [1]** 47/19
**Network [1]** 31/6
**never [1]** 37/5
**new [10]** 10/1 15/16 16/7 17/22 43/11 43/23 60/20 60/21 66/12 72/24
**next [11]** 6/4 6/21 6/25 12/22 15/8 15/11 18/19 27/19 27/21 30/4 38/4
**Nicholas [1]** 2/13
**night [3]** 26/1 67/6 67/22
**nine [1]** 67/15
**nine o'clock [1]** 67/15
**Ninth [2]** 31/23 39/25
**Ninth Circuit [2]** 31/23 39/25
**no [35]** 7/5 8/5 11/18 11/22 14/2 14/4 15/19 16/9 19/4 21/16 23/9 25/1 26/15 29/1 35/17 37/24 38/13 41/22 41/24 44/11 44/17 48/22 51/11 51/16 52/17 55/10 58/17 62/9 63/1 65/1 65/2 65/15 66/23 68/4 69/15
**No. [14]** 14/5 15/13 15/15 15/16 15/17 15/19 15/19 16/15 21/8 26/4 26/18 34/17 40/10 40/10
**No. 1 [3]** 26/4 34/17 40/10
**No. 15 [1]** 15/15
**No. 16 [1]** 15/19
**No. 18 [1]** 26/18
**No. 2 [5]** 15/13 15/16 15/17 15/19 40/10
**No. 21 [1]** 21/8
**No. 6 [1]** 14/5
**No. 7 [1]** 16/15
**nobody's [1]** 71/2
**non [2]** 7/24 49/24
**non-hearsay [1]** 49/24
**non-leading [1]** 7/24
**none [2]** 12/21 16/12
**normally [4]** 7/21 7/22 8/24 61/2
**North [1]** 2/8
**not [97]**
**note [2]** 4/12 58/17
**notebook [1]** 43/22
**notebooks [3]** 68/10 68/15 68/16
**noted [3]** 31/3 31/4 31/19
**nothing [6]** 24/22 24/24 33/19 49/20 51/10 64/13

**now [34]** 7/10 7/15 8/12 10/23 12/13 19/3 22/3 24/5 25/15 28/22 29/1 29/11 32/21 34/8 35/25 40/7 43/12 44/25 44/6 46/15 48/19 53/18 53/21 56/12 59/18 59/20 60/3 61/21 61/25 62/13 64/21 65/13 70/6 70/22
**number [28]** 6/13 27/25 28/1 28/1 28/3 28/4 29/10 29/25 33/4 33/10 34/25 35/23 36/8 36/8 36/16 36/18 37/19 37/20 37/21 37/23 37/24 38/25 41/21 41/22 41/24 42/17 44/22 44/22
**numbers [30]** 16/24 29/13 29/13 29/18 29/24 30/1 32/2 33/1 33/1 33/2 33/5 33/6 33/6 33/7 33/10 35/3 35/6 35/7 35/7 37/3 38/5 39/4 39/7 39/10 72/3 72/3 72/4 72/5 72/19 72/20

## O

**o'clock [2]** 18/14 67/15
**O'Neal [5]** 2/7 20/6 34/7 34/9 36/23
**object [4]** 9/14 11/20 38/9 53/3
**objecting [1]** 34/5
**objection [23]** 8/8 9/22 11/23 14/2 21/17 26/14 27/10 28/12 30/10 34/8 34/9 41/5 50/24 58/15 60/4 60/10 62/2 64/25 65/1 65/2 69/14 72/22 72/25
**objectionable [3]** 45/1 51/21 53/6
**objections [23]** 4/5 4/17 4/21 5/24 9/25 11/11 11/18 11/19 12/1 14/4 16/20 16/20 17/12 28/16 53/5 59/14 60/22 63/4 67/24 72/23 73/2 73/3 73/9
**objective [1]** 35/17
**objectively [1]** 36/12
**objects [2]** 61/6 61/7
**obstructed [1]** 71/3
**obviously [2]** 15/3 52/21
**occurred [1]** 49/4
**off [1]** 17/14
**offer [7]** 11/2 52/23 53/2 53/21 53/22 60/9 62/2
**offered [2]** 44/20 60/2
**offering [1]** 52/25
**office [2]** 46/24 48/5
**officer [1]** 52/1
**Official [1]** 74/12
**Oh [3]** 35/25 51/16 55/7
**okay [22]** 5/14 9/8 12/18 12/21 15/1 18/7 20/25 21/7 22/20 24/20 25/3 28/15 41/8 42/24 44/4 45/9 46/20 52/4 59/5 59/9 62/7 65/8
**old [2]** 62/24 66/5
**olden [1]** 66/1
**once [3]** 12/8 40/9 65/12
**one [64]** 4/8 4/12 6/9 12/7 13/5 13/9 14/4 14/18 15/5 15/14 18/3 18/14 18/25 19/7 19/14 20/22 20/25 21/6 21/10 21/20 25/24 26/18 26/21 27/13 27/21 28/13 28/20 29/10 30/2 31/25 34/1 34/3 34/4 36/3 36/11 37/10 39/12 39/13 39/14 41/15 41/17 42/19 43/22 44/2 44/14 46/18 46/21 50/7 53/18 54/3 54/5 54/22 58/16 60/14 61/12 61/22 68/5 68/10 68/20 68/20 69/5 71/9 72/24
**one-day [1]** 15/14
**ones [5]** 9/16 29/15 29/15 33/18 36/9
**only [14]** 12/25 17/5 17/13 25/23 34/1 34/3 34/4 34/20 34/25 36/11 51/14 52/4 53/17 58/5
**oOo [1]** 74/4
**open [4]** 4/3 13/18 61/2 69/8
**opening [13]** 13/11 13/12 18/18 18/20 35/3 43/5 62/9 62/19 63/2 63/7 63/10 63/12 64/11
**operation [1]** 50/12
**opinion [3]** 35/17 36/15 70/6
**opinions [2]** 13/2 13/16
**opponent [1]** 44/21
**opportunity [5]** 13/11 15/25 16/13 66/6 67/23
**opposed [2]** 29/9 30/3
**opposing [1]** 9/21
**option [2]** 42/16 53/14
**options [1]** 69/21
**order [7]** 9/19 10/12 10/14 12/2 12/8 23/23 73/9
**ordered [1]** 10/14
**ordinary [1]** 27/24
**OREGON [2]** 1/2 1/7
**organized [1]** 9/22
**original [3]** 59/3 59/6 74/8

**originally** [1]  19/6
**other** [31]  5/23 7/4 12/19 14/17 23/21 24/1 26/21 27/13 27/21
28/13 29/10 29/20 29/25 30/2 31/6 32/23 37/10 38/8 38/16
40/24 41/4 51/15 51/16 52/5 52/5 53/10 53/12 53/14 57/4 61/3
70/11
**otherwise** [3]  15/6 24/14 66/18
**our** [28]  6/5 8/15 8/24 9/1 9/7 15/16 16/8 17/2 18/10 18/13
18/15 21/19 23/24 32/4 32/11 33/17 35/2 38/1 38/1 39/14 43/10
57/3 57/25 68/20 69/11 69/21 70/15 71/16
**out** [43]  6/15 7/4 9/18 10/19 12/8 12/25 15/25 16/13 17/5 18/5
22/23 26/25 28/2 28/13 31/2 31/20 33/25 35/8 36/22 35/22 39/3
40/9 40/16 40/18 40/25 42/9 42/13 43/7 44/9 48/6 48/15 53/10
58/12 60/12 60/25 61/4 61/9 63/15 66/10 67/18 68/22 72/21
73/4
**outcomes** [1]  59/15
**Outreach** [1]  51/2
**outweigh** [1]  49/21
**outweighs** [1]  55/11
**over** [9]  4/25 8/2 14/11 16/2 16/5 18/14 28/21 37/14 54/18
**overrule** [3]  11/22 34/8 68/2
**overruled** [1]  16/20
**overruling** [1]  16/10
**overstatement** [1]  47/2
**own** [4]  13/7 15/7 70/15 70/22

**P**

**p.m** [2]  46/5 63/1
**P34A** [1]  50/11
**P45** [2]  54/3 54/5
**P47** [1]  56/16
**P6** [5]  43/21 43/22 44/5 44/23 46/15
**P7** [6]  43/21 43/23 44/5 44/10 44/23 46/15
**P7-8** [1]  44/10
**page** [11]  6/13 10/24 19/19 20/22 20/24 21/11 26/20 46/3 47/18
52/19 53/18
**pages** [2]  44/22 52/20
**paper** [1]  59/20
**paragraph** [4]  19/19 26/20 27/19 27/21
**paralegals** [2]  68/9 69/2
**paramount** [1]  55/12
**part** [24]  22/10 23/4 30/20 32/11 34/17 35/1 35/1 53/6 53/15
57/16 57/17 57/19 57/22 57/22 57/23 58/7 58/9 58/23 58/24
59/2 60/22 61/14 61/25 66/13
**particular** [4]  17/25 32/3 44/24 53/6
**particularly** [2]  9/17 44/25
**parties** [1]  61/15
**parts** [1]  57/15
**party** [3]  19/21 21/3 44/21
**party-opponent** [1]  44/21
**pass** [1]  68/22
**Pause** [2]  46/9 47/8
**PDF** [1]  63/25
**penciled** [1]  22/23
**people** [13]  16/7 16/25 17/2 17/7 17/14 22/14 23/5 27/4 30/21
33/25 37/24 54/13 54/15
**per** [5]  16/23 17/1 17/6 17/13 34/3
**peremptories** [3]  17/6 17/9 17/15
**peremptory** [1]  16/22
**perfect** [1]  25/16
**perfectly** [1]  24/16
**perhaps** [1]  22/7
**period** [2]  28/6 49/3
**person** [9]  7/11 15/8 15/11 15/11 15/12 18/3 34/1 34/4 58/22
**persons** [1]  35/23
**perspective** [1]  25/6
**persuasive** [1]  30/8
**Phoenix** [1]  2/8
**phone** [6]  25/21 30/17 38/24 55/5 58/8 58/24
**phones** [3]  31/11 42/7 42/8
**photograph** [1]  70/7
**photographs** [3]  70/11 70/12 71/4

**phrase** [1]  40/18
**phrasing** [1]  42/19
**pick** [4]  18/12 18/13 18/15 43/3
**piece** [2]  6/21 45/8
**pieces** [2]  23/21 53/12
**place** [5]  20/16 49/3 50/12 65/12 72/2
**plaintiff** [54]  1/5 2/2 5/16 6/1 6/6 7/18 8/1 9/10 13/21 13/21 14/2
19/19 19/21 21/14 23/15 24/11 24/11 24/14 24/22 25/10 26/14
26/25 27/10 28/10 29/19 29/24 31/2 34/7 36/22 38/22 39/22
40/4 40/8 40/20 41/18 41/20 41/22 42/3 42/6 43/11 45/3 45/18
49/6 49/8 49/14 51/6 51/13 52/7 53/2 53/16 58/21 60/8 64/15
67/23
**plaintiff's** [18]  4/5 4/14 4/17 6/10 7/2 10/16 13/5 16/2 20/11
28/20 31/24 42/17 46/11 47/9 56/6 65/24 66/2 72/17
**plaintiffs** [4]  14/11 18/25 34/22 51/1
**plaintiffs'** [1]  31/7
**plan** [4]  12/12 42/25 60/1 66/11
**plane** [1]  66/19
**planning** [6]  8/14 8/17 10/10 10/17 34/10 63/2
**play** [1]  6/7
**played** [1]  25/20
**please** [8]  4/7 4/7 14/20 20/6 46/23 57/11 59/22 68/20
**plenty** [1]  50/3
**plural** [2]  26/5 26/5
**podcast** [1]  22/17
**point** [10]  14/19 23/14 28/7 42/11 45/6 45/16 48/24 53/6 53/10
61/12
**pointed** [2]  34/22 48/15
**pointing** [1]  35/22
**points** [7]  9/11 18/4 58/16 60/17 65/20 65/21 66/9
**policies** [1]  54/22
**POM** [6]  50/12 50/15 50/20 54/11 54/15 55/10
**portal** [1]  48/5
**portion** [3]  20/9 30/17 30/20
**portions** [9]  8/2 8/2 8/17 12/15 44/24 52/6 53/9 53/14 53/17
**Portland** [3]  1/7 2/14 2/23
**position** [3]  21/15 30/12 72/17
**positive** [1]  59/11
**possibility** [1]  24/7
**post** [6]  38/16 39/3 39/14 39/20 66/11 66/12
**post-trial** [6]  38/16 39/3 39/14 39/20 66/11 66/12
**potential** [1]  25/7
**potentially** [2]  32/8 70/17
**power** [1]  40/2
**powerful** [1]  60/18
**practice** [2]  12/24 51/20
**prejudice** [5]  22/21 41/6 41/7 55/10 60/23
**prejudiced** [1]  38/10
**prejudicial** [1]  45/15
**preliminary** [13]  4/21 18/16 18/19 18/23 19/4 19/11 20/12 20/23
22/2 24/21 43/4 68/18 72/10
**prepare** [1]  9/20
**prepared** [3]  4/24 51/7 68/1
**preponderance** [8]  41/16 41/19 41/21 41/23 42/3 42/7 42/18
42/21
**prerecorded** [4]  20/17 25/12 25/20 54/11
**presence** [4]  15/25 16/14 60/12 72/19
**present** [4]  5/20 29/11 62/1 63/1
**presentation** [1]  31/14
**presented** [4]  8/12 38/13 40/10 61/14
**presenting** [1]  31/16
**preserve** [1]  60/14
**preserved** [3]  11/19 12/3 65/13
**president** [1]  14/15
**president/cofounder** [1]  14/15
**Press** [1]  14/18
**presumably** [1]  38/25
**pretrial** [10]  1/11 3/2 12/2 14/10 43/10 43/25 56/17 61/14 65/9
73/9
**pretty** [3]  51/15 66/24 71/12
**previous** [4]  11/19 12/1 17/23 54/9
**previously** [2]  43/14 45/13
**primarily** [4]  27/14 28/8 37/16 37/21

**P**

**primary [1]** 30/10
**prior [8]** 19/12 19/20 21/3 22/6 23/4 23/10 23/16 28/16
**Pro [1]** 47/19
**probably [11]** 6/12 15/9 21/23 24/3 40/16 60/12 61/4 62/23 66/9 69/11 73/9
**problem [8]** 23/9 23/17 24/6 31/2 34/16 36/2 48/17 70/18
**problematic [1]** 24/4
**problems [2]** 27/8 72/13
**procedure [1]** 64/25
**procedures [1]** 54/22
**proceed [4]** 7/23 9/5 9/23 10/13
**proceeded [1]** 37/9
**proceedings [3]** 1/12 3/2 74/7
**process [4]** 15/2 17/12 61/15 65/11
**produced [1]** 37/6
**product [1]** 45/14
**Progressive [1]** 51/2
**prohibits [1]** 20/20
**project [1]** 70/9
**projector [3]** 69/20 70/5 70/9
**promoter [4]** 44/8 45/4 49/7 54/21
**promoters [4]** 22/11 30/21 30/23 49/17
**promotership [2]** 45/17 49/2
**promoting [1]** 54/23
**prompts [1]** 15/23
**proof [2]** 32/12 35/3
**proper [1]** 13/23
**proposal [1]** 57/3
**propose [3]** 10/22 21/1 57/3
**proposed [9]** 9/20 19/6 19/13 20/23 21/2 21/4 29/22 56/25 57/1
**proposing [4]** 19/19 19/21 21/14 23/17
**prospective [2]** 16/14 17/21
**prove [9]** 13/22 25/10 29/7 29/8 29/24 32/10 41/18 42/17 44/16
**proven [7]** 13/20 41/16 41/20 42/3 42/3 42/6 42/21
**provide [5]** 9/21 19/7 22/10 24/7 59/20
**provided [1]** 59/15
**providing [2]** 6/6 59/23
**psychologist [1]** 36/14
**public [1]** 28/2
**publicized [1]** 28/2
**publishing [1]** 10/24
**purchased [1]** 66/19
**purported [1]** 31/9
**purpose [1]** 26/7
**purposes [7]** 22/1 22/21 28/17 28/23 28/24 31/19 59/1
**put [26]** 11/5 16/14 16/16 22/23 25/13 28/6 29/16 30/8 33/10 33/14 37/1 37/1 37/4 38/15 38/24 39/18 41/20 45/5 45/20 54/19 57/24 58/24 59/2 63/15 70/2 70/22
**puts [1]** 39/12
**putting [3]** 42/16 63/13 65/11
**Pyle [1]** 2/13

**Q**

**qualify [1]** 72/5
**quality [1]** 59/1
**quantity [1]** 35/5
**Quarles [2]** 2/7 2/10
**question [21]** 5/5 5/15 6/18 8/25 9/2 16/3 16/4 17/8 28/25 29/23 30/4 33/8 33/16 38/12 40/3 41/17 42/4 42/6 42/20 51/20 71/9
**questioner [2]** 6/10 6/12 6/24
**questioning [3]** 12/23 34/2 34/6
**questions [33]** 7/6 7/9 7/13 7/18 7/24 7/25 8/6 8/7 8/9 9/5 9/21 11/7 12/9 13/8 16/8 17/17 17/23 18/2 18/8 18/20 21/14 21/16 34/3 34/4 39/2 40/15 40/18 51/18 51/19 60/9 60/10 71/19 71/22
**quick [1]** 61/22
**quite [1]** 26/23

**R**

**raise [2]** 33/11 33/24
**raised [3]** 17/25 72/19 72/20
**raising [1]** 51/18

**random [1]** 22/13
**rather [2]** 8/20 67/25
**rationale [1]** 57/13
**RDR [2]** 2/22 74/12
**reaction [1]** 70/24
**read [27]** 4/16 6/9 6/11 6/24 7/8 7/9 7/10 8/2 9/2 9/4 9/5 9/15 12/14 18/16 20/13 25/6 28/7 46/1 46/7 46/15 47/7 47/10 59/25 64/20 65/4 67/14 67/15
**reader [5]** 6/7 6/8 7/9 8/10 9/6
**reading [16]** 4/18 5/4 6/16 6/18 7/10 7/12 8/14 8/18 9/2 9/3 10/10 10/22 10/23 21/21 25/7 36/10
**reads [4]** 7/2 9/6 45/22 45/23
**ready [3]** 44/4 57/12 57/14
**real [3]** 31/2 45/9 58/23
**reality [1]** 58/5
**really [14]** 8/18 18/14 22/20 22/21 27/6 27/19 33/19 36/7 41/6 50/2 52/17 58/19 65/21 71/7
**realtime [1]** 8/21
**reason [6]** 16/25 23/7 37/2 37/14 53/7 54/25
**reasons [2]** 15/4 50/3
**rebut [1]** 38/2
**recall [1]** 13/8
**receive [5]** 4/12 11/3 11/23 47/12 53/21
**received [5]** 4/16 28/19 28/20 32/17 47/6
**recent [1]** 66/15
**Recess [2]** 73/13 73/17
**recognize [1]** 72/11
**recognized [1]** 29/6
**reconfirm [1]** 62/8
**record [17]** 6/19 8/13 10/22 10/24 16/13 16/15 16/16 16/17 20/14 31/21 49/24 50/21 59/23 60/15 62/3 65/8 74/7
**recorded [6]** 55/5 55/8 58/18 58/23 58/23 58/25
**recording [1]** 58/25
**records [3]** 60/2 61/23 62/1
**redact [3]** 56/23 58/2 58/7
**redacted [1]** 57/18
**redactions [4]** 56/18 56/25 57/1 57/8
**redundant [1]** 13/9
**reference [4]** 56/24 58/17 58/22 62/9
**references [1]** 22/6
**referred [1]** 58/18
**refund [1]** 46/24
**regarding [1]** 26/19
**regardless [1]** 54/15
**registered [3]** 27/1 27/25 28/3
**rejected [1]** 16/17
**relates [1]** 55/24
**relating [1]** 13/2
**relationship [7]** 23/5 23/10 37/20 44/12 44/15 44/17 49/16
**relatively [1]** 18/3
**Relax [1]** 4/7
**relevance [7]** 44/16 48/25 49/22 54/3 54/9 54/17 55/11
**relevant [17]** 12/25 45/3 45/15 47/11 47/24 49/12 49/15 49/16 49/20 54/12 54/14 55/5 55/22 56/2 57/22 58/8 62/4
**remainder [1]** 45/10
**remaining [1]** 17/10
**remember [2]** 9/1 56/10
**Remind [1]** 14/13
**removed [3]** 17/21 55/17 58/1
**render [1]** 25/23
**renewed [1]** 66/13
**repeatedly [1]** 44/14
**replace [2]** 19/22 26/13
**replacement [1]** 17/19
**replacing [1]** 20/9
**reporter [8]** 2/22 8/15 8/24 8/25 9/1 9/3 9/7 74/12
**reporting [1]** 8/19
**representative [1]** 44/6
**request [2]** 61/1 61/2
**requested [1]** 46/23
**requesting [2]** 23/16 44/9
**requests [1]** 43/15
**require [1]** 32/11

**R**

**requirement [1]** 23/1
**requirements [1]** 29/20
**research [1]** 13/18
**reserve [3]** 24/7 65/21 66/9
**reserved [5]** 11/12 54/4 56/13 59/17 61/24
**Reserving [1]** 28/16
**residential [42]** 26/19 26/24 27/1 27/7 27/15 27/18 27/22 27/25 28/3 28/8 28/8 28/9 29/14 29/15 29/18 30/4 30/5 30/7 30/16 31/17 32/1 32/7 32/19 32/24 33/9 33/11 33/17 33/20 34/19 34/20 35/4 35/14 36/19 38/23 39/5 39/12 39/13 39/16 40/6 40/12 40/14 41/24
**respect [2]** 33/20 34/18
**respectively [1]** 4/14
**respond [3]** 48/22 61/8 67/23
**responded [1]** 28/21
**respondent [1]** 61/7
**responding [1]** 15/2
**responds [1]** 6/20
**response [16]** 28/22 28/25 29/7 31/24 33/21 36/22 40/22 42/6 49/14 49/25 55/13 57/23 58/3 58/11 59/11 59/13
**responses [1]** 43/1
**rest [1]** 53/18
**result [3]** 30/7 32/4 37/9
**resulted [1]** 48/9
**resume [1]** 11/6
**review [1]** 4/4
**revise [1]** 28/7
**revised [1]** 59/15
**revisions [2]** 28/18 65/3
**right [58]** 4/8 4/12 5/15 10/8 12/5 14/6 18/8 18/10 20/4 21/12 24/5 24/16 27/10 27/12 28/18 28/19 28/22 30/14 36/4 37/12 39/13 39/19 39/22 39/24 39/25 40/1 40/1 40/8 41/13 42/2 43/18 44/22 44/25 46/4 46/7 46/14 47/7 47/9 49/23 52/24 53/1 55/20 56/5 56/12 56/22 58/14 59/20 60/1 61/21 62/7 62/13 62/14 68/22 69/17 69/25 70/22 71/21
**rise [1]** 47/1
**risk [2]** 13/9 59/11
**RMR [1]** 74/12
**robo [1]** 50/4
**role [3]** 6/7 7/10 45/3
**room [2]** 2/23 16/8
**rule [6]** 6/23 7/14 8/4 10/14 40/23 63/6
**ruled [2]** 9/16 12/1
**ruling [10]** 11/12 11/17 38/10 43/13 54/4 56/13 59/17 65/2 65/22 66/9
**rulings [2]** 11/2 61/24
**run [4]** 22/18 24/10 24/14 41/11
**run-amuck [1]** 22/18
**running [6]** 16/24 17/5 30/21 30/23 71/13 72/2

**S**

**said [18]** 11/17 15/18 19/23 22/18 36/23 37/4 45/19 49/10 50/15 51/24 51/25 53/21 54/20 54/20 57/24 65/9 66/15 71/3
**sales [1]** 22/12
**same [11]** 6/24 7/1 7/9 10/18 25/20 32/22 33/8 35/6 47/15 62/8 72/14
**sandbag [1]** 73/1
**Santa [2]** 2/5 2/5
**satisfied [2]** 15/14 38/25
**satisfies [1]** 32/19
**satisfy [1]** 10/14
**Saturday [1]** 67/7
**saw [1]** 47/21
**say [44]** 7/5 10/9 10/23 11/4 11/18 11/19 11/21 11/22 15/17 15/19 16/16 23/19 24/5 29/12 30/2 30/6 31/3 32/8 33/4 34/15 39/4 39/16 41/17 41/18 42/2 42/5 49/11 51/1 51/13 51/16 52/15 54/25 56/12 62/10 63/8 63/8 63/12 63/15 65/12 66/8 71/15 71/15 72/15
**saying [10]** 17/24 20/2 20/6 20/21 24/6 42/18 49/1 55/7 61/16 63/18
**says [7]** 20/15 26/20 29/23 39/25 40/1 46/16 48/20

**Schappert [2]** 54/9 55/3
**scheduling [3]** 66/13 66/15 66/25
**scope [1]** 7/19
**Scott [1]** 5/8
**screen [9]** 11/5 69/20 70/5 70/6 70/10 70/16 70/21 70/22 71/1
**screens [2]** 70/8 71/3
**script [9]** 4/21 9/21 9/25 10/9 12/22 13/25 14/3 31/10 73/4
**scrubbed [2]** 60/6 69/6
**seat [3]** 15/12 15/16 15/19
**seated [1]** 4/7
**second [7]** 9/17 20/22 26/20 45/8 57/19 58/19 64/17
**section [5]** 30/16 34/18 34/19 34/20 52/12
**sections [2]** 9/18 10/6
**see [31]** 4/9 6/3 9/22 12/23 14/7 16/4 23/17 26/3 29/23 38/3 38/20 39/9 46/3 46/5 46/16 48/20 51/17 56/13 57/9 60/13 61/2 61/25 67/11 70/2 70/8 70/19 70/19 70/20 70/21 70/23 71/2
**seeing [1]** 12/21 70/24
**seems [2]** 55/19 60/21
**seen [2]** 17/12 69/24
**selection [2]** 15/2 17/16
**selectively [1]** 52/8
**send [8]** 14/11 16/21 39/14 39/19 43/1 45/13 69/7 73/8
**sense [6]** 12/11 12/13 26/2 29/25 50/21 69/19
**sent [2]** 14/10 18/23
**sentence [15]** 19/7 19/14 19/20 20/5 20/13 20/14 20/19 20/20 21/2 21/2 21/4 27/5 27/16 27/20 28/7
**sentencing [1]** 73/10
**separate [4]** 33/18 55/2 55/9 55/18
**sequence [1]** 9/20
**series [2]** 44/9 48/7
**serve [1]** 26/7
**service [4]** 54/24 55/2 55/16 55/18
**set [4]** 35/1 70/5 70/13 70/16
**seven [1]** 17/7
**share [1]** 4/9
**she [20]** 27/1 27/2 27/2 27/3 44/11 44/17 44/17 48/3 48/4 48/4 48/5 48/7 48/11 49/18 49/19 54/25 55/4 55/15 58/1 58/22
**shipping [2]** 48/7 48/17
**should [26]** 4/17 4/19 6/24 9/15 11/11 12/22 16/15 20/8 22/5 23/3 23/23 27/5 27/16 29/18 29/19 31/15 33/16 35/16 36/5 42/4 44/25 54/1 56/15 57/6 59/12 61/21
**shouldn't [2]** 21/23 45/21
**show [25]** 10/10 11/4 13/14 19/7 27/13 29/10 30/15 30/23 35/3 37/22 48/11 48/12 48/17 57/9 62/11 62/16 63/8 63/9 63/11 63/13 64/4 64/9 64/10 69/21 70/12
**showing [5]** 37/21 49/20 52/21 70/7 70/7
**shown [9]** 10/25 20/18 29/17 30/3 30/6 50/13 57/4 58/21 64/3
**shows [2]** 49/25 54/10
**SI [1]** 1/5
**side [16]** 13/6 16/23 17/2 17/6 17/13 28/23 31/21 33/25 34/3 38/8 38/16 40/24 41/4 57/4 61/3 62/17
**sidebar [1]** 16/5
**sides [9]** 24/12 38/14 38/19 62/15 65/5 65/10 65/18 66/23 68/19
**sides' [1]** 40/17
**sign [1]** 47/20
**signature [3]** 74/9 74/9 74/9
**signed [4]** 20/15 44/7 49/7 74/9
**significant [1]** 56/8
**signing [1]** 74/6
**SIMON [2]** 1/13 2/3
**simple [1]** 62/23
**simply [1]** 11/25
**since [5]** 18/2 26/4 49/19 52/4 55/25
**single [1]** 25/24
**sit [1]** 8/10
**sit-in [1]** 8/10
**sits [1]** 15/16
**situation [1]** 15/21
**skeptical [1]** 39/24
**skip [1]** 8/2
**slide [1]** 19/8
**slides [3]** 50/10 62/20 63/2
**slow [1]** 9/3

**S**

**slowly [4]** 9/2 9/4 9/5 9/6
**so [82]**
**sole [1]** 64/6
**some [43]** 5/15 10/19 11/15 11/16 18/20 22/9 22/10 23/5 23/13 23/21 24/7 24/10 24/13 24/17 25/10 27/8 28/5 30/24 39/20 42/11 43/14 50/21 51/16 52/14 53/7 55/9 56/18 56/25 57/1 60/18 60/21 61/25 62/17 62/24 64/12 65/3 71/19 71/25 72/1 72/2 72/14 73/5 73/6
**somebody [3]** 15/5 37/19 55/21
**somehow [1]** 35/9
**someone [4]** 15/8 22/17 32/17 55/8
**something [21]** 6/14 18/5 18/6 20/9 22/25 23/1 31/4 31/5 31/22 35/21 35/24 42/24 50/25 52/8 52/22 60/25 65/6 70/17 72/9 72/11 73/11
**soon [2]** 13/11 40/25
**sorry [1]** 71/18
**sort [6]** 23/5 40/9 40/16 41/8 51/19 60/18
**sorted [1]** 61/9
**sounds [3]** 24/15 59/5 69/1
**speaking [3]** 48/19 60/25 62/17
**speaks [1]** 34/1
**special [3]** 4/24 28/19 39/1
**specific [5]** 41/21 42/1 42/1 42/22 65/18
**specifically [3]** 31/17 33/1 66/8
**speculating [1]** 61/11
**spill [1]** 37/14
**split [1]** 32/23
**spoken [1]** 62/18
**Spokeo [1]** 36/17
**spreadsheets [4]** 35/20 69/5 69/8 69/10
**spring [1]** 48/4
**stage [3]** 16/9 16/18 31/7
**stand [4]** 6/8 19/3 24/11 27/16
**standard [1]** 41/16
**stands [1]** 34/7
**start [4]** 17/24 18/11 18/17 67/14
**startup [1]** 47/22
**state [1]** 6/19
**stated [1]** 43/15
**statement [10]** 13/11 13/12 14/6 14/8 24/18 50/4 62/10 62/19 63/10 63/12
**statements [3]** 18/18 18/20 43/5
**STATES [3]** 1/1 1/14 2/22
**statute [1]** 23/22
**statutory [1]** 34/18
**stay [1]** 36/5
**still [11]** 5/6 5/8 5/11 11/20 15/24 17/5 33/20 35/10 42/9 60/1 62/10
**stip [1]** 45/19
**stipulate [1]** 49/6
**stipulation [2]** 45/5 64/17
**stipulations [3]** 68/11 68/13 68/19
**story [2]** 22/10 23/4
**straight [2]** 8/14 67/16
**stricken [1]** 27/5
**strike [5]** 17/19 22/5 26/5 26/12 27/20
**strike-and-replacement [1]** 17/19
**strikes [3]** 16/22 16/23 17/1
**struck [1]** 21/23
**stuck [1]** 64/8
**stuff [5]** 24/1 45/14 48/7 51/17 64/12
**subject [2]** 30/20 35/13
**submit [1]** 64/21
**submitted [3]** 28/17 66/3 66/7
**subscribed [2]** 54/23 55/15
**subsequently [1]** 49/8
**substantially [2]** 49/21 55/11
**substantive [1]** 22/8
**subtract [1]** 33/5
**such [4]** 8/18 13/20 13/20 13/22
**sucks [4]** 45/20 46/17 47/2 48/20

**sufficiency [1]** 33/12
**sufficient [3]** 25/10 33/14 38/16 42/2 51/23
**sufficiently [2]** 7/24 9/6
**suggest [7]** 19/8 20/18 24/9 55/9 57/7 58/7 68/10
**suggested [6]** 4/20 25/15 36/3 56/18 56/23 67/22
**suggestion [5]** 19/1 27/4 40/22 41/15 69/5
**suggestions [2]** 18/22 24/10
**suggestive [1]** 7/25
**Suite [3]** 2/5 2/11 2/14
**sum [1]** 14/16
**summarize [1]** 63/10
**summarized [1]** 60/17
**summarizing [1]** 60/16
**summary [17]** 14/21 35/20 35/22 51/6 59/14 60/2 60/4 60/15 60/21 60/25 61/4 61/5 61/13 61/14 71/10 71/22 72/1
**Sunday [2]** 66/20 67/7
**super [1]** 58/4
**superb [1]** 8/24
**supplemental [1]** 14/20
**suppose [5]** 15/13 34/6 39/9 39/10 39/16
**Supreme [1]** 40/1
**sure [13]** 9/24 19/9 23/6 24/15 27/17 36/1 41/2 43/23 45/16 49/10 54/22 63/14 72/8
**suspect [1]** 31/21
**sustain [1]** 34/8
**sustained [1]** 8/8
**SW [2]** 2/14 2/23
**swear [1]** 6/8
**system [7]** 50/20 54/11 54/15 55/9 55/10 69/12 70/13

**T**

**Taekwondo [1]** 35/23
**take [17]** 5/25 8/15 15/19 27/2 27/3 31/8 36/7 49/3 53/18 55/16 60/12 64/2 65/15 72/7 72/21 72/24 72/25
**taken [2]** 31/22 57/5
**takes [3]** 9/1 43/8 67/13
**taking [1]** 28/13
**talk [18]** 4/10 4/11 4/17 4/19 5/1 11/15 12/18 14/14 17/15 35/12 42/25 43/4 50/6 54/1 56/15 59/12 59/19 73/6
**talked [2]** 14/10 18/10
**talking [11]** 8/21 14/16 18/2 21/23 22/17 29/1 33/24 45/8 55/14 56/12 72/12
**talks [1]** 51/11
**Tampa [1]** 2/11
**TCPA [11]** 20/20 21/22 23/1 25/4 27/15 29/8 29/21 31/4 33/9 34/17 72/6
**technical [1]** 24/3
**telemarketers [1]** 50/4
**telemarketing [3]** 20/17 25/11 25/19
**telephone [20]** 26/19 27/3 27/18 27/22 27/25 28/3 28/4 28/4 28/6 28/9 29/9 29/13 29/24 32/16 32/18 36/8 36/8 49/2 49/4 72/5
**tell [34]** 5/23 6/6 7/6 7/17 8/5 13/13 16/9 16/10 23/3 33/23 36/17 36/19 36/20 37/11 38/9 39/6 39/8 39/17 40/4 40/5 40/13 40/13 42/10 42/14 42/18 52/1 52/22 53/16 62/15 63/14 64/7 66/7 66/17 73/1
**telling [1]** 23/9
**ten [1]** 36/18
**ten-digit [1]** 36/18
**tentative [4]** 11/17 19/11 21/5 43/13
**terminated [1]** 54/21
**terms [4]** 23/15 23/16 24/12 24/12
**terrific [1]** 10/18
**testified [1]** 51/3
**testifies [1]** 56/7
**testify [1]** 48/3
**testifying [2]** 14/7 55/20
**testimony [10]** 6/2 8/12 12/14 12/19 12/20 14/21 23/13 24/18 51/22 72/14
**text [6]** 54/24 55/4 55/4 55/14 55/16 55/20
**than [7]** 15/4 15/14 32/12 34/18 63/1 64/2 70/11
**Thank [10]** 12/4 30/11 53/25 61/17 62/6 68/6 68/7 73/7 73/14 73/15

**T**

**Thanks [1]** 73/8
**that [427]**
**that's [61]** 4/5 5/2 9/24 10/4 10/8 10/15 11/1 12/5 12/18 14/9 14/19 15/19 17/2 22/20 22/21 23/7 26/2 26/23 29/10 30/10 31/2 31/5 31/20 32/3 32/11 33/23 36/1 39/24 40/16 45/5 45/9 45/18 47/2 47/10 49/12 50/2 53/6 53/13 53/20 54/12 54/14 54/14 54/15 57/17 57/22 57/22 58/8 58/10 58/19 59/8 61/2 62/5 63/21 63/23 64/11 65/2 66/3 66/25 70/10 70/20 70/25
**their [27]** 8/7 13/1 13/2 13/15 13/16 13/16 22/11 35/3 35/20 37/11 37/12 37/13 37/14 37/19 37/24 38/15 38/15 39/2 40/7 40/15 48/5 62/18 65/18 70/8 70/14 72/23 73/2
**them [70]** 6/4 6/6 13/13 13/17 13/19 13/20 15/7 15/15 15/24 16/6 18/16 22/10 23/8 24/1 24/10 25/13 31/18 35/5 35/6 35/10 35/11 35/15 36/3 37/5 37/5 37/13 38/17 40/25 42/14 42/16 43/4 43/24 44/17 45/13 45/14 48/8 48/9 48/12 49/19 51/8 52/18 57/1 59/10 61/8 62/1 62/2 63/24 64/4 64/9 64/9 64/10 64/22 64/23 67/18 68/1 68/2 68/5 68/16 68/22 69/9 69/9 69/10 70/8 70/12 71/25 72/1 72/14 72/21 73/3 73/4
**then [102]**
**theoretically [1]** 31/25
**theory [1]** 7/22
**there [62]** 5/15 8/4 8/9 9/13 9/18 9/25 10/15 10/20 11/14 11/15 11/20 14/18 17/25 19/4 22/16 23/13 23/21 25/6 25/18 31/1 35/17 35/21 36/1 36/16 37/11 37/24 38/5 38/7 38/13 40/8 41/6 43/7 43/9 44/22 45/10 47/21 49/20 50/3 50/21 51/4 51/10 51/14 53/8 53/12 55/10 57/15 58/5 58/8 58/17 59/18 61/7 61/22 62/2 67/19 70/2 70/3 71/7 72/3 72/3 72/3 72/4 72/6
**Therefore [1]** 27/15
**these [25]** 5/16 7/24 12/9 23/5 25/7 29/13 30/21 30/21 30/23 30/24 36/9 37/6 37/16 39/10 40/18 43/18 44/15 48/7 48/11 49/16 51/19 55/1 57/13 58/13 72/12
**they [120]**
**they're [1]** 32/5
**they've [4]** 35/22 52/8 72/19 72/20
**thick [3]** 52/17 52/23 53/9
**thing [16]** 10/20 12/7 13/10 18/18 25/20 31/25 46/8 53/5 59/5 61/22 62/8 66/17 66/25 68/10 70/13 72/15
**things [10]** 8/18 10/2 30/1 36/12 41/3 45/2 56/13 61/4 66/10 70/24
**think [83]**
**thinking [9]** 5/22 21/19 38/11 38/19 38/21 41/10 60/25 65/23 66/11
**third [3]** 2/23 25/12 57/23
**this [127]**
**thorough [1]** 12/24
**those [36]** 4/15 7/23 9/15 10/6 12/3 16/7 16/8 25/17 25/21 25/24 26/8 26/8 26/13 28/18 30/1 34/23 35/6 35/7 36/11 37/11 37/25 39/4 39/7 40/15 41/18 41/19 42/5 43/16 51/10 51/14 61/18 68/11 68/15 69/6 71/3 72/21
**though [4]** 7/6 42/10 47/15 53/22
**thought [2]** 22/5 73/5
**thoughts [1]** 52/15
**three [12]** 16/22 17/1 17/6 17/13 17/14 26/13 38/4 39/13 49/19 57/15 58/16 60/20
**through [13]** 6/2 8/15 21/18 31/9 31/10 33/15 38/11 43/8 46/22 52/18 53/4 70/13 72/7
**Thursday [5]** 18/17 43/6 43/6 67/12 67/12
**thus [1]** 13/22
**tickets [1]** 66/20
**ties [1]** 50/25
**time [21]** 6/24 7/1 11/1 11/4 11/12 12/10 18/13 34/1 37/25 43/7 44/16 49/1 49/3 55/18 61/11 65/10 65/16 66/24 72/14 72/18
**timeliness [1]** 60/23
**times [1]** 25/6
**timing [1]** 49/15
**today [5]** 12/2 28/17 43/1 44/13 73/12
**together [4]** 25/14 31/18 63/3 65/5
**told [4]** 45/13 57/25 64/9 72/23
**tomorrow [3]** 43/2 43/2 63/1
**too [9]** 9/25 10/15 42/23 54/16 55/23 61/6 61/7 65/15 70/19

**took [4]** 4/6 48/14 48/17 49/11
**top [1]** 20/3
**topics [2]** 9/17 9/19
**total [3]** 39/11 39/19 39/23
**totally [1]** 67/9
**tracing [1]** 31/10
**track [1]** 41/13
**transcript [5]** 1/12 6/9 9/19 74/7 74/8
**transcripts [1]** 8/16
**treat [1]** 12/1
**trial [22]** 7/21 8/22 12/12 15/3 15/14 15/18 17/4 29/11 31/8 38/16 39/3 39/14 39/20 44/14 59/17 60/8 60/20 66/11 66/12 66/18
**tried [1]** 55/9
**truth [1]** 55/7
**try [7]** 12/24 18/4 43/7 45/5 67/11 68/3 73/11
**trying [2]** 26/1 73/1
**Tuesday [2]** 43/2 63/2
**turn [10]** 12/22 16/2 16/25 18/19 29/22 37/20 41/4 46/14 46/15 66/10
**two [20]** 2/8 21/20 26/13 39/19 42/19 43/11 43/13 47/20 47/21 49/4 49/13 57/21 58/5 58/9 58/16 60/20 64/13 65/5 65/19 69/22
**two-hour [1]** 65/19
**type [3]** 24/13 45/14 62/17
**types [1]** 61/18
**typically [1]** 67/13

**U**

**U.S [1]** 54/16
**Uh [2]** 26/22 56/19
**Uh-huh [2]** 26/22 56/19
**ultimate [1]** 49/1
**ultimately [1]** 33/13
**unable [1]** 67/20
**unanimous [1]** 17/3
**unanimously [1]** 17/11
**under [9]** 6/23 7/7 7/14 7/15 7/22 7/23 8/3 60/13 72/5
**underlying [2]** 58/20 58/21
**understand [12]** 7/11 21/12 25/18 27/17 35/18 48/14 48/25 50/20 60/24 61/16 61/18 65/11
**understanding [2]** 19/18 66/4
**understands [2]** 24/16 25/22
**Understood [10]** 11/24 34/11 44/1 47/4 56/14 60/24 63/17 66/14 70/15 71/6
**unfair [2]** 41/6 55/10
**unfold [1]** 51/17
**Unfortunately [1]** 58/19
**UNITED [3]** 1/1 1/14 2/22
**unless [5]** 12/19 27/13 59/18 62/9 70/6
**unrealistic [1]** 67/9
**unreasonably [1]** 40/18
**unreliable [1]** 72/15
**until [3]** 16/8 59/17 65/17
**up [46]** 6/8 8/17 11/5 13/7 15/8 15/11 15/13 15/16 16/7 17/2 18/17 21/20 22/17 29/15 29/25 30/1 31/22 32/1 32/15 32/23 34/7 34/15 34/23 35/10 35/11 36/3 36/25 37/3 39/1 39/10 44/7 46/19 47/20 49/7 51/8 57/8 65/15 69/8 70/2 70/5 70/13 70/16 70/20 70/22 71/1 71/13
**upon [1]** 24/12
**upset [1]** 45/11
**us [18]** 15/4 15/14 15/17 30/3 32/11 36/25 37/6 37/8 37/11 39/14 39/19 40/4 59/7 68/14 72/13 72/23 73/1 73/1
**use [9]** 13/10 13/12 27/1 64/5 69/10 69/20 70/9 70/17 70/21
**used [15]** 26/8 26/25 27/14 28/4 28/8 35/7 35/20 37/21 37/24 46/13 50/12 50/19 55/2 55/18 66/1
**user [3]** 50/15 50/16 50/17
**uses [1]** 26/4
**using [5]** 17/20 20/17 60/18 62/17 63/2
**usual [1]** 27/23
**usually [1]** 17/13

**V**

**various [2]** 4/18 70/24

## V

**verdict [17]** 4/24 17/3 25/23 28/19 29/22 30/9 30/13 32/10 36/4 38/22 39/2 41/9 42/12 64/2 64/5 68/23 73/11
**verifiable [1]** 36/12
**version [6]** 58/20 59/24 59/24 59/24 64/22 64/24
**vertical [1]** 60/16
**very [6]** 12/24 22/18 31/5 42/1 45/11 60/18
**vet [1]** 60/22
**Vi [1]** 47/19
**victory [1]** 68/3
**videotaped [3]** 5/17 71/4 71/7
**view [4]** 41/8 45/1 63/18 71/2
**violated [1]** 29/20
**violating [1]** 34/17 34/19
**violation [2]** 29/8 54/21
**violative [3]** 25/8 49/13 51/10
**VISALUS [39]** 1/7 14/16 14/17 19/2 22/25 29/20 32/25 37/4 37/25 44/7 44/8 44/9 44/11 44/12 44/13 44/15 44/16 44/19 44/20 45/20 46/16 47/2 47/6 47/14 48/3 48/14 48/20 49/7 49/11 49/17 49/17 49/24 50/19 50/21 56/25 58/4 58/11 61/23
**ViSalus's [5]** 54/19 55/6 56/4 57/20 57/23
**voice [6]** 14/18 20/17 25/12 25/20 57/21 58/9
**voir [14]** 4/21 12/22 13/6 13/10 13/23 13/25 14/2 17/21 18/8 67/19 71/11 71/13 71/15 71/16
**voir dire [3]** 13/25 67/19 71/16
**voluminous [2]** 60/2 61/1
**vote [2]** 13/21 13/22

## W

**wait [2]** 60/7 65/16
**waiting [1]** 51/1
**WAKEFIELD [17]** 1/4 44/6 44/8 44/17 44/19 45/11 46/10 46/12 46/22 47/5 47/16 47/18 48/2 49/6 49/8 49/17 49/25
**Wakefield's [2]** 27/24 47/14
**walk [1]** 33/15
**want [54]** 4/11 8/10 8/11 9/19 10/12 11/8 11/14 11/16 11/19 11/21 11/25 15/23 17/14 20/11 21/7 21/25 26/3 27/17 29/3 38/19 39/2 42/9 42/12 42/16 45/16 47/22 49/1 51/19 52/5 52/6 52/19 53/8 53/9 53/11 53/20 53/21 59/19 60/11 61/25 63/14 63/15 64/1 65/15 65/20 67/22 67/24 69/23 70/9 70/12 70/18 70/19 72/8 72/9 72/11
**wanted [6]** 7/18 7/19 57/17 58/24 59/2 69/8
**wants [16]** 6/1 7/4 7/9 7/14 13/24 28/23 33/16 38/16 38/22 40/4 42/22 50/6 53/12 60/9 63/25 68/14
**warn [1]** 67/18
**was [58]** 4/4 7/10 7/14 8/21 10/5 14/17 21/18 21/20 22/1 22/11 22/13 22/17 22/17 26/1 27/25 28/1 28/3 34/10 34/24 35/5 35/13 35/18 35/21 37/7 37/21 45/6 45/18 46/22 46/25 47/6 49/19 50/12 50/13 54/3 54/11 54/20 54/20 54/21 54/21 54/25 55/1 55/8 55/9 58/8 58/10 58/22 59/4 59/14 61/2 61/14 64/15 64/19 65/3 65/3 65/4 65/23 67/7 71/1
**wasn't [7]** 31/15 34/24 35/13 55/10 58/20 61/1 61/10
**waste [1]** 61/10
**way [37]** 5/5 5/20 5/21 8/23 9/5 10/19 16/12 18/17 24/12 26/1 31/1 32/3 32/22 33/9 33/23 35/8 38/14 38/16 38/18 38/22 39/22 39/24 39/24 40/3 40/16 40/18 48/4 51/3 52/4 52/22 52/23 57/8 62/16 63/3 67/13 69/10 70/25
**we [244]**
**we're [3]** 29/11 35/1 37/2
**we've [1]** 9/22
**website [1]** 48/5
**Wednesday [5]** 18/11 18/12 43/3 43/5 63/3
**week [2]** 13/9 18/11
**weekend [3]** 5/1 14/11 28/21
**weeks [1]** 47/21
**welcome [8]** 5/3 11/18 13/15 52/20 62/15 64/2 64/5 70/10
**well [21]** 8/13 9/16 10/7 14/12 23/14 26/4 32/14 35/12 35/25 37/9 41/5 42/2 46/13 53/1 53/16 67/2 69/20 70/5 70/9 70/16 70/18
**went [2]** 35/6 48/4
**were [52]** 4/13 5/15 7/17 20/6 22/11 25/10 25/11 25/13 25/21 29/24 30/5 30/21 30/21 30/23 30/23 33/1 33/5 34/10 35/4

**35/6 35/7 35/7 35/11 35/21 37/3 37/12 38/23 39/11 39/12 39/16 39/19 39/23 40/12 40/12 40/13 40/23 41/23 45/12 49/13 51/5 55/1 55/18 57/21 58/5 58/9 61/15 64/18 72/9**
**weren't [3]** 53/15 61/19 64/19
**what [100]**
**what's [14]** 4/9 10/25 33/6 39/23 41/5 41/8 41/22 41/24 44/8 50/24 51/21 56/14 57/15 63/25
**whatever [4]** 7/8 10/5 16/25 63/25
**wheel [1]** 41/12
**when [36]** 8/11 8/25 10/13 10/13 10/17 12/2 13/4 17/13 21/18 21/20 22/20 25/5 29/22 33/24 34/1 39/14 46/22 47/11 52/17 54/20 55/3 55/7 56/11 57/12 57/24 58/4 61/2 63/3 65/3 65/9 65/17 65/23 67/1 67/3 68/18 71/15
**whenever [2]** 6/1 8/5
**where [23]** 6/22 7/4 8/8 11/16 15/21 16/9 16/18 16/19 17/20 19/8 20/11 20/18 22/17 32/23 34/21 37/2 44/11 45/11 46/17 61/2 61/15 70/22 72/15
**whether [25]** 4/19 13/8 15/3 27/22 27/24 28/1 29/8 32/18 33/17 34/8 36/14 36/16 36/18 36/19 38/9 38/9 38/12 42/11 49/13 51/9 51/9 51/20 60/3 62/20 72/1
**which [41]** 4/13 17/20 18/23 21/22 22/8 22/24 23/1 23/10 24/2 26/25 27/2 30/7 32/10 33/10 33/11 34/19 34/20 35/22 36/8 36/9 37/6 37/7 39/23 40/12 40/12 44/10 49/4 51/5 51/7 51/14 54/1 54/22 57/19 58/8 59/15 60/2 60/17 60/19 60/21 62/17 72/5
**whichever [1]** 38/15
**while [2]** 25/11 52/14
**white [1]** 59/24
**who [14]** 6/7 7/10 22/11 27/4 30/23 32/17 34/4 34/4 44/7 50/4 54/21 54/23 55/6 55/8
**whoever [1]** 17/10
**whole [8]** 19/5 31/6 31/11 45/16 46/7 52/11 53/4 53/16
**whose [1]** 25/23
**why [16]** 4/6 16/16 22/10 23/7 30/14 48/14 48/17 49/12 50/3 55/16 61/1 61/10 61/18 63/23 65/5 70/25
**wicked [1]** 36/4
**will [144]**
**willing [3]** 36/25 37/1 72/22
**win [1]** 37/16
**WinBack [3]** 54/10 57/22 58/10
**wish [5]** 11/6 13/8 16/3 64/6 73/1
**wishes [1]** 5/2
**within [3]** 47/21 49/3 73/9
**without [4]** 19/20 21/2 40/18 74/8
**witness [25]** 5/25 6/8 6/10 6/20 7/2 8/1 8/25 10/10 10/11 14/8 14/9 14/20 23/10 24/18 34/2 34/2 34/7 38/4 38/8 38/8 40/23 56/1 56/4 62/2 71/22
**witnesses [3]** 15/5 41/3 43/6
**woman [1]** 57/16
**won't [6]** 13/6 17/4 36/19 37/2 63/13 69/11
**word [2]** 27/23 63/25
**words [3]** 46/17 48/20 62/18
**work [17]** 5/6 5/8 5/11 10/19 11/10 15/20 28/10 37/15 38/20 38/21 40/19 41/25 42/24 43/7 65/5 71/3 71/4
**worked [3]** 41/5 50/20 54/15
**working [1]** 64/18
**works [2]** 34/13 59/7
**worry [1]** 7/25
**would [87]**
**wrestle [1]** 68/3
**write [3]** 19/16 19/23 20/1
**writing [1]** 68/18
**written [19]** 19/2 19/4 19/12 19/13 20/4 20/15 20/15 21/22 44/5 44/11 44/18 44/19 48/9 48/11 48/13 64/21 64/22 64/23 68/23
**wrong [3]** 35/10 64/8 66/22

## Y

**year [5]** 48/8 48/14 48/17 49/11 49/18
**years [3]** 49/4 49/13 49/19
**yellow [2]** 6/21 8/2
**yes [35]** 9/9 10/3 11/5 11/9 11/21 12/17 15/18 17/18 21/9 21/18 25/2 26/9 26/10 27/9 28/11 28/17 29/4 32/21 34/12 34/14 41/22 41/22 41/24 41/24 45/2 54/6 56/16 59/4 59/22 62/8 63/5 65/15 67/5 70/1 71/23

**Y**

**yesterday [1]** 60/6
**yet [1]** 17/13
**you [248]**
**you'll [3]** 13/11 15/9 17/13
**you're [10]** 5/3 10/17 11/18 12/13 13/15 33/24 40/1 52/20 70/7
 70/10
**you've [4]** 10/12 11/12 12/8 16/17
**your [163]**
**Your Honor [92]**
**Your Honor's [6]** 20/19 21/5 27/16 29/22 33/8 37/18

**Z**

**Zachary [1]** 2/10
**zero [3]** 30/3 30/6 42/22