1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF OREGON

3

4   LORI WAKEFIELD,                )
                                   )
5              Plaintiff,          )      3:15-cv-01857-SI
                                   )
6   vs.                            )      April 12, 2019
                                   )
7   VISALUS, INC.,                 )      Portland, Oregon
                                   )
8              Defendant.          )

9

10

11                  (Jury Trial - Volume 3)

12               TRANSCRIPT OF PROCEEDINGS

13           BEFORE THE HONORABLE MICHAEL H. SIMON

14            UNITED STATES DISTRICT COURT JUDGE

15

16

17

18

19

20

21

22

23

24

25

```
 1                         APPEARANCES

 2
    FOR THE PLAINTIFF:      Greg Dovel
 3                          Simon C. Franzini
                            Julien A. Adams
 4                          Jonas B. Jacobson
                            Dovel & Luner, LLP
 5                          201 Santa Monica Boulevard, Suite 600
                            Santa Monica, CA  90401
 6
                            Lily E. Hough
 7                          Edelson PC
                            123 Townsend Street, Suite 100
 8                          San Francisco, CA  94107

 9

10  FOR THE DEFENDANT:      John Maston O'Neal
                            Quarles & Brady LLP
11                          Two North Central Avenue
                            Phoenix, AZ  85004
12

13                          Zachary S. Foster
                            Quarles & Brady LLP
14                          101 E. Kennedy Boulevard, Suite 3400
                            Tampa, FL  33602
15

16                          Nicholas H. Pyle
                            Miller Nash Graham & Dunn LLP
17                          111 SW Fifth Avenue, Suite 3400
                            Portland, OR  97204
18

19

20

21

22  COURT REPORTER:         Dennis W. Apodaca, RDR, FCRR, CRR
                            United States District Courthouse
23                          1000 SW Third Avenue, Room 301
                            Portland, OR  97204
24                          (503) 326-8182

25
```

1                              INDEX
2    Discussion re jury instruction                        406

3    Witnesses:  (For the plaintiff)   Direct   Cross   ReD   ReX

4    Shawn Davis                        412     426    447

5    Plaintiff rests                                       454

6    Defense rests                                         454

7    Jury Instructions                                     457

8    Motions                                               471

9    Closing argument by Mr. Franzini                      477

10   Closing argument by Mr. O'Neal                        507

11   Rebuttal argument by Mr. Dovel                        530

12   Further jury instructions                             548

13   Jury question                                         555

14   Jury verdict and polling                              564
15

16

17

18

19

20

21

22

23

24

25

```
 1                        (April 12, 2019)

 2                    P R O C E E D I N G S

 3            (Open court; jury not present:)

 4            THE COURT:  We are here without the jury to talk

 5   about final jury instructions and the verdict form.  Let me

 6   just share with you a few minor, minor changes on the jury

 7   instructions that I noticed.  It's nothing substantive, I

 8   think.  Then we will talk about whatever else you all want to

 9   talk about.

10            Instruction No. 1, that second sentence, after the

11   word "facts," I'm going to add a comma.

12            MR. DOVEL:  Your Honor, you said after the second

13   sentence?

14            THE COURT:  In the second sentence.

15            MR. DOVEL:  I see.

16            THE COURT:  "To those facts."  That's really not

17   substantive stuff.

18            MR. DOVEL:  Yes.

19            THE COURT:  Then under Instruction 7, since I'm

20   receiving two summaries in evidence, 36 and 36A, but no

21   charts -- I don't think any charts are coming in.  I'm deleting

22   the word "charts and" from the title and then "charts or" from

23   that first sentence and "charts and" from the second sentence.

24            I don't think we have any charts or summaries used

25   for demonstrative purposes, so I think I should delete the
```

1   entirety of Instruction 8.

2            Am I right on that or am I missing something?

3            MR. O'NEAL:  I guess it depends on what is going to

4   be put on in the secret one-hour presentation that we don't

5   know about.

6            THE COURT:  Well, that's closing.

7            THE COURT REPORTER:  Mr. O'Neal, please pull the

8   microphone in closer.

9            MR. DOVEL:  Your Honor, I'm not aware of any charts

10  or summaries.

11           THE COURT:  That's generally referring to

12  demonstrative evidence shown to the jury.  I, of course, tell

13  the jury that nothing that you all say in closing is evidence.

14           All right.  Then on stipulation -- they will have to

15  be renumbered, but I'll go with the old numbering now.  No. 11,

16  stipulations of fact, are these being read?  So far they've

17  been read.  Were you planning on handing written copies?

18           MR. DOVEL:  Yes, Your Honor.  That was our

19  understanding; that one would be provided.  Did you want us to

20  do that as part of the trial?

21           THE COURT:  Well, when are we going to do it?

22           MR. DOVEL:  I think we can do it as part of the

23  trial.  We will get it printed out and provide it to the

24  jurors.

25           THE COURT:  I think you should do it before you rest

1   your case.

2           MR. O'NEAL:  Agreed, although I thought it would be

3   one copy that the jury will take back with them.

4           THE COURT:  No.  I like everybody to have their own.

5   That's what I will do with written instructions; everybody will

6   have their own.  Then I think I'll leave 11 the way it is.

7           On No. 12, depositions in lieu of live testimony,

8   that second paragraph, I think I should actually tell them when

9   I say, "Excerpts from the depositions of three witnesses," I

10  think I should put in a comma and then "Justin Call, John Laun,

11  and Scott Gidley."

12          I noticed that although I put in the word "written"

13  in "written consent," later when I defined it, I left it out of

14  instructions currently numbered 14 and 15, the very last line,

15  the last sentence.  "Prior express consent."  I think I need to

16  insert the word "written."

17          I noticed a typo at the very bottom of page 11, that

18  second paragraph that is currently numbered 15, the second

19  sentence, "A class action is a procedure allows," I'm going to

20  insert the words "that allows."

21          That's it for my minor tweaks.  I have no changes to

22  the verdict form.

23          But now I'm ready to hear about all the major changes

24  that you all want.  Who wants to go first?  Probably plaintiff

25  should go first.

1          MR. DOVEL:  Your Honor, we have no further proposed

2   changes to the jury instructions.  I just had a question about

3   you said the word "written" was going to be added in 14.  I

4   caught one place.  Where was it going to be added in the second

5   place?

6          THE COURT:  13 -- sorry.  I am looking at my revised

7   numbers.  If you look at currently numbered 14 and 15, the last

8   line -- I'm sorry.  The very last line of 14, "making the call

9   has the prior express written consent."

10          Do you see that?

11          MR. DOVEL:  Yes.

12          THE COURT:  Then the last sentence in 15, again,

13   "without having the prior express written consent."

14          MR. DOVEL:  I got it.  Thank you, Your Honor.

15          THE COURT:  Okay.  So no further objections to final

16   jury instructions.

17          We will get to the verdict form in a few minutes.

18          From defendant, objections or exceptions to the final

19   jury instructions?

20          MR. O'NEAL:  Other than the ones previously made and

21   previously preserved.

22          THE COURT:  All right.  We have talked a lot about

23   the special verdict form.

24          Anything in addition or further from plaintiff?

25          MR. JACOBSON:  Your Honor, I think this may have been

```
 1   over email, so I just want to put it on the record --
 2            THE COURT:  Of course.
 3            MR. JACOBSON:  -- just to preserve our objection.
 4   Plaintiff objects to the special verdict questions that
 5   specifically split out mobile phones and then specifically
 6   split out residential phones.  It is our position that it
 7   should be a single verdict question, as Your Honor has, that
 8   combines the two.  The basis is that -- the distinction between
 9   mobile and residential is not relevant to the determination of
10   liability or damages under the TCPA.
11            THE COURT:  And you put that in the record, so it is
12   preserved.
13            To put some numbers on it, you are objecting to
14   Questions 5 and 6, which ask about the jury's findings on
15   mobile or cellular telephones only; and 7 and 8, which asks
16   about the jury's findings on residential landlines only.  You
17   have no objection to 3 and 4, which combines those two.
18            Just so you all know my thinking, and I think I've
19   stated it previously, my thinking is I think it needs to be
20   separated out, as I've done, for an evaluation of whether or
21   not there is evidence that would support findings, if there's a
22   jury finding in favor of plaintiff.  But I also understand the
23   plaintiff's position that they should be combined, and so
24   that's why I've put in the plaintiff's version on Questions 3
25   and 4.
```

1           If the jury finds in favor of plaintiff on 3 and 4,

2    and I suppose consistently finds in favor of the plaintiff on

3    5 and 6 and 7 and 8, no harm, no foul, and no big deal.

4           If the jury finds in favor of defendant on 3 and 4,

5    and then consistently on 5, 6, 7, and 8, again, no harm, no

6    foul.

7           If the jury finds in favor of the plaintiff on 3 and

8    4, but finds that they can't answer question 6 or question 8,

9    or there is otherwise problems with those, I figure we will

10   sort it all out in post-trial briefings, and then you can make

11   your argument that 3 and 4 should be sufficient for your

12   verdict.

13          MR. JACOBSON:  Yes, Your Honor.

14          THE COURT:  Okay.  Anything further on the special

15   verdict form from defendant?

16          MR. O'NEAL:  No, Your Honor.

17          THE COURT:  All right.  I will leave you alone.  When

18   we come back, before bringing in the jury, let's have Mr. Davis

19   on the stand.  My plan is to tell the jury that we are still on

20   the direct examination of Mr. Davis; that I am receiving in

21   evidence Exhibits 36 and 36A, and then I'll say, "Mr. Dovel,

22   you may continue with your examination."

23          MR. DOVEL:  Thank you, Your Honor.

24          THE COURT:  Then at the end of Mr. Davis, my plan is

25   ask the plaintiff -- basically say, "Plaintiff may call the

S. Davis - D

1    next witness," at which time you will either call a witness or

2    you will say, "We rest."

3              MR. DOVEL:  Thank you, Your Honor.

4              THE COURT:  Okay.

5              (Recess.)

6              (Open court; jury present:)

7              THE CLERK:  Please be seated.

8              THE COURT:  All right.  Good morning.

9              We are continuing with Mr. Davis on the stand.

10             I have received in evidence Exhibits 36 and 36A.

11             Mr. Dovel, you may continue with your direct

12    examination.

13             MR. DOVEL:  Thank you, Your Honor.

14                          DIRECT EXAMINATION

15    BY MR. DOVEL:

16    Q    Mr. Davis, I want you to take a look at Exhibit 36, and we

17    will display that to the jury.  Is this the first summary of

18    call outcomes that you prepared?

19    A    That is correct.

20    Q    Let's just talk about the columns and what those mean.

21    Can you describe what is included in the first column, which

22    says "Call outcome."

23    A    Sure.  So the "Call Outcome" column basically lists each

24    call outcome that were found within the 405 spreadsheets.

25    Q    You say "Call Outcome."  That's one of those words like

S. Davis - D

1  "answer machine, nuisance call," and so on?

2  A    Right.

3  Q    What's included in the "Number of Calls" column?

4  A    So the "Number of Calls" column shows how many times I

5  found each call outcome code within the 405 spreadsheets.

6  Q    For example, the first call -- by the way, are these put

7  in any particular order?

8  A    Yes.  They're ordered by the greatest number of outcomes

9  to a particular disposition and then sorted down to the least.

10  Q    Let's take a look at the first one.  It says, "Answer

11  machine."  How many calls did you find were --

12          MR. FOSTER:  Objection to the characterization of the

13  lines as calls.  There is no foundation for that.

14          THE COURT:  Would you rephrase, please.

15          MR. DOVEL:  Sure.

16  BY MR. DOVEL:

17  Q    In your column, when it says "number of calls," what does

18  that mean, "number of calls"?

19  A    So the number of calls basically means how many times I

20  found that particular call outcome code within the 405

21  spreadsheets.

22  Q    Now, for the call outcome "answer machine," what's the

23  number of calls that you found in those 405 contact lists or

24  spreadsheets?

25  A    I found that 1,654,059 calls contained the call outcome

S. Davis - D

1    code of "answer machine."

2    Q    Now, there are some of these that are highlighted in

3    yellow, and then you have a footnote at the bottom of the first

4    page.

5             Do you see that?

6    A    I do.

7    Q    And your footnote says, "Yellow highlight equals no

8    artificial or prerecorded voice could have played according to

9    Mr. Gidley; see Mr. Gidley's April 4th, 2018 declaration."

10             Can you explain what that means to the jury.

11   A    Yes.  In reviewing Mr. Gidley's declaration, he had

12   provided specific call outcome codes where he indicated no

13   prerecorded or artificial voice would have played.

14   Q    Those include items like "no answer, disconnected by user,

15   ring/no answer," and so on?

16   A    Correct.

17   Q    If we look at the "call outcome" and the "number of calls"

18   column, and we see an item highlighted in yellow, what would

19   that contain?

20   A    That would indicate that that call contained an outcome

21   that was listed in Mr. Gidley's declaration as not using an

22   artificial voice.

23   Q    If it does not contain a highlight, what would that

24   indicate?

25   A    That would indicate the opposite.

S. Davis - D

1   Q    Now let's turn to page 2, and I want to go down to the

2   bottom.  If we could zoom into the totals that are down there,

3   starting with "no outcome listed."

4              What is included in the row that says, "no outcome

5   listed"?

6   A    That is any time I found a call that did not contain a

7   disposition code.

8   Q    Did you find that some of the spreadsheets did not have

9   disposition codes included in them?

10  A    I did.

11  Q    What's the total for 36 that you found for "no outcome

12  listed"?

13  A    The total was 1,700,134.

14  Q    Now, the next line down says, "Total number of calls."

15  What does that represent?

16  A    That is the count of each individual disposition code.  I

17  took all of those totals and then summed them at the bottom.

18  Q    And then the final line says, "Number of calls where no

19  artificial or prerecorded voice could have played according to

20  Mr. Gidley."

21  A    Yes.

22  Q    What does that indicate?

23  A    That indicates the total of the highlighted disposition

24  codes.

25  Q    The ones that were indicated by Mr. Gidley as where no

S. Davis - D

1   artificial or prerecorded voice could have played?

2   A    That's right.

3   Q    And to be clear, when you say the "total number of calls,"

4   that's the total number of rows that were on each contact list.

5   That's not the total number of disposition codes; is that

6   right?

7   A    That's right.

8   Q    In other words, if we took the total number of calls and

9   subtracted the ones where no outcome is listed, we would have

10  the total number where there was a disposition code provided;

11  is that right?

12  A    Can you rephrase that?

13  Q    Yeah.  If we took the total number of calls and subtracted

14  the ones where there were no outcome listed, what would we

15  have?

16  A    Well, just to make it a little easier:  The total number

17  of calls essentially -- if we took -- so if we added up all of

18  the disposition codes on the first page and then we added all

19  of the disposition codes on the second page and then we also

20  added that bottom one, which was the 1.7 million, if we added

21  all those together, then we would end up getting the total

22  number of calls.

23  Q    Now, if we took the total number of calls and subtracted

24  from it the ones where there was no outcome listed, would we

25  have the total number of calls where there was a disposition

S. Davis - D

1  code?

2  A    That's correct.

3  Q    And if we took that number and then subtracted the ones

4  that you totaled up, the 415,000, where there was no artificial

5  or prerecorded voice could have played according to Mr. Gidley,

6  we would be left with the disposition codes where an artificial

7  or prerecorded voice could have played; is that correct?

8         MR. FOSTER:  Objection.  Foundation.

9         THE COURT:  One moment.  Brief response, Mr. Dovel.

10         MR. DOVEL:  The witness has indicated that in the

11  prior testimony that the ones that are not highlighted mean

12  that a prerecorded voice could have played, and that's just

13  what that math does.

14         THE COURT:  He doesn't have testimony on that.  We

15  know that the highlighted ones are the ones that Mr. Gidley has

16  said that there could have been no prerecorded voice, correct?

17         MR. DOVEL:  Right.

18         THE COURT:  And the balance, arithmetically, are the

19  ones where Mr. Gidley did not make that statement?

20         MR. DOVEL:  That's right.

21         THE COURT:  All right.

22         MR. DOVEL:  That's the question I want to ask.

23         THE COURT:  All right.  Then rephrased in that way,

24  do you agree?

25         THE WITNESS:  Yes.

S. Davis - D

1          THE COURT:  Okay.

2  BY MR. DOVEL:

3  Q    Now, let's turn to Exhibit 36A.  Let's start by putting up

4  the whole thing.

5          Now, you provided some testimony about this

6  yesterday, but I want to revisit a couple of things to make

7  them clearer for the jury now that they can see the whole

8  document.  Is the total number of calls in 36A, is it the same

9  as or different than what was in 36?

10  A    It is different.

11  Q    And how does it differ?

12  A    So it differs in that I removed the extra calls to phone

13  two, and I also removed calls to businesses that I found.  The

14  other difference is now it's also in columns between the

15  WinBack campaign and the non-WinBack campaign.

16  Q    Let's take a look.  We still have the column that says

17  "Outcome."  Is that the same as the one we just talked about?

18  A    The "No outcome listed," or are you talking about the

19  first page?

20  Q    I'm talking on the first page.  We have a column that says

21  "Outcome," and it has what appear to be disposition codes

22  listed in it; is that correct?

23  A    That is correct.

24  Q    And then we have got two new columns, "WinBack campaigns"

25  and "Other campaigns."  Do you see that?

S. Davis - D

1    A    I do.

2    Q    What is included in the WinBack campaigns column?

3    A    So the "WinBack campaigns" column is where I took all of

4    the contact lists that were used in the WinBack campaign, and

5    then I totaled the disposition codes for those in particular.

6    Q    And what's included then in the "Other campaigns" column?

7    A    The "other campaigns" were any contact lists that were not

8    used in "WinBack campaign."

9    Q    Now, what's found in the "Total" column?

10   A    The "Total" column is the total of both of those.

11   Q    Does the total indicate the total for the 405

12   spreadsheets?  That's your total analysis for all of the

13   spreadsheets?

14   A    That's correct.

15   Q    And then the "WinBack campaigns" is just the count for the

16   calls that are associated with WinBack campaigns?

17   A    Correct.

18   Q    How did you determine which campaigns were WinBack

19   campaigns and which campaigns were "other campaigns"?

20   A    Based off of information provided by Defendant ViSalus.

21   Q    All right.  Let's turn to the second page and look at the

22   totals again.  Can you zoom in on that.

23         Now, here, we have another row that says "no outcome

24   listed."  Do you see that?

25   A    I do.

S. Davis - D

1   Q    Does that indicate the same kind of information that

2   you've described before where there would be no outcome or

3   disposition code provided for the call?

4   A    Yes.

5   Q    And we have got that broken into two pieces.  Is the first

6   one "WinBack" and the second one "other campaigns"?

7   A    That's correct.

8   Q    Then, again, the total is the third column over there?

9   A    Correct.

10  Q    With this summary, what's the total number of calls that

11  you counted where there was no outcome listed?

12  A    The total number was 1,690,482.

13  Q    Now, let's look at the next row, the one that says "total

14  number of calls."  What is the total number of calls that you

15  counted in this summary?

16  A    The total number of calls is 4,123,856 calls.

17  Q    Now, these calls are broken -- this total number is broken

18  between WinBack and non-winBack again?

19  A    That's correct.

20  Q    If I look at these numbers correctly, is it the case that

21  about three out of four of the calls were for WinBack

22  campaigns?

23  A    That is correct.

24  Q    Now, there is an additional row at the bottom of this

25  summary, "Calls to numbers associated with a business."

S. Davis - D

1           What does that represent?

2   A    So that represents any time I found a business, I would

3   end up removing that call.  That's the total of the businesses

4   I removed -- the calls of the businesses I removed.

5   Q    I would like to have you open up our example, 38-115, if

6   the jurors could follow along.  We are just going to go right

7   to the first page and look at the first item there.

8           The first entry here says, "First name, 90 equals

9   zero; last name, Inc."

10          Do you see that?

11  A    I do.

12  Q    What did you do with that one on this analysis with

13  regards to calls to numbers associated with a business?

14  A    That one would have been removed.

15  Q    And when you say "removed," it is not included in your

16  totals?

17  A    That's correct.

18  Q    Is it included in any of the rows where you're providing

19  the counts for various outcomes or disposition codes?

20  A    It is not.

21  Q    So in your summary, when you got those numbers listed at

22  the bottom, are those the ones you've already subtracted?

23  A    Yes.  I have already subtracted those.

24  Q    Now, there was some testimony yesterday when ViSalus was

25  examining you about the KCC class list.  I want to put up a

S. Davis - D

1    definition of the class.  Now, you described the KCC class list

2    as a list that was designed to identify people who would meet

3    this class definition; is that right?

4    A    That's right.

5    Q    Did the defendants participate in culling through and

6    identifying people who should be removed?

7    A    Yes.

8    Q    Did you participate in that process as well?

9    A    I did.

10   Q    On this list it says, "All individuals in the

11   United States who received a telephone call made by or on

12   behalf of ViSalus:  (1) promoting ViSalus's products or

13   services; (2) where such call featured an artificial or

14   prerecorded voice; and (3) where neither ViSalus nor its agents

15   had any current record of prior express written consent to

16   place such call at the time such call was made."

17            Is that correct?

18   A    That's correct.

19   Q    As a result of the process of identifying the people that

20   should be on the KCC class list, was there anybody on it that

21   defendants proposed that we should strike or exclude that was

22   kept on the list?

23            MR. FOSTER:  Objection, Your Honor.  I think now that

24   this is brought up, I think we need to explain to the jury the

25   process for creating the class list.

S. Davis - D

1           THE COURT:  All right.  You may explore that with him

2   on cross-examination.  Overruled.

3           THE WITNESS:  Can you repeat the question?

4   BY MR. DOVEL:

5   Q    Sure.  If the defendant's lawyers -- if defendant or

6   defendant's lawyers identified anybody that they thought should

7   be removed from the class list, was that person removed?

8   A    Yes.

9   Q    When you did your analysis, did you include only people

10  that were on the class list, or did you have people that were

11  not on the class list?

12  A    For these particular exhibits it was only people that were

13  on the class list.

14  Q    If someone had a Canadian mobile cell phone and lived in

15  the United States, would they have been included in the class

16  list?

17  A    They would.

18  Q    Why is that?

19  A    So it's possible that --

20          MR. FOSTER:  Objection.  Foundation.

21          THE COURT:  Let me first understand.  What is your

22  foundation?  How do you know the answer you are about to give

23  us?

24          Talk into the microphone.

25          THE WITNESS:  So can you repeat.

S. Davis - D

1          THE COURT:  Sure.  You were just asked a question by

2    Mr. Dovel.  There was an objection as to foundation.  What that

3    means is, they want to know -- and I want to know -- how do you

4    know the answer you are about to give us?  Where do you know

5    that information from?

6          THE WITNESS:  I guess just based on the fact that

7    Canada borders the U.S., and it is entirely possible that

8    someone lived in Canada --

9          THE COURT:  Basically just, if you will -- all right.

10   I'm going to overrule the objection and let you answer.

11         THE WITNESS:  Okay.  Yes.  I would know that based

12   off of Canada borders the United States, it is entirely

13   possible that someone lived in Canada, had a Canada number, and

14   then moved into the United States, and kept their same phone

15   number.

16   BY MR. DOVEL:

17   Q    Was there an effort made to exclude from the KCC class

18   list people that lived in Canada?

19         MR. FOSTER:  Objection.  Foundation.

20         THE COURT:  Do you know the answer to that question?

21   Yes or no?

22         THE WITNESS:  I do.

23         THE COURT:  How do you know the answer?

24         THE WITNESS:  So based off of looking at the address

25   information.

S. Davis - D

1          THE COURT:  No, no.  Did you play a personal role in

2   that issue?

3          THE WITNESS:  I did.

4          THE COURT:  You did?

5          THE WITNESS:  Yes.

6          THE COURT:  Overruled.  You may answer.

7          THE WITNESS:  So when providing the initial list to

8   KCC, I had noticed that there actually were Canadian addresses.

9   So I basically ended up removing those.  KCC also looked into

10  that as well.

11         MR. FOSTER:  Objection.  Foundation.

12         THE COURT:  Hold on.  I assume the only way you know

13  about what KCC may or may not have done is what they may have

14  told you as opposed to you observing something; am I right?

15         THE WITNESS:  That's correct.

16         THE COURT:  That, you can't get into.  Sustained as

17  to that extent.

18  BY MR. DOVEL:

19  Q    Describe the process that you did in working on the KCC

20  class list to limit it to people that lived in the

21  United States.

22  A    Yes.  So what I did in particular was I would find if

23  Canada was listed or a Canadian city or province, any time I

24  found those, I would end up removing those people.

25  Q    As a result, are there any disposition codes or call

S. Davis - X

```
 1   outcomes that are counted in 36 or 36A that would include
 2   numbers associated with somebody who lives in Canada?
 3   A     There would not be.
 4              MR. DOVEL:  Your Honor, I have no further questions
 5   at this time.
 6              THE COURT:  Thank you.  Cross-examination.
 7              MR. FOSTER:  Yes, Your Honor.
 8                          CROSS-EXAMINATION
 9   BY MR. FOSTER:
10   Q     Good morning, Mr. Davis.  I think this will be the third
11   and last time I've spoken.
12   A     Good morning.
13   Q     First, I would like to talk about something -- about the
14   Gidley affidavit.  The Gidley affidavit does not say that any
15   of the disposition codes indicate a recorded message was
16   played; is that correct?
17   A     I wouldn't say that's exactly correct.
18   Q     Do you have the declaration in front of you?
19   A     I do not.
20              MR. FOSTER:  Your Honor, may I approach?
21              THE COURT:  You may.
22   BY MR. FOSTER:
23   Q     Mr. Davis, I'm handing you what has been marked as
24   Exhibit 37, the declaration of Scott Gidley.
25              THE COURT:  Not only has it been marked, but it has
```

S. Davis - X

1  been received in evidence.  So if you want to display it to the

2  jury, you're welcome.

3          MR. FOSTER:  Your Honor, I'm not sure how to use the

4  ELMO.

5  BY MR. FOSTER:

6  Q    Mr. Davis, have you reviewed this document before?

7  A    I have.

8  Q    Would you tell us where in that document Scott Gidley says

9  that a certain disposition code means that a message was played

10  in a call?

11  A    He provided the disposition codes that indicated

12  artificially prerecorded voice did not play.

13  Q    Yes.  But you would agree that is not the same -- nowhere

14  in that affidavit does he concede or state that the other

15  disposition codes listed mean a call was played, does he?

16  A    Not in there, but in defendant's stipulations I would say

17  that would indicate that.

18  Q    So it is your position that the stipulation says that a

19  artificial or prerecorded voice was played for all the

20  disposition codes not marked in paragraph 7 of Gidley's

21  affidavit?

22  A    Yes.

23  Q    Okay.  Mr. Davis, throughout your testimony you referred

24  to the numbers you've tabulated in your summary as "calls"; is

25  that correct?

S. Davis - X

1  A    That's correct.

2  Q    I believe about over 2 million or so of those calls, those

3  telephone numbers have no disposition codes; is that correct?

4  A    That is correct.

5  Q    So you don't know if it was a call, what happened during

6  that call, right?

7  A    Not for those in particular, no.

8  Q    You don't even know if those numbers were called, do you?

9  A    I would not know for certain, no.

10  Q    Because a number on the list by itself without a

11  disposition code, there is no way to tell whether that number

12  was ever dialed; is that correct?

13  A    That's correct.

14  Q    So in actuality neither 36 or 36A is a summary of calls;

15  is that right?

16  A    It's a summary of calls every time a disposition code is

17  shown.

18  Q    But you agree you included numbers from your database that

19  didn't have disposition codes, right?

20  A    That's correct.

21  Q    And you don't know for those numbers, without disposition

22  codes, whether those numbers were called, right?

23  A    That's why I broke those out into the separate row at the

24  bottom.

25  Q    I understand.  But again, your exhibits are titled

S. Davis - X

1    "summary of calls," right?

2    A     That's correct.  I suppose to go back on what I said

3    before, I honestly don't know if it was called or not.

4    Q     Okay.  So in the bottom right corner where you total up

5    all the numbers, and you listed those as the total number of

6    calls, that's not a correct characterization of what you were

7    summarizing, is it?

8    A     I wouldn't say that's correct.

9    Q     Mr. Davis, you just agreed with me that numbers without

10   disposition codes, you don't know one way or another whether

11   that's a call, right?

12   A     But I also don't know for certain that it's not a call.

13   Q     Okay.  So you're just speculating when you describe it as

14   a call, right?

15   A     Well, based off of what I learned reading through --

16   Q     I'm not asking what you learned in your reading.  I'm

17   asking if you are speculating --

18   A     I don't think it is speculation.

19            THE COURT:  Hold on, folks.  One person speaks at a

20   time.  We have to do that in order to have a clean record.  So

21   whoever is speaking, the other person must wait, including your

22   answer.

23            THE WITNESS:  Understood.  So my understanding of the

24   reason for the documentation for the POM machine is basically

25   when someone takes a contact list, they insert it into the POM

S. Davis - X

1    machine, and then the POM machine makes all of those calls.

2              MR. FOSTER:  Your Honor, I object to this on

3    foundation.

4              THE COURT:  One moment.  I'm going to overrule that.

5    You may ask your next question.

6    BY MR. FOSTER:

7    Q    Mr. Davis, let's talk very, very briefly about the KCC

8    class list.  I know we have gone over that issue ad nauseam.

9    But my understanding of why you took the KCC class list and ran

10   it against the 405 spreadsheets is to try to identify those

11   individual numbers that could be associated with someone in the

12   class; is that correct?

13   A    That is correct.

14   Q    Because, again, you wanted to make sure, where possible,

15   that you've limited your summary to only those people who may

16   be class members, correct?

17   A    That is right.

18   Q    Did you know that Ms. Wakefield isn't listed in the KCC

19   class list?

20   A    I don't know that I looked in particular, so --

21   Q    But you helped prepare the KCC class list, correct?

22   A    I did help prepare that.

23   Q    You didn't think to check if the named plaintiff is part

24   of the class list?

25   A    I wasn't asked in particular.  I couldn't say if she is or

S. Davis - X

1    is not.

2    Q    Would you find it strange that the named plaintiff would

3    not be included in the KCC class list?

4    A    I wouldn't really have an opinion on that.

5    Q    Okay.  Let's turn to the actual summaries, Exhibits 36 and

6    36A.  You would agree with me that those summaries are riddled

7    with some problems, aren't they?

8    A    I would not agree.

9    Q    People outside the United States aren't included in the

10   class definition; is that right?

11   A    Can you repeat that?

12   Q    Individuals who reside outside the United States are not

13   included in the class definition; is that correct?

14   A    That is correct.

15   Q    Okay.  But you found, as I believe you were just

16   discussing with Mr. Dovel, you found tens of thousands of

17   numbers associated with Canadian area codes; isn't that right?

18   A    Am I allowed to talk about the other exhibit?

19           THE COURT:  I think the question is a yes or no.  Am

20   I mistaken?  He is asking if you found tens of thousands of

21   numbers associated with a Canadian area code.  You either did

22   or you didn't.

23           THE WITNESS:  Okay.  Yes.

24   BY MR. FOSTER:

25   Q    Okay.  And those numbers were included in your total call

S. Davis - X

1    counts for Exhibit 36 and Exhibit 36A, isn't that correct?

2    A    That is correct.

3    Q    Do you know how many Canadian numbers you found -- that

4    you included in Exhibit 36 and 36A?

5    A    Not precisely at this moment.  That's kind of why we ended

6    up running -- that's what my question was a second ago.  That's

7    why we ended up running the other exhibit.

8    Q    Why you ended up running what you attempted to introduce

9    as Exhibit 36B?

10   A    That's right.

11   Q    Because Exhibit 36 and Exhibit 36A weren't accurate, were

12   they?

13   A    They were accurate in terms of counting what I found in

14   the contact list.

15   Q    But they included, from my count, 58,000 Canadian numbers,

16   correct?  Does that sound unreasonable, or is that close to

17   what you found?

18   A    I found those numbers.  But again, still, those numbers

19   could have been tied to people within the United States.  I

20   don't know.

21   Q    But you didn't -- again, you don't know how many Canadian

22   area numbers you included in 36 and 36A?

23   A    Not precisely.

24   Q    Okay.  You would agree that if those telephone numbers --

25   if the people called at the end of those telephone numbers were

S. Davis - X

1    Canadians, they shouldn't be included in the class, right?

2    A    If they were living in Canada, I would agree.

3    Q    Okay.  And it's your position that the tens of thousands

4    of Canadian numbers that you found were people that probably

5    moved from Canada to the United States, correct?

6    A    I'm not sure.

7    Q    Okay.  And when did you realize there were Canadians in

8    your summary, 36 and 36A -- Canadian numbers, that is?

9    A    When I was in the process of creating Exhibit 36B.

10   Q    When was that?

11   A    That was on April 6th.

12   Q    Okay.  So just this last week?

13   A    That's correct.

14   Q    Besides Canadian numbers, did you find numbers associated

15   with any other countries?

16   A    I did.

17   Q    Which countries were those?

18   A    I can't say all the different ones in particular.

19   Q    Can you list the ones you remember?

20   A    I can't really say.

21   Q    Do you have any idea how many other numbers may be in 36

22   and 36A associated with numbers related to other countries?

23   A    When I ran the Google checker in particular I basically

24   had just drilled it down to U.S. only, so I didn't take a good

25   look in terms of all the different other countries that were

S. Davis - X

1   involved.  I was just limiting it down to the United States

2   numbers.

3   Q    So if I understand you correctly, you don't know how many

4   foreign numbers are included in the totals for 36 or 36A,

5   correct?

6   A    I don't know an exact number, no.

7   Q    The summary -- strike that.

8        Exhibits 36 and 36A don't identify -- there's no

9   column saying these are the number of foreign -- these are the

10  number of calls associated with foreign numbers, does it?

11  A    It does not say that.

12  Q    So there is really no way for the jury to determine

13  whether a call counted in your summary is a Canadian number or

14  if it is a U.S. number or if it is some other number in the

15  world, is there?

16  A    Repeat one more time.

17  Q    There is no way for the jury, looking at Exhibits 36 and

18  36A, to determine whether a number that you counted is a U.S.

19  number or some other number from around the world, is there?

20  A    Well, you had asked me based off of what other particular

21  countries.  I do have an idea knowing how many numbers

22  potentially could have been removed from both of these.

23  Q    That's not what I'm asking.  I'm asking is there any way

24  for the jury, looking at Exhibits 36 and 36A, to know how many

25  foreign numbers you included in your count total?

S. Davis - X

1    A    Solely looking at the exhibits, no, they would not.

2    Q    Okay.  Mr. Davis, you also discovered in your review of

3    the underlying data for Exhibits 36 and 36A that there were

4    thousands of numbers associated with 1-800 or other 800,

5    toll-free numbers; is that correct?

6    A    I found toll-free numbers.

7    Q    Did you find more than one?

8    A    I did.

9    Q    Did you find more than one hundred?

10   A    I can't recall the exact count offhand, but I believe it

11   was probably around more than that.

12   Q    What about more than a thousand?

13   A    I don't recall.

14   Q    So you're not sure.

15        Do you know anyone who has a 1-800 or other toll-free

16   number as their cell phone number?

17   A    I don't personally.

18   Q    Do you know anyone who has a 1-800, a toll-free number, or

19   other 800 toll-free number as their home line?

20   A    I don't in particular.

21   Q    You would agree with me that where you see a number that's

22   a toll-free number, 1-800/877, those toll-free numbers are

23   generally associated with businesses, right?

24   A    I would say so.

25   Q    So you would agree with me that there are numbers that you

S. Davis - X

1  counted in Exhibits 36 and 36A, in those totals, that are 1-800

2  numbers, right?

3  A    There are some.

4  Q    Yes.  And those numbers were likely associated with

5  businesses, correct?

6  A    I would say likely.

7  Q    Now, in your Exhibit 36A total computation for what you

8  consider associated with a business, did you include those

9  1-800 numbers?

10  A    I didn't drill by 1-800 numbers in particular.

11  Q    You just went by name, right?

12  A    I did go by name.

13  Q    If, for instance, there was a number -- a 1-800 number

14  listed with what seemed like an individual's name, that number

15  wouldn't be included in your total of numbers associated with

16  businesses, right?

17  A    That's right.

18  Q    So you would agree with me that that number, that 6700

19  business number, doesn't include all the probable business

20  numbers in Exhibit 36A, does it?

21  A    I would agree it might not include every single business.

22  But again, I did my best to remove as many businesses as I

23  could.

24  Q    You did your best.

25        Okay.  Now, you would also agree with me that you

S. Davis - X

1  found thousands of what I'll call fake numbers in the data

2  underlying summary, 36 and 36A, correct?

3  A    In creating 36B, I did notice there were some invalid

4  numbers.

5  Q    But again, were those invalid numbers -- strike that.

6         Those invalid numbers that you said you found when

7  creating 36B, those numbers are included in the count totals

8  for 36 and 36A, correct?

9  A    They are included.

10 Q    For example, you found hundreds of calls with a 555 area

11 code, correct?

12 A    I can't recall the exact area codes from every single one.

13 Q    Did you find any calls to a 555 area code?

14 A    I don't recall the exact area codes, but I do know that

15 based off of the -- putting together 36B, whenever an invalid

16 number was called by ViSalus, it would essentially show up with

17 a "no answer" code.

18 Q    About how many invalid numbers would you estimate were

19 included in Exhibit 36 and 36A in their call totals?

20 A    I couldn't say the exact amount.

21 Q    Is there any way for the jury to determine, by looking at

22 Exhibit 36 and Exhibit 36A on its face, to determine which

23 calls went to invalid numbers?

24 A    They wouldn't be able to tell the total, but they could

25 account that if no answer is basically going to be taken out

S. Davis - X

1    because that has no prerecorded voice, that it would at least

2    be included within that count.

3    Q    Now, let's talk about the process that you went through to

4    verify -- to find the business numbers that you listed in

5    Exhibit 36A.  What search terms did you use to identify what

6    numbers were associated with businesses?

7    A    So I went through a variety of search terms.  I used

8    "LLC."  I used "Inc."  I used "Incorporated."  I ended up

9    looking for schools.  I searched for "school; university."  I

10   believe I looked for "consultants; construction."  So I ran

11   through a number of terms.  I do have that written down

12   somewhere in an email.  I don't recall offhand every single one

13   that I did, but all the common business identifiers that I'm

14   familiar with, I ended up searching for those.  Then that's why

15   furthermore I ended up doing the filter where I looked for

16   longer names in the last name column because I realized I

17   probably wouldn't have found every single one.  And some

18   businesses don't have "LLC" or some sort of suffix at the end,

19   so I manually removed those.  As I mentioned before, the

20   defendant did not have a column that just said is this a

21   business or not, and so I had to basically rely on myself to

22   figure that out.

23   Q    If there was a business name that wasn't identified by

24   your search parameters and had a name that was less than 15

25   characters, you didn't find it?

S. Davis - X

1  A    It's possible.

2  Q    Is it possible that there are additional businesses that

3  you included in your call counts that you didn't identify

4  through your search terms -- basically your scrub for

5  businesses?

6  A    I couldn't say for certain.  It is possible I got them

7  all.

8  Q    And if there are additional businesses included in your

9  call counts, again, there would be no way for the jury to know

10  which calls are associated with businesses just looking at

11  Exhibit 36 and Exhibit 36A, is there?

12  A    Just looking at it, I suppose not.

13  Q    Now, Mr. Davis, in your review, did you find instances

14  where there were dozens of names associated with a single

15  telephone line?

16  A    I did.

17  Q    Did you find that strange?

18  A    I wasn't sure what the reason for that was, so --

19  Q    What if you had found 100 names associated with a single

20  number?  Would you have found that strange?

21  A    It would depend.

22  Q    On what?

23  A    Well, I would assume a family is not going to have a

24  hundred people, so, yeah, I suppose I would categorize that as

25  a little strange.

S. Davis - X

1  Q    I agree.  I think it wouldn't necessarily be strange, but

2  100, you would agree, would be more than probably the amount of

3  people in a family who would put down their number for multiple

4  promoter applications?

5  A    Say it one more time.  I didn't catch the end of that.

6  Q    Strike that.

7         Would you find it strange if there were 33,000 names

8  associated with one number?

9  A    Would I find it strange, you said?

10  Q    Yeah.

11  A    Well, again, I don't know how they put together their

12  sheets.  I don't know how they assigned numbers.

13  Q    Did you know that telephone number (469)287-8490 is linked

14  in your database to 33,000 different names?

15         THE COURT:  May I have that number again?

16         MR. FOSTER:  (469)287-8490?

17         THE COURT:  Thank you.

18         THE WITNESS:  I can't remember the numbers in

19  general.  I do know there were some numbers that had multiple

20  names.

21  BY MR. FOSTER:

22  Q    I think I can help you out with this.

23         MR. FOSTER:  May I approach, Your Honor?

24         THE COURT:  You may.

25

S. Davis - X

1   BY MR. FOSTER:

2   Q    Mr. Davis, I'm handing you a printout from your database

3   summary.

4              THE COURT:  I'm not sure I want it.

5              MR. FOSTER:  You're sure, Your Honor?

6              THE COURT:  No, I'm not sure.  I will listen.  I may

7   change my mind.  But for right now, I'll just listen.

8              MR. FOSTER:  I'll leave it here, Your Honor.

9              THE COURT:  Thanks.

10  BY MR. FOSTER:

11  Q    Mr. Davis, does this appear to be the data included in the

12  databases that you used to create Exhibits 36 and 36A?

13  A    It appears to be.

14  Q    Mr. Davis, I would like you to flip through these sheets.

15  Spend as much time as you need.  Will you tell me what number

16  is associated with each of the lines from your database?

17  A    Based off of reviewing a few of these pages, it looks like

18  it is (469)287-8490.

19  Q    Mr. Davis, why don't you just go ahead and flip to the

20  last page.  Each of those pages are double-sided.  There are

21  about 70 lines on each page.  There are two volumes.  I

22  couldn't possibly bind all that paper.  But if you want to flip

23  through all the way to the end just to verify.  What number do

24  you got there?

25  A    It's the same number.

S. Davis - X

1  Q    Okay.  I believe it is your position with these summaries

2  that every time a number appears in your database, that

3  represents a potential call to a class member; is that correct?

4  A    That is correct.

5  Q    And based on what you have in front of you, how many calls

6  does your database show went to (469)287-8490?

7  A    Well, offhand, I can't tell how many there are just by

8  looking at this document, but I suppose I would say that just

9  because the names are different doesn't mean that phone number

10  wasn't called that many times and whoever's name is really tied

11  with that phone number must have received a ton of calls.

12  Q    That wasn't my question.  Why don't I help you.  Why don't

13  we turn to the first page of the first book and look in the top

14  left corner.

15         Do you see that?

16  A    Yes.

17  Q    What number is that?

18  A    (469)287 --

19  Q    Which line number?

20  A    Can you ask me again, please?

21  Q    We are on the first page of the first booklet.  Go all the

22  way to the top left corner.  What line number do we start on?

23  A    Line No. 2.

24  Q    And let's flip all the way to the last page and see what

25  line number we have there for the last supposed call.

S. Davis - X

1  A     27069 --

2  Q     The second book, Mr. Davis.

3  A     You are asking me to go to the last page of the second

4  book?

5  Q     Yes, the second book.

6  A     Okay.

7  Q     What's that number?

8  A     That number is 58,801.

9  Q     So 58,800 calls associated with one number?

10  A     That appears to be so, yes.

11  Q     Mr. Davis, again, flipping through these notebooks, what

12  can you tell me about the names associated with that number?

13  A     I could say that there are various names included.

14  Q     Would you agree with me that there are probably thousands

15  of different names associated with that number?

16  A     I couldn't say if there are thousands, but there are

17  multiple.

18  Q     Mr. Davis, they are alphabetically listed.  Why don't you

19  flip through until you are comfortable telling me there are

20  thousands of names associated with that number.

21  A     Even flipping through, there are so many pages.  Without

22  using the computer, I wouldn't be comfortable giving you an

23  exact number.

24  Q     I'm not asking for an exact number.

25  A     I wouldn't even be comfortable giving you an estimate.

S. Davis - X

1   Q    Again, because there are so many pages, 58,000 lines, and

2   you're not comfortable giving me an exact number?

3   A    There are a lot of numbers.

4   Q    This comes from your data, correct?

5   A    It comes from the data, yes.

6   Q    The data you used to create 36 and 36A, right?

7   A    Yes.

8   Q    When you were creating the summaries, did you look for

9   repeating numbers?  Did you look for this situation?

10  A    I believe I noticed there were a few numbers that had more

11  than one name.  But again, I just figured it was still a call.

12  It was more an error on the defendant's side in terms of how

13  they named it.

14  Q    So it was an error on the defendant's side, the fact that

15  this number appeared in your database 58,000 times?  That's

16  your position?  You assumed that?

17  A    I'm just counting off of how many rows go into the POM

18  machine.  I am not really looking at it in terms of who the

19  names of the people are.

20  Q    Okay.  You would agree with me that these 58,000 entries

21  were included in the call counts for both Exhibit 36 and

22  Exhibit 36A, correct?

23  A    Yes.

24  Q    Now, all of these problems we have discussed -- the

25  Canadian numbers, the business numbers, the 1-800 numbers, the

S. Davis - X

1    fact of these 58,000 calls -- those inflated the call counts in

2    your summaries, didn't they?

3    A     What do you mean by "inflated"?

4    Q     They made the numbers larger.

5    A     They were included.

6    Q     Yes.  So these summaries really can't be trusted, can

7    they?

8    A     I wouldn't agree with that.

9    Q     All right.  Now, again, based on my understanding of the

10   database used to create the summary, every time we see a number

11   listed, whether that number be listed -- every time you see a

12   number listed, that means, for your summary's purpose, you

13   think the number was called, right?

14   A     That's correct.

15   Q     So if we see a name, say Bob, and Bob's number and name

16   are listed ten times, for the purposes of your summary, you are

17   taking the position that Bob was called ten times, right?

18   A     I am taking that position.

19   Q     Did you know in your database that Ms. Wakefield is only

20   listed one time?

21   A     I believe her husband is also listed in there under the

22   same number.

23   Q     How many times was her number listed?

24   A     In this particular database I believe it was two times.

25   Q     Two times.  And it's your understanding that it is

S. Davis - X

1    Ms. Wakefield's position and testimony, and, frankly, the

2    exhibits -- her own number show she was called five times,

3    right?

4    A    Yes.  And I know why that is.

5    Q    Okay.  Now, I believe you testified previously that you

6    read the Avaya manual; is that correct?

7    A    That is correct.

8    Q    Specifically the Avaya manual's description of each

9    disposition code, right?

10   A    I have read through their disposition codes, yes.

11   Q    You would agree with me that there is no disposition code

12   that reads "message played," right?

13   A    Not that I saw.

14   Q    And none of the descriptions for any of these disposition

15   codes in the Avaya manual say that if you see this disposition

16   code, that a prerecorded message was played; isn't that

17   correct?

18   A    I didn't see that in there.

19            MR. FOSTER:  No further questions.

20            THE COURT:  Redirect.

21            MR. DOVEL:  Thank you, Your Honor.

22

23

24

25

S. Davis - ReD

REDIRECT EXAMINATION

BY MR. DOVEL:

Q    Mr. Davis, do you have 36B with you?

A    I do.

Q    Now, you were asked a few minutes ago if you could remember exactly what the result would be if you performed your analysis of removing phone numbers that were Canadian or foreign or had invalid numbers.  Looking at 36B, can you tell us how that would change the total number of calls?

MR. FOSTER:  Objection.  Foundation.  And again, 36B isn't in evidence, Your Honor.

THE COURT:  Sustained.

MR. DOVEL:  Your Honor, I'm not moving 36B into evidence.

THE COURT:  I understand you aren't.  It is excluded for the reasons that I stated yesterday.

MR. DOVEL:  All right.

BY MR. DOVEL:

Q    Now, can you give us an estimate in response to counsel's question of the number of calls that would be removed if we were to remove the Canadian numbers and invalid numbers and so on?

MR. FOSTER:  Objection.

THE COURT:  Sustained.

MR. DOVEL:  I believe counsel asked that question,

S. Davis - ReD

 1   Your Honor.

 2           MR. FOSTER:  And I believe he said he didn't know,

 3   Your Honor.

 4           MR. DOVEL:  And I'm following up on that.  I'm asking

 5   it again.

 6           THE COURT:  All right.  Well, since defendant is not

 7   disagreeing that they asked the question, I'll say you opened

 8   the door.  Objection is overruled.

 9           You may answer.

10           THE WITNESS:  Can you repeat the question?

11   BY MR. DOVEL:

12   Q    Yeah.  If we were to remove from your analysis from your

13   summaries the numbers that were associated with Canadian

14   numbers, non-U.S. numbers, invalid numbers, all those things,

15   what would that remove from the total?

16           MR. FOSTER:  Objection, Your Honor.  I don't believe

17   I asked that question.

18           THE COURT:  You just said that a few minutes ago.

19           MR. FOSTER:  Your Honor, I believe I asked if the

20   jury, looking at Exhibit 36 and 36A, just looking at that,

21   whether they could tell how many Canadian numbers, et cetera,

22   were included in that summary.

23           THE COURT:  That's the way I remembered you asking

24   the question.  That's why I was surprised by your statement a

25   few minutes ago.

S. Davis - ReD

1                MR. DOVEL:  That's a different question.  He asked

2      that one, but he asked the one I asked as well.

3                THE COURT:  I don't recall that, but I'll take your

4      word for that, Mr. Dovel.  So I'll allow you to answer.

5                THE WITNESS:  Can you repeat it one more time?

6                MR. DOVEL:  Sure.

7      BY MR. DOVEL:

8      Q    If you were to take out from the total disposition codes

9      the calls associated with Canadian numbers, non-U.S. numbers,

10     invalid numbers, all of those things that defendant was asking

11     you about, how many would that remove approximately?

12     A    Approximately 90,000 calls -- around.

13               MR. DOVEL:  Your Honor, let me get the whiteboard, if

14     I could.

15               MR. O'NEAL:  We can't see it.

16               THE COURT:  That's not the way we do it, Mr. O'Neal.

17     Why don't you go around and step to wherever you can see it,

18     but don't step into the jury box.

19               Although, Mr. Dovel, could you move the podium so

20     that Mr. O'Neal and Mr. Foster can see the whiteboard, please.

21               Thank you.

22     BY MR. DOVEL:

23     Q    If we go to 36A, what's the number for the total calls

24     that you concluded based upon your count?

25     A    4,123,856.

S. Davis - ReD

1  Q    And remind me what was the number that you just provided

2  us, the estimated calls that would be removed if we removed the

3  items --

4           THE COURT:  He said approximately 90,000.

5  BY MR. DOVEL:

6  Q    If we subtract 90,000 from that total, my math says that

7  we get --

8           THE COURT:  One second.  Mr. Foster, if you want, you

9  are welcome to come over here.

10  BY MR. DOVEL:

11  Q    4,033,856; is that right?

12  A    That's right.

13  Q    Now, sir --

14           MR. DOVEL:  We are done with the whiteboard.

15           THE COURT:  Mary, would you put the whiteboard back.

16           Mary, I would like it basically facing against the

17  wall so it's not distracting.

18           Thank you.

19  BY MR. DOVEL:

20  Q    Now, in doing your analysis, was there any reason to

21  exclude from your count a phone number that was an invalid

22  number; one where if you dialed it, it wouldn't go through?

23           MR. FOSTER:  Objection.  Foundation, speculation, and

24  improper opinion.

25           THE COURT:  One moment.  Sustained as to opinion.

S. Davis - ReD

1   BY MR. DOVEL:

2   Q    You were asked about whether this analysis was

3   untrustworthy or unreliable or deficient by defendant.  If your

4   totals include numbers that were dialed for invalid numbers,

5   does that make this in any way deficient or invalid?

6   A    It does not.

7            MR. FOSTER:  Objection.  Improper opinion.

8            THE COURT:  You opened that door.  Overruled.

9   BY MR. DOVEL:

10  Q    Why not?

11  A    As I mentioned before, invalid numbers would still be

12  dialed, and then they would have a "no answer" disposition

13  code.

14           MR. FOSTER:  Objection.  Speculation.

15           THE COURT:  Overruled.

16  BY MR. DOVEL:

17  Q    The defendant identified -- raised with you that your

18  approach to removing businesses might have missed some.  Did

19  the defendant identify any businesses that your analysis had

20  missed?

21           MR. FOSTER:  Objection.

22           THE COURT:  Overruled.

23           THE WITNESS:  No, he did not.

24  BY MR. DOVEL:

25  Q    In your analysis you described a process that you used.

S. Davis - ReD

1    Did the defendant, in looking through, did they identify any

2    other numbers that they said were businesses that should have

3    been removed?

4    A    They did not mention.

5             MR. DOVEL:  One moment, Your Honor.

6    BY MR. DOVEL:

7    Q    Now, you were asked about the subject of Ms. Wakefield

8    only appeared two times -- her number -- in your spreadsheet,

9    your analysis.  Why is that?

10   A    I had found that she appeared two times in my analysis,

11   but within the initial production of roughly 2,000 contact

12   lists, she had appeared five total times.

13            MR. DOVEL:  Your Honor, no further questions.

14            THE COURT:  Recross?

15            MR. FOSTER:  No, Your Honor.

16            THE COURT:  All right.  Mr. Davis, thank you very

17   much.  You may step down.

18            Would you return the big books there to Mr. Foster.

19            Mr. Foster, would you come get those, please.

20            MR. FOSTER:  I'll come get them, Your Honor.

21            THE COURT:  Are we done with that thick

22   demonstrative, the other one?

23            MR. FOSTER:  I think so.

24            THE COURT:  Since that's not in evidence, let me ask

25   the jury to pass it forward so plaintiff's counsel can collect

1    it and so you don't trip over it.

2              Thank you, Mary.

3              All right.  At this time the plaintiff may call the

4    next witness.

5              MR. DOVEL:  Your Honor, we are going to offer into

6    evidence two exhibits.  P47, the one that was discussed

7    extensively in the pretrial.

8              THE COURT:  47?

9              MR. DOVEL:  47.

10             THE COURT:  One moment.  Let me get my notes.

11             MR. DOVEL:  Exhibit 47 --

12             THE COURT:  Give me one minute.  I thought we were

13   done with exhibits.  One moment.

14             All right.  We talked about this previously.  Any

15   further comments from defendant?

16             MR. O'NEAL:  Renew the same objections, Judge.

17             THE COURT:  I will overrule that.  So 47 is received

18   in evidence.

19             MR. DOVEL:  We offer Exhibit 50.

20             THE COURT:  One moment.  I do recall the previous

21   objections.

22             Anything further?

23             MR. O'NEAL:  No, Your Honor.

24             THE COURT:  All right.  Overruled.  50 is received in

25   evidence.

```
 1            Anything further?

 2            MR. DOVEL:  That's the last exhibit, Your Honor.

 3            THE COURT:  All right.

 4            MR. DOVEL:  As our final witness on the witness list

 5  was the --

 6            MR. O'NEAL:  Objection, Your Honor.

 7            THE COURT:  Do you have any more witnesses?  Yes or

 8  no, please.

 9            MR. DOVEL:  The witness we wanted to call is not in

10  the courtroom.

11            MR. O'NEAL:  Objection, Your Honor.

12            THE COURT:  All right.  Then I take it plaintiff

13  rests?

14            MR. DOVEL:  Yes, Your Honor.

15            THE COURT:  All right.  The defense may call the

16  first witness.

17            MR. O'NEAL:  Your Honor, the defense rests.

18            THE COURT:  All right.  And that means that there is

19  no rebuttal case.

20            So, members of the jury and Mr. Apodaca, here is what

21  I would like to do next.  Unless anybody needs or wants a break

22  now, I would like to go straight into giving you the final jury

23  instructions and then take a recess.  Let the lawyers

24  reorganize, and then when we come back from the recess, you'll

25  hear closing argument.
```

 1                    Let me start with you, Dennis.  Is that okay with

 2     you?

 3                    THE COURT REPORTER:  That's fine.

 4                    THE COURT:  Members of the jury, is that okay with

 5     you?

 6                    JURY:  Yes.

 7                    Mary, here is the original.  Will you give each juror

 8     one set of final instructions and one verdict form.

 9                    Everyone should have a double-sided document entitled

10     "Final Jury Instructions" and a double-sided document entitled

11     "Special Verdict."

12                    Do you all have that?

13                    By the way, Mary, for your planning purposes, during

14     the recess, after I do this, why don't you pass out menus to

15     them, and the United States District Court will buy your lunch

16     today.

17                    MR. DOVEL:  Your Honor --

18                    THE COURT:  Yes.

19                    MR. DOVEL:  One thing I neglected, we were going to

20     provide a copy of the stipulations to each juror.

21                    THE COURT:  That's fine.  I'll let you reopen your

22     case for purposes of the stipulation.

23                    Members of the jury, as I'll describe in a few

24     moments, the parties have agreed to certain facts called

25     stipulations.  I'll tell you more about those in my

1    instructions.  If you have copies for everyone, you may pass

2    them out.

3              Let me double-check with defense counsel.  Since I'm

4    letting him reopen the case to pass out these stipulations, do

5    you have any defense witnesses or exhibits?  I'll let you

6    reopen now that I have let him reopen.

7              Mr. Dovel, do you have a set for me?

8              MR. O'NEAL:  No, Judge.

9              THE COURT:  Okay.  All right.  So, Mary, we will be

10    ordering them lunch during the break.

11              Members of the jury, don't start reading yet.  Here

12    is what I would like to do.  No. 1, put the stipulations aside

13    for a few minutes.  You'll have them in the jury room, as I'll

14    explain.

15              No. 2, put the verdict aside for a few minutes.  We

16    will get there.

17              If you'd take a look at the final jury instructions,

18    in a few moments I'm going to read them aloud to you.  That's

19    how it is done.  But you'll have them.

20              Here is my request or advice:  Some people prefer to

21    learn by hearing things, some people prefer to learn by reading

22    things, and some people prefer and do just fine when someone

23    reads something aloud, if you're following along and reading

24    the same things.  That's fine too.

25              If you want to just put those written jury

Jury Instructions

1  instructions aside and listen to me, that's fine.  If you want

2  to follow along as I read, that's fine.  But here is what I ask

3  you not to do:  Don't read ahead, because then your ears will

4  be hearing me talking, and I'll be saying something different

5  than from what your eyes are seeing.  We all think that we can

6  multitask really well, and we are wrong.  So please, don't read

7  ahead.  Either put them down -- you'll have them to refer to

8  during deliberations -- or read along with me.

9           JUROR:  Your Honor, is it okay if we make notes?

10          THE COURT:  Absolutely.  These are yours to keep.

11  Everything that has just been handed to you -- the

12  stipulations, the verdict form, the final jury instructions --

13  they are yours to keep.  If, at the end of the trial, you want

14  to take them with you after the trial is over, fine.  You may

15  leave them here.  If they are not confidential, like these are

16  not confidential, we will just recycle them.  If they are

17  confidential, like your notes and your notebook, you are

18  welcome to take those with you, if you want; or if you leave

19  them here, we will shred those.

20          Okay.  I'm going to read these.  I am going to start

21  with a glass of water.  I'm starting at the top of page 3.

22          Members of the jury, now that you have heard all of

23  the evidence, it is my duty to instruct you on the law that

24  applies to this case.  Each of you has received a copy of these

25  instructions.  You may take them with you to the jury room to

Jury Instructions

1   consult during your deliberations.

2          If any of these instructions are inconsistent with or

3   different from anything that I said in my preliminary

4   instructions at the beginning of the trial, these written final

5   jury instructions control and are what you must apply.

6          It is your duty to find the facts from all of the

7   evidence in the case.  To those facts, you will apply the law

8   as I give it to you.  You must follow the law as I give it to

9   you whether you agree with it or not.  You must not be

10  influenced by any personal likes or dislikes, opinions,

11  prejudices, or sympathy.  That means that you must decide the

12  case solely on the evidence before you.  You will recall that

13  you took an oath to do so.

14         Please do not read into these instructions or

15  anything that I may say or do or have said or done that I have

16  an opinion regarding the evidence or what your verdict should

17  be.  Your verdict is for you to decide.  In following my

18  instructions, you must follow all of them and not single out

19  some and ignore others.  They are all important.

20         When a party has the burden of proving any claim by a

21  preponderance of the evidence, it means that you must be

22  persuaded by the evidence that the claim is more probably true

23  than not true.  You should base your decision on all of the

24  evidence regardless of which party presented it.

25         The evidence you are to consider in deciding what the

Jury Instructions

1   facts are consists of the sworn testimony of any witness and

2   the exhibits that are received into evidence and any facts to

3   which the lawyers have agreed, which are also called

4   stipulations.

5           In reaching your verdict, you may consider only the

6   testimony and exhibits received into evidence, and, of course,

7   the stipulations.  Certain things are not evidence.  You may

8   not consider them in deciding what the facts are.  I will list

9   them for you:

10          Arguments and statements by lawyers are not evidence.

11  The lawyers are not witnesses.  What they have said in their

12  opening statements or at other times or will soon say in their

13  closing arguments is intended to help you interpret the

14  evidence, but it is not evidence.  If the facts as you remember

15  them differ from the way the lawyers have stated them, your

16  memory of the facts controls.

17          Questions and objections by lawyers are not evidence.

18  Attorneys have a duty to their clients to object when they

19  believe a question is improper under the rules of evidence.

20  You should not be influenced by the objection or by the Court's

21  ruling on it.

22          Testimony that has been excluded or stricken or that

23  you have been instructed to disregard is not evidence and must

24  not be considered.

25          In addition, some evidence may be received only for a

Jury Instructions

1  limited purpose.  If I have instructed you to consider evidence

2  only for a limited purpose, you must do so and you may not

3  consider that evidence for any other purpose.

4         Anything that you may have seen or heard when the

5  Court is not in session is not evidence.  You are to decide the

6  case solely on the evidence received at trial.

7         Evidence may be direct or circumstantial.  Direct

8  evidence is direct proof of a fact, such as testimony by a

9  witness about what that witness personally saw or heard or did.

10  Circumstantial evidence is proof of one or more facts from

11  which you could find another fact.  You should consider both

12  kinds of evidence.  The law makes no distinction between the

13  weight to be given to either direct or circumstantial evidence.

14  It is for you to decide how much weight to give to any

15  evidence.

16         There are rules of evidence that control what can be

17  received in evidence.  When a lawyer asks a question or offers

18  an exhibit into evidence, and the lawyer on the other side

19  thinks that it is not permitted by the rules of evidence, that

20  lawyer may object.  If I overrule the objection, the question

21  may be answered or the exhibit received.  If I sustain the

22  objection, the question cannot be answered, and the exhibit

23  cannot be received.  When I sustain an objection to a question,

24  you must ignore the question and must not guess what the answer

25  might have been.

Jury Instructions

1      Sometimes I may order that be stricken from the

2  record and that you disregard or ignore that evidence.  That

3  means when you are deciding the case, you must not consider the

4  stricken evidence for any purpose.

5      Now, certain summaries have been received in evidence

6  to illustrate information brought out in the trial.  Summaries

7  are only as good as the underlying evidence that supports them.

8  You should, therefore, give them only such weight as you think

9  the underlying evidence deserves.

10      In deciding the facts in this case, you may have to

11  decide which testimony to believe and which testimony not to

12  believe.  You may believe everything a witness says, or part of

13  it, or none of it.

14      Proof of a fact does not necessarily depend on the

15  number of witnesses who testify about it.  In considering the

16  testimony of any witness, you may take into account the

17  opportunity and ability of the witness to see or hear or know

18  the things testified to; the witness's memory; the witness's

19  manner while testifying; the witness's interest in the outcome

20  of the case, if any; the witness's bias or prejudice, if any;

21  whether other evidence contradicted the witness's testimony;

22  the reasonableness of the witness's testimony, in light of all

23  of the evidence; and any other factors that bear on

24  believability.

25      Sometimes a witness may say something that is not

Jury Instructions

1   consistent with something else he or she said.  Sometimes

2   different witnesses will give different versions of what

3   happened.  People often forget things or make mistakes in what

4   they remember.  Also, two people may see the same event, but

5   remember it differently.  You may consider these differences,

6   but do not decide that testimony is untrue just because it

7   differs from other testimony.

8           If you decide, however, that a witness has

9   deliberately testified untruthfully about something important,

10  you may choose not to believe anything that witness said.  On

11  the other hand, if you think the witness testified untruthfully

12  about some things but told the truth about others, you may

13  accept the part that you think is true and ignore the rest.

14          The weight of the evidence as to a fact does not

15  necessarily depend on the number of witnesses who testify.

16  What is important is how believable the witnesses were and how

17  much weight you think their testimony deserves.

18          All parties are equal before the law.  A corporation

19  is entitled to the same fair and conscientious consideration by

20  you as any party.  The parties have agreed to certain facts

21  that were given to you in a document titled "Stipulations."

22  You must treat these facts as having been proved.

23          A deposition is the sworn testimony of a witness

24  taken before trial.  The witness is placed under oath to tell

25  the truth, and lawyers for each party may ask questions.  The

Jury Instructions

1   questions and answers are recorded.

2          Excerpts from the deposition of three witnesses,

3   Justin Call, John Laun, and Scott Gidley, have been read to

4   you.  Insofar as possible, you should consider deposition

5   testimony presented to you in court instead of live testimony

6   in the same way as if the witness had been present to testify.

7   Do not place any significance on the behavior or tone of voice

8   of any person reading the questions or answers.

9          Now, those exhibits received in evidence that are

10  capable of being displayed electronically will be provided to

11  you in that form, and you will be able to review them in the

12  jury room.  A computer and monitor will be available to you in

13  the jury room.  Either the courtroom deputy or a court

14  technician will show you how to operate the computer and other

15  equipment and how to locate and view the exhibits on the

16  computer.

17         You will also be provided with a paper list of all

18  exhibits received in evidence.  You may request a paper copy of

19  any exhibit received in evidence by sending a note through the

20  courtroom deputy.  You know that the courtroom deputy is Mary.

21         If you need additional equipment or supplies, or if

22  you have any questions about how to operate the computer or

23  other equipment, you may send a note to the courtroom deputy,

24  signed either by your foreperson or by one or more members of

25  the jury.  Do not refer to or discuss any exhibit you are

Jury Instructions

1  attempting to view.

2       If a technical problem or question requires hands-on

3  maintenance or instruction, a court technician may enter the

4  jury room with the courtroom deputy present for the sole

5  purpose of assuring that the only matter that is discussed is

6  the technical problem.  When the Court technician or any

7  non-juror is in the jury room, the jury shall not deliberate.

8  No juror may say anything to the court technician or to any

9  non-juror other than to describe the technical problem or to

10 seek information about the operation of the equipment.  Do not

11 discuss any exhibit or any aspect of the case.  The sole

12 purpose of providing a computer in the jury room is to enable

13 the jurors to view the exhibits received in this case.  You may

14 not use the computer for any other purpose.

15      At my direction, technicians have taken steps to

16 ensure that the computer does not permit access to the Internet

17 or to any outside website, database, directory, game, or other

18 material.  Do not attempt to alter the computer to obtain

19 access to such materials.

20      If you discover that the computer provides or allows

21 to such materials, you must inform the Court immediately and

22 refrain from viewing such materials.  Do not remove the

23 computer or any electronic data from the jury room and do not

24 copy any such data.

25      Now, the Telephone Consumer Protection Act, the TCPA,

Jury Instructions

1    found at Title 47 of the United States Code, Section 227, is a

2    federal law that, among other things, makes it unlawful for any

3    person or entity to make a telemarketing call to a mobile or

4    cellular telephone number or to a residential telephone line or

5    residential landline when that call uses an artificial or

6    prerecorded voice to deliver or play a message, unless the

7    person or entity making the call has the prior express written

8    consent of the party being called.

9            The named plaintiff, Ms. Lori Wakefield, asserts one

10   claim for herself -- that's Count 1 -- and a separate claim on

11   behalf of a class of similarly situated individuals.  That's

12   Count 2.

13           Ms. Wakefield alleges that defendant, ViSalus, Inc.,

14   or ViSalus, violated the TCPA by making one or more

15   telemarketing calls to mobile or cellular telephones or

16   residential telephone lines or residential landlines of class

17   members, and that in making these calls, ViSalus used an

18   artificial or prerecorded voice to play messages without having

19   the prior express written consent of the called party.

20           As I mentioned to you at the outset of the trial,

21   this case includes a class action claim.  That's Count 2.

22   A class action is a procedure that allows the filing of one

23   lawsuit by a representative or a small number of

24   representatives on behalf of a group of plaintiffs who have

25   similar claims.  This procedure is intended to avoid

Jury Instructions

1   duplication of effort or expense from multiple lawsuits

2   asserting the same claim by many people in different locations.

3           Ms. Wakefield is the representative of the class in

4   this case.   The plaintiff class is composed of all individuals

5   in the United States who received a telephone call made by or

6   on behalf of ViSalus promoting ViSalus's products or services

7   where such call featured an artificial or prerecorded voice and

8   where neither ViSalus nor its agents had any current record of

9   prior express written consent to place such call at the time

10  such call was made.

11          You should not hold the physical absence of any class

12  member from trial against the plaintiff or any class member,

13  and you should not think that it reflects a lack of concern or

14  interest by any class member in the outcome of this litigation.

15          Also, the fact that this case is proceeding as a

16  class action does not mean that any decision has been made

17  about the merits of the case.   You must make that decision.

18  Also, your verdict here will be binding on all class members.

19          Now, Count 1, that's the individual claim by

20  Ms. Wakefield.   To prove her individual claim, Count 1,

21  Ms. Wakefield must prove each of the following elements by a

22  preponderance of the evidence:

23          No. 1, ViSalus made one or more telemarketing

24  telephone calls to Ms. Wakefield.

25          No. 2, the call or calls used an artificial or

Jury Instructions

1    prerecorded voice.

2           And No. 3, the call or calls was or were made to

3    Ms. Wakefield's residential telephone line or residential

4    landline.

5           Count 2, that's the class count, the class claim.  To

6    prove her class action claim, count 2, Ms. Wakefield must prove

7    each of the following by a preponderance of the evidence:

8           No. 1, ViSalus made one or more telemarketing

9    telephone calls to one or more members of the class other than

10   Ms. Wakefield.

11          No. 2, those calls used an artificial or prerecorded

12   voice.

13          And No. 3, those calls were made to either a class

14   member's -- other than Ms. Wakefield's -- mobile or cellular

15   telephone or to that class member's residential telephone line

16   or residential landline.

17          Let me define "residential telephone line."  The

18   prohibitions of the TCPA apply both to mobile or cellular

19   telephones, regardless of whether they are business telephone

20   numbers, and also to residential telephone lines, also known as

21   residential telephone landlines.

22          The TCPA does not apply to any call made to a

23   business telephone line or business telephone landline.

24          The parties have agreed or stipulated that

25   Ms. Wakefield's telephone number was a landline telephone

Jury Instructions

1  number and not a mobile or cellular telephone.  The parties

2  disagree, however, over whether Ms. Wakefield's landline

3  telephone was a residential or a business landline telephone.

4  You must decide this issue based on the evidence presented at

5  trial.

6          In deciding whether a landline telephone is

7  residential or business, you must give the word "residential"

8  its usual and ordinary meaning.  You may consider whether

9  Ms. Wakefield's telephone number was registered as a

10  residential number or as a business number.  You may also

11  consider whether that number was publicized or held out to the

12  general public as a business telephone number even if it was

13  registered as a residential number.

14          The fact that a landline telephone is used for some

15  business calls does not necessarily make it a business

16  telephone.  The key point is that a residential landline

17  telephone is used primarily as a residential telephone.

18          Let me now define for you the term "telemarketing

19  call."  The term "telemarketing call" means the making or

20  initiation of a telephone call or message for the purpose of

21  encouraging the purchase of or investment in property, goods,

22  or services to any person.  In determining whether a call is a

23  telemarketing call, you should consider whether the purpose of

24  the call was to encourage the purchase of or investment in

25  property, goods, or services.

Jury Instructions

1    Let me now define for you "used an artificial or
2    prerecorded voice."  To be liable under the "artificial or
3    prerecorded voice" prohibition of the TCPA, a person must prove
4    that a defendant made a call and either used an artificial or
5    prerecorded voice during that call or used an artificial or
6    prerecorded voice to play a message during that call.

7        A call uses an artificial or prerecorded voice if
8    during a call the prerecorded or artificial voice actually
9    begins to "speak" or begins to play a message.  If a defendant
10   made a call intending to use an artificial or prerecorded
11   voice, but that voice never actually spoke or the message never
12   actually played, that is not a violation of the TCPA.

13       Prior express written consent is not an issue.  The
14   TCPA prohibits making telephone calls to residential telephone
15   lines, residential landlines, or mobile or cellular telephones
16   using an artificial or prerecorded voice to deliver a message
17   without the prior express written consent of the party being
18   called.  "Prior express written consent" means a signed written
19   agreement that clearly authorizes the caller to place
20   telemarketing calls using an artificial or prerecorded voice.
21   ViSalus does not contend that it had the prior express written
22   consent to call Ms. Wakefield or any other class member.

23       If you find that ViSalus violated the TCPA by making
24   one or more telemarketing calls that used an artificial or
25   prerecorded voice to one or more residential lines or mobile or

Jury Instructions

1    cellular telephones for any class member, including

2    Ms. Wakefield, you will be asked to determine the number of

3    times that ViSalus violated the TCPA.  Each telephone call made

4    in violation of the TCPA is a separate violation of the TCPA.

5            There will be places on the verdict form for you to

6    indicate how many times, if any, ViSalus violated the TCPA in

7    Count 1 -- remember, that's Ms. Wakefield's individual claim --

8    and in Count 2, which is the class claim for the class members

9    other than Ms. Wakefield.  You must decide this issue based on

10   the evidence presented at trial and not guess or speculate.

11   For both Count 1 and Count 2, Ms. Wakefield has the burden of

12   proving the number of TCPA violations, if any, by a

13   preponderance of the evidence.

14           You will see at the top of page 16 it says "Closing

15   Arguments."  I'm going to suspend or stop my reading of the

16   instructions now.  We will take a recess.  When we come back,

17   we will hear closing arguments.  The way it works, we will

18   first hear from the plaintiff.  Then we will hear the closing

19   argument from the defendant.  Because the plaintiff has the

20   burden of proof by a preponderance of the evidence, the

21   plaintiff gets to speak first and last.  So that would be

22   plaintiff's rebuttal closing argument.  Then I'll pick up on

23   page 16 and read our last few remaining jury instructions to

24   you.

25           At that point the case will be in your hands.  It is

 1   not yet in your hands.  It has not yet been submitted to you,

 2   so please do not discuss the case with anyone, including among

 3   yourselves.  Don't do any research.

 4           We will take a 20 minute mid-morning recess.

 5           Mary, did they give me a copy of the stipulations?

 6           MR. DOVEL:  Here it is, Your Honor.

 7           (Open court; jury not present:)

 8           THE COURT:  We are here without the jury.  The case

 9   has not yet been submitted to the jury.

10           Does the defendant have any Rule 50 motions they

11   wants to put on the record at the close of all evidence?

12           MR. O'NEAL:  Yes, Judge.  We would like to move for

13   judgment as a matter of law under Rule 50 for the following

14   reasons.  The plaintiff failed to submit sufficient evidence

15   and otherwise establish that each call was made to a mobile or

16   residential landline for the class members.

17           I further move on the grounds that plaintiff failed

18   to submit sufficient evidence or otherwise prove that each call

19   was made to a cell phone or the number of those calls.

20           Further, plaintiff failed to prove sufficient

21   evidence that calls were made to a residential landline, which

22   was not a business line, or otherwise prove the number of those

23   calls.

24           The defendant further moves for judgment as a matter

25   of law that plaintiff failed or establish by sufficient

1    evidence that the landlines that were called were residential

2    in nature and were not business landlines, and they also failed

3    to prove which amongst the class members were residential

4    landlines.

5              Plaintiff failed to prove and otherwise establish

6    that a recorded message or an artificial voice was played to

7    the recovering class members on each of the alleged calls, and

8    if they were, how many times and to whom amongst the class.

9              THE COURT REPORTER:  Please slow down and start over

10    with the last section.

11              MR. O'NEAL:  Plaintiff failed to establish that a

12    recorded message or an artificial voice was played to the

13    recovering class members; and if said artificial voices or

14    recorded messages were played, to whom they were played, and

15    how many times.

16              Plaintiff did not establish that the message was

17    delivered or heard for any of the calls; and if said messages

18    were heard, who heard them, and at what time.

19              Plaintiff failed to establish that each call to the

20    recovering class member constituted telemarketing.  Plaintiff

21    also failed to prove that telemarketing calls were used.  And

22    plaintiff failed to demonstrate which calls, amongst the ones

23    they allege constitute telemarketing calls and which, among of

24    the class members, received them.

25              Plaintiff failed to establish the number of calls to

1  class members.

2          Plaintiff failed to establish the number of

3  residential lines which were called and the number of mobile

4  lines which were called.

5          Recognizing that this is subject to a later

6  determination, but at this juncture plaintiff has failed to

7  present sufficient evidence that ViSalus acted willfully or

8  otherwise knowingly in violation of the TCPA.

9          Ditto.  Plaintiff failed to present sufficient

10  evidence that ViSalus acted with a reckless disregard of the

11  requirements of the TCPA.

12          For reasons which are as part of a motion, which is

13  being filed which we will incorporate by reference, the

14  defendant asserts that the class is invalid and should be

15  de-certified.  We further assert that Ms. Wakefield is not an

16  adequate representative for the class, including but not

17  limited to, that she did not receive any calls on a cellular

18  telephone.  She only received calls on a residential line.

19          Last, plaintiff failed to put forth sufficient

20  evidence that each call that made and received was a

21  telemarketing call; that a message was played or an artificial

22  voice was played; and that the recipient's phone was either a

23  mobile or residential.

24          THE COURT:  Thank you, Mr. O'Neal.  I do not need to

25  hear a response from plaintiff at this time.

 1              I don't think it matters whether I take it under

 2    advisement or deny it.  Just in case it does, I think the

 3    safest thing to do is simply for me to say that the Rule 50

 4    motions are denied at this stage.  The motion to de-certify is

 5    denied.  But I give defendant leave to renew those motions, if

 6    and when appropriate.  At that point my plan would be to give

 7    both sides an opportunity to fully brief whatever motions are

 8    briefed -- are asserted -- and probably then have oral argument

 9    on that as well.  We will take that up at a later time.

10              For right now all of the motions articulated by

11    Mr. O'Neal are denied.

12              All right.  15 to 20 minutes.  Maybe we will start up

13    at eleven o'clock on the button.

14              MR. DOVEL:  We have some JMOLs as well, Your Honor.

15              THE COURT:  I'm sorry.  You are going to get the same

16    ruling, but go ahead.

17              MR. DOVEL:  Your Honor, we move for judgment as a

18    matter of law on Count 1, Ms. Wakefield's TCPA claim.  The

19    basis is that no reasonable juror could conclude, and the

20    evidence is undisputed that the following elements were proven

21    by a preponderance of the evidence:  That ViSalus made

22    telemarketing telephone calls to Ms. Wakefield; that the calls

23    used an artificial or prerecorded voice; and that the calls

24    were made to Ms. Wakefield's residential telephone line.

25              In addition, we move for judgment as a matter of law

1  that the number of calls that were violative of the TCPA to

2  Ms. Wakefield was five.

3         We also move for judgment as a matter of law because

4  no juror could conclude otherwise, and the evidence is

5  undisputed that the class claim was proven.  In particular, the

6  undisputed evidence established that ViSalus made multiple

7  telemarketing telephone calls to members of the class other

8  than Ms. Wakefield; that those calls used an artificial or

9  prerecorded voice; and that the calls were made either to a

10  class member's mobile telephone or residential telephone line.

11         In addition, we move for judgment as a matter of law

12  that on the class claim that at least one call was made to a

13  mobile telephone line and that at least one call was made to a

14  residential line.

15         Finally, we move for judgment as a matter of law that

16  the undisputed evidence established that not less than

17  1.9 million violative calls were made to class members other

18  than Ms. Wakefield, and that of those, not less than 50 percent

19  of those -- that is, not less than 950,000 were to mobile

20  telephones; that not less than 100,000 were to residential

21  landlines.

22         That's our basis for our JMOL, Your Honor.

23         THE COURT:  Thank you very much, Mr. Dovel.  I don't

24  need to hear from defendant, for the same reasons I

25  articulated.  I am denying the motion at this time, but, of

1    course, you have leave to renew.

2              All right.  Anything else?

3              MR. O'NEAL:  Just quick, Judge.  I didn't use the

4    proper nomenclature with respect to my motion.  The motion was

5    based that there was insufficient evidence and legal standards

6    such that a reasonable juror could find in favor of the

7    plaintiff on the claims.

8              THE COURT:  All right.  Thank you.  It is still

9    denied.  Thank you.

10             We will start up when that clock says eleven o'clock.

11   If you want the podium, put it wherever you want.  If you don't

12   want the podium, tell Mary, and she will get it out of your

13   way.

14             (Recess.)

15             (Open court; jury present:)

16             THE COURT:  Welcome back, members of the jury.  At

17   this time I will invite counsel for the plaintiff to deliver

18   closing argument.

19             MR. O'NEAL:  Could we quickly approach?

20             THE COURT:  Yes, you may.

21             (A discussion was held off the record at sidebar.)

22             (Open court; proceedings resumed:)

23             THE COURT:  Let me start this again.  At this time I

24   invite counsel for the plaintiff to deliver plaintiff's closing

25   argument.

Closing Argument

1          MR. FRANZINI:   Thank you, Your Honor.

2          Good morning.   At the beginning of the case we told

3   you that the POM machine was a machine that was designed and

4   used to deliver prerecorded telemarketing messages to millions

5   and millions of people.   ViSalus told you that the POM machine

6   was a machine that was designed to connect live agents with

7   live people.   Your job, as the jury, is to decide based on the

8   evidence which one of those things is more probably true than

9   not true.

10          Let's look at the evidence.   First, we presented

11  class evidence; evidence that ViSalus delivered prerecorded

12  messages -- telemarketing messages to every member of the

13  class -- to the members of the class.

14          Now, to prove the class claim, you are going to get

15  some jury instructions, and they are going to tell you that we

16  have to prove by a preponderance of the evidence three things.

17  We have to prove that three things are more likely true than

18  not true.

19          First, we have to prove that ViSalus made one or more

20  telemarketing telephone calls to one or more members of the

21  class other than Ms. Wakefield.

22          Two, those calls used an artificial or prerecorded

23  voice.

24          And three, those calls were made either to a class

25  member's -- other than Ms. Wakefield's -- mobile or cellular

Closing Argument

1   telephone, or to the class member's residential telephone line

2   or residential landline.

3          Now, we have to show that the calls were

4   telemarketing calls and that they used recorded messages.  So

5   I'm going to address those two requirements together.  I'm

6   going to show you that the evidence showed that the calls

7   ViSalus made did both of these things.  They were telemarketing

8   calls that used recording messages.

9          In opening statement ViSalus told you that this

10  didn't violate the statute in the way that we say they did

11  because it didn't use prerecorded messages on telemarketing

12  calls.

13          MR. O'NEAL:  Objection, Your Honor.  He's quoting the

14  transcript.

15          THE COURT:  One moment.  It says that in opening

16  statement ViSalus told you such and such.  Isn't that what it

17  said?

18          MR. O'NEAL:  I just saw quotes.

19          THE COURT:  Right.  This is his representation that

20  in opening statement this is what ViSalus said.

21          MR. O'NEAL:  Withdrawn.

22          MR. FRANZINI:  You heard opening statements, and you

23  heard ViSalus say, "We don't violate the statute because our

24  calls didn't use prerecorded telemarketing messages," but then

25  you heard the evidence.  You heard -- let me take a step back.

Closing Argument

1    You'll get some jury instructions and jury instructions --

2             THE COURT:  They already have the jury instructions.

3             MR. FRANZINI:  You already have the jury

4    instructions.  Thank you, Your Honor.

5             Those jury instructions will tell you what it means

6    for a call to be a telemarketing call.  If it is a telephone

7    call -- let me start over.  The term "telemarketing call" means

8    making or initiating of a telephone call or message for the

9    purpose of encouraging the purchase of or investment in

10   property, goods, or services to any person.  Then it says, "In

11   determining whether a call is a telemarketing call, you should

12   consider whether the purpose of the call was to encourage the

13   purchase of or investment in property, goods, or services."

14            You got to hear the messages that ViSalus delivered

15   on its calls.  The purpose of those messages was to encourage

16   the purchase of goods -- the purchase of ViSalus promoter kits

17   and customer kits, things like that.  I have excerpted some of

18   the things that ViSalus said on these recorded messages so you

19   can hear it for yourself.

20            (The following audio was played in open court:)

21            "Right now we are offering to you half price on any

22   kit.  We also want to let you know about our brand-new energy

23   drink called Neon that we just launched, guys.  It is energy

24   that lasts with no crash.  It has natural sugars in it.  It has

25   got 24 percent fruit juice.  Propriety blended energy.

Closing Argument

1  Antioxidant support.  Over 100 percent of six daily recommended

2  B vitamins.  100 milligrams of caffeine from green tea extract.

3  It supports healthy metabolism.  There is no taurine in it.  It

4  is low sodium.  It is dairy-free.  It is gluten-free.  And it

5  is only 100 calories.  Oh, by the way, it glows under a black

6  light.  It is super cool.  You have got to taste it.  It is

7  absolutely amazing."

8          If that is not a telemarketing message, I don't know

9  what is.  If you want to encourage the purchase of a good or

10  service, what would you do?  You would offer a discount on that

11  good or service.  You would talk about how great the product is

12  that you're selling.  That's how you encourage people to buy

13  your product.

14          Let's listen to some more of the messages ViSalus

15  used.

16          "We are just reaching out to offer you 50 percent off

17  as we go into the spring season here."

18          Again, offering 50 percent off of a product.  The

19  purpose of making that offer is to encourage the listener to

20  buy that product.

21          "With 50 percent off your first kit.  This offer is

22  only valid until 6:00 p.m Eastern Standard Time April 2nd, so

23  call me.

24          "We were just reaching out to offer 50 percent off as

25  we go into our spring season here.

Closing Argument

1            "With 50 percent off your first kit.  This offer is

2    only valid until 6:00 p.m. Eastern Standard Time April 2nd.

3            "Your account has been selected for 50 percent off

4    your next Challenge Kit.  To take advantage of this fantastic

5    offer, please call (248)764-7514.

6            "I wanted to make sure you had a chance to try our

7    new energy drink NEON.

8            "We would like to introduce our brand-new energy

9    drink NEON.

10           "Introduce you to our newest product NEON.

11           "Offer you a change of getting back on the challenge

12   with us for 50 percent off with any of our top six kits.  Also,

13   you may have the opportunity to add some free products.

14           "Right now you can actually get one of your kits half

15   price, if you come back right now; or if you want to upgrade

16   and become a promoter, you can get $100 off your promoter kit."

17           All of these messages offered -- these messages

18   offered discounts.  They talked about new products.  They

19   talked about how great these new products were.  The purpose of

20   these calls is to sell ViSalus products, sell their promoter

21   kits, their new NEON energy drink, and other ViSalus products.

22           We have those messages, and we are required to show

23   that those messages were used on calls that ViSalus made.  We

24   had Mr. Gidley -- a sworn statement from Mr. Gidley identifying

25   those calls that used recorded marketing calls that used

Closing Argument

1   recorded messages.

2           In this case you heard from Mr. Davis.  There were

3   over 2,000 contact -- almost 2,000 contact lists.  Contact

4   lists are the lists that ViSalus used with the POM machine to

5   call names and numbers.  You remember you had the big contact

6   list with over 60,000 names in it.  That's one example.  There

7   were almost 2,000 of them.

8           Mr. Gidley was tasked with going through and figuring

9   out which of these 2,000 contact lists are relevant to this

10  case and which of these 2,000 contact lists are not.  He

11  submitted a sworn statement that identified 400 of these

12  contact lists.  You will have that with you in the jury room.

13  It is Exhibit 37.  At the end of it there is a list of the 406

14  contact lists that Mr. Gidley identified as being relevant to

15  this case.

16          Now, Mr. Gidley, he said in his declaration that the

17  exhibits -- the contact lists listed on his Exhibit A were the

18  ones that were used for marketing campaigns that ViSalus ran.

19  He himself identified them as marketing campaigns.

20          We also went through them and looked at how many of

21  these marketing campaigns were WinBack campaigns.  You heard

22  from Mr. Davis 75 percent of the contact lists on Mr. Gidley's

23  sworn statement in Exhibit A were for WinBack campaigns.

24          A WinBack campaign is a campaign to win back

25  promoters; to get promoters and customers to come back to

Closing Argument

1    ViSalus.   What does it mean for somebody to come back to

2    ViSalus?   It means that they've purchased ViSalus products.

3    They get back on the ViSalus challenge and buy ViSalus

4    products.

5           So we know that the WinBacks -- the purpose of all

6    the WinBacks was to sell ViSalus products.   Even all the other

7    ones, for example, the Fuel Kit upgrade campaigns, the upsell

8    campaigns, the purpose of those campaigns was also to sell more

9    ViSalus products.   Calling somebody who is already a promoter

10   and telling them, "Hey, we have got this new energy drink

11   NEON," the purpose of telling them that and telling them how

12   great it is to sell ViSalus's products.   In his declaration

13   Mr. Gidley said that each one of those 406 spreadsheets -- 406

14   contact lists was used -- was used to call people using POM --

15   using the POM machine.

16          We have a stipulation in front of you.   Stipulation

17   No. 17:  "ViSalus admitted and agreed that, with POM, ViSalus

18   used two campaign strategies."  The first campaign strategy is

19   Press 1.   That's a campaign strategy where an artificial or

20   prerecorded voice instructed customers to press 1 to be

21   connected to a live person.

22          So the first POM campaign strategy used either an

23   artificial voice, a robot voice at the beginning of the call,

24   or at the end of the call, or a recording like the one you

25   heard.   That artificial voice or recorded voice would say to

Closing Argument

1   press 1 if you actually want to talk to a live person.

2          The second campaign strategy ViSalus used with the

3   POM machine was Voice Casting.  It was called Voice Casting

4   calls.  The stipulation says that where an audio -- "A

5   Voice Casting call is where an audio clip played a prerecorded

6   call-back message."  So it is a recorded message that has a

7   call-back number.

8          In the second campaign strategy, ViSalus, with the

9   POM machine, used a recorded voice -- a prerecorded call-back

10  message.  The messages that you heard, they are all either

11  Voice Casting messages or Press 1 messages.  I'm not going to

12  play them all for you, but I'll play a few more so you can

13  listen for yourself.  Each one of these messages is either

14  going to have a call-back message, a message that says to call

15  a certain number back if you want to talk to ViSalus, if you

16  want to learn more about this wonderful opportunity, or it will

17  say, "Press 1 to be connected to a live agent now."

18          THE COURT:  Mr. Franzini, when you play them, before

19  you play them, will you identify what exhibit they are?

20          MR. FRANZINI:  Yes, Your Honor.

21          The first one I'm going to play is Exhibit 43-7.  It

22  is entitled "EOM Blast-JEwing."

23          (Exhibit 43-7 was played in open court.)

24          MR. FRANZINI:  So that was a Voice Casting message on

25  the POM machine that was used.  It had a prerecorded message

Closing Argument

1   that had a call-back number at the end.

2           (Exhibit 43-32 was played in open court.)

3           THE COURT:  Mr. Franzini, I mean, like before each

4   time you play it, will you please identify the exhibit number.

5           MR. FRANZINI:  Yes.  I apologize.  That was Exhibit

6   43-32.

7           The next exhibit I'm going to play is Exhibit 43-14.

8           (Exhibit 43-14 was played in open court.)

9           MR. FRANZINI:  Again, that's another Voice Casting

10  message.  It had a call-back number at the end.

11          Your Honor, I'm now going to play Exhibit 43-8.

12          MR. O'NEAL:  Objection, Your Honor.

13          THE COURT:  Basis?

14          MR. O'NEAL:  It does not appear on my list.

15          THE COURT:  One moment.  It has been received.

16  Overruled.

17          MR. FRANZINI:  Thank you, Your Honor.

18          (Exhibit 43-8 was played in open court.)

19          MR. FRANZINI:  It is another Voice Casting message, a

20  recorded message with a call-back number.

21          This is Exhibit 43-25 that I'm going to play next,

22  Your Honor.

23          (Exhibit 43-25 was played in open court.)

24          MR. FRANZINI:  Again, that was a Voice Casting

25  message; a prerecorded message with a number at the end.

Closing Argument

1    The next one I'm going to play, Your Honor, is

2    Exhibit 43-15.

3         (Exhibit 43-15 was played in open court.)

4         MR. FRANZINI:  You heard "Press 1 now."  That was an

5    example of a Press 1 call.  Again, this was a recording of the

6    founder of ViSalus offering a free ticket to come to an event

7    to learn more about ViSalus products.  It was specifically to

8    inactive promoters, and the purpose of giving them this free

9    ticket, telling them about all these new products, is to get

10   them to come back to ViSalus, buy ViSalus products every month

11   as promoters.  I'm not going to play any more, but we have more

12   recordings in Exhibit 43 that you will have if you want.

13        All of these recordings are recordings that ViSalus

14   had and ViSalus gave to us when we asked them to give us the

15   recordings they used on telephone calls to class members.  They

16   come straight from ViSalus's own records.  ViSalus's witness,

17   Mr. Gidley, he actually identified the recording that was used

18   to call my client, Ms. Wakefield, in April of 2015.

19        Here it is.  This is Exhibit 43-24.

20        (Exhibit 43-24 was played in open court.)

21        MR. FRANZINI:  You heard this recording during the

22   reading of Mr. Gidley's deposition testimony, and you heard him

23   testify that this was the message that Ms. Wakefield --

24        MR. O'NEAL:  Objection, Your Honor.

25        THE COURT:  Let's not make a big deal over this.

Closing Argument

1            MR. O'NEAL:  Understood.

2            THE COURT:  You're just reporting what they heard.

3            MR. O'NEAL:  That's right, Your Honor.

4            THE COURT:  And I'll also remind the jury that if

5    your recollection differs from the way that either lawyer

6    during closing argument reminds you what the evidence was, your

7    recollection controls.

8            MR. FRANZINI:  You heard Mr. Gidley testify that this

9    message was sent to Ms. Wakefield.

10           "QUESTION:  Who was that message sent to?

11           "ANSWER:  Presumably it would have been sent to

12   people on a call list that was created.  It would only be

13   people in her organization, so people in her down-line."

14           There, "her" refers to Rachel Jackson, the promoter

15   whose voice you just heard.

16           "QUESTION:  How would that message have been sent

17   out?

18           "ANSWER:  It would have been uploaded into the

19   Progressive Outreach Manager, the POM machine, and then sent

20   via telephone."

21           Then he was asked:

22           "QUESTION:  And then you'd assume that anyone who was

23   on that list would have received that voice mail?

24           "ANSWER:  Maybe.  It would be a fair assumption.

25           "QUESTION:  Is this a message that was sent to

Closing Argument

1    plaintiff?

2            "ANSWER:  I believe it would have been."

3            Mr. Gidley looked into it and identified this message

4    as the one that was sent to my client, Ms. Wakefield.  Again,

5    this was a telemarketing message.  It offered 50 percent off

6    promoter kits.

7            You heard in opening statement, "We didn't use

8    Press 1 for WinBack campaign; for telemarketing campaigns."

9    Exhibit 44 shows that's not true, and you'll have Exhibit 44 in

10   the jury room with you.  Exhibit 44 talks about Press 1

11   campaigns.  Then it says that a Press 1 campaign is when a

12   customer/promoter presses 1 to connect to an agent; this is the

13   dialogue that the agent should use as a general guideline.

14           Now, you saw the stipulation.  Stipulation 17 said

15   that Press 1 used an artificial or recorded message to say

16   "press 1 to connect to a live agent."  Exhibit 44 shows that

17   Press 1 campaign type was used for WinBack campaigns.  This is

18   an internal ViSalus document that tells the people -- the live

19   agents what to do if they actually get a live person on the

20   phone after that person presses 1.  To get to that live agent,

21   the person first has to listen to a recorded message and

22   press 1.

23           In opening statement you heard a lot about this

24   live connect strategy.  ViSalus's lawyer said, "We use the POM

25   machine as part of this live connect strategy to connect real

Closing Argument

1  live people with real live people.

2      Now, if that were true, there would be evidence

3  showing that the POM machine was used with this live connect

4  strategy to connect real people with real people.

5      ViSalus is not going to be able to show you any

6  evidence that the POM machine was used to connect live people

7  to live people.  You didn't hear any of the ViSalus people --

8  ViSalus employees who you heard from during deposition, not one

9  of them said, "I was there operating the POM machine, and I

10 used it with this supposed live connect strategy to connect

11 live people with live people."

12     ViSalus could have brought a witness in court to

13 stand up there and tell you, "I was there.  I was part of the

14 outreach support team that dealt with this, and I used the POM

15 machine to connect a live person/to do a campaign connected

16 live people to live people."  No one took the stand from

17 ViSalus and said that to you under oath.  There is no evidence.

18     There is also no evidence in the documents that this

19 live connect strategy was used to connect live people with live

20 people without any prerecorded voice, without first having to

21 listen to a recording and press 1.

22     In fact, Mr. Gidley, in his sworn statement that you

23 have, Exhibit 37, he says he went through the contact sheets.

24 He went through all the contact sheets -- contact lists -- and

25 identified the ones that were relevant to this case.  If a

Closing Argument

1   contact sheet was used for this live agent strategy, Mr. Gidley
2   would have had no reason to include it as a spreadsheet that
3   was relevant to this case.
4        This case is about recorded calls.  Mr. Gidley
5   submitted his declaration to help us identify the people who
6   got the calls at issue in this case; the people who meet the
7   class definition who got recorded messages.
8        If a contact list was found that was used to just do
9   a live agent strategy, it wouldn't have been included in
10  Mr. Gidley's list.  Mr. Gidley looked at all these contact
11  sheets, and he never said in his declaration, "The following
12  contact lists, for those no recorded message could have played,
13  because it was used for a live connect only strategy."
14       Instead he went through all of them and said, "For
15  certain calls no recorded message could have played."  What he
16  did is he identified the outcome codes for the calls where no
17  prerecorded message could have played; things like "call busy."
18  If the POM machine was intending to make a prerecorded message
19  call, but the line was busy, then the call didn't go through.
20  The recorded voice never began to play.  Mr. Gidley identified
21  all of those.  But he never said, "Hey, these contact lists,
22  some of these were used for the live connect/no prerecorded
23  voice strategy."
24       There is also a good reason why ViSalus was using
25  recorded messages and not live connect calls with just live

Closing Argument

1   people/no recording.  What I'm showing you on the screen is

2   Exhibit 31.  It is called the POM campaign tracker.  It is

3   mentioned in Mr. Gidley's declaration.  What this is is a

4   listing of all the campaigns that ViSalus was running with the

5   POM machine.  There are actually two, but this is one of the

6   two spreadsheets that identifies the calling campaigns that

7   ViSalus was running with the POM machine.

8          What it has, it identifies the name of the campaign,

9   the contact list used in the campaign, then the start date, and

10  the end date.

11         If you look at Exhibit 31, in April of 2015, when

12  Ms. Wakefield received a call from ViSalus, you'll find the

13  Jason O'Toole WinBack contact list.  That is the contact

14  list -- that big book you had, Exhibit 38-115, that is the

15  contact list, the Jason O'Toole WinBack contact list.  It has

16  over 60,000 names, which means if that campaign -- when that

17  contact list was called, over 60,000 people were called.

18         The POM campaign tracker shows that that campaign was

19  started on April 1st, 2015, and it ended nine days later, on

20  April 10th, 2015.  ViSalus called those 60,000 people in just

21  nine days.

22         If you look at all -- that was just one.  But there

23  are 406 of these contact lists.  If you add them all up, and if

24  you divide it by the number of months that ViSalus was doing

25  this, 16 months from October of 2014 until the very beginning

Closing Argument

1  of January 2016, they made 8,591 calls every single day,

2  including Saturdays, Sundays, holidays, weekends.  8,591 calls

3  every single day.

4          Guess how many people were making all these calls,

5  who were responsible for handling all of these calls?  We have

6  sworn testimony from Mr. Gidley about that.  But you heard he

7  said he was asked:

8          "Who placed outgoing calls?

9          "ANSWER:  That would be the outreach team -- the

10  outbound team.  I believe it was called outreach support.

11          "How many individuals worked in outreach support in

12  spring of 2015?

13          "Less than ten."

14          These ten people could not make over 6,000 live

15  connect -- over 8,000 live connect calls every single day seven

16  days a week for 16 months.  ViSalus needed the POM machine,

17  with recorded messages, to be able to call all the people it

18  wanted to call for its marketing campaigns.  It would be

19  impossible for these people to do more -- to handle anything

20  close to 8,591 calls every single day.

21          Mr. Gidley explained this.  You heard testimony from

22  him at trial.  You heard him explain that it was much more

23  efficient to use the POM machine when he wanted to contact

24  people about something that -- when you wanted to deliver the

25  same message to lots of people.

Closing Argument

1          Here is what he said:

2          "QUESTION:  Okay.  But I was looking more at the

3    reasoning there, which is that you would want to use POM when

4    you have a large number of people you wanted to contact, right?

5          "ANSWER:  Because it's more efficient.

6          "QUESTION:  Especially when you want to deliver the

7    same message to them, right?

8          "ANSWER:  Correct."

9          If you want to contact 60,000 people in nine days,

10   and you want to tell them all, "Hey, there's 50 percent off

11   this new product," the same exact message, there is a good

12   reason to use the POM machine and recorded messages and not a

13   live-connect-only strategy with no recorded messages.

14          ViSalus's lawyer in opening statement told you

15   "WinBacks, they are not telemarketing calls," he said.

16   "WinBack is asking for promoters to come back.  It is not a

17   sale of a product or good or investment.  It is not what it is.

18   A WinBack is basically, 'Hey, we want to bring you back on the

19   team.'  That is not telemarketing."

20          As jurors, it is your job to decide whether that is

21   true or not.  I don't want to belabor the point, but I'm going

22   to play you one or two more messages to remind you of the kind

23   of messages that ViSalus was playing.

24          I am going to play Exhibit 43-34, Your Honor.

25          (Exhibit 43-34 was played in open court.)

Closing Argument

1          The name of this file is "WinBack Voice Cast with

2     NEON."  This is a recording used for a WinBack.  ViSalus has to

3     take the position that this is not a telemarketing message

4     because it knows that it made millions of these calls with

5     these kinds of messages that are recorded.

6          There are a few I'm going to skip over.

7          I think I heard ViSalus's lawyer say that the POM

8     machine was designed to hang up on answering machines.  The

9     evidence shows that that's not true.  First of all, you heard

10    the recordings.  I'm not going to play them again.  Those

11    messages are designed to be left on answering machines.  They

12    have call-back numbers.  What they want people to do is get one

13    of those messages on their answering machine, and if they are

14    interested in calling back, call back.

15         It wouldn't make any sense -- you've got the POM

16    machine going.  We have a stipulation that says, with the POM

17    machine, you can deliver these prerecorded messages.  You get

18    to the answering machine.  What you're trying to do is reach

19    60,000 people over the course of a few days with the same

20    message.  It makes no sense to hang up when you get the

21    answering machine.

22         There is also evidence that people were called using

23    the POM machine and had messages left on the recording.  They

24    had recordings left on their answering machines.  You'll have

25    Exhibit 47.  This is an email exchange from somebody who

Closing Argument

1  received calls from ViSalus.  She sent an email first to the

2  Better Business Bureau and then ViSalus about what happened to

3  her and ViSalus wrote -- there was internal ViSalus

4  communications about this message.

5            ViSalus didn't say, "Hey, what's going on?  Somebody

6  is getting messages on their answering machine?  Our system is

7  not set up that way."  That's not what they said.  Instead they

8  said -- they said, "We just confirmed that two messages were

9  left on her answering machine as part of a WinBack campaign."

10  Hang up if you have an answering machine.  It doesn't make

11  sense for ViSalus.  The messages themselves showed that's not

12  true, and there is evidence in the record that you have showing

13  that that's not true.

14            The evidence in this case shows that the first two

15  requirements are met.  They were telemarketing messages, and

16  they used recorded voices.

17            The third thing we have to show is more likely true

18  than not true that the calls were made either to a class member

19  other than Ms. Wakefield's mobile or cellular telephone or that

20  they were made to the class member's residential telephone

21  line, residential landline.

22            I'm showing you an example of a ViSalus promoter

23  application.  This is Plaintiff's Exhibit 8.  This is what --

24  when ViSalus collected all of these numbers that it then called

25  using the POM machine, this is what people filled out.  ViSalus

Closing Argument

1    asked for a home phone number or a mobile phone number.

2           Exhibit 8 is just one example, but you will have all

3    of the promoter applications with you in the jury room if you

4    want to take a look at them.  A couple of examples are

5    Exhibits 11, 19, 20, and 22.  They all ask for the same thing:

6    Home/mobile.  And ViSalus stipulated in the stipulations that

7    you have the promoter applications are identical, and the

8    process for enrollment has been the same since 2011.  So every

9    single number ViSalus called was put in either a home or a

10   mobile number on an application.

11          There are also customers.  I just want to close that

12   loop.  You heard from Mr. Gidley.  He testified that the

13   customer applications ask for the same exact thing.

14          He was asked:

15          "QUESTION:  The information that the customer submits

16   would be the same; the same as for the promoters?

17          "ANSWER:  Essentially.  Well, we don't require their

18   Social Security number."

19          He was asked specifically:

20          "QUESTION:  As it relates to providing a telephone

21   number, the language would be the same?

22          "ANSWER:  Essentially, yes."

23          So promoters, customers, they all filled out the same

24   form asking for home or mobile numbers.

25          ViSalus lumped all -- once it checked these numbers,

Closing Argument

 1   it didn't put them in separate databases.  It put them all

 2   together.  So we can't count precisely how many of them are

 3   mobile, how many of them were home, which place in the form

 4   they were filled out.  But you can use your common sense and

 5   figure out that at least half of these telephone numbers are

 6   mobile telephone numbers.  We are talking about 2013, 2014,

 7   2015.  By then, most people are using their mobile number, not

 8   their home number.

 9          So we don't have a precise estimate, but you can use

10   your common sense and conclude is it more likely true than not

11   true that at least half of these numbers were mobile telephone

12   numbers?  Based on the evidence, the promoter applications, and

13   your common sense, you can conclude more likely than not at

14   least half were mobile.

15          In addition to this -- so for mobile numbers, it

16   doesn't matter if they are business numbers or not.  The TCPA

17   prohibits making these automatic -- these calls with recorded

18   voices to mobile numbers regardless of whether they are

19   business telephone numbers or not.  For residential landlines,

20   it's only a violation of the TCPA if the landline is

21   residential as opposed to business.

22          So you heard from Mr. Davis.  He went through and

23   identified all of the people who wrote in that they had a

24   business.  At the top of the screen here, on Plaintiff's

25   Exhibit 8, you'll see that ViSalus specifically asked its

Closing Argument

1   customers, the people signing up, "Do you have a business?"  If

2   so, then you are required to tell us a company name and attach

3   a company enrollment form.  So ViSalus's data showed that

4   anybody who put a business name in, when they signed up.

5           So to make sure that we aren't counting any of the

6   businesses, Mr. Davis went through, and he pulled out all of

7   the phone numbers that were made to accounts that were

8   associated with a business.

9           For example, in the big book of 60,000 contacts, the

10  first one on the list was "90 equals zero, Inc.," we pulled

11  that one out.  We pulled out things that were limited liability

12  companies, like Healthy Humans.  He pulled out corporations.

13  Mr. Davis went through the list and pulled out 6,724 numbers

14  that were culled; that were associated in some way with a

15  business that may not have been residential.

16          What's left is mobile numbers and numbers --

17  residential numbers.  You'll get the jury instructions, or you

18  have the jury instructions.  The jury instructions tell you how

19  to figure out if a number is a residential number or a business

20  number.  It says the fact that a landline telephone is used for

21  some business calls does not necessarily make it a business

22  telephone.  The key point is that a residential landline

23  telephone is used primarily as a residential telephone.

24          So we pulled out all the businesses.  Is it more

25  likely true than not true that a landline that is not

Closing Argument

1    associated with a business, that's associated with an

2    individual's home, is used primarily as a residential line?

3    Your question, as the jury, is to decide is it more likely true

4    than not true that the numbers that are left after we pull out

5    business numbers are residential numbers?

6            So the evidence in this case for the class claim

7    shows that each of the things that we need to show are more

8    likely true than not true are in fact more likely true than not

9    true.

10           You'll see what's not on here is a requirement -- the

11   TCPA only applies -- let me take a step back.  The TCPA doesn't

12   apply if somebody gives prior express written consent.  Prior

13   express written consent is specifically consent to receive

14   calls using a recorded voice.

15           There is no -- in the jury instructions you won't see

16   a requirement for that, and the reason is that ViSalus agrees

17   that it didn't have prior express written consent to make any

18   of these calls.  The jury instructions say, "Prior express

19   consent means a signed, written agreement that clearly

20   authorizes the caller to place telemarketing calls using an

21   artificial or prerecorded voice."  Then it says, "ViSalus does

22   not contend that it had prior express written consent to call

23   Ms. Wakefield or any other phone number."

24           So in opening statement and also during

25   Ms. Wakefield's cross-examination, ViSalus suggested that it

Closing Argument

 1    was okay for them to call her and call the other class members,

 2    because at some point in the past they had signed up to be

 3    promoters.  That is not true.  ViSalus agrees that it did not

 4    have consent to place these calls.

 5            As the jury, you will be asked to determine how many

 6    calls have we shown more likely true than not true ViSalus made

 7    using artificial prerecorded telemarketing messages.  Mr. Davis

 8    provided testimony summarizing ViSalus's own documents.

 9            What he did was he went through all of the outcomes,

10    all of the disposition codes that showed what happened to a

11    call.  He subtracted all of the ones -- he went through that,

12    and he provided information on the completion codes, according

13    to ViSalus's own records associated with each of the calls.

14            He showed you that there was 4,123,856 call attempts.

15    Those are the rows in each one of those spreadsheets, like the

16    one you held that the POM machine tried to make a phone call

17    to.

18            There were 1,690,482 calls for which no outcome was

19    listed.  ViSalus's documents don't tell us what happened to

20    those calls.  Maybe it was answered.  Maybe an answering

21    machine picked up.  Maybe it was busy and no recorded message

22    could have played.  We don't have the outcome codes for those.

23            Mr. Gidley also identified the outcome codes that

24    show that the call could not have possibly had a prerecorded

25    message.  He said if it was busy, for example -- if the outcome

Closing Argument

 1   code shows it was busy, the recorded message could not have

 2   begun to play.  In the jury instructions you'll see for it to

 3   be a violation of the TCPA, the voice actually has to begin to

 4   play.  If the outcome says that the call was busy, the voice

 5   couldn't play.  But if the outcome says that a live person

 6   picked up, if an answering machine picked up, then a recorded

 7   message would have played.

 8        You also heard Mr. Davis testify on cross-examination

 9   that there were about 90,000 numbers in those contact lists

10   that were either to invalid numbers or Canadian numbers.  Let's

11   take those out because those weren't -- we don't have -- the

12   call might not have gone through, or it might have gone through

13   to a Canadian number.  So if we subtract 90,000, we get to the

14   number of calls that certainly used an artificial or

15   prerecorded voice.

16        Just to summarize Mr. Davis, he found all of the call

17   attempts, all of the rows in the spreadsheet that the POM

18   machine tried to call.  We can pull out the ones for which no

19   outcome was listed, because we don't have an outcome telling us

20   definitely this one went to an answer machine; this one went to

21   a live person.  We can subtract the ones -- that's 1,690,482.

22        We can subtract the calls for which, according to

23   Mr. Gidley's declaration, no recorded message could have

24   played.  For example, if the number was busy, the voice didn't

25   start playing.

Closing Argument

1              And we can also pull out the ones that were

2    associated with invalid or Canadian numbers.

3              If we subtract all that out, the number of calls that

4    we know certainly used an artificial or prerecorded voice is

5    1,927,928 calls.

6              In addition to that, for the ones for which no

7    outcome is listed, it is more likely true than not true that a

8    lot of those calls actually did go through and actually did

9    play a recorded message.  We just don't have the outcome codes

10   for that because ViSalus didn't keep them in their data.  That

11   was the class evidence.

12             You are also going to have to decide Ms. Wakefield's

13   individual claim as the class member.  To prove Ms. Wakefield's

14   claim, we need to show that the same three things are more

15   likely than true than not true for Ms. Wakefield.  First is

16   that ViSalus made one or more telemarketing calls to

17   Ms. Wakefield.  We got her phone records from her phone

18   company, Molalla Communications.  They show five phone calls

19   from ViSalus numbers.  ViSalus stipulated that the point of

20   those calls, the purpose of those calls, was to sell ViSalus

21   products.  In stipulation 22, ViSalus agreed that Ms. Wakefield

22   received calls from ViSalus in April of 2015, but the exact

23   numbers of calls received is in dispute.  ViSalus also agreed

24   that, however many calls there were, each call was directed to

25   a landline telephone and each call was intended to sell ViSalus

Closing Argument

1    products.

2         The next thing we have to show is that it is more

3    likely true than not true is that the call or calls used an

4    artificial or prerecorded voice.  We can show with ViSalus's

5    own records that each one of these calls was a POM machine

6    call, a call that was done by the POM machine using a recorded

7    voice.

8         Let me walk through that evidence quickly.  The first

9    two calls she received were on April 2nd, 2015.  As I mentioned

10   before, we have these two documents that show the calls that

11   ViSalus was using the POM machine to make.  They are

12   Exhibits 31 and 32.  They are both called campaign trackers.

13   One is called a POM campaign tracker.  The other one is called

14   the ASR campaign tracker.

15        The ASR campaign tracker shows that right when

16   Ms. Wakefield received those calls on April 2nd, 2015, a

17   campaign was running called the Promo Announce 2 campaign.

18   I'll just point out here, Ms. Wakefield's records -- you heard

19   Ms. Eves testify -- are on Pacific Time.  ViSalus is in

20   Michigan, and so they are on Eastern Time.

21        What it shows on that date is that there was a

22   contact list, the Patty WinBack Blast.  That contact list, you

23   have.  It is Exhibit 40.  That contact list has Ms. Wakefield's

24   number in it twice; once for herself and once for her husband,

25   Byron.  What that shows is that when Ms. Wakefield received the

Closing Argument

1   first two phone calls, there was a POM machine campaign running

2   that had her number in it twice.

3          The second two calls she received on April 2nd and

4   April 8th.  Those were from the same number.  If you look at

5   the POM campaign tracker, Exhibit 31, you'll see that there is

6   a WinBack initial campaign running.  That campaign used the

7   Jason O'Toole WinBack contact list.  That was that big one you

8   had.  That's Exhibit 38-115.  That campaign was running over

9   the course of nine days, from April 1st until April 10th, the

10  period of time during which Ms. Wakefield got those two calls.

11  Sure enough, Ms. Wakefield's number is in that contact list

12  twice; once for herself and once for her husband.

13         The last call that Ms. Wakefield received was on

14  April 28th.  In the ASR campaign tracker there is another

15  campaign.  It's called Promo Announce 2.  The contact list for

16  that one is red/inactive April of 2015.  Again, that campaign,

17  according to ViSalus's own documents, was running with the POM

18  machine between April 27th and April 28th.  Once again,

19  Ms. Wakefield's number is on that contact list.  What that

20  shows is that each one of these calls Ms. Wakefield got were

21  made using the POM machine.  And as we saw, the POM machine

22  used two campaign strategies, Press 1 and Voice Casting, and

23  they both used recorded messages.

24         The last thing we have to show is that the calls

25  were -- to Ms. Wakefield were to her residential telephone

Closing Argument

 1 line.  You will be given jury instructions that will --

 2             THE COURT:  They already have them.

 3             MR. FRANZINI:  Sorry.  You already have the jury

 4 instructions that will tell you how to decide this issue.

 5 There are three things that I want to go over with you.  The

 6 first is you may consider whether Ms. Wakefield's telephone

 7 number was registered as a residential number or a business

 8 number.  You heard from Mr. Eves that Ms. Wakefield's number

 9 was registered as a residential number.

10             The second thing you should consider is whether that

11 number was publicized or held out to the general public as a

12 general business telephone number, even if it was registered as

13 a residential landline.  The key here is, is she holding it out

14 to the public?  Is she telling people, "This is the number of

15 my business"?

16             Ms. Wakefield was asked questions about this.  She

17 was asked, "Did you ever advertise your home number as a

18 daycare number?

19             "ANSWER:  No.

20             "Did you ever put it on flyers?

21             "ANSWER:  No.

22             "Did you put it on business cards for your daycare?

23             "No.

24             "Did you put up a sign in front of your yard with a

25 phone number that said 'Lori's Daycare' with a phone number?

Closing Argument

1      "No.

2            "Did you advertise that number as your daycare number

3   in any way?

4            "ANSWER:  No."

5            ViSalus had a chance to cross-examine Ms. Wakefield.

6   They didn't bring this issue up at all.  The reason is there is

7   no evidence at all that Ms. Wakefield publicized or held out

8   her number as a business number.

9            She was asked a question:

10           "QUESTION:  Did you ever at any point hold out your

11  home number to the general public as a daycare number in any

12  way?

13           "ANSWER:  No."

14           The third thing that you can consider is this:  It is

15  the fact that a landline telephone is used for some business

16  calls does not necessarily make it a business telephone.  The

17  key point is that a residential landline telephone is used

18  primarily as a residential telephone.

19           So even if she used her home number once in a while

20  for her daycare, that doesn't turn the number into a business

21  number.  The key is whether it is used primarily as a

22  residential telephone.  You have her call records from the

23  three months around the time she got the calls from ViSalus.

24  There was 301 calls, and there were only two that were in any

25  way associated with her daycare.  Only two calls were from

Closing Argument

1    parents associated with her daycare.  So her number was used

2    primarily as a residential telephone.

3            For all those reasons, the evidence shows more likely

4    than not each one of the three things we need to show are true.

5    Ms. Wakefield received five calls from ViSalus.  They were all

6    telemarketing calls.  They all used recorded voices, and they

7    all were made to a residential landline.

8            You are going to have a chance to hear from the

9    defendant's lawyer and also from us again, but you won't be

10   hearing from me anymore.  So I will conclude there.  I want to

11   say thank you very much for your time and attention.   I

12   appreciate it, my client appreciates it, and this process

13   couldn't work without you.

14           Thank you.

15           THE COURT:  Thank you very much, Mr. Franzini.

16           At this time I will invite an attorney for the

17   defendant to deliver defendant's closing argument.

18           MR. O'NEAL:  Thank you, Judge.

19           THE COURT:  Mr. Foster -- sorry.  Mr. O'Neal.

20           MR. FOSTER:  I'm running technical support,

21   Your Honor.

22           THE COURT:  Got it.

23           MR. O'NEAL:  Good morning, everyone.  Thank you for

24   the time you've spent with us.

25           I'm going to ask a question and make a point.  If at

Closing Argument

1    the end of the presentation of evidence you were wondering how

2    all of the evidence connected up with the class and what did it

3    mean and how did it all fit together, that's because plaintiff

4    didn't prove the case on the class.

5              You remember at the beginning of my opening statement

6    I said that you were going to get a lot of spreadsheets; that

7    you were going to get a lot of documents; that you were going

8    to get a lot of deposition clips.  But what was going to be

9    missing from the plaintiff's presentation on the class claim

10   was that connective tissue, that evidence that would be able to

11   say from this point with the line to the line to this point to

12   the line to this point to the line, and that is those elements

13   for all of the class members, for something like

14   1-something-million calls, and the plaintiff didn't do that.

15             What the plaintiff did was take evidence and make

16   unreasonable, far assumptions rather than actually proving up

17   point A to B to C to D.  That is why they didn't meet their

18   burden of proof.  They didn't meet their burden of proof

19   because my client didn't do it.  My client didn't do it, and

20   that's the reason they couldn't prove it.  And that's the

21   reason why they did the method that they did rather than to get

22   down into the details.

23             So let's look at the class claim first.  Remember,

24   first, if you look, Ms. Wakefield's evidence is not part of

25   what they're using or should use to prove.  They've got to

Closing Argument

1    prove up the class based on the other evidence, and they have

2    to prove some basic things.  They have to show that a call was

3    made.  They have to show that it was a telemarketing call; that

4    is, a call designed to sell products or services.  They have to

5    show on that same call that a prerecorded message was played or

6    that an artificial voice was used.  And they have to show that

7    the line on which the call was received was mobile or

8    residential and not business.

9         If they don't prove one of those elements, then a

10   call doesn't violate the TCPA.  It doesn't count if you got

11   two, and you have four, and you missed three.  That's not

12   enough.  They have got to prove it all.  And if you look at the

13   verdict form, what you have to do is you have to tabulate up

14   using that same model, all of those same elements, finding that

15   each and every call that you put into the column of how many

16   calls, that each of those calls met all of those elements.  If

17   it doesn't meet one of those elements, you can't put it in the

18   total.  You can't put it down here, because they haven't proven

19   that call goes to that total.

20        So let's use a real example.  We saw this tome that

21   the plaintiffs brought.  This was the Jason O'Toole WinBack

22   Excel spreadsheet that the plaintiff marked and handed out.

23   You will find it in the jury room.  It is Exhibit 38-115.

24        So you open it up, and there are a bunch of names and

25   there are some numbers there -- no disposition codes, mind you,

Closing Argument

1    there, but we will just put that to the side for a moment.

2    These are the spreadsheets or an example of spreadsheets that

3    the plaintiffs have tabulated up and that Mr. Davis manipulated

4    in order to get the total numbers that you find in the summary.

5         But real life.  First name off, Amy Carr, and then

6    there is a number right there.  (805)443-2695.  If the

7    plaintiff wants to put a call to Amy Carr at that number in

8    that total, they've got to prove that Amy got a call.  They

9    have got to prove that it was a telemarketing call.  They've

10   got to prove that a prerecorded message was played to Amy.  And

11   then they've got to prove that the number that's assigned to

12   Amy that they are contending that was called was either a

13   mobile or residential number.  And if they don't do that for

14   each and every call that they want to put in the total, it

15   doesn't go in.  It can't go in.

16        So that's burden on what they have got to do.  If you

17   look at 38-115 -- and this wasn't random.  If you remember,

18   they picked it.  That's one of the major problems.  Right off

19   top, the very first one they used here, it is an

20   "incorporated."  It is not a person.  It could not violate the

21   TCPA.

22        So plaintiffs said 1.9-something million calls.  In

23   order to write that number down, they had to give you that type

24   of detailed evidence; that each 1.9 million call violated and

25   met those five elements.  And they didn't do it.  They didn't

Closing Argument

1    do it.

2              So if they had that kind of evidence, they could have

3    brought an expert in to testify that all of the numbers were

4    mobile or that the numbers were residential numbers or that

5    they did some examination and tried to determine, "Hey, this

6    many is residential; this many is mobile."  They didn't do that

7              Mr. Franzini just asked you to speculate.  He asked

8    you to flip a coin and say, "Well, I can't really tell you

9    what's mobile and what's residential, so why don't you just

10   divide it down the middle."  That's not evidence; that's just

11   pure guesswork is what that is.

12             If the plaintiff could show that my client left the

13   messages to the degree that they're talking about, they could

14   have brought in deposition testimony of sample class members

15   saying, "Yes, I too got a prerecorded message that played.  I

16   too got a call from ViSalus on this particular date and time."

17   They didn't do that.

18             Heck, if you believe Mr. Davis, probably the primary

19   candidate that they could have done was whoever that individual

20   was that allegedly got 30,000-something-plus calls.  It would

21   have been so easy to go get that person, but they didn't

22   because the evidence doesn't exist.  It is not out there.

23             So what else could they have done?  Maybe they could

24   have called one or two class members to come and testify for

25   you.  They don't have to bring in hundreds and hundreds of

Closing Argument

1    them, but at least they could have brought in some

2    corroborating evidence -- some corroborating evidence which

3    connects it and says, "Yes, this is in fact what happened."

4    Plaintiff's didn't do it, because they can't.  The evidence

5    doesn't exist.

6             So what did they employ as their tactic?  Well, they

7    grabbed some documents, and they've made some sweeping

8    assertions about what those documents mean.  And if you look at

9    them closely, they don't provide the connective tissue for all

10   of the 1.9 million calls that are at issue in this case.

11            So the audio clips.  That's Exhibit -- the list of

12   them is Exhibit 58, which I believe you have.  The audio clips

13   themselves are actually 43, and there are various subparts.

14   First of all, there was no evidence put in front of you that

15   those messages were actually played to any class member.  There

16   just wasn't.  What they did is they hit and played and said,

17   "There it is," and then ask you to assume they were played to a

18   class member.  They could have brought in a couple of people,

19   saying, "Hey, I got it.  Yes, I received it.  That voice mail

20   sounds fine."  They didn't even get past the gate there.

21            But what they did try to do is say, well, all right.

22   So we played a couple of clips using Jeremy.  I think it was,

23   "Hey, this is Jeremy; Body by Vi," and there is another one,

24   Sherry.  They would say that what you should do is you should

25   assume that that clip or those two clips were played for all of

Closing Argument

1    the people in the class, 1.9 million times, over the course of

2    a year plus a couple of months.

3            That can't be true.  Listen to the clips.  The clips

4    themselves say, "While we are going into spring."  They can't

5    be used for an entire period.  They can't be used to apply it

6    across the class.  The clips aren't what the plaintiff says

7    they are.

8            Next, clips.  Listen to Rachel.  That's the Rachel

9    WinBack.  At the beginning in the opening statement I told you

10   that promoters, high-level promoters, ambassadors --

11           THE COURT:  One moment.  If you want to stand and say

12   "Objection," you may say "Objection."  Do you have an

13   objection?

14           MR. FRANZINI:  Yes, Your Honor.

15           THE COURT:  Then say "Objection."  What's your

16   objection?

17           MR. FRANZINI:  There's no evidence of this.

18           THE COURT:  You're saying that you object because

19   there's no evidence what counsel is arguing?

20           MR. FRANZINI:  That's right, Your Honor.

21           THE COURT:  I'll just remind the jury that what both

22   sides say is not evidence.  If they say something was presented

23   to you in trial that is different from the way you remember it,

24   your recollection controls.  I'm not going to weigh in on that

25   debate other than to say that I'm going to overrule the

Closing Argument

1   objection, and you may respond in rebuttal.

2           You may continue, Mr. O'Neal.

3           MR. O'NEAL:  Thank you.

4           So if you listen to the content of that message.

5   Please play it.  You are going to have all of these audio clips

6   back with you in the jury room.  Rachel is saying, "Hey, me and

7   my husband are doing great."  Then they say, "Call me at my own

8   phone number."  They list 480.  You didn't see any evidence put

9   into the record from the plaintiff that that was a ViSalus

10  number, because it's not.  Those are the individual numbers of

11  those particular ambassadors or promoters.  What they are

12  doing, they are going out and talking to their salespeople,

13  their sales team, saying, "Hey, let's juice it up."  That's not

14  ViSalus.

15          Next, they cherrypicked audio clips.  Listen to one

16  of them that is from Kyle Pacetti.  It is kind of fun to listen

17  to.  But what Kyle Pacetti says is, "Hey, it has been a while,

18  but I would like to invite you to come to a meeting that is

19  being held out on the West Coast."  That's not a sale of

20  products or services.  That's inviting them to come to a

21  meeting.

22          And that's the same for another one that you heard,

23  Mr. Nick Sarnicola.  He was giving away free tickets to

24  Vitality, which is an event.  That doesn't qualify as

25  telemarketing.  But again, what the plaintiff wants you to do

1   is just look over those facts, gloss, and say, "Ah-ha.  There,

2   it is.  Therefore, because there is one message, we can spread

3   it across one-and-one-half years, and we can apply it to

4   1.9 million calls."  That's not evidence to prove a class

5   claim.  That's guesswork and that's assumptions.  That's not

6   evidence.

7          So they assumed also that Press 1 went to the

8   stipulation, and they say, "There it says Press 1.  Press 1 was

9   used throughout the campaign.  You heard Ms. Wakefield testify

10  that she thought that she got something, which sounded like a

11  Press 1."  Then they say, "Look at the stipulation.  It is

12  there."

13         Well, go to the POM campaign tracker.  That's a

14  document that has been put in evidence.  It is Exhibit 31.

15  Okay.  What you will find is, of all of the campaigns that the

16  plaintiff seems to be talking about that they say messages were

17  played, everything else, there isn't one campaign using Press 1

18  in its name until August 2015, which is the date that I told

19  you folks where it was going to start.  That's only in the very

20  limited time period at the end of what plaintiff claims is the

21  relevant period.  And if you look, it's "Press 1 contact

22  declines."  That's because it is talking about a declined

23  credit card.  That's what I told you in my opening statement.

24  That's the reason why that's there.  So you won't find Press 1

25  for any of the campaigns prior to there, and the Press 1 here

Closing Argument

 1  is talking about credit card declines.

 2           All right.  So you've got a script, which was

 3  referred to by Mr. Franzini in his closing statement.  I

 4  believe that script, if I'm not mistaken, is Exhibit 44.  Look

 5  at the date.  January 2016.  The testimony came in that the

 6  outbound team was dissolved by then.  That's why they didn't

 7  present to you any evidence that anybody actually used this

 8  script.  If they could, they would have, but they didn't.  And

 9  that's another piece of the connective tissue that is missing

10  from the plaintiff's class claim.

11           They want you to think that just because there is a

12  script, "Ah-ha, you must have been used for a period of time of

13  1.9 million calls throughout the entire year."  That can't be

14  the case.  Again, they didn't meet their burden of proof.  They

15  didn't show you that this document was actually used.

16           Voice Casting.  When they started this case, what

17  they said was that there was Voice Casting.  Therefore, that

18  must mean that Voice Casting was the only thing that was used

19  as far as a campaign that ViSalus put together.  Well, you

20  heard evidence that wasn't the case.  There were all kinds of

21  campaigns.  There was WinBack campaigns.  There was the BOGO

22  campaigns.  There was credit card.  There was let's come back

23  and go to a meeting.  It wasn't limited to Voice Casting.

24           And as I said at the beginning, no evidence was put

25  in that Voice Casting means anything other than what Mr. Call's

Closing Argument

1  deposition testimony, which is attached to the stipulation as

2  Exhibit B, which you will have.   It is a document that was

3  handed out.   What does it mean?   To get a little bit closer on

4  that, if you read the stipulation, it says they used Voice

5  Casting and Press 1.   It doesn't say that's the only thing that

6  ViSalus did, but that they used Voice Casting, and then they

7  say, "Look at or see Mr. Call's deposition testimony."   That

8  deposition testimony defines Voice Casting as using messages

9  for credit card declines.   It doesn't say anything else beyond

10 that.

11         The Gidley declaration, and you saw some of the

12 testimony today that came in on that.   Mr. Gidley said

13 something like this, "I know for certain that messages could

14 not be used on calls that had this disposition code."   He did

15 not say, "Therefore, messages must have been used on every

16 other call."   That's not there, and that's not a fair

17 assumption.   What he said was, "I cannot say one way or the

18 other as to whether messages were or weren't used.   All I can

19 tell you is that, on those, the answer is they weren't."

20         To try to suggest that the defendant can or you

21 should construe it otherwise -- the plaintiff, I mean -- is not

22 fair, because that's not what the document says.   And the

23 plaintiff didn't prove it otherwise.   There wasn't any

24 testimony from Mr. Gidley in his deposition that it was or that

25 that declaration meant what plaintiff now construes.   They

Closing Argument

1   didn't present that to you.

2          All right.  Jason O'Toole.  That comes back to this

3   one.  That was an example that Mr. Franzini used.  Not a single

4   disposition code for this entire set.  You heard Mr. Davis say,

5   without a disposition code, you can't say one way or the other

6   whether or not some, none, or all of these calls were made.

7   You can't do it.  Again, no evidence.

8          What could the plaintiff have done?  I don't know.

9   Pick 10 or 12.  If you want to prove it, do a sample, do a

10  survey, do something.  They didn't do it, because they couldn't

11  do it.  The evidence isn't there.  They couldn't bring together

12  the connective tissue, because it's not there.

13         So what about the summary?  That's Exhibit 36 and

14  36A.  That's the document that the plaintiff wants you to make

15  the total tabulation from on that verdict sheet and write in

16  numbers.  That's the evidence, not that they showed Amy, Bob,

17  and the rest of them had calls that meet all five.  They

18  basically want you to jump to the summary and go to what

19  Mr. Davis did.

20         Mr. Davis' analysis was riddled with errors.  He

21  included well in excess of 30,000 people with Canadian numbers,

22  which he concedes they shouldn't have been.  He had random

23  numbers, which included toll-free numbers, which he conceded

24  can either be mobile or residential numbers and weren't

25  supposed to be there.

Closing Argument

1           He admitted that when he ran the totals, there were

2     fake numbers in there.  And he actually said to you, when

3     confronted by colleague, Mr. Foster, that his work showed in

4     excess of 30,000 calls to one number, and that one number was

5     assigned to different people, his answer wasn't, "Well, I can

6     see maybe that's an issue.  I get it.  Maybe I should adjust."

7     His answer was, "No, that just means that one person received

8     30,000 calls."  That's just not believable.

9           Now, something was suggested by counsel, ViSalus

10    didn't say, and they didn't bring you this evidence, and they

11    didn't show you what the alternate was.  If his isn't good

12    enough, then what's the response?  I would like to use an

13    analogy.  If you go to a restaurant, and you order a sandwich,

14    and you take a bite into the sandwich, and it's rotten.  It's

15    just rotten right there.  It doesn't taste good.  Something is

16    wrong with it.  The rest of it looks okay, but clearly once I

17    took a bite, and I got into it, this is bad.  You don't eat

18    around the edges and say, "Gee, I am going to take the good

19    parts and leave the rotten piece."  You send it back.  And

20    that's what you should do with Mr. Davis and the summaries they

21    have.  They are not reliable, and you should send them back.

22    They are not trustworthy.  They don't show, because it was

23    riddled with errors.

24          All right.  Codes.  There was a lot of testimony, and

25    there is a lot of evidence about the disposition codes.  Take a

Closing Argument

1   look at the Avaya manual.  I will say that it's a formidable

2   document.  It is about this big.  I would suggest to you that

3   if the system was not as I described it in the opening

4   statement, highly customizable; very, very complex software;

5   can be done in a number of ways in order to meet ViSalus's goal

6   to connect a live person to a live person; that all it was

7   designed to do was to leave messages, maybe the manual ought to

8   be that thick.  But that's not the case.  Clearly it can be

9   used in the way that we described it.

10          But disposition codes.  The key about disposition

11  codes, they're called completion codes.  If you want to look at

12  it, it is Chapter 12.  Flip through; you'll find it.  But in

13  there, there are tables which identify what the disposition

14  codes are and what they're named.  You will find that these

15  names actually line up to the columns that the plaintiffs used

16  and put into the summary that Mr. Davis prepared.

17          Look at them all.  Please review them.  What you will

18  find is not a single one of them says anything like "message

19  left" or "prerecorded message played" or anything along the

20  lines of what they said.  Certainly during the presentation of

21  the evidence, the plaintiff didn't say, "Look, there it is.

22  Answering machine disposition code, as shown on summary 36.  Go

23  back to the Avaya manual.  Here it is.  That clearly means

24  that's the case.  That's the reason why we know that that had

25  to have included a telemarketing message that was played."

Closing Argument

1   They didn't do it, because they can't do it.  They can't do it.

2           All right.  Now, I also heard a suggestion that there

3   was a WinBack campaign that left messages.  Well, the only

4   thing that they have on that -- again, they didn't bring you in

5   a person or a witness to testify about it.  What they pulled

6   was a couple-page email exchange of a Better Business Bureau

7   letter.  I can't remember the exhibit right now, and I

8   apologize, but it is going to be in the stuff you receive.

9           The Avaya system, again, is a complex system, and the

10  manual provides the explanation of why that may have been the

11  case.  Let's go to the page.  This is from the manual.  I

12  believe it is Chapter 7, if I'm not mistaken.  Chapter 7.

13          Zac, could you scroll down to the bottom so these

14  good folks can see the page number.

15          So that's what is at the bottom, if you want to track

16  it.  It is 34-48.  Let's move it back to the top.

17          "For agent-based campaign, if you want CCA to detect

18  answer machine and stop those calls from getting patched with

19  live agent, ensure you disable the compliance timers."

20          All right.  So what does that mean?  No. 1, it's

21  consistent with what I told you about what ViSalus's strategy

22  was.  The manual doesn't say, "Hey, if it detects an answering

23  machine, do something so a prerecorded message can be left."

24  What it says is that if CCA detects an answering machine, and

25  you want to patch it to live agent, good.  There is

Closing Argument

 1  person-to-person contact.  But what you have is you have to

 2  ensure that you disable the compliance timers.  So what

 3  happened?  What's the explanation for the one?  Somebody just

 4  forgot to disable the compliance targets.  That's all that

 5  occurred.

 6          If it was, as the plaintiff suggests, that there was

 7  a massive campaign to play, you would have seen more evidence.

 8  You would have seen repeated letters.  You would have seen

 9  witnesses coming in and testifying one after the other, saying,

10  "Hey, I got prerecorded messages left on my answering machine,"

11  and they fit into the class -- somewhere -- out of the

12  1.9-something million calls, surely the plaintiffs could have

13  drug up something; something to show that.  The best that they

14  could up with is one letter from a lady that was complaining in

15  2015.  That's it.  This is just as an equally plausible

16  explanation as what they say.  That's not proof.  That's where

17  they didn't get over more probable than not.

18          There was a suggestion that no evidence was put in

19  that live connect was the strategy.  I don't think that's

20  right.  My recollection is that the deposition testimony that

21  was read, particularly from Mr. Gidley, perhaps it was

22  Mr. Call, where they said, "No, the idea was that we were

23  always going to try to connect people when they answered the

24  phone on a live connect."  That's the evidence of that.

25  Hopefully, you will recall it and took a note, because I

Closing Argument

 1   believe it is there.

 2          WinBack.  There is a little layer to this.  What the

 3   evidence was was entirely consistent as how I described it when

 4   I gave the opening statement.  If you listen to the WinBacks,

 5   they are all by promoters or ambassadors saying, "Hey, come

 6   back."  That's what they're doing.  So you will hear them from

 7   Rachel.  You will hear them from the other folks.  What they

 8   are saying is, "We would like you, who used to be a former

 9   promoter, come back on my team."  That's not telemarketing by

10   ViSalus.  That is somebody different asking somebody else to

11   get back and do a job, get back on the team, be another

12   independent contractor, and be a person who goes out and sells.

13          That's not telemarketing by ViSalus.  You didn't hear

14   anybody come in and testify -- again, there is no witnesses, no

15   surveys, no depositions, no evidence to back it up that there

16   is any different explanation than that.  Again, the resources

17   that were available to this plaintiff, and they couldn't do

18   it -- no depositions, no corroborating evidence, no additional

19   witnesses to come in and say -- why?  Because it is not there.

20   It is not there.  It is because what I'm telling you about is

21   the more accurate version.

22          All right.  Because they can't show that ViSalus did

23   all of this stuff, and they can't show it on a scale that they

24   now claim, apparently to the tune of 1.9 million, that's the

25   reason why they can't prove their case, at least when it comes

Closing Argument

1   to the class.

2          When you look back at the form, the verdict form,

3   you'll see that what you're supposed to do is you have to go in

4   and tabulate the number of calls they violated, and they didn't

5   make it.  The number that should be put in there is zero.  You

6   should say they didn't meet the burden on the class claim, and

7   they didn't prove the number of calls.  They didn't give you

8   the evidence to do it.  And why?  Because my client didn't do

9   it.

10          Ms. Wakefield.  Very nice lady.  And the evidence

11  absolutely is that my client called her.  You saw the phone

12  records.  They were -- but that doesn't make the calls

13  violative.  I think it is fair to say that Ms. Wakefield's

14  memory was not that good.  I think it is fair to say that her

15  testimony -- that while she believed the facts showed that it

16  wasn't credible -- that the real events didn't unfold in the

17  manner that she thought that they did when she was testifying.

18          And you heard her say that when she was in her

19  deposition and asked those questions, her answers were that the

20  first two calls were from live people, and she changed it when

21  she got in here.  That's like a year and something later.  The

22  deposition testimony and what she said before, that was a lot

23  closer than the events.  That's the better evidence.  That's

24  the better evidence of what happened on those calls.

25          Now, she also said, "Well, I remember somebody saying

Closing Argument

1    get 50 percent, and then they were going to Press 1."  Well,

2    again, the evidence shows, and you can look at the POM campaign

3    tracker, ViSalus didn't use Press 1 campaigns back in April of

4    2015.  The first one that came about was in August of 2016.

5              Next, when asked about the messages that were

6    played -- that's the reason why I did the timer -- the messages

7    don't go on for as long as the calls lasted.  They are shorter.

8    They are somewhere between 16 to 19 seconds.

9              There was some assertion, well, maybe there is a long

10   hiss at the end, or maybe an answering machine picked up, and

11   that's why it went longer.  Well, if that was the case, we

12   would hear the answering machine.  Out of five of them, we

13   should be able to hear, but they weren't.

14             And I'll also tell you that Ms. Wakefield's story on

15   how she was reacting to these supposed recorded messages,

16   again, she may believe it, but it is not credible.  When you

17   get a telephone call from an entity that you say that you don't

18   want to talk to, that you broke relationship with nearly two

19   years before, and that somehow you can't think or can't figure

20   out that it is a voice, that doesn't make any sense.  You

21   wouldn't sit on the phone for 35 seconds waiting for a

22   19-second message to finish before you would say, "Hey, wait a

23   minute.  Thank you.  I really don't want to talk to you."  That

24   just doesn't line up.

25             And you want to look at how long those particular

Closing Argument

1   calls lasted.  Go to Exhibit 2.  Those are the Molalla phone
2   records.  You will find the first three calls were on
3   April 2nd, the fourth call was on April 8th, and the fifth call
4   was on the 28th.  All of that timing, they just don't line up.
5   The messages are too short, and the length of the calls are too
6   long.
7          Also, if there was a message left on the answering
8   machine, as Ms. Wakefield claimed happened on the 28th, we
9   would have it.  By that time, as she said, she had already been
10  talking to her lawyer.  She had already received four previous
11  calls from my client, which means that she was irritated, and
12  she knew she might be bringing a case.  It doesn't make sense
13  that someone in that situation would accidentally delete
14  something on an answering machine, which we can assume had been
15  in her house, and she was quite familiar how to use it.  That,
16  again, isn't a credible story.
17         Another reason why, again, I don't think
18  Ms. Wakefield's claim about the message from Rachel Jackson --
19  that's the one that has been played I don't know how many
20  times -- do a timer.  That message goes on for one-minute-plus.
21  If that was the case, if that was the message that she was
22  listening to, that she couldn't recognize whether or not it was
23  a live voice and waited for it or a recording and waited for it
24  to finish and then spoke, you would have found a call from
25  ViSalus that lasted approximately a minute or more.  But that's

Closing Argument

1    not there either, and so that's not credible.

2            What likely happened, and you can look at the phone

3    records, and you can make this determination, is that she got

4    calls and her husband got calls, because, remember, both of

5    them are listed on ViSalus's list as former promoters asking

6    them to come back as part of a WinBack.  One call was

7    originally intended for Lori; one was probably intended for

8    Byron, and so on and so forth.  Then she was connected to live

9    people, okay.

10           Then she said, "Hey, listen.  Leave me alone.  I

11   don't want to talk anymore."  It could have been just as likely

12   as somebody calling back and saying, "I just wanted to confirm

13   that you and your husband don't want to be called," or vice

14   versa.  We won't know, because, again, the plaintiff didn't

15   produce any evidence.

16           What we do know is that Ms. Wakefield's recollection

17   of events, as she testified here, is inconsistent with what she

18   said before and the facts, and that's the reason why her

19   events, as described, don't get her across the goal line for

20   her claims.

21           I would also like to add one other thing, because

22   Mr. Franzini talked about this, which is the business line.  It

23   can't be legitimately disputed that Ms. Wakefield signed up to

24   be a promoter, as did her husband.  It isn't disputed that

25   promoters are ViSalus's sales force -- that's in the

Closing Argument

1    stipulation -- and that ViSalus records showed that that was

2    what she was; that it was a business relationship between the

3    two.  So did she hold herself out to ViSalus -- hold the number

4    out as a business?  The answer is yes.

5            Also, look at the text exchanges between her and

6    ViSalus.  If you look at them closely, you'll see that she

7    doesn't say, "Don't call me.  Take me off your list.  I'm done.

8    I'm out."  None of that is there.  What she does say is, "I

9    want a refund of like 30 bucks.  I would like to return my

10   product to you."  But there isn't that extra step to say, "I

11   have no interest in being a promoter anymore.  I know I gave

12   you my number.  I don't want you to call me anymore."  It is

13   not there.

14           So where are we?  For the class claim, plaintiff just

15   simply didn't meet the burden -- just didn't.  The reason why

16   they didn't meet the burden is because what they say my client

17   did, it didn't do it.  It didn't do it in the way that the

18   plaintiff asserts.  They focused on live connect and personal

19   relationships with their sales team as promoters, and that's

20   the reason why you don't have any corroborating evidence that

21   actually demonstrates, when you get down into the granular

22   details, that plaintiff's class claim has support and can be

23   sustained.

24           Now, one of the plaintiff's team is going to get up

25   and talk to you.  I don't get a chance to speak after they do

Closing Argument

1   that.  And he is going to say some stuff, probably in reaction

2   to what I've said.  But just because I don't come up and say

3   something after, that doesn't mean that I don't have a response

4   or that I don't have something to say about it.  It just means

5   the rules say I can't talk.  So don't take his comments as part

6   of the rebuttal that somehow my failure to respond to them

7   means a concession, because it doesn't.

8           One thing you may hear is, well, you know, ViSalus

9   didn't put on a witness.  They didn't call any evidence.  Well,

10  Mr. Berger, who is counsel for ViSalus, in-house, he has been

11  here through the entire time.  So ViSalus is here.  The reason

12  why the defendant rested is because plaintiff didn't meet the

13  burden, and that's the reason why no witnesses were called,

14  because the evidence that was presented to you isn't enough.

15          So I'm going to conclude by saying this:  One, I bet

16  you are all tired and ready to be done.  But No. 2, when you go

17  back and look at the verdict form, and you're trying to make

18  determinations, go to the evidence and ask yourself:  Did the

19  plaintiff meet the burden?  I think you are going to find that

20  the answer is no.  The answer is no.  What they've done is

21  they've tried to extrapolate, guess, and speculate, but they

22  didn't give you enough information to say, "Here it is --

23  verdict -- and number of calls."

24          Ladies and gentlemen, thank you very much for your

25  time, and that's all I have.

Rebuttal Argument

1        THE COURT:  Thank you very much, Mr. O'Neal.

2        At this time I will invite an attorney for plaintiff

3   to deliver rebuttal closing arguments.

4        MR. DOVEL:  Thank you, Your Honor.

5        May I have a moment to set up?

6        THE COURT:  Of course.

7        MR. DOVEL:  All right, Your Honor.  I'm ready to

8   begin.

9        ViSalus started their closing argument with, "My

10  client didn't do it.  My client didn't do it."  Said it twice.

11  I'm going to show you a single piece of evidence that's

12  undisputed that shows that they did do it.

13       Scott Gidley, who was their designated representative

14  to talk about the POM machine and how they used it and all of

15  their campaigns that used prerecorded messages, gave testimony.

16  One of the pieces of testimony that he talked about was this

17  Rachel Jackson WinBack campaign.  You have heard it played five

18  or six times by now.

19       So let's see if we can tie A to B to C with this

20  piece of evidence.  You heard it multiple times.  There is no

21  question it's telemarketing.  Part of the message is, "Right

22  now you can actually get one of our kits half price if you come

23  back right now, or if you want to upgrade and become a

24  promoter, you get $100 off your promoter kit."

25       Now, they say, "This is Rachel Jackson's voice, so

Rebuttal Argument

1   this is not ViSalus," because she is a promoter.  She is not

2   ViSalus.  The issue is who sent out this message?  ViSalus had

3   Rachel Jackson record it, and ViSalus sent it out.  Why?  To

4   sell products.

5            In fact, they are doing it because they want to sell

6   ViSalus products.  But it doesn't matter if they just wanted to

7   sell somebody else's products.  If ViSalus is sending out

8   telemarketing prerecorded messages to sell products, that's a

9   violation.  There is no question that this is a telemarketing

10  message.  You heard it too many times for me to play it again.

11  It is trying to sell products.

12           Now, Mr. Gidley was then asked about who was that

13  message sent to.  He said that it would have been sent to

14  people on a call list that was created.  Now, we know, and the

15  evidence is undisputed, ViSalus created those call lists.  They

16  had collections of phone numbers for customers and promoters.

17  ViSalus created those call lists.

18           Then this is the key part:  How would that message

19  have been sent out?  Did Mr. Gidley say, "Oh, I have no idea.

20  It was Rachel was doing it.  Maybe she sent it out."  No.  He

21  testified, "It would have been uploaded into Progressive

22  Outreach Manager and then sent via telephone."  The Progressive

23  Outreach Manager -- POM -- that's ViSalus's POM machine.

24           This piece of evidence right here shows that there

25  was at least one prerecorded message -- telemarketing message

Rebuttal Argument

1   that was sent out by ViSalus -- ViSalus's machine -- sent via

2   telephone.  No question it was marketing; sent via telephone.

3   That's telemarketing.

4          Now, who was it sent to?  People on a call list.

5          Mr. Gidley also testified, "Anyone that was on that

6   list would have received that voice mail?

7          "ANSWER:  That's a fair assumption."

8          That's how it worked.  You got this list.  It is

9   automated.  It is undisputed.  You feed it into the POM

10  machine.  You press "start," and every number gets called.

11  That message would have been delivered to everybody on that

12  list, and that list is in evidence.  Every one of those people

13  is a member of the class.  This piece of evidence proves they

14  did it.  So when he stands up and says, "My client didn't do

15  it," where is the proof?

16         The proof is they definitely did it.  Their own

17  person, Scott Gidley, who was tasked with testifying on their

18  behalf about this, admitted it.  It is undisputed.  In

19  addition, Mr. Gidley also admitted that that message was

20  delivered to Ms. Wakefield.

21         "Is this a message that was sent to plaintiff?

22         "I believe it would have been."

23         Why?  Because she was on that list during the

24  relevant time period, and her phone records show indeed she did

25  get it.

Rebuttal Argument

1          Now, ViSalus doesn't contend it had consent to

2     deliver that to anyone.  That means that act right there

3     demonstrates that they violated the TCPA.  They don't have

4     anyone to come in and say, "Mr. Gidley was wrong.  That message

5     wasn't played.  It wasn't fed through POM."  Here is some

6     evidence showing that in fact it was done some other way.   It

7     was a message fed through POM to a contact list delivered to

8     everyone on that list, including Ms. Wakefield.  His client did

9     it.

10          Now, you are going to get a special verdict form, and

11     I'm going to walk through each piece of it with you.  The first

12     question is did we prove that ViSalus made or initiated at

13     least one telemarketing call using an artificial or prerecorded

14     voice to a residential telephone line registered to

15     Ms. Wakefield?

16          The evidence I just showed you means yes.  It is more

17     likely true than not true.  In fact, this isn't something where

18     you could -- well, there is some ambiguous evidence.  A couple

19     of witnesses testified differently.  No.  It is perfectly

20     consistent.  It is not slightly more true.  It is like this.

21     This is overwhelming proof.  They did it.  So you should check

22     "yes" for Question 1.

23          Question 3 asks a similar question about the class.

24     Did we prove by a preponderance -- that is, more likely true

25     than not true -- that at least one telemarketing call using an

Rebuttal Argument

1   artificial or prerecorded voice to either a mobile or

2   residential line belonging to members of the class?

3            Again, there were 50,000 people on that list.  There

4   is at least one that got it.  In fact, the disposition codes

5   showed that most of them did.  So the answer to that question

6   is yes.

7            But it doesn't stop there.  We presented evidence

8   that connected the dots -- A to B to C -- for in excess of

9   2 million calls.  A to B to C.  What is A, B, and C?

10  Prerecorded message, telemarketing, residential, or mobile.  We

11  connected those dots for more than 2 million calls.

12           Let me show you some of that evidence.  First, we

13  pointed to the declaration of Scott Gidley.  He identified

14  campaigns that explicitly were marketing campaigns.  He set

15  aside anything that involved a credit card decline campaign,

16  anything that would involve, oh, just trying to invite someone

17  to a meeting.  Those were set aside.  He just included

18  marketing campaigns.

19           It is undisputed that each of the campaigns on his

20  Exhibit A, the approximately 400 that we counted up, were

21  marketing campaigns.  And they were all done over the

22  telephone.  That means it makes them telemarketing.  They were

23  designed to sell or promote the sale of ViSalus products, every

24  one of those.

25           For that 400, is it more likely true than not true

Rebuttal Argument

1    that they were marketing campaigns?  Yeah.  Their own witness
2    says so under oath.  Did they present any evidence that any
3    those 400 hundred was not a marketing campaign?  If there was a
4    single one of those that was not a marketing campaign, there
5    would have been a ViSalus witness right up here saying, "No,
6    no, no.  This wasn't a marketing campaign.  This was about
7    credit card declines."  Did you see a single ViSalus witness,
8    either through deposition or live, say that any of these was
9    not?  Is it more likely true than not true?  In fact, the only
10   evidence that you have is that these were marketing campaigns.
11   It is certainly more likely true than not true that they were.
12          Now, prerecorded messages.  All of these were run.
13   These weren't ones that were set aside and not run.  Mr. Gidley
14   identified only the ones that were run to U.S. residents using
15   POM -- using POM.  We know that if they were run using POM, one
16   of two things happened, right?  If they were run using POM, one
17   of two things happened, because there were two campaign
18   strategies.  With POM, ViSalus used two campaign strategies.
19   It's an admitted a fact; one that you must accept.
20          If you are back in the jury room and somebody says,
21   "Well, maybe POM was used for something else," you didn't see
22   any evidence -- no document that they produced saying, "Ah, we
23   are now going to use POM for a live connect strategy."  Did
24   they show you the POM Live Connect strategy document; that they
25   ever used it?  No.  They didn't show that.

Rebuttal Argument

1    Did they call up one of their people that worked in

2  outbound support and have them testify or take their

3  deposition?  "I was there.  I used POM.  We used it with a live

4  connect strategy where there was no prerecorded message."  No.

5    With POM, there were two strategies.  That means

6  those 400 contact sheets that did run, they were run through

7  POM.  One of two things happened:  One, Press 1 calls were a

8  prerecorded or artificial voice instructing customers to press

9  1.  Telemarketing; prerecorded voice.  Or Voice Casting calls,

10  where an audit clip played a prerecorded call-back message.

11    Under either of those strategies that means that the

12  campaign used a prerecorded voice.  If in deliberations

13  somebody has a question about that, "Gee, do we really know?

14  What's the proof of that," I want you to take out the

15  stipulations and turn to stipulation 17.  With POM, there's two

16  strategies.

17    Now, we had those 400 contact lists.  They called

18  many people.  The other way you know these were prerecorded

19  messages is it would have been implausible, impossible, in

20  fact, for them to do it any other way.

21    You have got to use your common sense.  The

22  undisputed evidence is they had fewer than ten -- nine or fewer

23  employees in outbound support.  The undisputed evidence is that

24  most of the time -- most of the work that those outbound

25  employees did was to call people about credit card declines,

Rebuttal Argument

1   because if somebody's credit card is declined, you've got to

2   call them personally, get on the phone, and get a new number.

3   Most of their time was spent on that.  They had very little

4   time to handle WinBacks.

5           In fact, they only had enough time to handle a

6   WinBack if somebody pressed 1 and really wanted to talk to them

7   or call back.  They didn't have time to be connected to people

8   that had no interest in talking to ViSalus at all.

9           In fact, the evidence shows Mr. Gidley testified that

10  one of those outbound support agents could handle on average,

11  if things went well, perfectly, about one call every five

12  minutes.  That's about 12 in an hour.  In the course of a

13  eight-hour day, that's 96.  That is under 100.  That means

14  their whole team could do 1,000 calls in a day at most, but

15  they spent most of their time on credit card declines.  They

16  had very little time to take those WinBacks.

17          But we know that ViSalus was making over 8,000 calls

18  a day -- Saturdays and Sundays too.  It was physically

19  impossible for their outbound support team to do these calls

20  with a live connect strategy, which is why all these calls were

21  done using these two strategies -- prerecorded messages -- all

22  of them.

23          Let me show you a couple of examples -- let me back

24  up.  It was suggested to you that we should bring more people

25  like Ms. Wakefield.  That's not how class actions work.  She is

Rebuttal Argument

1   the representative.  Everyone else we have to prove using their
2   documents, using generalized proof, not individualized proof.
3   It is not going to prove up the class claims to call two or
4   three more people.  That would just prove up two or three more
5   plaintiffs.  We have to take this process.  We have to use
6   their documents, what they provided to us, to prove it for the
7   class.  And if we can do it by showing it is more likely true
8   than not true, that's all we have to do.  In fact, for all of
9   those more than two million calls, it's not just more likely
10  true than not true.  It is actually undisputed.  It is
11  undisputed that they were marketing.  It is undisputed that
12  they ran on POM.  POM used two strategies, both prerecorded
13  messages.
14          Here is an example in the evidence.  One of the class
15  members, a woman by the name of Dana Gay.  She got 26 calls
16  reported on this page, those campaigns.  Here is another 50; a
17  total of 56 calls.  These weren't live operators calling her.
18  This was a machine dialing her number time after time after
19  time leaving messages on her answering machine.
20          It was suggested to you, well, POM, maybe was set up
21  so maybe if you reached an answering machine, you wouldn't
22  leave a message.  You didn't see a single scrap of testimony,
23  no ViSalus witness saying, "When an answering machine picked
24  up, we would disconnect.  We wouldn't leave a message."  You
25  didn't see that.

Rebuttal Argument

1          In fact, Mr. Gidley was tasked with identifying which

2     of those disposition codes are the ones where no prerecorded

3     message would play and which were the ones where a prerecorded

4     message could play.  If you look in his declaration, he does

5     not identify "answering machine" as one where a prerecorded

6     message would not play.

7          If ViSalus had set up the POM machine where if the

8     answering machine picks up, and it disconnects, Mr. Gidley

9     would have identified "answer machine" as a code where no

10    prerecorded message would play.  If the answering machine needs

11    no message to play to disconnect, he would have identified it.

12    He did not.  That tells us they had it set up so that those

13    messages would be recorded on an answering machine.

14          Now, use your common sense.  Why would ViSalus have a

15    prerecorded telemarketing message with a call-back number

16    wanting to deliver it to tens of thousands of people, set up

17    their equipment so that if they actually reached someone's

18    answering machine, they don't record the message?  It doesn't

19    make any sense.  They wanted those people to hear the message.

20    That was the whole point of creating these prerecorded messages

21    to be delivered to thousands of people.

22          ViSalus did not call a single witness, either by

23    deposition or live, to say POM would not leave a message if an

24    answering machine answered.  There is not a single email, memo,

25    document, note, anything from ViSalus saying, "We set up POM so

Rebuttal Argument

1   that if an answering machine answered, then there is no

2   prerecorded message."  The reason, it's not how it was set up.

3   If that evidence would have existed, they would have brought it

4   to you.  That witness would be here.  Those documents would be

5   here.  They would have been shown it to you.  The answering

6   machine disposition code is one where prerecorded messages are

7   played.

8              One other example.  Lisa Brackett.  She got 40 calls.

9   Most of them went to her answering machine.  A few disconnected

10  by user.  She disconnected them before they could leave a

11  message.

12             Now, you heard from ViSalus's counsel that Mr. Gidley

13  had said something about wanting to connect live, and that's

14  how POM was used.  Mr. Gidley was very clear that when using

15  POM, yes, you can get connected to a live person, if you called

16  back, or if it was a Press 1 campaign.

17             He testified, "So what happens after the call is

18  placed through Progressive Outreach Manager?"

19             He answered, "Well, what are you asking?"

20             The question was, "At some point is there a live

21  person at ViSalus on the phone?

22             "We did have Press 1 campaigns for that, yes."

23             With POM, there weren't connections to live people,

24  with some campaigns.  Those were called Press 1, which meant

25  you have to go through a prerecorded message, which violates

Rebuttal Argument

1   the TCPA.  Mr. Gidley never said, "We had a live connect

2   strategy.  We used POM with a live connect strategy."  There

3   was no testimony like that whatsoever.

4          Now, we have gone from A and B; telemarketing/

5   prerecorded messages.  Were these to a residential or a mobile

6   number, the final step?  For all of those phone numbers on

7   those contact lists, all those numbers that were dialed, where

8   did they come from?  They came from a ViSalus application.

9   ViSalus would ask people to provide numbers.

10         Now, ViSalus asked people to provide their home phone

11  number or their mobile number.  Is it more likely true than not

12  true if somebody wrote a number into that blank that says "home

13  number," that it was their home number?  A typical person would

14  write their home number in there.  They are not being asked for

15  a business number.  They are being asked for a home number.

16         Is it more likely true than not true that if someone

17  was asked for their mobile number, and they chose to give it,

18  that they would write that into this blank?  ViSalus did not

19  ask people for business numbers.  The reason is, they're trying

20  to get involved in a network marketing program.  They

21  understand that people don't want it.  They have a job, and

22  they don't want to get calls at their place of employment about

23  this side gig that they are doing, and so they asked for home

24  and mobile.

25         But they said if you have a separate company set up,

Rebuttal Argument

1   you can fill out this other thing, and we identified those

2   businesses.  If people filled out a separate company name, we

3   identified those and then removed them from our count.  There

4   is approximately 6,700 of them.

5          ViSalus -- their only statement on this is, "Well,

6   maybe some slipped through."  Well, maybe some slipped through,

7   but where is the proof on that?  They didn't identify a single

8   one that slipped through.

9          Is it more likely true or not true that all of these

10  numbers are home or mobile numbers -- except the ones we

11  removed -- that everyone else will would he a home or mobile

12  number?  A to B to C for more than 2 million calls.

13         Telemarketing.  Mr. Gidley admitted they're all

14  marketing campaigns.  All used POM prerecorded message.  All

15  the numbers were home or mobile, except for the few we

16  excluded.

17         You just heard from ViSalus's counsel saying that,

18  once again, Press 1 wasn't used for WinBack.  Here is an

19  example from that POM tracker, "Press 1 WinBack."  That's the

20  name of it.  Isn't it reasonable to infer this is a Press 1

21  campaign for WinBack?  He is saying they didn't do it.  The

22  evidence shows otherwise.  Did they call a single witness to

23  say, "Yeah, for Press 1, we didn't use that for telemarketing"?

24  No.

25         Counsel suggested to you that this Jason O'Toole

Rebuttal Argument

1  WinBack campaign, that maybe it didn't run because there were

2  no completion codes.  No.  ViSalus's own record, the POM

3  tracker shows contacts completed.  How many?  67,000

4  contacts -- contacts completed.  That's the job status.  It was

5  fed into the POM machine, and they finished all of the 60,000.

6  The reason there are no completion codes is because ViSalus did

7  not keep all the records.  They didn't keep all the completion

8  codes.  We only have a limited set for about half of them.  But

9  for the ones that we do have, we know whether those calls

10 finished, and we know what the status was.

11        If you look at the POM campaign tracker, it tells

12 you -- this is Exhibit 34, page 302.  "For all the campaigns,

13 the data related to completed attempts gets archived to

14 historical tables forever."  That data, if you look on page

15 331, includes the campaign strategy.

16        If they had any evidence that went to their POM

17 machine and looked at the archive data, they could pull up any

18 of those and say, "Oh, yeah, we used a live connect strategy

19 for this one," they would have presented it.  They had the

20 data.  For any of these 400 to use live connect, "We didn't

21 send it out via Press 1 or Voice Cast strategy," they would

22 have reported that for you.  They didn't because it is not

23 true.  Why?  Because they used prerecorded messages for POM.

24        Now, let me finish the remaining minutes here with

25 the rest of the questions on the verdict form.  We talked about

Rebuttal Argument

1   Question 1, which is for Ms. Wakefield.  Was there at least one

2   telemarketing call using an artificial or prerecorded voice to

3   a residential telephone line?  Yes.

4           How many?  Well, the evidence shows that it is more

5   likely true than not true that there were five.  Why is that?

6   Because the evidence that Mr. Franzini showed you is that all

7   five of those calls were POM campaigns where prerecorded

8   messages were used.  That's ViSalus own documents.

9           We just don't have to rely upon the memory of

10  Lori Wakefield.  She testified that there were prerecorded

11  messages, at least after she got a chance to hear what a

12  prerecorded message sounded like.  But set that aside.  We know

13  from ViSalus's own documents that she got five calls, and we

14  know that they were to a residential landline.  Her home line

15  was a residential line.  There's no contrary evidence that it

16  was a business line.  So the number, the answer for Question 2,

17  should be five.

18          Now, for the class claim, we talked about that.  Was

19  there at least one telemarketing call; artificial or

20  prerecorded voice to mobile or cellular telephones?  Yes.

21          How many?  The answer is at least 1,927,928.  Where

22  does that number come from?  Mr. Davis summarized all of the

23  calls that were identified by ViSalus as ones that were

24  telemarketing.  These are the prerecorded messages.  He checked

25  that against the class list, which is defined as the

Rebuttal Argument

1   individuals who received a telephone call from ViSalus

2   promoting ViSalus products.  It features an artificial or

3   prerecorded voice.  And if we do the math, we have 4,123,856

4   call attempts.  We are going to deduct out about 1.7 million

5   where there was no outcome listed.  That's where the data was

6   missing.  We are going to deduct out the 415,000 where the

7   disposition code shows the message didn't go through.  It was

8   connected, there was a busy signal, but no answer.  All the

9   rest of them, the message was played.

10          And to be conservative, we can deduct out the 90,000

11  calls to invalid numbers and Canadian numbers.  Now, we don't

12  have to.  Why?  If it is an invalid number, it shows up in

13  Mr. Davis' analysis as it didn't go through.  No answer.  So it

14  has already been deducted.

15          If it is a Canadian number, that doesn't mean they

16  are not part of the class.  If they are residing in the U.S.,

17  they are still part of the class.  But to be conservative, if

18  we deduct those, that still leaves 1,927,928.  But we know that

19  number actually understates.

20          We know that there are more.  It is more likely true

21  than not true that there are more.  Why?  Because of this

22  1,690,000, where we don't know what the outcome is because

23  ViSalus didn't keep the data and give it to us, we know that

24  most of those calls went through as well, just like the others.

25  There were some "no answers" there.  There were some busy

Rebuttal Argument

1   signals there.  But there was probably, more likely than not

2   true, at least another million calls.

3          The truth is and the reality is that there were at

4   least 3 million calls where a prerecorded voice played a

5   telemarketing message to a mobile or home number; at least

6   3 million.  But to be conservative, we have proven that

7   certainly there's no dispute/no evidence to the contrary that

8   at least 1,927,928.

9          Now, Question 5, you will be asked:  Did we prove

10  that there was at least one call to a mobile number for the

11  class?  Your common sense tells you yes.  Among that large pile

12  of 2 million plus calls, they are either mobile or home

13  numbers, we know that there are many, many mobile numbers.

14  There was at least one for sure.

15         How many?  How many to a mobile number?  That's our

16  next question, Question 6.  That's a harder question.  We have

17  to use our common sense to answer it.  Why?  Because ViSalus

18  didn't keep the data.  It did not separate out which number is

19  mobile, which is home, and put them all into a single data

20  list.

21         But we can use our common sense to come up with an

22  answer to these questions.  These calls were made between the

23  end of 2014 and the beginning of 2016.  It was a time that we

24  know that many people did not have home landlines.  They had

25  solely cell phones.  It is reasonable to infer, if you use your

Rebuttal Argument

1  common sense, that at least half of those calls were to mobile

2  numbers.  Of the approximately 2 million, at least half of them

3  were to mobile numbers.

4        Think back to the informal survey that the Court did

5  of the jurors during jury selection.  Everybody had a cell

6  phone -- almost everybody -- and few people had landlines.

7  That was true of this group too.  Our common sense tells us

8  that at least half of those numbers were mobile numbers; and

9  therefore, I suggest that you respond this way:  At least

10  1 million.  We don't know specifically.  We can't write down a

11  specific number for that.  But we know it is more likely true

12  than not true that at least half of them were, which means at

13  least 1 million mobile numbers.

14        Now, final two questions:  Did we prove for the class

15  that there was at least one call to a residential telephone?

16  Well, again, so many calls.  In a mass call list, there was at

17  least one of those was to a residential number.  We know that's

18  more likely true than not true.

19        Now, again, how many?  This is a very difficult

20  question.  It's very difficult question.  It is hard to answer.

21  We know that most of them are mobile phones or more than half;

22  maybe 75 percent even.  We know the rest are residential, but

23  how many are residential?  We can't really pin that down very

24  far.  The best we can do is say, well, at least 10 percent of

25  them were.  It might be more.  It might be 20 or 25, but at

Jury Instructions

1   least 10.

2          So I suggest you write down at least 200,000.  So

3   that leaves some calls unaccounted for.  Of the 2 million

4   calls, if we say at least a million were mobile, at least

5   200,000 were residential.  There are some that are unaccounted

6   for.  Well, that's the best evidence that ViSalus gave us.  We

7   can't give you any better than that.

8          So for those questions you are going to leave some

9   calls to the side:  At least a million mobile; at least 200,000

10  residential.

11         So that completes the entire verdict form.  I will

12  end by saying, on behalf of my client, Lori Wakefield, my other

13  clients, the class, and my entire team, I thank you for your

14  attention.

15         THE COURT:  Thank you very much, Mr. Dovel.

16         I have a little bit more for you, then it will be in

17  your hands, and lunch too.

18         I will be picking up on the final jury instructions,

19  page 16 and Instruction 22.

20         Before you begin your deliberations, select one

21  member of the jury as your presiding juror.  The presiding

22  juror will preside over the deliberations and serve as the

23  spokesperson for the jury in court.  You shall diligently

24  strive to reach agreement with all of the other jurors, if you

25  can do so.  Your verdict must be unanimous.  Each of you must

Jury Instructions

1   decide the case for yourself, but you should do so only after

2   you have considered all of the evidence, discussed it fully

3   with the other jurors, and listened to their views.

4          It is important that you attempt to reach a unanimous

5   verdict, but, of course, only if each of you can do so after

6   having made your own conscientious decision.  Do not be

7   unwilling to change your opinion if the discussion persuades

8   you that you should, but do not come to a decision simply

9   because other jurors think it is right or change an honest

10  belief about the weight and effect of the evidence simply to

11  reach a verdict.

12         Because you must base your verdict only on the

13  evidence received in this case and on these instructions, I

14  remind you that you must not be exposed to any other

15  information about the case or to the issues it involves.

16         Except for discussing the case with your fellow

17  jurors during your deliberations, do not communicate with

18  anyone in any way and do not let anyone else communicate with

19  you in any way about the merits of the case or anything to do

20  with it.  This includes discussing the case in person, in

21  writing, by phone, or electronic means, via email, via text

22  messaging, or any Internet chat room, blog, website, or

23  application, including but not limited to Facebook, YouTube,

24  Twitter, Instragram, LinkedIn, Snapchat, or any other form of

25  social media.  This applies to communicating with your family

Jury Instructions

1    members, your employer, the media or the press, and the people

2    involved in this trial.

3            If you are asked or approached in any way about your

4    jury service or anything about this case, you must respond that

5    you've been ordered not to discuss the matter and to report the

6    contact to the Court.  By the way, just remember, that's while

7    the case is still going on.  After I discharge you, I'll

8    explain to you that you can discuss this with anybody that you

9    want, or you won't have to.  It is your choice.

10            But while you are still deliberating, do not read,

11    watch, or listen to any news or media accounts or commentary

12    about the case or anything to do with it.  Do not do any

13    research, such as consulting dictionaries, searching the

14    Internet, or using other reference materials.  Do not make any

15    investigation or in any other way try to learn about the case

16    on your own.

17            Do not do any research about this case, the issues,

18    the law, or the people involved, including the parties, the

19    witnesses, or the lawyers until you have been excused as

20    jurors.

21            If you happen to read or hear anything touching on

22    this case in the media, turn away and report it to me as soon

23    as possible.

24            These rules protect each party's right to have this

25    case decided only on the evidence that is presented here in

Jury Instructions

1   court.  Witnesses here in court take an oath to tell the truth,

2   and the accuracy of their testimony is tested through the trial

3   process.  If you do any research or investigation outside the

4   courtroom or gain any information through improper

5   communication, then your verdict may be influenced by

6   inaccurate, incomplete, or misleading information that has not

7   been tested by the trial process.

8          Each of the parties is entitled to a fair trial by an

9   impartial jury, and if you decide the case based on information

10  not presented in court, you will have denied the parties a fair

11  trial.  Remember, you have taken an oath to follow these rules,

12  and it is very important that you follow these rules.

13         A juror who violates these restrictions jeopardizes

14  the fairness of these proceedings, and a mistrial could result

15  that would require the entire trial process to start over.  If

16  any juror is exposed to any outside information, please notify

17  the Court immediately.

18         If it becomes necessary during your deliberations to

19  communicate with me, you may send a note through the courtroom

20  deputy, Mary, signed by your presiding juror or by one or more

21  members of the jury.  No member of the jury should ever attempt

22  to communicate with me except by a signed writing.  I will

23  communicate with any member of the jury on anything concerning

24  the case only in writing or here in open court.

25         If you send out a question, I will consult with the

Jury Instructions

1   parties before answering it, which may take some time.  You may

2   continue your deliberations while waiting for the answer to any

3   question.  Remember that you are not to tell anyone, including

4   me, how the jury stands numerically or otherwise until after

5   you have reached a unanimous verdict or have been discharged.

6   Do not disclose any vote count in any note to the Court.

7           In a separate document -- it's a four-page document.

8   Mary has the original that's single-spaced; yours is

9   double-spaced.  It is entitled "Special Verdict."  It has eight

10  questions.

11          The form "Special Verdict" has been prepared for you.

12  After you reached unanimous agreement on each applicable

13  question on that special verdict form, your presiding juror

14  should fill in the form, sign and date it, and advise the

15  courtroom deputy, Mary, that you are ready to return to the

16  courtroom.

17          You will see that it is divided up into Count 1,

18  which is Ms. Wakefield's individual claim.  Then there is

19  Question 1, followed by some instructions to you in italics,

20  telling you what to do, depending on whether your answer is yes

21  or no.

22          Then we go to Count 2.  That's the class claim.  I

23  have divided that up into three sections.  "A" combines mobile

24  cellular phones and residential lines.  Then there is a

25  Question 3 to be answered "yes" or "no" and then italics

Jury Instructions

1    instructions.   Instructions in italics that tells you what to

2    do, depending upon whether you answered "yes" or "no" in

3    question 4.

4              Then we go to (b).  That's for mobile or cellular

5    telephones only.

6              You will see question 5 and some instructions in

7    italics, Question 6, and then (c), residential landline

8    telephones only.  Then you will see Question 7 and some

9    instructions in italics.  Question 8.  Then a signature line

10   and a place for your presiding juror to sign and date the form.

11             Before I swear in our courtroom deputy, let me ask

12   counsel if I've misread anything.  Everything you've already

13   said on the record is preserved.

14             Did I misread anything or make any mistakes that

15   anyone wants to call to my attention to fix right now?

16             Plaintiff?

17             MR. DOVEL:  We didn't hear anything as it went by,

18   Your Honor.

19             THE COURT:  Defendant?

20             MR. O'NEAL:  No, Judge.

21             THE COURT:  Okay.

22             Mary, will you please stand and raise your right

23   hand.

24             (The clerk was duly sworn.)

25             THE COURT:  All right.  Members of the jury, thank

1    you for your service.  As soon as you get back in the jury

2    room, No. 1, your lunch will be there.  My guess is if you

3    ordered hot food, it will be room temperature.  If you ordered

4    cold food, it will be room temperature.  Sorry.

5              Thank you for your service, and the jury shall retire

6    to the deliberation room.

7              (Retired to deliberate at 1:32 p.m.)

8              (Open court; jury not present:)

9              THE COURT:  Will counsel for each side leave a note

10   for Mary with your cell phone numbers.  My rule is if the jury

11   comes back with a question or a verdict, Mary will call your

12   cell phones, whatever you leave for her, and you need to be

13   back in the courtroom no later than 20 minutes after she calls

14   you, preferably sooner, but no later than 20 minutes.

15             Also, it is both parties' responsibility to check and

16   double-check the list of received exhibits.  Mary has got the

17   official list.  If either side thinks that there is a mistake

18   or that something has been included that shouldn't or is left

19   off when it should be included, Mary will tell me.  I'll come

20   back, on the record, and we will resolve those disputes.  But

21   it is counsel's responsibility to double-check Mary's list.

22             MR. JACOBSON:  Your Honor previously approved a

23   special procedure for the collection of spreadsheet exhibits,

24   which was to put them on a computer scrubbed of anything else.

25   We have that.  We are going to show it to opposing counsel and

1   make sure it all checks out.  Then could we send that back?

2          THE COURT:  Yes.  If defense counsel has an

3   objection, let me know.  If there is no objection, give it to

4   Mary, show Mary how to work it, and she will send it back with

5   the rest of the exhibits.

6          MR. O'NEAL:  This is the 400-some spreadsheets?

7          MR. JACOBSON:  I believe.  It may include an

8   additional spreadsheet.  We will give you the list.

9          MR. O'NEAL:  If counsel is representing it's only the

10  spreadsheets that were admitted, that's fine.

11         THE COURT:  I'll leave it to you all.  If I need to

12  resolve something, I will.

13         (Recess pending verdict.)

14                 *     *     *     *

15         (Open court; jury not present; 4:30 p.m.)

16         THE COURT:  Good afternoon.  We are here without the

17  jury.  We have received a note from one of the jurors, from

18  Juror No. 1, Rebecca Cornett.

19         You have the copies, right?

20         COUNSEL:  Yes, Your Honor.

21         THE COURT:  We will mark it for our court files as

22  Court Exhibit A.  It reads:  Judge Simon, if we were to say

23  "yes" to B5, which is mobile cellular telephones only, did

24  plaintiff, as class rep, prove that defendant made or initiated

25  at least one telemarketing call, et cetera, et cetera, to a

1    mobile or cellular telephone?

2            If they answer "yes" to that question, then -- I

3    better read the whole jury question intact.

4            Ms. Cornett says, "If we were to say "yes" to B5,

5    then do we have to come up with numbers for the different

6    devices?  Thank you, Becky Cornett."

7            So the way I'm interpreting that is if they say "yes"

8    to question 5, must they fill in the blank on question 6.  Is

9    that how you all interpret it?

10            MR. DOVEL:  Yes, Your Honor.

11            MR. O'NEAL:  Yes, but with a clarification.  If

12    Your Honor remembers, counsel argued that they could do

13    something equivalent to speculate a writing in, like "at

14    least," or something.

15            THE COURT:  You're combining a couple of concepts.

16    You'll argue, I'm sure, post-trial, if you lose, that

17    plaintiff's counsel invited them to speculate.

18            MR. O'NEAL:  Yes.

19            THE COURT:  But I'm not quite sure I am going to

20    agree that writing "at least" and then a number is necessarily

21    speculation.

22            So, yes, you're correct that counsel invited them

23    that if they couldn't know the exact number, but they are

24    confident without speculation that they could have at least a

25    floor, they can write "at least."  And if that's what they do,

 1  if that's what happens, you can argue post-trial what the legal

 2  consequences are, and I'll take a close look at everything.

 3          But the way I'm interpreting the question is what if

 4  they can't come up a number, including an "at least" number.

 5  I'm assuming that if they felt that they could have unanimous

 6  agreement, that they could fill in "at least" X, that they

 7  wouldn't be sending us this question.

 8          So here is my thinking on it -- let me ask you.  How

 9  would you like me to respond?  First plaintiff.

10          MR. DOVEL:  I would like you to respond, yes, that

11  they do.  They should deliberate and see if they can reach an

12  answer on Question 6.

13          THE COURT:  How would defendant like me to respond?

14          MR. O'NEAL:  I think, Judge, they need clarity, which

15  specifies if they are unable to agree, that we should go back

16  to that concept.  If Your Honor remembers, we were exchanging

17  emails.  Originally one of your instructions was that maybe we

18  would put down "unknown" to identify the option what they don't

19  know.  And I think we're right there.

20          THE COURT:  Although here is the interesting question

21  that's in my mind, and we don't know where they are on this

22  point.  I think if they are all in unanimous agreement with the

23  answer "we can't tell," I think they can put down "we can't

24  tell."  I think also if they are in unanimous agreement "at

25  least" X -- and assume X is a specific number -- I think they

1    can write that down too, and then we will talk about the

2    implications.  But I don't think they are having a problem with

3    the "at least" concept.  I think some of them at least are

4    unable to tell.

5            Yes?

6            MR. DOVEL:  I would say that I think the other

7    alternative is that they are having trouble kind of agreeing

8    upon an "at least" number or an exact number.  So that's my

9    concern.

10            THE COURT:  Okay.  So maybe we have, let's say, half

11    the jurors come up and say it is X; half of the jurors say Y.

12    My guess is that's probably not the problem.  Assume X is lower

13    than Y.  I would think that if half the jurors say, "No, it is

14    not as high as Y; we think it is only X," they would ultimately

15    agree and say, "It's at least X."  That's the way I would read

16    this.  And they would all agree that it is at least X even if

17    four of them feel pretty confidently that it is higher than X;

18    that it should be Y.

19            But here is my concern:  What if we have, let's say,

20    half the jurors or a fraction of the jurors are convinced that

21    the number is either X or at least X, and the other half say

22    "we can't tell."  So we have some jurors who can't tell and

23    some jurors who are ready to write a number in or an "at least"

24    number.  That worries me a little bit.

25            As I said, I will have no problem at all if they all

1  unanimously agree "we can't tell," and I'll have no problem, at

2  least for right now, if they write "at least" X.  We will worry

3  about that later.  But I want them to agree on one or the

4  other.

5        So what I think I better tell them to do, and I'll

6  give both sides an opportunity to either talk me out of it or

7  take your objections.  But I think what I better tell them to

8  do is, "I can't tell whether you all agree or disagree, and I'm

9  not asking you.  But if you all agree that you can't tell, if

10  that's unanimous, you're welcome to write in that blank 'we

11  can't tell,' if that is your unanimous answer.

12        "If, however, some of you believe you can tell, and

13  you either want to write a number in or an 'at least' number

14  in, and others say 'we can't tell,' then you don't have an

15  agreement.  And I would like you to keep deliberating a little

16  bit longer.  And if at some point you want to report to me that

17  you're hopelessly deadlocked, and you will never have an

18  agreement, then fine.  Debate.  Deliberate a little bit longer.

19  And if you are really confident that's the case, fine.  You can

20  tell me that.  You can write in 'hopelessly deadlocked.'

21        "So really you have four choices.  You can all

22  unanimously agree on a number."  I'll call it X.  They can all

23  agree on an "at least" number, "at least" X.  They can all

24  unanimously agree "we can't tell" or "we can't decide."  And if

25  it is unanimous, so be it.  Or if they can't all agree on one

1   of those three options after they deliberate a little bit

2   longer, and they want to write "hopelessly deadlocked," I will

3   accept that as well.

4           I think I should give them those four choices.

5           Plaintiff's position

6           MR. DOVEL:  That makes sense, Your Honor.  It is very

7   sensible.

8           THE COURT:  Defendant's position?

9           MR. O'NEAL:  I concur.  Yes, I concur.

10          THE COURT:  I think it will be easier for me to bring

11  in the jury and explain that than to write it down.

12          Is that okay with you all?

13          MR. DOVEL:  Yes.

14          MR. O'NEAL:  Yes.

15          THE COURT:  Mary, let's bring in the jury.

16          (Open court; jury present:).

17          THE CLERK:  Please be seated.

18          THE COURT:  Good afternoon, members of the jury.  I

19  have received a question from one of you, from Juror Becky

20  Cornett.  Thank you.

21          I have discussed what the answer is that I'm going to

22  tell you in a few moments with the lawyers, and I thought it

23  would be easier for me to explain it orally than to write it

24  out.  So do not respond to anything that I'm saying.  If you

25  have a question, you can raise your hand and ask a question, or

1    you can submit it in writing later.  So don't give me any

2    signals.  Don't give them any signals about anything.  I will

3    just give you the response.

4           First of all, let me read into the record and make

5    sure we are all on the same page.  This is the question that

6    Ms. Cornett gave me:  Judge Simon, if we were to say "yes" to

7    B5 -- which is Question 5 -- then do we have to come up with

8    numbers for the different devices?  Thank you, Becky Cornett.

9           And I'm assuming you are referring in that question

10   "do we have to fill in the blank on Question 6?"  So "if we say

11   "yes" to Question 5, do we have to fill in a number on

12   Question 6?"

13          I think I will ask you this question:  Ms. Cornett,

14   is that what you were asking?

15          JUROR:  Yes.

16          THE COURT:  Okay.  Here is the way I would like to

17   answer the question and tell me if this makes sense.  You don't

18   have to agree if you don't like it, but I want to make sure you

19   understand what I'm saying.  I think you have four -- if you

20   say yes to Question 5, you have four options to Question 6.

21          Option No. 1.  You all agree on a number.  All eight

22   of you have to agree on a number.  For the sake of our

23   discussion, I'm going to label that number X.  I'm not going to

24   put my thumb on any numbers or anything.  Let's say you all

25   agree on X.  If all eight of you agree on X, fine.  Put in X.

1    That's Option 1.

2              Option 2.  Maybe some of you think it is X and some

3    of you think it is higher, like Y.  Assume X is the lowest

4    number you all agree on, but some of you think it is Y, a

5    higher number.  If you want, if you all agree on the following

6    answer, you may put in that line on Question 6 "at least" X,

7    and then you are done on that question.

8              I know some of you may think it should be higher,

9    like Y.  But if you can't agree on Y, but you all can agree on

10   a lower number, X, you're welcome in Option 2 to put in

11   "at least" X.  That's Option 2.

12             Here is Option 3:  If you all agree on the answer

13   being "we can't tell/we don't know/we can't tell," if you all

14   agree on that, all eight of you, then write in "we can't tell,"

15   and I'll accept that.

16             And here is Option 4:  We don't have unanimous

17   agreement on Option 1, 2, 3, or 4.  Maybe some of you really do

18   think it is X.  Maybe some of you really do think it is higher,

19   like Y, and you are not going to be satisfied with just putting

20   in X.  Maybe some of you really believe "we can't tell," and

21   others say "yes, we can.  It is X."  If you can't all get

22   unanimous agreement on Option 1, 2, or 3, talk about it a

23   little bit longer.  Look at it from somebody else's

24   perspective.  Deliberate a little bit further.  Make sure that

25   you've looked at it from all angles and how everybody else

1   looks at it.  But if you tell me that you are hopelessly

2   deadlocked, you will never agree on this Question 6 on whether

3   to fill in Option 1, Option 2, or Option 3, I'll accept that

4   too.  That's Option 4.

5          But I'm not ready to receive Option 4.  So don't come

6   right back and give me Option 4.  I want you to deliberate

7   further.  And if that's the direction you're going, look at it

8   from somebody's perspective.  Ask somebody else, "Why do you

9   think Option 1, 2, or 3 is the best answer," and listen with an

10  open mind.  As I said earlier, don't give up your truly held

11  opinions just to agree, but think about it from somebody else's

12  perspective.

13         But if you come back and you all unanimously agree it

14  is X, Option 1, we are done on that question.  If you all

15  unanimous agree it is "at least" X, that's good enough, if you

16  all agree.  Option 2.

17         If you all unanimous agree on Option 3, "we can't

18  tell," write in "we can't tell."

19         And if after talking about it a bit further, you are

20  hopelessly deadlocked, and you can't reach a unanimous

21  agreement on what to do between Options 1, 2, and 3, just write

22  in "hopelessly deadlocked."

23         First of all, do you all understand what I've just

24  said?  Okay.

25         Let me ask, plaintiff's counsel, any objections to

1   what I've just said?

2           MR. DOVEL:  No, Your Honor.

3           THE COURT:  Defense counsel?

4           MR. O'NEAL:  No, Judge.

5           THE COURT:  Okay.  Any follow-up questions, but don't

6   reveal any vote counts or specific issues?  Any follow-up

7   questions you want to ask me about this right now, or do you

8   want to go back and talk among yourselves?

9           Okay.  Go back and talk amongst yourselves.  Thank

10  you so much for that question.

11          (Recess pending verdict.)

12                          *    *    *    *

13          (Open court; jury present; 5:05 p.m.)

14          THE CLERK:  Please be seated.

15          THE COURT:  Good afternoon, members of the jury.  Who

16  speaks for the jury as the presiding juror?

17          JUROR:  I do Your Honor.

18          THE COURT:  Ms. Cornett, has the jury reached a

19  unanimous decision?

20          JUROR:  Yes, we have, Your Honor.

21          THE COURT:  All right.  Please hand the special

22  verdict to the courtroom deputy.

23          (Pause in proceedings.)

24          THE COURT:  All right.  In a moment I'm going to ask

25  our courtroom deputy to read aloud the answers to your

1  questions.  She is not going to read the questions.  She will

2  go Question 1, and then she will state what the answer is;

3  Question 2, and then state what the answer is.

4          I would like you all to listen to that, because as

5  soon as she is done, she is going to ask each one of you eight

6  by juror number -- starting with Juror No. 1, Juror No. 2,

7  Juror No. 3 -- she is going to ask "Is this your verdict?"

8  Please say "yes" or "no," because we want to ensure that we

9  have a unanimous verdict and that you all agree on all of the

10 answers that she is going to read out loud.

11         Mary, will you please read the answers on the special

12 verdict.

13         THE CLERK:  Sure.

14         We, the jury, being first duly sworn, unanimously

15 find as follows:

16         As to Count 1, Ms. Wakefield's individual claim, the

17 answer is yes.

18         How many calls, on Question 2.  For Count 2, class

19 claim, the answer is yes.

20         THE COURT:  That's Question 3.

21         THE CLERK:  Yes, Question 3.

22         And for Question 4, it's 1,850,436.

23         THE COURT:  Slowly.  Let's do that again.

24         THE CLERK:  1,850,436.

25         THE COURT:  All right.  Question 5.

 1                THE CLERK:  Question 5 is yes.  The answer is, "We

 2     cannot tell."

 3                THE COURT:  That's to Question 6?

 4                THE CLERK:  That's to Question 6.

 5                THE COURT:  "We cannot tell."

 6                THE CLERK:  For Question 7, yes.

 7                And for Question 8, "We cannot tell."

 8                It's dated this 12th day of April, 2019, by

 9     Rebecca Cornett, presiding juror.

10                THE COURT:  All right.  Will you please poll the

11     jury, Mary.

12                THE CLERK:  Juror No. 1, is this your verdict?

13                JUROR:  Yes, it is.

14                THE CLERK:  Juror No. 2, is this your verdict?

15                JUROR:  Yes, it is.

16                THE CLERK:  Juror No. 3, is this your verdict?

17                JUROR:  Yes.

18                THE CLERK:  Juror No. 4, is this your verdict?

19                JUROR:  Yes.

20                THE CLERK:  Juror No. 5, is this your verdict?

21                JUROR:  Yes.

22                THE CLERK:  Juror No. 6, is this your verdict?

23                JUROR:  Yes.

24                THE CLERK:  Juror No. 7, is this your verdict?

25                JUROR:  Yes.

1          THE CLERK:  And Juror No. 8, is this your verdict?

2          JUROR:  Yes.

3          THE COURT:  All right.

4          Mary, will you show counsel -- start with defense

5   counsel -- the verdict form.  We will get you copies of it, but

6   just take a look at it.  Then we will show plaintiff's counsel.

7          Let me say to the jury that I appreciate your hard

8   work, your diligence, your conscientiousness throughout this

9   trial.  We could not do this process without you.  As I said in

10  the beginning, this is a fundamental American way of resolving

11  disputes within our community, and I very much thank you for

12  your time -- I know you have been here three days -- for your

13  attention, for your hard work.

14         In a few moments I want to go back in the jury room

15  and thank you personally in person back there.  So if you don't

16  mind waiting for me for a minute or two, then I'll say good-bye

17  to you back in the jury room.

18         You are now officially excused.  I do accept your

19  verdict, and you are officially discharged.  You may, if you

20  want, keep any of your notes or your written jury instructions,

21  whatever we have given you.  If you want to keep them, you may

22  keep them.  If you don't want to keep them, just leave the

23  papers back there on the jury room table.  We will recycle the

24  nonconfidential.  If you leave your notes there, we will shred

25  your notes.

1          You may or may not -- well, you may decide you want

2     to tell people about this.  By the way, you are now free to do

3     whatever research you want, if you want to.  If people want to

4     talk to you, you are welcome to talk to people.  If you don't

5     want to talk to people, you are also welcome not to.  So just

6     feel free to say, "I would rather not talk about it."  If

7     anyone pressures you too hard or you find that you are being

8     made uncomfortable by that, contact Mary immediately, and I

9     will get involved immediately and provide you all the

10    appropriate protection that you want.  But as I said, also, if

11    you want to talk to people -- family, friends, employers,

12    whatever -- it is now your choice.

13          So thank you all for your hard work.  If you don't

14    mind waiting for me for a few moments, I'll be in in a few

15    minutes.

16          (Open court; jury not present:)

17          THE COURT:  We are here without the jury.  We do have

18    some items that I think need addressing for post-trial

19    scheduling.  What I would like is for both sides to confer with

20    each other and come up with an appropriate agenda and/or

21    schedule.  We still have to figure out how I'm going to deal

22    with the issue of willfulness or knowingly, and when -- whether

23    it should be by hearing oral testimony, receiving written

24    materials, briefing.

25          We also have to figure out a briefing schedule,

1    probably for at least I would expect for defendant's post-trial

2    motions, renewed motion for judgment as a matter of law.

3    Whether or not plaintiff wants to file a renewed motion for

4    judgment as a matter of law, you figure that one out if you

5    want to, but it should be on the same schedule, at least, if

6    you do do it.

7              So rather than make you figure that out now, since it

8    is Friday afternoon, will you confer with each other early next

9    week and figure out what needs to be done, see if you have a

10   way in which -- we need to get them back their computer too.

11   See if you can figure out or reach agreement on how you want to

12   handle the willfulness issue, whether it be by an evidentiary

13   hearing, submissions on the record, in writing, briefing.

14   Figure out what a briefing schedule should be for judgment as a

15   matter of law and responses.

16             If both sides can reach an agreement on both an

17   agenda and a briefing schedule, I don't anticipate not

18   following your agreed-upon schedule.  If you can't reach an

19   agreement, then I will order you to go back and deliberate

20   further.  But if you really can't reach an agreement, let me

21   know what each side respectfully proposes.  Then we will get on

22   the telephone next week and sort it all out.  But send us

23   something in writing if you can reach an agreement.  If you

24   can't reach an agreement, let Mary know, and then we will get

25   on the telephone and work it out.

1           Any matters that I must address today?

2           First from plaintiff?

3           MR. DOVEL:  Nothing from the plaintiff, Your Honor.

4           THE COURT:  From defendant?

5           MR. O'NEAL:  No, Judge.

6           THE COURT:  All right.  Have a good weekend.

7           MR. JACOBSON:  One question, Your Honor.

8           THE COURT:  Yes.

9           MR. JACOBSON:  What's the Court's policy on us

10  talking to the jurors, if they want to talk?

11          THE COURT:  I do not allow you to talk to a juror.

12  But if a juror contacts you, that's going to be their business.

13  But I don't allow you to call a juror.

14          MR. JACOBSON:  Understood.

15          MR. FOSTER:  Thank you, Your Honor.

16          (Court adjourned.)

1

2

3

4                                    --oOo--

5

6            I certify, by signing below, that the foregoing is a

7    correct transcript of the record of proceedings in the

8    above-entitled cause.   A transcript without an original

9    signature, conformed signature, or digitally signed signature

10   is not certified.

11
     /s/ Dennis W. Apodaca                    May 14, 2019
12   DENNIS W. APODACA, RDR, RMR, FCRR, CRR            DATE
     Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25

**"ANSWER: [14]** 487/10 487/17 487/23 488/1 492/8 493/4 493/7 496/16 496/21 505/18 505/20 506/3 506/12 532/6

**"QUESTION: [9]** 487/9 487/15 487/21 487/24 493/1 493/5 496/14 496/19 506/9

**BY MR. DOVEL: [19]** 412/14 413/15 418/1 423/3 424/15 425/17 447/1 447/17 448/10 449/6 449/21 450/4 450/9 450/18 450/25 451/8 451/15 451/23 452/5

**BY MR. FOSTER: [8]** 426/8 426/21 427/4 430/5 431/23 440/20 440/24 441/9

**COUNSEL: [1]** 555/19

**JUROR: [12]** 457/8 561/14 564/16 564/19 566/12 566/14 566/16 566/18 566/20 566/22 566/24 567/1

**MR. DOVEL: [52]** 406/11 406/14 406/17 407/8 407/17 407/21 408/25 409/10 409/13 411/22 412/2 412/12 413/14 417/9 417/16 417/19 417/21 426/3 446/20 447/12 447/16 447/24 448/3 448/25 449/5 449/12 450/13 452/4 452/12 453/4 453/8 453/10 453/18 454/1 454/3 454/8 454/13 455/16 455/18 471/5 474/13 474/16 530/3 530/6 553/16 556/9 557/9 558/5 560/5 560/12 564/1 570/2

**MR. FOSTER: [29]** 413/11 417/7 422/22 423/19 424/18 425/10 426/6 426/19 427/2 430/1 440/15 440/22 441/4 441/7 446/18 447/9 447/22 448/1 448/15 448/18 450/22 451/6 451/13 451/20 452/14 452/19 452/22 507/19 570/14

**MR. FRANZINI: [17]** 476/25 478/21 479/2 484/19 484/23 485/4 485/8 485/16 485/18 485/23 486/3 486/20 487/7 505/2 513/13 513/16 513/19

**MR. JACOBSON: [8]** 409/24 410/2 411/12 554/21 555/6 570/6 570/8 570/13

**MR. O'NEAL: [36]** 407/2 408/1 409/19 411/15 449/14 453/15 453/22 454/5 454/10 454/16 456/7 471/11 472/10 476/2 476/18 478/12 478/17 478/20 485/11 485/13 486/23 486/25 487/2 507/17 507/22 514/2 553/19 555/5 555/8 556/10 556/17 557/13 560/8 560/13 564/3 570/4

**THE CLERK: [17]** 412/6 560/16 564/13 565/12 565/20 565/23 565/25 566/3 566/5 566/11 566/13 566/15 566/17 566/19 566/21 566/23 566/25

**THE COURT REPORTER: [3]** 407/6 455/2 472/8

**THE COURT: [151]** 406/3 406/13 406/15 406/18 407/5 407/10 407/20 407/24 408/3 409/5 409/11 409/14 409/21 410/1 410/10 411/13 411/16 411/23 412/3 412/7 413/13 417/13 417/17 417/20 417/22 417/25 422/25 423/20 423/25 424/8 424/19 424/22 424/25 425/3 425/5 425/11 425/15 426/5 426/20 426/24 429/18 430/3 431/18 440/14 440/16 440/23 441/3 441/5 441/8 446/19 447/11 447/14 447/23 448/5 448/17 448/22 449/2 449/15 450/3 450/7 450/14 450/24 451/7 451/14 451/21 452/13 452/15 452/20 452/23 453/7 453/9 453/11 453/16 453/19 453/23 454/2 454/6 454/11 454/14 454/17 455/3 455/17 455/20 456/8 457/9 471/7 473/23 474/14 475/22 476/7 476/15 476/19 476/22 478/14 478/18 479/1 484/17 485/2 485/12 485/14 486/24 487/1 487/3 505/1 507/14 507/18 507/21 513/10 513/14 513/17 513/20 529/25 530/5 548/14 553/18 553/20 553/24 554/8 555/1 555/10 555/15 555/20 556/14 556/18 557/12 557/19 558/9 560/7 560/9 560/14 560/17 561/15 564/2 564/4 564/14 564/17 564/20 564/23 565/19 565/22 565/24 566/2 566/4 566/9 567/2 568/16 570/3 570/5 570/7 570/10

**THE WITNESS: [17]** 417/24 423/2 423/24 424/5 424/10 424/21 424/23 425/2 425/4 425/6 425/14 429/22 431/22 440/17 448/9 449/4 451/22

**$**

**$100 [2]** 481/16 530/24

**'**

**'at [1]** 559/13
**'Hey [1]** 493/18
**'hopelessly [1]** 559/20
**'Lori's [1]** 505/25
**'we [2]** 559/10 559/14

**-**

**--oOo [1]** 571/4

**/s [1]** 571/11

**1**

**1 million [1]** 547/10
**1,000 [1]** 537/14
**1,654,059 [1]** 413/25
**1,690,000 [1]** 545/22
**1,690,482 [3]** 420/12 500/18 501/21
**1,700,134 [1]** 415/13
**1,850,436 [2]** 565/22 565/24
**1,927,928 [4]** 502/5 544/21 545/18 546/8
**1-800 [8]** 435/4 435/15 435/18 436/1 436/9 436/10 436/13 444/25
**1-800/877 [1]** 435/22
**1-something-million [1]** 508/14
**1.7 million [2]** 416/20 545/4
**1.9 million [7]** 475/17 510/24 512/10 513/1 515/4 516/13 523/24
**1.9-something [2]** 510/22 522/12
**10 [3]** 518/9 547/24 548/1
**100 [7]** 404/7 439/19 440/2 480/1 480/2 480/5 537/13
**100,000 [1]** 475/20
**1000 [1]** 404/23
**101 [1]** 404/14
**10th [2]** 491/20 504/9
**11 [4]** 407/15 408/6 408/17 496/5
**111 [1]** 404/17
**115 [5]** 421/5 491/14 504/8 509/23 510/17
**12 [6]** 403/6 406/1 408/7 518/9 520/12 537/12
**123 [1]** 404/7
**12th [1]** 566/8
**13 [1]** 409/6
**14 [7]** 408/14 409/3 409/7 409/8 485/7 485/8 571/11
**15 [8]** 408/14 408/18 409/7 409/12 438/24 474/12 486/2 486/3
**16 [6]** 470/14 470/23 491/25 492/16 525/8 548/19
**17 [3]** 483/17 488/14 536/15
**19 [2]** 496/5 525/8
**19-second [1]** 525/22
**1:32 [1]** 554/7
**1st [2]** 491/19 504/9

**2**

**2 million [7]** 428/2 534/9 534/11 542/12 546/12 547/2 548/3
**2,000 [6]** 452/11 482/3 482/3 482/7 482/9 482/10
**20 [6]** 471/4 474/12 496/5 547/25 554/13 554/14
**200,000 [3]** 548/2 548/5 548/9
**201 [1]** 404/5
**2011 [1]** 496/8
**2013 [1]** 497/6
**2014 [3]** 491/25 497/6 546/23
**2015 [13]** 486/18 491/11 491/19 491/20 492/12 497/7 502/22 503/9 503/16 504/16 515/18 522/15 525/4
**2016 [4]** 492/1 516/5 525/4 546/23
**2018 [1]** 414/9
**2019 [4]** 403/6 406/1 566/8 571/11
**22 [3]** 496/5 502/21 548/19
**227 [1]** 465/1
**24 [3]** 479/25 486/19 486/20
**248 [1]** 481/5
**25 [3]** 485/21 485/23 547/25
**26 [1]** 538/15
**2695 [1]** 510/6
**27069 [1]** 443/1
**287 [1]** 442/18
**287-8490 [4]** 440/13 440/16 441/18 442/6
**28th [4]** 504/14 504/18 526/4 526/8
**2nd [5]** 480/22 481/2 503/9 503/16 526/3

**3**

**3 million [2]** 546/4 546/6
**30 [1]** 528/9

**30,000 [3]** 518/21 519/4 519/8
**30,000-something-plus [1]** 511/20
**301 [2]** 404/23 506/24
**302 [1]** 543/12
**31 [5]** 491/2 491/11 503/12 504/5 515/14
**32 [3]** 485/2 485/6 503/12
**326-8182 [1]** 404/24
**33,000 [2]** 440/7 440/14
**331 [1]** 543/15
**33602 [1]** 404/14
**34 [3]** 493/24 493/25 543/12
**34-48 [1]** 521/16
**3400 [2]** 404/14 404/17
**35 [1]** 525/21
**36 [32]** 406/20 411/21 412/10 412/16 415/11 418/9 426/1
  428/14 431/5 432/1 432/4 432/11 432/22 433/8 433/21 434/4
  434/8 434/17 434/24 435/3 436/1 437/2 437/8 437/19 437/22
  439/11 441/12 444/6 444/21 448/20 518/13 520/22
**36A [34]** 406/20 411/21 412/10 418/3 418/8 426/1 428/14 431/6
  432/1 432/4 432/11 432/22 433/8 433/22 434/4 434/8 434/18
  434/24 435/3 436/1 436/7 436/20 437/2 437/8 437/19 437/22
  438/5 439/11 441/12 444/6 444/22 448/20 449/23 518/14
**36B [9]** 432/9 433/9 437/3 437/7 437/15 447/3 447/8 447/10
  447/13
**37 [3]** 426/24 482/13 489/23
**38-115 [5]** 421/5 491/14 504/8 509/23 510/17
**3:15-cv-01857-SI [1]** 403/5

**4**

**4,033,856 [1]** 450/11
**4,123,856 [4]** 420/16 449/25 500/14 545/3
**40 [2]** 503/23 540/8
**400 [7]** 482/11 534/20 534/25 535/3 536/6 536/17 543/20
**400-some [1]** 555/6
**405 [6]** 412/24 413/5 413/20 413/23 419/11 430/10
**406 [5]** 405/2 482/13 483/13 483/13 491/23
**412 [1]** 405/4
**415,000 [2]** 417/4 545/6
**426 [1]** 405/4
**43 [2]** 486/12 512/13
**43-14 [2]** 485/7 485/8
**43-15 [2]** 486/2 486/3
**43-24 [2]** 486/19 486/20
**43-25 [2]** 485/21 485/23
**43-32 [2]** 485/2 485/6
**43-34 [2]** 493/24 493/25
**43-7 [2]** 484/21 484/23
**43-8 [2]** 485/11 485/18
**44 [5]** 488/9 488/9 488/10 488/16 516/4
**443-2695 [1]** 510/6
**447 [1]** 405/4
**454 [2]** 405/5 405/6
**457 [1]** 405/7
**469 [5]** 440/13 440/16 441/18 442/6 442/18
**47 [6]** 453/8 453/9 453/11 453/17 465/1 494/25
**471 [1]** 405/8
**477 [1]** 405/9
**48 [1]** 521/16
**480 [1]** 514/8
**4:30 [1]** 555/15
**4th [1]** 414/9

**5**

**5 and [1]** 411/3
**50 [6]** 453/19 453/24 471/10 471/13 474/3 538/16
**50 percent [11]** 475/18 480/16 480/18 480/21 480/24 481/1
  481/3 481/12 488/5 493/10 525/1
**50,000 [1]** 534/3
**503 [1]** 404/24
**507 [1]** 405/10
**530 [1]** 405/11

**548 [1]** 405/12
**553 [3]** 405/13 457/10 457/14
**56 [1]** 538/17
**564 [1]** 405/14
**58 [1]** 512/12
**58,000 [5]** 432/15 444/1 444/15 444/20 445/1
**58,800 [1]** 443/9
**58,801 [1]** 443/8
**5:05 [1]** 564/13

**6**

**6,000 [1]** 492/14
**6,700 [1]** 542/4
**6,724 [1]** 498/13
**60,000 [8]** 482/6 491/16 491/17 491/20 493/9 494/19 498/9
  543/5
**600 [1]** 404/5
**67,000 [1]** 543/3
**6700 [1]** 436/18
**6:00 p.m [2]** 480/22 481/2
**6th [1]** 433/11

**7**

**70 [1]** 441/21
**75 percent [2]** 482/22 547/22
**7514 [1]** 481/5
**764-7514 [1]** 481/5

**8**

**8,000 [2]** 492/15 537/17
**8,591 [3]** 492/1 492/2 492/20
**800 [10]** 435/4 435/4 435/15 435/18 435/19 436/1 436/9 436/10
  436/13 444/25
**805 [1]** 510/6
**8182 [1]** 404/24
**8490 [4]** 440/13 440/16 441/18 442/6
**85004 [1]** 404/11
**877 [1]** 435/22
**8th [2]** 504/4 526/3

**9**

**90 [2]** 421/8 498/10
**90,000 [6]** 449/12 450/4 450/6 501/9 501/13 545/10
**90401 [1]** 404/5
**94107 [1]** 404/8
**950,000 [1]** 475/19
**96 [1]** 537/13
**97204 [2]** 404/17 404/23

**A**

**A class [1]** 465/22
**ability [1]** 461/17
**able [6]** 437/24 463/11 489/5 492/17 508/10 525/13
**about [108]** 406/5 406/8 406/9 407/5 408/23 409/2 409/22
  410/14 410/16 412/20 418/5 418/17 418/18 420/21 421/25
  423/22 424/4 425/13 426/13 426/13 428/2 430/7 431/18 435/12
  437/18 438/3 441/21 443/12 449/11 451/2 452/7 453/14 455/25
  460/9 461/15 462/9 462/12 462/12 463/22 464/10 466/17
  479/22 480/11 481/18 481/19 484/16 486/7 486/9 488/10
  488/23 490/4 492/6 492/24 495/2 495/4 497/6 501/9 505/16
  511/13 512/8 515/16 515/22 516/1 518/13 519/25 520/2 520/10
  521/5 521/21 523/20 525/4 525/5 526/18 527/22 529/4 530/14
  530/16 531/12 532/18 533/23 535/6 536/13 536/25 537/11
  537/12 540/13 541/22 543/8 543/25 544/18 545/4 549/10
  549/15 549/19 550/3 550/4 550/12 550/15 550/17 558/1 559/3
  561/2 562/22 563/11 563/19 564/7 568/2 568/6
**above [1]** 571/8
**above-entitled [1]** 571/8
**absence [1]** 466/11
**absolutely [3]** 457/10 480/7 524/11
**accept [6]** 462/13 535/19 560/3 562/15 563/3 567/18
**access [2]** 464/16 464/19
**accidentally [1]** 526/13

**according [6]** 414/8 415/19 417/5 500/12 501/22 504/17
**account [3]** 437/25 461/16 481/3
**accounts [2]** 498/7 550/11
**accuracy [1]** 551/2
**accurate [3]** 432/11 432/13 523/21
**across [3]** 513/6 515/3 527/19
**act [2]** 464/25 533/2
**acted [2]** 473/7 473/10
**action [5]** 408/19 465/21 465/22 466/16 467/6
**actions [1]** 537/25
**actual [1]** 431/5
**actuality [1]** 428/14
**actually [25]** 408/8 425/8 469/8 469/11 469/12 481/14 484/1 486/17 488/19 491/5 501/3 502/8 502/8 508/16 512/13 512/15 516/7 516/15 519/2 520/15 528/21 530/22 538/10 539/17 545/19
**ad [1]** 430/8
**ad nauseam [1]** 430/8
**Adams [1]** 404/3
**add [4]** 406/11 481/13 491/23 527/21
**added [6]** 409/3 409/4 416/17 416/18 416/20 416/20
**addition [7]** 409/24 459/25 474/25 475/11 497/15 502/6 532/19
**additional [6]** 420/24 439/2 439/8 463/21 523/18 555/8
**address [3]** 424/24 478/5 570/1
**addresses [1]** 425/8
**addressing [1]** 568/18
**adequate [1]** 473/16
**adjourned [1]** 570/16
**adjust [1]** 519/6
**admitted [7]** 483/17 519/1 532/18 532/19 535/19 542/13 555/10
**advantage [1]** 481/4
**advertise [2]** 505/17 506/2
**advice [1]** 456/20
**advise [1]** 552/14
**advisement [1]** 474/2
**affidavit [4]** 426/14 426/14 427/14 427/21
**after [21]** 406/10 406/12 455/14 457/14 488/20 499/4 522/9 528/25 529/3 538/18 538/18 547/17 544/11 549/1 549/5 550/7 552/4 552/12 554/13 560/1 563/19
**afternoon [4]** 555/16 560/18 564/15 569/8
**again [49]** 409/12 411/5 419/22 420/8 420/18 428/25 430/14 432/18 432/21 436/22 437/5 439/9 440/11 440/15 442/20 443/11 444/1 444/11 445/9 447/10 448/5 476/23 480/18 485/9 485/24 486/5 488/4 494/10 504/16 504/18 507/9 514/25 516/14 518/7 521/4 521/9 523/14 523/16 525/2 525/16 526/16 526/17 527/14 531/10 534/3 542/18 547/16 547/19 565/23
**against [4]** 430/10 450/16 466/12 544/25
**agenda [2]** 568/20 569/17
**agent [10]** 484/17 488/12 488/13 488/16 488/20 490/1 490/9 521/17 521/19 521/25
**agent-based [1]** 521/17
**agents [5]** 422/14 466/8 477/6 488/19 537/10
**ago [4]** 432/6 447/5 448/18 448/25
**agree [49]** 417/24 427/13 428/18 431/6 431/8 432/24 433/2 435/21 435/25 436/18 436/21 436/25 440/1 440/2 443/14 444/20 445/8 446/11 458/9 556/20 557/15 558/15 558/16 559/1 559/3 559/8 559/9 559/22 559/23 559/24 559/25 561/18 561/21 561/22 561/25 562/4 562/5 562/9 562/9 562/12 562/14 563/2 563/11 563/13 563/15 563/16 563/17 565/9
**agreed [10]** 408/2 429/9 455/24 459/3 462/20 467/24 483/17 502/21 502/23 569/18
**agreed-upon [1]** 569/18
**agreeing [1]** 558/7
**agreement [18]** 469/19 499/19 548/24 552/12 557/6 557/22 557/24 559/15 559/18 562/17 562/22 563/21 569/11 569/16 569/19 569/20 569/23 569/24
**agrees [2]** 499/16 500/3
**Ah [3]** 515/1 516/12 535/22
**Ah-ha [2]** 515/1 516/12
**ahead [4]** 441/19 457/3 457/7 474/16
**all [209]**

**allege [1]** 472/23
**alleged [1]** 472/17
**allegedly [1]** 511/20
**alleges [1]** 465/13
**allow [3]** 449/4 570/11 570/13
**allowed [1]** 431/18
**allows [3]** 408/19 408/20 464/20 465/22
**almost [3]** 482/3 482/7 547/6
**alone [2]** 411/17 527/10
**along [5]** 421/6 456/23 457/2 457/8 520/19
**aloud [3]** 456/18 456/23 564/25
**alphabetically [1]** 443/18
**already [11]** 421/22 421/23 479/2 479/3 483/9 505/2 505/3 526/9 526/10 545/14 553/12
**also [50]** 410/22 416/19 418/13 418/14 425/9 429/12 435/2 436/25 445/21 459/3 462/4 463/17 466/15 466/18 467/20 467/20 468/10 472/2 472/21 475/3 479/22 481/12 482/20 483/8 487/4 489/18 490/24 494/22 496/11 499/24 500/23 501/8 502/1 502/12 502/23 507/9 515/7 521/2 524/25 525/14 526/7 527/21 528/5 532/5 532/19 554/15 557/24 568/5 568/10 568/25
**alter [1]** 464/18
**alternate [1]** 519/11
**alternative [1]** 558/7
**although [4]** 408/2 408/12 449/19 557/20
**always [1]** 522/23
**am [14]** 407/2 407/2 409/6 411/20 425/14 431/18 431/19 444/18 445/18 457/20 475/25 493/24 519/18 556/19
**amazing [1]** 480/7
**ambassadors [3]** 513/10 514/11 523/5
**ambiguous [1]** 533/18
**American [1]** 567/10
**among [5]** 465/2 471/2 472/23 546/11 564/8
**amongst [4]** 472/3 472/8 472/22 564/9
**amongst the [1]** 472/8
**amount [2]** 437/20 440/2
**Amy [6]** 510/5 510/7 510/8 510/10 510/12 518/16
**analogy [1]** 519/13
**analysis [13]** 419/12 421/12 423/9 447/7 448/12 450/20 451/2 451/19 451/25 452/9 452/10 518/20 545/13
**and/or [1]** 568/20
**angles [1]** 562/25
**Announce [2]** 503/17 504/15
**another [13]** 419/23 429/10 460/11 485/9 485/19 504/14 512/23 514/22 516/9 523/11 526/17 538/16 546/2
**answer [52]** 411/8 413/1 413/10 413/22 414/1 414/14 414/15 423/22 424/4 424/10 424/20 424/23 425/6 429/22 437/17 437/25 448/9 449/4 451/12 460/24 501/20 517/19 519/5 519/7 521/18 528/4 529/20 529/20 534/5 539/9 544/16 544/21 545/8 545/13 546/17 546/22 547/20 552/2 552/20 556/2 557/12 557/23 559/11 560/21 561/17 562/6 562/12 563/9 565/2 565/3 565/17 565/19 566/1
**answered [9]** 460/21 460/22 500/20 522/23 539/24 540/1 540/19 552/25 553/2
**answering [32]** 494/8 494/11 494/13 494/18 494/21 494/24 495/6 495/9 495/10 500/20 501/6 520/22 521/22 521/24 522/10 525/10 525/12 526/7 526/14 538/19 538/21 538/23 539/5 539/8 539/10 539/13 539/18 539/24 540/1 540/5 540/9 552/7
**answers [7]** 463/1 463/8 524/19 545/25 564/25 565/10 565/11
**anticipate [1]** 569/17
**Antioxidant [1]** 480/1
**any [131]** 406/21 406/24 407/9 413/7 415/6 419/7 421/2 421/18 422/15 425/23 425/25 426/14 433/15 433/21 434/23 437/13 437/21 446/14 450/20 451/5 451/19 452/1 453/14 454/7 456/5 458/2 458/10 458/20 459/1 459/2 460/3 460/14 461/4 461/16 461/20 461/23 462/20 463/7 463/8 463/19 463/22 463/25 464/6 464/8 464/11 464/1 464/14 464/17 464/23 464/24 465/2 466/8 466/11 466/12 466/14 466/16 467/22 468/22 469/22 470/1 470/6 470/12 471/3 471/10 472/17 473/17 479/10 479/21 481/12 486/11 489/5 489/7 489/20 494/15 498/5 499/17 499/23 506/3 506/10 506/10 506/11 506/24 512/15 514/8 515/25 516/7 517/23 518/16 525/20 527/15 528/20 529/9 535/2 535/2 535/8 535/22 536/20 539/19 543/16 543/17 543/20 548/7 549/14 549/18 549/19 549/22 549/24 550/3 550/11 550/12

**A**

**any... [21]** 550/14 550/15 550/17 551/3 551/4 551/16 551/16 551/23 552/2 552/6 552/6 553/14 561/1 561/2 561/24 563/25 564/5 564/6 564/6 567/20 570/1
**anybody [7]** 422/20 423/6 454/21 498/4 516/7 523/14 550/8
**anymore [4]** 507/10 527/11 528/11 528/12
**anyone [12]** 435/15 435/18 471/2 487/22 532/5 533/2 533/4 549/18 549/18 552/3 553/15 568/7
**anything [30]** 409/24 411/14 453/22 454/1 458/3 458/15 460/4 462/10 464/8 476/2 492/19 516/25 517/9 520/18 520/19 534/15 534/16 539/25 549/19 550/4 550/12 550/21 551/23 553/12 553/14 553/17 554/24 560/24 561/2 561/24
**Apodaca [4]** 404/22 454/20 571/11 571/12
**apologize [2]** 485/5 521/8
**apparently [1]** 523/24
**appear [3]** 418/21 441/11 485/14
**APPEARANCES [1]** 404/1
**appeared [4]** 444/15 452/8 452/10 452/12
**appears [3]** 441/13 442/2 443/10
**applicable [1]** 552/12
**application [4]** 495/23 496/10 541/8 549/23
**applications [5]** 440/4 496/3 496/7 496/13 497/12
**applies [3]** 457/24 499/11 549/25
**apply [7]** 458/5 458/7 467/18 467/22 499/12 513/5 515/3
**appreciate [2]** 507/12 567/7
**appreciates [1]** 507/12
**approach [4]** 426/20 440/23 451/18 476/19
**approached [1]** 550/3
**appropriate [3]** 474/6 568/10 568/20
**approved [1]** 554/22
**approximately [7]** 449/11 449/12 450/4 526/25 534/20 542/4 547/2
**April [25]** 403/6 406/1 414/9 433/11 480/22 481/2 486/18 491/11 491/19 491/20 502/22 503/9 503/16 504/3 504/4 504/9 504/9 504/14 504/16 504/18 504/18 525/3 526/3 526/3 566/8
**April 10th [1]** 491/20 504/9
**April 1st [2]** 491/19 504/9
**April 27th and [1]** 504/18
**April 28th [2]** 504/14 504/18
**April 2nd [3]** 503/9 503/16 526/3
**April 2nd and [1]** 504/3
**April 4th [1]** 414/9
**April 6th [1]** 433/11
**April 8th [1]** 504/4
**April of [1]** 504/16
**archive [1]** 543/17
**archived [1]** 543/13
**are [233]**
**area [7]** 431/17 431/21 432/22 437/10 437/12 437/13 437/14
**aren't [5]** 431/7 431/9 447/15 498/5 513/6
**argue [2]** 556/16 557/1
**argued [1]** 556/12
**arguing [1]** 513/19
**argument [13]** 405/9 405/10 405/11 411/11 454/25 470/19 470/22 474/8 476/18 476/25 487/6 507/17 530/9
**arguments [5]** 459/10 459/13 470/15 470/17 530/3
**arithmetically [1]** 417/18
**around [6]** 434/19 435/11 449/12 449/17 506/23 519/18
**articulated [2]** 474/10 475/25
**artificial [47]** 414/8 414/13 414/22 415/19 416/1 417/4 417/6 422/13 427/19 465/5 465/18 466/7 466/25 467/11 469/1 469/2 469/4 469/5 469/7 469/8 469/10 469/16 469/20 469/24 472/6 472/12 472/13 473/21 474/23 475/8 477/22 483/19 483/23 483/25 488/15 499/21 500/7 501/14 502/4 503/4 509/6 533/13 534/1 536/8 544/2 544/19 545/2
**artificially [1]** 427/12
**as [161]** 407/20 407/22 410/7 410/20 413/13 414/21 415/25 418/9 418/17 422/2 422/8 422/19 424/2 425/10 425/14 425/16 425/25 426/23 427/24 429/5 429/13 431/15 432/9 435/16 435/19 436/22 436/22 438/19 439/24 441/15 441/15 449/2 450/25 451/11 454/4 455/23 456/13 457/2 458/8 458/8 459/14 460/8 461/7 461/7 461/8 462/14 462/20 462/22 463/4 463/6

465/20 466/15 467/20 468/9 468/10 468/12 468/13 468/17 471/19 472/4 473/3 474/2 474/25 474/25 475/3 475/11 475/15 477/7 480/17 480/24 482/14 482/19 486/11 488/4 488/13 488/25 490/2 493/20 495/9 496/16 496/20 497/21 498/23 499/2 499/3 500/5 502/13 503/9 504/21 505/7 505/9 505/11 505/12 505/17 506/2 506/8 506/11 506/18 506/21 507/2 512/6 514/24 516/19 516/16 516/24 517/1 517/8 517/18 520/3 520/22 522/6 522/15 522/16 523/3 525/7 525/7 526/8 526/9 527/5 527/6 527/11 527/12 527/17 527/19 527/24 528/4 528/19 529/5 539/5 539/9 544/23 544/25 545/13 545/24 548/21 548/22 550/13 550/19 550/22 550/23 553/17 554/1 554/1 555/21 555/24 558/14 558/14 558/25 560/3 563/10 564/16 565/4 565/5 565/15 565/16 567/9 568/10 569/2 569/14
**aside [7]** 456/12 456/15 457/1 534/15 534/17 535/13 544/12
**ask [25]** 410/14 411/25 417/22 430/5 442/20 452/24 457/2 462/25 466/5 496/13 507/25 512/17 529/18 541/9 541/19 553/11 557/8 560/25 561/13 563/8 563/25 564/7 564/24 565/5 565/7
**asked [37]** 424/1 430/25 434/20 447/5 447/25 448/7 448/17 448/19 449/1 449/2 449/2 451/2 452/7 470/2 486/14 487/21 492/7 496/1 496/14 496/19 497/25 500/5 505/16 505/17 506/9 511/7 511/7 524/19 525/5 531/12 541/10 541/14 541/15 541/17 541/23 546/9 550/3
**asking [17]** 429/16 429/17 431/20 434/23 434/23 443/3 443/24 448/4 448/23 449/10 493/16 496/24 523/10 527/5 540/19 559/9 561/14
**asks [3]** 410/15 460/17 533/23
**aspect [1]** 464/11
**ASR [3]** 503/14 503/15 504/14
**assert [1]** 473/15
**asserted [1]** 474/8
**asserting [1]** 466/2
**assertion [1]** 525/9
**assertions [1]** 512/8
**asserts [3]** 465/9 473/14 528/18
**assigned [3]** 440/12 510/11 519/5
**associated [35]** 419/16 420/25 421/13 426/2 430/11 431/17 431/21 433/14 433/22 434/10 435/4 435/23 436/4 436/8 436/15 438/6 439/10 439/14 439/19 440/8 441/16 443/9 443/12 443/15 443/20 448/13 449/9 498/8 498/14 499/1 499/1 500/13 502/2 506/25 507/1
**assume [9]** 425/12 439/23 487/22 512/17 512/25 526/14 557/25 558/12 562/3
**assumed [2]** 444/16 515/7
**assuming [2]** 557/5 561/9
**assumption [3]** 487/24 517/17 532/7
**assumptions [2]** 508/16 515/5
**assuring [1]** 464/5
**at least [1]** 562/11
**attach [1]** 498/2
**attached [1]** 517/1
**attempt [3]** 464/18 549/4 551/21
**attempted [1]** 432/8
**attempting [1]** 464/1
**attempts [4]** 500/14 501/17 543/13 545/4
**attention [4]** 507/11 548/14 553/15 567/13
**attorney [2]** 507/16 530/2
**Attorneys [1]** 459/18
**audio [7]** 479/20 484/4 484/5 512/11 512/12 514/5 514/15
**audit [1]** 536/10
**August [2]** 515/18 525/4
**August 2015 [1]** 515/18
**authorizes [2]** 469/19 499/20
**automated [1]** 532/9
**automatic [1]** 497/17
**available [2]** 463/12 523/17
**Avaya [6]** 446/6 446/8 446/15 520/1 520/23 521/9
**Avenue [3]** 404/11 404/17 404/23
**average [1]** 537/10
**avoid [1]** 465/25
**aware [1]** 407/9
**away [2]** 514/23 550/22
**AZ [1]** 404/11

**B5 [3]**  555/23 556/4 561/7
**back [71]**  408/3 411/18 429/2 450/15 454/24 470/16 476/16 478/25 481/11 481/15 482/24 482/25 483/1 483/3 484/6 484/7 484/9 484/14 484/15 485/1 485/10 485/20 486/10 493/16 493/18 494/12 494/14 494/14 499/11 514/6 516/22 518/2 519/19 519/21 520/23 521/16 523/6 523/9 523/11 523/11 523/15 524/2 525/3 527/6 527/12 529/17 530/23 535/20 536/10 537/7 537/23 539/15 540/16 547/4 554/1 554/11 554/13 554/20 555/1 555/4 557/15 563/6 563/13 564/8 564/9 567/14 567/15 567/17 567/23 569/10 569/19
**bad [1]**  519/17
**balance [1]**  417/18
**base [2]**  458/23 549/12
**based [19]**  419/20 424/6 424/11 424/24 429/15 434/20 437/15 441/17 442/5 445/9 449/24 468/4 470/9 476/5 477/7 497/12 509/1 521/17 551/9
**basic [1]**  509/2
**basically [13]**  411/25 412/23 413/19 424/9 425/9 429/24 433/23 437/25 438/21 439/4 450/16 493/18 518/18
**basis [4]**  410/8 474/19 475/22 485/13
**be [155]**  407/4 407/15 407/19 408/2 409/3 409/4 410/7 410/19 410/23 411/11 412/7 416/3 417/6 418/21 420/2 422/6 422/20 423/7 426/3 426/10 430/11 430/16 431/3 433/1 433/21 436/15 437/24 437/25 438/2 439/9 440/1 440/2 441/11 441/13 443/10 443/22 443/25 445/6 445/11 447/6 447/20 450/2 451/11 456/9 457/4 457/4 458/9 458/17 458/21 459/20 459/24 459/25 460/7 460/13 460/16 460/21 460/22 460/23 461/1 463/10 463/11 463/12 463/17 466/18 469/2 470/2 470/5 470/21 470/25 473/14 474/6 479/6 480/20 484/17 487/12 487/24 489/2 489/5 492/9 492/17 492/18 494/11 496/16 496/21 500/2 500/5 501/3 505/1 507/9 508/8 508/10 513/3 513/5 513/15 516/16 516/13 517/14 518/24 518/25 520/5 520/8 520/8 521/8 521/23 523/8 523/11 523/12 524/5 525/13 526/12 527/13 527/23 527/24 528/22 529/16 537/7 539/13 539/21 540/4 540/4 544/17 545/10 545/17 546/6 546/9 547/25 547/25 548/16 548/18 548/25 549/6 549/14 551/5 552/25 554/2 554/3 554/4 554/12 554/19 557/7 558/18 559/25 560/10 560/17 560/23 562/8 562/19 564/14 568/14 568/23 569/5 569/9 569/12 569/14 570/12
**bear [1]**  461/23
**because [65]**  428/10 430/14 432/11 438/1 438/16 442/9 444/1 457/3 462/6 470/19 475/3 478/11 478/23 490/13 493/5 494/4 500/2 501/11 501/19 502/10 508/3 508/19 509/18 511/22 512/4 513/18 514/10 515/2 515/22 516/11 517/22 518/10 518/12 519/22 521/1 522/25 523/19 523/20 523/22 524/8 527/4 527/14 527/21 528/16 529/2 529/7 529/12 529/14 531/1 531/5 532/23 535/17 537/1 543/1 543/6 543/22 543/23 544/6 545/21 545/22 546/17 549/9 549/12 565/4 565/8
**Becky [3]**  556/6 560/19 561/8
**become [2]**  481/16 530/23
**becomes [1]**  551/18
**been [59]**  407/17 409/25 417/16 421/14 423/15 426/23 426/25 427/1 432/19 434/22 452/3 457/11 459/22 459/23 460/25 461/5 462/22 463/3 463/6 466/16 471/1 471/9 481/3 485/15 487/11 487/16 487/18 488/2 490/9 496/8 498/15 511/21 514/17 515/14 516/12 517/15 518/22 521/10 526/9 526/14 526/19 527/11 529/10 531/13 531/19 531/21 532/11 532/22 535/5 536/19 540/5 545/14 550/5 550/19 551/7 552/5 552/11 554/18 567/12
**before [22]**  403/13 407/25 411/18 420/2 427/6 429/3 438/19 451/11 458/12 462/18 462/24 484/18 485/3 503/10 524/22 525/19 525/22 527/18 540/10 548/20 552/1 553/11
**began [1]**  490/20
**begin [3]**  501/3 530/8 548/20
**beginning [9]**  458/4 477/2 483/23 491/25 508/5 513/9 516/24 546/23 567/10
**begins [2]**  469/9 469/9
**begun [1]**  501/2
**behalf [6]**  422/12 465/11 465/24 466/6 532/18 548/12
**behavior [1]**  463/7
**being [13]**  407/16 463/10 465/8 469/17 473/13 482/14 514/19 528/11 541/14 541/15 562/13 565/14 568/7
**belabor [1]**  493/21

**belief [1]**  549/10
**believability [1]**  461/24
**believable [2]**  462/16 519/8
**believe [30]**  428/2 431/15 435/10 438/10 442/1 444/10 445/21 445/24 446/5 447/25 448/2 448/16 448/19 459/19 461/11 461/12 461/12 462/10 488/2 492/10 511/18 512/12 516/4 521/12 523/1 525/16 532/22 555/7 559/12 562/20
**believed [1]**  524/15
**belonging [1]**  534/2
**below [1]**  571/6
**Berger [1]**  529/10
**Besides [1]**  433/14
**best [6]**  436/22 436/24 522/13 547/24 548/6 563/9
**bet [1]**  529/15
**better [8]**  495/2 521/6 524/23 524/24 548/7 556/3 559/5 559/7
**between [10]**  410/8 418/14 420/18 460/12 504/18 525/8 528/2 528/5 546/22 563/21
**beyond [1]**  517/9
**bias [1]**  461/20
**big [8]**  411/3 452/18 482/5 486/25 491/14 498/9 504/7 520/2
**bind [1]**  441/22
**binding [1]**  466/18
**bit [9]**  517/3 548/16 558/24 559/16 559/18 560/1 562/23 562/24 563/19
**bite [2]**  519/14 519/17
**black [1]**  480/5
**blank [5]**  541/12 541/18 556/8 559/10 561/10
**Blast [2]**  484/22 503/22
**Blast-JEwing [1]**  484/22
**blended [1]**  479/25
**blog [1]**  549/22
**Bob [3]**  445/15 445/17 518/16
**Bob's [1]**  445/15
**Body [1]**  512/23
**BOGO [1]**  516/21
**book [6]**  442/13 443/2 443/4 443/5 491/14 498/9
**booklet [1]**  442/21
**books [1]**  452/18
**borders [2]**  424/7 424/12
**both [18]**  419/10 434/22 444/21 460/11 467/18 470/11 474/7 478/7 503/12 504/23 513/21 527/4 538/12 554/15 559/6 568/19 569/16 569/16
**bottom [11]**  408/17 414/3 415/2 415/17 416/10 420/24 421/22 428/24 429/4 521/13 521/15
**Boulevard [2]**  404/5 404/14
**box [1]**  449/18
**Brackett [1]**  540/8
**Brady [2]**  404/10 404/13
**brand [2]**  479/22 481/8
**brand-new [2]**  479/22 481/8
**break [2]**  454/21 456/10
**brief [2]**  417/9 474/7
**briefed [1]**  474/8
**briefing [5]**  568/24 568/25 569/13 569/14 569/17
**briefings [1]**  411/10
**briefly [1]**  430/7
**bring [9]**  493/18 506/6 511/25 518/11 519/10 521/4 537/24 560/10 560/15
**bringing [2]**  411/18 526/12
**broke [1]**  428/23 525/18
**broken [3]**  420/5 420/17 420/17
**brought [9]**  422/24 461/6 489/12 509/21 511/3 511/14 512/1 512/18 540/3
**bucks [1]**  528/9
**bunch [1]**  509/24
**burden [12]**  458/20 470/11 470/20 508/18 508/18 510/16 516/14 524/6 528/15 528/16 529/13 529/19
**Bureau [2]**  495/2 521/6
**business [54]**  420/25 421/2 421/13 436/8 436/19 436/19 436/21 438/4 438/13 438/21 438/23 444/25 467/19 467/23 467/23 468/3 468/7 468/10 468/12 468/15 468/15 471/22 472/2 495/2 497/16 497/19 497/21 497/24 498/1 498/4 498/8 498/15 498/19 498/21 498/21 499/1 499/5 505/7 505/12 505/15 505/22

**B**

**business... [13]** 506/8 506/15 506/16 506/20 509/8 521/6 527/22 528/2 528/4 541/15 541/19 544/16 570/12
**businesses [19]** 418/13 421/3 421/4 435/23 436/5 436/16 436/22 438/6 438/18 439/2 439/5 439/8 439/10 451/18 451/19 452/2 498/6 498/24 542/2
**busy [9]** 490/17 490/19 500/21 500/25 501/1 501/4 501/24 545/8 545/25
**button [1]** 474/13
**buy [5]** 455/15 480/12 480/20 483/3 486/10
**bye [1]** 567/16
**Byron [2]** 503/25 527/8

**C**

**CA [2]** 404/5 404/8
**caffeine [1]** 480/2
**call [185]**
**Call's [2]** 516/25 517/7
**call-back [10]** 484/6 484/7 484/9 484/14 485/1 485/10 485/20 494/12 536/10 539/15
**called [42]** 428/8 428/22 429/3 432/25 437/16 442/10 445/13 445/17 446/2 455/24 459/3 465/8 465/19 469/18 472/1 473/3 473/4 479/23 484/3 491/2 491/17 491/17 491/20 492/10 494/22 495/24 496/9 503/12 503/13 503/13 503/17 504/15 510/12 511/24 520/11 524/11 527/13 529/13 532/10 536/17 540/15 540/24
**caller [2]** 469/19 499/20
**calling [5]** 483/9 491/6 494/14 527/12 538/17
**calls [215]**
**calories [1]** 480/5
**came [4]** 516/5 517/12 525/4 541/8
**campaign [59]** 418/15 418/15 419/4 419/8 482/24 482/24 483/18 483/18 483/19 483/22 484/2 484/8 488/8 488/11 488/17 489/15 491/2 491/8 491/9 491/16 491/18 491/18 495/9 503/12 503/13 503/14 503/15 503/17 503/17 504/1 504/5 504/6 504/6 504/8 504/14 504/15 504/16 504/22 515/9 515/13 515/17 516/19 521/3 521/17 522/7 525/2 530/17 534/15 535/3 535/4 535/6 535/17 535/18 536/12 540/16 542/21 543/1 543/11 543/15
**campaigns [48]** 418/24 418/25 419/2 419/3 419/6 419/7 419/15 419/16 419/18 419/19 419/19 419/19 420/6 420/22 482/18 482/19 482/21 482/21 482/23 483/7 483/8 483/8 488/8 488/11 488/17 491/4 491/6 492/18 515/15 515/25 516/21 516/21 516/22 525/3 530/15 534/14 534/14 534/18 534/19 534/21 535/1 535/10 538/16 540/22 540/24 542/14 543/12 544/7
**can [82]** 407/22 411/10 412/21 414/10 416/12 418/7 419/22 423/3 423/25 431/11 433/19 440/22 442/20 443/12 445/6 447/8 447/19 448/10 449/5 449/17 449/20 452/25 457/5 460/16 479/19 481/14 481/16 484/12 494/17 497/4 497/9 497/13 501/18 501/21 501/22 502/1 503/4 506/14 515/2 515/3 517/18 517/20 518/24 519/5 520/5 520/8 521/14 521/23 525/2 526/14 527/2 527/3 528/22 530/19 530/22 538/7 540/15 542/1 545/10 546/21 547/24 548/25 549/5 550/8 556/25 557/1 557/11 557/23 558/1 559/12 559/19 559/20 559/21 559/22 559/23 560/25 561/1 562/9 562/21 569/11 569/16 569/23
**can't [60]** 411/8 425/16 433/18 433/20 435/10 437/12 440/18 442/7 445/6 449/15 497/2 509/17 509/18 510/15 511/8 512/4 513/3 513/4 513/5 516/13 518/5 518/7 521/1 521/1 521/7 523/22 523/23 523/25 525/19 525/19 527/23 529/5 547/10 547/23 548/7 557/4 557/23 557/23 558/22 558/22 559/1 559/8 559/9 559/11 559/14 559/24 559/25 562/9 562/13 562/12 562/14 562/20 562/21 563/17 563/18 563/20 569/18 569/20 569/24
**Canada [10]** 424/7 424/8 424/12 424/13 424/13 424/18 425/23 426/2 432/2 433/5
**Canadian [24]** 423/14 425/8 425/23 431/17 431/21 432/3 432/15 432/21 433/4 433/8 433/14 434/13 444/25 447/7 447/21 448/13 448/21 449/9 501/10 501/13 502/2 518/21 545/11 545/15
**Canadians [2]** 433/1 433/7
**candidate [1]** 511/19
**cannot [6]** 414/22 460/23 517/17 566/2 566/5 566/7

**capable [1]** 463/10
**card [9]** 515/25 518/1 516/22 517/9 533/15 535/7 536/25 537/1 537/15
**cards [1]** 505/22
**Carr [2]** 510/5 510/7
**case [60]** 408/1 420/20 454/19 455/22 456/4 457/24 458/7 458/12 460/6 461/3 461/10 461/20 464/11 464/13 465/21 466/4 466/15 466/17 470/25 471/2 471/8 474/2 477/2 482/2 482/10 482/15 489/25 490/3 490/4 490/6 495/14 499/6 508/4 512/10 516/14 516/16 516/20 520/8 520/24 521/11 523/25 525/11 526/12 526/21 549/1 549/13 549/15 549/16 549/19 549/20 550/4 550/7 550/12 550/15 550/17 550/22 550/25 551/9 551/24 559/19
**Cast [2]** 494/1 543/21
**Casting [18]** 484/3 484/3 484/5 484/11 484/24 485/9 485/19 485/24 504/22 516/16 516/17 516/18 516/23 516/25 517/5 517/6 517/8 536/9
**catch [1]** 440/5
**categorize [1]** 439/24
**caught [1]** 409/4
**cause [1]** 571/8
**CCA [2]** 521/17 521/24
**cell [7]** 423/14 435/16 471/19 546/25 547/5 554/10 554/12
**cellular [16]** 410/15 465/4 465/15 467/14 467/18 468/1 469/15 470/1 473/17 477/25 495/19 544/20 552/24 553/4 555/23 556/1
**Central [1]** 404/11
**certain [11]** 427/9 428/9 429/12 439/6 455/24 459/7 461/5 462/20 484/15 490/15 517/13
**certainly [5]** 501/14 502/4 520/20 535/11 546/7
**certified [2]** 473/15 571/10
**certify [2]** 474/4 571/6
**cetera [3]** 448/21 555/25 555/25
**challenge [3]** 481/4 481/11 483/3
**chance [5]** 481/6 506/5 507/8 528/25 544/11
**change [5]** 441/7 447/9 481/11 549/7 549/9
**changed [1]** 524/20
**changes [4]** 406/6 408/21 408/23 409/2
**Chapter [3]** 520/12 521/12 521/12
**characterization [2]** 413/12 429/6
**characters [1]** 438/25
**charts [7]** 406/21 406/21 406/22 406/22 406/23 406/24 407/9
**chat [1]** 549/22
**check [6]** 430/23 456/3 533/21 554/15 554/16 554/21
**checked [2]** 496/25 544/24
**checker [1]** 433/23
**checks [1]** 555/1
**cherrypicked [1]** 514/15
**choice [2]** 550/9 568/12
**choices [2]** 559/21 560/4
**choose [1]** 462/10
**chose [1]** 541/17
**circumstantial [3]** 460/7 460/10 460/13
**city [1]** 425/23
**claim [33]** 458/20 458/22 465/10 465/10 465/21 466/2 466/19 466/20 467/5 467/6 470/7 470/8 474/18 475/5 475/12 477/14 499/6 502/13 502/14 508/9 508/23 515/5 516/10 523/24 524/6 526/18 528/14 528/22 544/18 552/18 552/22 565/16 565/19
**claimed [1]** 526/8
**claims [5]** 465/25 476/7 515/20 527/20 538/3
**clarification [1]** 556/11
**clarity [1]** 557/14
**class [113]** 408/19 421/25 422/1 422/1 422/3 422/20 422/25 423/7 423/10 423/11 423/13 423/15 424/17 425/20 430/8 430/9 430/12 430/16 430/19 430/21 430/24 431/3 431/10 431/13 433/1 442/3 465/11 465/16 465/21 465/22 466/3 466/4 466/11 466/12 466/14 466/16 466/18 467/5 467/6 467/9 467/13 467/15 469/22 470/1 470/8 470/8 471/16 472/3 472/7 472/8 472/13 472/20 472/24 473/1 473/14 473/16 475/5 475/7 475/10 475/12 475/17 477/11 477/13 477/13 477/14 477/21 477/24 478/1 486/15 490/7 495/18 495/20 499/6 500/1 502/11 502/13 508/2 508/4 508/9 508/13 508/23 509/1 511/14 511/24 512/15 512/18 513/1 513/6 515/4 516/10 522/11 524/1 524/6 528/14 528/22 532/13 533/23 534/2 537/25 538/3 538/7 538/14 544/18

**class... [9]** 544/25 545/16 545/17 546/11 547/14 548/13 552/22 555/24 565/18
**clean [1]** 429/20
**clear [2]** 416/3 540/14
**clearer [1]** 418/7
**clearly [5]** 469/19 499/19 519/16 520/8 520/23
**clerk [1]** 553/24
**client [15]** 486/18 488/4 507/12 508/19 508/19 511/12 524/8 524/11 526/11 528/16 530/10 530/10 532/14 533/8 548/12
**clients [2]** 459/18 548/13
**clip [3]** 484/5 512/25 536/10
**clips [11]** 508/8 512/11 512/12 512/22 512/25 513/3 513/3 513/6 513/8 514/5 514/15
**clock [1]** 476/10
**close [58]** 432/16 471/11 492/20 496/11 557/2
**closely [2]** 512/9 528/6
**closer [3]** 407/8 517/3 524/23
**closing [17]** 405/9 405/10 407/6 407/13 454/25 459/13 470/14 470/17 470/18 470/22 476/18 476/24 487/6 507/17 516/3 530/3 530/9
**Coast [1]** 514/19
**code [28]** 413/5 413/20 414/1 415/7 415/16 416/10 417/1 420/3 427/9 428/11 428/16 431/21 437/11 437/13 437/17 446/9 446/11 446/16 451/13 465/1 501/1 517/14 518/4 518/5 520/22 539/9 540/6 545/7
**codes [43]** 414/12 415/9 415/24 416/5 416/18 416/19 417/6 418/21 419/5 421/19 425/25 426/15 427/11 427/15 427/20 428/3 428/19 428/22 429/10 431/17 437/12 437/14 446/10 446/15 449/8 490/16 500/10 500/12 500/22 500/23 502/9 509/25 519/24 519/25 520/10 520/11 520/11 520/14 534/4 539/2 543/2 543/6 543/8
**coin [1]** 511/8
**cold [1]** 554/4
**colleague [1]** 519/3
**collect [1]** 452/25
**collected [1]** 495/24
**collection [1]** 554/23
**collections [1]** 531/16
**column [18]** 412/21 412/23 413/3 413/4 413/17 414/18 418/16 418/20 419/2 419/3 419/6 419/9 419/10 420/8 434/9 438/16 438/20 509/15
**columns [4]** 412/20 418/14 418/24 520/15
**combined [1]** 410/23
**combines [3]** 410/8 410/17 552/23
**combining [1]** 556/15
**come [37]** 411/18 450/9 452/19 452/20 454/24 470/16 481/15 482/25 483/1 486/6 486/10 486/16 493/16 511/24 514/18 514/20 516/22 523/5 523/9 523/14 523/19 527/6 529/2 530/22 533/4 541/8 544/22 546/21 549/8 554/19 556/5 557/4 558/11 561/7 563/5 563/13 568/20
**comes [5]** 444/4 444/5 518/2 523/25 554/11
**comfortable [4]** 443/19 443/22 443/25 444/2
**coming [2]** 406/21 522/9
**comma [2]** 406/11 408/10
**commentary [1]** 550/11
**comments [2]** 453/15 529/5
**common [11]** 438/13 497/4 497/10 497/13 536/21 539/14 546/11 546/17 546/21 547/1 547/7
**communicate [5]** 549/17 549/18 551/19 551/22 551/23
**communicating [1]** 549/25
**communication [1]** 551/5
**communications [2]** 495/4 502/18
**community [1]** 567/11
**companies [1]** 498/12
**company [5]** 498/2 498/3 502/18 541/25 542/2
**complaining [1]** 522/14
**completed [3]** 543/3 543/4 543/13
**completes [1]** 548/11
**completion [5]** 500/12 520/11 543/2 543/6 543/7
**complex [2]** 520/4 521/9
**compliance [1]** 521/19 522/2 522/4

**composed [1]** 466/4
**computation [1]** 436/7
**computer [13]** 443/22 463/12 463/14 463/16 463/22 464/12 464/14 464/16 464/18 464/20 464/23 554/24 569/10
**concede [1]** 427/14
**conceded [1]** 518/23
**concedes [1]** 518/22
**concept [2]** 557/16 558/3
**concepts [1]** 556/15
**concern [3]** 466/13 558/9 558/19
**concerning [1]** 551/23
**concession [1]** 529/7
**conclude [6]** 474/19 475/4 497/10 497/13 507/10 529/15
**concluded [1]** 449/24
**concur [2]** 560/9 560/9
**confer [2]** 568/19 569/8
**confident [2]** 556/24 559/19
**confidential [3]** 457/15 457/16 457/17
**confidently [1]** 558/17
**confirm [1]** 527/12
**confirmed [1]** 495/8
**conformed [1]** 571/9
**confronted [1]** 519/3
**connect [34]** 477/6 488/12 488/16 488/24 488/25 488/25 489/3 489/4 489/6 489/10 489/10 489/15 489/19 489/19 490/13 490/22 490/25 492/15 492/15 493/13 520/6 522/19 522/23 522/24 528/18 535/23 535/24 536/4 537/20 540/13 541/1 541/2 543/18 543/20
**connect/no [1]** 490/22
**connected [10]** 483/21 484/17 489/15 508/2 527/8 534/8 534/11 537/7 540/15 545/8
**connections [1]** 540/23
**connective [4]** 508/10 512/9 516/9 518/12
**connects [1]** 512/3
**conscientious [2]** 462/19 549/6
**conscientiousness [1]** 567/8
**consent [20]** 408/13 408/15 409/9 409/13 422/15 465/8 465/19 466/9 466/13 469/17 469/18 469/22 499/12 499/13 499/13 499/17 499/19 499/22 500/4 533/1
**consequences [1]** 557/2
**conservative [3]** 545/10 545/17 546/6
**consider [17]** 436/8 458/25 459/5 459/8 460/1 460/3 460/1 461/3 462/5 463/4 468/8 468/11 468/23 479/12 505/6 505/10 506/14
**consideration [1]** 462/19
**considered [2]** 459/24 549/2
**considering [1]** 461/15
**consistent [4]** 462/1 521/21 523/3 533/20
**consistently [2]** 411/2 411/5
**consists [1]** 459/1
**constitute [1]** 472/23
**constituted [1]** 472/20
**construction [1]** 438/10
**construe [1]** 517/21
**construes [1]** 517/25
**consult [2]** 458/1 551/25
**consultants [1]** 438/10
**consulting [1]** 550/13
**Consumer [1]** 464/25
**contact [52]** 413/23 416/4 419/4 419/7 429/25 432/14 452/11 482/3 482/3 482/3 482/5 482/9 482/10 482/12 482/14 482/17 482/22 483/14 489/23 489/24 489/24 490/1 490/8 490/10 490/12 490/21 491/9 491/13 491/13 491/15 491/15 491/17 491/23 492/23 493/4 493/9 501/9 503/22 503/22 503/23 504/7 504/11 504/15 504/19 515/21 522/1 533/7 536/6 536/17 541/7 550/6 568/8
**contacts [5]** 498/9 543/3 543/4 543/4 570/12
**contain [3]** 414/19 414/23 415/6
**contained [2]** 413/25 414/20
**contend [3]** 469/21 499/22 533/1
**contending [1]** 510/12
**content [1]** 514/4
**continue [4]** 411/22 412/11 514/2 552/2

**C**

**continuing** [1] 412/9
**contractor** [1] 523/12
**contradicted** [1] 461/21
**contrary** [2] 544/15 546/7
**control** [2] 458/5 460/16
**controls** [3] 459/16 487/7 513/24
**convinced** [1] 558/20
**cool** [1] 480/6
**copies** [4] 407/17 456/1 555/19 567/5
**copy** [6] 408/3 455/20 457/24 463/18 464/24 471/5
**corner** [3] 429/4 442/14 442/22
**Cornett** [9] 555/18 556/4 556/6 560/20 561/6 561/8 561/13
564/18 566/9
**corporation** [1] 462/18
**corporations** [1] 498/12
**correct** [57] 412/19 414/16 417/2 417/7 417/16 418/22 418/23
419/14 419/17 420/7 420/9 420/19 420/23 421/17 422/17
422/18 425/15 426/16 426/17 427/25 428/1 428/3 428/4 428/12
428/13 428/20 429/2 429/6 429/8 430/12 430/13 430/16 430/21
431/13 431/14 432/1 432/2 432/16 433/5 433/13 434/5 435/5
436/5 437/2 437/8 437/11 442/3 442/4 444/4 444/22 445/14
446/6 446/7 446/17 493/8 556/22 571/7
**correctly** [2] 420/20 434/3
**corroborating** [4] 512/2 512/2 523/18 528/20
**could** [62] 414/8 415/2 415/19 416/1 417/5 417/7 417/12
417/16 421/6 430/11 432/19 434/22 436/23 437/24 443/13
447/5 448/21 449/14 449/19 460/11 474/19 475/4 476/6 476/19
489/12 490/12 490/15 490/17 492/14 500/22 500/24 501/1
501/23 510/20 511/2 511/12 511/13 511/19 511/23 511/23
512/1 512/18 516/8 517/13 518/8 521/13 522/12 522/14 527/11
533/18 537/10 537/14 539/4 540/10 543/17 551/14 555/1
556/12 556/24 557/5 557/6 567/9
**couldn't** [13] 430/25 437/20 439/6 441/22 443/16 501/5 507/13
508/20 518/10 518/11 523/17 526/22 556/23
**counsel** [24] 447/25 452/25 456/3 476/7 476/24 513/19 519/9
529/10 540/12 542/17 542/25 553/12 554/9 554/25 555/2 555/9
556/12 556/17 556/22 563/25 564/3 567/4 567/5 567/6
**counsel's** [2] 447/19 554/21
**count** [30] 415/16 419/15 432/15 434/25 435/10 437/7 438/2
449/24 450/21 465/10 465/12 465/21 466/19 466/20 467/5
467/5 467/6 470/7 470/8 470/11 470/11 474/18 497/2 509/10
542/3 552/6 552/17 552/22 565/16 565/18
**Count 1** [8] 465/10 466/19 466/20 470/7 470/11 474/18 552/17
565/16
**counted** [7] 420/11 420/15 426/1 434/13 434/18 436/1 534/20
**counting** [3] 432/13 444/17 498/5
**countries** [5] 433/15 433/17 433/22 433/25 434/21
**counts** [7] 421/19 432/1 439/3 439/9 444/21 445/1 564/6
**couple** [9] 418/6 496/4 512/18 512/22 513/2 521/6 533/18
537/23 556/15
**couple-page** [1] 521/6
**course** [10] 407/12 410/2 459/6 476/1 494/19 504/9 513/1
530/6 537/12 549/5
**court** [44] 403/1 403/14 404/22 406/3 412/6 455/15 460/5 463/5
463/13 464/3 464/6 464/8 464/21 471/7 476/15 476/22 479/20
484/23 485/2 485/8 485/18 485/23 486/3 486/20 489/12 493/25
547/4 548/23 550/6 551/1 551/1 551/10 551/17 551/24 552/6
554/8 555/15 555/21 555/22 560/16 564/13 568/16 570/16
571/12
**Court's** [2] 459/20 570/9
**Courthouse** [1] 404/22
**courtroom** [14] 454/10 463/13 463/20 463/20 463/23 464/4
551/4 551/19 552/15 552/16 553/11 554/13 564/22 564/25
**crash** [1] 479/24
**create** [3] 441/12 444/6 445/10
**created** [4] 487/12 531/14 531/15 531/17
**creating** [6] 422/25 433/9 437/3 437/7 444/8 539/20
**credible** [4] 524/16 525/16 526/16 527/1
**credit** [9] 515/23 516/1 516/22 517/9 534/15 535/7 536/25
537/1 537/15
**cross** [7] 405/3 423/2 426/6 426/8 499/25 501/8 506/5

**cross-examination** [5] 423/2 426/6 426/8 499/25 501/8
**cross-examine** [1] 506/5
**CRR** [2] 404/22 571/12
**culled** [1] 498/14
**culling** [1] 422/5
**current** [2] 422/15 466/8
**currently** [3] 408/14 408/18 409/7
**customer** [4] 479/17 488/12 496/13 496/15
**customer/promoter** [1] 488/12
**customers** [7] 482/25 483/20 496/11 496/23 498/1 531/16
536/8
**customizable** [1] 520/4
**cv** [1] 403/5

**D**

**daily** [1] 480/1
**dairy** [1] 480/4
**dairy-free** [1] 480/4
**damages** [1] 410/10
**Dana** [1] 538/15
**data** [18] 435/3 437/1 441/11 444/4 444/5 444/6 464/23 464/24
498/3 502/10 543/13 543/14 543/17 543/20 545/5 545/23
546/18 546/19
**database** [11] 428/18 440/14 441/2 441/16 442/2 442/6 444/15
445/10 445/19 445/24 464/17
**databases** [2] 441/12 497/1
**date** [9] 491/9 491/10 503/21 511/16 515/18 516/5 552/14
553/10 571/12
**dated** [1] 566/8
**Davis** [38] 405/4 411/18 411/20 411/24 412/9 412/16 426/10
426/23 427/6 427/23 429/9 430/7 435/2 439/13 441/2 441/11
441/14 441/19 443/2 443/11 443/18 447/3 452/16 482/2 482/22
497/22 498/6 498/13 500/7 501/8 501/16 510/3 511/18 518/4
518/19 519/20 520/16 544/22
**Davis'** [2] 518/20 545/13
**day** [8] 492/1 492/3 492/15 492/20 537/13 537/14 537/18 566/8
**daycare** [7] 505/18 505/22 506/2 506/11 506/20 506/25 507/1
**Daycare'** [1] 505/25
**days** [7] 491/19 491/21 492/16 493/9 494/19 504/9 567/12
**de** [2] 473/15 474/4
**de-certified** [1] 473/15
**de-certify** [1] 474/4
**deadlocked** [5] 559/17 560/2 563/2 563/20 563/22
**deadlocked.'** [1] 559/20
**deal** [3] 411/3 486/25 568/21
**dealt** [1] 489/14
**debate** [2] 513/25 559/18
**decide** [18] 458/11 458/17 460/5 460/14 461/11 462/6 462/8
468/4 470/9 477/7 493/20 499/3 502/12 505/4 549/1 551/9
559/24 568/1
**decided** [1] 550/25
**deciding** [5] 458/25 459/8 461/3 461/10 468/6
**decision** [6] 458/23 466/16 466/17 549/6 549/8 564/19
**declaration** [16] 414/9 414/11 414/21 426/18 426/24 482/16
482/12 490/5 490/11 491/3 501/23 517/11 517/25 534/13 539/4
**decline** [1] 534/15
**declined** [2] 515/22 537/1
**declines** [6] 515/22 516/1 517/9 535/7 536/25 537/15
**deduct** [4] 545/4 545/6 545/10 545/18
**deducted** [1] 545/14
**defendant** [31] 403/8 404/10 409/18 411/4 411/15 419/20 423/5
438/20 448/6 449/10 451/3 451/17 451/19 452/1 453/15 465/13
469/4 469/9 470/19 471/10 471/24 473/14 474/5 475/24 507/17
517/20 529/12 553/19 553/24 557/13 570/9
**defendant's** [9] 423/5 423/6 427/16 444/12 444/14 507/9
507/17 560/8 569/1
**defendants** [2] 422/5 422/21
**defense** [8] 405/6 454/15 454/17 456/3 456/5 555/2 564/3
567/4
**deficient** [2] 451/3 451/5
**define** [3] 467/17 468/18 469/1
**defined** [2] 408/13 544/25
**defines** [1] 517/8

**definitely [2]** 501/20 532/16
**definition [5]** 422/1 422/3 431/10 431/13 490/7
**degree [1]** 511/13
**delete [2]** 406/25 526/13
**deleting [1]** 406/21
**deliberate [8]** 464/7 554/7 557/11 559/18 560/1 562/24 563/6 569/19
**deliberately [1]** 462/9
**deliberating [2]** 550/10 559/15
**deliberation [1]** 554/6
**deliberations [8]** 457/8 458/1 536/12 548/20 548/22 549/17 551/18 552/2
**deliver [12]** 465/6 469/16 476/17 476/24 477/4 492/24 493/6 494/17 507/17 530/3 533/2 539/16
**delivered [7]** 472/17 477/11 479/14 532/11 532/20 533/7 539/21
**demonstrate [1]** 472/22
**demonstrates [2]** 528/21 533/3
**demonstrative [3]** 406/25 407/12 452/22
**denied [5]** 474/4 474/5 474/11 474/19 476/7 551/10
**Dennis [4]** 404/22 455/1 571/11 571/12
**deny [1]** 474/2
**denying [1]** 475/25
**depend [3]** 439/21 461/14 462/15
**depending [2]** 552/20 553/2
**depends [1]** 407/3
**deposition [17]** 462/23 463/2 463/4 486/22 489/8 508/8 511/14 517/1 517/7 517/8 517/24 522/20 524/19 524/22 535/8 536/3 539/23
**depositions [4]** 408/7 408/9 523/15 523/18
**deputy [10]** 463/13 463/20 463/20 463/23 464/4 451/20 552/15 553/11 564/22 564/25
**describe [5]** 412/21 425/19 429/13 455/23 464/9
**described [7]** 420/2 422/1 451/25 520/3 520/9 523/3 527/19
**description [1]** 446/8
**descriptions [1]** 446/14
**deserves [2]** 461/9 462/17
**designated [1]** 530/13
**designed [8]** 422/2 477/3 477/6 494/8 494/11 509/4 520/7 534/23
**detailed [1]** 510/24
**details [2]** 508/22 528/22
**detect [1]** 521/17
**detects [2]** 521/22 521/24
**determination [3]** 410/9 473/6 527/3
**determinations [1]** 529/18
**determine [8]** 419/18 434/12 434/18 437/21 437/22 470/2 500/5 511/5
**determining [2]** 468/22 479/11
**devices [2]** 556/6 561/8
**dialed [5]** 428/12 450/22 451/4 451/12 541/7
**dialing [1]** 538/18
**dialogue [1]** 488/13
**dictionaries [1]** 550/13
**did [117]** 407/19 413/11 415/6 415/8 415/8 415/10 417/19 419/18 421/12 422/5 422/8 422/9 423/9 423/10 425/1 425/3 425/4 425/19 425/22 427/12 430/18 430/22 431/21 433/7 433/14 433/16 435/7 435/8 435/9 436/8 436/12 436/22 436/24 437/3 437/13 438/5 438/13 438/20 439/13 439/16 439/17 440/13 444/8 444/9 445/19 451/18 451/23 452/1 452/1 452/4 460/9 471/5 472/16 473/17 478/7 478/10 490/16 500/3 500/9 502/8 502/8 505/17 505/20 505/22 505/24 506/2 506/10 508/2 508/3 508/15 508/21 508/21 511/5 512/6 512/16 512/21 517/6 517/14 518/19 523/22 524/17 525/6 527/24 528/3 528/17 529/18 530/12 531/19 532/14 532/16 532/24 533/8 533/12 533/21 533/24 534/5 535/2 535/7 535/23 536/1 536/6 536/26 539/12 539/22 540/22 541/8 541/18 542/22 543/6 546/9 546/18 546/24 547/4 547/14 553/14 555/23
**didn't [91]** 428/19 430/23 431/22 432/21 433/24 436/10 438/25 439/3 440/5 445/2 446/18 448/2 476/3 478/10 478/11 478/24 488/7 489/7 490/19 495/5 497/1 499/17 501/24 502/10 506/6

508/4 508/14 508/17 508/18 508/19 508/19 510/25 510/25 511/3 511/7 511/21 512/4 512/20 513/14 516/6 516/8 516/14 516/15 517/23 518/1 518/10 519/10 519/10 519/11 520/21 521/1 521/4 522/17 523/13 524/4 524/6 524/7 524/7 524/8 524/16 525/3 527/14 528/15 528/18 528/17 528/17 528/17 529/9 529/9 529/12 529/22 530/10 530/10 532/14 535/21 535/25 537/7 538/22 538/25 542/7 542/21 542/23 543/1 543/7 543/20 543/22 545/7 545/13 545/23 546/18 553/17
**differ [2]** 418/11 459/15
**difference [1]** 418/14
**differences [1]** 462/5
**different [19]** 418/9 418/10 433/18 433/25 440/14 442/9 443/15 449/1 457/4 458/3 462/2 462/2 466/2 513/23 519/5 523/10 523/16 556/5 561/8
**differently [2]** 462/5 533/19
**differs [3]** 418/12 462/7 487/5
**difficult [2]** 547/19 547/20
**digitally [1]** 571/9
**diligence [1]** 567/8
**diligently [1]** 548/23
**direct [8]** 405/3 411/20 412/11 412/14 460/7 460/7 460/8 460/13
**directed [1]** 502/24
**direction [2]** 464/15 563/7
**directory [1]** 464/17
**disable [3]** 521/19 522/2 522/4
**disagree [2]** 468/2 559/8
**disagreeing [1]** 448/7
**discharge [1]** 550/7
**discharged [2]** 552/5 567/19
**disclose [1]** 552/6
**disconnect [2]** 538/24 539/11
**disconnected [3]** 414/14 540/9 540/10
**disconnects [1]** 539/8
**discount [1]** 480/10
**discounts [1]** 481/18
**discover [1]** 464/20
**discovered [1]** 435/2
**discuss [5]** 463/25 464/11 471/2 550/5 550/8
**discussed [5]** 444/24 453/6 464/5 549/2 560/21
**discussing [3]** 431/16 549/16 549/20
**discussion [4]** 405/2 476/21 549/7 561/23
**dislikes [1]** 458/10
**display [2]** 412/17 427/1
**displayed [1]** 463/10
**disposition [48]** 413/9 415/7 415/9 415/16 415/23 416/5 416/10 416/18 416/19 416/25 417/6 418/21 419/5 420/3 421/19 425/25 426/15 427/9 427/11 427/15 427/20 428/3 428/11 428/16 428/19 428/21 429/10 446/9 446/10 446/11 446/14 446/15 449/8 451/12 500/10 509/25 517/14 518/4 518/5 519/25 520/10 520/10 520/13 520/22 534/4 539/2 540/6 545/7
**dispute [2]** 502/23 546/7
**dispute/no [1]** 546/7
**disputed [2]** 527/23 527/24
**disputes [2]** 554/20 567/11
**disregard [3]** 459/23 461/2 473/10
**dissolved [1]** 516/6
**distinction [2]** 410/8 460/12
**distracting [1]** 450/17
**DISTRICT [5]** 403/1 403/2 403/14 404/22 455/15
**Ditto [1]** 473/9
**divide [2]** 491/24 511/10
**divided [2]** 552/17 552/23
**do [169]** 407/20 407/21 407/22 407/25 408/5 409/10 414/5 414/6 417/24 418/25 419/1 419/24 419/25 421/10 421/11 421/12 423/22 424/3 424/4 424/20 424/22 424/23 426/18 426/19 428/8 429/20 432/3 433/21 434/21 435/15 435/18 437/14 438/11 440/19 441/23 442/15 442/22 445/3 447/3 447/4 449/16 453/20 454/7 454/21 455/12 455/14 456/4 456/7 456/12 456/22 457/3 458/13 458/14 458/15 460/2 462/6 463/7 463/25 464/10 464/18 464/22 464/23 471/2 471/3 473/24 474/3 480/10 488/19 489/15 490/8 492/19 494/12 494/18 498/1 508/14 508/19 508/19 509/13 510/13 510/16 510/25 511/1 511/6

**do...** [86] 511/17 512/4 512/21 512/24 513/12 514/25 518/7 518/9 518/9 518/10 518/10 518/11 519/20 520/7 521/1 521/1 521/1 521/23 523/11 523/17 524/3 524/8 524/8 526/20 527/16 528/17 528/17 528/25 530/10 530/10 530/12 532/14 536/13 536/20 537/14 537/19 538/7 538/8 542/21 543/9 545/3 547/24 548/25 549/1 549/5 549/6 549/8 549/17 549/18 549/19 550/10 550/12 550/12 550/12 550/14 550/17 550/17 551/3 552/6 552/20 553/2 556/5 556/12 556/25 557/11 559/5 559/8 560/24 561/7 561/10 561/11 562/17 562/18 563/8 563/21 563/23 564/7 564/17 565/23 567/9 567/18 568/2 568/17 569/6 569/6 570/11

**document** [19] 418/8 427/6 427/8 442/8 455/9 455/10 462/21 488/18 515/14 516/15 517/2 517/22 518/14 520/2 535/22 535/24 539/25 552/7 552/7

**documentation** [1] 429/24

**documents** [13] 489/18 500/8 500/19 503/10 504/17 508/7 512/7 512/8 538/2 538/6 540/4 544/8 544/13

**does** [39] 413/17 414/23 415/15 415/22 417/13 418/11 419/11 420/1 421/1 426/14 427/14 427/15 432/16 434/10 434/11 436/20 441/11 442/6 451/5 451/6 461/14 462/14 464/16 466/16 467/22 468/15 469/21 471/10 474/2 483/1 485/14 498/21 499/21 506/16 517/3 521/20 528/8 539/4 544/22

**doesn't** [30] 417/14 436/19 442/9 495/10 497/16 499/11 506/20 509/10 509/10 509/17 510/15 511/22 512/5 514/24 517/5 517/9 519/15 521/22 524/12 525/20 525/24 526/12 528/7 529/3 529/7 531/6 533/1 534/7 539/18 545/15

**doing** [9] 438/15 450/20 491/24 514/7 514/12 523/6 531/5 531/20 541/23

**don't** [104] 406/21 406/24 407/4 428/5 428/8 428/21 429/3 429/10 429/12 429/18 430/20 432/20 432/21 434/3 434/6 434/8 435/13 435/17 435/20 437/14 438/12 438/18 440/1 440/12 441/19 442/12 442/12 443/18 448/16 449/3 449/17 449/18 453/1 455/14 456/11 457/3 457/6 471/3 474/1 475/23 476/11 478/23 480/8 493/21 496/17 497/9 500/19 500/22 501/11 501/19 502/9 509/9 510/13 511/9 511/25 512/8 518/8 519/17 519/22 522/19 525/7 525/17 525/23 526/4 526/17 526/19 527/11 527/13 527/19 528/7 528/12 528/20 528/25 529/2 529/3 529/4 529/5 533/3 539/18 541/21 541/22 544/9 545/11 545/22 547/10 557/18 557/21 558/2 559/14 561/1 561/2 561/17 561/18 562/13 562/16 563/5 563/10 564/5 567/15 567/22 568/4 568/13 569/17 570/13

**done** [22] 410/20 425/13 450/14 452/21 453/13 456/19 458/15 503/6 511/19 511/23 518/8 520/5 528/7 529/16 529/20 533/6 534/21 537/21 562/7 563/14 565/5 569/9

**door** [2] 448/8 451/8

**dots** [2] 534/8 534/11

**double** [7] 441/20 455/9 455/10 456/3 552/9 554/16 554/21

**double-check** [3] 456/3 554/16 554/21

**double-sided** [3] 441/20 455/9 455/10

**double-spaced** [1] 552/9

**Dovel** [13] 404/2 404/4 405/11 411/21 412/11 417/9 424/2 431/16 449/4 449/19 456/7 475/23 548/15

**down** [25] 413/9 415/1 415/2 415/14 433/24 434/1 438/11 440/3 452/17 457/7 472/9 487/13 508/22 509/18 510/23 511/10 521/13 528/21 547/10 547/23 548/2 557/18 557/23 558/1 560/11

**down-line** [1] 487/13

**dozens** [1] 439/14

**drill** [1] 436/10

**drilled** [1] 433/24

**drink** [5] 479/23 481/7 481/9 481/21 483/10

**drug** [1] 522/13

**duly** [2] 553/24 565/14

**Dunn** [1] 404/16

**duplication** [1] 466/1

**during** [18] 428/5 455/13 456/10 457/8 458/1 469/5 469/6 469/8 486/21 487/6 489/8 499/24 504/10 520/20 532/23 547/5 549/17 551/18

**duty** [3] 457/23 458/6 459/18

**E**

**each** [47] 412/23 413/5 415/16 416/4 441/16 441/20 441/21

---

446/8 455/7 455/20 457/24 462/25 466/21 467/7 470/3 471/15 471/16 472/7 472/13 473/2 483/13 487/13 495/3 499/7 500/13 500/15 502/24 502/25 503/5 504/20 507/4 509/15 509/16 510/14 510/24 533/11 534/19 548/25 549/5 550/24 551/8 552/12 554/9 565/5 568/20 569/8 569/21

**earlier** [1] 563/10

**early** [1] 569/8

**ears** [1] 457/3

**easier** [3] 416/16 560/10 560/23

**Eastern** [3] 480/22 481/2 503/20

**easy** [1] 511/21

**eat** [1] 519/17

**Edelson** [1] 404/7

**edges** [1] 519/18

**effect** [1] 549/10

**efficient** [2] 492/23 493/5

**effort** [2] 424/17 466/1

**eight** [6] 537/13 552/9 561/21 561/25 562/14 565/5

**eight-hour** [1] 537/13

**either** [30] 412/1 431/21 457/7 460/13 463/13 463/24 467/13 469/4 473/22 475/9 477/24 483/22 484/10 484/13 487/5 495/18 496/9 501/10 510/12 518/24 527/1 534/1 535/8 536/11 539/22 546/12 554/17 558/21 559/6 559/13

**electronic** [2] 464/23 549/21

**electronically** [1] 463/10

**elements** [8] 466/21 474/20 508/12 509/9 509/14 509/16 509/17 510/25

**eleven** [2] 474/13 476/10

**ELMO** [1] 427/4

**else** [14] 406/8 462/1 476/2 511/23 515/17 517/9 523/10 535/21 538/1 542/11 549/18 554/24 562/25 563/8

**else's** [3] 531/7 562/23 563/11

**email** [7] 410/1 438/12 494/25 495/1 521/6 539/24 549/21

**emails** [1] 557/17

**employ** [1] 512/6

**employees** [3] 489/8 536/23 536/25

**employer** [1] 550/1

**employers** [1] 568/11

**employment** [1] 541/22

**enable** [1] 464/12

**encourage** [6] 468/24 479/12 479/15 480/9 480/12 480/19

**encouraging** [2] 468/21 479/9

**end** [20] 411/24 416/21 421/3 425/24 432/25 438/18 440/5 441/23 457/13 482/13 483/24 485/1 485/10 485/25 491/10 508/1 515/20 525/10 546/23 548/12

**ended** [8] 425/9 432/5 432/7 432/8 438/8 438/14 438/15 491/19

**energy** [7] 479/22 479/23 479/25 481/7 481/8 481/21 483/10

**enough** [5] 504/11 509/12 519/12 529/14 529/22 537/5 563/15

**enrollment** [2] 496/8 498/3

**ensure** [4] 464/16 521/19 522/2 565/8

**enter** [1] 464/3

**entire** [7] 513/5 516/13 518/4 529/11 548/11 548/13 551/15

**entirely** [1] 424/7 424/12 523/3

**entirety** [1] 407/1

**entitled** [7] 455/9 455/10 462/19 484/22 551/8 552/9 571/8

**entity** [3] 465/3 465/7 525/17

**entries** [1] 444/20

**entry** [1] 421/8

**EOM** [1] 484/22

**equal** [1] 462/18

**equally** [1] 522/15

**equals** [3] 414/7 421/8 498/10

**equipment** [5] 463/15 463/21 463/23 464/10 539/17

**equivalent** [1] 556/13

**error** [2] 444/12 444/14

**errors** [2] 518/20 519/23

**Especially** [1] 493/6

**essentially** [4] 416/17 437/16 496/17 496/22

**establish** [8] 471/15 471/25 472/5 472/11 472/16 472/19 472/25 473/2

**established** [2] 475/6 475/16

**estimate** [4] 437/18 443/25 447/19 497/9

**estimated** [1] 450/2

**et [3]** 448/21 555/25 555/25
**et cetera [3]** 448/21 555/25 555/25
**evaluation [1]** 410/20
**even [10]** 428/8 443/21 443/25 468/12 483/6 505/12 506/19 512/20 547/22 558/16
**event [3]** 462/4 486/6 514/24
**events [4]** 524/16 524/23 527/17 527/19
**ever [6]** 428/12 505/17 505/20 506/10 535/25 551/21
**every [22]** 428/16 436/21 437/12 438/12 438/17 442/6 445/10 445/11 477/12 486/10 492/1 492/3 492/15 492/20 496/8 509/15 510/14 517/15 532/10 532/12 534/23 537/11
**everybody [6]** 408/4 408/5 532/11 547/5 547/6 562/25
**everyone [6]** 455/9 456/1 507/23 533/8 538/1 542/11
**everything [5]** 457/11 461/12 515/17 553/12 557/2
**Eves [2]** 503/19 505/8
**evidence [174]**
**evidentiary [1]** 569/12
**exact [13]** 434/6 435/10 437/12 437/14 437/20 443/23 443/24 444/2 493/11 496/13 502/22 556/23 558/8
**exactly [2]** 426/17 447/6
**examination [11]** 411/20 411/22 412/12 412/14 423/2 426/6 426/8 447/1 499/25 501/8 511/5
**examine [1]** 506/5
**examining [1]** 421/25
**example [17]** 413/6 421/5 437/10 482/6 483/7 486/5 495/22 496/2 498/10 500/25 501/24 509/20 510/2 518/3 538/14 540/8 542/19
**examples [2]** 496/4 537/23
**Excel [1]** 509/22
**except [4]** 542/10 542/15 549/16 551/22
**exceptions [1]** 409/18
**excerpted [1]** 479/17
**Excerpts [2]** 408/9 463/2
**excess [3]** 518/21 519/4 534/8
**exchange [2]** 494/25 521/6
**exchanges [1]** 528/5
**exchanging [1]** 557/16
**exclude [3]** 422/21 424/17 450/21
**excluded [3]** 447/15 459/22 542/16
**excused [2]** 550/19 567/18
**exhibit [82]** 412/16 418/3 426/24 431/18 432/1 432/1 432/4 432/7 432/9 432/11 432/11 433/9 436/7 436/20 437/19 437/22 437/22 438/5 439/11 439/11 444/21 444/22 448/20 453/11 453/19 454/2 460/18 460/21 460/22 463/19 463/25 464/11 482/13 482/17 482/23 484/19 484/21 484/24 485/2 485/4 485/5 485/7 485/7 485/8 485/11 485/18 485/21 485/23 486/2 486/3 486/12 486/19 486/20 488/9 488/9 488/10 488/16 489/23 491/2 491/11 491/14 493/24 493/25 494/25 495/23 496/2 497/25 503/23 504/5 504/8 509/23 512/11 512/12 515/14 516/4 517/2 518/13 521/7 526/1 534/20 543/12 555/22
**Exhibit 36B [1]** 433/9
**Exhibit 37 [1]** 426/24
**exhibits [28]** 411/21 412/10 423/12 428/25 431/5 434/8 434/17 434/24 435/1 435/3 436/1 441/12 446/2 453/6 453/13 456/5 459/2 459/6 463/9 463/15 463/18 464/13 482/17 496/5 503/12 554/16 554/23 555/5
**Exhibits 11 [1]** 496/5
**Exhibits 31 [1]** 503/12
**exist [2]** 511/22 512/5
**existed [1]** 540/3
**expect [1]** 569/1
**expense [1]** 466/1
**expert [1]** 511/3
**explain [7]** 414/10 422/24 456/14 492/2 550/8 560/11 560/23
**explained [1]** 492/21
**explanation [4]** 521/10 522/3 522/16 523/16
**explicitly [1]** 534/14
**explore [1]** 423/1
**exposed [2]** 549/14 551/16
**express [16]** 408/15 409/9 409/13 422/15 465/7 465/17 466/9 469/13 469/17 469/18 469/12 499/12 499/13 499/17 499/18

**extensively [1]** 453/7
499/22
**extent [1]** 425/17
**extra [2]** 418/12 528/10
**extract [1]** 480/2
**extrapolate [1]** 529/21
**eyes [1]** 457/5

**F**

**face [1]** 437/22
**Facebook [1]** 549/23
**facing [1]** 450/16
**fact [26]** 407/16 424/6 444/14 445/1 460/8 460/11 461/14 462/14 466/15 468/14 489/22 498/20 499/8 506/15 512/3 531/5 533/6 533/17 534/4 535/9 535/19 536/20 537/5 537/9 538/8 539/1
**factors [1]** 461/23
**facts [17]** 406/11 406/16 455/24 458/6 458/7 459/1 459/2 459/8 459/14 459/16 460/10 461/10 462/20 462/22 515/1 524/15 527/18
**failed [15]** 471/14 471/17 471/20 471/25 472/2 472/5 472/11 472/19 472/21 472/22 472/25 473/2 473/6 473/9 473/19
**failure [1]** 529/6
**fair [9]** 462/19 487/24 517/16 517/22 524/13 524/14 532/7 551/8 551/10
**fairness [1]** 551/14
**fake [2]** 437/1 519/2
**familiar [2]** 438/14 526/15
**family [4]** 439/23 440/3 549/25 568/11
**fantastic [1]** 481/4
**far [4]** 407/16 508/16 516/19 547/24
**favor [6]** 410/22 411/1 411/2 411/4 411/7 476/6
**FCRR [2]** 404/22 571/12
**featured [2]** 422/13 466/7
**features [1]** 545/2
**fed [3]** 533/5 533/7 543/5
**federal [1]** 465/2
**feed [1]** 532/9
**feel [2]** 558/17 568/6
**fellow [1]** 549/16
**felt [1]** 557/5
**few [22]** 406/6 409/17 441/17 444/10 447/5 448/18 448/25 455/23 456/13 456/15 456/18 470/23 484/12 494/6 494/19 540/9 542/15 547/6 560/22 567/14 568/14 568/14
**fewer [2]** 536/22 536/22
**fifth [2]** 404/17 526/3
**figure [12]** 411/9 438/22 497/5 498/19 525/19 568/21 568/25 569/4 569/7 569/9 569/11 569/14
**figured [1]** 444/11
**figuring [1]** 482/8
**file [2]** 494/1 569/3
**filed [1]** 473/13
**filing [1]** 465/22
**files [1]** 555/21
**fill [7]** 542/1 552/14 556/8 557/6 561/10 561/11 563/3
**filled [4]** 495/25 496/23 497/4 542/2
**filter [1]** 438/15
**final [14]** 406/5 409/15 409/18 415/18 454/4 454/22 455/8 455/10 456/17 457/12 458/4 541/6 547/14 548/18
**Finally [1]** 475/15
**find [30]** 413/11 415/8 425/22 431/2 433/14 435/7 435/9 437/13 438/4 438/25 439/13 439/17 440/7 440/9 458/6 460/11 469/23 476/6 491/12 509/23 510/4 515/15 515/24 520/12 520/14 520/18 526/2 529/19 565/15 568/7
**finding [2]** 410/22 509/14
**findings [3]** 410/14 410/16 410/21
**finds [5]** 411/1 411/2 411/4 411/7 411/8
**fine [14]** 453/5 455/21 456/22 456/24 457/1 457/2 457/14 512/20 555/10 559/18 559/19 561/25
**finish [3]** 525/22 526/24 543/24
**finished [1]** 543/5 543/10
**first [57]** 406/23 408/24 408/25 412/17 412/21 413/6 413/10 414/3 416/18 418/19 418/20 420/5 421/7 421/7 421/8 421/8

**first...** **[41]** 423/21 426/13 442/13 442/13 442/21 442/21 454/16 470/18 470/21 477/10 477/19 480/21 481/1 483/18 483/22 484/21 488/21 489/20 494/9 495/1 495/14 498/10 502/15 503/8 504/1 505/6 508/23 508/24 510/5 510/19 512/14 524/20 525/4 526/2 533/11 534/12 557/9 561/4 563/23 565/14 570/2

**fit** **[2]** 508/3 522/11

**five** **[14]** 446/2 452/12 475/2 502/18 507/5 510/25 518/17 525/12 530/17 537/11 544/5 544/7 544/13 544/17

**fix** **[1]** 553/15

**FL** **[1]** 404/14

**flip** **[7]** 441/14 441/19 441/22 442/24 443/19 511/8 520/12

**flipping** **[2]** 443/11 443/21

**floor** **[1]** 556/25

**flyers** **[1]** 505/20

**focused** **[1]** 528/18

**folks** **[4]** 429/19 515/19 521/14 523/7

**follow** **[8]** 421/6 457/2 458/8 458/18 551/11 551/12 564/5 564/6

**follow-up** **[2]** 564/5 564/6

**followed** **[1]** 552/19

**following** **[11]** 448/4 456/23 458/17 466/21 467/7 471/1 474/20 479/20 490/11 562/5 569/18

**follows** **[1]** 565/15

**food** **[2]** 554/3 554/4

**footnote** **[2]** 414/3 414/7

**force** **[1]** 527/25

**foregoing** **[1]** 571/6

**foreign** **[5]** 434/4 434/9 434/10 434/25 447/8

**foreperson** **[1]** 463/24

**forever** **[1]** 543/14

**forget** **[1]** 462/3

**forgot** **[1]** 522/4

**form** **[25]** 406/5 408/22 409/17 409/23 411/15 455/8 457/12 463/11 470/5 496/24 497/3 498/3 509/13 524/2 524/2 529/17 533/10 543/25 548/11 549/24 552/11 552/13 552/14 553/10 567/5

**former** **[2]** 523/8 527/5

**formidable** **[1]** 520/1

**forth** **[2]** 473/19 527/8

**forward** **[1]** 452/25

**Foster** **[7]** 404/13 449/20 450/8 452/18 452/19 507/19 519/3

**foul** **[2]** 411/3 411/6

**found** **[31]** 412/24 413/5 413/20 413/23 413/25 415/6 415/11 418/13 419/9 421/2 425/24 431/15 431/16 431/20 432/3 432/13 432/17 432/18 433/4 435/6 437/1 437/6 437/10 438/17 439/19 439/20 452/10 465/1 490/8 501/16 526/24

**foundation** **[10]** 413/13 417/8 423/20 423/22 424/2 424/19 425/11 430/3 447/10 450/23

**founder** **[1]** 486/6

**four** **[9]** 420/21 509/11 526/10 552/7 558/17 559/21 560/4 561/19 561/20

**four-page** **[1]** 552/7

**fourth** **[1]** 526/3

**fraction** **[1]** 558/20

**Franciso** **[1]** 404/8

**frankly** **[1]** 446/1

**Franzini** **[10]** 404/3 405/9 484/18 485/3 507/15 511/7 516/3 518/3 527/22 544/6

**free** **[16]** 435/5 435/6 435/15 435/18 435/19 435/22 435/22 480/4 480/4 481/13 486/6 486/8 514/23 518/23 568/2 568/6

**Friday** **[1]** 569/8

**friends** **[1]** 568/11

**front** **[5]** 426/18 442/5 483/16 505/24 512/14

**fruit** **[1]** 479/25

**Fuel** **[1]** 483/7

**fully** **[2]** 474/7 549/2

**fun** **[1]** 514/16

**fundamental** **[1]** 567/10

**further** **[19]** 405/12 409/1 409/15 409/24 411/14 426/4 446/19 452/13 453/15 453/22 454/1 471/17 471/20 471/24 473/15 562/24 563/7 563/19 569/20

**furthermore** **[1]** 438/15

---

**gain** **[1]** 551/4

**game** **[1]** 464/17

**gate** **[1]** 512/20

**gave** **[6]** 486/14 523/4 528/11 530/15 548/6 561/6

**Gay** **[1]** 538/15

**Gee** **[2]** 519/18 536/13

**general** **[6]** 440/19 468/12 488/13 505/11 505/12 506/11

**generalized** **[1]** 538/2

**generally** **[2]** 407/11 435/23

**gentlemen** **[1]** 529/24

**get** **[59]** 407/23 409/17 425/16 449/13 450/7 452/19 452/20 453/10 456/16 474/15 476/12 477/14 479/1 481/14 481/16 482/25 483/3 486/9 488/19 488/20 494/12 494/17 494/20 498/17 501/13 508/6 508/7 508/8 508/21 510/4 511/21 512/20 517/3 519/6 522/17 523/11 523/1 525/1 525/17 527/19 528/21 528/24 528/25 530/22 530/24 532/25 533/10 537/2 537/2 540/15 541/20 541/22 554/1 562/21 567/5 568/9 569/10 569/21 569/24

**gets** **[3]** 470/21 532/10 543/13

**getting** **[4]** 416/21 481/11 495/6 521/18

**Gidley** **[50]** 408/11 414/9 415/20 415/25 417/5 417/15 417/19 426/14 426/14 426/24 427/8 463/3 481/24 482/8 482/14 482/16 483/13 486/17 487/8 488/3 489/22 490/1 490/4 490/10 490/20 492/6 492/21 496/12 500/23 517/11 517/12 517/24 522/21 530/13 531/12 531/19 532/5 532/17 532/19 533/4 534/13 535/13 537/9 539/1 539/8 540/12 540/14 541/1 542/13

**Gidley's** **[9]** 414/9 414/11 414/21 427/20 482/22 486/22 490/10 491/3 501/23

**gig** **[1]** 541/23

**give** **[30]** 423/22 424/4 447/19 453/12 455/7 458/8 458/8 460/14 461/8 462/2 468/7 471/5 474/5 474/6 484/14 510/23 524/7 529/22 541/17 545/23 548/7 555/3 555/8 559/6 560/4 561/1 561/2 561/3 563/6 563/10

**given** **[4]** 460/13 462/21 505/1 567/21

**gives** **[1]** 499/12

**giving** **[6]** 443/22 443/25 444/2 454/22 486/8 514/23

**glass** **[1]** 457/21

**gloss** **[1]** 515/1

**glows** **[1]** 480/5

**gluten** **[1]** 480/4

**gluten-free** **[1]** 480/4

**go** **[46]** 407/15 408/24 408/25 415/1 421/6 429/2 436/12 441/19 442/21 443/3 444/17 449/17 449/23 450/22 454/22 474/16 480/17 480/25 490/19 502/8 505/5 510/15 510/15 511/21 515/13 516/23 518/18 519/13 520/22 521/11 524/3 525/7 526/1 529/16 529/18 540/25 545/7 545/13 552/22 553/4 557/15 564/8 564/9 565/2 567/14 569/19

**goal** **[2]** 520/5 527/19

**goes** **[3]** 509/19 523/12 526/20

**going** **[82]** 406/11 407/3 407/21 408/19 409/3 409/4 421/6 424/10 430/4 437/25 439/23 453/5 455/19 456/18 457/20 457/20 470/15 474/11 477/15 478/5 478/6 482/8 484/11 484/14 484/21 485/7 485/11 485/21 486/1 486/11 489/5 493/21 493/24 494/6 494/10 494/16 495/5 502/12 507/8 507/25 508/6 508/7 508/7 508/8 513/4 513/24 513/25 514/5 514/12 515/19 519/18 521/8 522/23 525/1 528/24 529/1 529/15 529/19 530/11 533/10 533/11 535/23 538/3 545/4 545/6 548/8 550/7 554/25 556/19 560/21 561/23 561/23 562/19 563/7 564/24 565/1 565/5 565/7 565/10 568/21 570/12

**gone** **[4]** 430/8 501/12 501/12 541/4

**good** **[24]** 412/8 426/10 426/12 433/24 461/7 477/2 480/9 480/11 490/24 493/11 493/17 507/23 519/11 519/15 519/18 521/14 521/25 524/14 555/16 560/18 563/15 564/15 567/16 570/6

**good-bye** **[1]** 567/16

**goods** **[5]** 468/21 468/25 479/10 479/13 479/16

**Google** **[1]** 433/23

**got** **[47]** 409/14 418/24 420/5 421/21 439/6 441/24 479/14 479/25 480/6 483/10 490/6 490/7 494/15 502/17 504/10 504/20 506/23 507/22 508/25 509/10 509/12 510/8 510/8 510/9 510/10 510/11 510/16 511/15 511/16 511/20 512/19 515/10 516/2

**got...** [14] 519/17 522/10 524/21 527/3 527/4 532/8 534/4 536/21 537/1 538/15 540/8 544/11 544/13 554/16
**grabbed** [1] 512/7
**Graham** [1] 404/16
**granular** [1] 528/21
**great** [4] 480/11 481/19 483/12 514/7
**greatest** [1] 413/8
**green** [1] 480/2
**Greg** [1] 404/2
**grounds** [1] 471/17
**group** [2] 465/24 547/7
**guess** [8] 407/3 424/6 460/24 470/10 492/4 529/21 554/2 558/12
**guesswork** [2] 511/11 515/5
**guideline** [1] 488/13
**guys** [1] 479/23

# H

**ha** [2] 515/1 516/12
**had** [65] 409/2 414/11 422/15 423/14 424/13 425/8 433/24 434/20 438/21 438/24 439/19 440/19 444/10 447/8 451/19 452/10 452/12 463/6 466/8 469/21 481/6 481/24 482/5 484/25 485/1 485/10 486/14 490/2 491/14 494/23 494/24 497/23 499/22 500/2 500/24 504/2 504/8 506/5 510/23 511/2 517/14 518/17 518/22 520/24 526/9 526/10 526/14 531/2 531/16 533/1 536/17 536/22 537/3 537/5 537/8 537/16 539/7 539/12 540/13 541/1 543/16 543/19 546/24 547/5 547/6
**half** [18] 479/21 481/14 497/5 497/11 497/14 515/3 530/22 543/8 547/1 547/2 547/8 547/12 547/21 558/10 558/11 558/13 558/20 558/21
**hand** [4] 462/11 553/23 560/25 564/21
**handed** [3] 457/11 509/22 517/3
**handing** [3] 407/17 426/23 441/2
**handle** [5] 492/19 537/4 537/5 537/10 569/12
**handling** [1] 492/5
**hands** [4] 464/2 470/25 471/1 548/17
**hands-on** [1] 464/2
**hang** [3] 494/8 494/20 495/10
**happen** [1] 550/21
**happened** [13] 428/5 462/3 495/2 500/10 500/19 512/3 522/3 524/24 526/8 527/2 535/16 535/17 536/7
**happens** [2] 540/17 557/1
**hard** [5] 547/20 567/7 567/13 568/7 568/13
**harder** [1] 546/16
**harm** [2] 411/3 411/5
**has** [50] 409/9 410/7 417/10 417/15 418/21 426/23 426/25 426/25 435/15 435/18 438/1 457/11 457/24 458/20 459/22 462/8 465/7 466/16 470/11 470/19 471/1 471/9 473/6 479/24 479/24 481/3 484/6 485/15 488/21 491/8 491/15 494/2 496/8 501/3 503/23 514/17 515/14 526/19 528/22 529/10 536/13 545/14 551/6 552/8 552/9 552/11 554/16 554/18 555/2 564/18
**have** [301]
**haven't** [1] 509/18
**having** [7] 409/13 462/22 465/18 489/20 549/6 558/2 558/7
**he** [74] 414/11 414/12 417/14 427/11 427/14 427/15 431/20 448/2 448/2 449/1 449/2 450/4 451/23 462/1 482/10 482/16 482/19 486/17 487/21 489/23 489/23 489/24 490/11 490/14 490/15 490/16 490/21 492/6 492/7 492/23 493/1 493/15 496/12 496/14 496/19 497/22 498/6 498/12 500/9 500/9 500/11 500/11 500/12 500/14 500/25 501/16 511/7 514/23 517/14 517/17 518/20 518/22 518/22 518/23 519/1 519/1 519/2 529/1 529/10 530/16 531/13 531/20 532/14 534/13 534/14 534/17 539/4 539/11 539/12 540/17 540/19 542/11 542/21 544/24
**He's** [1] 478/13
**healthy** [2] 480/3 498/12
**hear** [22] 408/23 454/25 461/17 470/17 470/18 470/18 473/25 475/24 479/14 479/19 489/7 507/8 523/6 523/7 523/13 525/12 525/13 529/8 539/19 544/11 550/21 553/17
**heard** [44] 457/22 460/4 460/9 472/17 472/18 472/18 478/22 478/23 478/25 478/25 482/2 482/21 483/25 484/10 486/4 486/21 486/22 487/8 487/15 488/7 488/23 499/8 492/6

492/21 492/22 494/7 494/9 496/12 497/22 501/8 503/18 505/8 514/22 515/9 516/20 518/4 522/23 524/18 530/7 530/20 531/10 540/12 542/17
**hearing** [5] 456/21 457/4 507/10 568/23 569/13
**Heck** [1] 511/18
**held** [7] 468/11 476/21 500/16 505/11 506/7 514/19 563/10
**help** [5] 430/22 440/22 442/12 458/2 459/13 490/5
**helped** [1] 430/21
**her** [45] 445/21 445/23 446/2 452/8 466/20 467/6 487/13 487/13 487/14 495/3 495/9 500/1 502/17 502/17 503/24 504/2 504/12 504/25 506/8 506/19 506/20 506/22 506/25 507/1 507/1 524/11 524/14 524/18 524/18 524/19 526/10 526/15 527/4 527/18 527/19 527/20 527/24 528/5 532/24 538/17 538/18 538/19 540/9 544/14 554/12
**here** [53] 406/4 419/23 421/8 441/8 450/9 454/20 455/7 456/11 456/20 457/2 457/15 457/19 466/18 471/6 471/8 480/17 480/25 486/19 493/1 497/24 499/10 503/18 505/13 509/18 510/19 515/25 520/23 524/21 527/17 529/11 529/22 531/24 533/5 535/5 538/14 538/16 540/4 540/5 542/18 543/24 550/25 551/1 551/24 555/16 557/8 557/20 558/19 561/16 562/12 562/16 567/12 568/17
**herself** [4] 465/10 503/24 504/12 528/3
**Hey** [15] 481/10 490/21 493/10 495/5 511/5 512/19 512/23 514/6 514/13 514/17 521/22 522/10 523/5 525/22 527/10
**high** [2] 513/10 558/14
**high-level** [1] 513/10
**higher** [5] 558/17 562/3 562/5 562/8 562/18
**highlight** [2] 414/7 414/23
**highlighted** [5] 414/2 414/18 415/23 417/11 417/15
**highly** [1] 520/4
**him** [6] 423/1 456/4 456/6 486/22 492/22 492/22
**himself** [1] 482/19
**his** [17] 478/19 482/16 482/17 483/12 489/22 490/5 490/11 516/3 517/24 519/3 519/5 519/7 519/11 529/5 533/8 534/19 539/4
**hiss** [1] 525/10
**historical** [1] 543/14
**hit** [1] 512/16
**hold** [6] 425/12 429/19 466/11 506/10 528/3 528/3
**holding** [1] 505/13
**holidays** [1] 492/2
**home** [25] 435/19 496/1 496/6 496/9 496/24 497/3 497/8 499/2 505/17 506/11 506/19 541/10 541/12 541/13 541/14 541/15 541/23 542/10 542/11 542/15 544/14 546/5 546/12 546/19 546/24
**Home/mobile** [1] 496/6
**honest** [1] 549/9
**honestly** [1] 429/3
**Honor** [76] 406/12 407/9 407/18 409/1 409/14 409/25 410/7 411/13 411/16 411/23 412/3 412/13 422/13 422/23 426/4 426/7 426/20 427/3 430/2 440/23 441/5 441/8 446/21 447/11 447/13 448/1 448/3 448/16 448/19 449/13 452/5 452/13 452/15 452/20 453/5 453/23 454/2 454/6 454/11 454/14 454/17 455/17 457/9 471/6 474/14 474/17 475/22 477/1 477/13 479/4 484/20 485/11 485/12 485/17 485/22 486/1 486/24 487/3 493/24 507/21 513/14 513/20 530/4 530/7 553/18 554/22 555/20 556/10 556/12 557/16 560/6 564/2 564/17 564/20 570/3 570/7 570/15
**HONORABLE** [1] 403/13
**Hopefully** [1] 522/25
**hopelessly** [5] 559/17 560/2 560/3 563/1 563/20 563/22
**hot** [1] 554/3
**Hough** [1] 404/6
**hour** [3] 407/4 537/12 537/13
**house** [2] 526/15 529/10
**how** [79] 413/4 413/11 413/19 418/11 419/18 423/22 424/3 424/23 427/3 432/3 432/21 433/21 434/3 434/21 434/24 437/18 440/11 440/12 442/5 442/7 444/12 444/17 445/23 447/9 448/21 449/11 456/19 460/14 462/16 462/16 463/14 463/15 463/22 470/6 472/8 472/15 480/11 480/12 481/19 482/20 483/11 487/16 492/4 492/11 497/2 497/9 498/18 500/5 505/4 508/1 508/3 509/15 523/3 525/15 525/25 526/15 526/19 530/14 531/18 532/8 537/25 540/2 540/14 543/3 544/4 544/21 546/15 546/15 547/19 547/23 552/4 555/4 556/9 557/8 557/13 562/25

**H**

**how... [3]** 565/18 568/21 569/11
**however [4]** 462/8 468/2 502/24 559/12
**Humans [1]** 498/12
**hundred [3]** 435/9 439/24 535/3
**hundreds [3]** 437/10 511/25 511/25
**husband [7]** 445/21 503/24 504/12 514/7 527/4 527/13 527/24

**I**

**I'll [33]** 407/15 408/6 411/21 437/1 441/7 441/8 448/7 449/3 449/4 452/20 455/21 455/23 455/25 456/5 456/13 457/4 470/22 484/12 487/4 503/18 513/21 525/14 550/7 554/19 555/11 557/2 559/1 559/5 559/22 562/15 563/3 567/16 568/14
**I'm [74]** 406/11 406/19 406/21 407/9 408/19 408/23 409/8 418/20 424/10 426/23 427/3 429/16 429/16 430/4 433/6 434/23 434/23 438/13 441/2 441/4 441/6 443/24 444/17 447/13 448/4 448/4 456/3 456/18 457/20 457/21 470/15 474/15 478/5 478/5 484/11 484/21 485/7 485/11 485/21 486/1 486/11 491/1 493/21 494/6 494/10 495/22 507/20 507/25 513/24 513/25 516/4 521/12 523/20 528/7 528/8 529/15 530/7 530/11 533/11 556/7 556/16 556/19 557/3 557/5 559/8 560/21 560/24 561/9 561/19 561/23 561/23 563/5 564/24 568/21
**I've [8]** 410/18 410/20 410/24 426/11 529/2 553/12 563/23 564/1
**idea [4]** 433/21 434/21 522/22 531/19
**identical [1]** 496/7
**identified [20]** 423/6 438/23 451/17 482/11 482/14 482/19 486/17 488/3 489/25 490/16 490/20 490/7 497/23 500/23 534/13 535/14 539/9 539/11 542/1 542/3 544/23
**identifiers [1]** 438/13
**identifies [2]** 491/6 491/8
**identify [14]** 422/2 430/10 434/8 438/5 439/3 451/19 452/1 484/19 485/4 490/5 520/13 539/5 542/7 557/18
**identifying [4]** 422/6 422/19 481/24 539/1
**ignore [4]** 458/19 460/24 461/2 462/13
**illustrate [1]** 461/6
**immediately [4]** 464/21 551/17 568/8 568/9
**impartial [1]** 551/9
**implausible [1]** 536/19
**implications [1]** 558/2
**important [5]** 458/19 462/9 462/16 549/4 551/12
**impossible [3]** 492/19 536/19 537/19
**improper [4]** 450/24 451/7 459/19 551/4
**in-house [1]** 529/10
**inaccurate [1]** 551/6
**inactive [2]** 486/8 504/16
**INC [5]** 403/7 421/9 438/8 465/13 498/10
**include [9]** 414/14 423/9 426/1 436/8 436/19 436/21 451/4 490/2 555/7
**included [39]** 412/21 413/3 415/4 415/9 419/2 419/6 421/15 421/18 423/15 428/18 431/3 431/9 431/13 431/25 432/4 432/15 432/22 433/1 434/4 434/25 436/15 437/7 437/9 437/19 438/2 439/3 439/8 441/11 443/13 444/21 445/5 448/22 490/9 518/21 518/23 520/25 534/17 554/18 554/19
**includes [3]** 465/21 543/15 549/20
**including [10]** 429/21 470/1 471/2 473/16 492/2 533/8 549/23 550/18 552/3 557/4
**incomplete [1]** 551/6
**inconsistent [2]** 458/2 527/17
**incorporate [1]** 473/13
**incorporated [2]** 438/8 510/20
**indeed [1]** 532/24
**independent [1]** 523/12
**INDEX [1]** 405/1
**indicate [9]** 414/20 414/24 414/25 415/22 419/11 420/1 426/15 427/17 470/6
**indicated [4]** 414/12 415/25 417/10 427/11
**indicates [1]** 415/23
**individual [10]** 415/16 430/11 466/19 466/20 470/7 502/13 511/19 514/10 552/18 565/16
**individual's [2]** 436/14 499/2
**individualized [1]** 538/2

**individuals [6]** 422/10 431/12 465/11 466/4 492/11 545/1
**infer [2]** 532/25 548/25
**inflated [2]** 445/1 445/3
**influenced [3]** 458/10 459/20 551/5
**inform [1]** 464/21
**informal [1]** 547/4
**information [14]** 419/20 420/1 424/5 424/25 461/6 464/10 496/15 500/12 529/22 549/15 551/4 551/6 551/9 551/16
**initial [3]** 425/7 452/11 504/6
**initiated [2]** 533/12 555/24
**initiating [1]** 479/8
**initiation [1]** 468/20
**insert [3]** 408/16 408/20 429/25
**Insofar [1]** 463/4
**instance [1]** 436/13
**instances [1]** 439/13
**instead [3]** 463/5 490/14 495/7
**Instragram [1]** 549/24
**instruct [1]** 457/23
**instructed [3]** 459/23 460/1 483/20
**instructing [1]** 536/8
**instruction [6]** 405/2 406/10 406/19 407/1 464/3 548/19
**instructions [47]** 405/7 405/12 406/5 406/7 408/5 408/14 409/2 409/16 409/19 454/23 455/8 455/10 456/1 456/17 457/1 457/12 457/25 458/2 458/4 458/5 458/14 458/18 470/16 470/23 477/15 479/1 479/1 479/2 479/4 479/5 498/17 498/18 498/18 499/15 499/18 501/2 505/1 505/4 548/18 549/13 552/19 553/1 553/1 553/6 553/9 557/17 567/20
**insufficient [1]** 476/5
**intact [1]** 556/3
**intended [5]** 459/13 465/25 502/25 527/7 527/7
**intending [2]** 469/10 490/18
**interest [4]** 461/19 466/14 528/11 537/8
**interested [1]** 494/14
**interesting [1]** 557/20
**internal [2]** 488/18 495/3
**Internet [3]** 464/16 549/22 550/14
**interpret [2]** 459/13 556/9
**interpreting [2]** 556/7 557/3
**introduce [3]** 432/8 481/8 481/10
**invalid [19]** 437/3 437/5 437/6 437/15 437/18 437/23 447/8 447/21 448/14 449/10 450/21 451/4 451/5 451/11 473/14 501/10 502/2 545/11 545/12
**investigation [2]** 550/15 551/3
**investment [5]** 468/21 468/24 479/9 479/13 493/17
**invite [6]** 476/17 476/24 507/16 514/18 530/2 534/16
**invited [2]** 556/17 556/22
**inviting [1]** 514/20
**involve [1]** 534/16
**involved [6]** 434/1 534/15 541/20 550/2 550/18 568/9
**involves [1]** 549/15
**irritated [1]** 526/11
**is [618]**
**isn't [15]** 430/18 431/17 432/1 446/16 447/11 478/16 515/17 518/11 519/11 526/16 527/24 528/10 529/14 533/17 542/20
**issue [13]** 425/2 430/8 468/4 469/13 470/9 490/6 505/4 506/6 512/10 519/6 531/2 568/22 569/12
**issues [3]** 549/15 550/17 564/6
**it [564]**
**it's [30]** 406/7 418/14 423/19 428/16 429/12 433/3 439/1 441/25 445/25 450/17 493/5 497/20 504/15 514/10 515/21 518/12 519/14 519/14 520/1 521/20 530/21 535/19 538/9 540/2 547/20 552/7 555/9 558/15 565/22 566/8
**italics [5]** 552/19 552/21 553/1 553/7 553/9
**item [2]** 414/18 421/7
**items [3]** 414/14 450/3 568/18
**its [8]** 422/14 437/22 466/8 468/8 479/15 492/18 497/25 515/18
**itself [1]** 428/10

**J**

**Jackson [4]** 487/14 526/18 530/17 531/3
**Jackson's [1]** 530/25
**Jacobson [1]** 404/4

## J

**January [2]** 492/1 516/5
**January 2016 [1]** 492/1 516/5
**Jason [6]** 491/13 491/15 504/7 509/21 518/2 542/25
**jeopardizes [1]** 551/13
**Jeremy [2]** 512/22 512/23
**JEwing [1]** 484/22
**JMOL [1]** 475/22
**JMOLs [1]** 474/14
**job [5]** 477/7 493/20 523/11 541/21 543/4
**John [3]** 404/10 408/10 463/3
**Jonas [1]** 404/4
**JUDGE [12]** 403/14 453/16 456/8 471/12 476/3 507/18 553/20 555/22 557/14 561/6 564/4 570/5
**Judge Simon [2]** 555/22 561/6
**judgment [10]** 471/13 471/24 474/17 474/25 475/3 475/11 475/15 569/2 569/4 569/14
**juice [2]** 479/25 514/13
**Julien [1]** 404/3
**jump [1]** 518/18
**juncture [1]** 473/6
**juror [34]** 455/7 455/20 464/7 464/8 464/9 474/19 475/4 476/6 548/21 548/22 551/13 551/16 551/20 552/13 553/10 555/18 560/19 564/16 565/6 565/6 565/6 566/7 566/9 566/12 566/14 566/16 566/18 566/20 566/22 566/24 567/1 570/1 570/12 570/13
**Juror No [1]** 565/7
**jurors [19]** 407/24 421/6 464/13 493/20 547/5 548/24 549/3 549/9 549/17 550/20 555/17 558/11 558/11 558/13 558/20 558/20 558/22 558/23 570/10
**jury [124]** 403/11 405/2 405/7 405/12 405/13 405/14 406/3 406/4 406/5 406/6 407/12 407/13 408/3 409/2 409/16 409/19 410/22 411/1 411/4 411/7 411/18 411/19 412/6 412/17 414/10 418/7 422/24 427/2 434/12 434/17 434/24 437/21 439/9 448/20 449/18 452/25 454/20 454/22 455/4 455/6 455/10 455/23 456/11 456/13 456/17 456/25 457/12 457/22 457/25 458/5 463/12 463/13 463/25 464/4 464/7 464/7 464/12 464/23 470/23 471/7 471/8 471/9 476/15 476/16 477/7 477/15 479/1 479/1 479/2 479/3 479/5 482/12 487/4 488/10 496/3 498/17 498/18 498/18 499/3 499/15 499/18 500/5 501/2 505/1 505/3 509/23 513/21 514/6 535/20 547/5 548/18 548/21 548/23 550/4 551/9 551/21 551/21 551/23 552/4 553/25 554/1 554/5 554/8 554/10 555/15 555/17 556/3 560/11 560/15 560/16 560/18 564/13 564/15 564/16 564/18 566/11 567/7 567/14 567/17 567/20 567/23 568/16 568/17
**jury's [2]** 410/14 410/16
**just [97]** 406/6 409/2 410/1 410/3 410/18 412/20 416/16 417/12 418/17 419/15 421/6 424/1 424/6 424/9 429/9 429/13 431/15 433/12 433/24 434/1 436/11 438/20 439/10 439/12 441/7 441/19 441/23 442/7 442/8 444/11 444/17 448/18 448/20 450/1 456/22 456/25 457/11 457/16 462/6 474/2 476/3 478/18 479/23 480/16 480/24 487/2 487/15 490/8 490/25 491/20 491/22 495/8 496/2 496/11 501/16 502/9 503/18 510/1 511/7 511/9 511/10 512/16 513/21 515/1 516/11 519/7 519/8 519/15 522/3 522/15 525/24 526/4 527/11 527/12 528/14 528/15 529/2 529/4 531/6 533/16 534/16 534/17 538/4 538/9 542/17 544/9 545/24 550/6 561/3 562/19 563/11 563/21 563/23 564/1 567/6 567/22 568/5
**Justin [2]** 408/10 463/3

## K

**KCC [13]** 421/25 422/1 422/20 424/17 425/8 425/9 425/13 425/19 430/7 430/9 430/18 430/21 431/3
**keep [12]** 457/10 457/13 502/10 543/7 543/7 545/23 546/18 559/15 567/20 567/21 567/22 567/22
**Kennedy [1]** 404/14
**kept [2]** 422/22 424/14
**key [7]** 468/16 498/22 505/13 506/17 506/21 520/10 531/18
**kind [6]** 420/1 432/5 493/22 511/2 514/16 558/7
**kinds [3]** 460/12 494/5 516/20
**kit [7]** 479/22 480/21 481/1 481/4 481/16 483/7 530/24
**kits [7]** 479/16 479/17 481/12 481/14 481/21 488/6 530/22
**knew [1]** 526/12

## K (col 2 top)
**know [82]** 407/5 410/18 417/15 423/22 424/3 424/3 424/4 424/4 424/11 425/5 425/23 425/9 426/3 426/8 428/9 428/21 429/3 429/10 429/12 430/8 430/18 430/20 432/3 432/20 432/21 434/3 434/6 434/24 435/15 435/18 437/14 439/9 440/11 440/12 440/13 440/19 445/19 446/4 448/2 461/17 463/20 479/22 480/8 483/5 502/4 517/13 518/8 520/24 526/19 527/14 527/16 528/11 529/8 531/14 535/15 536/13 536/18 537/17 543/9 543/10 544/12 544/14 545/18 545/20 545/22 545/23 546/13 546/24 547/10 547/11 547/17 547/21 547/22 555/3 556/23 557/19 557/21 562/8 562/13 567/12 569/21 569/24
**know/we [1]** 562/13
**knowing [1]** 434/21
**knowingly [2]** 473/8 568/22
**known [1]** 467/20
**knows [1]** 494/4
**Kyle [2]** 514/16 514/17

## L

**label [1]** 561/23
**lack [1]** 466/13
**Ladies [1]** 529/24
**lady [2]** 522/14 524/10
**landline [25]** 465/5 467/4 467/16 467/23 467/25 468/2 468/3 468/6 468/14 468/16 471/16 471/21 478/2 495/21 497/20 498/20 498/22 498/25 502/25 505/13 506/15 506/17 507/7 544/14 553/7
**landlines [11]** 410/16 465/16 467/21 469/15 472/1 472/2 472/4 475/21 497/19 546/24 547/6
**language [1]** 496/21
**large [2]** 493/4 546/11
**larger [1]** 445/4
**last [20]** 408/14 408/15 409/7 409/8 409/12 421/9 426/11 433/12 438/16 441/20 442/24 442/25 443/3 454/2 470/21 470/23 472/10 473/19 504/13 504/24
**lasted [3]** 525/7 526/1 526/25
**lasts [1]** 479/24
**later [9]** 408/13 473/5 474/9 491/19 524/21 554/13 554/14 559/3 561/1
**Laun [2]** 408/10 463/3
**launched [1]** 479/23
**law [17]** 457/23 458/7 458/8 460/12 462/18 465/2 471/13 471/25 474/18 474/25 475/3 475/11 475/15 550/18 569/2 569/4 569/15
**lawsuit [1]** 465/23
**lawsuits [1]** 466/1
**lawyer [9]** 460/17 460/18 460/20 487/5 488/24 493/14 494/7 507/9 526/10
**lawyers [11]** 423/5 423/6 454/23 459/3 459/10 459/11 459/15 459/17 462/25 550/19 560/22
**layer [1]** 523/2
**learn [5]** 456/21 456/21 484/16 486/7 550/15
**learned [2]** 429/15 429/16
**least [62]** 413/9 438/1 475/12 475/13 497/5 497/11 497/14 512/1 523/25 531/25 533/13 533/25 534/4 544/1 544/11 544/19 544/21 546/2 546/4 546/5 546/8 546/10 546/14 547/1 547/2 547/8 547/9 547/12 547/13 547/15 547/17 547/24 548/1 548/2 548/4 548/4 548/9 548/9 555/25 556/14 556/20 556/24 556/25 557/4 557/6 557/25 558/3 558/3 558/8 558/15 558/16 558/21 558/23 559/2 559/2 559/23 559/23 562/6 562/11 563/15 569/1 569/5
**least' [1]** 559/13
**leave [20]** 408/6 411/17 441/8 457/15 457/18 474/5 476/1 519/19 520/7 527/10 538/22 538/24 539/23 540/10 548/8 554/9 554/12 555/11 567/22 567/24
**leaves [2]** 545/18 548/3
**leaving [1]** 538/19
**left [17]** 408/13 417/6 442/14 442/22 494/11 494/23 494/24 495/9 498/16 499/4 511/12 520/19 521/3 521/23 522/10 526/7 554/18
**legal [2]** 476/5 557/1
**legitimately [1]** 527/23
**length [1]** 526/5
**less [6]** 438/24 475/16 475/18 475/19 475/20 492/13

**let [34]** 406/5 423/21 424/10 449/13 452/24 453/10 454/23
455/1 455/21 456/3 456/5 456/6 467/17 468/18 469/1 476/23
478/25 479/7 479/22 499/11 503/8 534/12 537/23 537/23
543/24 549/18 553/11 555/3 557/8 561/4 563/25 567/7 569/20
569/24
**let's [29]** 411/18 412/20 413/10 415/1 418/3 418/3 418/16
419/21 420/13 430/7 431/5 438/3 442/24 477/10 480/14 486/25
501/10 508/23 509/20 514/13 516/22 521/11 521/16 530/19
558/10 558/19 560/15 561/24 565/23
**letter [2]** 521/7 522/14
**letters [1]** 522/8
**letting [1]** 456/4
**level [1]** 513/10
**liability [2]** 410/10 498/11
**liable [1]** 469/2
**lieu [1]** 408/7
**life [1]** 510/5
**light [2]** 461/22 480/6
**like [50]** 408/4 412/25 414/14 421/5 426/13 436/14 441/14
441/17 450/16 454/21 454/22 456/12 457/15 457/17 471/12
479/17 481/8 483/24 485/3 490/17 498/12 500/15 508/13
514/18 515/10 517/13 519/12 520/18 523/8 524/21 527/21
528/9 528/9 533/20 537/25 541/3 544/12 545/24 556/13 557/9
557/10 557/13 559/15 561/16 561/18 562/3 562/9 562/19 565/4
568/19
**likely [32]** 436/4 436/6 477/17 495/17 497/10 497/13 498/25
499/3 499/8 499/8 500/6 502/7 502/15 503/3 507/3 527/2
527/11 533/17 533/24 534/25 535/9 535/11 538/7 538/9 541/11
541/16 542/9 544/5 545/20 546/1 547/11 547/18
**likes [1]** 458/10
**Lily [1]** 404/6
**limit [1]** 425/20
**limited [9]** 430/15 460/1 460/2 473/17 498/11 515/20 516/23
543/8 549/23
**limiting [1]** 434/1
**line [46]** 408/14 409/8 409/8 415/14 415/18 435/19 439/15
442/19 442/22 442/23 442/25 465/4 467/3 467/15 467/17
467/23 471/22 473/18 474/24 475/10 475/13 477/14 478/1
487/13 490/19 495/21 499/2 505/1 508/11 508/11 508/12
508/12 509/7 520/15 525/24 526/4 527/19 527/22 533/14 534/2
544/3 544/14 544/15 544/16 553/9 562/6
**lines [12]** 413/13 441/16 441/21 444/1 465/16 467/20 469/15
469/25 473/3 473/4 520/20 552/24
**linked [1]** 440/13
**LinkedIn [1]** 549/24
**Lisa [1]** 540/8
**list [72]** 416/4 421/25 422/1 422/2 422/10 422/20 422/22 422/25
423/7 423/10 423/11 423/13 423/16 424/18 425/7 425/20
428/10 429/25 430/8 430/9 430/19 430/21 430/24 431/3 432/14
433/19 454/4 459/8 463/17 482/6 482/13 485/14 487/12 487/23
490/8 490/10 491/9 491/13 491/14 491/15 491/15 491/17
498/10 498/13 503/22 503/22 503/23 504/7 504/11 504/15
504/19 512/11 514/8 527/5 528/7 531/14 532/4 532/6 532/8
532/12 532/12 532/23 533/7 533/8 534/3 544/25 546/20 547/16
554/16 554/17 554/21 555/8
**listed [32]** 414/21 415/3 415/5 415/12 416/9 416/14 416/24
418/18 418/22 419/24 420/11 421/21 425/23 427/15 429/5
430/18 436/14 438/4 443/18 445/11 445/11 445/12 445/16
445/20 445/21 445/23 482/17 500/19 501/19 502/7 527/5 545/5
**listen [17]** 441/6 441/7 457/1 480/14 484/13 488/21 489/21
513/3 513/8 514/4 514/15 514/16 523/4 527/10 550/11 563/9
565/4
**listened [1]** 549/3
**listener [1]** 480/19
**listening [1]** 526/22
**listing [1]** 491/4
**lists [24]** 412/23 413/23 419/4 419/7 452/12 482/3 482/4 482/4
482/9 482/10 482/12 482/14 482/17 482/22 483/14 489/24
490/12 490/21 491/23 501/9 531/15 531/17 536/17 541/7
**litigation [1]** 466/14
**little [13]** 416/16 439/25 517/3 523/2 537/3 537/16 548/16

58/24 559/15 559/18 560/1 562/23 562/24
**live [69]** 406/7 465/5 477/8 479/1 483/21 484/1 484/17 488/16
488/18 488/19 488/20 488/24 488/25 489/1 489/1 489/3 489/6
489/7 489/10 489/11 489/11 489/15 489/16 489/16 489/19
489/19 489/19 490/1 490/9 490/13 490/22 490/25 490/25
492/14 492/15 493/13 501/5 501/21 520/6 520/6 521/19 521/25
521/19 522/24 524/20 526/23 527/8 528/18 535/8 535/23
535/24 536/3 537/20 538/17 539/23 540/13 540/15 540/20
540/23 541/1 541/2 543/18 543/20
**live connect [1]** 488/24
**live-connect-only [1]** 493/13
**lived [5]** 423/14 424/8 424/13 424/18 425/20
**lives [1]** 426/2
**living [1]** 433/2
**LLC [2]** 438/8 438/18
**LLP [4]** 404/4 404/10 404/13 404/16
**locate [1]** 463/15
**locations [1]** 466/2
**long [4]** 525/7 525/9 525/25 526/6
**longer [6]** 438/16 525/11 559/16 559/18 560/2 562/23
**look [47]** 409/7 412/16 413/10 414/17 418/16 419/21 420/13
420/20 421/7 433/25 442/13 444/8 444/9 456/17 477/10 491/11
491/22 496/4 504/4 508/23 508/24 509/12 510/17 512/8 515/1
515/11 515/21 516/4 517/7 520/1 520/11 520/17 520/21 524/2
525/2 525/25 527/2 528/5 528/6 529/17 539/4 543/11 543/14
557/2 562/23 563/7 567/6
**looked [9]** 425/9 430/20 438/10 438/15 482/20 488/3 490/10
543/17 562/25
**looking [16]** 409/6 424/24 434/17 434/24 435/1 437/21 438/9
439/10 439/12 442/8 444/18 447/8 448/20 448/20 452/1 493/2
**looks [3]** 441/17 519/16 563/1
**loop [1]** 496/12
**LORI [5]** 403/4 465/9 527/7 544/10 548/12
**Lori Wakefield [1]** 544/10
**lose [1]** 556/16
**lot [10]** 409/22 444/3 488/23 502/8 506/6 508/7 508/8 519/24
519/25 524/22
**lots [1]** 492/25
**loud [1]** 565/10
**low [1]** 480/4
**lower [2]** 558/12 562/10
**lowest [1]** 562/3
**lumped [1]** 496/25
**lunch [4]** 455/15 456/10 548/17 554/2
**Luner [1]** 404/4

**M**

**machine [82]** 413/1 413/11 413/22 414/1 429/24 430/1 430/1
444/18 477/3 477/3 477/5 477/6 482/4 483/15 484/3 484/9
484/25 487/19 488/25 489/3 489/6 489/9 489/15 490/18 491/5
491/7 492/16 492/23 493/12 494/8 494/13 494/16 494/17
494/18 494/21 494/23 495/6 495/9 495/10 495/25 500/16
500/21 501/6 501/18 501/20 503/5 503/6 503/11 504/1 504/18
504/21 504/21 520/22 521/18 521/23 521/24 522/10 525/10
525/12 526/8 526/14 530/14 531/23 532/1 532/10 538/18
538/19 538/21 538/23 539/5 539/7 539/8 539/9 539/10 539/13
539/18 539/24 540/1 540/6 540/9 543/5 543/17
**machines [3]** 494/8 494/11 494/24
**made [48]** 409/20 422/11 422/16 424/17 445/4 466/5 466/10
466/16 466/23 467/2 467/8 467/13 467/22 469/4 469/10 470/3
471/15 471/19 471/21 473/20 474/21 474/24 475/6 475/9
475/12 475/13 475/17 477/19 477/24 478/7 481/23 492/1 494/4
495/18 495/20 498/7 500/6 502/16 504/21 507/7 509/3 512/7
516/8 533/12 546/22 549/6 555/24 568/8
**mail [3]** 487/23 512/19 532/6
**maintenance [1]** 464/3
**major [2]** 408/23 510/18
**make [40]** 411/10 416/16 417/19 418/6 430/14 451/5 457/9
462/3 465/3 466/17 468/15 481/6 486/25 490/18 492/14 494/15
495/10 498/5 498/21 499/17 500/16 503/11 506/16 507/25
508/15 518/14 524/5 524/12 525/20 526/12 527/3 529/17
539/19 550/14 553/14 555/1 561/4 561/18 562/24 569/7
**makes [7]** 430/1 460/12 465/2 494/20 534/22 560/6 561/17

**making [12]** 409/8 465/7 465/14 465/17 468/19 469/14 469/23 479/8 480/19 492/4 497/17 537/17
**Manager [4]** 487/19 531/22 531/23 540/18
**manipulated [1]** 510/3
**manner [2]** 461/19 524/17
**manual [8]** 446/6 446/15 520/1 520/7 520/23 521/10 521/11 521/22
**manual's [1]** 446/8
**manually [1]** 438/19
**many [49]** 413/4 413/11 413/19 432/3 432/21 433/21 434/3 434/21 434/24 436/22 437/18 442/5 442/7 442/10 443/21 444/1 444/17 445/23 448/21 449/11 466/2 470/6 472/8 472/15 482/20 492/4 492/11 497/2 497/3 500/5 502/24 509/15 511/6 511/6 526/19 531/10 536/18 543/3 544/4 544/21 546/13 546/13 546/15 546/15 546/24 547/16 547/19 547/23 565/18
**mark [1]** 555/21
**marked [4]** 426/23 426/25 427/20 509/22
**marketing [17]** 481/25 482/18 482/19 482/21 492/18 532/2 534/14 534/18 534/21 535/1 535/3 535/4 535/6 535/10 538/11 541/20 542/14
**Mary [25]** 450/15 450/16 453/2 455/7 455/13 456/9 463/20 471/5 476/12 551/20 552/8 552/15 553/22 554/10 554/11 554/16 554/19 555/4 560/15 565/11 566/11 567/4 568/8 569/24
**Mary's [1]** 554/21
**mass [1]** 547/16
**massive [1]** 522/7
**Maston [1]** 404/10
**material [1]** 464/18
**materials [5]** 464/19 464/21 464/22 550/14 568/24
**math [3]** 417/13 450/6 545/3
**matter [14]** 464/5 471/13 471/24 474/18 474/25 475/3 475/1 475/15 497/16 531/6 550/5 569/2 569/4 569/15
**matters [2]** 474/1 570/1
**may [75]** 409/25 411/22 411/25 412/11 423/1 425/6 425/13 425/13 425/13 426/20 426/21 430/5 430/15 433/21 440/15 440/23 440/24 441/6 448/9 452/17 453/3 454/15 456/1 457/14 457/25 458/15 459/5 459/7 459/25 460/2 460/4 460/7 460/20 460/21 461/1 461/10 461/12 461/16 461/25 462/4 462/5 462/10 462/12 462/25 463/18 463/23 464/3 464/8 464/13 468/8 468/10 476/20 481/13 498/15 505/6 513/12 514/1 514/2 521/10 525/16 529/8 530/5 551/5 551/19 552/1 552/1 557/7 562/6 562/8 567/19 567/21 568/1 568/1 571/11
**maybe [25]** 474/12 487/24 500/20 500/20 500/21 511/23 519/6 519/6 520/7 525/9 525/10 531/20 535/21 538/20 538/21 542/6 542/6 543/1 547/22 557/17 558/10 562/2 562/17 562/18 562/20
**me [80]** 406/5 423/21 429/9 431/6 434/20 435/21 435/25 436/18 436/23 441/15 442/20 443/3 443/12 443/14 443/19 444/2 444/20 446/11 449/13 450/1 452/24 453/10 453/12 455/1 456/3 456/7 457/1 457/4 457/8 467/17 468/18 469/1 471/5 474/3 476/23 478/25 479/7 480/23 499/11 503/8 507/10 514/6 514/7 527/10 528/7 528/7 528/12 531/10 534/12 537/23 537/23 543/24 550/22 551/19 551/22 552/4 553/11 554/19 555/3 557/8 557/9 557/13 558/24 559/6 559/16 559/20 560/10 560/23 561/1 561/4 561/6 561/17 563/1 563/6 563/25 564/7 567/7 567/16 568/14 569/20
**mean [17]** 412/20 413/18 417/11 427/15 442/9 445/3 466/16 483/1 485/3 508/3 512/8 516/18 517/3 517/21 521/20 529/3 545/15
**meaning [1]** 468/8
**means [30]** 413/19 414/10 424/3 427/9 445/12 454/18 458/11 458/21 461/3 468/19 469/18 479/5 479/7 483/2 491/16 499/19 516/25 519/7 520/23 526/11 529/4 529/7 533/2 533/16 534/22 536/5 536/11 537/13 547/12 549/21
**meant [2]** 517/25 540/24
**media [4]** 549/25 550/1 550/11 550/22
**meet [13]** 422/2 490/6 508/17 508/18 509/17 516/14 518/17 520/5 524/6 528/15 528/16 529/12 529/19
**meeting [4]** 514/18 514/21 516/23 534/17
**member [16]** 442/3 466/12 466/12 466/14 469/22 470/1 472/20 477/12 495/18 502/13 512/18 532/13 548/21 551/21

551/23
**member's [6]** 467/14 467/13 475/10 497/25 478/1 495/20
**members [34]** 430/16 454/20 455/4 455/23 456/11 457/22 463/24 465/17 466/18 467/9 470/8 471/16 472/3 472/7 472/13 472/24 473/1 475/7 475/17 476/16 477/13 477/20 486/15 500/1 508/13 511/14 511/24 534/2 538/15 550/1 551/21 553/25 560/18 564/15
**memo [1]** 539/24
**memory [4]** 459/16 461/18 524/14 544/9
**mention [1]** 452/4
**mentioned [5]** 438/19 451/11 465/20 491/3 503/9
**menus [1]** 455/14
**merits [2]** 466/17 549/19
**message [101]** 426/15 427/9 446/12 446/16 465/6 468/20 469/6 469/9 469/11 469/16 472/6 472/12 472/16 473/21 479/8 480/8 484/6 484/6 484/10 484/14 484/14 484/24 484/25 485/10 485/19 485/20 485/25 485/25 486/23 487/9 487/10 487/16 487/25 488/3 488/5 488/15 488/21 490/12 490/15 490/17 490/18 492/25 493/7 493/11 494/3 494/20 495/4 500/21 500/25 501/1 501/7 501/23 502/9 509/5 510/10 511/15 514/4 515/2 520/18 520/19 520/25 521/23 525/22 526/7 526/18 526/20 526/21 530/21 531/2 531/10 531/13 531/18 531/25 531/25 532/11 532/19 532/21 533/4 533/7 534/10 534/6 536/10 538/22 538/24 539/3 539/4 539/6 539/10 539/11 539/15 539/18 539/19 539/23 540/2 540/11 540/25 542/14 544/12 545/7 545/9 546/5
**messages [70]** 465/18 472/14 472/17 477/4 477/12 477/12 478/4 478/8 478/11 478/24 479/14 479/15 479/18 480/14 481/17 481/17 481/22 481/23 482/1 484/10 484/11 484/11 484/13 490/7 490/25 492/17 493/12 493/13 493/22 493/23 494/5 494/11 494/13 494/17 494/23 495/6 495/8 495/11 495/15 500/7 504/23 511/13 512/15 515/16 517/8 517/13 517/15 517/18 520/7 521/3 522/10 525/5 525/6 525/15 526/5 530/15 531/8 535/12 536/19 537/21 538/13 538/19 539/13 539/20 540/6 541/5 543/23 544/8 544/11 544/24
**messaging [1]** 549/22
**met [3]** 495/15 509/16 510/25
**metabolism [1]** 480/3
**method [1]** 508/21
**MICHAEL [1]** 403/13
**Michigan [1]** 503/20
**microphone [2]** 407/8 423/24
**mid [1]** 471/4
**mid-morning [1]** 471/4
**middle [1]** 511/10
**might [8]** 436/21 451/18 460/25 501/12 501/12 526/12 547/25 547/25
**Miller [1]** 404/16
**milligrams [1]** 480/2
**million [27]** 416/20 428/2 475/17 508/14 510/22 510/24 512/10 513/1 515/4 516/13 522/12 523/24 534/9 534/11 538/9 542/12 545/4 546/2 546/4 546/6 546/12 547/2 547/10 547/13 548/3 548/4 548/9
**millions [3]** 477/4 477/5 494/4
**mind [6]** 441/7 509/25 557/21 563/10 567/16 568/14
**minor [3]** 406/6 406/6 408/21
**minute [6]** 453/12 471/4 525/23 526/20 526/25 567/16
**minutes [12]** 409/17 447/5 448/18 448/25 456/13 456/15 474/12 537/12 543/24 554/13 554/14 568/15
**misleading [1]** 551/6
**misread [2]** 553/12 553/14
**missed [3]** 451/18 451/20 509/11
**missing [4]** 407/2 508/9 516/9 545/6
**mistake [1]** 554/17
**mistaken [3]** 431/20 516/4 521/12
**mistakes [2]** 462/3 553/14
**mistrial [1]** 551/14
**mobile [64]** 410/5 410/9 410/15 423/14 465/3 465/15 467/14 467/18 468/1 469/15 469/25 471/15 473/3 473/23 475/10 475/13 475/19 477/25 495/19 496/1 496/6 496/10 496/24 497/3 497/6 497/7 497/11 497/14 497/15 497/18 498/16 509/7 510/13 511/4 511/6 511/9 518/24 534/1 534/10 541/5 541/11 541/17 541/24 542/10 542/11 542/15 544/20 546/5 546/10 546/12 546/13 546/15 546/19 547/1 547/3 547/8 547/13 547/21 548/4

**mobile... [5]** 548/9 552/23 553/4 555/23 556/1
**model [1]** 509/14
**Molalla [2]** 502/18 526/1
**moment [14]** 417/9 430/4 432/5 450/25 452/5 453/10 453/13 453/20 478/15 485/15 510/1 513/11 530/5 564/24
**moments [5]** 455/24 456/18 560/22 567/14 568/14
**Monica [2]** 404/5 404/5
**monitor [1]** 463/12
**month [1]** 486/10
**months [5]** 491/24 491/25 492/16 506/23 513/2
**more [82]** 434/16 435/7 435/9 435/11 435/12 440/2 440/5 444/10 444/12 449/5 454/7 455/25 458/22 460/10 463/24 465/14 466/23 467/8 467/9 469/24 469/25 477/8 477/17 477/19 477/20 480/14 483/8 484/12 484/16 486/7 486/11 486/11 492/19 492/22 493/2 493/5 493/22 495/17 497/10 497/13 498/24 499/3 499/7 499/8 500/6 502/7 502/14 502/16 503/2 507/3 522/7 522/17 523/21 526/25 533/16 533/20 533/24 534/11 534/25 535/9 535/11 537/24 538/4 538/4 538/7 538/9 538/9 541/11 541/16 542/9 542/12 544/4 545/20 545/20 545/21 546/1 547/11 547/18 547/21 547/25 548/16 551/20
**morning [6]** 412/8 426/10 426/12 471/4 477/2 507/23
**most [10]** 497/7 534/5 536/24 536/24 537/3 537/14 537/15 540/9 545/24 547/21
**motion [7]** 473/12 474/4 475/25 476/4 476/4 569/2 569/3
**motions [7]** 405/8 471/10 474/4 474/5 474/7 474/10 569/2
**move [9]** 449/19 471/12 471/17 474/17 474/25 475/3 475/11 475/15 521/16
**moved [2]** 424/14 433/5
**moves [1]** 471/24
**moving [1]** 447/13
**Mr [6]** 405/9 405/10 405/11 407/7 427/6 456/7
**Mr. [123]** 411/18 411/20 411/21 411/24 412/9 412/11 412/16 414/9 414/9 414/11 414/21 415/20 415/25 417/5 417/9 417/15 417/19 424/2 426/10 426/23 427/23 429/9 430/7 431/16 435/2 439/13 441/2 441/11 441/14 441/19 443/2 443/11 443/18 447/3 449/4 449/16 449/19 449/20 449/20 450/8 452/16 452/18 452/19 454/20 473/24 474/11 475/23 481/24 481/24 482/2 482/8 482/14 482/16 482/22 482/22 483/13 484/18 485/3 486/17 486/22 487/8 488/3 489/22 490/1 490/4 490/10 490/10 490/20 491/3 492/6 492/21 496/12 497/22 498/6 498/13 500/7 500/23 501/8 501/16 501/23 505/8 507/15 507/19 507/19 510/3 511/7 511/18 514/2 514/23 516/3 516/25 517/7 517/12 517/24 518/3 518/4 518/19 518/20 519/3 519/20 520/16 522/21 522/22 527/22 529/10 530/1 531/12 531/19 532/5 532/19 533/4 535/13 537/9 539/1 539/8 540/12 540/14 541/1 542/13 544/6 544/22 545/13 548/15
**Mr. Apodaca [1]** 454/20
**Mr. Berger [1]** 529/10
**Mr. Call [1]** 522/22
**Mr. Call's [2]** 516/25 517/7
**Mr. Davis [36]** 411/18 411/20 411/24 412/9 412/16 426/10 426/23 427/23 429/9 430/7 435/2 439/13 441/2 441/11 441/14 441/19 443/2 443/11 443/18 447/3 452/16 482/2 482/22 497/22 498/6 498/13 500/7 501/8 501/16 510/3 511/18 518/4 518/19 519/20 520/16 544/22
**Mr. Davis' [2]** 518/20 545/13
**Mr. Dovel [9]** 411/21 412/11 417/9 424/2 431/16 449/4 449/19 475/23 548/15
**Mr. Eves [1]** 505/8
**Mr. Foster [6]** 449/20 450/8 452/18 452/19 507/19 519/3
**Mr. Franzini [7]** 484/18 485/3 507/15 511/7 516/3 518/3 527/22 544/6
**Mr. Gidley [40]** 414/9 415/20 415/25 417/5 417/15 417/19 481/24 481/24 482/8 482/14 482/16 483/13 486/17 487/8 488/3 489/22 490/1 490/4 490/10 490/20 492/6 492/21 496/12 500/23 517/12 517/24 522/21 531/12 531/19 532/5 532/19 533/4 535/13 537/9 539/1 539/8 540/12 540/14 541/1 542/13
**Mr. Gidley's [8]** 414/9 414/11 414/21 482/22 486/22 490/10 491/3 501/23
**Mr. Nick [1]** 514/23
**Mr. O'Neal [7]** 449/16 449/20 473/24 474/11 507/19 514/2

530/1
**Ms [4]** 565/23 504/13 504/25 506/3
**Ms. [77]** 430/18 445/19 446/1 452/7 465/9 465/13 466/3 466/20 466/21 466/24 467/3 467/6 467/10 467/14 467/25 468/2 468/9 469/22 470/2 470/7 470/9 470/11 473/15 474/18 474/22 474/24 475/2 475/8 475/18 477/21 477/25 486/18 486/23 487/9 488/4 491/12 495/19 499/23 499/25 502/12 502/13 502/15 502/17 502/21 503/16 503/18 503/19 503/25 504/10 504/11 504/19 504/25 505/6 505/8 505/16 506/7 507/5 508/24 515/9 524/10 524/13 525/14 526/8 526/18 527/16 527/23 532/20 533/8 533/15 537/25 544/1 552/18 556/4 561/6 561/13 564/18 565/16
**Ms. Cornett [4]** 556/4 561/6 561/13 564/18
**Ms. Eves [1]** 503/19
**Ms. Lori [1]** 465/9
**Ms. Wakefield [45]** 430/18 445/19 452/7 465/13 466/3 466/20 466/21 466/24 467/6 467/10 469/22 470/2 470/9 470/11 473/15 474/22 475/2 475/8 475/18 477/21 486/18 486/23 487/9 488/4 491/12 499/23 502/15 502/17 502/21 503/16 503/18 504/10 504/25 505/16 506/7 507/5 515/9 524/10 526/8 527/23 532/20 533/8 533/15 537/25 544/1
**Ms. Wakefield's [26]** 446/1 467/3 467/14 467/25 468/2 468/9 470/7 474/18 474/24 477/25 495/19 499/25 502/12 502/13 503/18 504/11 504/19 505/6 505/8 508/24 524/13 525/14 526/18 527/16 552/18 565/16
**much [13]** 441/15 452/17 460/14 462/17 475/23 492/22 507/11 507/15 529/24 530/1 548/15 564/10 567/11
**multiple [6]** 440/3 440/19 443/17 466/1 475/6 530/20
**multitask [1]** 457/6
**must [33]** 429/21 442/11 458/5 458/8 458/9 458/11 458/18 458/21 459/23 460/2 460/24 460/24 461/3 462/22 464/21 466/17 466/21 467/6 468/4 468/7 469/3 470/9 516/12 516/18 517/15 535/19 548/25 548/25 549/12 549/12 550/4 556/8 570/1
**my [63]** 408/21 409/6 410/18 410/19 411/19 411/24 429/23 430/9 432/6 432/15 436/22 441/7 442/12 445/9 450/6 452/10 453/10 455/25 456/20 457/23 458/3 458/17 464/15 470/15 474/6 476/4 485/14 486/18 488/4 505/15 507/12 508/5 508/19 508/19 511/12 514/7 514/7 515/23 522/10 522/20 523/9 524/8 524/11 526/11 528/9 528/12 528/16 529/6 530/9 530/10 532/14 548/12 548/12 548/13 553/15 554/2 554/10 557/8 557/21 558/8 558/12 558/19 561/24
**myself [1]** 438/21

**N**

**name [21]** 421/8 421/9 436/11 436/12 436/14 438/16 438/23 438/24 442/10 444/11 445/15 445/15 491/8 494/1 498/2 498/4 510/5 515/18 538/15 542/2 542/20
**named [5]** 430/23 431/2 444/13 465/9 520/14
**names [17]** 438/16 439/14 439/19 440/7 440/14 440/20 442/9 443/12 443/13 443/15 443/20 444/19 482/5 482/6 491/16 509/24 520/15
**Nash [1]** 404/16
**natural [1]** 479/24
**nature [1]** 472/2
**nauseam [1]** 430/8
**nearly [1]** 525/18
**necessarily [7]** 440/1 461/14 462/15 468/15 498/21 506/16 556/20
**necessary [1]** 551/18
**need [14]** 408/15 422/24 441/15 463/21 473/24 475/24 499/7 502/14 507/4 554/12 555/11 557/14 568/18 569/10
**needed [1]** 492/16
**needs [4]** 410/19 454/21 539/10 569/9
**neglected [1]** 455/19
**neither [3]** 422/14 428/14 466/8
**Neon [7]** 479/23 481/7 481/9 481/10 481/21 483/11 494/2
**network [1]** 541/20
**never [8]** 469/11 469/11 490/11 490/20 490/21 541/1 559/17 563/2
**new [11]** 418/24 479/22 481/7 481/8 481/18 481/19 481/21 483/10 486/9 493/11 537/2
**newest [1]** 481/10
**news [1]** 550/11
**next [17]** 412/1 415/14 420/13 430/5 453/4 454/21 481/4 485/7

**next... [9]** 485/21 486/1 503/2 513/8 514/15 525/5 546/16 569/8 569/22
**nice [1]** 524/10
**Nicholas [1]** 404/16
**Nick [1]** 514/23
**nine [5]** 491/19 491/21 493/9 504/9 536/22
**no [173]**
**No one [1]** 489/16
**No. [12]** 406/10 408/7 466/23 466/25 467/2 467/8 467/11 467/13 483/17 555/18 566/24 567/1
**No. 1 [4]** 406/10 466/23 467/8 555/18
**No. 12 [1]** 408/7
**No. 17 [1]** 483/17
**No. 2 [2]** 466/25 467/11
**No. 3 [2]** 467/2 467/13
**No. 7 [1]** 566/24
**No. 8 [1]** 567/1
**nomenclature [1]** 476/4
**non [6]** 418/15 420/18 448/14 449/9 464/7 464/9
**non-juror [2]** 464/7 464/9
**non-U.S [2]** 448/14 449/9
**non-winBack [2]** 418/15 420/18
**nonconfidential [1]** 567/24
**none [4]** 446/14 461/13 518/6 528/8
**North [1]** 404/11
**not [299]**
**note [8]** 463/19 463/23 522/25 539/25 551/19 552/6 554/9 555/17
**notebook [1]** 457/17
**notebooks [1]** 443/11
**notes [6]** 453/10 457/9 457/17 567/20 567/24 567/25
**nothing [3]** 406/7 407/13 570/3
**notice [1]** 437/3
**noticed [5]** 406/7 408/12 408/17 425/8 444/10
**notify [1]** 551/16
**now [90]** 407/15 408/23 413/22 414/2 415/1 415/14 416/23 418/3 418/5 418/7 418/14 419/9 419/23 420/13 420/17 420/24 421/24 422/1 422/23 436/7 436/25 438/3 439/13 441/7 444/24 445/9 446/5 447/5 447/19 450/13 450/20 452/7 454/22 456/6 457/22 461/5 463/9 464/25 466/19 468/18 469/1 470/16 474/10 477/14 478/3 479/21 481/14 481/15 482/16 484/17 485/11 486/4 488/14 489/2 517/25 519/9 521/2 521/7 523/24 524/25 528/24 530/18 530/22 530/23 530/25 531/12 531/14 532/4 533/1 533/10 535/12 535/23 536/17 539/14 540/12 541/4 541/10 543/24 544/18 545/11 546/9 547/14 547/19 553/15 559/2 564/7 567/18 568/2 568/12 569/7
**nowhere [1]** 427/13
**nuisance [1]** 413/1
**number [232]**
**numbered [3]** 408/14 408/18 409/7
**numbering [1]** 407/15
**numbers [144]** 409/7 410/13 420/20 420/25 421/13 421/21 426/2 427/24 428/3 428/8 428/18 428/21 428/22 429/5 429/9 430/11 431/17 431/21 431/25 432/3 432/15 432/18 432/18 432/22 432/24 432/25 433/4 433/8 433/14 433/14 433/21 433/22 434/2 434/4 434/10 434/21 434/25 435/4 435/5 435/6 435/22 435/25 436/2 436/4 436/9 436/10 436/15 436/20 437/1 437/4 437/5 437/6 437/7 437/18 437/23 438/4 438/6 440/12 440/18 440/19 444/3 444/9 444/10 444/25 444/25 444/25 445/4 447/7 447/8 447/21 447/21 448/13 448/14 448/14 448/14 448/21 449/9 449/9 449/10 451/4 451/4 451/11 452/2 467/20 482/5 494/12 495/24 496/24 496/25 497/5 497/6 497/11 497/12 497/15 497/16 497/18 497/19 498/7 498/13 498/16 498/16 498/17 499/4 499/5 499/5 501/9 501/10 501/10 502/2 502/19 502/23 509/25 510/4 511/3 511/4 511/14 514/10 518/16 518/21 518/23 518/23 518/24 519/2 531/16 541/6 541/7 541/9 541/19 542/10 542/10 542/15 545/11 545/11 546/13 546/13 547/2 547/3 547/8 547/8 547/13 554/10 556/5 561/8 561/24
**numerically [1]** 552/4

**o'clock [2]** 474/13 476/10
**O'Neal [10]** 404/10 405/10 407/7 449/16 449/20 473/24 474/11 507/19 514/2 530/1
**O'Toole [6]** 491/13 491/15 504/7 509/21 518/2 542/25
**oath [6]** 458/13 462/24 489/17 535/2 551/1 551/11
**object [4]** 430/2 459/18 460/20 513/18
**objecting [1]** 410/13
**objection [35]** 410/3 410/17 413/12 417/8 422/23 423/20 424/2 424/10 424/19 425/11 447/10 447/23 448/8 448/16 450/23 451/7 451/14 451/21 454/6 454/11 459/20 460/20 460/22 460/23 478/13 485/12 486/24 513/12 513/12 513/13 513/15 513/16 514/1 555/3 555/3
**objections [7]** 409/15 409/18 453/16 453/21 459/17 559/7 563/25
**objects [1]** 410/4
**observing [1]** 425/14
**obtain [1]** 464/18
**occurred [1]** 522/5
**October [1]** 491/25
**off [24]** 419/20 424/12 424/24 429/15 434/20 437/15 441/17 444/17 476/21 480/16 480/18 480/21 480/24 481/1 481/3 481/12 481/16 488/5 493/10 510/5 510/18 528/7 530/24 554/19 554/25 573/25 581/5
**offer [10]** 453/5 453/19 480/10 480/16 480/19 480/21 480/24 481/1 481/5 481/11
**offered [3]** 481/17 481/18 488/5
**offering [3]** 479/21 480/18 486/6
**offers [1]** 460/17
**offhand [3]** 435/10 438/12 442/7
**official [2]** 554/17 571/12
**officially [2]** 567/18 567/19
**often [1]** 462/3
**oh [4]** 480/5 531/19 534/16 543/18
**okay [39]** 409/15 411/14 412/4 418/1 424/11 427/23 429/4 429/13 431/5 431/15 431/23 431/25 432/24 433/3 433/7 433/12 435/2 436/25 442/1 443/6 444/20 446/5 455/1 455/4 456/9 457/9 457/20 493/2 500/1 515/15 519/16 527/9 553/21 558/10 560/12 561/16 563/24 564/5 564/9
**old [1]** 407/15
**once [9]** 496/25 503/24 503/24 504/12 504/12 504/18 506/19 519/16 542/18
**one [162]** 407/4 407/19 408/3 409/4 412/25 413/10 416/20 417/9 418/17 420/6 420/6 420/13 421/12 421/14 429/10 429/19 430/4 434/16 435/7 435/9 437/12 438/12 438/17 440/5 440/8 443/9 444/11 445/20 449/2 449/2 449/5 450/8 450/22 450/25 452/5 452/22 453/6 453/10 453/12 453/13 453/20 455/8 455/8 455/19 460/10 463/24 465/9 465/14 465/22 466/23 467/8 467/9 469/24 469/25 475/12 475/13 477/8 477/19 477/20 478/15 481/14 482/6 483/13 483/24 484/13 484/21 485/15 486/1 488/4 489/8 489/16 491/5 491/22 493/22 494/12 496/2 498/10 498/11 500/15 500/16 501/20 501/20 502/16 503/5 503/13 503/13 504/7 504/16 504/20 507/4 509/9 509/17 510/18 510/19 511/24 512/23 513/11 514/15 514/22 515/2 515/3 515/3 517/1 517/17 518/3 518/5 519/4 519/4 519/7 520/18 522/3 522/9 522/14 525/4 526/19 526/20 527/6 527/21 528/24 529/8 529/15 530/16 530/22 531/25 532/12 533/13 533/25 534/4 534/24 535/4 535/15 535/16 535/19 536/1 536/7 536/7 537/10 537/11 538/14 539/5 540/6 540/8 542/8 543/19 544/1 544/19 546/10 546/14 547/15 547/17 548/20 551/20 555/17 555/25 557/17 559/3 559/25 560/19 565/5 569/4 570/7
**one-and-one-half [1]** 515/3
**one-hour [1]** 407/4
**one-minute-plus [1]** 526/20
**ones [29]** 409/20 415/25 416/9 416/14 416/24 417/3 417/11 417/15 417/15 417/19 421/22 433/18 433/19 472/22 482/18 483/7 489/25 500/11 501/18 501/21 502/1 502/6 535/13 535/14 539/2 539/3 542/10 543/9 544/23
**only [46]** 410/15 410/16 423/9 423/12 425/12 426/25 430/15 433/24 445/19 452/8 459/5 459/25 460/2 461/7 461/8 464/5 473/18 480/5 480/22 481/2 487/12 490/13 493/13 497/20 499/11 506/24 506/25 515/19 516/18 517/5 521/3 535/9 535/14 537/5 542/5 543/8 549/1 549/5 549/12 550/25 551/24 553/5

**only...** [4] 553/8 555/9 555/23 558/14
**oOo** [1] 571/4
**open** [23] 406/3 412/6 421/5 471/7 476/15 476/22 479/20 484/23 485/2 485/8 485/18 485/23 486/3 486/20 493/25 509/24 551/24 554/8 555/15 560/16 563/10 564/13 568/16
**opened** [2] 448/7 451/8
**opening** [14] 459/12 478/9 478/15 478/20 478/22 488/7 488/23 493/14 499/24 508/5 513/9 515/23 520/3 523/4
**operate** [2] 463/14 463/22
**operating** [1] 489/9
**operation** [1] 464/10
**operators** [1] 538/17
**opinion** [6] 431/4 450/24 450/25 451/7 458/16 549/7
**opinions** [2] 458/10 563/11
**opportunity** [5] 461/17 474/7 481/13 484/16 559/6
**opposed** [2] 425/14 497/21
**opposing** [1] 554/25
**opposite** [1] 414/25
**option** [20] 557/18 561/21 562/1 562/2 562/10 562/11 562/12 562/16 562/17 562/22 563/3 563/3 563/4 563/5 563/6 563/9 563/14 563/16 563/17
**options** [3] 560/1 561/20 563/21
**oral** [2] 474/8 568/23
**orally** [1] 560/23
**order** [8] 413/7 429/20 461/1 510/4 510/23 519/13 520/5 569/19
**ordered** [4] 413/8 550/5 554/3 554/3
**ordering** [1] 456/10
**ordinary** [1] 468/8
**OREGON** [2] 403/2 403/7
**organization** [1] 487/13
**original** [3] 455/7 552/8 571/8
**originally** [2] 527/7 557/17
**other** [78] 409/20 416/8 418/14 418/25 419/6 419/7 419/19 420/6 427/14 429/21 431/18 432/7 433/15 433/21 433/22 433/25 434/14 434/19 434/20 435/4 435/15 435/19 452/2 452/22 459/12 460/3 460/18 461/21 461/23 462/7 462/11 463/14 463/23 464/9 464/14 464/17 465/2 467/9 467/14 469/22 470/9 475/7 475/17 477/21 477/25 481/21 483/6 495/19 499/23 500/1 503/13 509/1 513/25 516/25 517/16 517/18 518/5 522/9 523/7 527/21 533/6 536/18 536/24 540/8 542/1 548/12 548/24 549/3 549/9 549/14 549/24 550/14 550/15 558/6 558/21 559/4 568/20 569/8
**others** [5] 458/19 462/12 545/24 559/14 562/21
**otherwise** [11] 411/9 471/15 471/18 471/22 472/5 473/8 475/4 517/21 517/23 542/22 552/4
**ought** [1] 520/7
**our** [27] 407/18 410/3 410/6 421/5 454/4 470/23 475/22 475/22 478/23 479/22 480/25 481/6 481/8 481/10 481/12 495/6 530/22 542/3 546/15 546/17 546/21 547/7 553/11 555/21 561/22 564/25 567/11
**out** [84] 407/23 408/13 410/5 410/6 410/20 411/10 420/21 428/23 437/25 438/22 440/22 449/8 455/14 456/2 456/4 458/18 461/6 468/11 476/12 480/16 480/24 482/9 487/17 495/25 496/23 497/4 497/5 498/6 498/11 498/11 498/12 498/13 498/19 498/24 499/4 501/11 501/18 502/1 502/3 503/18 505/11 505/13 506/7 506/10 509/22 511/22 514/12 514/19 517/3 522/11 523/12 525/12 525/20 528/3 528/4 528/8 531/2 531/3 531/7 531/19 531/20 532/1 536/14 542/1 542/2 543/21 545/4 545/6 545/10 546/18 551/25 555/1 556/9 560/24 565/10 568/21 568/25 569/4 569/7 569/9 569/11 569/14 569/22 569/25
**outbound** [7] 492/10 516/6 536/2 536/23 536/24 537/10 537/19
**outcome** [38] 412/22 412/23 412/24 412/25 413/5 413/20 413/22 413/25 414/12 414/17 414/20 415/3 415/4 415/11 416/9 416/14 416/24 418/17 418/18 418/21 419/23 420/2 420/11 461/19 466/14 490/16 500/18 500/22 500/23 500/25 501/4 501/5 501/19 501/19 502/7 502/9 545/5 545/22
**outcomes** [5] 412/18 413/8 421/19 426/1 500/9
**outgoing** [1] 492/8
**outreach** [8] 487/19 489/14 492/9 492/10 492/11 531/22 531/23 540/18
**outset** [1] 465/20

**outside** [5] 431/9 431/12 464/17 551/3 551/16
**over** [29] 417/7 428/6 428/7 430/8 430/9 434/5 457/14 468/2 472/9 479/7 480/1 482/3 482/6 486/25 491/16 491/17 492/14 492/15 494/6 494/19 504/8 505/5 513/1 515/1 522/17 534/21 537/17 548/22 551/15
**overrule** [5] 424/10 430/4 453/17 460/20 513/25
**overruled** [8] 423/2 425/6 448/8 451/8 451/15 451/22 453/24 485/16
**overwhelming** [1] 533/21
**own** [16] 408/4 408/6 446/2 486/16 500/8 500/13 503/5 504/17 514/7 532/16 535/1 543/2 544/8 544/13 549/6 550/16

**P**

**p.m** [5] 480/22 481/2 554/7 555/15 564/13
**P47** [1] 453/6
**Pacetti** [2] 514/16 514/17
**Pacific** [1] 503/19
**page** [27] 408/17 414/4 415/1 416/18 416/19 418/19 418/20 419/21 421/7 441/20 441/21 442/13 442/21 442/24 443/3 457/21 470/14 470/23 521/6 521/11 521/11 538/16 543/12 543/14 548/19 552/7 561/5
**pages** [4] 441/17 441/20 443/21 444/1
**paper** [3] 441/22 463/17 463/18
**papers** [1] 567/23
**paragraph** [3] 408/8 408/18 427/20
**parameters** [1] 438/24
**parents** [1] 507/1
**part** [16] 407/20 407/22 430/23 461/12 462/13 473/12 488/25 489/13 495/9 508/24 527/6 529/5 530/21 531/18 545/16 545/17
**participate** [2] 422/5 422/8
**particular** [19] 413/7 413/9 413/20 419/5 423/12 425/22 428/7 430/20 430/25 433/23 434/20 435/20 436/10 445/24 475/5 511/16 514/11 525/25
**particularly** [1] 522/21
**parties** [9] 455/24 462/18 462/20 467/24 468/1 550/18 551/8 551/10 552/1
**parties'** [1] 554/15
**parts** [1] 519/19
**party** [7] 458/20 458/24 462/20 462/25 465/8 465/19 469/17
**party's** [1] 550/24
**pass** [4] 452/25 455/14 456/1 456/4
**past** [2] 500/2 512/20
**patch** [1] 521/25
**patched** [1] 521/18
**Patty** [1] 503/22
**Pause** [1] 564/23
**PC** [1] 404/7
**pending** [2] 555/13 564/11
**people** [100] 422/2 422/6 422/19 423/9 423/10 423/12 424/18 425/20 425/24 430/15 431/9 432/19 432/25 433/4 439/24 440/3 444/19 456/20 456/21 456/22 462/3 462/4 466/2 477/5 477/7 480/12 483/14 487/12 487/13 488/18 489/1 489/1 489/4 489/4 489/6 489/7 489/7 489/11 489/11 489/16 489/19 489/20 490/5 490/6 491/1 491/17 491/20 492/4 492/14 492/17 492/19 492/24 492/25 493/4 493/9 494/12 494/19 494/22 495/25 497/7 497/23 498/1 505/14 512/18 513/1 518/21 519/5 522/23 524/20 527/9 531/14 532/4 532/12 534/3 536/1 536/18 536/25 537/7 537/24 538/4 539/16 539/19 539/21 540/23 541/9 541/10 541/19 541/21 542/2 546/24 547/6 550/1 550/18 568/2 568/3 568/4 568/5 568/11
**people/no** [1] 491/1
**percent** [16] 475/18 479/25 480/1 480/16 480/18 480/21 480/24 481/1 481/3 481/12 482/22 488/5 493/10 525/1 547/22 547/24
**perfectly** [2] 533/19 537/11
**performed** [1] 447/6
**perhaps** [1] 522/21
**period** [6] 504/10 513/5 515/20 515/21 516/12 532/24
**permit** [1] 464/16
**permitted** [1] 460/19
**person** [32] 423/7 429/19 429/21 463/8 465/3 465/7 468/22 469/3 479/10 483/21 484/1 488/19 488/20 488/21 489/15 501/5 501/21 510/20 511/21 519/7 520/6 520/6 521/5 522/1 522/1 523/12 532/17 540/15 540/21 541/13 549/20 567/15

**person-to-person [1]** 522/1
**person/to [1]** 489/15
**personal [3]** 425/1 458/10 528/18
**personally [4]** 435/17 460/9 537/2 567/15
**perspective [3]** 562/24 563/8 563/12
**persuaded [1]** 458/22
**persuades [1]** 549/7
**Phoenix [1]** 404/11
**phone [37]** 418/12 423/14 424/14 435/16 442/9 442/11 447/7 450/21 471/19 473/22 488/20 496/1 496/1 498/7 499/23 500/16 502/17 502/17 502/18 504/1 505/25 505/25 514/8 522/24 524/11 525/21 526/1 527/2 531/16 532/24 537/2 540/21 541/6 541/10 547/6 549/21 554/10
**phones [6]** 410/5 410/6 546/25 547/21 552/24 554/12
**physical [1]** 466/11
**physically [1]** 537/18
**pick [2]** 470/22 518/9
**picked [6]** 500/21 501/6 501/6 510/18 525/10 538/23
**picking [1]** 548/18
**picks [1]** 539/8
**piece [7]** 516/9 519/19 530/11 530/20 531/24 532/13 533/11
**pieces [2]** 420/5 530/16
**pile [1]** 546/11
**pin [1]** 547/23
**place [11]** 409/4 409/5 422/16 463/7 466/9 469/19 497/3 499/20 500/4 541/22 553/10
**placed [3]** 462/24 492/8 540/18
**places [1]** 470/5
**plaintiff [75]** 403/5 404/2 405/3 405/5 408/24 409/24 410/4 410/22 411/1 411/2 411/7 411/25 411/25 430/23 431/2 453/3 454/12 465/9 466/4 466/12 470/18 470/19 470/21 471/14 471/17 471/20 471/25 472/5 472/11 472/16 472/19 472/20 472/22 472/25 473/2 473/6 473/9 473/19 473/25 476/7 476/17 476/24 488/1 508/3 508/14 508/15 509/22 510/7 511/12 513/6 514/9 514/25 515/16 515/20 517/21 517/23 517/25 518/8 518/14 520/21 522/6 523/17 527/14 528/14 528/18 529/12 529/19 532/2 532/21 553/16 555/24 557/9 569/3 570/2 570/3
**plaintiff's [16]** 410/23 410/24 452/25 470/22 476/24 495/23 497/24 508/9 512/4 516/10 528/22 528/24 556/17 560/5 563/25 567/6
**plaintiffs [7]** 465/24 509/21 510/3 510/22 520/15 522/12 538/5
**plan [3]** 411/19 411/24 474/6
**planning [2]** 407/17 455/13
**plausible [1]** 522/15
**play [33]** 425/1 427/12 465/6 465/18 469/6 469/9 484/12 484/12 484/18 484/19 484/21 485/4 485/7 485/11 485/21 486/1 486/11 490/20 493/22 493/24 494/10 501/2 501/4 501/5 502/9 514/5 522/7 531/10 539/3 539/4 539/6 539/10 539/11
**played [55]** 414/8 414/13 415/19 416/1 417/5 417/7 417/12 426/16 427/9 427/15 427/19 446/12 446/16 469/12 472/6 472/12 472/14 472/14 473/21 473/22 479/20 484/5 484/23 485/2 485/8 485/18 485/23 486/3 486/20 490/12 490/15 490/17 493/25 500/22 501/7 501/24 509/5 510/10 511/15 512/15 512/16 512/17 512/22 512/25 515/17 520/19 520/25 525/6 526/19 530/17 533/5 536/10 540/7 545/9 546/4
**playing [2]** 493/23 501/25
**please [23]** 407/7 412/7 413/14 442/20 449/20 452/19 454/8 457/6 458/14 471/2 472/9 481/5 485/4 514/5 520/17 551/16 553/22 560/17 564/14 564/21 565/8 565/11 566/10
**plus [4]** 511/20 513/2 526/20 546/12
**podium [3]** 449/19 476/11 476/12
**point [19]** 468/16 470/25 474/6 493/21 498/22 500/2 502/19 503/18 506/10 506/17 507/25 508/11 508/11 508/12 508/17 539/20 540/20 557/22 559/16
**pointed [1]** 534/13
**policy [1]** 570/9
**poll [1]** 566/10
**polling [1]** 405/14
**POM [83]** 429/24 429/25 430/1 444/17 477/3 477/5 482/4 483/14 483/15 483/17 483/22 484/3 484/9 484/25 487/19 488/24 489/3 489/6 489/9 489/14 490/18 491/2 491/5 491/7 491/18 492/16 492/23 493/3 493/12 494/7 494/15 494/16 494/20 495/25 506/16 506/18 506/23 506/25 511 503/13 504/1 504/5 504/17 504/21 504/21 515/13 525/2 530/14 531/23 531/23 532/9 533/5 533/7 535/15 535/15 535/16 535/18 535/21 535/23 535/24 536/3 536/5 536/7 536/15 538/12 538/12 538/20 539/7 539/23 539/25 540/14 540/15 540/23 541/2 542/14 542/19 542/23 543/11 543/16 543/23 544/7
**Portland [3]** 403/7 404/17 404/23
**position [12]** 410/6 410/23 427/18 433/3 442/1 444/16 445/17 445/18 446/1 494/3 560/5 560/8
**possible [9]** 423/19 424/7 424/13 430/14 439/1 439/2 439/6 463/4 550/23
**possibly [2]** 441/22 500/24
**post [5]** 411/10 556/16 557/1 568/18 569/1
**post-trial [5]** 411/10 556/16 557/1 568/18 569/1
**potential [1]** 442/3
**potentially [1]** 434/22
**precise [1]** 497/9
**precisely [3]** 432/5 432/23 497/2
**prefer [3]** 456/20 456/21 456/22
**preferably [1]** 554/14
**prejudice [1]** 461/20
**prejudices [1]** 458/11
**preliminary [1]** 458/3
**prepare [2]** 430/21 430/22
**prepared [3]** 412/18 520/16 552/11
**preponderance [8]** 458/21 466/22 467/7 470/13 470/20 474/21 477/16 533/24
**prerecorded [92]** 414/8 414/13 415/19 416/1 417/5 417/7 417/12 417/16 422/14 427/12 427/19 438/1 446/16 465/6 465/18 466/7 467/1 467/11 469/2 469/3 469/5 469/6 469/7 469/8 469/10 469/16 469/20 469/25 474/23 475/9 477/4 477/11 477/22 478/11 478/24 483/20 484/5 484/9 484/25 485/25 489/20 490/17 490/18 490/22 494/17 499/21 500/7 500/24 501/15 502/4 503/4 509/5 510/10 511/15 520/19 521/23 522/10 530/15 531/8 531/25 533/13 534/1 534/10 535/12 536/4 536/8 536/9 536/10 536/12 536/18 537/21 538/12 539/2 539/3 539/5 539/10 539/15 539/20 540/2 540/6 540/25 541/5 542/14 543/23 544/2 544/7 544/10 544/12 544/20 544/24 545/3 546/4
**present [16]** 406/3 412/6 463/6 464/4 471/7 473/7 473/9 476/15 516/7 518/1 535/2 554/8 555/15 560/16 564/13 568/16
**presentation [4]** 407/4 508/1 508/9 520/20
**presented [11]** 458/24 463/5 468/4 470/10 477/10 513/22 529/14 534/7 543/19 550/25 551/10
**preserve [1]** 410/3
**preserved [2]** 409/21 410/12 553/13
**preside [1]** 548/22
**presiding [7]** 542/21 548/21 551/20 552/13 553/10 564/16 566/9
**press [39]** 483/19 483/20 484/1 484/11 484/17 486/4 486/5 488/8 488/10 488/11 488/15 488/16 488/17 488/22 489/21 504/22 515/7 515/8 515/8 515/11 515/17 515/21 515/24 515/25 517/5 525/1 525/3 532/10 536/7 536/8 540/16 540/22 540/24 542/18 542/19 542/20 542/23 543/21 550/1
**press 1 [1]** 488/22
**Press 1 for [1]** 488/8
**pressed [1]** 537/6
**presses [2]** 488/12 488/20
**pressures [1]** 568/7
**Presumably [1]** 487/11
**pretrial [1]** 453/7
**pretty [1]** 558/17
**previous [2]** 453/20 526/10
**previously [6]** 409/20 409/21 410/19 446/5 453/14 554/22
**price [3]** 479/21 481/15 530/22
**primarily [6]** 468/17 498/23 499/2 506/18 506/21 507/2
**primary [1]** 511/18
**printed [1]** 407/23
**printout [1]** 441/2
**prior [18]** 408/15 409/9 409/13 417/11 422/15 465/7 465/19 466/9 469/13 469/17 469/18 469/21 499/12 499/12 499/17 499/18 499/22 515/25
**probable [2]** 436/19 522/17

# P

**probably [15]** 408/24 433/4 435/11 438/17 440/2 443/14 458/22 474/8 477/8 511/18 527/7 529/1 546/1 558/12 569/1
**problem [7]** 464/2 464/6 464/9 558/2 558/12 558/25 559/1
**problems [4]** 411/9 431/7 444/24 510/18
**procedure [4]** 408/19 465/22 465/25 554/23
**proceeding [1]** 466/15
**proceedings [5]** 403/12 476/22 551/14 564/23 571/7
**process [14]** 422/8 422/19 422/25 425/19 433/9 438/3 451/25 496/8 507/12 538/5 551/3 551/7 551/15 567/9
**produce [1]** 527/15
**produced [1]** 535/22
**product [8]** 480/11 480/13 480/18 480/20 481/10 493/11 493/17 528/10
**production [1]** 452/11
**products [26]** 422/12 466/6 481/13 481/18 481/19 481/20 481/21 483/2 483/4 483/6 483/9 483/12 486/7 486/9 486/10 502/21 503/1 509/4 514/20 531/4 531/6 531/7 531/8 531/11 534/23 545/2
**program [1]** 541/20
**Progressive [4]** 487/19 531/21 531/22 540/18
**prohibition [1]** 469/3
**prohibitions [1]** 467/18
**prohibits [2]** 469/14 497/17
**Promo [2]** 503/17 504/15
**promote [1]** 534/23
**promoter [19]** 440/4 479/16 481/16 481/16 481/20 483/9 487/14 488/6 488/12 495/22 496/3 496/7 497/12 523/9 527/24 528/11 530/24 530/24 531/1
**promoters [16]** 482/25 482/25 486/8 486/11 493/16 496/16 496/23 500/3 513/10 513/10 514/11 523/5 527/5 527/25 528/19 531/16
**promoting [3]** 422/12 466/6 545/2
**proof [15]** 460/8 460/10 461/14 470/20 508/18 508/18 516/14 522/16 532/15 532/16 533/21 536/14 538/2 538/2 542/7
**proper [1]** 476/4
**property [4]** 468/21 468/25 479/10 479/13
**proposed [2]** 409/1 422/21
**proposes [1]** 569/21
**Propriety [1]** 479/25
**protect [1]** 550/24
**protection [2]** 464/25 568/10
**prove [41]** 466/20 466/21 467/6 467/6 469/3 471/18 471/20 471/22 472/3 472/5 472/21 477/14 477/16 477/17 477/19 502/13 508/4 508/20 508/25 509/1 509/2 509/9 509/12 510/8 510/9 510/10 510/11 515/4 517/23 518/9 523/25 524/7 533/12 533/24 538/1 538/3 538/4 538/6 546/9 547/14 555/24
**proved [1]** 462/22
**proven [4]** 474/20 475/5 509/18 546/6
**proves [1]** 532/13
**provide [6]** 407/23 455/20 512/9 541/9 541/10 568/9
**provided [13]** 407/19 414/12 416/10 418/5 419/20 420/3 427/11 450/1 463/10 463/17 500/8 500/12 538/6
**provides [2]** 464/20 521/10
**providing [4]** 421/18 425/7 464/12 496/20
**province [1]** 425/23
**proving [3]** 458/20 470/12 508/16
**public [4]** 468/12 505/11 505/14 506/11
**publicized [3]** 468/11 505/11 506/7
**pull [5]** 407/7 499/4 501/18 502/1 543/17
**pulled [7]** 498/6 498/10 498/11 498/12 498/13 498/24 521/5
**purchase [7]** 468/21 468/24 479/9 479/13 479/16 479/16 480/9
**purchased [1]** 483/2
**pure [1]** 511/11
**purpose [20]** 445/12 460/1 460/2 460/3 461/4 464/5 464/12 464/14 468/20 468/23 479/9 479/12 479/15 480/19 481/19 483/5 483/8 483/11 486/8 502/20
**purposes [4]** 406/25 445/16 455/13 455/22
**put [49]** 407/4 408/10 408/12 410/1 410/11 410/13 410/24 413/6 421/25 440/3 440/11 450/15 456/12 456/15 456/25 457/7 471/11 473/19 476/11 496/9 497/1 497/1 498/4 505/20 505/22 505/24 515/9 509/17 509/18 510/7 510/14 512/14 514/8 515/14 516/19 516/24 520/16 522/18 524/5 529/9 546/19 554/20 557/18 557/23 561/24 561/25 562/6 562/10
**putting [3]** 418/3 437/15 562/19
**Pyle [1]** 404/16

# Q

**qualify [1]** 514/24
**Quarles [2]** 404/10 404/13
**question [98]** 405/13 409/2 410/7 411/8 411/8 417/22 423/3 424/1 424/20 430/5 431/19 432/6 442/12 447/20 447/25 448/7 448/10 448/17 448/24 449/1 459/19 460/17 460/20 460/22 460/23 460/24 464/2 499/3 506/9 507/25 530/21 531/9 532/2 533/12 533/22 533/23 533/23 534/5 536/13 540/20 544/1 544/16 546/9 546/16 546/16 546/16 547/20 547/20 551/25 552/3 552/13 552/19 552/25 553/3 553/6 553/7 553/8 553/9 554/11 556/2 556/3 556/8 556/8 557/3 557/7 557/12 557/20 560/19 560/25 560/25 561/5 561/7 561/9 561/10 561/1 561/12 561/13 561/17 561/20 561/20 562/6 562/7 563/2 563/14 564/10 565/2 565/3 565/18 565/20 565/21 565/22 565/25 566/1 566/3 566/4 566/6 566/7 570/7
**Question 6 [1]** 561/12
**questions [22]** 410/4 410/14 410/24 426/4 446/19 452/13 459/17 462/25 463/1 463/8 463/22 505/16 524/19 543/25 546/22 547/14 548/8 552/10 564/5 564/7 565/1 565/1
**quick [1]** 476/3
**quickly [2]** 476/19 503/8
**quite [2]** 526/15 556/19
**quotes [1]** 478/18
**quoting [1]** 478/13

# R

**Rachel [10]** 487/14 513/8 513/8 514/6 523/7 526/18 530/17 530/25 531/3 531/20
**raise [2]** 553/22 560/25
**raised [1]** 451/17
**ran [6]** 430/9 433/23 438/10 482/18 519/1 538/12
**random [2]** 510/17 518/22
**rather [4]** 508/16 562/20 568/6 569/7
**RDR [2]** 404/22 571/12
**re [1]** 405/2
**reach [12]** 494/18 548/24 549/4 549/11 557/11 563/20 569/11 569/16 569/18 569/20 569/23 569/24
**reached [5]** 538/21 539/17 552/5 552/12 564/18
**reaching [3]** 459/5 480/16 480/24
**reacting [1]** 515/15
**reaction [1]** 529/1
**read [24]** 407/16 407/17 446/6 446/10 456/18 457/2 457/3 457/6 457/8 457/20 458/14 463/3 470/23 517/4 522/21 550/10 550/21 556/3 558/15 561/4 564/25 565/1 565/10 565/11
**reading [8]** 429/15 429/16 456/11 456/21 456/23 463/8 470/15 486/22
**reads [3]** 446/12 456/23 555/22
**ready [6]** 408/23 529/16 530/7 552/15 558/23 563/5
**real [7]** 488/25 489/1 489/4 489/4 509/20 510/5 524/16
**reality [1]** 546/3
**realize [1]** 433/7
**realized [1]** 438/16
**really [19]** 406/16 431/4 433/20 434/12 442/10 444/18 445/6 457/6 511/8 525/23 536/13 537/6 547/23 559/19 559/21 562/17 562/18 562/20 569/20
**reason [23]** 429/24 439/18 450/20 490/2 490/24 493/12 499/16 506/6 508/20 508/21 515/24 520/24 523/25 525/6 526/17 527/18 528/15 528/20 529/11 529/13 540/2 541/19 543/6
**reasonable [4]** 474/19 476/6 542/20 546/25
**reasonableness [1]** 461/22
**reasoning [1]** 493/3
**reasons [5]** 447/16 471/14 473/12 475/24 507/3
**Rebecca [2]** 555/18 566/9
**Rebecca Cornett [1]** 566/9
**rebuttal [6]** 451/15 454/19 470/22 514/1 529/6 530/3
**recall [9]** 435/10 435/13 437/12 437/14 438/12 449/3 453/20 458/12 522/25
**receive [4]** 473/17 499/13 521/8 563/5

**received [45]** 412/10 422/11 427/1 442/11 453/17 453/24 457/24 459/2 459/6 459/25 460/6 460/17 460/21 460/23 461/5 463/9 463/18 463/19 464/13 466/5 472/24 473/18 473/20 485/15 487/23 491/12 495/1 502/22 502/23 503/9 503/16 503/25 504/3 504/13 507/5 509/7 512/19 519/7 526/10 532/6 545/1 549/13 554/16 555/17 560/19
**receiving [3]** 406/20 411/20 568/23
**recess [9]** 412/5 454/23 454/24 455/14 470/16 471/4 476/14 555/13 564/11
**recipient's [1]** 473/22
**reckless [1]** 473/10
**recognize [1]** 526/22
**Recognizing [1]** 473/5
**recollection [5]** 487/5 487/7 513/24 522/20 527/16
**recommended [1]** 480/1
**record [18]** 410/1 410/11 422/15 429/20 461/2 466/8 471/11 476/21 495/12 514/9 531/3 539/18 543/2 553/13 554/20 561/4 569/13 571/7
**recorded [38]** 426/15 463/1 472/6 472/12 472/14 478/4 479/18 481/25 482/1 483/25 484/6 484/9 485/20 488/15 488/21 490/4 490/7 490/12 490/15 490/20 490/25 492/17 493/12 493/13 494/5 495/16 497/17 499/14 500/21 501/1 501/6 501/23 502/9 503/6 504/23 507/6 525/15 539/13
**recording [10]** 478/8 483/24 486/5 486/17 486/21 489/21 491/1 494/2 494/23 526/23
**recordings [6]** 486/12 486/13 486/15 486/15 494/10 494/24
**records [12]** 486/16 500/13 502/17 503/5 503/18 506/22 524/12 526/2 527/3 528/1 532/24 543/7
**recovering [3]** 472/7 472/13 472/20
**Recross [1]** 452/14
**recycle [2]** 457/16 567/23
**red [2]** 405/3 504/16
**red/inactive [1]** 504/16
**Redirect [2]** 446/20 447/1
**refer [2]** 457/7 463/25
**reference [2]** 473/13 550/14
**referred [2]** 427/23 516/3
**referring [2]** 407/11 561/9
**refers [1]** 487/14
**reflects [1]** 466/13
**refrain [1]** 464/22
**refund [1]** 528/9
**regarding [1]** 458/16
**regardless [3]** 458/24 467/19 497/18
**regards [1]** 421/13
**registered [6]** 468/9 468/13 505/7 505/9 505/12 533/14
**related [2]** 433/22 543/13
**relates [1]** 496/20
**relationship [2]** 525/18 528/2
**relationships [1]** 528/19
**relevant [7]** 410/9 482/9 482/14 489/25 490/3 515/21 532/24
**reliable [1]** 519/21
**rely [2]** 438/21 544/9
**remaining [2]** 470/23 543/24
**remember [18]** 433/19 440/18 447/6 459/14 462/4 462/5 470/7 482/5 508/5 508/23 510/17 513/23 521/7 524/25 527/4 550/6 551/11 552/3
**remembered [1]** 448/23
**remembers [2]** 556/12 557/16
**remind [5]** 450/1 487/4 493/22 513/21 549/14
**reminds [1]** 487/6
**remove [6]** 436/22 447/21 448/12 448/15 449/11 464/22
**removed [17]** 418/12 418/13 421/4 421/4 421/14 421/15 422/6 423/7 423/7 434/22 438/19 447/20 450/2 450/2 452/3 542/3 542/11
**removed the [1]** 450/2
**removing [5]** 421/3 425/9 425/24 447/7 451/18
**renew [3]** 453/16 474/5 476/1
**renewed [2]** 569/2 569/3
**renumbered [1]** 407/15
**reopen [4]** 455/21 456/4 456/6 456/6

**reorganize [1]** 454/24
**rep [1]** 535/25
**repeat [6]** 423/3 423/25 431/11 434/16 448/10 449/5
**repeated [1]** 522/8
**repeating [1]** 444/9
**rephrase [2]** 413/14 416/12
**rephrased [1]** 417/23
**report [3]** 550/5 550/22 559/16
**reported [2]** 538/16 543/22
**REPORTER [2]** 404/22 571/12
**reporting [1]** 487/2
**represent [2]** 415/15 421/1
**representation [1]** 478/19
**representative [5]** 465/23 466/3 473/16 530/13 538/1
**representatives [1]** 465/24
**representing [1]** 555/9
**represents [2]** 421/2 442/3
**request [2]** 456/20 463/18
**require [2]** 496/17 551/15
**required [2]** 481/22 498/2
**requirement [2]** 499/10 499/16
**requirements [3]** 473/11 478/5 495/15
**requires [1]** 464/2
**research [5]** 471/3 550/13 550/17 551/3 568/3
**reside [1]** 431/12
**residential [78]** 410/6 410/9 410/16 465/4 465/5 465/16 465/16 467/3 467/3 467/15 467/16 467/17 467/20 467/21 468/3 468/7 468/7 468/10 468/13 468/16 468/17 469/14 469/15 469/25 471/16 471/21 472/1 472/3 473/3 473/18 473/23 474/24 475/10 475/14 475/20 478/1 478/2 495/20 495/21 497/19 497/21 498/15 498/17 498/19 498/22 498/23 499/2 499/5 504/25 505/7 505/9 505/13 506/17 506/18 506/22 507/2 507/7 509/8 510/13 511/4 511/6 511/9 518/24 533/14 534/2 534/10 541/5 544/3 544/14 544/15 547/15 547/17 547/22 547/23 548/5 548/10 552/24 553/7
**residents [1]** 535/14
**residing [1]** 545/16
**resolve [2]** 554/20 555/12
**resolving [1]** 567/10
**resources [1]** 523/16
**respect [1]** 476/4
**respectfully [1]** 569/21
**respond [8]** 514/1 529/6 547/9 550/4 557/9 557/10 557/13 560/24
**response [6]** 417/9 447/19 473/25 519/12 529/3 561/3
**responses [1]** 569/15
**responsibility [2]** 554/15 554/21
**responsible [1]** 492/5
**rest [9]** 407/25 412/2 462/13 518/17 519/16 543/25 545/9 547/22 555/5
**restaurant [1]** 519/13
**rested [1]** 529/12
**restrictions [1]** 551/13
**rests [4]** 405/5 405/6 454/13 454/17
**result [4]** 422/19 425/25 447/6 551/14
**resumed [1]** 476/22
**retire [1]** 554/5
**Retired [1]** 554/7
**return [3]** 452/18 528/9 552/15
**reveal [1]** 564/6
**review [4]** 435/2 439/13 463/11 520/17
**reviewed [1]** 427/6
**reviewing [2]** 414/11 441/17
**revised [1]** 409/6
**revisit [1]** 418/6
**ReX [1]** 405/3
**riddled [3]** 431/6 518/20 519/23
**right [108]** 407/2 407/14 409/22 411/17 412/8 413/2 416/2 416/6 416/7 416/11 417/17 417/20 417/21 417/23 419/21 421/6 422/3 422/4 423/1 424/9 425/14 426/6 428/15 428/19 428/22 429/1 429/4 429/11 429/14 430/17 431/10 431/17 432/10 433/1 435/23 436/2 436/11 436/16 436/17 441/7 444/6 445/9 445/13 445/17 446/3 446/9 446/12 447/17 448/6 450/11 450/12 452/16

**R**

**right...** [56] 453/3 453/14 453/24 454/3 454/12 454/15 454/18 456/9 474/10 474/12 476/2 476/8 478/19 479/21 481/14 481/15 487/3 493/4 493/7 503/15 510/6 510/18 512/21 513/20 516/2 518/2 519/15 519/24 521/2 521/7 521/20 522/20 523/22 530/7 530/21 530/23 531/24 533/2 535/5 535/16 549/9 550/24 553/15 553/22 553/25 555/19 557/19 559/2 563/6 564/7 564/21 564/24 565/25 566/10 567/3 570/6

**ring** [1] 414/15

**ring/no** [1] 414/15

**RMR** [1] 571/12

**robot** [1] 483/23

**role** [1] 425/1

**room** [23] 404/23 456/13 457/25 463/12 463/13 464/4 464/7 464/12 464/23 482/12 488/10 496/3 509/23 514/6 535/20 549/22 554/2 554/3 554/4 554/6 567/14 567/17 567/23

**rotten** [3] 519/14 519/15 519/19

**roughly** [1] 452/11

**row** [5] 415/4 419/23 420/13 420/24 428/23

**rows** [5] 416/4 421/18 444/17 500/15 501/17

**rule** [4] 471/10 471/13 474/3 554/10

**Rule 50** [3] 471/10 471/13 474/3

**rules** [7] 459/19 460/16 460/19 529/5 550/24 551/11 551/12

**ruling** [2] 459/21 474/16

**run** [8] 512/5 535/13 535/14 535/15 535/16 536/6 536/6 543/1

**running** [11] 432/6 432/7 432/8 491/4 491/7 503/17 504/1 504/6 504/8 504/17 507/20

**S**

**safest** [1] 474/3

**said** [66] 406/12 409/3 417/16 429/2 437/6 438/20 440/9 448/2 448/18 450/4 452/2 458/3 458/15 459/11 462/1 462/10 472/13 472/17 478/17 478/20 479/18 482/16 483/13 488/14 488/24 489/9 489/17 490/11 490/14 490/21 492/7 493/1 493/15 495/7 495/8 495/8 500/25 505/25 508/6 510/22 512/16 516/17 516/24 517/12 517/17 519/2 520/20 522/22 524/22 524/25 526/9 527/10 527/18 529/2 530/10 531/13 540/13 541/1 541/25 553/13 558/25 563/10 563/24 564/1 567/9 568/10

**sake** [1] 561/22

**sale** [3] 493/17 514/19 534/23

**sales** [3] 514/13 527/25 528/19

**salespeople** [1] 514/12

**same** [34] 418/8 418/17 420/1 424/14 427/13 441/25 445/22 453/16 456/24 462/4 462/19 463/6 466/2 474/15 475/24 492/25 493/7 493/11 494/19 496/5 496/8 496/13 496/16 496/16 496/21 496/23 502/14 504/4 509/5 509/14 509/14 514/22 561/5 569/5

**sample** [2] 511/14 518/9

**San** [1] 404/8

**sandwich** [2] 519/13 519/14

**Santa** [2] 404/5 404/5

**Sarnicola** [1] 514/23

**satisfied** [1] 562/19

**Saturdays** [2] 492/2 537/18

**saw** [8] 446/13 460/9 478/18 488/14 504/21 509/20 517/11 524/11

**say** [116] 407/13 408/9 411/21 411/25 412/2 412/25 416/3 421/15 426/14 426/17 427/16 429/8 430/25 433/18 433/20 434/11 435/24 436/6 437/20 439/6 440/5 442/8 443/13 443/16 445/15 446/15 448/7 458/15 459/12 461/25 464/8 474/3 478/10 478/23 483/25 484/17 488/15 494/7 495/5 499/18 507/11 508/11 511/8 512/21 512/24 513/4 513/11 513/12 513/15 513/22 513/22 513/25 514/7 515/1 515/8 515/11 515/16 517/5 517/7 517/9 517/15 517/17 518/4 518/5 519/10 519/18 520/1 520/21 521/22 522/16 523/19 524/6 524/13 524/14 524/18 525/17 525/22 528/7 528/8 528/10 528/16 529/1 529/2 529/4 529/5 529/22 530/25 531/19 533/4 535/8 539/23 542/23 543/18 547/24 548/4 555/22 556/4 556/7 558/6 558/10 558/11 558/11 558/13 558/15 558/19 558/21 559/14 561/6 561/10 561/20 561/24 562/21 565/8 567/7 567/16 568/6

**saying** [22] 434/9 457/4 511/15 512/19 513/18 514/6 514/13 522/9 523/5 523/8 524/25 527/12 529/15 535/5 535/22 538/23 539/25 542/17 542/21 548/12 560/24 561/19

**says** [43] 412/22 413/10 413/17 414/7 415/4 415/14 415/18 418/16 419/25 426/5 426/23 427/8 427/13 427/16 427/18 427/18 450/6 461/12 470/14 476/10 478/15 479/10 484/4 484/14 488/11 489/22 494/16 498/20 499/21 501/4 501/5 512/3 513/6 514/17 515/8 517/4 517/22 520/18 521/24 532/14 535/2 535/20 541/12 556/4

**scale** [1] 523/23

**schedule** [6] 568/21 568/25 569/5 569/14 569/17 569/18

**scheduling** [1] 568/19

**school** [1] 438/9

**schools** [1] 438/9

**Scott** [7] 408/11 426/24 427/8 463/3 530/13 532/17 534/13

**scrap** [1] 538/22

**screen** [2] 491/1 497/24

**script** [4] 516/2 516/4 516/8 516/12

**scroll** [1] 521/13

**scrub** [1] 439/4

**scrubbed** [1] 554/24

**search** [4] 438/5 438/7 438/24 439/4

**searched** [1] 438/9

**searching** [2] 438/14 550/13

**season** [2] 480/17 480/25

**seated** [3] 412/7 560/17 564/14

**second** [21] 406/10 406/12 406/14 406/23 408/8 408/18 408/18 409/4 416/19 419/21 420/6 432/6 443/2 443/3 443/5 450/8 484/2 484/8 504/3 505/10 525/22

**seconds** [2] 525/8 525/21

**secret** [1] 407/4

**section** [2] 465/1 472/10

**Section 227** [1] 465/1

**sections** [1] 552/23

**Security** [1] 496/18

**see** [45] 406/15 409/10 414/5 414/9 414/18 418/7 418/25 419/24 421/10 435/21 442/15 442/24 445/10 445/11 445/15 446/15 446/18 449/15 449/17 449/20 461/17 462/4 470/14 497/25 499/10 499/15 501/2 504/5 514/8 517/7 519/6 521/14 524/3 528/6 530/19 535/7 535/21 538/22 538/25 552/17 553/6 553/8 557/11 569/9 569/11

**seeing** [1] 457/5

**seek** [1] 464/10

**seemed** [1] 436/14

**seems** [1] 515/16

**seen** [4] 460/4 522/7 522/8 522/8

**select** [1] 548/20

**selected** [1] 481/3

**selection** [1] 547/5

**sell** [14] 481/20 481/20 483/6 483/8 483/12 502/20 502/25 509/4 531/4 531/5 531/7 531/8 531/11 534/23

**selling** [1] 480/12

**sells** [1] 523/12

**send** [9] 463/23 519/19 519/21 543/21 551/19 551/25 555/1 555/4 569/22

**sending** [3] 463/19 531/7 557/7

**sense** [18] 494/15 494/20 495/11 497/4 497/10 497/13 525/20 526/12 536/21 539/14 539/16 546/11 546/17 546/21 547/1 547/7 560/6 561/17

**sensible** [1] 560/7

**sent** [20] 487/9 487/10 487/11 487/16 487/19 487/25 488/4 495/1 531/2 531/3 531/13 531/19 531/20 531/22 532/1 532/1 532/2 532/4 532/21

**sentence** [9] 406/10 406/13 406/14 406/23 406/23 408/15 408/19 409/12

**separate** [8] 428/23 465/10 470/4 497/1 541/25 542/2 546/18 552/7

**separated** [1] 410/20

**serve** [1] 548/22

**service** [5] 480/10 480/11 550/4 554/1 554/5

**services** [8] 422/13 466/6 468/22 468/25 479/10 479/13 509/4 514/20

**session** [1] 460/5

**set** [17] 455/8 456/7 495/7 518/4 530/5 534/14 534/17 535/13 538/20 539/7 539/12 539/16 539/25 540/2 541/25 543/8 544/12

**seven** [1] 492/15

shall [3] 464/7 548/23 554/5
share [1] 406/6
Shawn [1] 405/4
she [68] 430/25 446/2 452/10 452/12 462/1 473/17 473/18
476/12 495/1 503/9 504/3 505/13 505/14 505/16 506/9 506/19
506/23 515/10 515/10 524/15 524/17 524/17 524/18 524/20
524/21 524/22 524/25 525/15 525/16 526/9 526/9 526/10
526/11 526/12 526/12 526/15 526/21 526/22 527/3 527/8
527/10 527/17 527/17 528/2 528/3 528/6 528/8 531/1 531/1
531/20 532/23 532/24 537/25 538/15 540/8 540/10 544/10
544/11 544/13 554/13 555/4 565/1 565/1 565/2 565/5 565/5
565/7 565/10
sheet [1] 490/1 518/15
sheets [6] 440/12 441/14 489/23 489/24 490/11 536/6
Sherry [1] 512/24
short [1] 526/5
shorter [1] 525/7
should [53] 406/25 407/25 408/8 408/10 408/25 410/7 410/23
411/11 422/6 422/20 422/21 423/6 452/2 455/9 458/16 458/23
459/20 460/11 461/8 463/4 466/11 466/13 468/23 473/14
479/11 488/13 505/10 508/25 512/24 512/24 517/21 519/6
519/20 519/21 524/5 524/6 525/13 533/21 537/24 544/17 549/1
549/8 551/21 552/14 554/19 557/11 557/15 558/18 560/4 562/8
568/23 569/5 569/14
shouldn't [3] 433/1 518/22 554/18
show [39] 437/16 442/6 446/2 463/14 478/3 478/6 481/22 489/5
495/17 499/7 500/24 502/14 502/18 503/2 503/4 503/10 504/24
507/4 509/2 509/3 509/5 509/6 511/12 516/15 519/11 519/22
522/13 523/22 523/23 530/11 532/24 534/12 535/24 535/25
537/23 554/25 555/4 567/4 567/6
showed [12] 478/6 495/11 498/3 500/10 500/14 518/16 519/3
524/15 528/1 533/16 534/5 544/6
showing [6] 489/3 491/1 495/12 495/22 533/6 538/7
shown [5] 407/12 428/17 500/6 520/22 540/5
shows [22] 413/4 488/9 488/16 491/18 494/9 495/14 499/7
501/1 503/15 503/21 503/25 504/20 507/3 525/2 530/12 531/24
537/9 542/22 543/3 544/4 545/7 545/12
shred [2] 457/19 567/24
SI [1] 403/5
side [19] 444/12 444/14 460/18 510/1 541/23 548/9 554/9 554/17
569/21
sidebar [1] 476/21
sided [3] 441/20 455/9 455/10
sides [5] 474/7 513/22 559/6 568/19 569/16
sign [3] 505/24 552/14 553/10
signal [1] 545/8
signals [3] 546/1 561/2 561/2
signature [4] 553/9 571/9 571/9 571/9
signed [9] 463/24 469/18 498/4 499/19 500/2 527/23 551/20
551/22 571/9
significance [1] 463/7
signing [2] 498/1 571/6
similar [2] 465/25 533/23
similarly [1] 465/11
SIMON [4] 403/13 404/3 555/22 561/6
simply [4] 474/3 528/15 549/8 549/10
since [6] 406/19 448/6 452/24 456/3 496/8 569/7
single [25] 410/7 436/21 437/12 438/12 438/17 439/14 439/19
458/18 492/1 492/3 492/15 492/20 496/9 518/3 520/18 530/11
535/4 535/7 538/22 539/22 539/24 542/7 542/22 546/19 552/8
single-spaced [1] 552/8
sir [1] 450/13
sit [1] 525/21
situated [1] 465/11
situation [2] 444/9 526/13
six [3] 480/1 481/12 530/18
skip [1] 494/6
slightly [1] 533/20
slipped [3] 542/6 542/6 542/8
slow [1] 472/9
Slowly [1] 565/23

small [1] 465/23
Snapchat [1] 549/24
so [166] 406/25 407/16 409/15 410/1 410/11 410/18 410/23
412/23 413/1 413/4 413/19 414/15 416/17 418/12 419/3 421/2
421/21 423/19 423/25 424/24 425/7 425/9 425/22 427/1 427/18
428/2 428/5 428/14 429/4 429/13 429/20 429/23 430/20 433/12
433/24 434/3 434/12 435/14 435/24 435/25 436/18 438/7
438/10 438/19 438/21 439/18 439/24 443/9 443/10 443/21
444/1 444/14 445/6 445/15 447/21 449/4 449/19 450/17 452/23
452/25 453/1 453/17 454/20 456/9 457/6 458/13 460/2 470/21
471/2 478/4 479/18 480/22 483/5 483/22 484/6 484/12 484/24
487/13 496/8 496/23 497/2 497/9 497/15 497/22 498/2 498/3
498/5 498/24 499/6 499/24 501/13 503/20 506/19 507/1 507/10
508/23 509/20 509/24 510/16 510/22 511/2 511/9 511/23
511/23 512/6 512/11 512/22 514/4 515/7 515/24 516/2 518/13
521/13 521/15 521/20 521/23 522/2 523/6 527/1 527/8 527/8
528/3 528/14 529/5 529/11 529/15 530/19 530/25 532/14
533/21 534/5 535/2 538/21 539/12 539/17 539/25 540/17
541/23 544/16 545/13 547/16 548/2 548/2 548/8 548/11 548/25
549/1 549/5 556/7 556/22 557/8 558/8 558/10 558/22 559/5
559/21 559/25 560/24 561/1 561/10 563/5 564/10 567/15 568/5
568/13 569/7
social [2] 496/18 549/25
sodium [1] 480/4
software [1] 520/4
sole [2] 464/4 464/11
solely [4] 435/1 458/12 460/6 546/25
some [74] 410/13 414/2 415/8 418/5 421/24 431/7 434/14
434/19 436/3 437/3 438/17 438/18 440/19 451/18 456/20
456/21 456/22 458/19 459/25 462/12 468/14 474/14 477/15
479/1 479/17 480/14 481/13 490/22 498/14 498/21 500/2
506/15 509/2 509/25 511/5 512/1 512/2 512/7 512/7 517/11
518/6 525/9 529/1 533/5 533/6 533/18 534/12 540/20 540/24
542/6 542/6 545/25 545/25 548/3 548/5 548/8 552/1 552/19
553/6 553/8 555/6 558/3 558/22 558/23 559/12 559/16 562/2
562/2 562/4 562/8 562/17 562/18 562/20 568/18
somebody [19] 426/2 483/1 483/9 494/25 495/5 499/12 522/3
523/10 523/10 524/25 527/12 531/7 535/20 536/13 537/6
541/12 562/23 563/8 563/11
somebody's [2] 537/1 563/8
somehow [2] 525/19 529/6
someone [9] 423/14 424/8 424/13 429/25 430/11 456/22
526/13 534/16 541/16
someone's [1] 539/17
something [35] 407/2 425/14 426/13 456/23 457/4 461/25
462/1 462/9 492/24 508/13 508/14 510/22 511/20 513/22
515/10 517/13 518/10 519/9 519/15 521/23 522/12 522/13
522/13 524/21 526/14 529/3 529/4 533/17 535/21 540/13
554/18 555/12 556/13 556/14 569/23
Sometimes [3] 461/1 461/25 462/1
somewhere [3] 438/12 522/11 525/8
soon [4] 459/12 550/22 554/1 565/5
sooner [1] 554/14
sorry [6] 409/6 409/8 474/15 505/3 507/19 554/4
sort [3] 411/10 438/18 569/22
sorted [1] 413/9
sound [1] 432/16
sounded [2] 515/10 544/12
sounds [1] 512/20
spaced [2] 552/8 552/9
speak [3] 469/9 470/21 528/25
speaking [1] 429/21
speaks [2] 429/19 564/16
special [11] 409/23 410/4 411/14 455/11 533/10 552/9 552/11
552/13 554/23 564/21 565/11
specific [4] 414/12 547/11 557/25 564/6
specifically [8] 410/5 410/5 446/8 486/7 496/19 497/25 499/13
547/10
specifies [1] 557/15
speculate [5] 470/10 511/7 529/21 556/13 556/17
speculating [2] 429/13 429/17
speculation [5] 429/18 450/23 451/14 556/21 556/24
Spend [1] 441/15

**spent [3]** 507/24 537/3 537/15
**split [2]** 410/5 410/6
**spoke [2]** 469/11 526/24
**spoken [1]** 426/11
**spokesperson [1]** 548/23
**spread [1]** 515/2
**spreadsheet [6]** 452/8 490/2 501/17 509/22 554/23 555/8
**spreadsheets [16]** 412/24 413/5 413/21 413/24 415/8 419/12 419/13 430/10 483/13 491/6 500/15 508/6 510/2 510/2 555/6 555/10
**spring [4]** 480/17 480/25 492/12 513/4
**stage [1]** 474/4
**stand [6]** 411/19 412/9 489/13 489/16 513/11 553/22
**Standard [2]** 480/22 481/2
**standards [1]** 476/5
**stands [2]** 532/14 552/4
**start [16]** 418/3 442/22 455/1 456/11 457/20 472/9 474/12 476/10 476/23 479/7 491/9 501/25 515/19 532/10 551/15 567/4
**started [3]** 491/19 516/16 530/9
**starting [3]** 415/3 457/21 565/6
**state [3]** 427/14 565/2 565/3
**stated [3]** 410/19 447/16 459/15
**statement [20]** 417/19 448/24 478/9 478/16 478/20 481/24 482/11 482/23 488/7 488/23 489/22 493/14 499/24 508/5 513/9 515/23 516/3 520/4 523/4 542/5
**statements [3]** 459/10 459/12 478/22
**STATES [16]** 403/1 403/14 404/22 422/11 423/15 424/12 424/14 425/21 431/9 431/12 432/19 433/5 434/1 455/15 465/1 466/5
**status [2]** 543/4 543/10
**statute [2]** 478/10 478/23
**step [7]** 449/17 449/18 452/17 478/25 499/11 528/10 541/6
**steps [1]** 464/15
**still [11]** 411/19 418/16 432/18 444/11 451/11 476/8 545/17 545/18 550/7 550/10 568/21
**stipulated [3]** 467/24 496/6 502/19
**stipulation [16]** 407/14 427/18 455/22 483/16 483/16 484/4 488/14 488/14 494/16 502/21 515/8 515/11 517/1 517/4 528/1 536/15
**stipulations [13]** 407/16 427/16 455/20 455/25 456/4 456/12 457/12 459/4 459/7 462/21 471/5 496/6 536/15
**stop [3]** 470/15 521/18 534/7
**story [2]** 525/14 526/16
**straight [2]** 454/22 486/16
**strange [7]** 431/2 439/17 439/20 439/25 440/1 440/7 440/9
**strategies [9]** 483/18 504/22 535/18 535/18 536/5 536/11 536/16 537/21 538/12
**strategy [26]** 483/18 483/19 483/22 484/2 484/8 488/24 488/25 489/4 489/10 489/19 490/1 490/9 490/13 490/23 493/13 521/21 522/19 535/23 535/24 536/4 537/20 541/2 541/2 543/15 543/18 543/21
**Street [1]** 404/7
**stricken [3]** 459/22 461/1 461/4
**strike [4]** 422/21 434/7 437/5 440/6
**strive [1]** 548/24
**stuff [4]** 406/17 521/8 523/23 529/1
**subject [2]** 452/7 473/5
**submissions [1]** 569/13
**submit [3]** 471/14 471/18 561/1
**submits [1]** 496/15
**submitted [4]** 471/1 471/9 482/11 490/5
**subparts [1]** 512/13
**substantive [2]** 406/7 406/17
**subtract [5]** 450/6 501/13 501/21 501/22 502/3
**subtracted [7]** 416/9 416/13 416/23 417/3 421/22 421/23 500/11
**such [16]** 422/13 422/16 422/16 460/8 461/8 464/19 464/21 464/22 464/24 466/7 466/9 466/10 476/6 478/16 478/16 550/13
**sufficient [8]** 411/14 471/18 471/20 471/25 473/7 473/9 473/19
**suffix [1]** 438/18

**sugars [1]** 479/24
**suggest [4]** 317/20 520/2 547/9 548/2
**suggested [5]** 499/25 519/9 537/24 538/20 542/25
**suggestion [2]** 521/2 522/18
**suggests [1]** 522/6
**Suite [4]** 404/5 404/7 404/14 404/17
**summaries [13]** 406/20 406/24 407/10 431/5 431/6 442/1 444/8 445/2 445/6 448/13 461/5 461/6 519/20
**summarize [1]** 501/16
**summarized [1]** 544/22
**summarizing [1]** 429/7 500/8
**summary [23]** 412/17 420/10 420/15 420/25 421/21 427/24 428/14 428/16 429/1 430/15 433/8 434/7 434/13 437/2 441/3 445/10 445/16 448/22 510/4 518/13 518/18 520/16 520/22
**summary's [1]** 445/12
**summed [1]** 415/17
**Sundays [2]** 492/2 537/18
**super [1]** 480/6
**supplies [1]** 463/21
**support [11]** 410/21 480/1 489/14 492/10 492/11 507/20 528/22 536/2 536/23 537/10 537/19
**supports [2]** 461/7 480/3
**suppose [5]** 411/2 429/2 439/12 439/24 442/8
**supposed [5]** 442/25 489/10 518/25 524/3 525/15
**sure [24]** 412/23 413/15 423/5 424/1 427/3 430/14 433/6 435/14 439/18 441/4 441/5 441/6 449/6 481/6 498/5 504/11 546/14 555/1 556/16 556/19 561/5 561/18 562/24 565/13
**surely [1]** 522/12
**surprised [1]** 448/24
**survey [2]** 518/10 547/4
**surveys [1]** 523/15
**suspend [1]** 470/15
**sustain [2]** 460/21 460/23
**sustained [5]** 425/16 447/12 447/24 450/25 528/23
**SW [2]** 404/17 404/23
**swear [1]** 553/11
**sweeping [1]** 512/7
**sworn [9]** 459/1 462/23 481/24 482/11 482/23 489/22 492/6 553/24 565/14
**sympathy [1]** 458/11
**system [4]** 495/6 520/3 521/9 521/9

**T**

**table [1]** 567/23
**tables [2]** 520/13 543/14
**tabulate [2]** 509/13 524/4
**tabulated [2]** 427/24 510/3
**tabulation [1]** 518/15
**tactic [1]** 512/6
**take [39]** 408/3 412/16 413/10 418/16 433/24 449/3 449/8 454/12 454/23 456/17 457/14 457/18 457/25 461/16 470/16 471/4 474/1 474/9 478/25 481/4 494/3 496/4 499/11 501/11 508/15 519/14 519/18 519/25 528/7 529/5 536/2 536/14 537/16 538/5 551/1 552/1 557/2 559/7 567/6
**taken [4]** 437/25 462/24 464/15 551/11
**takes [1]** 429/25
**taking [2]** 445/17 445/18
**talk [31]** 406/4 406/8 406/9 412/20 423/24 426/13 430/7 431/18 438/3 480/11 484/1 484/15 525/18 525/23 527/11 528/25 529/5 530/14 537/6 558/1 559/6 562/22 564/8 564/9 568/4 568/4 568/5 568/6 568/11 570/10 570/11
**talked [9]** 409/22 418/17 453/14 481/18 481/19 527/22 530/16 543/25 544/18
**talking [13]** 418/18 418/20 457/4 497/6 511/13 514/12 515/16 515/22 516/1 526/10 537/8 563/19 570/10
**talks [1]** 488/10
**Tampa [1]** 404/14
**targets [1]** 522/4
**tasked [3]** 482/8 532/17 539/1
**taste [2]** 480/6 519/15
**taurine [1]** 480/3
**TCPA [27]** 410/10 464/25 465/14 467/18 467/22 469/3 469/12 469/14 469/23 470/3 470/4 470/4 470/6 470/12 473/8 473/11

**TCPA... [11]** 474/18 475/1 497/16 497/20 499/11 499/11 501/3 509/10 510/21 533/3 541/1

**tea [1]** 480/2

**team [12]** 489/14 492/9 492/10 514/13 516/6 523/9 523/11 528/19 528/24 537/14 537/19 548/13

**team.' [1]** 493/19

**technical [4]** 464/2 464/6 464/9 507/20

**technician [4]** 463/14 464/3 464/6 464/8

**technicians [1]** 464/15

**telemarketing [61]** 465/3 465/15 466/23 467/8 468/18 468/19 468/23 469/20 469/24 472/20 472/21 472/23 473/21 474/22 475/7 477/4 477/12 477/20 478/4 478/7 478/11 478/24 479/6 479/7 479/11 480/8 488/5 488/8 493/15 493/19 494/3 495/15 499/20 500/7 502/16 507/6 509/3 510/9 514/25 520/25 523/9 523/13 530/21 531/8 531/9 531/25 532/3 533/13 533/25 534/10 534/22 536/9 539/15 541/4 542/13 542/23 544/2 544/19 544/24 546/5 555/25

**telephone [85]** 422/11 428/3 432/24 432/25 439/15 440/13 464/25 465/4 465/4 465/16 466/5 466/24 467/3 467/9 467/15 467/15 467/17 467/19 467/20 467/21 467/23 467/23 467/25 467/25 468/1 468/3 468/6 468/9 468/12 468/14 468/16 468/17 468/17 468/20 469/14 469/14 470/3 473/18 474/22 474/24 475/7 475/10 475/10 475/13 477/20 478/1 479/6 479/8 486/15 487/20 495/19 495/20 496/20 497/5 497/6 497/11 497/19 498/20 498/22 498/23 498/23 502/25 504/25 505/6 505/12 506/15 506/16 506/17 506/18 506/22 507/2 525/17 531/22 532/2 532/2 533/14 534/22 544/3 545/1 547/15 556/1 569/22 569/25

**telephones [10]** 410/15 465/15 467/19 469/15 470/1 475/20 544/20 553/5 553/8 555/23

**tell [54]** 407/12 408/8 411/19 427/8 428/11 437/24 441/15 442/7 443/12 447/8 448/21 455/25 462/24 476/12 477/15 479/5 489/13 493/10 498/2 498/18 500/19 505/4 511/8 517/19 525/14 551/1 552/3 554/19 557/23 557/24 558/4 558/22 558/22 559/1 559/5 559/7 559/8 559/9 559/12 559/20 559/24 560/22 561/17 562/13 562/13 562/14 562/20 563/1 563/18 563/18 566/2 566/5 566/7 568/2

**tell,' [2]** 559/11 559/14

**tell/we [1]** 562/13

**telling [9]** 443/19 483/10 483/11 483/11 486/9 501/19 505/14 523/20 552/20

**tells [6]** 488/18 539/12 543/11 546/11 547/7 553/1

**temperature [2]** 554/3 554/4

**ten [5]** 445/16 445/17 492/13 492/14 536/22

**tens [4]** 431/16 431/20 433/3 539/16

**term [3]** 468/18 468/19 479/7

**terms [8]** 432/13 433/25 438/5 438/7 438/11 439/4 444/12 444/18

**tested [2]** 551/2 551/7

**testified [12]** 446/5 461/18 462/9 462/11 496/12 527/17 531/21 532/5 533/19 537/9 540/17 544/10

**testify [13]** 461/15 462/15 463/6 486/23 487/8 501/8 503/19 511/3 511/24 515/9 521/5 523/14 536/2

**testifying [4]** 461/19 522/9 524/17 532/17

**testimony [43]** 408/7 417/11 417/14 418/5 421/24 427/23 446/1 459/1 459/6 459/22 460/8 461/11 461/11 461/16 461/21 461/22 462/6 462/7 462/17 462/23 463/5 463/5 486/22 492/6 492/21 500/8 511/14 516/5 517/1 517/7 517/8 517/12 517/24 519/24 522/20 524/15 524/22 530/15 530/16 538/22 541/3 551/2 568/23

**text [2]** 528/5 549/21

**than [74]** 409/20 418/9 435/7 435/9 435/11 435/12 438/24 440/2 444/11 457/5 458/23 464/9 467/9 467/14 470/9 475/8 475/16 475/18 475/18 475/19 475/20 477/8 477/17 477/21 477/25 492/13 495/18 495/19 497/10 497/13 498/25 499/4 499/8 499/8 500/6 502/7 502/15 502/15 503/3 507/4 508/16 508/21 513/25 516/25 522/17 523/16 524/23 533/17 533/25 534/11 534/25 535/9 535/11 536/22 538/8 538/9 538/10 541/11 541/16 542/12 544/5 545/21 546/1 547/12 547/18 547/21 548/7 554/13 554/14 558/13 558/17 560/11 560/23 569/7

**thank [40]** 409/14 411/23 412/3 412/13 426/6 440/17 446/21

449/21 450/18 452/16 452/2 473/24 475/23 476/8 476/9 477/1 479/10 493/7 501/19 507/9 507/9 507/13 507/23 514/3 525/23 529/24 530/1 530/4 548/13 548/15 553/23 554/5 556/6 560/20 561/8 564/9 567/11 567/15 568/13 570/15

**Thanks [1]** 441/9

**that [1130]**

**that's [183]**

**their [57]** 408/4 408/6 424/14 435/16 435/19 437/19 440/3 440/11 446/10 459/11 459/12 459/18 462/17 481/20 481/21 494/13 494/24 495/6 496/17 497/7 497/8 502/10 508/7 508/18 512/6 514/12 514/13 516/14 523/25 528/19 530/9 530/13 530/10 532/16 532/17 535/1 536/1 536/2 537/3 537/14 537/15 537/19 538/1 538/6 539/17 541/10 541/11 541/13 541/14 541/17 541/22 542/5 543/16 549/3 551/2 569/10 570/12

**them [106]** 408/3 408/8 415/9 415/17 418/7 439/6 452/20 455/15 456/2 456/10 456/13 456/18 456/19 457/7 457/7 457/14 457/15 457/16 457/19 457/25 458/18 459/8 459/9 459/15 459/15 461/7 461/8 463/11 472/18 472/24 482/7 482/19 482/20 483/10 483/11 483/11 484/12 484/18 484/19 486/8 486/9 486/10 486/14 489/9 490/14 491/23 493/7 493/10 494/10 496/4 497/1 497/1 497/2 497/3 500/1 502/10 505/2 512/1 512/9 512/12 514/16 514/20 518/17 519/21 520/17 520/18 520/7 520/18 523/6 523/7 526/12 536/2 536/20 537/2 537/6 537/22 540/9 540/10 542/3 542/4 543/8 545/9 546/19 547/2 547/12 547/21 547/25 554/24 556/17 556/22 558/3 558/17 559/3 559/5 559/7 560/4 561/2 567/21 567/22 567/22 569/10

**themselves [3]** 495/11 512/13 513/4

**then [97]** 406/8 406/19 406/22 407/14 408/6 408/10 409/12 410/5 411/5 411/10 411/21 411/24 413/9 414/3 415/17 415/18 416/18 416/19 416/21 417/3 417/23 418/24 419/5 419/6 419/15 420/8 424/14 430/1 438/14 451/12 454/12 454/23 454/24 457/3 470/18 470/22 474/8 478/24 479/10 487/19 487/21 487/22 488/11 490/19 491/9 495/2 495/24 497/7 498/2 499/21 501/6 509/9 510/5 510/11 512/17 513/15 514/7 515/11 516/6 517/6 519/12 525/1 526/24 527/8 527/10 531/12 531/18 531/22 540/1 542/3 548/16 551/5 552/18 552/22 552/24 552/25 553/4 553/7 553/8 553/9 555/1 556/2 556/5 556/20 558/1 559/14 559/18 561/7 562/7 562/14 565/2 565/3 567/6 567/16 569/19 569/21 569/24

**there [214]**

**there's [8]** 410/21 434/8 493/10 513/17 513/19 536/15 544/15 546/7

**therefore [5]** 461/8 515/2 516/17 517/15 547/9

**these [92]** 407/16 413/6 414/2 420/17 420/20 423/12 434/9 434/9 434/22 441/14 441/17 442/1 443/11 444/20 444/24 445/1 445/6 446/14 456/4 457/10 457/15 457/20 457/24 458/2 458/4 458/14 462/5 462/22 465/17 477/8 479/18 481/17 481/7 481/19 481/20 482/9 482/10 482/11 482/21 484/13 486/9 486/13 490/10 490/21 490/22 491/23 492/4 492/5 492/14 492/19 494/4 494/5 494/17 495/24 496/25 497/5 497/11 497/17 497/17 499/18 500/4 503/5 503/10 504/20 510/2 514/5 518/6 520/14 521/13 525/15 535/8 535/10 535/12 535/13 536/18 537/19 537/20 537/21 538/17 539/20 541/5 542/9 543/20 544/24 546/22 546/22 549/13 550/24 551/11 551/12 551/13 551/14

**they [324]**

**they're [8]** 413/8 508/25 511/13 520/11 520/14 523/6 541/19 542/13

**they've [9]** 407/16 483/2 508/25 510/8 510/9 510/11 512/7 529/20 529/21

**thick [2]** 452/21 520/8

**thing [16]** 418/4 455/19 474/3 495/17 496/5 496/13 503/2 504/24 505/10 506/14 516/18 517/5 521/4 527/21 529/8 542/1

**things [28]** 418/6 448/14 449/10 456/21 456/22 456/24 459/7 461/18 462/3 462/12 465/2 477/8 477/16 477/17 478/7 479/17 479/18 490/17 498/11 499/7 502/14 505/5 507/4 509/2 535/16 535/17 536/7 537/11

**think [68]** 406/8 406/21 406/24 406/25 407/22 407/25 408/6 408/8 408/10 408/15 409/25 410/18 422/23 422/24 426/10 429/18 430/23 431/19 440/1 440/22 445/13 452/23 457/5 461/8 462/11 462/13 462/17 466/13 474/1 474/2 494/7 512/22 516/11 522/19 524/13 524/14 525/19 526/17 529/19

**T**

**think...** [28] 547/4 549/9 557/14 557/19 557/22 557/23 557/24 557/25 558/2 558/3 558/6 558/13 558/14 559/5 559/7 560/4 560/10 561/13 561/19 562/2 562/3 562/4 562/8 562/18 562/18 563/9 563/11 568/18

**thinking** [3] 410/18 410/19 557/8

**thinks** [2] 460/19 554/17

**third** [5] 404/23 420/8 426/10 495/17 506/14

**this** [205]

**those** [150] 406/16 410/17 411/9 412/20 412/25 413/23 414/14 415/17 416/21 419/5 419/10 421/21 421/22 421/23 425/9 425/24 425/24 428/2 428/2 428/7 428/8 428/21 428/22 428/23 429/5 430/1 430/10 430/15 431/6 431/25 432/18 432/18 432/24 432/25 433/17 435/22 436/1 436/4 436/8 437/5 437/6 437/7 438/14 438/19 441/20 445/1 448/14 449/10 452/19 455/25 456/25 457/18 457/19 458/7 463/9 467/11 467/13 471/19 471/22 474/5 475/8 475/18 475/19 477/8 477/22 477/24 478/5 479/5 479/15 481/22 481/23 481/25 483/8 483/13 490/12 490/21 491/20 494/10 494/13 500/15 500/15 500/20 500/22 501/9 501/11 501/11 502/8 502/20 502/20 503/16 504/4 504/10 507/3 508/12 509/9 509/14 509/16 509/16 509/17 510/25 512/8 512/15 512/25 514/10 514/11 515/1 517/19 521/18 524/19 524/24 525/25 526/1 531/15 531/17 532/12 534/11 534/17 534/24 535/3 535/4 536/6 536/11 536/17 536/24 537/10 537/16 538/9 538/16 539/2 539/12 539/19 540/4 540/24 541/6 541/7 541/7 542/1 542/3 543/9 543/18 544/7 545/18 545/24 547/1 547/8 547/17 548/8 554/20 560/1 560/4

**those weren't** [1] 501/11

**thought** [6] 408/2 423/6 453/12 515/10 524/17 560/22

**thousand** [1] 435/12

**thousands** [10] 431/16 431/20 433/3 435/4 437/1 443/14 443/16 443/20 539/16 539/21

**three** [17] 408/9 420/21 463/2 477/16 477/17 477/24 502/14 505/5 506/23 507/4 509/11 526/2 538/4 538/4 552/23 560/1 567/12

**through** [48] 422/5 429/15 438/3 438/7 438/11 439/4 441/14 441/23 443/11 443/19 443/21 446/10 450/22 452/1 463/19 482/8 482/20 489/23 489/24 490/14 490/19 497/22 498/6 498/13 500/9 500/11 501/12 501/14 502/8 503/8 520/12 529/11 533/5 533/7 533/11 535/8 536/6 540/18 540/25 542/6 542/6 542/8 545/7 545/13 545/24 551/2 551/4 551/19

**throughout** [4] 427/23 515/9 516/13 567/8

**thumb** [1] 561/24

**ticket** [2] 486/6 486/9

**tickets** [1] 514/23

**tie** [1] 530/19

**tied** [2] 432/19 442/10

**time** [56] 412/1 415/6 421/2 422/16 425/23 426/5 426/11 428/16 429/20 434/16 440/5 441/15 442/2 445/10 445/11 445/20 449/5 453/3 466/9 472/18 473/25 474/9 475/25 476/17 476/23 480/22 481/2 485/4 503/19 503/20 504/10 506/23 507/11 507/16 507/24 511/16 515/20 516/12 526/9 529/11 529/25 530/2 532/24 536/24 537/3 537/4 537/5 537/7 537/15 537/16 538/18 538/18 538/19 546/23 552/1 567/12

**timer** [2] 525/6 526/20

**timers** [2] 521/19 522/2

**times** [23] 413/4 413/19 442/10 444/15 445/16 445/17 445/23 445/24 445/25 446/2 452/8 452/10 452/12 459/12 470/3 470/6 472/8 472/15 513/1 526/20 530/18 530/20 531/10

**timing** [1] 526/4

**tired** [1] 529/16

**tissue** [4] 508/10 512/9 516/9 518/12

**title** [2] 406/22 465/1

**titled** [2] 428/25 462/21

**today** [3] 455/16 517/12 570/1

**together** [8] 416/21 437/15 440/11 478/5 497/2 508/3 516/19 518/11

**told** [11] 425/14 462/12 477/2 477/5 478/9 478/16 493/14 513/9 515/18 515/23 521/21

**toll** [8] 435/5 435/6 435/15 435/18 435/19 435/22 435/22 518/23

**toll-free** [8] 435/5 435/6 435/15 435/18 435/19 435/22 435/22 518/23

---

**tome** [1] 509/20

**ton** [1] 445/11

**tone** [1] 463/7

**too** [13] 456/24 511/15 511/16 526/5 526/5 531/10 537/18 547/7 548/17 558/1 563/4 568/7 569/10

**took** [12] 415/17 416/8 416/13 416/17 416/23 417/3 419/3 430/9 458/13 489/16 519/17 522/25

**top** [8] 442/13 442/22 457/21 470/14 481/12 497/24 510/19 521/16

**total** [49] 415/11 415/13 415/14 415/23 416/3 416/4 416/5 416/8 416/10 416/13 416/16 416/21 416/23 416/25 418/8 419/9 419/10 419/10 419/11 419/11 419/12 420/8 420/10 420/12 420/13 420/14 420/16 420/17 421/3 429/4 429/5 431/25 434/25 436/7 436/15 437/24 447/9 448/15 449/8 449/23 450/6 452/12 509/18 509/19 510/4 510/8 510/14 518/15 538/17

**totaled** [2] 417/4 419/5

**totals** [10] 415/2 415/17 419/22 421/16 434/4 436/1 437/7 437/19 451/4 519/1

**touching** [1] 550/21

**Townsend** [1] 404/7

**track** [1] 521/15

**tracker** [12] 491/2 491/18 503/13 503/14 503/15 504/5 504/14 515/13 525/3 542/19 543/3 543/11

**trackers** [1] 503/12

**transcript** [4] 403/12 478/14 571/7 571/8

**treat** [1] 462/22

**trial** [27] 403/11 407/20 407/23 411/10 457/13 457/14 458/4 460/6 461/6 462/24 465/20 466/12 468/5 470/10 492/22 513/23 550/2 551/2 551/7 551/8 551/11 551/15 556/16 557/1 567/9 568/18 569/1

**tried** [4] 500/16 501/18 511/5 529/21

**trip** [1] 453/1

**trouble** [1] 558/7

**true** [68] 458/22 458/23 462/13 477/8 477/9 477/17 477/18 488/9 489/2 493/21 494/9 495/12 495/13 495/17 495/18 497/10 497/11 498/25 498/25 499/3 499/4 499/8 499/8 499/9 499/9 500/3 500/6 500/6 502/7 502/7 502/15 502/15 503/3 503/3 507/4 513/3 533/17 533/17 533/20 533/24 533/25 534/25 534/25 535/9 535/9 535/11 535/11 538/7 538/8 538/10 538/10 541/11 541/12 541/16 541/16 542/9 542/9 543/23 544/5 544/5 545/20 545/21 546/2 547/7 547/11 547/12 547/18 547/18

**truly** [1] 563/10

**trusted** [1] 445/6

**trustworthy** [1] 519/22

**truth** [4] 462/12 462/25 546/3 551/1

**try** [6] 430/10 481/6 512/21 517/20 522/23 550/15

**trying** [5] 494/18 529/17 531/11 534/16 541/19

**tune** [1] 523/24

**turn** [8] 415/1 418/3 419/21 431/5 442/13 506/20 536/15 550/22

**tweaks** [1] 408/21

**twice** [4] 503/24 504/2 504/12 530/10

**Twitter** [1] 549/24

**two** [50] 404/11 406/20 410/8 410/17 418/13 418/24 420/5 441/21 445/24 445/25 452/8 452/10 453/6 462/4 477/22 478/5 483/18 491/5 491/6 493/22 495/8 495/14 503/9 503/10 504/1 504/3 504/10 504/22 506/24 506/25 509/11 511/24 512/25 524/20 525/18 528/3 535/16 535/17 535/17 535/18 536/5 536/7 536/15 537/21 538/3 538/4 538/9 538/12 547/14 567/16

**type** [2] 488/17 510/23

**typical** [1] 541/13

**typo** [1] 408/17

---

**U**

**U.S** [8] 424/7 433/24 434/14 434/18 448/14 449/9 535/14 545/16

**ultimately** [1] 558/14

**unable** [2] 557/15 558/4

**unaccounted** [2] 548/3 548/5

**unanimous** [17] 548/25 549/4 552/5 552/12 557/5 557/22 557/24 559/10 559/11 559/25 562/16 562/22 563/15 563/17 563/20 564/19 565/9

**unanimously** [5] 559/1 559/22 559/24 563/13 565/14

**uncomfortable** [1] 568/8

# U

**under [13]** 406/19 410/10 445/21 459/19 462/24 469/2 471/13 474/1 480/5 489/17 535/2 536/11 537/13
**underlying [4]** 435/3 437/2 461/7 461/9
**understand [8]** 410/22 423/21 428/25 434/3 447/15 541/21 561/19 563/23
**understanding [5]** 407/19 429/23 430/9 445/9 445/25
**understates [1]** 545/19
**Understood [3]** 429/23 487/1 570/14
**undisputed [14]** 474/20 475/5 475/6 475/16 530/12 531/15 532/9 532/18 534/19 536/22 536/23 538/10 538/11 538/11
**unfold [1]** 524/16
**UNITED [16]** 403/1 403/14 404/22 422/11 423/15 424/12 424/14 425/21 431/9 431/12 432/19 433/5 434/1 455/15 465/1 466/5
**United States [12]** 422/11 423/15 424/12 424/14 425/21 431/9 431/12 432/19 433/5 434/1 455/15 466/5
**university [1]** 438/9
**unknown [1]** 557/18
**unlawful [1]** 465/2
**unless [2]** 454/21 465/6
**unreasonable [2]** 432/16 508/16
**unreliable [1]** 451/3
**until [8]** 443/19 480/22 481/2 491/25 504/9 515/18 550/19 552/4
**untrue [1]** 462/6
**untrustworthy [1]** 451/3
**untruthfully [2]** 462/9 462/11
**unwilling [1]** 549/7
**up [85]** 416/17 416/21 417/4 418/3 421/3 421/5 421/25 422/24 425/9 425/24 429/4 432/6 432/7 432/8 437/16 438/8 438/14 438/15 448/4 470/22 474/9 474/12 476/10 489/13 491/23 494/8 494/20 495/7 495/10 498/1 498/4 500/2 500/21 501/6 501/6 505/24 506/6 508/2 508/16 509/1 509/13 509/24 510/3 514/13 520/15 522/13 522/14 523/15 525/10 525/24 526/4 527/23 528/24 529/2 530/5 532/14 534/20 535/5 536/1 537/24 538/3 538/4 538/20 538/24 539/7 539/8 539/12 539/16 539/25 540/2 541/25 541/17 545/12 546/21 548/18 552/17 552/23 556/5 557/4 558/11 561/7 563/10 564/5 564/6 568/20
**upgrade [3]** 481/15 483/7 530/23
**uploaded [2]** 487/18 531/21
**upon [5]** 449/24 544/9 553/2 558/8 569/18
**upsell [1]** 483/7
**us [24]** 407/19 423/23 424/4 427/8 447/9 447/19 450/2 481/12 486/14 486/14 490/5 498/2 500/19 501/19 507/9 507/24 538/6 539/12 545/23 547/7 548/6 557/7 569/22 570/9
**use [29]** 427/3 438/5 464/14 469/10 476/3 478/11 478/24 487/8 488/13 488/24 492/23 493/3 493/12 497/4 497/9 508/25 509/20 519/12 525/3 526/15 535/23 536/21 538/5 539/14 542/23 543/20 546/17 546/21 546/25
**used [104]** 406/24 419/4 419/8 438/7 438/8 438/8 441/12 444/6 445/10 451/25 465/17 466/25 467/11 468/14 468/17 469/1 469/4 469/5 469/24 472/21 474/23 475/8 477/4 477/22 478/4 478/8 480/15 481/23 481/25 482/5 482/4 482/18 483/14 483/14 483/18 483/22 484/2 484/9 484/25 486/15 486/17 488/15 488/17 489/3 489/6 489/10 489/14 489/19 490/1 490/8 490/13 490/22 491/9 494/2 495/16 498/20 498/23 499/2 501/14 502/4 503/3 504/6 504/22 504/23 506/15 506/17 506/19 506/21 507/1 507/6 509/6 510/19 513/5 513/5 515/9 516/7 516/12 516/15 516/18 517/4 517/6 517/14 517/15 517/18 518/3 520/9 520/15 523/8 530/14 530/15 535/18 535/21 535/25 536/3 536/3 536/12 538/12 540/14 541/2 542/14 542/18 543/23 544/8
**user [2]** 414/14 540/10
**uses [2]** 465/5 469/7
**using [33]** 414/21 443/22 469/16 469/20 483/14 483/15 490/24 494/22 495/25 497/7 499/14 499/20 500/7 503/6 503/11 504/21 508/25 509/14 512/22 515/17 517/8 533/3 533/25 535/14 535/15 535/15 535/16 537/21 538/1 538/2 540/14 544/2 550/14
**usual [1]** 468/8

# V

**valid [2]** 480/22 481/2

**variety [1]** 438/7
**various [3]** 427/19 443/13 538/15
**verdict [52]** 405/14 406/5 408/22 409/17 409/23 410/4 410/7 411/12 411/15 455/8 455/11 456/15 457/12 458/16 458/17 459/5 466/18 470/5 509/13 518/15 524/2 529/17 529/23 533/10 543/25 548/11 548/25 549/5 549/11 549/12 551/5 552/5 552/9 552/11 552/13 554/11 555/13 564/11 564/22 565/7 565/9 565/12 566/12 566/14 566/16 566/18 566/20 566/22 566/24 567/1 567/5 567/19
**verify [2]** 438/4 441/23
**versa [1]** 527/14
**version [2]** 410/24 523/21
**versions [1]** 462/2
**very [27]** 410/14 408/17 409/8 430/7 430/7 452/16 475/23 491/25 507/11 507/15 510/19 515/19 520/4 520/4 524/10 529/24 530/1 537/3 537/16 540/14 547/19 547/20 547/23 548/15 551/12 560/6 567/11
**Vi [1]** 512/23
**via [7]** 487/20 531/22 532/1 532/2 543/21 549/21 549/21
**vice [1]** 527/13
**view [3]** 463/15 464/1 464/13
**viewing [1]** 464/22
**views [1]** 549/3
**violate [4]** 478/10 478/23 509/10 510/20
**violated [7]** 465/14 469/23 470/3 470/6 510/24 524/4 533/3
**violates [2]** 540/25 551/13
**violation [7]** 469/12 470/4 470/4 473/8 497/20 501/3 531/9
**violations [1]** 470/12
**violative [3]** 475/1 475/17 524/13
**VISALUS [157]** 403/7 419/20 421/24 422/12 422/14 437/16 465/13 465/14 465/17 466/6 466/8 466/23 467/8 469/21 469/23 470/3 470/6 473/7 473/10 474/21 475/6 477/5 477/11 477/19 478/7 478/9 478/16 478/20 478/23 479/14 479/16 479/18 480/14 481/20 481/21 481/23 482/4 482/18 483/1 483/2 483/2 483/3 483/3 483/6 483/9 483/17 483/17 484/2 484/8 484/15 486/6 486/7 486/10 486/10 486/13 486/14 488/18 489/5 489/7 489/8 489/12 489/17 490/24 491/4 491/7 491/12 491/20 491/24 492/16 493/23 494/2 495/1 495/2 495/3 495/3 495/5 495/11 495/22 495/24 495/25 496/6 496/9 496/25 497/25 499/16 499/21 499/25 500/3 500/6 502/10 502/16 502/19 502/19 502/20 502/21 502/22 502/23 502/25 503/11 503/19 506/5 506/23 507/5 511/16 514/9 514/14 516/19 517/6 519/9 523/10 523/13 523/22 525/3 526/25 528/1 528/3 528/6 528/9 529/10 529/11 530/9 531/1 531/2 531/2 531/3 531/6 531/7 531/15 531/17 532/1 533/1 533/12 534/23 535/5 535/7 535/18 537/8 537/17 538/23 539/7 539/14 539/22 539/25 540/21 541/8 541/9 541/10 541/18 542/5 543/6 544/8 544/23 545/1 545/2 545/23 546/17 548/6
**ViSalus people [1]** 489/7
**ViSalus's [24]** 422/12 466/6 483/12 486/16 486/16 488/24 493/14 494/7 498/3 500/8 500/13 500/19 503/4 504/17 520/5 521/21 527/5 527/25 531/23 532/1 540/12 542/17 543/2 544/13
**Vitality [1]** 514/24
**vitamins [1]** 480/2
**voice [91]** 414/8 414/13 414/22 415/19 416/1 417/5 417/7 417/12 417/16 422/14 427/12 427/19 438/1 463/7 465/6 465/18 466/7 467/1 467/12 469/2 469/3 469/5 469/6 469/7 469/8 469/11 469/11 469/16 469/20 469/25 472/6 472/12 473/22 474/23 475/9 477/23 483/20 483/23 483/23 483/25 483/25 484/3 484/3 484/5 484/9 484/11 484/24 485/9 485/19 485/24 487/15 487/23 489/20 490/20 490/23 494/1 499/14 499/21 501/3 501/4 501/15 501/24 502/4 503/4 503/7 504/22 509/6 512/19 516/16 516/17 516/18 516/23 516/25 517/4 517/6 517/8 525/20 526/23 530/25 532/6 533/14 534/1 536/8 536/9 536/9 536/12 543/21 544/2 544/20 545/3 546/4
**Voice Casting [1]** 484/5
**voices [4]** 472/13 495/16 497/18 507/6
**Volume [1]** 403/11
**volumes [1]** 441/21
**vote [2]** 552/6 564/6

# W

**wait [2]** 429/21 525/22

**waited [2]** 526/23 526/23

**waiting [4]** 525/21 552/2 567/16 568/14

**WAKEFIELD [52]** 403/4 430/18 445/19 452/7 465/9 465/13 466/3 466/20 466/21 466/24 467/6 467/10 469/22 470/2 470/9 470/11 473/15 474/22 475/2 475/8 475/18 477/21 486/18 486/23 487/9 488/4 491/12 499/23 502/15 502/17 502/21 503/16 503/25 504/10 504/13 504/20 504/25 505/16 506/5 506/7 507/5 515/9 524/10 526/8 527/23 532/20 533/8 533/15 537/25 544/1 544/10 548/12

**Wakefield's [27]** 446/1 467/3 467/14 467/25 468/2 468/9 470/7 474/18 474/24 477/25 495/19 499/25 502/12 502/13 503/18 503/23 504/11 504/19 505/6 505/8 508/24 524/13 525/14 526/18 527/16 552/18 565/16

**walk [2]** 503/8 533/11

**wall [1]** 450/17

**want [86]** 406/8 407/19 408/24 410/1 412/16 415/1 417/22 418/6 421/25 424/3 424/3 427/1 441/4 441/22 450/8 456/25 457/1 457/13 457/18 476/11 476/11 476/12 479/22 480/9 481/15 484/1 484/15 484/16 486/12 493/3 493/6 493/9 493/10 493/18 493/21 494/12 496/4 496/11 505/5 507/10 510/14 513/11 516/11 518/9 518/18 520/11 521/15 521/17 521/25 525/18 525/23 525/25 527/11 527/13 528/9 528/12 530/23 531/5 536/14 541/21 541/22 550/9 559/3 559/13 559/16 560/2 561/18 562/5 563/6 564/7 564/8 565/8 567/14 567/20 567/21 567/22 568/1 568/3 568/3 568/5 568/10 568/11 569/5 569/11 570/10

**wanted [11]** 430/14 454/9 481/6 492/18 492/23 492/24 493/4 527/12 531/6 537/6 539/19

**wanting [2]** 539/16 540/13

**wants [8]** 408/24 454/21 471/11 510/7 514/25 518/14 553/15 569/3

**was [346]**

**wasn't [16]** 430/25 438/23 439/18 442/10 442/12 510/17 512/16 516/20 516/23 517/23 519/5 524/16 533/5 533/5 535/6 542/18

**watch [1]** 550/11

**water [1]** 457/21

**way [51]** 408/6 413/6 417/23 425/12 428/11 429/10 434/12 434/17 434/23 437/21 439/9 441/23 442/22 442/24 448/23 449/16 451/5 455/13 459/15 463/6 470/17 476/13 478/10 480/5 487/5 495/7 498/14 506/3 506/12 506/25 513/23 517/17 518/5 520/9 528/17 533/6 536/18 536/20 547/9 549/18 549/19 550/3 550/6 550/15 556/7 557/3 558/15 561/16 567/10 568/2 569/10

**ways [1]** 520/5

**we [316]**

**we're [1]** 557/19

**website [2]** 464/17 549/22

**week [4]** 433/12 492/16 569/9 569/22

**weekend [1]** 570/6

**weekends [1]** 492/2

**weigh [1]** 513/24

**weight [6]** 460/13 460/14 461/8 462/14 462/17 549/10

**welcome [8]** 427/2 450/9 457/18 476/16 559/10 562/10 568/4 568/5

**well [44]** 407/6 407/21 416/16 422/8 425/10 429/15 434/20 439/23 440/11 442/7 448/6 449/2 457/6 474/9 474/14 496/17 511/8 512/6 512/21 515/13 516/19 518/21 519/5 521/3 524/25 525/1 525/9 525/11 529/8 529/9 533/18 535/21 537/11 538/20 540/19 542/5 542/6 544/4 545/24 547/16 547/24 548/6 560/3 568/1

**went [23]** 436/11 437/23 438/3 438/7 442/6 482/20 489/23 489/24 490/14 497/22 498/6 498/13 500/9 500/11 501/20 501/20 515/7 525/11 537/11 540/9 543/16 545/24 553/17

**were [200]**

**weren't [9]** 432/11 501/11 517/18 517/19 518/24 525/13 535/13 538/17 540/23

**West [1]** 514/19

**what [191]**

**what's [18]** 413/3 413/22 415/11 419/6 419/9 420/10 443/7 449/23 495/5 498/16 499/10 511/9 511/9 513/15 519/12 522/3 536/14 570/9

**whatever [6]** 406/8 474/7 554/12 567/21 568/3 568/12

**whatsoever [1]** 541/3

**when [65]** 407/21 408/8 408/13 411/7 413/17 416/3 421/15 421/21 421/24 423/9 425/7 429/13 429/25 433/7 433/9 433/10 433/23 437/6 444/8 454/24 456/22 458/20 459/18 460/4 460/17 460/23 461/3 464/6 465/5 470/16 474/6 476/10 484/18 486/14 488/11 491/11 491/16 492/23 492/24 493/3 493/6 494/20 495/24 498/4 503/15 503/25 516/16 519/1 519/2 522/23 523/3 523/25 524/2 524/17 524/18 524/20 525/5 525/16 528/21 529/16 532/14 538/23 540/14 554/19 568/22

**whenever [1]** 437/15

**where [56]** 409/4 414/12 415/18 415/25 416/9 416/10 416/14 416/24 416/25 417/4 417/6 417/19 419/3 420/2 420/11 421/18 422/13 422/14 424/4 427/8 429/4 430/14 435/21 438/15 439/14 450/22 466/7 466/8 483/19 484/4 484/5 490/16 515/19 522/16 522/22 528/14 532/15 533/17 536/4 536/10 539/2 539/3 539/5 539/7 539/9 540/6 541/7 542/7 544/7 544/21 545/5 545/5 545/6 545/22 546/4 557/21

**wherever [2]** 449/17 476/11

**whether [37]** 410/20 428/11 428/22 429/10 434/13 434/18 445/11 448/21 451/2 458/9 461/21 467/19 468/2 468/6 468/8 468/11 468/22 468/23 474/1 479/11 479/12 493/20 497/18 505/6 505/10 506/21 517/18 518/6 526/22 543/9 552/20 553/2 559/8 563/2 568/22 569/3 569/12

**which [72]** 410/14 410/15 410/17 412/1 412/21 416/20 419/18 419/19 433/17 437/22 439/10 442/19 458/24 459/3 459/3 460/11 461/11 461/11 470/8 471/21 472/3 472/22 472/23 473/3 473/4 473/12 473/12 473/13 477/8 482/9 482/10 491/16 493/3 497/3 500/18 501/18 501/22 502/6 504/10 509/7 512/2 512/12 514/24 515/10 515/18 516/2 517/1 517/2 518/22 518/23 518/23 520/13 526/11 526/14 527/22 537/20 539/1 539/3 540/24 540/25 544/1 544/25 546/18 546/19 547/12 552/1 552/18 554/24 555/23 557/14 561/7 569/10

**while [8]** 461/19 506/19 513/4 514/17 524/15 550/6 550/10 552/2

**whiteboard [4]** 449/13 449/20 450/14 450/15

**who [41]** 408/24 422/2 422/6 422/11 426/2 430/15 431/12 435/15 435/18 440/3 444/18 461/15 462/15 465/24 466/5 472/18 483/9 487/10 487/22 489/8 490/5 490/6 490/7 492/5 492/8 494/25 497/23 498/4 523/8 523/12 529/10 530/13 531/2 531/12 532/4 532/17 545/1 551/13 558/22 558/23 564/15

**whoever [2]** 429/21 511/19

**whoever's [1]** 442/10

**whole [5]** 418/4 418/7 537/14 539/20 556/3

**whom [2]** 472/8 472/14

**whose [1]** 487/15

**why [47]** 410/24 423/18 428/23 430/9 432/5 432/7 432/8 438/14 441/19 442/12 442/12 443/18 446/4 448/24 449/17 451/10 452/9 455/14 490/24 508/17 508/21 511/9 515/24 516/6 520/24 521/10 523/19 523/25 524/8 525/6 525/11 526/17 527/18 528/15 528/20 529/12 529/13 531/3 532/23 537/20 539/14 543/23 544/5 545/12 545/21 546/17 563/8

**will [122]** 406/8 407/14 407/23 408/3 408/5 408/5 409/17 411/9 411/17 412/1 412/2 412/17 424/9 426/10 441/6 441/15 453/17 455/7 455/15 456/9 456/16 457/3 457/16 457/19 458/7 458/12 459/8 459/12 462/2 463/10 463/11 463/12 463/14 463/17 466/18 470/2 470/5 470/14 470/16 470/17 470/17 470/18 470/25 471/4 473/13 474/9 474/12 476/10 476/12 476/17 479/5 482/12 484/16 484/19 485/4 486/12 496/2 500/5 500/1 505/1 505/1 505/4 507/10 507/16 509/23 510/1 515/15 517/2 520/1 520/14 520/17 522/25 523/6 523/7 526/2 530/2 542/11 546/9 548/11 548/16 548/18 548/22 551/10 551/22 551/25 552/17 553/6 553/8 553/22 554/2 554/3 554/4 554/9 554/11 554/19 554/20 555/4 555/8 555/12 555/21 558/1 558/25 559/2 559/17 560/2 560/10 561/2 561/13 563/2 565/1 565/2 565/11 566/10 567/4 567/5 567/6 567/23 567/24 568/9 569/8 569/19 569/24

**willfully [1]** 473/7

**willfulness [2]** 568/22 569/12

**win [1]** 482/24

**winBack [41]** 418/15 418/15 418/24 419/2 419/3 419/4 419/8 419/15 419/16 419/18 420/6 420/18 420/18 420/21 482/21 482/23 482/24 488/8 488/17 491/13 491/15 493/16 493/18 494/1 494/2 495/9 503/22 504/6 504/7 509/21 513/9 516/21 521/3 523/2 527/6 530/17 537/6 542/18 542/19 542/21 543/1

# W

**WinBacks [6]** 483/5 483/6 493/15 523/4 537/4 537/16
**Withdrawn [1]** 478/21
**within [7]** 412/24 413/5 413/20 432/19 438/2 452/11 567/11
**without [18]** 406/4 409/13 428/10 428/21 429/9 443/21 465/18 469/17 471/8 489/20 489/20 507/13 518/5 555/16 556/24 567/9 568/17 571/8
**witness [32]** 412/1 412/1 417/10 453/4 454/4 454/4 454/9 454/16 459/1 460/9 460/9 461/12 461/14 461/17 461/25 462/8 462/10 462/11 462/23 462/24 463/6 486/16 489/12 521/5 529/9 535/1 535/5 535/7 538/23 539/22 540/4 542/22
**witness's [6]** 461/18 461/18 461/19 461/20 461/21 461/22
**witnesses [17]** 405/3 408/9 454/7 456/5 459/11 461/15 462/2 462/15 462/16 463/2 522/9 523/14 523/19 529/13 533/19 550/19 551/1
**woman [1]** 538/15
**won't [5]** 499/15 507/9 515/24 527/14 550/9
**wonderful [1]** 484/16
**wondering [1]** 508/1
**word [7]** 406/11 406/22 408/12 408/16 409/3 449/4 468/7
**words [3]** 408/20 412/25 416/8
**work [9]** 507/13 519/3 536/24 537/25 555/4 567/8 567/13 568/13 569/25
**worked [3]** 492/11 532/8 536/1
**working [1]** 425/19
**works [1]** 470/17
**world [2]** 434/15 434/19
**worries [1]** 558/24
**worry [1]** 559/2
**would [167]** 407/19 408/2 410/21 413/14 414/13 414/18 414/20 414/23 414/25 416/9 416/14 416/21 416/24 417/6 420/2 421/2 421/5 421/14 422/2 423/15 423/17 424/11 425/22 425/24 426/1 426/3 426/13 427/8 427/13 427/16 427/17 428/9 431/2 431/2 431/6 431/8 432/24 433/2 435/1 435/21 435/24 435/25 436/6 436/18 436/21 436/25 437/16 437/18 438/1 439/9 439/20 439/21 439/23 439/24 440/2 440/2 440/3 440/7 440/9 441/14 442/8 443/14 444/20 446/11 447/6 447/9 447/20 448/15 449/11 450/2 450/15 450/16 451/11 451/12 452/18 452/19 454/21 454/22 456/12 470/21 471/12 474/6 480/10 480/10 480/11 481/8 483/25 487/11 487/12 487/16 487/18 487/23 487/24 488/2 489/2 490/2 492/9 492/18 493/3 496/16 496/21 501/7 508/10 511/20 512/24 514/18 516/8 519/12 520/2 522/7 522/8 522/8 523/8 525/12 525/22 526/9 526/13 526/24 527/21 528/9 531/13 531/18 531/21 532/6 532/11 532/22 534/16 535/5 536/19 538/4 538/24 539/3 539/6 539/9 539/10 539/11 539/13 539/14 539/23 540/3 540/3 540/4 540/4 540/5 541/9 541/13 541/18 542/11 543/19 543/21 551/15 557/9 557/10 557/13 557/18 558/6 558/13 558/14 558/15 558/16 559/15 560/23 561/16 565/4 568/6 568/19 569/1
**wouldn't [17]** 426/17 429/8 431/4 436/15 437/24 438/17 440/1 443/22 443/25 445/8 450/22 490/9 494/15 525/21 538/21 538/24 557/7
**write [19]** 510/23 518/15 541/14 541/18 547/10 548/2 556/25 558/1 558/23 559/2 559/10 559/13 559/20 560/2 560/1 560/23 562/14 563/18 563/21
**writing [8]** 549/21 551/22 551/24 556/13 556/20 561/1 569/13 569/23
**written [27]** 407/17 408/5 408/12 408/13 408/16 409/3 409/9 409/13 422/15 438/11 456/25 458/4 465/7 465/19 466/9 469/13 469/17 469/18 469/18 469/21 499/12 499/13 499/17 499/19 499/22 567/20 568/23
**wrong [3]** 457/6 519/16 533/4
**wrote [3]** 495/13 497/23 541/12

# Y

**yard [1]** 505/24
**yeah [7]** 416/13 439/24 440/10 448/12 535/1 542/23 543/18
**year [3]** 513/2 516/13 524/21
**years [2]** 515/3 525/19
**yellow [3]** 414/3 414/7 414/18
**yes [92]** 406/18 407/18 409/11 411/13 413/8 414/11 415/21 417/25 420/14 422/7 423/8 424/11 424/21 425/5 425/22

**426/7** 427/13 427/22 431/19 431/23 436/4 442/16 443/5 443/10 443/20 443/23 445/6 445/14 446/10 454/7 454/14 455/6 455/18 471/12 476/20 484/20 485/5 496/22 511/15 512/3 512/19 513/14 528/4 533/16 533/22 534/6 540/15 540/22 544/3 544/20 546/11 552/20 552/25 553/2 555/2 555/20 555/23 556/2 556/4 556/7 556/10 556/11 556/18 556/22 557/10 558/5 560/9 560/13 560/14 561/6 561/11 561/15 561/20 562/21 564/20 565/8 565/17 565/19 565/21 566/1 566/6 566/13 566/15 566/17 566/19 566/21 566/23 566/25 567/2 570/8
**yesterday [3]** 418/6 421/24 447/16
**yet [4]** 456/11 471/1 471/1 471/9
**you [931]**
**you'd [2]** 456/17 487/22
**you'll [17]** 454/24 456/13 456/19 457/7 479/1 488/9 491/12 494/24 497/25 498/17 499/10 501/2 504/5 520/12 524/3 528/6 556/16
**you're [19]** 421/18 427/2 429/13 435/14 441/5 444/2 456/23 480/12 487/2 494/18 513/18 524/3 529/17 556/15 556/22 559/10 559/17 562/10 563/7
**you've [11]** 420/2 421/22 427/24 430/15 494/15 507/24 516/2 537/1 550/5 553/12 562/25
**your [247]**
**Your Honor [61]** 406/12 407/9 409/1 409/25 410/7 412/13 422/23 426/4 426/7 426/20 427/3 440/23 441/5 441/8 446/21 447/11 447/13 448/1 448/3 448/16 448/19 449/13 452/5 452/13 452/15 452/20 453/23 454/2 454/6 454/11 454/14 454/17 455/17 457/9 471/6 474/14 474/17 475/22 477/1 478/13 479/4 484/20 485/11 485/12 485/17 485/22 486/1 486/24 487/3 493/24 507/21 513/20 530/7 553/18 554/22 555/20 556/12 557/16 564/17 564/20 570/3
**yours [3]** 457/10 457/13 552/8
**yourself [4]** 479/19 484/13 529/18 549/1
**yourselves [3]** 471/3 564/8 564/9
**YouTube [1]** 549/23

# Z

**Zac [1]** 521/13
**Zachary [1]** 404/13
**zero [3]** 421/9 498/10 524/5
**zoom [2]** 415/2 419/22