Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice pending)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
Telephone: 310.312.4000
Facsimile: 310.312.4224

John Maston O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

*Attorneys for Defendant*
ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated, | No.  CV No. 3:15-cv-01857-SI |
| Plaintiff, | **DEFENDANT'S MOTION TO DECERTIFY THE CLASS** |
| vs. | Request for Oral Argument |
| VISALUS, INC., a Nevada corporation, | |
| Defendant. | |

## CERTIFICATION

Pursuant to LR 7-1, the motion was discussed during the Court conference on April 22, 2019 and is being filed pursuant to the Court's Scheduling Order at Dkt. 292.  The parties are unable to resolve the issues presented in the motion.

## MOTION

ViSalus respectfully requests that the Court grant its Motion to Decertify the Class.  This Motion is supported by a Memorandum of Points and Authorities, references to the Court's docket, and the Declaration of Zachary S. Foster and the exhibits attached thereto.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL HISTORY.....................................................................................3

III.  ARGUMENT ..........................................................................................................5

      A.    The Court Has a Continuing Duty to Ensure Rule 23 Requirements Are Met ...........................................................................................................5

      B.    It Was Plaintiff's Burden to Prove Her Class Claims at Trial .................6

      C.    Trial Demonstrated That Individual Issues Predominate on the Class Claims ........................................................................................................7

            1.    Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Class Members Were Called on "Residential" or Mobile Lines ..................................................8

            2.    Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Each Call Was Initiated With a Telemarketing Prerecorded Message and Whether the Message Actually Played .......................................................................14

            3.    Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Absent Class Members Suffered Any Harm ........................................................................................22

      D.    Trial Demonstrated That the Class Is Neither Manageable Nor Superior .............25

      E.    Trial Demonstrated That Plaintiff Cannot Demonstrate Commonality.................27

      F.    Trial Demonstrated That Plaintiff Has Not Established Numerosity ...................28

      G.    Trial Has Shown That Plaintiff's Claims Are Not Typical of the Class................29

      H.    Trial Has Shown That Plaintiff Is Not an Adequate Class Representative...........33

      I.    The Class Is Fail-Safe .........................................................................................34

IV.   CONCLUSION....................................................................................................35

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

# TABLE OF AUTHORITIES

Page

## CASES

*Abed v. A.H. Robins Co.*,
  693 F.2d 847 (9th Cir. 1982) ................................................. 25

*Alfred v. Pepperidge Farm, Inc.*,
  No. LA CV14–07086 JAK (RZx), 2016 WL 7655793 (C.D. Cal. Aug. 5, 2016) ................... 34

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
  247 F.R.D. 156 (C.D. Cal. 2007) ................................................. 33, 34

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................. 7

*Auto Ventures, Inc. v. Moran*,
  No. No. 92-426, 1997 WL 306895 (S.D. Fla. 1997) ................................................. 34

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) ................................................. 24

*Bee, Denning, Inc. v. Capital All. Grp.*,
  310 F.R.D. 614 (S.D. Cal. 2015) ................................................. 30

*Beebe v. Pac. Realty Tr.*,
  99 F.R.D. 60 (D. Or. 1983) ................................................. 5

*Bieneman v. City of Chicago*,
  864 F.2d 463 (7th Cir. 1988) ................................................. 33

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) ................................................. 28

*Booth v. Appstack, Inc.*,
  C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ................................................. 28

*Brazil v. Dell, Inc.*,
  No. 07–1700, 2008 WL 2693629 (N.D. Cal. July 7, 2008) ................................................. 35

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ................................................. 6, 13

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ................................................. 33

*Burrell v. Crown Cent. Petrol., Inc.*,
  197 F.R.D. 284 (E.D. Tex. 2000) ................................................. 25

*Cellco P'ship v. Dealers Warranty, LLC*,
  No. 09–cv–1814(FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010) ................................................. 30

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ................................................. 5

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
(continued)

Page

*Davis v. AT&T Corp.*,
No. 15CV2342-DMS (DHB), No.: 15cv2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) .................................................................................................................25

*Dixon v. Monterey Fin. Servs., Inc.*,
No. 15-cv-03298-MMC, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ................................34

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................................25

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .....................................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ...................................................................................................................7

*Faria v. M/V Louise*,
945 F.2d 1142 (9th Cir. 1991) ...................................................................................................6

*FCC v. AT&T Inc.*,
562 U.S. 397 (2011) .................................................................................................................30

*Forehand v. Fla. State Hosp.*,
89 F.3d 1562 (11th Cir. 1996) ...................................................................................................5

*Friedman v. Torchmark Corp.*,
No 12-cv-2837-IEG BGS, 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013)...............................15

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ...........................................................................................................29, 30

*Gibson & Co. Ins. Brokers v. Am. Equity Inv. Life Holding Co.*,
310 F. App'x 76 (9th Cir. 2009) ..............................................................................................32

*Guenther v. Pac. Telecom, Inc.*,
123 F.R.D. 333 (D. Or. 1988) ..................................................................................................29

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........................................................................................29, 31, 32

*In re GroupMe, Inc./Skype Commc'ns S.A.R.L.*
Petition for Expedited Declaratory Ruling, 29 F.C.C. Rcd. 3442, 3443 (Mar. 27, 2014) ........24

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) .............................................................................................28

*Johnson v. Yahoo! Inc.*,
No. 14 CV 2028, 2018 WL 835339 (N.D. Ill. Feb. 13, 2018)................................................24

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) ............................................................................................34

*Kamm v. Cal. City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ...................................................................................................26

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
(continued)

*Kelley v. Microsoft Corp.*,
   No. C07-0475 MJP, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009)................................11, 21

*Key v. Gillette Co.*,
   782 F.2d 5 (1st Cir. 1986) ...............................................................................................5

*Kline v. Coldwell, Banker & Co.*,
   508 F.2d 226 (9th Cir. 1974) .........................................................................................26

*Krakauer v. Dish Network*,
   311 F.R.D. 384 (M.D.N.C. 2015) ................................................................................9, 10

*Legg v. PTZ Insurance*,
   321 F.R.D. 572 (N.D. Ill. 2017)......................................................................................24

*Marlo v. United Parcel Serv., Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008) ................................................................5, 6, 14, 21, 25

*Marlo v. UPS, Inc.*,
   639 F.3d 942 (9th Cir. 2011) .......................................................................6, 11, 18, 20

*Mazzei v. Money Store*,
   308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016)................................13, 14

*Mazzei v. Money Store*,
   829 F.3d 260 (2d Cir. July 15, 2016)........................................................................5, 13, 18

*Messner v. NorthShore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ..........................................................................................24

*Meyer v. Bebe Stores, Inc.*,
   No. 14-CV-00267-YGR, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016)................................28

*Morris v. Unitedhealthcare Ins. Co.*,
   No. 4:15-cv-00638, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016)..........................................16

*Parsons v. Ryan*,
   784 F.3d 571 (9th Cir. 2015) ............................................................................................7

*Penk v. Or. State Bd. of Higher Educ.*,
   99 F.R.D. 511 (D. Or. 1983) ..............................................................................................5

*Pepka v. Kohl's Dep't Stores, Inc.*,
   No. CV164293MWFFFMX, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ..........................34

*Phillips v. Klassen*,
   502 F.2d 362 (D.C. Cir. 1974) .........................................................................................33

*Pickett*, 209 F.3d 1280 .........................................................................................................33

*Pierce v. Cty. of Orange*,
   526 F.3d 1190 (9th Cir. 2008) ..........................................................................................5

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
(continued)

Page

*Rader v. Teva Parenteral Meds., Inc.*,
   276 F.R.D. 524 (D. Nev. 2011)............................................................11, 20

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ..................................................................34

*Rector v. City & Cty. of Denver*,
   348 F.3d 935 (10th Cir. 2003) ................................................................14

*Sandoval v. Pharmacare US, Inc.*,
   No. 15-CV-0120-H-JLB, 2016 WL 3554919 (S.D. Cal. June 10, 2016) ...............24

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ............................................................29

*Selby v. LVNV Funding, LLC*,
   No. 13cv1383-BAS(BLM), 2016 WL 6677928 (S.D. Cal. June 22, 2016)............24

*Serna v. Big A Drug Stores, Inc.*,
   No. SACV 07-0276, 2007 WL 7665762 (C.D. Cal. Oct. 9, 2007)........................27

*Shamblin v. Obama for Am.*,
   No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015)........28

*Smith v. City of Corvallis*,
   No. 6:14-cv-01382, 2016 WL 3193190 (D. Or. June 6, 2016)..............................29

*Smith v. Microsoft Corp.*,
   297 F.R.D. 464 (S.D. Cal. 2014) ............................................................26

*Spokeo, Inc. v. Robbins*,
   136 S.Ct. 1540 (2016)............................................................................24

*Taylor v. Hous. Auth. of New Haven*,
   267 F.R.D. 36 (D. Conn. 2010), *aff'd sub nom. Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152 (2d Cir. 2011)...............................................................6

*Torossian v. Vitamin Shoppe Indus.*,
   No. 07-0523, 2007 WL 7648594 (C.D. Cal. Aug. 8, 2007) ..................................26

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..................................................................26

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................6, 18, 26, 27, 28

*Weisberg v. Takeda Pharm. U.S.A., Inc.*,
   No. CV 18-784 PA (JCX), 2018 WL 4043171 (C.D. Cal. Aug. 21, 2018) ...............6

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1169 (9th Cir. 2010) ............................................................7, 26

vi

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

## TABLE OF AUTHORITIES
### (continued)

Page

*Ybarra v. Dish Network, L.L.C.*,
    807 F.3d 635 (5th Cir. 2015) .................................................................................15

*Yeoman v. Ikea U.S.A. W., Inc.*,
    No. 11-CV-00701-BAS BGS, 2014 WL 7176401 (S.D. Cal. Dec. 4, 2014), *vacated and remanded on other grounds sub nom. Medellin v. IKEA U.S.A. W., Inc.*, 672 F. App'x 782 (9th Cir. 2017).................................................................................5, 6, 13, 14

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...........................................................................7, 18

## STATUTES

47 U.S.C. § 227(b)(1)(B) .......................................................................................8

Song-Beverly Credit Card Act .............................................................................13

Telephone Consumer Protection Act ...............................................................passim

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(f)(8) .....................................................................................22

64 C.F.R. § 64.1200(f)(12) ...................................................................................15

## RULES

Fed. R. Civ. P. 23 .............................................................................................passim

DEFENDANT'S MOTION TO<br/>DECERTIFY THE CLASS

I.      **INTRODUCTION**

"We cannot tell."  This was the jury's response when asked to identify how many calls to the class were made to "*residential*" lines.  "We cannot tell."  This was the jury's response when asked to identify how many calls to the class were made to *mobile* lines.  **The jury could not tell.**  And for good reason.  Plaintiff could not satisfy her burden of presenting common proof on the class claims.  If she could have, the jury would have been able to "tell."

The Court's certification of the Robocall class over two years ago was based on the premise that Plaintiff would be able to prove through common evidence that ViSalus sent uniform telemarketing prerecorded messages to the "residential" or mobile phones of unnamed class members.  The proof offered at trial showed the contrary.  Before trial began, the Court anticipated likely deficiencies with Plaintiff's proof on the class claims, but wanted "to wait to see the evidence."[1]  Now that the Court has seen the evidence, it is clear that the class must be decertified.

Plaintiff **did not** present common evidence at trial that absent class members were called in common ways that give rise to liability under the Telephone Consumer Protection Act ("TCPA").  She **did not** present common evidence that class members were called on "residential" lines.  She **did not** present common evidence that class members were called on mobile lines.  She **did not** offer an expert, as is typically done in TCPA cases, to testify on the

---

[1] Foster Decl. ¶ 5, Exh. 2 (Email to parties Apr. 7, 2019 (herein "Apr. 7 Email")) ("I anticipate that the Defendant will challenge the sufficiency of Plaintiff's evidence at trial on at least two issues.  The first is whether there is sufficient evidence for the jury to conclude for any absent class member (i.e., a class member other than Ms. Wakefield) whether that absent class member used a home landline for business purposes sufficient to render that line a non-residential landline.  That challenge may or may not have merit; I will have to wait to see the evidence.  The second issue is whether there is sufficient evidence for the jury to find that a particular number called by Defendant is a mobile (or cellular) telephone…. I anticipate that the Defendant may challenge the sufficiency of the evidence regarding whether any particular telephone number of an absent class member is for a mobile phone.  Again, that challenge may or may not have merit; I will have to wait to see the evidence."); *see also id.* at ¶ 6, Exh. 3, Apr. 8 Trial Transcript (herein "Apr. 8 Tr.") at 32:15–20 ("How is the jury going to know, for any telephone line that may be listed—by someone who received a call/has a home telephone—how are they going to know whether or not that call or that line satisfies the definition of residential landline as I instruct the jury?").

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

basic question of whether the phone numbers were mobile or landline numbers.[2]  Given the lack of evidence, it was no surprise that the jury returned a verdict of "**we cannot tell**."[3]

Instead, Plaintiff attempted to demonstrate the class claims by merely providing testimony on her individual claim.  She presented two witnesses and various documentary evidence to demonstrate that her phone line was *primarily used* for personal rather than business purposes and thus qualified as "residential" for purposes of the TCPA.  But in doing so, she demonstrated precisely why class treatment is not appropriate.  Plaintiff showed through her own testimony that this very same exercise would need to be done for every member of the class.  After all, the phones lines associated with each unnamed class member are **unknown** without individualized inquiry.  Accordingly, should the verdict remain in place, the parties will have to adjudicate countless mini-trials over these and other essential issues.  This would destroy the efficiency, manageability, and superiority of adjudicating these claims on a class-wide basis.  Indeed, it would destroy the very reason for proceeding as a class action.  The class should be decertified for this reason alone.

Equally important, there are numerous other pivotal grounds on which decertification of the class should be granted.  For instance, Plaintiff also failed to adduce common evidence at trial that prerecorded telemarketing messages were sent and actually played across the absent class or that the messages qualified as "telemarketing" under the TCPA.  Additionally, Plaintiff failed to produce common evidence that the absent class was harmed given that members likely consented to, requested, or desired to receive telemarketing calls from ViSalus.  Accordingly, the

---

[2] *See* Apr. 7 Email ("[I]t is very easy to determine whether a telephone number is for a mobile telephone…Also, I believe that evidence of that is fairly common in TCPA cases.") (internal parentheses omitted).

[3] The jury's "cannot tell" finding was inconsistent with its finding that Plaintiff had established her class claims.  *See* Foster Decl. ¶ 8, Exh. 5, Apr. 12 Trial Transcript (herein "Apr. 12 Tr.") at 411:1–10 ("If the jury finds in favor of plaintiff on [special verdict form questions] 3 and 4, and I suppose *consistently* finds in favor of the plaintiff on 5 and 6 and 7 and 8, no harm, no foul, and no big deal.  If the jury finds in favor of defendant on 3 and 4 and then *consistently* on 5, 6, 7, and 8, again, no harm, no foul.  If the jury finds in favor of the plaintiff on 3 and 4 but finds that they can't answer question 6 or question 8 or there is otherwise problems with those, I figure we will sort it all out in post-trial briefings[.]") (emphasis added).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

claims are riddled with numerous individual issues that predominate—indeed overwhelm—any common ones. Likewise, given the individualized nature of this proof, and Plaintiff's failure to provide common proof on the class claims, it is apparent that numerosity is not satisfied and a class action is neither manageable nor superior to other methods of adjudication.

For similar reasons, Plaintiff's claim is not typical of class members who (i) were called on landlines primarily used for business, (ii) did not receive telemarketing messages or a prerecorded message or (iii) consented, requested, or otherwise desired to receive telemarketing calls. Moreover, Plaintiff cannot represent (iv) a class of promoters given that she never sold any ViSalus products, (v) a class of customers since she was a promoter, or (vi) active or inactive (but not cancelled) promoters or customers because she was neither. Plaintiff's claim is also atypical because her phone number was a shared landline with her husband, a former promoter.

Moreover, Plaintiff is not an adequate class representative. As a disgruntled former promoter who cancelled her promoter business, Plaintiff is differently situated from the rest of the class, which consists of customers and promoters who benefit from ViSalus' products and did not cancel their accounts, and promoters who depend on an income stream from their ViSalus business or whose livelihood depends on the company's continued operations. Because a catastrophic damages award in this case would bankrupt the company and destroy the home-based businesses of thousands of ViSalus promoters around the world, the interests of these promoters lie in direct conflict with Plaintiff's lawsuit.

Simply put, the trial evidence showed why this case cannot proceed as a class action. For these reasons, which we discuss in detail below, decertification of the class is necessary.

## II.    **PROCEDURAL HISTORY**

In February 2017, Plaintiff moved to certify the Robocall class, defined as:

> All individuals in the United States who received a telephone call made by or on behalf of ViSalus: (1) promoting ViSalus's products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither ViSalus nor its agents had any current record of prior express written consent to place such call at the time such call was made."[4]

---

[4] Dkt. 36, First Am. Compl. ¶ 28; Dkt. 81, Class Cert. Order at 6.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

In June 2017, the Court granted the motion to certify under the presumption that Plaintiff would

follow through on her promise of presenting common, class-wide proof of the above elements.

Before trial began, the Court forecasted potential insufficiencies in Plaintiff's proof on

the class claims and the jury verdict that could result:

> [I]f the plaintiff is right, then all I need to do is ask what's the total of A [mobile] or B [residential line], which, by the way, **I'm skeptical that's the right way to do it**.  But if you are right, we will get the answer.  If the Ninth Circuit says you're right, and the Supreme Court says you are right, more power to you.  **If, however, the jury answers the question the way that plaintiff wants, and then tell us that they either can't tell, they don't have enough information on how many were residential or how many were mobile, then defendant can make their arguments[.]**[5]

On April 11 and 12, 2019, this case was tried to a jury on Plaintiff's individual and class

claims.  The jury was instructed that in order to prevail on her class claims, Plaintiff was required

to prove by a preponderance of the evidence that prerecorded calls "were made either to a class

member's (other than Ms. Wakefield's) mobile (or cellular) telephone or to that class member's

residential telephone line (or residential landline)."[6]  After deliberating for several hours, the jury

returned with a question asking, "[D]o we have to come up with numbers for the different

devices?"[7]  The Court instructed the jury that they could respond with the following options: (1)

all members agree on a specific number; (2) all agree on an "at least" number; (2) all agree "we

cannot tell"; or (4) the jury is deadlocked.[8]

Shortly thereafter, the jury returned a verdict in favor of Plaintiff on four out of the five

calls she claimed to have received in violation of the TCPA.[9]  With respect to the class claims,

---

[5] Apr. 8 Tr. at 39:22–40:7.  *See also id.* at 42:9–18 ("I still want to find out from the jury, though, if they believe they can't tell… I want to find out from the jury do they believe they have enough evidence to tell.  So what do we ask them?  Do you have enough evidence to make a determination?  I would want to give them the option of either putting in a number that they believe the plaintiff's evidence can prove by a preponderance, or saying, 'We can't tell.'").

[6] Dkt. 283, Final Jury Instructions at Instruction No. 16.

[7] Dkt. 279, Jury Note.

[8] Apr. 12 Tr. at 561:16–563:4.

[9] Dkt. 282, Special Verdict at Q1 & Q2.

the jury determined that prerecorded calls were made to "residential" or mobile phones,[10] but when asked how many were made to each phone type, the jury determined that they "cannot tell." This was, of course, the only logical response since Plaintiff failed to meet her burden of proof on the class claims, including whether the phone numbers were mobile or "residential."[11]

## III.   ARGUMENT

### A.   The Court Has a Continuing Duty to Ensure Rule 23 Requirements Are Met

Class certification is "inherently tentative." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978)); *Beebe v. Pac. Realty Tr.*, 99 F.R.D. 60, 74 (D. Or. 1983) ("The decision to certify a class, then, once made, is only a tentative termination."); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "If the evidence at trial indicates that a class action is not in fact appropriate, the court will not hesitate to decertify."[12] *Penk v. Or. State Bd. of Higher Educ.*, 99 F.R.D. 511, 515–16 (D. Or. 1983).

Numerous courts have decertified class actions post-trial. *See, e.g., Mazzei v. Money Store*, 829 F.3d 260, 271 (2d Cir. July 15, 2016) (affirming decertification post-trial where verdict rested on "seriously erroneous" factual finding, including lack of class-wide evidence on essential element of the class claims); *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (affirming district court's post-verdict decertification); *Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1566 (11th Cir. 1996) (affirming decertification "based on the evidence presented at trial"); *Yeoman v. Ikea U.S.A. W., Inc.*, No. 11-CV-00701-BAS BGS, 2014 WL 7176401, at *4 (S.D. Cal. Dec. 4, 2014), *vacated and remanded on other grounds sub nom. Medellin v. IKEA U.S.A. W., Inc.*, 672 F. App'x 782 (9th Cir. 2017) (where "Court could conceivably enter judgment in favor of Ikea on plaintiff's class claim, court "finds the appropriate action is to

---

[10] *Id.* at Q.A3, Q.A4, Q.B5 & Q.C7.

[11] *See supra* note 1.

[12] Decertification orders are reviewed for abuse of discretion. *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

decertify the Class prior to entry of final judgment"); *Taylor v. Hous. Auth. of New Haven*, 267 F.R.D. 36, 62 (D. Conn. 2010), *aff'd sub nom. Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152 (2d Cir. 2011) (decertifying class where "[t]he evidence at trial does not support the continued viability of a certified class").

"In evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place." *Yeoman*, 2014 WL 7176401, at *5. The court "may 'consider the nature and range of proof necessary to establish the [class-wide] allegations.'" *Marlo*, 251 F.R.D. at 479–80 (citation omitted) (decertifying class where the court's concern about the class-wide applicability of the evidence "ha[d] ripened into doubt regarding the continuing efficacy of a class action"). The court engages in a "rigorous analysis" of each Rule 23 factor. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Weisberg v. Takeda Pharm. U.S.A., Inc.*, No. CV 18-784 PA (JCX), 2018 WL 4043171, at *4 (C.D. Cal. Aug. 21, 2018) (courts "must determine that each requirement of Rule 23 is actually met").

Plaintiff continues to bear the burden of demonstrating that each of the Rule 23 requirements is "***in fact***" satisfied. *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51 (emphasis original); *Marlo v. UPS, Inc.*, 639 F.3d 942, 947–48 (9th Cir. 2011). "[T]he court **must** decertify a class if the requirements for class certification under Rule 23 are not met." *Yeoman*, 2014 WL 7176401, at *5 (emphasis added).

## B.    It Was Plaintiff's Burden to Prove Her Class Claims at Trial

That Plaintiff bears the burden of proving her case, including the class claims at trial, is "one of the most basic propositions of law." *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1991); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("And if the case proceeds past the certification stage, the plaintiff class must carry the burden of proving every element of its claims to prevail on the merits.").

Nonetheless, Plaintiff has suggested that to establish liability on behalf of the class, she only needed to prove that she received a telemarketing call using an artificial or prerecorded

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

voice to her mobile or "residential" phone.[13]  But merely providing evidence to establish her own claim is insufficient to establish liability as to the class.  Plaintiff was required to prove through common evidence that **each** class member has a viable claim.  *Parsons v. Ryan*, 784 F.3d 571, 575 (9th Cir. 2015) (Ikuta, J., dissenting from denial of rehearing en banc) ("Because it is no more than a claim aggregation device, Rule 23 has no effect on the substance of the claims or plaintiffs' burden of proof, and consequently each member in a class must have a potentially viable claim.") (internal citations omitted).

As applied here, it was Plaintiff's burden to prove at trial, through evidence common to the class, that **each** class member (1) received and heard a prerecorded voice message that (2) constituted telemarketing to (3) their mobile phone or a landline primarily used for personal rather than business purposes (i.e., "residential").  Even if Plaintiff demonstrated that ViSalus called her in violation of the TCPA (which ViSalus disputes), she failed to adduce common proof that the same was true for **all** class members.  This fundamental flaw in Plaintiff's case permeates all of Rule 23's certification requirements.

**C.**    **Trial Demonstrated That Individual Issues Predominate on the Class Claims**

The predominance inquiry under Rule 23(b) is rigorous, and although "there is substantial overlap between" the test for commonality under Rule 23(a)(2) and the predominance test under 23(b)(3), the predominance test "is 'far more demanding.'"  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1169, 1172 (9th Cir. 2010) (citations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  A Rule 23(b)(3) action is inappropriate where "the main issues in a case require the separate adjudication of each class member's individual claim or defense."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–90 (9th Cir. 2001).  To determine whether common questions predominate, the court begins with "the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

---

[13] Dkt. 122, Joint Proposed Verdict Form at 12.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

Here, the trial demonstrated that the class is hopelessly riddled with individual issues that predominate over common ones. While there are many questions that need to be answered for each individual class member, key issues requiring individualized inquiries and proof include: (1) was the class member called on a residential or mobile line, and if residential, was the line primarily used as a business line; (2) did the class member receive and actually hear a prerecorded or "Press 1" message; and (3) did the class member provide consent or expect to receive telemarketing calls from ViSalus.[14] These individualized issues—not common issues of fact or law—predominate. Accordingly, separate adjudications of each class member's individual claim or defenses to that claim will be required, resulting in endless mini-trials.

1.    **Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Class Members Were Called on "Residential" or Mobile Lines**

It was Plaintiff's burden to prove class liability by common proof.[15] Plaintiff failed to satisfy her burden of proof that the class received *any* calls on telephone lines covered by the TCPA, including the fact that she did not demonstrate which, if any, calls were made to residential lines (as opposed to mobile lines). The jury's response that they could not make a finding on these issues or they "**cannot tell**" exemplifies why the class must be decertified.

---

[14] A multitude of other individual issues include, without limitation: (1) did the class member receive a prerecorded call and is so, on what date and time; (2) did the class member "Press 1" and speak with a live agent and if so, what was said; (3) was the phone number landline or mobile at the time of the prerecorded call; (4) was the prerecorded message from ViSalus or a promoter to his or her downline; (5) was the class member a promoter or a customer at the time of the prerecorded call; (6) is the class member a business entity or an individual; (7) is the class member located in the United States; (8) did the class member have an active, inactive, or cancelled account at the time of the prerecorded call; (9) did the class member have verbal communications with promoters about telephonic outreach from ViSalus during the onboarding process and if so, what was verbally discussed; (10) did the class member opt out of telephone communications prior to any prerecorded call; (11) was the class member on an opt-out list at the time of the call; and (12) did the class member own the phone number called.

[15] *See* Dkt. 149, Order re Jury Instructions at 4 ("Defendant asserts that the burden is on Plaintiff to prove by a preponderance of the evidence that the subject telephone line was residential. The Court agrees. It is one of the statutory elements of 47 U.S.C. § 227(b)(1)(B) that Plaintiff must prove."); Dkt. 283, Final Jury Instructions at Instruction No. 16 ("The Class TCPA Claim").

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

To begin, Plaintiff defined, and the Court certified, a class that includes calls that cannot violate the TCPA.  Specifically, the certified class includes calls to mobile phones, residential lines, dual-purpose lines, and business lines.[16]  But the TCPA only applies to mobile phones and residential landlines.  It does ***not*** apply to business lines and may not apply to dual-purpose lines, depending on their "primary use."[17]  This is why the Court was absolutely correct in instructing the jury to decide the number of calls made to mobile versus "residential" lines.[18]

At trial, however, Plaintiff presented no evidence that members of the class were called on mobile or "residential" lines.  In particular, she did not engage an expert to determine—as a first but not determinative step—whether the phone numbers were mobile or landline.  It is critical, if not required, to present such expert opinion.  *Krakauer v. Dish Network*, 311 F.R.D. 384 (M.D.N.C. 2015), a TCPA class action that also went to trial, is instructive.[19]  There, expert testimony was presented on whether the calls at issue were made to "residential" lines.  The plaintiff introduced a qualified expert, who was subject to rigorous cross-examination, regarding her opinion that the phone lines at issue qualified as "residential."  The jury was provided

[16] Foster Decl. ¶ 4, Exh. 1, Apr. 3 Trial Transcript (herein "Apr. 3 Tr.") at 17:18–18:7 ("Plaintiff didn't ask to define the class as people who received those types of calls on a residential line or a cellular telephone.  You didn't ask [Judge Brown] to define the class that way, and [Judge Brown] didn't define it that way.  But you only are entitled to liability for calls made on a residential phone or a cellular phone.  So we need to know how many people within this class basically can satisfy the liability elements of this claim…[the statute] doesn't allow for liability to a business line, but your definition of the class includes business line.").

[17] Dkt. 149, Order re Jury Instructions at 4 ("[T]he Court finds that a telephone line is residential if the phone is primarily used for residential purposes.").

[18] Apr. 3 Tr. at 18:8–17 ("So I think, by definition, you're probably going to have people that have a pure business line -- or have a business line that may have received a call from ViSalus, and they're not going to be eligible.  So we need to ask the jury … how many people received these types of automated or artificial voice calls to either a cellular phone or a residential landline and excluding business lines?  The jury will have to answer that question."); Apr. 12 Tr. at 410:19–21 ("[M]y thinking is I think it needs to be separated out, as I've done, for an evaluation of whether or not there is evidence that would support findings[.]");  *see also* Apr. 7 Email (identifying expected insufficiencies in Plaintiff's class evidence at trial on whether class members were called on "residential" or mobile lines and noting that "it is safer to ask the jury to break up its factual findings on these two issues" given the likelihood of appeal).

[19] Foster Decl. ¶ 7, Exh. 4, Apr. 11 Trial Transcript (herein "Apr. 11 Tr.") at 148:17–18 ("Some of the opinions that I have read, including the *Krakauer* case, don't they have experts?")

DEFENDANT'S MOTION TO
                                                          DECERTIFY THE CLASS

options on the verdict form to eliminate phone numbers which plaintiff did not prove qualified as "residential."  The jury concluded—based on this expert testimony—that the calls were made to residential lines.  In contrast, Plaintiff here did not present *any* expert testimony from which the jury could make such a finding.  She did not designate an expert during discovery.[20]  Indeed, **Plaintiff presented no evidence at all.**

Plaintiff's failure to perform the most basic inquiry on the nature of the telephone lines was a fatal flaw in her case, resulting in a complete absence of evidence supporting the jury's finding that calls were made to phone lines covered by the TCPA.  Furthermore, expert testimony was particularly crucial here because the class includes promoters who are business owners and likely used the phone numbers they voluntarily provided to ViSalus in connection with their ViSalus business.  Some even enrolled with ViSalus as registered businesses.[21]  Thus, calls made to class members were likely made to dual-purpose lines primarily used for business purposes or to "pure business line[s]."[22]  Plaintiff did not, nor can she, prove liability with respect to class members without individualized inquiries to determine the nature of each class member's telephone line.  **There is no common proof.**

In an attempt to address the complete absence of evidence, Plaintiff encouraged the jury to speculate or to use its "common sense" to decide this key factual issue (which the jury

---

[20] Apr. 11 Tr. at 138:7–11, 139:5–6 ("I have never heard of Search Bug before this.  I have heard of LexisNexis in my reading of other TCPA cases, including the *Krakauer* case.  I see there was some use of LexisNexis by the experts there.  More significantly, there were experts there … But I note that no party—neither side here—has designated any expert witnesses.  We don't have any expert testimony."); *see id*. at 142:13–17 ("But the problem is nobody, **neither side, especially the plaintiff, did not designate an expert**, did not provide an expert disclosure report, as is required by Rule 26, and so I'm not going to receive a layperson's opinion about something that requires expertise.") (emphasis added); *see id.* at 391:14–17 ("It may very well be a perfectly valid tool that's relied upon by experts in this field, and this problem would have been solved had plaintiff filed a Rule 26 expert disclosure report in a timely fashion[.]").

[21] *See* Foster Decl. ¶ 9, Exh. 6 (Trial Exhs. 8, 11, 13, 15, 17, 19, 20, 22, 24, 27) (promoter applications providing a field for "Company Name"); *id.* at ¶ 10, Exh. 7, Deposition of John Laun ("Laun Dep.") at 115:22–116:3.

[22] Apr. 3 Tr. at 18:8–11.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

rejected).[23]   However, it is entirely improper to assume mobile or "residential" lines for all, most, or any of the absent class members.  Plaintiff cannot rely on mere assumptions to fill evidentiary gaps for which she bears the burden of proof.  *Marlo*, 639 F.3d at 945–49 (affirming decertification where plaintiff failed to "provide common evidence to support extrapolation from individual experiences to a class wide judgment that is not merely speculative"); *Rader v. Teva Parenteral Meds., Inc.*, 276 F.R.D. 524, 530 (D. Nev. 2011) ("Plaintiff must demonstrate that causation can be proved as to all class members using classwide proof, not mere unsupported assumptions and generalities."); *Kelley v. Microsoft Corp.*, No. C07-0475 MJP, 2009 WL 413509, at *2–3, 6 (W.D. Wash. Feb. 18, 2009) (decertifying class because "[t]he [c]ourt cannot apply an assumption as class-wide proof").

Plaintiff's failure of proof on this essential, threshold issue (and TCPA element) dooms the class.  Individual trials (or mini-trials) are needed to decide the fundamental question of whether calls to absent class members were made to phone lines that are covered by the TCPA, and thus whether a violation of the TCPA occurred.  These mini-trials would require a fact-driven determination of the nature of the phone line and whether the line was primarily used for personal or business purposes.[24]   In fact, the Court need look no further than the trial of Plaintiff's individual claim to see how individual issues predominate.

One of the hotly contested issues in this case was whether Plaintiff's landline number was a "residential" or business line.[25]   Two live witnesses testified at trial, including Lance Eves, CEO of Mollala Communications (the telephone carrier) and Plaintiff.  The substantial amount

---

[23] *See* Apr. 12 Tr. at 497:2–14; 546:21–547:13.

[24] Plaintiff may argue that the latter inquiry is applicable only to landlines.  But there is no evidence regarding which numbers were mobile versus landline at the date and time the messages were received.  The jury said they "cannot tell" because Plaintiff failed to offer any evidence, despite knowing her burden of proof and litigating this case for more than three years.

[25] Apr. 7 Email ("My understanding is that a central part of Ms. Wakefield's individual claim depends on whether her landline at her home is found by the jury to be a 'residential landline' or a 'business landline' in light of the fact that she uses that landline phone in the operation of a business from her home.  Thus, there appears to be a jury question on whether and under what circumstances a landline in a home is a 'residential landline' or a 'business landline.'").

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

of individualized evidence introduced at trial regarding whether Plaintiff's phone line qualified as "residential" included the following: (1) Plaintiff operated a home daycare business for children in April 2015, the month she received calls from ViSalus[26]; (2) the number was registered to "Lori Wakefield"[27]; (3) the number was registered and billed as a residential landline[28]; (4) Plaintiff did not advertise the number as a daycare business; (5) Plaintiff did not place the number on flyers for her home daycare business; (6) Plaintiff did not place the number on business cards; (7) Plaintiff did not put a sign with her number in the front of her house advertising her home daycare business; (8) Plaintiff did not announce "Lori's Day Care" when she picked up the phone; (9) Plaintiff did not advertise the number in any way; (10) of the 301 telephone calls made to the number within a three-month period (which Plaintiff submitted phone records to prove), only two calls were related to Plaintiff's daycare business; the remaining 299 calls were "personal"; (11) Plaintiff's use of her line during this three-month period was "typical"; (12) when Plaintiff signed up as a promoter with ViSalus, she did not sign up as a company and did not fill out a company enrollment form; (13) Plaintiff did not use the line to sell ViSalus products and neither did her husband, who also used the line; and (14) after Plaintiff cancelled her business relationship with ViSalus, she did not use the line for ViSalus business.[29]  After weighing the evidence and considering the credibility of trial witnesses, including Plaintiff, the jury determined that Plaintiff's line qualified as "residential" and thus ViSalus violated the TCPA with respect to Plaintiff.

The trial of Plaintiff's individual claim makes evident that determining whether an absent class member's phone line was primarily used for personal, rather than business, purposes cannot be accomplished by common proof.  A fact-intensive, individualized inquiry would be required

---

[26] Dkt. 271-1, Joint Stip. of Facts ¶ 27.

[27] Apr. 11 Tr. at 180:16–19 (L. Eves testimony).

[28] Apr. 11 Tr. at 180:20–181:7 (L. Eves testimony), 243:17–21 (L. Wakefield testimony); *see also* Foster Decl. ¶ 11, Exh. 8 (Trial Exh. 4).

[29] *See* Apr. 11 Tr. at 250:14–16 (L. Wakefield testimony).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

for each class member.[30]  As the Court noted:

> I'm skeptical that that is legally sufficient [to combine mobile or residential lines in jury
> question] because we've known for months, if not more than a year, that one of the key
> issues in the plaintiff's individual claim is, sure, she had a landline in her home.  Does
> that count as residential or business?  **That tells me that it may require a factual
> analysis by a fact-finder—here, a jury—to determine whether a particular landline
> in a phone is primarily residential**[.]  That's why I thought . . . we should separate out
> mobile and residential, it made sense to me because **I'm somewhat skeptical that the
> jury will have enough information to decide whether or not the calls made to a home
> landline are or are not residential[.]**[31]

The issues in this case are similar to those in *Mazzei v. Money Store*.  There, borrowers

brought a class claim for breach of contract for overcharging late fees on mortgages.  Following

trial, the district court decertified the class because no class-wide evidence to prove the claim

was presented at trial.  The court explained:

> The plaintiff has failed to prove that members of the Late Fee Class whose loans were
> serviced but not originated by the defendants were in privity with the defendants[.]
> Therefore, upholding the jury's $54 million verdict against the defendants would be a
> manifest injustice.  Moreover, the plaintiff has offered no evidence that he is a typical
> representative of a class that includes borrowers whose loans were only serviced by the
> defendants, nor has he offered evidence as to how individual questions as to the
> contractual status of the borrowers would not predominate if they were properly
> considered at trial.  Accordingly, the late fee class should be decertified.

*See Mazzei v. Money Store*, 308 F.R.D. 92, 113 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir.

2016).

The district court faced a similar issue in *Yeoman v. Ikea U.S.A. West, Inc.*, a class action

under the Song-Beverly Credit Card Act, where the plaintiff's evidence at trial revealed that

"there is not a common answer to the essential, threshold question of whether requests for ZIP

codes were made to each customer[.]"  2014 WL 7176401, at *6.  The Court held:

---

[30] Nor can failure to prove liability be cured through post-trial affidavits.  *See*, *e.g.*, *Briseno*, 844
F.3d at 1131 (Rule 23 contemplates individual claim determinations "after a finding of
liability").  Affidavits to determine liability would infringe ViSalus' Seventh Amendment right
to a jury trial and its Due Process rights and would violate the Rules Enabling Act.

[31] Apr. 11 Tr. at 146:25–147:16 (emphasis added).

DEFENDANT'S MOTION TO
                                                 DECERTIFY THE CLASS

> In light [of] Plaintiff's inability to demonstrate that anyone's rights other than Plaintiff's rights were violated under the Act, the Court could conceivably enter judgment in favor of Ikea on Plaintiff's class claim.  However, **given the clear lack of available class-wide proof and common answers and the persistence of individual questions, the Court finds the appropriate action is to decertify the Class prior to entry of final judgment**.

*Id.* at *4 (emphasis added).

In short, just as in *Mazzei* and *Yeoman*, "[i]t is apparent, after trial, that the Rule 23 requirements are 'not in fact met.'"  *Mazzei*, 308 F.R.D at 112; *Yeoman*, 2014 WL 7176401, at *6 (granting decertification where "single anecdote of Plaintiff's own transaction does not establish what occurred in other transactions.  This failure of proof undercuts the ground upon which certification of the class was initially granted").

Consequently, decertification is warranted for this reason alone.  In addition, decertifying the class would also further the interests of absent class members because it protects them from "being saddled with the fact that the plaintiff failed to produce enough evidence to protect their interests at trial." *Mazzei*, 308 F.R.D. at 113.  *See also Marlo*, 251 F.R.D. at 487 ("Decertification in no way means that [class members] cannot pursue their legitimate claims[.]"); *Rector v. City & Cty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) (decertifying class "to protect the interests of the absent class members"); *Yeoman*, 2014 WL 7176401, at *4 (decertifying class so that "any individual putative class member who may have a claim against Ikea…may still pursue that claim").

**2.    Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Each Call Was Initiated With a Telemarketing Prerecorded Message and Whether the Message Actually Played**

Plaintiff claims that ViSalus promoted its products or services through calls that featured an artificial or prerecorded voice.  However, at trial, Plaintiff failed to adduce any evidence, let alone evidence common to the class, demonstrating that calls to class members constituted telemarketing or that a call was initiated with a prerecorded message and actually began to play.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

As an initial matter, Plaintiff did not produce common evidence that a telemarketing message was sent to each class member.  Instead, Plaintiff cherry-picked audio recordings which she played for the jury, ignoring other audios that were clearly not telemarketing.  For example, some of the audios were informational, such as providing promoters notification of a local event or training opportunity for their ViSalus business.[32]  *See Friedman v. Torchmark Corp.*, No 12-cv-2837-IEG BGS, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (prerecorded call to plaintiff's residential phone encouraging plaintiff to attend a "recruiting webinar" "was akin to an offer of employment" and was not telemarketing); *Reardon v. Uber Techs.*, Inc., 115 F. Supp. 3d 1090, 1096–97 (N.D. Cal. 2015) (texts sent to recruit Uber drivers were not telemarketing, even though Uber's ability to successfully recruit drivers is related to its commercial interests in providing more rides to customers).  Plaintiff also relied on certain language in the Gidley Declaration to argue that calls to class members were "telemarketing," even though the Declaration does not mention the word "telemarketing."  A laymen's generic understanding of marketing is not synonymous with the meaning of "telemarketing" under the TCPA.[33]

In addition, Plaintiff did not offer for admission any common evidence that a prerecorded message was sent to each class member.  This failure of proof is critical because if a call was not made or did not go through, then a prerecorded message could not have played and the called party would not be a member of the class.  It is not enough that a prerecorded message was sent—the message must actually begin to play.[34]  *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d

[32] Foster Decl., ¶ 21, Exh. 18, Deposition of Scott Gidley ("Gidley Dep.") at 29:25–30:7 (outbound calls may have been made for promotions as well as declined orders); Foster Decl. ¶ 13, Exh. 10 (Trial Exhs. 43-1, 43-2, 43-4, 43-6, 43-15, 43-18); Dkt. 271-1, Joint Stip. of Facts ¶ 5.

[33] Foster Decl. ¶ 16, Exh. 13 (Trial Exh. 37 (herein "Trial Exh. 37, Gidley Decl.")) ¶ 5.  *Cf.* 64 C.F.R. § 64.1200(f)(12); *see also* Apr. 3 Tr. at 76:3–8 (the Court noting that "'Marketing' does not mean 'telemarketing.'  If I hear them argue that this paragraph [in the jury instruction] implies that this was all telemarketing, you can make your objection.  I would anticipate sustaining it, and I would probably even jump in myself, even without an objection, to say, 'It says marketing; it doesn't say telemarketing.'").

[34] *See* Dkt. 149, Order re Jury Instructions at 6 (finding the reasoning in *Ybarra* persuasive and adopting the following language: "A call 'used' an artificial or prerecorded voice if the message

DEFENDANT'S MOTION TO DECERTIFY THE CLASS

635, 641 (5th Cir. 2015) ("We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must 'speak' during the call."); *Morris v. Unitedhealthcare Ins. Co.*, No. 4:15-cv-00638, 2016 WL 7115973, at *7 (E.D. Tex. Nov. 9, 2016) (plaintiff's "mere speculation that an artificial or prerecorded voice may have played had he answered the calls is insufficient" to defeat summary judgment). Here, there was no common evidence that the class received **and** heard a prerecorded message.

> **(a)   Evidence Presented at Trial to Show That Plaintiff Received and Heard a Prerecorded Message Demonstrated That Individual Issues Predominate With Respect to the Class Claims**

At trial, Plaintiff proffered evidence as to whether Plaintiff received calls from ViSalus, the number of such calls, whether any, some or all of the calls used a prerecorded message, and whether during those calls, Plaintiff actually heard recorded messages. To address these questions, Plaintiff first called Lance Eves of Molalla Communications to testify regarding Plaintiff's telephone records.[35] As to Plaintiff's individual claim, Eves (1) listened to two prerecorded messages that contained telephone call-back numbers;[36] (2) compared the numbers left on the prerecorded messages to the more than 300 calls listed on Plaintiff's phone bills over the course of three months; (3) found the same call-back numbers from the messages on the phone bills; (4) reviewed the phone bills to determine both (a) if the calls were incoming or outgoing and (b) the length of each call, (5) timed the length of the two messages that were played; (6) identified the length of the calls on Plaintiff's phone bill that matched the numbers identified in the prerecorded messages; (7) compared the length of the messages to the length of the calls identified on Plaintiff's phone bills; and (8) analyzed the lengths of the calls on the phone bills to determine whether, in his opinion, they were long enough to reasonably assume

---

actually began to play or the prerecorded or artificial voice began to speak. A call that was intended to use an artificial or prerecorded voice but the voice never spoke or the message never played is not a violation of the TCPA").

[35] Apr. 11 Tr. at 178:13–15; Foster Decl. ¶¶ 11–12, Exhs. 8, 9 (Trial Exhs. 2, 4).

[36] Apr. 11 Tr. at 189:15–190:8; Foster Decl. ¶ 13, Exh. 10 (Trial Exhs. 43-7, 43-11).

DEFENDANT'S MOTION TO DECERTIFY THE CLASS

that the call was picked up by either a person or answering machine.[37]

In addition, Plaintiff testified regarding (9) the number of calls she recalled receiving from ViSalus in April 2015;[38] (10) whether she received a "Press 1" call from ViSalus "where a prerecorded message asked [her] to press a button to connect to a live agent," and she pressed the button, and in fact was connected to a live agent;[39] (11) whether she received voicecasting calls from ViSalus "with a recorded call back message;"[40] and (12) what she remembered about the content of the voicecasting calls.[41]  Plaintiff then (13) listened to three ViSalus messages; (14) compared those messages with her memory of the ones she had received from ViSalus to determine whether the content was similar;[42] (15) was asked whether she had an answering machine on which messages could be left; (16) compared her memory of the content of the ViSalus message left on her answering machine (which she subsequently deleted) with the recorded messages played for her at trial to determine whether they were the same or similar messages;[43] (17) testified whether her current phone number is the same number she had in April 2015;[44] (18) reviewed her phone records in an attempt to determine which calls were received from ViSalus, when the calls were made, how long the calls lasted, and whether any such calls were "Press 1" or voicecasting calls or from a live person;[45] and (19) testified regarding how she surmised whether the calls she received were from a live person or used a prerecorded

---

[37] Apr. 11 Tr. at 191:15–195:5.

[38] Apr. 11 Tr. at 224:25–225:1.

[39] Apr. 11 Tr. at 226:16–24.

[40] Apr. 11 Tr. at 227:5–11.

[41] Apr. 11 Tr. at 227:9–15.

[42] Apr. 11 Tr. at 229:5–231:8; *see also* Foster Decl. ¶ 13, Exh. 10 (Trial Exhs. 43-7, 43-11, 43-25).

[43] Apr. 11 Tr. at 232:1–21.

[44] Apr. 11 Tr. at 217:1–5, 224:12–16, 232:22–233:3.

[45] Apr. 11 Tr. at 234:24–239:4; *see also* Foster Decl. ¶ 12, Exh. 9 (Trial Exh. 2).  Plaintiff could not testify consistently on whether the calls she received were from live agents or were prerecorded messages.  After all, the purported calls date back to 2015.  The passage of time will be equally as troubling, if not more so, for absent class members.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

message.[46]  In addition, (20) Plaintiff offered testimony from Scott Gidley, compliance analyst

and fraud investigator at ViSalus, who testified that he "assumed" (but did not know whether)

Plaintiff was sent a prerecorded message from her up-line promoter.[47]

Based on at least twenty pieces of evidence, the jury found that prerecorded messages

were played and heard by Plaintiff for only *four* out of the five calls she claimed.[48]  The jury

discredited Plaintiff's testimony that she received <u>and</u> heard all the prerecorded messages about

which she testified.  Even assuming this evidence was sufficient to resolve the question of

whether ViSalus violated the TCPA as to Plaintiff individually (which ViSalus disputes),

Plaintiff failed to show how these questions could possibly be subject to generalized proof for

the rest of the class.  Adjudication of these class issues would require fact-intensive,

individualized inquiries just like those used by Plaintiff to prove her individual claim.

Accordingly, the class claims were not (and could not have been) resolved "in one stroke" in a

uniform, class-wide fashion.  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  *See also Mazzei*, 829 F.3d

at 271 (affirming decertification post-verdict where there was lack of class-wide evidence on

essential elements of the class claims); *Marlo*, 639 F.3d at 945–49; *Zinser*, 253 F.2d at 1189–90.

> **(b)    The Class Evidence Presented at Trial on Whether Absent Class Members Received and Heard a Prerecorded Message Did Not Establish That Common Issues Predominate**

Plaintiff offered into evidence 405 Progressive Outreach Manager ("POM") contact

spreadsheets containing millions of names of ViSalus promoters and customers, several voice

recordings, and scripts involving a "Press 1" campaign.  Plaintiff also introduced a stipulated fact

that ViSalus used "Press 1" and voicecasting campaign strategies, as well as the testimony of

Scott Gidley that certain prerecorded messages may have been sent through POM.  Plaintiff also

cited the Gidley Declaration, and specifically the statement that, "[t]o the best of [his]

knowledge, all of the marketing campaigns that ViSalus ran calling U.S. residents using POM

---

[46] Apr. 11 Tr. at 239:22–240:7, 240:12–242:20; *see also* Dkt. 266,  Joint Stip. of Facts ¶¶ 25–26.

[47] Apr. 11 Tr. at 324:3–4 (stating that he believed the message may have been sent to plaintiff).

[48] Dkt. 282, Special Verdict at Q2.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

are identified by the spreadsheet," as evidence that all 405 of the campaigns ***were actually implemented*** and constituted "telemarketing."  In addition, Plaintiff cited another statement in the Gidley Declaration which identified certain disposition codes where no voicemail ***could have*** played and concluded on the basis of that statement and "common sense" that a prerecorded message ***must have been sent and played*** for the remaining entries with disposition codes.[49]

This was Plaintiff's entire evidentiary basis for the class claims—that all 405 spreadsheets were run through POM and utilized either a "Press 1" or voicecasting campaign strategy and that in deploying these strategies, a prerecorded message ***must*** have been sent and a class member ***must*** have heard the message play.  The evidence, however, does not support the existence of a class or establish that common questions predominate.

<u>First</u>, the evidence adduced at trial demonstrated that only certain POM contact spreadsheets contained disposition codes (i.e., call outcomes).[50]  Plaintiff offered no testimony defining all of the various disposition codes, including whether a call was completed with a prerecorded message played.  In fact, some disposition codes suggested that calls were not completed (e.g., "Desktop Error," "Invalid," "Invalid Number," "Application Error").  Moreover, there was no disposition code indicating whether a prerecorded message played during that call.[51]  Thus, even assuming the disposition codes meant that a call was completed and the codes were accurate (and they likely were not),[52] **<u>the testimony was that there is no way to tell whether a prerecorded message was sent, let alone heard, or whether a contact list was connected to any prerecorded message</u>**.[53]  Plaintiff attempted to manufacture common proof

---

[49] Apr. 12 Tr. at 536:21 (Plaintiff's counsel directing jurors to "use [their] common sense").

[50] Apr. 11 Tr. at 360:3–5, 363:3–9 (S. Davis testimony); *see also* Foster Decl. ¶ 14.

[51] Apr. 12 Tr. at 446:11–18 (S. Davis testimony) (testifying that the Avaya manual does not include a disposition code for prerecorded messages).

[52] Apr. 11 at 299:24–301:9 (J. Call testimony) (testifying that disposition codes were prone to human error or fabrication and may be incorrect).

[53] Apr. 11 at 302:1–4 (J. Call testimony) ("Q: [I]s there any way that you can figure out whether any of these audio files are connected with any of the spreadsheets in Exhibit 5? A: No."); *id.* at 303:19–304:1 (assuming that a prerecorded message would have been used in connection with contact lists would be "drawing a lot of conclusions").  *See also* Foster Decl. ¶ 15, Exh. 12,

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

by contending that ViSalus only used POM for prerecorded messages. But the parties' stipulated facts do **not** state that "Press 1" and voicecasting calls were the ***only*** types of campaigns for which ViSalus used POM and, in fact, the evidence in the record suggests the opposite.[54]

    Second, Plaintiff grossly mischaracterized the Gidley Declaration. Plaintiff told the jury that if a disposition code was not identified by Gidley as one in which "no voicemail could have played," then a prerecorded message must have been sent for the remaining codes. But that was **not** Gidley's testimony. Gidley stated that "a voice recording ***may*** have been used."[55] **He did not testify that prerecorded messages were, in fact, used.**[56] Also, Gidley's list of "no voicemail could have played" disposition codes does not appear exhaustive since codes such as "Invalid," "Desktop Error," "Invalid Number" or "Application Error" were not included.

    Plaintiff could have, but failed to introduce any expert testimony on these issues or seek discovery on the issue of whether recordings were actually used.[57] Plaintiff's assumption that they must have been used does not constitute common proof. *See Marlo*, 639 F.3d at 945–48; *Rader*, 276 F.R.D. at 530.

    Third, no evidence was adduced at trial demonstrating that "Press 1" scripts were actually used. For example, no witness—not even Plaintiff—testified that they received a "Press 1" call

---

Deposition of Justin Call ("Call Dep.") at 89:2–5, 11–19; Apr. 11 Tr. at 324:12–15 (S. Gidley testimony) ("Q: Do you know how many people received this voice mail? A: I don't. Q: How would you figure that out? A: I wouldn't be able to.").

[54] Trial Exh. 37, Gidley Decl. ¶ 4 ("It is likely that POM was used for these ASR campaigns as well, and a voice recording ***may*** have been used.") (emphasis added); Apr. 11 Tr. at 325:2–5 (S. Gidley testimony) ("But again, those calls, just because the number was on the spreadsheet, then it makes an assumption that it was uploaded into the Progressive Outreach Manager and not dialed manually by a call center agent."), 328:16–329:16 (explaining that certain calls were likely manually dialed).

[55] Trial Exh. 37, Gidley Decl. ¶ 4.

[56] *See id.*; *see also* Apr. 12 Tr. at 417:14–25, 427:8–16 (S. Davis testimony) (admitting that Mr. Gidley's declaration did not state that other dispositions listed meant that a message was played).

[57] Apr. 3 Tr. at 102:9–12 ("Mr. Jacobson, I don't understand. Can you explain to me why plaintiff did not, either through a request for admission or an interrogatory, learn in discovery whether or not ViSalus used these recordings?").

DEFENDANT'S MOTION TO
                                                 DECERTIFY THE CLASS

from ViSalus and engaged in a conversation similar to that which is contained in the scripts.[58] Indeed, the scripts were dated January 2016, around the time the outbound team was dissolved and ViSalus ceased placing any prerecorded calls through POM. Therefore, it is more likely than not that the scripts were never used and *a fortiori* could not be common proof that "Press 1" messages were sent to any class member.

    <u>Finally</u>, even if Plaintiff successfully proved that class members received a call using a prerecorded message, **Plaintiff failed to offer any common evidence demonstrating that any class member *actually heard* a prerecorded message**. Instead, Plaintiff contended that the "answering machine" disposition code on the POM contact lists was evidence that a prerecorded message was received and "heard." But no testimony was offered that any answering machines of class members actually recorded a voice message or that a message was left if an answering machine picked up. Individualized inquiries are necessary to determine if prerecorded messages were actually heard by absent class members. Determining whether a class member answered the phone, heard a prerecorded message, and/or whether a message may have been left on an answering machine will result in individualized adjudications requiring live testimony and phone records, as demonstrated by the trial of Plaintiff's individual claim.

    In sum, Plaintiff failed to adduce any class-wide proof on whether telemarketing prerecorded messages were sent to absent class members and whether they were actually played and heard. Plaintiff asked the jury to assume these as "fact," but assumptions do not suffice to satisfy an essential element of Plaintiff's class claim for which she bears the burden of proof.[59] Since Plaintiff did not prove liability on a class-wide basis and individual issues predominate, decertification is warranted. *See, e.g., Marlo*, 251 F.R.D. at 488 (decertifying class due to the absence of predominance and superiority); *Kelley*, 2009 WL 413509, at *2–3, 6–8.

---

[58] Foster Decl. ¶ 17, Exh. 14 (Trial Exh. 44).

[59] Apr. 12 Tr. at 536:21 (Plaintiff's counsel directing jurors to "use [their] common sense").

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

### 3. Evidence at Trial Demonstrated That Individual Inquiries Predominate on Whether Absent Class Members Suffered Any Harm

ViSalus did not dispute the lack of "prior express written consent," as defined by the TCPA,[60] at trial.  However, that is not the same as saying that ViSalus did not have consent to make calls.  Indeed, in many instances it did.  It only contacted promoters and customers with whom it had a business relationship (and did not purchase a list of leads or engage in "cold calling").  These promoters and customers voluntarily provided their telephone numbers in writing during enrollment and some expressly requested to be contacted by telephone for marketing purposes.  Thus, another individualized issue is that some class members consented to, and expected to receive, telemarketing calls from ViSalus and thus could not have been injured or harmed.

Trial testimony established that promoters and customers sign up for ViSalus online or via paper application and the process has the "same information, same steps."[61]  Under "Communication Preferences," ViSalus requested telephone information and preferences on how "to receive ViSalus News and Updates" or "communications from ViSalus regarding special discounts and promotions."  Promoters and customers opted in to receive these communications via "phone," among other options.  The following is a screenshot of a promoter application identified by Plaintiff at trial, followed by a sample customer application:[62]

---

[60] 47 C.F.R. § 64.1200(f)(8); *see also* Dkt. 283, Final Jury Instructions at Instruction No. 20 ("Prior Express Written Consent Not at Issue").

[61] Apr. 11 Tr. at 279:1–14 (J. Laun testimony); Apr. 11 Tr. at 317:25–318:5, 17–20 (S. Gidley testimony) (online enrollment process for promoters "similar" and information customer submits is "essentially" the same); *see also* Dkt. 271-1, Joint Stip. of Facts ¶¶ 6–7.

[62] Foster Decl. ¶ 18, Exh. 15 (Trial Exh. 26 (herein "Trial Exh. 26")).  *See also id.* at ¶ 9, Exh. 6 (Trial Exhs. 8, 11, 13, 15, 17, 19, 20, 22, 24, and 27 ) (promoter applications), ¶ 22, Exh. 19 (customer applications).

DEFENDANT'S MOTION TO DECERTIFY THE CLASS

**Communication Preferences:**

Home Phone #: _____   Mobile Phone #:_____

Mobile Phone Provider: Required for ViSalus Mobile Updates (SMS)_____

E-mail Address: _____

Receive ViSalus News & Updates via: Check at least one

☐ Phone    ☐ Email    ☐ Mobile Text Message (SMS)    ☐ None

**CUSTOMER SHIPPING INFORMATION:**

Last Name: _____   First Name: _____

Home Phone # _____   Mobile Phone #: _____

E-mail Address: _____

☐ *YES, I would like to receive communications from ViSalus regarding special discounts and promotions via: *Check at least one*
☐ Phone   ☐ Email   ☐ Mobile Text Message (SMS)   ☐ None

Plaintiff testified that she signed up as a promoter for ViSalus by filling out a promoter application online.[63]  She voluntarily provided her phone number, but testified that she did *not* check the "phone" box denoting her desire to receive telemarketing calls.[64]  Plaintiff's decision not to opt-in to telemarketing calls does not provide class-wide proof that absent class members did the same.  Whether each class member consented, expected, and/or desired telemarketing calls from ViSalus is an individualized inquiry, dependent upon each class member's relationship with ViSalus[65] and their stated communication preferences.  Without a common answer to the question of whether class members consented to telemarketing calls, it cannot be determined whether class members sustained an injury, and thus can recover under the TCPA.

---

[63] Apr. 11 Tr. at 214:21–215:3 (L. Wakefield testimony) & Trial Exh. 26.

[64] Apr. 11 Tr. at 215:6–10, 217:1–23 (L. Wakefield testimony).

[65] Also relevant would be any verbal conversations that may have occurred during the enrollment process between promoters and new promoters and/or customers regarding their communication preferences and expected communications from ViSalus.  It is common in a multi-level marketing company for enrollments to occur at live networking events.  *See* Apr. 11 Tr. at 278:9–17, 279:1–14 (J. Laun testimony) (testifying that the "vast majority [of sales] is person-to-person network marketing" and "a promoter may print [an enrollment application] out and have somebody sign it and fill it out in person and then send that to our corporate office"); Foster Decl. ¶ 9, Exh. 6 (Trial Exh. 15).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

The lack of technical disclosures for "prior express written consent" "does not make the calls unsolicited." *Legg v. PTZ Insurance*, 321 F.R.D. 572, 577 (N.D. Ill. 2017). Nor does it mean that the calls were made without consent. "If the class members agreed to receive the calls, they lack a 'genuine controversy'" and cannot recover under the TCPA. *Id.* (citing *Messner v. NorthShore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012)); *see also Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540 (2016) (requiring a concrete injury to meet federal standing requirements); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017) (plaintiff provided consent to be contacted by voluntarily providing his phone number) (citing *In re GroupMe, Inc./Skype Commc'ns S.A.R.L.* Petition for Expedited Declaratory Ruling, 29 F.C.C. Rcd. 3442, 3443 (Mar. 27, 2014) ("Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications.")).

Class certification is not appropriate where some members of the class may not have been injured. *See Sandoval v. Pharmacare US, Inc.*, No. 15-CV-0120-H-JLB, 2016 WL 3554919 (S.D. Cal. June 10, 2016) (denying motion for class certification where class included individuals who may have no cognizable injury); *Legg*, 321 F.R.D. at 577 (denying class certification because "[a]s defendants point out, [] if [a class member] has expressly agreed and expected to receive calls from defendant, and did receive those calls, the [class member] has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033–35 (8th Cir. 2010) (permitting a single injured plaintiff to represent a class of individuals who may not have been harmed "is inconsistent with the doctrine of standing" and "a class cannot be certified if it contains members that lack standing") (internal quotations and citations omitted). *See also Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 WL 835339, at *9 (N.D. Ill. Feb. 13, 2018) (motion to decertify granted, stating that "defendant does not need to prove consent to decertify the class. It just needs to show that proving consent requires individualized analysis such that the class does not meet the predominance requirement"); *Selby v. LVNV Funding, LLC*, No. 13cv1383-BAS(BLM), 2016 WL 6677928, at *4 (S.D. Cal. June 22, 2016) (predominance requirement not satisfied where

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

"individualized inquiries will be necessary to determine whether particular class members gave prior express consent"); *Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), No.: 15cv2342-DMS (DHB), 2017 WL 1155350, at *6 (S.D. Cal. Mar. 28, 2017) (predominance not satisfied where it would need to be determined whether each class member "had previously provided consent to be called").

Plaintiff failed to prove that all class members did not request to receive telemarketing calls from ViSalus, and therefore, that each member of the class was injured or harmed.  It is clear that common proof on this question would be an **impossible feat** given the various communication preferences.  For this additional reason, individual issues predominate and decertification is necessary.

> **D.**    <u>**Trial Demonstrated That the Class Is Neither Manageable Nor Superior**</u>

Rule 23(b)(3)(D) mandates that a court should consider the "likely difficulties in managing a class action" when evaluating whether class action treatment is superior to other methods of adjudications.  Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  The greater the number of individual issues to be litigated, the greater difficulties in managing the class.  *Marlo*, 251 F.R.D. at 487 (since "individual issues predominate in this case … a class action is not the superior method for litigating this matter") (citing *Abed v. A.H. Robins Co.*, 693 F.2d 847, 856 (9th Cir. 1982)).

Given the individualized nature of proof adduced at trial, and Plaintiff's failure to provide common proof on the class claims, it is apparent that a class action is neither manageable nor superior.  *See Burrell v. Crown Cent. Petrol., Inc.*, 197 F.R.D. 284, 291 (E.D. Tex. 2000) (class action device was not a superior method of resolution because plaintiffs would have to present evidence that each plaintiff suffered actual injury and the court would be forced "to engage in a highly individualized inquiry into the specific circumstances of each plaintiff's claims").  Thousands of mini-trials will be required to adjudicate numerous issues relating to Plaintiff's burden of proof as to the absent class members.  Since it was Plaintiff's burden to affirmatively

demonstrate superiority and she failed to do so, the class must be decertified. *See Wal-Mart Stores, Inc.*, 564 U.S. at 347–39.

The court in *Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014), faced a similar situation. There, the court refused to certify a class where it was difficult to determine which class members actually received the texts at issue. 297 F.R.D. at 473 ("[K]nowing which numbers were cellular numbers that were *sent* the Xbox Texts is far different from knowing which of those numbers *received* the Xbox Texts") (emphasis added). In this case, we know neither—we do not know which phone numbers are mobile versus landline and which numbers received and heard prerecorded messages. The court also found it "highly unlikely" that individuals would recall receiving the offending texts years earlier. The same is true here, where the calls were made at least four years ago. A class action cannot be superior to other methods of adjudication where, like here, "classwide litigation of common issues will" neither "reduce litigation costs" nor "promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Superiority is not satisfied for yet another reason—procedural fairness. A catastrophic damages award would destroy the company, along with the home-based businesses of thousands of promoters around the world. This would be patently unjust, especially in light of—at best—a mere technical violation of the law, the fact that absent class members voluntarily provided their phone numbers to ViSalus in the context of a business relationship, many members likely consented to receive telemarketing calls, and few members were likely harmed. "**[P]utting a company out of business…without proof of actual harm, is the type of undesirable result that…the Ninth Circuit warned against**." *Torossian v. Vitamin Shoppe Indus.*, No. 07-0523, 2007 WL 7648594, at *5 (C.D. Cal. Aug. 8, 2007) (denying certification) (emphasis added). *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234–35 (9th Cir. 1974) (potential damage awards that "shock the conscience" require denial of class certification); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211 (9th Cir. 1975) (certification should not "sacrific[e] procedural fairness or bring[] about other undesirable results") (quoting official commentary to Rule 23); *Wolin*, 617

F.3d at 1175–76 ("superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair"); *Serna v. Big A Drug Stores, Inc.*, No. SACV 07-0276, 2007 WL 7665762, at *6 (C.D. Cal. Oct. 9, 2007) (denying certification on procedural fairness grounds).

### E.     Trial Demonstrated That Plaintiff Cannot Demonstrate Commonality

The certified class also lacks commonality.  To satisfy the commonality requirement, Plaintiff must show that the class members suffered the "same injury."  *Wal-Mart*, 564 U.S. at 353 (citation and quotation marks omitted).  The claims of the class "must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. at 350.

Trial has shown that there are numerous questions of law and fact that are not common to the class.  There is no standardized conduct.  Rather, the class is one ginormous jambalaya, comprised of both customers and promoters, who are indisputably differently situated within the company.  These absent class members *may or may not* have been called with a prerecorded message.  If they were called with a prerecorded message, they *may or may not* have heard the message.  The calls *may or may not* have been made to telephone lines that qualify for protection under the TCPA.  The calls *may or may not* have been made with consent or by request.  The calls *may or may not* have had a telemarketing purpose.  **Plaintiff was unable to tie a single telephone script or audio recording to a specific campaign or class member.  Not even for herself.**  Plaintiff could not identify a single recording she received, testifying only that several audio messages played during trial "sounded similar."[66]  Moreover, she originally testified that she received live calls and then changed her testimony, claiming that all calls were prerecorded.[67]

---

[66] Apr. 11 Tr. at 229:12–22, 230:7–231:2 (L. Wakefield testimony).

[67] Apr. 11 Tr. at 258:12–259:4 (L. Wakefield testimony).  *See also* Foster Decl. ¶ 19, Exh. 16, Deposition of Lori Wakefield ("Wakefield Dep.") at 44:24–45:14, 61:4–8; Dkt. 271-1, Joint Stip. of Facts ¶ 28.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

In short, none of these fundamental issues can be resolved on a class-wide basis "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  This is ***not*** a case where a company sent out the **same** prerecorded message to the **same** phone lines with the **same** telephone script.  *Cf. Booth v. Appstack, Inc.*, C13-1533JLR, 2015 WL 1466247, at *8 (W.D. Wash. Mar. 30, 2015) (commonality based on "the use of the **same** predictive dialer to robocall and play the **same** **recorded message** to various cell phone numbers") (emphasis added); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 247 (N.D. Ill. 2014) (commonality in robocall class where class members "received the **same** calls…using the **same** artificial or prerecorded voice technology") (emphasis added).

Accordingly, the class should be decertified because commonality is lacking.[68]  *See Meyer v. Bebe Stores, Inc.*,  No. 14-CV-00267-YGR, 2016 WL 8933624, at *7–8 (N.D. Cal. Aug. 22, 2016) (denying certification on commonality grounds where the defendant's "evidence render[ed] the question of consent not one that can be answered on a classwide basis because it would require an individual assessment of what each customer was told"); *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, at *7 (M.D. Fla. Apr. 27, 2015) (the "ability to list some common questions does not satisfy commonality, because individualized proof will be required for each and every plaintiff, which defeats the purpose of class certification").

F.    <u>Trial Demonstrated That Plaintiff Has Not Established Numerosity</u>

Although there is no precise numerical threshold to class certification, the numerosity requirement is not satisfied when the number of class members cannot be estimated.  *See In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003) (numerosity "cannot be met where the Court

---

[68] Notably, the Court declined to certify the other proposed classes on commonality grounds. For example, in concluding that the Do Not Call class did not satisfy commonality, the Court concluded, "The central issue for this Class is whether ViSalus continued to call a person after that person requested ViSalus to stop calling.  Although the issue can be resolved as to Plaintiff's individual claim, there is not any common evidence that certain individuals made such a request, and, therefore, this issue cannot be resolved on a class-wide basis due to the individual nature of the inquiry."  Dkt. 81, Class Cert. Order at 26.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

is unable to even estimate the number of class members.") (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) (finding numerosity is not met when "[b]ased on the information presented to the Court, the number of possible class members could range from as few as the class representatives . . . to millions"). Plaintiff must provide "reliable evidence" to show the number of potential class members. *Smith v. City of Corvallis*, No. 6:14-cv-01382, 2016 WL 3193190, at *10 (D. Or. June 6, 2016).

Here, Plaintiff offered no "reliable evidence" at trial establishing a reasonable estimate of the number of individuals who received <u>and</u> heard a telemarketing prerecorded message from ViSalus. As discussed, whether a class member received a call using a prerecorded message cannot be determined. Plaintiff has not offered an objective manner to determine who received a prerecorded call, let alone whether the class member heard the message. Further, Plaintiff produced no evidence on whether the phone lines were "residential" or mobile. Thus, Plaintiff has not carried her burden of demonstrating numerosity.[69] *See Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 333, 336 (D. Or. 1988) (requiring a "reasonable estimate" of the class size).

G.      **Trial Has Shown That Plaintiff's Claims Are Not Typical of the Class**

Plaintiff has not satisfied her burden of proving that her claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). To determine whether claims and defenses are typical, courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted). A plaintiff fails to demonstrate that her claim is typical of the class if proof of her claim does not resolve the class claims. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982). This is the case here.

---

[69] For these same reasons, the Court denied certification of the Do-Not-Call Class. Dkt. 81, Class Cert. Order at 24 (noting that Plaintiff did not "affirmatively establish by 'reliable evidence' that 'there are in fact sufficiently numerous parties' who have suffered a violation of the TCPA" and noting that "Plaintiff has merely shown a large category of individuals … who may have received calls from ViSalus").

DEFENDANT'S MOTION TO
                                                                                           DECERTIFY THE CLASS

First, Plaintiff is not typical of class members who were called on landlines primarily used for business or pure business lines.[70] While Plaintiff's phone line was deemed to be "residential," the class includes those who received calls on lines that are **not** covered by the TCPA.[71] Thus, Plaintiff's claim is not typical.

Second, Plaintiff is not typical of class members who did not receive telemarketing messages or a prerecorded message at all. As explained above, the evidence did not demonstrate that every class member actually received and heard a telemarketing prerecorded message from ViSalus. *Cf. Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015) (typicality satisfied where "unnamed members of class received the **same** prerecorded voice call from the **same** toll-free number traceable to Defendants").

Third, Plaintiff is not typical of class members who consented, requested, or desired to receive telemarketing calls. Plaintiff testified that she did *not* check the "phone" box to receive telemarketing calls when she signed up and further, she repeatedly told ViSalus to "quit calling."[72] No evidence was presented that the class is similarly situated. Plaintiff's claim that she never opted in to receive telemarketing calls and repeatedly requested not to be called is unique to her claim. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 158–59 (typicality is lacking where proof of the named plaintiff's claims does not resolve the class claims).

Fourth, Plaintiff cannot represent a class of promoters. Plaintiff conceded at trial that she "never sold" any ViSalus products.[73] In fact, she readily admitted, "I didn't try [to sell any ViSalus products]. I only wanted to help my mom," who was a ViSalus promoter looking to

---

[70] Similarly, Plaintiff cannot represent promoters that were registered with ViSalus as business entities (*e.g.* LLCs, corporations, etc.). Business entities generally do not have privacy interests under the TCPA. *See FCC v. AT&T Inc.,* 562 U.S. 397, 406 (2011) (businesses have no common law right to privacy); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09–cv–1814(FLW), 2010 WL 3946713, at *11 (D.N.J. Oct. 5, 2010) (the FCC has refused to adopt additional prohibitions on prerecorded calls to businesses under the TCPA). Also, any prerecorded call made to a number provided by a business entity would presumably be a business (not residential) line.

[71] *Supra* note 16.

[72] Apr. 11 Tr. at 217:16–23, 226:25–227:2, 257:21–258:7 (L. Wakefield testimony).

[73] Apr. 11 Tr. at 219:21–22 (L. Wakefield testimony).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

expand her network.[74]  She signed up and cancelled in the Spring of 2012 and, by her own

admission, never started her ViSalus business.[75]  Plaintiff's situation is unique.  *Hanon*, 976 F.2d

at 508 (typicality requirement "is to assure that the interest of the named representative aligns

with the interests of the class").

Fifth, Plaintiff cannot represent a class of customers.  Plaintiff admitted that she had a

"business relationship" with ViSalus.[76]  Promoters are independent business owners *selling*

product in connection with their home-based businesses while customers are consumers

*purchasing* product for personal or household use.[77]  Calls to promoters had a different purpose

(i.e., training, education, and to assist with their home-based businesses).[78]  For example, if there

is a promotion, ViSalus "would tell our promoters how to go communicate this offer to their

customers, their team, or also to their prospects or anybody they're looking to tell about ViSalus"

but "then we would tell our opted-in customers who receive communications from our company

about the sale but not how to go sell the sale."[79]

Sixth, Plaintiff cannot represent active or inactive (but not cancelled) promoters or

customers because she was neither.  Plaintiff testified that she cancelled her ViSalus business

more than two years before she was called.[80]  However, ViSalus' company policy was not to

contact promoters who cancelled their accounts and "[cancelled] accounts would have been

---

[74] Apr. 11 Tr. at 249:23–250:2 (L. Wakefield testimony) (emphasis added).

[75] Apr. 11 Tr. at 214:19–20, 220:5–10 (L. Wakefield testimony).

[76] Apr. 11 Tr. at 266:12–15, 267:21–268:5 (L. Wakefield testimony).

[77] Apr. 11 Tr. at 280:23–281:23, 282:2–3 (J. Laun testimony) (explaining the roles of promoters and customers), 317:4–14 (S. Gidley testimony); Dkt. 271-1, Joint Stip. of Facts ¶ 4; *see also* Laun Dep. at 26:17–27:4, 29:3–5,126:13–18.

[78] Apr. 11 Tr. at 281:8–10 (J. Laun testimony) ("[W]e, as a company, will sometimes communicate to our active opted-in customers with a different set of communication [than promoters].").

[79] Apr. 11 Tr. at 281:17–19.

[80] Apr. 11 Tr. at 220:5–10, 222:5–13 (L. Wakefield testimony); Foster Decl. ¶ 20, Exh. 17 (Trial Exhs. 6–7) (cancellation communications).

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

excluded" from any contact lists.[81]  As ViSalus' compliance officer explained, "it is not our policy to contact canceled promoter accounts" and if such accounts were included, "then someone made an error in judgment."[82]  Therefore, any prerecorded calls made to Plaintiff were an aberration and not typical of the class.

Seventh, there is a unique defense applicable to Plaintiff because she shared the phone number at issue with her husband.[83]  Because Plaintiff's husband was also a promoter with ViSalus,[84] it is entirely possible that any calls were intended for Plaintiff's husband, and not Plaintiff, and therefore Plaintiff lacks standing.  Notably, Plaintiff did not establish at trial that the calls were directed to her, rather than her husband.  In fact, the evidence suggests the opposite.  The KCC Class Notice List contains a single entry for "Bryon Wakefield" and **Plaintiff does not even appear on the class list**.[85]  Also, Plaintiff only appeared **once** in Plaintiff's class summary data (as did her husband Byron).[86]  The shared-use nature of the landline at issue presents issues and defenses unique to Plaintiff.  *Hanon*, 976 F.2d at 508 (typicality considers whether "a putative class representative is subject to unique defenses"); *Gibson & Co. Ins. Brokers v. Am. Equity Inv. Life Holding Co.*, 310 F. App'x 76 (9th Cir. 2009) ("not an abuse of discretion for a court to find that a class representative with a unique defense is not typical of the proposed class").

For these reasons, Plaintiff has failed to satisfy her burden of proving typicality.

---

[81] Gidley Dep. at 161:14–162:17; Laun Dep. at 81:4–15 ("When a promoter leaves, then they are removed and their Exigo preferences are changed or they're deactivated.  So if they …canceled the promotership, they would be removed from communication.").

[82] Gidley Dep. at 206:13–16.

[83] Apr. 11 Tr. at 201:9–12 (L. Eves testimony), 333:17–24 (S. Gidley testimony); *see also* Dkt. 271-1, Joint Stip. of Facts ¶ 23; Gidley Dep. at 174:5–7.

[84] Dkt. 271-1, Joint Stip. of Facts ¶ 20; Apr. 11 Tr. at 214:17–18 (L. Wakefield testimony).

[85] Foster Decl. ¶ 23; Apr. 12 at 430:18–431:1 (S. Davis testimony).

[86] Apr. 12 Tr. at 445:19–24 (S. Davis testimony) (admitting that Plaintiff's phone number only appears twice in class summary data, even though she claims to have been called five times), 452:7–12.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

### H.    Trial Has Shown That Plaintiff Is Not an Adequate Class Representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  It is well-established that "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."  *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007).

Plaintiff, a disgruntled promoter who cancelled her promoter business before it even began, is at odds with the class she purports to represent.  The class consists of customers and promoters who benefit from ViSalus' products.  The class also consists of promoters who depend on an income stream from their ViSalus business and/or whose livelihood depends on the company's continued operations.  A catastrophic damages award in this case would bankrupt the company and destroy the home-based businesses of thousands of ViSalus promoters around the world.  Thus, class member interest in the continued vitality of ViSalus outweighs any meager recovery they could possibly receive.  Furthermore, any prerecorded messages were sent by or on behalf of promoters to their downlines in order to promote and maintain their ViSalus businesses.  The interests of these promoters lie in direct conflict with Plaintiff's lawsuit.

Plaintiff's interests not only diverge from but are directly adverse to the class and thus, certification cannot stand.  *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337–38 (4th Cir. 1998) (reversing class certification after jury trial resulting in $390 million damages award where "ongoing business relationship [of current franchisees] with [defendant] and their interests in the long-term financial health of the company were imperiled by plaintiffs' efforts to wring a large damage award out of defendants" and the "interest of former franchisees in damages … reveal[ed] an obvious initial schism within the putative class"); *Pickett*, 209 F.3d at 1280 (reversing certification where the class included those who claimed to have been harmed by agreements that benefited some of the unnamed class members); *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (class certification inappropriate where "[s]ome of these [class members] undoubtedly derive great benefit" from the alleged harm); *Phillips v.*

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

*Klassen*, 502 F.2d 362, 366–67 (D.C. Cir. 1974) (upholding denial of class certification where "there will be divergent views" among the class "as to whether they have been injured or benefited"); *Auto Ventures, Inc. v. Moran*, No. No. 92-426, 1997 WL 306895 (S.D. Fla. 1997) (refusing to certify a class of Toyota dealers because "the class collapses into distinct groups of winners and losers"); *Alfred v. Pepperidge Farm, Inc.*, No. LA CV14–07086 JAK (RZx), 2016 WL 7655793, at *3 (C.D. Cal. Aug. 5, 2016) (finding a conflict between the named plaintiffs, who were former distributors, and class that included current distributors because the recovery sought could negatively impact the class); *Allied Orthopedic*, 247 F.R.D. at 177 (noting that a conflict between the named plaintiff and the class exists where "some plaintiffs claim to have been harmed by the same conduct that benefitted other members of the class").

## I.    <u>The Class Is Fail-Safe</u>

The class is impermissibly fail-safe.  It provides no objective means of identifying class members.  Class membership is contingent on individualized merit determinations, *i.e.*, whether (1) the class member received and heard a prerecorded message, (2) was harmed in light of consent previously provided, and (3) whether the message is "telemarketing."  In order to determine class membership, the court will need to answer these merit questions for each individual class member.  *Dixon v. Monterey Fin. Servs.*, *Inc.*, No. 15-cv-03298-MMC, 2016 WL 4426908, at *1 (N.D. Cal. Aug. 22, 2016) (class is fail-safe when "the class itself is defined in a way that precludes membership unless the liability of the defendant is established") (citing *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)).

This is yet another reason why the class should be decertified.  *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (affirming decertification on fail-safe grounds where class definition included only those "entitled to relief"); *Dixon*, 2016 WL 4426908, at *1 (class constituted impermissible fail-safe class because "whether a person is a member of the class is dependent on whether he/she prevails on the merits of the TCPA claim"); *Pepka v. Kohl's Dep't Stores, Inc.*, No. CV164293MWFFFMX, 2016 WL 8919460, at *3 (C.D. Cal. Dec. 21, 2016) (striking class definition where it would "require the Court to engage in an

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

improper merits determination to determine who is in the class"). *See also Brazil v. Dell, Inc.*, No. 07–1700, 2008 WL 2693629, at *7 (N.D. Cal. July 7, 2008) (class definition fail-safe because "to determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that [defendant] had falsely advertised").

## IV.    <u>CONCLUSION</u>

The Court anticipated issues with Plaintiff's burden of proof before trial began.  And now the jury has spoken.  "**<u>It cannot tell</u>**."  Plaintiff did not and could not prove her class claims. Rather than presenting common evidence applicable to all class members, Plaintiff presented evidence—including evidence in support of her own claim—demonstrating that individual issues predominate on several key, threshold issues, including whether calls were made to phone lines that trigger liability under the TCPA, whether the calls constitute "telemarketing," whether prerecorded messages were sent and actually heard by each class member, and whether class members were harmed in light of their communication preferences.  Similarly, the evidence demonstrates that Plaintiff did not meet her burden of establishing numerosity, that common questions exist, that she is typical of the class, or that she is an adequate class representative. A class action is neither superior nor manageable under these circumstances.

Since Plaintiff cannot satisfy the requirements for class certification, it is now clear that allowing the class to remain certified would result in manifest injustice to ViSalus and to absent class members.  If decertification is granted, class members would remain free to pursue any legitimate claims, without being saddled with Plaintiff's failure to produce evidence to protect their interests at trial.  Numerous courts have done so under similar circumstances.  The Court should do the same here.  For these reasons, ViSalus respectfully requests that the Court decertify the class.

DEFENDANT'S MOTION TO
DECERTIFY THE CLASS

Dated:    May 17, 2019                    MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ Christine M. Reilly
     CHRISTINE M. REILLY
     *Attorneys for Defendant*
     VISALUS, INC.

     John W. McGuinness (pro hac vice pending)
     jmcguinness@manatt.com
     MANATT, PHELPS & PHILLIPS LLP
     11355 W. Olympic Blvd
     Los Angeles, CA  90064
     Telephone: 310.312.4000
     Facsimile: 310.312.4224

     Joshua M. Sasaki, P.C., OSB No. 964182
     josh.sasaki@millernash.com
     Nicholas H. Pyle, OSB No. 165175
     nicholas.pyle@millernash.com
     MILLER NASH GRAHAM & DUNN LLP
     3400 U.S. Bancorp Tower
     111 S.W. Fifth Avenue
     Portland, Oregon 97204
     Telephone: 503.224.5858
     Facsimile: 503.224.0155

     John Maston O'Neal (pro hac vice)
     john.oneal@quarles.com
     Zachary S. Foster (pro hac vice)
     zachary.foster@quarles.com
     QUARLES & BRADY LLP
     Two N. Central Avenue
     One Renaissance Square
     Phoenix, Arizona 85004-2391
     Telephone: 602.229.5200
     Facsimile: 602.229.5690

DEFENDANT'S MOTION TO
                                       DECERTIFY THE CLASS