Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
Telephone: 310.312.4000
Facsimile: 310.312.4224

John Maston O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

*Attorneys for Defendant*
ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated, | No.  CV No. 3:15-cv-01857-SI |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DECERTIFY THE CLASS** |
| vs. | |
| VISALUS, INC., a Nevada corporation, | Oral Argument Requested |
| Defendant. | |

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................3

        A.      Plaintiff Attempts to Apply Irrelevant Standards to the Decertification
                Motion in Order to Avoid Her Burden of Proof ...........................................3

        B.      Plaintiff Has Not Carried Her Burden of Showing that Common Issues
                Predominate On Whether Calls Were Made to Phone Lines That Trigger
                Liability Under the TCPA ..........................................................................5

                1.      Plaintiff's Argument on JMOL Is Non-Responsive ..................................5

                2. Contrary to Plaintiff's Contention, the Enrollment Forms Do Not
                        Demonstrate Whether a Phone Number Is "Residential" or Mobile ..........6

                3. That Some Calls Were Likely Made to Business Lines Where There Is
                        No TCPA Liability Is Patently Obvious ....................................................7

                4.      Plaintiff's Law Firm Witness Did Not Resolve This Key Issue .................8

                5.      The Claims Process Cannot Cure Plaintiff's Failure to Meet Her
                        Burden of Proof on the Class Claims at Trial ...........................................10

        C.      Plaintiff Failed to Satisfy Her Burden of Proof that Common Questions
                Predominate Regarding Whether Each Call Was Initiated with a
                Prerecorded Message and Whether the Message Actually Played ......................13

        D.      Plaintiff Did Not Demonstrate the Predominance of Common Issues
                Regarding Whether Absent Class Members Suffered Harm ...............................17

        E.      Plaintiff Failed to Meet Her Burden at Trial of Demonstrating That a Class
                Action Is Manageable and Superior ..........................................................19

        F.      Plaintiff Offers No Reliable Evidence Establishing that the Class Is
                Sufficiently Numerous ............................................................................21

        G.      Plaintiff Has Not Proven That She is an Adequate Class Representative ............21

        H.      Plaintiff Has Not Met Her Burden of Proving That She Is Typical......................23

        I.      Plaintiff Fails to Rebut the Showing that the Class Is Fail-Safe.........................24

III.    CONCLUSION....................................................................................................26

DEFENDANT'S REPLY IN SUPPORT
                                                            MOTION TO DECERTIFY THE CLASS

## TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................10, 21, 22

*Ardente, Inc. v. Shanley*,
  No. C 07-4479 MHP, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010).........................................3

*Bank v. Indep. Energy Grp. LLC*,
  No. 12-cv-1369 (JG)(VMS), 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014)............................12

*Bank v. Indep. Energy Grp. LLC*,
  No. 12-cv-1369 (JG)(VMS), 2015 WL 4488070 (E.D.N.Y. July 23, 2015) .........................12

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ....................................22

*Bernard v. City of Palo Alto*,
  699 F.2d 1023 (9th Cir. 1983) ...............................................................................................23

*Blair v. CBE Group, Inc.*,
  309 F.R.D. 621 (S.D. Cal. 2015) .............................................................................................9

*Blevins v. Premium Merchant Funding One, LLC*,
  No. 2:18-cv-377, 2018 WL 5303973 (S.D. Ohio Oct. 25, 2018) ..........................................12

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
  816 F.3d 935 (7th Cir. 2016) .................................................................................................20

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................................................5, 10

*Cedeno v. Fieldstone Mortg. Co.*,
  No. 01 C 5110, 2002 WL 1592759 (N.D. Ill. July 15, 2002) ...............................................20

*Cimino v. Raymark Indus., Inc.*,
  151 F.3d 297 (5th Cir. 1998) .................................................................................................11

*Clauss v. Legend Sec., Inc.*,
  No. 4:13-cv-00381, 2014 WL 10007080 (S.D. Iowa Sept. 8, 2014)......................................12

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015)..................................................................................22

*Czuchaj v. Conair Corp.*,
  No. 13-CV-1901-BEN (RBB), 2016 WL 1240391 (S.D. Cal. Mar. 30, 2016) .......................4

*Del Valle v. Glob. Exch. Vacation Club*,
  320 F.R.D. 50 (C.D. Cal. 2017)..............................................................................................19

*Dixon v. Monterey Fin. Servs., Inc.*,
  No. 15-cv-03298-MMC, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016).........................24, 25

DEFENDANT'S REPLY IN SUPPORT<br/>MOTION TO DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
(continued)

Page

*East Texas Motor Freight Systems v. Rodriguez*,
431 U.S. 395 (1977)..................................................................................23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................................20

*Fisher v. MJ Christensen Jewelers*,
LLC, 215CV00358RFBNJK, 2018 WL 1175215 (D. Nev. Mar. 6, 2018) ...........24

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..................................................................................24

*Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*,
No. C11–1959RAJ, 2013 WL 5441598 (W.D. Wash. Sept. 24, 2013) .................11

*Grannan v. Alliant Law Grp., P.C.*,
No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) .....................22

*Gravestock v. Abilene Motor Express, Inc.*,
No. SACV14170JVSRNBX, 2018 WL 1620885 (C.D. Cal. Mar. 8, 2018)...........20

*Gutierrez v. Wells Fargo & Co.*,
No. C 07–05923 WHA, 2009 WL 1247040 (N.D. Cal. May 5, 2009)....................9

*Harmsen v. Smith*,
693 F.2d 932 (9th Cir. 1982) .....................................................................23

*Johnson v. Big Lots Stores, Inc.*,
561 F. Supp. 2d 567 (E.D. La. 2008) ............................................................3

*Johnson v. Yahoo! Inc.*,
No. 14 CV 2028, 2018 WL 835339, at *3 (E.D. Ill. Feb. 13, 2018) ..................20

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) ...............................................................25

*Krakauer v. Dish Network L.L.C.*,
No. 18-1518, 2019 WL 2292196 (4th Cir. May 30, 2019)................................9, 10

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) ...........................................................9, 18

*Legg v. PTZ Ins. Agency, Ltd.*,
321 F.R.D. 572 (N.D. Ill. 2017)..................................................................18

*Levya v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .....................................................................11

*Makaeff v. Trump Univ., LLC*,
309 F.R.D. 631 (S.D. Cal. 2015) ..................................................................4

*Marlo v. United Parcel Serv., Inc.*,
251 F.R.D. 476 (C.D. Cal. 2008)................................................................20

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
(continued)

Page

*Marlo v. United Parcel Serv.*,
   453 F. App'x 682 (9th Cir. 2011) ......................................................3

*Mazzei v. Money Store*,
   829 F.3d 260 (2d Cir. 2016)............................................... passim

*Melgar c. CSK Auto, Inc.*,
   681 F. App'x 605 (9th Cir. 2017) ..................................................25

*Melgar v. CSk Auto, Inc.*,
   No. 13-cv-03769-EMC, 2015 WL 9303977 (N.D. Cal. Dec. 22, 2015)................................25

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ..........................................................11

*Owens v. Starion Energy, Inc.*,
   No. 3:16-cv-01912 (VAB), 2017 WL 2838075 (D. Conn. Jun. 30, 2017) ............................12

*Penk v. Or. State Bd. of Higher Educ.*,
   99 F.R.D. 511 (D. Or. 1983).........................................................15

*Peterson v. Wells Fargo Bank, N.A.*,
   No. CV-99-6389 REC/SMS, 2000 WL 1225788 (E.D. Cal. Aug. 17, 2000)........................12

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ........................................................25

*Reed v. Town of Babylon*,
   914 F. Supp. 843 (E.D.N.Y. 1996) ...................................................5

*Robinson v. Metro-N. Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)....................................................11

*Rodriguez v. Ford Motor Credit Co.*,
   No. 01 C 8526, 2002 WL 655679 (N.D. Ill. Apr. 19, 2002)..................................20

*Rogers v. City of Kennewick*,
   No. CV-04-5028-EFS, 2007 WL 2055038 (E.D. Wash. July 13, 2007), *aff'd* 304 F. App'x 599 (9th Cir. 2008) ................................................11

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)...........................................................5

*Seijas v. Repub. of Argentina*,
   606 F. 3d. 53 (2d Cir. 2010).........................................................11

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ....................................................4

*Smith v. Microsoft Corp.*,
   297 F.R.D. 464 (S.D. Cal. 2014) ...................................................13

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Ybarra v. Dish Network, L.L.C.*,
    807 F.3d 635 (5th Cir. 2015) ................................................................................17

*Yeoman v. Ikea U.S.A. West, Inc.*,
    No. 11–cv–00701–BAS (BGS), 2014 WL 7176401 (S.D. Cal. Dec. 4, 2014), *vacated*
    *on other grounds by Medellin v. Ikea U.S.A. West, Inc.*, 672 F. App'x 782 (2017)..............3, 9

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(f)(8) ........................................................................................18

U.S. Const. Amendment VII................................................................................11, 12

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Civ. P. 50...............................................................................................1, 5

Fed. R. Civ. P. 59...................................................................................................4

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

## I.    **INTRODUCTION**

ViSalus' Motion to Decertify the Class ("Motion") began and ended with the jury's "**cannot tell**" verdict. Despite repeating this "refrain several times throughout its brief, often in bolded, underlined type"[1] and despite repeated inquiry from the Court on its significance,[2] remarkably, Plaintiff failed to address this primary argument. In fact, the phrase "we cannot tell" does not appear a single time in her nearly 30-page opposition. Plaintiff's silence on this key point speaks volumes.

The jury's "cannot tell" verdict is fatal to continued certification of the class. Plaintiff's contention that ViSalus' arguments are "irreconcilable with the jury's verdict" is ironic in light of the fact that she "plugged [her] ears" to the jury's "we cannot tell" verdict, while ViSalus devoted a substantial portion of its brief to explaining its significance.[3] While Plaintiff would like to pretend that this was not part of the jury's verdict, the significance of the jury's "cannot tell" verdict cannot be ignored. Indeed, it is a reflection of Plaintiff's failure to present common evidence on required elements of her class claims. This failure will result in tens, if not hundreds, of thousands of evidentiary hearings for absent class members to determine the nature and use of their phone lines. Not only is this a predominance issue, but it renders the class unmanageable and inferior to other methods of adjudication.

Instead, Plaintiff's opposition includes application of irrelevant standards under Federal Rules of Civil Procedure 50 (judgment as a matter of law), 59 (new trial), and 60 (reconsideration). But none of these standards apply on a motion for decertification. Moreover, Plaintiff repeatedly engages in a game of burden shifting. For example, Plaintiff argues that ViSalus did not "present evidence"[4] as to certain elements under Rule 23 when it was Plaintiff's

---

[1] Opp. at 8.

[2] *See* Dkt. 306, Def.'s Mot. to Decertify The Class ("Mot.") at 1, 2, 4–5, 9, 13.

[3] *See* Opp. at 1, 2. *See also id.* at 6 ("Several of ViSalus's arguments involve implicit challenges to the jury's findings.").

[4] Opp. at 1. *See also* Opp. at 2 ("[ViSalus] doesn't have any evidence to support its arguments about why the class certification was improper.").

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

own obligation to do so. Plaintiff's tactics are obvious. She knows she cannot meet her continuing burden on certification, so she improperly attempts to shift that burden to ViSalus. But Plaintiff cannot simply ignore key elements of this case or her burden of proof. Just like it was her burden to prove the class claims through common evidence at trial, it was her burden to demonstrate that all Rule 23 requirements continue to be met. That includes on a motion for decertification. But Plaintiff failed to do so. She failed to present common evidence on key issues supporting continued certification of the class. Conclusory statements that "common proof"[5] was presented do not make it so. The jury made this clear when it returned a verdict of "cannot tell."

Plaintiff's opposition is underwhelming and falls woefully short of satisfying Plaintiff's obligation of demonstrating that Rule 23's requirements have been met. To the contrary, numerous key arguments on how the trial demonstrated that Rule 23's requirements cannot be met remain intact and unanswered. These arguments include failure to prove commonality and the predominance of individual issues concerning whether (1) class members were called on "residential" or mobile lines, (2) whether class members received a telemarketing prerecorded message and the message actually played, and (3) whether absent class members were injured where the calls were solicited. These arguments also include failure to prove that the class is sufficiently numerous, that Plaintiff is both an adequate and typical class representative, and that a class action is manageable and superior. For all these reasons, ViSalus' motion to decertify the class should be granted.

Finally, while not addressed in this memorandum, it is important to note that on June 13, 2019, just days before this filing, the Federal Communications Commission granted ViSalus a retroactive waiver from the TCPA's prior express written consent requirements.[6] The FCC Order has far-reaching implications on various issues raised by the parties and further supports why the class should be decertified. However, given the timing of the Order's release, these

---

[5] Opp. at 1.

[6] Dkt. 321-1.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

arguments were not raised in ViSalus' decertification motion filed on May 17, 2019,[7] and

therefore will not be raised for the first time in reply. The implications of the FCC Order,

including as it relates decertification, will be the subject of further briefing to the Court.

## II.    ARGUMENT

### A.    Plaintiff Attempts to Apply Irrelevant Standards to the Decertification Motion in Order to Avoid Her Burden of Proof

In a thinly veiled attempt to shift the burden of proof to ViSalus, Plaintiff attempts to

apply three irrelevant legal standards to the motion for decertification.

First, she argues that ViSalus' arguments should be raised in a motion for judgment as a

matter of law ("JMOL"). Of course, certain arguments that demonstrate decertification is

warranted may overlap with arguments demonstrating why judgment should also be entered for

ViSalus as a matter of law.[8]  Such does not make the motion for decertification improper and

Plaintiff fails to cite any authority holding otherwise. Here, the motion before this Court is one

for decertification, not JMOL. Plaintiff cannot avoid legitimate arguments made in ViSalus'

decertification motion by attempting to pass them off as "more properly considered under the

rubric of a motion for judgment as a matter of law."[9]  This response is as good as no response at

all. *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10,

2010) (plaintiff who fails to respond to an argument concedes it through silence).

Second, Plaintiff argues that a motion to decertify is akin to a motion for reconsideration.

This argument has been routinely rejected and should be rejected here as well. *See, e.g.*, *Yeoman*

*v. Ikea U.S.A. West, Inc.*, No. 11–cv–00701–BAS (BGS), 2014 WL 7176401, at *5 (S.D. Cal.

---

[7] Dkt. 306.

[8] In fact, given that these arguments frequently overlap, it is common for defendants to bring a JMOL and a decertification motion at the same time. *See, e.g.*, *Mazzei v. Money Store*; 308 F.R.D. 92, 113 (S.D.N.Y. 2015), *aff'd* 829 F.3d 260 (2d Cir. 2016); *Marlo v. United Parcel Service*, 453 F. App'x 682, 683 (9th Cir. 2011); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 570–71 (E.D. La. 2008). Some courts have granted both motions simultaneously. *Mazzei*, 308 F.R.D. at 113. ViSalus intends to file a JMOL motion if and when appropriate.

[9] Opp. at 2.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

Dec. 4, 2014), *vacated on other grounds by Medellin v. Ikea U.S.A. West, Inc.*, 672 F. App'x 782, 783 (2017) ("[A] motion to decertify a class is not governed by the standard applied to motions for reconsideration, and does not depend on a showing of new law, new facts, or procedural developments after the original decision."); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 635 (S.D. Cal. 2015) ("A motion to decertify a class is not governed by the standard applied to motions for reconsideration."); *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2016 WL 1240391, at *1 (S.D. Cal. Mar. 30, 2016) (same); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) ("Plaintiffs fail to recognize, however, that this Court's usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context.").

Third, Plaintiff advocates for application of Federal Rule Civil Procedure 59, but ViSalus did not request a new trial in its Motion.[10]  According to Plaintiff, ViSalus "must meet the stringent standard for setting aside jury findings under Rule 59" and cites *Mazzei v. Money Store*, 829 F.3d 260, 269 (2d Cir. 2016).[11]  Plaintiff's reliance on *Mazzei* is misplaced.  Even assuming this same standard applies in the Ninth Circuit,[12] it clearly does not apply here where **the jury was unable to make a finding**.  At most, *Mazzei* only emphasizes that the Court must give deference to the jury's "cannot tell" verdict.

The standard for decertification is simple—it is the same standard applicable to the initial certification motion under Rule 23 and the burden of proof lies squarely with Plaintiff.[13]  Plaintiff's attempt to run from her evidentiary burden only shows that she cannot meet it.[14]

---

[10] *Id*. at 6.

[11] *Id*.

[12] Even if the standard applied, it is easily met here.  Plaintiff presented no evidence showing that calls were made to the mobile or "residential" lines of the class, except as to herself.  *See* Mot. at 9–14; *infra* section II.B.2; *Mazzei*, 308 F.R.D. at 112–13 (jury verdict in favor of class claims legally insufficient based on lack of classwide evidence); *Mazzei*, 829 F.3d at 270 (decertification proper where "[h]aving found the evidence legally insufficient, the [district] court *a fortiori* found that the jury's finding was at least 'seriously erroneous'").

[13] *See* Mot. at 5–6.

[14] Plaintiff also argues that ViSalus presented "no evidence" at trial.  Opp. at 1 ("[A]nd 'no evidence' is precisely what ViSalus offered [at trial]."); at 11 ("ViSalus presented no contrary

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

**B.    Plaintiff Has Not Carried Her Burden of Showing that Common Issues Predominate On Whether Calls Were Made to Phone Lines That Trigger Liability Under the TCPA**

**1.    Plaintiff's Argument on JMOL Is Non-Responsive**

Careful to avoid uttering the jury's words that it "cannot tell" which calls were made "residential" or mobile lines, Plaintiff first contends that ViSalus' argument fails because this "is a JMOL argument."[15]  Because Plaintiff failed to provide common evidence to satisfy her burden of proof on the class claims, this is also grounds to enter judgment for ViSalus as a matter of law. That similar deficiencies in Plaintiff's classwide claim can support the granting of both motions is by no means unusual or improper.  *See Mazzei*, 308 F.R.D. at 109–13 (same reasons warranting decertification post-trial also warrant granting defendant's Rule 50(b) motion); *Reed v. Town of Babylon*, 914 F. Supp. 843, 849 (E.D.N.Y. 1996) (partially decertifying class due to "complete lack of evidence"); *Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590, 596 (2d Cir. 1986) (affirming decertification after trial where evidence did not support the existence of a class).  Plaintiff concedes as much.[16]

What ViSalus argued, with respect to decertification, was simple.  Plaintiff did not provide common, classwide evidence that calls were made to "residential" lines of any class member.  She did not provide common, classwide evidence that calls were made to mobile phones—no evidence was presented whatsoever that any class member was called on a mobile phone.  In fact, "[P]laintiff presented no evidence about [the phone lines] of any class member other than [herself]."  *Mazzei*, 308 F.R.D. at 112.  That is why the jury responded that "we

---

evidence."); at 14-15 (same), at 21 ("ViSalus presented no evidence.").  ViSalus did in fact present evidence at trial, but it was not ViSalus' burden to do so.  That burden lied with Plaintiff. *See* Dkt. 283, Final Jury Instructions, Nos. 16 & 17; *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("And if the case proceeds past the certification stage, the plaintiff class must carry the burden of proving every element of its claims to prevail on the merits.").

[15] Opp. at 8.

[16] *See* Opp. at 15 (stating that evidence "is not only substantial evidence sufficient to support the jury's verdict, but it is ample evidence to support the continued appropriateness of class certification").

DEFENDANT'S REPLY IN SUPPORT MOTION TO DECERTIFY THE CLASS

cannot tell." This is significant because it is impossible to determine whether any of the calls (other than to Ms. Wakefield) were made to phone lines that trigger liability under the TCPA. If calls were made to business landlines (*i.e.*, phone lines that do not qualify as "residential" under the statute), then a violation of the TCPA could not have occurred. Given this lack of common proof, evidentiary hearings are now required for each class member, of which there are hundreds of thousands.

So, like in *Mazzei*, while it was theoretically possible for Plaintiff to have presented classwide proof on whether phone calls were made to telephone lines that trigger liability under the TCPA, it is clear that Plaintiff never presented that evidence at trial. Moreover, just like in *Mazzei*, Plaintiff fails to explain how individual factual issues with respect to this issue would not predominate over classwide issues. *See Mazzei*, 308 F.R.D. at 110. Given that there are purportedly nearly a million class members who received 1.85 million calls, individual factual inquiries plainly predominate. *Id.* at 112 (decertifying class because "[a]t trial, the plaintiff failed to adduce any evidence to support [a] premise [as to the class claims]. It is apparent, after trial, that the Rule 23 requirements are 'not in fact met.'") (citation omitted).

### 2. Contrary to Plaintiff's Contention, the Enrollment Forms Do Not Demonstrate Whether a Phone Number Is "Residential" or Mobile

Next, Plaintiff counters that evidence at trial demonstrated that class members were called on lines that qualified as "residential" or mobile.[17] In support of this argument, she points to certain ViSalus enrollment forms which asked for "home phone" or "mobile phone."[18] Further, Plaintiff's witness (an employee of Edelson PC), Shawn Davis, testified that he removed obvious business names from the class summary data.[19] What remains—Plaintiff argues—are mobile numbers or "'home' numbers [that] were used primarily for personal calls and were not held out as business numbers."[20]

---

[17] Opp. at 9–11.

[18] *Id.* at 9.

[19] *Id.* at 10.

[20] *Id.* at 9.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

To begin, even assuming *arguendo* that Davis completely removed all business names from the class summary data (which ViSalus disputes), **Plaintiff presented no evidence at trial showing which numbers were mobile and which were "residential."** The enrollment applications alone do not demonstrate the type of phone line for each class member.[21] No evidence was presented tying any phone numbers for the class to the "home" or "mobile" fields on the applications. At best, a phone number in the "home" field *might* have signified a landline. But placement of a number in the "home" or "mobile" fields is not dispositive. It presumes that applicants fill out forms with precision, but it is well known that self-reporting is often unreliable.[22] Also, it would not address the phone type *at the date and time of the unlawful call*, which may have occurred years after enrollment. Further, it ignores the fact that telephone numbers are ported from mobile to landline and vice versa.

"Home phone" is not synonymous with "residential" in any event. "Home" phone may have reflected a home **business** line. It would not answer the pivotal question of what the "primary use" of the number was at the date and time of any unlawful call. Nothing in the enrollment forms inquired as to the various pieces of evidence (which consumed at least an hour of trial testimony for Ms. Wakefield) that would allow a factfinder to determine the "primary use" of the phone and thus, whether the number qualified as "residential." The only way to answer this threshold question is to examine each class member. Accordingly, Plaintiff's reliance on these forms is unavailing.

      **3.**    **That Some Calls Were Likely Made to Business Lines Where There Is No TCPA Liability Is Patently Obvious**

Plaintiff also argues that ViSalus "has not identified any reason to believe that many, or even any, of the calls the jury found to be unlawful were made to business lines."[23] She even goes so far as to argue that it is "irrelevant" that the jury could not specify which calls were made

---

[21] *See* Mot. at 9–10 & nn.19–20.

[22] *See, e.g., id.* at 19 n.52. *See also* Foster Decl. ¶ 8, Ex. 5 (Gidley Dep. at 130:6–23).

[23] Opp. at 10.

      DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

to mobile phones and which were made to residential lines.[24]  This argument fails outright.  It was Plaintiff's burden to prove that calls to the class were made to "residential" and not business lines.[25]  At trial, Plaintiff did not present any evidence on this issue except as to herself.  Plaintiff's argument should be disregarded for this reason alone.

In any event, it is highly reasonable to assume that some calls to class members were made to business lines.  ViSalus is multi-level marketing (MLM) business.  As a MLM company, ViSalus does not provide central offices or telephone lines for its promoters.  Promoters use their own phone lines and work from home.  Promoters who provided phone numbers during enrollment likely used these numbers to promote their home-based ViSalus businesses.[26]  Thus, there is an obvious and pervasive issue in this case concerning whether the calls at issue were made to business lines that do not implicate TCPA liability.  **This issue alone predominates given the lack of common evidence at trial.**  Plaintiff's position that common issues continue to predominate cannot be reconciled with the jury's "cannot tell" verdict.

### 4.    Plaintiff's Law Firm Witness Did Not Resolve This Key Issue

Likewise, Mr. Davis' testimony does not "put[] this argument to bed."[27]  The fact that Mr. Davis may have removed a small number of calls associated with obvious business names (*e.g.*, Inc. or LLC) is not probative of whether class members (the vast majority of whom did not enroll with corporate names) used their home phones primarily as business lines.  The only way to resolve this central question is through individualized inquiries directed to each class member.  For instance, Ms. Wakefield provided a "home" number on her enrollment application, but a trial was conducted—complete with witnesses and documentary evidence—so the jury could determine the "primary use" of her home line and whether it qualified as "residential" for TCPA

---

[24] Opp. at 11.

[25] Mot. at 6–7.  *See also* Dkt. 283, Final Jury Instructions, No. 16 (class TCPA claim).

[26] *See* Mot. at 23 n.65.  This issue is not limited to home-based ViSalus businesses.  Class members may have used their home lines for any number of home-based businesses.  Plaintiff, for example, ran a daycare business from her home. *See id.* at 11–12.

[27] Opp. at 10.

DEFENDANT'S REPLY IN SUPPORT
                                MOTION TO DECERTIFY THE CLASS

purposes.[28]  There was evidence at trial that Ms. Wakefield used her home phone in connection with her home daycare business, which the jury needed to weigh.

The jury may have been able to resolve the business versus "residential" question as to Ms. Wakefield, but that was only after the presentation of extensive trial evidence regarding her specific circumstances; this does not detract from the fact that the jury was incapable of resolving this question for the rest of the class.[29]  **The answer for Ms. Wakefield is not an answer for all.**[30]  *See Gutierrez v. Wells Fargo & Co.*, No. C 07–05923 WHA, 2009 WL 1247040, at *6 (N.D. Cal. May 5, 2009) ("A common misconception about class actions is that all counsel must do at trial is to prove the case for the class representative and then the case will be automatically proven for each class member, at least as to liability.  This is not so.").  Mini-trials to determine liability are required for each class member since Plaintiff did not present common evidence, such as expert testimony, that would have allowed the jury to make a finding.[31]  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) ("Common questions do not predominate if the resolution of an overarching common issue

---

[28] Dkt. 283, Final Jury Instructions, No. 17.

[29] Oddly, Plaintiff argues that if there is no evidence that any class member received an unlawful call, this "necessarily means it is common proof."  Opp. at 8.  This argument is unintelligible and nonsensical.  Ms. Wakefield's trial testimony only highlighted the predominance of key factual inquiries applicable to the absent class.

[30] Plaintiff's argument that "[c]lass action practice would be altered radically if the fact of a representative's testimony were considered evidence of individual issues" is "difficult to fathom."  Opp. at 10.  A hallmark of class actions is that issues with the named plaintiff's individual claim can demonstrate the predominance of individual issues.  *Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 628–31 (S.D. Cal. 2015) (individualized proof regarding the named plaintiffs' claims "illustrates the extensive factual inquiries required" to determine class liability).  Courts have decertified classes where the predominance of individual issues becomes apparent after trial of the named plaintiff's claim.  *E.g.*, *Mazzei*. 308 F.R.D. at 112; *Yeoman*, 2014 WL 7176401, at *6.

[31] Plaintiff argues that expert testimony was not necessary in this case, which is remarkable given her unsuccessful attempt to introduce expert testimony on the eve of trial.  Foster Supp. Decl., Exh. 2 [Apr. 11 Trial Tr. ("herein Apr. 11 Tr.")] at 139:5–14; 149:18–150:3; 391:11–392:3; 394:23–395:12 (excluding exhibits 36B and 36C due to lack of expert opinion).  Also noteworthy is that Plaintiff cites *Krakauer* in support of her position, but expert testimony was presented in that case.  *See* Opp. at 9 n.3.

DEFENDANT'S REPLY IN SUPPORT
                    MOTION TO DECERTIFY THE CLASS

breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings.").  To argue that Ms. Wakefield's testimony, as the class representative, is "unremarkable" is specious.[32]

### 5. The Claims Process Cannot Cure Plaintiff's Failure to Meet Her Burden of Proof on the Class Claims at Trial

Plaintiff half-heartedly argues that "should the Court desire more specificity, claiming class members can provide it themselves when making claims against the judgment" and "can easily swear to [whether they have a cell phone or a landline] without rendering the claims process particularly cumbersome."[33]  Plaintiff is wrong for several reasons.

<u>First</u>, as a preliminary matter, this is yet another variation to Plaintiff's improper burden-shifting strategy.  It was Plaintiff's burden at trial to prove liability on the class claims and continued viability of the class through common proof.  She failed to do both.  Plaintiff fails to cite any case holding that the claims process is an opportunity for absent class members to cure Plaintiff's failure at trial on central elements of her class claim.  If Plaintiff could simply resort to post-trial claims to remedy her evidentiary failures at trial, it would eviscerate her burden of proof, defy efficiency, and usurp the jury's essential fact-finding task.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (a class action is a superior method to resolve class claims in situations where it will "achieve economies of time, effort, and expense…without sacrificing procedural fairness or bringing about other undesirable results").

The claims process is reserved for ministerial issues, such as determining a class member's share of damages, not whether the defendant is liable in the first instance.[34]  *See Briseno*, 844 F.3d at 1131 (class members may "file claims for ***damages***" "***after a finding of***

---

[32] Opp. at 11.

[33] Opp. at 11–12.

[34] *Krakauer*, again cited by Plaintiff, actually supports ViSalus' position on this point.  *See* Opp. at 12.  There, "[t]he court left the question of whether particular names and addresses matched those numbers to the post-trial claims process."  *Krakauer v. Dish Network L.L.C.*, No. 18-1518, 2019 WL 2292196, at *10, n.3 (4th Cir. May 30, 2019).  This question is plainly ministerial, not whether liability existed in the first instance.

DEFENDANT'S REPLY IN SUPPORT MOTION TO DECERTIFY THE CLASS

*liability*") (emphasis added); *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) (the need for individualized ***damages*** determinations ***after liability has been adjudicated*** does not preclude certification); *see also* Fed. R. Civ. P. 23 Advisory Committee's Note to 1966 amendment (certification may be proper, "despite the need, ***if liability is found***, for separate determinations of the damages suffered by individuals within the class") (emphasis added).

    <u>Second</u>, leaving liability issues to the claims process would infringe ViSalus' right to a jury trial and would violate ViSalus' due process and constitutional rights.[35]  ViSalus would be forced to forego its right to have the jury decide whether Plaintiff established all elements of her class claim.  *See* U.S. Const. amend. VII (guaranteeing litigants the right to have a jury determine liability in suits "at common law" where the value in controversy exceeds twenty dollars).  *See also Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 312 (5th Cir. 1998) ("[T]his Court has long held that the applicability of the Seventh Amendment is not altered simply because the case is Rule 23(b)(3) class action."); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) ("[O]nce the right to a jury trial attaches to a claim, it extends to all factual issues necessary to resolving that claim."), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The Seventh Amendment prevents Plaintiff from removing factual determinations from the jury's hands.  *Rogers v. City of Kennewick,* No. CV-04-5028-EFS, 2007 WL 2055038, at *5 (E.D. Wash. July 13, 2007), *aff'd* 304 F. App'x 599 (9th Cir. 2008) ("It [is] the jury's role to determine whether facts were presented to support the legal

---

[35] In addition, post-trial claim forms would prevent ViSalus from challenging the evidence and the veracity of claimants in violation of its Due Process rights.  *See Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, No. C11–1959RAJ, 2013 WL 5441598, at *2 (W.D. Wash. Sept. 24, 2013) (noting defendants' right to present individualized evidence as to each class member).  Any judgment would be significantly higher than ViSalus' true liability.  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015) (defendants have a due process right not to pay in excess of their liability); *Seijas v. Repub. of Argentina*, 606 F. 3d. 53, 58–59 (2d Cir. 2010) ("[S]uch an aggregate determination is likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants.  This kind of disconnect offends the Rules Enabling Act, which provides that federal rules of procedure, such as Rule 23, cannot be used to 'abridge, enlarge, or modify any substantive right.'") (citation omitted).

DEFENDANT'S REPLY IN SUPPORT
                         MOTION TO DECERTIFY THE CLASS

standards."); *Peterson v. Wells Fargo Bank, N.A.*, No. CV-99-6389 REC/SMS, 2000 WL
1225788, at *2 (E.D. Cal. Aug. 17, 2000) ("The Seventh Amendment guarantees defendants the
right to have [the] jury determine issues of fact.").

      <u>Third</u>, Plaintiff's suggestion that class members can merely be asked whether they
received calls from ViSalus on a landline or mobile phone is overly simplistic and falls woefully
short of the type of inquiry that would be required.  Numerous facts would need to be solicited to
determine the "primary use" of the phone line, including but not limited to, how the phone
number was registered, how it was used, how often it was used, whether and how the number
was publicized, and whether it was held out to the general public as a business number and if so,
in what manner.[36]  Further, various documentary evidence would need to be gathered in support
of these facts.  **Then a factfinder would need to weigh this evidence to make a legal**
**determination on liability**.[37]  Indeed, this is exactly what the jury did with respect to Ms.
Wakefield's individual claim after Ms. Wakefield presented live testimony and documentary
evidence to show that her phone line was "residential."  This inquiry is clearly not conducive to a
"yes" or "no" question on a claim form.  Thousands of mini-trials would need to be conducted
for absent class members.

      <u>Fourth</u>, it is "highly unlikely" that absent class members will remember receiving a call
from ViSalus nearly four years ago, let alone the kind of details that will be necessary to

---

[36] Dkt. 283, Final Jury Instructions, No. 17; Foster Supp. Decl., Ex. 2 (Apr. 11 Tr. at 243:17–
246:3, 246:17–249:8) (L. Wakefield testimony).  *See also Bank v. Indep. Energy Grp. LLC*, No.
12-cv-1369 (JG)(VMS), 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014) ("Whether
[plaintiff's] phone number is used for [his] business and thus falls outside the protections of the
TCPA cannot be resolved without some limited discovery."); *Owens v. Starion Energy, Inc.*, No.
3:16-cv-01912 (VAB), 2017 WL 2838075, at *4 (D. Conn. Jun. 30, 2017) (motion to dismiss
denied because discovery is needed to determine if number is a residential or business line);
*Blevins v. Premium Merchant Funding One, LLC*, No. 2:18-cv-377, 2018 WL 5303973, at *3
(S.D. Ohio Oct. 25, 2018) (same on motion for judgment on the pleadings).

[37] *Bank v. Indep. Energy Grp. LLC*, No. 12-cv-1369 (JG)(VMS), 2015 WL 4488070, at *2
(E.D.N.Y. July 23, 2015) (summary judgment granted for defendant on the basis that number
was not "residential" under the TCPA); *Clauss v. Legend Sec., Inc.*, No. 4:13-cv-00381, 2014
WL 10007080, at *3 (S.D. Iowa Sept. 8, 2014) (summary judgment denied due to genuine issue
of material fact regarding whether number is a business or residential line).

DEFENDANT'S REPLY IN SUPPORT
                                                                    MOTION TO DECERTIFY THE CLASS

determine individual liability.[38]  *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014) (refusing to certify class where it was "high unlikely" that members would remember receiving offending texts years earlier).  For instance, it would be impractical for class members to recall, from 2015, whether they received a (1) prerecorded (2) telemarketing message from ViSalus on their (3) landline or mobile phone, especially since many class members provided more than one phone number to ViSalus,[39] (4) whether the number called was landline or mobile at the date and time of the call, and (5) the various facts necessary to determine whether the number was "primarily used" for business or personal reasons at the time of the call.

The jury said "we cannot tell" how many calls ViSalus is liable for because they did not know which calls were made to phone lines triggering liability under the TCPA.  Plaintiff bore this burden of proof and failed to meet it.  Liability determinations are not appropriate in the claims process, and certainly cannot be done without violating ViSalus' constitutional rights. Since claim forms cannot provide a cure to Plaintiff's evidentiary failures at trial, individual issues predominate and the class should be decertified.

C.    **<u>Plaintiff Failed to Satisfy Her Burden of Proof that Common Questions Predominate Regarding Whether Each Call Was Initiated with a Prerecorded Message and Whether the Message Actually Played</u>**

Solely on the basis of false arguments, baseless speculation and unfounded conclusions, Plaintiff contends that individual questions about whether "the artificial or prerecorded voice played do not predominate."[40]  Plaintiff's contentions fail for numerous reasons.[41]

---

[38] Despite raising this argument in its Motion, Plaintiff fails to address it.  *See* Mot. at 26.

[39] Foster Supp. Decl., Ex. 2 (Apr. 11 Tr. 369:9–24) (S. Davis testimony) (explaining that some individuals listed two phone numbers).

[40] Opp. at 15.

[41] In response to ViSalus' argument that there is no common evidence that the prerecorded calls were "telemarketing," Plaintiff argues that additional audios not played at trial are "irrelevant" because they concerned declined credit cards.  Opp. at 13.  Plaintiff conveniently ignores the various audios concerning informational calls, such as calls regarding national and local training events.  *See* Mot. at 15.  Plaintiff's reliance on the Gidley Declaration is also misplaced.  The Declaration was submitted, pursuant to Court order under liberal notice requirements, to identify a potential universe of those who *may have received* prerecorded telemarketing calls.  It did not identify those who *actually received* such calls.  Moreover, a layman is indisputably not qualified

       DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

First, Plaintiff states that ViSalus "argues that no evidence of any kind exists to show that absent class members received phone calls featuring an artificial or prerecorded voice," and thus such an argument is "one properly raised in a motion for judgment as a matter of law or for a new trial."[42]  For the reasons discussed above in Section II.A, Plaintiff's argument equally fails here.  That Plaintiff did not offer for admission any common evidence that a prerecorded message was sent to each class member, and that the message actually began to play, is plainly relevant to a decertification analysis, and Plaintiff's failure to demonstrate otherwise and produce such evidence at trial is fatal to the class claim.

Second, Plaintiff argues that ViSalus stipulated pre-trial that the POM system was used for two types of calls, "Press 1" calls and "Voice Casting" calls, suggesting that these were the only types of campaigns for which ViSalus used POM.  Plaintiff selectively cites to certain testimony of Scott Gidley which Plaintiff says "corroborated that POM was used to deliver both "Press 1" and "Voice Casting" calls.[43]  Indeed, POM was used for these campaigns, but what Plaintiff failed to demonstrate is that these were the ***only*** campaigns for which ViSalus used POM.  The stipulated facts do not establish this.[44]  To the contrary, the evidence in the record actually suggests that ViSalus used POM for other campaigns.[45]

Third, Plaintiff contends that during the relevant timeframe, ViSalus had nine or fewer agents placing outbound calls and speculates that it thus "would simply be impossible for this handful of agents to be making thousands of live calls a day."[46]  Plaintiff then concludes that

---

to opine on the legal meaning of "telemarketing" under the TCPA.  *See* Mot. at 15 n.33.

[42] Opp. at 15.

[43] *Id*.

[44] Foster Supp. Decl., Exh. 1 [Apr. 3 Trial Tr. (herein "Apr. 3 Tr.")] 74:1–9 ("I'm not going to let you argue to the jury that [the stipulation] means or reads 'only two.'  If I hear you say that, No. 1, I will sustain an objection.").

[45] *See*, *e.g.*, Mot. at 20 n.54.  In addition, Mr. Gidley testified that the "Press 1" campaigns were used towards the end of ViSalus' use of POM, thus accounting for only a small percentage of the calls at issue.  *See* Foster Supp. Decl., Exh. 2 (Apr. 11 Tr. at 327:18–23) (S. Gidley testimony).

[46] Opp. at 15–16.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

ViSalus did not produce "a shred of evidence" of its live-agent strategy in its calling campaigns. Plaintiff is wrong on both accounts. Had Plaintiff included the trial testimony that immediately followed the cited-to testimony of Mr. Gidley above, the Court would have been reminded that Mr. Gidley also testified that "if a phone call is made through the [POM], the intention was in most of these situations or most of these phone numbers is that *if a live person picked up the phone, that they would be connected with an agent*."[47] Indeed, this and other trial evidence demonstrated that the POM system dialed the number, screened the calls to determine if a live person had answered and then only routed the call to a ViSalus representative if it confirmed a person was on the line.[48] This process freed up ViSalus representatives to focus on the small percentage of calls that actually connected to a live person. Since ViSalus had a small team, it was crucial that POM functioned in this manner, and representatives did not waste their time with calls that were disconnected or routed to an answering machine rather than a live person.[49]

Fourth, Plaintiff states that "the jury was informed of POM's ability to record the 'outcome' of a call through disposition codes, that Gidley identified disposition codes on which a prerecorded call did not play, that the POM Manual described how a call would be dispositioned and what certain disposition codes would mean, and that together "this is ample basis to conclude that a prerecorded voice played during all calls[.]"[50] As a preliminary matter, Plaintiff does not cite to any evidence whatsoever, except the POM Manual, in support of these conclusions. But, in any event, ViSalus' opening brief demonstrated the following: (i) the evidence adduced at trial, including the testimony of Plaintiff's own witness, Shawn Davis, demonstrated that only certain POM contact spreadsheets contained disposition codes;[51] (ii)

---

[47] Opp., Ex. A at 327:13–17 (emphasis added).

[48] Foster Supp. Decl., Exh. 2 (Apr. 11 Tr. 327:9–17) (S. Gidley testimony).

[49] Plaintiff argues that the jury "rejected" this "theory." Opp. at 16. However, the weight the jury accorded this evidence is irrelevant to a decertification motion, in which the Court is to decide whether the evidence at trial demonstrated that a class action is no longer appropriate. *See Penk v. Or. State Bd. of Higher Educ.*, 99 F.R.D. 511, 515–16 (D. Or. 1983).

[50] Opp. at 16.

[51] Mot. at 19 n.50.

DEFENDANT'S REPLY IN SUPPORT
                                                MOTION TO DECERTIFY THE CLASS

Plaintiff offered no testimony defining all of the various disposition codes, including whether a call was completed with a prerecorded message played;[52] (iii) there was no specific disposition code in the POM manual for prerecorded messages;[53] (iv) none of the disposition codes that did exist in the POM manual indicated whether a prerecorded message was used or played during a particular call; and (v) while Mr. Gidley identified certain disposition codes as ones in which "no voicemail could have played," even Plaintiff's own witness, Mr. Davis, admitted that Gidley did **not** testify that this list was exhaustive or that prerecorded messages were, in fact, used in connection with the other disposition codes.[54]  In fact, Mr. Gidley repeatedly made clear that he did not know whether prerecorded messages were sent.[55]

For example, there was no common proof adduced at trial—which, again, was Plaintiff's burden—that the "answer machine" disposition code, which is associated with the overwhelming majority of calls at issue, resulted in messages being played to class members.  Indeed, given Mr. Gidley's testimony that the purpose of using POM was to connect live promoters/customers to live agents,[56] it does not make sense for ViSalus to have left millions of recorded messages on answering machines.  Given the absence of common proof, individualized inquiries—like the 20-step process utilized at trial to prove calls to Plaintiff[57]—will be necessary to determine whether prerecorded messages were sent and played for calls to each absent class member.

Accordingly, the trial evidence demonstrated that there is no way to tell whether a prerecorded message was actually sent, whether a prerecorded message actually played, or whether a contact list was connected to any prerecorded message.[58]  Plaintiff offered no evidence

---

[52] *Id*. at 19.

[53] *Id*. at 19 n.51.

[54] *Id*. at 20 nn.55, 56.

[55] *See infra* n.87.  *See also* Mot. at 19 nn.51, 53; 20 at nn.54, 56.

[56] Opp., Ex. A at 327:13–17.  *See also* Mot. at 23 n.65; Foster Supp. Decl., Exh. 4 (Call Dep. at 41:3–21) (suggesting that ViSalus used live calls for winback campaigns).

[57] *See* Mot. at 16–18.

[58] *Id*. at 19 n.53.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

at trial or in its Opposition demonstrating otherwise.  Instead, Plaintiff curtly states that "[t]he jury could infer from the common evidence before it that the prerecorded voice played" on the calls at issue.[59]  Even assuming *arguendo* this is the relevant standard (which it is not on a motion to decertify the class), Plaintiff does not identify the "common evidence" to which she is referring, because none exists.  Plaintiff's baseless conclusions and unsupported assumptions are not proof of any kind, let alone common proof that a call was initiated with a prerecorded message that actually began to play.

Finally, ViSalus clearly and repeatedly stated in its opening brief that the evidence at trial demonstrated that individualized inquiries predominate on whether each call was initiated with a prerecorded message and whether the message **was actually played**.[60]  ViSalus' references to there being no evidence that the members of the class actually heard a prerecorded message was meant to refer to the fact that because there was no common proof adduced at trial on this point, the only way for Plaintiff to prove, as part of her individual claim, that a prerecorded message began to play was to examine her at trial on whether she recalled hearing such a message.[61]  Similarly, the only way to prove the class claims would be to examine each class member on whether he or she actually remembers hearing a specific prerecorded message.[62]  In any event, Plaintiff failed to adduce any generalized proof at trial that either prerecorded messages played or were heard by class members.

### D.   Plaintiff Did Not Demonstrate the Predominance of Common Issues Regarding Whether Absent Class Members Suffered Harm

Plaintiff misconstrues ViSalus' argument, attempting to make ViSalus' argument one about "prior express written consent."[63]  But ViSalus is not arguing that "prior express written

---

[59] Opp. at 16.

[60] *See*, *e.g.*, Mot. at 2, 14, 15 (citing *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA.  Instead, the prerecorded voice must 'speak' during the call.")).

[61] *Id.* at 16–18.

[62] *Id.* at 18–21.

[63] ViSalus stipulated that it did not have "prior express written consent," as defined by the

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

consent" is an individual issue precluding class certification. This same kind of bait-and-switch argument was attempted and rejected in *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017).

ViSalus' argument is that because certain class members voluntarily provided their telephone numbers to ViSalus and expressly requested to receive telemarketing calls through the selection of communication preferences on enrollment forms, these class members did not suffer harm and therefore lack standing. In other words, certain class members expressly agreed to receive telemarketing calls from ViSalus, "they just did not do so in [a] writing" that complies with the technical requirements of "prior express written consent." *Legg*, 321 F.R.D. at 577. If these members provided permission to receive telemarketing calls, it cannot seriously be disputed that such class members have no injury or standing. "[I]f [a class member] has expressly agreed and expected to receive calls from defendant, and did receive those calls, the [class member] has not been injured in any way, even if defendant[] technically violated a procedural requirement of the TCPA." *Id.* Since "the members of [] [the] class will need to present evidence [on their communication preferences] that varies from member to member" and "that question predominates over the common questions, certification should be denied."[64] *Id. See also Kristensen*, 12 F. Supp. 3d at 1306 ("An issue is individual if members of a proposed class will need to present evidence that varies from member to member.").

Plaintiff is also incorrect that it is ViSalus' burden to "adduce[] evidence."[65] As discussed above, the burden on decertification lies with Plaintiff. Also, "district courts in this Circuit have held that absent class members must have Article III standing." *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 60 (C.D. Cal. 2017) (citing cases). Regardless, evidence *is*

---

regulations. *See* 47 C.F.R. § 64.1200(f)(8). It has never taken the position that it did not have consent to make calls to its customers and promoters.

[64] Plaintiff's reliance on *Van Patten* misses the mark. Opp. at 18. The *Van Patten* case concerned an appeal of a summary judgment motion; it did not concern class certification issues. Nor did it involve a situation where class members agreed to receive marketing calls.

[65] Opp. at 18.

DEFENDANT'S REPLY IN SUPPORT
                                                  MOTION TO DECERTIFY THE CLASS

in the record, including the enrollment forms, which Plaintiff herself introduced at trial.[66]

At bottom, members of the class who desired and/or expected calls from ViSalus could not have been harmed and cannot recover in this action. The fact that this case is the only lawsuit filed over a span of several years despite 1.85 million allegedly unlawful calls speaks for itself. If Plaintiff was correct, then certainly ViSalus would have at least heard from the class member that purportedly received over 58,000 unlawful prerecorded messages.[67]

### E.    Plaintiff Failed to Meet Her Burden at Trial of Demonstrating That a Class Action Is Manageable and Superior

As demonstrated in ViSalus' opening brief, the Court would likely face numerous difficulties in managing the class claims, and thus Plaintiff has not established (nor could she establish) that class treatment is superior to other methods of adjudication.[68] In response, Plaintiff hardly addresses this point and merely contends that while the typical class action defendant might speculate about the ways in which a trial on the merits of the class claims would be unmanageable, here, there is no such need to speculate.[69]

On this narrow point, the parties are actually in accord. However, the reason speculation is unnecessary is not because the trial was already conducted, as Plaintiff contends, but rather because the amount of evidence adduced to prove Plaintiff's individual claim, which consisted of a few hours of testimony and dozens of pieces of evidence, demonstrated that to do the same for each class member (now required due to the lack of common proof) would result in thousands of mini-trials and would be unmanageable. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974) (the manageability question "encompasses the whole range of practical problems that may render *the class action format* inappropriate for a particular suit") (emphasis

---

[66] *See* Foster Supp. Decl., Exh. 2 (Apr. 11 Tr. 215:25–216:11; 282:14–22 (J. Laun testimony) (explaining that customers and promoters selected their communications preferences which ViSalus used to filter communications)). *See also* Mot. at 23 n.63.

[67] Foster Supp. Decl., Exh. 3 (Apr. 12 Tr. at 442:24–443:10 (S. Davis testimony) (testifying that there were 58,801 calls made to one phone number in the class)).

[68] Mot. at 25–27.

[69] Opp. at 24.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

added).  Indeed, trial here was only manageable because Plaintiff's evidence pertained exclusively to her individual claim and she did not present common proof as to the class claims.  If she had presented evidence sufficient to establish each class members' claim, as she was required to do, trial would have been completely unmanageable with thousands of evidentiary trials for each class member.

Where this sort of individualized evidence is necessary to prove class claims, like here, courts have routinely held class actions to be unmanageable and inferior.  *See*, *e.g.*, *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (since "individual issues predominate in this case … a class action is not the superior method for litigating this matter"); *Gravestock v. Abilene Motor Express, Inc.*, No. SACV14170JVSRNBX, 2018 WL 1620885, at *8 (C.D. Cal. Mar. 8, 2018) (class action unmanageable given the predominance of individual issues); *Cedeno v. Fieldstone Mortg. Co.*, No. 01 C 5110, 2002 WL 1592759, at *6 (N.D. Ill. July 15, 2002) (case was not amenable to class treatment where court would have to examine liability with regard to each potential class member individually); *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *5 (N.D. Ill. Apr. 19, 2002) (class action not manageable where case would require thousands of individual liability determinations).  Accordingly, Plaintiff has failed once again to meet her burden of proving that a class action is manageable and superior.[70]  *Johnson*, 2018 WL 835339, at *3 (granting decertification and highlighting manageability concerns).[71]

---

[70] Congress did not intend for TCPA claims to be brought as class actions.  *See* Opp. at 25. Rather, Congress intended TCPA claims to be brought in small claims court.  Dkt. 74 at 24–25. *See also Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 937 (7th Cir. 2016) (expressing doubt that "Congress intended the TCPA, which it crafted as a consumer-protection law, to become the means of targeting small businesses" and noting that "in practice, the TCPA is nailing the little guy, while plaintiffs' attorneys take a big cut").

[71] *Cf.* Opp. at 24 ("Indeed, Plaintiff has not located a single case in which a class was decertified post-trial on manageability grounds.").

DEFENDANT'S REPLY IN SUPPORT
                                              MOTION TO DECERTIFY THE CLASS

**F.    Plaintiff Offers No Reliable Evidence Establishing that the Class Is Sufficiently Numerous**

In her opposition, Plaintiff contends that it is reasonable to infer that the class includes at least 40 people because the jury "concluded that ViSalus placed around 1.85 million calls."[72]  Plaintiff bases this inference on the same "evidence" she says supports her contention that prerecorded calls were made to the class and the messages began to play.[73]  However, as demonstrated in the opening brief, and above in Sections II.B and II.C, this evidence failed to show that (i) calls were made using prerecorded messages, (ii) the messages were played to each class member, or (ii) the calls were made to "residential" or mobile phones.  Because Plaintiff offered no reliable or common evidence establishing a reasonable estimate of the number of these individuals—where the number of possible class members could range from as few as just the Plaintiff to almost a million—Plaintiff failed to carry her burden of proving numerosity.[74]  At best, "Plaintiff has merely shown a large category of individuals…who may have received calls from ViSalus," which the Court has already held to be insufficient.[75]

**G.    Plaintiff Has Not Proven That She is an Adequate Class Representative**

In the face of clear conflict between Plaintiff and the class she purports to represent, Plaintiff argues for a very narrow reading of adequacy under Rule 23.  Specifically, she argues that the adequacy requirement is limited to whether "Wakefield was forced to make strategic litigation choices that were adverse to the interests of any class members."[76]  Plaintiff cites only one case in support, *Amchem Prods., Inc.*, 521 U.S. at 626, but this case does not state or even suggest this standard.  To the contrary, it reiterates the same standard argued by ViSalus, namely, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  Plaintiff's

---

[72] Opp. at 20.

[73] Opp. at 20–21.

[74] *See* Mot. at 28–29.

[75] Dkt. 81, Class Certification Order, at 24.

[76] Opp. at 23.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

argument ignores the bevy of case law cited by ViSalus where courts have decertified class actions on the basis of conflicts of interest similar to the ones presented here.[77]  Moreover, the Supreme Court in *Amchem* held that the adequacy requirement had not been met.  *Id.* at 594–95.

Plaintiff also contends that since "the vast majority of the class has chosen not to opt out [this] is persuasive evidence that ViSalus's belief that the class possesses such loyalty to ViSalus is misplaced."[78]  Once again, this is an attempt by Plaintiff to shift the burden of proof.  Opt out procedures in the administration of class actions have no relevance to Plaintiff's burden of proving that she is an adequate class representative for Rule 23(a) purposes.  Furthermore, class members typically opt out of class actions to preserve their rights to bring individual claims, not as a form of protest against the litigation.

The reality is that most class members either do not know about class actions or are simply disinterested, even when they stand to be compensated.  In fact, most class members typically do not even submit a claim form to collect money owed.  *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (claims rate of only 1.9% for monetary relief); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *4, 7 (N.D. Cal. Jan. 24, 2012) (only 1.4% of class members filed a claim); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (noting that a TCPA claims rate of 7.7% is "higher than average").  It is not reasonable to infer class member inaction as tacit support or approval of the litigation.[79]

ViSalus' arguments remain unrebutted.  For the reasons stated in ViSalus' opening brief, Plaintiff cannot continue to represent a class where she is not only differently situated, but

---

[77] Mot. at 33–34.

[78] Opp. at 23.

[79] Plaintiff cites no cases in support of her argument that ViSalus waives arguments on decertification if not raised on certification.  *See* Opp. at 23–24.  This is not the standard.  *See* Mot., Section III.A; *see also supra* Section II.A.  In any event, this case is obviously in a different posture after trial of Plaintiff's individual claim than it was when ViSalus filed its opposition to class certification in March 2017.  Dkt. 74.

DEFENDANT'S REPLY IN SUPPORT
MOTION TO DECERTIFY THE CLASS

actually adverse to the class, and therefore inadequate to represent it.[80]

### H.    Plaintiff Has Not Met Her Burden of Proving That She Is Typical

In an attempt to rebut numerous demonstrations by ViSalus that Plaintiff is not typical for Rule 23(a) purposes, Plaintiff's opposition begins by attempting to shift the Court's focus, once again, to an irrelevant legal standard.  Specifically, Plaintiff argues that "a class need not be decertified if 'the proof at trial' demonstrates that the named plaintiff was not an appropriate representative of the class."[81]  In support, Plaintiff cites a string of cases, none of which are relevant to typicality.

For example, in *East Texas Motor Freight Systems v. Rodriguez*, 431 U.S. 395, 403-05 (1977), the Court addressed statutory standing and adequacy, not typicality.  Also, the Court *dismissed* the class claims on these grounds, which only further supports ViSalus' position that Plaintiff is not an adequate class representative.  431 U.S. at 405 ("named plaintiffs were not appropriate class representatives" based on the presence of a "conflict").  Similarly, *Harmsen v. Smith*, 693 F.2d 932, 941-43 (9th Cir. 1982) discusses Article III's "case or controversy" requirement with respect to the named plaintiff.  *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1026 (9th Cir. 1983) cites to *East Texas* and there, "[t]he district court's certification of the class was and remains unopposed."  Neither support Plaintiff's position.

Plaintiff's argument that she suffered the same injury as absent class members is also unpersuasive.[82]  Plaintiff misstates Scott Gidley's testimony.  Plaintiff contends that "Scott Gidley identified one of the calls Wakefield received as one included in a robocall campaign."[83]  This grossly mischaracterizes his testimony.  Mr. Gidley testified that the message he listened to would have been sent through POM "*if it was sent*."[84]  He did ***not*** state that

---

[80] Mot. at 33–34.

[81] Opp. at 21.

[82] Opp. at 22.

[83] *Id.*

[84] Foster Supp. Decl., Exh. 2 (Apr. 11 Tr. at 326:8–10 (S. Gidley testimony)).

DEFENDANT'S REPLY IN SUPPORT
                                                        MOTION TO DECERTIFY THE CLASS

Plaintiff received this message; indeed, it is clear from his testimony that he did not know whether this message was sent at all.

As set forth in detail in ViSalus' Motion, Plaintiff's claim is premised on facts that are unique to her.[85]  Plaintiff does not even address these specific arguments.  Because Plaintiff is differently situated than the class she purports to represent and suffered a unique harm, she has failed to establish typicality.  Proof of her claim does not resolve the class claims.[86]  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).

## I.  Plaintiff Fails to Rebut the Showing that the Class Is Fail-Safe

Plaintiff argues that ViSalus "waived" its fail-safe arguments, citing the standard on a motion for reconsideration.[87]  This argument fails because, as set forth more fully above, this standard does not apply to a motion for decertification.[88]

Alternatively, Plaintiff argues that her definition is not fail-safe because it does not "presuppose[] success on the merits."[89]  Plaintiff suggests that a class can only be failsafe if the class is defined using each and every element of the claim.  That is simply not true.  A class is fail-safe if a merits question must be answered for each class member.  *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 4426908, at *1 (N.D. Cal. Aug. 22, 2016) (class is fail-safe when "the class itself is defined in a way that precludes membership unless the liability of the defendant is established") (citing *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)).  The class, as defined, requires determination of whether ViSalus had

---

[85] Mot. at 29–32 (setting forth <u>seven</u> specific reasons why Plaintiff is not typical).

[86] Plaintiff's reliance on *Fisher v. MJ Christensen Jewelers*, LLC, 215CV00358RFBNJK, 2018 WL 1175215, at *5 (D. Nev. Mar. 6, 2018) is unpersuasive.  There, the defendant argued that since plaintiff's call was received on his cell phone, his claim was atypical of those who received calls on landlines.  But the defendant did not "provide[] specific arguments as to why, under the law, these claims would be differentiable."  *Id.*  Here, ViSalus explained that, at a minimum, Plaintiff would be atypical of class members called on business lines.  Mot. at 9–14, 30.  *See also supra* Section II.B.4.

[87] Opp. at 26.

[88] *See supra* Section II.A.

[89] Opp. at 26.

DEFENDANT'S REPLY IN SUPPORT
                    MOTION TO DECERTIFY THE CLASS

consent to call each class member.  Thus, class members who provided consent would drop out of the class and the class would consist only of those entitled to relief.  *See Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011) (affirming decertification on fail-safe grounds where class definition included only those "entitled to relief").

Plaintiff's reliance on *Melgar* is misplaced.  There, the class definition was not based on merit issues.  *See Melgar v. CSk Auto, Inc*., No. 13-cv-03769-EMC, 2015 WL 9303977, at *1 (N.D. Cal. Dec. 22, 2015) (defining class as "[a]ll current and former employees for Defendant who worked at least one shift as a Store Manager, Assistant [Store] Manager and/or Retail Service Specialist in the State of California at any time from June 26, 2009 through the conclusion of this action[.]").  Thus, the court held on appeal that the class had "to prove more facts to establish liability than are referenced in the class definition."  *Melgar c. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017).  Class membership was not tied to only those who were entitled to relief, as it is here.

Finally, while Plaintiff suggests that the Ninth Circuit does not foreclose the use of fail-safe classes, recent case law in this Circuit, as Plaintiff acknowledges, strongly suggests that they are disfavored.[90]  *See Kamar*, 375 F. App'x at 736 ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.  When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class.  That is palpably unfair to the defendant, and is also unmanageable[.]"); *Dixon*, 2016 WL 4426908, at *1 (striking failsafe class definition).  Plaintiff's argument fails for this reason as well.

---

[90] Opp. at 27 (citing *Kamar* and its holding that fail-safe classes are "palpably unfair").

## III.  **CONCLUSION**

The Court inquired about the significance of the jury's "**We cannot tell**" verdict.

ViSalus answered.  Plaintiff chose to ignore it.  Likewise, ViSalus explained that trial has made

clear that Rule 23 requirements are no longer satisfied.  Plaintiff instead chose to run from her

burden of proof.  For these reasons and for all those discussed in ViSalus' Motion and herein, the

class should be decertified and the Motion granted.


Dated:    June 17, 2019                    MANATT, PHELPS & PHILLIPS, LLP


                                           By:  /s/ Christine M. Reilly
                                                CHRISTINE M. REILLY
                                                *Attorneys for Defendant*
                                                VISALUS, INC.

                                                John W. McGuinness (pro hac vice)
                                                jmcguinness@manatt.com
                                                MANATT, PHELPS & PHILLIPS LLP
                                                11355 W. Olympic Blvd
                                                Los Angeles, CA  90064
                                                Telephone: 310.312.4000
                                                Facsimile: 310.312.4224

                                                Joshua M. Sasaki, P.C., OSB No. 964182
                                                josh.sasaki@millernash.com
                                                Nicholas H. Pyle, OSB No. 165175
                                                nicholas.pyle@millernash.com
                                                MILLER NASH GRAHAM & DUNN LLP
                                                3400 U.S. Bancorp Tower
                                                111 S.W. Fifth Avenue
                                                Portland, Oregon 97204
                                                Telephone: 503.224.5858
                                                Facsimile: 503.224.0155

                                                John Maston O'Neal (pro hac vice)
                                                john.oneal@quarles.com
                                                Zachary S. Foster (pro hac vice)
                                                zachary.foster@quarles.com
                                                QUARLES & BRADY LLP
                                                Two N. Central Avenue
                                                One Renaissance Square
                                                Phoenix, Arizona 85004-2391
                                                Telephone: 602.229.5200
                                                Facsimile: 602.229.5690

DEFENDANT'S REPLY IN SUPPORT
                                           MOTION TO DECERTIFY THE CLASS