Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
Telephone: 310.312.4000
Facsimile: 310.312.4224

John Maston O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

*Attorneys for Defendant*
ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated, | No.  CV No. 3:15-cv-01857-SI |
| Plaintiff, | **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DECERTIFY THE CLASS** |
| vs. | |
| VISALUS, INC., a Nevada corporation, | Oral Argument Requested |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL HISTORY ...................................................................................2

    A.    The FCC's New Telemarketing Regulations, Effective October 16, 2013, Require "Prior Express Written Consent" ............................................................2

    B.    The FCC Grants Visalus A Retroactive Waiver From The TCPA's Prior Express Written Consent Requirements ..................................................................2

III.  ARGUMENT .........................................................................................................3

    A.    The Class Must Be Decertified on the Threshold Basis that Plaintiff Lacks Standing ..............................................................................................................3

    B.    The Class Should be Decertified Because Individual Issues Predominate ............7

        1.    Key Threshold Issues Will Predominate in Determining Which Class Members Qualify for the Waiver .......................................................7

        2.    Thousands of Individual Issues Predominate on Consent ...........................8

    C.    Plaintiff's Claims are Not Typical of the Class Because She Lacks Standing and Proof of Her Claim Does Not Resolve the Class Claims.................16

    D.    Plaintiff Fails to Prove Numerosity ......................................................................17

    E.    Class Treatment is Not Superior or Manageable Given the Thousands of Mini-Trials That are Necessary to Determine Prior Express Consent..................17

IV.   CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baird v. Sabre Inc.*,
   995 F. Supp. 2d 1100, 1102–03 (C.D. Cal. 2014) ...................................................5

*Bais Yaakov of Spring Valley v. FCC*,
   852 F.3d 1078 (D.C. Cir. 2017) ...........................................................................13

*Bender v. Williamsport Area School Dist.*,
   475 U.S. 534 (1986) ............................................................................................12

*Brodsky v. HumanaDental Ins. Co.*,
   269 F. Supp. 3d 841, 846-48 (N.D. Ill. 2017) .............................................3, 13, 14

*Burrell v. Crown Cent. Petrol., Inc.*,
   197 F.R.D. 284 (E.D. Tex. 2000) ..........................................................................17

*Flores v. Supervalu, Inc.*,
   509 F. App'x 593 (9th Cir. 2013) ............................................................................7

*Gen. Tel. Cov. Of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................16

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2018) .............................................................................9, 16

*Huyge v. Gold's Gym Franchising, LLC*,
   No. CV-13-02378-PHX-SRB, 2014 WL 11515701 (D. Ariz. July 3,
   2014) ....................................................................................................................5

*In the Matter of Rules and Regulations Implementing the Tel. Consumer
   Protection Act of 1991*,
   27 F.C.C. Rcd. 1830 (2012) ....................................................................................7

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of
   1991*,
   7 FCC Rcd. 8752 (1992) .....................................................................................2, 5

*Jamison v. First Credit Services, Inc.*,
   290 F.R.D. 92 (N.D. Ill. 2013) ................................................................................9

*Katz v. Am. Honda Motor Co.*,
   No. 15-CV-4410-CBM-RAOX, 2017 WL 3084272 (C.D. Cal. June 29,
   2017) ...................................................................................................................15

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) .......................................................................4, 7, 16

*Min Sook Shin v. Umeken USA, Inc.*,
   —F. App'x—, No. 17-56767, 2019 WL 2338467 (9th Cir. June 3,
   2019) ..................................................................................................................4, 7

## TABLE OF AUTHORITIES
### (continued)

Page

*NEI Contracting & Engr., Inc. v. Hanson Aggregates, Inc.*,
12-CV-01685-BAS(JLB), 2016 WL 2610107, at *7 (S.D. Cal. May 6,
2016) ................................................................................................................7, 12

*NEI Contracting & Engr., Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
2019 WL 2361800 (9th Cir. June 5, 2019) ................................................4, 7, 12

*O'Shea v. Littleton*,
414 U.S. 488 (1974)...................................................................................4, 7

*Prado–Steiman v. Prado*,
221 F.3d 1266 (11th Cir. 2000) ........................................................................16

*Roberts v. PayPal, Inc.*,
621 F. App'x 478 (9th Cir. Oct. 29, 2015) ...........................................................5

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*,
No. 3:13-CV-2085, 2016 WL 75535 (N.D. Ohio Jan. 7, 2016) ...........................11, 13, 15, 16

*Sherman v. Yahoo! Inc.*,
No. 13CV0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sept. 23,
2015) ........................................................................................................15

*Simon v. Healthways*,
No. CV 14-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17,
2015) ...................................................................................................3, 13, 14

*Smith v. City of Corvallis*,
No. 6:14-cv-01382, 2016 WL 3193190 (D. Or. June 6, 2016)..............................17

*Smith v. Microsoft Corp.*,
297 F.R.D. 464 (S.D. Cal. 2014) ..................................................................9, 14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016).......................................................................................4

*Summer York v. Starbucks Corp.*,
No. CV0807919GAFPJWX, 2012 WL 12507388 (C.D. Cal. Nov. 1,
2012) .........................................................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................16, 17

## STATUTES

47 U.S.C. § 227(b)(1)(A).......................................................................................7

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(4)(iv) (2013) .......................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page**

47 C.F.R. § 64.1200(c)....................................................................................7

47 C.F.R. § 64.1200(f)(8) ...............................................................................2

47 C.F.R. § 64.1200(f)(8)(i)(A) ......................................................................7

47 C.F.R. § 64.1200(f)(14) .............................................................................7

*Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1831, ¶ 1 n.1 (2012) ...................................................................................2

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 31 FCC Rcd 11643 (Oct. 14, 2016).......................................3

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd 7961 (July 10, 2015) ...............................................................3

TCPA Order, 7 FCC Rcd at 8769, ¶ 31 ..........................................................7

TCPA Order, 64.1200(f)(8)(i)(A) ...................................................................2

TCPA Order, 64.1200(f)(8)(i)(B) ...................................................................2

## I.    INTRODUCTION

In its Motion to Decertify the Class, ViSalus demonstrated in no uncertain terms the numerous reasons why a class action is no longer appropriate in this case.  While those reasons are plainly sufficient to decertify the class, a major development occurred in this case on June 13, 2019, when the Federal Communications Commission ("FCC") issued an Order granting ViSalus a retroactive waiver from compliance with the technical requirements of "prior express written consent" under the Telephone Consumer Protection Act ("TCPA").  The FCC's Waiver Order only further demonstrates why this case cannot continue as a class action and why the class must be decertified.

Significantly, because Plaintiff herself falls squarely within the FCC Waiver Order and provided "prior express consent" to ViSalus, she has no claim, is not a member of the class and lacks standing.  Judge Brown did not have the benefit of the FCC Waiver Order when she certified the robocall class (and declined to certify two other putative classes) in June 2017.  If she had, the class would not have been certified in the first place.  Binding Ninth Circuit authority—as recent as this month—makes clear that under these circumstances, where a class representative has no claim she lacks standing, and the class must be decertified.  The Court should decertify the class on this basis alone and need not consider Rule 23 requirements.

However, even in the event that the Court elects to consider these requirements, it will be faced with a tsunami of individual issues that predominate in determining which class members qualify for the waiver and which members provided consent.  The individualized inquiries that will now be required for each class member are not only overwhelming but are innumerable.  For these same reasons, courts have decertified or refused to certify classes after defendants have been granted a retroactive waiver from the FCC.

These issues also demonstrate that Plaintiff is not a typical plaintiff.  After all, she is not even a member of the class she purports to represent.  Similarly, Plaintiff cannot establish numerosity, and the class is completely unmanageable and inferior to other methods of adjudication.  While ViSalus believes the answer was clear before, there can be no question now

that a class action is not appropriate.  Rather than deprive the class of a remedy, the class should be decertified, so that any aggrieved class member can file an individual claim for damages.

## II.    PROCEDURAL HISTORY

### A.    The FCC's New Telemarketing Regulations, Effective October 16, 2013, Require "Prior Express Written Consent"

In 2012, the FCC issued new regulations for telemarketing calls, including the use of prerecorded messages, to both residential landlines and mobile phones.  The new regulations went into effect on October 16, 2013.  As of that date, prerecorded telemarketing messages require "prior express written consent," as expressly defined by the TCPA.[1]

"Prior express written consent" under the new regulations requires, among other things, clear and conspicuous disclosures in an affirmative written agreement, including that (1) the consumer will receive calls that are telemarketing in nature; (2) that the call will be made "using an automatic telephone dialing system or an artificial or prerecorded voice"; and (3) that consent to the telemarketing agreement is not a condition of purchasing any property, goods or services.[2]

Before these new regulations took effect on October 16, 2013, prerecorded telemarketing messages to residential landlines and mobile phones only required "prior express consent," which meant the voluntary provision of a phone number to a company.[3]

### B.    The FCC Grants Visalus A Retroactive Waiver From The TCPA's Prior Express Written Consent Requirements

On September 14, 2017, ViSalus petitioned the FCC for a retroactive waiver of the prior express written consent requirements that went into effect on October 16, 2013.  On June 13,

---

[1] 47 C.F.R. § 64.1200(f)(8).

[2] *Id.* § 64.1200(f)(8)(i)(A)&(B).

[3] *See Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1831, ¶ 1 n.1 (2012) ("2012 TCPA Order"); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) ("1992 TCPA Order").  Prerecorded *informational* messages to mobile phones also required prior express consent before the rule change.

2019, the FCC granted ViSalus' petition ("FCC Waiver Order").[4]  In doing so, the FCC determined that ViSalus was similarly situated to previous petitioners to whom it had granted waivers[5] and that good cause existed to grant ViSalus a retroactive waiver.  The FCC determined that granting a waiver to ViSalus "would better serve the public interest than would application of the rule" and "special circumstances warrant a deviation from the general rule."[6]

In light of the FCC Waiver Order, ViSalus only needs to satisfy the lower, pre-October 16, 2013 standard of "prior express consent" for prerecorded telemarketing calls (1) made on or before October 7, 2015; (2) to customers or promoters who provided consent in writing, such as an enrollment application; (3) where consent was obtained prior to October 16, 2013.[7]  This means customers simply needed to provide a telephone number to Visalus to provide prior express consent.

## III.    <u>ARGUMENT</u>

### A.    <u>The Class Must Be Decertified on the Threshold Basis that Plaintiff Lacks Standing</u>

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2)

---

[4] FCC Order Granting ViSalus, Inc. and Bebe Stores, Inc.'s Petitions for Retroactive Waiver, CG Docket No. 02-278, 2019 WL 2490415 (June 13, 2019) ("FCC Waiver Order"); Dkt. 321.

[5] ViSalus is not the first petitioner to be granted such a waiver.  The FCC has granted waivers to several petitioners, recognizing that its prior orders did not make clear whether the more stringent level of consent was required for existing consumers who had provided consent in writing before the new regulations went into effect.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd 7961 (July 10, 2015) ("2015 Declaratory Ruling"); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 31 FCC Rcd 11643 (Oct. 14, 2016) ("2016 Declaratory Ruling").

[6] FCC Waiver Order, ¶ 12.

[7] To the extent Plaintiff contends, like she did in passing (*see* Dkt. 322, at 4 n.4), that a retroactive waiver from the FCC does not have any effect in a private cause of action, Plaintiff is wrong.  This argument has already been rejected by numerous courts.  *See, e.g.*, *Simon v. Healthways*, No. CV 14-08022-BRO (JCx), 2015 WL 10015953, at *7 (C.D. Cal. Dec. 17, 2015) (rejecting argument that waiver's effect is limited to FCC enforcement actions); *Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 846-48 (N.D. Ill. 2017) (rejecting argument that waiver "has no effect in a private TCPA action").

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citations omitted). In a class action, this standing inquiry focuses on the class representatives. *NEI Contracting & Engineering, Inc. v. Hanson Aggregates Pac. Sw.*,—F.3d—, No. 16-56498, 2019 WL 2361800, at *3 (9th Cir. June 5, 2019). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Id.* ( quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

This Circuit's precedent makes clear that where a plaintiff has no claim, she lacks standing to sue. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003) (class certification order "must be vacated" where named plaintiff lacked standing because she had no claim); *Min Sook Shin v. Umeken USA, Inc.*,—F. App'x—, No. 17-56767, 2019 WL 2338467, at *2 (9th Cir. June 3, 2019) ("Because the district court properly dismissed Shin's individual claims, Shin lacks standing to pursue class claims."). Here, Plaintiff lacks standing because she never had a claim against ViSalus.

Plaintiff Lori Wakefield enrolled with ViSalus as a promoter by filling out an online enrollment application in March 2012 (well before October 16, 2013).[8] As part of the enrollment process, Plaintiff voluntarily provided her telephone number by typing it into the phone number field and then submitting her application.[9] Plaintiff testified at trial, and the jury found, that she received prerecorded telemarketing calls from ViSalus in April 2015 (well before October 7, 2015).[10] As a result of the FCC Waiver Order, ViSalus did not need Plaintiff's "prior

---

[8] *See* Dkt. 306, ViSalus's Motion to Decertify Class ("Mot. to Decertify"), at n.75.

[9] *See* Declaration of Kristin E. Haule ("Haule Decl.") at ¶ 8, Ex. 1 (Apr. 11 Tr. at 216:20–217:5 (L. Wakefield testimony)).

[10] Mot. to Decertify at nn.38, 44; *see also* Dkt. 282 (Jury Verdict).

express *written* consent" to contact her by phone; it only needed "prior express consent."  Stated differently, ViSalus only needed to satisfy the lower standard of consent before the new regulations went into effect on October 16, 2013.

It is well-established that "prior express consent" under the TCPA means the voluntary provision of a phone number to a company.  *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) ("1992 TCPA Order") ("persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary"); *Id*. at 8769 ¶ 31 n.57 ("[T]he called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications."); *Id*. ¶ 31 ("Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached."); *see also Roberts v. PayPal, Inc.*, 621 F. App'x 478, 479 (9th Cir. Oct. 29, 2015) (plaintiff expressly consented to receive messages from PayPal when he provided PayPal with his cell phone number); *Huyge v. Gold's Gym Franchising, LLC*, No. CV-13-02378-PHX-SRB, 2014 WL 11515701, at *2–3 (D. Ariz. July 3, 2014) ("[T]he Court finds that Plaintiff gave his express consent to be contacted by providing his cellphone number on the Membership Agreement, and is therefore unable to state a claim under the TCPA."); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102–03 (C.D. Cal. 2014) ("Myriad federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the [TCPA].").

Prior express consent is easily satisfied here because Plaintiff voluntarily provided her telephone number to ViSalus when she submitted a promoter application.[11]  Because Plaintiff provided prior express consent to be called, she has no claim under the TCPA.[12]  *See* 47 U.S.C.

---

[11] Mot. to Decertify at n.44 ("Q: Did you provide either a home phone number to ViSalus or a mobile phone number? A: I gave them my home phone.").

[12] Plaintiff has argued that prior express consent must be for "marketing."  Dkt. 322 at 1–2.

§ 227(b)(1)(A) (providing that a TCPA action will not lie where the challenged call is made "with the prior express consent of the called party").  Put simply, Plaintiff lacks standing.  *See Lierboe*, 350 F.3d at 1022–23; *Min Sook Shin*, 2019 WL 2338467, at *2; *see also Flores v. Supervalu, Inc.*, 509 F. App'x 593, 594–95 (9th Cir. 2013) (named plaintiff did not have standing where she did not have a claim and was not a member of the class).

Since Plaintiff lacks standing on her individual claim, the class should be decertified. "[Ninth Circuit] precedent indicates that when a class is certified and the class representatives are subsequently found to lack standing, the class should be decertified and the case dismissed." *NEI Contracting*, 2019 WL 2361800, at *3.  The Ninth Circuit reiterated this long-standing principle just weeks ago in *NEI Contracting*.  NEI was a call recording case, where the district court initially certified a class based on evidence the plaintiff presented regarding the timing of the recorded conversations.  *Id.* at *2.  However, after certification, the defendant presented new evidence that certain customers had actual knowledge of the recording process and continued to call.  *Id.*  Based on this evidence, the district court concluded that the predominance requirement had not been satisfied, and decertified the class.  *Id.*  However, with respect to this order, the Ninth Circuit held that the "case presents a threshold question: whether a class must be decertified when the class representative is found to lack standing as to its individual claims." *Id.* at *3.

Answering in the affirmative, the Ninth Circuit held that "a class must be decertified when the class representatives are found to lack standing as to their individual claims." *Id.  See*

---

Plaintiff is mistaken.  The *new* telemarketing rules, effective October 16, 2013, require disclosure that calls will be telemarketing in nature.  47 C.F.R. § 64.1200(f)(8)(i)(A).  But the FCC expressly granted ViSalus a retroactive waiver from these disclosure requirements.  *See* FCC Waiver Order ¶¶ 1, 11, 13.  Also, Plaintiff incorrectly quotes from a portion of the FCC's 2012 Order that pertains to "telephone solicitations," which are relevant *only* to the Do Not Call provisions of the TCPA, not at issue here.  *See* 47 C.F.R. §§ 64.1200(c) & (f)(14).  In fact, it is the very next sentence of the FCC's Order that is pertinent—"The Commission has addressed prior express consent in other contexts, including **the provision of telephone numbers**…"  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 1830, 1833 (2012) (emphasis added) (citing 1992 TCPA Order, 7 FCC Rcd at 8769, ¶ 31) (prior express consent is the voluntary provision of a telephone number).

*also O'Shea*, 414 U.S. at 494.  Because the class representative lacked standing on its individual claims, the Ninth Circuit held that "the trial court did not abuse its discretion in decertifying the class" and affirmed the district court's decertification order.  *NEI Contracting*, 2019 WL 2361800, at *4.  *See also Lierboe*, 350 F.3d at 1022–23 (class certification order "must be vacated" where claim of named representative failed).  Where, as here, "[Plaintiff] never was a member of the class she was named to represent," the case **must** be dismissed.  *Lierboe*, 350 F.3d at 1023 (quotation omitted).

<u>**On this basis alone, the Court should decertify the class.**</u>  In fact, the Court need not analyze Rule 23(a) and (b)(3) requirements.  Because Plaintiff "has no [TCPA] claim, it is premature to assess the prerequisites of Rule 23(a) or the standards for compliance under Rule 23(b)(3)[.]  The issues of predominance, superiority, typicality, and other challenges to [Plaintiff]'s class representation need not be considered if [Plaintiff] is not in the subject class."  *Lierboe*, 350 F.3d at 1022.  Nonetheless, to the extent the Court considers Rule 23 requirements, they only further demonstrate why the class must be decertified.

> ## B.    <u>The Class Should be Decertified Because Individual Issues Predominate</u>

In ViSalus' Motion to Decertify, ViSalus explained the various individual issues that will predominate if the class is not decertified, including (1) was the class member called on a residential or mobile line, and if residential, was the line primarily used as a business line; (2) did the class member receive a prerecorded or "Press 1" message and did the message actually play; and (3) does the class member have standing.[13]

> ### 1.    Key Threshold Issues Will Predominate in Determining Which Class Members Qualify for the Waiver

In addition to the questions previously identified in ViSalus' decertification briefing, the FCC Order creates numerous additional threshold issues that predominate merely to determine which class members fall within the waiver provided by the FCC.  For example, for **each individual class member**, questions will include, without limitation: (1) what was the date and

---

[13] Mot. to Decertify at 7–25; Dkt. 323, Reply to Motion to Decertify at 5–9, 13–19.

time of the alleged prerecorded or "Press 1" message from several years ago; (2) for class members who provided more than one telephone number, which phone number received the call;[14] (3) was the call received before October 7, 2015; (4) did the class member submit an enrollment application to ViSalus before October 16, 2013; and (5) did the promoter or customer opt out before the alleged call.  Thus, determining whether the waiver may apply to each class member is wrought with individual issues.

### 2.    Thousands of Individual Issues Predominate on Consent

The issue of whether ViSalus obtained "prior express consent" alone raises a myriad of individualized issues based on variation in customer and promoter enrollment forms and communication preferences that may have been contained therein.  While ViSalus does not concede that these issues are relevant to a determination of consent—as the "prior express consent" standard under the TCPA is satisfied by the class members' voluntary provision of their phone numbers to ViSalus—Plaintiff has argued otherwise.[15] *But even assuming arguendo that these issues are relevant*, the class must still be decertified on the basis that innumerable individual inquiries on consent will predominate.

Additional individual questions related to consent include, without limitation: (6) did the class member enroll as a customer or a promoter; (7) was the enrollment online or via paper application; (8) which version of the enrollment application did the class member submit; (9) which communication preferences (if any) did the class member provide; (10) did the class member change their communication preferences after enrollment; and (11) if so, what communication changes did they make and were the changes made before the alleged call; (11) did the class member reenroll; and (12) if so, when, how and what application form, along with any communication preferences, was submitted for reenrollment.  Each of these individual

---

[14] Declaration of Scott Gidley ("Gidley Decl.") ¶ 8, Exs. 16, 20, 27, and 30.

[15] *See* Dkt. 322, Pl.'s Notice Regarding the FCC's Order on ViSalus' Petition for Waiver, at 3 ("ViSalus has no evidence that even a single class member checked the ["Receive ViSalus News & Updates by Phone" box], much less before October 2013.").

questions would need to be answered for each class member based on their individual circumstances, as explained below.

First, one would need to determine whether the class member enrolled online, by telephone, or via paper application.  A determination of this preliminary question could require a manual review of class member accounts and thousands of completed paper applications.[16]

Second, while class members voluntarily provided their telephone numbers to ViSalus while enrolling online, it is unknown whether members who enrolled online before October 16, 2013 were presented with communication preferences, whether they checked any communication preference boxes, or what the content of any boxes may have contained.[17]  By way of example, the *current* online enrollment process for promoters and customers contains a checkbox to receive SMS text messages.[18]

This will result in an individualized inquiry on the issue of consent, on which each class member who enrolled online would need to be individually examined.  *See Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014) (individualized issues of consent predominate where that information "simply no longer exists" in the defendant's records); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328–29 (5th Cir. 2018) (certification denied on predominance grounds where employee testimony showed that defendant's "database entries do not consistently or accurately reflect whether a given recipient had consented" to faxes); *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (certification denied on predominance grounds where affidavit from defendant employee explained issues with consent tracking through defendant's account record system).  For some class members, the online enrollment process may date back as far as early 2006.

---

[16] Gidley Decl. at ¶ 4; Dkt. 271-1, Joint Stip. at ¶ 6.

[17] Declaration of . Aldo Moreno ("Moreno Decl.") at ¶ 4.

[18] Gidley Decl. at ¶ 6, Ex. 33 (screenshots of current enrollment process).

<u>Third</u>, a determination would need to be made as to whether the class member enrolled as a promoter or customer given that, at a minimum, the paper enrollment applications differed between promoters and customers as well as within the same group.  Some (but not all) paper enrollment forms for **promoters** that are members of the class and enrolled prior to October 16, 2013 included four checkboxes (phone, email, text message or none) for "Receiv[ing] ViSalus News & Updates."[19]  Below is a sample of such a promoter application:

**Communication Preferences:**

Home Phone #: _____    Mobile Phone #:_____

Mobile Phone Provider: Required for ViSalus Mobile Updates (SMS)_____

E-mail Address: _____

Receive ViSalus News & Updates via: Check at least one

☐ Phone    ☐ Email    ☐ Mobile Text Message (SMS)    ☐ None

Other promoter applications for members of the class who enrolled prior to October 16, 2013 **did not contain any checkboxes at all**.[20]

Paper applications for **customers** before October 16, 2013 also varied.  In fact, there was significant variation in customer applications over time.  Some (but not all) paper enrollment forms for customers that are members of the class and enrolled prior to October 16, 2013 included the same four checkboxes (phone, email, text message or none) as above.[21]  Other paper enrollment forms for customers that are members of the class and enrolled prior to October 16, 2013 contained only one checkbox stating, "*Yes, I would like to receive communications from ViSalus regarding special discounts and promotions*."[22]  Below is a sample of such a customer

---

[19] Gidley Decl. at ¶ 9, Exs. 2, 3, 11, 15, 16, 20, 22, 27, 28, 30, and 32.

[20] Gidley Decl. at ¶ 10, Ex. 34 (attaching promoter application with no checkboxes but an asterisk next to "*Cellular Phone" that states "Cellular numbers will receive ViSalus Mobile updates").

[21] Gidley Decl. at ¶ 11, Ex. 29.

[22] Gidley Decl. at ¶ 12, Ex. 1, 4-10, 12-14, 17-19, 21, 23-26.

application:

## Customer Shipping Information:

Last Name:_____   First Name:_____

Shipping Address:_____

Apt/Suite: _____

City: _____   State: _____   Zip: _____

Daytime Phone #:_____

E-mail Address: _____

☐ **Yes, I would like to receive communications from ViSalus® regarding special discounts and promotions.**

Still other paper enrollment forms for customers that are members of the class and enrolled prior to October 16, 2013 **had no checkboxes or communication preferences at all**.[23]

Simply put, promoters and customers "consented through a variety of different forms, completed in unique ways at different times." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, No. 3:13-CV-2085, 2016 WL 75535, at *4 (N.D. Ohio Jan. 7, 2016) (denying class certification on predominance grounds).

Fourth, regardless of whether the communication preferences are relevant, it cannot be disputed that some class members provided prior express consent to be called and thus have no claim. Specifically, some promoters who enrolled via paper application prior to October 16, 2013, voluntarily provided mobile and/or "home" phone numbers and manually checked the box to receive "phone" calls from ViSalus regarding news and updates.[24] Similarly, some customers who signed up prior to October 16, 2013, voluntarily provided a "daytime phone #"[25] and manually checked the box to receive communications from ViSalus with special discounts and

---

[23] Gidley Decl. at ¶ 13, Ex. 35.

[24] Gidley Decl. at ¶ 9, Exs. 2, 3, 11, 15, 16, 20, 22, 27, 28, 30, and 32.

[25] Notably, the customer enrollment form only asks for a "Daytime phone #."

promotions.[26]  ViSalus has produced over 30 examples of consent from members of the class.[27]

See *NEI Contracting & Engr., Inc. v. Hanson Aggregates, Inc.*, 12-CV-01685-BAS(JLB), 2016

WL 2610107, at *7 (S.D. Cal. May 6, 2016), *aff'd sub nom. NEI Contracting & Engr., Inc. v.*

*Hanson Aggregates Pac. Sw., Inc.*, 2019 WL 2361800 (9th Cir. June 5, 2019) (decertification on

predominance grounds granted where defendant presented nine examples of consent).

Thus, even assuming *arguendo* that the checkboxes on the enrollment forms are relevant

to the issue of consent (which ViSalus does not concede), customers and promoters who—prior

to October 16, 2013—voluntarily provided their phone numbers to ViSalus and checked these

boxes on enrollment applications clearly provided the requisite consent.[28]  But it is impossible to

determine which boxes may have been selected without manually cross-checking enrollment

applications and the class list, which contains over 850,000 members.  To the extent applications

no longer exist, the only way to determine consent is to examine each class member.  This is a

textbook case of the predominance of individual consent issues.

Fifth, several other individual inquiries predominate.  Class members who enrolled prior

to October 16, 2013 may have changed their communication preferences before receiving any

call from ViSalus, by accessing their ViNet account online or by calling customer service.[29]  For

example, a promoter or customer who had *not* checked the "phone" box during enrollment may

---

[26] Gidley Decl. at ¶ 12, Exs. 1, 4-10, 12-14, 17-19, 21, 23-26.

[27] Additional consent samples could be provided, upon request, by continuing the tedious and time-consuming task of manually checking thousands of application forms against the KCC Class List.  Haule Decl. ¶ 7.  The samples have been redacted due to confidential information.  ViSalus can produce unredacted versions (as well as additional samples) at the Court's request.

[28] Plaintiff previously contended that ViSalus cannot present a "prior express consent" defense because ViSalus did not raise such a defense.  *See* Dkt. 322 at 5-6.  Even if Plaintiff were correct, this argument fails for at least two additional reasons.  First, this argument is inherently flawed because a litigant cannot waive Article III's requirements.  *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541–42 (1986) (holding that issues of Article III standing are treated as jurisdictional and must be considered by the court).  Second, because the FCC Waiver Order did not exist until just two weeks ago, ViSalus could not have raised a "prior express consent" defense previously without potentially violating the Federal Rules of Civil Procedure.

[29] Gidley Decl. at ¶ 15, Ex. 36 (sample "Company Communications" page on ViNet).

have subsequently changed their preferences under the "Company Communications" page of their online account.[30]  Other class members may have cancelled their accounts and reenrolled at a later date with different communication preferences prior to the date of any prerecorded call.[31]  Still other class members may have been called on a different phone number than reflected on their enrollment form because they subsequently changed their telephone number.[32]  An inquiry would need to be undertaken to establish that these class members gave prior express consent to be called on the new telephone number.[33]  All of these considerations would require a manual review of each class member account and examinations of each class member to determine whether they provided prior express consent.  The process would be completely unmanageable.

In short, individualized issues of consent predominate.  Numerous courts have decertified or refused to certify class actions in TCPA cases where individual issues of consent predominate after a retroactive waiver is granted by the FCC.  *See*, *e.g.*, *Simon*, 2015 WL 10015953, at *7 (retroactive FCC waiver created individualized consent issues defeating class certification); *Brodsky*, 269 F. Supp. 3d at 846 (decertification warranted where retroactive waiver from FCC created individualized issues of consent).  *See also Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 465–66 (6th Cir. 2017) (affirming district court order denying class certification, in part, because individualized issues of consent predominated after retroactive waiver from FCC).

*Brodsky* is squarely on point.  In *Brodsky*, after a class was certified, the defendant obtained a retroactive waiver from the FCC concerning the TCPA's Solicited Fax Rule.  The Solicited Fax Rule provided that fax advertisements sent with "prior express invitation or

---

[30] Gidley Decl. at ¶ 15.

[31] Gidley Decl. at ¶ 16, Exs. 2, 20, 28, and 30 (samples of customer and promoter reactivations).

[32] Moreno Decl. at ¶ 3 (some class members changed their telephone numbers after enrollment through their online account or by calling customer service).

[33] This would also require determining when and on what telephone number the class member was called—facts which were not established for each class member at trial.

permission"[34] (i.e., solicited faxes) must have opt-out notices. In light of the FCC waiver, a primary issue in the case was whether the faxes were sent with prior express invitation or permission. Defendant moved to decertify the class. In granting the motion and finding that issues of individualized consent predominated, the court noted various "outstanding questions" and "complicated individualized questions," including whether members of the class may have revoked consent. 269 F. Supp. at 846, 849. The court concluded that the case "will be consumed and overwhelmed by testimony from each individual class member in an effort to determine whether the class member consented to receive the [messages] in question." *Id.* at 846 (internal quotations and citations omitted). Here, like in *Brodsky*, "[n]ow that 'the issue of consent' is back in 'the equation' by virtue of the [June 13, 2019 FCC Waiver], the present class must be decertified." *Id.* at 848.

Similarly, in *Simon v. Healthways, Inc.*, No. CV 14-08022-BRO (JCx), 2015 WL 10015953, at *2 (C.D. Cal. Dec. 17, 2015), the defendant was also granted a retroactive waiver from the FCC on the Solicited Fax Rule. The retroactive waiver excused the defendant from providing opt-out notice on fax advertisements if the defendant had prior express permission. Thus, consent was a primary issue in the case. The defendant furnished examples of potential class members that may have provided consent. *Id.* at *5. The court noted the various ways class members could have consented—"in paper, online, or a combination of both, further highlighting the individualized inquiry that would need to take place." *Id.* The court concluded that the "key issue" of consent required an individualized analysis that defeated class certification. *Id.* at *4.

> [P]rior express permission is a critical—and individualized—issue in this class action. The Court cannot and will not engage in hundreds of mini-trials to determine whether a putative class member provided Defendants his or her or its prior express permission. Accordingly, the Court finds that [this] class action is not superior to individual suits as a

---

[34] *See* 47 C.F.R. § 64.1200(a)(4)(iv) (2013) (previous rule providing that fax advertisements sent with "prior express invitation or permission" must be include an opt-out notice). This requirement—the Solicited Fax Rule—was stuck down and removed from the FCC regulations. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017).

means to adjudicate this dispute; putative class members may seek recovery in small
claims court.

*Id.* at *7–8.  *See also Smith*, 297 F.R.D. at 469 ("[A]n alternative method of handling the instant
controversy exists: namely, individual plaintiffs may bring TCPA cases in small claims court
without an attorney.").

Based on the above, individual issues not only predominate, but overwhelm common
questions.  Whether ViSalus obtained prior express consent from class members will require this
Court to examine each and every class members' unique circumstances, including without
limitation, whether they enrolled as a promoter or customer, whether they enrolled online or via
paper application, which application version they filled out and when, and what communication
preferences (if any) they provided on these applications.  Moreover, although ViSalus believes
that all class members subject to the waiver provided prior express consent regardless of any
communication preferences, it has nonetheless produced evidence showing that, without
question, some class members provided prior express consent and therefore have no claim under
the TCPA.[35]

It is clear—now more than ever—that the class must be decertified.  *Sandusky*, 2016 WL
75535, at *4 (class certification "inappropriate" where defendant "presented evidence that some
fax advertisements were solicited, but identifying those recipients who consented to receiving
faxes is a case-by-case analysis" especially where "customers consented through a variety of
different forms, completed in unique ways at different times"), *aff'd* 863 F.3d 460 (6th Cir.
2017), as corrected on denial of reh'g en banc (Sept. 1.2017); *Katz v. Am. Honda Motor Co.*, No.
15-CV-4410-CBM-RAOX, 2017 WL 3084272, at *4 (C.D. Cal. June 29, 2017) (class
certification inappropriate where individualized inquiry required to determine whether each class
member signed a lease agreement, which version they signed and when, what language was
contained in the agreement, and when the call was made); *Sherman v. Yahoo! Inc.*, No.
13CV0041-GPC-WVG, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) (class certification

---

[35] *See supra* notes 24, 26.

inappropriate where defendant demonstrated varying methods of expressing consent, which would require an individualized inquiry into the consent profile of each class member).

Plaintiff has failed to advance—nor can she—"a viable theory of generalized proof to identify those persons, if any, to whom [ViSalus] may be liable under the TCPA." *Id.* (quoting *Gene and Gene*, 541 F.3d at 327–29). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original) (quotation and citation omitted). "This seems to be the exact type of case that would devolve into a series of mini-trials, which Rule 23(b)(3) seeks to prevent." *Sandusky*, 2016 WL 75535, at *4.

### C. Plaintiff's Claims are Not Typical of the Class Because She Lacks Standing and Proof of Her Claim Does Not Resolve the Class Claims

A plaintiff who lacks standing is not typical of the class and cannot serve as a class representative. *See Summer York v. Starbucks Corp.*, No. CV0807919GAFPJWX, 2012 WL 12507388, at *6 (C.D. Cal. Nov. 1, 2012) (decertification proper where named plaintiff lacks standing); *see also Prado–Steiman v. Prado*, 221 F.3d 1266, 1280 (11th Cir. 2000) (standing falls within the umbrella of typicality, and a plaintiff who lacks standing is not typical of the class and cannot serve as the class representative). *See also Lierboe*, 350 F.3d at 1022–23. As demonstrated above, Plaintiff lacks standing to sue because she provided prior express consent. Because Plaintiff lacks standing to pursue her individual claim, she is not typical of the class.

In addition, and again assuming *arguendo* that the enrollment preferences are relevant to a determination of consent (which ViSalus disputes), Plaintiff is not typical of class members who checked the "phone" box to receive calls from ViSalus, either at the time of enrollment or thereafter. Nor is Plaintiff typical of class members who, without limitation: (i) provided more than one phone number to ViSalus, (ii) provided consent after October 16, 2013, (iii) opted out before any alleged call, (iv) received the alleged call after October 7, 2015; (v) enrolled using a paper application; (vi) enrolled with a different version of the online application; (vii) changed

their communication preferences after enrollment; and/or (viii) reenrolled. Proof of Plaintiff's claim does not resolve the class claims and thus Plaintiff cannot demonstrate that her claim is typical of the class. *See Gen. Tel. Cov. Of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).

> ### D.   Plaintiff Fails to Prove Numerosity

As demonstrated in ViSalus' briefing on decertification, to establish numerosity, Plaintiff must provide a reasonable estimate of the class size supported by "reliable evidence." *See*, *e.g.*, Dkt. 306 at 28-29 (citing cases including *Smith v. City of Corvallis*, No. 6:14-cv-01382, 2016 WL 3193190, at *10 (D. Or. June 6, 2016)). In addition to the reasons set forth in ViSalus' prior briefing, Plaintiff has not provided, nor can she provide, a reasonable estimate of the class size in light of the FCC Waiver, as she has failed to present any evidence, let alone reliable evidence, of the number of individuals from whom ViSalus did not have prior express consent. Thus, Plaintiff has not carried her burden of demonstrating numerosity.

> ### E.   Class Treatment is Not Superior or Manageable Given the Thousands of Mini-Trials That are Necessary to Determine Prior Express Consent

Rule 23(b)(3)(D) requires a court to consider the likely difficulties in managing a class action when evaluating whether class action treatment is superior to other methods of adjudication. *See* Dkt. 306 at 25 (citing Fed. R. Civ. P. 23(b)(3)(D)). The greater number of individual issues to be litigated, the greater difficulties in managing the class. *Id*. Given the individualized nature of the inquiries on prior express consent that are now necessary in the wake of the FCC Waiver Order (*see* above Section III.B), Plaintiff's failure to provide common proof on the class claims will result in hundreds of thousands of mini-trials. Thus, a class action is neither manageable nor superior. *Id*. (citing *Burrell v. Crown Cent. Petrol., Inc.*, 197 F.R.D. 284, 291 (E.D. Tex. 2000)). Accordingly, the class must be decertified. *Wal-Mart*, 564 U.S. at 347-49.

## IV.   CONCLUSION

For these additional reasons and for those previously stated, ViSalus' Motion to Decertify the Class should be granted and the class decertified. The Court should dismiss the class claims

and proceed to judgment on Plaintiff's individual claims.

Dated: June 28, 2019                    MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ Christine M. Reilly
CHRISTINE M. REILLY
*Attorneys for Defendant*
VISALUS, INC.

John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
Telephone: 310.312.4000
Facsimile: 310.312.4224

Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

John Maston O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690