DOVEL & LUNER, LLP
Simon Franzini, Cal. Bar #287631*
simon@dovel.com
Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
Jonas Jacobson, Cal. Bar #269912*
jonas@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

(additional counsel listed on next page)

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VISALUS, INC.,**<br>a Nevada corporation,<br><br>Defendant. | No. 3:15-cv-01857-SI<br><br>**Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify.** |

EDELSON PC
Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
Lily E. Hough, SBN #315277*
lhough@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

FORUM LAW GROUP
Scott F. Kocher, OSB #015088
Stephen J. Voorhees, OSB #150595
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel/Fax: (503) 445-2120

* admitted *pro hac vice*

*Attorneys for Plaintiff Wakefield and the Certified Class*

# Table of Contents

I.    Ms. Wakefield has Article III standing. .................................................... 1

    A.    If ViSalus had consent to call Ms. Wakefield, this would not deprive
            Ms. Wakefield of Article III standing. ......................................... 2

    B.    ViSalus did not have consent to call Ms. Wakefield—even under the
            pre-2013 standard. ......................................................................... 6

II.   This case continues to satisfy each of the requirements of Rule 23........................ 9

    A.    Because ViSalus did not raise a consent defense in this case or
            present one at trial, the Court cannot and need not consider consent
            in deciding class certification. ...................................................... 9

        1.    The Court must decide class certification based on the claims,
                defenses, and evidence actually raised in this case and
                presented at trial. ............................................................ 10

        2.    There is no consent defense in this case because ViSalus
                never raised a consent defense (and instead repeatedly
                disclaimed this defense.) ................................................ 12

    B.    If ViSalus had raised and presented a consent defense, this defense
            would not be a reason to decertify the class (and would instead
            confirm that this class should proceed as a class action). .......................... 15

    C.    The FCC's waiver is irrelevant to ViSalus' consent defense, because
            it does not apply to any of the claims asserted in this case. ...................... 19

III.  Conclusion. ............................................................................................ 20

## Table of Authorities

**Cases**

*Bah. Surgery Ctr., LLC v. Kimberly-Clark Corp.*, No. 14-cv-8390 DMG (PLAx),
2018 U.S. Dist. LEXIS 139931 (C.D. Cal. Mar. 30, 2018)...........................................12

*Brodsky v. Humanadental Ins. Co.*,
269 F. Supp. 3d 841 (N.D. Ill. 2017) .......................................................................21

*Craftwood II, Inc. v. Generac Power Sys.*,
920 F.3d 479 (7th Cir. 2019) ..............................................................................4, 5

*Davis v. Guam*,
785 F.3d 1311 (9th Cir. 2015) ...............................................................................3

*Forehand v. Fla. State Hosp.*,
89 F.3d 1562 (11th Cir. 1996) ..............................................................................12

*Harmsen v. Smith*,
693 F.2d 932 (9th Cir. 1982) .................................................................................3

*Key v. Gillette Co.*,
782 F.2d 5 (1st Cir. 1986)....................................................................................12

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ................................................................................7

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. July 15, 2016)..................................................................12, 14

*McVey v. McVey*,
26 F. Supp. 3d 980 (C.D. Cal. 2014) ........................................................................4

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ...............................................................................20

*Min Sook Shin v. Umeken USA, Inc.*,
No. 17-56767, 2019 U.S. App. LEXIS 16588 (9th Cir. June 3, 2019) ..............................6

*Moore v. Ulta Salon, Cosmetics & Fragrance Inc.*,
311 F.R.D. 590 (C.D. Cal. 2015)............................................................................14

*Nei Contracting & Eng'g v. Hanson Aggregates, Inc.*, No. 12-cv-01685-BAS(JLB),
2016 U.S. Dist. LEXIS 60624 (S.D. Cal. May 5, 2016) ...............................................21

*Perryman v. Litton Loan Servicing, LP*, No. 14-cv-02261-JST,
2014 U.S. Dist. LEXIS 140479 (N.D. Cal. Oct. 1, 2014) .............................................4

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
65 F. Supp. 3d 482 (W.D. Mich. 2015) ...................................................................23

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ..................................................................... 9, 10

*Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*,
  No. 3:13-cv-2085, 2016 U.S. Dist. LEXIS 1864 (N.D. Ohio Jan. 7, 2016) ................. 22

*Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ....................................................................... 22

*Satterfield v. Simon & Schuster*,
  569 F.3d 946 (9th Cir. 2009) ........................................................................ 8

S*imon v. Healthways, Inc.*, No. 14-cv-08022-BRO (JCx),
  2015 U.S. Dist. LEXIS 176179 (C.D. Cal. Dec. 17, 2015) ............................... 21

*Snider Int'l Corp. v. Town of Forest Heights*,
  906 F. Supp. 2d 413 (D. Md. 2012) ................................................................ 6

*Taylor v. Hous. Auth. of New Haven*,
  267 F.R.D. 36 (D. Conn. 2010), ................................................................ 13

*Toney v. Quality Res., Inc.*,
  323 F.R.D. 567 (N.D. Ill. 2018) .................................................................. 19

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .................................................................... 23

*Torres v. SGE Mgmt., LLC*,
  838 F.3d 629 (5th Cir. 2016) ...................................................................... 14

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) .................................................................. passim

*Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*,
  847 F.3d 1037 (9th Cir. 2017) ............................................................... 2, 3, 8

*Yeoman v. Ikea U.S.A. W., Inc.*, No. 11-cv-00701-BAS(BGS),
  2014 U.S. Dist. LEXIS 168968 (S.D. Cal. Dec. 4, 2014) ............................... 13

## Statutes

47 U.S.C. 227(b)(1)(A) ...................................................................... 19

47 U.S.C. 227(b)(3) .......................................................................... 20

## Other Authorities

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  27 F.C.C. Rcd. 1830 (2012) .................................................................... 7

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  30 F.C.C. Rcd. 7961 (2015) ............................................................... 15, 17

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

**Rules**

Fed. R. Civ. P. 59...........................................................................................................14

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

The FCC's order granting ViSalus' petition for a retroactive waiver cannot possibly deprive Ms. Wakefield of Article III standing and has no impact on the Rule 23 analysis. Accordingly, it has no relevance to ViSalus' pending motion to decertify the class. The Court should deny the motion and enter judgment in favor of the class based on the jury's verdict.

## I.    Ms. Wakefield has Article III standing.

ViSalus contends that, under the pre-2013 consent standard, it had prior express consent to make prerecorded telemarketing calls to Ms. Wakefield. ViSalus argues that this deprives Ms. Wakefield of Article III standing (and that as a result, this Court lacks subject matter jurisdiction over this case).

ViSalus frames the issue as a challenge to Article III standing because ViSalus never raised a consent defense in this case and instead expressly waived it. Accordingly—unless ViSalus can call into question the Court's subject matter jurisdiction—ViSalus would have no basis to raise it for the first time now, in a post-trial motion to decertify.

ViSalus' consent defense, however, has nothing to do with Article III standing and could not possibly deprive the Court of subject matter jurisdiction. It is simply an affirmative defense, which ViSalus waived by failing to raise it sooner.

Moreover, if ViSalus had raised a consent defense, the defense would have failed because ViSalus never obtained consent to make prerecorded telemarketing calls to Ms. Wakefield—even under the pre-2013 express consent standard.

1

A.    **If ViSalus had consent to call Ms. Wakefield, this would not deprive Ms. Wakefield of Article III standing.**

Article III standing is satisfied if the plaintiff alleges that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co*., 847 F.3d 1037, 1042 (9th Cir. 2017) (internal citations and punctuation omitted).

Here—as the Court has already concluded—because Ms. Wakefield alleged that she received unsolicited telephone calls that used an artificial or prerecorded voice from ViSalus, she has Article III standing.  Dkt. 81 (Certification Order), 12-13 (relying on *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). Moreover, Ms. Wakefield presented uncontradicted evidence at trial that she did, in fact, receive unsolicited telephone calls that used an artificial prerecorded voice from ViSalus (as did other members of the class.)  *See, e.g.*, Dkt. 302 (April 1 trial transcript), 191:7-196:4 (Mr. Eves, COO of Ms. Wakefield's phone company, testifying that Ms. Wakefield received five calls from ViSalus); *id*., 224:12-243:2 (Ms. Wakefield testifying about the calls she received from ViSalus); *id*., 321:2-324:7 (Mr. Gidley admitting that ViSalus called Ms. Wakefield using a prerecorded message); Trial Exhibit 43-24 (recorded message that Mr. Gidley admitted ViSalus used on a phone call to Ms. Wakefield); Trial Exhibit 2 (Ms. Wakefield's phone records showing five phone calls from ViSalus).

ViSalus contends that, if the pre-2013 standard applied in this case, it would have an express consent affirmative defense against Ms. Wakefield.  But standing turns on the

2

plaintiff's *allegations*—not on the merits of the plaintiff's claims (or the defendant's defenses).  *Davis v. Guam*, 785 F.3d 1311, 1316 (9th Cir. 2015) ("These are merits questions, and <u>standing doesn't "depend[] on the merits of the plaintiff's contention that particular conduct is illegal."</u>) [1]; *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding that the plaintiff had Article III standing because he had "<u>alleged</u> a concrete injury in fact" under the TCPA before turning to the merits of the defendants' prior express consent defense); *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982) ("Standing ordinarily <u>does not depend upon the merits of a plaintiff's contentions</u>; the requirement is based upon a separate determination that the plaintiffs have made allegations of demonstrable, particularized injury.  As we have stated, <u>failure of proof as to the named plaintiffs would not bar maintenance of the class action or entry of judgment awarding relief to the members of the class.</u>" (internal quotations and citations omitted)); *McVey v. McVey*, 26 F. Supp. 3d 980, 995 (C.D. Cal. 2014) ("the fact that the plan at issue is not ERISA qualifie[d] means that plaintiff's claims fail on the merits, <u>but does not deprive the court of subject matter jurisdiction</u>"); *Perryman v. Litton Loan Servicing, LP*, No. 14-cv-02261-JST, 2014 U.S. Dist. LEXIS 140479, at *17 n.4 (N.D. Cal. Oct. 1, 2014) (rejecting the argument that "because . . . [the plaintiff] loses on the merits, he has not suffered any 'cognizable injury that is traceable to the acts of the . . . defendants and he lacks standing to sue them" because "standing is fundamentally about the propriety of the individual litigating a claim <u>irrespective of its legal merits</u>." (internal quotations omitted)).

---

[1] All emphasis is added unless otherwise noted.

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

And as a result, a defendant cannot deprive a plaintiff of Article III standing—and thereby divest the presiding court of subject matter jurisdiction—by prevailing on an affirmative defense.  Prevailing on an affirmative defense simply results in the defendant winning on the merits and obtaining a favorable judgment. *Craftwood II, Inc. v. Generac Power Sys.*, 920 F.3d 479, 481 (7th Cir. 2019) (reversing district court decision that the plaintiff lacked standing to bring TCPA claim based on a consent defense reasoning as follows: "On appeal defendants contend expressly what is only implicit in the district court's decision: that unless plaintiffs prove injury from a violation of law, the suit must be dismissed for lack of a case or controversy.  That proposition contradicts the holding of *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946), among many other decisions <u>showing that a plaintiff's failure on the merits does not divest a federal court of jurisdiction</u>.")

Accordingly, if ViSalus were right that it has a consent defense against Ms. Wakefield's claims—and if it had actually raised this defense in its answer and presented it at trial (which it did not)—it would not follow that Wakefield lacks standing and the Court lacks subject matter jurisdiction.  The result would be a judgment in favor of ViSalus on Ms. Wakefield's claims, just like any other time a defendant prevails on an affirmative defense. [2]

---

[2] Notably, under controlling law, if ViSalus had prevailed on its claims against Ms. Wakefield on the merits, that would not defeat the class' claims. *See* dkt. 264 (Wakefield brief regarding verdict form).

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

ViSalus' suggestion to the contrary does not make sense. If ViSalus were right, then a presiding court would lose power to adjudicate the dispute in front of it any time a defendant prevailed on an affirmative defense. There would be no such thing as a defense judgment based on an affirmative defense; courts would have to dismiss cases for lack of subject matter jurisdiction any time an affirmative defense succeeded. But that is not the law. Indeed, the Supreme Court rejected this exact proposition in *Bell v. Hood*, which holds that the failure of a claim for relief requires a judgment on the merits—not a jurisdictional dismissal. 327 U.S. at 682; *Craftwood II, Inc. v. Generac Power Sys.*, 920 F.3d 479, 481 (7th Cir. 2019) (noting that this argument "contradicts the holding of *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946), among many other decisions showing that a plaintiff's failure on the merits does not divest a federal court of jurisdiction."); *see Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 424 (D. Md. 2012) (to "transform affirmative defenses … into jurisdictional components of Article III standing … would be a broad departure from current federal practice").

None of the cases ViSalus cites suggests otherwise. In those cases, the class actions were dismissed because the plaintiff actually lacked standing—i.e., because there was no case or controversy—not because the plaintiff lost on the merits. In the *Min Sook* case, the plaintiff sought injunctive relief against false advertising, but the district court found—based on the plaintiff's allegations—that the plaintiff would not purchase the relevant product in the future, and thus lacked standing to seek injunctive relief. *Min Sook Shin v. Umeken USA, Inc.*, No. 17-56767, 2019 U.S. App. LEXIS 16588, at *2 (9th Cir. June 3, 2019). In other words, the class action was dismissed because the plaintiff

failed to establish the required injury, not because the claim failed on the merits.

Likewise, in the *Lierboe* case, the named plaintiff had not established "the requisite of a

case or controversy with the defendants" in the first place with respect to the standing

claim because, under controlling Montana law, the facts alleged did not constitute

impermissible stacking.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022

(9th Cir. 2003).

    In sum, ViSalus' consent defense has nothing to do with Article III standing and

cannot possibly divest the Court of subject matter jurisdiction over this case.  As a result,

ViSalus cannot raise this defense for the first time in a post-trial motion to decertify.  To

present this defense, ViSalus would have had to raise it in its answer; produce evidence

supporting it during discovery; and introduce that evidence and persuade the jury of the

merits of the defense based on that evidence at trial.  But ViSalus did no such thing.  To

the contrary, as explained in greater detail below, ViSalus did the exact opposite: it failed

to raise the defense in its answer; failed to produce (and instead resisted providing)

discovery supporting such a defense; affirmatively represented that it would not be

pursuing this defense at trial; and did not present any evidence supporting this defense at

trial.

### B.   ViSalus did not have consent to call Ms. Wakefield—even under the pre-2013 standard.

    ViSalus contends that under the pre-2013 standard, "[p]rior express consent is

easily satisfied here because Plaintiff voluntarily provided her telephone number to

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

ViSalus when she submitted a promoter application."  ViSalus Supplemental Brief, 5. This argument fails on three levels.

(1) ViSalus's argument is foreclosed by governing law.  As the FCC has acknowledged, prior to 2013 written consent had to "'clearly express[] an understanding that the telemarketer's subsequent call will be made <u>for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services</u>.'"  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1833 (2012).  Likewise, the Ninth Circuit has held that consent must be "clearly and unmistakably stated." *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009).  Thus, a consumer's provision of her telephone number to a defendant does *not* amount to consent "to any and all contact." *Van Patten*, 847 F.3d at 1045.  In other words, ViSalus is flat wrong that Ms. Wakefield provided consent to receive telemarketing solicitations simply by providing her phone number to ViSalus.

(2) ViSalus' argument is also foreclosed by judicial estoppel.  "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir. 1996).  Judicial estoppel applies to statements made in administrative proceedings as well as judicial proceedings.  *Id.* at 604 (judicial estoppel applies in district court when "plaintiff's prior position was taken in a workers' compensation [administrative] proceeding").

7

In its Petition for retroactive waiver to the FCC, ViSalus (a) expressly admitted that even before 2013, written consent "must be to receive a marketing call" and (b) asserted it had such consent to place calls to class members. Dkt. 177-1 (ViSalus petition for waiver) at 4 ("Before the Commission's 2012 rule revisions, consumers could give 'prior express consent' orally or in writing, and <u>no particular 'magic language' was required for such consent (other than the consent must be to receive a marketing call</u>)."

Moreover, ViSalus made these assertions to gain an advantage before the FCC. To persuade the FCC that under the circumstances ViSalus should be given a retroactive waiver, ViSalus asserted that the pre-2013 rules required that it merely have written consent "to receive a marketing call" and that it had obtained such consent.

Now, to obtain an advantage in its motion to decertify the class, ViSalus takes an incompatible position—that it does <u>not</u> need to show that the consent it received was for marketing calls. ViSalus Supplemental Brief, 4. Moreover, the reason for ViSalus' change of tune is that its representations to the FCC were false—it indisputably did not receive consent "to receive a marketing call" for each call it made to class members, as the evidence this Court has before it demonstrates. Judicial estoppel forecloses ViSalus from "seeking a second advantage" before this Court by asserting this "incompatible" position. *Risetto*, 343, 94 F.3d at 600.

(3) ViSalus acknowledges that providing a phone number to a company does not qualify as "prior express consent" to receive prerecorded telemarketing calls if it is accompanied by "instructions to the contrary." Supplemental Brief, 5. And undisputed evidence at trial demonstrated that Ms. Wakefield did exactly this: in the very same

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

promoter application in which she provided her number to ViSalus, she affirmatively stated that she did <u>not</u> want to be contacted by ViSalus by phone.  Dkt. 302 (April 11, 2019 Trial Transcript), 83:22-84:11.  And what's more, Ms. Wakefield testified that she told ViSalus to stop calling her.  *Id*. 103:4-21 (testifying that she told ViSalus to stop calling her on April 8.)  But ViSalus kept calling her anyway.  *See* Trial Exhibit 2 (Molalla call log), 7 (showing call from ViSalus number 248-764-7521 on April 28).

Accordingly, there is undisputed evidence that ViSalus placed calls to Ms. Wakefield without her consent—even under the standard of consent that ViSalus now urges.  If ViSalus had properly presented a consent defense, Ms. Wakefield would have been entitled to JMOL on it.

\* \* \*

In sum, ViSalus' consent defense has nothing to do with Article III standing and thus ViSalus cannot raise it at this stage.  Moreover, if ViSalus had properly presented this defense, it would have failed as a matter of law.

## II.    This case continues to satisfy each of the requirements of Rule 23.

ViSalus also argues that, under the FCC's Order, ViSalus has an express consent defense that would defeat the requirements of Rule 23.  This argument fails on three levels.

### A.    Because ViSalus did not raise a consent defense in this case or present one at trial, the Court cannot and need not consider consent in deciding class certification.

Class certification must be decided based on the claims and defenses actually raised in a case and presented at trial—not on the defenses that might have been

9

presented in some other, hypothetical case that never came to be. And in *this* case—the one that was litigated for the last four years and tried to the jury in April—there was no consent defense or evidence of consent. To the contrary, ViSalus disavowed this defense—both expressly and by repeatedly refusing to produce the evidence it now says would support it. Accordingly, the consent defense ViSalus says it now has could not possibly factor into the Court's decision on ViSalus' motion to decertify.

We first show that class certification must be based on claims and defenses actually raised and tried. We then show that ViSalus never raised a consent defense in this case and instead expressly disclaimed this defense on multiple occasions.

> **1.**    **The Court must decide class certification based on the claims, defenses, and evidence actually raised in this case and presented at trial.**

As ViSalus acknowledges, a post-trial motion to decertify must be decided based on the claims, defenses, and evidence *actually at issue in this case and presented at trial*. *Bah. Surgery Ctr., LLC v. Kimberly-Clark Corp.*, No. 14-cv-8390 DMG (PLAx), 2018 U.S. Dist. LEXIS 139931, at *75 (C.D. Cal. Mar. 30, 2018) ("Defendants have not satisfied their heavy burden to show why the Court should take the drastic step of decertification <u>based on the evidence presented at trial</u>."); *see* dkt. 306, 5-6 (ViSalus motion to decertify) (collecting the following cases); *Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1566 (11th Cir. 1996) (affirming finding that "<u>based on the evidence presented at trial</u>, [the district court's] previous class definition failed to comply with Rule 23 of the Federal Rules of Civil Procedure."); *Mazzei v. Money Store*, 829 F.3d 260, 268 (2d Cir. 2016) ("Decertification was based on the district court's determination

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

that Mazzei had failed to prove through class-wide <u>evidence at trial</u> [an element of the claim]"); *Key v. Gillette Co*., 782 F.2d 5, 7 (1st Cir. 1986) (holding that a plaintiff's "general lackluster performance <u>during trial</u> all reflected appellant's inability to 'fairly and adequately protect the interests of her class.'"); *Yeoman v. Ikea U.S.A. W., Inc*., No. 11-cv-00701-BAS(BGS), 2014 U.S. Dist. LEXIS 168968, at *15 (S.D. Cal. Dec. 4, 2014) ("Plaintiff's <u>evidence at trial</u> has revealed that there is not a common answer to the essential, threshold question of whether requests for ZIP codes were made to each customer"); *Taylor v. Hous. Auth. of New Haven*, 267 F.R.D. 36, 62 (D. Conn. 2010), *aff'd sub nom. Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152 (2d Cir. 2011) ("<u>The evidence at trial</u> does not support the continued viability of a certified class")).

Moreover, because what matters for certification is what was actually raised and presented at trial, in deciding whether a case satisfied the requirements of Rule 23, courts do not consider affirmative defenses that were waived earlier in the case when deciding certification. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (in assessing consent under the TCPA, "we assess predominance by analyzing the consent defenses [the defendant] has actually advanced and for which it has presented evidence"); *Moore v. Ulta Salon, Cosmetics & Fragrance Inc*., 311 F.R.D. 590, 618 (C.D. Cal. 2015) (noting that waiver of affirmative defense would obviate need to consider it at class certification); *Mazzei v. Money Store*, 288 F.R.D. 45, 64 (S.D.N.Y. 2012) (refusing to consider waived defense at class certification).

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

The reason for this is that Rule 23 is designed to ensure that it was proper for the case <u>actually presented and tried</u> to proceed as a class action. *See Torres v. SGE Mgmt., LLC*, 838 F.3d 629, 644 (5th Cir. 2016) (en banc) (noting that the court's inquiry at class certification "looks to how the trial will proceed"). Rule 23 does not ask courts to speculate about whether it would have been proper for some different, hypothetical case involving different defenses and different evidence to proceed as a class action. Such speculation would be pointless.

### 2. There is no consent defense in this case because ViSalus never raised a consent defense (and instead repeatedly disclaimed this defense.)

In this case—the case that was actually litigated for the last four years and tried to the jury in April—no consent defense was ever raised, and no evidence of consent was ever provided (much less presented at trial).

ViSalus never raised a consent defense in its answer. Dkt. 41 (Amended Answer). Nor did ViSalus provide information related to such a defense in discovery. In fact, ViSalus objected to any classwide discovery that would touch on whether it had obtained consent, and ViSalus refused to produce consent records. *See, e.g.*, ex. 1 (ViSalus response to interrogatories) (refusing to answer interrogatory on this topic), 6-7; ex. 2 (ViSalus response to requests for production), 8-9 (refusing to produce documents on this topic). And although ViSalus filed a motion to amend its answer to add a prior express consent defense about three years into the case, it later withdrew the motion and

expressly represented that it would not raise this defense at trial. [3]  Dkt. 145 (Notice of

Withdrawal of Motion for Leave to Amend Answer) at 2.  At every possible turn,

ViSalus chose to forego the right to assert consent as a defense to Ms. Wakefield's and

the class' claims.

In addition, ViSalus did not present any evidence of consent at trial.  Nor did

ViSalus propose jury instructions relating to its consent defense, seek to make a proffer

of evidence of consent, or otherwise create a record that might allow this Court (or the

Ninth Circuit, in the event of an appeal) to take evidence of consent into account when

determining class certification on the existing record. [4]  (In fact, ViSalus represented to

the Court during litigation over motions *in limine* that it would not present such evidence,

and the Court based its decisions in part on those representations.  Dkt. 269, at 5-6.)

Accordingly, on the current pretrial and trial record, there is no consent defense—

and no evidence of consent—that the Court could (much less would need to) consider

when deciding ViSalus' motion to decertify.  As a result, none of the arguments or

---

[3] As Plaintiff explained in her opposition to ViSalus' Motion to Amend, Plaintiff would have been severely prejudiced if ViSalus had been allowed to raise consent as a defense at this late stage.  Dkt. 138 at 13-17.  For example, Plaintiff would have sought additional discovery on the issue of consent, including by moving to compel ViSalus to produce all the copies of screenshots purportedly evidencing consent, which ViSalus withheld during discovery on grounds of burden.  *See* Dkt 139-1 (September 1, 2017 Excerpts of Defendant's Third Supplemental Responses and Objections to Document Requests).  Further, Plaintiff lost the opportunity to dispense the issue of consent on a motion for summary judgment, which she would have filed for the reasons more fully explained in her opposition papers.  Dkt. 138 at 15.

[4] ViSalus was of course aware of its pending request for a retroactive waiver, and mentioned it many times in its pretrial submissions and pretrial hearings.  Accordingly, ViSalus was aware of the potential need to make such a record, and its strategic decision not to do so is not a reason to give it a redo.

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

evidence ViSalus raises in its supplemental briefing could possibly have any bearing on

ViSalus' motion to decertify.  *See True Health Chiropractic, Inc. v. McKesson Corp.*,

896 F.3d 923, 931 (9th Cir. 2018) (in assessing consent under the TCPA, "we assess

predominance by analyzing the consent defenses [the Defendant] has actually advanced

and for which it has presented evidence.").  For example, because there is no consent

defense at issue, there will be no need to decide "which class members qualify for the

waiver," Supplemental Brief at 7, or whether whatever consent class members may have

provided qualifies as "prior express consent" following the waiver, *id.* at 8-15). [5]

* * *

In sum, because the issue of consent is not part of the current pretrial or trial

record, the Court should not (and cannot) consider it in deciding ViSalus' motion to

decertify the class.

If ViSalus wants the Court to consider such evidence in deciding certification, it

would need to (1) move for and obtain a new trial following entry of judgment, *see* Fed.

R. Civ. P. 59; (2) move for and obtain permission to amend its answer to raise a consent

---

[5] In addition, Federal Rule of Civil Procedure 37(c)(1) precludes ViSalus from relying on its new evidence of consent in this brief.  ViSalus' latest decertification argument relies on documents that it did not produce in discovery.  Under Rule 37, if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion unless the failure was substantially justified or harmless.  ViSalus' failure to produce the documents it now proffers in its supplemental briefing is neither harmless nor justified.  Even though Ms. Wakefield sought to obtain discovery of ViSalus' purported consent records, ViSalus refused to turn over any such documents.  Moreover, one declarant—Aldo Moreno—was not included on ViSalus' initial disclosures, and Ms. Wakefield never had the opportunity to depose him with respect to class certification or the merits.  The Court should not countenance ViSalus' extreme sandbagging.

defense at that new trial; (3) move for and obtain permission to reopen discovery so that

the parties can take discovery on this issue in advance of that new trial; and then (4)

actually present such evidence, to the extent it exists, at the new trial.  (Moreover, should

ViSalus attempt to do this at the appropriate time, Ms. Wakefield will demonstrate that

the Court should deny such relief at every step and affirm the judgment). [6]

  **B.**  **If ViSalus had raised and presented a consent defense, this defense**
     **would not be a reason to decertify the class (and would instead confirm**
     **that this class should proceed as a class action).**

    Moreover, if it had been presented, ViSalus' consent defense would not provide a

reason to decertify the class.

    ViSalus' primary argument is that "individual issues [would] predominate on

consent."  ViSalus Supplemental Brief, 8.  The purportedly individual issues ViSalus

says would have to be decided all boil down to whether a particular class member

qualifies for the waiver and whether the form that class member used to sign up qualifies

as consent under the standard that ViSalus contends applies under the waiver.  *Id.* at  7-8.

These are common (not individual) questions with common answers subject to common

proof.  Indeed, at most, the jury would have to determine whether a handful of different

---

[6] Notably, that the FCC did not grant ViSalus' waiver until after trial is entirely
ViSalus' own doing.  ViSalus waited over two years after the declaratory ruling it
contends put it on notice of the need for a waiver—and just under two years after this
case was filed—to even request a waiver from the FCC in the first instance.  *Compare*
Dkt. 171-1 (ViSalus Petition for Waiver) (submitted September 13, 2017) *with In the
Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30
F.C.C. Rcd. 7961, 8014 (2015) (issued June 18, 2015) (clarifying that "telemarketers
should not rely on a consumer's written consent obtained before the current rule took
effect if that consent does not satisfy the current rule"); Dkt. 1 (Complaint) (filed October
1, 2015).

forms (pages 10-11) constituted prior express consent under the applicable standard.

Each form would have been used by thousands (if not tens or hundreds of thousands) of

class members.  And the jury's determination as to whether the form used qualifies as

consent would apply to each class member who used the form.

Accordingly, far from being an individual issue, whether or not the handful of

forms ViSlaus claims it used—each applying to thousands of class members—constitutes

prior express consent under the pre-2013 consent standard is a common question subject

to common proof.  It further confirms that common questions predominate over

individual ones.  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932

(9th Cir. 2018) (concluding that consent is a common question with a common answer

where [c]onsent, or lack thereof, is ascertainable by simply examining the product

registrations and the EULAs."); "); *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587

(N.D. Ill. 2018) ("[I]f the defendant obtained the class members' consent for calls in a

uniform manner, consent can be resolved on a class-wide basis.").

ViSalus complains that its purported records of consent would have to be

aggregated, summarized, and cross-checked before they could be used to provide class-

wide proof of consent (or lack of consent).  But this does not change the fact that they are

common records (the same forms) that can be used to answer common questions (consent

for thousands of class members).  And records are routinely summarized and analyzed

before they are used to provide proof in class actions.

ViSalus also contends that because it has no record that promoters who signed up

online before October 2013 gave any type of consent, each class member will need to be

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

"individually examined" on this issue.  ViSalus Supplemental Brief, 9.  But this is not an argument showing a need to decertify, but rather an admission that the defense would fail.  To prevail on its written consent defense, ViSalus must show that it had written records of consent at the time it placed the call.  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (in assessing consent under the TCPA, "we assess predominance by analyzing the consent defenses [the Defendant] has actually advanced and for which it has presented evidence."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (holding that in the absence of any records of consent by defendant, consent is a common issue with a common answer); *see In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C Rcd 7961, 7990 (F.C.C. July 10, 2015) ("we emphasize that regardless of the means by which a caller obtains consent, under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent").  Accordingly, because by ViSalus' admission it lacks records that it had prior written consent at the time it made the calls, its consent defense fails.  There is no need to individually examine anyone on this topic.

Finally, the cases ViSalus cites are inapplicable.  In *Brodsky,* there was a unique, "thorny" consent issue that actually required individual testimony—examining whether, based on their individual circumstances, certain fax recipients were employees or independent contractors and therefore subject to a contract allegedly granting consent to receive faxes.  *Brodsky v. Humanadental Ins. Co*., 269 F. Supp. 3d 841, 846 (N.D. Ill.

17

2017).  There is no such issue here.  In *NEI Contracting,* the alleged consent was customers' "actual knowledge" that they were bring recorded—an issue that is specific to each individual customer and would therefore require individual testimony from each customer, not mere aggregation of records.  *Nei Contracting & Eng'g v. Hanson Aggregates, Inc.*, No. 12-cv-01685-BAS(JLB), 2016 U.S. Dist. LEXIS 60624, at *5 (S.D. Cal. May 5, 2016).  In *Simon,* the defendant alleged that calls were made to members who "orally provided express permission."  S*imon v. Healthways, Inc.*, No. 14-cv-08022-BRO (JCx), 2015 U.S. Dist. LEXIS 176179, at *16 (C.D. Cal. Dec. 17, 2015).  In contrast to written records, such oral permission would require "hundreds of mini-trials" to prove.  *Id.* at 22.  And in *Sandusky,* the defendant produced over "450,000 pages of *various forms*" (i.e., many different types of forms) purportedly showing consent for "several thousand" class members.  *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 468-69 (6th Cir. 2017); *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc*., No. 3:13-cv-2085, 2016 U.S. Dist. LEXIS 1864, at *12 (N.D. Ohio Jan. 7, 2016) ("customers consented through a variety of different forms, completed in unique ways at different times").  There, trial would have required analyzing each of the many form types to "discern[] which provide the requisite consent."  *Sandusky,* 863 F.3d at 469.  Here, ViSalus has produced only a few different types of forms, for only about 30 purported class members.  This case is not even close to *Sandusky.*  Instead, it is like *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 932 (9th Cir. 2018), where the Ninth Circuit held that a few different types of alleged consent forms are common (not individual) evidence.  *Id*.; *see Torres v. Mercer*

*Canyons, Inc.*, 835 F.3d 1125, 1137 n.5 (9th Cir. 2016) (evidentiary showing that 2 members of a 600 person class lacked claim did not demonstrate that the class was empirically overbroad).

### C.    The FCC's waiver is irrelevant to ViSalus' consent defense, because it does not apply to any of the claims asserted in this case.

In addition, the FCC's waiver has no relevance at all because it does not apply to this case.

*First*, the FCC, an administrative agency, does not have the authority to take away a statutory remedy provided by Congress.  "[T]he FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action; at most, the FCC can choose not to exercise its own enforcement power.  It would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court."  *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2015).

*Second*, by its own terms, the FCC's order on ViSalus' petition grants a waiver of the rules implementing the TCPA—and not of the requirements of the TCPA itself.  *See* Dkt. 321-1 (FCC Order re ViSalus Petition for waiver), 5 ("we find good cause exists to grant individual retroactive waivers of section 64.1200(a)(2) of the Commission's rules"). This makes sense because the FCC does not even arguably have the authority to waive the requirements of a statute duly enacted by Congress.  This case, however, does not involve violations of the FCC's regulations implementing the TCPA.  It involves

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

violations of section 227(b) itself—the statute, not the FCC's rules implementing the statute. *See* 47 U.S.C. 227(b)(1)(A). Moreover, the statute itself—not the FCC's rules implementing it—is what provides for the private right of action that the class asserts in this case. *See* 47 U.S.C. 227(b)(3). Accordingly, the FCC's order on waiver does not (and could not possibly) waive the requirements of prior express consent at issue in this case. Those requirements come directly from the statute, not from any rules that the FCC could arguably waive. *Cf. PDR Network LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019) (FCC orders interpreting statutory provisions not entitled to binding deference in private litigation).

*Third*, at the time the FCC issued its waiver, the statutory rights at issue had already been adjudicated and vested. Taking away such a vested right would violate the Fifth Amendment.

## III.   Conclusion.

In sum, the FCC's order on ViSalus' retroactive waiver does not deprive Ms. Wakefield of standing or affect the analysis under Rule 23. Accordingly, the Court should deny ViSalus' motion to decertify and should enter judgment based on the jury's verdict.

Date: July 15, 2019

Respectfully submitted,

By: /s/ *Simon Franzini*

DOVEL & LUNER, LLP
Simon Franzini, Cal. Bar #287631*
simon@dovel.com

Plaintiff's supplemental brief in opposition to ViSalus' motion to decertify

Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
Jonas Jacobson, Cal. Bar #269912*
jonas@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

EDELSON PC
Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
Lily E. Hough, SBN #315277*
lhough@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

FORUM LAW GROUP
Scott F. Kocher, OSB #015088
Stephen J. Voorhees, OSB #150595
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel/Fax: (503) 445-2120

* admitted *pro hac vice*

*Attorneys for Plaintiff Wakefield and the Certified Class*