Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
Telephone: 310.312.4000
Facsimile: 310.312.4224

John Maston O'Neal (pro hac vice)
john.oneal@quarles.com
Zachary S. Foster (pro hac vice)
zachary.foster@quarles.com
QUARLES & BRADY LLP
Two N. Central Avenue
One Renaissance Square
Phoenix, Arizona 85004-2391
Telephone: 602.229.5200
Facsimile: 602.229.5690

*Attorneys for Defendant*
ViSalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated, | No.  CV No. 3:15-cv-01857-SI |
| Plaintiff, | **DEFENDANT'S REPLY SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DECERTIFY THE CLASS** |
| vs. | |
| VISALUS, INC., a Nevada corporation, | Oral Argument Requested |
| Defendant. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ................................................................................................................2

    A. Plaintiff Was Not Injured and Lacks Standing ...............................................2

    B. Plaintiff Provided Prior Express Consent .......................................................9

        1. Governing Law Shows that Plaintiff Gave Prior Express Consent ............9

        2. Judicial Estoppel Does Not Apply ...........................................................14

        3. Plaintiff Did Not Provide "Instructions to the Contrary" .........................16

    C. Individual Issues of Consent Predominate Requiring Decertification...................18

    D. ViSalus Did Not Waive a Consent Defense .........................................................21

    E. The FCC Waiver Is Relevant and Binding .........................................................24

III. CONCLUSION.............................................................................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alvarado v. Credit Prot. Ass'n, L.P.*,
No. 8:14-CV-447-T-33TGW, 2015 WL 1815863 (M.D. Fla. Apr. 22,
2015) ...................................................................................................................16, 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................7

*Baird v. Sabre*,
995 F. Supp. 2d 1100 (C.D. Cal. 2014), *aff'd*, 636 F. App'x 715 (9th
Cir. 2016) ...........................................................................................................10

*Bais Yaakov of Spring Valley v. Graduation Source, LLC*,
No. 14-CV-3232 (NSR), 2016 WL 1271693 (S.D.N.Y. Mar. 29, 2016)...........24, 25

*Bepple v. Shelton*,
No. 3:15-CV-727-SI, 2016 WL 8674613 (D. Or. Aug. 5, 2016)..........................23

*Big Horn Cty. Elec. Co-op., Inc. v. Adams*,
219 F.3d 944 (9th Cir. 2000) .............................................................................22

*Black Faculty Ass'n of Mesa Coll. v. San Diego Comty. Coll. Dist.*,
664 F.2d 1153 (9th Cir. 1981) .............................................................................7

*Blue Rhino Global Sourcing, Inc. v. Best Choice Prods.*,
No. 1:17CV69, 2018 WL 4784006 (W.D.N.C. June 20, 2018) ............................21

*Boyle v. Madigan*,
492 F.2d 1180 (9th Cir. 1974) .............................................................................8

*Brodsky v. HumanaDental Ins. Co.*,
269 F. Supp. 3d 841 (N.D. Ill. 2017) ...................................................................24

*Columbia Sportswear North America, Inc. v. Seirus Innovative
Accessories, Inc.*,
265 F. Supp. 3d 1196 (D. Or. 2017) ...................................................................22

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967)........................................................................................21, 22

*Eakin Enters., Inc. v. Specialty Sales LLC*,
No. 1:11–CV–02008–LJO–SKO, 2012 WL 2445154 (E.D. Cal. June
26, 2012) ...........................................................................................................14

*Elsa Polo v. Innoventions Int'l LLC*,
No. CV 13-830-ABC RNBX, 2014 WL 1778944 (C.D. Cal. May 1,
2014), rev'd and remanded on other grounds, 833 F.3d 1193 (9th Cir.
2016) ...............................................................................................................7, 8

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ...........................................................................14, 15

*Huyge v. Gold's Gym Franchising, LLC*,
   No. CV-13-02378-PHX-SRB, 2014 WL 11515701 (D. Ariz. July 3,
   2014) ....................................................................................................................13

*In the Matter of Rules and Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*,
   10 F.C.C. Rcd. 12391 (1995) ...............................................................................12

*In the Matter of Rules and Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*,
   27 F.C.C. Rcd. 1830 (2012) .............................................................................12, 13

*In the Matter of Rules and Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*,
   27 FCC Rcd. 1830 (2012) ......................................................................................25

*In the Matter of Rules and Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*,
   30 F.C.C. Rcd. 7961 (2015) .............................................................................11, 17

*In the Matter of Rules and Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*,
   CG02-278, 2019 WL 2490415 (June 13, 2019) .........................................12, 13, 15

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of*
   *1991*,
   7 FCC Rcd. 8752 (1992) ....................................................................................5, 16

*Joe Hand Promotions, Inc. v. Davis*,
   No. C 11–6166 CW, 2012 WL 4803923 (N.D. Cal. Oct. 9, 2012).........................22

*Johnson v. Credit Prot. Ass'n, L.P.*,
   No. 11-80604-CIV, 2012 WL 5875605 (S.D. Fla. Nov. 20, 2012) ........................17

*Johnson v. Oregon Dep't of Human Res.*,
   141 F.3d 1361 (9th Cir. 1998) ..............................................................................15

*Katz v. Am. Honda Motor Co.*,
   No. 15-CV-4410-CBM-RAOX, 2017 WL 3084272 (C.D. Cal. June 29,
   2017) ....................................................................................................................19

*Keilholtz v. Lennox Hearth Prods.*,
   268 F.R.D. 330 (N.D. Cal. 2010)...........................................................................23

*Larson v. Harman Mgmt. Corp.*,
   No. 116CV00219DADSKO, 2016 WL 6298528 (E.D. Cal. Oct. 27,
   2016) ....................................................................................................................10

*Legg v. PTZ Ins. Agency, Ltd.*,
321 F.R.D. 572 (N.D. Ill. 2017)................................................................5, 6

*Lennartson v. Papa Murphy's Holdings, Inc.*,
No. C15-5307 RBL, 2016 WL 51747 (W.D. Wash. Jan. 5, 2016)........................11

*Lierboe v. State Farm Mutual Insurance Co.*,
350 F.3d 1018 (9th Cir. 2003) ...................................................... passim

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................7, 8

*Lynch v. Banks*,
No. CV 09-2133-DOC (PJW), 2010 WL 1642979 (C.D. Cal. Mar. 2,
2010) ................................................................17

*Masayesva for & on Behalf of Hopi Indian Tribe v. Hale*,
118 F.3d 1371 (9th Cir. 1997) ................................................................15

*Morris v. California*,
966 F.2d 448 (9th Cir. 1991) ................................................................14

*N.L.R.B. v. Food Store Emps. Union, Local 347*,
417 U.S. 1 (1974)................................................................22

*NEI Contracting & Engineering v. Hanson Aggregates Pacific Southwest,
Inc.*,
926 F.3d 528 (9th Cir. Jun. 5, 2019) .............................................. passim

*NEI Contracting and Eng'g., Inc. v. Hanson Aggregates, Inc.*,
12-CV-01685-BAS(JLB), 2016 WL 2610107 (S.D. Cal. May 6, 2016),
*aff'd sub nom. NEI Contracting & Eng'g, Inc. v. Hanson Aggregates
Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019) ........................................23

*Nike, Inc. v. Sketchers U.S.A., Inc.*,
No. 3:16-CV-007-PK, 2017 WL 7275389 (D. Or. Nov. 14, 2017) ........................21

*PDR Network LLC v. Carlton & Harris Chiropractic, Inc.*,
139 S. Ct. 2051 (2019)................................................................26

*Perez v. Rash Curtis & Assocs.*,
No. 16-CV-03396-YGR, 2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ................22

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
65 F. Supp. 3d 482 (W.D. Mich. 2015) ................................................24

*Pinkard v. Wal-Mart Stores, Inc.*,
No. 3:12-CV-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9,
2012) ................................................................10

*Reyes v. Educational Credit Mgmt. Corp.*,
--- Fed. Appx. ---, No. 17-56930, 2019 WL 3305188 (9th Cir. Jul. 23, 2019) .................................................................................................3, 4, 8

*Rissetto v. Plumbers & Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) .................................................................15

*Roberts v. Paypal, Inc.*,
No. C 12–0622 PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013)...........................10, 11, 13

*Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*,
No. 3:13-cv-2085, 2016 WL 75535 (N.D. Ohio Jan. 7, 2016) ..............................19

*Satterfield v. Simon & Schuster*,
569 F.3d 946 (9th Cir. 2009) .................................................9, 10, 11, 25

*Sherman v. Yahoo! Inc.*,
No. 13CV0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ...............................19

*Simon v. Healthways, Inc.*,
No. CV 14-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015) .................................24, 25, 26

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016).................................................................4, 6

*Survivor Media, Inc. v. Survivor Prods.*,
406 F.3d 625 (9th Cir. 2005) .................................................................17

*Trenz v. On-Line Administrators, Inc.*,
No. CV 15-08356-AB (KSX), 2017 WL 3084158 (C.D. Cal. Apr. 26, 2017) .................................11

*United States v. Garcia*,
37 F.3d 1359 (9th Cir. 1994) .................................................................14

*United States v. Jackson*,
167 F.3d 1280 (9th Cir. 1999) .................................................................14

*Van Patten v. Vertical Fitness Grp., LLC*,
22 F. Supp. 3d 1069 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017) ................................. passim

*Winner v. Kohl's Dep't Stores, Inc.*,
No. CV 16-1541, 2017 WL 3535038 (E.D. Penn. Aug. 17, 2017)......................5, 6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971).................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

47 U.S.C. § 227(a)(4)........................................................................................................12

47 U.S.C. § 227(b)(1)(A)..............................................................................................12, 25

47 U.S.C. § 227(b)(1)(B)..........................................................................................5, 12, 25

**RULES AND REGULATIONS**

47 C.F.R. § 64.1200(a)(1)(iii)..........................................................................................12

47 C.F.R. § 64.1200(a)(2)................................................................................................12

47 C.F.R. § 64.1200(a)(3)................................................................................................12

47 C.F.R. § 64.1200(c)....................................................................................................12

47 C.F.R. § 64.1200(f)(8)................................................................................................12

47 C.F.R. § 64.1200(f)(8)(i)(A)......................................................................................11

Fed. R. Civ. P. 23....................................................................................................2, 3, 20

Fed. R. Civ. P. 23(c)(1)(A)..............................................................................................22

Fed. R. Civ. P. 59(b)........................................................................................................24

**OTHER AUTHORITIES**

U.S. Const. amend. V.......................................................................................................24

## I.    INTRODUCTION

ViSalus' Motion to Decertify (Dkt. 306, 323) explains why the class should be decertified and why Plaintiff can no longer satisfy her burden of showing that a class action is appropriate.  The trial of Plaintiff's individual claim demonstrated the predominance of individual issues that preclude a class action, including, (1) whether each class member was called on a residential or mobile line, and (2) if residential, was the line primarily used as a business line; (3) whether the class member received a prerecorded or "Press 1" telemarketing message and did the message actually play; and (4) does each class member have standing. ViSalus also demonstrated that Plaintiff's claims are not typical of the class, Plaintiff is not an adequate class representative given an obvious conflict with the class, numerosity and commonality are no longer satisfied, and finally, that a class is neither manageable nor superior. These grounds amply suffice for decertification.

But there is more—after briefing on decertification, the Federal Communications Commission granted ViSalus a retroactive waiver from the Commission's "prior express written consent" requirements applicable to prerecorded telemarketing messages made on or after October 16, 2013.  In granting ViSalus a waiver, the FCC changed the consent standard applicable to this case to the lower standard of "prior express consent" and did so retroactively. As a result, consent is now a key issue.  While decertification can be granted for any of the arguments presented in the original motion, the waiver brings to light *additional* compelling reasons for decertification.  (*See* Dkt. 327).  In particular, the FCC's waiver underscores that individual issues overwhelm any common questions (of which there is none) in determining whether class members provided "prior express consent" to Visalus.

Plaintiff argues in opposition that she did not provide prior express consent to be contacted because she did not select certain communication preference on her promoter application form.  Similarly, she argues that she did not provide prior express consent because she provided "instructions to the contrary" when she allegedly told ViSalus not to call her during a phone call.  ViSalus disagrees that Plaintiff did not provide prior express consent, but

regardless of which party prevails on this liability issue, we can be certain that the answer for Plaintiff does not answer the question for any other member of the class. The Court would need to answer these inquiries for hundreds of thousands of other class members. Thus, the critical question of whether prior express consent exists cannot be determined based on common, class-wide evidence. Far from it, these arguments underscore that the case would devolve into endless mini-trials. Thus, the Court must decertify the class under Rule 23 and the decisions interpreting this rule.

In addition to demonstrating the predominance of individual issues, the FCC waiver makes clear that Plaintiff suffered no injury, does not have standing, and is not a member of the class she purports to represent. On this ground alone, binding Ninth Circuit authority *mandates* decertification. Plaintiff cannot escape the FCC's waiver by arguing that ViSalus "waived" a consent defense or that the waiver is somehow "irrelevant." As we explain below, none of these arguments saves Plaintiff from the inevitable on decertification.

## II.  ARGUMENT

### A.  Plaintiff Was Not Injured and Lacks Standing

We begin by addressing the threshold issue of standing. ViSalus has demonstrated that Plaintiff did not suffer an injury in fact and thus, Plaintiff lacks the requisite of a case or controversy.[1] Because Plaintiff lacks standing, binding Ninth Circuit authority requires that the class be decertified.

ViSalus previously cited *Lierboe v. State Farm Mutual Insurance Co.*, 350 F.3d 1018 (9th Cir. 2003). There, the plaintiff filed a class action against State Farm "seeking payments for insureds whose claims State Farm had limited by refusing to 'stack' more than one policy." *Id.* at 1020. The district court certified a class and State Farm appealed. The Ninth Circuit stayed the appeal while the Montana Supreme Court considered the threshold question of whether the plaintiff had a stacking claim. The Montana Supreme Court held that the plaintiff did not have a

---

[1] *See* Def. Supp. Br., Dkt. 327 (herein "Def.'s Supp. Br.") at 3–7.

"stacking" claim because one of the policies afforded no coverage. *Id.* at 1021. Consequently, the court held that the plaintiff did not have a claim as a matter of law and lacked standing. *Id.* at 1022. Further, because the plaintiff lacked standing, the court held that the class must be decertified. *Id.* at 1022–23.

*Lierboe* has been reaffirmed by the Ninth Circuit twice in the last two months alone. Finding *Lierboe* "dispositive," the Ninth Circuit held in *NEI Contracting & Engineering v. Hanson Aggregates Pacific Southwest, Inc.*, 926 F.3d 528, 532 (9th Cir. Jun. 5, 2019) ("*NEI Contracting*") that "when a class is certified and the class representatives are subsequently found to lack standing, the class should be decertified and the case dismissed."

Just last week, the Ninth Circuit decided *Reyes v. Educational Credit Management Corp.*, __ F. App'x __, No. 17-56930, 2019 WL 3305188 (9th Cir. **Jul. 23, 2019**). In this case, the defendant appealed the district court's order certifying a class action for violations of California's Invasion of Privacy Act (CIPA). The Ninth Circuit found that the "district court abused its discretion in certifying the class without resolving [the merits of Plaintiff's CIPA claim]." 2019 WL 3305188, at *1. In vacating certification, the Ninth Circuit noted that the district court "has an obligation [under Rule 23] to ensure that the named plaintiff is a member of the class he seeks to represent" and that "[b]ecause a class action cannot go forward without a named plaintiff, a putative class action lacking an appropriate named plaintiff should be dismissed." *Id.* (citing *Lierboe*, 350 F.3d at 1023 and *NEI Contracting*, 926 F.3d at 532). Since it was "not clear that Reyes is a member of the class he seeks to represent or has a CIPA claim at all," the court remanded the case. The Ninth Circuit made clear that if the plaintiff does not have an injury, "he cannot be a member of the class" and "the lawsuit should be dismissed." *Id.* (citing *Lierboe*, 350 F.3d at 1023).

Here, Plaintiff consented to receive calls from ViSalus.[2] Specifically, ViSalus demonstrated that in light of the FCC waiver, ViSalus only needed Plaintiff's "prior express

---

[2] *Id.* at 4–5.

consent" to contact her by phone (rather than the more demanding "prior express **written** consent"), which consent was satisfied by Plaintiff's own testimony that she voluntarily provided her telephone number to ViSalus when she submitted a promoter application. Because Plaintiff consented to receive these calls, Plaintiff has no injury as a matter of law. Ninth Circuit precedent thus requires decertification and dismissal. *Lierboe*, 350 F.3d at 1022–23 (class certification order "must be vacated" where named plaintiff had no injury); *NEI Contracting*, 926 F.3d at 532; *Reyes*, 2019 WL 3305188, at *1.

Plaintiff attempts to shift the issue away from one of standing—for which Plaintiff continues to bear the burden of proof and which Plaintiff cannot satisfy—to one involving an affirmative defense of consent, which, according to Plaintiff, solely "turns on the Plaintiff's allegations."[3] In doing so, Plaintiff concludes that even if ViSalus had consent to call Plaintiff (which it did), this would not deprive Plaintiff of standing. Plaintiff is wrong.

<u>First</u>, to establish standing, Plaintiff must demonstrate that she suffered a concrete and particularized injury.[4] The Supreme Court has stated that "standing requires a concrete injury even in the context of a statutory violation," and that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo v. Robins*, 136 S. Ct. at 1549. A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement. *Id.* Given the FCC waiver and the undisputed evidence that Plaintiff provided her express consent to be called, Plaintiff cannot establish that she suffered any injury.

No violation of the TCPA lies, and therefore no injury exists, where the plaintiff has provided prior express consent to be called. The statutory text, FCC guidance, and case law have made this clear. Specifically, the TCPA prohibits any person from initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message

---

[3] Pl. Supp. Br., Dkt. 333 (herein "Pl. Supp. Br.") at 2–3 (italics omitted).

[4] Def. Supp. Br. at 3–4 (citing *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

**without the prior express consent of the called party[.]**" 47 U.S.C. § 227(b)(1)(B) (emphasis added). Likewise, the FCC has long held that "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992).

The case of *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), cited by Plaintiff, only confirms this. In 2009, the plaintiff in *Van Patten* signed up for a gym membership and provided his cellphone number as part of the application. *Id*. at 1040, 1046. Plaintiff cancelled his membership three days later. *Id*. at 1040. Three years later, in 2012, the defendant sent text messages inviting former members to return. *Id*. at 1040–41. The Ninth Circuit held that the plaintiff, by providing his telephone number, consented to the text messages. *Id*. at 1046.

*Van Patten* stressed that the TCPA provides redress for harm caused by "unsolicited" calls—i.e., calls made without prior express consent. *Id*. at 1042 ("A call or text is not unsolicited, however, where the recipient gave the sender prior express consent.") (quotations omitted). *See also id.* at 1043 ("The TCPA establishes the substantive right to be free from certain types of phone calls and texts **absent consumer consent**.") and ("Congress identified **unsolicited** contact as a concrete harm, and gave consumers a means to redress this harm.") (emphasis added to both). But the Ninth Circuit did **not** address the question of whether a plaintiff who received **solicited** calls has standing to sue. In TCPA cases where plaintiffs have consented to receive calls or texts, plaintiffs have been held to lack standing. *See, e.g., Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *6 (E.D. Penn. Aug. 17, 2017); *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017).

In *Winner*, the plaintiffs alleged that the defendant sent multiple telemarketing text messages in violation of the TCPA. 2017 WL 3535038, at *1. The defendant invited consumers to earn shopper rewards by texting a code to defendant. *Id*. at *1–2. Despite the fact that the plaintiffs texted the company in response to its "call to action," they claimed to be "annoyed by

Defendant's messages[,]" that they were never informed that they were enrolling to receive automated text messages to their cellular phones, and that neither plaintiff "intentionally signed up for Defendant's telemarketing text messages." *Id*. at *2. The court found that the plaintiffs' actions satisfied prior express consent and dismissed the case. *Id*. at *7. In doing so, the court held that "[b]ecause [plaintiffs] consented to receiving the texts, Plaintiffs can show no concrete injury-in-fact and thus have not established that they have standing[.]" *Id*. at *6, 8.

In *Legg*, the defendants argued that class certification should be denied because some members of the class lacked standing. The court agreed and held:

> [I]f [a consumer] has expressly agreed and expected to receive calls from defendant, and did receive those calls, the [consumer] has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA. Thus, under *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016), those [persons] would not have suffered a concrete injury.... In the instant case, defendants argue that [consumers] have expressly agreed to receive the calls, that they just did not do so in writing. The lack of a writing does not make the calls unsolicited. **If the class members agreed to receive the calls, they lack a "genuine controversy."**

321 F.R.D. at 577 (citations omitted) (emphasis added).

Similarly, where Plaintiff consented to be contacted by ViSalus, she has no concrete injury and lacks standing. Plaintiff fails to cite any authority holding that a party has standing to sue where the calls are solicited. Binding Ninth Circuit authority mandates that the class certification order be vacated under these circumstances. Tellingly, Plaintiff did not address this binding precedent, including the most recent *NEI Contracting* case, which ViSalus discussed at length.[5] Instead, Plaintiff briefly discussed *Lierboe* and *Min Sook Shin*, and argued that the classes in these cases were decertified because the plaintiffs there "lacked standing—i.e., because there was no case or controversy."[6] On this point, the parties are in accord, as that is precisely the scenario presented here.

---

[5] *See* Def. Supp. Br. at 4, 6–7.

[6] Pl. Supp. Br. at 5–6.

<u>Second</u>, standing does not turn solely on a plaintiff's allegations in her complaint, as Plaintiff contends.[7]  As a jurisdictional requirement, standing must exist—and may be challenged—at any time.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing "must be supported…with the manner and degree of evidence required at the successive stages of the litigation"); *Black Faculty Ass'n of Mesa Coll. v. San Diego Comty. Coll. Dist.*, 664 F.2d 1153, 1155 (9th Cir. 1981) (vacating judgment following trial because plaintiff lacked standing and holding that "[t]o obtain and sustain a judgment, a plaintiff must establish facts sufficient to confer standing").

When a jurisdictional requirement is challenged beyond the pleading stage, a plaintiff "can no longer rest on" the "mere allegations" in her complaint.  *Lujan*, 504 U.S. at 561; *Elsa Polo v. Innoventions Int'l LLC*, No. CV 13-830-ABC RNBX, 2014 WL 1778944, at *4 (C.D. Cal. May 1, 2014), rev'd and remanded on other grounds, 833 F.3d 1193 (9th Cir. 2016) (evidence uncovered during discovery established that the plaintiff lacked standing).  Thus, Plaintiff's allegation in the complaint that she received unsolicited telemarketing calls from ViSalus receives no presumption of truthfulness at this stage of the litigation.  Moreover, the evidence at trial demonstrated that Plaintiff did not suffer an injury and does not have standing. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (the district court must ask itself whether "a fair-minded jury" could find that the claimant had standing on the evidence presented and "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient").

*Elsa Polo* is instructive on this point.  There, the plaintiff originally alleged that she purchased a drug to treat her diabetes and suffered harm when she began taking the drug.  2014 WL 1778944, at *4.  The defendant later challenged her standing on a motion for summary judgment after evidence came to light during discovery, including that she did not actually have diabetes.  Based on this, the court held that the plaintiff lacked standing: "If Plaintiff does not

---

[7] *Id.* at 2–3.

have diabetes, then she cannot have been injured in the manner in which she alleges." *Id.* at *4. Similarly, while Plaintiff alleged that she did not provide consent to Visalus, the evidence revealed otherwise. Indeed, Plaintiff admitted at trial that she willingly provided her telephone number to ViSalus when she signed up to become a promoter. This evidence establishes that Plaintiff lacks standing.[8]

The cases cited by Plaintiff are inapposite for several reasons.[9] <u>First</u>, some of the cases hold that a plaintiff's failure to prove his or her claim does not impact a plaintiff's standing. But here, ViSalus has demonstrated that Plaintiff lacks standing because she provided prior express consent to be called and was never injured as a matter of law. This is not due to a failure of proof as to the merits of her claim. The evidence conclusively shows that Plaintiff never had standing in the first instance. <u>Second</u>, many of the cited cases involve holdings that are specific and exclusive to areas of the law that are not at issue here (e.g., unequal treatment, ERISA law and the filed-rate document). <u>Third</u>, none of the cited cases hold that a party in a TCPA case has standing to sue where, like here, the calls were solicited. Accordingly, the cases cited by Plaintiff should be disregarded.

In short, because Plaintiff suffered no injury and is not a member of the class she purports to represent, Ninth Circuit case law mandates that this case be dismissed. *Lierboe*, 350 F.3d at 1022–23; *NEI Contracting*, 926 F.3d at 532; *Reyes*, 2019 WL 3305188, at *1. *See also Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) ("Until [the named plaintiffs] can show themselves aggrieved in the sense that they are entitled to the relief sought, there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class.").

---

[8] That Judge Brown previously held that Plaintiff had Article III standing based on the allegation that Plaintiff received unsolicited telephone calls from ViSalus is not dispositive, nor does it relieve Plaintiff of her continuing obligation to prove that standing exists. *See Lujan*, 504 U.S. at 561. After class certification, it became clear, as a result of the FCC waiver and her own testimony, that Plaintiff voluntarily provided her number to ViSalus as part of the enrollment process, that the calls were not unsolicited, and that she never had standing, as she had alleged.

[9] Pl. Supp. Br. at 3–5.

### B.    Plaintiff Provided Prior Express Consent

In response to ViSalus' argument that Plaintiff lacks standing, Plaintiff deploys the "throw against the wall" approach, arguing that (1) ViSalus' argument is foreclosed by governing law; (2) ViSalus' argument is foreclosed by judicial estoppel; and (3) Plaintiff provided "instructions to the contrary." Each of these arguments fails.

#### 1.    Governing Law Shows that Plaintiff Gave Prior Express Consent

Plaintiff argues that ViSalus is "flat wrong" that she provided prior express consent, citing *Satterfield* and *Van Patten*.[10] But neither of these cases support her argument.

*Van Patten* is actually on all fours with ViSalus' argument. In *Van Patten*, the plaintiff voluntarily provided his telephone number to a gym on a membership application. Several years after he canceled his gym membership, the gym sent him text messages asking the plaintiff to "come back for $9.99/mo" and to "enter for a chance to win a Nissan XTerra!" The plaintiff argued that he did not provide prior express consent to receive these messages. The Ninth Circuit disagreed. Applying the same prior express consent rules applicable here,[11] the court held, "The text messages at issue here were part of a campaign to get former and inactive gym members to return, and thus related to the reason Van Patten gave his number in the first place, to apply for gym membership." *See Van Patten*, 847 F.3d at 1046.

**The facts in the instant case are strikingly similar to those in _Van Patten_.** Here, Plaintiff testified that she voluntarily provided her telephone number on a promoter application. Several years after she cancelled her promotership, she says she received "winback" calls from ViSalus asking her to "come back as a promoter."[12] "The [alleged] messages at issue here were part of a campaign to get former and inactive [ViSalus] members to return, and thus related to

---

[10] *Id*. at 7.

[11] The court applied the prior express consent standard because the text messages were sent in May 2012, before the new rule changes on telemarketing calls went into effect on October 16, 2013.

[12] *See* Foster Dec. ¶ 4, Exh. 1, Apr. 11, 2019 Trial Tr. (herein "Apr. 11 Tr.") (L. Wakefield testimony) at 227:9–15; 230:7–17; 230:21–231:4; 232:14–21.

the reason [Plaintiff] gave [her] number in the first place, to apply for [promoter] membership." *Id*. If Van Patten provided prior express consent, surely Plaintiff did too. *See also Roberts v. Paypal, Inc.*, No. C 12–0622 PJH, 2013 WL 2384242, at *4 (N.D. Cal. May 30, 2013) (dismissing TCPA claim where "the content of the complained-about text message is closely related to the circumstances under which plaintiff provided his cell phone number"); *Larson v. Harman Mgmt. Corp.,* No. 116CV00219DADSKO, 2016 WL 6298528, at *3 (E.D. Cal. Oct. 27, 2016) ("[T]he FCC modified the implementing regulation to the TCPA [in the 2012 Order] so that the form of a called party's prior express consent depends on the nature of the telephone call.").

Plaintiff's reliance on *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009) is similarly unavailing. "[T]he issue of whether the mere act of providing a cellphone number constitutes 'express consent' did not arise in *Satterfield*." *Baird v. Sabre*, 995 F. Supp. 2d 1100, 1103 (C.D. Cal. 2014), *aff'd*, 636 F. App'x 715 (9th Cir. 2016). Further, "the context of the consent discussion in that case was whether consent to be contacted by one company's 'affiliates and brands' constituted consent to be contacted by a totally unrelated company. The plaintiff signed up for promotions from a ringtone company, Nextones.com, and then received a text from a publishing company promoting Stephen King's latest book. The Ninth Circuit didn't cite the 1992 FCC Order's interpretation of 'express consent,' … it held that 'Satterfield's consent to receive promotional material by Nextones and its affiliates and brands cannot be read as consenting to the receipt of Simon & Schuster's promotional material.'" *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1076–78 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017) (citations omitted).

Numerous courts have distinguished *Satterfield* on similar grounds. *See id.* at 1077 ("But *Satterfield* has less traction where, as in this case, the party being sued is essentially the very party to whom the phone number was given[.]"); *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-CV-02902-CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) ("Unlike Ms. Satterfield, plaintiff in this case sued the party to whom she gave her telephone number. And in that

situation, the *Satterfield* Court explicitly found that express consent existed."); *Roberts*, 2013 WL 2384242 at *4 ("The *Satterfield* plaintiff provided her cell phone number to Nextones in order to receive a free ringtone, and then received a text message from a completely different company (Simon & Schuster) regarding a completely different subject (a Stephen King novel)."). Here, Plaintiff voluntarily provided her phone number to ViSalus, the company that called her. *Satterfield* is not on point.

Next, Plaintiff argues that "prior express consent" requires specific disclosures or reference to marketing.[13] Plaintiff is incorrect—this was not a requirement under the old rules. Prior to the FCC's regulatory changes in 2012, automated telemarketing calls required prior express consent. The new rules effective October 16, 2013, requiring "prior express written consent," provide that businesses must provide a disclosure that automated calls will be marketing in nature.[14] This new requirement would have been unnecessary if the old law for "prior express consent" already mandated this. *Trenz v. On-Line Adm'rs, Inc.*, No. CV 15-08356-AB (KSX), 2017 WL 3084158, at *4 (C.D. Cal. Apr. 26, 2017) (noting that "the requirements for consent . . . varied significantly" for pre- and post-October 2013 calls, and only calls initiated after October 16, 2013 required callers to satisfy "prior express written consent").

In fact, the purpose of the FCC waivers is for prior express consent *previously obtained* to remain valid. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8014 ¶ 101 (2015) (in granting a retroactive waiver, "written consent obtained prior to the current rule's effective date would remain valid even if it does not satisfy the current rule"). *See also Lennartson v. Papa Murphy's Holdings, Inc.*, No. C15-5307 RBL, 2016 WL 51747, at *2 (W.D. Wash. Jan. 5, 2016) (previously obtained consent, that did not satisfy the current rule's requirements, remains valid following FCC's grant of

---

[13] Pl. Supp. Br. at 7.

[14] 47 C.F.R. § 64.1200(f)(8)(i)(A) ("The written agreement shall include a clear and conspicuous disclosure informing the person signing that [b]y executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls…").

retroactive waiver).

The authority Plaintiff cites does not state otherwise. Plaintiff cites a single sentence from the FCC's February 2012 Order, but the selected sentence is taken out of context.[15] The single sentence is in the background section, where the FCC summarized consent principles "in other contexts."[16] The phrase "express permission or invitation"—which Plaintiff conveniently omits from her quote and replaces with "prior express written consent"—is specific to the TCPA's Do-Not-Call Rules and "telephone solicitations."[17] Neither "express permission or invitation" nor "telephone solicitations" are relevant to the TCPA's automated calling provisions at issue here.[18] Further, the sentence quotes a 1995 FCC Order (also omitted from Plaintiff's quotation) that addresses the DNC rules, not automated calling.[19]

The FCC's Waiver Order makes clear that the FCC's primary focus is whether previously granted consent is in written form. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-278, 2019 WL 2490415, at ¶ 1 (June 13, 2019) (noting that

---

[15] Pl. Supp. Br. at 7.

[16] *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1833 ¶ 7 (2012).

[17] 47 U.S.C. § 227(a)(4) (defining "telephone solicitation") & (c) (FCC may establish regulations for Do Not Call, including a DNC database applicable to "telephone solicitations"); 47 C.F.R. § 64.1200(c) (establishing DNC regulations) & (f)(14) (defining "telephone solicitation" for DNC purposes as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services … but such term does not include a call or message … with that person's **prior express invitation or permission**…") (emphasis added).

[18] 47 U.S.C. § 227(b)(1)(A) (titled "Restrictions on use of automated telephone equipment" and providing "prior express consent" standard for mobile phones) & § 227(b)(1)(B) (prior express consent standard for prerecorded messages to residential landlines); 47 C.F.R. § 64.1200(a)(1)(iii) (prior express consent in automated calling provisions applicable to mobile phones) & former § 64.1200(a)(2) (prior express consent required for prerecorded calls to residential landlines unless an exemption applies) (effective until October 16, 2013). The 2012 rule change replaced "prior express consent" with "prior express written consent." *See* 47 C.F.R. § 64.1200(a)(2) & (3), (f)(8) (effective October 16, 2013).

[19] *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12396 ¶ 11 (1995) (discussing "telephone solicitations" and time of day restrictions under DNC rules).

"waivers only apply to calls for which the petitioner had obtained some form of *written* consent") (emphasis original); *see also id.* ¶ 5 (noting that prior express written consent now requires "necessary disclosures"); ¶ 11 (emphasizing that the "waivers do not apply to calls for which there was not some form of *written* consent previously obtained prior to the 2012 rule changes") (emphasis original); ¶ 14 ("[T]here is no dispute in the record that ViSalus obtained *written* consent for the calls at issue[.]") (emphasis added); ¶ 14 ("We thus emphasize that this waiver only applies to calls for which bebe obtained *written* consent.") (emphasis added). Indisputably, Plaintiff provided consent in writing when she provided her telephone number on ViSalus' promoter application.[20]

Thus, the relevant inquiry here is whether ViSalus' calls were within the scope of consent provided. *Van Patten* shows that the calls clearly were, where "[t]he scope of [her] consent included the [alleged] messages' invitation to 'come' back and reactivate [her] [promoter] membership." *Van Patten*, 847 F.3d at 1046. Notably, whether the plaintiff specifically consented to telemarketing calls when he filled out his gym application played no role in the Ninth Circuit's holding that prior express consent was satisfied. *See Van Patten*, 847 F.3d at 1040, 1046. *See also Huyge v. Gold's Gym Franchising, LLC*, No. CV-13-02378-PHX-SRB, 2014 WL 11515701, at *2–3 & n.4 (D. Ariz. July 3, 2014) (plaintiff gave prior express consent by providing phone number on membership agreement, even though it "did not include specific language indicating that he agreed to be contacted"); *Roberts*, 2013 WL 2384242, at *4 ("[T]he court finds that plaintiff consented to receive text messages from [defendant] simply by providing his cell phone number.").

More fundamentally, Plaintiff signed up to be a *promoter* to *promote products* for a multi-level *marketing* company. Her *promotership* required the *promotion* of ViSalus products. Surely, she must have expected to receive calls that would be *promotional* in nature when she

---

[20] *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 34 (2012) (written requirement may be electronic).

voluntarily provided her telephone number in connection with her *promotership*. For Plaintiff to argue otherwise is disingenuous.

Governing law only reinforces the conclusion that Plaintiff provided prior express consent to receive calls from ViSalus and that she has no injury.

### 2. Judicial Estoppel Does Not Apply

Plaintiff argues that the doctrine of judicial estoppel forecloses ViSalus' consent argument because ViSalus made inconsistent statements in its FCC petition "to gain an advantage before the FCC" and "to obtain an advantage in its motion to decertify the class."[21] This is incorrect.

As a preliminary matter, the doctrine of judicial estoppel does not apply to administrative proceedings. "The purpose of judicial estoppel is to protect the integrity of the judicial process." *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991). As such, "[t]here must have existed a prior judicial proceeding at which the party to be judicially estopped took a contradictory position." *United States v. Garcia*, 37 F.3d 1359, 1367 (9th Cir. 1994), receded from on other grounds in *United States v. Jackson*, 167 F.3d 1280 (9th Cir. 1999). *See also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (noting that the party must "succeed[] in persuading a **court** to accept that party's earlier position") (emphasis added). Plaintiff's judicial estoppel argument fails on this basis alone. *Eakin Enters., Inc. v. Specialty Sales LLC*, No. 1:11–CV–02008–LJO–SKO, 2012 WL 2445154, at *7, n.4 (E.D. Cal. June 26, 2012) (judicial estoppel does not apply to non-judicial statements made before the U.S. Patent Office).

Even if judicial estoppel applied to administrative proceedings, the argument still fails. In applying judicial estoppel, the court may consider whether: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the courts. *Hamilton*, 270

---

[21] Pl. Supp. Br. at 7–8.

F.3d at 782–83.  These factors are not satisfied here.

First, ViSalus' decertification arguments are not "clearly inconsistent" with its earlier position.  Plaintiff misconstrues a phrase in a single sentence in ViSalus' FCC petition, in which ViSalus noted that "no particular 'magic language' was required" for prior express consent, except that the consent "must be to receive a marketing call."[22]  ViSalus has consistently argued that no telemarketing disclosures are required to satisfy "prior express consent," especially in light of the fact that telemarketing disclosures are now required under the *new* rules not applicable here.[23]  The reference to "marketing calls" was related to Plaintiff's allegations that she received marketing calls and that consent considers the context in which a phone number is provided.[24]  *See Van Patten*, 847 F.3d at 1046 ("an effective consent is one that relates to the same subject matter as is covered by the challenged calls").  As discussed earlier, the *Van Patten* case compels the conclusion that Plaintiff provided ViSalus prior express consent to be called.

Second, this phrase had no bearing on the FCC's decision to grant ViSalus a retroactive waiver.[25]  The FCC relied on ViSalus' assertion that "there was industry-wide confusion after the 2012 TCPA Order went into effect, that [it] needed more time to obtain new consents under the 2012 TCPA Order, and that [it] would benefit from a retroactive waiver."[26]  Nothing in the FCC's Order granting ViSalus a waiver is even remotely relevant to this issue.  Instead, the FCC focused on whether previously granted consent to ViSalus was in writing.  *See Hamilton*, 270

---

[22] Dkt. 296-1, ViSalus' Petition for Retroactive Waiver, at 4.

[23] Def. Supp. Br. at 4–6 & n.12.

[24] Even if Plaintiff were correct, judicial estoppel does not apply to inadvertent mistakes. *Johnson v. Oregon Dep't of Human Res.*, 141 F.3d 1361, 1369 (9th Cir. 1998) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply.").

[25] Plaintiff relies on *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996), but the Ninth Circuit has since held that judicial estoppel applies only in cases where a court "relied on, or 'accepted,' the party's previous inconsistent position."  *See, e.g.*, *Masayesva for & on Behalf of Hopi Indian Tribe v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997).

[26] *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-278, 2019 WL 2490415, at *4 ¶ 13 (June 13, 2019).

F.3d at 782–83 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to judicial integrity.") (internal quotations and citations omitted).

Judicial estoppel simply does not apply here.

### 3. Plaintiff Did Not Provide "Instructions to the Contrary"

Both parties agree that prior express consent means the "invitation or permission to be called at the number which they have given, <u>absent instructions to the contrary</u>."[27] To avoid decertification, Plaintiff argues that she provided "instructions to the contrary" because she "affirmatively stated" that she did not want to be contacted by ViSalus by phone (despite voluntarily providing her phone number to ViSalus in connection with her promotership).[28] But this was not Plaintiff's testimony at trial. Plaintiff testified that she voluntarily provided her telephone number on a promoter application for the purpose of becoming a promoter for ViSalus.[29] She testified that she checked the "phone" box on her application (then retracted this statement), then said she "would have checked [the] none [box]" on the application (but not that she did in fact do so), and finally, that she did not check the "phone" box, after being prompted by her counsel to provide the answer he was looking for.[30]

This testimony does not establish that Plaintiff provided clear, affirmative instructions not to be contacted by phone. *See, e.g.*, *Alvarado v. Credit Prot. Ass'n, L.P.*, No. 8:14-CV-447-T-33TGW, 2015 WL 1815863, at *12 (M.D. Fla. Apr. 22, 2015) ("Without an affirmative statement by Plaintiff that he advised Bright House that it could only use his cellular telephone number for installation purposes, Plaintiff is not entitled to claim he gave 'instructions to the

---

[27] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) (emphasis added).

[28] Pl. Supp. Br. at 9.

[29] *See* Foster Dec. ¶ 4, Exh. 1, Apr. 11 Tr. (L. Wakefield testimony) at 216:17–217:5.

[30] *See id.*, Apr. 11 Tr. (L. Wakefield testimony) at 217:12–23. Plaintiff improperly cites to rough trial transcripts. The correct trial transcript cites cited by Plaintiff are 217:12–218:1.

contrary.'"); *Johnson v. Credit Prot. Ass'n, L.P.*, No. 11-80604-CIV, 2012 WL 5875605, at *4 (S.D. Fla. Nov. 20, 2012) (same).  *See also Van Patten*, 847 F.3d at 1048 (plaintiff must "clearly express" the desire not to be called) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7997 ¶ 67 (2015)).  At best, Plaintiff speculates that she "would have" checked the "none" box, not that she actually did so. Speculation is not evidence and does not suffice.[31]  *See Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005); *Lynch v. Banks*, No. CV 09-2133-DOC (PJW), 2010 WL 1642979, at *3 (C.D. Cal. Mar. 2, 2010).

Plaintiff also argues that she told ViSalus to stop calling her, yet ViSalus called her again.[32]  This argument is a red-herring.  Plaintiff provided her prior express consent to be called when she voluntarily provided her phone number on ViSalus' promoter application.  Plaintiff concedes as much.[33]  Plaintiff instead attempts to shift the focus to actions she purportedly took *after* providing her prior express consent to ViSalus.  But any "Do Not Call" request pertains to her "Do Not Call" claim (Count I in her First Amended Complaint), which Plaintiff voluntarily dismissed before trial.[34]  Moreover, Plaintiff testified at trial that she received prerecorded messages and did not speak to a live person, so she could not have made an oral "Do Not Call" request.[35]  This is consistent with trial evidence that Press "1" campaigns were not used until the

---

[31] Even if her testimony was unequivocal (which it was not), this would not have constituted a clear "affirmative statement."  *See Alvarado*, 2015 WL 1815863, at *12; *Johnson*, 2012 WL 5875605, at *4.

[32] Plaintiff's brief states that this call occurred on April 8, but the cited testimony is from April 2. *See* Pl. Supp. Br. at 9.  Plaintiff improperly cites to rough trial transcripts.  The correct trial transcript cites cited by Plaintiff  are 237:5–23.

[33] *See* Foster Decl. ¶ 4, Exh. 1, Apr. 11 Tr. (L. Wakefield testimony) at 266:2–267:2 ("Q: Where in this [promoter application] did you say, 'Don't call me ever again'? A: I didn't. Once you cancel out your business, you would think that they would never call you again.").

[34] *See* Dkt. 257.

[35] *See* Foster Decl. ¶ 4, Exh 1, Apr. 11 Tr. (Wakefield testimony) at 242:3–243:2; 260:16–261:12; 261:24–262:4, 263:1–19; 270:16–271:7.

end of POM and after the calls to Plaintiff in April 2015.[36] If Plaintiff had, in fact, made a "Do Not Call" request, her phone number would have been suppressed in the system and no further calls would have been made.[37]

To summarize, Plaintiff did not provide "instructions to the contrary" when she voluntarily provided her phone number to ViSalus in connection with her promoter application. Because Plaintiff provided prior express consent to be contacted, she has no case or controversy, and therefore no standing. She is not a member of the class she purports to represent, so the class must be decertified.

## C.     Individual Issues of Consent Predominate Requiring Decertification

According to Plaintiff, "ViSalus' consent defense would not provide a reason to decertify the class," but instead "would confirm that this class should proceed as a class action.[38] In Plaintiff's view, the individual issues that ViSalus argues actually boil down to common questions subject to common proof and to a determination on whether a "handful of different forms" constituted prior express consent.[39] But this argument is contradicted by Plaintiff's own arguments.

To begin, the same arguments Plaintiff advances to argue that she did not provide prior express consent only demonstrate the predominance of individual consent issues. Specifically, Plaintiff relies on trial testimony that she "would have checked" the "none" box on her promoter application and did not check the "phone" box.[40] Due to these selections on her application form, she argues, Plaintiff did not provide prior express consent. According to Plaintiff's own

---

[36] *See* Reply in Supp. Mot. to Decertify, Dkt. 323, at 14 n.45; Trial Exh. 31 (Press "1" calls not made until August 2015).

[37] Mot. to Decertify, Dkt. 306, at 31–32 n.81.

[38] Pl. Supp. Br. at 15.

[39] *Id.* at 15–16.

[40] *Id.* at 9 (citing Dkt. 302 (April 11, 2019 Trial Transcript), 83:22–84:11). Plaintiff incorrectly cites to the rough trial transcript. The correct cites cited by Plaintiff are 217:12–218:1. Plaintiff attempts to avoid the conundrum created by her own argument by merely citing to the record, without summarizing her testimony.

argument then, it would need to be determined for each member of the class which boxes they checked on their application form. This only proves ViSalus' argument. **It would be impossible to determine the communication preferences of each class member without an individual, manual review of each application form.** This would not be a matter of simply reviewing a "handful of different forms."

Similarly, Plaintiff argues that she gave "instructions to the contrary" when she purportedly asked ViSalus not to call her again, and therefore did not provide prior express consent. Once again, this proves ViSalus' argument. Just as Plaintiff has argued that it needs to be determined whether she provided "instructions to the contrary," this same inquiry would need to be done for each unique class member. In other words, Plaintiff's argument with respect to her individual claim only demonstrates that individual issues of consent would predominate. Far from being uniform, these are "issue[s] specific to each individual [class member] and would therefore require individual testimony from each [class member]."[41]

In short, Plaintiff's own arguments demonstrate why the class must be decertified. *See* Pl. Supp. Br. at 18 (citing *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*, No. 3:13-cv-2085, 2016 WL 75535, at *12 (N.D. Ohio Jan. 7, 2016) (denying certification where "customers consented through a variety of different forms, completed in unique ways at different times")). *See also Katz v. Am. Honda Motor Co.*, No. 15-CV-4410-CBM-RAOX, 2017 WL 3084272, at *4 (C.D. Cal. June 29, 2017) (class certification inappropriate where individualized inquiry required to determine whether each class member signed a lease agreement, which version they signed and when, what language was contained in the agreement, and when the call was made); *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) (class certification inappropriate where defendant demonstrated that there were varying methods of expressing consent, which would require an individualized inquiry into the consent profile of each class member).

---

[41] *Id.* at 18.

Notwithstanding, Plaintiff's "handful of different forms" argument is overly simplistic. **There is a litany of individual issues that would need to be addressed <u>concerning the issue of consent alone</u>**, such as (1) what was the date and time of the alleged prerecorded or "Press 1" message from several years ago; (2) which phone number on the account received the call; (3) was the call received before October 7, 2015; (4) did the class member submit an enrollment application to ViSalus before October 16, 2013; (5) did the promoter or customer opt out before the alleged call (as Plaintiff contends); (6) did the class member enroll as a customer or a promoter; (7) was the enrollment online, by telephone, or via paper application; (8) which version of the enrollment application did the class member submit; (9) which communication preferences (if any) did the class member provide; (10) did the class member change their communication preferences after enrollment; and (11) if so, what communication changes did they make and were the changes made before the alleged call; (12) did the class member reenroll; and (13) if so, when, how and what application form, along with any communication preferences, was submitted for reenrollment.[42] This is not to mention the other key, threshold issues that would have to be answered for each class member: (14) whether each class member was called on a residential or mobile line, and (15) if residential, was the line primarily used as a business line; (16) whether the class member received a prerecorded or "Press 1" telemarketing message and did the message actually play; and (17) does each class member have standing. Plaintiff does not propose any way—let alone a manageable way—of addressing all of these individual issues.[43]

To conclude, Plaintiff has not and cannot satisfy her burden of proving that Rule 23 requirements continue to be met and that certification is still appropriate.[44] This case will be

---

[42] *See* Def. Supp. Br. at 7–16.

[43] Plaintiff's cases are irrelevant. *See* Pl. Supp. Br. at 17. ViSalus presented thirty examples (and could produce more) showing that certain members of the class provided prior express consent. Def. Supp. Br. at 11–12, n.27. *Cf. NEI Contracting*, 926 F.3d at 531 (nine examples of consent sufficient to deny class certification).

[44] Through silence, Plaintiff concedes the arguments that Plaintiff is not typical, numerosity is

consumed and overwhelmed by countless individual issues.

### D. ViSalus Did Not Waive a Consent Defense

In a continued effort to keep her class claims alive, Plaintiff argues that ViSalus "waived" a consent defense because a consent defense was not raised in ViSalus' answer[45] and was not presented at trial. This argument is unavailing. A "prior express consent" defense to the robocall claim did not exist until the FCC granted ViSalus a retroactive waiver on June 13, 2019.[46] Before then, "prior express written consent" was the standard for prerecorded telemarketing calls.

A defendant obviously cannot waive a defense that is unavailable to it. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143–45 (1967) (defendant could not have waived a "known right" before a decision granting that right); *Blue Rhino Global Sourcing, Inc. v. Best Choice Prods*., No. 1:17CV69, 2018 WL 4784006, at *2 (W.D.N.C. June 20, 2018) ("a defendant does not waive a defense if such defense was unavailable at the time the defendant filed its answer or pre-answer motion"). *Accord Nike, Inc. v. Sketchers U.S.A., Inc.*, No. 3:16-CV-007-PK, 2017 WL 7275389, at *4 (D. Or. Nov. 14, 2017) ("[I]t would be illogical and unfair to argue that [the defendant] erred by not making an argument that both this Court and the parties knew would have been rejected[.]") (internal quotations and citation omitted). In fact, ViSalus could not have

---

not satisfied, and the class is not manageable or superior. *See* Def. Supp. Br. at 16–17.

[45] Plaintiff makes much of the fact that ViSalus withdrew a motion to amend to add consent as an affirmative defense, but that issue arose in a different context. Plaintiff argued that ViSalus was not permitted to raise consent as a defense with respect to Plaintiff's Do Not Call and willfulness claims. Dkt 138. Though ViSalus' amended answer included affirmative defenses that ViSalus complied with the TCPA (Dkt. 41 at 6, ¶¶ 1, 2, 6), in an abundance of caution, ViSalus moved to amend its answer. Dkt. 133. Relying, in part, on Plaintiff's opposition that lack of willfulness is not an affirmative defense, ViSalus withdrew its motion to amend as "moot." Dkt. 145 at 4.

[46] Despite her argument to the contrary (Pl. Supp. Br. at 6, 12, 13 n.3), Plaintiff did pursue discovery on consent issues through discovery responses, the production of documents, and depositions. Dkt. 133 at 8–9; Dkt. 138 at 13 (conceding that Plaintiff "did obtain *some* discovery on the issue of consent") (emphasis original). The discovery responses cited by Plaintiff demonstrate that ViSalus did, in fact, produce documents on consent. *See* Pl. Supp. Br. at 12; Franzini Declaration, Exhs. 1–2, Dkt. 334-1, 334-2.

alleged a "prior express consent" defense without potentially violating the Federal Rules of Civil Procedure.[47]  *See, e.g., Joe Hand Promotions, Inc. v. Davis*, No. C 11–6166 CW, 2012 WL 4803923, at *5 (N.D. Cal. Oct. 9, 2012) (striking affirmative defenses pled without sufficient basis).

The retroactive waiver from the FCC changing the standard from "prior express written consent" to "prior express consent" constitutes an intervening change in the law and thus, there can be no waiver.  *See Big Horn Cty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000) ("[A]n exception to the waiver rule exists for intervening changes in the law."); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1203–04 (D. Or. 2017) ("One exception to the general rule of waiver is when there has been an intervening change in the law recognizing an issue that was not previously available.").  *See generally N.L.R.B. v. Food Store Emps. Union, Local 347*, 417 U.S. 1, 10, n.10 (1974) (recognizing that agencies can promulgate intervening retroactive changes in the law).

Plaintiff also argues that consent evidence was not presented at trial and that a new trial is necessary.[48]  Plaintiff once again confuses merits and class certification issues.[49]  The issue currently before the Court is class decertification.  The relevant inquiry on certification is whether common (and not individual) questions can be met with common answers subject to common proof.[50]  This is an issue for the Court, not the jury, to decide.  Fed. R. Civ. P. 23(c)(1)(A) ("the court must determine by order whether to certify the action as a class action"); *Perez v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2019 WL 1491694, at *7 (N.D. Cal.

---

[47] That ViSalus knew its FCC petition was pending (as did Plaintiff) is of no consequence.  Pl. Supp. Br. at 13 n.13.  *See Curtis*, 388 U.S. at 143–45 (rejecting contention that defendant should have seen "the handwriting on the wall" and preserved defense prior to a change in law).

[48] Pl. Supp. Br. at 12–14.

[49] *See also* Pl. Supp. Br. at 17 ("***To prevail on its written consent defense***, ViSalus must show that it had written records of consent at the time it placed the call…[ViSalus'] consent defense fails.") (emphasis added).

[50] *See* Def. Supp. Br. at 16.

Apr. 4, 2019).  Also, the Court is not limited to evidence presented at trial since decertification is not a jury issue.[51]  *See Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial.").

Nonetheless, Plaintiff's decertification motion ***is*** based on evidence produced at trial.  ViSalus' argument that Plaintiff lacks standing and provided prior express consent is based on Plaintiff's own testimony.[52]  Similarly, ViSalus' argument that individual consent issues predominate is based on the promoter and customer application forms that Plaintiff admitted at trial as well as *examples* of completed forms for some class members that were provided in ViSalus' supplemental submission.[53]

In light of the FCC's retroactive waiver, it is necessary to determine which members qualify for the waiver and which members provided prior express consent.[54]  As explained earlier, based on Plaintiff's own argument, an application-by-application review would need to

---

[51] *See* Pl. Supp. Br. at 10–11.  While the cases cited in Plaintiff's brief may have relied on trial evidence in light of the case posture, they do not stand for the proposition that a decertification motion can only be based on trial evidence.

[52] *See* Def. Supp. Br. at 5 n.11.

[53] *See* Def. Mot. to Decertify, Dkt. 306 at 22 n.62; Def. Supp. Br. at 10–12, nn.19–26.  Plaintiff argues that the Court should not consider these examples.  Pl. Supp. Br. at 14 n.5.  But a district court has discretion to supplement the record.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–32 (1971); *Bepple v. Shelton*, No. 3:15-CV-727-SI, 2016 WL 8674613, at *3 n.3 (D. Or. Aug. 5, 2016).  The submission of these forms was harmless since blank forms were produced during discovery and admitted at trial.  Also, they were produced in response to Plaintiff's arguments that the FCC waiver has no impact on decertification issues.  The completed forms were of limited relevance until a waiver was granted, especially relative to the burden in locating, identifying and producing them.  Dkt. No. 329 (Haule Decl.) ¶¶ 4, 5, 7.  Thus, the production was substantially justified.  *NEI Contracting and Eng'g., Inc. v. Hanson Aggregates, Inc.*, 12-CV-01685-BAS(JLB), 2016 WL 2610107, at *5 (S.D. Cal. May 6, 2016), *aff'd sub nom. NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019) (supplemental evidence on decertification harmless and substantially justified where evidence was "no surprise to Plaintiff," was "burdensome and time-consuming" to produce, and defendant "did not act in bad faith").

[54] *Cf.* Pl. Supp. Br. at 14.

be conducted for each individual class member to determine if they provided prior express consent. **Regardless of whether trial had proceeded with a prior express consent defense or if a new trial is now warranted, the result would be the same on decertification.** In other words, a new trial is not going to change the inevitable on decertification. Moreover, the Court *must* decide the decertification motion *before* entering judgment. *Cf.* Fed. R. Civ. P. 59(b) (motion for new trial must be filed no later than 28 days after the entry of judgment). Based on the current record, decertification is required.

### E. The FCC Waiver Is Relevant and Binding

Relying on *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 498 (W.D. Mich. 2015), Plaintiff argues that (1) the FCC's waiver is "has no relevance at all" because the FCC "does not have the authority to take away a statutory remedy provided by Congress"; (2) the FCC Order only grants a waiver of the rules implementing the TCPA and not the requirements of the TCPA itself; and (3) the waiver somehow violates the Fifth Amendment by depriving Plaintiff of her "statutory rights" that "had already been adjudicated and vested."[55] All three arguments fail.

First, *Stryker* is non-binding, has been rejected as unsound, and its discussion is dicta. *See Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 847 (N.D. Ill. 2017) ("Plaintiff's reliance upon *Stryker* is misplaced. For one thing, no waiver had actually been issued to the defendant in *Stryker*, so its specific discussion of the issue constitutes dicta. This Court is also not convinced that *Stryker*'s analysis of the waiver issue is doctrinally sound."). Plaintiff's argument that the separation of powers prevents an administrative agency, such as the FCC, from retroactively waiving requirements has also been routinely rejected. *See, e.g.*, *Simon v. Healthways, Inc.*, No. CV 14-08022-BRO (JCx), 2015 WL 10015953, at *6–7 (C.D. Cal. Dec. 17, 2015) (rejecting "separation of powers" argument and noting that "the FCC has the authority to grant such a retroactive waiver"); *Bais Yaakov of Spring Valley v.*

---

[55] *See* Pl. Supp. Br. at 19–20.

*Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *4 (S.D.N.Y. Mar. 29, 2016) (rejecting "separation of powers" argument and noting that "the Court is persuaded by the analysis undertaken in *Simon*").

Likewise, the FCC itself addressed this "separation of powers" argument in its Order granting limited waivers of the Solicited Fax Rule and found the argument unavailing:

> At the outset, we dismiss arguments that ... granting waivers while litigation is pending violates the separation of powers as several commenter[s] have suggested. As the Commission has previously noted, by addressing requests for declaratory ruling and/or waiver, we are interpreting a statute, the TCPA, over which Congress provided the Commission authority as the expert agency. Likewise, the mere fact that the TCPA allows for private rights of action to enforce rule violations does not undercut our authority, as the expert agency, to define the scope of when and how our rules apply.

*Bais Yaakov*, 2016 WL 1271693, at *4 (quoting the FCC's Solicited Fax waiver). *See also Simon*, 2015 WL 10015953, at *7 (same).

<u>Second</u>, Plaintiff's assertion that this case does not involve violations of the FCC's regulations implementing the TCPA, but rather involves violations of section 227(b) itself is nonsensical. The language of the statute does not require prior express *written* consent at all. *See* 47 U.S.C. § 227(b)(1)(A) (making it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)…"); 47 U.S.C. § 227(b)(1)(B) (making it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party"). It is the FCC regulations, which interpret the statute, that require prior express *written* consent for marketing calls.[56] And the FCC plainly has the authority to grant waivers from its own rules. *See Bais Yaakov*, 2016 WL 1271693, at *5 ("[O]n its face the TCPA only prohibits the sending of unsolicited faxes. It is the FCC's regulation interpreting the TCPA that extends the protections of the statute to solicited faxes. Thus, it is

---

[56] *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838-40 ¶¶ 20–25 (2012).

within the FCC's authority to determine when and how to apply this regulation, and to waive it for good cause."); *Simon*, 2015 WL 10015953, at *7 ("[T]he retroactive waiver is directly related to the FCC's regulation regarding solicited advertisements; the plain language of the TCPA only requires opt-out notice on unsolicited advertisements.").

Third, Plaintiff's last argument is unintelligible, undeveloped and unsupported. Plaintiff cites no authority supporting the proposition that an FCC waiver violates the Fifth Amendment by depriving Plaintiff of her "statutory rights" which "had already been adjudicated and vested."[57] It is entirely unclear what "statutory rights" Plaintiff refers to, or how or when such "vesting" occurred. Accordingly, this argument should be disregarded.

For these reasons, the FCC's Order granting ViSalus a waiver of its "prior express written consent" rule is directly relevant to this litigation and binding in this matter.[58]

## III.    CONCLUSION

ViSalus previously demonstrated that decertification is warranted in its Motion to Decertify the Class. ViSalus' motion can be granted on any of the grounds presented in its original briefing. The subsequent granting of a retroactive waiver from the FCC merely provides additional reasons to decertify the class.

For the reasons discussed in Visalus' Motion to Decertify, and for the additional reasons presented in its supplemental briefing, the class should be decertified. The Court should dismiss the class claims and dismiss this case in its entirety.

---

[57] Pl. Supp. Br. at 20.

[58] The Supreme Court in *PDR Network LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019), did not decide any issues concerning the deference afforded to agency decisions and remanded the case.

Dated: July 29, 2019        MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Christine M. Reilly
    CHRISTINE M. REILLY
    *Attorneys for Defendant*
    VISALUS, INC.

    John W. McGuinness (pro hac vice)
    jmcguinness@manatt.com
    MANATT, PHELPS & PHILLIPS LLP
    11355 W. Olympic Blvd
    Los Angeles, CA  90064
    Telephone: 310.312.4000
    Facsimile: 310.312.4224

    Joshua M. Sasaki, P.C., OSB No. 964182
    josh.sasaki@millernash.com
    Nicholas H. Pyle, OSB No. 165175
    nicholas.pyle@millernash.com
    MILLER NASH GRAHAM & DUNN LLP
    3400 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
    Portland, Oregon 97204
    Telephone: 503.224.5858
    Facsimile: 503.224.0155

    John Maston O'Neal (pro hac vice)
    john.oneal@quarles.com
    Zachary S. Foster (pro hac vice)
    zachary.foster@quarles.com
    QUARLES & BRADY LLP
    Two N. Central Avenue
    One Renaissance Square
    Phoenix, Arizona 85004-2391
    Telephone: 602.229.5200
    Facsimile: 602.229.5690