DOVEL & LUNER, LLP
Simon Franzini, Cal. Bar #287631*
simon@dovel.com
Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
Jonas Jacobson, Cal. Bar #269912*
jonas@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

(additional counsel listed on next page)

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of a class of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **VISALUS, INC.,** a Nevada corporation, <br><br> Defendant. | No. 3:15-cv-01857-SI <br><br> **Plaintiff's sur-reply to Defendant's supplemental brief on decertification** |

EDELSON PC
Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
Lily E. Hough, Cal. Bar #315277*
lhough@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

FORUM LAW GROUP
Scott F. Kocher, OSB #015088
Stephen J. Voorhees, OSB #150595
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel/Fax: (503) 445-2120

* admitted *pro hac vice*

*Attorneys for Plaintiff Wakefield and the Certified Class*

# Table of Contents

I.  Because ViSalus waived its prior express consent defense, the Court should promptly enter judgment in favor of the class for all 1,850,440 violative calls. ................................................................................................................. 1

    A.  ViSalus cannot amend its answer to add a consent defense under Rule 15, because Rule 15 does not permit amendment to add a defense a party never raised at trial. .............................................................. 2

    B.  ViSalus cannot meet Rule 16's "good cause" standard, because ViSalus was not diligent. ............................................................... 5

    C.  ViSalus relinquished its right to present a consent defense under general principles of waiver. ....................................................... 7

    D.  ViSalus' arguments that its waiver should be excused lack merit. .............. 8

II.  The Court should enter judgment against ViSalus for the 123,758 calls made after October 7, 2015, to which the FCC waiver cannot possibly apply, because there is no just reason to delay entering judgment on these calls. ............................................................................................................. 11

    A.  The Court may enter partial judgment as to a subset of the claims at issue, if there is no just reason to delay entering judgment on those claims. ........................................................................................... 11

    B.  Because the FCC's retroactive waiver cannot possibly apply to at least 123,758 calls made after October 7, 2015, there is no just reason to delay entering judgment on these calls. ..................................... 12

        1.  The jury's verdict was based on ViSalus contact lists showing how many calls ViSalus made using the POM Machine and what outcome the POM Machine assigned to each call. .................. 13

        2.  The jury's verdict necessarily includes Winback calls made to numbers with U.S. area codes that were picked up by an answering machine. ...................................................................... 17

        3.  Undisputed evidence at trial demonstrates that ViSalus made at least 123,758 Winback calls to numbers with U.S. area codes that were picked up by an answering machine after October 7, 2015. ............................................................................. 18

III.  If the Court wants to give ViSalus the opportunity to present a consent defense for the remaining calls, the Court should hold further proceedings on consent—not set aside the jury's verdict, order a new trial, or decertify the class. ........................................................................................................... 20

    A.  ViSalus is unlikely to produce additional evidence of consent that would warrant decertification or a new trial. ........................................... 21

B.    It would be manifestly unfair for the Court to consider the evidence ViSalus provided so far without first giving Ms. Wakefield the chance to cross-examine ViSalus on that evidence and take follow-up discovery. ............................................................................... 25

C.    The Court should not decertify the class or set aside the jury's verdict based on the FCC's retroactive waiver until and unless the waiver becomes final. ................................................................. 27

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

# Table of Authorities

## Cases

*Accord Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981) .......................................................................... 4

*Bellsouth Corp. v. FCC*,
  17 F.3d 1487 (D.C. Cir. 1989) ..................................................................... 26

*Browning Debenture Holders' Committee v. DASA Corp.*,
  560 F.2d 1078 (2d Cir. 1977) ........................................................................ 4

*Cornwell Entertainment, Inc. v. Anchin, Block & Anchin, LLP*,
  830 F.3d 18 (1st Cir. 2016) ............................................................................ 3

*Council Tree Commc'ns, Inc. v. FCC*,
  503 F.3d 284 (3d Cir. 2007) ........................................................................ 26

*Desertrain v. City of Los Angeles*,
  754 F.3d 1147 (9th Cir. 2014) ....................................................................... 2

*Dillon v. Cobra Power Corp.*,
  560 F.3d 591 (6th Cir. 2009) ......................................................................... 3

*Downing v. Papa John's USA, Inc.*,
  945 F. Supp. 2d 675 (E.D. Va. 2013) .......................................................... 23

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................. 4, 11

*Hernandez v. Cowan*,
  200 F.3d 995 (7th Cir. 2000) ......................................................................... 9

*Jackson v. Bank of Hawaii*
  902 F.2d 1385 (9th Cir. 1990) ....................................................................... 4

*Johnson v. Mammoth Recreations*,
  975 F.2d 604 (9th Cir. 1992) ..................................................................... 1, 5

*Kaufman v. Unum Life Ins. Co. of Am.*,
  834 F. Supp. 2d 1186 (D. Nev. 2011) ............................................................ 4

*Krakauer v. Dish Network, L.L.C.*,
  No. 1:14-cv-333, 2018 U.S. Dist. LEXIS 23946 (M.D.N.C. Jan. 25, 2018) ................ 11

*Magana v. Northern Mariana Islands*,
  107 F.3d 1436 (9th Cir. 1997) ....................................................................... 4

*McAdory v. M.N.S. & Assocs.*,
  No. 3:17-cv-00777-HZ, 2018 U.S. Dist. LEXIS 163010 (D. Or. Sep. 23, 2018) ......... 12

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ....................................................................... 12

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000) ................................................................... 5

*Reed v. Columbia St. Mary's Hospital*,
915 F.3d 473 (7th Cir. 2019) .................................................................. 3

*Robinson v. Twin Falls Highway Dist.*,
233 F.R.D. 670 (D. Idaho 2006) ............................................................. 3

*Sadid v. Vailas*,
943 F. Supp. 2d 1125 (D. Idaho 2013) .................................................... 5

*Shea v. Louisiana*,
470 U.S. 51 (1985).................................................................................. 9

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) ................................................................ 12

*Trim Fit, LLC v. Dickey*,
607 F.3d 528 (8th Cir. 2010) .................................................................. 5

*United States v. Amwest Surety Ins. Co.*,
54 F.3d 601 (9th Cir. 1995) .................................................................... 7

*Wood v. Milyard*,
566 U.S. 463 (2012)................................................................................ 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)............................................................................ 3, 4

**Statutes**

47 U.S.C. § 402(a) ................................................................................ 25

**Other Authorities**

5 Fed. Prac. & Proc. *Civ.* § 1278 (3rd ed.) ........................................... 1

**Rules**

Fed. R. Civ. P. 15................................................................................... 1

Fed. R. Civ. P. 54................................................................................... 9

ViSalus waived its consent defense by failing to raise it in its answer.  Moreover, because it never raised its consent defense before or during trial, Rule 15(b) does not permit ViSalus to amend its answer to add a consent defense at this stage.  And what's more, ViSalus cannot meet Rule 16's "good cause" requirement because ViSalus was not diligent in petitioning the FCC for a retroactive waiver, and instead waited over two years before filing its petition.  Because ViSalus "was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992).

If the Court wants to give ViSalus the opportunity to present a consent defense anyway, there is no need for the Court to set aside the jury's verdict and hold a new trial for the calls made after October 7, 2015.  Uncontradicted evidence already in the record demonstrates that the jury's verdict includes at least 123,758 calls made after October 7, 2015, to which the FCC waiver cannot possibly apply.  The Court can enter judgment for those calls based on the jury's verdict, without any further proceedings.

Finally, there is no need to set aside the jury's verdict on any of the remaining calls either.  Depending on what supposed evidence of consent ViSalus has, the FCC's retroactive waiver might have no effect whatsoever on the jury's verdict, or the Court and the parties may be able to resolve its effect on summary judgment or by stipulation.  And if an additional trial is needed, that trial can likely be limited to ViSalus' consent defense.

## I.     Because ViSalus waived its prior express consent defense, the Court should promptly enter judgment in favor of the class for all 1,850,440 violative calls.

ViSalus has waived any chance it had to assert prior express consent as a defense to the TCPA claims of any class member, both as a matter of procedure and of its litigation conduct.

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

## A. ViSalus cannot amend its answer to add a consent defense under Rule 15, because Rule 15 does not permit amendment to add a defense a party never raised at trial.

It is axiomatic that affirmative defenses not pleaded in an answer are waived. *See* 5 Fed. Prac. & Proc. *Civ.* § 1278 (3rd ed.) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case."). Here, ViSalus omitted any mention of prior express consent from its answers to both the original and amended complaints, thus waiving the defense. Dkts. 18, 40.

The Ninth Circuit has held that a party's belated attempt to raise a defense (usually at summary judgment) can be construed as a motion to amend the pleadings under Fed. R. Civ. P. 15. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). But Rule 15 does not contemplate amendments to pleadings *after* trial to add *new* claims or defenses that were not presented to the jury, as ViSalus would require here.

Rule 15(b) governs "amendments during and after trial." [1] Rule 15(b)(1) provides that "[i]f, *at trial*, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended" (emphasis added). Rule 15(b)(2) provides that if "an issue not raised by the pleadings is *tried* by the parties' express or implied consent"—i.e., is raised at trial despite the fact that it was not found in the pleadings—"it must be treated in all respects as if it was raised in the pleadings." Neither provision permits the pleadings to be amended post-trial to add a defense that

---

[1] Rule 15(a) governs "amendments before trial."

was *not* raised during trial in the first place, based on evidence that was not introduced at trial (much less evidence that was not produced in discovery).

Accordingly, the flexibility that Ninth Circuit law affords litigants does not extend to post-trial attempts to add claims or defenses that were not actually raised at trial. *See Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670, 672 (D. Idaho 2006) ("By its terms, Rule 15(b) concerns conforming the pleadings to the evidence on unpled issues where the evidence is presented during *trial* with the express or implied consent of the parties. While the Ninth Circuit has applied Rule 15(b) to *pretrial* motions, it has done so only in cases where the unpled issues have, in fact, been argued during pretrial motions.") (emphasis in original). The Ninth Circuit is not alone: Courts routinely reject attempts to amend pleadings to add claims or defenses not raised until after trial. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 332-33 (1971) (trial court did not err in deeming new defense waived when it was not raised until after trial); *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 479-83 (7th Cir. 2019) (concluding that the district court's decision to entertain an unpleaded affirmative defense at summary judgment was an abuse of discretion because the issue had not been explored in discovery); *Cornwell Entertainment, Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 27 (1st Cir. 2016) (refusing to excuse defendant's failure to raise affirmative defense of qualified privilege until after trial); *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 598-99 (6th Cir. 2009) (district court's decision to permit litigant to amend pleading after trial to add claim not tried was reversible error because "there is no basis in law—statute, rule, or case—for handling an amendment in this manner"); *Browning Debenture Holders' Committee v.*

*DASA Corp.*, 560 F.2d 1078, 1086-87 (2d Cir. 1977) (affirming decision to deny leave to amend complaint after trial to add new claim, in part because the claim was not tried, with or without consent); *Accord Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981) (noting that "the concerns of finality in litigation become more compelling" and likely justify denying leave to amend "after a full trial").

There is a further problem: As the Ninth Circuit has held, unpleaded defenses may be raised in pre-trial motions "only if the delay does not prejudice the plaintiff." *Magana v. Northern Mariana Islands,* 107 F.3d 1436, 1446 (9th Cir. 1997); *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Eleventh hour" assertions of a new defense cause prejudice and warrant denying leave to amend. *Kaufman v. Unum Life Ins. Co. of Am.*, 834 F. Supp. 2d 1186, 1192–93 (D. Nev. 2011) (statute-of-limitations defense waived because it was raised four years into the case, well after the close of discovery).

Here, permitting ViSalus to raise its consent defense would be highly prejudicial. As explained in detail below, it would require reopening discovery and, potentially, an additional trial on consent. Both the need to engage in further discovery and to relitigate previously tried issues have been found to be prejudicial. *Zenith Radio Corp.*, 402 U.S. at 331 (holding that "the prejudice" to the plaintiff "would be substantial" were the defendant allowed to amend its answer after a bench trial to assert a statute of limitations defense, and to grant the motion "hardly comports with the letter or spirit of Rule 15(a)"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990). Thus, even if there

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

were a way to amend the pleadings post-trial, the prejudice to Ms. Wakefield and the class would require denying leave to amend.

**B.      ViSalus cannot meet Rule 16's "good cause" standard, because ViSalus was not diligent.**

Moreover, to amend its answer to add a consent defense, ViSalus would need to meet the "good cause" standard of Rule 16(b).  *See Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1140 (D. Idaho 2013) ("The Court concludes that if a defendant seeks to assert new affirmative defenses . . . after the scheduling-order deadline for amending pleadings has passed, then Rule 16(b)'s good-cause standard applies."); *see Trim Fit, LLC v. Dickey*, 607 F.3d 528, 531 (8th Cir. 2010) (attempt to amend pleading after deadline requires good cause under Rule 16(b)(4)); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (same).

Under controlling Ninth Circuit law, ViSalus cannot meet the "good cause" requirement of Rule 16 unless it can show it was diligent.  *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) ("Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.").  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  *Id*.

ViSalus cannot show that it was diligent, for two reasons.  *First*, ViSalus was not diligent in seeking a retroactive waiver.  Indeed, ViSalus waited two years after the

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

FCC's Order clarifying the prior express consent rule—and almost two years after this case was filed—to seek the retroactive waiver in the first place. Dkt. 177-1 (ViSalus Petition for Retroactive Waiver) (submitted September 17, 2017). ViSalus has not provided (and will not be able to provide) any good reason for this delay. Indeed, many companies sought (and obtained) retroactive waivers years ago. Dkt. 321-1 (FCC Order on Retroactive Waiver), ¶3 (noting that several companies filed petitions seeking a waiver in 2013, "immediately after the effective date" of the rule changes); *id*. ¶6 (discussing additional waivers).

Moreover, ViSalus' delay was highly prejudicial to Ms. Wakefield and the class. Had ViSalus applied for its waiver promptly instead of waiting two years, then the FCC likely would have issued its Order two years ago (around August 2017)—well before the original close of fact discovery. Dkt. 87 (scheduling order) (setting the close of fact discovery for December 6, 2017). And the parties could have taken discovery on consent and presented this defense at trial.

*Second*, ViSalus was not diligent in seeking to amend its answer to add a defense of consent based on the retroactive waiver. Instead of bringing up the issue as soon as its Petition was filed, ViSalus waited an additional two years (until the FCC granted the Petition) before seeking to amend its pleadings to add this defense. ViSalus could have, and should have, sought to amend its pleadings, provided discovery on this issue, and presented evidence of consent (or a proffer of such evidence) at trial, to preserve the issue in the event the Petition was later granted. Again, this was highly prejudicial to Ms. Wakefield and the class: if ViSalus had presented this defense sooner, then Ms.

Wakefield could have obtained specific factual findings from the jury that would have avoided the need for any further proceedings after the waiver was granted (for example, Ms. Wakefield could have taken discovery from ViSalus that would have allowed her to segregate the calls made to class members who enrolled before October 16, 2013 from the ones who signed up after).

### C.    ViSalus relinquished its right to present a consent defense under general principles of waiver.

What's more, the Court can find waiver here even under general waiver principles. Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602 (9th Cir. 1995). "A waived claim or defense is one that a party has knowingly and intelligently relinquished." *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). Waiver extinguishes the claim or defense entirely, while a forfeiture may be excused in the right circumstances (such as through allowing constructive amendment of a pleading). *See id.* at 470-71.

ViSalus' conduct evinces an intentional abandonment of any consent defense. In its motion to amend (filed 10 months after ViSalus petitioned the FCC for a retroactive waiver of its consent rules), ViSalus first contended that it had raised its defense by denying certain allegations in the complaint, specifically that it made calls without obtaining consent, and asserting as a defense that it complied with FCC regulations. Dkt. 133, at 2-3 & n.3. While ViSalus' position was legally incorrect, *see Gilmore v. Liberty Life Assur. Co. of Boston*, No. 13-cv-178-PJH, 2013 WL 12147724, at *1 (N.D. Cal. Apr. 19, 2013) ("denials of liability" are "not proper affirmative defenses"), ViSalus' statements were equally true of its answer to *both* TCPA claims alleged by Wakefield.

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

*See* Dkt. 40, ¶¶ 4, 47.  Yet ViSalus made the apparently strategic decision to assert

consent as a full defense only to Ms. Wakefield's now-dismissed claim under the TCPA's

Do-Not-Call regulations.  Dkt. 133.  In other words, ViSalus contended that its Answer

should be understood to preserve its ability to assert consent as a defense, but when asked

by the Court to more specifically assert the defense, ViSalus explicitly represented that it

would present evidence of consent with respect to the Robocall Class only as a defense to

enhanced damages.  Dkt. 145.  And ViSalus plainly understood that it could amend to

preserve the defense in light of potential future developments, as it represented that it

wished to assert the defense as to an uncertified class in the event the Court's class-

certification order was reversed on appeal.  Dkt. 133, at 4 n.4.  This course of conduct can

only be understood as an intentional waiver of the defense of prior express consent to the

extant class claims in this case.

### D.    ViSalus' arguments that its waiver should be excused lack merit.

ViSalus pushes back against its obvious waiver of a consent defense by arguing

(1) that the defense was previously unavailable, and it cannot be deemed to have waived

an unavailable argument, and (2) its intentional abandonment of the defense is immaterial

because it occurred "in a different context."  ViSalus Reply, 21 n.45.  But in these

circumstances, with its FCC petition pending, ViSalus at least was under a duty to

preserve the defense, and ViSalus is simply wrong that the context of its filing and

withdrawal of the motion to amend render that filing immaterial.

First, as the Supreme Court has noted, the general presumption that judicial

decisions apply retroactively (a presumption that is material only when the decision

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

effects a change in the law) is "subject, of course, to established principles of *waiver*, harmless error, and the like." *Shea v. Louisiana*, 470 U.S. 51, 58 n.4 (1985) (emphasis added). Similar principles should apply here, where, as with a new judicial decision, a supposed change in law is operative. In other words, it is not simply enough to watch and wait until the law changes; litigants must preserve arguments related to reasonably foreseeable changes in law. *See, e.g.*, *Hernandez v. Cowan*, 200 F.3d 995, 997 (7th Cir. 2000) (argument waived despite change in law because failure to preserve argument, even though argument was foreclosed during litigation in district court, was "inexplicable" given "more than merely theoretical" possibility that change in law would occur).

Here, ViSalus' Petition to the FCC for a retroactive waiver was pending for two years before ViSalus sought to rely on the retroactive waiver in its motion to decertify. Similar petitions already had been granted by the FCC (indeed, the entire basis for ViSalus' Petition to the FCC was that it was similarly situated to these other entities). ViSalus easily could have amended its answer to preserve the defense should its Petition ultimately be granted. Indeed, in the withdrawn motion to amend, ViSalus sought to assert the defense of prior express consent as against a Do-Not-Call Class that was not certified specifically to preserve the defense in case the Court's certification order was vacated on appeal. Dkt. 133, at 4 n.4. Instead, ViSalus made explicit that it intended to

present evidence of consent with respect to the class claim only to demonstrate that its violations of the TCPA were not willful.  Dkt. 145. [2]

ViSalus attempts to handwave its explicit strategic decision *not* to amend its pleadings in a footnote, contending that the issue arose "in a different context."  But, in fact, the context demonstrates that ViSalus made a strategic choice regarding its defense to the Robocall Class claim.  ViSalus explicitly preserved the defense with respect to one claim and not another, despite knowing that the FCC was still considering its Petition for a retroactive waiver and with the understanding that it could preserve the defense in case the Petition was granted.

*   *   *

In sum, it is clear that ViSalus waived the defense of prior express consent by not including it within its Answer or ever seeking to constructively amend its pleadings at any time pre-trial.  Its belated, post-trial attempt to assert the defense cannot undo that decision, because the federal rules provide no mechanism to amend pleadings post-trial to add new issues that have never been part of the case.  And ViSalus' waiver should not be excused because ViSalus passed up an opportunity to preserve the defense despite the "change in law" it now presses was reasonably foreseeable.

---

[2]    Also available to ViSalus was the argument that the FCC's order on consent was not entitled to deference, as the petitioners in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019) successfully argued.  The petition for certiorari in that case was filed in June 2018, before ViSalus moved to amend, and the Supreme Court called for a response on August 1, 2018, well before trial.

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

**II.     The Court should enter judgment against ViSalus for the 123,758 calls made after October 7, 2015, to which the FCC waiver cannot possibly apply, because there is no just reason to delay entering judgment on these calls.**

If the Court wants to consider evidence that ViSalus had consent under the pre-2013 standard despite ViSalus' waiver of this defense, the Court need not set aside the jury's verdict.  Instead, the Court should enter partial judgment for those calls that were made after October 7, 2015, to which the retroactive waiver cannot possibly apply.  And as to the remaining calls, the Court should hold further proceedings on consent before deciding how to proceed, as explained in Section III below.

**A.     The Court may enter partial judgment as to a subset of the claims at issue, if there is no just reason to delay entering judgment on those claims.**

Under Rule 54(b), the Court may enter partial final judgment "as to one or more, but fewer than all, claims" if the Court "expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54; *see Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2018 U.S. Dist. LEXIS 23946, at *9 (M.D.N.C. Jan. 25, 2018) (concluding that "judgment should be entered" with respect to some, but fewer than all, phone calls covered by class verdict).  Rule 54(b) was adopted "specifically to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case."  *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (internal quotations, quotation marks, and punctuation omitted).

 "Ninth Circuit cases make clear that claims certified for appeal under Rule 54(b) do not need to be separate and independent from the remaining claims, so long as resolving the claims would streamline the ensuing litigation."  *McAdory v. M.N.S. &*

*Assocs.*, No. 3:17-cv-00777-HZ, 2018 U.S. Dist. LEXIS 163010, at *7-8 (D. Or. Sep. 23, 2018).  "Rule 54(b) certification is proper if it will aid expeditious decision of the case." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991); *see Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (concluding that the requirements of Rule 54(b) were met because resolving the claims would streamline the ensuing litigation).

**B.      Because the FCC's retroactive waiver cannot possibly apply to at least 123,758 calls made after October 7, 2015, there is no just reason to delay entering judgment on these calls.**

The jury found that ViSalus made 1,850,436 calls to absent class members that violated the TCPA.  Dkt. 282, 2 (jury verdict).  ViSalus started making calls using the POM Machine in October 2014 and did not stop until at least January 2016.  Trial Exhibit 31 (POM Campaign Tracker), Trial Exhibit 32 (ASR Campaign Tracker) (identifying dates of ViSalus marketing campaigns to class members).

The FCC's retroactive waiver, however, only purports to apply "to calls made <u>on or before October 7, 2015</u>."  Dkt. 321-1 (FCC Order on waiver), ¶11 (emphasis added). "After October 7, 2015, [ViSalus] should have been in full compliance with the Commission's rules for each subject call."  *Id*.  Accordingly, the retroactive waiver cannot possibly provide an affirmative defense to ViSalus' TCPA violations committed after that date.

Undisputed evidence demonstrates that ViSalus made at least 123,758 of the calls that the jury found to violate the TCPA *after* October 7, 2015.  Because the jury's verdict establishes that these 123,758 calls were violations, and because the FCC's retroactive

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

waiver does not apply to these calls, there is no just reason to delay entering judgment for these 123,758 calls.

We first briefly summarize the evidence that Ms. Wakefield presented at trial, on which the jury's verdict is based.  We then demonstrate that ViSalus made at least 123,758 of the calls the jury found to be TCPA violations after October 7, 2015.

      **1.**      **The jury's verdict was based on ViSalus contact lists showing how many calls ViSalus made using the POM Machine and what outcome the POM Machine assigned to each call.**

At trial, Ms. Wakefield proved that ViSalus violated the TCPA 1,850,436 times using information in contact lists that ViSalus used to conduct marketing campaigns.  The contact lists identify (a) each call the POM Machine made to class members and (b) the "disposition code" the POM Machine automatically assigned to the call to keep a record of the outcome of the call.  Trial Exhibit 36, shown below, summarizes this information:

| Outcome | Winback campaigns | Other campaigns | Total |
|---|---|---|---|
| Answer Machine | 1,608,804 | 44,293 | 1,653,097 |
| Nuisance Call | 186,397 | 90,203 | 276,600 |
| No Answer [1] | 163,806 | 8,180 | 171,986 |
| Disconnected By User | 104,354 | 2,795 | 107,149 |
| Ring No Answer | 70,535 | 4,446 | 74,981 |
| OB_No Answer Voice Mail | 37,562 | 15,870 | 53,432 |
| Network Refusal | 34,074 | 1,512 | 35,586 |
| OB_No Answer | 15,016 | 1,416 | 16,432 |
| OB_Hung Up | 11,881 | 41 | 11,922 |
| OB_Reschedule Call | 11,589 | 16 | 11,605 |
| Call Busy | 8,019 | 367 | 8,386 |
| Prospect Not Available | 3,031 | | 3,031 |
| Answer Human | 456 | 927 | 1,383 |
| OB_No | 1,176 | | 1,176 |
| In Queue | 1,059 | | 1,059 |
| Desktop Error | 715 | 108 | 823 |
| Agent Didn't Disposition | 577 | | 577 |
| SIT Tone | 416 | 27 | 443 |
| Invalid | 421 | | 421 |
| OB_Invalid/wrong number | 402 | | 402 |
| Reorder Tone | 383 | 3 | 386 |
| NO ANSWER VOICEMAIL | 348 | | 348 |
| OB_Customer Will Call back | 339 | | 339 |
| Invalid Number | 260 | 8 | 268 |

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

| | | | |
|---|---|---|---|
| OB_No off of Visalus | 243 | | 243 |
| Attempt Timeout | 72 | 154 | 226 |
| Re-Schedule Call | 163 | | 163 |
| OB_Please Do Not Call | 156 | | 156 |
| Call Answered | 61 | 89 | 150 |
| Completed | 149 | | 149 |
| OB_Account On Hold/Review/Closed | 135 | | 135 |
| OB_Reschedule call a month out | 103 | | 103 |
| OB_Outside Caller Time | 47 | 4 | 51 |
| Outside Calling Time Zone | 1 | 45 | 46 |
| OB_Agent has call back | 30 | | 30 |
| Callback Postponed | 18 | | 18 |
| OB_Yes | 16 | | 16 |
| OB_Spanish | 15 | | 15 |
| Application Error | 12 | 1 | 13 |
| Callback Terminated | 9 | | 9 |
| OB_Already Purchased | 7 | | 7 |
| OB_Does Not Qualify | 6 | | 6 |
| OB_Successful | 5 | | 5 |
| OB_French | 1 | | 1 |
| No outcome listed | 884,812 | 805,670 | 1,690,482 |
| | | | |
| **Total number of calls** | **3,147,681** | **976,175** | **4,123,856** |
| *Number of calls where no artificial or prerecorded voice could have played according to Mr. Gidley* | *396,651* | *18,795* | *415,446* |
| | | | |
| Calls to numbers associated with a business | 1,816 | 4,908 | 6,724 |

The summary shows the outcomes of each telemarketing call ViSalus made to class members using the POM machine.  It separately lists "Winback" calls and calls made during other kinds of marketing campaigns.  It identifies (in blue highlight) the calls whose disposition code indicates no prerecorded voice played.  And it identifies how

15

many of the calls were made to numbers associated with a business.  *See* Trial Exhibit

36a.  Trial Exhibit 36a (as well as the contact lists it summarizes) were received in

evidence.  Trial Transcript, 309:14-1 (Trial Exhibit 38); 400:1-4 (Trial Exhibit 36a).

Based on the evidence summarized in Trial Exhibit 36a—as well as ViSalus

documents and testimony from ViSalus witnesses authenticating and explaining it—Ms.

Wakefield argued that ViSalus made 1,927,928 telemarketing calls that went through,

played a recorded voice, and therefore violated the TCPA.  Trial Transcript, 502:3-5

(closing argument).  ViSalus argued that none of the calls were TCPA violations, because

the calls did not use recorded voices and because the calls did not constitute

telemarketing.  *See, e.g.*, Trial Transcript 523:18-21 (closing argument).  ViSalus also

objected to counting certain calls that were included in the summary: ones to foreign

numbers, 1-800 numbers, and invalid numbers; and ones to the number 469-287-8490,

which appears in the summary several thousand times.  *See* Trial Transcript, 431:15-

435:1 (foreign numbers); 435:2-436:24 (1-800 numbers); 436:25-438:2 (invalid

numbers); 440:7-444:24 (calls to the same number).

The jury rejected ViSalus' argument that none of the calls violated the TCPA.  It

found that Ms. Wakefield proved that 1,850,336 of the calls she presented were TCPA

violations.  Dkt. 282, 2 (jury verdict).  However, the jury found that Ms. Wakefield did

not prove that the remaining 77,592 calls were TCPA violations. [3]  The jury could have

reached this conclusion in one of two possible ways: (1) by crediting one or more of

---

[3] 1,927,928 total calls Ms. Wakefield contended were TCPA violations minus the 1,850,336 the jury actually found to be violations.

ViSalus' objections to certain calls that were included in the summary; or (2) by concluding on its own, based on the evidence presented at trial, that certain additional disposition codes (beyond the ones Mr. Gidley identified) leave open the possibility that no recorded voice was played on the call. [4]

### 2.   The jury's verdict necessarily includes Winback calls made to numbers with U.S. area codes that were picked up by an answering machine.

Based on the evidence presented at trial and the verdict the jury returned on that evidence, the jury necessarily found that Winback calls with an "Answer Machine" disposition code, made to numbers with U.S. area codes, violated the TCPA.

These calls constituted the vast majority—1,608,804 of the total 1,927,928 calls— Ms. Wakefield argued violated the TCPA.  *See* Trial Exhibit 36a.  And given the size of the jury's verdict, the jury *necessarily* concluded that, as a general matter, such calls violated the TCPA.  The jury could not have possibly found that ViSalus violated the TCPA 1,850,336 times otherwise.

Moreover, the only reason the jury was given to exclude some but not all of the calls within this group (Winback calls with "Answer Machine" disposition codes) was ViSalus' argument that calls with foreign, toll-free, or invalid area codes should be excluded.  There was nothing else—no distinction in the evidence about these calls and no argument made by either party—that could possibly justify treating calls within this group differently.  Thus, the jury necessarily found that the remaining calls in this

---

[4] For example, ViSalus argued in post-trial briefing that "some disposition codes suggested that calls were not completed (e.g., 'Desktop Error,' 'Invalid,' 'Invalid Number,' 'Application Error')."  Dkt. 306 (motion to decertify), 19.

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

group—Winback calls with an "Answer Machine" disposition code made to numbers with valid U.S. area codes—violated the TCPA.

In sum, to reach its verdict, the jury necessarily concluded that Winback calls with "Answer Machine" disposition codes made to numbers with U.S. area codes were TCPA violations. Accordingly, we know the jury's verdict includes each call counted in Trial Exhibit 36a that meets these two criteria. *See Dream Games of Ariz., Inc. v. PC Onsite,* 448 F. App'x 747, 748-49 (9th Cir. 2011) (concluding that the jury "implicitly found that [copyright] infringement commenced following registration [of the copyright in question]" because the jury could not have reached its verdict otherwise, and affirming an award of attorneys' fees for willful infringement based on this implicit finding); *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987) ("[P]roper respect for the role of the jury and the discretion of the trial judge favors construing a general verdict in behalf of the prevailing party.").

> ### 3. Undisputed evidence at trial demonstrates that, after October 7, 2015, ViSalus made at least 123,758 Winback calls to numbers with U.S. area codes that were picked up by an answering machine.

Undisputed evidence introduced at trial demonstrates that ViSalus made at least 123,758 Winback calls with "Answer Machine" disposition codes to numbers with valid U.S. area codes after October 7, 2015.

ViSalus maintained an internal spreadsheet called the "POM Campaign Tracker" to track the calls it made using the POM Machine. Trial Exhibit 31 (POM Campaign Tracker). The POM Campaign tracker—which was received in evidence at trial, *see*

18

Trial Transcript, 340:13-22—lists the marketing campaigns ViSalus ran using POM.[5]
And it identifies when—the start and end date and time—each campaign was running, as
shown in the excerpt below:

| Campaign Name | Contact List | Start Date | Start Time | End Date | End Time | Refiltered Contact List |
|---|---|---|---|---|---|---|
| Winback_003 | Jan2015_WinbackP27 | 12/4/2015 | 9:00 a.m. | 12/4/2015 | 3:43 p.m. | Jan2015_WinbackP28 |
| Winback_004 | FebCorretedWinbackP17 | 12/4/2015 | 2:02 p.m. | 12/7/2015 | 3:06 p.m. | FebCorretedWinbackP18 |
| Winback_005 | Mar2015WinbackP21 | 12/7/2015 | 11:44 a.m. | 12/8/2015 | 3:14 p.m. | Mar2015WinbackP22 |

Trial Exhibit 31, Dec-2015 tab (irrelevant columns hidden).

In addition to identifying when each campaign was running, "[t]he POM
Campaign Tracker spreadsheet identifies an initial spreadsheet used for a calling
campaign.  For many marketing campaigns on the POM Campaign Tracker, there is a
'refiltered' spreadsheet that has the disposition code for the first attempted call under the
'reason' column, as the disposition of that initial call is the reason the individual was
placed on the refiltered list for a second call."  Trial Exhibit 37 (Gidley declaration).
Thus, the POM Campaign tracker identifies the contact lists for the calls made during
Winback campaigns that began after October 7, 2015.  Trial Exhibit 31.  And the contact
lists for those calls tell us (1) what number was called; and (2) what disposition codes
were assigned.[6]  *See* Trial Exhibit 38 (contact lists).

Here is what that information tells us:

- ViSalus conducted 44 Winback campaigns after October 7, 2015;

---

[5] Certain additional campaigns are listed in the ASR Campaign Tracker (Trial
Exhibit 32), but none of the campaigns in the ASR Campaign Tracker are from the
relevant timeframe.  *See* Trial Exhibit 32.

[6] The disposition codes for each campaign are set forth in the "refiltered"
spreadsheet for that campaign, as Mr. Gidley's declaration explains.  Trial Exhibit 37
(Gidley Declaration) (quoted above).

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

- During those Winback campaigns, ViSalus made 129,485 Winback calls that were assigned the disposition code "Answer Machine"; and

- Of those, 123,758 were to numbers with valid U.S. area codes.

Declaration of Shawn Davis, ¶6.

Thus, based on the POM Campaign Tracker and the contact lists it references, we know that ViSalus made 123,758 Winback calls with "Answering Machine" disposition codes after October 7, 2015.  The jury found that these calls violated the TCPA.  And, on its face, the FCC's retroactive waiver does not and cannot possibly provide an affirmative defense for those 123,758 violations.  As a result, there is no just reason why the Court should wait to enter judgment as to those violations.  The Court should enter judgment against ViSalus for $500 for each of the 123,758 TCPA violations that ViSalus committed after October 7, 2015, for a total of $61,879,000.  *See Dream Games of Ariz., Inc. v. PC Onsite,* 448 F. App'x 747, 748-49 (9th Cir. 2011) (concluding that the jury "implicitly found that [copyright] infringement commenced following registration [of the copyright in question]" because the jury could not have reached its verdict otherwise, and affirming an award of attorneys' fees for willful infringement based on this implicit finding).

## III.    If the Court wants to give ViSalus the opportunity to present a consent defense for the remaining calls, the Court should hold further proceedings on consent—not set aside the jury's verdict, order a new trial, or decertify the class.

The FCC's retroactive waiver is narrow: it applies only (1) to calls made before October 7, 2015; (2) to class members who enrolled before October 16, 2013; and (3)

who provided some form of written consent. Despite the FCC waiver, it remains

ViSalus' burden to demonstrate that it obtained prior express consent to call class

members. But so far, the only purported evidence of consent ViSalus has provided is a

small handful of heavily redacted enrollment forms that ViSalus says were submitted

before October 7, 2013. *See* Dkt. 238, Ex. 1-32, 33-35 (sample enrollment forms). These

enrollment forms may not even be for class members, much less ones who were called by

ViSalus, who are covered by the FCC waiver, and for whom the jury found ViSalus had

violated the TCPA. [7]  ViSalus contends that it has additional forms, but says nothing

about the substance of those forms or whether the FCC waiver even applies to that

evidence. And Ms. Wakefield has had no opportunity whatsoever to test this evidence

through cross-examination or follow-up discovery.

 Accordingly, if the Court wants to consider ViSalus' consent defense, it should

permit the parties to develop the record fully and then decide how to proceed based on

the fully developed record. The best way to proceed depends on what evidence ViSalus

actually has. Assuming the Court declines to find that ViSalus waived this defense, the

Court should allow the parties to develop the record before determining the appropriate

next steps.

  **A.**  **ViSalus is unlikely to produce additional evidence of consent that would warrant decertification or a new trial.**

 ViSalus contends that it has some records of when its customers or promoters

enrolled and provided their phone numbers that would support its consent defense. *See*

---

 [7] In its brief, ViSalus asserts that the samples it provided were for class members, but Mr. Gidley's declaration does not say this (and the forms are redacted so Ms. Wakefield cannot independently verify this). *See* Dkt. 282 (Gidley Decl.).

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

Gidley Decl., ¶3 (explaining that Mr. Gidley was able to identify when the promoter and customer applications he attaches to his declaration were completed). Assuming this is true, these records are likely to show that very few (potentially zero) class members who were included in the jury's verdict enrolled before October 16, 2013.

Indeed, throughout the case, ViSalus has maintained that it was only calling people who had not ordered from ViSalus in 90 days—not ones that had cancelled their accounts years ago. Trial Transcript, 320:9-12 (Winbacks contacted customers who had not ordered in 90 days); Ex. 1 (Gidley 2016 30(b)(6) deposition), 161:19-162:17 (testifying that ViSalus' policy was "not to contact cancelled accounts."). And according to ViSalus' 30(b)(6) witness, the length of an average promotorship was approximately 6 months. Trial Transcript, 278:18-21. Accordingly, the vast majority of the calls ViSalus was making in the relevant October 2014-January 2016 timeframe would not have been to customers and promoters who had enrolled (and subsequently ended) their relationship with ViSalus over a year before. They would have been to people who had enrolled within the last 6-9 months—to whom the waiver would not apply.

And if no calls during the waiver period were made to people who enrolled before October 16, 2013, then the waiver would have no effect whatsoever on the verdict, and no need for the Court to take any action based on the FCC's order. Likewise, if the number of calls during the waiver period made to people who first signed up after October 16, 2013 is sufficiently small, it is likely that the class would simply stipulate to its effect on the verdict. For example, if discovery shows that the waiver order only applies to 100 calls—or even 10,000 calls—that the jury found to violate the TCPA, the

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

class could stipulate that ViSalus had consent to place those calls and subtract them from the jury's verdict.

Similarly, ViSalus admits that it has records showing whether promoters and customers who signed up on paper were asked if they wanted to be contacted with "News and Updates" or promotional messages on the numbers they provided to ViSalus during enrollment, and what their response was.  Dkt. 328, Exs. 1-32, 34-35 (sample enrollment forms); ViSalus Reply, 10-12 (discussing these forms).  Discovery has shown that the vast majority of class members who enrolled before October 16, 2013 did so using a form that asked them whether they wanted to "receive ViSalus News and Updates via Phone" or something similar.  (Only after trial did ViSalus provide supposed counterexamples— just two of them, and they were both from 2006.  *See* Dkt. 328, Exs. 34-35 (enrollment forms without a checkbox).  Discovery is also likely to show that many (if not most) class members who used such a form did not check the "phone" box.  And if discovery shows this, then the impact of the FCC's retroactive waiver largely would turn on a legal question—whether or not providing a telephone number under those circumstances qualifies as "prior express consent" under the FCC's pre-2013 consent rule.  That legal question could be resolved on summary judgment, in Ms. Wakefield's favor.  *See Downing v. Papa John's USA, Inc.*, 945 F. Supp. 2d 675, 676 (E.D. Va. 2013) ("Defendants cite several cases indicating that providing a cell phone number is alone sufficient to establish consent to receive text messages.  Although such legal argument might prevail on different facts, here, it is undisputed that Defendants' website provides a question that <u>specifically</u> asks whether a customer consents to receiving promotional

texts.  Accordingly, if Plaintiffs version of events is assumed, their decision <u>not</u> to elect to receive promotional texts constituted an "instruction to the contrary" informing Defendants not to send promotional texts.") (underlining in original).

Moreover, again, once that issue is resolved, the parties could likely stipulate to the effect of the Court's ruling on the jury's verdict.  For example, if the Court's decision on summary judgment establishes that ViSalus had consent to make 200,000 of the calls to class members who enrolled before October 16, 2013, such calls could be subtracted from the verdict.  Again, in such a situation, dealing with ViSalus' consent defense would be manageable, and would not require a new trial.

Finally, even if disputed issues of material fact remain (e.g. how to interpret entries in ViSalus' database indicating when promoters signed up), then it *still* likely would not be necessary to decertify the class or set aside the verdict in its entirety. Instead, the Court could enter judgment on those additional claims to which the waiver could not possibly apply (e.g., the ones that ViSalus' records show were made to promoters who first enrolled after October 16, 2013), and for the remaining claims, the Court could hold a short (likely one-day or even half-day) trial on just consent.  Calls for which ViSalus proves it had consent during that trial could then be subtracted from the jury's verdict.  Once again, in such a situation, dealing with the effect of the waiver would be manageable.  And it could be decided through a separate, limited trial on a discrete issue—without any need to set aside the jury's verdict.

There are other possible scenarios and possible ways to address them; the point is that it is impossible to know what the best and most efficient way to proceed with this

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

case is until we find out what evidence of consent ViSalus actually has. Accordingly, the Court should not set aside the jury's verdict—or revisit class certification—until the parties have the opportunity to take discovery on (and, if needed, file summary judgment motions regarding) ViSalus' consent defense. Once this process is completed, the parties and the Court will be in a better position to decide how to move forward.

> **B.   It would be manifestly unfair for the Court to consider the evidence ViSalus provided so far without first giving Ms. Wakefield the chance to cross-examine ViSalus on that evidence and take follow-up discovery.**

Assuming the Court decides to consider ViSalus's newly invoked defense, further discovery is also needed because the evidence ViSalus has presented raises serious unanswered questions that Ms. Wakefield should be allowed to cross-examine ViSalus about and take follow up discovery on. It would be fundamentally unfair for the Court to rely on this evidence for any purpose before giving Ms. Wakefield this opportunity.

For example, although ViSalus asserts in its brief that the example enrollment forms it provided were for "members of the class" (Reply 10-11), ViSalus provides no evidence of this. Mr. Gidley's declaration says only that they are "promotor and customer applications completed before October 16, 2013" (*Id.*, ¶3), and all of the identifying information is redacted, so Ms. Wakefield cannot verify counsel's assertion.

As a second example, ViSalus asserts that "it is unknown whether members who enrolled online before October 16, 2013 were presented with communication preferences, whether they checked any communication preference boxes, or what the content of any boxes may have contained." Reply, 9. In support of this, ViSalus cites the following conclusory sentence in the declaration of ViSalus employee Mr. Moreno: "given the

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

passage of time and the lack of historical records for that time period, [he] was unable to identify whether the online enrollment forms before October 16, 2013 contained communication preferences, such as checkboxes." Dkt. 330 (Moreno Decl.), ¶4.

That story is incomplete at best. Mr. Moreno's declaration does not say what he did to attempt to answer this question, and he had no prior knowledge of anything he is attesting to—his declaration merely talks about what he did in response to a request from counsel. Moreover, Mr. Gidley, who is "familiar with ViSalus' promoter and customer applications and the enrollment process" and "[a]s part of [his] job, [is] responsible for being knowledgeable concerning ViSalus' business, including its customer and promotor onboarding process" (Gidley Decl., ¶2), is entirely silent on this point.

In addition, Mr. Moreno's statements are contradicted by the evidence. ViSalus stipulated that "whether online or in print, the promotor applications are identical." Dkt. 271-1 (stipulations). Accordingly, we can figure out what the online enrollments forms looked like at any given time by looking at the paper enrollment form for that same time period (which ViSalus admits "are stored in our system as part of the company's regular course of business," *see* Dkt. 328 (Gidley Decl.), ¶3). Moreover, ViSalus has a database that keeps track of customer and promoter communication preferences which we can use to confirm this. (For example, if a class member enrolled online in October 2012 and ViSalus' database tells us that as of that date, that class member's communication preferences indicated that the class member wanted to receive ViSalus News and Updates, we can infer that the online enrollment forms as of that date offered this option.)

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

Ms. Wakefield should be given the opportunity to test the conclusory assertion of ViSalus' never-before-disclosed employee who has no prior knowledge of the facts he is attesting to and whose sworn testimony conflicts with the stipulations and evidence previously provided by ViSalus in this case.

*   *   *

In sum, ViSalus' evidence is incomplete, one-sided, and suspect, and it would be manifestly unfair for the Court to consider it—in deciding decertification, whether to grant a new trial, or for any other purpose—without first giving Ms. Wakefield the opportunity to test it through cross-examination and follow-up discovery.

### C. The Court should not decertify the class or set aside the jury's verdict based on the FCC's retroactive waiver until and unless the waiver becomes final.

The FCC's retroactive waiver is not yet final because Ms. Wakefield has petitioned for reconsideration of the FCC's Order.  Ex. 2 (Petition for reconsideration); *see Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 287 (3d Cir. 2007); *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1989).  It is not possible to say how long it will take the Commission to resolve that petition, but the FCC has taken several months, sometimes more than a year, to resolve similar petitions.  And if that petition is denied, then Ms. Wakefield intends to petition for review of the FCC's determination.  47 U.S.C. § 402(a).  Accordingly, the FCC's Order may very well be reversed.  As a result, it would be premature to set aside the jury's verdict (or revisit class certification) based on the FCC's retroactive waiver.

This is a second reason why the Court should not set aside the jury's verdict or decertify the class at this juncture, but should instead permit the parties to take discovery on the issue of consent: while the parties are doing this, the FCC's retroactive waiver can make its way through the appeal process.  And if it is reversed, then the issue of consent will not matter and the Court can enter judgment on the jury's existing verdict.

Date: August 14, 2019                    Respectfully submitted,

                                         By:  */s/ Simon Franzini*

                                         DOVEL & LUNER, LLP
                                         Simon Franzini, Cal. Bar #287631*
                                         simon@dovel.com
                                         Gregory S. Dovel, Cal. Bar #135387*
                                         greg@dovel.com
                                         Jonas Jacobson, Cal. Bar #269912*
                                         jonas@dovel.com
                                         201 Santa Monica Blvd., Suite 600
                                         Santa Monica, California 90401
                                         Tel: (310) 656-7066
                                         Fax: (310) 656-7069

                                         EDELSON PC
                                         Rafey S. Balabanian, ILB #6285687*
                                         rbalabanian@edelson.com
                                         Eve-Lynn J. Rapp, ILB #6300632*
                                         erapp@edelson.com
                                         Lily E. Hough, SBN #315277*
                                         lhough@edelson.com
                                         123 Townsend Street, Suite 100
                                         San Francisco, California 94107
                                         Tel: (415) 212-9300
                                         Fax: (415) 373-9435

                                         FORUM LAW GROUP
                                         Scott F. Kocher, OSB #015088
                                         Stephen J. Voorhees, OSB #150595

Plaintiff's sur-reply to Defendant's supplemental brief on decertification

811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel/Fax: (503) 445-2120

\* admitted *pro hac vice*

*Attorneys for Plaintiff Wakefield and the
Certified Class*

Plaintiff's sur-reply to Defendant's supplemental brief on decertification