# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD, individually and on behalf of a class of others similarly situated,**<br><br>       Plaintiff,<br><br>  v.<br><br>**VISALUS, INC.,**<br><br>       Defendant. | Case No. 3:15-cv-1857-SI<br><br>**OPINION AND ORDER** |

Gregory S. Dovel, Simon Franzini, and Jonas Jacobson, DOVEL & LUNER LLP, 201 Santa Monica Boulevard, Suite 600, Santa Monica, CA 90401; Scott F. Kocher and Stephen J. Voorhees, FORUM LAW GROUP, 811 SW Naito Parkway, Suite 420, Portland, OR 97204; and Rafey S. Balabanian, Eve-Lynn J. Rapp, and Lily E. Hough, EDELSON PC, 123 Townsend Street, Suite 100, San Francisco, CA 94107. Of Attorneys for Plaintiff and Class Counsel.

Joshua M. Sasaki and Nicholas H. Pyle, MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 SW Fifth Avenue, Portland, OR 97204; John M. O'Neal and Zachary S. Foster, QUARLES & BRADY LLP, Two N. Central Avenue, One Renaissance Square, Phoenix, AZ 85004; and Benjamin G. Shatz, Christine M. Reilly, and John W. McGuinness MANATT, PHELPS & PHILLIPS LLP, 11355 W. Olympic Boulevard, Los Angeles, CA 90064. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Lori Wakefield ("Wakefield"), on behalf of herself and a certified class of similarly

situated individuals (collectively, "Plaintiffs"), sued ViSalus, Inc. ("ViSalus"), alleging that

ViSalus violated the Telephone Consumer Protection Act ("TCPA"). After a three-day trial, the jury returned a verdict finding that Defendant placed four prerecorded calls to Ms. Wakefield that violated the TCPA and 1,850,436 prerecorded calls to other class members that similarly violated the TCPA. Because the minimum amount of statutory damages for each violation of the TCPA is $500, the total amount of statutory damages against ViSalus is $925,220,000 (1,850,440 times $500). ViSalus challenges this award as unconstitutionally excessive. This case presents the issue of whether due process limits the aggregate statutory damages that can be awarded in a class action lawsuit under the TCPA. The Ninth Circuit has not yet answered this question.

## BACKGROUND

ViSalus is a multi-level marketing company that sells weight-loss products and other nutritional dietary supplements. Individual members enroll with ViSalus to be "promoters," and promoters purchase products from ViSalus for resale to end users or other customers of the promoters. In late 2012, Wakefield enrolled as a promoter with ViSalus but did not sell any ViSalus products. After two months, she decided to cancel her ViSalus "membership" or enrollment.

Although Wakefield cancelled her account in early 2013, she received telephone solicitation calls from ViSalus in April 2015. Wakefield sued ViSalus, alleging that she and others received telephone calls promoting ViSalus products or services using an artificial or prerecorded voice without their consent, in violation of the TCPA. In June 2017, U.S. District Judge Anna Brown, who initially presided over this lawsuit, granted certification of a class consisting of:

> All individuals in the United States who received a telephone call
> made by or on behalf of ViSalus: (1) promoting ViSalus's products
> or services; (2) where such call featured an artificial or prerecorded
> voice; and (3) where neither ViSalus nor its agents had any current

record of prior express written consent to place such call at the
time such call was made.

ECF 81 at 6.

The case proceeded to a three-day jury trial. The jury received evidence about ViSalus's
Progressive Outreach Manager ("POM") system that ViSalus's outbound marketing department
used to make telephone calls automatically. The jury saw the forms filled out by individual
members who enrolled to be promoters of ViSalus, forms that asked for either a home telephone
number or a cellular telephone number and contained no provision for a person to consent to
receive automated or prerecorded telephone marketing calls. The jury heard testimony from
Wakefield, including how she had enrolled to be a promoter with ViSalus and then cancelled her
membership within a few months but continued to receive unwanted automated telephone calls
and voicemails promoting ViSalus's products. The jury also heard from Wakefield that she
operates an informal daycare business out of her home, watching the children of a few of her
husband's coworkers, but she does not use her home telephone to conduct any business related to
her daycare work. ViSalus did not present any evidence or witnesses at trial.

The jury returned a special verdict, finding that: (1) Wakefield had proven that ViSalus
made or initiated four telemarketing calls using an artificial or prerecorded voice and that those
calls were made to a residential landline telephone belonging or registered to Wakefield, in
violation of the TCPA; and (2) Wakefield, as class representative, also had proven that ViSalus
made or initiated 1,850,436 telemarketing calls using an artificial or prerecorded voice to either a
cellular telephone or a residential landline, belonging or registered to one or more class
members, other than Ms. Wakefield, in violation of the TCPA. ECF 282. The jury also
concluded that it could not tell from the evidence presented exactly how many of the 1,850,436
violative calls were specifically made to cellular phones and how many were made to residential

landlines. ECF 282. In other words, the jury found that a total of 1,850,436 violative calls were made to either cellular phones or residential landlines but could not be more precise about how many calls were made to each. Because the TCPA's minimum statutory penalty is $500 per violation, ViSalus faces $925,220,000 in damages.

## STANDARDS

An award of statutory damages may violate the Due Process Clause of the Fifth Amendment if it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919); *see also United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992). A court must evaluate an award of statutory damages "with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the statute. *Williams*, 251 U.S. at 66-67. A court should be careful, however, not to usurp the legislature's role. Statutory fines "and the mode in which they shall be enforced, . . . and what disposition shall be made of the amounts collected, are merely matters of legislative discretion." *Id.* at 66 (simplified).

## DISCUSSION

### A.  The Ninth Circuit Has Not Yet Decided Whether Due Process Limits Aggregate Statutory Damages in a Class Action, Including Under the TCPA

Consumers subjected to TCPA violations may bring against an alleged violator "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). The TCPA, thus, sets a floor, or minimum, of statutory damages at $500 for each violation. *See Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *7 (N.D. Cal. Apr. 17, 2020) (rejecting argument that TCPA authorizes

damages less than $500 per violation).[1] That statutory penalty is constitutional. *See Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 834 (D. Md. 2011) ("numerous courts have found the damages provisions of the TCPA to be constitutional"); *Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) (finding that minimum statutory penalty of $500 for each TCPA violation does not violate the due process).[2] Instead of challenging the statutory framework or an individual award, ViSalus argues that an aggregate award of $925,220,000 violates due process because it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66–67.

ViSalus argues by analogy to due process limits that the Supreme Court has placed on punitive damages. In that context, the Supreme Court has stated the factors that might limit, on due process grounds, an award of punitive damages. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–75 (1996) (holding that a court must consider "the degree of reprehensibility of the defendant's conduct," the "ratio to the actual harm," and the disparity between "the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct."). Both the First Circuit and the Eight Circuit, however, have rejected this analogy and rejected extending these factors to aggregate awards of *statutory* damages. *See Sony BMG Music Entertainment v. Tenenbaum*, 719 F.3d 67, 70–71 (1st Cir. 2013) (applying *Williams* to

---

[1] In *Perez*, a jury found in favor of Perez and a class, concluding that the defendant violated the TCPA 534,698 times. At $500 per violation, the district court entered judgment against the defendant in the aggregate amount of $267,349,000. The district court also rejected the defendant's argument that this award is unconstitutionally excessive. *Perez.*, 2020 WL 1904533, at *10-11. The defendant appealed, and this issue, among others, is now before the Ninth Circuit. *See Perez v. Rash Curtis & Assocs.*, Case No. 20-15946 (9th Cir.).

[2] ViSalus's argument to the contrary, relying upon *Six (6) Mexican Workers v. Arizona Citrus* Growers, 904 F.2d 1301, 1310 (9th Cir. 1990), is unpersuasive. In that case, the court reduced damages per violation to an amount within the statutory range.

affirm jury award of $675,000 for 30 violations of the Copyright Act and disregarding the *Gore* factors because "the Supreme Court held in *Williams* that statutory damages are not to be measured this way"); *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012) (ordering reinstatement of jury's award of $222,000 in statutory damages for 24 violations of the Copyright Act). The Eighth Circuit in *Capitol Records*, however, noted that "[t]he absolute amount of the award, not just the amount per violation, is relevant to whether the award is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *Capitol Records*, 692 F.3d at 910 (*quoting Williams*, 251 U.S. at 67).

The Eighth Circuit continued this analysis in *Golan v. FreeEats.com, Inc*, 930 F.3d 950 (8th Cir. 2019). In that case, also involving a class action, the Eighth Circuit affirmed the reduction of $1.6 billion in TCPA statutory damages (3.2 million violations times $500 per call) to $32 million ($10 per call). *See id.* at 962. Further, the court in *Golan* held that its decision in *Capitol Records* permitted it to consider under a due process analysis the effect of the aggregate amount of damages instead of merely the amount per violation. *See id.* at 963. Citing *Williams*, the Eighth Circuit determined that $1.6 billion would be a "shockingly large amount" and thus violate due process. *Id.*

The Ninth Circuit has not yet addressed the question presented in *Golan* of whether the due process limits aggregate statutory damages in a class action. The closest analog appears to be *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010). In that case, the Ninth Circuit held that Rule 23(b) and the Fair and Accurate Credit Transactions Act ("FACTA") did *not* permit consideration of aggregate damages when deciding whether to certify a class. *Id.* The court in *Bateman* noted that FACTA "does not place a cap on these damages in the case of class actions, . . . and does not limit the number of individuals that can be certified in

a class or the number of individual actions that can be brought against a single merchant." *Id.* at 718. The Ninth Circuit in *Bateman*, however, expressly reserved judgment on the question of "whether the district court may be entitled to reduce the award if it is unconstitutionally excessive," if the plaintiff won at trial. *Id.* at 723; *see also Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 26 (2d Cir. 2003) (noting that aggregation of statutory damages in a class action suit might implicate due process "not to prevent [class] certification, but to . . . reduce the aggregate damage award"); *j2 Global Comm., Inc. v. Protus IPSol*, 2008 WL 11335051, at*9 (C.D. Cal. Jan. 14, 2008). ("The Court finds that the question of excessive [TCPA] damages will be ripe for adjudication after issuance of a verdict . . . A due process challenge to excessive damages may be raised posttrial." (internal citations omitted)).

The Ninth Circuit did not reach this issue in *Bateman*, explaining that it "did not know the amount of damages [the plaintiff would] seek nor how many individuals [would] ultimately claim the benefit of any damages awarded should plaintiffs prevail." *Id.* Here, however, Wakefield prevailed at trial. She seeks $925,225,000 in damages for herself and the class based on 1,850,440 separate violations of the TCPA. Thus, it is no longer "unduly speculative" to evaluate the due process implications of ViSalus's massive liability. *Id.*

**B.  Due Process Does Not Require Reducing Aggregate Statutory Damages**

In *Golan*, the Eighth Circuit drew a straight line from *Williams* to *Capitol Records* to *Golan*. *See Golan*, 930 F.3d at 961-962 (characterizing *Capitol Records* as affirming the *Williams* standard and *Golan* as indistinguishable from *Capitol Records*). In *Williams*, however, the Supreme Court held only that due process limits statutory damages "where the penalty prescribed [by the statute] is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66-67. The statute at issue in *Williams* was an Arkansas state law regulating intrastate transit rates. *See id.* at 64. The law

prescribed a penalty of "not less than fifty dollars nor more than three hundred dollars" for each violation. *Id*. The Supreme Court analyzed the penalty for a *single* statutory violation and held that it comported with due process. This focus implies that the Supreme Court construed "penalty" to mean the fine for a single statutory violation, not for the aggregate amount of damages. The statute at issue in *Golan* and *Capitol Records* was the TCPA. That law prescribes a statutory penalty of at least "$500 in damages for each violation." 47 U.S.C. § 227(b)(3)(B). As discussed above, many courts have held that this penalty is constitutional.

*Capitol Records* then analyzed the constitutionality of an award of aggregate damages. The court stated in *dicta* that "the absolute amount of the award, not just the amount per violation, is relevant to whether the award is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Capitol Records*, 692 F.3d at 910 (simplified). But the court in *Capitol Records* gave no explanation for this conclusion. Nor did the court reconcile that conclusion with the penalty-level analysis employed by *Williams* and by the several cases considering this issue under the TCPA. *See id.*

The Court in *Golan* appears to have believed that its conclusion was mandated by *Capitol Records. See Golan*, 930 F.3d at 963 (stating that the argument against consideration of the aggregate award is "plainly foreclosed by our precedents"). But the only precedent cited for that proposition was *Capital Records* and *Warner Brothers Entertainment v. X One X Productions*—another case that cited only *Capitol Records* itself. *See* 840 F.3d 971, 977 (8th Cir. 2016).

The Court here joins the district court in the Northern District of California in declining to adopt both the *dicta* on aggregate damages of *Capitol Records* and the later transformation of that *dicta* into *Golan*'s holding in the Eighth Circuit. *See Perez*, 2020 WL 1904533, at *8-11. The damages award here reflects the number of separate violations of the TCPA and that

statute's minimum penalty of $500 per violation. The large aggregate number comes from simple arithmetic: the total damage award equals the number of violations multiplied by the minimum statutory penalty for each violation. The jury found that ViSalus violated the TCPA 1,850,440 times. The aggregate dollar amount of damages is determined by taking the jury's findings and applying arithmetic.

The Court declines to conclude that ViSalus's aggregate damages award should be reduced simply because ViSalus committed almost two million violations of the TCPA. ViSalus's understanding of the limitations on damages imposed by due process implies that a constitutional penalty for a single violation becomes unconstitutional if the defendant commits the violation enough times. As discussed above, that proposition is at odds with the Supreme Court's decision in *Williams* and would effectively immunize illegal conduct if a defendant's bad acts crossed a certain threshold. "Someone whose maximum penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 979-80 (7th Cir. 2020) ("*Dish Network II*"). Here, the jury found that ViSalus committed a stratospheric number of TCPA violations. It is no surprise that the TCPA's constitutionally-valid minimum penalty of $500 for each violation has catapulted ViSalus's penalty into the mesosphere.

## C. The Plain Text and Legislative History of the TCPA Do Not Support a Limitation on Aggregate Damages

The *Bateman* court looked to the statutory damages provision of FACTA for evidence that Congress intended for courts to deny class certification when a defendant faced potentially enormous liability. *See Bateman*, 623 F.3d at 721. Similarly, the Court looks to the TCPA itself to determine whether reducing a jury's enormous award of statutory damages is consistent with

congressional intent. The plain text and history of the TCPA is relevant to the Court's analysis if the Court is to heed the Supreme Court's admonition that statutory fines are "merely matters of legislative discretion." *Williams*, 251 U.S. at 66.

The TCPA creates a private right of action to recover the "actual monetary loss from [a TCPA] violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). That statute also gives courts discretion to award up to treble damages for willful or knowing violations. *See id*. The TCPA does not limit aggregate damages, does not limit the number of actions that may be brought against a single defendant, and does not suggest any circumstances under which a court could award less than the minimum statutory damages. *Cf. Bateman*, 623 F.3d at 718 (noting the same features in FACTA). The first feature is especially important. When Congress has had concerns about gigantic statutory damages awards, it has placed caps, or limits, on aggregate damages. *See*, *e.g.*, 15 U.S.C. § 1640(a)(2)(B) (capping recovery under the Truth In Lending Act ("TILA") in response to the potential for enormous damages awards in class actions); 15 U.S.C. § 1692k(a)(2)(B)(ii) (capping recovery under the Fair Debt Collection Practices Act ("FDCPA")). But Congress remained silent when faced with the same issue in the context of the TCPA. That is persuasive evidence that Congress did not intend to cap TCPA damages.

It is also useful to analyze the TCPA in the context of other developments in class action law. Congress enacted the TCPA in 1991, well after the Supreme Court created the presumption that class actions are available absent express congressional intent to the contrary. *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court.").

PAGE 10 – OPINION AND ORDER

Thus, Congress expected class actions to be available when it enacted the statutory damages provision of the TCPA. *Cf. Bateman*, 623 F.3d at 716 (applying the same analysis to the availability of class actions and statutory damages under the Clayton and Sherman Acts). It follows that Congress did not intend to cap TCPA damages in class action lawsuits.

## D.  Even if Due Process Limited TCPA Damages, ViSalus's Proposed Method of Reduction is Arbitrary

ViSalus suggests that the Court reduce damages from $500 per call to no more than $1 per call. But like the defendant in *Perez*—a nearly identical case in the Northern District of California—ViSalus "does not identify any . . . Ninth Circuit authority on how a district court should reduce damages that are found to be unconstitutionally excessive." *Perez*, 2020 WL 1904533, at *8. Nor can the Court find any Ninth Circuit precedent on that issue. The reasoning of the district judge in *Perez* is persuasive and addresses nearly all ViSalus's arguments. ViSalus cites the same four out-of-circuit cases to argue for reducing the aggregate of statutory damages under the TCPA. *See Golan*, 930 F.3d 950 (affirming reduction of TCPA class action damages from $1.6 billion to $32 million); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 951-52 ("*Dish Network I*") (reducing TCPA aggregate damages from $8.1 billion to $280,000,000 based on percentage of the defendant's after-tax profits); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 464-65 (D. Md. 2012) (first lowering award from $100 million to $10 million on plaintiff's request and then reducing damages again to $1 million); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 (W.D. Tex. 2001) (lowering damages by more than 99.98 percent even though defendant's violations were willful). The courts in *Golan*, *Maryland*, and *Blastfax* failed to include any methodology or explanation of how the court reduced the allegedly unconstitutional damages. *See Perez*, 2020 WL 1904533, at *9 (noting that "each case . . . arbitrarily reduced the damages amount to a lower number without any well-

reasoned analysis."). And the methodology employed by the district court in *Dish Network I*—
the only cited case that included a methodology—was rejected and reversed by the Seventh
Circuit on appeal. *See Dish Network II*, 954 F.3d at 980 (considering statutory text of the TCPA
and instructing district court on remand to reduce damages based on the harm caused by the
violations instead of the violator's ability to pay). ViSalus candidly admits that its proposed
solution is motivated by its ability to pay. *See* ECF 358 at 6 (describing ViSalus's "[i]nability to
pay" as a factor favoring reduction of the statutory damages award). But that was precisely the
test that the Seventh Circuit rejected in *Dish Network II*.

Moreover, after the Seventh Circuit instructed the district court in *Dish Network II* to
consider the harm caused by the defendant's violations, the district court in *Perez* decided not to
apply that approach because the defendant there did not quantify the actual harm suffered by the
plaintiffs. *See Perez*, 2020 WL 1904533, at *9. The same is true here. ViSalus insists that this is
"not a $100 million dollar case," "not even a $10 million dollar case," but "barely a $2 million
dollar case." ECF 358 at 11. ViSalus, however, does not explain *why* this is a $2 million dollar
case by tying that amount to the harm suffered by the class members. ViSalus also fails to
explain why the Court should reduce damages to $2 million, rather than to some other figure. For
these reasons, the Court here declines to apply the approach described by the Seventh Circuit in
*Dish Network II*.

**E.  Cellular Telephones and Residential Landline Telephones**

Finally, ViSalus correctly observes that the jury could not tell how many of the violative
calls were made to residential landline telephones as opposed to cellular telephones. ViSalus
contends that this uncertainty constitutes a failure by Plaintiffs to meet their burden of proof. *See*
ECF 363 at 13 (arguing that the jury's "We cannot tell" finding precludes liability for calls made
to landlines). But the distinction between landline telephones and cellular telephones is not

relevant. Under the TCPA, liability attaches to any call made to either a residential landline telephone or to a cellular telephone. ViSalus is equally liable for calls made to either kind of telephone. *See* 47 U.S.C. § 227(b)(1). Similarly, the statutory damages do not differentiate between calls made to residential landline telephones and those made to cellular telephones. *See id.* § 227(b)(3).

ViSalus further distinguishes between primarily residential landlines and landlines used mainly for business. This distinction is legally relevant, but it was already addressed at trial. In its post-trial motion, ViSalus for the first time in this lawsuit offers declarations from promoters who used their landline telephones primarily for business purposes. ViSalus correctly argues that prerecorded calls made to business landline telephones do not violate the TCPA and thus do not create liability. ViSalus, however, incorrectly applies this legal proposition to the facts here.

At trial, Plaintiffs presented evidence of how they filtered out non-residential landline telephones from residential landline telephones. *See* ECF 362 at 17-18 (internal pagination). From the evidence presented at trial, the jury concluded that ViSalus made 1,850,440 prerecorded calls in violation of the TCPA to either residential landline telephones or to cellular telephones, although the jury could not distinguish between the two based on the evidence presented. The jury, however, did not need to make that distinction because both types of calls are prohibited by the TCPA and subject to the same statutory minimum penalty per violation. "If the jury verdict is supported by 'substantial evidence,' the reviewing court must let it stand." *Davis v. Mason Cty.*, 927 F.2d 1473, 1486 (9th Cir. 1991). Plaintiff presented at trial "evidence that reasonable minds might accept as adequate" to support the jury's conclusion that ViSalus made 1,850,440 calls that violated the TCPA. *Id.* This ends the Court's inquiry on this issue.

**CONCLUSION**

Defendant's Post-Trial Motion Challenging Statutory Damages as Unconstitutionally Excessive (ECF 358) is DENIED. Plaintiffs' Motion to Strike Defendant's Promotion Declarations (ECF 364) is DENIED as moot.

**IT IS SO ORDERED**.

DATED this 14th day of August, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge