DOVEL & LUNER, LLP
Simon Franzini, Cal. Bar #287631*
simon@dovel.com
Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
Jonas Jacobson, Cal. Bar #269912*
jonas@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

(additional counsel listed on next page)


# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VISALUS, INC.**,<br>a Nevada corporation,<br><br>Defendant. | No. 3:15-cv-01857-SI<br><br>**Motion for Attorney's Fees under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2) and an Incentive Award.** |

EDELSON PC
Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
J. Aaron Lawson, Cal. Bar #319306*
alawson@edelson.com
Lily E. Hough, Cal. Bar #315277*
lhough@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

FORUM LAW GROUP
Scott F. Kocher, OSB #015088
Stephen J. Voorhees, OSB #150595
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel/Fax: (503) 445-2120

* admitted *pro hac vice*

*Attorneys for Plaintiff Wakefield and the Certified Class*

**Table of Contents**

Table of Authorities ................................................................................................ ii

**INTRODUCTION** ....................................................................................................1

   **I.**   **Review of Work Performed for the Class's Benefit.** ..............................1

  **II.**   **The Court Should Award Fees Using the Common-Fund Method.** ...........5

 **III.**   **The Court Should Award the Standard 25% Benchmark Fee Award.** ....................7

       **A.**  **Class Counsel Obtained excellent results.** ...........................................7

       **B.**  **Class Counsel expended substantial effort.** ..........................................8

       **C.**  **This litigation involved substantial risk and complexity.** ...................9

       **D.**  **This litigation required substantial skill from counsel.** ...................11

       **E.**  **Percentage awards are the norm in TCPA cases.** ..............................12

  **IV.**   **The Court Should Award Lori Wakefield an Incentive Award of $50,000.** ............13

    **CONCLUSION** ...................................................................................................15

## Table of Authorities

**United States Supreme Court Cases:**

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................5, 6

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)...................................................................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..............................................................................2

**United States Circuit Court of Appeals Cases:**

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...................................................................2

*Farrell v. Bank of Am., N.A.*,
  No. 18-56272 (9th Cir. Sept. 2, 2020) .....................................................12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................13

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...................................................................11

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...................................................................6

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2019) ...................................................................2

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................1, 7

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ...................................................................6

**United States District Court Cases:**

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12-cv-4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ...........................12

*Arnett v. Bank of Am., N.A.*,
  No. 11-cv-1372-SI, 2014 WL 4672458 (D. Or. Sept. 18, 2014) ......................10

*Azar v. Blount Int'l, Inc.*,
  No. 16-cv-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) ........................................7

*Bell v. Consumer Cellular, Inc.*,
  No. 15-cv-941, 2017 WL 2672073 (D. Or. June 21, 2017)...............................................13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014)...................................................................................11

*del Toro Lopez v. Uber Techs., Inc.*,
  17-cv-6255, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) .............................................14

*Demmings v. KKW Trucking, Inc.*,
  No. 14-cv-0494-SI, 2018 WL 4495461 (D. Or. Sept. 19, 2018) ..................................8, 9

*Holt v. Facebook, Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017) ........................................................................11

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ...............................................................................9

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-2509, 2014 WL 10520478 (N.D. Cal. May 16, 2014)....................................14

*Kramer v. Autobytel, Inc.*,
  759 F. Supp. 2d 1165 (N.D. Cal. 2010) .........................................................................11

*Lozano v. Twentieth Century Fox Film Corp.*,
  702 F. Supp. 2d 999 (N.D. Ill. 2010) ............................................................................11

*Pan v. Qualcomm Inc.*,
  No. 16-cv-1885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ......................................14

*Perez v. Rash Curtis & Assocs.*,
  No. 16-cv-03396, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)..........................6, 12, 14

*Ridgeway v. Wal-Mart Stores Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) ...........................................................................10

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................................13, 14

**Miscellaneous Authority:**

47 U.S.C. § 227 ..........................................................................................................1

Fed. R. Civ. P. 23 .................................................................................................................15

Or. Rev. Stat. § 646.563 ..................................................................................................... 1-2

## INTRODUCTION

In this case, the jury returned a special verdict (Dkt. 282) that resulted in the largest TCPA judgment on record. (Dkt. 383.) This verdict was the end result of a litigation that included an adversarial class certification, and several waves of complex motions practice. The Court should issue a fee award that reflects that great success. The Ninth Circuit has adopted a fee award "benchmark" of 25%. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). If any departure from the benchmark is warranted here, it is an upward one. Class Counsel achieved the largest TCPA verdict and judgment in the law's history, and counsel in each of the two most recent TCPA class actions to go to trial each were awarded 33% of the fund generated in those cases. But given that the judgment here is larger than in those cases, Plaintiff moves for a benchmark award. A percentage fee award of 25% accurately reflects the success Class Counsel achieved, in light of the particular complexities of this litigation. Plaintiff therefore moves the Court for an award of attorneys' fees of 25% of the award reflected by the Special Verdict Form and this Court's judgment and an incentive award of $50,000 for Class Representative Lori Wakefield.[1]

## I.     Review of Work Performed for the Class's Benefit.

This action began in 2015. After receiving a rapid series of unwanted telephone calls from Defendant ViSalus, Inc., Plaintiff Lori Wakefield sued ViSalus, alleging three claims for relief: One under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for making an unsolicited phone call featuring a pre-recorded voice, *see id.* § 227(b)(1)(A), another under the TCPA for calling Wakefield despite her registration on the National Do-Not-Call registry, *see id.* § 227(c)(5), and a third claim under Oregon's Stop Calling law, Or. Rev. Stat.

---

[1]      Defendant has indicated that it intends to oppose the motion.

§ 646.563. (Dkt. 27, Ex. 1.) Wakefield also proposed to represent a class of individuals who has received similar, harassing phone calls. *See id.*

The parties proceeded directly to a complicated discovery period. One of ViSalus's principal defenses was that any phone calls placed to putative class members were placed by independent contractors over whom ViSalus did not exercise control. One of Plaintiff's key tasks, therefore, was to determine what calls were placed by ViSalus itself. (*See* Declaration of Eve-Lynn Rapp ["Rapp Decl."], attached hereto at Exhibit 1, ¶ 2.) Plaintiff also needed to determine how ViSalus's calling technology worked, what calling records ViSalus kept, how those records were kept, and what policies ViSalus had for ensuring compliance with state and federal telemarketing laws. Ultimately, Class Counsel reviewed several gigabytes worth of discovery materials, including dozens of audio files and nearly 3,000 spreadsheets containing call information, and conducted several depositions of witnesses designated by ViSalus. (Rapp Decl. ¶¶ 3-4.) Among these documents were the critical calling campaign logs that were featured at trial. Class Counsel also issued several third-party subpoenas to round out the record. (Rapp Decl. ¶ 5.) Wakefield herself also produced dozens of documents from her own files, and sat for a deposition during this time.

In April 2017, Wakefield moved to certify a class to litigate each of her three claims. Briefing on class certification encompassed arguments on several unsettled issues, including Plaintiff's standing to sue under the then-recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and the effect of recent Ninth Circuit decisions like *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2019), and *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). Ultimately, the district court, then in the person of Judge Anna Brown, certified one of

Wakefield's proposed classes to litigate Wakefield's claim that ViSalus violated federal law by making unsolicited phone calls using an artificial or prerecorded voice.

After the parties litigated the notice process (during which Class Counsel had to take another deposition of a ViSalus witness), the parties began the process of preparing for trial. Pre-trial preparations began in earnest in June 2018, nearly three years after the complaint was filed. Trial preparations began with negotiations over a joint statement of undisputed facts. (Dkt. 108.) The parties then began the process of preparing the required joint pretrial briefing, when two disputes cropped up: how to instruct the jury on how to determine whether a given phone line was residential, and whether the jury must find that a given class member actually heard an artificial or prerecorded voice play. (*See* Dkts. 128, 129.) While the parties litigated those two interpretive issues, ViSalus moved to amend its answer to, for the first time, include a defense that it had obtained consent from class members to be called. (Dkt. 133.) After intense back and forth on that issue (*see, e.g.*, Dkt. 139), ViSalus essentially withdrew the motion. (Dkt. 145.)

As pre-trial preparations kicked into high gear, both sides retained new trial counsel. New counsel immediately began the work of distilling the record into something usable at trial, including designating deposition testimony, preparing witness lists, and proposing jury instructions and voir dire questions. Class Counsel invested significant time and money into trial preparations. This included: spending significant time analyzing ViSalus' call log data and summarizing it into something that could be easily presented to the jury; working closely with Wakefield and Plaintiff's other witnesses to streamline their trial testimony; and preparing to cross-examine ViSalus' witnesses Scott Gidley and Blake Mallen (who ViSalus put on its witness list but never ended up calling at trial). In addition, Class Counsel held a mock trial in Portland with two mock juries to hone their trial message. (See generally Declaration of Simon

Franzini, attached hereto as Exhibit 2, ¶¶ 4-6.) In the midst of these pretrial preparations, ViSalus attempted to wriggle out of the earlier stipulation of undisputed facts, an action which precipitated its own motions practice. (*See, e.g.*, Dkts. 174-78, 202-06, 216, 221, 223, 232.) Plaintiff also moved to sanction ViSalus for spoliating evidence. (Dkt. 228.) ViSalus objected to essentially all of Plaintiff's proposed exhibits. (Dkts. 194, 212.)  The Court held several pretrial conferences to resolve these and other evidentiary disputes. (E.g., Dkts. 262, 268.)

Once all of this pretrial wrangling was out of the way, trial began. After a day of voir dire, the parties litigated some final evidentiary issues (including a motion by ViSalus to exclude three of Plaintiff's exhibits), and then contested the merits in a 3-day trial, which included testimony from, among others, Lori Wakefield. The jury found that ViSalus had placed 4 unlawful calls to Lori Wakefield, and 1,850,436 unlawful calls to absent class members. (Dkt. 282.)

The jury verdict precipitated another wave of complex motions practice. First, Plaintiff moved for an award of enhanced damages under the TCPA based on the willfulness of ViSalus's conduct. (Dkt. 297.) At roughly the same time, Defendant moved to decertify the class based on the jury's findings. (Dkt. 304.) Both motions involved dozens of pages of briefing, heavy with citations to the record compiled in the just-completed trial. The Court also held an evidentiary hearing on the motion for enhanced damages. (Dkt. 320.)

Before the Court could resolve those motions, ViSalus filed a notice that it had received from the Federal Communications Commission a waiver of the class member consent standard which had governed at trial. (Dkt. 321.) ViSalus then submitted supplemental briefing on the effect of this FCC waiver on its motion to decertify, and Plaintiff responded in kind. (Dkts. 327, 333.) The Court then specifically asked Plaintiff to file a surreply addressing the issue of waiver

(Dkt. 337), which Plaintiff filed (Dkt. 341). ViSalus then moved to strike a portion of that surreply, and Plaintiff opposed. (Dkts. 342, 343.) The Court ultimately denied both the motion to enhance the damages, and the motion to decertify the class, finding that by failing to raise the issue of consent during the litigation ViSalus could not now benefit from the FCC's ruling.

ViSalus then moved to reduce the damages as unconstitutionally excessive. (Dkt. 358.) This complex issue also generated dozens of pages of briefing, and spawned a fight over ViSalus's decision to submit additional evidence along with its motion. (Dkts. 364, 365, 374.) The parties then attempted to mediate the case, in light of ViSalus's insistence that they would be unable to fund much of the judgment, and Plaintiff's desire to get relief to the Class as soon as possible, rather than have the case tied up in appeals or a bankruptcy proceeding. Counsel for both parties participated in a day-long mediation session, held via videoconference, presided over by the Hon. James Holderman (ret.) of JAMS. The mediation produced some movement, but no concrete steps towards a settlement. Thus, the Court, after denying ViSalus's motion to reduce the damages, entered a judgment in favor of Wakefield for $2,000 and the Class for up to $925,218,000. (Dkt. 383.)

## II.   The Court Should Award Fees Using the Common-Fund Method.

As an initial matter, the jury verdict here creates a common fund from which Class Counsel's fees should be awarded. The Supreme Court most thoroughly explained the common-fund doctrine in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980). There, the Court explained that "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole" and that "the doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched

at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* at 478 (citations omitted). In assessing when the common-fund doctrine is appropriately employed, the Court wrote that "the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. The Court was also clear that a class member's right to a portion of the judgment did not need to be mathematically *ascertained*, explaining that "although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery." *Id.* The jury found that ViSalus committed 1,850,436 violations of the TCPA as to the class entitling the recipients of its robocalls to $500 in statutorily proscribed damages from a common fund of $925,218,000.

*Boeing* itself involved an adversarial class-action judgment (reached at summary judgment), *id.* at 474, and the Ninth Circuit has applied its teachings to judgments reached after class-action trials, *see Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Moreover, fees awarded following two recent TCPA trials were awarded on a common-fund basis*, see Perez v. Rash Curtis & Assocs.*, No. 16-cv-3396, 2020 WL 1904533, at *17 (N.D. Cal. Apr. 17, 2020); *Krakauer v. DISH Network LLC*, No. 14-cv-0333, 2018 WL 6305785, at *3-*5 (M.D.N.C. Dec. 3, 2018), as are nearly all fees awarded pursuant to TCPA class-action settlements. This Court should do likewise. *See also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that the relevant denominator for a

fee analysis in a common fund case is the total amount made available to class members, not just that claimed).

## III.    The Court Should Award the Standard 25% Benchmark Fee Award.

When a common fund is at issue, the Ninth Circuit has established a "benchmark" fee award of 25% of the fund. *Vizcaino*, 290 F.3d at 1048. As *Vizcaino* notes, this benchmark applies even in so-called "megafund" cases. *See id.* at 1047. The 25% benchmark is intended to be the starting point for the Court's analysis, and adjusted upwards or downwards based upon several factors:

> (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of nonpayment assumed by counsel; (7) the reaction of the class; (8) non-monetary or incidental benefits, including helping similarly situated persons nationwide by clarifying certain laws; and (9) comparison with counsel's lodestar.

*Azar v. Blount Int'l, Inc.*, No. 16-cv-0483-SI, 2019 WL 7372658, at *2 (D. Or. Dec. 31, 2019). At the moment, at least, the "reaction of the class" (which is of course normally gauged with respect to a settlement) is neutral. The class has had no opportunity to submit claims. Sixty-nine individuals did opt out following class certification. *See id.* at *11. Likewise, the "non-monetary or incidental benefits" factor is neutral because the judgment provides only monetary benefits. *See id.* The remaining factors, however, suggest that an award above the benchmark is appropriate here. Class Counsel submits that, in the end, the 25% fee award is most appropriate in light of all of the circumstances.

### A.    Class Counsel obtained excellent results.

First, the results obtained by Class Counsel are outstanding. The jury verdict here has resulted in the largest judgment ever in a TCPA case, a number that alone counsels in favor of a greater-than-benchmark award. *See Azar*, 2019 WL 7372658, at *10 (settlement providing

between 4% and 8% of damages was ordinary result); *Demmings v. KKW Trucking, Inc.*, No. 14-cv-0494-SI, 2018 WL 4495461, at *14 (D. Or. Sept. 19, 2018) (recovery at or near the maximum permitted by statute was "exceptional"). The jury verdict and judgment provide for Class Members to receive the full damages to which they are entitled under the TCPA. And the jury's verdict here results in a recovery for the class that is around 3 times larger than the verdict in *Perez* and more than 10 times larger than the verdict in *Krakauer*. Viewed from whatever angle, the verdict here represents an exceptional result. This factor, if anything, weighs in favor of an award greater than the 25% benchmark.

  **B. Class Counsel expended substantial effort.**

  The effort expended by Class Counsel here also warrants an above-benchmark fee award. True enough, the work Class Counsel did during discovery, and in litigating class certification on an adversarial basis, may not stand out from other cases. *Demmings*, 2018 WL 4495461, at *15. But this case also involved a trial and assorted post-trial motions, something that is rare in any context, and especially rare in the TCPA context. Class Counsel's dedication to litigate this case to and through trial stands out from other class action litigation.

  Moreover, the work of Class Counsel will continue long after the Court awards fees here. First, the Defendant has indicated that it may enter bankruptcy, at which point Class Counsel will need to front further costs and expenses in order to defend the Class's rights in the bankruptcy proceeding. The controlled chaos of the bankruptcy will likely require significant investments of time and money as Class Counsel seeks to safeguard the Class's rights.

  If ViSalus does not declare bankruptcy, it has likewise indicated that the judgment will be appealed. Any appeal is likely to include a review of this Court's rulings on ViSalus's motion for judgment as a matter of law, Plaintiff's motion for class certification, ViSalus's motion to

decertify the class, the Court's decision on ViSalus's inability to take advantage of the FCC's ruling, and any of the myriad evidentiary rulings the Court made throughout trial. Any appeal therefore promises to be exceptionally complex, both legally and factually, requiring investment of hundreds more hours of uncompensated attorney time. This factor therefore weighs heavily in favor of a substantial award.

### C.    This litigation involved substantial risk and complexity.

Third, the risk involved in this litigation warrants at least a 25% fee award. "The risk of costly litigation and trial is an important factor in determining the fee award." *Demmings*, 2018 WL 4495461, at *15 (quotations omitted). "[T]he risk of loss in a particular case . . . is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Counsel acknowledges that TCPA litigation is not necessarily complex. That said, it has been estimated that the average TCPA case carries only a 43% chance of success. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). So, complexity or no, the case involved significant risk from the outset.

And there were several issues that set this case apart from the mine run of TCPA litigation. Here, for instance, Class Counsel has litigated class certification twice. Adversarial class certification is never a sure thing, as demonstrated here by the Court's initial order on class certification, which denied Plaintiff's motion as to two of her three proposed classes. And the second of these motions was only successful because of the record Class Counsel built at the trial. Indeed, in large part here, the risk is not that Wakefield would lose, but that her proposed class would be unsuccessful, particularly in light of the developing law surrounding standing and class certification. *See, e.g.*, *Demmings*, 2018 WL 4495461, at *15.

Motion for Attorneys' Fees                    9
and an Incentive Award

The trial itself also was a significant source of risk and complexity. Because the vast majority of TCPA cases settle, "plaintiff[] had few models for proceeding to trial." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 998 (N.D. Cal. 2017) (finding that because case went to trial, the complexity of the action weighed in favor of a greater fee award). The weeks and months leading up to trial also featured an array of complex, trial-related motions practice, as the parties sorted through jury instructions on just about every issue in this case (from how to explain the nature of a class action to a jury to whether the jury should be told about the statutory damages available here), and also litigated several complex evidentiary issues.

The trial itself was particularly pivotal here because it laid the groundwork for several complex, post-trial motions, including on whether damages should be enhanced under the TCPA, a revisit of class certification based on the record created at trial, and a motion to reduce damages on constitutional grounds. Based upon previous filings, it appears that ViSalus also will challenge the Class's win in a post-judgment motion for judgment as a matter of law, a motion which will also entail substantial complexity.

In other words, there were several places in which an adverse result could have ended the case entirely, or significantly reduced the likelihood that any portion of the absent class would recover. Given the array of difficult issues, any one of which could have resulted in no payment to the Class, Class Counsel assumed a significant risk of nonpayment. Counsel has fronted more than $360,000 in expenses (including nearly $230,000 to send notice to the class), and thousands of hours of attorney time in order to overcome these risks. (Rapp. Decl. ¶ 10; Franzini Decl. ¶ 7.) But there was no glide path to victory. The risk involved here counsels in favor of at least a benchmark award. *See Arnett v. Bank of Am., N.A.*, No. 11-cv-1372-SI, 2014 WL 4672458, at

*13 (D. Or. Sept. 18, 2014) (lack of authority governing claims, combined with trial, counseled in favor of benchmark award).

> ### D.     The litigation required substantial skill from counsel.

Next, success here required skilled advocacy by counsel. Again, counsel acknowledges that TCPA litigation does not necessarily involve substantially complexity. But this was no ordinary TCPA case. Counsel's skill in navigating both the trial and the complex motions practice that characterized this case supports an above-benchmark award. The two firms who represented the Class brought complementary skills to the table. The Edelson firm is well-versed in the TCPA, and was prepared to litigate many of the issues raised by the statute itself, including class certification, and the constitutionality of any damages award.[2] The Dovel & Luner firm, by contrast, are trial specialists, and were key to navigating the many pitfalls inherent in the trial process, and in building the trial record that helped achieve the verdict in favor of the Class, and set the Class up to succeed in the post-trial proceedings.[3] Given the big risks present in this case, Class Counsel's skill in obtaining and protecting a verdict in favor of

---

[2]     As Class Counsel explained in the motion for class certification (*see* Dkt. 69, at 27-28) Edelson PC has been involved in groundbreaking TCPA litigation, including, for instance, *Satterfield v. Simon & Schuster, Inc.*, where the Ninth Circuit first confirmed the TCPA's application to text message calls. 569 F.3d 946, 949 (9th Cir. 2009). Lawyers at Edelson PC also have successfully defended the TCPA against Constitutional challenges, *see Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1033-35 (N.D. Cal. 2017) (First Amendment); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011-12 (N.D. Ill. 2010) (First Amendment); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1169-71 (N.D. Cal. 2010) (Fifth Amendment vagueness). Prior to the results here and in the *Perez* case in the Northern District of California, Edelson PC also served as Class Counsel to the largest adversarially certified class ever under the TCPA, and had secured one of the largest settlements under the law, as well. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014). In other words, lawyers at Edelson PC brought to bear a wealth of skill and experience on the complex issues presented by this case.

[3]     As set forth in Plaintiff's Motion to Appoint Co-Counsel, Dovel & Luner has amassed an impressive record of trial victories across several substantive areas of law. (Dkt. 171, ¶¶ 3-5.)

Motion for Attorneys' Fees                    11
and an Incentive Award

the class warrants an above-benchmark award in this case. *See also Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017) (lauding the results achieved through the "complementary experience of co-counsel").

### E.    Percentage awards are the norm in TCPA cases.

The final applicable factor is a lodestar cross check. Counsel submits that a crosscheck is unnecessary here. Counsel are unaware of any TCPA class action in which an award of attorneys' fees was not based upon a percentage of the fund. *See Perez*, 2020 WL 1904533, at *17 ("courts often award percentage fees of more than 25% in the TCPA settlement context"). And awards of one-third of a common fund are typical in TCPA class actions. *See Krakauer*, 2018 WL 6305785, at *3 (collecting cases). In fact, the lawyers in both *Krakauer* and *Perez* were awarded 33% of the common fund those judgments produced. In light of the much larger recovery here, Class Counsel suggests that a benchmark award, of 25% of the fund, is appropriate here.

Moreover, the Ninth Circuit has very recently affirmed that a lodestar cross check is never required. *See Farrell v. Bank of Am., N.A.*, -- F. App'x --, 2020 WL 5230456, at *2 (9th Cir. Sept. 2, 2020). ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more."). Moreover, reliance on the lodestar method has been criticized because it incentivizes lawyers to inflate their time spent on any given task, without necessarily incentivizing work done for the client. The percentage method, by contrast, incentivizes a lawyer to maximize the class's recovery. And this is not a case in which the Class's recovery was obtained within minimal skill or effort. Counsel will, of course, submit billing records if the Court so requires, but given that courts uniformly award fees based on a percentage-of-the-fund analysis in TCPA cases, Class Counsel submits that the Court should do likewise here.

**IV.    The Court Should Award Lori Wakefield an Incentive Award of $50,000.**

In addition to an award of fees, the Court should also issue an incentive award to Lori Wakefield in recognition of her service to the absent class. "Incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quotations omitted); *see also Bell v. Consumer Cellular, Inc.*, No. 15-cv-941, 2017 WL 2672073, at *8 (D. Or. June 21, 2017) ("Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.") (quotations omitted). To determine the appropriate amount of an award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Bell*, 2017 WL 2672073, at *8 (quotations omitted).

Here, Ms. Wakefield's service to the absent class is almost without precedent. In the nearly five years from complaint to judgment, Ms. Wakefield has shouldered the burden of representing the class by herself. In accordance with her duties to the absent class, Ms. Wakefield engaged in extensive trial preparation. And she was perhaps the Class's most important trial witness; her testimony was key to securing the judgment in favor of the absent class. She also made the decision to dismiss her surviving individual claims before trial, believing that it would be better for the Class if the trial could focus exclusively on the Class claims, even though her remaining individual claims might have netted her several thousand more dollars. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (considering "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.").

While an ordinary case may justify an award of a few thousand dollars, extraordinary

efforts and results justify an award of $50,000. *See, e.g., id.* (awarding $50,000 on a judgment of

$67 million); *del Toro Lopez v. Uber Techs., Inc.*, 17-cv-6255, 2018 WL 5982506, at *3 (N.D.

Cal. Nov. 14, 2018) (awarding $50,000 and $30,000 to class representatives on a $10 million

recovery); *Pan v. Qualcomm Inc.*, No. 16-cv-1885, 2017 WL 3252212, at *13 (S.D. Cal. July 31,

2017) (awarding $50,000 to seven representatives on a $19.5 million recovery). In the *Perez*

case, the district court approved a $25,000 service award for representative who, like Plaintiff,

testified at trial and helped secure a favorable jury verdict for class. *See* 2020 WL 1904533, at

*23. That representative, however, did less than Ms. Wakefield. For example, "Perez left during

the first break on the second day of trial and never returned." *Id.* at *68. Ms. Wakefield not only

attended the entire trial, she put in weeks of preparation, including preparing for a mock trial..

Given Wakefield's more extensive and careful participation in this case, a larger award, of

$50,000, is justified.[4]

Moreover, a $50,000 incentive payment is not disproportionate to the total recovery or to

the recovery of individual class members. An award "which amount[s] to just 0.4 percent of the

total recovery," does not "create a conflict or potential conflict between the Class

Representatives and the Class." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2014

WL 10520478, at *3 (N.D. Cal. May 16, 2014). Here, a $50,000 award is less than 1/10 of 1

percent of the $925 million judgment. And because class members received dozens of calls (at

$500 per call) there are likely to be absent class members entitled to tens of thousands of dollars.

---

[4]    Wakefield intends to provide a declaration substantiating her work in this case at the
earliest possible opportunity. However, Wakefield was forced to evacuate her residence in light
of the wildfires spreading through western Oregon. As explained in a separate motion, therefore,
she respectfully requests an additional two weeks to provide her declaration. (Dkt. 384.)

Motion for Attorneys' Fees                              14
and an Incentive Award

(Dkt. 303 (4/12 Trial Transcript), at 538-540 (providing examples of class members called 40, 50, and 56 times).) Moreover, because this is a judgment and not a settlement, there is no threat that Wakefield was motivated to accept a suboptimal settlement in light of the prospect of an incentive award.

## CONCLUSION

This was a hard-fought case. Both sides fought tooth and nail to achieve a victory on the merits. In the end, Class Counsel secured a historic verdict for the certified Class. Any fee award should reflect that verdict. Many of the relevant factors counsel in favor of an enhanced award. But given the size of the judgment fund, Counsel respectfully submits that a benchmark award of 25% is appropriate here. A copy of this motion will be posted on the case website and discussed in the forthcoming notice and claim form. Class members will be able to object to the request after receipt of the notice. *See* Fed. R. Civ. P. 23(h).

Respectfully submitted,

**LORI WAKEFIELD, individually and on behalf of all similarly situated individuals,**

Dated: September 10, 2020            /s/ Eve-Lynn Rapp

Rafey S. Balabanian, ILB #6285687*
rbalabanian@edelson.com
Eve-Lynn J. Rapp, ILB #6300632*
erapp@edelson.com
J. Aaron Lawson, Cal. Bar #319306*
alawson@edelson.com
Lily E. Hough, Cal. Bar #315277*
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Simon Franzini, Cal. Bar #287631*
simon@dovel.com

Motion for Attorneys' Fees
and an Incentive Award

15

Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
Jonas Jacobson, Cal. Bar #269912*
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

Scott F. Kocher, OSB#015088
Stephen J. Voorhees, OSB#150595
FORUM LAW GROUP
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2120
Fax: 503.445.2120

*Attorneys for Plaintiff and the Class*