# EXHIBIT 1

(to Plaintiff's Motion for Attorney's Fees and an Incentive Award)

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VISALUS, INC.**, a Nevada corporation,<br><br>Defendant. | No. 3:15-cv-01857-SI<br><br>**Declaration of Eve-Lynn Rapp** |

1. My name is Eve-Lynn Rapp. I am a Partner at Edelson PC, counsel of record for Plaintiff and Class Counsel in the above-captioned matter. I make the following declaration in support of Plaintiff's Motion for an Award of Attorney's Fees and an Incentive Award.

2. I have litigated dozens of TCPA cases. In my opinion, discovery in this case was unusually complex because of issues raised by Defendant ViSalus, Inc. regarding its relationship with callers. In most TCPA cases, the only significant issue to be explored in discovery is the nature of the dialing equipment used by the defendant.

3. Discovery itself was particularly contentious. First, at the outset, the Parties disagreed about whether the discovery should be bifurcated or proceed on class and merits issues simultaneously. Defendants also argued (unsuccessfully), that discovery should be stayed based on the then pending Supreme Court ruling in *Spokeo Inc. v. Robins*. After issuing various written discovery requests, my team further had a number of issues with the way ViSalus produced documents and objected to document requests or interrogatories. For example, ViSalus initially refused to produce information relevant to class certification related to the technology used to

place the calls, the source of the dialed numbers, call recordings, the identity of the individuals whose phone numbers were dialed, and policies related to records of consent and stop calling requests. These disputes were resolved only after multiple meet and confer efforts. Plaintiff was also required to address deficiencies in ViSalus's production related to the identification of corporate representatives and previously filed lawsuits and complaints.

4. All in all, during the discovery phase of this case, attorneys at my firm issued two separate sets of interrogatories (with 17 total interrogatories) and 37 requests for production, responded to 30 written discovery requests, took three depositions, two of ViSalus employees, and one of an individual designated by ViSalus to speak on 12 topics. We reviewed thousands of documents produced by ViSalus. 265 pages of documents were Bates stamped, and ViSalus then produced dozens of folders containing other discovery material, including additional word-processed documents, several dozen audio files (which were featured on calls placed by ViSalus or its agents), and nearly 3,000 spreadsheets, which ViSalus represented were reports of all calls placed by ViSalus during the relevant time frame. All in all, ViSalus produced 4 gigabytes worth of discovery material for my team to comb through.

5. On behalf of the class, my firm also issued third-party subpoenas to Molalla Communications and AT & T in order to obtain Lori Wakefield's phone records and ViSalus's phone records (or at least, phone records from certain phone numbers that we had determined, through discovery, had been used by ViSalus to place the phone calls at issue).

6. Following class certification, attorneys at my firm once again engaged defense counsel as we worked to determine what of the discovery received so far would apply to the certified class. (Since we had proposed three classes, we had issued discovery relevant to all three classes, some of which became irrelevant after the Court's class certification order.)

Through an extensive meet and confer process, and a fourth deposition of a ViSalus witness, we compiled a group of spreadsheets that, the parties stipulated, corresponded to the certified class—i.e., were of calls promoting ViSalus products to persons in the United States.

7. Given the variety of ways in which ViSalus had compiled data, I then tasked a technologist on staff here at Edelson PC with writing a computer script that would compile the data into usable form, both for notice purposes and trial purposes. During this process, my firm also subpoenaed Avaya, the manufacturer of the device used by ViSalus to place calls, in order to obtain information that would allow us to understand the activity logs available to ViSalus which would be pertinent to gathering information about the class members and the calls that were placed to them.

8. When the Court granted our notice proposal in part (Dkt. 106), it instructed us to remove from our list any phone calls which did not go through, or in which no recorded voice played. We then worked with ViSalus to obtain a declaration to illuminate the meaning of various disposition codes found in ViSalus's records vis-à-vis the outcome of each call. We used this declaration to revise our list in order to comply with the Court's order.

9. In my opinion, litigating this case through trial was especially risky, particularly in light of unfavorable precedent from the Fifth Circuit dealing with robocalls. In fact, we tried several times to settle the case before trial, in light of both this precedent and our understanding that trial is inherently risky.

10. To date, my firm has fronted $70,705.17 in ordinary litigation expenses, and an additional $229,501.34 to give notice of class certification to the class. We will front the cost of notice again now that a judgment has been entered.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 10, 2020, at Niwot, Colorado.

<u>s/ Eve-Lynn Rapp</u>