Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower, 111 S.W. Fifth Ave
Portland, OR 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Benjamin G. Shatz (pro hac vice)
bshatz@manatt.com
Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

Attorneys for Defendant
ViSalus, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISALUS, INC., a Nevada corporation,<br><br>Defendant. | No. CV No. 3:15-cv-01857-SI<br><br>**DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL**<br><br>Oral Argument Requested |

**TABLE OF CONTENTS**

RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
 AND NEW TRIAL .......................................................................................... 1

1. The class is invalid, improperly represented, and should be decertified for reasons
 that justify JMOL or a new trial........................................................................ 1

2. Plaintiff failed to prove that each call was made to a qualifying mobile line or
 residential landline, and failed to prove the number of each type of phone line
 called .................................................................................................................. 5

3. Plaintiff failed to prove that calls made to "residential" landlines were not
 business lines ..................................................................................................... 6

4. Plaintiff failed to prove that a recorded message or artificial voice was played on
 each alleged call, and if so, how many times and to whom they were played .................. 8

5. Plaintiff failed to establish that each call constituted "telemarketing," which calls
 constituted telemarketing, and who received those calls .................................................. 12

6. Plaintiff failed to produce common evidence that each class member was harmed,
 given that members likely consented to, requested, or desired to receive
 telemarketing calls from ViSalus.................................................................................... 12

7. The FCC's Waiver Order further demonstrates that ViSalus had consent to call
 promoters ........................................................................................................................ 13

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Alfred v. Pepperidge Farm, Inc.*,
No. LA CV14–07086 JAK (RZx), 2016 WL 7655793, (C.D. Cal. Aug. 5, 2016)....................4

*Allied Orthopedic Appliances v. Tyco Healthcare Group*,
247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................................4

*Auto Ventures, Inc. v. Moran*,
No. 92-426, 1997 WL 306895 (S.D. Fla. 1997) ...........................................................4

*Bieneman v. City of Chicago*,
864 F.2d 463 (7th Cir. 1988) .........................................................................................4

*Big Horn Cty. Elec. Co-op., Inc. v. Adams*,
219 F.3d 944 (9th Cir. 2000) .......................................................................................14

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) .........................................................................................4

*Cellco P'ship v. Dealers Warranty, LLC*,
No. 09-cv-1814-(FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010)...........................2

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967).....................................................................................................14

*FCC v. AT&T Inc.*,
562 U.S. 397 (2011).......................................................................................................2

*Gutierrez v. Wells Fargo & Co.*,
No. C 07–05923 WHA, 2009 WL 1247040 (N.D. Cal. May 5, 2009)......................7

*Krakauer v. Dish Network*,
311 F.R.D. 384 (M.D.N.C. 2015) .................................................................................5

*Legg v. PTZ Ins.*,
321 F.R.D. 572 (N.D. Ill. 2017)..................................................................................13

*Nike, Inc. v. Sketchers U.S.A., Inc.*,
No. 3:16-CV-007-PK, 2017 WL 7275389 (D. Or. Nov. 14, 2017) ..........................14

*Phillips v. Klassen*,
502 F.2d 362 (D.C. Cir. 1974)......................................................................................4

*Pickett v. Iowa Beef Processors*,
209 F.3d 1276 (11th Cir. 2000) ....................................................................................4

*Ybarra v. Dish Network, L.L.C.*,
807 F.3d 635 (5th Cir. 2015) .........................................................................................8

## RULES & REGULATIONS

Fed. R. Civ. P. 50(b) & 59 ...............................................................................................1

64 C.F.R. § 64.1200(f)(12) .............................................................................................12

**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

After Plaintiff Wakefield rested her case at trial, on April 12, 2019, Defendant ViSalus moved for Judgment as a Matter of Law (JMOL). ViSalus now renews its motion for JMOL, and alternatively for a new trial, pursuant to Federal Rules of Civil Procedure 50(b) and 59.

> **1.      The class is invalid, improperly represented, and should be decertified for reasons that justify JMOL or a new trial**.

The class suffers from many individual issues that predominate over common ones. While there are many questions that need to be answered for each individual class member, key issues requiring individualized inquiries and proof include, *inter alia*: (1) was the class member called on a residential or mobile line, and if residential, was the line primarily used as a business line; (2) did the class member receive and actually hear a prerecorded or "Press 1" message; (3) did the message constitute telemarketing; and (4) did the class member provide consent or expect to receive telemarketing calls from ViSalus.[1] These individualized issues—not common issues of fact or law—predominate. As it now stands, the judgment fails to account for each class member's individual claim or defenses to that claim.

Plaintiff attempted to demonstrate the class claims by merely providing testimony on her own individual claim. She presented two witnesses and various documentary evidence to demonstrate that *her* phone line was *primarily used* for personal rather than business purposes and thus qualified as "residential" for purposes of the TCPA. But in doing so, she demonstrated

---

[1] Other individual issues include: (5) did the class member "Press 1" and speak with a live agent and if so, what was said; (6) was the phone number landline or mobile at the time of the prerecorded call; (7) was the prerecorded message from ViSalus or a promoter to his or her downline; (8) was the class member a promoter or a customer at the time of the prerecorded call; (9) is the class member a business entity or an individual; (10) is the class member located in the United States; (11) did the class member have an active, inactive, or cancelled account at the time of the prerecorded call; (12) did the class member have verbal communications with promoters about telephonic outreach from ViSalus during the onboarding process and if so, what was verbally discussed; (13) did the class member opt out of telephone communications prior to any prerecorded call; (14) was the class member on an opt-out list at the time of the call; and (15) did the class member own the phone number called.

precisely why class treatment is not appropriate. Plaintiff showed through her own testimony that this very same exercise would need to be done for every member of the class in order to establish liability for the class member.

Plaintiff is neither typical nor an adequate representative of the class for a multitude of reasons. She never received any calls on a cell phone. Nor is she like class members who were called on landlines primarily used for business or pure business lines.[2] While Plaintiff's phone line was deemed to be "residential"—only after extensive fact-gathering and evidence presented at trial relating to her specifically—the class includes those who received calls on lines that are *not* covered by the TCPA. Nor is Plaintiff typical of class members who did not receive telemarketing messages or a prerecorded message at all.

In addition, Plaintiff is not positioned like class members who consented, requested, or desired to receive telemarketing calls. Plaintiff testified that she did *not* check the "phone" box to receive telemarketing calls when she signed up and further, she repeatedly told ViSalus to "quit calling."[3] No evidence was presented that the class is similarly situated. Plaintiff's claim that she never opted in to receive telemarketing calls and repeatedly requested not to be called is unique to her.

Plaintiff is not representative of promoters because she "never sold" any ViSalus products.[4] She signed up and cancelled in the Spring of 2012 and never started her ViSalus business.[5] Nor is she representative of customers because she had a "business relationship" with

---

[2] Similarly, Plaintiff cannot represent promoters that were registered with ViSalus as business entities (*e.g*. LLCs, corporations, etc.). Business entities generally do not have privacy interests under the TCPA. *See FCC v. AT&T Inc.,* 562 U.S. 397, 406 (2011) (businesses have no common law right to privacy); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-cv-1814-(FLW), 2010 WL 3946713, at *11 (D.N.J. Oct. 5, 2010) (FCC has refused to adopt additional prohibitions on prerecorded calls to businesses under the TCPA). Also, any prerecorded call made to a number provided by a business entity would presumably be a business (not residential) line.

[3] Apr. 11 Tr. at 217:16–23, 226:25–227:2, 257:21–258:7 (L. Wakefield testimony).

[4] Apr. 11 Tr. at 219:21–22, 249:23-250:2 (L. Wakefield testimony).

[5] Apr. 11 Tr. at 214:19–20, 220:5–10 (L. Wakefield testimony).

Renewed Motion For Judgment As A Matter Of Law And New Trial

ViSalus.[6] Promoters are independent business owners *selling* product in connection with their

home-based businesses while customers are consumers *purchasing* product for personal or

household use.[7] Calls to promoters had a different purpose (i.e., training, education, and to assist

with their home-based businesses).[8] Nor is she representative of active or inactive (but not

cancelled) promoters or customers because she was neither. Plaintiff cancelled her ViSalus

business more than two years before she was called.[9] However, ViSalus' company policy was

not to contact promoters who cancelled their accounts and "[cancelled] accounts would have

been excluded" from any contact lists.[10] As ViSalus' compliance officer explained, "it is not our

policy to contact canceled promoter accounts" and if such accounts were included, "then

someone made an error in judgment."[11] Therefore, any prerecorded calls made to Plaintiff were

an aberration and not typical of the class.

Plaintiff is a disgruntled promoter who cancelled her promoter business before it even

began, and who is at odds with the class she purports to represent. The class consists of

customers and promoters who benefit from ViSalus' products. The class also consists of

promoters who depend on an income stream from their ViSalus business and whose livelihood

depends on the company's continued operations. The catastrophic judgment in this case may

bankrupt the company and destroy the home-based businesses of thousands of ViSalus

---

[6] Apr. 11 Tr. at 266:12–15, 267:21–268:5 (L. Wakefield testimony).

[7] Apr. 11 Tr. at 280:23–281:23, 282:2–3 (J. Laun testimony) (explaining the roles of promoters and customers), 317:4–14 (S. Gidley testimony); Dkt. 271-1, Joint Stip. of Facts ¶ 4; *see also* Laun Dep. at 26:17–27:4, 29:3–5,126:13–18.

[8] Apr. 11 Tr. at 281:8–10 (J. Laun testimony) ("[W]e, as a company, will sometimes communicate to our active opted-in customers with a different set of communication [than promoters].").

[9] Apr. 11 Tr. at 220:5–10, 222:5–13 (L. Wakefield testimony); Trial Exhs. 6–7 (cancellation communications).

[10] Gidley Dep. at 161:14–162:17; Laun Dep. at 81:4–15 ("When a promoter leaves, then they are removed and their Exigo preferences are changed or they're deactivated. So if they …canceled the promotership, they would be removed from communication.").

[11] Gidley Dep. at 206:13–16.

Renewed Motion For Judgment As A Matter Of Law And New Trial

promoters. Class member interest in the continued vitality of ViSalus outweighs any meager

recovery they could possibly receive. Furthermore, any prerecorded messages were sent by or on

behalf of promoters to their downlines in order to promote and maintain their ViSalus

businesses. The interests of these promoters directly conflict with Plaintiff's lawsuit,

undermining class certification.[12]

Plaintiff also shared her home phone number with her husband who was a ViSalus

promoter.[13] Plaintiff never established that the calls were directed to her, rather than her

husband, and the evidence suggests they were to him. The KCC Class Notice List contains a

single entry for "Byron Wakefield" and Plaintiff does not even appear on the class list.[14] Plaintiff

---

[12] *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337–38 (4th Cir. 1998)
(reversing class certification after $390 million jury verdict where "ongoing business relationship
[of current franchisees] with [defendant] and their interests in the long-term financial health of
the company were imperiled by plaintiffs' efforts to wring a large damage award out of
defendants" and the "interest of former franchisees in damages … reveal[ed] an obvious initial
schism within the putative class"); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th
Cir. 2000) (reversing certification where the class included those who claimed to have been
harmed by agreements that benefited some of the unnamed class members); *Bieneman v. City of
Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (class certification inappropriate where "[s]ome of
these [class members] undoubtedly derive great benefit" from the alleged harm); *Phillips v.
Klassen*, 502 F.2d 362, 366–67 (D.C. Cir. 1974) (upholding denial of class certification where
"there will be divergent views" among the class "as to whether they have been injured or
benefited"); *Auto Ventures, Inc. v. Moran*, No. 92-426, 1997 WL 306895 (S.D. Fla. 1997)
(refusing to certify a class of Toyota dealers because "the class collapses into distinct groups of
winners and losers"); *Alfred v. Pepperidge Farm, Inc.*, No. LA CV14–07086 JAK (RZx), 2016
WL 7655793, at *3 (C.D. Cal. Aug. 5, 2016) (finding a conflict between the named plaintiffs,
who were former distributors, and class that included current distributors because the recovery
sought could negatively impact the class); *Allied Orthopedic Appliances v. Tyco Healthcare
Grp.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) (noting that a conflict between the named plaintiff
and the class exists where "some plaintiffs claim to have been harmed by the same conduct that
benefitted other members of the class").

[13] Apr. 11 Tr. at 201:9–12 (L. Eves testimony), 333:17–24 (S. Gidley testimony); *see also* Dkt.
271-1, Joint Stip. of Facts ¶ 23; Gidley Dep. at 174:5–7. Dkt. 271-1, Joint Stip. of Facts ¶ 20;
Apr. 11 Tr. at 214:17–18 (L. Wakefield testimony).

[14] Apr. 12 at 430:18–431:1 (S. Davis testimony).

Renewed Motion For Judgment As A Matter Of Law And New Trial

only appeared *once* in Plaintiff's class summary data (as did her husband Byron).[15] The shared-use nature of the landline at issue presents issues and defenses unique to Plaintiff.

> **2.      Plaintiff failed to prove that each call was made to a qualifying mobile line or residential landline, and failed to prove the number of each type of phone line called**.

Plaintiff presented no evidence that any member of the class other than herself was called on mobile or residential landlines. Plaintiff's failure to perform the most basic inquiry on the nature of the telephone lines was a fatal flaw in her case, resulting in a complete absence of evidence supporting the jury's finding that calls were made to phone lines covered by the TCPA.

Plaintiff did not engage an expert to determine whether the phone numbers were mobile or landline. Expert testimony was particularly crucial in this case because the class includes promoters who are business owners and likely used the phone numbers voluntarily provided to ViSalus in connection with their ViSalus businesses. *See Krakauer v. Dish Network*, 311 F.R.D. 384 (M.D.N.C. 2015) (utilizing expert testimony as to whether calls were made to "residential" lines). Thus, in order for the jury to make a determination as to which landlines were qualifying residential (i.e., non-business lines), they would have needed to know which phone numbers were *landlines* in the first instance. Plaintiff could not prove liability with respect to class members without individualized inquiries to determine the nature of each class member's telephone line.

Plaintiff's failure of proof is only solidified by the jury's verdict: the jury answered "We cannot tell" when asked how many calls were made to residential lines and how many to mobile lines. Without evidence establishing whether a line was a mobile or residential landline, the jury could not determine whether any of the calls at issue violated the TCPA. Even if Plaintiff had engaged an expert on this threshold question, Plaintiff failed to show that class member phones

---

[15] Apr. 12 Tr. at 445:19–24 (S. Davis testimony) (admitting that Plaintiff's phone number only appears twice in class summary data, even though she claims to have been called five times), 452:7–12.

Renewed Motion For Judgment As A Matter Of Law And New Trial

lines were "residential" under the TCPA. For these reasons, ViSalus is entitled to judgment as a matter of law, a new trial, or decertification of the class.

### 3. Plaintiff failed to prove that calls made to "residential" landlines were not business lines.

Plaintiff similarly failed to proffer any evidence that calls made to landlines were not business lines, to which the TCPA does not apply. When confronted with this problem about whether any given line was used primarily for business purposes, Plaintiff's witness responded that he had adequately excised business lines from the list of calls by simply removing any numbers that appeared to be linked with a business name or common business firm designations (*e.g.*, Inc. or LLC).[16] The Court reasoned that this was sufficient for the jury to "infer" that all numbers remaining on the list were either mobile lines or landlines used primarily for residential purposes.[17] But Plaintiff's efforts in removing "business sounding names" cannot be an adequate method to resolve the issue, nor could that give rise to a reasonable inference that all remaining lines were residential. The only way to resolve this central question is through individualized inquiries directed to each class member, which is why class certification was flawed. This same problem also means that Plaintiff failed to prove liability for any class member other than herself.

This Court itself clearly recognized the problem, noting after trial: "I don't understand how the jury had the evidence before them that the home telephones that were used by any given absent class member was not used for primarily business purposes."[18] The Court posed the "entirely possible" hypothetical of John Smith, who runs a gardening business using his "home"

---

[16] Apr. 11, 2019 Tr. at 369:4-24, 370:13-18, 378:21-23 (Davis admits he used his own "subjective analysis" of what he considered to be a business); Apr. 12, Tr. at 438:7-22.

[17] Dkt. 344 at 14.

[18] Oct. 11, 2019 Tr. at 15:10-13.

Renewed Motion For Judgment As A Matter Of Law And New Trial

phone line, which is registered only in his name.[19] Plaintiff's approach to removing business lines would not catch or account for this common situation.

Plaintiff's own case proves that whether a landline is residential cannot merely be "inferred." At trial, Plaintiff presented evidence that she provided a "home number" on her promoter application. However, instead of asking the jury to merely assume this number was a residential landline, Plaintiff offered extensive trial evidence regarding her specific circumstances. Based on this evidence, the jury was able to resolve the business versus "residential" question as to Ms. Wakefield. But, *the answer for Ms. Wakefield is not an answer for all. See Gutierrez v. Wells Fargo & Co.*, No. C 07–05923 WHA, 2009 WL 1247040, at *6 (N.D. Cal. May 5, 2009) ("A common misconception about class actions is that all counsel must do at trial is to prove the case for the class representative and then the case will be automatically proven for each class member, at least as to liability. This is not so."). The fact is that the jury was incapable of resolving this question for the rest of the class, because Plaintiff's evidence was unique to her alone. There is no reason to believe that Plaintiff's situation mirrors that of any other class member and Plaintiff failed to prove liability for any class member but herself.

This Court noted that for "class members called on their home telephones who also run a business out of their home, some additional fact-finding may be necessary before a specific potential class member may recover."[20] However, this ignores the fact that Plaintiff had the burden to prove that each call was to a non-business residential line *before* liability could be imposed for that specific call. In other words, the focus on "recovery" by any particular person overlooks the threshold question of liability and Plaintiff's burden of proof.

Nor is it merely speculation that some class members provided home lines used primarily for business purposes. ViSalus provided post-trial declarations with examples.[21] Again, this

---

[19] Oct. 11, 2019 Tr. at 16:12-24.

[20] Dkt 344 at 13.

[21] *See* Declaration of Gidley in Support of Defendant's Supplemental Brief to Decertify the Class at ¶ 3, Exs. 1–32, 34, 35.

Renewed Motion For Judgment As A Matter Of Law And New Trial

comes as no surprise, given that ViSalus' promoters are individuals who are running their own home-based businesses selling ViSalus' products, typically using their home-business phone lines to do so.

In short, there simply was insufficient evidence to support the jury's verdict that all 1.8 million calls were to phone lines that were either mobile or residential lines *not* used primarily for business. For this reason, ViSalus is entitled to judgment as a matter of law, a new trial, and/or decertification.

> **4.      Plaintiff failed to prove that a recorded message or artificial voice was played on each alleged call, and if so, how many times and to whom they were played**.

Plaintiff's case rests on the assertion that ViSalus promoted its products or services through calls that featured an artificial or prerecorded voice. But Plaintiff failed to adduce any evidence, let alone evidence common to the class, demonstrating that any call was initiated with a prerecorded message and actually began to play. Again, this failure of proof is critical—if a call was not made or did not go through, then a prerecorded message could not have played and the called party would not be a member of the class. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) ("We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must 'speak' during the call.").

Plaintiff proffered evidence to support her individual claim alone. And, based on at least 20 pieces of evidence, the jury found that prerecorded messages were played and heard by Plaintiff for only *four* out of the five calls she claimed. This not only shows that Plaintiff's evidence was insufficient to establish class liability, but also shows that a prerecorded message did not play, and was not heard, on a number of the calls at issue.

Plaintiff argued that ViSalus stipulated pre-trial that the POM system was used for two types of calls, "Press 1" calls and "Voice Casting" calls,[22] suggesting that these were the *only*

---

[22] Dkt. 271-1 at 3.

Renewed Motion For Judgment As A Matter Of Law And New Trial

types of campaigns for which ViSalus used POM. Although POM was used for these campaigns, what Plaintiff failed to demonstrate is that these were the *only* campaigns for which ViSalus used POM. The stipulated facts do not establish this.[23] To the contrary, the evidence in the record actually suggests that ViSalus used POM for other campaigns.[24] In other words, Plaintiff failed to show that every call played a telemarketing message.

Plaintiff also argued that during the relevant timeframe, ViSalus had nine or fewer agents placing outbound calls and speculates that it thus "would simply be impossible for this handful of agents to be making thousands of live calls a day."[25] Plaintiff then concluded that ViSalus did not produce "a shred of evidence" of its live-agent strategy in its calling campaigns. Plaintiff is wrong on both counts. Immediately after the quoted testimony above, Mr. Gidley stated that "if a phone call is made through the [POM], the intention was in most of these situations or most of these phone numbers is that *if a live person picked up the phone, that they would be connected with an agent*." Indeed, this and other trial evidence demonstrated that the POM system dialed the number, screened the calls to determine if a live person had answered and then only routed the call to a ViSalus representative if it confirmed a person was on the line. This process freed up ViSalus representatives to focus on the small percentage of calls that actually connected to a live person. Since ViSalus had a small team, it was crucial that POM functioned in this manner, and representatives did not waste their time with calls that were disconnected or routed to an answering machine rather than a live person.

[23] *Id.*; *see also* Apr. 3 Tr. 74:1–9 ("I'm not going to let you argue to the jury that [the stipulation] means or reads 'only two.' If I hear you say that … I will sustain an objection.").

[24] Trial Exh. 37, Gidley Decl. ¶ 4 ("It is likely that POM was used for these ASR campaigns as well, and a voice recording **may** have been used." (emphasis added)); Apr. 11 Tr. at 325:2–5 (S. Gidley testimony) ("But again, those calls, just because the number was on the spreadsheet, then it makes an assumption that it was uploaded into the Progressive Outreach Manager and not dialed manually by a call center agent."), 328:16–329:16 (explaining that certain calls were likely manually dialed).In addition, Mr. Gidley testified that the "Press 1" campaigns were used towards the end of ViSalus' use of POM, thus accounting for only a small percentage of the calls at issue. *See* Apr. 11 Tr. at 327:18–23 (S. Gidley testimony).

[25] Opp. to Decertification Motion at 15–16.

Renewed Motion For Judgment As A Matter Of Law And New Trial

Further, the evidence at trial demonstrated that only certain POM contact spreadsheets contained disposition codes (i.e., call outcomes). And even for those that did, Plaintiff offered no testimony defining all of the various disposition codes, including whether a call was completed with a prerecorded message played. Some disposition codes suggested that calls were not completed (e.g., "Desktop Error," "Invalid," "Invalid Number," "Application Error"). There was also no specific disposition code in the POM manual for prerecorded messages,[26] and none of the disposition codes that did exist in the POM manual indicated whether a prerecorded message was used or played during a particular call.[27] While Mr. Gidley identified certain disposition codes as ones in which "no voicemail could have played," even Plaintiff's own witness, Mr. Davis, admitted that Mr. Gidley did *not* testify that this list was exhaustive or that prerecorded messages were, in fact, used in connection with the other disposition codes.[28] For example, there was no common proof adduced at trial—which, again, was Plaintiff's burden—that the "answer machine" disposition code, which is associated with the overwhelming majority of calls at issue, resulted in messages being played to class members. Given the absence of common proof, individualized inquiries would be necessary to determine whether prerecorded messages were sent *and played* for calls to each absent class member.

---

[26] Apr. 12 Tr. at 446:11–18 (S. Davis testimony) (testifying that the Avaya manual does not include a disposition code for prerecorded messages).

[27] Apr. 11 at 302:1–4 (J. Call testimony) ("Q: [I]s there any way that you can figure out whether any of these audio files are connected with any of the spreadsheets in Exhibit 5? A: No."); *id.* at 303:19–304:1 (assuming that a prerecorded message would have been used in connection with contact lists would be "drawing a lot of conclusions"). *See also* Foster Decl. ¶ 15, Exh. 12, Deposition of Justin Call ("Call Dep.") at 89:2–5, 11–19; Apr. 11 Tr. at 324:12–15 (S. Gidley testimony) ("Q: Do you know how many people received this voice mail? A: I don't. Q: How would you figure that out? A: I wouldn't be able to.").

[28] Trial Exh. 37, Gidley Decl. ¶ 4; *see also* Apr. 12 Tr. at 417:14–25, 427:8–16 (S. Davis testimony, admitting that Mr. Gidley's declaration did not state that other dispositions listed meant that a message was played).

Renewed Motion For Judgment As A Matter Of Law And New Trial

Moreover, there was no disposition code indicating whether a prerecorded message actually played during that call.[29] Thus, even assuming the disposition codes meant that a call was completed and the codes were accurate (and they likely were not),[30] the evidence was that there was no way to tell whether a prerecorded message was sent, let alone heard, or whether a called party was connected to any prerecorded message. Plaintiff could have, but failed to introduce any expert testimony on these issues or seek discovery on the issue of whether recordings were actually used.

Finally, even if Plaintiff had successfully proved that class members received a call using a prerecorded message, she failed to offer any common evidence demonstrating that any class member *actually heard* a prerecorded message. Instead, Plaintiff contended that the "answering machine" disposition code on the POM contact lists was evidence that a prerecorded message was received and "heard." But no testimony was offered that any answering machines of class members actually recorded a voice message or that a message was left if an answering machine picked up. Even if the requirement is only that a recorded message be played (and not necessarily heard), the evidence fails to show that a recorded message was played for every call. The disposition codes do not establish messages were played for every call.

In sum, Plaintiff failed to adduce any class-wide proof on whether telemarketing prerecorded messages were sent to absent class members and whether they were actually played and heard. For these reasons, ViSalus is entitled to judgment as a matter of law, or in the alternative, a new trial.

---

[29] Apr. 12 Tr. at 446:11–18 (S. Davis testimony) (testifying that the Avaya manual does not include a disposition code for prerecorded messages).

[30] Apr. 11 at 299:24–301:9 (J. Call testimony) (testifying that disposition codes were prone to human error or fabrication and may be incorrect).

Renewed Motion For Judgment As A Matter Of Law And New Trial

5.    **Plaintiff failed to establish that each call constituted "telemarketing," which calls constituted telemarketing, and who received those calls.**

Plaintiff also failed to adduce common evidence at trial that the messages at issue qualified as "telemarketing" under the TCPA. Instead, Plaintiff cherry-picked the audio recordings she played for the jury, ignoring recordings that were clearly not telemarketing. The jury could not have reasonably inferred from the messages played to them at trial, that all messages were similar marketing campaigns. Nor was it ViSalus' obligation to play a sample message for the jury at trial that did not meet the TCPA definition. The burden of proof is always on the plaintiff.

Plaintiff also relied on the fact that Scott Gidley, a ViSalus employee, used the word "marketing" in describing an aspect of ViSalus' business. It goes without saying that a laymen's generic understanding of marketing is not synonymous with the meaning of "telemarketing" under the TCPA.[31] In any event, this does not, and cannot, establish how many (if any) class members were sent telemarketing, as opposed to informational, messages. ViSalus is therefore entitled to judgment as a matter of law, a new trial, or decertification, for these reasons as well.

6.    **Plaintiff failed to produce common evidence that each class member was harmed, given that members likely consented to, requested, or desired to receive telemarketing calls from ViSalus.**

Although ViSalus may not have had "prior express written consent" as defined by the TCPA, in many instances ViSalus *did* have consent to make calls. ViSalus only contacted promoters and customers with whom it had a business relationship. These promoters and customers voluntarily provided their telephone numbers in writing during enrollment and some expressly requested to be contacted by telephone for marketing purposes. While Plaintiff may have offered evidence that *she* did not check the "phone" box in her promoter application

---

[31] Trial Exh. 37, Gidley Decl. ¶ 5. *Cf.* 64 C.F.R. § 64.1200(f)(12); *see also* Apr. 3 Tr. at 76:3–8 (the Court noting that "'Marketing' does not mean 'telemarketing.' If I hear them argue that this paragraph [in the jury instruction] implies that this was all telemarketing, you can make your objection. I would anticipate sustaining it, and I would probably even jump in myself, even without an objection, to say, 'It says marketing; it doesn't say telemarketing.'").

Renewed Motion For Judgment As A Matter Of Law And New Trial

denoting her desire to receive telemarking calls, this individualized proof offers nothing with respect to the selection of any other class member. Moreover, as a matter of law, whether Plaintiff (or anyone else) ever checked that box or not, voluntarily providing the number to ViSalus under these circumstances constituted consent to be called anyway.

Without a common answer to the question of whether class members consented to telemarketing calls, it cannot be determined whether class members sustained an injury, and thus can recover under the TCPA. *See Legg v. PTZ Ins.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017) ("[i]f the class members agreed to receive the calls, they lack a 'genuine controversy'" and cannot recover under the TCPA). For this additional reason, ViSalus is entitled to judgment as a matter of law, a new trial, or decertification.

**7.      The FCC's Waiver Order further demonstrates that ViSalus had consent to call promoters**.

A major development occurred after trial when, on June 13, 2019, the Federal Communications Commission ("FCC") issued an Order granting ViSalus a retroactive waiver from compliance with the technical requirements of "prior express written consent" under the TCPA. In doing so, the FCC determined that ViSalus only needed to satisfy the lower, pre-October 16, 2013 standard of "prior express consent" for prerecorded telemarketing calls (1) made on or before October 7, 2015; (2) to customers or promoters who provided consent in writing, such as an enrollment application; (3) where consent was obtained before October 16, 2013. This means customers simply needed to provide a telephone number to ViSalus to provide prior express consent.

ViSalus unquestionably had consent satisfying this standard from its promoters who each provided a telephone number to ViSalus in writing—and even had the option to check "none" when asked how they preferred to be contacted. *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) ("persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary").

Renewed Motion For Judgment As A Matter Of Law And New Trial

In denying ViSalus's motion for decertification, the Court found that ViSalus could not raise the FCC Waiver because had ViSalus been more diligent, it could have raised the possibility of the FCC Waiver earlier, and thus the parties could have developed the record further through discovery. (*See* Dkt. 344 at 10–11.) ViSalus urges the Court to reconsider this waiver ruling. ViSalus raised the FCC Waiver to the Court within days after it issued. Until then, ViSalus had no way to know whether the FCC would consider the request, let alone grant the waiver, nor would it have made sense to engage in discovery or develop a factual record for a legal issue that was not yet cognizable. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143–45 (1967) (defendant could not have waived a "known right" before a decision granting that right). It was only after the FCC Waiver was it proper to raise the notion of a consent defense at all. *Accord Nike, Inc. v. Sketchers U.S.A., Inc.*, No. 3:16-CV-007-PK, 2017 WL 7275389, at *4 (D. Or. Nov. 14, 2017) (it was "illogical and unfair to argue that [defendant] erred by not making an argument that both this Court and the parties knew would have been rejected").

Further, the retroactive waiver from the FCC changing the standard from "prior express written consent" to "prior express consent" constitutes an intervening change in the law and thus, there can be no waiver. *See Big Horn Cty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000) ("[A]n exception to the waiver rule exists for intervening changes in the law.").

ViSalus should not be faulted for failing to predict a change in the law. Moreover, this point is a legal one: Given the FCC Waiver and the undisputed forms signed by ViSalus' promoters, they provided consent. Alternatively, assuming that there is a factual determination needed to evaluate this point, then a new trial should be granted for this reason (in addition to the others raised here) so that ViSalus may present this FCC Waiver-consent issue to a jury. This issue is potentially outcome-determinative and could mean that ViSalus may not be liable at all (or for just a tiny fraction of the judgment amount).

Renewed Motion For Judgment As A Matter Of Law And New Trial

## CONCLUSION

Plaintiff's evidence at trial cannot support the judgment. At most, Plaintiff proved that ViSalus placed 1.8 million calls. But Plaintiff failed to prove which of those calls were to mobile lines or landlines. Even more crucially, Plaintiff failed to prove that any particular residential landline (other than her own) was used primarily for personal rather than business purposes. Plaintiff had to produce an abundance of evidence that her own line was not primarily used for business purposes. But her showing cannot be deemed representative for other class members. Indeed, most of the other class members were active promoters of ViSalus' products, running their businesses from home. Nor can Plaintiff evade this issue by arguing that phone lines linked with business-sounding names were removed from the list of calls, because that still does not answer the question of whether any given line (even if registered in an individual's name) was used primarily for personal or business purposes. The evidence does not support any reasonable inference of that necessary fact. Plaintiff's case rests on speculation, not evidence. Further, although 1.8 million calls were placed, there is no evidence that this resulted in 1.8 prerecorded telemarketing messages being played and heard by class members on the other end of the line.

Moreover, were this case tried again today, there is no question—given the recent FCC Order granting ViSalus a waiver—that ViSalus would have a viable (if not dispositive)—defense of consent. Ignoring such a material defense—only made available to ViSalus post-trial—would be patently unfair and could mean the difference between a viable entity and a bankrupt one.

Even if this Court is not inclined to enter judgment as a matter of law for ViSalus, it should seriously consider decertifying the class. The arguments for decertification are legion and they are strong. This Court did not certify the class from the outset, and while that initial ruling requires deference, that no longer applies after submission of the evidence at trial, which clearly showed why the class must be decertified. ViSalus' arguments on decertification echoed many of the same concerns raised by the Court both during and after trial. The Court's initial concerns

Renewed Motion For Judgment As A Matter Of Law And New Trial

were well-founded—there *is* something very amiss with this case and the resulting stratospheric judgment.

The same reasons justifying judgment as a matter of law for ViSalus also show that the verdict is contrary to the clear weight of the evidence. Thus, this Court should seriously consider ordering a new trial (keeping in mind that trial was only three days) and putting Plaintiff to her burden of proof. The judgment as it stands now rests on unsupportable inferences and lacks evidentiary support, especially as it concerns the class claims.

Respectfully submitted,

Dated: September 24, 2020

MANATT, PHELPS & PHILLIPS, LLP

By *s/Benjamin G. Shatz*

Christine M. Reilly (pro hac vice)
creilly@manatt.com
Benjamin G. Shatz (pro hac vice)
bshatz@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 310.312.4000 Fax: 310.312.4224

MILLER NASH GRAHAM & DUNN LLP
Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Nicholas H. Pyle, OSB No. 165175
nicholas.pyle@millernash.com
Tel: 503.224.5858 Fax: 503.224.0155

Attorneys for Defendant ViSalus, Inc.

Renewed Motion For Judgment As A Matter Of Law And New Trial