UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VISALUS, INC.**,<br>a Nevada corporation,<br><br>Defendant. | No. 3:15-cv-01857-SI<br><br>**Declaration of Eve-Lynn Rapp**<br><br>In Support of Plaintiff's Motion for Attorney Fees |

1.  My name is Eve-Lynn Rapp. I am a Partner at Edelson PC ("Edelson" or the "Firm"), counsel of record for Plaintiff and Class Counsel in the above-captioned matter. I make the following supplemental declaration in support of Plaintiff's Motion for an Award of Attorney's Fees and an Incentive Award ("Plaintiff's Motion"). (Dkt. 388.)

2.  As noted in Plaintiff's Motion, my Firm agreed to pursue Ms. Wakefield's and the Class's claims in this matter on a contingency basis and knew from the outset that they would be required to spend hundreds, and potentially, thousands of hours investigating and litigating their claims with no guarantee of success, while simultaneously foregoing other opportunities.

3.  Attached hereto as Exhibit 1 is a true and accurate copy of Edelson's firm resume. As shown in Exhibit 1, Edelson is highly experienced in consumer class action litigation, particularly involving the TCPA, and the Firm has secured groundbreaking decisions in both trial and appellate courts nationwide, including in this case.

4.  My Firm has litigated this case for five years, since its inception all the way through trial, which resulted in a record-breaking $925,218,000 judgment for the Class. As detailed in Plaintiff's Motion, the litigation included researching, investigating, and vetting

1

Plaintiff's and the Class's claims, briefing various contentious motions—including a motion for a stay based on then impending Supreme Court cases, class certification, and a contested motion for effectuating notice to the Class—engaging in complex discovery, which involved reviewing thousands of documents and working with a technologist to evaluate nearly 3,000 spreadsheets reflecting the calls at issue, and preparing for and successfully pursuing judgment at trial. My Firm has likewise been involved in post-trial briefing—which included a motion for decertification and a motion challenging the statutory damages as unconstitutionally excessive—and we will continue to pursue this matter through any appeals, which we believe are likely forthcoming.

5. During the pendency of the litigation, various attorneys from my Firm—at both the Associate and Partner levels—worked on this matter, primarily because the litigation required such staffing, and due to the natural turnover and attrition that any firm faces over the course of a five year period. Relevant here, I myself went on two separate maternity leaves during the span of the litigation, which required other attorneys to step into and become acclimated with the case, both in preparation for and during my absences. Additionally, my Firm is comprised of various teams (an Investigation team, a Litigation team, and a Complex Issues and Appeals team, amongst others), and the expertise of members from each group was required depending on the varying stages of the litigation. At all times we endeavored to ensure that there was no unnecessary duplication of efforts.

6. To date, the attorneys at my Firm have logged 3,735.12 hours of attorney time and spent $ 69,275.17[1] in hard costs representing Ms. Wakefield and the Class. Class Counsel

---

[1] Plaintiff's Motion originally noted the Firm's expenses as $70,705.17. After further review of the records, that figure included an error and the correct number is actually

2

additionally incurred $229,501.34 in costs associated with providing notice of class certification.[2]

7. My Firm's total lodestar of $2,056,650.75 represents the work that we have undertaken since the inception of this case and does not include the additional work that will be necessary through the remaining notice and potential claims process, as it relates to communications with Class Members, continued resolution efforts, and/or contending with Defendant's recently filed motion for a new trial and likely appeals.

8. My Firm's policies require all professionals and paralegal/law clerk staff to contemporaneously record their time with detailed descriptions of each task performed. To track our time, we use a billing application known as "Freshbooks." Our billing protocol is promulgated to all attorneys and staff at the Firm through our onboarding process, and employees must acknowledge and accept the protocol upon starting at the firm. Our billable rates and an outline of the hours of each attorney that worked on this matter are incorporated in the chart below. Here, as with every case, we kept diligent and detailed time records that accurately and reasonably reflect the amount of hours required to litigate and resolve this case. It is the Firm policy of Edelson PC that each employee is responsible for keeping track of his or her billable time by at least the tenth of the hour.

9. In my opinion, the expenditure of time by the attorneys and staff that worked on this case was reasonable and necessary, and the hours spent equate to the number of hours that Class Counsel could have billed to a private client. Prior to the filing of this declaration, I

---

$69,275.17, as reflected in Exhibit 3. Plaintiff's counsel apologizes to the Court for the discrepancy and any confusion that it may have caused.

[2] Additional costs for notice and claims administration may be incurred should the Court deny Plaintiff's request that Defendant be required to bear such costs.

3

reviewed the detailed time entries and removed any entries that were mistakenly entered in this case or that I deemed duplicative or unnecessary.

10. The rates for the attorneys used to calculate the total lodestar figure correlate to their respective experience, and are the same rates that Edelson PC attorneys charge to their hourly clients. Further, for more than a decade, courts across the country, state and federal alike, have routinely approved my firm's hourly rates as reasonable. *See Barnes v. Arzyta, LLC*, No. 17-cv-7358, 2019 WL 277716 at *3 (N.D. Ill. 2019) (finding Edelson PC's rates "reasonable given the market rate that hourly clients are willing to pay, judicial approval of their rates, and their level of reputation and expertise in the area"); *Goodman v. Hangtime, Inc.*, No. 14-cv-01022, Dkt. 124 (N.D. Ill. Sept. 29, 2015) (granting Edelson PC's fee request in full, the reasonableness of which was demonstrated under the lodestar method); *Theis v. AVG Techs. USA, Inc.*, No. 1:12-cv-10920-RGS, Dkt. 116 (D. Mass. May 5, 2014) (same).

11. As reflected in the chart on the next page, my Firm's adjusted lodestar[3] is $2,056,650.75:

---

[3] My Firm has expended more hours on this matter than the 3,735.12 hours included in the referenced chart. However, we've excluded time billed by certain attorneys and tasks deemed to be duplicative, excessive, or otherwise unnecessary to include here.

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURLY RATE | HOURS WORKED | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Founder & CEO) | 23 | $1,150 | 26.90 | $30,935.00 |
| Rafey S. Balabanian (Managing Partner) | 15 | $875 | 164.80 | $144,200.00 |
| Ryan Andrews (Partner) | 15 | $750 | 177.50 | $133,125.00 |
| Eve-Lynn J. Rapp (Partner) | 11 | $725 | 859.60 | $632,210.00 |
| Christopher Dore (Partner) | 11 | $725 | 87.50 | $63,437.50 |
| Aaron Lawson (Associate) | 7 | $550 | 344.35 | $189,392.50 |
| Lily Hough (Associate) | 4 | $475 | 1,168.17 | $554,880.75 |
| Stewart Pollock (Former Associate)[4] | 4 | $350 | 423.20 | $148,120.00 |
| Shawn Davis (Director of Digital Forensics) | NA | $395 | 335 | $132,325.00 |
| Mark Milhouse (Former Forensics Engineer) | NA | $250 | 30.50 | $7,625.00 |
| Paralegals/Law Clerks | NA | $250 | 117.6 | $22,767.50 |
| **Total** | | | 3,735.12 | $2,056,018.25 |

12.    Exhibit 2 to this Supplemental Declaration, which has been filed on the public CM/ECF system with redactions, and submitted unredacted to the Court for *in camera* review, is a true and accurate copy of the billing records contained in FreshBooks for the time members of the Firm have spent on this case.[5]

13.    In addition, my Firm has incurred $69,275.17 in unreimbursed expenses—also maintained in the FreshBooks system—which include the costs incurred for depositions, travel,

---

[4]    Rates and years of practice for former employees and associates are the rates and years of practice at the time they left the Firm.

[5]    Given that Plaintiff's full billing records contain attorney work product and other privileged communications, Defendant has only been provided with the redacted, publicly filed, version of these billing records. Consistent with Local Rule 3-8 and 5-4, Defendant has been provided with a copy of the transmittal letter sent to the Court with its *in camera* submission.

mediations, trial, and other miscellaneous costs associated with litigating the case, such as postage/FedEx, copying, and filing and service fees. A true and accurate copy of those expenses are attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 25, 2020, at Niwot, Colorado.

/s/ Eve-Lynn Rapp