Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower, 111 S.W. Fifth Ave
Portland, OR 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Benjamin G. Shatz (pro hac vice)
bshatz@manatt.com
Christine M. Reilly (pro hac vice)
creilly@manatt.com
John W. McGuinness (pro hac vice)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

Attorneys for Defendant
ViSalus, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISALUS, INC., a Nevada corporation,<br><br>Defendant. | No. CV No. 3:15-cv-01857-SI<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE PLAN**<br><br>Request for Oral Argument |

# OPPOSITION TO PLAINTIFF'S CLASS NOTICE PROPOSAL

Defendant ViSalus opposes Plaintiff's motion for approval of post-judgment notice plan and claims procedure (Dkt. 396) on several points.

## I. It cannot even be determined who is to receive class notice post-trial.

Plaintiff states that she provided KCC with a list of all the telephone numbers that were part of a summary presented at trial and that the proposed notice list contains only the phone numbers that were part of the class-wide proof that the "jury evaluated to reach its verdict." Mot., p. 5. However, this ignores the fact that the jury's verdict was not consistent with the number of violations that were argued at trial. Plaintiff argued at trial that there were at least 1,927,928 violations, but the jury only returned a verdict for 1,850,436 violations. Apr. 12, 2019 Trial Transcript, pp. 502, 544-546; Dkt. 282. The discrepancy is unknown and incapable of determination.

Compounding the issue further, when the jury was asked to separate out the number of prerecorded message calls made to mobile phones and the number of prerecorded message calls made to "residential landlines," the jury returned a verdict of "**We cannot tell**" on both questions. So the jury arrived at precisely 1,850,436 calls—we do not know how—but it could not determine which calls were made to mobile phones and which were made to "residential landlines." If the jury could not determine which phone lines are at issue, then it is clear that we cannot determine who to give notice to. In short, notice cannot be provided to those who may be entitled to damages based on the jury's verdict.

## II. The Class Notice documents should be structured in such a manner as to identify class members who are actually entitled to relief.

Plaintiff argues that the claims process will resolve "any individual factual issues [] regarding who is entitled to relief." Mot., p. 5. But Plaintiff's notice plan is wholly inadequate and not designed to identify class members who are entitled to relief. Specifically, (1) Plaintiff's proposed class notice characterizes qualifying landlines as those "used primarily for residential purposes" (Dkt. 396-1, Peak Dec., Attachment A (email notice), p. 15); and (2) Plaintiff's

proposed long form notice similarly characterizes the applicable inquiry as whether a "landline [is] used primarily for residential purposes (based on a box checked on the Claim Form)" and noting that "individual claim[s] may be challenged by Defendant (e.g., on grounds that the telephone number is not a landline used primarily for residential purposes)." Dkt. 396-1, Peak Dec., Attachment C. But this formulation—"used primarily for residential purposes"—does not clearly convey that only landlines used primarily for personal, as opposed to business purposes, are properly within the class. A class member may think that a landline used primarily for business purposes might still qualify as residential because the landline is a phone in the person's home (i.e., residence).

The confusion is compounded by Plaintiff's proposed "Claim Form," which asks a class member to "declare under penalty of perjury" and "this number is a landline that is **used primarily as a <u>residential telephone</u>**" by simply checking a single checkbox. Dkt. 396-1, Peak Dec., Attachment B, p. 17 (emphasis added). The claim form instructions then revert to the prior language when noting that "additional processing will need to be performed to determine whether … that number was a cellular line or **landline used primarily for residential purposes**." *Id*. (emphasis added). So, on one hand, class members are being instructed that they may have a claim if they primarily used their home phone for "residential purposes" but on the other, they are being told that they have a claim if their landline is a "residential telephone."

These instructions are facially confusing and seemingly contradictory. Class members are not likely to understand to what they are being asked to attest and they are not likely to understand what "residential purposes" versus "residential telephone" means in the context of this case. This is incredibly significant, as it stands to compromise the integrity of the claims process and promote the submission of invalid claims for which ViSalus should not have to pay.

Plaintiff's proposed claim form is inadequate in various other ways. The claim form should require claimants to declare, under penalty of perjury, that (1) they received and heard a prerecorded voice message from ViSalus; (2) the prerecorded voice message was marketing in

nature; and (3) they did not consent to receive such calls. In addition, the claimant should be required to (1) identify the phone number that received a prerecorded marketing message from ViSalus; (2) state whether they were the subscriber of the telephone number during the relevant time period; (3) identify their telephone provider (e.g., Verizon, AT&T); and (4) provide a telephone bill or other documentation showing that the claimant was the subscriber of the phone number during the period in question.[1] The claim form should also make clear that by filling out, signing, and submitting the form, the claimant affirms under penalty of perjury under the laws of the United States that the information is accurate and complete.

The claim form should also be designed in such a manner so that it asks appropriate questions to determine whether a particular class member qualifies for relief, rather than a process where class members are left to guesswork and their own factual and legal conclusions. This is especially true with respect to the essential element of establishing that any landline at issue was used primarily for residential and not business purposes. Plaintiff Wakefield testified for several hours on various inquiries relevant to determining whether her phone number was primarily used for residential, rather than business, purposes. For example, Wakefield's testimony at trial (April 11, 2019 Trial Transcript at pp. 243–50) included: (1) Plaintiff operated a home daycare business for children in April 2015, the month she received calls from ViSalus; (2) the landline number at issue was registered to "Lori Wakefield"; (3) the number was registered and billed as a residential landline; (4) Plaintiff did not advertise the number as a daycare business; (5) Plaintiff did not place the number on flyers for her home daycare business; (6) Plaintiff did not place the number on business cards; (7) Plaintiff did not put a sign with her number in the front of her house advertising her home daycare business; (8) Plaintiff did not announce "Lori's Day Care" when she picked up the phone; (9) Plaintiff did not advertise the number in any way; (10) of the 301 telephone calls made to the number within a three-month period (which Plaintiff submitted phone records to prove), only two calls were related to

---

[1] Class members should fill in the phone number that received prerecorded messages on the claim form, rather than the claim form pre-populating telephone information.

Plaintiff's daycare business and the remaining 299 calls were "personal"; (11) Plaintiff's use of her line during this three-month period was "typical"; (12) when Plaintiff signed up as a promoter with ViSalus, she did not sign up as a company and did not fill out a company enrollment form; (13) Plaintiff did not use the line to sell ViSalus products and neither did her husband, who also used the line; and (14) after Plaintiff cancelled her business relationship with ViSalus, she did not use the line for ViSalus business. *See* Defendant's Motion to Decertify the Class, Dkt. 306, at 11–12. After weighing the evidence and considering the credibility of trial witnesses, including Plaintiff, the jury determined that Plaintiff's line qualified as "residential" under the TCPA. *Id.* at 12.

ViSalus recognizes that it will not be able to depose each individual class member for hours to determine their eligibility like it did at trial for Ms. Wakefield. But at the very least, the claims form and instructions should be designed to ask the relevant questions for the parties, this Court, and/or a Special Master to determine if that member qualifies for damages.[2] Class members must show that they qualify for damages. Asking a class member to simply check a box stating that their landline is primarily a "residential telephone" does not even come close to resolving this key issue.[3] The Court seemed to recognize as much post-trial.[4]

---

[2] As a result, the proposed postcard notice and claim form are insufficient.

[3] Should the Court decide not to stay claims administration, the Court should order the parties to meet and confer regarding revised class notice forms and if agreement cannot be reached, order the submission of revised forms. Alternatively, the Court might consider delegating these issues to a Special Master for further discussion and resolution.

[4] Tr. Oct. 11, 2019 at 12:3–15 ("How do we handle the administration of this? Should I handle it before an appeal? Should I handle it only after it comes back from the Ninth Circuit? And one of the questions specifically that I'm thinking about is in one of my recent opinions, Docket 344, entered on August 21st of this year, I noted on page 13, 'For class members called on their mobile phones, no additional fact finding could possibly affect ViSalus's liability. For those class members called on their home telephones who also ran a business out of their home, some additional fact finding may be necessary before a specific class member may recover.' How do I deal with that and when should I deal with that?"); *id.* at 15:4–14 ("I don't understand how the jury had any evidence at all on which to make a decision or a finding that an absent class member who was called on their home telephone did not use that telephone primarily for business purposes. I thought we had all discussed the fact that we could handle this post-trial in

4
Defendant's Opposition to Plaintiff's Motion for Approval of Class Notice Plan

As ViSalus has continuously argued, these issues are more than a mere administrative claims-processing concern. It constitutes a failure of proof by Plaintiff at trial. This problem also has led to a flawed judgment figure that includes potentially disqualified phone lines in the liability calculation.[5] The Court has attempted to address this problem by entering a judgment of "up to" a maximum sum, i.e., "an aggregate amount not to exceed $925,218,000." But this uncertain and still-to-be determined final judgment amount only highlights the fundamental and threshold problem resulting from Plaintiff's failure of proof in establishing class liability at trial.

The claim form is also problematic because it encourages the submission of false or inaccurate claims by telling claimants: "YOU MUST CHECK AT LEAST ONE BOX BELOW IN ORDER TO RECOVER FROM THIS LAWSUIT." Dkt 396-1, p. 17 (Peak Decl., Attachment B) (emphasis original). The claim form should be designed to solicit relevant information from class members and then determine whether the claimant qualifies for damages. Instructing class members how to fill out the form in order to ensure the receipt of payment is inappropriate.

Further, the claim form should make clear that the call was *initiated with* or *began with* a prerecorded voice message. *See* 47 U.S.C. § 227(b)(1)(A) (it is unlawful "to make any call … using … an artificial or prerecorded voice"); 47 U.S.C. § 227(b)(1)(B) (it is unlawful "to initiate

---

the claims administration process, but I don't see your point. I don't understand how the jury had the evidence before them that the home telephones that were used by any given absent class member was not used for primarily business purposes. What was that evidence?").

[5] *See* Tr. Apr. 3, 2019 at 16: 16–22 ("If they present 800,000, and the jury finds — let's just grab a number out of thin air — half of that, 400,000. Okay, fine. That's going to cap the defendant's liability. Now, that doesn't mean that the defendant has to write a check for $500 times 400,000. There still has to be a claims process, and we will take it from there what we do with that."); Tr. Apr. 3, 2019 at 18:12–23 ("So we need to ask the jury, frankly, as plaintiff proposed, as defendant proposed, how many people received these types of automated or artificial voice calls to either a cellular phone or a residential landline and excluding business lines? The jury will have to answer that question. They are going to fill in that number, and that number will then cap the amount of liability that defendant may be liable for. And then when we deal with, 'Okay, step forward and get your money,' only those people that actually have received calls to a landline residential number, or a cellular telephone, would be eligible.").

any residential telephone line using an artificial voice or prerecorded voice"); 47 C.F.R. § 64.1200(a)(2) (no person or entity may "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using … an artificial or prerecorded voice"); 47 C.F.R. § 64.1200(a)(3) (no person or entity may "[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message").

Lastly, all references in the claim form and notices representing that the Court entered a "total judgment of $925,218,000" are incorrect. The Court entered an aggregate amount "not to exceed" this amount. Dkt. 383 (Judgment).

### III. The claim form should require claimants to indicate how many calls they received, and whether they heard a prerecorded marketing message on each call.

In addition to information needed to establish eligibility for a damages award, each claimant should also have to state how many qualifying calls they received. This is necessary because the $500 statutory damages are premised on a per-call basis. Thus, it is not enough for a claimant to simply avow that he or she was called because only the number of calls establishes the amount of damages.

Without a declaration as to the number of calls received, the claims administrator would determine this. But the administrator should merely be administrating, not making factual determinations about how much money each class member should be paid. ViSalus should have the ability to challenge the administrator's "adjudication" of the number of calls received. Moreover, Plaintiffs are in the best position to know whether they received prerecorded voice messages from ViSalus and the number of such calls. For example, the mere fact that ViSalus' records may list a telephone call does not mean that such call was successfully completed or that the class member actually received and heard the offending prerecorded message. Thus, each claimant should have to aver that he or she received one or more calls (and state how many), heard a prerecorded message, aver that message was marketing in nature, and that the phone line or lines for such calls, if landline, were used primarily for residential, and not business purposes.

## IV. The Claims Process Raises Serious Due Process Concerns

In addition to the concerns raised above, Plaintiff's claims process raises serious due process concerns. The proposal essentially vests the claims administrator with the power to determine if a claimant has established a claim for liability under the TCPA and award damages against ViSalus. Mot., p. 7 (claims administrator "would follow a finding of liability to prove up claims and damages amounts"; "claims administrator will determine the number of illegal robocalls that number received"; and "claims administrator will then award each claimant $500 per call"). Instead of merely administering claims, as is typically done, the administrator here is responsible for making factual determinations regarding whether a violation has occurred, the number of violations as to each class member, and the aggregate amount of damages to the class. That determination could be **several hundred million dollars** up to the judgment's $925 million cap.

Even if ViSalus is given the right to challenge the findings, this improperly shifts the burden to ViSalus to disprove damages. That is not ViSalus' burden. That burden of proof rests squarely with the Plaintiff and/or the claimant. There needs to be a process for determining whether a class member has established a claim for damages and a process by which challenges can be lodged and then a factual determination made on each claim. For example, if a claimant purports to have received calls on a "residential" line, there needs to be a process to determine if the claimant has met that burden and for ViSalus to challenge that claim. These types of determinations are not suitable for a class administrator, especially given the significant monies at stake. At a bare minimum, there should be some mechanism to challenge a class member's claims and invalidate them. For example, if a class member stated that they received 50 calls, but ViSalus' records showed they received at most a couple, that claimant's claims should be invalidated or reduced. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658, 671 (7th Cir. 2015) ("[T]he defendant's due process interest is implicated because the calculation of each class member's damages affects the total amount of damages it owes to the class. That's why the

method of determining damages must match the plaintiff's theory of liability and be sufficiently reliable.").

The process proposed by Plaintiff violates ViSalus' due process rights. *See Mullins*, 795 F.3d at 658, 671 (defendant "must be given the opportunity to raise individual defenses and to challenge the calculation of damages awards for particular class members"); *Marcus v. BMW of N. Am.*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."). *See also Comcast Corp. v. Behrend*, 569 U.S. 27, 34–35 (2013).

## V. The Class notice documents should clarify that Plaintiff's Counsel is seeking hundreds of millions of dollars in fees.

The proposed Long Form Website Notice (Dkt. 396-1, p. 22) contains a section titled "How will the lawyers be paid?" This section asserts that "Class Counsel have requested a fee of 25% of the judgment," but fails to forthrightly state that this calculates out to $231,304,500. Class members should be informed—indeed they have the right to know—that class counsel is seeking over $231 million dollars, because such an astronomical figure may (and will) prompt objections.

## VI. The perjury declaration should be amended to include "under the laws of the United States."

ViSalus further objects to Plaintiff's proposed draft notice on the grounds that the perjury declaration omits the language "under the laws of the United States." *See* Dkt. 396-1 at p. 17 (proposed post-card notice). First, including this standard language is commonplace in all federal court declarations made under penalty of perjury. Second, because the proposed claim form does not require claimants to state their location when signing, the claim form must include language that the declaration is made under the laws of the United States to account for the possibility that some claimants will sign while abroad. *See* 28 U.S.C. § 1746(1) (declarations

8
Defendant's Opposition to Plaintiff's Motion for Approval of Class Notice Plan

executed outside the United States must include the language "under the laws of the United States").

VII. **ViSalus should not, and cannot, bear the costs of the proposed notice and claims administration.**

As ViSalus has established through evidence recently submitted to the Court, ViSalus is in extreme financial distress. Plaintiff's extraordinary request that ViSalus pay the costs of class notification and claims administration is unduly burdensome and frankly impossible for ViSalus to bear. What few assets ViSalus has will be devoted to pursuing an appeal of the judgment. Rechanneling those assets for claims administration will interfere with ViSalus' ability to pursue its rights on appeal.

To be sure, courts have the power to shift the costs of administration even when liability is on appeal. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009). But that discretion may, by definition, be exercised in either direction. And *Hunt* makes clear that although discretion exists, the more typical position—arising from Supreme Court precedent—is that Plaintiff's counsel bears administrative costs, and recovers them later from the judgment:

> "The usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen*, 417 U.S. at 178. "[C]ourts must not stray too far from the principle underlying [*Eisen*] that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978). However, occasionally "the district court has some discretion" in allocating the cost of complying with an order concerning class notification. *Id.* at 350. (*Hunt*, 560 F.3d at 1143.)

Here, it is Plaintiff's counsel who has chosen to pursue this class action litigation and has fronted the administrative costs to date. ViSalus has made clear that it has no money to pay the

judgment in this case,[6] intends to appeal, and is in no position to afford class notice or administration costs. Since it is Plaintiff's counsel who seek to push this case forward in this posture, it is Plaintiff's counsel who should pay for those expenses.

**VIII. Resolution of class notice and claims administration should be stayed until ViSalus has exhausted all post-judgment and appellate avenues of relief.**

Finally, given that ViSalus has a pending motion for a new trial or judgment as a matter of law, and given that if ViSalus' post-judgment motions are unsuccessful, ViSalus intends to appeal, this Court should stay considerations of any class notice and class administration issues until after appeal. If ViSalus obtains appellate relief, then the costs of notice and administration will have been wasted. ViSalus has no money to spare and presumably Plaintiff's counsel—should they be charged with the costs—should similarly not wish to waste such funds.

Moreover, as noted above, the claims process in this case is going to be quite challenging, especially in regard to determining whether class members are actually entitled to damages. In fact, the Court itself hinted that due to these challenges, a special master might be needed for claims administration. See Dkt. 344 at 13 (Court notes that for class members called on their home telephones who also conducted business from home, "some additional fact-finding may be necessary before a specific potential class member may recover"). The parties should not continue to bear this extraordinary expense until such time as it is clear that Plaintiff and the class will actually prevail on the legal issues.

---

[6] Even Plaintiff acknowledges that "it is highly unlikely that ViSalus will ever be able to pay anything approaching a $925 million judgment." (Mot. at 3, n.2).

|  |  |
|---|---|
| Dated: October 22, 2020 | Respectfully submitted,<br><br>MANATT, PHELPS & PHILLIPS, LLP<br><br>By *s/Benjamin G. Shatz*<br><br>Christine M. Reilly (pro hac vice)<br>creilly@manatt.com<br>Benjamin G. Shatz (pro hac vice)<br>bshatz@manatt.com<br>John W. McGuinness (pro hac vice)<br>jmcguinness@manatt.com<br>MANATT, PHELPS & PHILLIPS, LLP<br>2049 Century Park East, Suite 1700<br>Los Angeles, CA 90067<br>Tel: 310.312.4000 Fax: 310.312.4224<br><br>MILLER NASH GRAHAM & DUNN LLP<br>Joshua M. Sasaki, P.C., OSB No. 964182<br>josh.sasaki@millernash.com<br>Nicholas H. Pyle, OSB No. 165175<br>nicholas.pyle@millernash.com<br>Tel: 503.224.5858 Fax: 503.224.0155<br><br>Attorneys for Defendant ViSalus, Inc. |