IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD, individually and on behalf of a class of others similarly situated**, <br><br> Plaintiff, <br><br> v. <br><br> **VISALUS, INC.**, <br><br> Defendant. | Case No. 3:15-cv-1857-SI <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

After a three-day trial, the jury returned a verdict for Plaintiff Lori Wakefield, individually and on behalf of a certified class of others similarly situated, against Defendant ViSalus, Inc. The jury found that ViSalus had made 1,850,440 telemarketing calls using an artificial or prerecorded voice to mobile or residential telephones belonging to Wakefield or other class members in violation of the Telephone Consumer Protection Act (TCPA).

On September 24, 2020, Defendant ViSalus, Inc. filed its Renewed Motion for Judgment as a Matter of Law and for a New Trial. ECF 395. Wakefield opposes the motion. ECF 408. For the reasons below, the Court denies ViSalus's motion.

## STANDARDS

### A.  Judgment as a Matter of Law

Under Rule 50(b) of the Federal Rules of Civil Procedure, judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (explaining that a motion for judgment as a matter of law must be granted if "the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party"). Because a motion under Rule 50(b) is a renewed motion, "a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law that it did not first raise in its Rule 50(a) pre-verdict motion.'" *Go Daddy*, 581 F.3d at 961 (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

A court reviews properly raised arguments challenging the factual sufficiency of a jury's verdict for substantial evidence. That means that "the jury's verdict must be upheld if there is 'evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *Id.* at 963 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *see also Weaving*, 763 F.3d at 1111 (noting that substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion[,] even if it is possible to draw two inconsistent conclusions from the evidence" (quotation marks omitted)).

In evaluating a motion for judgment as a matter of law, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Experience Hendrix, L.L.C., v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Further, the Court may not make credibility determinations, weigh the evidence, or

"substitute its view of the evidence for that of the jury." *Krechman v. City of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (quotation marks and citation omitted).

## B. Motion for a New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a district court may "on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "Rather, the court is 'bound by those grounds that have been historically recognized.'" *Id.* (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)); *see also Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007).

A "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729 (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). In determining the clear weight of the evidence, "the district court has 'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Id.* (alterations in original) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

## DISCUSSION

ViSalus makes several arguments in support of its renewed motion for judgment as a matter of law. The Court has already rejected each and does so again.

ViSalus argues that Wakefield is not a typical class member because she never received any calls on a cell phone and because the landline on which Wakefield did receive ViSalus calls was only found to be a residential line after fact-finding specific to her and not available for other class members. ViSalus also argues that Plaintiff is not an adequate class representative because she was not a successful ViSalus promoter but a disgruntled, failed promoter whose interests were adverse to the interests of absent class members who feel favorably about ViSalus or whose livelihood depends on ViSalus' continued operation.

The Court has previously rejected both arguments. The Court explained that representative claims are typical of the class so long as the claims are "reasonably co-extensive with those of absent class members." ECF 344 at 20 (quoting *Marlo*, 707 F.3d at 1042). Because Wakefield, like many class members, received an automated or prerecorded telemarketing message from ViSalus to which she did not give prior express written consent, Wakefield's claim is typical of those of absent class members. Meanwhile, ViSalus's argument that Wakefield is an inadequate representative lacks merit. ViSalus presented no evidence that absent class members feel more favorable to ViSalus. Given that ViSalus made most of the calls at issue as part of a campaign targeted at customers or promoters who had not placed an order within the prior 90 days, it is unlikely that the absent class members depended on ViSalus's continued operation.

ViSalus also argues that it is entitled to judgment as a matter of law or a new trial because Wakefield did not prove the following by a preponderance of the evidence: (1) each call was made to a mobile or residential line and what number of calls was made to each; (2) that calls

PAGE 4 – ORDER

made to residential lines were made to residential lines primarily used for non-business purposes; (3) that a prerecorded message or artificial voice played on each call; (4) that each call constituted telemarketing; and (5) that class members did not consent or expect to receive telemarketing calls from ViSalus. ViSalus also argues that individual issues predominated over issues common to the class on each of the five above grounds. The Court addresses each in turn.

At the outset, the Court previously rejected each of ViSalus's arguments about class certification because those arguments "implicitly challenge whether a TCPA cases can ever be properly certified as a class." ECF 344 at 12. As the Court explained, any argument that implies a court can never properly certify a class in TCPA cases is unavailing because "many courts have concluded that there are many common questions of law and fact *inherent* in TCPA cases." *Id.* (citing *Fisher v. MJ Christensen Jewelers*, 2018 WL 1175215, at *4 (D. Nev. Mar. 6, 2018)).

The Court has also rejected each of ViSalus's specific arguments. ViSalus first argues that Wakefield did not prove by a preponderance of the evidence that each call was made to a mobile telephone or residential telephone line and that individual issues associated with determining whether a particular class member was called on a residential or a cellular telephone prevent class certification. The jury returned a special verdict, finding that Wakefield proved by a preponderance of the evidence that ViSalus made 1,850,436 telemarketing calls to a mobile telephone or residential telephone line of a class member other than Wakefield. Substantial evidence supports the jury's verdict. The jury saw the forms filled out by all individual members who signed up to be promoters or customers of ViSalus—forms that asked for either a home telephone number or a mobile telephone number. The jury also received evidence about ViSalus's Progressive Outreach Manager (POM) system that ViSalus's outbound marketing department used to automatically make telephone calls. This evidence included spreadsheets

PAGE 5 – ORDER

documenting the results of each calling campaign as recorded by the POM system's disposition codes. From this evidence, the jury could have inferred from that the automated calls were to mobile telephones or residential telephone lines.

Nor do individual issues associated with determining whether a particular class member was called on a residential or a cellular telephone prevent class certification. Again, the jury found that all class members were called either on a residential landline or telephone. Under the TCPA, liability attaches to any call *either* to a residential landline *or* to a cellular telephone. *See* 47 U.S.C. § 227(b)(1). Statutory damages are the same for calls made to residential landlines and cellular telephones. *Id.* § 227(b)(3). ViSalus would be equally liable for calls made to either kind of telephone.

Next, ViSalus argues that Wakefield did not prove that calls made to residential lines were made to residential lines primarily used for non-business purposes and that individual issues predominated over issues common to the class in determining whether calls made to residential lines were made to residential lines primarily used for non-business purposes. Substantial evidence supports the jury's verdict. The jury heard from a witness for Wakefield who testified that he removed from ViSalus's spreadsheet about 6,000 lines of data that he believed were linked to business and not residential telephones lines. ECF 316-1 at 45. From this information, the jury could have inferred that the remaining about 1.8 million phone calls were made to either cellular telephones or residential landlines that were not used primarily for business purposes.

ViSalus also argues that Wakefield did not prove that a prerecorded message or artificial voice played on each call and that individual issues in determining whether a prerecorded or artificial voice message played predominated issues common to the class. Again, substantial

PAGE 6 – ORDER

evidence supports the jury's verdict. The jury saw spreadsheets documenting the result of each of ViSalus's calls as recorded by the POM system's deposition codes. The jury had access to a manual explaining the meaning of each disposition code. The jury could have—indeed, appears to have—counted the disposition codes documenting that a message actually played and used that number to estimate the number of calls. Although whether the message actually played is a question that must be decided on an individualized basis, the spreadsheets documenting the outcome of each call provided an easily manageable answer to this question.

ViSalus further argues that Wakefield did not prove that each call constituted telemarketing and that individual issues in determining whether each call constituted telemarketing. Substantial evidence supports the jury's verdict. The Court instructed the jury on what constituted telemarketing calls. ViSalus does not challenge those instructions The jury listened to many calls ViSalus made and concluded that those calls met the definition of telemarketing. The jury could infer that those messages were representative of all the messages used in the marketing campaign. ViSalus did not attempt to refute that inference by playing other messages for the jury or identifying calls on the spreadsheets it believed did not meet the TCPA's definition of telemarketing. ViSalus offered no evidence at trial to suggest that some of the calling campaigns at issue were not marketing campaigns such that individual issues of whether class members received marketing calls predominate.

Finally, ViSalus argues that Wakefield did not prove that class members did not consent or expect to receive telemarketing calls from ViSalus and that individual issues of whether class members consented or expected to receive telemarketing calls from ViSalus predominate. ViSalus relies heavily on an order from the Federal Communications Commission (FCC) granting ViSalus a retroactive waiver from complying with the 2012 express written consent

requirements for calls where ViSalus "had obtained some form of written consent." ECF 321-1 at 2. The Court previously ruled that ViSalus waived reliance on the affirmative defense that it obtained prior written consent from class members because, despite knowing that it had sought an FCC waiver, "ViSalus did not plead as an affirmative defense that it obtained written consent for the calls in a manner consistent with the FCC waiver that it sought." ECF 344 at 8. To the extent that ViSalus argues that substantial evidence does not support the jury's verdict or individual issues about whether class members consented to ViSalus's call predominate issues common to the class because some of the class members may have wanted to receive telemarketing calls from ViSalus, the Court has previously explained that the argument lacks merit because "[t]he harm that the TCPA protects against is the harm of being called without first giving prior express written consent," not receiving undesired calls. ECF 344 at 16-17.

Finally, the Court has weighed the evidence and, for the reasons provided above, does not find that it is against the clear weight of the evidence to find that ViSalus made 1,850,440 prerecorded or automated telemarketing calls to a mobile telephone or residential telephone line of a customer without that customer's prior written consent.

## CONCLUSION

The Court DENIES ViSalus's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (ECF 395).

**IT IS SO ORDERED.**

DATED this 16th day of February, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge