**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 20 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LORI WAKEFIELD, individually and on behalf of all others similarly situated, | No.    21-35201 |
| Plaintiff-Appellee, | D.C. No. 3:15-cv-01857-SI |
| v. | OPINION |
| VISALUS, INC., a Nevada corporation, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 11, 2022
Portland, Oregon

Before:  Marsha S. Berzon, Richard C. Tallman, and Morgan Christen, Circuit
Judges.

Opinion by Judge Tallman

1

# SUMMARY[*]

---

## Telephone Consumer Protection Act

The panel affirmed in part and vacated in part the district court's judgment after a jury trial in favor of the plaintiffs in a class action under the Telephone Consumer Protection Act and remanded with instructions to reassess the constitutionality of a statutory damages award.

Plaintiffs alleged that ViSalus, Inc., sent them automated telephone calls featuring an artificial or prerecorded voice message without prior express consent. During the relevant timeframe, the Federal Communications Commission rules were amended to require, among other things, a written disclosure explicitly stating that, by providing a signature and phone number, the recipient consented to receive calls featuring an artificial or prerecorded voice. Because ViSalus did not provide the required written disclosures before making the calls at issue, it petitioned the FCC for a retroactive waiver of the written prior express consent rule. ViSalus did not, however, plead prior express consent as an affirmative defense. The jury returned a verdict against ViSalus, finding that it sent 1,850,440 prerecorded calls in violation of the TCPA. Because the TCPA sets the minimum statutory damages at $500 per call, the total damages award against ViSalus was $925,220,000. Nearly two months later, the FCC granted ViSalus a retroactive waiver of the heightened written consent and disclosure requirements. ViSalus then filed post-trial motions to decertify the class, grant judgment as a matter of law, or grant a new trial on the ground that the FCC's waiver necessarily meant ViSalus had consent for the calls made. Alternatively, ViSalus filed a post-trial motion challenging the statutory damages award as being unconstitutionally excessive. The district court denied these motions.

Affirming in part, the panel held that members of the plaintiff class had Article III standing to sue because the receipt of unsolicited telemarketing phone calls in alleged violation of the TCPA is a concrete injury in fact under *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037 (9th Cir. 2017). The panel held that *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), did not overrule *Van Patten*,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

but rather reaffirmed the rule that an intangible injury qualifies as "concrete" when (1) Congress created a statutory case of action for the injury, and (2) the injury has a close historical or common-law analog.

The panel held that, when ruling on ViSalus's motions to decertify the class, grant judgment as a matter of law, or grant a new trial, the district court properly refused to consider the FCC's retroactive waiver. The panel explained that ViSalus waived a consent defense, and no intervening change in law excused this waiver of an affirmative defense.

The panel vacated the district court's denial of ViSalus's post-trial motion challenging the constitutionality of the statutory damages award under the Due Process Clause of the Fifth Amendment. The panel held that, in certain extreme circumstances, the *Williams* due process test applies to aggregated statutory damages awards even where the prescribed per-violation award is constitutionally sound. Under this test, a damages award violates due process if it is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable in relation to the goals of the statute and the conduct the statute prohibits. The panel held that constitutional limits on aggregate statutory damages awards are reserved for circumstances in which a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal violation committed. Under *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), relevant factors include the amount of award to each plaintiff, the total award, the nature and persistence of the violations, the extent of the defendant's culpability, damage awards in similar cases, the substantive or technical nature of the violations, and the circumstances of each case. The panel remanded for the district court, guided by the applicable factors, to reassess the constitutionality of the statutory damages award.

## COUNSEL

Becky S. James (argued) and Lisa M. Burnett, Dykema Gossett LLP, Los Angeles, California; Ryan J. Vanover, Dykema Gossett PLLC, Detroit, Michigan; for Defendant-Appellant.

J. Aaron Lawson (argued) and Rafey S. Balabanian, Edelson PC, San Francisco, California; Jay Edelson, Ryan D. Andrews, Benjamin H. Richman, and Ryan D. Andrews, Edelson PC, Chicago, Illinois; Greg S. Dovel and Simon Franzini, Dovel & Luner, Santa Monica, California; Scott F. Kocher, Forum Law Group LLP, Portland, Oregon; for Plaintiff-Appellee.

TALLMAN, Circuit Judge:

Lori Wakefield, seeking to represent herself and a now certified class of similarly situated individuals, initiated this action against ViSalus, Inc. under the Telephone Consumer Protection Act ("TCPA"), alleging that ViSalus unlawfully sent her and the other class members automated telephone calls featuring an artificial or prerecorded voice message without prior express consent. *See* 47 U.S.C. § 227(b)(1). During the relevant timeframe, the Federal Communications Commission ("FCC") rules were amended to define "prior express consent" to require, among other things, a written disclosure explicitly stating that, by providing a signature and phone number, the recipient consented to receive calls featuring an artificial or prerecorded voice. *See* 16 C.F.R. § 310.4(b)(1)(v)(a)(i).

Wakefield and other class members ("Plaintiffs") had signed up with ViSalus to purchase or sell purported weight-loss products. When their interest as customers or promoters waned, ViSalus sought to get their continued participation through targeted robocalls. Wakefield then brought federal statutory claims in response to these calls.

Because ViSalus did not provide the required written disclosures to Plaintiffs before making the calls at issue, ViSalus petitioned the FCC for a retroactive waiver of the written prior express consent rule. ViSalus did not, however, plead prior express consent as an affirmative defense. After a three-day

2

trial the jury returned a verdict against ViSalus, finding that it sent 1,850,440 prerecorded calls in violation of the TCPA. Because the TCPA sets the minimum statutory damages at $500 per call, the total damage award against ViSalus was $925,220,000.

Nearly two months later, the FCC granted ViSalus a retroactive waiver of the heightened written consent and disclosure requirements. ViSalus then filed post-trial motions to decertify the class, grant judgment as a matter of law, or grant a new trial on the ground that the FCC's waiver necessarily meant ViSalus had consent for the calls made. Alternatively, ViSalus filed a post-trial motion challenging the $925,220,000 statutory damages award as being unconstitutionally excessive. The district court denied these motions, and ViSalus timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm the district court's refusal to decertify the class, grant judgment as a matter of law, or grant a new trial, but we reverse and remand to the district court for further proceedings regarding the constitutionality of the nearly one-billion-dollar statutory damages award.[1]

---

[1]     ViSalus filed a motion requesting the panel to take judicial notice of (1) the FCC's notice seeking public comment on ViSalus's petition for retroactive waiver; (2) Wakefield's petition for reconsideration submitted to the FCC; and (3) the FCC's order denying Wakefield's petition for reconsideration. ViSalus argues that notice should be taken of these documents because they are public records

3

I

A

"Americans . . . are largely united in their disdain for robocalls," and the Federal Government has received a "staggering" number of complaints about robocalls in recent years. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). In response to the public's disdain for these calls, and the "nuisance" and "invasion of privacy" that they produce, Congress passed the Telephone Consumer Protection Act of 1991 ("TCPA"). Pub. L. 102-243, § 2(5), (6), (10), 105 Stat. 2394 (1991). Under the TCPA, it is unlawful for any person to initiate a telephone call using any "automatic telephone dialing system or an artificial or prerecorded voice" without the "prior express consent" of the recipient. 47 U.S.C. § 227(b)(1)(A). Recipients of calls that violate the TCPA can sue "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B).

The TCPA is enforced by the FCC, which is authorized by statute to enact rules to implement the law. *See, e.g.*, *id.* § 227(b)(2). The TCPA does not define

---

maintained by the FCC and are relevant to whether Plaintiffs were prejudiced by ViSalus's failure to raise a consent defense before trial. Because we conclude that ViSalus waived a consent defense, *see infra*, Part II.B, this motion is **DENIED** as moot.

4

the phrase "prior express consent." The FCC's Orders and Rulings interpret and clarify the term.

Prior to October 2013, the Orders and Rulings provided that the TCPA's prior express consent requirement was satisfied if the recipient voluntarily provided the caller with his or her phone number to use for a purpose related to the subject of the calls. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044–46 (9th Cir. 2017) (interpreting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (1992)). But in 2012, the FCC issued a new rule, effective October 16, 2013 ("2012 Rule"), that required all requests for a recipient's express consent to include, among other things, a clear and conspicuous written disclosure informing the recipient that by providing a telephone number and signature, the person authorizes the caller to deliver telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice. 16 C.F.R. § 310.4(b)(1)(v)(a)(i); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1863 (2012).[2]

---

[2]    The full text of Section 310.4(b)(1)(v) defines an abusive telemarketing act or practice to include any outbound telephone call with a prerecorded message except when:

> In any such call to induce the purchase of any good or
> service, the seller has obtained from the recipient of the

Shortly after the 2012 Rule was issued, two entities petitioned the FCC for guidance on whether written consents obtained prior to the 2012 Rule's effective date were valid even if the writing did not specifically authorize the use of a prerecorded voice or include other information required by the 2012 Rule. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8012–14 (2015). In its order of June 18, 2015, the FCC acknowledged some ambiguity in its 2012 Rule and granted the two petitioners a retroactive waiver of the Rule. *Id.* at 8014–15. In short order, seven more entities petitioned for, and were granted similar retroactive waivers for failure to comply with the 2012 Rule. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. 11643 (2016).

---

call an express agreement, in writing, that: (i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person; (ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service; (iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and (iv) Includes such person's telephone number and signature.

16 C.F.R. § 310.4(b)(1)(v)(A)(i–iv).

6

B

Defendant-Appellant ViSalus is a multi-level marketing company that sells purported weight-loss products direct to consumers. ViSalus's success depends on individuals signing up with ViSalus as either "customers" who only purchase products, or "promoters" who can also earn rewards by referring ViSalus products to new customers. Promoters and customers become part of the ViSalus network by completing an enrollment application. During the relevant time, these applications asked individuals to voluntarily provide a phone number to ViSalus. The enrollment applications varied as to what communication options they provided applicants. Some applications provided checkboxes to indicate the applicant's communication preferences—for example, for email, phone, or text message communications; some provided a check box where the applicant could indicate a desire to "receive communications from ViSalus regarding special discounts and promotions;" and some provided no checkbox for communication preferences at all. None contained any written disclosures that the applicant was, by responding to inquiries about receiving communications, consenting to future automated or prerecorded calls from ViSalus.

ViSalus often communicated with its customers and promoters who had provided a phone number. ViSalus would call promotors for the purpose of

7

sharing promotions, updates, and news, and it would call customers to inform them about current sales and special promotions.

From 2012 to 2015, ViSalus began systematically placing telephone calls as part of what it termed a "WinBack" campaign, designed to entice former promoters and customers to return to or reactivate their ViSalus memberships by offering promotional pricing on ViSalus products. These calls were initially placed by an "outreach team." By 2015, to increase the efficiency of ViSalus's "outreach," the company turned to a "Progressive Outreach Manager" automated system that allowed it to make tens of thousands of calls with the push of a button. A large volume of the calls placed using this system featured pre-recorded messages.

Lori Wakefield enrolled to be a ViSalus promoter in 2012, and voluntarily provided her phone number to ViSalus on her enrollment application. After discontinuing her relationship with ViSalus a few months later and receiving written confirmation of the termination of the relationship in March of 2013, Wakefield had no further contact with the company until April 2015, when she received five prerecorded audio messages from ViSalus on her home phone as part of the WinBack Campaign.

## C

Wakefield instituted this lawsuit in October 2015, alleging that ViSalus had violated the TCPA by sending unsolicited telemarketing calls featuring artificial or

8

prerecorded voices without her prior express consent.[3]  ViSalus answered the complaint, alleging that Wakefield could not make out a claim under the TCPA. ViSalus did not plead that it had consent for the calls it made to Plaintiffs.

After a brief class discovery period, Wakefield moved to certify her TCPA claims for class treatment.  The district court thereafter granted the motion in part, and certified a class including:

> All individuals in the United States who received a telephone call made by or on behalf of ViSalus: (1) promoting ViSalus's products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither ViSalus nor its agents had any current record of prior express written consent to place such call at the time such call was made.

Following certification, ViSalus amended its discovery answers regarding consent.  Roughly two weeks later—and nearly two years after Wakefield first filed her complaint—ViSalus petitioned the FCC for a retroactive waiver of the 2012 heightened prior express consent requirements.  In that petition, ViSalus asserted that it should be granted a retroactive waiver because it was "similarly situated" to the nine other petitioners who had already received waivers.  ViSalus

---

[3]     Wakefield also pleaded that ViSalus had violated regulations establishing the Do Not Call Registry, 47 U.S.C. § 227(c), and Oregon's Stop Calling Law, Or. Rev. Stat. § 646.

9

did not immediately inform either the Court or Wakefield that it had filed the petition with the FCC.

Nearly nine months after requesting the retroactive waiver, ViSalus brought to the district court's attention that it intended to raise consent as a defense at trial. The district court responded that ViSalus had waived a consent defense by failing to plead the defense in its answer, and instructed ViSalus to file a motion to amend its answer if it wanted to raise the issue at trial. ViSalus did file a motion to amend its answer, but then later withdrew the motion, stating "ViSalus does not claim that . . . Plaintiff's or the class's claims are barred by them giving ViSalus prior express written consent."[4]

The case went to trial in April 2019. Wakefield presented her case over three days. ViSalus declined to put on any evidence of its own, and instead argued in closing that Wakefield had not proven her case by a preponderance of the evidence. The jury returned a verdict against ViSalus, finding that it had placed 1,850,440 calls in violation of the TCPA. Because the TCPA sets minimum statutory damages at $500 per call, the court ordered ViSalus to pay "an aggregate

---

[4] ViSalus instead stated that it intended to offer evidence of consent to show that damages should not be trebled. The district court later barred ViSalus from presenting evidence of consent at the trial, holding that whether damages should be trebled was an issue reserved for the court, not the jury.

amount not to exceed $925,218,000" for the class, and $2,000 for Wakefield herself.

Nearly two months after the jury issued its verdict, the FCC approved ViSalus's petition for a retroactive waiver of the prior express consent rule for all calls made on or before October 7, 2015. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 34 FCC Rcd. 4851, 4856 (2019). ViSalus filed notice with the district court the next day, alerting the court to the FCC's decision. ViSalus then moved the district court to decertify the class and grant judgment as a matter of law, or, alternatively, to grant a new trial on the ground that the FCC waiver necessarily meant ViSalus had consent for the calls made. ViSalus additionally filed a motion challenging the "astronomical" statutory damages award of $925,220,000 as unconstitutionally excessive.

The district court denied ViSalus's motions. First, the court noted that "for nearly two years now, ViSalus has known that it petitioned the FCC for a retroactive waiver, yet ViSalus decided to forego any argument or development of the record on what the consequences would be if the FCC ultimately granted ViSalus's request." The court pointed to ViSalus's express disclaimer of any consent defense and observed that ViSalus had never asked for a stay pending the FCC's resolution of its petition. The court also observed that the FCC's grant of a retroactive waiver was reasonably foreseeable because it had previously granted

11

nine such waivers to similarly situated companies. Accordingly, the district court refused to consider the FCC waiver, finding that ViSalus's failure to assert a consent defense at trial was unreasonable and that excusing this failure would be prejudicial to Plaintiffs, who were unable to take discovery on the issue.

Second, the district court refused to reduce the statutory damages award. The court noted that no Ninth Circuit precedent existed to guide lower courts in reducing statutory damages awards that are found to be unconstitutionally excessive. The court further reasoned that it was within Congress's discretion to fix damages for a violation of the TCPA at $500, and that due process did not require the court to consider the constitutionality of the statutory damages award in the aggregate. This appeal timely followed.

## II

ViSalus raises three issues on appeal: (1) whether Plaintiffs can establish a concrete injury in fact under Article III; (2) whether ViSalus's failure to assert a consent defense at trial is excused because the FCC's retroactive waiver constituted an intervening change in law; and (3) whether the $925,220,000 aggregate damages award violates due process because it is unconstitutionally excessive. We address each issue in turn.

A

ViSalus argues for the first time on appeal that Wakefield and other members of the certified class lack Article III standing to sue. We review this issue de novo, *see Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003), and hold that Plaintiffs have standing to bring this suit.

Article III limits federal judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, and the Article III standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* A plaintiff establishes an injury in fact if the plaintiff suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury qualifies as "concrete" if it is "real" rather than "abstract"—that is, "it must actually exist." *Id.* at 340.

Here, ViSalus contends that Plaintiffs lack standing because Wakefield "failed to meet her burden to prove any class member suffered a concrete injury in fact resulting from ViSalus's alleged violation of the TCPA." But Plaintiffs allege

13

an injury from the receipt of unwanted telephone calls, and we have previously held in *Van Patten v. Vertical Fitness Group* that the receipt of "[u]nsolicited telemarketing phone calls" is "a concrete injury in fact sufficient to confer Article III standing." 847 F.3d at 1043; *see also Chennette, et al. v. Porch.com, Inc., et al.*, No. 20-35962, slip op. at 7 (9th Cir. Oct. 12, 2022).[5] Plaintiffs therefore have standing.

ViSalus begrudgingly acknowledges, as it must, that under *Van Patten* the receipt of telephone calls in alleged violation of the TCPA is a concrete injury for Article III purposes. ViSalus nevertheless insists that *Van Patten* no longer controls in light of the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). We are unpersuaded.

In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as "concrete" when that injury bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 2204; *see also Spokeo*, 578 U.S. at 340 ("In determining

---

[5] Many of our sister circuits have reached the same conclusion. *See Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 690–92 (5th Cir. 2021); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461–63 (7th Cir. 2020); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958–59 (8th Cir. 2019); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93–94 (2d Cir. 2019); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 350–52 (3d Cir. 2017); *but see Salcedo v. Hanna*, 936 F.3d 1162, 1169–73 (11th Cir. 2019).

whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."). *TransUnion* therefore strengthens the principle that an intangible injury is sufficiently "concrete" when (1) Congress created a statutory cause of action for the injury, and (2) the injury has a close historical or common-law analog. 141 S. Ct. at 2204–07. This approach is the very same one we applied in *Van Patten*, when we looked to the Restatement of Torts' discussion of privacy torts and the widespread recognition among states of the right to privacy as evidence of a common-law analog to privacy violations. 847 F.3d at 1043. We also considered Congress's judgment that such violations are "legally cognizable injuries" when creating a remedy for unsolicited calls under the TCPA. *Id.* (quoting *Spokeo*, 578 U.S. at 340). Our analysis in *Van Patten* therefore not only survives *TransUnion*—it is strengthened by it.

Applying the test from *TransUnion* and *Van Patten* to the facts of this case, Plaintiffs have suffered a concrete injury in fact. First, Congress has created a statutory cause of action allowing Plaintiffs to sue. *See* 47 U.S.C. § 227(b)(1), (3). Second, Plaintiffs have asserted an injury with a close historical and common-law analog, since the receipt of unsolicited phone calls closely resembles traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance." *Van*

15

*Patten*, 847 F.3d at 1043.[6]  Because the receipt of "unsolicited telemarketing phone calls" is "a concrete injury in fact," *id.*, Plaintiffs have Article III standing to sue.[7]

## B

ViSalus argues that the district court erred in refusing to consider the FCC's retroactive waiver when ruling on ViSalus's motions to decertify the class, grant judgment as a matter of law, or grant a new trial.  Because ViSalus waived a consent defense and no intervening change in law excuses this waiver, we disagree.

---

[6]       *See also Cranor*, 998 F.3d at 691–92 (discussing common-law public nuisance); *Gadelhak*, 950 F.3d at 462 (drawing a comparison to intrusion upon seclusion); *Golan*, 930 F.3d at 959 (discussing the law of nuisance); *Melito*, 923 F.3d at 93 (agreeing with the comparison in *Van Patten* and *Susinno* to nuisance, intrusion upon seclusion, and privacy invasion torts); *Krakauer*, 925 F.3d at 653 (discussing intrusion upon seclusion as an example of long standing private law protections for "privacy interests in the home"); *Susinno*, 862 F.3d at 351–52 (focusing on intrusion upon seclusion); *cf.* Restatement (Second) of Torts § 652B (Am. L. Inst. 1977) (discussing intrusion upon seclusion).

[7]       ViSalus also argues that standing is lacking because Plaintiffs consented to ViSalus's telephone calls, and "there is no harm that traditionally serves as the basis for litigation in American courts that is analogous to receiving a telephone call for which one consented."  But determining whether Plaintiffs consented to ViSalus's calls requires an analysis of the merits of Plaintiffs' TCPA claim.  *See Van Patten*, 847 F.3d at 1044 ("Express consent is . . . an affirmative defense for which the defendant bears the burden of proof.").  Because the "threshold inquiry into standing 'in no way depends on the merits,'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)), this argument fails.

As a preliminary matter, the district court properly concluded that ViSalus had waived a consent defense. "Express consent is . . . an affirmative defense for which the defendant bears the burden of proof," *Van Patten*, 847 F.3d at 1044, and a "defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense." *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007); *see also* Fed. R. Civ. Pro. 8(c). Here, ViSalus did not raise consent as a defense in its answer. And although ViSalus filed a motion to amend its answer to assert this defense, ViSalus withdrew that motion and did not seek to amend again.

The district court also properly concluded that the FCC's grant of ViSalus's petition did not excuse ViSalus's waiver of its consent defense. When a defendant fails to adequately plead an affirmative defense "an exception to the waiver rule exists for intervening changes in the law." *Big Horn Cnty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 142–43 (1967)). For this exception to apply, however, the defendant must show that the defense, if timely asserted, would have been futile under binding precedent. *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004). This requirement rests on the principle underlying the intervening change in law exception, that a "waiver" requires the "intentional relinquishment or abandonment of a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)), and a defendant cannot be deemed

17

to waive the right to assert a defense if the defendant reasonably did not know the defense was available at the time of the purported waiver. Accordingly, the exception for an intervening change in law only "protect[s] those who, despite due diligence, fail to prophesy a reversal of established adverse precedent." *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 374 (6th Cir. 2007).

Here, ViSalus does not qualify for protection under the intervening change in law exception. Even if the FCC's retroactive waiver of the 2012 Rule did constitute a change in law, ViSalus always reasonably knew, or should have known, that the FCC was quite likely to grant its petition. As the district court concluded, the nine waivers the FCC previously granted "foreshadowed the FCC's decision to grant ViSalus's petition such that ViSalus was not taken by surprise when its petition was granted." Aware of these prior waivers, ViSalus knew that a consent "defense was fairly available." *Bennett*, 362 F.3d at 7. Yet ViSalus made no effort to assert the defense, develop a record on consent, or seek a stay pending the FCC's decision. In the words of the district court,

> [t]his was not an instance in which a court, or, in this case, an agency, deviated from longstanding precedent in creating new law. Rather, the FCC, consistent with its string of nine prior waivers, granted ViSalus's petition for waiver *just as ViSalus requested*. ViSalus got exactly what it asked for.

Moreover, if ViSalus was truly unsure about whether or when the FCC would grant its Petition, then it should have asked the district court to stay the

18

litigation pending the FCC's ruling. Instead, ViSalus made the strategic litigation decision to proceed to trial and defend on the ground that Plaintiffs had not proven their prima facie case by a preponderance of the evidence. Whether or not ViSalus's choice was wise with the benefit of hindsight, Federal Rules 50 and 59 do not exist to overturn "informed and presumptively strategic decisions on appeal." *See GenCorp*, 477 F.3d at 374 (discussing the intervening-change-in-law exception in the context of Rule 60(b)(6)).

For these reasons, we hold that the district court did not err in refusing to consider the FCC's retroactive waiver of the 2012 Rule when ruling on ViSalus's motions.

### C

ViSalus last argues that the Due Process Clause of the Fifth Amendment requires a reduction of the $925,220,000 statutory damages award. Whether a damages award violates due process is a question of law that we review de novo. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001).

ViSalus does not challenge the TCPA's statutory framework as to the $500 amount for a single violation; several courts have held that the TCPA's $500 civil remedy in isolation does not violate due process on a per violation basis.[8] Instead,

---

[8] *See, e.g.*, *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768, 777–78 (N.D. Ill. 2008); *Acct. Outsourcing, LLC v. Verizon Wireless Pers.*

19

ViSalus argues that even if the TCPA's statutory penalty of $500 per violation is constitutional, an aggregate award of $925,220,000 in this class action case is so "severe and oppressive" that it violates ViSalus's due process rights.

Juries and legislatures enjoy broad discretion in awarding damages. The due process clauses of the Constitution, however, set outer limits on the magnitude of damages awards. In recent years, numerous cases have outlined criteria for evaluating when punitive damages awarded by a jury exceed constitutional limitations. *See, e.g.*, *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443 (1993); *BMW of North America v. Gore*, 517 U.S. 559 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). How the Constitution limits the award of statutory damages is less developed.

Such constitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered from receiving the robocalls. *See Parker v. Time Warner Ent. Co.*, 331 F.3d 13, 22 (2d Cir. 2003); *see also Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("[The] TCPA is essentially a strict liability statute."). Under this strict

---

*Commc'ns*, *L.P.*, 329 F. Supp. 2d 789, 808–10 (M.D. La. 2004); *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090–91 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1165–67 (S.D. Ind. 1997).

20

liability standard, a court must evaluate an award of statutory damages "with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the statute. *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919).

Over a century ago, the Supreme Court declared that damages awarded pursuant to a statute violate due process only if the award is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 67. The Supreme Court first announced the principle that statutory damages may exceed constitutional limitations in certain extraordinary circumstances in a case prior to *Williams*, *Waters-Pierce Oil Co. v. State of Texas*. 212 U.S. 86, 111 (1909). *Waters-Pierce* observed "[t]he fixing of punishment for crime or penalties for unlawful acts against its laws is within the police power of the state. We can only interfere with such legislation and judicial action of the states enforcing it if the fines imposed are so grossly excessive as to amount to a deprivation of property without due process of law." *Id.*

*Williams*, reviewing the award of damages under an Arkansas statute prescribing penalties for railroads and other common carriers for charging more than the lawfully provided rate, extended the logic of *Waters-Pierce* beyond excessive civil fines to general statutory damages. *Williams*, 251 U.S. at 66. *Williams* also directed that the constitutional inquiry focus on extreme cases, the

21

proportionality of the award to the "offense" in light of the statute's goals, and the overall reasonableness of the award. *Id.* at 66–67. And *Williams* stressed that a constitutional limit would be found only in the rare cases in which the award was "severe and oppressive," emphasizing the "wide latitude" possessed by legislatures in setting statutory penalties and the important government powers inherent in doing so. *Id.* at 66–67. *Williams* ultimately upheld the damages award at issue, holding the award not "wholly" disproportionate or "obviously" unreasonable in light of the statute's important purpose of "securing uniform adherence to established passenger rates" as well as the "numberless opportunities for committing the offense." *Id.* at 67.

We have recognized the application of *Williams* to statutory awards on a per-violation basis, holding "[a] statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting *Williams*, 251 U.S. at 66–67). In *Citrin*, we applied the *Williams* test to a statutory award of $113,479.11 for a single violation. *Id.* at 1051. We reasoned that in the context of the statute at issue, which specified damages for noncompliance with the terms of a federal scholarship program placing early-career medical professionals in underserved areas, the award was "not so unreasonable that [it] violate[s] due process" given

"the resources necessary to find a [replacement] doctor to practice" in those locations. *Id.*

Since *Citrin*, courts in this and other circuits have grappled with the constitutionality of statutory damages awards challenged in the aggregate where the award is unusually high because of either the large number of violations at issue in a single dispute or, most relevant to this case, the aggregation of damages in class action litigation. *See, e.g., Golan*, 930 F.3d at 962–63; *Parker*, 331 F.3d at 22; *Montera*, 2022 WL 3348573, at *4–5.[9] In *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010), we reserved the question whether an aggregated statutory damages award could violate due process. We now hold that, pursuant to *Williams*, aggregated statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations.

Several considerations support the application of the *Williams* constitutional due process test to aggregated statutory damages awards even where the prescribed per-violation award is constitutionally sound. First, although *Williams* did not address an aggregated damages award, the logic of the case does not turn on the amount of the per-violation penalty. 251 U.S. at 66–67. Rather, *Williams* suggests

---

[9] At least one California district court has discussed application of the *Williams* test to an aggregated damages award in the TCPA context. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533, at *9 (N.D. Cal. Apr. 17, 2020).

a general reasonableness and proportionality limit on damages awarded pursuant to statutes, taking into account statutory goals. *Williams* imposes a constitutional limit on damages that are "so severe and oppressive" as to no longer bear any reasonable or proportioned relationship to the "offense." *Id.* at 67. *Williams* did not consider an "offense" narrowly; rather, the Court evaluated the importance of the proscribed conduct (overcharging fares) and the likelihood of violations, which the Court found to be high, noting the "numberless opportunities for committing the offense." *Id.* Thus, evaluation of an award's relationship to the "offense" requires consideration of the statute's public importance and deterrence goals. An aggregated award could, like a per-violation award, be wholly disproportioned to the prohibited conduct (and its public importance) and greatly exceed any reasonable deterrence value. Thus, where aggregation has resulted in extraordinarily large awards wholly disproportionate to the goals of the statute, *Williams* implies a constitutional limit may require reduction.

Second, the goals of a statute in imposing a per-violation award may become unduly punitive when aggregated. And statutory penalties, unlike jury awards, are not generally disaggregated by purpose. Indeed, most statutes combine deterrence, compensatory, and punitive goals into a single lump sum per violation: "Although statutory damages amounts might be calculated in part to compensate for actual losses that are difficult to quantify, they are often also motivated in part by a

24

pseudo-punitive intention to 'address and deter overall public harm.'" *Parker*, 331

F.3d at 26 (Newman, J., concurring) (quoting *Texas v. Am. Blastfax, Inc.*, 121 F.

Supp. 2d 1085, 1090 (W.D. Tex. 2000)).

      Compensation and deterrence aims can be overshadowed when damages are

aggregated, leading to damages awards that are largely punitive and untethered to

the statute's purpose.  In *Parker*, the Second Circuit observed that aggregated class

action damages and per-violation statutory penalties were both intended, in part, to

create incentives for litigation.  Coupled, they have the capacity to "expand the

potential statutory damages so far beyond the actual damages suffered that the

statutory damages come to resemble punitive damages."  *Id*. at 22*; see also*

*Montera*, 2022 WL 3348573, at *1 ("The statutory damages in this case veer away

from serving a compensatory purpose and towards a punitive purpose").

      We have similarly observed that deterrence and compensation rationales lose

force in certain large, aggregated awards.  In *Six (6) Mexican Workers v. Arizona*

*Citrus Growers*, for example, we reviewed an aggregated damages award in a class

action lawsuit for violations of the Farm Labor Contractor Registration Act

("FLCRA") and found that the individual awards exceeded both "what was

necessary to compensate any potential injury from the violations" and the awards,

in the aggregate, exceeded "that necessary to enforce the Act or deter future

violations."  904 F.2d 1301, 1309 (9th Cir. 1990).  In short, aggregation can, in

extreme circumstances, result in awards that may greatly outmatch any statutory compensation and deterrence goals, resulting in awards that are largely punitive.

Where a statute's compensation and deterrence goals are so greatly overshadowed by punitive elements, constitutional due process limitations are more likely to apply. Although we decline to apply the Supreme Court's tests developed in the line of cases including *BMW of North America*, 517 U.S. 559, and *State Farm*, 538 U.S. 408, outside the context of a jury's award of punitive damages, by analogy these cases teach that where statutory damages no longer serve purely compensatory or deterrence goals, consideration of an award's reasonableness and proportionality to the violation and injury takes on heightened constitutional importance. *See TXO Prod. Corp.*, 509 U.S. at 458 (noting that "reasonableness" is the focus of a due process inquiry regarding punitive damages); *BMW of North America*, 517 U.S. at 580–81 (discussing the "ratio" between a punitive damages award and the "actual harm inflicted on the plaintiff" as measured through compensatory damages—one of three factors important to a due process evaluation of a punitive damages award issued by a jury).

We thus conclude that the aggregated statutory damages here, even where the per-violation penalty is constitutional, are subject to constitutional limitation in extreme situations—that is, when they are "wholly disproportioned" and "obviously unreasonable" in relation to the goals of the statute and the conduct the

26

statute prohibits. *Williams*, 251 U.S. at 67. As with punitive damages awarded by juries and per-violation statutory damages awards, a district court must consider the magnitude of the aggregated award in relation to the statute's goals of compensation, deterrence, and punishment and to the proscribed conduct.

*Six Mexican Workers* provides further guidance for determining whether a particular statutory damages award is disproportionately punitive in the aggregate. 904 F.2d at 1309. In that case, we adopted the factors the Fifth Circuit identified in *Beliz v. W.H. McLeod & Sons Packing Co.* to evaluate liquidated damages awards:

> 1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case.

*Id.* at 1309 (quoting *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir. 1985)).

As the district court noted, *Six Mexican Workers* addressed a somewhat different issue than the one we face here: the case dealt with the reduction of damages per violation to an amount *within* a statutorily defined range. *Id.* at 1309–11. The FLCRA—the statute at issue in *Six Mexican Workers*—did not contemplate punitive penalties in the calculation of liquidated damages. *Id.* at 1309 (citing *Alvarez v. Longboy*, 697 F.2d 1333, 1340 (9th Cir. 1983)). But many statutes, like the one at issue here, set a statutory floor for damages, as opposed to a

27

range, and in doing so, reflect punitive as well as compensatory and deterrence goals. This distinction does not undermine the relevance of the *Six Mexican Workers* factors to the constitutional due process test. *Six Mexican Workers* points courts to factors to help assess proportionality and reasonableness and so can guide trial courts in determining when an award is *extremely* disproportionate to the offense and "obviously" unreasonable. *Williams*, 251 U.S. at 67.

We stress that only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-violation amount does not. Legislatures are empowered to prescribe purely punitive penalties for violations of statutes. In *Williams*, the Supreme Court made clear that the statutory damages at issue were "essentially penal, because [they are] primarily intended to punish the carrier for taking more than the prescribed rate" and yet the statute was "not contrary to due process of law" because "the power of the state to impose fines and penalties for a violation of its statutory requirements is coeval with government." 251 U.S. at 66 (quoting *Mo. Pac. Ry. Co. v. Humes*, 115 U.S. 512, 523 (1885)). The Supreme Court, consistent with this reasoning, has long upheld statutory provisions imposing double or triple damages. *See, e.g., Overnight Motor Trans. Co. v. Missel,* 316 U.S. 572, 584 (1942). Thus, just because an aggregate award becomes predominantly punitive does not render it constitutionally unsound.

28

Constitutional limits on aggregate statutory damages awards therefore must be reserved for circumstances in which a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal violation committed. Were that not so, applying the *Williams* test to reduce aggregated statutory awards would overstep the role of the judiciary and usurp the power of the legislature. Legislatures, in designing statutes, decide whether to set a floor or a ceiling for damages and often do so expressly in their text.[10] We are constrained by a statute's language and interpret statutes with awareness that Congress could have enacted limits as to damages, including in large class action litigation, provided discretion to courts to award damages within a given range, or limited liability in any number of ways.

In *Bateman,* for example, we noted that "the [Fair and Accurate Credit Transactions Act ("FACTA")] does not place a cap on . . . damages in the case of class actions, does not indicate any threshold at which courts are free to award less than the minimum statutory damages, and does not limit the number of individuals that can be certified in a class or the number of individual actions that can be

---

[10]     *Compare* The Fair Debt Collection Practices Act, 15 U.S.C. § 1692k (a)(2)(A–B), setting a ceiling for damages of $1,000 per individual and "$500,000 or 1 per centum of the net worth of the debt collector" if aggregated in a class action, *with* the TCPA, 47 U.S.C. § 227(b)(3)(B), enacting a floor of $500 per specified violation and not specifying a cap as to aggregated damages; *see also Alvarez*, 697 F.2d at 1339–40 (interpreting the FLCRA, 7 U.S.C. § 2050(a) to impose a $500 ceiling on damages per plaintiff per violation).

29

brought against a single merchant." 623 F.3d at 718. "In the absence of such affirmative steps to limit liability," we held, "we must assume that Congress intended FACTA's remedial scheme to operate as it was written." *Id.* at 722–23. As a result, we concluded that to refuse to follow the statute's text, in that instance by limiting class action availability to avoid "'enormous' potential liability," would "subvert congressional intent." *Id.* at 723. Because the appropriate penalty for statutory violations is a legislative decision best left to Congress, courts should disregard the plain statutory language directing damages and allowing class action and other aggregation only in the most egregious of circumstances.[11]

In the context of the TCPA, Congress permitted recipients of unsolicited telemarketing calls to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Congress thus set a floor of statutory damages at $500 for each violation of the TCPA but no ceiling for cumulative damages, in a class action or otherwise. Yet, in the mass communications class action context, vast cumulative damages can be easily incurred, because modern technology permits hundreds of thousands of automated calls and triggers minimum statutory damages with the push of a button.

---

[11] Again, *Bateman* left open the question whether aggregated statutory damages could be subject to constitutional due process limitations. 623 F.3d at 723.

30

The district court here did not reduce the $925,220,000 statutory damages award in part because there was little Ninth Circuit authority directing a district court on how it should analyze damages that may be unconstitutionally excessive and appropriately reduce them. But *Six Mexican Workers* does provide some guidance, and we have endeavored in this opinion to provide more. Because the court did not apply the *Williams* test or *Six Mexican Workers* factors to determine the constitutionality of the damages award in this case, we remand so the court may assess in the first instance, guided by these factors and this opinion, whether the aggregate award of $925,220,000 in this class action case is so severe and oppressive that it violates ViSalus's due process rights and, if so, by how much the cumulative award should be reduced.

## IV

We **AFFIRM** the district court's denial of ViSalus's motions to decertify the class, grant judgment as a matter of law, or grant a new trial, and **VACATE and REMAND** the district court's denial of ViSalus's post-trial motion challenging the constitutionality of the statutory damages award to permit reassessment of that question guided by the applicable factors. Each party shall bear its own costs.

**AFFIRMED in part; VACATED in part; and REMANDED with instructions.**

**United States Court of Appeals for the Ninth Circuit**

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ► The proceeding involves a question of exceptional importance; or
>
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)  Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)  Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)  Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- A response, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or response must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions

- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send an email or letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista (maria.b.evangelista@tr.com));
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to *(party name(s))*:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature** **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee | | | | $ |
| TOTAL: | | | | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10); TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10** *Rev. 12/01/2021*