FORUM LAW GROUP
Scott F. Kocher, OSB #015088
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2120
Fax: 503.445.2120

DOVEL & LUNER, LLP
Simon Franzini, Cal. Bar #287631*
simon@dovel.com
Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

EDELSON PC
Rafey S. Balabanian, Cal. Bar #315962*
rbalabanian@edelson.com
J. Aaron Lawson, Cal. Bar #319306*
alawson@edelson.com
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Eve-Lynn Rapp Cal. Bar #342892*
erapp@edelson.com
Edelson PC
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0076
Fax: 720.741.0081

*Admitted *pro hac vice*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD**, on behalf of themselves and a class of others similarly situated,<br><br>   *Plaintiff*,<br>v.<br><br>**VISALUS, INC**., a Nevada Corporation,<br><br>   *Defendant.* | No. 3:15-cv-01857-SI<br><br>**PLAINTIFF'S STATEMENT REGARDING SCHEDULING ISSUES (***SEE* **DKT. 451)** |

Plaintiff Lori Wakefield submits the following proposal for next steps in this litigation, per the Court's order of April 25, 2023. (Dkt. 451.) For the reasons that follow, the parties should issue notice of the verdict to the Class and allow Class Members to file claims to recover the statutorily mandated $500 per violation of the TCPA before accepting briefing and allowing for further discovery on whether an aggregate judgment exceeds constitutional limits. Should the Court agree, prior to ViSalus's appeal, the parties had fully briefed issues related to the notice and claim process. (Dkts. 396, 413, 419.) Plaintiff is attaching minor edits to the proposed documents and the parties agree that issues related to notice, claims, and whether ViSalus should pay for those costs can be decided based on that briefing.

**I.     The parties should issue notice and conduct a claims process before determining whether the aggregate judgment in this case exceeds constitutional limits.**

The pending constitutional issue in this case—whether an aggregate judgment of $925 million violates Defendant ViSalus Inc.'s due process rights, *see Wakefield v. ViSalus*, 51 F.4th 1109, 1125 (9th Cir. 2022)—should not be resolved until after notice of the verdict is provided to the certified Class, Class Members are allowed to make claims against the verdict, those claims are vetted, and the Court issues an award of attorney's fees, and a service award to the named plaintiff.

**A.     The circumstances of this case counsel against immediately resolving ViSalus's constitutional challenge.**

There are several reasons to leave the constitutional issue for last.

First, it would be premature to resolve any constitutional questions related to the aggregate verdict amount at this stage. The judgment entered by the Court is for "an amount not to exceed $925,218,000." (Dkt. 383 at 2.) Until the judgment is for a fixed amount—which can only occur after claims, attorneys' fees, incentive awards, any *cy pres* is determined—any

constitutional question is an abstract one that the Court should refrain from considering. *See Perez v. Rash, Curtis & Assocs.*, No. 16-cv-3396-YGR, 2020 WL 1904533, at *7 (N.D. Cal. Apr. 17, 2020) (noting that the defendant's challenge to the overall award could not have been raised before damages were "fixed"). Indeed, this is one of the very reasons that the Ninth Circuit has held that the potential excessiveness of statutory damages is not an appropriate reason to deny class certification: the court held in *Bateman v. American Multi-Cinema, Inc.* that evaluation of a potential statutory damages award at class certification is "unduly speculative" "[b]ecause we do not know what amount of damages Bateman will seek *nor how many individuals will ultimately claim the benefit of any damages awarded* should plaintiffs prevail." 623 F.3d 708, 723 (9th Cir. 2010) (emphasis added). The same is true here. The judgment previously entered by the court was for an amount "*not to exceed* $925,218,000." (Dkt. 383 at 2 (emphasis added).) Without a fixed amount, ViSalus's constitutional challenge is not ready for decision. *See Matal v. Tam*, 582 U.S. 218, 230-31 (2017) ("We have often stressed that it is important to avoid the premature adjudication of constitutional questions.") (cleaned up).

Earlier in this case, ViSalus essentially agreed that its current challenge isn't ripe arguing that "claims administration issues should be resolved before entry of judgment." (Dkt. 382 at 2.) ViSalus insisted that "the most reasonable approach" would be first to engage in a claims process before fixing ViSalus's total liability. (*Id.* at 4; *see* Ex. 1 (Oct. 11, 2019 Status Conference Tr.) at 21:21-23 (Mr. Schatz: "I mean, the first thing that has to happen is the claims process [] to determine the proper amount.").) The Court disposed of that challenge by fixing a maximum judgment, while acknowledging that the final amount of damages might be lower, in order to facilitate appellate review. (*See* Oct. 11, 2019 Status Conference Tr. at 21:6-18.) Now that the appeal is concluded and the jury's verdict stands, just as ViSalus previously urged, the parties

should determine through a claims process a fixed amount of ViSalus's liability, based upon the jury's verdict, before any constitutional limits are assessed.

A related reason that ViSalus's constitutional challenge is not yet ready for decision is that ViSalus will be making merits challenges to the claims of certain Class Members. As the Court has observed, for Class Members with *landlines*, ViSalus may raise good-faith objections that the phone number in question was primarily used for purposes of a home-based business. (*See id.* at 18:1-9.) These merits-based challenges, which go to manageable individual issues not covered by the jury's verdict, must be resolved before a fixed judgment amount can be settled on. And the only way to resolve these challenges is through a claims process.

Second, even if the constitutional question is squarely presented (and it is not), it is well-settled that adjudication of constitutional questions should come last. *Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). Yet there are statutory questions relating to the judgment waiting to be resolved in this case. Plaintiff regards it as likely that not all available funds will be claimed during a claims process. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017) ("It is not unusual for only 10 or 15% of the class members to bother filing claims.") (quotations omitted). At typical participation rates, the total aggregate amount paid to Class Members is likely to be considerably less than the "not to exceed" amount and in-line with any potential reasonable reduction that could be suggested. And as for any residue, Ninth Circuit precedent establishes a menu of options for what to do with unclaimed funds, although critically this is not a constitutional issue but a statutory one. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-09 (9th Cir. 1990) (holding that unclaimed

funds can either (1) be distributed to a *cy pres* recipient, (2) escheat to the state, or (3) revert to the defendant, but that the choice is guided by the purposes of the underlying statute). How the Court resolves that issue, should it arise, will likely bear on the resolution of any due process issues presented by the jury's verdict, and may even obviate it.

This point is particularly important in light of the Ninth Circuit's reasons for extending the *Williams* rule to aggregated awards, specifically its holding that at some point the "compensation and deterrence" rationales for statutory damage awards become "overshadowed by punitive elements." *Wakefield*, 51 F.4th at 1122. The Court can only determine whether the TCPA's compensatory and deterrence rationales are overshadowed by the punitive effect of the jury's verdict if it first determines the amount of claimed compensation at issue.

Third, and relatedly, it is undisputed that the $500 per call award in the TCPA *is* constitutional. *See id.* at 1120. Reducing the judgment now can only be done by reducing the amount of any per call award, just as ViSalus proposed in its first motion in this regard. (Dkt. 358 at 3, 11 (requesting the Court reject the $500 per call statutory award in favor of an award of $1 per call).) Indeed, as explained below, that is the only way in which an aggregate award in a private class action has ever been reduced prior to judgment or a claims process. Such an approach necessarily impairs the rights of Class Members at the benefit of ViSalus. Moreover, as the Court previously observed, courts who endeavor to reduce individual statutory damage awards are engaging in a quintessentially legislative function without any rigorous methodology. (Dkt. 377 at 9-12.) The Court should avoid this kind of uncertain endeavor if at all possible, particularly since the Ninth Circuit refused to find that the aggregate award here was unconstitutional, and "stress[ed] that only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-

violation amount does not." 51 F.4th at 1123. Moreover, to ensure fairness to Class Members, Plaintiff submits that any reduction in the verdict should come out of any potential *cy pres* distribution, or from any potential reversion of funds, rather than from claimed funds, if at all possible.

Finally, doing a claims process now is more efficient, and more fair to Class Members who prevailed at a jury trial more than 3 years ago but who have yet to see any of the benefits they are entitled to. Doing the claims process first allows the parties to resolve the remaining issues here, including the constitutional issues, as well as attorney's fees and a service award, in one stroke, ensuring the most efficient end to this case. As the Court indicated, Plaintiff would be entitled to reasonable discovery into any factual argument ViSalus makes in support of reducing the aggregate amount on constitutional grounds. Given the length of time since the trial in this case, efficiency should be prioritized.

> **B.** **The circumstances of this case distinguish it from other cases involving similar constitutional challenges.**

The Court also asked how constitutional reductions had been handled procedurally in other cases. The short answer is that the issue of damages is typically addressed before entry of judgment and before any needed claims process, but given the Ninth Circuit's newly articulated test, the experience of other courts is not helpful here for a few reasons. First, some of these cases would not have involved a claims process, because the parties had the information necessary to pay class members without such a process. Second, even when a claims process was necessary, these cases did not involve lingering liability issues such as the residential versus business line issue that may preclude liability for a handful of Class Members. Third, in no case was it undisputed that the per violation award set by statute was itself constitutional. Reductions

were calculated in nearly every case by simply reducing the per violation award, an approach that is potentially problematic here.

Two cases that fall in the first category (no claims process needed) are *Perez v. Rash, Curtis & Associates*, No. 16-cv-3396-YGR (N.D. Cal.), which was relied upon by the Court in previous orders, and *Ramirez v. TransUnion, LLC*, No. 12-cv-632 (N.D. Cal.). In both a reduction was considered prior to disbursement of the jury verdict, though both shed little light on which process is best because no reduction was ordered in either case. (Both cases also later settled—*Perez* following assignment of the defendant's bad faith claim against its insurer, *see Perez*, No. 16-cv-3396-YGR, ECF No. 451 at 3 (motion to approve distribution of settlement proceeds), and *Ramirez* following the Supreme Court's decision holding that under a pretrial stipulation of fact many class members lacked standing, *see Ramirez*, No. 12-cv-632, ECF No. 416 at 5-6.)

Another set of cases in which no claims process was required, but in which a reduction in damages was ordered, are those brought by states. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900-01 (W.D. Tex. 2001); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 464-66 (D. Md. 2012). These are unhelpful simply because it was guaranteed in those cases that the aggregate penalty would be paid out in full, which is not a guarantee here, in light of the need for a claims process and the possibility of a *cy pres* distribution of unclaimed funds or a reversion of those funds to ViSalus. Moreover, in neither of these cases did the Court rely on the Due Process Clause as the basis for its reduction. *American Blastfax* thought the total penalty was "unreasonable" and disregarded the law's plain language. *See* 164 F. Supp. 2d at 900-01. And the court in *Universal Elections* awarded the state of Maryland only 10% of what it asked (which was itself 10% of the potential judgment following the district court's grant of summary

judgment), believing the state's requested award to be "inequitable" but "without suggesting" that the award sought by the State "would necessarily be unconstitutional." 862 F. Supp. 2d at 464-66.

Cases both ordering a reduction and requiring a claims process are also unhelpful for various reasons. Consider first *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). This case is distinguishable, of course, because the per violation award reduced by the Court was reduced *within* a prescribed statutory range, and not based directly upon the Due Process Clause. *Id.* at 1309-10. The appellate court in this case incorporated the *Six Mexican Workers* analysis into the due process analysis, but the statutory context is important, because it was understood that class members would be entitled to the entire per violation award if they made a claim. The only way to ensure that claiming class members receive the entire statutory amount here is to do the claims process first, before considering any constitutional issues.

*Golan v. Veritas Entertainment, LLC*, previously relied upon heavily by ViSalus, also reduced damages (to $10 per call) following a verdict but before any claims process had occurred. *See* No. 14-cv-0069-ERW, 2017 WL 3923162, at *4 (E.D. Mo. Sept. 7, 2017) (asserting that Court's chosen reduced damages "takes into account the significant time and expense needed to notify the class and distribute the damages to the class"). But the court did not consider the pros and cons of doing a claims process before reducing damages. Nor, as this Court has recognized, did the *Golan* court explain why it reduced damages in the manner in which it did, apart from its finding that aggregate damages were "unreasonable." (Dkt. 377 at 11 (noting that *Golan* "failed to include any methodology or explanation of how the court reduced the allegedly unconstitutional damages.").) Finally, there is no acknowledgment in *Golan* that the

PLAINTIFF'S STATEMENT REGARDING        7
SCHEDULING ISSUES

per violation award in the TCPA is permissible, and no indication that any lingering issues remained before a fixed judgment could be entered, such as the residential-or-business line issue that might bear on the claims of a handful of Class Members here.

A more recent case, *Montera v. Premier Nutrition Corp.*, also reduced available statutory damages before a claims process (from $550 per violation to $50), although it did so by citing to concerns relating to punitive damages (No. 16-cv-6980-RS, ECF No. 293 at 10-12), a test the Ninth Circuit expressly "decline[d] to apply" to aggregated awards of statutory damages, *Wakefield*, 51 F.4th at 1122. It is routine to reduce a punitive damages award before entry of judgment, but as that is the wrong lens through which to analyze the question here, it isn't clear that the same procedure should be adopted as well. Furthermore, there is no discussion in *Montera* about whether the per violation awards are constitutional (as is undisputed here), nor does there appear to be the potential for any challenges relating to the violations the jury found in that case.

In sum, existing examples provide little guidance about when ViSalus's constitutional challenge to an aggregate statutory damages award should be considered here. Indeed, the issue of timing does not appear to have been presented or considered in any of these cases. Moreover, the lingering issues extant here, plus the general rule that statutory questions should be resolved before constitutional ones, show that the parties should issue notice and conduct a claims process before resolving ViSalus's constitutional challenge.

**II.     As to the mechanics of notice and a claims process, the Court should rule on the issues as briefed previously in this case (*see* Dkt. 396).**

The second issue the Court directed the parties to address is, in the event the Court orders the notice and a claims process to be completed before any due process issues are resolved, what that process would look like. Prior to the appeal, the parties had fully briefed this issue: Plaintiff

had proposed a notice plan modeled on the notice issued following class certification, which the Court found to comport with due process. (*See* Dkts. 396 (motion to approve notice plan); 383 at 2 (judgment incorporating findings regarding sufficiency of earlier notice); 396-1, ¶ 13 (declaration from administrator of first notice campaign averring that first notice campaign had 89% reach).) Plaintiff had also proposed a simple claims form which would provide enough information to determine whether or not a Class Member has a potentially valid claim based upon the jury verdict, and whether or not any landlines were used primarily for business purposes. (*See* Dkts. 396 at 7; 396-1, Ex. 1, Attachment B.) Although the parties met and conferred regarding this proposal (Dkt. 396 at 1), they were unable to come to an agreement. Defendant filed an opposition to Plaintiff's proposal (Dkt. 413), and Plaintiff replied (Dkt. 419).

Following the scheduling call on April 25, 2023, the parties again conferred regarding the mechanics of notice and a claims process. The parties' positions have not changed since the prior briefing was completed, with two exceptions. First, in light of the disposition of ViSalus's appeal, Plaintiff proposes a small change to the wording of the notice documents, which is found in the attached exhibits 2-4. Plaintiff believes no other changes are necessary. Defendant neither agreed with nor opposed these minor proposed wording changes. For its part, ViSalus represented that it would not continue to insist that claiming Class Members provide a telephone bill in order to substantiate their claims. That is a step in the right direction, but as Plaintiff explained in her earlier reply in support of her proposed claims process (Dkt. 419 at 6-7), nothing beyond the data necessary to validate a claim should be required from Class Members unless ViSalus substantiates a challenge to the member's claim. The parties otherwise stand on the briefs previously field with the Court, and ask the Court to rule on those briefs, subject to the modifications laid out above.

Finally, Plaintiff renews her request that notice costs be shifted to the Defendant. *See Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001) ("A number of courts have held that where notice is to occur after liability has been determined, the defendant appropriately bears the costs."). Plaintiff has now established liability and defended the jury's verdict on appeal. ViSalus will be required to bear these costs regardless of whether it succeeds in reducing the aggregate award, and should claims proceed as requested, it should bear those costs now.

Respectfully submitted,

**LORI WAKEFIELD,** on behalf of themselves and a class of others similarly situated,

Dated: May 9, 2023

/s/ J. Aaron Lawson
EDELSON PC
Rafey S. Balabanian, Cal. Bar #315962*
rbalabanian@edelson.com
J. Aaron Lawson, Cal. Bar #319306*
alawson@edelson.com
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Eve-Lynn Rapp Cal. Bar #342892*
erapp@edelson.com
Edelson PC
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0076
Fax: 720.741.0081

FORUM LAW GROUP
Scott F. Kocher, OSB #015088
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Tel: 503.445.2120
Fax: 503.445.2120

DOVEL & LUNER, LLP

Simon Franzini, Cal. Bar #287631*
simon@dovel.com
Gregory S. Dovel, Cal. Bar #135387*
greg@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Tel: (310) 656-7066
Fax: (310) 656-7069

**CERTIFICATE OF SERVICE**

      I, J. Aaron Lawson, an attorney, certify that on May 9, 2023, I served the foregoing by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                                                   /s/ J. Aaron Lawson