**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

Lisa M. Burnett (Admitted *pro hac vice*)
lburnett@sacrowalker.com
SACRO & WALKER LLP
700 North Brand Blvd., Ste. 610
Glendale, CA 91203
Telephone: 726.201.3555
Facsimile: 818.721.9670

      Attorneys for Defendant
      Visalus, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI WAKEFIELD, on behalf of herself and others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>VISALUS, INC.,<br><br>      Defendant. | CV No. 3:15-cv-01857<br><br>DEFENDANT'S BRIEF REGARDING PROCEDURE ON REMAND<br><br>REQUEST FOR ORAL ARGUMENT |

In response to the Court's order of April 25, 2023, ECF 451, and Plaintiff's statement regarding scheduling issues, ECF 455, Defendant ViSalus, Inc. ("ViSalus") hereby submits its statement regarding appropriate next steps in this litigation.  For the reasons set forth below, the

parties should brief and the Court should determine a constitutional ceiling for any aggregate damages award before proceeding with notice to purported class members and processing of claims. This order of operations is supported by the weight of the case law, is in accordance with the Ninth Circuit's opinion in this matter, and will better serve the interests of efficiency and fairness in light of ViSalus's precarious financial condition.

Alternatively, for the reasons set forth below and in the previously filed Declaration of Blake Mallen, ECF 311,[1] ViSalus requests that, should the Court decided to proceed with notice and claims in the first instance, any payment obligation on ViSalus's part be stayed until the determination of constitutionality, including any discovery, briefing, hearing and decision, has been completed.

With respect to the form of notice and the mechanics of the claims process, ViSalus incorporates by reference the arguments it made in its pre-appeal briefing, ECF 413, and agrees with Plaintiff that the issues related to notice, claims, and whether ViSalus should pay for those costs can be decided based on that prior briefing.

## ARGUMENT

**I.     Case Law Supports Performing the Constitutional Analysis Before Proceeding with Notice and Claims.**

In cases that involve a potential reduction in damages after the class certification stage, courts have performed the damages analysis before the claims process and without regard to any expected response rate. This is sensible in that constitutional and other legal principles do not and should not depend on the whims of class members deciding whether to return a claim form.

---

[1] This declaration was submitted in 2020 in support of ViSalus's request for a stay of the judgment and relief from bonding. Although it does not reflect ViSalus's profits and losses for fiscal years 2020, 2021, or 2022, its overall description of ViSalus's financial condition remains accurate. ViSalus will submit updated financial information in due course.

Page 2 -    DEFENDANT'S BRIEF REGARDING PROCEDURE ON REMAND

To hold otherwise would create the possibility that the same aggregate award against the same defendant for the same conduct would be improper if it applied to a class of claimants who happened to be more diligent about updating their contact information. As described below, courts have avoided going this route and have overwhelmingly performed a damages reduction before any claims process is completed.

In *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 WL 3923162, 2017 U.S. Dist. LEXIS 144501, at *11 (E.D. Mo. Sep. 7, 2017), *aff'd sub nom. Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019), a TCPA case similar to this one in many respects, the court reduced per-call damages from $500 to $10 on constitutional grounds, resulting in a corresponding reduction in the award from $1.6 billion to $32 million. As the court explained, "[t]his amount also takes into account the significant time and expense needed to notify the class and distribute the damages to the class." *Id*. The *Golan* court did not opine that it need not consider the constitutionality of the aggregate award because the expected response rate was less than 100%.

Similarly, in *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 WL 2020 U.S. Dist. LEXIS 68161, at *3, (N.D. Cal. Apr. 17, 2020), the jury entered a verdict of $267 million under the TCPA, based on an aggregation of $500 in damages per call over the course of more than 500,000 calls. The defendant moved for relief from judgment or to amend the judgment under Federal Rules of Civil Procedure 59(e) and 60(b), on constitutional grounds and others. *Id*. at *6–7. The court had no difficulty in performing the constitutional analysis before the claims process was initiated, and again did not factor into the constitutional analysis the expected response rate. *Id*. at *19 (finding defendant's challenge "is appropriate for

consideration at this point with the motion to reconsider given that damages could not have been fixed prior to the jury verdict or entry of judgment").

The same is true outside the TCPA context. In *Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 621 F.Supp.3d 1012, 1021, 2022 U.S. Dist. LEXIS 144491, at *20 (N.D. Cal. 2022), a class action brought under New York General Business Law §§ 349 and 350, which prohibit deceptive business practices and false advertising, a jury verdict awarded the plaintiff and the class over $91 million in statutory damages. The plaintiff moved for entry of judgment, and the defendant argued the award was unduly punitive and therefore violated due process. *Id.* at *2. The court agreed and ordered a 90% reduction in the statutory award, to $8,312,450, on constitutional grounds. *Id.* at *20. Again, there is no indication that the parties or the court considered the constitutional question unripe, or felt that the expected claims response rate had any bearing on the due process question. Thus, case law does not support Plaintiff's argument that constitutional questions must always "come last". ECF 455 at 3.

## II. The Ninth Circuit's Opinion in This Matter Does Not Contemplate Performing the Notice and Claims Process Before the Constitutional Analysis.

Performing the constitutional analysis on the aggregate award as it stands is the procedure most concordant with the Ninth Circuit's opinion on appeal. Notably, the opinion at no point relies upon on the fact that the ultimate payment to the class may be less than $925,218,000. The court had access to the judgment as written, including the "not to exceed" language cited by Plaintiff, ECF 455 at 1, and could have avoided the issue on that ground if it had so desired. But, as the cases cited above show, knowing what proportion of the class will actually file a claim is neither necessary for nor relevant to the constitutional question. Had the

Ninth Circuit intended anything about its decision to hinge on the outcome of the notice and claims process, it could and would have said so. That it did not should guide the Court here.

The Ninth Circuit's citation to *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), also supports the proposition that the reduction of damages in this case should proceed with a reduction in the total aggregate amount independent of the number of claims filed. In *Six Mexican Workers*, a judgment of $1,846,500 in statutory damages under the Farm Labor Contractor Registration Act had been entered against the defendants. *Id*. at 1304. The district court had entered orders describing how to identify class members (who were undocumented migrant farmworkers) and providing a notification procedure, but the process was not complete (and may not have begun) as of the date of the Ninth Circuit's opinion. *See id*. at 1306 ("It is unclear how many class members will be located by the detailed notification procedure ordered by the district court."). It was expected that a "substantial" proportion of the class would not be located and accordingly would never claim any funds; indeed, one of the defendants' arguments on appeal was that the class should be decertified due to the difficulty presented by trying to locate class members. *Id*. In considering the defendants' challenge to the award as an abuse of discretion, the Ninth Circuit looked to the total aggregate amount of $1,846,500 and did not factor in any "de facto reduction" based on an expected low response rate—even though a few paragraphs earlier it had expressly acknowledged that a considerable proportion of funds would likely go unclaimed. *Id*. at 1309–11. Instead, the Ninth Circuit used a seven-factor test to reduce the aggregate amount by reducing the per-violation award from $500 to anywhere between $0 and $200. *Id*.[2] The response rate of class members is not one of the factors.

---

[2] The factors are: "1) the amount of award to each plaintiff, 2) the total award, 3) the nature and

Page 5 -    DEFENDANT'S BRIEF REGARDING PROCEDURE ON REMAND

The Ninth Circuit's decision suggests that the procedure used in *Six Mexican Workers* should apply here on remand, and the constitutional analysis should proceed based on the total aggregate award as it stands, without regard to how many or what proportion of class members ultimately file claims.

### III.     Placing the Constitutional Analysis First Will Promote Efficiency and Fairness.

Finally, performing a constitutional analysis first will streamline the claims process and promote transparency and efficiency to all involved. Although in the abstract the $500 in statutory damages may be constitutional on an individual basis, once the number of claims exceeds a certain upper bound it is impossible to pay $500 to each claimant without the aggregate running afoul of the Constitution. No matter the actual response rate, an aggregate award of $925 million does not satisfy constitutional demands according to the seven-factor test outlined in *Six Mexican Workers* and the Ninth Circuit's opinion here.[3] Accordingly, to promise all 800,000 class members $500 at this stage would be irresponsible. It is likely true that claimants will receive $500 only if a certain, as yet unknown, percentage of them elect not to respond. By contrast, analyzing the damages question first will promote clarity and certainty: the parties will be able to determine the maximum amount each claimant may truthfully be promised, whether that is $500 or some other figure.

---

persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case." *Six Mexican Workers*, 904 F.2d at 1309.

[3] Nor is it any comfort to ViSalus that principles such as *cy pres* may "save" the aggregate award. ViSalus cannot hope for funds to revert to it when it does not have those funds in the first place.

Page 6 -     DEFENDANT'S BRIEF REGARDING PROCEDURE ON REMAND

Nor is it inconsistent to contemplate a potential per-call reduction in damages even when the $500 per call by itself does not violate due process. Indeed, in similar cases that have proceeded with a reduction in damages, the aggregate reduction has generally been accomplished by reducing the per-violation amount, regardless of whether the per-violation award might have been acceptable were it not for the disproportionality of the aggregate award. *See Six Mexican Workers*, 904 F.2d at 1310 (reducing per violation award from $500 to between $0 and $200); *Golan*, 2017 U.S. Dist. LEXIS 144501, at *11 (reducing per-violation amount from $500 to $10). This makes sense because absent a reduction in the per-violation amount, class members' rights depend not on any conduct of the defendant or wrong they suffered, but on how many other class members file claims. It would thus be unfair and inefficient to send would-be class members notice that they may be entitled to claim $500 and (in at least some cases) to ask them to provide supporting evidence for that claim, only to have the amount reduced significantly following a delay to count up what proportion of claimants have come forward, and pending additional briefing on constitutional issues.

Finally, Plaintiff's attorney's fees (to the extent the Court declines to use the lodestar method)[4] and incentive award are tied to the overall amount of the final aggregate award. Fixing a constitutional ceiling first will streamline the process of determining those amounts without lingering uncertainty created by unresolved constitutional questions.

**IV.    The Form of Notice, Claims Procedure, and Burden of Costs May Be Decided on the Parties' Prior Briefing.**

ViSalus's position on how the notice and claims process should be conducted and which

---

[4] ViSalus maintains that the lodestar method is appropriate here. *See* ECF 412.

party should bear the costs is set forth in detail in its prior briefing on the matter. ECF 413. In particular, ViSalus reiterates its concerns that the form of notice proposed by Plaintiff does not contain sufficient safeguards against false or baseless claims, does not adequately distinguish between landlines used for business versus personal purposes, and does not otherwise request sufficient information from claimants to enable ViSalus to challenge dubious claims. ViSalus is, however, willing to omit the requirement that claimants produce a phone bill in order for their claim to be processed.

ViSalus also requests that Plaintiff bear the costs of administration and recoup them, to the extent she is able, when final sums are distributed. As described in the 2020 Declaration of Blake Mallen, ECF 311, ViSalus is (and remains)[5] a small start-up company with no assets and tens of millions of dollars in debts. Although ViSalus is a viable operation with strong brand loyalty, a devoted community of promoters, and potential to bring in high revenues under the right conditions, it is not currently in any position to foot the costs of administering a claims process in a class involving some 800,000 members.

## CONCLUSION

For all of the foregoing reasons, ViSalus respectfully requests that the Court allow discovery and briefing on the constitutional limit of damages in this case before beginning the notice and claims procedure. Alternatively, should the Court elect to proceed with notice to class members and defer the constitutional analysis until after all claims have been processed, ViSalus respectfully requests that any payment obligation on its part with respect to claims by

---

[5] As noted above, ViSalus will supplement this declaration with updated information in due course.

class members, attorney's fees, and the incentive award, be deferred until such time as all constitutional questions have been settled.

DATED this 23rd day of May, 2023.

SACRO & WALKER LLP

*s/ Lisa M. Burnett*

Lisa M. Burnett (Admitted *pro hac vice*)
lburnett@sacrowalker.com
700 North Brand Blvd., Ste. 610
Glendale, CA 91203
Telephone: 726.201.3555
Facsimile: 818.721.9670

Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
MILLER NASH LLP
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Defendant ViSalus, Inc.