IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LORI WAKEFIELD, individually and on behalf of a class of others similarly situated**, <br><br> Plaintiffs, <br><br> v. <br><br> **VISALUS, INC.**, <br><br> Defendant. | Case No. 3:15-cv-1857-SI <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

    Lori Wakefield (Wakefield), on behalf of herself and a certified class of similarly situated individuals (collectively, Plaintiffs), sued ViSalus, Inc. (ViSalus), alleging that ViSalus violated the Telephone Consumer Protection Act (TCPA). After a three-day trial, the jury returned a verdict finding that Defendant placed four prerecorded calls to Wakefield that violated the TCPA and 1,850,436 prerecorded calls to other class members that similarly violated the TCPA. Because the minimum amount of statutory damages for each violation of the TCPA is $500, the total maximum amount of aggregated statutory damages against ViSalus is $925,220,000 (1,850,440 times $500). The Court, therefore, entered judgment against ViSalus "for an aggregate amount not to exceed $925,218,000." ECF 383.

PAGE 1 – ORDER

ViSalus appealed the judgment arguing, among other grounds, that an aggregate statutory damages award of $925,220,000 violates its due process rights. The Ninth Circuit rejected all of ViSalus's grounds for appeal except its due process argument. Regarding its due process argument, the Ninth Circuit held, as a matter of first impression, that aggregated statutory damages "even where the per-violation penalty is constitutional, are subject to constitutional limitation in extreme situations—that is, when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). The Ninth Circuit, however, "stress[ed] that only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-violation amount does not. Legislatures are empowered to prescribe purely punitive penalties for violations of statutes.". The Ninth Circuit explained:

> Constitutional limits on aggregate statutory damages awards therefore must be reserved for circumstances in which a largely punitive per-violation amount results in an aggregate that is gravely disproportionate to and unreasonably related to the legal violation committed. Were that not so, applying the *Williams* test to reduce aggregated statutory awards would overstep the role of the judiciary and usurp the power of the legislature.

*Id.* at 1124. The Ninth Circuit remanded for this Court to assess whether the maximum award in this case is so "severe and oppressive" as to violate ViSalus's due process rights.

Upon remand, the Court requested the parties to brief whether the Court should evaluate the constitutionality of the not-to-exceed total aggregate award, or should order the claims process to proceed and evaluate the constitutionality of the judgment against ViSalus considering its actual liability, particularly given the Court's discretion to allow ViSalus to retain unclaim funds. *See, e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th

PAGE 2 – ORDER

Cir. 1990) (stating, with regard to unclaimed funds, that "reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances").

ViSalus argues that the Court should first reduce the total potential aggregate award as unconstitutional and then order the claims process. Plaintiffs argue that under the unique circumstances of this case, the Court should order the claims process first, because given the likely low percentage of claimed funds, the constitutional issue will not need to be addressed.

The Supreme Court has "often stressed that it is important to avoid the premature adjudication of constitutional questions and that [courts] ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Matal v. Tam*, 582 U.S. 218, 230-31 (2017) (cleaned up). The Supreme Court has explained:

> If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable. It has long been the Court's considered practice not to decide abstract, hypothetical or contingent questions or to decide any constitutional question in advance of the necessity for its decision or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied or to decide any constitutional question except with reference to the particular facts to which it is to be applied. It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.

*Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) (cleaned up).

Considering the Supreme Court's guidance on avoiding resolving constitutional questions unless absolutely necessary and then only with reference to particular facts of the case, the Court concludes that in this case the better procedure is to first engage in the claims process. The current judgment of an aggregate award not to exceed $925,220,000 may have constitutional implications. But if the claims process results in a typical claims participation rate of 15% or less, then there is unlikely to be any constitutional concerns raised by the claimed aggregate

statutory award. And given the potential constitutional concerns, the Court may order the unclaimed funds, or some percentage of them, to revert to ViSalus, thus avoiding any potential constitutional implications. Thus, the constitutional question is not "unavoidable." *Matal*, 582 U.S. at 531. The Court declines to analyze the constitutionality of a hypothetical maximum judgment and instead will consider the constitutional issue, if any remains, after the claims process.

ViSalus cites *Golan v. Veritas Ent., LLC*, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017), which reduced damages under the TCPA before the claims process. ViSalus also cites *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), which addressed the question of the constitutionality of damages before the claims process, and declined to reduce damages. These courts addressed the post-trial motions before the claims process, as did this Court in its original post-trial decision. These courts, however, did not discuss the Supreme Court's admonishment to avoid constitutional issues unless absolutely necessary. The Court has now been directed by the Ninth Circuit as a matter of first impression to consider a possible constitutional concern that may not arise depending on the claims participation rate. As such, the Court defers until resolving that question is unavoidable and absolutely necessary, as directed by the Supreme Court.

The final issue raised by ViSalus is the issue of a bond and whether Plaintiffs or ViSalus should bear the costs of class notification and claims processing. ViSalus requests the opportunity for additional briefing on this issue, given its dire financial predicament. Plaintiffs request the opportunity for limited discovery on ViSalus's financial condition. The Court grants this request. ViSalus must produce to Plaintiffs within 14 days of this Order documentation sufficient to disclose its financial condition over the past three years.

The Court directs the parties to proceed with claims notification and processing. The Court STAYS its judgment, ECF 383, until after claims processing, at which point the Court anticipates entering an amended judgment. Regarding the claims process, before the Court entered its judgment, the parties disputed aspects of the proposed documents and other aspects of the process. Plaintiffs currently offered proposed revised documents. *See* ECF 455-2, 455-3, 455-4. ViSalus renewed its original objections but provided no additional brief regarding the claims process. Attached to this Order are redlined versions of Plaintiffs' proposed revised claims documents with changes suggested by the Court after considering ViSalus's original objections. The parties may file within 28 days of this Order simultaneous opening briefs addressing (1) the Court's proposed changes to the notice and claims documents, and (2) any new issues regarding the claims process the parties wish to raise, and (3) ViSalus's financial condition and its implication, if any, on the payment of claims notice and processing expenses and whether ViSalus should be required to post a bond. The parties may file simultaneous response briefs within two weeks thereafter.

**IT IS SO ORDERED.**

DATED this 16th day of February, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge